**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern _____ District of __Texas_____
                                        (State)

Case number (*if known*): _____  Chapter __11__

☐ Check if this is an amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy 06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

1. **Debtor's name**

   Free Speech Systems LLC

2. **All other names debtor used in the last 8 years**

   Include any assumed names, trade names, and *doing business as* names

3. **Debtor's federal Employer Identification Number** (EIN)

   __26__ – __1510005__ __ __ __

4. **Debtor's address**

   **Principal place of business**

   3019 Alvin Devane Blvd., STE 300
   Number    Street

   Austin, TX 78741
   City              State   ZIP Code

   Travis
   County

   **Mailing address, if different from principal place of business**

   Number    Street

   P.O. Box

   City              State   ZIP Code

   **Location of principal assets, if different from principal place of business**

   Number    Street

   City              State   ZIP Code

5. **Debtor's website** (URL)

| Debtor | Free Speech Systems LLC | Case number (if known) |
|---|---|---|
| | Name | |

**6. Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding  LLP)

☐ Other. Specify: _____

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

5151 __ __

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☒ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

Debtor  <u>Free Speech Systems LLC</u>                    Case number *(if known)*_____
     Name

---

9.  **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

    If more than 2 cases, attach a separate list.

    ☒ No

    ☐ Yes.   District _____  When _____  Case number _____
                                            MM / DD / YYYY

                District _____  When _____  Case number _____
                                            MM / DD / YYYY

---

10.  **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

    List all cases. If more than 1, attach a separate list.

    ☒ No

    ☐ Yes.   Debtor _____  Relationship _____

                District _____  When _____
                                             MM / DD / YYYY

                Case number, if known _____

---

11.  **Why is the case filed in *this district*?**

    *Check all that apply:*

    ☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

    ☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

12.  **Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

    ☒ No

    ☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

        **Why does the property need immediate attention?** *(Check all that apply.)*

        ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

            What is the hazard? _____

        ☐ It needs to be physically secured or protected from the weather.

        ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

        ☐ Other _____

        **Where is the property?** _____
                                  Number       Street

                                _____

                                _____    _____
                                City                       State ZIP Code

        **Is the property insured?**

        ☐ No

        ☐ Yes. Insurance agency _____

                Contact name _____

                Phone _____

---

**█ Statistical and administrative information**

---

Debtor   __Free Speech Systems LLC_____   Case number (if known)_____
         Name

| | |
|---|---|
| **13.** **Debtor's estimation of available funds** | *Check one:*<br>☒ Funds will be available for distribution to unsecured creditors.<br>☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors. |

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☒ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☒ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☒ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

| | |
|---|---|
| | **Request for Relief, Declaration, and Signatures** |

**WARNING --** Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  __07/29/2022__
             MM  / DD / YYYY

✗ __W. Marc Schwartz_____        __W. Marc Schwartz_____
Signature of authorized representative of debtor     Printed name

Title   __Chief Restructuring Officer_____

Debtor ___Free Speech Systems LLC_____        Case number (if known)_____
      Name

**18. Signature of attorney**   ✖ _____   Date ___07/29/2022___
                                   Signature of attorney for debtor              MM  / DD / YYYY

                                 ___Raymond W. Battaglia_____
                                 Printed name
                                 ___Law Offices of Ray Battaglia, PLLC_____
                                 Firm name
                                 ___66 Granburg Circle_____
                                 Number      Street
                                 ___San Antonio_____   ___Texas___  ___78218___
                                 City                                       State        ZIP Code

                                 ___(210) 601-9405_____         ___rbattaglialaw@outlook.com___
                                 Contact phone                             Email address

                                 ___01918055_____           ___Texas___
                                 Bar number                               State

Official Form 201                Voluntary Petition for Non-Individuals Filing for Bankruptcy            page 5

**Fill in this information to identify the case:**

Debtor name ___Free Speech Systems LLC___

United States Bankruptcy Court for the: ___Southern___ District of ___Texas___
(State)

Case number (If known): _____

☐ Check if this is an amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Elevated Solutions Group 28 Maplewood Drive Cos Cob, CT 06870 | | Trade claim | | | | $319,148.16 |
| 2 | Christopher Sadowski c/o Copycat Legal PLLC 3111 N. University Drive STE 301 Coral Springs, FL 33065 | Daniel DeSouza 877-437-6228 dan@copycatlegal.com | Potential lawsuit for copyright infringement | Disputed Unliquidated | | | $90,000.00 |
| 3 | Atomial LLC 1920 E. Riverside Dr. Suite A-120 #124 Austin, TX 78741 | | Trade claim | | | | $75,600.00 |
| 4 | Cloudflare, Inc Dept LA 24609 Pasadena, CA 91185-4609 | | Trade claim | | | | $61,273.68 |
| 5 | Jacquelyn Blott 200 University Blvd Suite 225 #251 Round Rock, TX 78665 | | Legal fees | | | | $58,280.00 |
| 6 | Joel Skousen PO Box 565 Spring City, UT 84662 | | Trade claim | | | | $35,035.00 |
| 7 | eCommerce CDN, LLC 221 E 63rd Street Svannah, GA 31405 | | Trade claim | | | | $27,270.00 |
| 8 | Paul Watson 9 Riverdale Road Ranmoor Sheffield South Yorkshire S10 3FA UK | | Trade claim | | | | $25,000.00 |

Debtor    Free Speech Systems LLC
          _____    Case number *(if known)*_____
          Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | Brennan Gilmore c/o Civil rights Clinic 600 New Jersey Avenue, NW Washington, DC 20001 | Andrew Mendrala 202-662-9065 andrew.mendrala@georgetown.edu | Litigation claim | | | | $50,000.00 |
| 10 | Greenair, Inc 23569 Center Ridge Rd Westlake, OH 44145 | | Trade claim | | | | $12,240.00 |
| 11 | Edgecast, Inc Dept CH 18120 Palatine, IL 60055 | | Trade claim | | | | $11,726.00 |
| 12 | Ready Alliance Group, Inc PO Box 1709 Sandpoint, ID 83864 | | Trade claim | | | | $9,431.90 |
| 13 | Getty Images, Inc PO Box 953604 St. Louis, MO 63195-3604 | | Trade claim | | | | $9,201.25 |
| 14 | RatsMedical.com c/o Rapid Medical 120 N Redwood Rd North Salt Lake, UT 84054 | | Trade claim | | | | $9,185.00 |
| 15 | David Icke Books Limited c/o Ickonic Enterprises Limited St. Helen's House King Street Derby DE1 3EE UK | | Trade claim | | | | $9,000.00 |
| 16 | WWCR 1300 WWCR Ave Nashville, TN 37218-3800 | | Trade claim | | | | $9,000.00 |
| 17 | JW JIB Productions, LLC 2921 Carvelle Drive Riviera Beach, FL 33404 | | Trade claim | | | | $7,000.00 |
| 18 | CustomTattoNow.com 16107 Kensington Dr. #172 Sugar Land, TX 77479 | | Trade claim | | | | $5,389.36 |
| 19 | AT&T PO Box 5001 Carol Stream, IL 60197-5001 | | Utilities claim | | | | $3,973.83 |
| 20 | Justin Lair 1313 Lookout Ave Klamath Falls, OR 97601 | | Trade claim | | | | $3,240.82 |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FREE SPEECH SYSTEMS LLC | ) | Case No. 22 - _____ |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |

## LIST OF EQUITY SECURITY HOLDERS

| Registered Name of Holder of Security, Last Known Address or Place of Business | Class of Security | Number Registered | Kind of Interest |
|---|---|---|---|
| Alexander E. Jones<br>3019 Alvin Devane Blvd., Suite 300<br>Austin, TX 78741 | Common Equity | 100% | Membership Interests |

**DECLARATION UNDER PENALTY OF PERJURY
ON BEHALF OF A CORPORATION OR PARTNERSHIP**

I, the Chief Restructuring Officer of the limited liability company named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date: 7/29/2022

Signature: _W. Marc Schwartz_____
W. Marc Schwartz

# Free Speech Systems, LLC

Balance Sheet

As of May 31, 2022

|  | TOTAL |
|---|---|
| ASSETS | |
| Current Assets | |
| Bank Accounts | |
| 10000 Cash | 1,157,710.72 |
| Petty Cash | 1,537.18 |
| **Total Bank Accounts** | **$1,159,247.90** |
| Accounts Receivable | |
| 11000 Accounts Receivable | 10,013,413.22 |
| **Total Accounts Receivable** | **$10,013,413.22** |
| Other Current Assets | |
| 12000 Inventory | 910,116.84 |
| 13000 Prepaid Expenses | 114,136.99 |
| **Total Other Current Assets** | **$1,024,253.83** |
| **Total Current Assets** | **$12,196,914.95** |
| Fixed Assets | |
| 15000 Property and Equipment | 1,580,700.46 |
| Art Work | 79.00 |
| **Total Fixed Assets** | **$1,580,779.46** |
| Other Assets | |
| 17100 Security Deposits | 534,560.00 |
| 17300 Intangible Assets - Net | 15,333.33 |
| **Total Other Assets** | **$549,893.33** |
| **TOTAL ASSETS** | **$14,327,587.74** |

# Free Speech Systems, LLC

Balance Sheet

As of May 31, 2022

|  | TOTAL |
|---|---|
| LIABILITIES AND EQUITY |  |
| Liabilities |  |
| Current Liabilities |  |
| Accounts Payable |  |
| 20000 Accounts Payable | 1,244,885.93 |
| **Total Accounts Payable** | **$1,244,885.93** |
| Credit Cards |  |
| 22000 Credit Cards | 207,984.04 |
| **Total Credit Cards** | **$207,984.04** |
| Other Current Liabilities |  |
| Advances from PQPR | 571,920.57 |
| David Jones Advance | 150,000.00 |
| Due to PQPR | 23,058,367.00 |
| Interest Payable | 0.00 |
| **Total Other Current Liabilities** | **$23,780,287.57** |
| **Total Current Liabilities** | **$25,233,157.54** |
| Long-Term Liabilities |  |
| 27000 Note Due to PQPR | 53,845,074.41 |
| Note Payable - Winnebago | 82,524.37 |
| **Total Long-Term Liabilities** | **$53,927,598.78** |
| **Total Liabilities** | **$79,160,756.32** |
| Equity |  |
| 31000 Opening Balance Equity | -66,792,609.05 |
| 33000 Distributions to Member | 57,336.00 |
| 35000 Retained Earnings |  |
| Net Income | 1,902,104.47 |
| **Total Equity** | **$ -64,833,168.58** |
| **TOTAL LIABILITIES AND EQUITY** | **$14,327,587.74** |

# Free Speech Systems, LLC
## Statement of Cash Flows
### For the Year Ended December 31, 2021  and the Five Months Ended May 31, 2022

|  | 2021 | 2022 |
|---|---|---|
| **OPERATING ACTIVITIES** | | |
| *Net Income* | **($10,919,482.45)** | **$1,744,855.66** |
| *Adjustments to reconcile Net Income to Net Cash provided by operations:* | | |
| 11000 Accounts Receivable:PQPR Reimbursement Receivable | ($10,187,121.95) | $648,708.73 |
| 12000 Inventory | ($94,344.61) | $822,486.29 |
| Prepaid Expenses | ($403,821.24) | $65,286.20 |
| Accumulated Depreciation | $209,887.99 | $98,750.20 |
| Accumulated Amortization | $35,361.29 | $0.00 |
| 20000 Accounts Payable | $3,005,707.55 | ($3,410,484.85) |
| 22000 Credit Card Payable | ($236,394.79) | $207,984.04 |
| Advances from PQPR | $0.00 | $256,920.57 |
| David Jones Advance | $150,000.00 | $0.00 |
| Due to PQPR | ($2,229,789.04) | $0.00 |
| Interest Payable - PQPR | ($200,022.99) | $0.00 |
| *Net cash provided by operating activities* | **($20,870,020.24)** | **$434,506.84** |
| **INVESTING ACTIVITIES** | | |
| 15000 Property and Equipment | ($522,121.65) | ($91.00) |
| 17100 Security Deposits | ($500,000.00) | $0.00 |
| 17300 Intangible Assets | ($5,500.00) | $3,229.15 |
| *Net cash provided by investing activities* | **($1,027,621.65)** | **$3,138.15** |
| **FINANCING ACTIVITIES** | | |
| 27000 Note Due to PQPR:2021/11/10 $25,300,000 Note | $24,992,405.22 | ($735,330.81) |
| Note Payable - Winnebago | ($18,832.81) | ($10,981.25) |
| 31000 Opening Balance Equity | $0.00 | $0.00 |
| Member's Equity | ($23,193.36) | ($98,098.40) |
| Net Member Distributions | ($2,100,362.40) | $57,019.45 |
| *Net cash provided by financing activities* | ***$22,850,016.65*** | ***($787,391.01)*** |
| *Net cash increase for period* | ***$952,374.76*** | ***($349,746.02)*** |

