# PROMISSORY NOTE

$25,300,000.00                          Austin, Texas                          November 10, 2021

**THIS PROMISSORY NOTE** (the **"Note"**) is made as of the date first written above by and between Free Speech Systems, LLC, a Texas Limited Liability Company, 3005 South Lamar Blvd., Suite D109-317, Austin, TX 78704 (**"Maker"**) and PQPR Holdings Limited, LLC a Nevada Limited Liability Company, 100 Congress Ave., 18th Floor, Austin, TX 78701 (**"Payee"**).

Pursuant to the terms set forth herein, Maker, for value received, promises and agrees to pay, as herein provided, to the order of Payee or to such bank account as Payee may direct, in lawful money of the United States of America, the principal sum of Twenty-Five Million Three Hundred Thousand and 00/100 Dollars ($25,300,000.00). This Note memorializes the accrued and current obligations owed by Maker to Payee and provides for the payment of such obligations as provided herein below.

## 1. Payment of Principal and Interest; Security

**(a)**    Principal and Interest (as provided below), are due and payable in annual installments of $1,939,644.81 on each anniversary of the Note at the address listed above (unless otherwise directed in writing by Payee) with the final payment being due and payable on November 10, 2036 (the **"Maturity Date"),** when the remaining balance of unpaid principal and accrued, unpaid interest will be payable in full. Pre-payments, if any, will be applied first to accrued interest, then to any costs or expenses due under the Note, and the remainder to reduction of the principal. Notwithstanding the foregoing, if the date on which payment is due is not a day on which banks are open for business in the State of Texas (a **"Business Day"),** then such payment shall be due on the Business Day next succeeding the payment date.

**(b)**    The principal balance outstanding from time to time under this Note (after giving effect to all adjustments thereto made pursuant to the terms of this Note) shall bear interest at the lesser of (i) [**one and 80/100 percent (1.80%)**] per annum (**"Contract Rate");** (ii) or the maximum rate of nonusurious interest allowed from time to time by applicable law. Interest shall be calculated at a daily rate based on a year of 365 or 366 days, as the case may be, with the daily rate so determined being applied for the actual number of days elapsed. All past due principal and accrued interest on this Note shall bear interest from maturity until paid at the lesser of (i) **five percent (5%),** or (ii) the highest rate for which Maker may legally contract under applicable law.

**(c)**    This Note is secured by a Security Agreement executed by Maker dated August 13, 2020 and evidenced by a UCC-1 recorded with the State of Texas on November 18, 2020.

## 2. Maximum Interest Rate - It is the intention of Maker and Payee to conform strictly to

applicable usury laws. Accordingly, if the interest payable on this Note would be usurious under applicable law, in that event, notwithstanding anything to the contrary herein, it is agreed that the aggregate of all consideration that constitutes interest under applicable law that is taken, reserved, contracted for, charged or received under this Note shall under no circumstances exceed the maximum amount of interest allowed by applicable law, and any excess shall be canceled automatically and, if theretofore paid, shall be credited on this Note by Payee (or, to the extent that this Note shall have been or would thereby be

EXHIBIT

6

paid in full, refunded to Maker). All sums paid or agreed to be paid to Payee for the use, forbearance or detention of sums included in the amounts owing to Payee by Maker shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of this Note until paid in full so that the rate or amount of interest on account of indebtedness does not exceed the applicable usury ceiling, if any. As used in this Note, the term "applicable law" shall mean the law of the State of Texas.

**3. Prepayment** – Borrower reserves the right to prepay, prior to maturity, all or any part of the principal of this Note without penalty. Any prepayments will be solely at Borrower's option and will be applied first to accrued interest, then to fees and expenses due under this Note, and then to principal. Borrower will provide written notice to the holder of this Note of any such prepayment of all or any part of the principal at the time thereof. All payments and prepayments of principal or interest on this Note will be made in lawful money of the United States of America in immediately available funds, at the address of Lender indicated above, or such other place as the holder of this Note may designate in writing to Borrower.

**4. Waiver** - Maker expressly waives demand and presentment for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, notice of intent to accelerate the maturity hereof, notice of the acceleration of the maturity hereof, bringing of suit and diligence in taking any action to collect amounts called for hereunder and in the handling of securities at any time existing in connection herewith. Maker also waives any obligation that Payee pursue or exhaust its rights against any security for the Note prior to taking actions to collect the Note.

**5. Amendments** - Any term or provision of this Note and any obligation of Maker hereunder or with respect hereto, may be changed or modified, partially or completely, or noncompliance may be consented to or authorized, by written agreement between Maker and Payee.

**6. Events of Default** - The occurrence and continuance of any of the following events shall be considered an **"Event of Default"** for purposes of this Note: (a) default is made in the payment of principal or interest when due (b) any involuntary case or other proceeding shall be commenced against Maker that seeks liquidation, reorganization or other relief with respect to it or its debts or other liabilities under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator or custodian unless dismissed or stayed within 90 days after the institution thereof (provided that upon ineffectiveness of any stays, an Event of Default shall exist); (c) Maker shall commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts or other liabilities under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official with respect to Maker, or shall consent to any such relief or to the appointment of, or taking possession by, any such official in an involuntary case or other proceeding commenced against it, or shall make a general assignment for the benefit of creditors or shall fail generally or shall admit in writing its inability to pay its debts generally as they become due or shall take any corporate action to authorize or effect any of the foregoing; (d) a judgment in excess of $100,000 is entered against Maker which is not superseded within ten (10) of the date that it is entered; Maker shall cease business operations.

**7. Remedy -** Upon the occurrence of payment default as provided paragraph 6 (a) and the expiration of ten (10) days' notice and opportunity to cure, and upon the occurrence of any other Event of Default as provided in paragraph 6(b) -(d) and the expiration of thirty (30) days' notice and opportunity to cure, the entire principal amount and accrued interest of the Note then outstanding shall become immediately due and payable.

