**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | **Chapter 11** |
| | § | |
| **Debtor** | § | |

**UNITED STATES TRUSTEE'S WITNESS/EXHIBIT LIST**

| Main Case No: 22-60043 | Name of Debtor:<br>Free Speech Systems, LLC |
|---|---|
| | |
| | |
| Witnesses: | |
| | Judge: **Christopher Lopez** |
| W. Marc Schwartz | |
| Any witness called by any other party | Hearing Date: August 3, 2022 |
| | Hearing Time: 10:00 am |
| | Party's Name: United States Trustee |
| | Attorney's Name: Ha M. Nguyen |
| | Attorney's Phone: 202-590-7962 |
| | |

NATURE OF PROCEEDINGS: The Court is considering various first day motions filed in the
bankruptcy case of Free Speech Systems, LLC.

1

**EXHIBITS**

| Ex. # | Description | Offered | Objection | Admitted/ Not Admitted | Disposition |
|---|---|---|---|---|---|
| 1 | Any exhibit introduced by any other party | | | | |
| 2 | Any exhibit identified or offered by any other party | | | | |
| | | | | | |

RESPECTFULLY SUBMITTED:
KEVIN M. EPSTEIN
UNITED STATES TRUSTEE

DATED: <u>August 3, 2022</u>                    <u>/s/ HA M NGUYEN</u>
Ha Nguyen, Trial Attorney
CA Bar #305411
FED ID NO. 3623593
United States Department of Justice
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, Texas 77002
E-mail: Ha.Nguyen@usdoj.gov
Cell: 202-590-7962

001273

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 03, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 22- 60043 |
|  | ) |  |
| FREE SPEECH SYSTEMS, LLC, | ) | Chapter 11 (Subchapter V) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**ORDER GRANTING EXTENTION OF TIME TO FILE SCHEDULES AND STATEMENT
OF FINANCIAL AFFAIRS**

Upon the motion (the "<u>Motion</u>")[1] of the Debtor for entry of an order (this "<u>Order</u>"): *Debtor's Emergency Motion to Extend Time to File Schedules and Statement of Financial Affair* (the "<u>Motion</u>")[2], filed by the above-captioned debtor (the "<u>Debtor</u>"). The Court finds that: (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Motion is in the best interests of the Debtor, its estate, and its creditors; (iv) proper and adequate notice of the Motion has been given and no other or further notice is necessary; and (v) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED

2.      The time within which the Debtor shall file its Schedules and Statements is extended pursuant to Bankruptcy Code § 1116(3) and Bankruptcy Rule 1007(c) to and including, August 29, 2022, without prejudice to the Debtor's right to seek an additional extension upon a showing of extraordinary and compelling circumstances.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

001274

3.     The Court shall retain jurisdiction to hear and consider all disputes arising out of the interpretation or implementation of this Order.

Signed:  August 03, 2022

Christopher Lopez
United States Bankruptcy Judge

**SmBus, PlnDue, DsclsDue, ReqSepNtc, Subchapter_V, APPEAL, APPEAL_NAT**

# U.S. Bankruptcy Court
## Southern District of Texas (Houston)
## Bankruptcy Petition #: 22-60043

| | |
|---|---|
| *Date filed:* | 07/29/2022 |
| *Date of Intradistrict transfer:* | 08/04/2022 |
| *341 meeting:* | 09/07/2022 |
| *Deadline for filing claims:* | 10/07/2022 |
| *Deadline for filing claims (govt.):* | 02/07/2023 |
| *Deadline for objecting to discharge:* | 03/10/2023 |

*Assigned to:* Bankruptcy Judge Christopher M. Lopez
Chapter 11
Voluntary
Asset

**Debtor**
**Free Speech Systems LLC**
3019 Alvin Devane Blvd. STE 300
Austin, TX 78741
TRAVIS-TX
SSN / ITIN: xxx-xx-0005

represented by **Raymond William Battaglia**
Law Offices of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX 78218
2106019405
Email: rbattaglialaw@outlook.com

**Kyung Shik Lee**
Kyung S. Lee PLLC
4723 Oakshire Drive
Apt. B
Houston, TX 77027
713-301-4751
Email: kslee50@gmail.com

**R. J. Shannon**
Shannon & Lee LLP
700 Milam St., STE 1300
Houston, TX 77002
713-714-5770
Email: rshannon@shannonpllc.com

**Christina Walton Stephenson**
Crowe & Dunlevy
2525 McKinnon St.
Ste 425
Dallas, TX 75201
214-420-2163
Email: Crissie.Stephenson@crowedunlevy.com

**Trustee**
**Melissa A Haselden**
Haselden Farrow PLLC
Pennzoil Place
700 Milam
Suite 1300
Houston, TX 77002
832.819.1149

represented by **Elizabeth Carol Freeman**
The Law Office of Liz Freeman
PO Box 61209
Houston, TX 77208-1209
832-779-3580
Email: liz@lizfreemanlaw.com

**Melissa Anne Haselden**
Haselden Farrow PLLC

001276

Pennzoil Place
700 Milam
Suite 1300
Houston, TX 77002
832.819.1149
Fax : 866.405.6038
Email: mhaselden@haseldenfarrow.com

*U.S. Trustee*
**US Trustee**
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002
713-718-4650

represented by **Ha Minh Nguyen**
Office of the United States Trustee
515 Rusk St
Ste 3516
Houston, TX 77002
202-590-7962
Email: ha.nguyen@usdoj.gov

**Jayson B. Ruff**
Office of the United States Trustee
515 Rusk St.
Ste. 3516
Houston, TX 77002
713-718-4650
Fax : 713-718-4670
Email: jayson.b.ruff@usdoj.gov

*Creditor Committee*
**Official Committee of Unsecured Creditors
of Alexander E. Jones**
c/o Marty L. Brimmage, Jr.
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
214-969-2800

represented by **Marty L Brimmage**
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street
Suite 1800
Dallas, TX 75201
214-969-2885
Fax : 214-969-4343
Email: mbrimmage@akingump.com

| Filing Date | # | Docket Text |
|---|---|---|
| 08/03/2022 | 🔘31 | Courtroom Minutes. Time Hearing Held: 10:00 AM. Appearances: Raymond Battaglia, Kyung Lee, R.J. Shannon, W. Marc Schwartz, Norm Pattis, Avi Moshenberg, Jarrod Martin, Marty Brimmage, Ryan Chapple, Alinor Sterling, Christopher Mattei, Ha Nguyen, Millie Sall, Stephen Lemmon, Melissa Haselden, Shelby Jordan. (Related document(s):6 Emergency Motion, 7 Emergency Motion, 8 Emergency Motion). Arguments heard. Evidence presented. Witness: W. Marc Schwartz. For the reasons stated on the record, Motions Granted. Debtor's counsel is to file a proposed form of order. Order Signed as to 9 Motion for Extension of Time. Continued Cash Collateral Hybrid Hearing is scheduled for 8/24/2022 at 10:00 AM. (ZildeMartinez) (Entered: 08/03/2022) |

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern District of Texas
(State)

Case number (*If known*): 22-60043 Chapter 11

☒ Check if this is an amended filing

Official Form 201

**AMENDED**

# Voluntary Petition for Non-Individuals Filing for Bankruptcy
06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | Free Speech Systems LLC |

2. **All other names debtor used in the last 8 years**

Include any assumed names, trade names, and *doing business as* names

3. **Debtor's federal Employer Identification Number** (EIN)

26 – 1510005 __ __ __

4. **Debtor's address**

Principal place of business

3019 Alvin Devane Blvd., STE 300
Number        Street

Austin, TX 78741
City                          State      ZIP Code

Travis
County

Mailing address, if different from principal place of business

Number        Street

P.O. Box

City                          State      ZIP Code

Location of principal assets, if different from principal place of business

Number        Street

City                          State      ZIP Code

5. **Debtor's website** (URL)

Debtor  **Free Speech Systems LLC**
_____
<sub>Name</sub>

Case number (*if known*)_____

**22-60043**

---

**6.  Type of debtor**

- ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
- ☐ Partnership (excluding  LLP)
- ☐ Other. Specify: _____

---

**7.  Describe debtor's business**

A.  *Check one:*

- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Railroad (as defined in 11 U.S.C. § 101(44))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
- ☒ None of the above

B.  *Check all that apply:*

- ☐ Tax-exempt entity (as described in 26 U.S.C. § 501)
- ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
- ☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C.  NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

    5151 __ __

---

**8.  Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

- ☐ Chapter 7
- ☐ Chapter 9
- ☒ Chapter 11. *Check all that apply*:

  - ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  - ☒ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  - ☐ A plan is being filed with this petition.

  - ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

  - ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

  - ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

- ☐ Chapter 12

---

00129

Debtor    Free Speech Systems LLC           Case number (if known)   22-60043
       Name

---

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No

☐ Yes.   District _____ When _____ Case number _____
                               MM / DD / YYYY

           District _____ When _____ Case number _____
                               MM / DD / YYYY

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☒ No

☐ Yes.   Debtor _____ Relationship _____

           District _____ When _____
                               MM / DD / YYYY

           Case number, if known _____

---

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

     **Why does the property need immediate attention?** (*Check all that apply.*)

     ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

         What is the hazard? _____

     ☐ It needs to be physically secured or protected from the weather.

     ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

     ☐ Other _____

     **Where is the property?** _____
                               Number      Street

                               _____

                               City                              State ZIP Code

     **Is the property insured?**

     ☐ No

     ☐ Yes. Insurance agency _____

         Contact name _____

         Phone _____

---

**Statistical and administrative information**

---

001280

| Debtor | Free Speech Systems LLC | Case number (if known) | 22-60043 |
|---|---|---|---|
| | Name | | |

**13. Debtor's estimation of available funds**

Check one:

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☒ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☒ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☒ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

**Request for Relief, Declaration, and Signatures**

**WARNING --**  Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   07/29/2022
            MM  / DD / YYYY

✖ _W. Marc Schwartz (signature)_                       W. Marc Schwartz
Signature of authorized representative of debtor          Printed name

Title   Chief Restructuring Officer

---

Debtor    Free Speech Systems LLC                              Case number (if known)    22-60043
          Name

---

**18. Signature of attorney**    ✖ _[signature]_ Ray Battaglia        Date    **8/3/2022**
                                    Signature of attorney for debtor            MM / DD / YYYY

                    Raymond W. Battaglia
                    Printed name
                    Law Offices of Ray Battaglia, PLLC
                    Firm name
                    66 Granburg Circle
                    Number        Street
                    San Antonio                              Texas        78218
                    City                                     State        ZIP Code

                    (210) 601-9405                           rbattaglialaw@outlook.com
                    Contact phone                            Email address

                    01918055                                 Texas
                    Bar number                               State

---

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 01, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 22-  60043 |
|  | ) |  |
| FREE SPEECH SYSTEMS, LLC, | ) | Chapter 11 (Subchapter V) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**ORDER MODIFYING AUTOMATIC STAY TO ALLOW HESLIN/LEWIS TRIAL TO
CONTINUE TO FINAL JUDGMENT**

At Victoria, in said District, came on for consideration the Emergency Motion to Lift Automatic Stay in Favor of Neil Heslin and Scarlett Lewis to Continue Trial to Judgment (the "Motion") filed by Free Speech Systems, LLC (the "Debtor" or "FSS"); and it appearing to the Court that notice of the hearing on the Motion is adequate, appropriate and sufficient under the circumstances of this case; and it further appearing to the Court that prior to the Petition Date, Neil Heslin and Scarlett Lewis (collectively, the "Plaintiffs") commenced state-court actions against FSS consolidated into the action styled as *Neil Heslin v. Alex E. Jones and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas Heslin/Lewis State Court Litigation"); and it appearing to the Court that a trial in the Heslin/Lewis Litigation is ongoing before Judge Maya Guerra Gamble, 459th Civil District Court, Travis County (the "Texas State Court"); and it appearing that on July 29, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court"); and the automatic stay provision of 11 U.S.C. § 362(a) may prevent the continuation of the Heslin/Lewis State Court Litigation; and the Debtor having agreed to the modification of the automatic stay so as to permit the Texas State Court to proceed

up to and including the entry of judgment, if any,  in the Heslin/Lewis State Court Litigation and the Plaintiffs to litigate the matter to judgment;;

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.      The automatic stay provision of 11 U.S.C. § 362(a) be and hereby is modified solely for the purpose of allowing the Heslin/Lewis State Court Litigation to continue to proceed to judgment by the Texas State Court.

2.      Except to assert the claim against FSS in FSS's bankruptcy case, the automatic stay shall continue to enjoin the Plaintiffs and any other party, from exercising against FSS any remedies to collect or enforce any judgment against any assets of FSS or its bankruptcy estate including all property of the estate.

3.      This Court shall retain sole and exclusive jurisdiction with respect to the automatic stay and its application to any actions other than those expressly provided for in this Order.

Signed:  August 01, 2022

Christopher Lopez
United States Bankruptcy Judge

2

001284

United States Bankruptcy Court
Southern District of Texas

In re:                                                                      Case No. 22-60043-cml

Free Speech Systems LLC                                                     Chapter 11
        Debtor

# CERTIFICATE OF NOTICE

District/off: 0541-6                        User: ADIuser                              Page 1 of 2
Date Rcvd: Aug 01, 2022                     Form ID: pdf002                            Total Noticed: 2

The following symbols are used throughout this certificate:

| Symbol | Definition |
|--------|-----------|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 03, 2022:**

| Recip ID | | Recipient Name and Address |
|----------|---|---------------------------|
| db | + | Free Speech Systems LLC, 3019 Alvin Devane Blvd. STE 300, Austin, TX 78741-7417 |
| cr | + | David Wheeler, et al., c/o Cain & Skarnulis PLLC, 303 Colorado Street, Suite 2850, Austin, TX 78701-4653 |

TOTAL: 2

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 03, 2022                    Signature:           /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 1, 2022 at the address(es) listed below:**

| Name | Email Address |
|------|--------------|
| Ha Minh Nguyen | on behalf of U.S. Trustee US Trustee ha.nguyen@usdoj.gov |
| R. J. Shannon | on behalf of Debtor Free Speech Systems LLC rshannon@shannonpllc.com rshannon@shannonleellp.com;7044075420@filings.docketbird.com |
| Randy W Williams | on behalf of Creditor David Wheeler rww@bymanlaw.com, rw13@trustesolutions.com;rw13@trustesolutions.net;rw11@trustesolutions.net;rww.trustee1@gmail.com |
| Raymond William Battaglia | on behalf of Debtor Free Speech Systems LLC rbattaglialaw@outlook.com  rwbresolve@gmail.com |
| Ryan E Chapple | on behalf of Creditor David Wheeler  et al. rchapple@cstrial.com, aprentice@cstrial.com |

001285

District/off: 0541-6            User: ADIuser            Page 2 of 2

Date Rcvd: Aug 01, 2022         Form ID: pdf002          Total Noticed: 2

US Trustee

                   USTPRegion07.HU.ECF@USDOJ.GOV

TOTAL: 6

001286

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 04, 2022
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-60043 |
| FREE SPEECH SYSTEMS, LLC | § | |
| Debtor. | § | CHAPTER 11 |
| | § | SUBCHAPTER V |
| | § | |

## ORDER FOR INTRADISTRICT TRANSFER

On the Court's own motion, this case is transferred to the Houston Division in accordance with the Bankruptcy Local Rules for the Southern District of Texas. The case will be retained on the undersigned judge's Houston docket. The case number shall remain unchanged.


Signed:  August 04, 2022

Christopher Lopez
United States Bankruptcy Judge

001287

**UNITED STATES BANKRUPTCY COURT**

**Southern District of Texas**

PDF FILE WITH AUDIO FILE ATTACHMENT

2022-60043

Free Speech Systems LLC

First Day Hearings Morning Session

---

| | |
|---|---|
| Case Type : | bk |
| Case Number : | 2022-60043 |
| Case Title : | Free Speech Systems LLC |
| Audio Date\Time : | 8/3/2022 10:02:10 AM |
| Audio File Name : | 4bk2022-60043_20220803-100210.mp3 |
| Audio File Size : | 61637 KB |
| Audio Run Time : | [02:08:25] (hh:mm:ss) |

---

**Help using this file:**

An audio file is embedded as an attachment in this PDF document. To listen to the file, click the Attachments tab or the Paper Clip icon. Select the Audio File and click Open.

**MPEG Layer-3 audio coding technology from Fraunhofer IIS and Thomson.**

This digital recording is a copy of a court proceeding and is provided as a convenience to the public.  In accordance with 28 U.S.C. § 753 (b) "[n]o transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record."

**UNITED STATES BANKRUPTCY COURT**

**Southern District of Texas**

PDF FILE WITH AUDIO FILE ATTACHMENT

2022-60043

Free Speech Systems LLC

First Day Hearings Afternoon Session

---

| | |
|---|---|
| Case Type : | bk |
| Case Number : | 2022-60043 |
| Case Title : | Free Speech Systems LLC |
| Audio Date\Time : | 8/3/2022 1:22:05 PM |
| Audio File Name : | 4bk2022-60043_20220803-132205.mp3 |
| Audio File Size : | 101514 KB |
| Audio Run Time : | [03:31:29] (hh:mm:ss) |

---

**Help using this file:**

An audio file is embedded as an attachment in this PDF document. To listen to the file, click the Attachments tab or the Paper Clip icon. Select the Audio File and click Open.

**MPEG Layer-3 audio coding technology from Fraunhofer IIS and Thomson.**

This digital recording is a copy of a court proceeding and is provided as a convenience to the public.  In accordance with 28 U.S.C. § 753 (b) "[n]o transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record."

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

### NOTICE OF RE-SET HEARING
### [Related to ECF No. 15]

PLEASE TAKE NOTICE that a hearing regarding David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker's (collectively, the Connecticut Plaintiffs) *Emergency Motion for Relief from the Automatic Stay* (the Emergency Motion) [Dkt. 15] that was originally scheduled for Friday, August 5, 2022 has been continued and will be heard on Wednesday, August 24, 2022 at 10:00 a.m. (central standard time) before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, 515 Rusk, 4th Floor, Courtroom 404, Houston, Texas 77002.

PLEASE TAKE FURTHER NOTICE that this hearing will be conducted in person, by telephone, and by remote video conference.  Parties wishing to participate in the hearing telephonically may do so by dialing **1-832-917-1510** and entering conference code **590153** when prompted.  Parties may also participate via remote video conference by going to **https://www.gotomeet.me/JudgeLopez** and clicking the "join the meeting" button; parties may join by entering the meeting code: **JudgeLopez**.

001290

Respectfully submitted this 4th day of August 2022.

/s/ Ryan E. Chapple

Ryan E. Chapple
State Bar No. 24036354
rchapple@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile
and

Randy W. Williams
State Bar No. 21566850
rww@bymanlaw.com
**BYMAN & ASSOCIATES PLLC**
7924 Broadway, Suite 104
Pearland, Texas 77581
281-884-9262
**ATTORNEYS FOR CONNECTICUT
PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Hearing has been served on counsel for Debtor, Debtor, and all parties receiving or entitled to notice through CM/ECF on this 4th day of August 2022.

/s/ Ryan E. Chapple

Ryan E. Chapple

001291

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

<u>**INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND**</u>
<u>**PROVIDING PARTIAL ADEQUATE PROTECTION**</u>

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>" or "<u>FSS</u>") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "<u>Motion</u>"). In the Motion, the Debtor requested, *inter alia*, entry of this interim order (this "<u>Order</u>") pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "<u>Bankruptcy Code</u>"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court, having considered the Motion, and having held an interim hearing on the Motion on August 3, 2022 (the "<u>Interim Hearing</u>"), and having considered the evidence presented or proffered and the statements and representations of the parties on the record at the Interim Hearing; and all objections, if any, to the entry of this Interim Order having been resolved by agreement or order of the Court or overruled; and after due deliberation and consideration and sufficient cause appearing therefor;

1.  <u>The Chapter 11 Case</u>. On July 29, 2022 (the "<u>Petition Date</u>") the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas (this "<u>Court</u>").

2.  <u>Debtor-in-Possession</u>. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code. To date, no trustee or examiner

has been appointed in this Case. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

3.     <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and the Local Rules of this Court (the "<u>Local Rules</u>").

4.     <u>Committee Formation</u>.  To date, no official committee (a "<u>Committee</u>") of unsecured creditors, equity interest holders, or other parties in interest has been appointed in the Case.

5.     <u>Notice</u>. On July 29, 2022, the Debtor served copies of the Motion and notice of the Interim Hearing to all creditors and parties in interest entitled to such notice in compliance with Bankruptcy Rules 2002, 4001, 9014, and the Local Rules, including: (i) the Office of the United States Trustee for this District, (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtor's estate, (iii) PQPR Holdings Limited, LLC Trust ("<u>PQPR</u>"), and (vi) any other secured parties of record. Under the circumstances, such notice of the Interim Hearing and the emergency relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rule 4001 and the Local Rules, and no other or further notice of the Interim Hearing or the relief granted in this Interim Order is necessary or required.

6.     <u>Immediate Need for Use of Cash Collateral</u>.  The Debtor asserts that an immediate and critical need exists for the Debtor to use the alleged cash collateral[1] of PQPR as set forth in the budget defined below (the "<u>Cash Collateral</u>") in order to continue the operation of its business. Without such use of Cash Collateral, the Debtor asserts that it will not be able to pay post-petition direct operating expenses and obtain goods and services needed to carry on its business in a manner that will avoid irreparable harm to the Debtor's estate. The Debtor further asserts that its ability to use Cash Collateral is necessary to preserve and maintain the going concern value of the Debtor's estate.

---

[1] As defined at 11 U.S.C. § 363(a).

7.      <u>Conditional Consent to Use of Cash Collateral</u>. The Debtor seeks authorization to use Cash Collateral to pay the Debtor's ordinary and necessary operating expenses set forth in the budget attached to this Order as Exhibit A (the "<u>Budget</u>") for the period (the "<u>Interim Period</u>") from the Petition Date through and including August 26, 2022 (the "<u>Termination Date</u>"). The lender has agreed to the Debtor's use of Cash Collateral during the Interim Period exclusively in accordance with the terms, conditions, and limitations set forth in this Order and the Budget.]

8.      <u>Good Cause/Fair and Reasonable Terms</u>. The Debtor asserts that good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the business and operations of the Debtor and permit the Debtor to maintain the going concern value of its business. The use of Cash Collateral authorized hereunder is necessary, essential, and appropriate and is in the best interest of, and will benefit, the Debtor, its creditors, and the Debtor's bankruptcy estate as it will, among other things, provide the Debtor with the necessary liquidity to (i) avoid immediate and irreparable harm to the Debtor and its bankruptcy estate; and (ii) preserve and maximize the value of the Debtor's business and assets. The terms and conditions of the use of Cash Collateral and the security interests, liens, rights, and priorities granted to the lenders hereunder are fair and appropriate under the circumstances.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      <u>Motion Granted</u>. The Motion is hereby granted on an interim basis as set forth herein.

2.      <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.      <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("DIP") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>").  All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor

shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.      <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral to pay the items set forth in the Budget, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.      <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  Payments to any insider during the Interim Period shall not exceed $20,000 in the aggregate.

6.      <u>Payment to PQPR for Inventory Purchase</u>. Notwithstanding the limitation on payments to insiders set forth in the preceding paragraph, the Debtor is authorized to use Cash Collateral to pay PQPR $250,000 as provided in the Budget for "Repay PQPR Inventory" (the "<u>PQPR Payment</u>").  The PQPR Payment shall not be used to pay down the PQPR Notes (as defined in the Motion).  Creditors and parties in interest shall have thirty (30) days from the date a notice is filed on the docket that the PQPR Payment has been issued to object to the appropriateness of that payment and file pleadings with the Court seeking to clawback the PQPR Payment.

7.      <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.      <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall

remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.    <u>Adequate Protection – Replacement Liens</u>.      As adequate protection for any diminution in value of each of the Pre-Petition Lender's interest in the Debtor's collateral, if any, including Cash Collateral, resulting from the imposition of the automatic stay with respect to the Collateral and/or the Debtor's use, sale or lease of the Collateral during the Case (the "<u>Diminution in Value</u>"), the Pre-Petition Lender is hereby granted, effective as of the Petition Date, valid, binding, enforceable, and automatically perfected liens (the "<u>Replacement Liens</u>") in all currently owned or hereafter acquired property and assets of the Debtor, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising (excluding avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code), and all proceeds and products of the foregoing (collectively, the "<u>Adequate Protection Collateral</u>") to the same extent as existed on the Petition Date. The Replacement Liens granted pursuant to this Order shall be subject to the Carve Out.

10.    <u>Carve Out</u>. The Replacement Liens and Adequate Protection Priority Claim granted herein shall be subject to (a) unpaid fees payable to the Clerk of the Bankruptcy Court or the United States Trustee; (b) subject to the Budget, court-approved administrative expense claims of estate professionals, employed pursuant to order of this Court (collectively, "Estate Professionals"), for incurred but unpaid fees, expenses and other costs; fees and expenses of the appointed Subchapter V Trustee (all such carve-out amounts referenced above, collectively, the "Carve Out").

11.    <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

12. <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, the Subchapter V Trustee, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

13. <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on August 24, 2022, at 10:00 a.m. Central time.

Houston, Texas
Dated: August ___, 2022

_____
CHRISTOPHER LOPEZ
UNITED STATES BANKRUPTCY JUDGE

# Forecasted Interim Cash Collateral Budget

**Between July 29, 2022 and August 26, 2022**

| Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 |
|---|---|---|---|---|
| Week Number | 1 | 2 | 3 | 4 |
| **Income** | | | | |
| Product Sales | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 |
| Advertising | - | - | - | 480,166.46 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 |
| **Total Income** | **598,630.26** | **598,630.26** | **598,630.26** | **1,078,796.72** |
| **Selling & Product Costs** | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) |
| Repay PQPR Inventory | - | (250,000.00) | - | - |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) |
| eCommerce Store Maintenance | (27,270.00) | - | - | - |
| Texas Sales Tax | (5,337.87) | - | - | - |
| **Total Cost of Goods Sold** | **(262,569.67)** | **(479,961.80)** | **(229,961.80)** | **(229,961.80)** |
| **Operating Expenses** | | | | |
| **Advertising & Promotion** | | | | |
| Advertising & Promotion | (3,041.98) | - | - | - |
| Print Media | (3,000.00) | - | - | - |
| Radio Show Advertising | (11,500.00) | - | - | - |
| **Total Advertising & Promotion** | **(17,541.98)** | **-** | **-** | **-** |
| **Computer/IT/IP Expense** | | | | |
| Internet & TV services | (2,082.90) | - | (1,608.39) | - |
| Software License Fees | (140.80) | - | - | - |
| Server Hosting Service | (28,595.13) | - | - | - |
| CDN Video Cloud Storage | (55,728.00) | - | - | - |
| Satellite Service | (137,282.93) | - | - | - |
| Imaging License Fee | (9,201.25) | - | - | - |
| Software & Apps | (5,000.00) | - | - | - |
| Website Hosting | - | - | (266.50) | - |
| **Total Computer/IT/IP Expense** | **(238,031.01)** | **-** | **(1,874.89)** | **-** |
| Insurance | (2,166.50) | | | |
| **Office & Administrative Expense** | | | | |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) |
| Equipment Rental | (1,989.90) | - | - | - |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) |
| **Total Office & Administrative Expense** | **(2,318.36)** | **(328.46)** | **(328.46)** | **(328.46)** |
| | | | | |
| Outsourced Services | - | - | - | - |
| Consulting Services | - | - | - | - |
| **Utilities** | | | | |
| Utility Deposit | (10,000.00) | | | |
| Electricity | - | - | (5,107.63) | - |
| HVAC | (256.19) | - | - | - |
| CAM Charges | (20,364.16) | - | - | - |
| Water & Sewer | (1,708.55) | - | - | - |
| Gas Service | (132.09) | - | - | - |
| Pest Control | (244.65) | - | - | - |
| Waste Management | (351.81) | - | - | - |
| **Total Utilities** | **(33,057.46)** | **-** | **(5,107.63)** | **-** |
| **Occupancy** | | | | |
| Rent | (33,408.51) | - | - | - |
| Office Security | (31,111.90) | - | - | - |
| Repair & Maintenance - Building | (1,777.19) | - | - | - |
| Janitorial | (5,983.33) | - | - | - |



EXHIBIT

0012**A**3

| Period+A5:E83 | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 |
|---|---|---|---|---|
| **Total Occupancy** | **(72,280.93)** | **-** | **-** | **-** |
| Supplies | (1,258.02) | - | - | - |
| Telephone | (18,337.88) | - | - | |
| **Personnel Expenses** | | | | |
| Salaries & Wages - Base | (168,467.44) | - | (168,467.44) | - |
| Payroll Tax | (13,087.76) | - | (13,087.76) | - |
| Alex Jones Salary | (10,000.00) | - | (10,000.00) | - |
| **Total Personnel Expenses** | **(191,555.20)** | **-** | **(191,555.20)** | **-** |
| **Travel** | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) |
| Vehicle Leases | - | (1,470.56) | - | - |
| **Total Travel Expenses** | **(99.69)** | **(1,570.25)** | **(99.69)** | **(99.69)** |
| **Total Operating Expenses** | **(576,647.03)** | **(1,898.71)** | **(198,965.88)** | **(428.15)** |
| ***Non-Operating Expenses*** | | | | |
| Payment on PQPR Note | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) |
| AMEX Payment | - | - | - | - |
| **Total Other Expenses** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** |
| **Professional Fees** | | | | |
| CRO Fees | - | - | - | - |
| Financial Adviosr Fee | - | - | - | - |
| Shannon & Lee LLP | - | - | - | - |
| Ray Battaglia | - | - | - | - |
| **Total Professional Fees** | **-** | **-** | **-** | **-** |
| **Total Cash Flow** | **$ (245,586.44)** | **$ 111,769.75** | **$ 164,702.59** | **$ 843,406.77** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Case No. 22-60043 |
| FREE SPEECH SYSTEMS, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | |

**ORDER (I) APPROVING DEBTOR'S PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (II) APPROVING ADEQUATE ASSURANCE PROCEDURES, (III) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>") [1] of the Debtor for entry of an order (this "<u>Order</u>"): approving the Proposed Adequate Assurance of payment for future Utility Services; approving the Adequate Assurance Procedures for resolving Additional Assurance Requests; prohibiting Utility Providers from altering, refusing or discontinuing services; and granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

"Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing (if any) establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Debtor shall cause a copy of the Motion and this Order to be served on each Utility Provider listed on the Utility Services List no later than two business days after the date this Order is entered.

2.     The Debtor's deposit of cash in a segregated account on the Debtor's books in an amount equal to two weeks average utility bills together with its ability to pay for future utility services in the ordinary course of business subject to the Adequate Assurance Procedures, shall constitute adequate assurance of future payment to the Utility Providers as required by Bankruptcy Code section 366.

3.     The following "Adequate Assurance Procedures" are hereby approved:

(i)     Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Notice Parties. An Additional Assurance Request may be made at any time.

(ii)    Any Additional Assurance Request must: (i) be in writing; (ii) identify the location for which the Utility Services are provided; (iii) summarize the Debtor's payment history relevant to the affected account(s), including any security deposits; and (iv) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

(iii)   Upon the Debtor's receipt of any Additional Assurance Request, the Debtor shall promptly negotiate with such Utility Provider to resolve such Utility Provider's Additional Assurance Request.

(iv)    The Debtor may, without further order from the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and the Debtor may, in connection with any such agreement, provide such Utility Provider with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments or other forms of security if the Debtor believes that such adequate assurance is reasonable in their business judgment,

2

001301

subject to the terms of any collateral or other financing order entered by the Court; provided, however, that the Debtor shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in these chapter 11 cases and the U.S. Trustee upon request.

(v)    If the Debtor and the Utility Provider are not able to reach an alternative resolution within 14 days of receipt of the Additional Assurance Request, the Debtor will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing"), pursuant to Bankruptcy Code section 366(c)(3). Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing or discontinuing Utility Services to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

4.    If an amount relating to Utility Services provided postpetition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request additional adequate assurance by following the Adequate Assurance Procedures and providing notice to: (i) the Debtor and its counsel and the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002 (collectively, the "Notice Parties").

5.    The Utility Providers are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures.

6.    Unless and until a Utility Provider files an objection or serves an Additional Assurance Request, such Utility Provider shall be: (i) deemed to have received adequate assurance of payment that is "satisfactory" to such Utility Provider in compliance with Bankruptcy Code section 366 and (ii) forbidden from (a) discontinuing, altering or refusing services to, or discriminating against, the Debtor on account of any unpaid prepetition charges, the commencement of these chapter 11 cases or any perceived inadequacy of the Proposed Adequate Assurance, and (b) requiring additional assurance of payment other than the Proposed Adequate Assurance.

7.    The Debtor is authorized, following a time period of 14 days afforded to (i) the

affected Utility Provider and (ii) counsel to Notice Parties to object, and the Debtor having received no objection from any such Utility Provider, to remove any Utility Provider from the Utility Services List. If an objection is received, the Debtor shall request a hearing before this Court at the next omnibus hearing date, or such other date that the Debtor and the Utility Provider may agree. The Debtor shall not deduct from the Adequate Assurance Deposit the amount set aside for any Utility Provider that the Debtor seeks to terminate or delete from the Utility Services List unless and until the 14-day notice period has passed and the Debtor has not received any objection to the termination or deletion of such Utility Provider from the Utility Services List, or until such objection has been resolved consensually or by order of the Court.

8.     The Debtor is authorized to add any Utility Provider to the Utility Services List; provided that such amended Utility Services List shall be served on the Notice Parties. This Order shall be binding upon any subsequently-identified Utility Provider. To the extent the Debtor identifies additional Utility Providers, the Debtor will serve on such Utility Provider, within two business days, a copy this Order, including the Adequate Assurance Procedures, and provide such Utility Provider a time period of 14 days to object to the inclusion of such Utility Provider on the Utility Services List. If an objection is received, the Debtor shall request a hearing before this Court. In addition, the Debtor will provide an Adequate Assurance Deposit in an amount equal to the cost for services for 14 days based on historical average payments during the preceding 12 months for any Utility Provider added to the Utility Services List as set forth herein.

9.     The inclusion of any entity in, as well as any omission of any entity from, the Utility Services List shall not be deemed an admission by the Debtor that such entity is, or is not, a "utility" within the meaning of Bankruptcy Code section 366, and the Debtor reserves all rights with respect thereto.

10.     Notwithstanding the relief granted in this Order and any actions taken pursuant to

001303

KS

such relief, nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's, or any other party in interest's, right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt or reject any agreement, contract or lease pursuant to Bankruptcy Code section 365; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's, or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor that any liens (contractual, common law, statutory or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity or perfection or to seek avoidance of all such liens.

11.     Notwithstanding anything in this Order to the contrary, any payment to be made, or any authorization contained hereunder shall be subject to the terms of any orders authorizing use of cash collateral approved by this Court in the chapter 11 case.

12.     The Adequate Assurance Procedures set forth herein are for all Utility Providers providing Utility Services to the Debtor and are not limited to those parties or entities listed on the Utility Services List.

13.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

14.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a), and the Bankruptcy Local Rules are satisfied by such notice.

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are

001304

immediately effective and enforceable upon entry. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

16.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated: August ____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

6

001305

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

**ORDER (A) AUTHORIZING THE DEBTOR TO PAY PREPETITION OBLIGATIONS**
**OF CERTAIN CRITICAL VENDORS AND (B) GRANTING RELATED RELIEF**

Upon the *Debtor's Motion for Order (A) Authorizing the  Debtor to Pay Prepetition Obligations of Certain  Critical Vendors and (B) Granting Related Relief* (the "Motion")[1] filed on July 29, 2022; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

2.     1.     The Debtor is authorized to pay in the ordinary course of its business to (a) pay the prepetition obligations owed to the Critical Vendors in the amounts set forth in Schedule 1 attached hereto as those obligations come due and shall consult with the Subchapter V Trustee and provide requested information with respect to each proposed payment in advance of remitting the same to Critical Vendors. Any party that accepts payments from the Debtor on account of a

---

[1] Capitalized terms used by not otherwise defined in this Order shall have the meanings ascribed to such terms in the Motion.

Critical Vendor claim shall be deemed to have agreed to the terms and provisions of this order. The payment of the Obligations is conditioned upon the agreement of each Critical Vendor to continue supplying services on terms and based on practices and programs in effect between the Critical Vendor and the Debtor in the year prior to the Petition Date (the "Customary Trade Terms"), or such other trade terms as are agreed to by the Debtor and the Critical Vendor.

3.      The Debtor shall have the right to negotiate new trade terms with the Critical Vendor as a condition to payment of a portion of the obligations owed to each Critical Vendor (the "Obligations").

4.      Any payments made on Obligations pursuant to this Motion shall be applied first to any claim of such Critical Vendors under section 503(b)(9) of the Bankruptcy Code.  Nothing in this Motion or any order of this Court approving this Motion should be construed as a waiver by the Debtor of its rights to contest any invoice of a Critical Vendor under applicable non-bankruptcy law.

5.      If a Critical Vendor refuses to supply services to the Debtor on Customary Trade Terms following payment of any portion of the Obligations, the Debtor, in its discretion, and without further order of the Court, may deem any payments made to the Critical Vendor on account of the Obligations to have been in payment of then-outstanding post-petition claims of the Critical Vendor and to terminate the critical vendor status of such a vendor (the "Terminated Obligor").

6.      In the event the Debtor chooses not to terminate the critical vendor status of a Critical Vendor immediately upon a refusal by a Critical Vendor to provide services in accordance with Customary Trade Terms, the Debtor shall not be deemed to have waived the ability to terminate a Critical Vendor or waived the ability to deem any payments made to the

Critical Vendor on account of the Obligations to have been in payment of then-outstanding post-petition claims of such Critical Vendor or to compel disgorgement of payments made to such Critical Vendor pursuant to this order.

7.     In the event the Debtor exercises the rights set forth in the preceding paragraph, the Terminated Obligor shall be required to immediately return any payments made on account of its Obligations to the extent that such payments exceed the post-petition amounts then owed to the Terminated Obligor, without giving effect to any rights of setoff or reclamation. In the event that the Terminated Obligor refuses to acknowledge such recharacterization and to issue the repayment, the Debtor is authorized to compel such recharacterization and repayment by a motion on such notice as is required by this Court. In addition, the Debtor shall have the right to compel the disgorgement of the Critical Vendor payment repayment by a motion on such notice as is required by this Court.

8.     The debtor shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Order, including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment, as further described and classified in the Motion; and (d) the payment date. On or before the date that is thirty (30) days from entry of this Order, the Debtor shall provide a copy of such matrix/schedule to the U.S. Trustee, the Subchapter V trustee appointed in this case, and any committee appointed in this Chapter 11 Case. Thereafter, the Debtor shall attach a copy of such matrix/schedule to its monthly operating reports filed in the Chapter 11 Case containing the same information set forth above. Parties in interest shall then have fourteen (14) calendar days to file written objections to Critical Third-Party Vendor status or any payment made by the Debtor pursuant to this Order. If the

objection is sustained, the Critical Third-Party Vendor may be required to disgorge any such payments.

9.      Nothing in this Order or the Motion shall limit (a) the Debtor's authority to pay obligations to creditors that were incurred by the Debtor after the Petition Date.

10.     Nothing in this Order or any actions taken pursuant to such relief is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any ground, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested in this motion or a finding that any particular claim is an administrative expense claim or other priority claim, (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate, (g) a waiver or limitation of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (h) a concession from the Debtor that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

11.     Any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's or any other party in interest's rights to subsequently dispute such claim.

12.      This Order shall be immediately effective and enforceable upon its entry and shall not be stayed by Bankruptcy Rule 6004(h), if applicable.

13.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

001310

## SCHEDULE 1 TO ORDER

| Vendor | Description | Amount of Critical Vendor Claim | Address | City | State | Zip |
|---|---|---|---|---|---|---|
| Addshoppers, Inc | E Commerce Store | $ 2,191.93 | 222 S. Church Street #410M | Charlotte | NC | 28202 |
| Amazon Web Services | E Commerce Store | $ 77,000.00 | | | | |
| ATXHD,Inc | Satellite uplink | $ 19,334.48 | 602 S. Cowal Drive | Spicewood | TX | 78669 |
| Austin Security & Investigation Solution | Uniformed Security | $ 28,044.34 | P.O. Box 2904 | Pflugerville | TX | 78691 |
| Balcones Recycling Inc. | Trash / Dumpster Service | $ 386.99 | P.O. Box 679912 | Dallas | TX | 75267 |
| Cloudflare, Inc | IT / E Commerce Security | $ 124,162.64 | Dept LA 24609 | Pasadena | CA | 91185-4609 |
| eCommerce CDN LLC | E Commerce Store | $ 1,070.85 | 221 E 63rd Street | Savannah | GA | 31405 |
| Edgecast, Inc. | Radio Station Link | $ 6,449.30 | Dept CH 18120 | Palatine | IL | 60055 |
| Frost Insurance Agency | Company Insurance | $ 2,694.52 | 401 Congress Ave., 14th Floor | Austin | TX | 78701 |
| Getty Images, Inc | Licenses for Pictures / Video | $ 10,121.38 | P.O. Box 953604 | St. Louis | MO | 63195-3604 |
| Haivision Network Video | Streaming Bandwidth | $ 54,851.50 | Dept CH 19848 | Palatine | IL | 60055-9848 |
| Magento | E Commerce Store | $ 7,792.40 | P.O. Box 204125 | Dallas | TX | 75320-4105 |
| mongoDB Cloud | Cloud Storage | $ 3,054.44 | 1633 Broadway 39th Floor | New York | NY | 10019 |
| Protection 1 Alarm | Alarm Service | $ 3,461.42 | | | | |
| Synergy North America Inc | e commerce software | $ 2,061.49 | 11001 W. 120th Ave. Suite 400 | Broomfield | CO | 80021 |
| The Hartford | Company Insurance | $ 2,780.35 | | | | |
| Travelers | Company Insurance | $ 673.48 | | | | |
| TrustArc | | $ 1,221.46 | | | | |
| WMQM-AM 1600 | Advertising | $ 2,291.67 | 21 Stephen Hill Rd | Atoka | TN | 38004 |
| WWCR | Advertising | $ 9,900.00 | 1300 WWCR Avenue | Nashville | TN | 37218-3800 |
| | **Total Critical Vendors** | $ 359,544.62 | | | | |

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 05, 2022
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

<u>**INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND**</u>
<u>**PROVIDING PARTIAL ADEQUATE PROTECTION**</u>

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>" or "<u>FSS</u>") in the above-captioned chapter 11 case (the "<u>Case</u>"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "<u>Motion</u>"). In the Motion, the Debtor requested, *inter alia*, entry of this interim order (this "<u>Order</u>") pursuant to Sections 105, 361, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "<u>Bankruptcy Code</u>"), and in accordance with Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court, having considered the Motion, and having held an interim hearing on the Motion on August 3, 2022 (the "<u>Interim Hearing</u>"), and having considered the evidence presented or proffered and the statements and representations of the parties on the record at the Interim Hearing; and all objections, if any, to the entry of this Interim Order having been resolved by agreement or order of the Court or overruled; and after due deliberation and consideration and sufficient cause appearing therefor;

1. <u>The Chapter 11 Case</u>. On July 29, 2022 (the "<u>Petition Date</u>") the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the ~~Western~~ Southern District of Texas (this "<u>Court</u>").

2. <u>Debtor-in-Possession</u>. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code. To date, no trustee or examiner

has been appointed in this Case. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

3.     <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and the Local Rules of this Court (the "<u>Local Rules</u>").

4.     <u>Committee Formation</u>. To date, no official committee (a "<u>Committee</u>") of unsecured creditors, equity interest holders, or other parties in interest has been appointed in the Case.

5.     <u>Notice</u>. On July 29, 2022, the Debtor served copies of the Motion and notice of the Interim Hearing to all creditors and parties in interest entitled to such notice in compliance with Bankruptcy Rules 2002, 4001, 9014, and the Local Rules, including: (i) the Office of the United States Trustee for this District, (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtor's estate, (iii) PQPR Holdings Limited, LLC Trust ("<u>PQPR</u>"), and (vi) any other secured parties of record. Under the circumstances, such notice of the Interim Hearing and the emergency relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rule 4001 and the Local Rules, and no other or further notice of the Interim Hearing or the relief granted in this Interim Order is necessary or required.

6.     <u>Immediate Need for Use of Cash Collateral</u>. The Debtor asserts that an immediate and critical need exists for the Debtor to use the alleged cash collateral[1] of PQPR as set forth in the budget defined below (the "<u>Cash Collateral</u>") in order to continue the operation of its business. Without such use of Cash Collateral, the Debtor asserts that it will not be able to pay post-petition direct operating expenses and obtain goods and services needed to carry on its business in a manner that will avoid irreparable harm to the Debtor's estate. The Debtor further asserts that its ability to use Cash Collateral is necessary to preserve and maintain the going concern value of the Debtor's estate.

---

[1] As defined at 11 U.S.C. § 363(a).

7.  <u>Conditional Consent to Use of Cash Collateral</u>. The Debtor seeks authorization to use Cash Collateral to pay the Debtor's ordinary and necessary operating expenses set forth in the budget attached to this Order as Exhibit A (the "<u>Budget</u>") for the period (the "<u>Interim Period</u>") from the Petition Date through and including August 26, 2022 (the "<u>Termination Date</u>"). The lender has agreed to the Debtor's use of Cash Collateral during the Interim Period exclusively in accordance with the terms, conditions, and limitations set forth in this Order and the Budget.

8.  <u>Good Cause/Fair and Reasonable Terms</u>. The Debtor asserts that good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the business and operations of the Debtor and permit the Debtor to maintain the going concern value of its business. The use of Cash Collateral authorized hereunder is necessary, essential, and appropriate and is in the best interest of, and will benefit, the Debtor, its creditors, and the Debtor's bankruptcy estate as it will, among other things, provide the Debtor with the necessary liquidity to (i) avoid immediate and irreparable harm to the Debtor and its bankruptcy estate; and (ii) preserve and maximize the value of the Debtor's business and assets. The terms and conditions of the use of Cash Collateral and the security interests, liens, rights, and priorities granted to the lenders hereunder are fair and appropriate under the circumstances.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.  <u>Motion Granted</u>. The Motion is hereby granted on an interim basis as set forth herein.

2.  <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.  <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor

shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.      <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral to pay the items set forth in the Budget, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.      <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  Payments to any insider during the Interim Period shall not exceed $20,000 in the aggregate.

6.      <u>Payment to PQPR for Inventory Purchase</u>. Notwithstanding the limitation on payments to insiders set forth in the preceding paragraph, the Debtor is authorized to use Cash Collateral to pay PQPR $250,000 as provided in the Budget for "Repay PQPR Inventory" (the "<u>PQPR Payment</u>").  The PQPR Payment shall not be used to pay down the PQPR Notes (as defined in the Motion).  Creditors and parties in interest shall have thirty (30) days from the date a notice is filed on the docket that the PQPR Payment has been issued to object to the appropriateness of that payment and file pleadings with the Court seeking to clawback the PQPR Payment.

7.      <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.      <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall

remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9. <u>Adequate Protection – Replacement Liens</u>.        As adequate protection for any diminution in value of each of the Pre-Petition Lender's interest in the Debtor's collateral, if any, including Cash Collateral, resulting from the imposition of the automatic stay with respect to the Collateral and/or the Debtor's use, sale or lease of the Collateral during the Case (the "<u>Diminution in Value</u>"), the Pre-Petition Lender is hereby granted, effective as of the Petition Date, valid, binding, enforceable, and automatically perfected liens (the "<u>Replacement Liens</u>") in all currently owned or hereafter acquired property and assets of the Debtor, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising (excluding avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code), and all proceeds and products of the foregoing (collectively, the "<u>Adequate Protection Collateral</u>") to the same extent as existed on the Petition Date. The Replacement Liens granted pursuant to this Order shall be subject to the Carve Out.

10. <u>Carve Out</u>. The Replacement Liens and Adequate Protection Priority Claim granted herein shall be subject to (a) unpaid fees payable to the Clerk of the Bankruptcy Court or the United States Trustee; (b) subject to the Budget, court-approved administrative expense claims of estate professionals, employed pursuant to order of this Court (collectively, "<u>Estate Professionals</u>"), for incurred but unpaid fees, expenses and other costs; fees and expenses of the appointed Subchapter V Trustee (all such carve-out amounts referenced above, collectively, the "<u>Carve Out</u>").

11. <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

12.      <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, the Subchapter V Trustee, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

13.      <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on August 24, 2022, at 10:00 a.m. Central time.

Signed:  August 05, 2022

_____
Christopher Lopez
United States Bankruptcy Judge

001317

# Forecasted Interim Cash Collateral Budget

### Between July 29, 2022 and August 26, 2022

| Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 |
|---|---|---|---|---|
| Week Number | 1 | 2 | 3 | 4 |
| **Income** | | | | |
| Product Sales | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 |
| Advertising | - | - | - | 480,166.46 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 |
| **Total Income** | **598,630.26** | **598,630.26** | **598,630.26** | **1,078,796.72** |
| **Selling & Product Costs** | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) |
| Repay PQPR Inventory | - | (250,000.00) | - | - |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) |
| eCommerce Store Maintenance | (27,270.00) | - | - | - |
| Texas Sales Tax | (5,337.87) | - | - | - |
| **Total Cost of Goods Sold** | **(262,569.67)** | **(479,961.80)** | **(229,961.80)** | **(229,961.80)** |
| **Operating Expenses** | | | | |
| **Advertising & Promotion** | | | | |
| Advertising & Promotion | (3,041.98) | - | - | - |
| Print Media | (3,000.00) | - | - | - |
| Radio Show Advertising | (11,500.00) | - | - | - |
| **Total Advertising & Promotion** | **(17,541.98)** | **-** | **-** | **-** |
| **Computer/IT/IP Expense** | | | | |
| Internet & TV services | (2,082.90) | - | (1,608.39) | - |
| Software License Fees | (140.80) | - | - | - |
| Server Hosting Service | (28,595.13) | - | - | - |
| CDN Video Cloud Storage | (55,728.00) | - | - | - |
| Satellite Service | (137,282.93) | - | - | - |
| Imaging License Fee | (9,201.25) | - | - | - |
| Software & Apps | (5,000.00) | - | - | - |
| Website Hosting | - | - | (266.50) | - |
| **Total Computer/IT/IP Expense** | **(238,031.01)** | **-** | **(1,874.89)** | **-** |
| Insurance | (2,166.50) | | | |
| **Office & Administrative Expense** | | | | |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) |
| Equipment Rental | (1,989.90) | - | - | - |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) |
| **Total Office & Administrative Expense** | **(2,318.36)** | **(328.46)** | **(328.46)** | **(328.46)** |
| | | | | |
| Outsourced Services | - | - | - | - |
| Consulting Services | - | - | - | - |
| **Utilities** | | | | |
| Utility Deposit | (10,000.00) | | | |
| Electricity | - | - | (5,107.63) | - |
| HVAC | (256.19) | - | - | - |
| CAM Charges | (20,364.16) | - | - | - |
| Water & Sewer | (1,708.55) | - | - | - |
| Gas Service | (132.09) | - | - | - |
| Pest Control | (244.65) | - | - | - |
| Waste Management | (351.81) | - | - | - |
| **Total Utilities** | **(33,057.46)** | **-** | **(5,107.63)** | **-** |
| **Occupancy** | | | | |
| Rent | (33,408.51) | - | - | - |
| Office Security | (31,111.90) | - | - | - |
| Repair & Maintenance - Building | (1,777.19) | - | - | - |
| Janitorial | (5,983.33) | | | |



EXHIBIT

001318

A

| Period+A5:E83 | 07/30/2022-<br>08/05/2022 | 08/06/2022-<br>08/12/2022 | 08/13/2022-<br>08/19/2022 | 08/20/2022-<br>08/26/2022 |
|---|---|---|---|---|
| **Total Occupancy** | **(72,280.93)** | **-** | **-** | **-** |
| Supplies | (1,258.02) | - | - | - |
| Telephone | (18,337.88) | - | - | |
| **Personnel Expenses** | | | | |
| Salaries & Wages - Base | (168,467.44) | - | (168,467.44) | - |
| Payroll Tax | (13,087.76) | - | (13,087.76) | - |
| Alex Jones Salary | (10,000.00) | - | (10,000.00) | - |
| **Total Personnel Expenses** | **(191,555.20)** | **-** | **(191,555.20)** | **-** |
| **Travel** | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) |
| Vehicle Leases | - | (1,470.56) | - | - |
| **Total Travel Expenses** | **(99.69)** | **(1,570.25)** | **(99.69)** | **(99.69)** |
| **Total Operating Expenses** | **(576,647.03)** | **(1,898.71)** | **(198,965.88)** | **(428.15)** |
| ***Non-Operating Expenses*** | | | | |
| Payment on PQPR Note | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) |
| AMEX Payment | - | - | - | - |
| **Total Other Expenses** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** |
| **Professional Fees** | | | | |
| CRO Fees | - | - | - | - |
| Financial Adviosr Fee | - | - | - | - |
| Shannon & Lee LLP | - | - | - | - |
| Ray Battaglia | - | - | - | - |
| **Total Professional Fees** | **-** | **-** | **-** | **-** |
| **Total Cash Flow** | **$ (245,586.44)** | **$ 111,769.75** | **$ 164,702.59** | **$ 843,406.77** |

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 05, 2022
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 22-60043 |
|  | ) |  |
| FREE SPEECH SYSTEMS, LLC, | ) | Chapter 11 (Subchapter V) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**ORDER (I) APPROVING DEBTOR'S PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (II) APPROVING ADEQUATE ASSURANCE PROCEDURES, (III) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[1] of the Debtor for entry of an order (this "<u>Order</u>"): approving the Proposed Adequate Assurance of payment for future Utility Services; approving the Adequate Assurance Procedures for resolving Additional Assurance Requests; prohibiting Utility Providers from altering, refusing or discontinuing services; and granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1

"Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing (if any) establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.       The Debtor shall cause a copy of the Motion and this Order to be served on each Utility Provider listed on the Utility Services List no later than two business days after the date this Order is entered.

2.       The Debtor's deposit of cash in a segregated account on the Debtor's books in an amount equal to two weeks average utility bills together with its ability to pay for future utility services in the ordinary course of business subject to the Adequate Assurance Procedures, shall constitute adequate assurance of future payment to the Utility Providers as required by Bankruptcy Code section 366.

3.       The following "Adequate Assurance Procedures" are hereby approved:

(i)       Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Notice Parties. An Additional Assurance Request may be made at any time.

(ii)      Any Additional Assurance Request must: (i) be in writing; (ii) identify the location for which the Utility Services are provided; (iii) summarize the Debtor's payment history relevant to the affected account(s), including any security deposits; and (iv) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

(iii)     Upon the Debtor's receipt of any Additional Assurance Request, the Debtor shall promptly negotiate with such Utility Provider to resolve such Utility Provider's Additional Assurance Request.

(iv)     The Debtor may, without further order from the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and the Debtor may, in connection with any such agreement, provide such Utility Provider with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments or other forms of security if the Debtor believes that such adequate assurance is reasonable in their business judgment,

2

subject to the terms of any collateral or other financing order entered by the Court; provided, however, that the Debtor shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in these chapter 11 cases and the U.S. Trustee upon request.

(v)     If the Debtor and the Utility Provider are not able to reach an alternative resolution within 14 days of receipt of the Additional Assurance Request, the Debtor will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing"), pursuant to Bankruptcy Code section 366(c)(3). Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing or discontinuing Utility Services to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

4.      If an amount relating to Utility Services provided postpetition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request additional adequate assurance by following the Adequate Assurance Procedures and providing notice to: (i) the **Debtor's counsel** and **(ii)** the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002 (collectively, the "Notice Parties").

5.      The Utility Providers are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures.

6.      Unless and until a Utility Provider files an objection or serves an Additional Assurance Request, such Utility Provider shall be: (i) deemed to have received adequate assurance of payment that is "satisfactory" to such Utility Provider in compliance with Bankruptcy Code section 366 and (ii) forbidden from (a) discontinuing, altering or refusing services to, or discriminating against, the Debtor on account of any unpaid prepetition charges, the commencement of these chapter 11 cases or any perceived inadequacy of the Proposed Adequate Assurance, and (b) requiring additional assurance of payment other than the Proposed Adequate Assurance.

7.      The Debtor is authorized, following a time period of 14 days afforded to (i) the

3

affected Utility Provider and (ii) counsel to Notice Parties to object, and the Debtor having received

no objection from any such Utility Provider, to remove any Utility Provider from the Utility Services

List. If an objection is received, the Debtor shall request a hearing before this Court at the next

omnibus hearing date, or such other date that the Debtor and the Utility Provider may agree. The

Debtor shall not deduct from the Adequate Assurance Deposit the amount set aside for any Utility

Provider that the Debtor seeks to terminate or delete from the Utility Services List unless and until

the 14-day notice period has passed and the Debtor has not received any objection to the termination

or deletion of such Utility Provider from the Utility Services List, or until such objection has been

resolved consensually or by order of the Court.

8.      The Debtor is authorized to add any Utility Provider to the Utility Services List;

provided that such amended Utility Services List shall be served on the Notice Parties. This Order

shall be binding upon any subsequently-identified Utility Provider. To the extent the Debtor

identifies additional Utility Providers, the Debtor will serve on such Utility Provider, within two

business days, a copy this Order, including the Adequate Assurance Procedures, and provide such

Utility Provider a time period of 14 days to object to the inclusion of such Utility Provider on the

Utility Services List. If an objection is received, the Debtor shall request a hearing before this Court.

In addition, the Debtor will provide an Adequate Assurance Deposit in an amount equal to the cost

for services for 14 days based on historical average payments during the preceding 12 months for

any Utility Provider added to the Utility Services List as set forth herein.

9.      The inclusion of any entity in, as well as any omission of any entity from, the Utility

Services List shall not be deemed an admission by the Debtor that such entity is, or is not, a "utility"

within the meaning of Bankruptcy Code section 366, and the Debtor reserves all rights with respect

thereto.

10.     Notwithstanding the relief granted in this Order and any actions taken pursuant to

4

such relief, nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's, or any other party in interest's, right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt or reject any agreement, contract or lease pursuant to Bankruptcy Code section 365; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's, or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor that any liens (contractual, common law, statutory or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity or perfection or to seek avoidance of all such liens.

11.     Notwithstanding anything in this Order to the contrary, any payment to be made, or any authorization contained hereunder shall be subject to the terms of any orders authorizing use of cash collateral approved by this Court in the chapter 11 case.

12.     The Adequate Assurance Procedures set forth herein are for all Utility Providers providing Utility Services to the Debtor and are not limited to those parties or entities listed on the Utility Services List.

13.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

14.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a), and the Bankruptcy Local Rules are satisfied by such notice.

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are

5

immediately effective and enforceable upon entry. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

16.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Signed:  August 05, 2022

Christopher Lopez
United States Bankruptcy Judge

6

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 05, 2022
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| **Debtor.** | § | |

**ORDER (A) AUTHORIZING THE DEBTOR TO PAY PREPETITION OBLIGATIONS**
**OF CERTAIN CRITICAL VENDORS AND (B) GRANTING RELATED RELIEF**

Upon the *Debtor's Motion for Order (A) Authorizing the Debtor to Pay Prepetition Obligations of Certain Critical Vendors and (B) Granting Related Relief* (the "Motion")[1] filed on July 29, 2022; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

2.     1.     The Debtor is authorized to pay in the ordinary course of its business to (a) pay the prepetition obligations owed to the Critical Vendors in the amounts set forth in Schedule 1 attached hereto as those obligations come due and shall consult with the Subchapter V Trustee and provide requested information with respect to each proposed payment in advance of remitting the same to Critical Vendors. Any party that accepts payments from the Debtor on account of a

---

[1] Capitalized terms used by not otherwise defined in this Order shall have the meanings ascribed to such terms in the Motion.

Critical Vendor claim shall be deemed to have agreed to the terms and provisions of this order. The payment of the Obligations is conditioned upon the agreement of each Critical Vendor to continue supplying services on terms and based on practices and programs in effect between the Critical Vendor and the Debtor in the year prior to the Petition Date (the "<u>Customary Trade Terms</u>"), or such other trade terms as are agreed to by the Debtor and the Critical Vendor.

3.     The Debtor shall have the right to negotiate new trade terms with the Critical Vendor as a condition to payment of a portion of the obligations owed to each Critical Vendor (the "<u>Obligations</u>").

4.     Any payments made on Obligations pursuant to this Motion shall be applied first to any claim of such Critical Vendors under section 503(b)(9) of the Bankruptcy Code.  Nothing in this Motion or any order of this Court approving this Motion should be construed as a waiver by the Debtor of its rights to contest any invoice of a Critical Vendor under applicable non-bankruptcy law.

5.     If a Critical Vendor refuses to supply services to the Debtor on Customary Trade Terms following payment of any portion of the Obligations, the Debtor, in its discretion, and without further order of the Court, may deem any payments made to the Critical Vendor on account of the Obligations to have been in payment of then-outstanding post-petition claims of the Critical Vendor and to terminate the critical vendor status of such a vendor (the "<u>Terminated Obligor</u>").

6.     In the event the Debtor chooses not to terminate the critical vendor status of a Critical Vendor immediately upon a refusal by a Critical Vendor to provide services in accordance with Customary Trade Terms, the Debtor shall not be deemed to have waived the ability to terminate a Critical Vendor or waived the ability to deem any payments made to the

Critical Vendor on account of the Obligations to have been in payment of then-outstanding post-petition claims of such Critical Vendor or to compel disgorgement of payments made to such Critical Vendor pursuant to this order.

7.      In the event the Debtor exercises the rights set forth in the preceding paragraph, the Terminated Obligor shall be required to immediately return any payments made on account of its Obligations to the extent that such payments exceed the post-petition amounts then owed to the Terminated Obligor, without giving effect to any rights of setoff or reclamation. In the event that the Terminated Obligor refuses to acknowledge such recharacterization and to issue the repayment, the Debtor is authorized to compel such recharacterization and repayment by a motion on such notice as is required by this Court.  In addition, the Debtor shall have the right to compel the disgorgement of the Critical Vendor payment repayment by a motion on such notice as is required by this Court.

8.      The Debtor shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Order, including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment, as further described and classified in the Motion; and (d) the payment date. On or before the date that is thirty (30) days from entry of this Order, the Debtor shall provide a copy of such matrix/schedule to the U.S. Trustee, the Subchapter V trustee appointed in this case, and any committee appointed in this Chapter 11 Case. Thereafter, the Debtor shall attach a copy of such matrix/schedule to its monthly operating reports filed in the Chapter 11 Case containing the same information set forth above. Parties in interest shall then have fourteen (14) calendar days to file written objections to Critical Third-Party Vendor status or any payment made by the Debtor pursuant to this Order. If the

objection is sustained, the Critical Third-Party Vendor may be required to disgorge any such payments.

9.      Nothing in this Order or the Motion shall limit (a) the Debtor's authority to pay obligations to creditors that were incurred by the Debtor after the Petition Date.

10.      Nothing in this Order or any actions taken pursuant to such relief is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any ground, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested in this motion or a finding that any particular claim is an administrative expense claim or other priority claim, (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate, (g) a waiver or limitation of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (h) a concession from the Debtor that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

11.      Any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's or any other party in interest's rights to subsequently dispute such claim.

12.     This Order shall be immediately effective and enforceable upon its entry and shall not be stayed by Bankruptcy Rule 6004(h), if applicable.

13.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: August 05, 2022

Christopher Lopez
United States Bankruptcy Judge

# SCHEDULE 1 TO ORDER

| Vendor | Description | Amount of Critical Vendor Claim | Address | City | State | Zip |
|--------|-------------|-------------------------------:|---------|------|-------|-----|
| Addshoppers, Inc | E Commerce Store | $ 2,191.93 | 222 S. Church Street #410M | Charlotte | NC | 28202 |
| Amazon Web Services | E Commerce Store | $ 77,000.00 | | | | |
| ATXHD,Inc | Satellite uplink | $ 19,334.48 | 602 S. Cowal Drive | Spicewood | TX | 78669 |
| Austin Security & Investigation Solution | Uniformed Security | $ 28,044.34 | P.O. Box 2904 | Pflugerville | TX | 78691 |
| Balcones Recycling Inc. | Trash / Dumpster Service | $ 386.99 | P.O. Box 679912 | Dallas | TX | 75267 |
| Cloudflare, Inc | IT / E Commerce Security | $ 124,162.64 | Dept LA 24609 | Pasadena | CA | 91185-4609 |
| eCommerce CDN LLC | E Commerce Store | $ 1,070.85 | 221 E 63rd Street | Savannah | GA | 31405 |
| Edgecast, Inc. | Radio Station Link | $ 6,449.30 | Dept CH 18120 | Palatine | IL | 60055 |
| Frost Insurance Agency | Company Insurance | $ 2,694.52 | 401 Congress Ave., 14th Floor | Austin | TX | 78701 |
| Getty Images, Inc | Licenses for Pictures / Video | $ 10,121.38 | P.O. Box 953604 | St. Louis | MO | 63195-3604 |
| Haivision Network Video | Streaming Bandwidth | $ 54,851.50 | Dept CH 19848 | Palatine | IL | 60055-9848 |
| Magento | E Commerce Store | $ 7,792.40 | P.O. Box 204125 | Dallas | TX | 75320-4105 |
| mongoDB Cloud | Cloud Storage | $ 3,054.44 | 1633 Broadway 39th Floor | New York | NY | 10019 |
| Protection 1 Alarm | Alarm Service | $ 3,461.42 | | | | |
| Synergy North America Inc | e commerce software | $ 2,061.49 | 11001 W. 120th Ave. Suite 400 | Broomfield | CO | 80021 |
| The Hartford | Company Insurance | $ 2,780.35 | | | | |
| Travelers | Company Insurance | $ 673.48 | | | | |
| TrustArc | | $ 1,221.46 | | | | |
| WMQM-AM 1600 | Advertising | $ 2,291.67 | 21 Stephen Hill Rd | Atoka | TN | 38004 |
| WWCR | Advertising | $ 9,900.00 | 1300 WWCR Avenue | Nashville | TN | 37218-3800 |
| | **Total Critical Vendors** | **$ 359,544.62** | | | | |

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 05, 2022
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of this interim order (this "Order") pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court, having considered the Motion, and having held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing"), and having considered the evidence presented or proffered and the statements and representations of the parties on the record at the Interim Hearing; and all objections, if any, to the entry of this Interim Order having been resolved by agreement or order of the Court or overruled; and after due deliberation and consideration and sufficient cause appearing therefor;

1.    The Chapter 11 Case. On July 29, 2022 (the "Petition Date") the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the ~~Western~~ Southern District of Texas (this "Court").

2.    Debtor-in-Possession.    The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code. To date, no trustee or examiner

has been appointed in this Case. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

3.    <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and the Local Rules of this Court (the "<u>Local Rules</u>").

4.    <u>Committee Formation</u>. To date, no official committee (a "<u>Committee</u>") of unsecured creditors, equity interest holders, or other parties in interest has been appointed in the Case.

5.    <u>Notice</u>. On July 29, 2022, the Debtor served copies of the Motion and notice of the Interim Hearing to all creditors and parties in interest entitled to such notice in compliance with Bankruptcy Rules 2002, 4001, 9014, and the Local Rules, including: (i) the Office of the United States Trustee for this District, (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtor's estate, (iii) PQPR Holdings Limited, LLC Trust ("<u>PQPR</u>"), and (vi) any other secured parties of record. Under the circumstances, such notice of the Interim Hearing and the emergency relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rule 4001 and the Local Rules, and no other or further notice of the Interim Hearing or the relief granted in this Interim Order is necessary or required.

6.    <u>Immediate Need for Use of Cash Collateral</u>.  The Debtor asserts that an immediate and critical need exists for the Debtor to use the alleged cash collateral[1] of PQPR as set forth in the budget defined below (the "<u>Cash Collateral</u>") in order to continue the operation of its business. Without such use of Cash Collateral, the Debtor asserts that it will not be able to pay post-petition direct operating expenses and obtain goods and services needed to carry on its business in a manner that will avoid irreparable harm to the Debtor's estate. The Debtor further asserts that its ability to use Cash Collateral is necessary to preserve and maintain the going concern value of the Debtor's estate.

---

[1] As defined at 11 U.S.C. § 363(a).

7.     <u>Conditional Consent to Use of Cash Collateral</u>. The Debtor seeks authorization to use Cash Collateral to pay the Debtor's ordinary and necessary operating expenses set forth in the budget attached to this Order as Exhibit A (the "<u>Budget</u>") for the period (the "<u>Interim Period</u>") from the Petition Date through and including August 26, 2022 (the "<u>Termination Date</u>"). The lender has agreed to the Debtor's use of Cash Collateral during the Interim Period exclusively in accordance with the terms, conditions, and limitations set forth in this Order and the Budget.

8.     <u>Good Cause/Fair and Reasonable Terms</u>. The Debtor asserts that good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the business and operations of the Debtor and permit the Debtor to maintain the going concern value of its business. The use of Cash Collateral authorized hereunder is necessary, essential, and appropriate and is in the best interest of, and will benefit, the Debtor, its creditors, and the Debtor's bankruptcy estate as it will, among other things, provide the Debtor with the necessary liquidity to (i) avoid immediate and irreparable harm to the Debtor and its bankruptcy estate; and (ii) preserve and maximize the value of the Debtor's business and assets. The terms and conditions of the use of Cash Collateral and the security interests, liens, rights, and priorities granted to the lenders hereunder are fair and appropriate under the circumstances.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.     <u>Motion Granted</u>. The Motion is hereby granted on an interim basis as set forth herein.

2.     <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.     <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor

shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.      <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral to pay the items set forth in the Budget, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.      <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  Payments to any insider during the Interim Period shall not exceed $20,000 in the aggregate.

6.      <u>Payment to PQPR for Inventory Purchase</u>. Notwithstanding the limitation on payments to insiders set forth in the preceding paragraph, the Debtor is authorized to use Cash Collateral to pay PQPR $250,000 as provided in the Budget for "Repay PQPR Inventory" (the "<u>PQPR Payment</u>").  The PQPR Payment shall not be used to pay down the PQPR Notes (as defined in the Motion).  Creditors and parties in interest shall have thirty (30) days from the date a notice is filed on the docket that the PQPR Payment has been issued to object to the appropriateness of that payment and file pleadings with the Court seeking to clawback the PQPR Payment.

7.      <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.      <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall

remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9. <u>Adequate Protection – Replacement Liens</u>.     As adequate protection for any diminution in value of each of the Pre-Petition Lender's interest in the Debtor's collateral, if any, including Cash Collateral, resulting from the imposition of the automatic stay with respect to the Collateral and/or the Debtor's use, sale or lease of the Collateral during the Case (the "<u>Diminution in Value</u>"), the Pre-Petition Lender is hereby granted, effective as of the Petition Date, valid, binding, enforceable, and automatically perfected liens (the "<u>Replacement Liens</u>") in all currently owned or hereafter acquired property and assets of the Debtor, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising (excluding avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code), and all proceeds and products of the foregoing (collectively, the "<u>Adequate Protection Collateral</u>") to the same extent as existed on the Petition Date. The Replacement Liens granted pursuant to this Order shall be subject to the Carve Out.

10. <u>Carve Out</u>. The Replacement Liens and Adequate Protection Priority Claim granted herein shall be subject to (a) unpaid fees payable to the Clerk of the Bankruptcy Court or the United States Trustee; (b) subject to the Budget, court-approved administrative expense claims of estate professionals, employed pursuant to order of this Court (collectively, "<u>Estate Professionals</u>"), for incurred but unpaid fees, expenses and other costs; fees and expenses of the appointed Subchapter V Trustee (all such carve-out amounts referenced above, collectively, the "<u>Carve Out</u>").

11. <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

12.      <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, the Subchapter V Trustee, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

13.      <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on August 24, 2022, at 10:00 a.m. Central time.


Signed:  August 05, 2022

Christopher Lopez
United States Bankruptcy Judge

001337

# Forecasted Interim Cash Collateral Budget
### Between July 29, 2022 and August 26, 2022

| Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 |
|---|---|---|---|---|
| Week Number | 1 | 2 | 3 | 4 |
| **Income** | | | | |
| Product Sales | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 |
| Advertising | - | - | - | 480,166.46 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 |
| **Total Income** | **598,630.26** | **598,630.26** | **598,630.26** | **1,078,796.72** |
| **Selling & Product Costs** | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) |
| Repay PQPR Inventory | - | (250,000.00) | - | - |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) |
| eCommerce Store Maintenance | (27,270.00) | - | - | - |
| Texas Sales Tax | (5,337.87) | - | - | - |
| **Total Cost of Goods Sold** | **(262,569.67)** | **(479,961.80)** | **(229,961.80)** | **(229,961.80)** |
| **Operating Expenses** | | | | |
| **Advertising & Promotion** | | | | |
| Advertising & Promotion | (3,041.98) | - | - | - |
| Print Media | (3,000.00) | - | - | - |
| Radio Show Advertising | (11,500.00) | - | - | - |
| **Total Advertising & Promotion** | **(17,541.98)** | **-** | **-** | **-** |
| **Computer/IT/IP Expense** | | | | |
| Internet & TV services | (2,082.90) | - | (1,608.39) | - |
| Software License Fees | (140.80) | - | - | - |
| Server Hosting Service | (28,595.13) | - | - | - |
| CDN Video Cloud Storage | (55,728.00) | - | - | - |
| Satellite Service | (137,282.93) | - | - | - |
| Imaging License Fee | (9,201.25) | - | - | - |
| Software & Apps | (5,000.00) | - | - | - |
| Website Hosting | - | - | (266.50) | - |
| **Total Computer/IT/IP Expense** | **(238,031.01)** | **-** | **(1,874.89)** | **-** |
| Insurance | (2,166.50) | - | - | - |
| **Office & Administrative Expense** | | | | |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) |
| Equipment Rental | (1,989.90) | - | - | - |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) |
| **Total Office & Administrative Expense** | **(2,318.36)** | **(328.46)** | **(328.46)** | **(328.46)** |
| Outsourced Services | - | - | - | - |
| Consulting Services | - | - | - | - |
| **Utilities** | | | | |
| Utility Deposit | (10,000.00) | - | - | - |
| Electricity | - | - | (5,107.63) | - |
| HVAC | (256.19) | - | - | - |
| CAM Charges | (20,364.16) | - | - | - |
| Water & Sewer | (1,708.55) | - | - | - |
| Gas Service | (132.09) | - | - | - |
| Pest Control | (244.65) | - | - | - |
| Waste Management | (351.81) | - | - | - |
| **Total Utilities** | **(33,057.46)** | **-** | **(5,107.63)** | **-** |
| **Occupancy** | | | | |
| Rent | (33,408.51) | - | - | - |
| Office Security | (31,111.90) | - | - | - |
| Repair & Maintenance - Building | (1,777.19) | - | - | - |
| Janitorial | (5,983.33) | - | - | - |



EXHIBIT

A

001338

| Period+A5:E83 | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 |
|---|---|---|---|---|
| **Total Occupancy** | **(72,280.93)** | - | - | - |
| Supplies | (1,258.02) | - | - | - |
| Telephone | (18,337.88) | - | - | |
| **Personnel Expenses** | | | | |
| Salaries & Wages - Base | (168,467.44) | - | (168,467.44) | - |
| Payroll Tax | (13,087.76) | - | (13,087.76) | - |
| Alex Jones Salary | (10,000.00) | - | (10,000.00) | - |
| **Total Personnel Expenses** | **(191,555.20)** | **-** | **(191,555.20)** | **-** |
| **Travel** | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) |
| Vehicle Leases | - | (1,470.56) | - | - |
| **Total Travel Expenses** | **(99.69)** | **(1,570.25)** | **(99.69)** | **(99.69)** |
| **Total Operating Expenses** | **(576,647.03)** | **(1,898.71)** | **(198,965.88)** | **(428.15)** |
| ***Non-Operating Expenses*** | | | | |
| Payment on PQPR Note | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) |
| AMEX Payment | - | - | - | - |
| **Total Other Expenses** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** |
| **Professional Fees** | | | | |
| CRO Fees | - | - | - | - |
| Financial Adviosr Fee | - | - | - | - |
| Shannon & Lee LLP | - | - | - | - |
| Ray Battaglia | - | - | - | - |
| **Total Professional Fees** | **-** | **-** | **-** | **-** |
| **Total Cash Flow** | **$ (245,586.44)** | **$ 111,769.75** | **$ 164,702.59** | **$ 843,406.77** |

001339

United States Bankruptcy Court
Southern District of Texas

In re:                                                                        Case No. 22-60043-cml

Free Speech Systems LLC                                          Chapter 11
        Debtor

# CERTIFICATE OF NOTICE

District/off: 0541-4                          User: ADIuser                                   Page 1 of 2
Date Rcvd: Aug 05, 2022                  Form ID: pdf002                           Total Noticed: 8

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| ^ | Addresses marked '^' were sent via mandatory electronic bankruptcy noticing pursuant to Fed. R. Bank. P. 9036. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 07, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Free Speech Systems LLC, 3019 Alvin Devane Blvd. STE 300, Austin, TX 78741-7417 |
| cr | + | David Wheeler, et al., c/o Cain & Skarnulis PLLC, 303 Colorado Street, Suite 2850, Austin, TX 78701-4653 |
| cr | + | Leonard Pozner, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin Street, Suite 2700 Houston, TX 77002-6774 |
| cr | + | Marcel Fontaine, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin, Suite 2700 Houston, TX 77002-6774 |
| cr | + | Neil Heslin, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin Street, Suite 2700 Houston, TX 77002-6774 |
| cr | + | Scarlett Lewis, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin Street, Suite 2700 Houston, TX 77002-6774 |
| cr | + | Veronique De La Rosa, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin Street, Suite 2700 Houston, TX 77002-6774 |

TOTAL: 7

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| cr | ^ | MEBN | | |
| | | | Aug 05 2022 19:44:28 | Texas Comptroller of Public Accounts, Revenue Acco, Christopher J. Dylla, P.O. Box 12548, Austin, TX 78711-2548 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| intp | | Shelby A Jordan |

TOTAL: 1 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 07, 2022                          Signature:          /s/Gustava Winters

001340

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 5, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Avi Moshenberg | on behalf of Creditor Neil Heslin avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Avi Moshenberg | on behalf of Creditor Scarlett Lewis avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Avi Moshenberg | on behalf of Creditor Leonard Pozner avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Avi Moshenberg | on behalf of Creditor Veronique De La Rosa avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Avi Moshenberg | on behalf of Creditor Marcel Fontaine avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Christopher Dylla | on behalf of Creditor Texas Comptroller of Public Accounts  Revenue Accounting Division bk-cdylla@oag.texas.gov, Sherri.Simpson@oag.texas.gov |
| Ha Minh Nguyen | on behalf of U.S. Trustee US Trustee ha.nguyen@usdoj.gov |
| Jarrod B. Martin | on behalf of Creditor Neil Heslin jarrod.martin@chamberlainlaw.com Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jarrod B. Martin | on behalf of Creditor Marcel Fontaine jarrod.martin@chamberlainlaw.com Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jarrod B. Martin | on behalf of Creditor Veronique De La Rosa jarrod.martin@chamberlainlaw.com Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jarrod B. Martin | on behalf of Creditor Scarlett Lewis jarrod.martin@chamberlainlaw.com Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jarrod B. Martin | on behalf of Creditor Leonard Pozner jarrod.martin@chamberlainlaw.com Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jayson B. Ruff | on behalf of U.S. Trustee US Trustee jayson.b.ruff@usdoj.gov |
| Melissa A Haselden | mhaselden@haseldenfarrow.com haseldenbankruptcytrustee@gmail.com;mhaselden@ecf.axosfs.com;haselden.melissaa.r104367@notify.bestcase.com |
| R. J. Shannon | on behalf of Debtor Free Speech Systems LLC rshannon@shannonpllc.com rshannon@shannonleellp.com;7044075420@filings.docketbird.com |
| Randy W Williams | on behalf of Creditor David Wheeler  et al. rww@bymanlaw.com, rw13@trustesolutions.com;rw13@trustesolutions.net;rw11@trustesolutions.net;rww.trustee1@gmail.com |
| Raymond William Battaglia | on behalf of Debtor Free Speech Systems LLC rbattaglialaw@outlook.com  rwbresolve@gmail.com |
| Ryan E Chapple | on behalf of Creditor David Wheeler  et al. rchapple@cstrial.com, aprentice@cstrial.com |
| Shelby A Jordan | on behalf of Interested Party Shelby A Jordan cmadden@jhwclaw.com |
| US Trustee | USTPRegion07.HU.ECF@USDOJ.GOV |

TOTAL: 20

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 05, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Case No. 22-60043 |
| FREE SPEECH SYSTEMS, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | |

**ORDER (I) APPROVING DEBTOR'S PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (II) APPROVING ADEQUATE ASSURANCE PROCEDURES, (III) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the Debtor for entry of an order (this "Order"): approving the Proposed Adequate Assurance of payment for future Utility Services; approving the Adequate Assurance Procedures for resolving Additional Assurance Requests; prohibiting Utility Providers from altering, refusing or discontinuing services; and granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1

001342

"Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing (if any) establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Debtor shall cause a copy of the Motion and this Order to be served on each Utility Provider listed on the Utility Services List no later than two business days after the date this Order is entered.

2.     The Debtor's deposit of cash in a segregated account on the Debtor's books in an amount equal to two weeks average utility bills together with its ability to pay for future utility services in the ordinary course of business subject to the Adequate Assurance Procedures, shall constitute adequate assurance of future payment to the Utility Providers as required by Bankruptcy Code section 366.

3.     The following "Adequate Assurance Procedures" are hereby approved:

(i)     Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Notice Parties. An Additional Assurance Request may be made at any time.

(ii)    Any Additional Assurance Request must: (i) be in writing; (ii) identify the location for which the Utility Services are provided; (iii) summarize the Debtor's payment history relevant to the affected account(s), including any security deposits; and (iv) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

(iii)   Upon the Debtor's receipt of any Additional Assurance Request, the Debtor shall promptly negotiate with such Utility Provider to resolve such Utility Provider's Additional Assurance Request.

(iv)    The Debtor may, without further order from the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and the Debtor may, in connection with any such agreement, provide such Utility Provider with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments or other forms of security if the Debtor believes that such adequate assurance is reasonable in their business judgment,

2

001343

subject to the terms of any collateral or other financing order entered by the Court; provided, however, that the Debtor shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in these chapter 11 cases and the U.S. Trustee upon request.

(v)     If the Debtor and the Utility Provider are not able to reach an alternative resolution within 14 days of receipt of the Additional Assurance Request, the Debtor will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing"), pursuant to Bankruptcy Code section 366(c)(3). Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing or discontinuing Utility Services to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

4.     If an amount relating to Utility Services provided postpetition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request additional adequate assurance by following the Adequate Assurance Procedures and providing notice to: (i) the *Debtor's counsel* and *(ii)* the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002 (collectively, the "Notice Parties").

5.     The Utility Providers are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures.

6.     Unless and until a Utility Provider files an objection or serves an Additional Assurance Request, such Utility Provider shall be: (i) deemed to have received adequate assurance of payment that is "satisfactory" to such Utility Provider in compliance with Bankruptcy Code section 366 and (ii) forbidden from (a) discontinuing, altering or refusing services to, or discriminating against, the Debtor on account of any unpaid prepetition charges, the commencement of these chapter 11 cases or any perceived inadequacy of the Proposed Adequate Assurance, and (b) requiring additional assurance of payment other than the Proposed Adequate Assurance.

7.     The Debtor is authorized, following a time period of 14 days afforded to (i) the

3

affected Utility Provider and (ii) counsel to Notice Parties to object, and the Debtor having received no objection from any such Utility Provider, to remove any Utility Provider from the Utility Services List. If an objection is received, the Debtor shall request a hearing before this Court at the next omnibus hearing date, or such other date that the Debtor and the Utility Provider may agree. The Debtor shall not deduct from the Adequate Assurance Deposit the amount set aside for any Utility Provider that the Debtor seeks to terminate or delete from the Utility Services List unless and until the 14-day notice period has passed and the Debtor has not received any objection to the termination or deletion of such Utility Provider from the Utility Services List, or until such objection has been resolved consensually or by order of the Court.

8.      The Debtor is authorized to add any Utility Provider to the Utility Services List; provided that such amended Utility Services List shall be served on the Notice Parties. This Order shall be binding upon any subsequently-identified Utility Provider. To the extent the Debtor identifies additional Utility Providers, the Debtor will serve on such Utility Provider, within two business days, a copy this Order, including the Adequate Assurance Procedures, and provide such Utility Provider a time period of 14 days to object to the inclusion of such Utility Provider on the Utility Services List. If an objection is received, the Debtor shall request a hearing before this Court. In addition, the Debtor will provide an Adequate Assurance Deposit in an amount equal to the cost for services for 14 days based on historical average payments during the preceding 12 months for any Utility Provider added to the Utility Services List as set forth herein.

9.      The inclusion of any entity in, as well as any omission of any entity from, the Utility Services List shall not be deemed an admission by the Debtor that such entity is, or is not, a "utility" within the meaning of Bankruptcy Code section 366, and the Debtor reserves all rights with respect thereto.

10.     Notwithstanding the relief granted in this Order and any actions taken pursuant to

4

such relief, nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's, or any other party in interest's, right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt or reject any agreement, contract or lease pursuant to Bankruptcy Code section 365; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's, or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor that any liens (contractual, common law, statutory or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity or perfection or to seek avoidance of all such liens.

11.     Notwithstanding anything in this Order to the contrary, any payment to be made, or any authorization contained hereunder shall be subject to the terms of any orders authorizing use of cash collateral approved by this Court in the chapter 11 case.

12.     The Adequate Assurance Procedures set forth herein are for all Utility Providers providing Utility Services to the Debtor and are not limited to those parties or entities listed on the Utility Services List.

13.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

14.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a), and the Bankruptcy Local Rules are satisfied by such notice.

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are

5

001346

immediately effective and enforceable upon entry. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

16.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Signed:  August 05, 2022

Christopher Lopez
United States Bankruptcy Judge

6

United States Bankruptcy Court
Southern District of Texas

In re:

Free Speech Systems LLC
    Debtor

Case No. 22-60043-cml

Chapter 11

# CERTIFICATE OF NOTICE

District/off: 0541-4                             User: ADIuser                                    Page 1 of 2
Date Rcvd: Aug 05, 2022                   Form ID: pdf002                              Total Noticed: 8

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| ^ | Addresses marked '^' were sent via mandatory electronic bankruptcy noticing pursuant to Fed. R. Bank. P. 9036. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 07, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Free Speech Systems LLC, 3019 Alvin Devane Blvd. STE 300, Austin, TX 78741-7417 |
| cr | + | David Wheeler, et al., c/o Cain & Skarnulis PLLC, 303 Colorado Street, Suite 2850, Austin, TX 78701-4653 |
| cr | + | Leonard Pozner, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin Street, Suite 2700 Houston TX 77002-6774 |
| cr | + | Marcel Fontaine, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin, Suite 2700 Houston, TX 77002-6774 |
| cr | + | Neil Heslin, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin Street, Suite 2700 Houston, TX 77002-6774 |
| cr | + | Scarlett Lewis, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin Street, Suite 2700 Houston, TX 77002-6774 |
| cr | + | Veronique De La Rosa, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin Street, Suite 2700 Houston, TX 77002-6774 |

TOTAL: 7

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| cr | ^ | MEBN | Aug 05 2022 19:44:29 | Texas Comptroller of Public Accounts, Revenue Acco, Christopher J. Dylla, P.O. Box 12548, Austin, TX 78711-2548 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| intp | | Shelby A Jordan |

TOTAL: 1 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 07, 2022                        Signature:            /s/Gustava Winters

District/off: 0541-4        User: ADIuser        Page 2 of 2

Date Rcvd: Aug 05, 2022        Form ID: pdf002        Total Noticed: 8

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 5, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Avi Moshenberg | on behalf of Creditor Neil Heslin avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Avi Moshenberg | on behalf of Creditor Scarlett Lewis avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Avi Moshenberg | on behalf of Creditor Leonard Pozner avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Avi Moshenberg | on behalf of Creditor Veronique De La Rosa avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Avi Moshenberg | on behalf of Creditor Marcel Fontaine avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Christopher Dylla | on behalf of Creditor Texas Comptroller of Public Accounts  Revenue Accounting Division bk-cdylla@oag.texas.gov, Sherri.Simpson@oag.texas.gov |
| Ha Minh Nguyen | on behalf of U.S. Trustee US Trustee ha.nguyen@usdoj.gov |
| Jarrod B. Martin | on behalf of Creditor Neil Heslin jarrod.martin@chamberlainlaw.com  Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jarrod B. Martin | on behalf of Creditor Marcel Fontaine jarrod.martin@chamberlainlaw.com  Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jarrod B. Martin | on behalf of Creditor Veronique De La Rosa jarrod.martin@chamberlainlaw.com  Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jarrod B. Martin | on behalf of Creditor Scarlett Lewis jarrod.martin@chamberlainlaw.com  Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jarrod B. Martin | on behalf of Creditor Leonard Pozner jarrod.martin@chamberlainlaw.com  Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jayson B. Ruff | on behalf of U.S. Trustee US Trustee jayson.b.ruff@usdoj.gov |
| Melissa A Haselden | mhaselden@haseldenfarrow.com  haseldenbankruptcytrustee@gmail.com;mhaselden@ecf.axosfs.com;haselden.melissaa.r104367@notify.bestcase.com |
| R. J. Shannon | on behalf of Debtor Free Speech Systems LLC rshannon@shannonpllc.com  rshannon@shannonleellp.com;7044075420@filings.docketbird.com |
| Randy W Williams | on behalf of Creditor David Wheeler  et al. rww@bymanlaw.com,  rw13@trustesolutions.com;rw13@trustesolutions.net;rw11@trustesolutions.net;rww.trustee1@gmail.com |
| Raymond William Battaglia | on behalf of Debtor Free Speech Systems LLC rbattaglialaw@outlook.com  rwbresolve@gmail.com |
| Ryan E Chapple | on behalf of Creditor David Wheeler  et al. rchapple@cstrial.com, aprentice@cstrial.com |
| Shelby A Jordan | on behalf of Interested Party Shelby A Jordan cmadden@jhwclaw.com |
| US Trustee | USTPRegion07.HU.ECF@USDOJ.GOV |

TOTAL: 20

001349

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 05, 2022
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |
| | § | |

**ORDER (A) AUTHORIZING THE DEBTOR TO PAY PREPETITION OBLIGATIONS**
**OF CERTAIN CRITICAL VENDORS AND (B) GRANTING RELATED RELIEF**

Upon the *Debtor's Motion for Order (A) Authorizing the Debtor to Pay Prepetition Obligations of Certain Critical Vendors and (B) Granting Related Relief* (the "Motion")[1] filed on July 29, 2022; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

2.      1.      The Debtor is authorized to pay in the ordinary course of its business to (a) pay the prepetition obligations owed to the Critical Vendors in the amounts set forth in Schedule 1 attached hereto as those obligations come due and shall consult with the Subchapter V Trustee and provide requested information with respect to each proposed payment in advance of remitting the same to Critical Vendors. Any party that accepts payments from the Debtor on account of a

---

[1] Capitalized terms used by not otherwise defined in this Order shall have the meanings ascribed to such terms in the Motion.

Critical Vendor claim shall be deemed to have agreed to the terms and provisions of this order. The payment of the Obligations is conditioned upon the agreement of each Critical Vendor to continue supplying services on terms and based on practices and programs in effect between the Critical Vendor and the Debtor in the year prior to the Petition Date (the "Customary Trade Terms"), or such other trade terms as are agreed to by the Debtor and the Critical Vendor.

3.      The Debtor shall have the right to negotiate new trade terms with the Critical Vendor as a condition to payment of a portion of the obligations owed to each Critical Vendor (the "Obligations").

4.      Any payments made on Obligations pursuant to this Motion shall be applied first to any claim of such Critical Vendors under section 503(b)(9) of the Bankruptcy Code.  Nothing in this Motion or any order of this Court approving this Motion should be construed as a waiver by the Debtor of its rights to contest any invoice of a Critical Vendor under applicable non-bankruptcy law.

5.      If a Critical Vendor refuses to supply services to the Debtor on Customary Trade Terms following payment of any portion of the Obligations, the Debtor, in its discretion, and without further order of the Court, may deem any payments made to the Critical Vendor on account of the Obligations to have been in payment of then-outstanding post-petition claims of the Critical Vendor and to terminate the critical vendor status of such a vendor (the "Terminated Obligor").

6.      In the event the Debtor chooses not to terminate the critical vendor status of  a Critical Vendor immediately upon a refusal by a Critical Vendor to provide services in accordance with Customary Trade Terms, the Debtor shall not be deemed to have waived the ability to terminate a Critical Vendor or waived the ability to deem any payments made to the

Critical Vendor on account of the Obligations to have been in payment of then-outstanding post-petition claims of such Critical Vendor or to compel disgorgement of payments made to such Critical Vendor pursuant to this order.

7.      In the event the Debtor exercises the rights set forth in the preceding paragraph, the Terminated Obligor shall be required to immediately return any payments made on account of its Obligations to the extent that such payments exceed the post-petition amounts then owed to the Terminated Obligor, without giving effect to any rights of setoff or reclamation. In the event that the Terminated Obligor refuses to acknowledge such recharacterization and to issue the repayment, the Debtor is authorized to compel such recharacterization and repayment by a motion on such notice as is required by this Court. In addition, the Debtor shall have the right to compel the disgorgement of the Critical Vendor payment repayment by a motion on such notice as is required by this Court.

8.      The Debtor shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Order, including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment, as further described and classified in the Motion; and (d) the payment date. On or before the date that is thirty (30) days from entry of this Order, the Debtor shall provide a copy of such matrix/schedule to the U.S. Trustee, the Subchapter V trustee appointed in this case, and any committee appointed in this Chapter 11 Case. Thereafter, the Debtor shall attach a copy of such matrix/schedule to its monthly operating reports filed in the Chapter 11 Case containing the same information set forth above. Parties in interest shall then have fourteen (14) calendar days to file written objections to Critical Third-Party Vendor status or any payment made by the Debtor pursuant to this Order. If the

objection is sustained, the Critical Third-Party Vendor may be required to disgorge any such payments.

9.      Nothing in this Order or the Motion shall limit (a) the Debtor's authority to pay obligations to creditors that were incurred by the Debtor after the Petition Date.

10.      Nothing in this Order or any actions taken pursuant to such relief is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any ground, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested in this motion or a finding that any particular claim is an administrative expense claim or other priority claim, (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate, (g) a waiver or limitation of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (h) a concession from the Debtor that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

11.      Any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's or any other party in interest's rights to subsequently dispute such claim.

12.     This Order shall be immediately effective and enforceable upon its entry and shall
not be stayed by Bankruptcy Rule 6004(h), if applicable.

13.     The Court shall retain jurisdiction to hear and determine all matters arising from or
related to the implementation, interpretation, or enforcement of this Order.


Signed:  August 05, 2022

Christopher Lopez
United States Bankruptcy Judge

## SCHEDULE 1 TO ORDER

| Vendor | Description | Amount of Critical Vendor Claim | Address | City | State | Zip |
|---|---|---|---|---|---|---|
| Addshoppers, Inc | E Commerce Store | $ 2,191.93 | 222 S. Church Street #410M | Charlotte | NC | 28202 |
| Amazon Web Services | E Commerce Store | $ 77,000.00 | | | | |
| ATXHD,Inc | Satellite uplink | $ 19,334.48 | 602 S. Cowal Drive | Spicewood | TX | 78669 |
| Austin Security & Investigation Solution | Uniformed Security | $ 28,044.34 | P.O. Box 2904 | Pflugerville | TX | 78691 |
| Balcones Recycling Inc. | Trash / Dumpster Service | $ 386.99 | P.O. Box 679912 | Dallas | TX | 75267 |
| Cloudflare, Inc | IT / E Commerce Security | $ 124,162.64 | Dept LA 24609 | Pasadena | CA | 91185-4609 |
| eCommerce CDN LLC | E Commerce Store | $ 1,070.85 | 221 E 63rd Street | Savannah | GA | 31405 |
| Edgecast, Inc. | Radio Station Link | $ 6,449.30 | Dept CH 18120 | Palatine | IL | 60055 |
| Frost Insurance Agency | Company Insurance | $ 2,694.52 | 401 Congress Ave., 14th Floor | Austin | TX | 78701 |
| Getty Images, Inc | Licenses for Pictures / Video | $ 10,121.38 | P.O. Box 953604 | St. Louis | MO | 63195-3604 |
| Haivision Network Video | Streaming Bandwidth | $ 54,851.50 | Dept CH 19848 | Palatine | IL | 60055-9848 |
| Magento | E Commerce Store | $ 7,792.40 | P.O. Box 204125 | Dallas | TX | 75320-4105 |
| mongoDB Cloud | Cloud Storage | $ 3,054.44 | 1633 Broadway 39th Floor | New York | NY | 10019 |
| Protection 1 Alarm | Alarm Service | $ 3,461.42 | | | | |
| Synergy North America Inc | e commerce software | $ 2,061.49 | 11001 W. 120th Ave. Suite 400 | Broomfield | CO | 80021 |
| The Hartford | Company Insurance | $ 2,780.35 | | | | |
| Travelers | Company Insurance | $ 673.48 | | | | |
| TrustArc | | $ 1,221.46 | | | | |
| WMQM-AM 1600 | Advertising | $ 2,291.67 | 21 Stephen Hill Rd | Atoka | TN | 38004 |
| WWCR | Advertising | $ 9,900.00 | 1300 WWCR Avenue | Nashville | TN | 37218-3800 |
| | **Total Critical Vendors** | $ 359,544.62 | | | | |

001355

United States Bankruptcy Court
Southern District of Texas

In re:                                                                                    Case No. 22-60043-cml

Free Speech Systems LLC                                                                   Chapter 11
        Debtor

# CERTIFICATE OF NOTICE

| District/off: 0541-4 | User: ADIuser | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Aug 05, 2022 | Form ID: pdf002 | Total Noticed: 8 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| ^ | Addresses marked '^' were sent via mandatory electronic bankruptcy noticing pursuant to Fed. R. Bank. P. 9036. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 07, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Free Speech Systems LLC, 3019 Alvin Devane Blvd. STE 300, Austin, TX 78741-7417 |
| cr | + | David Wheeler, et al., c/o Cain & Skarnulis PLLC, 303 Colorado Street, Suite 2850, Austin, TX 78701-4653 |
| cr | + | Leonard Pozner, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin Street, Suite 2700 Houston TX 77002-6774 |
| cr | + | Marcel Fontaine, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin, Suite 2700 Houston, TX 77002-6774 |
| cr | + | Neil Heslin, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin Street, Suite 2700 Houston, TX 77002-6774 |
| cr | + | Scarlett Lewis, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin Street, Suite 2700 Houston, TX 77002-6774 |
| cr | + | Veronique De La Rosa, c/o McDowell Hetherington LLP, Attention: Avi Moshenberg, 1001 Fannin Street, Suite 2700 Houston, TX 77002-6774 |

TOTAL: 7

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| cr | ^ | MEBN | | Texas Comptroller of Public Accounts, Revenue Acco, Christopher J. Dylla, P.O. Box 12548, Austin, TX 78711-2548 |
| | | | Aug 05 2022 19:44:30 | |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| intp | | Shelby A Jordan |

TOTAL: 1 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 07, 2022                    Signature:        /s/Gustava Winters

001356

District/off: 0541-4          User: ADIuser          Page 2 of 2
Date Rcvd: Aug 05, 2022          Form ID: pdf002          Total Noticed: 8

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 5, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Avi Moshenberg | on behalf of Creditor Neil Heslin avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Avi Moshenberg | on behalf of Creditor Scarlett Lewis avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Avi Moshenberg | on behalf of Creditor Leonard Pozner avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Avi Moshenberg | on behalf of Creditor Veronique De La Rosa avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Avi Moshenberg | on behalf of Creditor Marcel Fontaine avi.moshenberg@mhllp.com  ana.sanchez@mhllp.com |
| Christopher Dylla | on behalf of Creditor Texas Comptroller of Public Accounts  Revenue Accounting Division bk-cdylla@oag.texas.gov, Sherri.Simpson@oag.texas.gov |
| Ha Minh Nguyen | on behalf of U.S. Trustee US Trustee ha.nguyen@usdoj.gov |
| Jarrod B. Martin | on behalf of Creditor Neil Heslin jarrod.martin@chamberlainlaw.com Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jarrod B. Martin | on behalf of Creditor Marcel Fontaine jarrod.martin@chamberlainlaw.com Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jarrod B. Martin | on behalf of Creditor Veronique De La Rosa jarrod.martin@chamberlainlaw.com Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jarrod B. Martin | on behalf of Creditor Scarlett Lewis jarrod.martin@chamberlainlaw.com Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jarrod B. Martin | on behalf of Creditor Leonard Pozner jarrod.martin@chamberlainlaw.com Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;ginger.davis@chamberlainlaw.com |
| Jayson B. Ruff | on behalf of U.S. Trustee US Trustee jayson.b.ruff@usdoj.gov |
| Melissa A Haselden | mhaselden@haseldenfarrow.com haseldenbankruptcytrustee@gmail.com;mhaselden@ecf.axosfs.com;haselden.melissaa.r104367@notify.bestcase.com |
| R. J. Shannon | on behalf of Debtor Free Speech Systems LLC rshannon@shannonpllc.com rshannon@shannonleellp.com;7044075420@filings.docketbird.com |
| Randy W Williams | on behalf of Creditor David Wheeler  et al. rww@bymanlaw.com, rw13@trustesolutions.com;rw13@trustesolutions.net;rw11@trustesolutions.net;rww.trustee1@gmail.com |
| Raymond William Battaglia | on behalf of Debtor Free Speech Systems LLC rbattaglialaw@outlook.com  rwbresolve@gmail.com |
| Ryan E Chapple | on behalf of Creditor David Wheeler  et al. rchapple@cstrial.com, aprentice@cstrial.com |
| Shelby A Jordan | on behalf of Interested Party Shelby A Jordan cmadden@jhwclaw.com |
| US Trustee | USTPRegion07.HU.ECF@USDOJ.GOV |

TOTAL: 20

AO 435
(Rev. 04/18)

ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

**TRANSCRIPT ORDER**

*Please Read Instructions:*

| FOR COURT USE ONLY |
| --- |
| DUE DATE: |

| 1. NAME Ryan Chapple | 2. PHONE NUMBER (512) 477-5000 | 3. DATE 8/8/2022 | |
| --- | --- | --- | --- |
| 4. DELIVERY ADDRESS OR EMAIL rchapple@cstrial.com; aprentice@cstrial.com | 5. CITY Austin | 6. STATE TX | 7. ZIP CODE 78701 |

| 8. CASE NUMBER 22-60043 | 9. JUDGE Lopez | DATES OF PROCEEDINGS | |
| --- | --- | --- | --- |
| | | 10. FROM 8/3/2022 | 11. TO 8/3/2022 |
| 12. CASE NAME In re Free Speech Systems, LLC | | LOCATION OF PROCEEDINGS | |
| | | 13. CITY Houston | 14. STATE TX |

**15. ORDER FOR**

- [ ] APPEAL
- [ ] NON-APPEAL
- [ ] CRIMINAL
- [ ] CIVIL
- [ ] CRIMINAL JUSTICE ACT
- [ ] IN FORMA PAUPERIS
- [x] BANKRUPTCY
- [ ] OTHER

**16. TRANSCRIPT REQUESTED** (Specify portion(s) and date(s) of proceeding(s) for which transcript is requested)

| PORTIONS | DATE(S) | PORTION(S) | DATE(S) |
| --- | --- | --- | --- |
| [ ] VOIR DIRE | | [ ] TESTIMONY (Specify Witness) | |
| [x] OPENING STATEMENT (Plaintiff) | 8/3/2022 | | |
| [x] OPENING STATEMENT (Defendant) | 8/3/2022 | | |
| [x] CLOSING ARGUMENT (Plaintiff) | 8/3/2022 | [ ] PRE-TRIAL PROCEEDING (Spcy) | |
| [x] CLOSING ARGUMENT (Defendant) | 8/3/2022 | | |
| [x] OPINION OF COURT | 8/3/2022 | | |
| [ ] JURY INSTRUCTIONS | | [x] OTHER (Specify) | 8/3/2022 |
| [ ] SENTENCING | | ENTIRE HEARING | |
| [ ] BAIL HEARING | | | |

**17. ORDER**

| CATEGORY | ORIGINAL (Includes Certified Copy to Clerk for Records of the Court) | FIRST COPY | ADDITIONAL COPIES | NO. OF PAGES ESTIMATE | COSTS |
| --- | --- | --- | --- | --- | --- |
| ORDINARY | [ ] | [ ] | NO. OF COPIES | | |
| 14-Day | [ ] | [ ] | NO. OF COPIES | | |
| EXPEDITED | [ ] | [ ] | NO. OF COPIES | | |
| 3-Day | [x] | [ ] | NO. OF COPIES | | |
| DAILY | | | NO. OF COPIES | | |
| HOURLY | [ ] | [ ] | NO. OF COPIES | | |
| REALTIME | | | | | |

| CERTIFICATION (18. & 19.) By signing below, I certify that I will pay all charges (deposit plus additional). | ESTIMATE TOTAL | 0.00 |
| --- | --- | --- |

| 18. SIGNATURE /s/ Ryan Chapple | PROCESSED BY |
| --- | --- |
| 19. DATE 8/8/2022 | PHONE NUMBER |
| TRANSCRIPT TO BE PREPARED BY | COURT ADDRESS |

| | DATE | BY | |
| --- | --- | --- | --- |
| ORDER RECEIVED | | | |
| DEPOSIT PAID | | DEPOSIT PAID | |
| TRANSCRIPT ORDERED | | TOTAL CHARGES | 0.00 |
| TRANSCRIPT RECEIVED | | LESS DEPOSIT | 0.00 |
| ORDERING PARTY NOTIFIED TO PICK UP TRANSCRIPT | | TOTAL REFUNDED | |
| PARTY RECEIVED TRANSCRIPT | | TOTAL DUE | 0.00 |

001358

DISTRIBUTION:     COURT COPY     TRANSCRIPTION COPY     ORDER RECEIPT     ORDER COPY

AO 435
(Rev. 04/18)

ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

**TRANSCRIPT ORDER**

**FOR COURT USE ONLY**

**DUE DATE:**

*Please Read Instructions:*

| 1. NAME Ryan Chapple | 2. PHONE NUMBER (512) 477-5000 | 3. DATE 8/8/2022 |
|---|---|---|

| 4. DELIVERY ADDRESS OR EMAIL rchapple@cstrial.com; aprentice@cstrial.com | 5. CITY Austin | 6. STATE TX | 7. ZIP CODE 78701 |
|---|---|---|---|

| 8. CASE NUMBER 22-60043 | 9. JUDGE Lopez | DATES OF PROCEEDINGS |  |
|---|---|---|---|
|  |  | 10. FROM 8/3/2022 | 11. TO 8/3/2022 |

| 12. CASE NAME In re Free Speech Systems, LLC | LOCATION OF PROCEEDINGS |  |
|---|---|---|
|  | 13. CITY Houston | 14. STATE TX |

**15. ORDER FOR**

☐ APPEAL  ☐ CRIMINAL  ☐ CRIMINAL JUSTICE ACT  ☒ BANKRUPTCY
☐ NON-APPEAL  ☐ CIVIL  ☐ IN FORMA PAUPERIS  ☐ OTHER

**16. TRANSCRIPT REQUESTED** (Specify portion(s) and date(s) of proceeding(s) for which transcript is requested)

| PORTIONS | DATE(S) | PORTION(S) | DATE(S) |
|---|---|---|---|
| ☐ VOIR DIRE |  | ☐ TESTIMONY (Specify Witness) |  |
| ☒ OPENING STATEMENT (Plaintiff) | 8/3/2022 |  |  |
| ☒ OPENING STATEMENT (Defendant) | 8/3/2022 |  |  |
| ☒ CLOSING ARGUMENT (Plaintiff) | 8/3/2022 | ☐ PRE-TRIAL PROCEEDING (Spcy) |  |
| ☒ CLOSING ARGUMENT (Defendant) | 8/3/2022 |  |  |
| ☒ OPINION OF COURT | 8/3/2022 |  |  |
| ☐ JURY INSTRUCTIONS |  | ☒ OTHER (Specify) | 8/3/2022 |
| ☐ SENTENCING |  | ENTIRE HEARING |  |
| ☐ BAIL HEARING |  |  |  |

**17. ORDER**

| CATEGORY | ORIGINAL (Includes Certified Copy to Clerk for Records of the Court) | FIRST COPY | ADDITIONAL COPIES | NO. OF PAGES ESTIMATE | COSTS |
|---|---|---|---|---|---|
| ORDINARY | ☐ | ☐ | NO. OF COPIES |  |  |
| 14-Day | ☐ | ☐ | NO. OF COPIES |  |  |
| EXPEDITED | ☐ | ☐ | NO. OF COPIES |  |  |
| 3-Day | ☒ | ☐ | NO. OF COPIES |  |  |
| DAILY | | ☐ | NO. OF COPIES |  |  |
| HOURLY | ☐ | ☐ | NO. OF COPIES |  |  |
| REALTIME | | | | | |

CERTIFICATION (18. & 19.)
By signing below, I certify that I will pay all charges (deposit plus additional).

ESTIMATE TOTAL  0.00

| 18. SIGNATURE /s/ Ryan Chapple | PROCESSED BY |
|---|---|
| 19. DATE 8/8/2022 | PHONE NUMBER |

| TRANSCRIPT TO BE PREPARED BY | COURT ADDRESS |
|---|---|

| | DATE | BY |
|---|---|---|
| ORDER RECEIVED | | |

| DEPOSIT PAID | DEPOSIT PAID |  |
|---|---|---|
| TRANSCRIPT ORDERED | TOTAL CHARGES | 0.00 |
| TRANSCRIPT RECEIVED | LESS DEPOSIT | 0.00 |
| ORDERING PARTY NOTIFIED TO PICK UP TRANSCRIPT | TOTAL REFUNDED | |
| PARTY RECEIVED TRANSCRIPT | TOTAL DUE | 0.00 |

001359

DISTRIBUTION:    COURT COPY    TRANSCRIPTION COPY    ORDER RECEIPT    ORDER COPY

AO 435
(Rev. 04/18)

ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

**TRANSCRIPT ORDER**

**FOR COURT USE ONLY**

**DUE DATE:**

*Please Read Instructions:*

| 1. NAME Ryan Chapple | 2. PHONE NUMBER (512) 477-5000 | 3. DATE 8/8/2022 | |
|---|---|---|---|
| 4. DELIVERY ADDRESS OR EMAIL rchapple@cstrial.com; aprentice@cstrial.com | 5. CITY Austin | 6. STATE TX | 7. ZIP CODE 78701 |

| 8. CASE NUMBER 22-60043 | 9. JUDGE Lopez | DATES OF PROCEEDINGS | |
|---|---|---|---|
| | | 10. FROM 8/3/2022 | 11. TO 8/3/2022 |
| 12. CASE NAME In re Free Speech Systems, LLC | | LOCATION OF PROCEEDINGS | |
| | | 13. CITY Houston | 14. STATE TX |

15. ORDER FOR

| ☐ APPEAL | ☐ CRIMINAL | ☐ CRIMINAL JUSTICE ACT | ☒ BANKRUPTCY |
|---|---|---|---|
| ☐ NON-APPEAL | ☐ CIVIL | ☐ IN FORMA PAUPERIS | ☐ OTHER |

16. TRANSCRIPT REQUESTED (Specify portion(s) and date(s) of proceeding(s) for which transcript is requested)

| PORTIONS | DATE(S) | PORTION(S) | DATE(S) |
|---|---|---|---|
| ☐ VOIR DIRE | | ☐ TESTIMONY (Specify Witness) | |
| ☒ OPENING STATEMENT (Plaintiff) | 8/3/2022 | | |
| ☒ OPENING STATEMENT (Defendant) | 8/3/2022 | | |
| ☒ CLOSING ARGUMENT (Plaintiff) | 8/3/2022 | ☐ PRE-TRIAL PROCEEDING (Spcy) | |
| ☒ CLOSING ARGUMENT (Defendant) | 8/3/2022 | | |
| ☒ OPINION OF COURT | 8/3/2022 | | |
| ☐ JURY INSTRUCTIONS | | ☒ OTHER (Specify) | 8/3/2022 |
| ☐ SENTENCING | | ENTIRE HEARING | |
| ☐ BAIL HEARING | | | |

17. ORDER

| CATEGORY | ORIGINAL (Includes Certified Copy to Clerk for Records of the Court) | FIRST COPY | ADDITIONAL COPIES | NO. OF PAGES ESTIMATE | COSTS |
|---|---|---|---|---|---|
| ORDINARY | ☐ | ☐ | NO. OF COPIES | | |
| 14-Day | ☐ | ☐ | NO. OF COPIES | | |
| EXPEDITED | ☐ | ☐ | NO. OF COPIES | | |
| 3-Day | ☒ | ☐ | NO. OF COPIES | | |
| DAILY | ☐ | ☐ | NO. OF COPIES | | |
| HOURLY | ☐ | ☐ | NO. OF COPIES | | |
| REALTIME | | | | | |

| CERTIFICATION (18. & 19.) By signing below, I certify that I will pay all charges (deposit plus additional). | ESTIMATE TOTAL | 0.00 |
|---|---|---|

| 18. SIGNATURE /s/ Ryan Chapple | PROCESSED BY |
|---|---|
| 19. DATE 8/8/2022 | PHONE NUMBER |
| TRANSCRIPT TO BE PREPARED BY | COURT ADDRESS |

| | DATE | BY | |
|---|---|---|---|
| ORDER RECEIVED | | | |
| DEPOSIT PAID | | | DEPOSIT PAID |
| TRANSCRIPT ORDERED | | | TOTAL CHARGES 0.00 |
| TRANSCRIPT RECEIVED | | | LESS DEPOSIT 0.00 |
| ORDERING PARTY NOTIFIED TO PICK UP TRANSCRIPT | | | TOTAL REFUNDED |
| PARTY RECEIVED TRANSCRIPT | | | TOTAL DUE 0.00 |

001360

DISTRIBUTION:    COURT COPY    TRANSCRIPTION COPY    ORDER RECEIPT    ORDER COPY

AO 435
(Rev. 04/18)

**INSTRUCTIONS**

## GENERAL

**Use.**  Use this form to order the transcription of proceedings.  Complete a separate order form for each case number for which transcripts are ordered.

**Completion**.  Complete Items 1-19.  Do *not* complete shaded areas which are reserved for the court's use.

**Order Copy.**  Keep a copy for your records.

**Submitting to the Court.**  Submit the form in the format required by the court.

**Deposit Fee.**  The court will notify you of the amount of the required deposit fee which may be mailed or delivered to the court.  Upon receipt of the deposit, the court will process the order.

**Delivery Time.**  Delivery time is computed from the date of receipt of the deposit fee or for transcripts ordered by the federal government from the date of receipt of the signed order form.

**Completion of Order.**  The court will notify you when the transcript is completed.

**Balance Due.**  If the deposit fee was insufficient to cover all charges, the court will notify you of the balance due which must be paid prior to receiving the completed order.

## SPECIFIC

Items 1-19.  These items should always be completed.

Item 8.  Only one case number may be listed per order.

Item 15.  Place an "X" in each box that applies.

Item 16.  Place an "X" in the box for each portion requested.  List specific date(s) of the proceedings for which transcript is requested.  Be sure that the description is clearly written to facilitate processing.  Orders may be placed for as few pages of transcript as are needed.

Item 17.  *Categories.*  There are six (6) categories of transcripts which may be ordered.  These are:
   *Ordinary.*  A transcript to be delivered within thirty (30) calendar days after receipt of an order.  (Order is considered received upon receipt of the deposit.)
   *14-Day.*  A transcript to be delivered within fourteen (14) calendar days after receipt of an order.
   *Expedited.*  A transcript to be delivered within seven (7) calendar days after receipt of an order.
   *3-Day.*  A transcript to be delivered within three (3) calendar days after receipt of an order.
   *Daily.*  A transcript to be delivered following adjournment and prior to the normal opening hour of the court on the following morning whether or not it actually is a court day.
   *Hourly.*  A transcript of proceedings ordered under unusual circumstances to be delivered within two (2) hours.
   *Realtime.*  A draft unedited transcript produced by a certified realtime reporter as a byproduct of realtime to be delivered electronically during proceedings or immediately following adjournment.

**NOTE**: Full price may be charged only if the transcript is delivered within the required time frame.  For example, if an order for expedited transcript is not completed and delivered within seven (7) calendar days, payment would be at the 14-day *delivery* rate, and if not completed and delivered within 14 calendar days, payment would be at the ordinary delivery rate.

   *Ordering.*  Place an "X" in each box that applies.  Indicate the number of additional copies ordered.
   *Original.*  Original typing of the transcript.  An original must be ordered and prepared prior to the availability of copies.  The original fee is charged only once.  The fee for the original includes the copy for the records of the court.
   *First Copy.*  First copy of the transcript after the original has been prepared.  All parties ordering copies must pay this rate for the first copy ordered.
   *Additional Copies*.  All other copies of the transcript ordered by the same party.

Item 18.  Sign in this space to certify that you will pay all charges.  (This includes the deposit plus any additional charges.)

Item 19.  Enter the date of signing.

Shaded Area.  Reserved for the court's use.

UNITED STATES BANKRUPTCY COURT          SOUTHERN DISTRICT OF TEXAS

MOTION AND ORDER
FOR ADMISSION *PRO HAC VICE*

| Division | Houston | Main Case Number | 22-60043 |
|---|---|---|---|
| Debtor | In Re: | Free Speech Systems, LLC | |

This lawyer, who is admitted to the State Bar of _____Massachusetts_____:

| Name<br>Firm<br>Street<br>City & Zip Code<br>Telephone<br>Licensed: State & Number | Joseph S.U. Bodoff<br>Rubin and Rudman LLP<br>53 State Street<br>Boston, MA 02109<br>617-330-7038<br>Massachusetts: 549116 |
|---|---|

Seeks to appear as the attorney for this party:

| ADP TotalSource, Inc. | |
|---|---|
| Dated: 8/9/2022 | Signed: /s/ Joseph S.U. Bodoff |

| COURT USE ONLY: The applicant's state bar reports their status as: _____. | |
|---|---|
| Dated: | Signed: _____<br>Deputy Clerk |

| Order |
|---|

This lawyer is admitted *pro hac vice*.

Dated: _____          _____
                                United States Bankruptcy Judge

001362

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In Re: Free Speech Systems LLC §        Case No. 22-60043
                               §
                               §
Debtor                         §        Chapter 11
                               §

**NOTICE OF APPEARANCE AND REQUEST FOR NOTICE**

Stephen A. Roberts and the firm of Stephen A. Roberts, P.C. files this Notice Of Appearance And Request For Notice.

1.    Stephen A. Roberts and the firm of Stephen A. Roberts, P.C. have been retained by David and Carol Jones, interested parties.

2.    My mailing address and email address is:

Stephen A. Roberts
Stephen A. Roberts, PC
1400 Marshall Ln
Austin, TX 78703
sroberts@srobertslawfirm.com

3.    I request that I be included on the mailing matrix and be served with notice of all matters and proceedings filed in the this bankruptcy case in accordance with applicable rules.

Respectfully Submitted:

/s/ *Stephen A. Roberts*
Stephen A. Roberts
Tx Bar Number 17019200
Stephen A. Roberts, PC
1400 Marshall Ln
Austin, TX 78703
(512) 431-7337
sroberts@srobertslawfirm.com

Counsel for David and Carol Jones

001363

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of foregoing pleading was filed on August 10, 2022 using the CM/ECF system which will send notification on all parties requesting such notice. Additionally, within one business day thereafter, the pleadings will be served by U.S. postal service upon the parties listed on the attached matrix.

/s/ *Stephen A Roberts*

Label Matrix for local noticing
0541-4
Case 22-60043
Southern District of Texas
Houston
Tue Aug  9 14:04:53 CDT 2022

Free Speech Systems LLC
3019 Alvin Devane Blvd. STE 300
Austin, TX 78741-7417

Texas Comptroller of Public Accounts, Revenu
Christopher J. Dylla
P.O. Box 12548
Austin, TX 78711-2548

US Trustee
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002-2604

4
United States Bankruptcy Court
PO Box 61010
Houston, TX 77208-1010

ADP Total Source Insurance
10200 Sunset Drive
Miami, FL 33173-3033

ADP TotalSource Payroll
10200 Sunset Drive
Miami, FL 33173-3033

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

AWIO Web Services LLC
6608 Truxton Ln
Raleigh, NC 27616-6694

Addshoppers, Inc
222 S. Church Street, #410M
Charlotte, NC 28202-3213

Airco Mechanical, LTD
PO Box 1598
Round Rock, TX 78680-1598

Alex E. Jones
c/o Jordan & Ortiz, P.C.
Attn: Shelby Jordan
500 North Shoreline Blvd, STE 900
Corpus Christi, TX 78401-0658

Alex Emeric Jones
c/o Jordan & Ortiz, P.C.
Attention: Shelby Jordan
500 N. Shoreline Blvd., Suite 900
Corpus Christi, TX 78401-0658

Ally Auto
PO Box 9001948
Louisville, KY 40290-1948

Amazon Marketplace
Amazon Payments, Inc.
410 Terry Ave N.
Seattle, WA 98109-5210

Amazon Web Services
410 Terry Avenue North
Seattle, WA 98109-5210

American Express
PO Box 650448
Dallas, TX 75265-0448

American Media/Reality Zone
PO Box 4646
Thousand Oaks, CA 91359-1646

Andrews, Christopher
210 N. Beyer Stree
Marion, TX 78124-4014

Atomial, LLC
1920 E. Riverside Drive
Suite A-120 #124
Austin, TX 78741-1350

Balcones Recycling Inc.
PO Box 679912
Dallas, TX 75267-9916

Biodec, LLC
901 S. Mopac Expressway, Building 4, Ste
Austin, TX 78746-5776

Blott, Jacquelyn
200 University Boulevard
Suite 225 #251
Round Rock TX 78665-1096

Brennan Gilmore
c/o Civil Rights Clinic
ATTN: Andrew Mendrala
600 New Jersey Avenue, NW
Washington, DC 20001-2022

Campco
4625 W. Jefferson Blvd
Los Angeles, CA 90016-4006

Carlee SotoParisi
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

Carlos Soto
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

Chelsea Green Publishing
85 North Main Street Ste 120
White River Junction, VT 05001-7135

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive Ste. 301
Coral Springs, FL 33065-5058

City of Austin
PO Box 2267
Austin, TX 78783-2267

001365

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Constant Contact, Inc.
1601 Trapelo Road
Watham, MA 02451-7357

CustomTattoNow.com
16107 Kensington Dr #172
Sugar Land, TX 77479-4224

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

Deese, Stetson
328 Greenland Blvd. #81
Death Valley, CA 92328-9600

DirectTV
PO Box 5006
Carol Stream, IL 60197-5006

Dona Soto
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

EPS, LLC
17350 State Hwy 249, Ste 220, #4331
Houston, TX 77064-1132

ERM Protect
800 South Douglas Road, Suite 940N
Coral Gables, FL 33134-3125

Edgecast, Inc.
Dept CH 18120
Palatine, IL 60055-0001

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06807-2601

Erica Lafferty
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

FW Robert Broadcasting Co
2730 Loumor Ave
Metairie, LA 70001-5425

Francine Wheeler
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

Frost Insurance Agency
401 Congress Avenue, 14th Floor
Austin ,TX 78701-3793

Gabriela Tolentino
5701 S Mopac Expy
Austin, TX 78749-1464

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

Gracenote
29421 Network Place
Chicago, IL 60673-1294

Greenair, Inc
23569 Center Ridge Road
Westlake, OH 44145-3642

Haivision Network Video
Deot CH 19848
Palatine, IL 60055-9848

Ian Hockley
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

Impact Fire Services, LLC
PO Box 735063
Dallas, TX 75373-5063

Independent Publishers Group
PO Box 2154
Bedford Park, IL 60499-2154

Iron Mountain, Inc
PO Box 915004
Dallas, TX 75391-5004

JCE SEO
6101 Broadway
San Antonio, TX 78209-4561

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404-1855

Jacqueline Barden
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

Jennifer Hensel
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

Jeremy Richman
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

Jillian Soto
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

001366

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601-6533

KI4U.com
212 Oil Patch Lane
Gonzales, TX 78629-8028

(p)DE LAGE LANDEN FINANCIAL
ATTN LITIGATION & RECOVERY
1111 OLD EAGLE SCHOOL ROAD
WAYNE PA 19087-1453

LIT Industrial
1717 McKinney Ave #1900
Dallas, TX 75202-1253

Larry Klayman, Esq.
7050 W. Palmetto Park Rd
Boca Raton, FL 33433-3426

Leonard Pozner
c/o Kaster Lynch Farrar & Ball LLP
1117 Herkimer
Houston, TX 77008-6745

Lincoln-Remi Group, LLC
1200 Benstein Rd.
Commerce Twp., MI 48390-2200

Logo It, LLC
820 Tivy Street
Kerrville, TX 78028-3654

Lumen/Level 3 Communications
PO Box 910182
Denver, CO 80291-0182

MRJR Holdings, LLC
PO Box 27740
Las Vegas, NV 89126-7740

MVD Entertainment Group
203 Windsor Rd
Pottstown, PA 19464-3405

Magento
PO Box 204125
Dallas, TX 75320-4105

Marcel Fontaine
c/o Kaster, Lynch, Farrar & Ball LLP
1117 Herkimer
Houston, TX 77008-6745

Mark Barden
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

Microsoft Bing Ads
c/o Microsoft Online, Inc.
P.O. Box 847543
1950 N Stemmons Fwy, Ste 5010
Dallas, TX 75207-3199

Miller, Sean
PO Box 763
Wyalusing, PA 18853-0763

Music Videos Distributors
203 Windsor Rd
Pottstown, PA 19464-3405

Neil Heslin
c/o Kaster Lynch Farrar & Ball LLP
1117 Herkimer
Houston, TX 77008-6745

NetSuite Inc
Bank of America Lockbox Services
Chicago, IL 60693-0001

New Relic
188 Spear Street, Suite 1200
San Francisco, CA 94105-1752

Newegg.com
9997E. Rose Hills Road
Whittier, CA 90601

Nicole Hockley
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

One Party America, LLC
6700 Woodlands Parkway, Suite 230-309
The Woodlands, TX 77382-2575

Orkin, Inc.
5810 Trade Center Drive, Suite 300
Austin, TX 78744-1365

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746-9817

Pattison Law Firm, P.C.
501 IH-35
Austin, TX 78702-3229

Payarc
411 West Putnam Avenue, Ste 340
Greenwich, CT 06830-6291

Paymentus
18390 NE 68th St
Redmond, WA 98052-5057

Paz Law, LLC
1021 Orange Center Road
Orange, CT 06477-1216

Percision Oxygen
13807 Thermal Dr
Austin, TX 78728-7735

Perfect Imprints.com
709 Eglin Pkwy NE
Fort Walton Beach, FL 32547-2527

Perkins, Wes
General Delivery
Lockhart, TX 78644-9999

Pipe Hitters Union, LLC
PO Box 341194
Austin, TX 78734-0020

Post Hill Press, LLC
8115 Isabella Lane, Ste. 4
Brentwood, TN 37027-9110

Poulsen, Debra
112 Eames St.
Elkhorn, WI 53121-1228

Power Reviews, Inc.
1 N. Dearborn Street
Chicago, IL 60602-4331

Precision Camera
2438 W Anderson Ln
Austin, TX 78757-1149

Private Jets, LLC
1250 E. Hallandale Beach Blvd, Suite 505
Hallandale, FL 33009-4635

Protection 1 Alarm
PO Box 219044
Kansas City, MO 64121-9044

Public Storage
2301 E. Ben White Blvd
Austin, TX 78741-7110

Pullman & Comley, LLC
850 Main Street
Bridgeport, CT 06604-4988

Randazza Legal Group, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117-3400

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054-2792

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864-0901

Renaissance
PO Box 8036
Wisconsin Rapids, WI 54495-8036

Restore America
PO Box 147
Grimsley, TN 38565-0147

Robert Parker
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

SLNT
30 N Gould St, Ste 20647
Sheridan, WY 82801-6317

Scarlett Lewis
c/o Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008-6745

Security Bank of Crawford
6688 North Lone Star Parkway
PO Box 90
Crawford, TX 76638-0090

Simon & Schuster
PO Box 70660
Chicago, IL 60673-0660

SintecMedia NYC, Inc. DBA Operative
PO Box 200663
Pittsburgh, PA 15251-2662

Skousen, Joel
PO Box 565
Spring City, UT 84662-0565

Skyhorse Publishing
307 West 36th Street, 11th Floor
New York, NY 10018-6592

Sparkletts & Sierra Springs
PO Box 660579
Dallas, TX 75266-0579

Spectrum Enterprise aka Time Warner Cable
PO Box 60074
City of Industry, CA 91716-0074

Stamps.com
1990 E Grand Ave.
El Segundo, CA 90245-5013

Stone Edge Technologies, Inc
660 American Avenue, Suite 204
King of Prussia, PA 19406-4032

Stratus Technologies
5 Mill & Main Place, Suite 500
Maynard, MA 01754-2660

Studio 2426, LLC
1920 E. Riverside Drive, Suite A120, ï¿½
Austin, TX 78741-1350

001368

Synergy North America, Inc
11001 W. 120th Avenue, Suite 400
Broomfield, CO 80021-3493

TD Canada Trust
421 7th Avenue SW
Calgary, AB T2P 4K9, Canada

Texas Comptroller
PO Box 13003
Austin, TX 78711-3003

Texas Disposal Systems, Inc
PO Box 674090
Dallas, TX 75267-4090

Texas Gas Service
PO Box 219913
Kansas City, MO 64121-9913

Textedly
133 N. Citrus Ave., Suite 202
Los Angeles, CA 90036

The Creative Group
c/o Robert Half
2884 Sand Hill Road, Ste 200
Menlo Park, CA 94025-7072

The Hartford
PO Box 14219
Lexington, KY 40512-4219

The Steam Team, Inc
1904 W. Koeing Lane
Austin, TX 78756-1211

Third Coast Graphics, Inc
110 Del Monte Dr.
Friendswood, TX 77546-4487

Thomas, David
79 Malone Hill Road
Elma, WA 98541-9206

Travelers
PO Box 660317
Dallas, TX 75266-0317

Travis County
PO Box 149328
Austin, TX 78714-9328

U.S. Legal Support
PO Box 4772
Houston, TX 77210-4772

Uline Shipping Supply
12575 Uline Drive
Pleasant Prarie, WI 53158-3686

Vazquez, Valdemar Rodriguez
145 Quail Ridge Drive
Kyle TX 78640-9788

Verizon
PO Box 660108
Dallas, TX 75266-0108

Verizon Edgecast
13031 West Jefferson Blvd, Building 900
Los Angeles, CA 90094-7002

Veronique De La Rosa
c/o Kaster Lynch Farrar & Ball LLP
1117 Herkimer
Houston, TX 77008-6745

Vultr
14 Cliffwood Avenue, Suite 300
Matawan, NJ 07747-3931

WMQM-AM 1600
21 Stephen Hill Road
Atoka, TN 38004-7183

WWCR
1300 WWCR Avenue
Nashville, TN 37218-3800

Waste Connections Lone Star, Inc.
PO Box 17608
Austin, TX 78760-7608

Water Event - Pure Water Solutions
1310 Missouri St
South Houston, TX 77587-4537

Watson, Paul
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Westwood One, LLC
3542 Momentum Place
Chicago, IL 60689-5335

William Aldenberg
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

William Sherlach
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

Willow Grove Productions
1810 Rockcliff Road
Austin, TX 78746-1215

Wisconsin Dept. of Revenue
PO Box 3028
Milwaukee, WI 53201-3028

001369

Your Promtional Products, LLC
133 North Friendswood STE 186
Friendswood, TX 77546-3746

Zendesk, Inc
989 Market Street
San Francisco, CA 94103-1708

Zoom US
55 Almaden Blvd, 6th Floor
San Jose, CA 95113-1608

eBay
2025 Hamilton Avenue
San Jose, CA 95125-5904

eCommerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405-4226

mongoDB Cloud
1633 Broadway
39th Floor
New York, NY 10019-6757

David Wheeler, et al.
c/o Cain & Skarnulis PLLC
303 Colorado Street
Suite 2850
Austin, TX 78701-4653

Leonard Pozner
c/o McDowell Hetherington LLP
Attention: Avi Moshenberg
1001 Fannin Street
Suite 2700
Houston, TX 77002-6774

Marcel Fontaine
c/o McDowell Hetherington LLP
Attention: Avi Moshenberg
1001 Fannin
Suite 2700
Houston, TX 77002-6774

Melissa A Haselden
Haselden Farrow PLLC
Pennzoil Place
700 Milam
Suite 1300
Houston, TX 77002-2736

Neil Heslin
c/o McDowell Hetherington LLP
Attention: Avi Moshenberg
1001 Fannin Street
Suite 2700
Houston, TX 77002-6774

R. J. Shannon
Shannon & Lee LLP
700 Milam St., STE 1300
Houston, TX 77002-2736

Raymond William Battaglia
Law Offices of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX 78218-3010

Scarlett Lewis
c/o McDowell Hetherington LLP
Attention: Avi Moshenberg
1001 Fannin Street
Suite 2700
Houston, TX 77002-6774

Shelby A Jordan

Veronique De La Rosa
c/o McDowell Hetherington LLP
Attention: Avi Moshenberg
1001 Fannin Street
Suite 2700
Houston, TX 77002-6774

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Konica Minolta Premier Finance
PO Box 41602
Philadelphia, PA 19101-1602

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Resistance Manifesto

End of Label Matrix
Mailable recipients    165
Bypassed recipients      1
Total                  166

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 10, 2022
Nathan Ochsner, Clerk

UNITED STATES BANKRUPTCY COURT                    SOUTHERN DISTRICT OF TEXAS

MOTION AND ORDER
FOR ADMISSION *PRO HAC VICE*

| Division | Houston | Main Case Number | 22-60043 |
|---|---|---|---|
| Debtor | In Re: | Free Speech Systems, LLC | |

This lawyer, who is admitted to the State Bar of _____ Massachusetts _____ :

| Name<br>Firm<br>Street<br>City & Zip Code<br>Telephone<br>Licensed: State & Number | Joseph S.U. Bodoff<br>Rubin and Rudman LLP<br>53 State Street<br>Boston, MA 02109<br>617-330-7038<br>Massachusetts: 549116 |
|---|---|

Seeks to appear as the attorney for this party:

| ADP TotalSource, Inc. | |
|---|---|
| Dated: 8/9/2022 | Signed: /s/ Joseph S.U. Bodoff |

| COURT USE ONLY: The applicant's state bar reports their status as: __Active__ . | |
|---|---|
| Dated:    8/10/2022 | Signed: /s/ R. Saldaña<br>Deputy Clerk |

| Order |
|---|

This lawyer is admitted *pro hac vice*.

Signed:  August 10, 2022

Christopher Lopez
United States Bankruptcy Judge

001371

| Information to identify the case: | |
|---|---|
| Debtor | **Free Speech Systems LLC** |
| | Name |
| | EIN: __-_____ |
| United States Bankruptcy Court   Southern District of Texas | Date case filed for chapter:   11   7/29/22 |
| Case number:   22−60043 | |

## Official Form 309F2 (For Corporations or Partnerships under Subchapter V)
## Notice of Chapter 11 Bankruptcy Case

10/20

**For the debtor listed above, a case has been filed under chapter 11 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read both pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from the debtor by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

Confirmation of a chapter 11 plan may result in a discharge of debt. A creditor who wants to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadline specified in this notice. (See line 12 below for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at https://pacer.uscourts.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**Do not file this notice with any proof of claim or other filing in the case.**

| | | |
|---|---|---|
| **1. Debtor's full name** | Free Speech Systems LLC | |
| **2. All other names used in the last 8 years** | | |
| **3. Address** | 3019 Alvin Devane Blvd. STE 300<br>Austin, TX 78741 | |
| **4. Debtor's attorney**<br>Name and address | Raymond William Battaglia<br>Law Offices of Ray Battaglia, PLLC<br>66 Granburg Circle<br>San Antonio, TX 78218 | Contact phone  2106019405<br><br>Email:  rbattaglialaw@outlook.com |
| **5. Bankruptcy trustee**<br>Name and address | Melissa A Haselden<br>Haselden Farrow PLLC<br>Pennzoil Place<br>700 Milam<br>Suite 1300<br>Houston, TX 77002 | Contact phone  832.819.1149<br><br>Email:  mhaselden@haseldenfarrow.com |
| **6. Bankruptcy clerk's office**<br>Documents in this case may be filed at this address.<br>You may inspect all records filed in this case at this office or online at https://pacer.uscourts.gov. | United States Bankruptcy Court<br>PO Box 61010<br>Houston, TX 77208 | Hours open:<br>8:00 am – 5:00 pm Monday through Friday<br><br>Contact phone  (713) 250−5500<br><br>Date: 8/11/22 |

**For more information, see page 2 >**

001372

Debtor  **Free Speech Systems LLC**                                          Case number   **22−60043**

| **7.  Meeting of creditors** | | Location: |
|---|---|---|
| The debtor's representative must attend the meeting to be questioned under oath. Creditors may attend, but are not required to do so. | **September 7, 2022 at 01:00 PM** <br><br> The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | **Suite 3401, 515 Rusk Ave, Houston, TX 77002** |

| **8.  Proof of claim deadline** | |
|---|---|
| | **Deadline for filing proof of claim:** |
| | **For all creditors (except a governmental unit):**  10/7/22 |
| | **For a governmental unit:**  2/7/23 |
| | A proof of claim is a signed statement describing a creditor's claim. A proof of claim form may be obtained at www.uscourts.gov or any bankruptcy clerk's office. |
| | Your claim will be allowed in the amount scheduled unless: <br> •  your claim is designated as *disputed*, *contingent*, or *unliquidated;* <br> •  you file a proof of claim in a different amount; or <br> •  you receive another notice. |
| | If your claim is not scheduled or if your claim is designated as *disputed*, *contingent*, or *unliquidated*, you must file a proof of claim or you might not be paid on your claim and you might be unable to vote on a plan. You may file a proof of claim even if your claim is scheduled. |
| | You may review the schedules at the bankruptcy clerk's office or online at https://pacer.uscourts.gov. |
| | Secured creditors retain rights in their collateral regardless of whether they file a proof of claim. Filing a proof of claim submits a creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important nonmonetary rights, including the right to a jury trial. |

| **9.  Exception to discharge deadline** | |
|---|---|
| The bankruptcy clerk's office must receive a complaint and any required filing fee by the following deadline. | If § 523(c) applies to your claim and you seek to have it excepted from discharge, you must start a judicial proceeding by filing a complaint by the deadline stated below. <br><br> **Deadline for filing the complaint:**  _____ |

| **10.  Creditors with a foreign address** | If you are a creditor receiving notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. |
|---|---|

| **11.  Filing a Chapter 11 bankruptcy case** | Chapter 11 allows debtors to reorganize or liquidate according to a plan. A plan is not effective unless the court confirms it. You may receive a copy of the plan and a disclosure statement telling you about the plan, and you may have the opportunity to vote on the plan. You will receive notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. The debtor will generally remain in possession of the property and may continue to operate the debtor's business. |
|---|---|

| **12.  Discharge of debts** | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. See 11 U.S.C. § 1141(d). A discharge means that creditors may never try to collect the debt from the debtor except as provided in the plan. If you want to have a particular debt owed to you excepted from the discharge and § 523(c) applies to your claim, you must start a judicial proceeding by filing a complaint and paying the filing fee in the bankruptcy clerk's office by the deadline. |
|---|---|

001373

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-60043 (CL)** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | **Chapter 11** |
| | § | |
| **Debtor** | § | |

**NOTICE OF
SECTION 341 MEETING OF CREDITORS**

The Meeting of Creditors pursuant to 11 U.S.C. § 341 in the above captioned case will be convened in-person at 515 Rusk Street, Suite 3401, Houston, Texas 77002. Creditors and the public may participate remotely by following the call-in instructions below:

UST-Houston Conference Line
Toll Free Number: 866-707-5468
PIN: 6166997

Dated: August 11, 2022,                         KEVIN M. EPSTEIN
                                                UNITED STATES TRUSTEE


                                                _/s/ HA M NGUYEN_
                                                Ha Nguyen, Trial Attorney
                                                CA Bar #305411 | FED ID NO. 3623593
                                                United States Department of Justice
                                                Office of the United States Trustee
                                                515 Rusk Street, Suite 3516
                                                Houston, Texas 77002
                                                E-mail: Ha.Nguyen@usdoj.gov
                                                Cell: 202-590-7962

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a true and correct copy of the foregoing Notice of Section 341 Meeting of Creditors has been served by electronic means on all PACER participants on August 11, 2022

<u>*/s/ Ha M Nguyen*</u>
Ha M. Nguyen

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## DEBTOR'S EMERGENCY MOTION TO AMEND INTERIM ORDER AUTHORIZING THE USE OF CASH COLLATERAL

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED, IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE LOPEZ' CONFERENCE ROOM NUMBER IS 590153. YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGELOPEZ" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE LOPEZ'S HOME PAGE IN THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT-HAND CORNER AND ENTER YOUR NAME UNDER PERSONAL INFORMATION SETTING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS"), in the

above-referenced chapter 11 case, hereby files this emergency motion (the "Motion") seeking an order modifying this Court's Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Adequate Protection (the "Interim Order") [Dkt No. 41]. In further support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      On July 29, 2022 (the "Petition Date"), the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of Title 11 of the United States Code §§ 101, *et seq.* (the "Bankruptcy Code").

2.      The Debtor continues in the possession of its property and is operating and managing its businesses as debtor and debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code.

3.      No request for a trustee or examiner has been made. No statutory committee of creditors has been appointed.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief sought in this Motion are 11 U.S.C. §§ 105, 361, and 363 and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND[1]

6.      FSS filed *its Emergency Motion for an Interim and Final Order (I) Authorizing the*

---

[1] Additional factual background and information regarding the Debtor and its operations is set forth in the *Declaration of W. Marc Schwartz in Support of Voluntary Petition and First Day Motions*

001377

*Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Cash Collateral Motion").

7.  This Court held a hearing on the Cash Collateral Motion on August 3, 2022.  The Cash Collateral Motion incorporated a 13-Week Cash Collateral Budget (the "Budget").  At the hearing, the Court authorized the use of cash collateral with certain modifications to the Budget and other conditions which were incorporated into the Interim Order.

8.  A critical component of FSS's sales business is FSS's ability to fill the orders when the customer purchases the product from the InfowarsStore.com website. When a customer purchases a product, they are charged a shipping fee as part of the sales price. Therefore, an expectation is created that the customer will receive his product on a reasonable delivery schedule. If the product is not fulfilled and delay occurs in shipping the product, the chance increases that the customer may ask for a refund or cancel the order. An excessive amount of cancellation of orders is catastrophic to FSS's business and revenue generation. If orders do not timely ship, customers will cancel orders triggering chargebacks on credit cards and a pattern of chargebacks will adversely affect credit card processing, including possible termination of credit card processing services.

9.  FSS is facing a crisis in being able to fulfill product sales, as the Budget was prepared in a conservative fashion and did not anticipate a surge in sales of the magnitude actually experienced and the resulting increase in the need for a larger fulfillment budget. The Budget authorized the Debtor to use $95,278 (with a 10% variance that amounts to $104,800) of cash collateral to pay fulfillment costs to Blue Ascension, LLC. ("Blue Ascension").

10.  First, Alex Jones has no equity or any other stake or interest in Blue Ascension.

3

Second, Patrick Riley, a former employee of FSS, started Blue Ascension in order to be a specialized fulfillment logistics company. Third, FSS pays Blue Ascension to handle all FSS order fulfillment operations.

11.     Blue Ascension charges a per piece rate for fulfillment of $20 per order.  For this, Blue Ascension provides a range of services, including handling of receipt of inventory shipments, stocking shelves, picking merchandise for orders, boxing, and shipping orders.  Of the cost of fulfillment, more than $14 consists of shipping costs.  Customers are billed an average of $13.24 per order for shipping and handling,

12.     But Blue Ascension will not incur shipping costs until it is first paid by FSS for such costs.  Blue Ascension, therefore, will not ship products ordered until receipt of the fulfillment charge from the Debtor.

13.     The Budget projected weekly revenues of $595,489. FSS projected that weekly revenue amount based on sales for the week ended July 22 (times 1.25%), the first full week following receipt of new product and the last week for which sales figures were available prior to the Petition Date (July 29, 2022).  Actual sales have far exceeded the budgeted sales projections, for a number of reasons, including the receipt of new inventory (FSS had lacked product to sell for some time).  For the week ended July 29, FSS actual sales revenue was $961,918.  For the week ended August 5 (the first week the bankruptcy was pending), FSS actual sales revenue was $898,869.  So far this week (we only have sales figures for Monday) FSS sales continue at an $800,000 a week pace.

14.     On top of actual sales being robust as compared to budget, the Debtor anticipates receipt of long back ordered inventory and new products that should sell quickly.  According to the CRO, orders could increase beyond the current level of sales, and perhaps increase to as high

4

as $450,000 *per day*, as contrasted with $595,489 *per week*.

15.     While this is good news on the one hand, it could be catastrophically dangerous if FSS cannot timely fulfill these new orders. The use a "static" model to project fulfillment costs in the Budget has led to serious under-budgeting of this expense item of the Debtor's business.

16.     With higher than projected sales, it has become clear to the CRO that the budgeted fulfillment costs are inadequate and the inability to pay fulfillment costs as they are incurred will result in damage to the business unless it is cured now.

17.     On August 9th, 2022, the Debtor become aware of issues with the budget arising from the inadequate funding of fulfillment costs due to the significant growth in orders, as discussed in greater detail *infra*.

18.     Debtor's management began to assess the scale of the issue while Debtor's counsel contacted counsel for PQPR Holdings Limited LLC ("PQPR"), the secured lender, the subchapter V Trustee, the U.S. Trustee and joint counsel for the litigation plaintiffs.  All were advised of the nature and scope of the issue by email dated August 11, 2022.

19.     PQPR consents to the relief requested in the Motion. The Subchapter V Trustee, based on phone conversation, does not oppose the relief requested in the Motion, and suggested the Debtor seek consent form joint counsel for litigation plaintiffs and U.S. Trustee. The Debtor has not heard back from these two parties as of filing of this Motion.

## RELIEF REQUESTED

20.     In order to eliminate the need to use a static budget (which does not allow the Debtor to capture for the increase in fulfillment costs when sales increase), the Debtor proposes to instruct the credit card processor to withhold from the daily settlement $20.00 per order shipped

001380

and remit those funds directly to Blue Ascension, at the same time it remits the appropriate percentage of collected funds to FSS and PQPR.   There will be no net effect to the Debtor's bottom line by implementing this change, however the increased sales volume will be accretive to the ending cash balance.

21.    The Debtor believed that this solution is one FSS could adopt in the ordinary course of its business.  In an abundance of caution, the Debtor has been transparent with creditor and parties in interest and now seeks an order of this Court modifying the Interim Order to authorize implementation of the proposed solution set forth above effective with the sales reported for Wednesday, August 10, 2022.

22.    The Debtor further proposes to submit to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarred Martin as a representative of the Connecticut and Texas plaintiffs a report each Tuesday reporting sales and the allocation of distributions of those proceeds for the preceding week.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests the Court enter an Order granting the relief requested and granting such other and further relief as the Court may deem proper.

001381

Respectfully submitted.

LAW OFFICES OF RAY BATTAGLIA, PLLC

/S/ RAYMOND W. BATTAGLIA
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Counsel to the Debtor and Debtor-In-Possession*

-and-

SHANNON & LEE LLP

/s/ *Kyung S. Lee*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service on the date of filing, (b) by U.S.P.S. first class mail on all parties indicated in the attached service list within 24 hours of the filing, and (c) the following parties by email on the date of filing:

/s/Raymond W. Battaglia
Raymond W. Battaglia

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com


Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com


Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Attn: Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Attn: Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581
rww@bymanlaw.com

Attn: Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002
jarrod.martin@chamberlinlaw.com

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002
mhaselden@haseldenfarro.com

Attn: Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548
christopher.dylla@oag.texas.gov

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of U.S. Trustee
515 Rusk, Suite 3516
Houston, TX 77002
ha.nguyen@usdoj.gov
jayson.b.ruff@usdoj.gov

## USPS Service List

### Twenty Largest Unsecured Creditors

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

Commerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001
Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

9

001384

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

## Parties Claiming Interest or Lien Affected

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

## Parties Filing Notice of Appearance

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701

Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002

Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548

001385

**Subchapter V Trustee**

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002

**U.S. Trustee**

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

**Additional Notice Parties**

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterling, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 0660

11

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| | § | |
| Debtor. | § | |

**ORDER MODIFYING INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH
COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION**

On August 11, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS")

in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion to Amend Interim Order*

*Authorizing the Use of Cash Collateral* after due deliberation and consideration and sufficient cause appearing

therefor;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.    Motion Granted. The Motion is hereby granted on an interim basis as set forth herein.

2.    Interim Order. The Interim Order shall be modified as follows:

The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its
fulfillment charges as set forth in the Motion, from the daily settlement contemporaneously with the
distributions to FSS and PQPR

3.    Reporting.  The Debtor shall report each Tuesday for the preceding calendar week reflecting

weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the

U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the

Connecticut and Texas plaintiffs.

4.    The remaining terms, findings and provisions of the Interim Order are not amended or

modified and remain in effect.

Houston, Texas
Dated: August ___, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

001387

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

## CONNECTICUT FAMILIES' OBJECTION TO
## DEBTOR'S EMERGENCY MOTION TO AMEND INTERIM ORDER
## AUTHORIZING THE USE OF CASH COLLATERAL

David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (collectively, the Connecticut Families) file this objection (Objection) to *Debtor's Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral* (Emergency Motion) [Dkt. 55][1]. The Connecticut Families respectfully state as follows:

## I.    PRELIMINARY STATEMENT

1.    In a vacuum, the Connecticut Families do not oppose reasonable adjustments to Free Speech Systems, LLC's (FSS or the Debtor) interim cash collateral order to help generate increased revenues. But the Debtor's Emergency Motion, filed and set for hearing on barely 24 hours' notice, raises serious questions about the Debtor's operations and its relationship with a fulfillment-operations provider, Blue Ascension, LLC (Blue Ascension). Blue Ascension was formed just weeks before this bankruptcy filing and, as the Debtor admits, was founded by its former employee with a staff wholly comprised of the Debtor's former fulfillment department. The Court and the

---

[1] Debtor's Emergency Motion fails to comply with Bankruptcy Local Rule 9013-1(i) as it does not contain "a detailed statement of why an emergency exists, and the date relief is needed to avoid the consequences of the emergency." The Emergency Motion is also not certified for its accuracy as is required by the rule.

Debtor's creditors are entitled to evidence supporting the Debtor's claims and transparency before any relief is granted.

## II.      JURISDICTION AND VENUE

2.       The Court has jurisdiction over the Emergency Motion under 28 U.S.C. §§ 157 and 1334.  The Emergency Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (G).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.   PROCEDURAL BACKGROUND

3.       On July 29, 2022, the Debtor filed its voluntary petition for relief under Subchapter V of Chapter 11 of Title 11 of the United States Code.

4.       On that same date, the Debtor filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to Sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the Cash Collateral Motion) [Dkt. 6].

5.       On August 3, 2022, the Court heard the Cash Collateral Motion, which was granted in part, authorizing the use of cash collateral with certain modifications to the budget in the Cash Collateral Motion.  The *Interim Order Authorizing the Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* (the Interim Order) [Dkt. 41] was entered by the Court on August 5, 2022.

6.       On August 11, 2022, the Debtor moved to amend the Interim Order to instruct the credit-card processor to withhold from the daily settlement $20 per order shipped and remit those funds directly to Blue Ascension, while also remitting the appropriate percentage of collected funds to the Debtor and PQPR Holdings Limited LLC.

7.      Before moving to amend, the Debtor had not once disclosed Blue Ascension's history and connection with the Debtor to the Court or the creditors.

## IV.    OBJECTION

6.      The Debtor's Emergency Motion contends that the 13-Week Cash Collateral Budget (the Budget) attached to its Cash Collateral Motion failed to consider the ramifications of an increase in product sales that occurred since its bankruptcy filing. And for that reason, the Debtor seeks this Court's blessing to instruct its unnamed credit-card processor "to withhold from the daily settlement $20 per order shipped and remit those funds directly to Blue Ascension, at the same time it remits the appropriate percentage of collected funds to FSS and PQPR."

7.      But the Debtor fails to provide any evidence of its alleged increased sales that would substantiate the need for this change, which essentially greenlights unlimited direct payments to a "fulfillment logistics company" that the Debtor's counsel represents (1) was founded and is owned by a former FSS employee, (2) was formed only weeks ago in mid-July, and (3) is staffed only with the Debtor's former-fulfillment staff.  The Debtor's counsel also represented that the Debtor previously handled fulfillment in-house and just began doing business with Blue Ascension on July 18th or 19th.  The Debtor's Emergency Motion fails to explain why this significant change was made to its operations just days before it filed for bankruptcy.  Nor does it address what analysis it performed, if any, to determine that outsourcing its fulfillment operations is the most cost-effective means of fulfilling that operational need—after performing these operations in-house for years.  And, of course, these concerns rest against a backdrop in which the Debtor offers no evidence of a contract between it and Blue Ascension.

8.      The Debtor only represents that "Alex Jones has no equity or any other stake or interest in Blue Ascension" but fails to affirm the same about Alex Jones's family members, insiders, or affiliated entities, or that none of these parties receive compensation from Blue Ascension.  The Debtor should provide sufficient evidence to show this Court and its creditors that it has a legitimate arm's length relationship with Blue Ascension and the modifications it seeks in its Emergency Motion is not just a vehicle to drain money from the Estate and divert it to Alex Jones or others.

## V.      CONCLUSION

The circumstances here warrant that this Debtor answer all the questions raised in this Objection.  If it fails to do so, and for the reasons stated above, the Connecticut Families respectfully request that this Court deny the relief sought in the Debtor's Emergency Motion.

Respectfully submitted this 12th day of August 2022.

_____/s/ Ryan E. Chapple_____
Ryan E. Chapple
State Bar No. 24036354
rchapple@cstrial.com
CAIN & SKARNULIS PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile

and

Randy W. Williams
State Bar No. 21566850
rww@bymanlaw.com
BYMAN & ASSOCIATES PLLC
7924 Broadway, Suite 104
Pearland, Texas 77581
281-884-9262
ATTORNEYS FOR WHEELER, ET AL.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Objection has been served on counsel for Debtor, Debtor, and all parties receiving or entitled to notice through CM/ECF on this 12th day of August 2022.

_____*/s/ Ryan E. Chapple*_____
Ryan E. Chapple

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

**ORDER DENYING**
**DEBTOR'S EMERGENCY MOTION TO AMEND INTERIM ORDER**
**AUTHORIZING THE USE OF CASH COLLATERAL**

On August 11, 2022, the Debtor filed its *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral* (the Emergency Motion) [Dkt. 55]. The Emergency Motion was heard on August 12, 2022, and after considering the Emergency Motion, any objections, and arguments of counsel, it is hereby ORDERED THAT:

1.      The Emergency Motion is DENIED.

Dated: _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

001393

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22–60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Chapter 11** |
| | § | **Subchapter V** |
| **Debtor.** | § | |

---

**TEXAS PLAINTIFFS' JOINDER TO THE CONNECTICUT PLAINTIFFS'**
**OBJECTION TO DEBTOR'S EMERGENCY MOTION TO AMEND INTERIM ORDER**
**AUTHORIZING THE USE OF CASH COLLATERAL**

---

Texas Plaintiffs Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and

Marcel Fontaine object to the *Debtor's Emergency Motion to Amend the Interim Order*

*Authorizing the Use of Cash Collateral* ("**Emergency Motion**") (ECF No. 55) and file this joinder

to the Connecticut Plaintiffs' Objection (ECF No. 56).

The Debtor's Emergency Motion should be denied. The Connecticut Plaintiffs' Objection

to the Emergency Motion already details the legitimate questions swirling around Debtor's

relationship with Blue Ascension. These questions include: (1) why the Debtor outsourced its

fulfillment services to Blue Ascension on the cusp of bankruptcy, (2) why the Debtor doesn't have

a written contract with Blue Ascension, (3) what due diligence the Debtor undertook in hiring Blue

Ascension, and (4) what financial benefits Alex Jones and his insiders receive from paying Blue

Ascension to perform fulfillment services the Debtor performed in-house for years. Equally,

important, the Connecticut Plaintiffs rightly questioned whether an emergency actually exists—

especially since no evidence was offered to prove that the Debtor has in fact enjoyed bustling

business these past few days that requires amending the cash-collateral order. Indeed, the Debtor

has not only neglected to offer *any* evidence in support of its emergency motion but also failed to

---

comply with local rules requiring that emergency motions be certified for their accuracy.[1] Rather than regurgitate the points raised in the Connecticut Plaintiffs' Objection, it suffices to say that the Texas Plaintiffs adopt and join the Objection in full.

The Debtor asks this Court to essentially endorse a blank check to a company the parties know nothing about. And the reason nothing is known is because the Debtor has offered no information about this company. It provided no such information in its first-day motions, its first-day hearing (even though its CRO testified for hours without ever mentioning Blue Ascension), or even its emergency motion to amend where it has literally offered no evidence to support its request. The Court should decline the Debtor's request to spend its limited assets on a whim.

For these reasons, and the reasons raised in the Connecticut Plaintiffs' Objection, the Texas Plaintiffs respectfully ask that Emergency Motion be denied.

Dated: August 12, 2022                    Respectfully submitted,

                                          MCDOWELL HETHERINGTON LLP

                                          Avi Moshenberg
                                          Texas Bar No. 24083532
                                          1001 Fannin Street
                                          Suite 2700
                                          Houston, TX 77002
                                          P: 713-337-5580
                                          F: 713-337-8850
                                          E: avi.moshenberg@mhllp.com

                                          *Counsel for the Texas Plaintiffs*

                                          *AND*

---

[1] *See* Bankruptcy Local Rule 9013-1(i) (""Some judges allow self-calendaring of emergency motions through the judge's web page. If self-calendaring is not authorized, requests for emergency hearings may be made in the pleading requesting the relief. No separate motion requesting an emergency hearing is required. The emergency motion must contain the word "Emergency" in the title of the motion. *The motion must include a detailed statement why an emergency exists, and the date relief is needed to avoid the consequences of the emergency. The motion seeking an emergency hearing must be certified for its accuracy by the party seeking the emergency relief or by its counsel. . . .*") (emphasis added).

**CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY, PC**

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

***Bankruptcy Counsel for the Texas Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on August 12, 2022, a true and correct copy of the foregoing Notice was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22--60043** |
| | § | |
| **DEBTOR.** | § | **(Subchapter V Debtor)** |
| | § | **Chapter 11** |

**WITNESS AND EXHIBIT LIST**
**FOR HEARING ON DEBTOR'S EMERGENCY MOTION TO AMEND INTERIM**
**ORDER AUTHORIZING THE USE OF CASH COLLATERAL**
**[ECF. NO. 51]**

| | |
|---|---|
| Judge: | Hon. Christopher M. Lopez |
| Hearing Date: | Friday, August 12, 2022 |
| Hearing Time: | 1:00 p.m. (CT) |
| Party's Name: | Free Speech Systems, LLC |
| Attorney's Name: | Raymond W. Battaglia,  Kyung S. Lee |
| Attorney's Phone: | (210) 601-9405; (713) 301-4751 |
| Nature of Proceeding: | Hearing on:<br>• Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral [Docket No. 51] |

The Law Offices of Raymond W. Battaglia (the "**Battaglia Firm**"), general bankruptcy counsel for Free Speech Systems, LLC (the "**Debtor**")  and Shannon & Lee LLP ("**S&L**") proposed co-counsel to the Debtor, in the above-captioned chapter 11 case (the "**Chapter 11** **Case**"), hereby submit this witness and exhibit list in connection with the hearing to be held on Friday, August 11, 2022 at 1:00 P.M.(Central Time) (the "**Hearing**") on the pleading listed below.

- Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral [Docket No. 51].

## **WITNESSES**

The Debtor may call any of the following witnesses at the Hearing, whether in person or by proffer:

1. W. Marc Schwartz, Chief Restructuring Officer of Free Speech Systems, LLC;

2. Patrick Reiley, Member, Blue Asension Logistics LLC;

3. Any witnesses necessary to establish  notice of the Hearing has been provided; and

4. Any witnesses necessary to rebut the testimony of any witnesses called or designated by any other parties.

## **EXHIBITS**

The Debtor may offer for admission into evidence any of the following exhibits at the hearing:

| Ex. | Description | Offered | Objection | Admitted /Not Admitted | Disposition |
|-----|-------------|---------|-----------|------------------------|-------------|
|     |             |         |           |                        |             |
| 1 | Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral [Docket No. 51]. |  |  |  |  |
| 2 | 13-Week Cash Collateral Budget |  |  |  |  |
| 3 | Blue Asension Logistics Price List |  |  |  |  |

2

001398

The Debtor reserves the right to supplement, amend or delete any witness and exhibits prior to the Hearing.  The Debtor also reserves the right to use any exhibits presented by any other party and to ask the Court to take judicial notice of any document.  The Debtor finally reserves the right to introduce exhibits previously admitted.

Respectfully submitted the 12th day of August, 2022.

LAW OFFICES OF RAY BATTAGLIA, PLLC

/s/ *RAYMOND W. BATTAGLIA*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Counsel to the Debtor and Debtor-In-Possession*

-and-

SHANNON & LEE LLP

/s/ *Kyung S. Lee*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

001399

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, as set forth below. I further certify that it has been transmitted by first class mail to the parties on the attached service list.


*/s/ Raymond W. Battaglia*
Raymond W. Battaglia

4

001400

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## DEBTOR'S EMERGENCY MOTION TO AMEND INTERIM ORDER AUTHORIZING THE USE OF CASH COLLATERAL

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE LOPEZ' CONFERENCE ROOM NUMBER IS 590153. YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGELOPEZ" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE LOPEZ'S HOME PAGE IN THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT-HAND CORNER AND ENTER YOUR NAME UNDER PERSONAL INFORMATION SETTING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS"), in the

EXHIBIT

1

exhibitsticker.com

001401

above-referenced chapter 11 case, hereby files this emergency motion (the "Motion") seeking an order modifying this Court's Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Adequate Protection (the "Interim Order") [Dkt No. 41]. In further support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      On July 29, 2022 (the "Petition Date"), the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of Title 11 of the United States Code §§ 101, *et seq.* (the "Bankruptcy Code").

2.      The Debtor continues in the possession of its property and is operating and managing its businesses as debtor and debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code.

3.      No request for a trustee or examiner has been made. No statutory committee of creditors has been appointed.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief sought in this Motion are 11 U.S.C. §§ 105, 361, and 363 and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND[1]

6.      FSS filed *its Emergency Motion for an Interim and Final Order (I) Authorizing the*

---

[1] Additional factual background and information regarding the Debtor and its operations is set forth in the *Declaration of W. Marc Schwartz in Support of Voluntary Petition and First Day Motions*

001402

*Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "<u>Cash Collateral Motion</u>").

7.      This Court held a hearing on the Cash Collateral Motion on August 3, 2022.  The Cash Collateral Motion incorporated a 13-Week Cash Collateral Budget (the "<u>Budget</u>").  At the hearing, the Court authorized the use of cash collateral with certain modifications to the Budget and other conditions which were incorporated into the Interim Order.

8.      A critical component of FSS's sales business is FSS's ability to fill the orders when the customer purchases the product from the InfowarsStore.com website. When a customer purchases a product, they are charged a shipping fee as part of the sales price. Therefore, an expectation is created that the customer will receive his product on a reasonable delivery schedule. If the product is not fulfilled and delay occurs in shipping the product, the chance increases that the customer may ask for a refund or cancel the order. An excessive amount of cancellation of orders is catastrophic to FSS's business and revenue generation. If orders do not timely ship, customers will cancel orders triggering chargebacks on credit cards and a pattern of chargebacks will adversely affect credit card processing, including possible termination of credit card processing services.

9.      FSS is facing a crisis in being able to fulfill product sales, as the Budget was prepared in a conservative fashion and did not anticipate a surge in sales of the magnitude actually experienced and the resulting increase in the need for a larger fulfillment budget. The Budget authorized the Debtor to use $95,278 (with a 10% variance that amounts to $104,800) of cash collateral to pay fulfillment costs to Blue Ascension, LLC. ("<u>Blue Ascension</u>").

10.     First, Alex Jones has no equity or any other stake or interest in Blue Ascension.

001403

Second, Patrick Riley, a former employee of FSS, started Blue Ascension in order to be a specialized fulfillment logistics company. Third, FSS pays Blue Ascension to handle all FSS order fulfillment operations.

11.     Blue Ascension charges a per piece rate for fulfillment of $20 per order.  For this, Blue Ascension provides a range of services, including handling of receipt of inventory shipments, stocking shelves, picking merchandise for orders, boxing, and shipping orders.  Of the cost of fulfillment, more than $14 consists of shipping costs.  Customers are billed an average of $13.24 per order for shipping and handling,

12.     But Blue Ascension will not incur shipping costs until it is first paid by FSS for such costs.  Blue Ascension, therefore, will not ship products ordered until receipt of the fulfillment charge from the Debtor.

13.     The Budget projected weekly revenues of $595,489. FSS projected that weekly revenue amount based on sales for the week ended July 22 (times 1.25%), the first full week following receipt of new product and the last week for which sales figures were available prior to the Petition Date (July 29, 2022).  Actual sales have far exceeded the budgeted sales projections, for a number of reasons, including the receipt of new inventory (FSS had lacked product to sell for some time).  For the week ended July 29, FSS actual sales revenue was $961,918.  For the week ended August 5 (the first week the bankruptcy was pending), FSS actual sales revenue was $898,869.  So far this week (we only have sales figures for Monday) FSS sales continue at an $800,000 a week pace.

14.     On top of actual sales being robust as compared to budget, the Debtor anticipates receipt of long back ordered inventory and new products that should sell quickly.  According to the CRO, orders could increase beyond the current level of sales, and perhaps increase to as high

4

as $450,000 *per day*, as contrasted with $595,489 *per week*.

15.     While this is good news on the one hand, it could be catastrophically dangerous if FSS cannot timely fulfill these new orders. The use a "static" model to project fulfillment costs in the Budget has led to serious under-budgeting of this expense item of the Debtor's business.

16.     With higher than projected sales, it has become clear to the CRO that the budgeted fulfillment costs are inadequate and the inability to pay fulfillment costs as they are incurred will result in damage to the business unless it is cured now.

17.     On August 9th, 2022, the Debtor become aware of issues with the budget arising from the inadequate funding of fulfillment costs due to the significant growth in orders, as discussed in greater detail *infra*.

18.     Debtor's management began to assess the scale of the issue while Debtor's counsel contacted counsel for PQPR Holdings Limited LLC ("PQPR"), the secured lender, the subchapter V Trustee, the U.S. Trustee and joint counsel for the litigation plaintiffs.  All were advised of the nature and scope of the issue by email dated August 11, 2022.

19.     PQPR consents to the relief requested in the Motion. The Subchapter V Trustee, based on phone conversation, does not oppose the relief requested in the Motion, and suggested the Debtor seek consent form joint counsel for litigation plaintiffs and U.S. Trustee. The Debtor has not heard back from these two parties as of filing of this Motion.

## RELIEF REQUESTED

20.     In order to eliminate the need to use a static budget (which does not allow the Debtor to capture for the increase in fulfillment costs when sales increase), the Debtor proposes to instruct the credit card processor to withhold from the daily settlement $20.00 per order shipped

5

and remit those funds directly to Blue Ascension, at the same time it remits the appropriate percentage of collected funds to FSS and PQPR.   There will be no net effect to the Debtor's bottom line by implementing this change, however the increased sales volume will be accretive to the ending cash balance.

21.     The Debtor believed that this solution is one FSS could adopt in the ordinary course of its business.  In an abundance of caution, the Debtor has been transparent with creditor and parties in interest and now seeks an order of this Court modifying the Interim Order to authorize implementation of the proposed solution set forth above effective with the sales reported for Wednesday, August 10, 2022.

22.     The Debtor further proposes to submit to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarred Martin as a representative of the Connecticut and Texas plaintiffs a report each Tuesday reporting sales and the allocation of distributions of those proceeds for the preceding week.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests the Court enter an Order granting the relief requested and granting such other and further relief as the Court may deem proper.

001406

Respectfully submitted.

LAW OFFICES OF RAY BATTAGLIA, PLLC

/S/ RAYMOND W. BATTAGLIA
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Counsel to the Debtor and Debtor-In-Possession*

-and-

SHANNON & LEE LLP

/s/ *Kyung S. Lee*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service on the date of filing, (b) by U.S.P.S. first class mail on all parties indicated in the attached service list within 24 hours of the filing, and (c) the following parties by email on the date of filing:

<div align="right">

/s/Raymond W. Battaglia
Raymond W. Battaglia

</div>

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com


Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com


Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us


Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com


Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com


Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com


Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com


Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com


Attn: Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
rchapple@cstrial.com


Attn: Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581
rww@bymanlaw.com

001408

Attn: Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002
jarrod.martin@chamberlinlaw.com

Attn: Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548
christopher.dylla@oag.texas.gov

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002
mhaselden@haseldenfarro.com

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of U.S. Trustee
515 Rusk, Suite 3516
Houston, TX 77002
ha.nguyen@usdoj.gov
jayson.b.ruff@usdoj.gov

## USPS Service List

### Twenty Largest Unsecured Creditors

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

Commerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001
Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

9

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

## Parties Claiming Interest or Lien Affected

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

## Parties Filing Notice of Appearance

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701

Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002

Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548

001410

**<u>Subchapter V Trustee</u>**

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002

**<u>U.S. Trustee</u>**

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

**<u>Additional Notice Parties</u>**

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterling, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 0660

11

**Free Speech Systems LLC**

## Forecasted 13 Week Cash Flow Budget
### Between July 30, 2022 and October 28, 2022

| Period+AS-E83 | 1 07/30/2022–08/05/2022 | 2 08/06/2022–08/12/2022 | 3 08/13/2022–08/19/2022 | 4 08/20/2022–08/26/2022 | 5 08/27/2022–09/02/2022 | 6 09/03/2022–09/09/2022 | 7 09/10/2022–09/16/2022 | 8 09/17/2022–09/23/2022 | 9 09/24/2022–09/30/2022 | 10 10/01/2022–10/07/2022 | 11 10/08/2022–10/14/2022 | 12 10/15/2022–10/21/2022 | 13 10/22/2022–10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | |
| Product Sales | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 7,741,357.16 |
| Advertising | | | | 480,166.46 | | | | 480,166.46 | | | | 480,166.46 | | 1,440,499.38 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 40,836.21 |
| **Total Income** | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 9,222,692.75 |
| **Selling & Product Costs** | | | | | | | | | | | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (990,017.27) |
| Repay PQPR Inventory | | (250,000.00) | | | | | | | | | | | | (250,000.00) |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (348,361.07) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (102,853.59) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (1,238,617.15) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (309,654.29) |
| eCommerce Store Maintenance | (27,270.00) | | | | (27,270.00) | | | | (27,270.00) | | | | | (81,810.00) |
| Texas Sales Tax | (5,337.87) | | | | (5,337.87) | | | | (5,337.87) | | | | | (16,013.61) |
| **Total Cost of Goods Sold** | (262,569.67) | (479,961.80) | (229,961.80) | (229,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (229,961.80) | (3,337,326.97) |
| **Operating Expenses** | | | | | | | | | | | | | | |
| **Advertising & Promotion** | | | | | | | | | | | | | | |
| Advertising & Promotion | (3,041.98) | | | | (3,041.98) | | | | (3,041.98) | | | | | (9,125.93) |
| Print Media | (3,000.00) | | | | (3,000.00) | | | | (3,000.00) | | | | | (9,000.00) |
| Radio Show Advertising | (11,500.00) | | | | (11,500.00) | | | | (11,500.00) | | | | | (34,500.00) |
| **Total Advertising & Promotion** | (17,541.98) | | | | (17,541.98) | | | | (17,541.98) | | | | | (52,625.93) |
| **Computer/IT/IP Expense** | | | | | | | | | | | | | | |
| Internet & TV services | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | (2,082.90) | | | (1,608.39) | | (11,073.89) |
| Software License Fees | (140.80) | | | | (140.80) | | | | (140.80) | | | | | (422.40) |
| Server Hosting Service | (28,595.13) | | | | (28,595.13) | | | | (28,595.13) | | | | | (85,785.40) |
| CDN Video Cloud Storage | (55,728.00) | | | | (55,728.00) | | | | (55,728.00) | | | | | (167,184.00) |
| Satellite Service | (137,282.93) | | | | (137,282.93) | | | | (137,282.93) | | | | | (411,848.78) |
| Imaging License Fee | (9,201.25) | | | | (9,201.25) | | | | (9,201.25) | | | | | (27,603.75) |
| Software & Apps | (5,000.00) | | | | (5,000.00) | | | | (5,000.00) | | | | | (15,000.00) |
| Website Hosting | | | (266.50) | | | | (266.50) | | | | | (266.50) | | (799.50) |
| **Total Computer/IT/IP Expense** | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | (238,031.01) | | | (1,874.89) | | (719,717.72) |
| Insurance | (2,166.50) | | | | (2,166.50) | | | | (2,166.50) | | | | | (6,499.50) |
| **Office & Administrative Expense** | | | | | | | | | | | | | | |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (596.74) |
| Equipment Rental | (1,989.90) | | | | (1,989.90) | | | | (1,989.90) | | | | | (5,969.69) |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (27.31) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (3,645.97) |
| **Total Office & Administrative Expense** | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (328.46) | (10,239.71) |
| **Utilities** | | | | | | | | | | | | | | |
| Outsourced Services | | | | | | | | | | | | (12,000.00) | | (12,000.00) |
| Consulting Services | | | | | | | | | | | | | | |
| Utility Deposit | (10,000.00) | | | | | | | | | | | | | (10,000.00) |
| Electricity | | | (5,107.63) | | | | (5,107.63) | | | | | (5,107.63) | | (15,322.89) |
| HVAC | (256.19) | | | | (256.19) | | | | (256.19) | | | | | (768.58) |
| CAM Charges | (20,364.16) | | | | (20,364.16) | | | | (20,364.16) | | | | | (61,092.48) |
| Water & Sewer | (1,708.55) | | | | (1,708.55) | | | | (1,708.55) | | | | | (5,125.66) |
| Gas Service | (132.09) | | | | (132.09) | | | | (132.09) | | | | | (396.28) |
| Pest Control | (244.65) | | | | (244.65) | | | | (244.65) | | | | | (733.95) |
| Waste Management | (351.81) | | | | (351.81) | | | | (351.81) | | | | | (1,055.43) |
| **Total Utilities** | (33,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | (23,057.46) | | | (5,107.63) | | (94,495.27) |

EXHIBIT 2

001412

Free Speech Systems LLC

## Forecasted 13 Week Cash Flow Budget
Between July 30, 2022 and October 28, 2022

| Period+A5:E83 | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 | 08/27/2022-09/02/2022 | 09/03/2022-09/09/2022 | 09/10/2022-09/16/2022 | 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | 10/15/2022-10/21/2022 | 10/22/2022-10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Occupancy** | | | | | | | | | | | | | | |
| Rent | (33,408.51) | - | - | - | (33,408.51) | - | - | - | (33,408.51) | - | - | - | - | (100,225.53) |
| Office Security | (31,111.90) | - | - | - | (31,111.90) | - | - | - | (31,111.90) | - | - | - | - | (93,335.69) |
| Repair & Maintenance - Building | (1,777.19) | - | - | - | (1,777.19) | - | - | - | (1,777.19) | - | - | - | - | (5,331.56) |
| Janitorial | (5,983.33) | - | - | - | (5,983.33) | - | - | - | (5,983.33) | - | - | - | - | (17,950.00) |
| **Total Occupancy** | (72,280.93) | - | - | - | (72,280.93) | - | - | - | (72,280.93) | - | - | - | - | (216,842.78) |
| Supplies | (1,258.02) | - | - | - | (1,258.02) | - | - | - | (1,258.02) | - | - | - | - | (3,774.07) |
| Telephone | (18,337.88) | - | - | - | (18,337.88) | - | - | - | (18,337.88) | - | - | - | - | (55,013.65) |
| **Personnel Expenses** | | | | | | | | | | | | | | |
| Salaries & Wages - Base | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | (1,179,272.08) |
| Payroll Tax | (13,087.76) | - | (13,087.76) | - | (13,087.76) | - | (13,087.76) | - | (13,087.76) | - | (13,087.76) | - | (13,087.76) | (91,614.31) |
| Alex Jones Salary | (10,000.00) | - | (10,000.00) | - | (10,000.00) | - | (10,000.00) | - | (10,000.00) | - | (10,000.00) | - | (10,000.00) | (70,000.00) |
| **Total Personnel Expenses** | (191,555.20) | - | (191,555.20) | - | (191,555.20) | - | (191,555.20) | - | (191,555.20) | - | (191,555.20) | - | (191,555.20) | (1,340,886.39) |
| **Travel** | | | | | | | | | | | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (1,295.98) |
| Vehicle Leases | (1,470.56) | - | - | - | (1,470.56) | - | - | - | (1,470.56) | - | - | - | - | (4,411.68) |
| **Total Travel Expenses** | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (99.69) | (5,707.66) |
| **Total Operating Expenses** | (285,002.28) | (99.69) | (191,654.89) | (99.69) | (285,002.28) | (99.69) | (191,654.89) | (99.69) | (285,002.28) | (99.69) | (191,654.89) | (99.69) | (191,654.89) | (1,622,224.55) |
| **Non-Operating Expenses** | | | | | | | | | | | | | | |
| Payment on PDPN Note | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) | (27,500.00) | (27,500.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (460,000.00) |
| AMEX Payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Other Expenses** | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) | (27,500.00) | (27,500.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (460,000.00) |
| **Professional Fees** | | | | | | | | | | | | | | |
| CRO Fees | - | - | - | - | - | (52,992.00) | - | - | (35,328.00) | - | - | - | - | (88,320.00) |
| Financial Advisor Fee | - | - | - | - | - | (57,876.00) | - | - | (40,352.00) | - | - | - | - | (98,228.00) |
| Shannon & Lee LLP | - | - | - | - | - | (40,000.00) | - | - | (60,000.00) | - | - | - | - | (100,000.00) |
| Ray Battaglia | - | - | - | - | - | (24,000.00) | - | - | (24,000.00) | - | - | - | - | (48,000.00) |
| **Total Professional Fees** | - | - | - | - | - | (174,868.00) | - | - | (159,680.00) | - | - | - | - | (334,548.00) |
| **Total Cash Flow** | $ (245,586.44) | $ 111,769.75 | $ 164,702.59 | $ 843,406.77 | $ (258,086.44) | $ 339,269.75 | $ (60,166.41) | $ 793,406.77 | $ (445,266.44) | $ 313,240.31 | $ 120,214.55 | $ 774,424.24 | $ 121,685.11 | $ 2,573,015.10 |

001413



Price List

7/18/22


Average Shipping Cost          $14 per Package
Average Fulfillment and Handling    $6 per Package


Included Services:
-Receiving
-Storage
-Unlimited Pick
-Unlimited Pack
-Order Inserting
-Supplies
-Returns
-Cycle Counting/Inventory
-Software & IT Integrations
-Q.C. & Q.A.
-Labor
-Shipping Cost


** 90 Day Commitment
**All orders through Infowarsstore.com fulfilled by Blue Asension Logistics LLC
**Special Projects such as kitting, labeling/relabeling, etc. $50/man-hour


EXHIBIT

3

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Case No. 22--60043 |
| | § | |
| DEBTOR. | § | (Subchapter V Debtor) |
| | § | Chapter 11 |

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Debtor's Witness and Exhibit List and the Exhibits ECF No. 58 was served by (a) the Court's CM/ECF system on all parties registered to receive such service on August 12, 2022, (b) the following parties by email on August 12, 2022:

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Attn: Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

001415

Attn: Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581
rww@bymanlaw.com

Attn: Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002
jarrod.martin@chamberlinlaw.com

Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548
christopher.dylla@oag.texas.gov

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002
mhaselden@haseldenfarro.com

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of U.S. Trustee
515 Rusk, Suite 3516
Houston, TX 77002
ha.nguyen@usdoj.gov
jayson.b.ruff@usdoj.gov

/s/ Kyung S. Lee

001416

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22–60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Chapter 11** |
| | § | **Subchapter V** |
| Debtor. | § | |

**THE TEXAS PLAINTIFFS' WITNESS AND EXHIBIT LIST FOR HEARING**
**SCHEDULED FOR AUGUST 12, 2022 AT 1:00 P.M. (PREVAILING CENTRAL TIME)**

Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (collectively, "**Texas Plaintiffs**"), creditors and parties-in-interest in the above-captioned case, file their Witness and Exhibit List for the hearing to be held on August 12, 2022, at 1:00 p.m. (prevailing Central Time) as follows:

## <u>WITNESSES</u>

The Sandy Hook Plaintiffs may call the following witnesses at the Hearing:

1. W. Marc Schwartz.

2. Patrick Reiley.

3. Any witness called or designated by any other party.

4. Any witness necessary to rebut the evidence or testimony of any witness offered or designated by any other party.

**EXHIBITS**

| EXHIBIT | DESCRIPTION | MARK | OFFER | OBJECT | ADMIT | W/D | DISPOSITION AFTER TRIAL |
|---|---|---|---|---|---|---|---|
| **1.** | Certificate of Formation \| Limited Liability Company for Blue Asension Logistics LLC | | | | | | |
| **2.** | Email from aj76@alexjones.net to Patrick@infowars.com dated 6/22/2018 regarding Phone Call with Marc Randazza | | | | | | |
| **3.** | Email from aj76@alexjones.net to Patrick@infowars.com dated 7/5/2016 regarding Boat Dock after the 4th | | | | | | |
| **4.** | Blue Asension Logistics Price List dated 7/18/22 | | | | | | |
| **5.** | Declaration of W. Marc Schwartz in Support of Voluntary Petition and First Day Motions [Docket No. 10]. | | | | | | |
| **6.** | Text messages between Alex Jones and Patrick Reiley | | | | | | |
| **7.** | Any document or pleading filed in the above-captioned main cases | | | | | | |
| **8.** | Any exhibit necessary for impeachment and/or rebuttal purposes | | | | | | |
| **9.** | Any exhibit identified or offered by any other party | | | | | | |

## **RESERVATION OF RIGHTS**

The Sandy Hook Plaintiffs reserve the right to call or to introduce one or more, or none, of the witnesses and exhibits listed above, and further reserve the right to supplement this list prior to the Hearing.

Dated: August 12, 2022

> **MᴄDᴏᴡᴇʟʟ Hᴇᴛʜᴇʀɪɴɢᴛᴏɴ LLP**
>
> Avi Moshenberg
> Texas Bar No. 24083532
> 1001 Fannin Street
> Suite 2700
> Houston, TX 77002
> P: 713-337-5580
> F: 713-337-8850
> E: avi.moshenberg@mhllp.com
>
> *Counsel for the Texas Plaintiffs*
>
> *AND*
>
> **Cʜᴀᴍʙᴇʀʟᴀɪɴ, Hʀᴅʟɪᴄᴋᴀ, Wʜɪᴛᴇ,**
> **Wɪʟʟɪᴀᴍs & Aᴜɢʜᴛʀʏ, Pᴄ**
>
> By: */s/ Jarrod B. Martin*
> Jarrod B. Martin
> Texas Bar No. 24070221
> 1200 Smith Street, Suite 1400
> Houston, Texas 77002
> D: 713.356.1280
> F: 713.658.2553
> E: jarrod.martin@chamberlainlaw.com
>
> *Bankruptcy Counsel for the Texas Plaintiff*

## **Certificate of Service**

I certify that on August 12, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

# Exhibit 1

Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
FAX: 512/463-5709

Filing Fee: $300



**Certificate of Formation
Limited Liability Company**

**Filed in the Office of the
Secretary of State of Texas
Filing #: 804462512 03/07/2022
Document #: 1126599120004
Image Generated Electronically
for Web Filing**

### Article 1 - Entity Name and Type

The filing entity being formed is a limited liability company. The name of the entity is:

**Blue Asension Logistics LLC**

### Article 2 – Registered Agent and Registered Office

☑A. The initial registered agent is an organization (cannot be company named above) by the name of:

**Northwest Registered Agent, LLC**

### OR

☐B. The initial registered agent is an individual resident of the state whose name is set forth below:

C. The business address of the registered agent and the registered office address is:

**Street Address:**
**5900 Balcones Drive STE 100   Austin  TX  78731**

### Consent of Registered Agent

☐A. A copy of the consent of registered agent is attached.

### OR

☑B. The consent of the registered agent is maintained by the entity.

### Article 3 - Governing Authority

☐A. The limited liability company is to be managed by managers.

### OR

☑B. The limited liability company will not have managers. Management of the company is reserved to the members.
The names and addresses of the governing persons are set forth below:

Managing Member 1: **Patrick    Riley**                Title: **Managing Member**

Address: **5900 Balcones Drive STE 100   Austin  TX, USA  78731**

### Article 4 - Purpose

The purpose for which the company is organized is for the transaction of any and all lawful business for which limited liability companies may be organized under the Texas Business Organizations Code.

**Supplemental Provisions / Information**

001422

[The attached addendum, if any, is incorporated herein by reference.]

### Initial Mailing Address

Address to be used by the Comptroller of Public Accounts for purposes of sending tax information.

The initial mailing address of the filing entity is:

**5900 Balcones Drive STE 100**
**Austin, TX 78731**
**USA**

### Organizer

The name and address of the organizer are set forth below.

**Morgan Noble          5900 Balcones Drive STE 100 Austin, TX US 78731**

### Effectiveness of Filing

☑ A. This document becomes effective when the document is filed by the secretary of state.

### OR

☐ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its signing. The delayed effective date is:

### Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

**Morgan Noble**

Signature of Organizer

**FILING OFFICE COPY**

# Exhibit 2

| | |
|---|---|
| **From:** | A J <aj76@alexjones.net> |
| **To:** | Patrick PJR Riley WORK <patrick@infowars.com> |
| **Sent:** | 6/22/2018 11:02:04 PM |
| **Subject:** | Fwd: Phone Call with Marc Randazza |

This guy assists Mark Renazza an attorney Alex is looking at to be general counsel or just to handle some of the Sandy Hook cases brought in Connecticut.  Please help get a call scheduled with Rendazza through Tennyson Fauver.

Thanks,

David Jones
---------- Forwarded message ----------
From: **Tennyson Fauver** <tjf@randazza.com>
Date: Thu, Jun 21, 2018 at 12:55 PM
Subject: Phone Call with Marc Randazza
To: aj76@alexjones.net


Alex,

Marc asked me to set up a time for the two of you to speak. He is available at 1:30pm PST today for a phone call. If that will work for you please let me know, if not, let me know another time and I will make accommodations.

Thanks,
**Tennyson J. Fauver\*** | Randazza Legal Group, PLLC
2764 Lake Sahara Drive, Suite 109, Las Vegas, NV 89117
Tel: (702) 420-2001 | Email: tjf@randazza.com

\*Legal Assistant - Not licensed to practice law.

# Exhibit 3

| | |
|---|---|
| **From:** | aj76@alexjones.net |
| **To:** | patrick@infowars.com <patrick@infowars.com> |
| **Sent:** | 7/5/2016 9:29:18 PM |
| **Subject:** | Fwd: Boat Dock after the 4th |

Begin forwarded message:

**From:** Byrne Benfield <bobenfield@gmail.com>
**Date:** July 5, 2016 at 4:08:47 PM CDT
**To:** Alex Jones <aj76@alexjones.net>, David Jones <drjones@infowars.com>, Sarah Myers <aj76.accts@gmail.com>
**Cc:** Martha Benfield <mpbenfield@gmail.com>
**Subject: Boat Dock after the 4th**

Whoever was left in charge of cleaning up the boat dock for the Joneses didn't do a very good job. We would appreciate it being cleaned up as soon as possible.
Byrne

# Exhibit 4

001428



Price List

7/18/22


Average Shipping Cost                    $14 per Package
Average Fulfillment and Handling         $6 per Package


Included Services:
-Receiving
-Storage
-Unlimited Pick
-Unlimited Pack
-Order Inserting
-Supplies
-Returns
-Cycle Counting/Inventory
-Software & IT Integrations
-Q.C. & Q.A.
-Labor
-Shipping Cost


** 90 Day Commitment
**All orders through Infowarsstore.com fulfilled by Blue Asension Logistics LLC
**Special Projects such as kitting, labeling/relabeling, etc. $50/man-hour

# Exhibit 5

# Exhibit 3

001431

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | |
|---|---|
| In re: | ) Case No. 22-_60043____ |
| | ) |
| FREE SPEECH SYSTEMS, LLC, | ) Chapter 11 (Subchapter V) |
| | ) |
| Debtor. | ) |
| | ) |

**DECLARATION OF W. MARC SCHWARTZ IN SUPPORT OF
<u>VOLUNTARY PETITION AND FIRST DAY MOTIONS</u>**

I, W. Marc Schwartz, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of

perjury as follows:

1.      My name is W. Marc Schwartz ("<u>Schwartz</u>").

2.      I submit this Declaration based on personal knowledge in support of the voluntary

petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>")

filed by Free Speech Systems, LLC (the "<u>Debtor</u>" or "<u>FSS</u>") on the date hereof (the "<u>Petition

Date</u>").  I further submit this Declaration to assist this Court and parties-in-interest in

understanding the circumstances that compelled the commencement of the Debtor's chapter 11

case (the "<u>Chapter 11 Case</u>").

3.      The relief sought in the First Day Motions should enable the Debtor to administer

its estate effectively.  I have reviewed the First Day Motions, and I believe the requested relief

is necessary to ensure the success of the Chapter 11 Case.

4.      Except as otherwise indicated, all facts as set forth in this Declaration are based

upon my personal knowledge, my review of relevant documents, or my opinion based upon

experience, knowledge, and information concerning the Debtor.  If called upon to testify, I would

testify competently to the facts set forth in this Declaration.

001432

5.      I am a founder of Schwartz & Associates, LLC ("SALLC"). SALLC has its principal offices at 712 Main Street, Suite 1830, Houston, Texas. SALLC has been engaged in business since 2019. The primary business of SALLC is bankruptcy and financial restructuring consulting, serving as financial/economic experts in civil litigation matters and, serving as court appointed receivers in federal and state court matters.   The firm is also licensed as an Investigations Company by the Texas Department of Public Safety.

6.      SALLC's services include financial forensics, supervising business operations as a trustee, examiner with expanded powers or receiver, valuing business assets and income tax related services    My firm represents individuals, companies and courts in a variety of assignments,  including serving as a Chief Restructuring Officer, financial adviser, trustee or examiner in bankruptcy matters; working as a testifying or consulting expert on damages and economic issues for parties involved in litigation and as a special master for courts where litigation matters are pending; serving as a court appointed receiver in state and federal courts.

7.      I earned a Bachelor of Arts degree from Princeton University and a Master's in Business Administration degree from the University of Chicago Booth School of Business. I am licensed in Texas as a Certified Public Accountant, Certified in Financial Forensics by the American Institute of Certified Public Accountants, a Certified Fraud Examiner, and a Licensed Private Investigator.

8.      I have extensive experience serving as a fiduciary in bankruptcy cases as either a Chapter 11 Trustee, a Chief Restructuring Officer, or an Examiner with expanded powers. I have also acted as a receiver over several individuals and entities under state and federal law.

9.      On June 7, 2022, the Debtor confirmed my retention as the Debtor's Chief Restructuring Officer (the "CRO") and SALLC as its financial advisors as of May 19, 2022.

10.     On the Petition Date, FSS filed its petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court, Southern District of Texas, Victoria Division (the "Bankruptcy Court"). FSS properly qualified to file as a Subchapter V Debtor under Chapter 11 of the Bankruptcy Code.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A.  Background to Creation of Free Speech Systems, LLC

11.     Born in 1974, Alex Jones ("Alex Jones" or "Jones") is the son of Carol Jones, a homemaker, and David Jones, a prominent dentist. Jones moved from Dallas to Austin as a teenager.

12.     In the early 1990s, Austin was a dirt-cheap home to artists, musicians, and zine makers[1]. According to Shannon Burke, a local talk-radio host, "the perfect incubator for [Alex Jones]. It's that libertarian and weirdness blend that wouldn't have worked had he been born in Milwaukee." *Buzzfeed*, May 6, 2017 (Charlie Warzel) (hereafter "*Buzzfeed*").

13.     Austin Public Access ("ACTV"), the TV station where Jones got his first big break showcased that weirdness. In the 1990s, ACTV "was wild and unmoderated — like the YouTube of its time," Brian Blake, the station's longtime producer and IT director, explained. For Jones, then just out of high school, it was a huge opportunity — a chance to spend an hour in front of a camera saying pretty much anything he wanted to Austin's night owls. *Buzzfeed*.

14.     From his first broadcast, Jones targeted the threat of the New World Order, which he had first encountered in the book *None Dare Call It Conspiracy*, discovered on his father's bookshelf. His earliest monologues were stark and raw; Jones would deliver his monologues

---

[1] Wikipedia defines it as "a small circulation self-published work of original or appropriated texts and images usually reproduced via photocopier" - although the term is often used to describe any magazine aimed at a niche audience.

001434

from a bare table, surrounded by stacks of newspaper and often fumbling his words. But the message and the intensity were indistinguishable from the Jones on the air in 2017. *Buzzfeed*. Jones was a modest public-access success.

15.     Alex and his father then found an opportunity in 1996 for Alex to do a talk show on the Austin talk radio station KJFK-FM. He started hosting a show called "The Final Edition". To secure Jones a spot on the station, Jones' father became his son's first on-air advertiser. The show lasted for three years. "Alex Jones" *Southern Poverty Law Center ("SPLC")*.

16.     Alex Jones was a natural.

17.     The "Final Edition" lasted until 1999, when he was fired because his views made it difficult to attract commercial sponsors despite high ratings and winning the best Austin talk radio host show awards. *SPLC*.

18.     Upon being terminated, Alex Jones immediately set up an ISDN line in his house and began independently broadcasting via Infowars.com and national syndication by Genesis Communications to AM, FM, and shortwave stations. *SPLC*.

19.     When Jones started broadcasting on the radio in the late 1990s, he closely followed the talk radio playbook, he built a large and devoted audience of far-right conspiracy-theory believers. He sold radio advertising, videos, books, and T-shirts. From there, he expanded by establishing a website, making, and selling his own conspiracy-oriented documentary films, and, then launching PrisonPlanet.tv, a subscription-only streaming-video service that offered instant access to the films. *Intelligencer*, May 2017. Alex's syndication soon reached almost 100 stations. *SPLC*.

20.     The predecessor operation of FSS in 2004 was an operation with just a handful of employees.  Alex Jones had a tiny office in the far south of Austin. He had two employees at

001435

that time. One of the two employees tended to the warehouse operations. It was also not clear where Alex Jones broadcast at that time. *Jacobson Deposition*, P30.[2]

21.     As his business grew, Alex formed FSS in November 2007 to support his various family business opportunities. Getting into broadcasting had been a family idea, and running a business associated with his radio broadcasting continued to be a family business.

22.     By 2010, Jones had a full-size facility. He had over 60 people on his staff and a full-blown studio. *Jacobson Deposition*, P30. FSS's operation in 2010 were dramatically different in "every way, shape and form", *Jacobson Deposition*, PP30-31, from his 1990 operations.

23.     While Alex's broadcasting technology significantly improved, he did not retain professional managers to run his burgeoning business. It continued to be run by members of his family, friends, and employees whom he had known in high school.

24.     After 2013, Alex Jones' media formula changed from website and films to a website and radio. *Jacobson Deposition*, PP30-31. While his media formula changed, Alex still did not employ professionally trained and experienced business managers at FSS.

25.     The post 2013 business model of FSS recognized that it was a "single talent business" *to wit*, Alex Jones, singularly drove sales on his Infowars.com website. FSS began to make available dietary supplements: products such as InfoWarsLife Silver Bullet Colloidal Silver; Infowars Life Brain Force Plus; InfoWars Life Super Male Vitality; Infowars Life Liver Shield. Supplements "completely transformed" Infowars. Most of FSS' revenue to this day comes from sales of dietary supplements.

---

[2] Oral and Videotaped Deposition of Robert Jacobson, March 20, 2019, Scarlett Lewis v. Alex. E. Jones (Texas).

26.     Alex Jones' show is syndicated by the Genesis Communications Network ("GCN"). Instead of charging syndication fees to radio stations, GCN uses what is called the barter model. GCN offers the content for no cost, and, in exchange, GCN reserves the right to sell national advertising against the programs, generally four minutes per hour.

**B.  Present Business of Free Speech Systems, LLC**

27.     FSS is presently engaged in the business of producing and syndicating Jones' radio and video talk shows and selling products targeted to Jones' loyal fan base via the Internet. Today, FSS produces Alex Jones' syndicated news/talk show (The Alex Jones Show) from Austin, Texas, airs via GCN on over 100 radio stations across the United States and via the internet through the website Infowars.com.

28.     On its Infowars.com website today, FSS makes available to customers dietary supplements ("Supplements"), including Bodease, Krill Oil, Ultimate Fish Oil, DNA Force Plus, Vitamin D3 Gummies, Ultimate Immune Support Pack, Pollen Block, and other health products, including Tea Tree Shampoo. The website also has available books, t-shirts, and other products ("Non-Supplements") Jones advertises during his radio talk show.

29.     The vast majority of FSS revenues comes from the sale of Supplements, which have traditionally been supplied by or contracted for by PQPR, an affiliated entity, described below.

30.     As of July 15, 2022, FSS employs a workforce of 58 individuals, the majority of whom have a direct reporting relationship to Alex Jones. In one building in Austin, Texas, FSS has four studios where online and traditional broadcast production is provided.  The Alex Jones Show and other shows are produced in these studios. An adjacent building contains administrative offices and customer support. In a separate location in Austin, Texas, FSS has a

6

building where warehousing and product sales fulfillment takes place. *David Jones Deposition*, P13.[3] All the buildings and offices are leased.

31.     FSS has a unique audience that is highly loyal to Alex Jones and purchases products based on Alex Jones' credibility. Product sales from Infowars.com stores are a significant source of revenue for FSS. Historically, approximately 80% of FSS' revenue is derived from product sales, of the remainder, 11% is historically from advertising and the balance from a variety of sources. *David Jones Deposition*, P47.

**C.  The Relationship Between Alex Jones and FSS**

32.     FSS, as employer, and Alex Jones, as employee, are parties to an Employment Agreement and Accompanying Employee Annuity and Life Insurance Plan, dated April 14, 2022 (the "Jones Employment Agreement").

33.     Under the Jones Employment Agreement, Jones agrees to promote products and services agreed to by the Employer, and permits Alex to use FSS's trademarks, tradenames, intellectual property and web site, including the Infowars website. Jones Employment Agreement, ¶¶ 3, 4.

34.     All of FSS' wages to him are subject to the Employee Annuity And Life Insurance Plan (Employee Annuity Plan), attached to the Jones Employment Agreement. Jones Employment Agreement. Under the Employee Annuity Plan, the employee may designate a portion or all his/her salary to purchase an annuity and life insurance, in amounts determined by the employee, from an insurance company to be selected.  Employees with more than two years of full-time consecutive service with FSS are eligible to participate in the Employee Annuity Plan.

---

[3] Oral and Videotaped Deposition of David R. Jones, May 16, 2019, Eric Lafferty, et. al. v. Alex Emeric Jones, et. al. (Connecticut).

35. The CRO is continuing to evaluate whether the estate has causes of action to claw back any payments or distributions to Alex Jones.

### D. The Debtor' Owners and Management

36. At its formation, Alex Jones and Kelly Jones owned 49% and 51% of the membership interests in FSS.

37. Alex and Kelly Jones divorced in 2015. Upon their divorce, Jones became the sole owner of FSS.

38. Since then, Alex Jones has been the Managing Member of FSS.

39. Since inception, Alex Jones has been a "single talent business", _to wit_, without him and his show, there would neither be any InfoWars nor internet sales. Unfortunately, Jones failed to bring on board the necessary management skills to manage what was once a small family business but had become a $70 to $80 million a year enterprise. Jones and his employees continued to run the business with an inverted T structure, where essentially everyone reported to Alex, as though it was still a family business.

40. Since May 19, 2022, FSS has retained Schwartz as its Chief Restructuring Officer ("CRO"), with broad powers to review the company's past financial performance, analyze the condition of FSS's books and records and evaluate whether FSS is a business that can be reorganized. SALLC was retained to perform various accounting and forensic work associated with his mandate.

41. In addition, FSS retained Jeffery Shulse ("Shulse") as FSS' Business Manager. Shulse has been parachuted into FSS's offices in Austin to take over FSS' accounting and financial functions and work with Schwartz and SALLC to (a) implement viable accounting and

financial management functions; (b) implement sorely needed internal accounting controls, and (c) establish uniform accounting expense and personnel policies.  With a BBA in accounting from the University of Houston and a J.D. from the University of Houston Law Center, Shulse has over twenty years' experience in providing business, operational and financial consulting to businesses and as a CFO and CEO of businesses in the oil and gas production and construction industries.

42.     The preliminary conclusions reached by me about FSS are:

(a) Although FSS had a controller and two bookkeepers, the 2021 general ledger had not been completed and the books have not been closed, and almost no transactions have been recorded in the 2022 general ledger.  As a result, no financial statements were produced for FSS for the 18 months preceding my engagement. SALLC found no bank reconciliations for 2021 or 2022;

(b)  FSS personnel expressed no criticism of not receiving any financial reports to assist them in managing their functional responsibilities and, in fact, appear to be unaware of the management information available to them from timely prepared and detailed financial statements and analyses;

(c) Internal accounting controls were inadequate, including lack of segregation of duties, written monthly, quarterly, and annual closing schedules, lack of supervisory review of key accounting functions including vendor set up, bank reconciliations, inventory reconciliations, or billings to PQPR Holdings Limited, LLC ("PQPR");

(d) Invoices from PQPR for payment for product it had acquired and sold to FSS were not paid or not paid in full, resulting in a liability to PQPR in excess of $50 million.

001440

### E.  The Relationship of FSS and PQPR

*Background Information About PQPR*

43.     PQPR was founded in 2013. The business began operations in September 2013.

44.     PQPR is engaged in the online sale and marketing of primarily nutritional supplements which it sells under its own label as well as acquiring nutritional supplements for FSS which it markets under its InfoWars label. PQPR also advertises its products exclusively through FSS/The Alex Jones Show for which it receives a bulk discount. PQPR also sells outside the FSS/Alex Jones show channels.

45.     PQPR is managed by David Jones. Alex Jones is not a manager of PQPR.

46.     The current owners and their ownership interests in PQPR are as follows:

|  | % Owned |
|---|---|
| PLJR Holdings | 80.00% |
| JLJR Holdings, LLC | 20.00% |
| Total | 100.00% |

47.     Through AEJ Austin Holdings, LLC, Jones has an effective 72% membership interest in PLJR Holdings, LLC ("PLJR").   Mrs. Carol Jones owns an 80.00% interest in, and Dr. David Jones holds the remaining 20.00% membership interest in JLJR Holdings, LLC ("JLJR").

48.     Alex Jones is not a manager of either PLJR or JLJR.

*Commercial Relationship Between FSS and PQPR*

49.     As discussed previously, FSS sells two groups of products on its Infowarsstore.com website: Supplements and Non-Supplements. The selection of nutritional supplements to be sold is determined by Alex Jones, David Jones, and staff of FSS. Currently, FSS places orders for Supplements with PQPR which then places the order with the original manufacturer.  FSS pays PQPR, as its agent, funds required to purchase product, which then pays

the manufacturer and manages the delivery and certification of the products. Pricing of the Supplements is done by FSS.

50.     Non-Supplements consist of "Infowars" merchandise, ranging from T-shirts to silver coins. This group of merchandise is handled solely by FSS employees, starting from the selection of the merchandise, placing of the merchandise on the Infowars website, ordering of and paying for the product.

51.     Alex Jones promotes both the Supplements and Non-Supplements during his daily broadcast and is the principal driving factor promoting the sale of products to his audience.

52.     In the past, PQPR ordered and paid for Supplements which it marked up and then sold to FSS for distribution. As a result of FSS's inability to pay PQPR in full for the PQPR merchandise over several years, FSS became indebted to PQPR in a significant amount by 2020. The parties memorialized the indebtedness between the parties in 2020.

*The Entry into the Secured Notes*

53.     On or about August 13, 2020, FSS and PQPR executed a Promissory Note in the principal amount of $29,588,000.00 made payable to PQPR, which memorialized the accrued obligations of FSS to PQPR through December 31, 2018 (the "2020 Secured Note"). The 2020 Secured Note matures on August 1, 2050, interest is due and payable annually. The 2020 Secured Note bears interest at 1.75%.

54.     The 2020 Secured Note is secured by a Security Agreement entered into as of August 13, 2020, between FSS and PQPR (the "2020 Security Agreement"). The 2020 Security Agreement provides in paragraph II that the "Collateral" securing the repayment of the 2020 Secured Note consists of all personal property owned by FSS.

55.     On November 18, 2020, PQPR filed a UCC-1 Financing Statement with the Texas Secretary of State ("November 18 UCC Financing Statement").

11

001442

56.     On or about November 10, 2021, FSS and PQPR entered into a second Promissory Note in the principal amount of $25,300,000.00 made payable to PQPR, which memorialized the accrued obligations of FSS to PQPR from January 1, 2019 to December 31, 2020 (the "2021 Secured Note"). Principal and interest of $1,939,644.81 is due on each anniversary of the 2021 Secured Note. The 2021 Secured Note bears interest at 1.8% and matures on November 10, 2036.

57.     The 2021 Secured Note is secured by the 2020 Security Agreement and the November 18 UCC Financing Statement.

58.     As of the Petition Date, $53,646,6876.82 of principal and $11,787.16 of interest are owed under the two Secured Notes.

59.     PQPR has been the primary source of Supplements for the Infowars website and has contributed to most of the revenue attributable to FSS. Maintaining access to the Supplement supply, along with Alex Jones being on the air, is critical to the reorganization of FSS.

**F.  FSS Needs a Credit Card Processor**

60.     An essential component of FSS's Infowarsstore.com business with which it could not survive is a credit card processor. Without the ability to process credit card transaction, FSS's business could not operate.   Processing a credit card transaction is a complex process. The process was made more difficult when financial institutions and media sites deplatformed FSS starting in 2018.

61.     Credit card processing refers to a multi-step process necessary to successfully complete payments made with a credit card. Credit card processing involves numerous entities. This includes the consumer, merchant, payment gateway, credit card processor, card network, issuing bank, and acquiring bank.

001443

62.     The key players in credit card processing are:

- **Customer** – the person making a purchase.
- **Merchant** – the person or organization selling a product or service to the customer making a purchase.
- **Payment gateway** – this refers to the technology that connects a merchant to a payment processor. This process involves integrating with card-present (i.e., in-store purchases) and card-not-present (i.e., online purchases) payment environments, obtaining the payment information of customers' transactions, sending these details to a payment processor or merchant bank, and then sending an "approved" or "declined" message to the merchant.
- **Credit card processor** – (or payment processor) this is the organization that helps the merchant, credit card network, and the cardholder's bank communicate. Credit card processors and merchants must comply with the Payment Card Industry Data Security Standard (PCI DSS).
- **Card network** – (also called credit card network or credit card brand) this is the customers' credit card brand, such as Discover, Mastercard, or Visa. These networks must set assessment and interchange fees.
- **Issuing bank** – (also known as the cardholder's bank or consumer bank) this refers to the bank providing customers with their credit card. The issuing bank will determine whether the cardholder's account has the funds to fulfill a transaction. If the account meets these requirements, the issuing bank will release those funds for settlement.
- **Acquiring bank** – (or merchant bank) this is the merchant's bank, which is used for storing its business funds and receiving money from transactions. This type of bank can provide card readers and equipment to merchants, allowing them to accept card payments. Acquiring banks can also serve as credit card processors.

63.     In April 2018, FSS had accounts on YouTube, Facebook, Twitter, Periscope, Pinterest, Instagram. *Michael Zimmerman Deposition*[4], P35. FSS also had the ability to access banks and credit card processors without any problems prior to April 2018.

---

[4] Videotaped Oral Deposition of Michael Zimmerman, November 26, 2019, Neil Heslin v. Alex E. Jones (Texas).

64.     After the commencement of the Sandy Hook Litigation by the Texas and Connecticut Plaintiffs, FSS and Infowars.com were de-platformed from many important internet, social media, and other financial transaction accounts.

65.     Customers utilize credit or debit cards to purchase merchandise on the Infowarsstore.com website. FSS had to locate a credit card processor and a bank that would do business with it, after FSS was shunned by financial institutions and deplatformed on media sites starting in 2018.

66.     FSS entered into an agreement with a company as of October 1, 2021, to provide credit card processing for FSS.  A third-party processor receives payments from the credit card companies. The company receives credit card receipt proceeds and based on information provided by FSS and PQPR, including which entity owns the inventory that was sold, allocates funds between FSS and PQPR and transfers the amounts allocated to FSS and PQPR's respective banks. This process occurs every federally recognized business day.

67.     FSS pays the company a fee of 4% of the total amount of all credit card charges processed under the agreement and reimbursement of all costs incurred, including all credit card processing charges incurred in processing FSS' credit card charges.

68.     In addition to the fee, the agreement provided that the company withhold from FSS' net receipts $11,000.00 per business day and remit that amount to PQPR to pay principal and interest on the promissory notes executed by FSS in favor of PQPR.

69.     In a forbearance agreement entered into prior to the Petition Date, the parties agreed to reduce the amount being withheld from FSS' net receipts to $2,500.00 per business day for the thirty days following July 12, 2022, when the payment increases to $5,500.00 per business day for an additional thirty days, at which time the payment increases to $11,000.00 per day.

70.    The forbearance agreement also provides that FSS will receive 20% of the proceeds of all sales of products purchased by PQPR (with PQPR receiving 80%) of such proceeds.  In turn, PQPR will receive 10% of the proceeds of all sales of products purchased by FSS (with FSS receiving 90%).  This split was to reimburse the respective parties for setting up supply chains, obtaining required governmental certifications, negotiating with vendors, procuring and paying for product, and overhead.

### G.  Sandy Hook and Litigation Resulting Therefrom

71.    The Debtors' financial distress stems from statements made by Alex Jones and other employees of FSS in the wake of the December 14, 2012, mass shooting at Sandy Hook Elementary School in which 20 children and 6 educators were killed by Adam Lanza. Certain parents of the deceased victims of the Sandy Hook shooting assert, among other things, that these statements were defamatory and inflicted emotional distress.

72.    The crux of the allegations in these lawsuits are that Alex Jones and FSS employees said or implied that the Sandy Hook massacre did not happen and that the parents were participants in a conspiracy against the public.

73.    In 2018, certain aggrieved parties (the "Texas Plaintiffs") commenced state-court actions against one or more of the Debtors styled as: *(a) Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Owen Shroyer*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas; *(b) Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas; *(c) Leonard Pozner and Veronique De La Rosa v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-18-001842, in the 345th District Court of Travis County, Texas; *(d) Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC,*

15

*and Kit Daniels*, Cause No. D-1-GN-18-001605 in the 459th District Court for Travis County,

Texas; and _**(e)**_ *Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, Marcel*

*Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, PQPR Holdings Limited*

*LLC, JLJR Holdings, LLC, PLJR Holdings, LLC, Carol Jones, David Jones, PQPR Holdings,*

*LLC, JLJR Holdings Limited, LLC, AEJ Holdings, LLC, AEJ Trust 2018*, Cause No. D-1-GN-

22-001610, in the 200th District Court for Travis County (collectively, as may have been

consolidated, the "Texas State Court Litigation").

74.     These two actions: _**(a)**_ *Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech*

*Systems, LLC, and Owen Shroyer*, Cause No. D-1-GN-18-001835, in the 261st District Court of

Travis County, Texas; _**(b)**_ *Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems,*

*LLC*, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas (the

"Heslin/Lewis Suit") have been consolidated. Judge Maya Gamble is presently conducting a trial

of the Heslin/Lewis Suit.

75.     As a result of the filing of FSS' bankruptcy, the Texas State Court Litigation has

been stayed by the automatic stay provision of the Bankruptcy Code.

76.     In 2018, certain other parties (the "Connecticut Plaintiffs") brought actions in

Connecticut styled:

- *Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden,*
  *Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-*
  *Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars,*
  *LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang*
  *Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources,*
  *Inc.*, Cause No. X06-UWY-CV-18-6046436-S in the Superior Court of Connecticut,
  Waterbury Division;

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems,*
  *LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka,*
  *Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-
  UWY-CV-18-6046437-S in the Superior Court of Connecticut, Waterbury Division;

001447

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046438-S in the Superior Court of Connecticut, Waterbury Division (collectively, the "Connecticut State Court Litigation" together with the Texas State Court Litigation are hereinafter referred to as the "Sandy Hook Lawsuits").

77.     As a result of the filing of FSS' bankruptcy, the Connecticut State Court Litigation has been stayed by the automatic stay provision of the Bankruptcy Code.

78.     Jones, FSS, and the Debtors have spent more than $15.0 million in legal fees and costs since commencement of the Sandy Hook Lawsuits.

79.     Despite the substantial amount spent, both the Texas and Connecticut courts have imposed multiple sanctions and ruled that Jones and FSS have failed to comply with discovery requirements such that judgment on liability has been entered against them by default.

80.     InfoW, LLC f/k/a Infowars, LLC ("InfoW" and together with its affiliate debtors IWHealth, LLC and Prison Planet tv, Ltd., the "InfoWDebtors"), filed a voluntary petition for chapter 11 bankruptcy relief in the U.S. Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court"), on April 18, 2022 (the "Petition Date"), initiating Case No. 22-60020 in that court (the "Bankruptcy Case").

81.     The purpose of the Bankruptcy Case was to provide a mechanism to efficiently determine and pay *all* claims against the InfoWDebtors and joint tortfeasors in full. To support this, the equity of the InfoWDebtors was assigned to the Liquidation Settlement Trust (for the benefit of the Plaintiffs[5] and others) prior to the Petition Date, and the InfoWDebtors, with separate counsel and financial advisors, negotiated the Plan Support Agreement

17

82.     Among other things, the Plan Support Agreement obligated Jones and FSS (together with Jones, the "Third-Party Funding Contributors") to fund $10.0 million to pay litigation claimants. The total consideration would have been more than $500,000 per litigation claimant. Additional consideration may have been negotiated over the course of the InfoWDebtors' Bankruptcy Case

83.     Prior to the Petition Date of the InfoWDebtors' bankruptcy cases, the InfoWDebtors' and the Third-Party Funding Contributors incurred and paid more than $15.0 million in legal costs. The savings from liquidating the claims in a central forum were essential to the administration of the InfoWDebtors' bankruptcy estates and ultimately paying creditors in full. Absent centralized administration—which may include determination by a jury—the funds available would have been  cannibalized in successive trials over a five-month period.

84.     Rather than negotiate with the InfoWDebtors and the Third-Party Funding Contributors, the Plaintiffs first sought to dismiss the InfoWDebtors' Bankruptcy Case, and, then abruptly, even though Plaintiffs had sued InfoW four years ago, dismissed with prejudice InfoW and, where relevant, the other two debtors within 2 months of the Petition Date.

85.      The primary goal of InfoWDebtors in the Bankruptcy Case was to engage the Plaintiffs in a global settlement. While unable to achieve that goal, the Bankruptcy Case resulted in the dismissal with prejudice of all claims against InfoW, IW Health and Prison Planet from any and all claims held by the Plaintiffs.

**H.  Current Financial Condition of Debtor**

86.     Attached hereto as **Exhibit "A"** is a comparative Profit and Loss Statement for FSS for the period January 1, 2022, through May 31, 2022 and the year ended December 31, 2021.

18

87.     Attached hereto as **Exhibit "B"** is a comparative Balance Sheet of FSS as of May 31, 2022 and December 31, 2021.

88.     Attached hereto as **Exhibit "C"** is a comparative Cash Flow Statement for FSS for the period January 1, 2022, through May 31, 2022 and the year ended December 31, 2021.

### I.      Critical Motions to Commence the Chapter 11 Case

### First Day Motions

89.     Contemporaneously herewith, the Debtor has filed a number of First Day Motions seeking orders granting various forms of relief intended to stabilize the Debtor's business operations and facilitate the efficient administration of the Chapter 11 Case. The First Day Motions include the following:

- **Schedules and Statements Extension Motion**. *Debtor's Motion Seeking Entry of an Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs, and (II) Granting Related Relief.*

- **Cash Collateral Motion**. *Debtor's Emergency Motion For An Interim And Final Order (I) Authorizing The Use Of Cash Collateral Pursuant To Sections 105, 361, and 363 of The Bankruptcy Code and Federal Rule Of Bankruptcy Procedure 4001(B), And (II) Granting Adequate Protection To The Pre-Petition Secured Lender.*

001450

- **Critical Vendors Motion**. *Debtor's Motion for an Order (A) Authorizing The Debtor To Pay Prepetition Obligations Of Certain Critical Vendors, And (B) Granting Related Relief.*

- **Utilities Motion**. *Debtor's Emergency Motion For Entry Of An Order: (I) Approving Debtor's Proposed Form Of Adequate Assurance Of Payment For Future Utility Services; (II) Approving Adequate Assurance Procedures; Prohibiting Utility Providers From Altering, Refusing Or Discontinuing Service; And (Iv) Granting Related Relief.*

- **Relief from Stay Motion**. *Debtor's Emergency Motion For An Order Modifying The Automatic Stay To Allow The Heslin/Lewis State Court Suit To Continue To Judgement.*

90.     The First Day Motions seek authority to, among other things, obtain authority to use cash collateral of PQPR to operate the business of FSS in the ordinary course, including maintaining the studios for Jones to produce his shows, purchase critically needed Supplements and operate the sale business of merchandise sales from the InfowarsStore.com website, pay claims of certain vendors and suppliers to ensure that the Debtor's business operations are not disrupted by the Chapter 11 Case, provide payments and protection to various utilities to assure that they provide essential services to the Debtor, and grant the Texas Plaintiffs relief from the automatic stay provision of 11 U.S.C § 362(a) so as to permit the Heslin\Lewis Suit to continue to judgment uninterrupted by the automatic stay.

91.     The Debtor has tailored its requests for immediate relief to those circumstances where the failure to receive such relief would cause immediate and irreparable harm to the Debtor and its estate. An immediate and orderly transition into chapter 11 is critical to the viability of the Debtor's operations and any delay in grating the relief described in the First Day Motions

20

could hinder the Debtor's operations and cause irreparable harm. The failure to receive the requested relief during the first twenty-one (21) days of the Chapter 11 Case would severely disrupt the Debtor's operations at this important juncture.

92.     I am familiar with the content and substance contained in each First Day Motion and believe that the relief sought in each motion (a) is necessary to enable the Debtor to operate in chapter 11 with minimal disruption or loss of productivity and value, (b) constitutes a critical element of the Debtor's successful reorganization, and (c) best serves the Debtor's estate. I have reviewed each of the First Day Motions. If asked to testify as to the facts supporting each of the First Day Motions, I would testify to the facts as set forth in such motions, as further described below.

## **Procedural Motion**

93.     **Schedules and Statements Extension Motion**. The Debtor seeks entry of an order (a) extending the deadline by which the Debtor must file its schedule of assets and liabilities, schedules of current income and expenditures, schedule of executory contracts and unexpired leases and statement of financial affairs by an additional 14 days for a total of 29 days from the Petition Date, without prejudice to the Debtor's ability to request additional extensions.

94.     Schwartz, Shulse and SALLC have literally been drinking from a firehose since their retention. While they have accomplished much, the company continues to face issues on a daily basis that requires emergency, urgent and immediate attention from this group. Furthermore, locating accurate financial records is a tedious task at FSS, as the record keeping for orders, invoices, expense reports, American Express charge reports are not well-organized. All other records on the computer system also require additional time to retrieve.

95.     Given the complexity of the Debtor's business and financial affairs, and the critical matters that the Debtor's management and professionals were required to address prior

001452

to Petition Date, the Debtor was not able to complete the Schedules and Statements as of the Petition Date.

96.     I believe that the relief requested in the Schedules and Statements Extension Moton is in the best interest of the Debtor's estate, its creditors, and all other parties in interest and will facilitate the Debtor's ability to operate its business in chapter 11 without disruption.

### Operational Motions

97.     **Cash Collateral Motion**[6]. The Debtor must have access to and use of cash collateral to operate its business. Prior to the Petition Date, FSS and PQPR engaged in extensive and difficult negotiations over the use of cash collateral. The negotiations were complicated by PQPR's significant and important commercial role with FSS. PQPR acts as a lender, provides Supplements and handles essential accounting and revenue division functions for FSS' business.

98.     The Debtor requires the use of cash collateral to purchase Supplements and Non-Supplements to sell on its Infowarsstore.com website,  pay reasonable and necessary operating expenses, including, but not limited to, employee payroll, rent, utilities, lease payments, marketing, taxes, and insurance. Without use of cash collateral, FSS could not operate its business, pay its employees and operate the studios where Alex Jones produces his shows.

99.     Working with Alex Jones, PQPR, FSS employees, Shulse and SALLC, I have developed a 13-Week Cash Flow Forecast showing the Sources and Uses of Cash for FSS commencing as of July 30, 2022. A true and correct copy of the 13-Week Cash Flow Forecast is attached hereto as **Exhibit "D"**. Based on the assumptions made in the forecast, I project that FSS will operate with a positive ending cash balance at the conclusion of the 13-week period.

---

[6] The Debtor is in possession of certain funds which are not proceeds of PQPR's collateral.  Accordingly, the Debtor does not concede that those funds constitute cash collateral of PQPR.  Nevertheless, net proceeds received by the Debtor from online merchandise sales including PQPR products are PQPR's cash collateral.

100.    The use of cash collateral required in the next fourteen (14) days from the Petition Date is also set forth on the budgets attached hereto as **Exhibit D**. The Debtor's proposed emergency use of cash collateral is necessary to preserve the value of the Debtor's estate for the benefit of all creditors, including the PQPR, during the first fourteen (14) days of the Chapter 11 Case (the "Interim Period").

101.    The Debtor's proposed offer of adequate protection on an interim basis is set forth in the proposed Interim Cash Collateral Order. It includes replacement liens solely to the extent of any validly perfected, unavoidable security interest as of the Petition Date, and a priority administrative claim to the extent of the diminution of value of PQPR's collateral, if any. As described further in the proposed Interim Cash Collateral Order, the proposed replacement liens and priority administrative claim shall be subject to a carve-out for unpaid fees owed to the clerk of this Court or the United States Trustee, if any, and court-approved administrative expense claims of estate professionals.

102.    PQPR and FSS have engaged in extensive negotiations over a protracted duration to arrive at the interim agreement, which the parties will further negotiate into a final agreement. Due to FSS's affiliation with Alex Jones, the CRO made a decision that time was best spent negotiating the most favorable use of cash collateral agreement with PQPR rather than seeking any alternative third-party lender or source of capital to operate FSS.

103.    Without access to the use of cash collateral of PQPR, FSS could not retain the employees to produce The Alex Jones Show, purchase critically needed inventory to sell on the Infowarsstore.com website and to operate its fulfillment business once a customer makes a purchase.

104.    **Critical Vendors Motion.** The Debtor seeks entry of interim and final orders authorizing, but not directing, the Debtor to pay, in the ordinary course of business, prepetition

amounts owing on account of claims of critical vendors identified on Schedule "1" to the Critical Vendors Motion (collectively, the "Critical Vendors") in an amount not to exceed $359,544.62. In addition, the Debtor requests that the Court schedule a final hearing in approximately twenty-one (21) days after the entry of an interim order, or as soon thereafter as is convenient for the Court, to consider approval of the Critical Vendors Motion on a final basis.

105.    After an extensive review and analysis of the Debtor's vendors, the Debtor and its professionals identified the vendors that supply products and services vital to the Debtor's continued operation. The Debtor relies on products and services from its Critical Vendors to operate its business, and, depend on the timely provision of specialized services to provide top-quality content and services to its customer base.

106.    The Critical Vendors procure and provide key services to producing and transmitting The Alex Jones Show. The Critical Vendors are instrumental in the timely fulfillment of Supplement or Non-Supplements to the customer base. If they fail to provide their mission-critical goods and services, the business of FSS would grind to a halt.

107.    I understand that the Debtor's trade relationship with its Critical Vendors is not governed by long-term contracts, and the Debtor believes those trade relationships will deteriorate, causing disruption to the Debtor's operations if the Debtor is unable to pay Critical Vendors. Accordingly, payment of the Critical Vendors is essential to avoid costly interruption and disturbances to the Debtor's business during the Chapter 11 Case.

108.    Subject to Court's approval, I understand the Debtor intends to pay Critical Vendors only to the extent necessary to preserve its business. The Debtor's CRO will review, assess, and make payment on account of these claims. In return for paying these claims, the Debtor will use commercially reasonable efforts to condition payment of Critical Vendors upon each claimant's agreement to continue supplying goods and services to the Debtor in accordance

with trade terms (including credit limits, discounts, pricing, timing of payments, availability, and other terms) consistent with the parties' ordinary course practice or as otherwise agreed by the Debtor in its reasonable business judgement.

109.    I believe that the relief requested in the Critical Vendors Motion is in the best interest of the Debtor's estate, its creditors and all other parties in interest and will facilitate the Debtor's ability to operate its business in chapter 11 without disruption.

110.    **Utilities Motion**. The Debtors seeks entry of an order (a) approving the Debtor's proposed adequate assurance of payment for future utility services under section 366 of the Bankruptcy Code, (b) prohibiting the utility providers from altering, refusing, or discontinuing services, (c) approving the Debtor's propose adequate assurance procedures, and, (d) granting related relief.

111.    In connection with the operation of its business, the Debtor obtains electricity, telecommunications and other similar services from a number of utility providers or brokers. Uninterrupted utility services are essential to the Debtor's ongoing business operations and the overall success of the Chapter 11 Case. The utility services are essential for the Debtor to maintain its business and to operate its corporate offices and essential for daily operations. The studios and warehouse in Austin, Texas require electricity, telecommunications, internet, and other utility services to operate. Should any utility provider refuse or discontinue service, even for a brief period, the Debtor's business operations would be needlessly disrupted.

112.    To the best of Debtor's knowledge, there are no defaults or arrearages with respect to the undisputed invoices for prepetition utility services.

**Proposed Adequate Assurance**

113.    The Debtor intends to pay post-petition obligations owed to the Utility Providers in a timely manner. Cash held by the Debtor and cash generated in the ordinary course of

business will provide sufficient liquidity to pay the Debtor's Utility Service obligations in accordance with its prepetition practice.

114. The Debtor submits that the Debtor's ability to pay for future utility services with cash on hand in accordance with its prepetition practices (the "Proposed Adequate Assurance") constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of Bankruptcy Code section 366.

### *Adequate Assurance Procedures*

115. Any Utility Provider that is not satisfied with the Proposed Adequate Assurance may make a request for additional or different adequate assurance of future payment (each an "Additional Assurance Request") pursuant to the adequate assurance procedures set forth in the proposed Order (the "Adequate Assurance Procedures").

116. The proposed Adequate Assurance Procedures are as follows:

Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments or otherwise must serve an Additional Assurance Request on the Notice Parties (as defined in the Order). An Additional Assurance Request may be made at any time.

Any Additional Assurance Request must: (i) be in writing; (ii) identify the location for which the Utility Services are provided; (iii) summarize the Debtor's payment history relevant to the affected account(s), including any security deposits; and (iv) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

Upon the Debtor's receipt of any Additional Assurance Request, the Debtor shall promptly negotiate with such Utility Provider to resolve such Utility Provider's Additional Assurance Request.

The Debtor may, without further order from the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and the Debtor may, in connection with any such agreement, provide such Utility Provider with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments or other forms of security if the Debtor believes that such adequate assurance is reasonable in its business judgment, subject to the terms of any cash collateral or other financing order entered by the Court; provided, however, that the Debtor shall maintain a summary

001457

record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in this chapter 11 case and the U.S. Trustee upon request.

If the Debtor and the Utility Provider are not able to reach an alternative resolution within 14 days of receipt of the Additional Assurance Request, the Debtor will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing"), pursuant to Bankruptcy Code section 366(c)(3). Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing, or discontinuing Utility Services to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

In addition, if an amount relating to Utility Services provided post-petition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request additional adequate assurance pursuant to the Adequate Assurance Procedures.

The Adequate Assurance Procedures sets forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtor to continue its business operations uninterrupted. More specifically, the Adequate Assurance Procedures permits a Utility Provider to object to the Proposed Adequate Assurance by filing and serving an Additional Assurance Request upon certain notice parties. The Debtor, in its discretion, may then resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court. If the Additional Assurance Request cannot be resolved by mutual agreement, the Debtor may seek Court resolution of the Additional Assurance Request. Unless and until a Utility Provider files an objection or serves an Additional Assurance Request, such Utility Provider shall be: (i) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with Bankruptcy Code section 366; and (ii) forbidden to discontinue, alter or refuse services to, or discriminate against, the Debtor on account of any unpaid prepetition

001458

charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

117.    I believe that the relief requested in the Utilities Motion is in the best interest of the Debtor's estate, its creditors, and all other parties in interest and will facilitate the Debtor's ability to operate its businesses in chapter 11 without disruption.

118.    **Heslin/Lewis Relief from Stay Motion.** Plaintiffs in Texas and Connecticut have commenced suits against Alex Jones and FSS relating to certain statement made by Jones regarding the Sandy Hook shooting. Two of the Texas State Court Suits—*Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Owen Shroyer*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas and *Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas—have been consolidated as the Heslin/Lewis Suit.  Judge Maya Guerra Gamble, 459th Civil District Court, Travis County (the "Texas State Court") is presiding over the Heslin/Lewis Suit.

119.    The trial of the Heslin/Lewis Suit was ongoing as of the Petition Date. On July 25, 2022, the Texas State Court held *voir dire* of jurors and a jury was empaneled. The Texas State Court began taking evidence in the Heslin/Lewis Suit on July 26, 2022. As the result of the filing of the Debtor's petition for chapter 11 relief, the Heslin/Lewis Suit is stayed by Bankruptcy Code section 362.

120.    The Debtor believes that it is in the best interests of its estate and creditors for the Heslin/Lewis Suit to continue to judgement notwithstanding the commencement of this Chapter 11 Case. Substantial resources of the Debtor and Plaintiffs Heslin and Lewis have already been expended in the Heslin/Lewis Suit to empanel a jury and present evidence to that jury. Based on representations made by counsel for Heslin and Lewis in the Bankruptcy Case of InfoW, LLC

previously before this Court, the Debtor believes that Heslin and Lewis desire a final judgment from the Texas State Court and would seek relief from the automatic stay absent this request by the Debtor.[7]

121.   The Debtor seeks emergency consideration of this Motion on or before 8:30 a.m. on August 1, 2022, or as soon thereafter as the Court's schedule will allow. A jury has been empaneled and trial is underway in the Heslin/Lewis Suit, scheduled to continue at 9:00 a.m. on Monday, August 1, 2022. Emergency relief is necessary to prevent delay in the Heslin/Lewis Suit to the detriment of the Debtor, Plaintiffs Heslin and Lewis, and the members of the jury serving in the Heslin/Lewis Suit.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of July,  2022.

_____
W. Marc Schwartz, as Chief Restructuring
Officer of Free Speech Systems, LLC

---

[7] In the InfoW, LLC chapter 11 case, counsel for the Texas Plaintiffs indicated at the April 22, 2022, hearing that the Texas Plaintiffs would be seeking relief from the automatic stay to continue litigation. According to counsel for the Texas Plaintiffs, the "cases are every bit as much about having a determination final made for them, them having their day in court in which Mr.Jones is held accountable for his conduct. So it's not just about a liquidating claims procedure, it is very emotional." *In re InfoW, LLC*, Case No. 22-60020 (Bankr. S.D. Tex.) [ECF No. 39] at 73:8-12.

001460

Exhibit "A"

Comparative Profit and Loss Statement for FSS for the period January 1, 2022, through May 31, 2022 and the year ended December 31, 202.

**Exhibit A**

```
Free Speech Systems LLC
Comparative Profit and Loss Statement
For the Year Ended December 31, 2021 and the Five Months
Ended May 31, 2021
```

| | 2021 | 2022 |
|---|---|---|
| **Income** | | |
| Product Sales | $ 52,661,022.49 | $ 10,969,769.29 |
| Advertising Income | 5,761,997.51 | - |
| Donations | 710,154.12 | 2,876,213.86 |
| Fulfillment Services | 3,533,223.00 | - |
| Administrative Services | 1,903,898.95 | - |
| Media Production Sales | - | 475,000.00 |
| Infowars Health | 38,123.60 | - |
| Prison Planet | 4,877.62 | - |
| Uncategorized Income | 357,344.56 | - |
| *Total Income* | *64,970,641.85* | *14,320,983.15* |
| Cost of Goods Sold | 51,878,333.73 | 4,936,453.79 |
| *Gross Profit* | *$ 13,092,308.12* | *$ 9,384,529.36* |
| **Expenses** | | |
| Advertising & Promotion | 364,387.73 | 107,994.01 |
| Computer/IT/IP Expense | 5,036,717.02 | 1,307,339.15 |
| Insurance Expense | 54,558.40 | 31,898.90 |
| Office & Administrative Expense | 277,863.76 | 26,373.93 |
| Contract Services | 1,591,039.49 | 359,592.69 |
| Professional Fees | 4,126,906.48 | 1,623,771.42 |
| Occupancy | 1,624,864.40 | 345,602.34 |
| Utilities | 115,461.34 | 127,855.13 |
| Taxes Paid | 50,281.71 | 4,409.71 |
| Telephone Expense | 304,776.62 | 85,341.24 |
| Personnel & Payroll Expenses | 6,879,811.39 | 2,157,298.60 |
| Travel | 975,711.28 | 64,900.23 |
| Equipment Purchase | 123,696.05 | - |
| Production | 393,712.54 | - |
| Radio Show | 145,177.77 | - |
| Royalties | 1,197,472.71 | - |
| Equipment Rental | 27,322.86 | - |
| Meals and Entertainment | 97,486.31 | - |
| Uncategorized Expense | - | 103,815.00 |
| *Total Expenses* | *23,387,247.86* | *6,346,192.35* |
| *Net Operating Income* | *$ (10,294,939.74)* | *$ 3,038,337.01* |
| **Other Income** | **507,168.04** | **1,019,713.81** |
| **Other Expenses** | 18,963.30 | 206.15 |
| Interest Expense | 857,498.17 | 397,669.19 |
| Donation | 10,000.00 | - |
| Amortization Expense | 35,361.28 | 5,937.50 |
| Depreciation Expense | 209,888.00 | 98,750.20 |
| AMEX Charges | - | 1,653,383.31 |
| *Total Other Expenses* | *1,131,710.75* | *2,155,946.35* |
| *Net Other Income* | *(624,542.71)* | *(1,136,232.54)* |
| *Net Income* | *$ (10,919,482.45)* | *$ 1,902,104.47* |

Exhibit "B"

Comparative Balance Sheet of FSS as of May 31, 2022 and December 31, 2021.

**Exhibit B**

```
┌─────────────────────────────────────────────────┐
│           Free Speech Systems LLC                 │
│         Comparative Balance Sheet                 │
│      As of December 31, 2021 and May 31, 2022     │
└─────────────────────────────────────────────────┘
```

|  | 2021 | 2022 |
|---|---|---|
| **Assets** | | |
| **Current Assets** | | |
| Cash | $ 1,508,720.21 | $ 1,159,247.90 |
| Accounts Receivable | 10,187,121.95 | 10,013,413.22 |
| **Other Current Assets** | | |
| Invenotry | 1,732,603.13 | 910,116.84 |
| Prepaid Expenses | 446,475.64 | 114,136.99 |
| Due from PQPR | (500.00) | - |
| Advance To Elevated Solutions | 27,870.00 | - |
| *Total Other Current Assets* | *2,206,448.77* | *1,024,253.83* |
| *Total Current Assets* | *13,902,290.93* | *12,196,914.95* |
| **Fixed Assets** | 1,679,438.66 | 1,580,779.46 |
| **Other Assets** | | |
| Intangible Assets | 21,270.83 | 15,333.33 |
| Security Deposits | 534,560.00 | 534,560.00 |
| *Total Other Assets* | *555,830.83* | *549,893.33* |
| *Total Assets* | *$ 16,137,560.42* | *$ 14,327,587.74* |
| **Liabilities and Equity** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| Accounts Payable | $ 4,732,966.89 | $ 1,217,685.58 |
| Credit Cards | 152,367.42 | 207,984.04 |
| **Other Current Liabilities** | | |
| David Jones Advance | 150,000.00 | 150,000.00 |
| Advances from PQPR | - | 571,920.57 |
| Due to PQPR | 23,058,367.00 | 23,058,367.00 |
| *Total Other Current Liabilities* | *23,208,367.00* | *23,780,287.57* |
| *Total Current Liabilities* | *28,093,701.31* | *25,205,957.19* |
| **Long Term Liabilities** | | |
| Note Due to PQPR | 54,580,405.22 | 53,845,074.41 |
| Note Payable - Winnebago | 93,505.62 | 82,524.37 |
| *Total Long Term Liabilities* | *54,673,910.84* | *53,927,598.78* |
| *Total Liabilities* | *$ 82,767,612.15* | *$ 79,133,555.97* |
| **Equity** | | |
| Member's Equity | (774,291.44) | - |
| Member Draws | (61,937,862.26) | (254,014.00) |
| Member Contributions | 4,305,810.14 | 311,350.00 |
| Opening Balance Equity | - | (66,765,408.70) |
| Retained Earnings | 2,695,774.28 | |
| Net Income | (10,919,482.45) | 1,902,104.47 |
| *Total Equity* | *$ (66,630,051.73)* | *$ (64,805,968.23)* |
| *Total Liabilities and Equity* | *$ 16,137,560.42* | *$ 14,327,587.74* |

Exhibit "C"

Comparative Cash Flow Statement for FSS for the period January 1, 2022, through May 31, 2022 and the year ended December 31, 2021.

**Exhibit C**

<div style="border:1px solid black">

**Free Speech Systems, LLC**
**Statement of Cash Flows**

**For the Year Ended December 31, 2021 and the Five Months Ended May 31, 2022**

</div>

|  | 2021 | 2022 |
|---|---|---|
| **Operating Activities** | | |
| **Net Income** | **($10,919,482.45)** | **$1,902,104.47** |
| **Adjustments to reconcile Net Income to Net Cash provided by operations:** | - | - |
| 11000 Accounts Receivable | (10,187,121.95) | 173,708.73 |
| 12000 Inventory | (94,344.61) | 822,486.29 |
| 13000 Prepaid Expenses:13010 Prepaid Insurance | - | - |
| 13000 Prepaid Expenses:13020 Prepaid Software Licenses | - | - |
| Pre-paid Vendor Deposits | - | - |
| 13000 Prepaid Expenses:13040 Prepaid Legal | - | - |
| 13000 Prepaid Expenses:13070 Other Prepaid Expenses | - | - |
| Advance To Elevated Solutions | - | - |
| Prepaid Expenses | (403,821.24) | 65,286.20 |
| Accumulated Depreciation | 209,887.99 | 98,750.20 |
| Accumulated Amortization | 35,361.29 | 2,708.35 |
| 20000 Accounts Payable | 3,005,707.55 | (3,410,484.85) |
| 22000 Credit Card Payable | (236,394.79) | 207,984.04 |
| Advances from PQPR | - | 571,920.57 |
| David Jones Advance | 150,000.00 | - |
| Due to PQPR | (2,229,789.04) | - |
| Interest Payable - PQPR | (200,022.99) | - |
| **Net cash provided by operating activities** | **($20,870,020.24)** | **$434,464.00** |
| **Investing Activities** | - | - |
| 15000 Property and Equipment | (522,121.65) | (91.00) |
| 17100 Security Deposits | (500,000.00) | - |
| 17300 Intangible Assets | (5,500.00) | 3,229.15 |
| **Net cash provided by investing activities** | **($1,027,621.65)** | **$3,138.15** |
| **Financing Activities** | | |
| 27000 Note Due to PQPR:2021/11/10 $25,300,000 Note | 24,992,405.22 | (735,330.81) |
| Note Payable - Winnebago | (18,832.81) | (10,981.25) |
| 31000 Opening Balance Equity | - | - |
| Member's Equity | (23,193.36) | (98,098.40) |
| 33000 Distributions to Member:33100 Member Draws | - | - |
| 33000 Distributions to Member:Owner investments | - | - |
| Net Member Distributions | (2,100,362.40) | 57,336.00 |
| **Net cash provided by financing activities** | **22,850,016.65** | **(787,074.46)** |
| **Net cash increase for period** | **$952,374.76** | **($349,472.31)** |

Exhibit "D"

13-Week Cash Flow Forecast for FSS

001467

# Exhibit D

001468

**Free Speech Systems LLC**
**Forecasted 13 Week Cash Flow Budget**
Between July 30, 2022 and October 28, 2022

Week Number / Period:

| Week | Period |
|---|---|
| 1 | 07/30/2022 - 08/05/2022 |
| 2 | 08/06/2022 - 08/12/2022 |
| 3 | 08/13/2022 - 08/19/2022 |
| 4 | 08/20/2022 - 08/26/2022 |
| 5 | 08/27/2022 - 09/02/2022 |
| 6 | 09/03/2022 - 09/09/2022 |
| 7 | 09/10/2022 - 09/16/2022 |
| 8 | 09/17/2022 - 09/23/2022 |
| 9 | 09/24/2022 - 09/30/2022 |
| 10 | 10/01/2022 - 10/07/2022 |
| 11 | 10/08/2022 - 10/14/2022 |
| 12 | 10/15/2022 - 10/21/2022 |
| 13 | 10/22/2022 - 10/28/2022 |

| Line Item | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | |
| Product Sales | $ 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | $ 7,741,357.16 |
| Advertising | | | | 480,166.46 | | | | 480,166.46 | | | | 480,166.46 | | 1,440,499.38 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 40,836.21 |
| **Total Income** | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 9,222,692.75 |
| **Selling & Product Costs** | | | | | | | | | | | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (990,017.27) |
| Repay PQFR Inventory | | (250,000.00) | | (500,000.00) | | | | | | | | | | (750,000.00) |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (348,361.13) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (102,853.59) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (1,238,617.15) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (309,654.29) |
| eCommerce Store Maintenance | (27,270.00) | | | | (27,270.00) | | | | (27,270.00) | | | | | (81,810.00) |
| Texas Sales Tax | (5,337.87) | | | | (5,337.87) | | | | (5,337.87) | | | | | (16,013.61) |
| **Total Cost of Goods Sold** | (262,569.67) | (479,961.80) | (229,961.80) | (729,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (229,961.80) | (3,837,326.97) |
| **Operating Expenses** | | | | | | | | | | | | | | |
| **Advertising & Promotion** | | | | | | | | | | | | | | |
| Advertising & Promotion | (3,041.98) | | | | (3,041.98) | | | | (3,041.98) | | | | | (9,125.93) |
| Print Media | (3,000.00) | | | | (3,000.00) | | | | (3,000.00) | | | | | (9,000.00) |
| Radio Show Advertising | (11,500.00) | | | | (11,500.00) | | | | (11,500.00) | | | | | (34,500.00) |
| **Total Advertising & Promotion** | (17,541.98) | | | | (17,541.98) | | | | (17,541.98) | | | | | (52,625.93) |
| **Computer/IT/IP Expense** | | | | | | | | | | | | | | |
| Internet & TV services | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | | (11,073.89) |
| Merchant Account Fees | (140.80) | | | | (140.80) | | | | (140.80) | | | | | (422.40) |
| Software License Fees | (28,595.13) | | | | (28,595.13) | | | | (28,595.13) | | | | | (85,785.40) |
| Server Hosting Service | (55,728.00) | | | | (55,728.00) | | | | (55,728.00) | | | | | (167,184.00) |
| CDN Video Cloud Storage | (137,282.93) | | | | (137,282.93) | | | | (137,282.93) | | | | | (411,848.78) |
| Satellite Service | (9,201.25) | | | | (9,201.25) | | | | (9,201.25) | | | | | (27,603.75) |
| Imaging License Fee | (5,000.00) | | | | (5,000.00) | | | | (5,000.00) | | | | | (15,000.00) |
| Website Hosting | | | (266.50) | | | | (266.50) | | | | (266.50) | | | (799.50) |
| **Total Computer/IT/IP Expense** | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | | (719,717.72) |
| Insurance | (2,166.50) | | | | (2,166.50) | | | | (2,166.50) | | | | | (6,499.50) |
| **Office & Administrative Expense** | | | | | | | | | | | | | | |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (596.74) |
| Equipment Rental | (1,989.90) | | | | (1,989.90) | | | | (1,989.90) | | | | | (5,969.69) |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (27.31) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (3,645.97) |
| **Total Office & Administrative Expense** | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (328.46) | (10,239.71) |
| Outsourced Services | (45,980.00) | | | | (45,980.00) | | | | (45,980.00) | | | | | (137,940.00) |
| Consulting Services | (22,670.00) | | (12,000.00) | | (22,670.00) | | (12,000.00) | | (22,670.00) | | (12,000.00) | | | (104,010.00) |
| **Utilities** | | | | | | | | | | | | | | |
| Electricity | (256.19) | | | | (256.19) | | | | (256.19) | | | | | (768.58) |
| HVAC | (20,364.16) | | | | (20,364.16) | | | | (20,364.16) | | | | | (61,092.48) |
| CAM Charges | (1,708.55) | | | | (1,708.55) | | | | (1,708.55) | | | | | (5,125.66) |
| Water & Sewer | (132.09) | | | | (132.09) | | | | (132.09) | | | | | (396.28) |
| Gas Service | (244.65) | | | | (244.65) | | | | (244.65) | | | | | (733.95) |
| Pest Control | | | (5,107.63) | | | | (5,107.63) | | | | (5,107.63) | | | (15,322.89) |
| Waste Management | (351.81) | | | | (351.81) | | | | (351.81) | | | | | (1,055.43) |
| **Total Utilities** | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | | (84,495.27) |
| **Occupancy** | | | | | | | | | | | | | | |
| Rent | (33,408.51) | | | | (33,408.51) | | | | (33,408.51) | | | | | (100,225.53) |
| Office Security | (31,111.90) | | | | (31,111.90) | | | | (31,111.90) | | | | | (93,335.69) |
| Repair & Maintenance - Building | (1,771.19) | | | | (1,771.19) | | | | (1,771.19) | | | | | (5,313.56) |
| Janitorial | (5,983.33) | | | | (5,983.33) | | | | (5,983.33) | | | | | (17,950.00) |
| **Total Occupancy** | (72,280.93) | | | | (72,280.93) | | | | (72,280.93) | | | | | (216,842.78) |
| Supplies | (1,258.02) | | | | (1,258.02) | | | | (1,258.02) | | | | | (3,774.07) |

**Free Speech Systems LLC**
**Forecasted 13 Week Cash Flow Budget**
Between July 30, 2022 and October 28, 2022

| | Period 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 | 08/27/2022-09/02/2022 | 09/03/2022-09/09/2022 | 09/10/2022-09/16/2022 | 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | 10/15/2022-10/21/2022 | 10/22/2022-10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Telephone | (18,337.88) | | | | (18,337.88) | | | | (18,337.88) | | | | | (55,013.65) |
| **Personnel Expenses** | | | | | | | | | | | | | | |
| Salaries & Wages - Base | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | (1,179,272.08) |
| Payroll Tax | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | (97,797.65) |
| Alex Jones Salary | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | (379,166.67) |
| **Total Personnel Expenses** | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | (1,656,236.39) |
| **Travel** | | | | | | | | | | | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (1,295.98) |
| Vehicle Leases | (1,470.56) | | | | (1,470.56) | | | | (1,470.56) | | | | | (4,411.68) |
| **Total Travel Expenses** | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (99.69) | (5,707.66) |
| **Total Operating Expenses** | (680,347.03) | (1,898.71) | (256,015.88) | (428.15) | (680,347.03) | (256,015.88) | (428.15) | (680,347.03) | (428.15) | (238,503.91) | (19,410.68) | (237,033.35) | (237,033.35) | (3,053,102.68) |
| **Non-Operating Expenses** | | | | | | | | | | | | | | |
| Payment on PQPR Note | (12,500.00) | (15,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (523,000.00) |
| AMEX Payment | (172,390.28) | | (172,390.28) | | (172,390.28) | | | (172,390.28) | (172,390.28) | | (172,390.28) | | | (1,034,341.69) |
| **Total Other Expenses** | (184,890.28) | (15,500.00) | (199,890.28) | (27,500.00) | (199,890.28) | (27,500.00) | (55,000.00) | (227,390.28) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (55,000.00) | (1,557,341.69) |
| **Professional Fees** | | | | | | | | | | | | | | |
| CRO Fees | | | | | | | (35,328.00) | | (52,992.00) | | | | | (88,320.00) |
| Financial Advisor Fee | | | | | | | (40,352.00) | | (57,876.00) | | | | | (98,228.00) |
| Shannon & Lee LLP | | | | | | | (60,000.00) | | (40,000.00) | | | | | (100,000.00) |
| Ray Battaglia | | | | | | | (24,000.00) | | (24,000.00) | | | | | (48,000.00) |
| **Total Professional Fees** | | | | | | | (159,680.00) | | (174,868.00) | | | | | (334,548.00) |
| **Total Cash Flow** | $ (529,176.72) | $ 101,269.75 | $ (87,237.70) | $ 320,906.77 | $ (544,176.72) | $ 339,269.75 | $ (289,605.70) | $ 793,406.77 | $ (731,356.72) | $ 313,240.31 | $ (97,225.73) | $ 774,424.24 | $ 76,635.11 | $ 440,373.41 |

001469

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

**CONNECTICUT FAMILIES'
WITNESS AND EXHIBIT LIST FOR EMERGENCY HEARING**

| | |
|---|---|
| Judge | Hon. Christopher M. Lopez |
| Hearing Date | Friday, August 12, 2022 |
| Hearing Time | 1:00 p.m. (CST) |
| Party's Name | David Wheeler, et al. |
| Attorney's Name | Ryan Chapple and Randy Williams |
| Attorney's Phone | 512-477-5000 |
| Nature of Proceeding | Debtor's Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral [Dkt. 55] |

**WITNESS AND EXHIBIT LIST**

David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (collectively, the Connecticut Families) hereby submit this Witness and Exhibit List in connection with the hearing on *Debtor's Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral* (the Emergency Motion) [Dkt. 55] to be held on Friday, August 12, 2022 at 1:00 p.m. (central standard time):

Counsel for the Connecticut Families reserves the right to supplement, amend, or delete any witnesses or exhibits prior to the hearing. Counsel for the Connecticut Families reserves the right to supplement the Witness and Exhibit List with new witnesses and additional exhibits. Further, counsel reserves the right to use any exhibits presented by

any other party and to ask the Court to take judicial notice of any document. Counsel for the Connecticut Families further reserves the right to introduce exhibits previously admitted.

### WITNESS LIST

- W. Marc Schwartz
- Patrick Reiley
- Any witness listed or called by any other party.

### EXHIBIT LIST

**IF YOU SEEK A COPY OF THE EXHIBITS, YOU CAN ACCESS THEM BY SUBMITTING A WRITTEN REQUEST TO ARLANA PRENTICE AT APRENTICE@CSTRIAL.COM.**

Counsel for the Connecticut Families may offer for admission into evidence any of the following exhibits at the hearing:

| No. | Description | Offer | Obj | Date Admit | Disposition after trial |
|-----|-------------|-------|-----|------------|-------------------------|
| 1. | Interim Order Authorizing the Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [Dkt. 41] | | | | |
| 2. | Declaration of W. Marc Schwartz in Support of Voluntary Petition and First Day Motions [Dkt. 10] | | | | |
| 3. | Blue Asension Logistics LLC - Certificate of Formation dated March 7, 2022 | | | | |
| 4. | Email from aj76@alexjones.net to Patrick@infowars.com dated June 22, 2018 re: phone call with Marc Randazza | | | | |
| 5. | Email from aj76@alexjones.net to Patrick@infowars.com dated July 5, 2016 re: Boat Dock after the 4th | | | | |
| 6. | Blue Asension Logistics price list dated July 18, 2022 | | | | |
| 7. | Text messages between Alex Jones and Patrick Reiley | | | | |

| | Any exhibits designated by other parties | | | | |
|---|---|---|---|---|---|
| | Any exhibits necessary for rebuttal | | | | |

Respectfully submitted this 12th day of August 2022.

_____/s/ Ryan E. Chapple_____

Ryan E. Chapple
State Bar No. 24036354
Email:rchapple@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile

and

Randy W. Williams
State Bar No. 21566850
Email: rww@bymanlaw.com
**BYMAN & ASSOCIATES PLLC**
7924 Broadway, Suite 104
Pearland, Texas 77581
281-884-9262
**ATTORNEYS FOR WHEELER, ET AL.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Witness and Exhibit List has been served on counsel for Debtor, Debtor, and all parties receiving or entitled to notice through CM/ECF on this 12th day of August 2022.

_____/s/ Ryan E. Chapple_____

Ryan E. Chapple

001472

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

# EXHIBIT 1

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 05, 2022
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

**INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND**
**PROVIDING PARTIAL ADEQUATE PROTECTION**

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of this interim order (this "Order") pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court, having considered the Motion, and having held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing"), and having considered the evidence presented or proffered and the statements and representations of the parties on the record at the Interim Hearing; and all objections, if any, to the entry of this Interim Order having been resolved by agreement or order of the Court or overruled; and after due deliberation and consideration and sufficient cause appearing therefor;

1. The Chapter 11 Case. On July 29, 2022 (the "Petition Date") the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (this "Court").

2. Debtor-in-Possession. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code. To date, no trustee or examiner

has been appointed in this Case. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

3. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and the Local Rules of this Court (the "<u>Local Rules</u>").

4. <u>Committee Formation</u>. To date, no official committee (a "<u>Committee</u>") of unsecured creditors, equity interest holders, or other parties in interest has been appointed in the Case.

5. <u>Notice</u>. On July 29, 2022, the Debtor served copies of the Motion and notice of the Interim Hearing to all creditors and parties in interest entitled to such notice in compliance with Bankruptcy Rules 2002, 4001, 9014, and the Local Rules, including: (i) the Office of the United States Trustee for this District, (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtor's estate, (iii) PQPR Holdings Limited, LLC Trust ("<u>PQPR</u>"), and (vi) any other secured parties of record. Under the circumstances, such notice of the Interim Hearing and the emergency relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rule 4001 and the Local Rules, and no other or further notice of the Interim Hearing or the relief granted in this Interim Order is necessary or required.

6. <u>Immediate Need for Use of Cash Collateral</u>. The Debtor asserts that an immediate and critical need exists for the Debtor to use the alleged cash collateral[1] of PQPR as set forth in the budget defined below (the "<u>Cash Collateral</u>") in order to continue the operation of its business. Without such use of Cash Collateral, the Debtor asserts that it will not be able to pay post-petition direct operating expenses and obtain goods and services needed to carry on its business in a manner that will avoid irreparable harm to the Debtor's estate. The Debtor further asserts that its ability to use Cash Collateral is necessary to preserve and maintain the going concern value of the Debtor's estate.

---

[1] As defined at 11 U.S.C. § 363(a).

7.     <u>Conditional Consent to Use of Cash Collateral</u>. The Debtor seeks authorization to use Cash Collateral to pay the Debtor's ordinary and necessary operating expenses set forth in the budget attached to this Order as Exhibit A (the "<u>Budget</u>") for the period (the "<u>Interim Period</u>") from the Petition Date through and including August 26, 2022 (the "<u>Termination Date</u>"). The lender has agreed to the Debtor's use of Cash Collateral during the Interim Period exclusively in accordance with the terms, conditions, and limitations set forth in this Order and the Budget.

8.     <u>Good Cause/Fair and Reasonable Terms</u>. The Debtor asserts that good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the business and operations of the Debtor and permit the Debtor to maintain the going concern value of its business. The use of Cash Collateral authorized hereunder is necessary, essential, and appropriate and is in the best interest of, and will benefit, the Debtor, its creditors, and the Debtor's bankruptcy estate as it will, among other things, provide the Debtor with the necessary liquidity to (i) avoid immediate and irreparable harm to the Debtor and its bankruptcy estate; and (ii) preserve and maximize the value of the Debtor's business and assets. The terms and conditions of the use of Cash Collateral and the security interests, liens, rights, and priorities granted to the lenders hereunder are fair and appropriate under the circumstances.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.     <u>Motion Granted</u>. The Motion is hereby granted on an interim basis as set forth herein.

2.     <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.     <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>").  All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor

shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.      <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral to pay the items set forth in the Budget, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.      <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. Payments to any insider during the Interim Period shall not exceed $20,000 in the aggregate.

6.      <u>Payment to PQPR for Inventory Purchase</u>. Notwithstanding the limitation on payments to insiders set forth in the preceding paragraph, the Debtor is authorized to use Cash Collateral to pay PQPR $250,000 as provided in the Budget for "Repay PQPR Inventory" (the "<u>PQPR Payment</u>"). The PQPR Payment shall not be used to pay down the PQPR Notes (as defined in the Motion). Creditors and parties in interest shall have thirty (30) days from the date a notice is filed on the docket that the PQPR Payment has been issued to object to the appropriateness of that payment and file pleadings with the Court seeking to clawback the PQPR Payment.

7.      <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.      <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall

remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.    <u>Adequate Protection – Replacement Liens</u>.      As adequate protection for any diminution in value of each of the Pre-Petition Lender's interest in the Debtor's collateral, if any, including Cash Collateral, resulting from the imposition of the automatic stay with respect to the Collateral and/or the Debtor's use, sale or lease of the Collateral during the Case (the "<u>Diminution in Value</u>"), the Pre-Petition Lender is hereby granted, effective as of the Petition Date, valid, binding, enforceable, and automatically perfected liens (the "<u>Replacement Liens</u>") in all currently owned or hereafter acquired property and assets of the Debtor, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising (excluding avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code), and all proceeds and products of the foregoing (collectively, the "<u>Adequate Protection Collateral</u>") to the same extent as existed on the Petition Date. The Replacement Liens granted pursuant to this Order shall be subject to the Carve Out.

10.    <u>Carve Out</u>. The Replacement Liens and Adequate Protection Priority Claim granted herein shall be subject to (a) unpaid fees payable to the Clerk of the Bankruptcy Court or the United States Trustee; (b) subject to the Budget, court-approved administrative expense claims of estate professionals, employed pursuant to order of this Court (collectively, "<u>Estate Professionals</u>"), for incurred but unpaid fees, expenses and other costs; fees and expenses of the appointed Subchapter V Trustee (all such carve-out amounts referenced above, collectively, the "<u>Carve Out</u>").

11.    <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

12. <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, the Subchapter V Trustee, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

13. <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on August 24, 2022, at 10:00 a.m. Central time.

Signed: August 05, 2022

Christopher Lopez
United States Bankruptcy Judge

001479

# Forecasted Interim Cash Collateral Budget
### Between July 29, 2022 and August 26, 2022

| Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 |
|---|---|---|---|---|
| Week Number | 1 | 2 | 3 | 4 |

## Income
| | | | | |
|---|---|---|---|---|
| Product Sales | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 |
| Advertising | - | - | - | 480,166.46 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 |
| **Total Income** | **598,630.26** | **598,630.26** | **598,630.26** | **1,078,796.72** |

## Selling & Product Costs
| | | | | |
|---|---|---|---|---|
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) |
| Repay PQPR Inventory | - | (250,000.00) | - | - |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) |
| eCommerce Store Maintenance | (27,270.00) | - | - | - |
| Texas Sales Tax | (5,337.87) | - | - | - |
| **Total Cost of Goods Sold** | **(262,569.67)** | **(479,961.80)** | **(229,961.80)** | **(229,961.80)** |

## Operating Expenses
### Advertising & Promotion
| | | | | |
|---|---|---|---|---|
| Advertising & Promotion | (3,041.98) | - | - | - |
| Print Media | (3,000.00) | - | - | - |
| Radio Show Advertising | (11,500.00) | - | - | - |
| **Total Advertising & Promotion** | **(17,541.98)** | **-** | **-** | **-** |

### Computer/IT/IP Expense
| | | | | |
|---|---|---|---|---|
| Internet & TV services | (2,082.90) | - | (1,608.39) | - |
| Software License Fees | (140.80) | - | - | - |
| Server Hosting Service | (28,595.13) | - | - | - |
| CDN Video Cloud Storage | (55,728.00) | - | - | - |
| Satellite Service | (137,282.93) | - | - | - |
| Imaging License Fee | (9,201.25) | - | - | - |
| Software & Apps | (5,000.00) | - | - | - |
| Website Hosting | - | - | (266.50) | - |
| **Total Computer/IT/IP Expense** | **(238,031.01)** | **-** | **(1,874.89)** | **-** |
| Insurance | (2,166.50) | | | |

### Office & Administrative Expense
| | | | | |
|---|---|---|---|---|
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) |
| Equipment Rental | (1,989.90) | - | - | - |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) |
| **Total Office & Administrative Expense** | **(2,318.36)** | **(328.46)** | **(328.46)** | **(328.46)** |

| | | | | |
|---|---|---|---|---|
| Outsourced Services | - | - | - | - |
| Consulting Services | - | - | - | - |

### Utilities
| | | | | |
|---|---|---|---|---|
| Utility Deposit | (10,000.00) | | | |
| Electricity | - | - | (5,107.63) | - |
| HVAC | (256.19) | - | - | - |
| CAM Charges | (20,364.16) | - | - | - |
| Water & Sewer | (1,708.55) | - | - | - |
| Gas Service | (132.09) | - | - | - |
| Pest Control | (244.65) | - | - | - |
| Waste Management | (351.81) | - | - | - |
| **Total Utilities** | **(33,057.46)** | **-** | **(5,107.63)** | **-** |

### Occupancy
| | | | | |
|---|---|---|---|---|
| Rent | (33,408.51) | - | - | - |
| Office Security | (31,111.90) | - | - | - |
| Repair & Maintenance - Building | (1,777.19) | - | - | - |
| Janitorial | (5,983.33) | | | |

EXHIBIT

0014

A

exhibitsticker.com

| Period+A5:E83 | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 |
|---|---|---|---|---|
| **Total Occupancy** | **(72,280.93)** | - | - | - |
| Supplies | (1,258.02) | | | |
| Telephone | (18,337.88) | - | - | |
| **Personnel Expenses** | | | | |
| Salaries & Wages - Base | (168,467.44) | - | (168,467.44) | - |
| Payroll Tax | (13,087.76) | - | (13,087.76) | - |
| Alex Jones Salary | (10,000.00) | - | (10,000.00) | - |
| **Total Personnel Expenses** | **(191,555.20)** | **-** | **(191,555.20)** | **-** |
| **Travel** | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) |
| Vehicle Leases | - | (1,470.56) | - | - |
| **Total Travel Expenses** | **(99.69)** | **(1,570.25)** | **(99.69)** | **(99.69)** |
| **Total Operating Expenses** | **(576,647.03)** | **(1,898.71)** | **(198,965.88)** | **(428.15)** |
| ***Non-Operating Expenses*** | | | | |
| Payment on PQPR Note | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) |
| AMEX Payment | - | - | - | - |
| **Total Other Expenses** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** |
| **Professional Fees** | | | | |
| CRO Fees | - | - | - | - |
| Financial Adviosr Fee | - | - | - | - |
| Shannon & Lee LLP | - | - | - | - |
| Ray Battaglia | - | - | - | - |
| **Total Professional Fees** | **-** | **-** | **-** | **-** |
| **Total Cash Flow** | **$ (245,586.44)** | **$ 111,769.75** | **$ 164,702.59** | **$ 843,406.77** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

# EXHIBIT 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | |
|---|---|
| In re: | ) Case No. 22-<u>  60043  </u> |
| | ) |
| FREE SPEECH SYSTEMS, LLC, | ) Chapter 11 (Subchapter V) |
| | ) |
| Debtor. | ) |
| | ) |

## DECLARATION OF W. MARC SCHWARTZ IN SUPPORT OF
## <u>VOLUNTARY PETITION AND FIRST DAY MOTIONS</u>

I, W. Marc Schwartz, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

1.      My name is W. Marc Schwartz ("<u>Schwartz</u>").

2.      I submit this Declaration based on personal knowledge in support of the voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") filed by Free Speech Systems, LLC (the "<u>Debtor</u>" or "<u>FSS</u>") on the date hereof (the "<u>Petition Date</u>"). I further submit this Declaration to assist this Court and parties-in-interest in understanding the circumstances that compelled the commencement of the Debtor's chapter 11 case (the "<u>Chapter 11 Case</u>").

3.      The relief sought in the First Day Motions should enable the Debtor to administer its estate effectively.  I have reviewed the First Day Motions, and I believe the requested relief is necessary to ensure the success of the Chapter 11 Case.

4.      Except as otherwise indicated, all facts as set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtor.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

1

5.      I am a founder of Schwartz & Associates, LLC ("SALLC"). SALLC has its principal offices at 712 Main Street, Suite 1830, Houston, Texas. SALLC has been engaged in business since 2019. The primary business of SALLC is bankruptcy and financial restructuring consulting, serving as financial/economic experts in civil litigation matters and, serving as court appointed receivers in federal and state court matters.   The firm is also licensed as an Investigations Company by the Texas Department of Public Safety.

6.      SALLC's services include financial forensics, supervising business operations as a trustee, examiner with expanded powers or receiver, valuing business assets and income tax related services   My firm represents individuals, companies and courts in a variety of assignments,  including serving as a Chief Restructuring Officer, financial adviser, trustee or examiner in bankruptcy matters; working as a testifying or consulting expert on damages and economic issues for parties involved in litigation and as a special master for courts where litigation matters are pending; serving as a court appointed receiver in state and federal courts.

7.      I earned a Bachelor of Arts degree from Princeton University and a Master's in Business Administration degree from the University of Chicago Booth School of Business. I am licensed in Texas as a Certified Public Accountant, Certified in Financial Forensics by the American Institute of Certified Public Accountants, a Certified Fraud Examiner, and a Licensed Private Investigator.

8.      I have extensive experience serving as a fiduciary in bankruptcy cases as either a Chapter 11 Trustee, a Chief Restructuring Officer, or an Examiner with expanded powers. I have also acted as a receiver over several individuals and entities under state and federal law.

9.      On June 7, 2022, the Debtor confirmed my retention as the Debtor's Chief Restructuring Officer (the "CRO") and SALLC as its financial advisors as of May 19, 2022.

001484

10.     On the Petition Date, FSS filed its petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court, Southern District of Texas, Victoria Division (the "Bankruptcy Court"). FSS properly qualified to file as a Subchapter V Debtor under Chapter 11 of the Bankruptcy Code.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A.  Background to Creation of Free Speech Systems, LLC

11.     Born in 1974, Alex Jones ("Alex Jones" or "Jones") is the son of Carol Jones, a homemaker, and David Jones, a prominent dentist. Jones moved from Dallas to Austin as a teenager.

12.     In the early 1990s, Austin was a dirt-cheap home to artists, musicians, and zine makers[1]. According to Shannon Burke, a local talk-radio host, "the perfect incubator for [Alex Jones]. It's that libertarian and weirdness blend that wouldn't have worked had he been born in Milwaukee." *Buzzfeed*, May 6, 2017 (Charlie Warzel) (hereafter "*Buzzfeed*").

13.     Austin Public Access ("ACTV"), the TV station where Jones got his first big break showcased that weirdness. In the 1990s, ACTV "was wild and unmoderated — like the YouTube of its time," Brian Blake, the station's longtime producer and IT director, explained. For Jones, then just out of high school, it was a huge opportunity — a chance to spend an hour in front of a camera saying pretty much anything he wanted to Austin's night owls. *Buzzfeed*.

14.     From his first broadcast, Jones targeted the threat of the New World Order, which he had first encountered in the book *None Dare Call It Conspiracy*, discovered on his father's bookshelf. His earliest monologues were stark and raw; Jones would deliver his monologues

---

[1] Wikipedia defines it as "a small circulation self-published work of original or appropriated texts and images usually reproduced via photocopier" - although the term is often used to describe any magazine aimed at a niche audience.

001485

from a bare table, surrounded by stacks of newspaper and often fumbling his words. But the message and the intensity were indistinguishable from the Jones on the air in 2017. *Buzzfeed*. Jones was a modest public-access success.

15.     Alex and his father then found an opportunity in 1996 for Alex to do a talk show on the Austin talk radio station KJFK-FM. He started hosting a show called "The Final Edition". To secure Jones a spot on the station, Jones' father became his son's first on-air advertiser. The show lasted for three years. "Alex Jones" *Southern Poverty Law Center ("SPLC")*.

16.     Alex Jones was a natural.

17.     The "Final Edition" lasted until 1999, when he was fired because his views made it difficult to attract commercial sponsors despite high ratings and winning the best Austin talk radio host show awards. *SPLC*.

18.     Upon being terminated, Alex Jones immediately set up an ISDN line in his house and began independently broadcasting via Infowars.com and national syndication by Genesis Communications to AM, FM, and shortwave stations. *SPLC*.

19.     When Jones started broadcasting on the radio in the late 1990s, he closely followed the talk radio playbook, he built a large and devoted audience of far-right conspiracy-theory believers. He sold radio advertising, videos, books, and T-shirts. From there, he expanded by establishing a website, making, and selling his own conspiracy-oriented documentary films, and, then launching PrisonPlanet.tv, a subscription-only streaming-video service that offered instant access to the films. *Intelligencer*, May 2017. Alex's syndication soon reached almost 100 stations. *SPLC*.

20.     The predecessor operation of FSS in 2004 was an operation with just a handful of employees.  Alex Jones had a tiny office in the far south of Austin. He had two employees at

001486

that time. One of the two employees tended to the warehouse operations. It was also not clear where Alex Jones broadcast at that time. *Jacobson Deposition*, P30.[2]

21.     As his business grew, Alex formed FSS in November 2007 to support his various family business opportunities. Getting into broadcasting had been a family idea, and running a business associated with his radio broadcasting continued to be a family business.

22.     By 2010, Jones had a full-size facility. He had over 60 people on his staff and a full-blown studio. *Jacobson Deposition*, P30. FSS's operation in 2010 were dramatically different in "every way, shape and form", *Jacobson Deposition*, PP30-31, from his 1990 operations.

23.     While Alex's broadcasting technology significantly improved, he did not retain professional managers to run his burgeoning business. It continued to be run by members of his family, friends, and employees whom he had known in high school.

24.     After 2013, Alex Jones' media formula changed from website and films to a website and radio. *Jacobson Deposition*, PP30-31. While his media formula changed, Alex still did not employ professionally trained and experienced business managers at FSS.

25.     The post 2013 business model of FSS recognized that it was a "single talent business" *to wit*, Alex Jones, singularly drove sales on his Infowars.com website. FSS began to make available dietary supplements: products such as InfoWarsLife Silver Bullet Colloidal Silver; Infowars Life Brain Force Plus; InfoWars Life Super Male Vitality; Infowars Life Liver Shield. Supplements "completely transformed" Infowars. Most of FSS' revenue to this day comes from sales of dietary supplements.

---

[2] Oral and Videotaped Deposition of Robert Jacobson, March 20, 2019, Scarlett Lewis v. Alex. E. Jones (Texas).

26.     Alex Jones' show is syndicated by the Genesis Communications Network ("GCN"). Instead of charging syndication fees to radio stations, GCN uses what is called the barter model. GCN offers the content for no cost, and, in exchange, GCN reserves the right to sell national advertising against the programs, generally four minutes per hour.

**B.  Present Business of Free Speech Systems, LLC**

27.     FSS is presently engaged in the business of producing and syndicating Jones' radio and video talk shows and selling products targeted to Jones' loyal fan base via the Internet. Today, FSS produces Alex Jones' syndicated news/talk show (The Alex Jones Show) from Austin, Texas, airs via GCN on over 100 radio stations across the United States and via the internet through the website Infowars.com.

28.     On its Infowars.com website today, FSS makes available to customers dietary supplements ("Supplements"), including Bodease, Krill Oil, Ultimate Fish Oil, DNA Force Plus, Vitamin D3 Gummies, Ultimate Immune Support Pack, Pollen Block, and other health products, including Tea Tree Shampoo. The website also has available books, t-shirts, and other products ("Non-Supplements") Jones advertises during his radio talk show.

29.     The vast majority of FSS revenues comes from the sale of Supplements, which have traditionally been supplied by or contracted for by PQPR, an affiliated entity, described below.

30.     As of July 15, 2022, FSS employs a workforce of 58 individuals, the majority of whom have a direct reporting relationship to Alex Jones. In one building in Austin, Texas, FSS has four studios where online and traditional broadcast production is provided.  The Alex Jones Show and other shows are produced in these studios. An adjacent building contains administrative offices and customer support. In a separate location in Austin, Texas, FSS has a

6

building where warehousing and product sales fulfillment takes place. *David Jones Deposition*, P13.[3] All the buildings and offices are leased.

31.     FSS has a unique audience that is highly loyal to Alex Jones and purchases products based on Alex Jones' credibility. Product sales from Infowars.com stores are a significant source of revenue for FSS. Historically, approximately 80% of FSS' revenue is derived from product sales, of the remainder, 11% is historically from advertising and the balance from a variety of sources. *David Jones Deposition*, P47.

### C.  The Relationship Between Alex Jones and FSS

32.     FSS, as employer, and Alex Jones, as employee, are parties to an Employment Agreement and Accompanying Employee Annuity and Life Insurance Plan, dated April 14, 2022 (the "Jones Employment Agreement").

33.     Under the Jones Employment Agreement, Jones agrees to promote products and services agreed to by the Employer, and permits Alex to use FSS's trademarks, tradenames, intellectual property and web site, including the Infowars website. Jones Employment Agreement, ¶¶ 3, 4.

34.     All of FSS' wages to him are subject to the Employee Annuity And Life Insurance Plan (Employee Annuity Plan), attached to the Jones Employment Agreement. Jones Employment Agreement. Under the Employee Annuity Plan, the employee may designate a portion or all his/her salary to purchase an annuity and life insurance, in amounts determined by the employee, from an insurance company to be selected.  Employees with more than two years of full-time consecutive service with FSS are eligible to participate in the Employee Annuity Plan.

---

[3] Oral and Videotaped Deposition of David R. Jones, May 16, 2019, Eric Lafferty, et. al. v. Alex Emeric Jones, et. al. (Connecticut).

001489

35.     The CRO is continuing to evaluate whether the estate has causes of action to claw back any payments or distributions to Alex Jones.

### D.  The Debtor' Owners and Management

36.     At its formation, Alex Jones and Kelly Jones owned 49% and 51% of the membership interests in FSS.

37.     Alex and Kelly Jones divorced in 2015. Upon their divorce, Jones became the sole owner of FSS.

38.      Since then, Alex Jones has been the Managing Member of FSS.

39.     Since inception, Alex Jones has been a "single talent business", *to wit*, without him and his show, there would neither be any InfoWars nor internet sales. Unfortunately, Jones failed to bring on board the necessary management skills to manage what was once a small family business but had become a $70 to $80 million a year enterprise. Jones and his employees continued to run the business with an inverted T structure, where essentially everyone reported to Alex, as though it was still a family business.

40.     Since May 19, 2022, FSS has retained Schwartz as its Chief Restructuring Officer ("CRO"), with broad powers to review the company's past financial performance, analyze the condition of FSS's books and records and evaluate whether FSS is a business that can be reorganized. SALLC was retained to perform various accounting and forensic work associated with his mandate.

41.     In addition, FSS retained Jeffery Shulse ("Shulse") as FSS' Business Manager. Shulse has been parachuted into FSS's offices in Austin to take over FSS' accounting and financial functions and work with Schwartz and SALLC to (a) implement viable accounting and

8

financial management functions; (b) implement sorely needed internal accounting controls, and (c) establish uniform accounting expense and personnel policies.  With a BBA in accounting from the University of Houston and a J.D. from the University of Houston Law Center, Shulse has over twenty years' experience in providing business, operational and financial consulting to businesses and as a CFO and CEO of businesses in the oil and gas production and construction industries.

42.     The preliminary conclusions reached by me about FSS are:

(a) Although FSS had a controller and two bookkeepers, the 2021 general ledger had not been completed and the books have not been closed, and almost no transactions have been recorded in the 2022 general ledger.  As a result, no financial statements were produced for FSS for the 18 months preceding my engagement. SALLC found no bank reconciliations for 2021 or 2022;

(b)  FSS personnel expressed no criticism of not receiving any financial reports to assist them in managing their functional responsibilities and, in fact, appear to be unaware of the management information available to them from timely prepared and detailed financial statements and analyses;

(c) Internal accounting controls were inadequate, including lack of segregation of duties, written monthly, quarterly, and annual closing schedules, lack of supervisory review of key accounting functions including vendor set up, bank reconciliations, inventory reconciliations, or billings to PQPR Holdings Limited, LLC ("PQPR");

(d) Invoices from PQPR for payment for product it had acquired and sold to FSS were not paid or not paid in full, resulting in a liability to PQPR in excess of $50 million.

001491

### E.  The Relationship of FSS and PQPR

*Background Information About PQPR*

43.     PQPR was founded in 2013. The business began operations in September 2013.

44.     PQPR is engaged in the online sale and marketing of primarily nutritional supplements which it sells under its own label as well as acquiring nutritional supplements for FSS which it markets under its InfoWars label. PQPR also advertises its products exclusively through FSS/The Alex Jones Show for which it receives a bulk discount. PQPR also sells outside the FSS/Alex Jones show channels.

45.     PQPR is managed by David Jones. Alex Jones is not a manager of PQPR.

46.     The current owners and their ownership interests in PQPR are as follows:

|  | % Owned |
|---|---|
| PLJR Holdings | 80.00% |
| JLJR Holdings, LLC | 20.00% |
| Total | 100.00% |

47.     Through AEJ Austin Holdings, LLC, Jones has an effective 72% membership interest in PLJR Holdings, LLC ("PLJR").   Mrs. Carol Jones owns an 80.00% interest in, and Dr. David Jones holds the remaining 20.00% membership interest in JLJR Holdings, LLC ("JLJR").

48.     Alex Jones is not a manager of either PLJR or JLJR.

*Commercial Relationship Between FSS and PQPR*

49.     As discussed previously, FSS sells two groups of products on its Infowarsstore.com website: Supplements and Non-Supplements. The selection of nutritional supplements to be sold is determined by Alex Jones, David Jones, and staff of FSS. Currently, FSS places orders for Supplements with PQPR which then places the order with the original manufacturer.  FSS pays PQPR, as its agent, funds required to purchase product, which then pays

10

the manufacturer and manages the delivery and certification of the products. Pricing of the Supplements is done by FSS.

50.     Non-Supplements consist of "Infowars" merchandise, ranging from T-shirts to silver coins. This group of merchandise is handled solely by FSS employees, starting from the selection of the merchandise, placing of the merchandise on the Infowars website, ordering of and paying for the product.

51.     Alex Jones promotes both the Supplements and Non-Supplements during his daily broadcast and is the principal driving factor promoting the sale of products to his audience.

52.     In the past, PQPR ordered and paid for Supplements which it marked up and then sold to FSS for distribution. As a result of FSS's inability to pay PQPR in full for the PQPR merchandise over several years, FSS became indebted to PQPR in a significant amount by 2020. The parties memorialized the indebtedness between the parties in 2020.

*The Entry into the Secured Notes*

53.     On or about August 13, 2020, FSS and PQPR executed a Promissory Note in the principal amount of $29,588,000.00 made payable to PQPR, which memorialized the accrued obligations of FSS to PQPR through December 31, 2018 (the "2020 Secured Note"). The 2020 Secured Note matures on August 1, 2050, interest is due and payable annually. The 2020 Secured Note bears interest at 1.75%.

54.     The 2020 Secured Note is secured by a Security Agreement entered into as of August 13, 2020, between FSS and PQPR (the "2020 Security Agreement"). The 2020 Security Agreement provides in paragraph II that the "Collateral" securing the repayment of the 2020 Secured Note consists of all personal property owned by FSS.

55.     On November 18, 2020, PQPR filed a UCC-1 Financing Statement with the Texas Secretary of State ("November 18 UCC Financing Statement").

11

56.     On or about November 10, 2021, FSS and PQPR entered into a second Promissory Note in the principal amount of $25,300,000.00 made payable to PQPR, which memorialized the accrued obligations of FSS to PQPR from January 1, 2019 to December 31, 2020 (the "2021 Secured Note"). Principal and interest of $1,939,644.81 is due on each anniversary of the 2021 Secured Note. The 2021 Secured Note bears interest at 1.8% and matures on November 10, 2036.

57.     The 2021 Secured Note is secured by the 2020 Security Agreement and the November 18 UCC Financing Statement.

58.     As of the Petition Date, $53,646,6876.82 of principal and $11,787.16 of interest are owed under the two Secured Notes.

59.     PQPR has been the primary source of Supplements for the Infowars website and has contributed to most of the revenue attributable to FSS. Maintaining access to the Supplement supply, along with Alex Jones being on the air, is critical to the reorganization of FSS.

**F.  FSS Needs a Credit Card Processor**

60.     An essential component of FSS's Infowarsstore.com business with which it could not survive is a credit card processor. Without the ability to process credit card transaction, FSS's business could not operate.  Processing a credit card transaction is a complex process. The process was made more difficult when financial institutions and media sites deplatformed FSS starting in 2018.

61.     Credit card processing refers to a multi-step process necessary to successfully complete payments made with a credit card. Credit card processing involves numerous entities. This includes the consumer, merchant, payment gateway, credit card processor, card network, issuing bank, and acquiring bank.

001494

62.     The key players in credit card processing are:

- **Customer** – the person making a purchase.
- **Merchant** – the person or organization selling a product or service to the customer making a purchase.
- **Payment gateway –** this refers to the technology that connects a merchant to a payment processor. This process involves integrating with card-present (i.e., in-store purchases) and card-not-present (i.e., online purchases) payment environments, obtaining the payment information of customers' transactions, sending these details to a payment processor or merchant bank, and then sending an "approved" or "declined" message to the merchant.
- **Credit card processor –** (or payment processor) this is the organization that helps the merchant, credit card network, and the cardholder's bank communicate. Credit card processors and merchants must comply with the Payment Card Industry Data Security Standard (PCI DSS).
- **Card network –** (also called credit card network or credit card brand) this is the customers' credit card brand, such as Discover, Mastercard, or Visa. These networks must set assessment and interchange fees.
- **Issuing bank –** (also known as the cardholder's bank or consumer bank) this refers to the bank providing customers with their credit card. The issuing bank will determine whether the cardholder's account has the funds to fulfill a transaction. If the account meets these requirements, the issuing bank will release those funds for settlement.
- **Acquiring bank –** (or merchant bank) this is the merchant's bank, which is used for storing its business funds and receiving money from transactions. This type of bank can provide card readers and equipment to merchants, allowing merchants to accept card payments. Acquiring banks can also serve as credit card processors.

63.     In April 2018, FSS had accounts on YouTube, Facebook, Twitter, Periscope, Pinterest, Instagram. *Michael Zimmerman Deposition*[4], P35. FSS also had the ability to access banks and credit card processors without any problems prior to April 2018.

---

[4] Videotaped Oral Deposition of Michael Zimmerman, November 26, 2019, Neil Heslin v. Alex E. Jones (Texas).

13

64.     After the commencement of the Sandy Hook Litigation by the Texas and Connecticut Plaintiffs, FSS and Infowars.com were de-platformed from many important internet, social media, and other financial transaction accounts.

65.     Customers utilize credit or debit cards to purchase merchandise on the Infowarsstore.com website. FSS had to locate a credit card processor and a bank that would do business with it, after FSS was shunned by financial institutions and deplatformed on media sites starting in 2018.

66.     FSS entered into an agreement with a company as of October 1, 2021, to provide credit card processing for FSS.  A third-party processor receives payments from the credit card companies. The company receives credit card receipt proceeds and based on information provided by FSS and PQPR, including which entity owns the inventory that was sold, allocates funds between FSS and PQPR and transfers the amounts allocated to FSS and PQPR's respective banks. This process occurs every federally recognized business day.

67.     FSS pays the company a fee of 4% of the total amount of all credit card charges processed under the agreement and reimbursement of all costs incurred, including all credit card processing charges incurred in processing FSS' credit card charges.

68.     In addition to the fee, the agreement provided that the company withhold from FSS' net receipts $11,000.00 per business day and remit that amount to PQPR to pay principal and interest on the promissory notes executed by FSS in favor of PQPR.

69.     In a forbearance agreement entered into prior to the Petition Date, the parties agreed to reduce the amount being withheld from FSS' net receipts to $2,500.00 per business day for the thirty days following July 12, 2022, when the payment increases to $5,500.00 per business day for an additional thirty days, at which time the payment increases to $11,000.00 per day.

001496

70.     The forbearance agreement also provides that FSS will receive 20% of the proceeds of all sales of products purchased by PQPR (with PQPR receiving 80%) of such proceeds.  In turn, PQPR will receive 10% of the proceeds of all sales of products purchased by FSS (with FSS receiving 90%).  This split was to reimburse the respective parties for setting up supply chains, obtaining required governmental certifications, negotiating with vendors, procuring and paying for product, and overhead.

**G.  Sandy Hook and Litigation Resulting Therefrom**

71.     The Debtors' financial distress stems from statements made by Alex Jones and other employees of FSS in the wake of the December 14, 2012, mass shooting at Sandy Hook Elementary School in which 20 children and 6 educators were killed by Adam Lanza. Certain parents of the deceased victims of the Sandy Hook shooting assert, among other things, that these statements were defamatory and inflicted emotional distress.

72.     The crux of the allegations in these lawsuits are that Alex Jones and FSS employees said or implied that the Sandy Hook massacre did not happen and that the parents were participants in a conspiracy against the public.

73.     In 2018, certain aggrieved parties (the "Texas Plaintiffs") commenced state-court actions against one or more of the Debtors styled as: ***(a)*** *Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Owen Shroyer*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas; ***(b)*** *Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas; ***(c)*** *Leonard Pozner and Veronique De La Rosa v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-18-001842, in the 345th District Court of Travis County, Texas; ***(d)*** *Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC,*

001497

*and Kit Daniels*, Cause No. D-1-GN-18-001605 in the 459th District Court for Travis County,

Texas; and **_(e)_** *Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, Marcel*

*Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, PQPR Holdings Limited*

*LLC, JLJR Holdings, LLC, PLJR Holdings, LLC, Carol Jones, David Jones, PQPR Holdings,*

*LLC, JLJR Holdings Limited, LLC, AEJ Holdings, LLC, AEJ Trust 2018*, Cause No. D-1-GN-

22-001610, in the 200th District Court for Travis County (collectively, as may have been

consolidated, the "Texas State Court Litigation").

74.     These two actions: **_(a)_** *Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech*

*Systems, LLC, and Owen Shroyer*, Cause No. D-1-GN-18-001835, in the 261st District Court of

Travis County, Texas; **_(b)_** *Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems,*

*LLC*, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas (the

"Heslin/Lewis Suit") have been consolidated. Judge Maya Gamble is presently conducting a trial

of the Heslin/Lewis Suit.

75.     As a result of the filing of FSS' bankruptcy, the Texas State Court Litigation has

been stayed by the automatic stay provision of the Bankruptcy Code.

76.     In 2018, certain other parties (the "Connecticut Plaintiffs") brought actions in

Connecticut styled:

- *Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046436-S in the Superior Court of Connecticut, Waterbury Division;

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046437-S in the Superior Court of Connecticut, Waterbury Division;

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046438-S in the Superior Court of Connecticut, Waterbury Division (collectively, the "<u>Connecticut State Court Litigation</u>" together with the Texas State Court Litigation are hereinafter referred to as the "<u>Sandy Hook Lawsuits</u>").

77.     As a result of the filing of FSS' bankruptcy, the Connecticut State Court Litigation has been stayed by the automatic stay provision of the Bankruptcy Code.

78.     Jones, FSS, and the Debtors have spent more than $15.0 million in legal fees and costs since commencement of the Sandy Hook Lawsuits.

79.     Despite the substantial amount spent, both the Texas and Connecticut courts have imposed multiple sanctions and ruled that Jones and FSS have failed to comply with discovery requirements such that judgment on liability has been entered against them by default.

80.     <u>InfoW</u>, LLC f/k/a Infowars, LLC ("<u>InfoW</u>" and together with its affiliate debtors IWHealth, LLC and Prison Planet tv, Ltd., the "<u>InfoWDebtors</u>"), filed a voluntary petition for chapter 11 bankruptcy relief in the U.S. Bankruptcy Court for the Southern District of Texas, Victoria Division (the "<u>Bankruptcy Court</u>"), on April 18, 2022 (the "<u>Petition Date</u>"), initiating Case No. 22-60020 in that court (the "<u>Bankruptcy Case</u>").

81.     The purpose of the Bankruptcy Case was to provide a mechanism to efficiently determine and pay *all* claims against the InfoWDebtors and joint tortfeasors in full. To support this, the equity of the InfoWDebtors was assigned to the Liquidation Settlement Trust (for the benefit of the Plaintiffs[5] and others) prior to the Petition Date, and the InfoWDebtors, with separate counsel and financial advisors, negotiated the Plan Support Agreement

17

82.     Among other things, the Plan Support Agreement obligated Jones and FSS (together with Jones, the "Third-Party Funding Contributors") to fund $10.0 million to pay litigation claimants. The total consideration would have been more than $500,000 per litigation claimant. Additional consideration may have been negotiated over the course of the InfoWDebtors' Bankruptcy Case

83.     Prior to the Petition Date of the InfoWDebtors' bankruptcy cases, the InfoWDebtors' and the Third-Party Funding Contributors incurred and paid more than $15.0 million in legal costs. The savings from liquidating the claims in a central forum were essential to the administration of the InfoWDebtors' bankruptcy estates and ultimately paying creditors in full. Absent centralized administration—which may include determination by a jury—the funds available would have been  cannibalized in successive trials over a five-month period.

84.     Rather than negotiate with the InfoWDebtors and the Third-Party Funding Contributors, the Plaintiffs first sought to dismiss the InfoWDebtors' Bankruptcy Case, and, then abruptly, even though Plaintiffs had sued InfoW four years ago, dismissed with prejudice InfoW and, where relevant, the other two debtors within 2 months of the Petition Date.

85.      The primary goal of InfoWDebtors in the Bankruptcy Case was to engage the Plaintiffs in a global settlement. While unable to achieve that goal, the Bankruptcy Case resulted in the dismissal with prejudice of all claims against InfoW, IW Health and Prison Planet from any and all claims held by the Plaintiffs.

### H.  Current Financial Condition of Debtor

86.     Attached hereto as **Exhibit "A"** is a comparative Profit and Loss Statement for FSS for the period January 1, 2022, through May 31, 2022 and the year ended December 31, 2021.

87.     Attached hereto as **Exhibit "B"** is a comparative Balance Sheet of FSS as of May 31, 2022 and December 31, 2021.

88.     Attached hereto as **Exhibit "C"** is a comparative Cash Flow Statement for FSS for the period January 1, 2022, through May 31, 2022 and the year ended December 31, 2021.

## I.     Critical Motions to Commence the Chapter 11 Case

### First Day Motions

89.     Contemporaneously herewith, the Debtor has filed a number of First Day Motions seeking orders granting various forms of relief intended to stabilize the Debtor's business operations and facilitate the efficient administration of the Chapter 11 Case. The First Day Motions include the following:

- **Schedules and Statements Extension Motion**. *Debtor's Motion Seeking Entry of an Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs, and (II) Granting Related Relief.*

- **Cash Collateral Motion**. *Debtor's Emergency Motion For An Interim And Final Order (I) Authorizing The Use Of Cash Collateral Pursuant To Sections 105, 361, and 363 of The Bankruptcy Code and Federal Rule Of Bankruptcy Procedure 4001(B), And (II) Granting Adequate Protection To The Pre-Petition Secured Lender.*

001501

- **Critical Vendors Motion**. *Debtor's Motion for an Order (A) Authorizing The Debtor To Pay Prepetition Obligations Of Certain Critical Vendors, And (B) Granting Related Relief.*

- **Utilities Motion**. *Debtor's Emergency Motion For Entry Of An Order: (I) Approving Debtor's Proposed Form Of Adequate Assurance Of Payment For Future Utility Services; (II) Approving Adequate Assurance Procedures; Prohibiting Utility Providers From Altering, Refusing Or Discontinuing Service; And (Iv) Granting Related Relief.*

- **Relief from Stay Motion**. *Debtor's Emergency Motion For An Order Modifying The Automatic Stay To Allow The Heslin/Lewis State Court Suit To Continue To Judgement.*

90.     The First Day Motions seek authority to, among other things, obtain authority to use cash collateral of PQPR to operate the business of FSS in the ordinary course, including maintaining the studios for Jones to produce his shows, purchase critically needed Supplements and operate the sale business of merchandise sales from the InfowarsStore.com website, pay claims of certain vendors and suppliers to ensure that the Debtor's business operations are not disrupted by the Chapter 11 Case, provide payments and protection to various utilities to assure that they provide essential services to the Debtor, and grant the Texas Plaintiffs relief from the automatic stay provision of 11 U.S.C § 362(a) so as to permit the Heslin\Lewis Suit to continue to judgment uninterrupted by the automatic stay.

91.     The Debtor has tailored its requests for immediate relief to those circumstances where the failure to receive such relief would cause immediate and irreparable harm to the Debtor and its estate. An immediate and orderly transition into chapter 11 is critical to the viability of the Debtor's operations and any delay in grating the relief described in the First Day Motions

001502

could hinder the Debtor's operations and cause irreparable harm. The failure to receive the requested relief during the first twenty-one (21) days of the Chapter 11 Case would severely disrupt the Debtor's operations at this important juncture.

92.    I am familiar with the content and substance contained in each First Day Motion and believe that the relief sought in each motion (a) is necessary to enable the Debtor to operate in chapter 11 with minimal disruption or loss of productivity and value, (b) constitutes a critical element of the Debtor's successful reorganization, and (c) best serves the Debtor's estate. I have reviewed each of the First Day Motions. If asked to testify as to the facts supporting each of the First Day Motions, I would testify to the facts as set forth in such motions, as further described below.

## **Procedural Motion**

93.    **Schedules and Statements Extension Motion**. The Debtor seeks entry of an order (a) extending the deadline by which the Debtor must file its schedule of assets and liabilities, schedules of current income and expenditures, schedule of executory contracts and unexpired leases and statement of financial affairs by an additional 14 days for a total of 29 days from the Petition Date, without prejudice to the Debtor's ability to request additional extensions.

94.    Schwartz, Shulse and SALLC have literally been drinking from a firehose since their retention. While they have accomplished much, the company continues to face issues on a daily basis that requires emergency, urgent and immediate attention from this group. Furthermore, locating accurate financial records is a tedious task at FSS, as the record keeping for orders, invoices, expense reports, American Express charge reports are not well-organized. All other records on the computer system also require additional time to retrieve.

95.    Given the complexity of the Debtor's business and financial affairs, and the critical matters that the Debtor's management and professionals were required to address prior

to Petition Date, the Debtor was not able to complete the Schedules and Statements as of the Petition Date.

96.      I believe that the relief requested in the Schedules and Statements Extension Moton is in the best interest of the Debtor's estate, its creditors, and all other parties in interest and will facilitate the Debtor's ability to operate its business in chapter 11 without disruption.

### **Operational Motions**

97.      **Cash Collateral Motion**[6]. The Debtor must have access to and use of cash collateral to operate its business. Prior to the Petition Date, FSS and PQPR engaged in extensive and difficult negotiations over the use of cash collateral. The negotiations were complicated by PQPR's significant and important commercial role with FSS. PQPR acts as a lender, provides Supplements and handles essential accounting and revenue division functions for FSS' business.

98.      The Debtor requires the use of cash collateral to purchase Supplements and Non-Supplements to sell on its Infowarsstore.com website,  pay reasonable and necessary operating expenses, including, but not limited to, employee payroll, rent, utilities, lease payments, marketing, taxes, and insurance. Without use of cash collateral, FSS could not operate its business, pay its employees and operate the studios where Alex Jones produces his shows.

99.      Working with Alex Jones, PQPR, FSS employees, Shulse and SALLC, I have developed a 13-Week Cash Flow Forecast showing the Sources and Uses of Cash for FSS commencing as of July 30, 2022. A true and correct copy of the 13-Week Cash Flow Forecast is attached hereto as **Exhibit "D"**. Based on the assumptions made in the forecast, I project that FSS will operate with a positive ending cash balance at the conclusion of the 13-week period.

---

[6] The Debtor is in possession of certain funds which are not proceeds of PQPR's collateral.  Accordingly, the Debtor does not concede that those funds constitute cash collateral of PQPR.  Nevertheless, net proceeds received by the Debtor from online merchandise sales including PQPR products are PQPR's cash collateral.

001504

100.     The use of cash collateral required in the next fourteen (14) days from the Petition Date is also set forth on the budgets attached hereto as **Exhibit D**. The Debtor's proposed emergency use of cash collateral is necessary to preserve the value of the Debtor's estate for the benefit of all creditors, including the PQPR, during the first fourteen (14) days of the Chapter 11 Case (the "Interim Period").

101.     The Debtor's proposed offer of adequate protection on an interim basis is set forth in the proposed Interim Cash Collateral Order. It includes replacement liens solely to the extent of any validly perfected, unavoidable security interest as of the Petition Date, and a priority administrative claim to the extent of the diminution of value of PQPR's collateral, if any. As described further in the proposed Interim Cash Collateral Order, the proposed replacement liens and priority administrative claim shall be subject to a carve-out for unpaid fees owed to the clerk of this Court or the United States Trustee, if any, and court-approved administrative expense claims of estate professionals.

102.     PQPR and FSS have engaged in extensive negotiations over a protracted duration to arrive at the interim agreement, which the parties will further negotiate into a final agreement. Due to FSS's affiliation with Alex Jones, the CRO made a decision that time was best spent negotiating the most favorable use of cash collateral agreement with PQPR rather than seeking any alternative third-party lender or source of capital to operate FSS.

103.     Without access to the use of cash collateral of PQPR, FSS could not retain the employees to produce The Alex Jones Show, purchase critically needed inventory to sell on the Infowarsstore.com website and to operate its fulfillment business once a customer makes a purchase.

104.     **Critical Vendors Motion.** The Debtor seeks entry of interim and final orders authorizing, but not directing, the Debtor to pay, in the ordinary course of business, prepetition

001505

amounts owing on account of claims of critical vendors identified on Schedule "1" to the Critical Vendors Motion (collectively, the "Critical Vendors") in an amount not to exceed $359,544.62. In addition, the Debtor requests that the Court schedule a final hearing in approximately twenty-one (21) days after the entry of an interim order, or as soon thereafter as is convenient for the Court, to consider approval of the Critical Vendors Motion on a final basis.

105.    After an extensive review and analysis of the Debtor's vendors, the Debtor and its professionals identified the vendors that supply products and services vital to the Debtor's continued operation. The Debtor relies on products and services from its Critical Vendors to operate its business, and, depend on the timely provision of specialized services to provide top-quality content and services to its customer base.

106.    The Critical Vendors procure and provide key services to producing and transmitting The Alex Jones Show. The Critical Vendors are instrumental in the timely fulfillment of Supplement or Non-Supplements to the customer base. If they fail to provide their mission-critical goods and services, the business of FSS would grind to a halt.

107.    I understand that the Debtor's trade relationship with its Critical Vendors is not governed by long-term contracts, and the Debtor believes those trade relationships will deteriorate, causing disruption to the Debtor's operations if the Debtor is unable to pay Critical Vendors. Accordingly, payment of the Critical Vendors is essential to avoid costly interruption and disturbances to the Debtor's business during the Chapter 11 Case.

108.    Subject to Court's approval, I understand the Debtor intends to pay Critical Vendors only to the extent necessary to preserve its business. The Debtor's CRO will review, assess, and make payment on account of these claims. In return for paying these claims, the Debtor will use commercially reasonable efforts to condition payment of Critical Vendors upon each claimant's agreement to continue supplying goods and services to the Debtor in accordance

with trade terms (including credit limits, discounts, pricing, timing of payments, availability, and other terms) consistent with the parties' ordinary course practice or as otherwise agreed by the Debtor in its reasonable business judgement.

109. I believe that the relief requested in the Critical Vendors Motion is in the best interest of the Debtor's estate, its creditors and all other parties in interest and will facilitate the Debtor's ability to operate its business in chapter 11 without disruption.

110. **Utilities Motion**. The Debtors seeks entry of an order (a) approving the Debtor's proposed adequate assurance of payment for future utility services under section 366 of the Bankruptcy Code, (b) prohibiting the utility providers from altering, refusing, or discontinuing services, (c) approving the Debtor's propose adequate assurance procedures, and, (d) granting related relief.

111. In connection with the operation of its business, the Debtor obtains electricity, telecommunications and other similar services from a number of utility providers or brokers. Uninterrupted utility services are essential to the Debtor's ongoing business operations and the overall success of the Chapter 11 Case. The utility services are essential for the Debtor to maintain its business and to operate its corporate offices and essential for daily operations. The studios and warehouse in Austin, Texas require electricity, telecommunications, internet, and other utility services to operate. Should any utility provider refuse or discontinue service, even for a brief period, the Debtor's business operations would be needlessly disrupted.

112. To the best of Debtor's knowledge, there are no defaults or arrearages with respect to the undisputed invoices for prepetition utility services.

**Proposed Adequate Assurance**

113. The Debtor intends to pay post-petition obligations owed to the Utility Providers in a timely manner. Cash held by the Debtor and cash generated in the ordinary course of

business will provide sufficient liquidity to pay the Debtor's Utility Service obligations in accordance with its prepetition practice.

114.    The Debtor submits that the Debtor's ability to pay for future utility services with cash on hand in accordance with its prepetition practices (the "Proposed Adequate Assurance") constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of Bankruptcy Code section 366.

### *Adequate Assurance Procedures*

115.    Any Utility Provider that is not satisfied with the Proposed Adequate Assurance may make a request for additional or different adequate assurance of future payment (each an "Additional Assurance Request") pursuant to the adequate assurance procedures set forth in the proposed Order (the "Adequate Assurance Procedures").

116.    The proposed Adequate Assurance Procedures are as follows:

Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments or otherwise must serve an Additional Assurance Request on the Notice Parties (as defined in the Order). An Additional Assurance Request may be made at any time.

Any Additional Assurance Request must: (i) be in writing; (ii) identify the location for which the Utility Services are provided; (iii) summarize the Debtor's payment history relevant to the affected account(s), including any security deposits; and (iv) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

Upon the Debtor's receipt of any Additional Assurance Request, the Debtor shall promptly negotiate with such Utility Provider to resolve such Utility Provider's Additional Assurance Request.

The Debtor may, without further order from the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and the Debtor may, in connection with any such agreement, provide such Utility Provider with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments or other forms of security if the Debtor believes that such adequate assurance is reasonable in its business judgment, subject to the terms of any cash collateral or other financing order entered by the Court; provided, however, that the Debtor shall maintain a summary

001508

record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in this chapter 11 case and the U.S. Trustee upon request.

If the Debtor and the Utility Provider are not able to reach an alternative resolution within 14 days of receipt of the Additional Assurance Request, the Debtor will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing"), pursuant to Bankruptcy Code section 366(c)(3). Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing, or discontinuing Utility Services to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

In addition, if an amount relating to Utility Services provided post-petition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request additional adequate assurance pursuant to the Adequate Assurance Procedures.

The Adequate Assurance Procedures sets forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtor to continue its business operations uninterrupted. More specifically, the Adequate Assurance Procedures permits a Utility Provider to object to the Proposed Adequate Assurance by filing and serving an Additional Assurance Request upon certain notice parties. The Debtor, in its discretion, may then resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court. If the Additional Assurance Request cannot be resolved by mutual agreement, the Debtor may seek Court resolution of the Additional Assurance Request. Unless and until a Utility Provider files an objection or serves an Additional Assurance Request, such Utility Provider shall be: (i) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with Bankruptcy Code section 366; and (ii) forbidden to discontinue, alter or refuse services to, or discriminate against, the Debtor on account of any unpaid prepetition

27

charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

117.     I believe that the relief requested in the Utilities Motion is in the best interest of the Debtor's estate, its creditors, and all other parties in interest and will facilitate the Debtor's ability to operate its businesses in chapter 11 without disruption.

118.     **Heslin/Lewis Relief from Stay Motion.** Plaintiffs in Texas and Connecticut have commenced suits against Alex Jones and FSS relating to certain statement made by Jones regarding the Sandy Hook shooting. Two of the Texas State Court Suits—*Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Owen Shroyer*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas and *Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas—have been consolidated as the Heslin/Lewis Suit.  Judge Maya Guerra Gamble, 459th Civil District Court, Travis County (the "Texas State Court") is presiding over the Heslin/Lewis Suit.

119.     The trial of the Heslin/Lewis Suit was ongoing as of the Petition Date. On July 25, 2022, the Texas State Court held *voir dire* of jurors and a jury was empaneled. The Texas State Court began taking evidence in the Heslin/Lewis Suit on July 26, 2022. As the result of the filing of the Debtor's petition for chapter 11 relief, the Heslin/Lewis Suit is stayed by Bankruptcy Code section 362.

120.     The Debtor believes that it is in the best interests of its estate and creditors for the Heslin/Lewis Suit to continue to judgement notwithstanding the commencement of this Chapter 11 Case. Substantial resources of the Debtor and Plaintiffs Heslin and Lewis have already been expended in the Heslin/Lewis Suit to empanel a jury and present evidence to that jury. Based on representations made by counsel for Heslin and Lewis in the Bankruptcy Case of InfoW, LLC

previously before this Court, the Debtor believes that Heslin and Lewis desire a final judgment from the Texas State Court and would seek relief from the automatic stay absent this request by the Debtor.[7]

121.    The Debtor seeks emergency consideration of this Motion on or before 8:30 a.m. on August 1, 2022, or as soon thereafter as the Court's schedule will allow. A jury has been empaneled and trial is underway in the Heslin/Lewis Suit, scheduled to continue at 9:00 a.m. on Monday, August 1, 2022. Emergency relief is necessary to prevent delay in the Heslin/Lewis Suit to the detriment of the Debtor, Plaintiffs Heslin and Lewis, and the members of the jury serving in the Heslin/Lewis Suit.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of July, 2022.

W. Marc Schwartz, as Chief Restructuring Officer of Free Speech Systems, LLC

---

[7] In the InfoW, LLC chapter 11 case, counsel for the Texas Plaintiffs indicated at the April 22, 2022, hearing that the Texas Plaintiffs would be seeking relief from the automatic stay to continue litigation. According to counsel for the Texas Plaintiffs, the "cases are every bit as much about having a determination final made for them, them having their day in court in which Mr.Jones is held accountable for his conduct. So it's not just about a liquidating claims procedure, it is very emotional." *In re InfoW, LLC*, Case No. 22-60020 (Bankr. S.D. Tex.) [ECF No. 39] at 73:8-12.

29

001511

Exhibit "A"

Comparative Profit and Loss Statement for FSS for the period January 1, 2022,
through May 31, 2022 and the year ended December 31, 202.

**Exhibit A**

---

**Free Speech Systems LLC**
**Comparative Profit and Loss Statement**
**For the Year Ended December 31, 2021 and the Five Months Ended May 31, 2021**

| | 2021 | 2022 |
|---|---|---|
| **Income** | | |
| Product Sales | $ 52,661,022.49 | $ 10,969,769.29 |
| Advertising Income | 5,761,997.51 | - |
| Donations | 710,154.12 | 2,876,213.86 |
| Fulfillment Services | 3,533,223.00 | - |
| Administrative Services | 1,903,898.95 | - |
| Media Production Sales | - | 475,000.00 |
| Infowars Health | 38,123.60 | - |
| Prison Planet | 4,877.62 | - |
| Uncategorized Income | 357,344.56 | - |
| *Total Income* | *64,970,641.85* | *14,320,983.15* |
| Cost of Goods Sold | 51,878,333.73 | 4,936,453.79 |
| *Gross Profit* | *$ 13,092,308.12* | *$ 9,384,529.36* |
| **Expenses** | | |
| Advertising & Promotion | 364,387.73 | 107,994.01 |
| Computer/IT/IP Expense | 5,036,717.02 | 1,307,339.15 |
| Insurance Expense | 54,558.40 | 31,898.90 |
| Office & Administrative Expense | 277,863.76 | 26,373.93 |
| Contract Services | 1,591,039.49 | 359,592.69 |
| Professional Fees | 4,126,906.48 | 1,623,771.42 |
| Occupancy | 1,624,864.40 | 345,602.34 |
| Utilities | 115,461.34 | 127,855.13 |
| Taxes Paid | 50,281.71 | 4,409.71 |
| Telephone Expense | 304,776.62 | 85,341.24 |
| Personnel & Payroll Expenses | 6,879,811.39 | 2,157,298.60 |
| Travel | 975,711.28 | 64,900.23 |
| Equipment Purchase | 123,696.05 | - |
| Production | 393,712.54 | - |
| Radio Show | 145,177.77 | - |
| Royalties | 1,197,472.71 | - |
| Equipment Rental | 27,322.86 | - |
| Meals and Entertainment | 97,486.31 | - |
| Uncategorized Expense | - | 103,815.00 |
| *Total Expenses* | *23,387,247.86* | *6,346,192.35* |
| **Net Operating Income** | *$ (10,294,939.74)* | *$ 3,038,337.01* |
| **Other Income** | **507,168.04** | **1,019,713.81** |
| **Other Expenses** | 18,963.30 | 206.15 |
| Interest Expense | 857,498.17 | 397,669.19 |
| Donation | 10,000.00 | - |
| Amortization Expense | 35,361.28 | 5,937.50 |
| Depreciation Expense | 209,888.00 | 98,750.20 |
| AMEX Charges | - | 1,653,383.31 |
| *Total Other Expenses* | *1,131,710.75* | *2,155,946.35* |
| *Net Other Income* | *(624,542.71)* | *(1,136,232.54)* |
| **Net Income** | *$ (10,919,482.45)* | *$ 1,902,104.47* |

001513

Exhibit "B"

Comparative Balance Sheet of FSS as of May 31, 2022 and December 31, 2021.

**Exhibit B**

| | | |
|---|---|---|
| **Free Speech Systems LLC** | | |
| **Comparative Balance Sheet** | | |
| **As of December 31, 2021 and May 31, 2022** | | |

| | 2021 | 2022 |
|---|---|---|
| **Assets** | | |
| **Current Assets** | | |
| Cash | $ 1,508,720.21 | $ 1,159,247.90 |
| Accounts Receivable | 10,187,121.95 | 10,013,413.22 |
| **Other Current Assets** | | |
| Invenotry | 1,732,603.13 | 910,116.84 |
| Prepaid Expenses | 446,475.64 | 114,136.99 |
| Due from PQPR | (500.00) | - |
| Advance To Elevated Solutions | 27,870.00 | - |
| *Total Other Current Assets* | *2,206,448.77* | *1,024,253.83* |
| *Total Current Assets* | *13,902,290.93* | *12,196,914.95* |
| **Fixed Assets** | 1,679,438.66 | 1,580,779.46 |
| **Other Assets** | | |
| Intangible Assets | 21,270.83 | 15,333.33 |
| Security Deposits | 534,560.00 | 534,560.00 |
| *Total Other Assets* | *555,830.83* | *549,893.33* |
| *Total Assets* | *$ 16,137,560.42* | *$ 14,327,587.74* |
| **Liabilities and Equity** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| Accounts Payable | $ 4,732,966.89 | $ 1,217,685.58 |
| Credit Cards | 152,367.42 | 207,984.04 |
| **Other Current Liabilities** | | |
| David Jones Advance | 150,000.00 | 150,000.00 |
| Advances from PQPR | - | 571,920.57 |
| Due to PQPR | 23,058,367.00 | 23,058,367.00 |
| *Total Other Current Liabilities* | *23,208,367.00* | *23,780,287.57* |
| *Total Current Liabilities* | *28,093,701.31* | *25,205,957.19* |
| **Long Term Liabilities** | | |
| Note Due to PQPR | 54,580,405.22 | 53,845,074.41 |
| Note Payable - Winnebago | 93,505.62 | 82,524.37 |
| *Total Long Term Liabilities* | *54,673,910.84* | *53,927,598.78* |
| *Total Liabilities* | *$ 82,767,612.15* | *$ 79,133,555.97* |
| **Equity** | | |
| Member's Equity | (774,291.44) | - |
| Member Draws | (61,937,862.26) | (254,014.00) |
| Member Contributions | 4,305,810.14 | 311,350.00 |
| Opening Balance Equity | - | (66,765,408.70) |
| Retained Earnings | 2,695,774.28 | |
| Net Income | (10,919,482.45) | 1,902,104.47 |
| *Total Equity* | *$ (66,630,051.73)* | *$ (64,805,968.23)* |
| *Total Liabilities and Equity* | *$ 16,137,560.42* | *$ 14,327,587.74* |

001515

Exhibit "C"

Comparative Cash Flow Statement for FSS for the period January 1, 2022, through May 31, 2022 and the year ended December 31, 2021.

**Exhibit C**

<table>
<tr><td colspan="3" align="center">Free Speech Systems, LLC<br>Statement of Cash Flows<br><br>For the Year Ended December 31, 2021 and the Five Months Ended May 31, 2022</td></tr>
</table>

| | 2021 | 2022 |
|---|---|---|
| **Operating Activities** | | |
| *Net Income* | **($10,919,482.45)** | ***$1,902,104.47*** |
| *Adjustments to reconcile Net Income to Net Cash provided by operations:* | - | - |
| 11000 Accounts Receivable | (10,187,121.95) | 173,708.73 |
| 12000 Inventory | (94,344.61) | 822,486.29 |
| 13000 Prepaid Expenses:13010 Prepaid Insurance | - | - |
| 13000 Prepaid Expenses:13020 Prepaid Software Licenses | - | - |
| Pre-paid Vendor Deposits | - | - |
| 13000 Prepaid Expenses:13040 Prepaid Legal | - | - |
| 13000 Prepaid Expenses:13070 Other Prepaid Expenses | - | - |
| Advance To Elevated Solutions | - | - |
| Prepaid Expenses | (403,821.24) | 65,286.20 |
| Accumulated Depreciation | 209,887.99 | 98,750.20 |
| Accumulated Amortization | 35,361.29 | 2,708.35 |
| 20000 Accounts Payable | 3,005,707.55 | (3,410,484.85) |
| 22000 Credit Card Payable | (236,394.79) | 207,984.04 |
| Advances from PQPR | - | 571,920.57 |
| David Jones Advance | 150,000.00 | - |
| Due to PQPR | (2,229,789.04) | - |
| Interest Payable - PQPR | (200,022.99) | - |
| *Net cash provided by operating activities* | **($20,870,020.24)** | ***$434,464.00*** |
| **Investing Activities** | - | - |
| 15000 Property and Equipment | (522,121.65) | (91.00) |
| 17100 Security Deposits | (500,000.00) | - |
| 17300 Intangible Assets | (5,500.00) | 3,229.15 |
| *Net cash provided by investing activities* | **($1,027,621.65)** | ***$3,138.15*** |
| **Financing Activities** | | |
| 27000 Note Due to PQPR:2021/11/10 $25,300,000 Note | 24,992,405.22 | (735,330.81) |
| Note Payable - Winnebago | (18,832.81) | (10,981.25) |
| 31000 Opening Balance Equity | - | - |
| Member's Equity | (23,193.36) | (98,098.40) |
| 33000 Distributions to Member:33100 Member Draws | - | - |
| 33000 Distributions to Member:Owner investments | - | - |
| Net Member Distributions | (2,100,362.40) | 57,336.00 |
| *Net cash provided by financing activities* | **22,850,016.65** | ***(787,074.46)*** |
| *Net cash increase for period* | **$952,374.76** | ***($349,472.31)*** |

Exhibit "D"


13-Week Cash Flow Forecast for FSS

**Exhibit D**

001519

**Free Speech Systems LLC**
**Forecasted 13 Week Cash Flow Budget**
Between July 30, 2022 and October 28, 2022

Period / Week Number:
1: 07/30/2022-08/05/2022; 2: 08/06/2022-08/12/2022; 3: 08/13/2022-08/19/2022; 4: 08/20/2022-08/26/2022; 5: 08/27/2022-09/02/2022; 6: 09/03/2022-09/09/2022; 7: 09/10/2022-09/16/2022; 8: 09/17/2022-09/23/2022; 9: 09/24/2022-09/30/2022; 10: 10/01/2022-10/07/2022; 11: 10/08/2022-10/14/2022; 12: 10/15/2022-10/21/2022; 13: 10/22/2022-10/28/2022

| Line | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | |
| Product Sales | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 7,741,357.16 |
| Advertising | | | | 480,166.46 | | | | 480,166.46 | | | | 480,166.46 | | 1,440,499.38 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 40,836.21 |
| **Total Income** | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 9,222,690.75 |
| **Selling & Product Costs** | | | | | | | | | | | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (990,017.27) |
| Repay PQPR Inventory | | (250,000.00) | | (500,000.00) | | | | | | | | | | (750,000.00) |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (348,361.07) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (102,853.59) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (1,238,617.15) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (309,654.29) |
| eCommerce Store Maintenance | (27,270.00) | | | | (27,270.00) | | | | (27,270.00) | | | | | (81,810.00) |
| Texas Sales Tax | (5,337.87) | | | | (5,337.87) | | | | (5,337.87) | | | | | (16,013.61) |
| **Total Cost of Goods Sold** | (262,569.67) | (479,961.80) | (229,961.80) | (729,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (229,961.80) | (3,837,326.97) |
| **Operating Expenses** | | | | | | | | | | | | | | |
| **Advertising & Promotion** | | | | | | | | | | | | | | |
| Advertising & Promotion | (3,041.98) | | | | (3,041.98) | | | | (3,041.98) | | | | | (9,125.93) |
| Print Media | (3,000.00) | | | | (3,000.00) | | | | (3,000.00) | | | | | (9,000.00) |
| Radio Show Advertising | (11,500.00) | | | | (11,500.00) | | | | (11,500.00) | | | | | (34,500.00) |
| **Total Advertising & Promotion** | (17,541.98) | | | | (17,541.98) | | | | (17,541.98) | | | | | (52,625.93) |
| **Computer/IT/IP Expense** | | | | | | | | | | | | | | |
| Internet & TV services | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | | (11,073.89) |
| Software License Fees | (140.80) | | | | (140.80) | | | | (140.80) | | | | | (422.40) |
| Server Hosting Service | (28,595.13) | | | | (28,595.13) | | | | (28,595.13) | | | | | (85,785.40) |
| CDN Video Cloud Storage | (55,728.00) | | | | (55,728.00) | | | | (55,728.00) | | | | | (167,184.00) |
| Satellite Service | (137,282.93) | | | | (137,282.93) | | | | (137,282.93) | | | | | (411,848.78) |
| Imaging License Fee | (9,201.25) | | | | (9,201.25) | | | | (9,201.25) | | | | | (27,603.75) |
| Software & Apps | (5,000.00) | | | | (5,000.00) | | | | (5,000.00) | | | | | (15,000.00) |
| Website Hosting | | | (266.50) | | | | (266.50) | | | | (266.50) | | | (799.50) |
| **Total Computer/IT/IP Expense** | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | | (719,717.72) |
| **Office & Administrative Expense** | | | | | | | | | | | | | | |
| Insurance | (2,166.50) | | | | (2,166.50) | | | | (2,166.50) | | | | | (6,499.50) |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (596.74) |
| Equipment Rental | (1,989.90) | | | | (1,989.90) | | | | (1,989.90) | | | | | (5,369.69) |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (27.31) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (3,645.97) |
| **Total Office & Administrative Expense** | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (328.46) | (10,239.71) |
| Outsourced Services | (45,980.00) | | | | (45,980.00) | | | | (45,980.00) | | | | | (137,940.00) |
| Consulting Services | (22,670.00) | | (12,000.00) | | (22,670.00) | | (12,000.00) | | (22,670.00) | | (12,000.00) | | | (104,010.00) |
| **Utilities** | | | | | | | | | | | | | | |
| Electricity | | | (5,107.63) | | | | (5,107.63) | | | | (5,107.63) | | | (15,322.89) |
| HVAC | (256.19) | | | | (256.19) | | | | (256.19) | | | | | (768.58) |
| CAM Charges | (20,364.16) | | | | (20,364.16) | | | | (20,364.16) | | | | | (61,092.48) |
| Water & Sewer | (1,708.55) | | | | (1,708.55) | | | | (1,708.55) | | | | | (5,125.66) |
| Gas Service | (132.09) | | | | (132.09) | | | | (132.09) | | | | | (396.28) |
| Pest Control | (244.65) | | | | (244.65) | | | | (244.65) | | | | | (733.95) |
| Waste Management | (351.81) | | | | (351.81) | | | | (351.81) | | | | | (1,055.43) |
| **Total Utilities** | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | | (84,495.27) |
| **Occupancy** | | | | | | | | | | | | | | |
| Rent | (33,408.51) | | | | (33,408.51) | | | | (33,408.51) | | | | | (100,225.53) |
| Office Security | (31,111.90) | | | | (31,111.90) | | | | (31,111.90) | | | | | (93,335.69) |
| Repair & Maintenance - Building | (1,777.19) | | | | (1,777.19) | | | | (1,777.19) | | | | | (5,331.56) |
| Janitorial | (5,983.33) | | | | (5,983.33) | | | | (5,983.33) | | | | | (17,950.00) |
| **Total Occupancy** | (72,280.93) | | | | (72,280.93) | | | | (72,280.93) | | | | | (216,842.78) |
| Supplies | (1,258.02) | | | | (1,258.02) | | | | (1,258.02) | | | | | (3,774.07) |

001520

**Free Speech Systems LLC**
**Forecasted 13 Week Cash Flow Budget**
Between July 30, 2022 and October 28, 2022

| Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 | 08/27/2022-09/02/2022 | 09/03/2022-09/09/2022 | 09/10/2022-09/16/2022 | 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | 10/15/2022-10/21/2022 | 10/22/2022-10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Telephone | | | | | (18,337.88) | | | | (18,337.88) | | | | (18,337.88) | (55,013.65) |
| **Personnel Expenses** | | | | | | | | | | | | | | |
| Salaries & Wages - Base | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | (1,179,272.08) |
| Payroll Tax | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | (97,797.65) |
| Alex Jones Salary | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | (379,166.67) |
| **Total Personnel Expenses** | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | (1,656,236.39) |
| **Travel** | | | | | | | | | | | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (1,295.98) |
| Vehicle Leases | (1,470.56) | | | | (1,470.56) | | | | (1,470.56) | | | | | (4,411.68) |
| **Total Travel Expenses** | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (99.69) | (5,707.66) |
| **Total Operating Expenses** | (680,347.03) | (428.15) | (256,015.88) | (428.15) | (680,347.03) | (256,015.88) | (680,347.03) | (428.15) | (680,347.03) | (428.15) | (238,503.91) | (19,410.68) | (237,033.35) | (3,053,102.68) |
| **Non-Operating Expenses** | | | | | | | | | | | | | | |
| Payment on PQPR Note | (12,500.00) | (15,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (523,000.00) |
| AMEX Payment | (172,390.28) | | (172,390.28) | | (172,390.28) | | (172,390.28) | | (172,390.28) | | (172,390.28) | | | (1,034,341.69) |
| **Total Other Expenses** | (184,890.28) | (15,500.00) | (199,890.28) | (27,500.00) | (199,890.28) | (27,500.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (55,000.00) | (1,557,341.69) |
| **Professional Fees** | | | | | | | | | | | | | | |
| CRO Fees | | | | | | (52,992.00) | | | (35,328.00) | | | | | (88,320.00) |
| Financial Advisor Fee | | | | | | (57,876.00) | | | (40,352.00) | | | | | (98,228.00) |
| Shannon & Lee LLP | | | | | | (40,000.00) | | | (60,000.00) | | | | | (100,000.00) |
| Ray Battaglia | | | | | | (24,000.00) | | | (24,000.00) | | | | | (48,000.00) |
| **Total Professional Fees** | | | | | | (174,868.00) | | | (159,680.00) | | | | | (334,548.00) |
| **Total Cash Flow** | $ (529,176.72) | $ 101,269.75 | $ (87,237.70) | $ 320,906.77 | $ (544,176.72) | $ 339,269.75 | $ (289,605.70) | $ 793,406.77 | $ (731,356.72) | $ 313,240.31 | $ (97,225.73) | $ 774,424.24 | $ 76,635.11 | $ 440,373.41 |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

IN RE:                                  §          Case No. 22-60043
                                        §
FREE SPEECH SYSTEMS, LLC,               §          Chapter 11 (Subchapter V)
                                        §
        Debtor.                         §

# EXHIBIT 3



Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
FAX: 512/463-5709

Filing Fee: $300

**Certificate of Formation**
**Limited Liability Company**

**Filed in the Office of the**
**Secretary of State of Texas**
**Filing #: 804462512 03/07/2022**
**Document #: 1126599120004**
**Image Generated Electronically**
**for Web Filing**

### Article 1 - Entity Name and Type

The filing entity being formed is a limited liability company. The name of the entity is:

**Blue Asension Logistics LLC**

### Article 2 – Registered Agent and Registered Office

☑ A. The initial registered agent is an organization (cannot be company named above) by the name of:

**Northwest Registered Agent, LLC**

**OR**

☐ B. The initial registered agent is an individual resident of the state whose name is set forth below:

C. The business address of the registered agent and the registered office address is:

**Street Address:**
**5900 Balcones Drive STE 100   Austin  TX  78731**

### Consent of Registered Agent

☐ A. A copy of the consent of registered agent is attached.

**OR**

☑ B. The consent of the registered agent is maintained by the entity.

### Article 3 - Governing Authority

☐ A. The limited liability company is to be managed by managers.

**OR**

☑ B. The limited liability company will not have managers. Management of the company is reserved to the members.

The names and addresses of the governing persons are set forth below:

Managing Member 1: **Patrick    Riley**                                Title: **Managing Member**

Address: **5900 Balcones Drive STE 100   Austin  TX, USA  78731**

### Article 4 - Purpose

The purpose for which the company is organized is for the transaction of any and all lawful business for which limited liability companies may be organized under the Texas Business Organizations Code.

**Supplemental Provisions / Information**

001522

[The attached addendum, if any, is incorporated herein by reference.]

### Initial Mailing Address

Address to be used by the Comptroller of Public Accounts for purposes of sending tax information.

The initial mailing address of the filing entity is:

**5900 Balcones Drive STE 100**
**Austin, TX 78731**
**USA**

### Organizer

The name and address of the organizer are set forth below.

**Morgan Noble**          **5900 Balcones Drive STE 100 Austin, TX US 78731**

### Effectiveness of Filing

☑ A. This document becomes effective when the document is filed by the secretary of state.

### OR

☐ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its signing. The delayed effective date is:

### Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

**Morgan Noble**

Signature of Organizer

**FILING OFFICE COPY**

001523

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

# EXHIBIT 4

001524

| From: | A J <aj76@alexjones.net> |
|---|---|
| To: | Patrick PJR Riley WORK <patrick@infowars.com> |
| Sent: | 6/22/2018 11:02:04 PM |
| Subject: | Fwd: Phone Call with Marc Randazza |

This guy assists Mark Renazza an attorney Alex is looking at to be general counsel or just to handle some of the Sandy Hook cases brought in Connecticut.  Please help get a call scheduled with Rendazza through Tennyson Fauver.

Thanks,

David Jones
---------- Forwarded message ----------
From: **Tennyson Fauver** <tjf@randazza.com>
Date: Thu, Jun 21, 2018 at 12:55 PM
Subject: Phone Call with Marc Randazza
To: aj76@alexjones.net


Alex,

Marc asked me to set up a time for the two of you to speak. He is available at 1:30pm PST today for a phone call. If that will work for you please let me know, if not, let me know another time and I will make accommodations.

Thanks,
**Tennyson J. Fauver\*** | Randazza Legal Group, PLLC
2764 Lake Sahara Drive, Suite 109, Las Vegas, NV 89117
Tel: (702) 420-2001 | Email: tjf@randazza.com

\*Legal Assistant - Not licensed to practice law.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

# EXHIBIT 5

| | |
|---|---|
| **From:** | aj76@alexjones.net |
| **To:** | patrick@infowars.com <patrick@infowars.com> |
| **Sent:** | 7/5/2016 9:29:18 PM |
| **Subject:** | Fwd: Boat Dock after the 4th |

Begin forwarded message:

**From:** Byrne Benfield <bobenfield@gmail.com>
**Date:** July 5, 2016 at 4:08:47 PM CDT
**To:** Alex Jones <aj76@alexjones.net>, David Jones <drjones@infowars.com>, Sarah Myers <aj76.accts@gmail.com>
**Cc:** Martha Benfield <mpbenfield@gmail.com>
**Subject: Boat Dock after the 4th**

Whoever was left in charge of cleaning up the boat dock for the Joneses didn't do a very good job. We would appreciate it being cleaned up as soon as possible.
Byrne

001527

FSS006_00518067

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

# EXHIBIT 6



Price List

7/18/22


Average Shipping Cost                   $14 per Package
Average Fulfillment and Handling        $6 per Package


Included Services:
-Receiving
-Storage
-Unlimited Pick
-Unlimited Pack
-Order Inserting
-Supplies
-Returns
-Cycle Counting/Inventory
-Software & IT Integrations
-Q.C. & Q.A.
-Labor
-Shipping Cost


** 90 Day Commitment
**All orders through Infowarsstore.com fulfilled by Blue Asension Logistics LLC
**Special Projects such as kitting, labeling/relabeling, etc. $50/man-hour

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22--60043** |
| | § | |
| **DEBTOR.** | § | **(Subchapter V Debtor)** |
| | § | **Chapter 11** |
| | § | |

**NOTICE OF APPEARANCE AND**
**REQUEST FOR SERVICE AND PAPERS**

PLEASE TAKE NOTICE THAT pursuant to section 1109(b) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9010(b), Shannon & Lee LLP ("S&L") hereby enters its appearance in the above-captioned chapter 11 case as proposed Co-Counsel for Free Speech Systems, LLC (the "Debtor"). The undersigned respectfully requests that all notices given or required to be given in this proceeding and all papers served or required to be served in this proceeding, be served upon the following:

R.J. Shannon
rshannon@shannonleellp.com
Shannon & Lee LLP
Pennzoil Place-13th Floor
700 Milam
Houston, Texas 77002

- and-

Kyung S. Lee
klee@shannonleellp.com
Shannon & Lee LLP
Pennzoil Place-13th Floor
700 Milam
Houston, Texas 77002

1

PLEASE TAKE FURTHER NOTICE that the Notice of Appearance and Request for Service is not only for the notices and other documents referred to in the Bankruptcy Rules specified above but includes without limitation, all orders, notices, motions, applications, complaints, demand, hearings, petitions, pleadings or requests, whether formal or informal, written or oral, and whether transmitted or conveyed by mail, delivery, telephone, telegraph, telex or otherwise filed with regard to the referenced case and the proceedings.

**PLEASE TAKE FURTHER NOTICE** that the Debtor does not intend that this Notice of Appearance, or any later appearance or pleading, be deemed or construed to be a waiver of its right: (i) to have final orders in non-core matters entered only after *de novo* review by a District Judge; (ii) to trial by jury in any proceeding so triable in this case or any case, controversy, or proceeding related to this case; (iii) to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; and (iv) to any other rights, claims, actions, setoffs or recoupments to which it is or may be entitled, in law or in equity, all of which rights, claims, actions, defenses, setoffs and recoupments Debtor expressly reserves. All of Debtor's rights are reserved and preserved, without exception and without confessing or conceding jurisdiction in any way by this filing or by any other participation in this case.

Respectfully submitted this 12th day of August, 2022.

*/s/ Kyung S. Lee*

SHANNON & LEE, LLP
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R.J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam

2

001531

Pennzoil Place-13th Floor
Houston, Texas 77002

Proposed Co-Counsel for FSS, Debtor and
Debtor-in-Possession

001532

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2022, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system.

*/s/     Kyung S. Lee*
Kyung S. Lee

001533