**Free Speech Systems LLC**
**Comparative Profit and Loss Statement**
**For the Year Ended December 31, 2021 and the Five Months**
**Ended May 31, 2021**

| | | 2021 | 2022 |
|---|---|---|---|
| **Income** | | | |
| Product Sales | $ | 52,661,022.49 | $ 10,969,769.29 |
| Advertising Income | | 5,761,997.51 | |
| Donations | | 710,154.12 | 2,876,213.86 |
| Fulfillment Services | | 3,533,223.00 | - |
| Administrative Services | | 1,903,898.95 | - |
| Media Production Sales | | - | 475,000.00 |
| Infowars Health | | 38,123.60 | - |
| Prison Planet | | 4,877.62 | - |
| Uncategorized Income | | 357,344.56 | - |
| **Total Income** | | **64,970,641.85** | **14,320,983.15** |
| Cost of Goods Sold | | 51,878,333.73 | 4,936,453.79 |
| **Gross Profit** | $ | **13,092,308.12** | $ **9,384,529.36** |
| **Expenses** | | | |
| Advertising & Promotion | | 364,387.73 | 107,994.01 |
| Computer/IT/IP Expense | | 5,036,717.02 | 1,307,339.15 |
| Insurance Expense | | 54,558.40 | 31,898.90 |
| Office & Administrative Expense | | 277,863.76 | 26,373.93 |
| Contract Services | | 1,591,039.49 | 359,592.69 |
| Professional Fees | | 4,126,906.48 | 1,623,771.42 |
| Occupancy | | 1,624,864.40 | 345,602.34 |
| Utilities | | 115,461.34 | 127,855.13 |
| Taxes Paid | | 50,281.71 | 4,409.71 |
| Telephone Expense | | 304,776.62 | 85,341.24 |
| Personnel & Payroll Expenses | | 6,879,811.39 | 2,157,298.60 |
| Travel | | 975,711.28 | 64,900.23 |
| Equipment Purchase | | 123,696.05 | - |
| Production | | 393,712.54 | - |
| Radio Show | | 145,177.77 | - |
| Royalties | | 1,197,472.71 | - |
| Equipment Rental | | 27,322.86 | - |
| Meals and Entertainment | | 97,486.31 | - |
| Miscellaneous Expenses | | 0.00 | - |
| Uncategorized Expense | | - | 103,815.00 |
| **Total Expenses** | | **23,387,247.86** | **6,346,192.35** |
| **Net Operating Income** | $ | **(10,294,939.74)** | $ **3,038,337.01** |
| **Other Income** | | **507,168.04** | **1,019,713.81** |
| **Other Expenses** | | 18,963.30 | 206.15 |
| Interest Expense | | 857,498.17 | 397,669.19 |
| Donation | | 10,000.00 | - |
| Amortization Expense | | 35,361.28 | 5,937.50 |
| Depreciation Expense | | 209,888.00 | 98,750.20 |
| AMEX Charges | | - | 1,653,383.31 |
| **Total Other Expenses** | | **1,131,710.75** | **2,155,946.35** |
| **Net Other Income** | | **(624,542.71)** | **(1,136,232.54)** |
| **Net Income** | $ | **(10,919,482.45)** | $ **1,902,104.47** |

**Free Speech Systems LLC**
**Comparative Balance Sheet**
**As of December 31, 2021 and May 31, 2022**

|  | | 2021 | | 2022 |
|---|---|---|---|---|
| **Assets** | | | | |
| **Current Assets** | | | | |
| Cash | $ | 1,481,519.86 | $ | 1,159,247.90 |
| Accounts Receivable | | 10,187,121.95 | | 10,013,413.22 |
| **Other Current Assets** | | | | |
| Invenotry | | 1,732,603.13 | | 910,116.84 |
| Prepaid Expenses | | 446,475.64 | | 114,136.99 |
| Due from PQPR | | (500.00) | | - |
| Advance To Elevated Solutions | | 27,870.00 | | - |
| **Total Other Current Assets** | | **2,206,448.77** | | **1,024,253.83** |
| **Total Current Assets** | | **13,875,090.58** | | **12,196,914.95** |
| **Fixed Assets** | | 1,679,438.66 | | 1,580,779.46 |
| **Other Assets** | | | | |
| Intangible Assets | | 21,270.83 | | 15,333.33 |
| Security Deposits | | 534,560.00 | | 534,560.00 |
| **Total Other Assets** | | **555,830.83** | | **549,893.33** |
| **Total Assets** | $ | **16,110,360.07** | $ | **14,327,587.74** |
| **Liabilities and Equity** | | | | |
| **Liabilities** | | | | |
| **Current Liabilities** | | | | |
| Accounts Payable | $ | 4,732,966.89 | $ | 1,244,885.93 |
| Credit Cards | | 152,367.42 | | 207,984.04 |
| **Other Current Liabilities** | | | | |
| David Jones Advance | | 150,000.00 | | 150,000.00 |
| Advances from PQPR | | - | | 571,920.57 |
| Due to PQPR | | 23,058,367.00 | | 23,058,367.00 |
| **Total Other Current Liabilities** | | **23,208,367.00** | | **23,780,287.57** |
| **Total Current Liabilities** | | **28,093,701.31** | | **25,233,157.54** |
| **Long Term Liabilities** | | | | |
| Note Due to PQPR | | 54,580,405.22 | | 53,845,074.41 |
| Note Payable - Winnebago | | 93,505.62 | | 82,524.37 |
| **Total Long Term Liabilities** | | **54,673,910.84** | | **53,927,598.78** |
| **Total Liabilities** | $ | **82,767,612.15** | $ | **79,160,756.32** |
| **Equity** | | | | |
| Member's Equity | | (774,291.44) | | - |
| Member Draws | | (61,937,862.26) | | (254,014.00) |
| Member Contributions | | 4,305,810.14 | | 311,350.00 |
| Opening Balance Equity | | - | | (66,792,609.05) |
| Retained Earnings | | 2,668,573.93 | | - |
| Net Income | | (10,919,482.45) | | 1,902,104.47 |
| **Total Equity** | $ | **(66,657,252.08)** | $ | **(64,833,168.58)** |
| **Total Liabilities and Equity** | $ | **16,110,360.07** | $ | **14,327,587.74** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FREE SPEECH SYSTEMS LLC | ) | Case No. 22 - _____ |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |

**DECLARATION OF W. MARC SCHWARTZ REGARDING**
**BANKRUPTCY CODE § 1116(1) REQUIREMENTS**

I, W. Marc Schwartz, hereby declare as follows:

1.      My name is W. Marc Schwartz.

2.      I am a founder of Schwartz & Associates, LLC ("SALLC"). SALLC has its principal offices at 712 Main Street, Suite 1830, Houston, Texas. SALLC has been engaged in business since 2019. The primary business of SALLC is bankruptcy and financial restructuring consulting, serving as financial/economic experts in civil litigation matters and, serving as court appointed receivers in federal and state court matters.  The firm is also licensed as an investigations company by the Texas Department of Public Safety.

3.      SALLC's services include financial forensics, supervising business operations as a trustee, examiner with expanded powers or receiver, valuing business assets and income tax related services    My firm represents individuals, companies and courts in a variety of assignments including as Chief Restructuring Officers, financial advisers, trustees and examiners in bankruptcy matters; working as testifying or consulting experts on damages and economic issues for parties involved in litigation and as a special master for courts where litigation matters are pending; serving as court appointed receivers in state and federal courts.

4.      I earned a Bachelor of Arts degree from Princeton University and a Master's in Business Administration degree from the University of Chicago Booth School of Business. I am

licensed in Texas as a Certified Public Accountant, Certified in Financial Forensics by the American Institute of Certified Public Accountants, a Certified Fraud Examiner, and a Licensed Private Investigator.

5.      I have extensive experience serving as a fiduciary in bankruptcy cases as either a Chapter 11 Trustee, a Chief Restructuring Officer, or an Examiner with expanded powers. I have also acted as a receiver over several individuals and entities under state law.

6.       I was retained as the Debtor's Chief Restructuring Officer in June 2022.

7.      The Debtor is a disregarded entity for tax purposes and therefore has never prepared an income tax return.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 29, 2022                          By: _____
                                                            W. Marc Schwartz

2

## WRITTEN CONSENT OF SOLE MEMBER OF
## FREE SPEECH SYSTEMS, LLC
## A LIMITED LIABILITY COMPANY

The undersigned, sole Member of FREE SPEECH SYSTEMS, LLC ("Company"), in accordance with the Company Agreement, hereby adopt the following written consent.

**WHEREAS,** the Member signing this consent is the holder of all of the member interest entitled to vote at the Company's meetings as provided in Section 8 of the Company Agreement and on the following resolutions; and

**WHEREAS,** the undersigned desires to execute a written consent in lieu of formally holding a Member's meeting and agrees that the adoption of the following resolutions shall be valid and have the same force and effect as though such resolutions had been adopted at a formal meeting;

**WHEREAS,** the Member has had the opportunity to consult with the financial and legal advisors of the Company and assess the considerations related to the commencement of a chapter 11 case under title 11 of the United States Code (the "Bankruptcy Code"), including materials provided by the financial and legal advisors, and the Member adopts these resolutions.

**WHEREAS**, in light of the Company's current financial condition, the Member has investigated, discussed and considered options for addressing the Company's financial challenges and, after consultation with the Company's advisors, have concluded that it is in the best interests of the Company, its creditors, employees and other interested parties that a petition be filed by the Company seeking relief under the provisions of the Bankruptcy Code; now therefore be it

**RESOLVED** that the Manager of the Company is hereby authorized, empowered and directed, in the name and on behalf of the Company, to execute and verify a petition under Chapter 11 of the Bankruptcy Code and to cause the same to be filed in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), at such time as said manager shall determine in consultation with the Company's legal and financial advisors; and it is further

**RESOLVED**, that the Company is authorized to hire the Law Offices of Ray Battaglia, PLLC and Shannon & Lee LLP as its bankruptcy counsel; and it is further

**RESOLVED**, that the Company is authorized to hire W. Marc Schwartz to serve as Chief Restructuring Officer ("CRO") and to retain any professionals and advisors to the extent necessary or useful in any chapter 11 case authorized hereby; and it is further

**RESOLVED**, that the Manager and the CRO is hereby authorized, empowered and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings and other papers and, in that connection, to employ and retain all assistance by legal counsel, accountants, financial advisors, liquidators and other professionals, and to take

and perform any and all further acts and deeds deemed necessary, proper or desirable in connection with the successful prosecution of the chapter 11 case; and it is further

**RESOLVED**, that any and all past actions heretofore taken by the Manager, the CRO or any other Officer in the name and on behalf of the Company in furtherance of any or all of the proceeding resolutions be, and the same hereby are, ratified, confirmed, and approved; and it is further.

**RESOLVED**, that this written consent shall have the same force and effect as a formal Members' meeting for all purposes.

The undersigned, by signing this Unanimous Written Consent, hereby waive notice of the time and place of the meeting, consent to the meeting and approves the contents of this written consent.  The undersigned directs that this written consent be filed with the minutes of the proceedings of the Company.

**DATED** to be effective on July _28_, 2022

Free Speech System, LLC

_____
Alex E. Jones, Manager and
Sole Member

000066

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | |
|---|---|
| In re: | Case No. 22- 60043 |
| FREE SPEECH SYSTEMS, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | |

**DEBTOR'S EMERGENCY MOTION FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW THE HESLINS/LEWIS STATE COURT SUIT TO CONTINUE TO JUDGEMENT**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED, IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER, IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

RELIEF IS REQUESTED NOT LATER THAN 8:00 A.M. ON AUGUST 1, 2022.

The above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS"), in the above-referenced chapter 11 case (the "Chapter 11 Case"), hereby files this emergency motion (the "Motion") seeking an order from the Court lifting the automatic stay provision of the Bankruptcy Code to authorize the consolidated state court action styled as *Neil Heslin and Scarlett Lewis v. Alex E. Jones*

1

*and Free Speech Systems, LLC,* Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas (the "Heslin/Lewis Suit") to continue trial to judgment before Judge Maya Guerra Gamble, 459th Civil District Court, Travis County (the "Texas State Court"). In support of the Motion, the Debtor submits and incorporates by reference the *Declaration of Marc Schwartz in Support of First Day Motions* (the "First Day Declaration"), filed concurrently herewith. In further support of the Motion, the Debtor respectfully represents as follows:

### REQUEST FOR EMERGENCY HEARING OR EX PARTE RELIEF

1.     The Debtor seeks emergency consideration of this Motion on or before 8:30 a.m. on August 1, 2022, or as soon thereafter as the Court's schedule will allow. A jury has been empaneled and trial is underway in the Heslin/Lewis Suit, scheduled to continue at 9:00 a.m. on Monday, August 1, 2022. Emergency relief is necessary to prevent delay in the Heslin/Lewis Suit to the detriment of the Debtor, Plaintiffs Heslin and Lewis, and the members of the jury serving in the Heslin/Lewis Suit.

2.     The Debtor further submits that *ex parte* relief pursuant to Rule 4001(a)(2) is appropriate here. The First Day Declaration show the potential for harm if the automatic stay is not granted and this motion is verified by counsel to the Debtor pursuant to Bankruptcy Local Rule 9013-1(i). Notice is not necessary here because the relief sought does not affect the rights of any parties in interest other than the Debtor.

### JURISDICTION AND VENUE

3.     On July 29, 2022 (the "Petition Date"), the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of Title 11 of the United States Code §§ 101, *et seq.* (the "Bankruptcy Code").

000068

4.      The Debtor continues in the possession of its property and is operating and managing its businesses as a debtor and debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code.

5.      No request for a trustee or examiner has been made. No statutory committee of creditors has been appointed.

6.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief sought in this Motion are 11 U.S.C. §§ 105, 362 and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure.