000682

**8. Governing Law and Venue** – This Note and the rights and obligations hereunder shall be governed by and construed in accordance with the laws of the State of Texas without regard to its principles concerning conflicts of law. Venue for any action brought to collect this Note shall be in Travis County, Texas.

**9. Attorneys' Fees and Expenses** – In the event Payee institutes an action to collect this Note, then in addition to all other amounts due and owing hereunder, Maker shall be liable for and pay to Payee reasonable fees and costs, including attorneys' fees and expenses, of collection.

EXECUTED to be effective as of the date first above written.

**MAKER:**

Free Speech Systems, LLC

By _____

Alexander E. Jones, Manager

**ACKNOWLEDGEMENT BY PAYEE:**

PQPR Holdings Limited, LLC

By _____

David R. Jones, Manager

000683

**UCC FINANCING STATEMENT**

**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Acuity CxO LLC 5122929690

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Acuity CxO LLC
219 Black Wolf Run
Austin, TX 78738
USA

**FILING NUMBER:** 20-0058072731
**FILING DATE:** 11/18/2020      02:06 PM
**DOCUMENT NUMBER:** 1008390830002
**FILED: Texas Secretary of State**
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| **1a. ORGANIZATION'S NAME** | | | | |
| OR | **Free Speech Systems LLC** | | | |
| **1b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **3005 South Lamar Blvd, Suite D109-317** | **Austin** | **TX** | **78704** | **USA** |

2. DEBTOR'S NAME - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| **2a. ORGANIZATION'S NAME** | | | | |
| OR | | | | |
| **2b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| **3a. ORGANIZATION'S NAME** | | | | |
| OR | **PQPR Holdings Limited LLC** | | | |
| **3b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **100 Congress Avenue, 18th Floor** | **Austin** | **TX** | **78701** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:
(1) all fixtures and personal property of every kind and nature, including all accounts, goods (including inventory and equipment), documents (including, if applicable, electronic documents), instruments, promissory notes, chattel paper (whether tangible or electronic), letters of credit, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including all payment intangibles), intellectual property, domain names, trademarks (including but not limited to the nutritional supplement marks Living Cleanse, Honor Roll, ExtendaWise, Happease, Gut Fusion, Vasobeet, Ultimate Female Force, The Real Red Pill, Bodease, Icuren, Flora Life, Immune Wall, Pollen Block, Alpha Power, DNA Force, Survival Shield, and Survival Shield X-2, and the brand Infowars Life), trade names, money, deposit accounts, and any other contract rights or rights to the payment of money; and
(2)all gross revenues, receivables and proceeds and products of each of the foregoing in subparagraph (1), all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box.
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY**

**EXHIBIT**

**7**

000684

**Forbearance Agreement**
**Summary of Indicative Terms and Conditions**
**Free Speech Systems, LLC.**
**July 10, 2022**

*Free Speech Systems, LLC ("FSS") has discovered certain problems with its record keeping and inventory. These problems, along with litigation expenses, have created a cash flow difficulty, which FSS believes to be temporary. FSS has requested, and PQPR Holdings Limited, LLC ("PQPR"), a secured creditor and provider of product to FSS, has agreed, to a temporary forbearance of certain terms for a period of 60 days, as follows:*

**Credit Card Processing Fee:**   The "fixed fee" provided for in the Financial Services Agreement between FSS and _____ LLC and the MOU shall be reduced from ten percent (10%) to two percent (2%) of gross sales proceeds, net of credit card processing fees.

4x (Four percent) WMS

**Allocation of Net Sales Proceeds:**

**FSS Inventory**   FSS Inventory means inventory which PQPR has ordered from vendors on FSS' behalf and for which FSS has pre-paid (prior to product delivery) all or part of the cost of the product.

FSS shall receive 90% of the Net Sales Proceeds and PQPR shall receive 10% of the Net Sales Proceeds. Such sums will be distributed to FSS and PQPR by

FSS shall pay one third any amount advanced by PQPR for FSS Inventory within 30 days following execution of final documents memorializing this agreement, with the balance of PQPR's advances for FSS Inventory due 15 days thereafter.

**PQPR Inventory**   PQPR Inventory means inventory which PQPR has ordered from vendors on PQPR's behalf and for which PQPR has paid the cost of the product.

PQPR Net Sales Proceeds generated from the sale of PQPR Inventory through FSS sales channels shall be paid 20% to FSS and 80% to PQPR.

PQPR Net Sales Proceeds generated from the sale of PQPR Inventory through non FSS sales channels shall be paid 10% to FSS and 90% to PQPR.

All payments will be distributed to FSS and PQPR by

EXHIBIT
8

000085

Auriam.

| | |
|---|---|
| **Warehouse and Fulfillment Related Expenses** | FSS will pay one hundred percent (100%) of the employee, lease and shipping expenses associated with the warehouse and fulfillment operations in connection with the sale of PQPR and FSS Inventory. |
| **PQPR Debt** | FSS owes PQPR as represented by the notes dated August 13, 2020, and November 10, 2021 in the total original amount of $54,888,000. Currently, FSS is paying PQPR $11,000 per business day. As a temporary accommodation to FSS, PQPR agrees to reduce the amount FSS will pay to PQPR to $2,500 per business day to be applied to interest on the PQPR Notes for thirty (30) days following the effective date of this agreement, increasing to $5,500 per business day thereafter through the term of this forbearance agreement. |
| | FSS will acknowledge the validity and priority of the PQPR debt and liens and will agree to a replacement lien of equal scope and priority to PQPR's existing liens. |
| **Term:** | 60 Days |
| **Reservation:** | Subject to revision after implementation based on actual operational results. |

Executed this _12_ day of July 2022.