## **BACKGROUND**[1]

8.      In 2018, certain aggrieved parties (the "Texas Plaintiffs") commenced state-court actions against one or more of the Debtors styled as: **_(a)_** _Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Owen Shroyer_, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas; **_(b)_** _Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC_, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas; **_(c)_** _Leonard Pozner and Veronique De La Rosa v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC_, Cause No. D-1-GN-18-001842, in the 345th District Court of Travis County, Texas; **_(d)_** _Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Kit Daniels_, Cause No. D-1-GN-18-001605 in the 459th District Court for Travis County, Texas; and **_(e)_** _Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, PQPR Holdings Limited LLC,  JLJR Holdings, LLC, PLJR Holdings,_

---

[1] Additional factual background and information regarding the Debtor and the litigation it has faced prior to the Petition ~~Date  is~~Date is set forth in the _Declaration of W. Marc Schwartz in Support of Voluntary Petition and First Day Motions._

000069

LLC, Carol Jones, David Jones, PQPR Holdings, LLC, JLJR Holdings Limited, LLC, AEJ Holdings, LLC, AEJ Trust 2018, Cause No. D-1-GN-22-001610, in the 200th District Court for Travis County (collectively, as may have been consolidated, the "Texas State Court Suits").

9.      Two of the Texas State Court Suits—*Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Owen Shroyer*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas and *Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas—have been consolidated as the Heslin/Lewis Suit.  Judge Maya Guerra Gamble, 459th Civil District Court, Travis County (the "Texas State Court") is presiding over the Heslin/Lewis Suit.

10.      The trial of the Heslin/Lewis Suit was ongoing as of the Petition Date. On July 25, 2022, the Texas State Court held *voir dire* of jurors and a jury was empaneled. The Texas State Court began taking evidence in the Heslin/Lewis Suit on July 26, 2022. As the result of the filing of the Debtor's petition for chapter 11 relief, the Heslin/Lewis Suit is stayed by Bankruptcy Code section 362.

11.      The Debtor believes that it is in the best interests of its estate and creditors for the Heslin/Lewis Suit to continue to judgement notwithstanding the commencement of this Chapter 11 Case. Substantial resources of the Debtor and Plaintiffs Heslin and Lewis have already been expended in the Heslin/Lewis Suit to empanel a jury and present evidence to that jury. Based on representations made by counsel for Heslin and Lewis in the chapter 11 case of related party InfoW, LLC previously before this Court, the Debtor believes that Heslin and Lewis desire a final judgment from the Texas State Court and would seek relief from the automatic stay absent this request by the Debtor.[2]

---

[2] Cliff Walston, attorney for the Texas Plaintiffs, indicated at the April 22, 2022, hearing in the InfoW, LLC chapter 11 case that the Texas Plaintiffs would be seeking relief from the automatic stay to continue litigation. According to Mr. Walston, the "cases are every bit as much about having a determination final made for them, them having their day in court in which Mr. Jones is held accountable for his conduct. So it's not just about a liquidating claims procedure, it is very emotional." *In re InfoW, LLC*, Case No. 22-60020 (Bankr. S.D. Tex.) [ECF No. 39] at 73:8-12.

000070

## RELIEF REQUESTED

12.     Pursuant to section 362(d) of the Bankruptcy Code, the Debtor seeks an order modifying the automatic stay to permit the Heslin/Lewis Suit to continue to final judgment, but that all further proceedings remain subject to the automatic stay.

## ARGUMENT

13.     Bankruptcy Code section 362(d) sets forth the general standard for obtaining relief from the automatic stay. This provision provides, "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section such as by terminating, annulling, modifying, or conditioning of such stay . . . for cause . . . ." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause" and courts must determine when relief from the automatic stay is appropriate on a case-by-case basis.

14.     Generally, relief from the automatic stay should be granted to liquidate an unsecured claim only where the "balance of hardships" favors of determining the claim in the creditor's preferred forum. *See In re UTEX Communs. Corp.*, 457 B.R. 549, 570 (Bankr. W.D. Tex. 2011) (quoting *In re U.S. Brass Corp.*, 173 B.R. 1000 (Bankr. E.D. Tex. 1994); *see also In re Kao*, No. 15-31193-H3-13, 2015 Bankr. LEXIS 4293, at *6 (Bankr. S.D. Tex. Dec. 21, 2015); *In re Young*, No. 06-80397-G3-7, 2006 Bankr. LEXIS 2934, at *6 (Bankr. S.D. Tex. Oct. 20, 2006).

15.     Modifying the automatic stay to allow the Heslin/Lewis Suit to continue to final judgment, but no further, is appropriate here. A jury has been empaneled, the trial has commenced, and the Debtor and Plaintiffs Heslin and Lewis have participated in the trial. In light of these factors, liquidating the claims of Plaintiffs Heslin and Lewis against the Debtor through the state-court trial in the Heslin/Lewis Suit will harm neither the estate, Plaintiffs Heslin and Lewis, nor other creditors.

5

## RESERVATION OF RIGHTS

16.     The Debtor reserves any and all rights in connection with the Heslin\Lewis Suit. Nothing contained herein shall operate as a waiver of any of the Debtor's claims, rights or remedies.

## NO PRIOR REQUEST

17.     No previous request for the relief sought herein has been made to this Bankruptcy Court or any other court.

## CONCLUSION

WHEREFORE, the Debtor FSS requests that the Bankruptcy Court: (a) enter an order, in substantially the form attached hereto, modifying the automatic stay to permit the Heslin\Lewis Suit to continue to final judgment, and (b) grant such other and further relief as is just and proper.

Respectfully submitted this 29th day of July, 2022.

**LAW OFFICES OF RAY BATTAGLIA, PLLC**

/s/*Raymond W. Battaglia*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Counsel to the Debtor and Debtor-In-Possession*

-and-

**SHANNON & LEE LLP**

/s/*Kyung S. Lee*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002

6

000072

Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor*
*and Debtor in Possession*

## <u>CERTIFICATE OF ACCURACY</u>

I hereby certify that the forgoing statements are true and accurate to the best of my knowledge and belief. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

<u>*/s/ Kyung S. Lee*                    </u>

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date of filing, a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service, (b) by U.S.P.S. first class mail on all parties indicated in the attached service list, and (c) the following parties by email:

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Cliff Walson
Walsont Bowlin Callendar, PLLC
4199 San Filipe Street, STE 300
Houston, TX 77027
cliff@wbctrial.com

Jon Maxwell Beatty
The Beatty Law Firm PC
1127 Eldridge Pkwy, Suite 300, #383
Houston, TX 77077
max@beattypc.com

_/s/ Raymond W. Battaglia_

## USPS Service List

<u>Twenty Largest Unsecured Creditors</u>

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

eCommerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

2

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

Parties Claiming Interest or Lien Affected

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

Parties Filing Notice of Appearance

N/A

Subchapter V Trustee

N/A (Not Yet Appointed)

U.S. Trustee

Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

Additional Notice Parties

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

000076

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | |
|---|---|
| In re: | Case No. 22-__60043_____ |
| FREE SPEECH SYSTEMS, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | |

---

**ORDER MODIFYING AUTOMATIC STAY TO ALLOW HESLIN/LEWIS TRIAL TO
CONTINUE TO FINAL JUDGMENT**

At Victoria, in said District, came on for consideration the Emergency Motion to Lift Automatic Stay in Favor of Neil Heslin and Scarlett Lewis to Continue Trial to Judgment (the "Motion") filed by Free Speech Systems, LLC (the "Debtor" or "FSS"); and it appearing to the Court that notice of the hearing on the Motion is adequate, appropriate and sufficient under the circumstances of this case; and it further appearing to the Court that prior to the Petition Date, Neil Heslin and Scarlett Lewis (collectively, the "Plaintiffs") commenced state-court actions against FSS consolidated into the action styled as *Neil Heslin v. Alex E. Jones and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas Heslin/Lewis State Court Litigation"); and it appearing to the Court that a trial in the Heslin/Lewis Litigation is ongoing before Judge Maya Guerra Gamble, 459th Civil District Court, Travis County (the "Texas State Court"); and it appearing that on July 29, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court"); and the automatic stay provision of 11 U.S.C. § 362(a) may prevent the continuation of the Heslin/Lewis State Court Litigation; and the Debtor having agreed to the modification of the automatic stay so as to permit the Texas State Court to proceed

up to and including the entry of judgment, if any,  in the Heslin/Lewis State Court Litigation and the Plaintiffs to litigate the matter to judgment;;

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.      The automatic stay provision of 11 U.S.C. § 362(a) be and hereby is modified solely for the purpose of allowing the Heslin/Lewis State Court Litigation to continue to proceed to judgment by the Texas State Court.

2.      Except to assert the claim against FSS in FSS's bankruptcy case, the automatic stay shall continue to enjoin the Plaintiffs and any other party, from exercising against FSS any remedies to collect or enforce any judgment against any assets of FSS or its bankruptcy estate including all property of the estate.

3.      This Court shall retain sole and exclusive jurisdiction with respect to the automatic stay and its application to any actions other than those expressly provided for in this Order.

Dated: _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FREE SPEECH SYSTEMS LLC | ) | Case No. 22 - _60043_ |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |

**VERIFICATION OF CREDITOR MATRIX**

    The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of its knowledge.

Date:___7/29/22___        Signature:_____
                                  Authorized Signer

000079

Airco Mechanical, LTD
PO Box 1598
Round Rock, TX 78680


Addshoppers, Inc
222 S. Church Street , #410M
Charlotte, NC 28202


ADP Total Source Insurance
10200 Sunset Drive
Miami, FL 33173


ADP TotalSource Payroll
10200 Sunset Drive
Miami, FL 33173


Alex E. Jones
c/o Jordan & Ortiz, P.C.
Attn: Shelby Jordan
500 North Shoreline Blvd, STE 900
Corpus Christi, TX 78401


Ally Auto
PO Box 9001948
Louisville, KY 40290


Amazon Marketplace
Amazon Payments, Inc.
410 Terry Ave N.
Seattle, WA 98109


Amazon Web Services
410 Terry Avenue North
Seattle, WA 98109-5210


American Express
PO Box 650448
Dallas, TX 75265-0448


American Media/Reality Zone
PO Box 4646

Thousand Oaks, CA 91359


Andrews, Christopher
210 N. Beyer Stree
Marion, TX 78124


AT&T
PO Box 5001
Carol Stream, IL 60197-5001


Atomial, LLC
1920 E. Riverside Drive
Suite A-120 #124
Austin, TX 78741


AWIO Web Services LLC
6608 Truxton Ln
Raleigh, NC 27616


Balcones Recycling Inc.
PO Box 679912
Dallas, TX 75267


Biodec, LLC
901 S. Mopac Expressway, Building 4, Ste 285
Austin, TX 78746


Blott, Jacquelyn
200 University Boulevard
Suite 225 #251
Round Rock TX 78665


Brennan Gilmore
c/o Civil Rights Clinic
ATTN: Andrew Mendrala
600 New Jersey Avenue, NW
Washington, DC 20001


Campco
4625 W. Jefferson Blvd
Los Angeles, CA 90016

Carlee Soto-Parisi
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Carlos Soto
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Chelsea Green Publishing
85 North Main Street Ste 120
White River Junction, VT 05001


Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive Ste. 301
Coral Springs, FL 33065


City of Austin
PO Box 2267
Austin, TX 78783


Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609


Constant Contact, Inc.
1601 Trapelo Road
Watham, MA 02451


CustomTattoNow.com
16107 Kensington Dr #172
Sugar Land, TX 77479


David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

Deese, Stetson
328 Greenland Blvd. #81
Death Valley, CA 92328


DirectTV
PO Box 5006
Carol Stream, IL 60197


Dona Soto
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


eBay
2025 Hamilton Avenue
San Jose, CA 95125


eCommerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405


Edgecast, Inc.
Dept CH 18120
Palatine, IL 60055


Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06807


EPS, LLC
17350 State Hwy 249, Ste 220, #4331
Houston, TX 77064


Erica Lafferty
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


ERM Protect

800 South Douglas Road, Suite 940N
Coral Gables, FL 33134


Frost Insurance Agency
401 Congress Avenue, 14th Floor
Austin ,TX 78701


Francine Wheeler
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


FW Robert Broadcasting Co
2730 Loumor Ave
Metairie, LA 70001


Gabriela Tolentino
5701 S Mopac Expy
Austin, TX 78749


Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604


Gracenote
29421 Network Place
Chicago, IL 60673-1294


Greenair, Inc
23569 Center Ridge Road
Westlake, OH 44145


Haivision Network Video
Deot CH 19848
Palatine, IL 60055-9848


Ian Hockley
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604

Impact Fire Services, LLC
PO Box 735063
Dallas, TX 735063


Independent Publishers Group
PO Box 2154
Bedford Park, IL 60499-2154


Iron Mountain, Inc
PO Box 915004
Dallas, TX 75391-5004


Jacqueline Barden
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Jennifer Hensel
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Jeremy Richman
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


JCE SEO
6101 Broadway
San Antonio, TX 78209


Jillian Soto
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404


KI4U.com
212 Oil Patch Lane
Gonzales, TX 78629-8028


Konica Minolta Premier Finance
PO Box 41602
Philadelphia, PA 19101-1602


Larry Klayman, Esq.
7050 W. Palmetto Park Rd
Boca Raton, FL, 33433


Leonard Pozner
c/o Kaster Lynch Farrar & Ball LLP
1117 Herkimer
Houston, TX 77008


Lincoln-Remi Group, LLC
1200 Benstein Rd.
Commerce Twp., MI 48390


LIT Industrial
1717 McKinney Ave #1900
Dallas, TX 75202


Logo It, LLC
820 Tivy Street
Kerrville, TX 78028


Lumen/Level 3 Communications
PO Box 910182
Denver, CO 80291-0182


Marcel Fontaine
c/o Kaster, Lynch, Farrar & Ball LLP
1117 Herkimer
Houston, TX 77008