Free Speech Systems, LLC


By: _____

   Marc Schwartz, Its Chief Restructuring Officer



PQPR Holdings Limited, LLC



By: _____

   David Jones, Its Manager

000686
7/11/22, 8:20 AM
Page 2 of 3

LLC

By: _____ _____

_____ Its Manager

**EXHIBIT A**

**13-Week  Budget**

EXHIBIT

9

exhibitsticker.com

Free Speech Systems LLC
## Forecasted 13 Week Cash Flow Budget
Between July 30, 2022 and October 28, 2022

| Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 | 08/27/2022-09/02/2022 | 09/03/2022-09/09/2022 | 09/10/2022-09/16/2022 | 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | 10/15/2022-10/21/2022 | 10/22/2022-10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Number** | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| **Income** | | | | | | | | | | | | | | |
| Product Sales | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 7,741,357.16 |
| Advertising | | | | 480,166.46 | | | | 480,166.46 | | | | 480,166.46 | | 1,440,499.38 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 40,836.21 |
| **Total Income** | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 9,222,690.75 |
| **Selling & Product Costs** | | | | | | | | | | | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (990,017.27) |
| Repay PQPR Inventory | | (250,000.00) | | (500,000.00) | | | | | | | | | | (750,000.00) |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (348,361.07) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (102,853.59) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (1,238,617.15) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (309,654.29) |
| eCommerce Store Maintenance | (27,270.00) | | | | (27,270.00) | | | | (27,270.00) | | | | | (81,810.00) |
| Texas Sales Tax | (5,337.87) | | | | (5,337.87) | | | | (5,337.87) | | | | | (16,013.61) |
| **Total Cost of Goods Sold** | (262,569.67) | (479,961.80) | (229,961.80) | (729,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (229,961.80) | (3,837,326.97) |
| **Operating Expenses** | | | | | | | | | | | | | | |
| **Advertising & Promotion** | | | | | | | | | | | | | | |
| Advertising & Promotion | (3,041.98) | | | | (3,041.98) | | | | (3,041.98) | | | | | (9,125.93) |
| Print Media | (3,000.00) | | | | (3,000.00) | | | | (3,000.00) | | | | | (9,000.00) |
| Radio Show Advertising | (11,500.00) | | | | (11,500.00) | | | | (11,500.00) | | | | | (34,500.00) |
| **Total Advertising & Promotion** | (17,541.98) | | | | (17,541.98) | | | | (17,541.98) | | | | | (52,625.93) |
| **Computer/IT/IP Expense** | | | | | | | | | | | | | | |
| Internet & TV services | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | | (11,073.89) |
| Software License Fees | (140.80) | | | | (140.80) | | | | (140.80) | | | | | (422.40) |
| Server Hosting Service | (28,595.13) | | | | (28,595.13) | | | | (28,595.13) | | | | | (85,785.40) |
| CDN Video Cloud Storage | (55,728.00) | | | | (55,728.00) | | | | (55,728.00) | | | | | (167,184.00) |
| Satellite Service | (137,282.93) | | | | (137,282.93) | | | | (137,282.93) | | | | | (411,848.78) |
| Imaging License Fee | (9,201.25) | | | | (9,201.25) | | | | (9,201.25) | | | | | (27,603.75) |
| Software & Apps | (5,000.00) | | | | (5,000.00) | | | | (5,000.00) | | | | | (15,000.00) |
| Website Hosting | | | (266.50) | | | | (266.50) | | | | (266.50) | | | (799.50) |
| **Total Computer/IT/IP Expense** | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | | (719,717.72) |
| Insurance | (2,166.50) | | | | (2,166.50) | | | | (2,166.50) | | | | | (6,499.50) |
| **Office & Administrative Expense** | | | | | | | | | | | | | | |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (596.74) |
| Equipment Rental | (1,989.90) | | | | (1,989.90) | | | | (1,989.90) | | | | | (5,969.69) |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (27.31) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (3,645.97) |
| **Total Office & Administrative Expense** | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (328.46) | (10,239.71) |
| Outsourced Services | (45,980.00) | | | | (45,980.00) | | | | (45,980.00) | | | | | (137,940.00) |
| Consulting Services | (22,670.00) | | (12,000.00) | | (22,670.00) | | (12,000.00) | | (22,670.00) | | (12,000.00) | | | (104,010.00) |
| **Utilities** | | | | | | | | | | | | | | |
| Electricity | | | (5,107.63) | | | | (5,107.63) | | | | (5,107.63) | | | (15,322.89) |
| HVAC | (256.19) | | | | (256.19) | | | | (256.19) | | | | | (768.58) |
| CAM Charges | (20,364.16) | | | | (20,364.16) | | | | (20,364.16) | | | | | (61,092.48) |
| Water & Sewer | (1,708.55) | | | | (1,708.55) | | | | (1,708.55) | | | | | (5,125.66) |
| Gas Service | (132.09) | | | | (132.09) | | | | (132.09) | | | | | (396.28) |
| Pest Control | (244.65) | | | | (244.65) | | | | (244.65) | | | | | (733.95) |
| Waste Management | (351.81) | | | | (351.81) | | | | (351.81) | | | | | (1,055.43) |
| **Total Utilities** | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | | (84,495.27) |
| **Occupancy** | | | | | | | | | | | | | | |
| Rent | (33,408.51) | | | | (33,408.51) | | | | (33,408.51) | | | | | (100,225.53) |
| Off Security | (31,111.90) | | | | (31,111.90) | | | | (31,111.90) | | | | | (93,335.69) |
| Repair & Maintenance - Building | (1,777.19) | | | | (1,777.19) | | | | (1,777.19) | | | | | (5,331.56) |
| Janitorial | (5,983.33) | | | | (5,983.33) | | | | (5,983.33) | | | | | (17,950.00) |
| **Total Occupancy** | (72,280.93) | | | | (72,280.93) | | | | (72,280.93) | | | | | (216,842.78) |
| Supplies | (1,258.02) | | | | (1,258.02) | | | | (1,258.02) | | | | | (3,774.07) |