Mark Barden
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Magento
PO Box 204125
Dallas, TX 75320-4105


Microsoft Bing Ads
c/o Microsoft Online, Inc.
P.O. Box 847543
1950 N Stemmons Fwy, Ste 5010
Dallas, TX 75207


Miller, Sean
PO Box 763
Wyalusing, PA 18853


mongoDB Cloud
1633 Broadway
39th Floor
New York, NY 10019


MRJR Holdings, LLC
PO Box 27740
Las Vegas, NV 89426


Music Videos Distributors
203 Windsor Rd
Pottstown, PA 19464


MVD Entertainment Group
203 Windsor Rd
Pottstown, PA  19464


Neil Heslin
c/o Kaster Lynch Farrar & Ball LLP
1117 Herkimer
Houston, TX 77008

Nicole Hockley
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


NetSuite Inc
Bank of America Lockbox Services
Chicago, IL 60693


New Relic
188 Spear Street, Suite 1200
San Francisco, CA 94105


Newegg.com
9997E. Rose Hills Road
Whittier, CA 90601


One Party America, LLC
6700 Woodlands Parkway, Suite 230-309
The Woodlands, TX 77382


Orkin, Inc.
5810 Trade Center Drive, Suite 300
Austin, TX 78744


Pattison Law Firm, P.C.
501 IH-35
Austin, TX 78702


Payarc
411 West Putnam Avenue, Ste 340
Greenwich, CT 06830


Paymentus
18390 NE 68th St
Redmond, WA 98052


Paz Law, LLC
1021 Orange Center Road

Orange, CT 06477


Perfect Imprints.com
709 Eglin Pkwy NE
Fort Walton Beach, FL 32547


Perkins, Wes
General Delivery
Lockhart, TX 78644


Poulsen, Debra
112 Eames St.
Elkhorn, WI  53121


PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746


Protection 1 Alarm
PO Box 219044
Kansas City, MO 64121


Percision Oxygen
13807 Thermal Dr
Austin, TX 78728


Perfect Imprints.com
709 Eglin Pkwy NE
Fort Walton Beach, FL 32547


Pipe Hitters Union, LLC
PO Box 341194
Austin, TX 78734


Post Hill Press, LLC
8115 Isabella Lane, Ste. 4
Brentwood, TN 37027

Pullman & Comley, LLC
850 Main Street
Bridgeport, CT 06601-7006


Power Reviews, Inc.
1 N. Dearborn Street
Chicago, IL 60602


Precision Camera
2438 W Anderson Ln
Austin, TX 78757


Private Jets, LLC
1250 E. Hallandale Beach Blvd, Suite 505
Hallandale, FL 33009


Public Storage
2301 E. Ben White Blvd
Austin, TX 78741-7199


Randazza Legal Group, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117


RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054


Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864


Renaissance
PO Box 8036
Wisconsin Rapids, WI 54495-8036


Resistance Manifesto


Restore America

PO Box 147
Grimsley, TN 38565


Robert Parker
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Scarlett Lewis
c/o Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008


Security Bank of Crawford
6688 North Lone Star Parkway
PO Box 90
Crawford, TX 76638


Simon & Schuster
PO Box 70660
Chicago, IL 60673


SintecMedia NYC, Inc. DBA Operative
PO Box 200663
Pittsburgh, PA 15251-2662


Skousen, Joel
PO Box 565
Spring City, UT 84662


Skyhorse Publishing
307 West 36th Street, 11th Floor
New York, NY 10018


Sparkletts & Sierra Springs
PO Box 660579
Dallas, TX 75266-0579


SLNT
30 N Gould St, Ste 20647
Sheridan, WY 82801

Spectrum Enterprise aka Time Warner Cable
PO Box 60074
City of Industry, CA 91716


Stamps.com
1990 E Grand Ave.
El Segundo, CA 90245


Stone Edge Technologies, Inc
660 American Avenue, Suite 204
King of Prussia, PA 19406


Stratus Technologies
5 Mill & Main Place, Suite 500
Maynard, MA 01754


Studio 2426, LLC
1920 E. Riverside Drive, Suite A120, #222
Austin, TX 78741


Synergy North America, Inc
11001 W. 120th Avenue, Suite 400
Broomfield, CO 80021


TD Canada Trust
421 7th Avenue SW
Calgary, AB T2P 4K9, Canada


Texas Disposal Systems, Inc
PO Box 674090
Dallas, TX 75267-4090


Texas Gas Service
PO Box 219913
Kansas City, MO 64121


Texas Comptroller
PO Box 13003
Austin, TX 78711

Textedly
133 N. Citrus Ave., Suite 202
Los Angeles, CA 91723


The Creative Group
c/o Robert Half
2884 Sand Hill Road, Ste 200
Menlo Park, CA 94025


The Hartford
PO Box 14219
Lexington, KY 40512


The Steam Team, Inc
1904 W. Koeing Lane
Austin, TX 78756-1211


Third Coast Graphics, Inc
110 Del Monte Dr.
Friendswood, TX 77546


Travelers
PO Box 660317
Dallas, TX 75266-0317


Travis County
PO Box 149328
Austin, TX 78714


Thomas, David
79 Malone Hill Road
Elma, WA 98541


U.S. Legal Support
PO Box 4772
Houston, TX 77210


Uline Shipping Supply
12575 Uline Drive

Pleasant Prarie, WI 53158


Vazquez, Valdemar Rodriguez
145 Quail Ridge Drive
Kyle TX 78640


Verizon
PO Box 660108
Dallas, TX 75266


Verizon Edgecast
13031 West Jefferson Blvd, Building 900
Los Angeles, CA 90094


Veronique De La Rosa
c/o Kaster Lynch Farrar & Ball LLP
1117 Herkimer
Houston, TX 77008


Vultr
14 Cliffwood Avenue, Suite 300
Matawan, NJ 07747


Waste Connections Lone Star, Inc.
PO Box 17608
Austin, TX 78760


Water Event - Pure Water Solutions
1310 Missouri St
South Houston, TX 77587


Watson, Paul
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom


Westwood One, LLC
3542 Momentum Place
Chicago, IL 60689-5335

William Sherlach
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


William Aldenberg
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Willow Grove Productions
1810 Rockcliff Road
Austin, TX 78746


Wisconsin Dept. of Revenue
PO Box 3028
Milwaukee, WI 53201-3028


WMQM-AM 1600
21 Stephen Hill Road
Atoka, TN 38004


WWCR
1300 WWCR Avenue
Nashville, TN 37218-3800


Your Promtional Products, LLC
133 North Friendswood STE 186
Friendswood, TX 77546


Zendesk, Inc
989 Market Street
San Francisco, CA 94103


Zoom US
55 Almaden Blvd, 6th Floor
San Jose, CA 95113

**Fill in this information to identify the case and this filing:**

Debtor Name  Free Speech Systems LLC

United States Bankruptcy Court for the:  Southern _____ District of  Texas ____
                                                                    (State)

Case number (if known):  22-60043 _____

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors      12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐  *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐  *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐  *Schedule H: Codebtors* (Official Form 206H)

☐  *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐  Amended *Schedule* ____

☒  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐  Other document that requires a declaration_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   07/29/2022              **X** _____
              MM / DD / YYYY                    Signature of individual signing on behalf of debtor

                                       Jeffrey Shulse
                                       Printed name

                                       Business Manager
                                       Position or relationship to debtor

000096

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FREE SPEECH SYSTEMS LLC | ) | Case No. 22 - __60043__ |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |

**CORPORATE OWNERSHIP STATEMENT AND REPORT REGARDING VALUE,**
**OPERATIONS AND PROFITABILITY OF ENTITIES IN WHICH THE ESTATE OF**
**THE DEBTOR HOLDS A SUBSTANTIAL AND CONTROLLING INTEREST**

The above-captioned Debtor submits this statement and report providing the information required by Bankruptcy Rule 7007.1 and the information required by Bankruptcy Rule 2015.3 as follows:

**<u>Corporate Ownership Statement</u>**

No corporation directly or indirectly owns 10% or more of any c lass of the Debtor's equity interests.

**<u>Report of Value, Operations and Profitability</u>**

The Debtor has no interests in any entity that is not a publicly traded corporation or debtor in a chase under title 11 of the United States Code.

**<u>Verification</u>**

The undersigned verifies under the penalty of perjury that the above information is true and correct.

Dated: July 29, 2022           By: _W. Marc Schwartz_____
                                              W. Marc Schwartz

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 22-__60043____ |
| FREE SPEECH SYSTEMS, LLC, | ) |
| | ) Chapter 11 (Subchapter V) |
| Debtor. | ) |
| | ) |

**DEBTOR'S EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDERS (I)**
**AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105,**
**361, AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY**
**PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-**
**PETITION SECURED LENDER**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED, IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 14 DAYS TO ANSWER, IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

RELIEF IS REQUESTED NOT LATER THAN AUGUST 3, 2022.

The above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS"), in the

above-referenced chapter 11 case, hereby files this emergency motion (the "Motion") seeking an

order from the Court (i) authorizing the use of cash collateral pursuant to Sections 105, 361, and 363

of the Bankruptcy Code and Bankruptcy Rule 4001(b); and (ii) granting adequate protection to the Debtor's pre-petition secured lenders. In support of the Motion, the Debtor submits and incorporates by reference the *Declaration of Marc Schwartz in Support of First Day Motions* (the "First Day Declaration"), filed concurrently herewith. In further support of the Motion, the Debtor respectfully represents as follows:

### JURISDICTION AND VENUE

1.     On July 29, 2022 (the "Petition Date"), the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of Title 11 of the United States Code §§ 101, *et seq.* (the "Bankruptcy Code").

2.     The Debtor continues in the possession of its property and is operating and managing its businesses as debtor and debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code.

3.     No request for a trustee or examiner has been made. No statutory committee of creditors has been appointed.

4.     This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The statutory bases for the relief sought in this Motion are 11 U.S.C. §§ 105, 361, and 363 and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure.

### FSS' BACKGROUND[1]

6.     Alex Jones began his career in the broadcasting industry fresh out of high school. Austin Public Access provided the forum for Alex's first broadcast.  In 1996 he transitioned to talk

---

[1] Additional factual background and information regarding the Debtor and its operations is set forth in the *Declaration of W. Marc Schwartz in Support of Voluntary Petition and First Day Motions*

000099

radio.  After leaving talk radio in 1999, he started broadcasting over the internet with a handful of employees.  Revenue was largely generated from advertising and the sale of books, T-shirts, and videos.

7.      What began as a family business continued to expand and in 2007 FSS was formed. The business continued to grow, adding a full blown studio, and employing over 60 people.  By 2013, FSS started selling dietary supplements to its growing listener base.

8.      Despite the rapid growth in the scale, diversity of operations and revenue, FSS remained a family run business and did not retain professional management or install professional management systems.

9.      FSS is presently engaged in the business of producing and syndicating Jones' radio and video talk shows and selling products targeted to Jones' loyal fan base via the Internet. Today, FSS produces Alex Jones' syndicated news/talk show (The Alex Jones Show) from Austin, Texas, which airs via the Genesis Communications Network on over 100 radio stations across the United States and via the internet through websites including Infowars.com.

10.     On its Infowars.com[2] website today, FSS makes available to customers dietary supplements, ranging from Vitamin D3 Gummies, Ultimate Immune Support Pack, Pollen Block, and other health products, including Tea Tree Shampoo. The website also has available books, t-shirts and other products Jones advertises during his radio talk show. The vast majority of FSS revenues comes from sales of dietary supplements which have traditionally been supplied by PQPR Holdings Limited, LLC ("PQPR"), an affiliated entity.

11.     As of July 1, 2022, FSS employed a workforce of 58 individuals, the majority of whom had direct reporting relationship to Alex Jones. In one building in Austin, Texas, FSS has four studios.

_____

[2] FSS licenses the Inforwars.com domain and trademark for InfoWars from InfoW, LLC.

3

This is the building where Jones produces his shows, including The Alex Jones Show. An adjacent building contains administrative offices and customer support. In a separate location in Austin, Texas, FSS has a building where warehousing and product sales fulfillment takes place. All of the studios and offices are in leased space.

12.     FSS has a unique audience that is highly loyal to Alex Jones and purchases products based on Alex Jones' credibility. Product sales from Infowars.com stores are a significant source of revenue for FSS. Approximately 80% of FSS' revenue is derived from product sales. Of the remainder, 11% is historically from advertising and the balance from a variety of sources.

13.     Through its online sales channel, FSS currently sells (i) dietary supplements purchased by PQPR, (ii) dietary supplements purchased by FSS, and (i) books, DVD's, t-shirts, and other merchandise purchased by FSS.  The allocation of proceeds from the sale of products after credit card processing charges varies depending upon which of the above categories the product falls under, PQPR receives a fee for of ten percent of the net proceeds (the proceeds from the sale of the products less processing charges, as a royalty for introducing the supplement and vitamin market to FSS.

14.     Due to the content of Alex Jones' shows, Jones and FSS have faced an all-out ban of Infowars from mainstream online spaces. Shunning from financial institutions and banning Jones and FSS from major tech companies began in 2018. Today, Facebook, Twitter, YouTube, Spotify, PayPal, and Apple have banned Infowars and Jones. Since being deplatformed by most mainstream commercial entities in 2018, FSS has had to operate in a harsh and unfriendly commercial environment.