000689

Free Speech Systems LLC

## Forecasted 13 Week Cash Flow Budget

Between July 30, 2022 and October 28, 2022

| Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 | 08/27/2022-09/02/2022 | 09/03/2022-09/09/2022 | 09/10/2022-09/16/2022 | 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | 10/15/2022-10/21/2022 | 10/22/2022-10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Telephone | (18,337.88) | - | - | - | (18,337.88) | - | - | - | - | (18,337.88) | - | - | - | (55,013.65) |
| **Personnel Expenses** | | | | | | | | | | | | | | |
| Salaries & Wages - Base | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | (1,179,272.08) |
| Payroll Tax | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | (97,797.65) |
| Alex Jones Salary | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | (379,166.67) |
| Total Personnel Expenses | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | (1,656,236.39) |
| **Travel** | | | | | | | | | | | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (1,295.98) |
| Vehicle Leases | (1,470.56) | - | - | - | (1,470.56) | - | - | - | - | (1,470.56) | - | - | - | (4,411.68) |
| Total Travel Expenses | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (5,707.66) |
| Total Operating Expenses | (256,513.33) | (99.69) | (236,704.89) | (99.69) | (256,513.33) | (99.69) | (236,704.89) | (99.69) | (236,704.89) | (19,908.13) | (236,704.89) | (99.69) | (236,704.89) | (3,053,102.68) |
| **Non-Operating Expenses** | | | | | | | | | | | | | | |
| Payment on PQPR Note | (172,390.28) | - | (172,390.28) | - | (172,390.28) | - | (172,390.28) | - | (172,390.28) | - | (172,390.28) | - | - | (1,034,341.69) |
| AMEX Payment | (12,500.00) | (15,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (523,000.00) |
| Total Other Expenses | (184,890.28) | (15,500.00) | (199,890.28) | (27,500.00) | (199,890.28) | (27,500.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (55,000.00) | (1,557,341.69) |
| **Professional Fees** | | | | | | | | | | | | | | |
| CRO Fees | - | - | - | - | - | - | (52,992.00) | - | (35,328.00) | - | - | - | - | (88,320.00) |
| Financial Advisor Fee | - | - | - | - | - | - | (57,876.00) | - | (40,352.00) | - | - | - | - | (98,228.00) |
| Shannon & Lee LLP | - | - | - | - | - | - | (60,000.00) | - | (40,000.00) | - | - | - | - | (100,000.00) |
| Ray Battaglia | - | - | - | - | - | - | (24,000.00) | - | (24,000.00) | - | - | - | - | (48,000.00) |
| Total Professional Fees | - | - | - | - | - | - | (174,868.00) | - | (159,680.00) | - | - | - | - | (334,548.00) |
| Total Cash Flow | $ (529,176.72) | $ 101,269.75 | $ (87,237.70) | $ 320,906.27 | $ (544,176.72) | $ 339,269.75 | $ (289,605.70) | $ 793,406.77 | $ (731,356.72) | $ 313,240.31 | $ (97,225.73) | $ 774,424.24 | $ 76,635.11 | $ 440,373.41 |

000690

# Forecasted 3 Week Cash Flow Budget

## Between July 30, 2022 and August 19, 2022

| | Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 |
|---|---|---|---|---|
| | Week Number | 1 | 2 | 3 |
| **Income** | | | | |
| Product Sales | | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 |
| Advertising | | - | - | - |
| Donations | | 3,141.25 | 3,141.25 | 3,141.25 |
| **Total Income** | | **598,630.26** | **598,630.26** | **598,630.26** |
| **Selling & Product Costs** | | | | |
| Inventory Purchase | | (76,155.17) | (76,155.17) | (76,155.17) |
| Repay PQPR Inventory | | - | (250,000.00) | - |
| Merchant Account Fees | | (26,797.01) | (26,797.01) | (26,797.01) |
| Shipping cost for drop ship orders | | (7,911.81) | (7,911.81) | (7,911.81) |
| Fulfillment Services | | (95,278.24) | (95,278.24) | (95,278.24) |
| Processor Fees | | (23,819.56) | (23,819.56) | (23,819.56) |
| eCommerce Store Maintenance | | (27,270.00) | - | - |
| Texas Sales Tax | | (5,337.87) | - | - |
| **Total Cost of Goods Sold** | | **(262,569.67)** | **(479,961.80)** | **(229,961.80)** |
| **Operating Expenses** | | | | |
| **Advertising & Promotion** | | | | |
| Advertising & Promotion | | (3,041.98) | - | - |
| Print Media | | (3,000.00) | - | - |
| Radio Show Advertising | | (11,500.00) | - | - |
| **Total Advertising & Promotion** | | **(17,541.98)** | **-** | **-** |
| **Computer/IT/IP Expense** | | | | |
| Internet & TV services | | (2,082.90) | - | (1,608.39) |
| Software License Fees | | (140.80) | - | - |
| Server Hosting Service | | (28,595.13) | - | - |
| CDN Video Cloud Storage | | (55,728.00) | - | - |
| Satellite Service | | (137,282.93) | - | - |
| Imaging License Fee | | (9,201.25) | - | - |
| Software & Apps | | (5,000.00) | - | - |
| Website Hosting | | - | - | (266.50) |
| **Total Computer/IT/IP Expense** | | **(238,031.01)** | **-** | **(1,874.89)** |
| Insurance | | (2,166.50) | - | - |
| **Office & Administrative Expense** | | | | |
| Bank Fees & Service Charges | | (45.90) | (45.90) | (45.90) |
| Equipment Rental | | (1,989.90) | - | - |
| Office Supplies/Printing/Copy | | (2.10) | (2.10) | (2.10) |
| Business Meals | | (280.46) | (280.46) | (280.46) |
| **Total Office & Administrative Expense** | | **(2,318.36)** | **(328.46)** | **(328.46)** |
| | | | | |
| Outsourced Services | | (45,980.00) | - | - |
| Consulting Services | | (22,670.00) | - | (12,000.00) |
| **Utilities** | | | | |
| Electricity | | - | - | (5,107.63) |
| HVAC | | (256.19) | - | - |