15.     FSS purchased to sell on its website two categories of products: (a) dietary supplements ("Supplements"), and (b) books, DVDs, t-shirts, and other merchandise ("Non-Supplements"). FSS relied on PQPR as no other vendor would supply the Supplements for Jones to

4

advertise on his shows. PQPR ordered and paid for Supplements, which it marked up, and then sold to FSS. Jones would publicize the Supplements on his show and FSS and/or PQPR fulfilled the orders to ship to its customers.

16.    As to Non-Supplements, FSS purchased the products, sold them, and fulfilled the sale through its own employees from its warehouse in Austin. Depending on whether a Supplement or Non-Supplement was sold, FSS and PQPR split the cost of the sale on an agreed to formula.

17.    Since 2018 FSS has had difficulty finding third parties willing and able to fulfill product sales.  In the past, both FSS and PQPR attempted to provide fulfillment services for product sales.  Recently, FSS employed a fulfillment company to take over this function. All former FSS employees responsible for fulfillment have been hired by this company.  The fulfillment company charges FSS a flat fee per order regardless of size.  Historically, fulfillment has cost an average of ten percent of sales, without considering payroll, the new agreement is estimated to cost sixteen percent of sales.

## PQPR INDEBTEDNESS

18.    As discussed above, PQPR ordered and paid for Supplements which it marked up and then sold to FSS. As a result of FSS's inability to pay PQPR in full for the PQPR merchandise over several years, FSS became indebted to PQPR in a significant amount by 2020. The parties memorialized the indebtedness between the parties in 2020.

19.    The indebtedness to PQPR had accrued over a period of years from the sale of PQPR products through the Debtor's internet platform, generated by the Debtor and Alex Jones' sponsorship of those products.  The PQPR Note balance represents the unpaid share of the proceeds from product sales by PQPR to FSS over a four year period for which the Debtor did not fully remit the proceeds to PQPR.

000102

20.     On or about August 13, 2020, the Debtor executed that certain Promissory Note in favor of PQPR in the original principal amount of $29,588,000.00 (the "PQPR Note"). A security agreement of the same date granted PQPR a security interest in all of the Debtor's personal property assets, including but not limited to the Debtor's tangible and intangible property, accounts, and proceeds derived from those assets (the "PQPR Security Agreement"). PQPR filed a UCC-1 financing statement with the Texas Secretary of State that on November 18, 2020.

21.     The PQPR Security Agreement secures the obligations under the PQPR Note and any future advances owing by the Debtor to PQPR.  Specifically, "Obligations" is defined in the PQPR Security Agreement to include "any and all other obligations of Debtor to [PQPR] of any kind or character, now owed or hereafter arising."

22.     Subsequent to the date of the PQPR Note, the Debtor accrued additional indebtedness to PQPR representing a portion of PQPR's share of the proceeds from product sales from the date of the PQPR Note through November 10, 2021, for which the Debtor did not fully remit the required proceeds to PQPR.  The Debtor executed a second promissory note ("Second PQPR Note" and together with the PQPR Note, collectively the "PQPR Notes") in the amount of $25,300,000.  The Second PQPR Note is also secured by the PQPR Security Agreement.

23.     As of the Petition Date, $53,655,082.29 of principal and $11,794,19 of interest are due and owing under the PQPR Notes.

## **RELIEF REQUESTED**

24.     Cash collateral is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of

6

rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title." [6] 11 U.S.C. § 363(a).

25.     11 U.S.C. § 363(c)(2) states as follows:

> The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>
>> (A)        each entity that has an interest in such cash collateral consents; or
>> (B)        the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

26.     The Debtor is in possession of certain funds which are not proceeds of PQPR's collateral.  Accordingly, the Debtor does not concede that those funds constitute cash collateral of PQPR.  Nevertheless, net proceeds received by the Debtor from online merchandise sales including PQPR products are PQPR's cash collateral.

27.     The Debtor requires the use of cash collateral to pay reasonable and necessary operating expenses, including, but not limited to, employee payroll, rent, utilities, inventory purchases, lease payments, marketing, taxes, and insurance. Those uses required in the next fourteen (14) days from the date of the emergency hearing are set forth on the budgets attached hereto as **Exhibit A** and incorporated herein by reference. The Debtor's proposed emergency use of cash collateral is necessary to preserve the value of the Debtor's estate for the benefit of all creditors, including the PQPR, and any other secured creditors purporting to hold an interest in the Debtor's cash collateral during the first fourteen (14) days of the Chapter 11 Cases (the "Interim Period"). The Debtor also requests that continued use of cash collateral is equally necessary to preserve the value of the Debtor's assets and rights of all of the constituencies with claims or interests in this Chapter 11 Case.

7

28.      Section 363 of the Bankruptcy Code authorizes a debtor to use cash collateral if those parties having an interest in such cash collateral consent or the court authorizes the use.  *See* 11 U.S.C. § 363(c)(2). The use of cash collateral, however, may be prohibited or conditioned, upon proper request, as necessary to adequately protect any interest in cash collateral. *See* 11 U.S.C. §363(e).

29.      A court may authorize the use of cash collateral upon showing that those with an interest in the cash collateral are adequately protected. *In re Las Torres Dev., L.L.C.*, 413 B.R. 687, (Bankr. S.D. Tex. 2009) ("in order for this Court to authorize the use of cash collateral, the Lender must be adequately protected); *In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) (A debtor requesting court approval to use cash collateral has the burden of proof as to the issue of "adequate protection".) Adequate protection requires examination of the creditor(s)' aggregate collateral position, not simply protection of its lien on cash. Adequate protection may be provided by granting replacement or additional liens "to the extent [that the use of cash collateral] results in a decrease in the value of [an] entity's interest in property." *See* 11 U.S.C. § 361(2). Authorizing a debtor to use cash collateral on an interim basis is appropriate where, as here, continuing the business as a going concern will cause the generation of future revenues upon which the secured lender is granted replacement liens. *See, e.g., In re Neise, Inc.,* 16 B.R. 600 (Bankr. D. Fla. 1981); *In re Certified Corp.*, 51 B.R. 768 (Bankr. D. Haw. 1985); *In re Post- Tron Systems, Inc.*, 106 B.R. 345 (Bankr. D.R.I. 1989).

30.      By authorizing the Debtor to use cash collateral, the Court will place the Debtor in a position to fund its operating expenses and to operate as a going concern for the immediate future. The Debtor needs to use cash collateral in order to, *inter alia*, pay its employees, suppliers, and meet other on-going business obligations. Without the authority to use cash collateral, the Debtor will be unable to fund its business operations in a manner that will allow the Debtor to continue to operate, to the detriment of *all* of the Debtor's creditors, including the lenders referred to herein and the pool

000105

of unsecured creditors. Furthermore, without the ability to fund continuing operations, the Debtor and its estate will suffer immediate and irreparable harm. For example, employees will not continue to provide services if they are not paid the wages for which they have already worked, and vendors will not continue to provide necessary services or supplies if they are not paid. Therefore, the Debtor seeks the emergency relief requested herein.

31.  Attached to this Motion is a proposed form of the Interim Cash Collateral Order (the "Interim Cash Collateral Order") that authorizes the Debtor's use of cash collateral.

32.  The proposed offer of adequate protection on an interim basis is set forth in the attached proposed Interim Cash Collateral Order and incorporated by reference herein for the purpose of setting forth the proposed offer of adequate protection for lenders. It includes replacement liens solely to the extent of any validly perfected, unavoidable security interest as of the Petition Date, and a priority administrative claim to the extent of the diminution of value of each lender's collateral, if any, and failure of other forms of adequate protection provided by the Debtor. As described further in the proposed Interim Cash Collateral Order, the proposed replacement liens and priority administrative claim shall be subject to a carve-out for unpaid fees owed to the clerk of this Court or the United States Trustee, and court-approved administrative expense claims of estate professionals.

33.  The Debtor believes that the terms of the proposed Interim Cash Collateral Order as set forth above are fair and reasonable under the circumstances. The Debtor asserts that the value of PQPR's cash collateral will not diminish as a result of the use of cash in this case. The value of PQPR's interest in cash may fluctuate, but such value should not diminish, other than minimally, over the next fourteen (14) days, the period of interim relief requested.

34.  The Debtor believes that PQPR is entitled to the protections set forth in the proposed Interim Cash Collateral Order. The adequate protection provisions have been drafted to provide

000106

protection without taking undue or inappropriate value from the estate or its unsecured creditors. Given that the interests of the lenders will be adequately protected, it is in the best interest of the Debtor, its estate, and all of their creditors to be able to continue operations during the Interim Period and for the Debtor to be authorized to use cash collateral as requested herein.

35.     Therefore, the Debtor respectfully requests that it be authorized to use cash collateral as proposed herein for the purposes of paying necessary business expenses as allowed by Section 363 of the Bankruptcy Code, and that the Court grant PQPR a replacement lien on post-petition assets, as allowed by Sections 361, and/or 363 of the Bankruptcy Code, consistent with the terms and provisions contained in this Motion. The Debtor requests that this relief be granted on both an interim and final basis.

## RESERVATION OF RIGHTS

36.     The Debtor reserves any and all rights in connection with the Heslin\Lewis Suit. Nothing contained herein shall operate as a waiver of any of the Debtor's claims, rights or remedies.

## NO PRIOR REQUEST

37.     No previous request for the relief sought herein has been made to this Bankruptcy Court or any other court.

[*Remainder of Page Intentionally Left Blank*]

000107

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests the Court (i) authorize the use of cash collateral pursuant to Sections 105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b); (ii) grant adequate protection to the pre-petition secured lenders; and (iii) grant such other and further relief as the Court may deem proper.

Respectfully submitted this 29th day of July, 2022.

**LAW OFFICES OF RAY BATTAGLIA, PLLC**

/s/*Raymond W. Battaglia*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Counsel to the Debtor and Debtor-In-Possession*

-and-

**SHANNON & LEE LLP**

/s/*Kyung S. Lee*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

## CERTIFICATE OF ACCURACY

I hereby certify that the forgoing statements are true and accurate to the best of my knowledge and belief. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

/s/ *Raymond W. Battaglia*

11

000108

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date of filing, a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service, (b) by U.S.P.S. first class mail on all parties indicated in the attached service list, and (c) the following parties by email:

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Cliff Walson
Walsont Bowlin Callendar, PLLC
4199 San Filipe Street, STE 300
Houston, TX 77027
cliff@wbctrial.com

Jon Maxwell Beatty
The Beatty Law Firm PC
1127 Eldridge Pkwy, Suite 300, #383
Houston, TX 77077
max@beattypc.com

*/s/ Raymond W. Battaglia*

## USPS Service List

Twenty Largest Unsecured Creditors

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

eCommerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

000110

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

Parties Claiming Interest or Lien Affected

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

Parties Filing Notice of Appearance

N/A

Subchapter V Trustee

N/A (Not Yet Appointed)

U.S. Trustee

Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

Additional Notice Parties

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

000111

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | |
|---|---|
| In re: | Case No. 22- 60043 |
| FREE SPEECH SYSTEMS, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | |

## INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion").   In the Motion, the Debtor requested, *inter alia*, entry of this interim order (this "Order") pursuant to Sections 105, 361, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein.  The Court, having considered the Motion, and having held an interim hearing on the Motion on August ___, 2022 (the "Interim Hearing"), and having considered the evidence presented or proffered and the statements and representations of the parties on the record at the Interim Hearing; and all objections, if any, to the entry of this Interim Order having been resolved or overruled; and after due deliberation and consideration and sufficient cause appearing therefor;

1.      The Chapter 11 Case. On July 29, 2022 (the "Petition Date") the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11

of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas (this "Court").

2.      <u>Debtor-in-Possession</u>. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code. To date, no trustee or examiner has been appointed in this Case. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

3.      <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and the Local Rules of this Court (the "<u>Local Rules</u>").

4.      <u>Committee Formation</u>.      To date, no official committee (a "<u>Committee</u>") of unsecured creditors, equity interest holders, or other parties in interest has been appointed in the Case.

5.      <u>Notice</u>. On July 29, 2022, the Debtor served copies of the Motion and notice of the Interim Hearing to all creditors and parties in interest entitled to such notice in compliance with Bankruptcy Rules 2002, 4001, 9014, and the Local Rules, including: (i) the Office of the United States Trustee for this District, (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtor's estate, (iii) PQPR Holdings Limited, LLC Trust ("<u>PQPR</u>"), and (vi) any other secured parties of record. Under the circumstances, such notice of the Interim Hearing and the emergency relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rule

2

4001 and the Local Rules, and no other or further notice of the Interim Hearing or the relief granted in this Interim Order is necessary or required.

6.      <u>Immediate Need for Use of Cash Collateral</u>.  The Debtor asserts that an immediate and critical need exists for the Debtor to use Cash Collateral in order to continue the operation of its business. Without such use of Cash Collateral, the Debtor asserts that it will not be able to pay post-petition direct operating expenses and obtain goods and services needed to carry on its business in a manner that will avoid irreparable harm to the Debtor's estate. The Debtor further asserts that its ability to use Cash Collateral is necessary to preserve and maintain the going concern value of the Debtor's estate.

7.      <u>Conditional Consent to Use of Cash Collateral</u>. The Debtor seeks authorization to use Cash Collateral to pay the Debtor's ordinary and necessary operating expenses set forth in the budget attached to the Motion as Exhibit A (the "<u>Budget</u>") for the period (the "<u>Interim Period</u>") from the Petition Date through and including August 15, 2022 (the "<u>Termination Date</u>").