EXHIBIT

10

000691

exhibitsticker.com

| Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 |
|---|---|---|---|
| CAM Charges | (20,364.16) | - | - |
| Water & Sewer | (1,708.55) | - | - |
| Gas Service | (132.09) | - | - |
| Pest Control | (244.65) | - | - |
| Waste Management | (351.81) | - | - |
| **Total Utilities** | **(23,057.46)** | **-** | **(5,107.63)** |
| **Occupancy** | | | |
| Rent | (33,408.51) | - | - |
| Office Security | (31,111.90) | - | - |
| Repair & Maintenance - Building | (1,777.19) | - | - |
| Janitorial | (5,983.33) | - | - |
| **Total Occupancy** | **(72,280.93)** | **-** | **-** |
| Supplies | (1,258.02) | - | - |
| Telephone | (18,337.88) | - | - |
| **Personnel Expenses** | | | |
| Salaries & Wages - Base | (168,467.44) | - | (168,467.44) |
| Payroll Tax | (13,971.09) | - | (13,971.09) |
| Alex Jones Salary | (54,166.67) | - | (54,166.67) |
| **Total Personnel Expenses** | **(236,605.20)** | **-** | **(236,605.20)** |
| **Travel** | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) |
| Vehicle Leases | - | (1,470.56) | - |
| **Total Travel Expenses** | **(99.69)** | **(1,570.25)** | **(99.69)** |
| **Total Operating Expenses** | **(680,347.03)** | **(1,898.71)** | **(256,015.88)** |
| ***Non-Operating Expenses*** | | | |
| Payment on PQPR Note | (12,500.00) | (15,500.00) | (27,500.00) |
| AMEX Payment | (172,390.28) | - | (172,390.28) |
| **Total Other Expenses** | **(184,890.28)** | **(15,500.00)** | **(199,890.28)** |
| **Professional Fees** | | | |
| CRO Fees | - | - | - |
| Financial Adviosr Fee | - | - | - |
| Shannon & Lee LLP | - | - | - |
| Ray Battaglia | - | - | - |
| **Total Professional Fees** | **-** | **-** | **-** |
| **Total Cash Flow** | **$ (529,176.72)** | **$ 101,269.75** | **$ (87,237.70)** |

| Vendor | Description | Amount of Critical Vendor Claim | Address | City | State | Zip |
|---|---|---|---|---|---|---|
| Addshoppers, Inc | E Commerce Store | $ 2,191.93 | 222 S. Church Street #410M | Charlotte | NC | 28202 |
| Amazon Web Services | E Commerce Store | $ 77,000.00 | | | | |
| ATXHD,Inc | Satellite uplink | $ 19,334.48 | 602 S. Cowal Drive | Spicewood | TX | 78669 |
| Austin Security & Investigation Solution | Uniformed Security | $ 28,044.34 | P.O. Box 2904 | Pflugerville | TX | 78691 |
| Balcones Recycling Inc. | Trash / Dumpster Service | $ 386.99 | P.O. Box 679912 | Dallas | TX | 75267 |
| Cloudflare, Inc | IT / E Commerce Security | $ 124,162.64 | Dept LA 24609 | Pasadena | CA | 91185-4609 |
| eCommerce CDN LLC | E Commerce Store | $ 1,070.85 | 221 E 63rd Street | Savannah | GA | 31405 |
| Edgecast, Inc. | Radio Station Link | $ 6,449.30 | Dept CH 18120 | Palatine | IL | 60055 |
| Frost Insurance Agency | Company Insurance | $ 2,694.52 | 401 Congress Ave., 14th Floor | Austin | TX | 78701 |
| Getty Images, Inc | Licenses for Pictures / Video | $ 10,121.38 | P.O. Box 953604 | St. Louis | MO | 63195-3604 |
| Haivision Network Video | Streaming Bandwidth | $ 54,851.50 | Dept CH 19848 | Palatine | IL | 60055-9848 |
| Magento | E Commerce Store | $ 7,792.40 | P.O. Box 204125 | Dallas | TX | 75320-4105 |
| mongoDB Cloud | Cloud Storage | $ 3,054.44 | 1633 Broadway 39th Floor | New York | NY | 10019 |
| Protection 1 Alarm | Alarm Service | $ 3,461.42 | | | | |
| Synergy North America Inc | e commerce software | $ 2,061.49 | 11001 W. 120th Ave. Suite 400 | Broomfield | CO | 80021 |
| The Hartford | Company Insurance | $ 2,780.35 | | | | |
| Travelers | Company Insurance | $ 673.48 | | | | |
| TrustArc | | $ 1,221.46 | | | | |
| WMQM-AM 1600 | Advertising | $ 2,291.67 | 21 Stephen Hill Rd | Atoka | TN | 38004 |
| WWCR | Advertising | $ 9,900.00 | 1300 WWCR Avenue | Nashville | TN | 37218-3800 |
| | **Total Critical Vendors** | $ 359,544.62 | | | | |

EXHIBIT

11

exhibitsticker.com

000693

| UTILITIES | | |
|---|---|---|
| **Vendor** | **Description** | **Two Weeks Average Monthly Service** |
| City of Austin | Electricity | $ 2,665.24 |
| DirectTV | Satellite TV | $ 104.22 |
| Grande Communications | Internet Utility | $ 696.33 |
| Lumen/Level 3 Communications | Telephone | $ 4,955.93 |
| Spectrum Business - Acct Ending 1434339 | Television / Internet | $ 9.35 |
| Spectrum Enterprise aka Time Warner Cable | Television / Internet | $ 1,036.09 |
| Texas Gas Service | Gas Service | $ 49.66 |
| Verizon Acct Ending 00001 | Cell Phones | $ 266.37 |
| Verizon Acct Ending 00003 | Cell Phones | $ 320.34 |
| | **Total:** | **10,103.52** |

EXHIBIT

12

exhibitsticker.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **Free Speech Systems LLC,** | § | |
| | § | **Case No. 22–60043 (CML)** |
| **Debtors.** | § | |

---

**THE SANDY HOOK PLAINTIFFS' OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER**

---

Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (collectively, the "**Texas Plaintiffs**") and David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "**Connecticut Plaintiffs**", and, together with the Texas Plaintiffs, the "**Sandy Hook Plaintiffs**",[1] creditors and parties-in-interest in the above-captioned case ("**Bankruptcy Case**"), object to, and oppose ("**Objection**") Free Speech Systems, LLC's ("**Debtor**") relief in their *Emergency Motion for an Interim and Final Orders (I) Authorizing the Use of Cash Collateral Pursuant to Sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(B) and (II) Granting Adequate Protection* ("**Cash Collateral Motion**").[2] In support hereof, the Sandy Hook Plaintiffs respectfully states as follows:

---

[1] Marcel Fontaine was not defamed relating to the Sandy Hook tragedy. Instead, he was defamed relating to the Parkland shooting. For ease of reference, however, this objection refers to all tort claimants as the Sandy Hook Plaintiffs.