8.      <u>Good Cause/Fair and Reasonable Terms</u>. Good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the business and operations of the Debtor and permit the Debtor to maintain the going concern value of its business. The use of Cash Collateral authorized hereunder is necessary, essential, and appropriate and is in the best interest of, and will benefit, the Debtor, its creditors, and the Debtor's bankruptcy estate as it will, among other things, provide the Debtor with the necessary liquidity to (i) avoid immediate and irreparable harm to the Debtor and its bankruptcy estate; and (ii) preserve and maximize the value of the Debtor's business and assets. The terms and conditions of the use of Cash Collateral and the

3

security interests, liens, rights, and priorities granted to the lenders hereunder are fair and appropriate under the circumstances.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.    <u>Motion Granted</u>. The Motion is hereby granted on an interim basis as set forth herein. Any objections to the entry of this Order that have not been previously resolved or withdrawn are hereby overruled on their merits.

2.    <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.    <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>").  All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.    <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral to pay the items set forth in the Budget, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the

4

overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.      No Payments to Insiders. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

6.      Further Authorization.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

7.      Taxes.  Nothing in this Order shall be construed to grant PQPR (the "Pre-Petition Lender") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

8.      Adequate Protection – Replacement Liens.       As adequate protection for any diminution in value of each of the Pre-Petition Lender's interest in the Debtor's collateral, if any, including Cash Collateral, resulting from the imposition of the automatic stay with respect to the Collateral and/or the Debtor's use, sale or lease of the Collateral during the Case (the "Diminution in Value"), the Pre-Petition Lender is hereby granted, effective  as of the Petition Date, valid, binding, enforceable, and automatically perfected liens (the "Replacement Liens") in  all  currently owned or hereafter acquired property and assets of the Debtor, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising (excluding

5

avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code), and all proceeds and products of the foregoing (collectively, the "Adequate Protection Collateral"). The Replacement Liens granted pursuant to this Order shall have the same priority as each of the Pre-Petition Lender's properly perfected unavoidable pre-petition liens but shall be subject to the Carve Out.

9.      Adequate Protection – Priority Administrative Claim.  As additional partial adequate protection for the Debtor's use of Cash Collateral, to the extent of any Diminution in Value and a failure of the other adequate protection provided by this Order the pre-petition lenders shall have an allowed priority administrative expense claim in this Case and any successor case as provided in and to the fullest extent allowed by Sections 503(b) and 507(b) of the Bankruptcy Code and otherwise (the "Adequate Protection Priority Claim").

10.      Carve Out. The Replacement Liens and Adequate Protection  Priority Claim granted herein shall be subject to (a) unpaid fees payable to the Clerk of the Bankruptcy Court or the United States Trustee; (b) subject to the Budget, court-approved administrative expense claims of estate professionals, employed pursuant to order of this Court (collectively, "Estate Professionals"),  for incurred but unpaid fees, expenses and other costs (all such carve-out amounts referenced above, collectively, the "Carve Out").

11.      Subsequent Modification of Order. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

6

12.    <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on August _____ 2022, at __:___.m. Central time.  Objections to the entry of a final order approving the Motion shall be filed and served on counsel for the Debtor and pre- petition lenders not later than 4:00 p.m. Central time on August _____ 2022.

Dated: August ___, 2022

                                         _____

                                         UNITED STATES BANKRUPTCY JUDGE

000118

## EXHIBIT A

**13-Week  Budget**

000119

**Free Speech Systems LLC**
**Forecasted 13 Week Cash Flow Budget**
Between July 30, 2022 and October 28, 2022

| Line Item | 1 (07/30–08/05) | 2 (08/06–08/12) | 3 (08/13–08/19) | 4 (08/20–08/26) | 5 (08/27–09/02) | 6 (09/03–09/09) | 7 (09/10–09/16) | 8 (09/17–09/23) | 9 (09/24–09/30) | 10 (10/01–10/07) | 11 (10/08–10/14) | 12 (10/15–10/21) | 13 (10/22–10/28) | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | |
| Product Sales | $595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | $7,741,357.16 |
| Advertising | | | | 480,166.46 | | | | 480,166.46 | | | | 480,166.46 | | 1,440,499.38 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 40,836.21 |
| **Total Income** | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 9,222,690.75 |
| **Selling & Product Costs** | | | | | | | | | | | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (990,017.27) |
| Repay PQPR Inventory | | (250,000.00) | | (500,000.00) | | | | | | | | | | (750,000.00) |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (348,346.07) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (102,853.59) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (1,238,617.15) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (309,654.29) |
| eCommerce Store Maintenance | (27,270.00) | | | | (27,270.00) | | | | (27,270.00) | | | | | (81,810.00) |
| Texas Sales Tax | (5,337.87) | | | | (5,337.87) | | | | (5,337.87) | | | | | (16,013.61) |
| **Total Cost of Goods Sold** | (262,569.67) | (479,961.80) | (229,961.80) | (729,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (229,961.80) | (3,837,326.97) |
| **Operating Expenses** | | | | | | | | | | | | | | |
| **Advertising & Promotion** | | | | | | | | | | | | | | |
| Advertising & Promotion | (3,041.98) | | | | (3,041.98) | | | | (3,041.98) | | | | | (9,125.93) |
| Print Media | (3,000.00) | | | | (3,000.00) | | | | (3,000.00) | | | | | (9,000.00) |
| Radio Show Advertising | (11,500.00) | | | | (11,500.00) | | | | (11,500.00) | | | | | (34,500.00) |
| **Total Advertising & Promotion** | (17,541.98) | | | | (17,541.98) | | | | (17,541.98) | | | | | (52,625.93) |
| **Computer/IT/IP Expense** | | | | | | | | | | | | | | |
| Internet & TV services | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | | (11,073.89) |
| Software License Fees | (140.80) | | | | (140.80) | | | | (140.80) | | | | | (422.40) |
| Server Hosting Service | (28,595.13) | | | | (28,595.13) | | | | (28,595.13) | | | | | (85,785.40) |
| CDN Video Cloud Storage | (55,728.00) | | | | (55,728.00) | | | | (55,728.00) | | | | | (167,184.00) |
| Satellite Service | (137,282.93) | | | | (137,282.93) | | | | (137,282.93) | | | | | (411,848.78) |
| Imaging License Fee | (9,201.25) | | | | (9,201.25) | | | | (9,201.25) | | | | | (27,603.75) |
| Software & Apps | (5,000.00) | | | | (5,000.00) | | | | (5,000.00) | | | | | (15,000.00) |
| Website Hosting | | | (266.50) | | | | (266.50) | | | | (266.50) | | | (799.50) |
| **Total Computer/IT/IP Expense** | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | | (719,717.72) |
| **Office & Administrative Expense** | | | | | | | | | | | | | | |
| Insurance | | | (2,166.50) | | | | (2,166.50) | | | | (2,166.50) | | | (6,499.50) |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (596.74) |
| Equipment Rental | (1,950.00) | | | | (1,950.00) | | | | (1,950.00) | | | | | (5,969.67) |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (27.31) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (3,645.97) |
| **Total Office & Administrative Expense** | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (328.46) | (10,239.71) |
| **Utilities** | | | | | | | | | | | | | | |
| Electricity | (256.19) | | | | (256.19) | | | | (256.19) | | | | | (768.58) |
| CAM Charges | | | (5,107.63) | | | | (5,107.63) | | | | (5,107.63) | | | (15,322.89) |
| HVAC | (20,364.16) | | | | (20,364.16) | | | | (20,364.16) | | | | | (61,092.48) |
| Water & Sewer | (1,708.55) | | | | (1,708.55) | | | | (1,708.55) | | | | | (5,125.66) |
| Gas Service | (132.09) | | | | (132.09) | | | | (132.09) | | | | | (396.28) |
| Pest Control | (244.65) | | | | (244.65) | | | | (244.65) | | | | | (733.95) |
| Waste Management | (351.81) | | | | (351.81) | | | | (351.81) | | | | | (1,055.43) |
| **Total Utilities** | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | | (84,495.27) |
| **Occupancy** | | | | | | | | | | | | | | |
| Rent | (33,408.51) | | | | (33,408.51) | | | | (33,408.51) | | | | | (100,225.53) |
| Office Security | (33,111.90) | | | | (33,111.90) | | | | (33,111.90) | | | | | (99,335.69) |
| Rent & Maintenance - Building | (1,777.19) | | | | (1,777.19) | | | | (1,777.19) | | | | | (5,331.56) |
| Janitorial | (5,983.33) | | | | (5,983.33) | | | | (5,983.33) | | | | | (17,950.00) |
| **Total Occupancy** | (72,280.93) | | | | (72,280.93) | | | | (72,280.93) | | | | | (216,842.78) |
| Supplies | (1,258.02) | | | | (1,258.02) | | | | (1,258.02) | | | | | (3,774.07) |

Free Speech Systems LLC

## Forecasted 13 Week Cash Flow Budget

Between July 30, 2022 and October 28, 2022

| Period | 07/30/2022- 08/05/2022 | 08/06/2022- 08/12/2022 | 08/13/2022- 08/19/2022 | 08/20/2022- 08/26/2022 | 08/27/2022- 09/02/2022 | 09/03/2022- 09/09/2022 | 09/10/2022- 09/16/2022 | 09/17/2022- 09/23/2022 | 09/24/2022- 09/30/2022 | 10/01/2022- 10/07/2022 | 10/08/2022- 10/14/2022 | 10/15/2022- 10/21/2022 | 10/22/2022- 10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Telephone | (18,337.88) | - | - | - | (18,337.88) | - | - | - | (18,337.88) | - | - | - | - | (55,013.65) |
| **Personnel Expenses** | | | | | | | | | | | | | | |
| Salaries & Wages - Base | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | (1,179,272.08) |
| Payroll Tax | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | (97,797.65) |
| Alex Jones Salary | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | (379,166.67) |
| **Total Personnel Expenses** | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | (1,656,236.39) |
| **Travel** | | | | | | | | | | | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (1,295.98) |
| Vehicle Leases | - | (1,470.56) | - | - | - | (1,470.56) | - | - | - | - | (1,470.56) | - | - | (4,411.68) |
| **Total Travel Expenses** | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (5,707.66) |
| **Total Operating Expenses** | (680,347.03) | (1,898.71) | (256,015.88) | (428.15) | (680,347.03) | (1,898.71) | (256,015.88) | (428.15) | (680,347.03) | (428.15) | (238,503.91) | (19,410.68) | (237,033.35) | (3,053,102.68) |
| **Non-Operating Expenses** | | | | | | | | | | | | | | |
| Payment on PQPR Note | (12,500.00) | (15,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (523,000.00) |
| AMEX Payment | (172,390.28) | - | (172,390.28) | - | (172,390.28) | - | (172,390.28) | - | (172,390.28) | - | (172,390.28) | - | - | (1,034,341.69) |
| **Total Other Expenses** | (184,890.28) | (15,500.00) | (199,890.28) | (27,500.00) | (199,890.28) | (27,500.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (55,000.00) | (1,557,341.69) |
| **Professional Fees** | | | | | | | | | | | | | | |
| CRO Fees | - | - | - | - | - | - | (52,992.00) | - | (35,328.00) | - | - | - | - | (88,320.00) |
| Financial Advisor Fee | - | - | - | - | - | - | (57,876.00) | - | (40,352.00) | - | - | - | - | (98,228.00) |
| Shannon & Lee LLP | - | - | - | - | - | - | (40,000.00) | - | (60,000.00) | - | - | - | - | (100,000.00) |
| Ray Battaglia | - | - | - | - | - | - | (24,000.00) | - | (24,000.00) | - | - | - | - | (48,000.00) |
| **Total Professional Fees** | - | - | - | - | - | - | (174,868.00) | - | (159,680.00) | - | - | - | - | (334,548.00) |
| **Total Cash Flow** | $ (529,176.72) | $ 101,269.75 | $ (87,237.70) | $ 320,906.77 | $ (544,176.72) | $ 339,269.75 | $ (289,605.70) | $ 793,406.77 | $ (731,356.72) | $ 313,240.31 | $ (97,225.73) | $ 774,424.24 | $ 76,635.11 | $ 440,373.41 |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | |
|---|---|
| In re: | ) Case No. 22- 60043 |
| | ) |
| FREE SPEECH SYSTEMS, LLC, | ) Chapter 11 (Subchapter V) |
| | ) |
| Debtor. | ) |
| | ) |

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER: (I) APPROVING
DEBTOR'S PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT FOR
FUTURE UTILITY SERVICES; (II) APPROVING ADEQUATE ASSURANCE
PROCEDURES; PROHIBITING UTILITY PROVIDERS FROM ALTERING,
REFUSING OR DISCONTINUING SERVICE; AND (IV) GRANTING RELATED
RELIEF**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED, IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER, IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

RELIEF IS REQUESTED NOT LATER THAN AUGUST 3, 2022.

The above-captioned Debtor and Debtor in Possession (collectively, the "Debtor" or "FSS") states the following in support of this motion (the "Motion"):[1]

## RELIEF REQUESTED

1.      By this Motion, the Debtor seeks entry of an order, substantially in the form attached hereto (the "Order"): (i) approving the Debtor's proposed adequate assurance of payment for future utility services; (ii) approving the Debtor's proposed procedures for resolving additional adequate assurance requests; (iii) prohibiting utility providers from altering, refusing or discontinuing service; and (iv) granting related relief.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtor confirms its consent to the entry of a final order.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## BACKGROUND

**A.      Case Background**

6.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.  The Debtor is operating its

---

[1] A description of the Debtor and its business, and the facts and circumstances supporting this Motion, are set forth in the Declaration of Marc Schwartz, Chief Restructuring Officer of the Debtor in Support of Chapter 11 Petition and First Day Pleadings (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.

businesses and managing its assets as Debtor in possession pursuant to Bankruptcy Code sections 1182(2).  No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and no official committee have been appointed or designated.