[2] ECF No. 21.

---

## I.       PRELIMINARY STATEMENT

1.       The Sandy Hook Plaintiffs object to entry of an interim order authorizing the Debtor's use of cash collateral because the alleged creditor with a purported lien on the Debtor's cash, PQPR Holdings Limited, LLC ("**PQPR**"), is an affiliated, insider entity, whose alleged secured debt is illegitimate.  The Debtor's requested use of cash collateral is predicated on what the Sandy Hook Plaintiffs have serious reason to believe is a fabricated, allegedly secured loan from an affiliated, insider entity of the Debtor, PQPR. Further, court approval of the use cash collateral is not necessary if there is no valid debt encumbering the cash.  Therefore, the Sandy Hook Plaintiffs object to any request for relief on an interim basis that would in any way legitimize the PQPR debt or advantage PQPR, including:  (i) any grant of adequate protection to PQPR, including replacement liens or super priority administrative expense claim (especially as to avoidance actions and commercial tort claims) and (ii) any findings or stipulations regarding the validity of the alleged PQPR debt, unless PQPR can properly substantiate its substantial claim of secured debt against the Debtor. Even then, any findings should be subject to challenge.

2.       Additionally, the Sandy Hook Plaintiffs find the following aspects of the Cash Collateral Motion and proposed interim order unacceptable, and their very proposal troubling:

     a.     The 13-Week Cash Flow Forecast for FSS, attached as Exhibit A to the Cash Collateral Motion (the "Budget") contains line item payments to Alex Jones, PQPR, and American Express totaling $254,556.95 during the interim period alone.  No salary should be paid to Alex Jones, let alone payments that total approximately $1.3 million over a year, until the Court is satisfied that the salary is fair and equitable under the circumstances. Any payments to insiders, such as Jones, should be limited to $10,000 total during the interim period and subject to further investigation prior to entry of a final order.

     b.     The Budget contains a line item paying $250,000 titled "Repay PQPR Inventory" that to the extent it is a payment to PQPR, should not occur until the investigation into the insider relationship between PQPR and FSS and into PQPR's purported debt and lien is completed.  Additionally, the

Court should not approve the use of cash collateral on an interim basis to repay an alleged secured creditor, PQPR, until such debt is properly substantiated.

    c.    Given the Sandy Hook Plaintiffs' concerns regarding the legitimacy of the underlying alleged PQPR debt, the Sandy Hook Plaintiffs request that the following language be added to the interim order:

"Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes."

3.    The Sandy Hook Plaintiffs reserve all of rights as it relates to entry of a final order authorizing the use of cash collateral, to the extent the Court deems it appropriate to hold such a hearing. These objections include, but are not limited to: (1) the lack of a line item for the subchapter V trustee's fees within the Budget; (2) to the extent an official committee is formed, an investigation budget for such committee; and (3) the lack of an appropriate customary challenge period.

4.    In sum, the Sandy Hook Plaintiffs do not believe either the Debtor or PQPR can show that a valid debt is owed to PQPR, let alone a valid secured debt, and therefore, entry of a cash collateral order on an interim basis with any adequate protection provisions is inappropriate. Any grant of adequate protection should be conditioned upon entry of a final order approving the use of cash collateral.  No findings should be made regarding the validity of PQPR's purported liens on an interim basis. Further, the Court should limit the use of the alleged cash collateral during the Interim Period solely to line items in the Budget that are necessary to enable the Debtor

to operate until a final hearing—and therefore payments to insiders should be either be outright prohibited or capped as described above.

5.      There could be a straightforward solution to the issue of interim use of cash collateral—the budget should be paired down to the essentials and cash should come from the unencumbered cash identified on page 22, footnote 6 of the Schwartz declaration.[3]

## II.      FACTUAL BACKGROUND

### A. THE SANDY HOOK PLAINTIFFS AND FONTAINE SUE THE JONES DEBTORS FOR DEFAMATION.

6.      In 2018, the Sandy Hook Plaintiffs and Fontaine sued the Jones Debtors for defamation, among other claims, based on various lies and conspiracy theories Alex Jones espoused through his media outlet (the Defamation Cases).[4] The claims of the Sandy Hook Plaintiffs—parents and immediate family members of children and educators slain at Sandy Hook and one first responder—stem from conspiracy theories the Jones Debtors disseminated that the mass shooting was a hoax.[5] Similarly, Fontaine's claims arose from falsehoods the Jones Debtors

---

[3]  *See Declaration of Marc Schwartz in Support of First Day Motions*, ECF No. 10.