**B.**     **FSS' Background[2]**

7.      Alex Jones began his career in the broadcasting industry fresh out of high school. Austin Public Access provided the forum for Alex's first broadcast.  In 1996 he transitioned to talk radio.  After leaving talk radio in 1999, he started broadcasting over the internet with a handful of employees.  Revenue was largely generated from advertising and the sale of books, T-shirts, and videos.

8.      What began as a family business continued to expand and in 2007 FSS was formed. The business continued to grow, adding a full-blown studio, and employing over 60 people.  By 2013, FSS started selling dietary supplements to its growing listener base.

9.      Despite the rapid growth in the scale, diversity of operations and revenue, FSS remained a family run business and did not retain professional management or install professional management systems.

10.     FSS is presently engaged in the business of producing and syndicating Jones' radio and video talk shows and selling products targeted to Jones' loyal fan base via the Internet. Today, FSS produces Alex Jones' syndicated news/talk show (The Alex Jones Show) from Austin, Texas, which airs via the Genesis Communications Network on over 100 radio stations across the United States and via the internet through websites including Infowars.com.

---

[2] Additional factual background and information regarding the Debtor and its operations is set forth in the *Declaration of W. Marc Schwartz in Support of Voluntary Petition and First Day Motions*

000124

11.     On its Infowars.com[3] website today, FSS makes available to customers dietary supplements, ranging from Vitamin D3 Gummies, Ultimate Immune Support Pack, Pollen Block, and other health products, including Tea Tree Shampoo. The website also has available books, t-shirts and other products Jones advertises during his radio talk show. The vast majority of FSS revenues comes from sales of dietary supplements which have traditionally been supplied by PQPR Holdings Limited, LLC ("PQPR"), an affiliated entity.

12.     As of July 1, 2022, FSS employed a workforce of 58 individuals, the majority of whom had direct reporting relationship to Alex Jones. In one building in Austin, Texas, FSS has four studios.  This is the building where Jones produces his shows, including The Alex Jones Show. An adjacent building contains administrative offices and customer support. In a separate location in Austin, Texas, FSS has a building where warehousing and product sales fulfillment takes place. All of the studios and offices are in leased space.

13.     FSS has a unique audience that is highly loyal to Alex Jones and purchases products based on Alex Jones' credibility. Product sales from Infowars.com stores are a significant source of revenue for FSS. Approximately 80% of FSS' revenue is derived from product sales. Of the remainder, 11% is historically from advertising and the balance from a variety of sources.

14.     Through its online sales channel, FSS currently sells (i) dietary supplements purchased by PQPR, (ii) dietary supplements purchased by FSS, and (i) books, DVD's, t-shirts, and other merchandise purchased by FSS.  The allocation of proceeds from the sale of products after credit card processing charges varies depending upon which of the above categories the product falls under. PQPR receives a fee for of ten percent of the net proceeds (the proceeds from

---

[3] FSS licenses the Inforwars.com domain and trademark for InfoWars from InfoW, LLC.

the sale of the products less processing charges) as a royalty for introducing the supplement and vitamin market to FSS.

15.     Due to the content of Alex Jones' shows, Jones and FSS have faced an all-out ban of Infowars from mainstream online spaces. Shunning from financial institutions and banning Jones and FSS from major tech companies began in 2018. Today, Facebook, Twitter, YouTube, Spotify, PayPal, and Apple have banned Infowars and Jones. Since being deplatformed by most mainstream commercial entities in 2018, FSS has had to operate in a harsh and unfriendly commercial environment.

16.     FSS purchased to sell on its website two categories of products: (a) dietary supplements ("Supplements"), and (b) books, DVDs, t-shirts, and other merchandise ("Non-Supplements"). FSS relied on PQPR as no other vendor would supply the Supplements for Jones to advertise on his shows. PQPR ordered and paid for Supplements, which it marked up, and then sold to FSS. Jones would publicize the Supplements on his show and FSS and/or PQPR fulfilled the orders to ship to its customers.

17.     As to Non-Supplements, FSS purchased the products, sold them, and fulfilled the sale through its own employees from its warehouse in Austin. Depending on whether a Supplement or Non-Supplement was sold, FSS and PQPR split the cost of the sale on an agreed to formula.

18.     Since 2018 FSS has had difficulty finding third parties willing and able to fulfill product sales.  In the past, both FSS and PQPR attempted to provide fulfillment services for product sales.  Recently, FSS employed a fulfillment company to take over this function. All former FSS employees responsible for fulfillment have been hired by this company.   The fulfillment company charges FSS a flat fee per order regardless of size.  Historically, fulfillment

has cost an average of ten percent of sales, without considering payroll, the new agreement is estimated to cost sixteen percent of sales.

19.    The revenues generated from the Debtor's ongoing operations will form the basis of the subchapter v plan of reorganization the Debtor will be proposing in this case.

## DEBTOR'S UTILITY PROVIDERS

20.    In connection with the operation of its businesses and management of its properties, the Debtor obtains electricity, natural gas, telecommunications, internet, water, and other similar services (collectively, the "Utility Services") from a number of utility companies or brokers (collectively, the "Utility Providers"). A nonexclusive list of the Utility Providers and their affiliates that provide Utility Services to the Debtors on the Petition Date (the "Utility Services List") is attached hereto as Exhibit A.[4] The relief requested herein is with respect to all Utility Providers providing Utility Services to the Debtors.

21.    Uninterrupted Utility Services are essential to the Debtor's ongoing business operations, and hence the overall success of the chapter 11 case. The Debtor's business operations include multiple broadcast studios with significant and sensitive video, computer, electronic equipment at its facilities which require it to maintain uninterrupted power, electricity and network services, among other utilities. The Debtor's operations also require electricity for lighting, heating and air conditioning, which are critical to maintaining the appropriate environment at its media studio center. In addition, the Debtor occupies corporate offices in the management of its businesses. These offices require electricity, telecommunications and other similar services in order to operate. Should any Utility Provider refuse or discontinue service,

---

[4] The inclusion of any entity on, or the omission of any entity from, the Utility Services List is not an admission by the Debtor that such entity is, or is not, a utility within the meaning of Bankruptcy Code section 366, and the Debtor reserves all rights with respect to any such determination.

6

even for a brief period, the Debtor's business operations would be disrupted, jeopardizing the Debtor's ability to manage its reorganization efforts and significantly lowering the value of the Debtor's assets and estates. Accordingly, it is essential that the Utility Services continue uninterrupted during the chapter 11 case.

22.     To the best of the Debtor's knowledge, as of July 29, 2022, there are no defaults or arrearages with respect to the undisputed invoices for prepetition Utility Services.. To the best of the Debtor's knowledge, the Debtor does not have any existing prepayments with respect to any Utility Providers.

## PROPOSED ADEQUATE ASSURANCE

### *Adequate Assurance Deposit*

23.     The Debtor intends to pay post-petition obligations owed to the Utility Providers in a timely manner. Cash held by the Debtor and cash generated in the ordinary course of business will provide sufficient liquidity to pay the Debtor's Utility Service obligations in accordance with its prepetition practice.

24.     The Debtor submits that the Debtor's ability to pay for future utility services with cash on hand in accordance with its prepetition practices (the "Proposed Adequate Assurance") constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of Bankruptcy Code section 366.

### *Adequate Assurance Procedures*

25.     Any Utility Provider that is not satisfied with the Proposed Adequate Assurance may make a request for additional or different adequate assurance of future payment (each an "Additional Assurance Request") pursuant to the adequate assurance procedures set forth in the proposed Order (the "Adequate Assurance Procedures").

26.     The proposed Adequate Assurance Procedures are as follows:

7

Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments or otherwise must serve an Additional Assurance Request on the Notice Parties (as defined in the Order). An Additional Assurance Request may be made at any time.

Any Additional Assurance Request must: (i) be in writing; (ii) identify the location for which the Utility Services are provided; (iii) summarize the Debtor's payment history relevant to the affected account(s), including any security deposits; and (iv) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

Upon the Debtor's receipt of any Additional Assurance Request, the Debtor shall promptly negotiate with such Utility Provider to resolve such Utility Provider's Additional Assurance Request.

The Debtor may, without further order from the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and the Debtor may, in connection with any such agreement, provide such Utility Provider with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments or other forms of security if the Debtor believes that such adequate assurance is reasonable in its business judgment, subject to the terms of any cash collateral or other financing order entered by the Court; provided, however, that the Debtor shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in this chapter 11 case and the U.S. Trustee upon request.

If the Debtor and the Utility Provider are not able to reach an alternative resolution within 14 days of receipt of the Additional Assurance Request, the Debtor will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing"), pursuant to Bankruptcy Code section 366(c)(3). Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing or discontinuing Utility Services to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

In addition, if an amount relating to Utility Services provided post-petition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request additional adequate assurance pursuant to the Adequate Assurance Procedures.

27.     The Adequate Assurance Procedures sets forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtor to continue its business operations uninterrupted. More specifically, the Adequate Assurance Procedures permits a Utility Provider to object to the

Proposed Adequate Assurance by filing and serving an Additional Assurance Request upon certain notice parties. The Debtor, in its discretion, may then resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court. If the Additional Assurance Request cannot be resolved by mutual agreement, the Debtor may seek Court resolution of the Additional Assurance Request. Unless and until a Utility Provider files an objection or serves an Additional Assurance Request, such Utility Provider shall be: (i) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with Bankruptcy Code section 366; and (ii) forbidden to discontinue, alter or refuse services to, or discriminate against, the Debtor on account of any unpaid prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

***Subsequent Modifications***

28.     To the extent the Debtor discontinues any Utility Services, the Debtor may seek authority in its sole discretion to amend the Utility Services List to remove any Utility Provider. To the extent the Debtor identifies additional Utility Providers, the Debtor will serve on such Utility Provider, within two (2) business days, a copy of the entered Order regarding Utility Services, including the Adequate Assurance Procedures, and provide such Utility Provider a time period of 14 days to object to the inclusion of such Utility Provider on the Utility Services List. If an objection is received, the Debtor shall request a hearing before this Court.

29.     The Debtor request that the terms of the Order and the Adequate Assurance Procedures apply to any subsequently identified Utility Provider in the event that no objection is filed by such Utility Provider.

## BASIS FOR RELIEF

30.     Bankruptcy Code section 366 protects a debtor against the immediate termination or alteration of utility services following the commencement of these chapter 11 cases. See 11

9

U.S.C. § 366. Bankruptcy Code section 366(c) requires the debtor to provide "adequate assurance" of payment for post-petition services in a form "satisfactory" to the utility company within 30 days of the petition date, or the utility company may alter, refuse or discontinue service. 11 U.S.C. § 366(c)(2). Bankruptcy Code section 366(c)(1)(A) provides a non-exhaustive list of examples for what constitutes "assurance of payment." 11 U.S.C. § 366(c)(1)(A). Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtor's ability to pay. *See, e.g., In re Great Atl. & Pac. Tea Co.,* 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment but are not required to give the equivalent of a guaranty of payment in full"); *In re Tekoil & Gas Corp.*, No. 08-80270G3-11, 2008 WL 2928555, at *2 n.1 (Bankr. S.D. Tex. July 21, 2008) ("[A] debtor may continue to pay a utility, and a utility may continue to provide service, in the absence of an injunction preventing the utility from terminating service.") (citing *In re Viking Offshore (USA) Inc.,* No. 08-31219-H3-11, 2008 WL 782449, at *3 n.3 (Bankr. S.D. Tex. Mar. 20, 2008)).

31.     When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment. *See, e.g., In re Keydata Corp.,* 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha,* 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.,* 280 B.R. 63, 81–82 (Bankr. S.D.N.Y. 2002). In determining the level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co. v. Caldor, Inc.-N.Y.,* 117 F.3d 646, 650 (2d Cir. 1997) (internal quotations omitted)

(citing *In re Penn Jersey Corp.,* 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987) (abrogated on other grounds by *In re LEASE-A-FLEET, INC.,* 131 B.R. 945 (Bankr. E.D. Pa. 1991)).

32.     Here, the Utility Providers are adequately assured against any risk of nonpayment for future services. The Debtor's ongoing ability to meet obligations as they come due in the ordinary course provides assurance of the Debtor's payment of its future obligations. Moreover, termination of the Utility Services could result in the Debtor's inability to operate its business to the detriment of all stakeholders*. Cf. In re Monroe Well Serv., Inc.,* 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the Debtor "would have to cease operations" and that Bankruptcy Code section 366 "was intended to limit the leverage held by utility companies, not increase it").