[4]  Cause No.: D-1-GN-18-001835; *Neil Heslin v Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC and Owen Shroyer*; In the 261st Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-18-001842; *Leonard Pozner and Veronique De La Rosa v Alex E. Jones, Infowars, LLC and Free Speech Systems, LLC*; In the 345th Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-19-004651; *Neil Heslin v Alex E. Jones, Infowars, LLC and Free Speech Systems, LLC*; In the 261st Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-18-006623; *Scarlett Lewis v Alex E. Jones, Infowars, LLC and Free Speech Systems, LLC*; In the 98th Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-18-001605; *Marcel Fontaine v Infowars, LLC, Free Speech Systems, LLC and Kit Daniels*; In the 459th Judicial District Court of Travis County, Texas; Cause No. FSB-CV18-6075078-S; *Wheeler, et. al. v. Alex Jones, et al.*; In the Judicial District of Fairfield as Bridgeport, Connecticut; Cause No. FBT-CV18-6076475-S; *Sherlock et al. v. Alex Jones, et al.*; In the Judicial District of Fairfield as Bridgeport, Connecticut; and Cause No. FBT-CV18-6081366; *Parker, et al. v. Alex Jones, et al.*; In the Judicial District of Fairfield as Bridgeport, Connecticut.

[5]  *See e.g., Jones v. Heslin*, No. 03-20-00008-CV, 2020 WL 4742834, at *1 (Tex. App.—Austin Aug. 14, 2020, pet. denied); *Jones v. Heslin*, No. 03-19-00811-CV, 2020 WL 1452025, at *1 (Tex. App.—Austin March 25, 2020, pet. denied); *Jones v. Pozner*, No. 03-18-00603-CV, 2019 WL 5700903, at *9 (Tex. App.—Austin Nov. 5, 2019, pet. denied); *Jones v. Lewis*, No. 03-19-00423-CV, 2019 WL 5090500, at *4 (Tex. App.—Austin October 11, 2019, pet. denied).

---

spread that he was the shooter responsible for murdering 17 people at a high school in Parkland, Florida.[6]

7.      Rather than accept responsibility for propagating these lies, however, Alex Jones and the Debtor continued to deflect the truth. They first tried to dismiss the defamation litigation. But the trial courts denied those attempts in part because the Jones Debtors refused to cooperate in the cases' truth-finding phase of discovery.

8.      The Debtor and Jones continued to obstruct discovery. Their repeated discovery abuses even culminated in the trial court granting default judgments for the Texas Plaintiffs and the Connecticut Plaintiffs and against the Jones Debtors on liability in September and November 2021, respectively. The Debtor filed this bankruptcy case shortly before damages against it were to be liquidated in an amount in excess of the subchapter V debt limits in one of the lawsuits currently in trial in Travis County, Texas.

## B.  THE ALLEGED PQPR DEBT

9.      Soon after Texas and Connecticut Plaintiffs filed their Defamation Cases, the Debtor started diverting assets. The Debtor's financials show member draws in 2021 and 2022 in excess of $60 million to Alex Jones. These draws were in addition to his yearly salary, which according to the budget, is in excess of $1.4 million, and taken while the Debtor claimed to operate at a net loss. The Debtor's filings already concede that PQPR is an insider owned and controlled by the Jones family. They then presume that these entities operate independently of each other and at arm's length, such that they have the ability to contract with each other. Discovery conducted in Connecticut and Texas, however, demonstrates that Alex Jones controlled the business decisions

---

[6]  *Infowars, LLC v. Fontaine*, No. 03-18-00614-CV, 2019 WL 5444400, at *1 (Tex. App.—Austin Oct. 24, 2019, pet. denied).

of both entities and that the business operations of the two supposedly separate entities are so intertwined and so completely controlled by Jones that they are functionally one business.

10.     Just three weeks after the Connecticut Supreme Court affirmed significant discovery sanctions against Jones and the Debtor, and three months after the last appellate-court decision allowing the Texas Plaintiffs litigation to proceed, PQPR filed a UCC Financing Statement claiming a security interest in essentially everything Debtor Free Speech Systems owns. The claimed security interest covers an alleged $54 million debt the Debtor supposedly owes to PQPR. The Debtor admits that the supposed debt was first memorialized in 2020, even though its claim is that this obligation had been accruing since some time "in the past" and by 2020 amounted to $29 million dollars. The Debtor also admits that PQPR continues to supply it with supplements during the entire period of claimed nonpayment, even though the claimed indebtedness is now $54 million.

### III.     OBJECTION

#### A.  PQPR'S ALLEGED DEBT AND ITS PURPORTED LIENS ARE ILLEGITIMATE

11.     As previewed above, the Sandy Hook Plaintiffs' investigation over the course of the litigation against the Debtor indicates that the alleged PQPR debt is not legitimate.  None of the Debtor, PQPR, Jones, or any related entity or insider have produced any documentation evidencing the alleged underlying debt or the purported lien relating to PQPR's Notes.  In his Declaration, the Chief Restructuring Officer refers to "extensive and difficult negotiations with PQPR over the use of cash collateral" but gives no indication as to the substance of those negotiations or who was negotiating for PQPR (which is purportedly owned by some combination of Jones, his mother, and his father).  Further, he gives no indication that he has investigated whether or not the underlying debt to insider PQPR has ever existed and fails to disclose to this

Court that the Debtor, PQPR, Jones, and several of their related entities are the subject of a fraudulent transfer action pending in Travis County, Texas. The Chief Restructuring Officer and Debtor's counsel should advise the Court as to the substance of the negotiations he references and who they were with, what type of investigation was done prior to the filing of this Bankruptcy Case regarding the validity of this alleged debt and purported lien, and why he didn't advise the Court that the Debtor, Jones, PQPR, and several of their related entities are the subject of a fraudulent transfer action.

B.  THE COURT SHOULD NOT AUTHORIZE THE DEBTOR TO GRANT ADEQUATE PROTECTION, CONSISTING OF REPLACEMENT LIENS OR A SUPER PRIORITY ADMINISTRATIVE EXPENSE CLAIM IN FAVOR OF PQPR, ON AN INTERIM BASIS

12.     The Sandy Hook Plaintiffs object to the grant of any adequate protection liens or super priority administrative expense for use of cash collateral on an interim basis given the circumstances here. To the extent the Court is inclined to give some limited form of adequate protection on an interim basis, PQPR should not receive any purported replacement liens on any assets that were unencumbered as of the Petition Date, including avoidance actions, commercial tort claims, and any other unencumbered asset.