33.     Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under Bankruptcy Code section 366. *See, e.g., In re Circuit City Stores Inc.,* No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "the plain language of § 366 of the Bankruptcy Code allows the court to adopt the [p]rocedures set forth in the Utility Order"). Such procedures are important because, without them, the Debtor "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in its efforts to reorganize." *Id*. Here, notwithstanding a determination that the Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under Bankruptcy Code sections 366(b) and 366(c)(2) are wholly preserved under the Adequate Assurance Procedures.  *See id*. at *5–6.  The Utility Providers still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *6. The Adequate Assurance Procedures, however, avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for

11

adequate assurance that would force the Debtor to pay under the threat of losing critical Utility Services. *See id*. at *5

34.    The Adequate Assurance Procedures are reasonable and in accord with the purposes of Bankruptcy Code section 366, and thus the Debtor requests that the Court grant the relief requested herein. Further, the Court possesses the power, under Bankruptcy Code section 105(a), to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366 thereof. Accordingly, the Court should exercise its powers under Bankruptcy Code sections 366 and 105(a) and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

35.    Based on the foregoing, the Debtor submits that the relief requested herein is necessary and appropriate, is in the best interest of the Debtor's estate and should be granted in all respects.

## EMERGENCY CONSIDERATION

36.    The Debtor requests emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case when that relief is necessary to avoid immediate and irreparable harm to the estate. An immediate and orderly transition into chapter 11 is critical to the viability of the Debtor's operations, and any delay in granting the relief requested could hinder its operations and cause irreparable harm. The failure to receive the requested relief during the first 21 days of the chapter 11 case could severely disrupt the Debtor's operations at this critical juncture and imperil the Debtor's restructuring. Accordingly, the Debtor requests that the Court approve the relief requested in this Motion on an emergency basis.

12

## WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

37.     To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

38.     To the extent that any contract or agreement in connection with any of the Utility Providers is deemed an executory contract within the meaning of Bankruptcy Code section 365, the Debtor does not at this time intend to assume such contract or agreement. As such, the Debtor requests that the Court's authorization regarding the Debtor's funding of the Adequate Assurance Deposit and any action taken by the Debtor in furtherance of the Order shall not be deemed to constitute an assumption of any contract or agreement pursuant to Bankruptcy Code section 365. The Debtor is currently in the process of reviewing all of its contracts and agreements and reserve all of its rights with respect thereto.

39.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's, or any other party in interest's, right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt or reject any agreement, contract or lease pursuant to Bankruptcy Code section 365; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on

13

property of the Debtor's estate; (g) a waiver or limitation of the Debtor's, or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor that any liens (contractual, common law, statutory or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity or perfection or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's or any other party in interest's rights to subsequently dispute such claim.

## **NOTICE**

40.     The Debtor will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the entities listed as holding the 20 largest unsecured claims against the Debtor; (c) counsel for PQPR Holdings, Limited, LLC; (d) the Utility Providers, and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no further notice is necessary.

[*Remainder of Page Intentionally Left Blank*]

000135

WHEREFORE, the Debtor requests entry of an order, substantially in the form of the Order filed with this Motion, granting the relief requested herein and granting such other relief as the Court deems just, proper and equitable.

Respectfully submitted this 29th day of July, 2022.

**LAW OFFICES OF RAY BATTAGLIA, PLLC**

/s/*Raymond W. Battaglia*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Counsel to the Debtor and Debtor-In-Possession*

-and-

**SHANNON & LEE LLP**

/s/*Kyung S. Lee*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

## CERTIFICATE OF ACCURACY

I hereby certify that the forgoing statements are true and accurate to the best of my knowledge and belief. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

/s/ *Raymond W. Battaglia*

15

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on the date of filing, a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service, (b) by U.S.P.S. first class mail on all parties indicated in the attached service list, and (c) the following parties by email:

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Cliff Walson
Walsont Bowlin Callendar, PLLC
4199 San Filipe Street, STE 300
Houston, TX 77027
cliff@wbctrial.com

Jon Maxwell Beatty
The Beatty Law Firm PC
1127 Eldridge Pkwy, Suite 300, #383
Houston, TX 77077
max@beattypc.com

     */s/ Raymond W. Battaglia*

*U.S.P.S. Service List*

Twenty Largest Unsecured Creditors

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

eCommerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

000138

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

Utility Providers

City of Austin
PO Box 2267
Austin, TX 78783

Spectrum Business/Spectrum Enterprise
PO Box 60074
City of Industry, CA 91716

DirectTV
PO Box 5006
Carol Stream, IL 60197

Texas Gas Service
PO Box 219913
Kansas City, MO 64121

Grande Communications
PO Box 679367
Dallas, TX 75267

Verizon
PO Box 660108
Dallas, TX 75266

Lumen/Level 3 Communications
PO Box 910182
Denver, CO 80291-0182

Parties Claiming Interest or Lien Affected

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

Parties Filing Notice of Appearance

N/A

Subchapter V Trustee

N/A (Not Yet Appointed)

U.S. Trustee

Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

Additional Notice Parties

000139

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

000140

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

|  |  |
|---|---|
| In re: | Case No. 22-  60043 |
| FREE SPEECH SYSTEMS, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | |

**ORDER (I) APPROVING DEBTOR'S PROPOSED FORM OF ADEQUATE ASSURANCE
OF PAYMENT FOR FUTURE UTILITY SERVICES, (II) APPROVING ADEQUATE
ASSURANCE PROCEDURES, (III) PROHIBITING UTILITY PROVIDERS FROM
ALTERING, REFUSING OR DISCONTINUING SERVICE, AND (IV) GRANTING
RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[1] of the Debtor for entry of an order (this "<u>Order</u>"): approving the Proposed Adequate Assurance of payment for future Utility Services; approving the Adequate Assurance Procedures for resolving Additional Assurance Requests; prohibiting Utility Providers from altering, refusing or discontinuing services; and granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1

"Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing (if any) establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Debtor shall cause a copy of the Motion and this Order to be served on each Utility Provider listed on the Utility Services List no later than two business days after the date this Order is entered.

2.      The Debtor's ability to pay for future utility services in the ordinary course of business subject to the Adequate Assurance Procedures, shall constitute adequate assurance of future payment as required by Bankruptcy Code section 366.

3.      The following "Adequate Assurance Procedures" are hereby approved:

(i)      Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Notice Parties. An Additional Assurance Request may be made at any time.

(ii)      Any Additional Assurance Request must: (i) be in writing; (ii) identify the location for which the Utility Services are provided; (iii) summarize the Debtor's payment history relevant to the affected account(s), including any security deposits; and (iv) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

(iii)      Upon the Debtor's receipt of any Additional Assurance Request, the Debtor shall promptly negotiate with such Utility Provider to resolve such Utility Provider's Additional Assurance Request.

(iv)      The Debtor may, without further order from the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and the Debtor may, in connection with any such agreement, provide such Utility Provider with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments or other forms of security if the Debtor believes that such adequate assurance is reasonable in their business judgment, subject to the terms of any collateral or other financing order entered by the Court; provided, however, that the Debtor shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed

2

in these chapter 11 cases and the U.S. Trustee upon request.

(v)   If the Debtor and the Utility Provider are not able to reach an alternative resolution within 14 days of receipt of the Additional Assurance Request, the Debtor will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing"), pursuant to Bankruptcy Code section 366(c)(3). Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing or discontinuing Utility Services to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

4.   If an amount relating to Utility Services provided postpetition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request additional adequate assurance by following the Adequate Assurance Procedures and providing notice to: (i) the Debtor and its counsel and the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002 (collectively, the "Notice Parties").

5.   The Utility Providers are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures.

6.   Unless and until a Utility Provider files an objection or serves an Additional Assurance Request, such Utility Provider shall be: (i) deemed to have received adequate assurance of payment that is "satisfactory" to such Utility Provider in compliance with Bankruptcy Code section 366 and (ii) forbidden from (a) discontinuing, altering or refusing services to, or discriminating against, the Debtor on account of any unpaid prepetition charges, the commencement of these chapter 11 cases or any perceived inadequacy of the Proposed Adequate Assurance, and (b) requiring additional assurance of payment other than the Proposed Adequate Assurance.

7.   The Debtor is authorized, following a time period of 14 days afforded to (i) the affected Utility Provider and (ii) counsel to Notice Parties to object, and the Debtor having received no objection from any such Utility Provider, to remove any Utility Provider from the Utility Services

3

List. If an objection is received, the Debtor shall request a hearing before this Court at the next omnibus hearing date, or such other date that the Debtor and the Utility Provider may agree. The Debtor shall not deduct from the Adequate Assurance Deposit the amount set aside for any Utility Provider that the Debtor seeks to terminate or delete from the Utility Services List unless and until the 14-day notice period has passed and the Debtor has not received any objection to the termination or deletion of such Utility Provider from the Utility Services List, or until such objection has been resolved consensually or by order of the Court.

8.      The Debtor is authorized to add any Utility Provider to the Utility Services List; provided that such amended Utility Services List shall be served on the Notice Parties. This Order shall be binding upon any subsequently-identified Utility Provider. To the extent the Debtor identifies additional Utility Providers, the Debtor will serve on such Utility Provider, within two business days, a copy this Order, including the Adequate Assurance Procedures, and provide such Utility Provider a time period of 14 days to object to the inclusion of such Utility Provider on the Utility Services List. If an objection is received, the Debtor shall request a hearing before this Court. In addition, the Debtor will provide an Adequate Assurance Deposit in an amount equal to the cost for services for 14 days based on historical average payments during the preceding 12 months for any Utility Provider added to the Utility Services List as set forth herein.

9.      The inclusion of any entity in, as well as any omission of any entity from, the Utility Services List shall not be deemed an admission by the Debtor that such entity is, or is not, a "utility" within the meaning of Bankruptcy Code section 366, and the Debtor reserves all rights with respect thereto.

10.      Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable

4

nonbankruptcy law; (b) a waiver of the Debtor's, or any other party in interest's, right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt or reject any agreement, contract or lease pursuant to Bankruptcy Code section 365; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's, or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor that any liens (contractual, common law, statutory or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity or perfection or to seek avoidance of all such liens.

11.     Notwithstanding anything in this Order to the contrary, any payment to be made, or any authorization contained hereunder shall be subject to the terms of any orders authorizing use of cash collateral approved by this Court in the chapter 11 case.

12.     The Adequate Assurance Procedures set forth herein are for all Utility Providers providing Utility Services to the Debtor and are not limited to those parties or entities listed on the Utility Services List.

13.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

14.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a), and the Bankruptcy Local Rules are satisfied by such notice.

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon entry. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

5

16.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated: August ____, 2022

                                    _____

                                    UNITED STATES BANKRUPTCY JUDGE

6

# **Exhibit A**

## Utility Services List

| Utility Provider | Utility Type | Average Monthly Expense | Address | City | State | Zip | Account # |
|---|---|---|---|---|---|---|---|
| City of Austin | Electricity | 5,330.47 | P.O. Box 2267 | Austin | TX | 78783 | Acct 81538 82023, Acct 74697 40000, Acct 68899 67480, Acct 47221 33167 |
| DirectTV | Satellite TV | 208.43 | P.O. Box 5006 | Carol Stream | IL | 60197 | Acct: 083741384 |
| Grande Communications | Internet Utility | 1,392.66 | P.O. Box 679367 | Dallas | TX | 75267 | Acct: 8201-0984072-01 |
| Lumen/Level 3 Communications | Telephone | 9,911.85 | P.O. Box 910182 | Denver | CO | 80291-0182 | Acct 310925 |
| Spectrum Business | Television / Internet | 18.70 | P.O. Box 60074 | City of Industry | CA | 91716 | Acct: 8260 16 157 1434339 |
| Spectrum Enterprise | Television / Internet | 2,072.18 | P.O. Box 60074 | City of Industry | CA | 91716 | Acct: 8260 16 157 1196383 |
| Texas Gas Service | Gas Service | 99.32 | P.O. Box 219913 | Kansas City | MO | 64121 | Acct: 912199603 1198529 36 |
| Verizon | Cell Phones | 532.74 | P.O. Box 660108 | Dallas | TX | 75266 | Acct: 721480645-00001 |
| Verizon | Cell Phones | 640.68 | P.O. Box 660108 | Dallas | TX | 75266 | Acct: 721480645-00003 |
| **Total Monthly Utilities** | | **20,207.03** | | | | | |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 22-_60043_____ |
| FREE SPEECH SYSTEMS, LLC, | ) |
| | ) Chapter 11 (Subchapter V) |
| Debtor. | ) |
| | ) |

**DEBTOR'S EMERGENCY MOTION FOR ORDER (A) AUTHORIZING THE DEBTOR**
**TO PAY PREPETITION OBLIGATIONS OF CERTAIN CRITICAL VENDORS, AND**
**(B) GRANTING RELATED RELIEF**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED, IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER, IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

RELIEF IS REQUESTED NOT LATER THAN AUGUST 3, 2022.

The above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS")), in the

above-referenced chapter 11 case, hereby files this emergency motion (the "Motion") for an order

(a) authorizing the Debtor to pay the prepetition claims of certain critical vendors, and (b) granting

related relief. In support of the Motion, the Debtor submits and incorporates by reference the *Declaration of Marc Schwartz in Support of First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion, and respectfully states as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief sought in this Motion are sections 105(a), 363(b), 364(c), and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

## BACKGROUND

**A.  Case Background**

4.      On July 29, 2022 (the "Petition Date"), the Debtor commenced the above captioned cases by filing a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code.

5.      The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to Bankruptcy Code § 1182(2). No request for the removal of the Debtor as debtor-in-possession has been made in this chapter 11 case

**B.  FSS' Background[1]**

6.      Alex Jones began his career in the broadcasting industry fresh out of high school. Austin Public Access provided the forum for Alex's first broadcast.  In 1996 he transitioned to talk

---

[1] Additional factual background and information regarding the Debtor and its operations is set forth in the *Declaration of W. Marc Schwartz in Support of Voluntary Petition and First Day Motions*

2