13.     It is well established that a party is not entitled to adequate protection absent a showing of the requisite cause. First, PQPR and the Debtors should provide evidence regarding the legitimacy of the debt. Second, PQPR is not entitled to adequate protection unless there is evidence that its purported collateral is declining in value.[7]

---

[7] *See., e.g.*, *In re Continental Airlines, Inc.*, 146 B.R. 536, 639 (Bankr. D. Del. 1992) ("Post-*Timbers* courts have uniformly required a movant seeking adequate protection to show a decline in value of its collateral"); *Zink v. Vanmiddlesworth*, 300 B.R. 394, 402-03 (N.D.N.Y. 2003) ("[T]he initial burden of showing the need for adequate protection [is] upon the creditor having an interest in the property being used by the debtor. In order to meet this burden, the secured creditor must demonstrate that such relief is required by showing a likelihood that the collateral will decrease in value of establishing some basis for the relief.") (internal citations omitted).

14.     Avoidance actions in particular are uniquely beneficial for the Sandy Hook Plaintiffs. While avoidance actions are carved out of requested replacement liens, they are not carved out from the requested super priority administrative expense request. The intent behind avoidance powers and a debtor's power to bring causes of action is to allow the debtor-in-possession to gain recoveries for the benefit of all unsecured creditors.[8] Hence, avoidance actions and the proceeds thereof should remain unencumbered for the benefit of all creditors—not subject to any super priority administrative expense claim.

15.     There are also potentially valuable, unencumbered commercial tort claims belonging to the Debtor's estate, including potential breach of fiduciary duty claims. These too should not be the subject of any adequate protection claim by PQPR.

16.     In sum, if the Court is inclined to grant replacement liens or an administrative expense claim, they should be subject to challenge and limited in scope. No purported replacement liens should attach to commercial tort claims or avoidance actions, nor should any administrative expense claim be payable from commercial tort claims or avoidance actions. Any liens or administrative expense claim should be subject to challenge by a party granted standing by this Court.

### C.   USE OF CASH COLLATERAL AND THE BUDGET SHOULD BE NARROWLY TAILORED DURING THE INTERIM PERIOD

17.     As explained in the Sandy Hook Plaintiffs' preliminary statement, the Budget attached to the Cash Collateral Motion contains numerous payments that are inappropriate at this time and that would not cause "immediate and irreparable harm" if not paid. Bankruptcy Rule 4001 states that "the court may conduct a preliminary hearing . . . but the court may authorize the

---

[8]  *See Buncher Co. v. Official Comm. Of Unsecured Creditors of GenFarm Ltd. Partn. IV*, 229 F.3d 245, 250 (3d Cir. 2000); *In re Sweetwater*, 55 B.R. 724, 735 (D. Utah 1985) (avoiding powers are meant to benefit creditors generally and promote equitable distribution among all creditors).

use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." The Chief Restructuring Officer should provide an explanation as to why the following payments, including payments to insiders and PQPR as a prepetition creditor, are necessary to avoid "immediate and irreparable harm to the estate pending a final hearing":

   a.   **Repay PQPR Inventory**: $250,000

   b.   **Alex Jones Salary**: $54,166.67

   c.   **Payment on PQPR Note**: $18,000

   d.   **Amex Payment**: $172,390.28

18.      In sum, these payments to or for the benefit of insiders are not appropriate at this stage of the case. The Court should prohibit or limit payments in excess of $10,000 to insiders in total, and no payments should be made to PQPR until a full investigation of its purported secured claim is complete.

### IV.      CONCLUSION AND RESERVATION OF RIGHTS

19.      The Court should require the Debtor to provide a narrowly tailored budget necessary to bridge the gap from the petition date to the final hearing on cash collateral usage, and the cash during that interim period should come from "unencumbered" cash. The alleged PQPR debt is not valid and the Court should deny the Cash Collateral Motion. Neither the filing of this Objection or anything set forth herein (nor any other filing in this Bankruptcy Case) is, or should be constructed to be, a consent to jurisdiction of the United States Bankruptcy Court with respect to the claims asserted herein or for any other purpose. Furthermore, the Sandy Hook Plaintiffs hereby retain and fully reserve their rights to modify this Objection.  Finally, the Sandy Hook

Plaintiffs fully reserve all rights relating to the objection to the use of cash collateral on a final basis.

      Date: August 2, 2022

                                      Respectfully submitted,

                                      **MCDOWELL HETHERINGTON LLP**

                                      Avi Moshenberg
                                      Texas Bar No. 24083532
                                      1001 Fannin Street, Suite 2700
                                      Houston, Texas 77002
                                      D: 713-337-5580
                                      F: 713-337-8850
                                      E: Avi.Moshenberg@mhllp.com

                                      ***Counsel for the Texas Plaintiffs***

                                      and

                                      **CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, PC**

                                      By: */s/Jarrod B. Martin*
                                      Jarrod B. Martin
                                      Texas Bar No. 24070221
                                      1200 Smith Street, Suite 1400
                                      Houston, Texas 77002
                                      D: 713.356.1280
                                      F: 713.658.2553
                                      E: jarrod.martin@chamberlainlaw.com

                                      ***Bankruptcy Counsel for the Texas Plaintiffs***

                                      By: */s/ Ryan Chapple*
                                      Ryan E. Chapple
                                      State Bar No. 24036354
                                      Email: rchapple@cstrial.com
                                      **CAIN & SKARNULIS PLLC**
                                      303 Colorado Street, Suite 2850
                                      Austin, Texas 78701
                                      512-477-5000
                                      512-477-5011—Facsimile

and

Randy W. Williams
State Bar No. 21566850
Email: rww@bymanlaw.com
**BYMAN & ASSOCIATES PLLC**
7924 Broadway, Suite 104
Pearland, Texas 77581
281-884-9262

***Counsel for Connecticut Plaintiffs***


## CERTIFICATE OF SERVICE

The undersigned certifies that on August 2, 2022, a true and correct copy of the foregoing objection was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.


*/s/ Jarrod B. Martin*
Jarrod B. Martin