Free Speech Systems, LLC
August 21, 2022
Page 2 of 12

Letter, all the other terms and conditions of the Original Engagement Agreement shall control the retention of the Firm by FSS.

*Scope of Engagement*. The Firm shall serve as attorney and legal counsel for the Client in connection with the following (the "Matters") effective as of July 29, 2022 (the "Petition Date"): The Firm shall act as special litigation and trial counsel for FSS in connection with the lawsuits described in **Exhibit "1"** (the "Professional Services").

*Legal Fees and Expenses*. The Firm shall be compensated for Professional Services provided to the Client on the Matters, in accordance with the Original Engagement Agreement, as amended by this Engagement Agreement. **None of the provisions relating to a flat fee arrangement contained in the Original Engagement Agreement shall apply to these Matters**.

For Professional Services provided to Client by the Firm, the Firm shall be entitled to a fee in the amount equal to the time expended by each attorney, multiplied by the hourly rates set forth in the attached Hourly Billing Rate Schedule. The Client is responsible for reimbursing the Firm for expenses incurred on behalf of the Client pursuant to the attached Client Expense Policy.

*Retainer*. As a condition to The Reynal Firm accepting this engagement, you have agreed to provide a retainer of $50,000.00 (the "Retainer") in connection with these Matters, subject to such payment being approved by the United States Bankruptcy Court, Southern District of Texas, Houston Division (the "Bankruptcy Court"). The instructions for remitting the retainer funds to the Firm will be provided in a separate electronic correspondence. The Retainer will serve as a security deposit and will be applied towards our final invoice for these Matters. Any balance will be returned to you. If you do not pay your invoices timely, the Firm may apply the Retainer to an unpaid invoice. Subject to Bankruptcy Court approval, the Firm reserves the right to have the Retainer replenished by the Client if the Firm anticipates that there is a risk in collecting future attorney's fees and/or reimbursement of costs. Notwithstanding anything contrary contained herein, the Firm understands and agrees that payment of its fees and expenses is subject to Bankruptcy Court approval, either on an interim basis pursuant to an order approving a procedure for interim compensation or pursuant a fee application.

*Invoices/Fee Statements*. The Firm's invoices will be issued to you during the month, if not more often, following the month that services are provided. The invoice will include a fee statement providing the details of the legal services performed, and the expenses incurred, for the Client. The invoices shall be informational only and shall only be paid upon allowance by a Bankruptcy Court order or pursuant to an order approving interim compensation of professionals.

*Conflicts*. The Firm has conducted an initial conflicts search based on information you provided. The Firm did not identify any connection that would prevent the Firm from representing you in this Matter. The firm may conduct additional conflicts searches following the commencement of this engagement. If the Firm identifies any conflict, then the Firm shall immediately notify the Client and the Firm and the Client shall take further actions as may reasonably be required to satisfy the Firm's ethical obligations and duties to the Client, all as more particularly described in the Terms of Retention.

Free Speech Systems, LLC
August 21, 2022
Page 3 of 12

       While not a conflict, The Reynal Firm discloses that Alex E. Jones, a co-defendant, in all the lawsuits set out in Exhibit A, is also a client of the Firm.  The Reynal Firm has represented both FSS and Alex Jones prior to the Petition Date and will continue to do so on most of these Matters.

       *General Prospective Waiver and Informed Consent.* The Firm represents many other companies and individuals. It is possible that during the time that we are representing you, some of our present or future Clients will have disputes or transactions with you. You agree that we may continue to represent or may undertake in the future to represent existing or new Client in any business or transactional matter that is not substantially related to our work for you, even if the interests of such Client in those other matters are directly adverse to you. We are not aware of any such matters at the present time. We agree, however, that your prospective consent to conflicting representations contained in the preceding sentence shall not apply in any instance where, because of our representation of you, we have obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in any such other matter by such client to your material disadvantage. *You are not giving the Firm a prospective waiver as to conflicting representation related to a litigation matter against you.* We encourage you to seek independent counsel regarding the import of the potential conflicts and prospective waiver discussed and this acknowledgment, waiver, and informed consent. We emphasize that you remain completely free to seek independent counsel at any time even if you decide to sign this Engagement Letter agreeing to its terms and the Terms of Retention.

       Please call me with any questions you have after you complete your review of this Engagement Letter including the Terms of Retention. If the Engagement Letter is acceptable to you in this form, please indicate so by signing, dating, and returning it to me and filing an Emergency Application to Retain the Firm as Special Litigation and Trial Counsel.

                  Very truly yours,

                  *Andino Reynal*

                  The Reynal Law Firm, P.C.


ACCEPTED AND AGREED:

Free Speech Systems, LLC

  /s/*W. Marc Schwartz*
Authorized Officer of Free Speech Systems, LLC

   8/22/22
Dated

Free Speech Systems, LLC
August 21, 2022
Page 4 of 12

ADDENDUM TO ENGAGEMENT LETTER

The appropriate Client point of contact to address payment status:

Name:
Title:
Phone:
Work Email:


Invoices are to be delivered as follows:

☐ By email:        _____

    Email:        _____

☐ By regular mail:

Address:        _____

                _____

                _____

Free Speech Systems, LLC
August 21, 2022
Page 5 of 12

## TERMS OF RETENTION

These Terms of Retention are part of The Reynal Firm Engagement Letter. Because they are an integral part of our agreement to provide legal services, we ask that you review this document carefully. If you have any questions after reading it, please contact us promptly.

*Who Will Provide Legal Services?* In most cases, one attorney will be your principal contact. From time to time, that attorney may delegate parts of your work to other attorneys or to legal assistants or non-legal professionals in the Firm. We do this to involve those with special knowledge or experience in an area and to provide services to you in a timely, efficient, and cost-effective manner. Andino Reynal will be the primary attorney from our Firm who will be representing the Client.

*Scope of the Representation.* As a Firm, we undertake to provide representation and advice on the legal matters for which we are engaged, and it is important that we both have a clear understanding of the legal services that the Firm has agreed to provide. In our Engagement Letter with you, we specify the matter in which we will provide representation and the scope of the services we will provide. Please note that we do not provide legal advice regarding any tax issues or effects nor are we responsible for notifying any insurance carrier of any lawsuit. If there are any questions about the terms of engagement, including the scope of the representation that we are to provide in the matter, please raise those questions promptly with your principal contact at the Firm.

*Identity of Client.* It is our policy to represent only the person or entity identified in our Engagement Letter and not any affiliates. For example, unless otherwise specifically stated in our Engagement Letter, if you are a business organization (corporation, partnership, LLC, etc.), our representation does not include any parents, subsidiaries, employees, officers, owners, or affiliates (including commonly owned companies); if you are an individual, our representation does not include your employer, partners, spouse, siblings, or other family members.

*Your Cooperation.* To enable us to provide effective representation, you agree to: (1) disclose to us, fully and accurately and on a timely basis, all facts and documents that are or might be material or that we may request, (2) keep us apprised on a timely basis of all developments relating to the representation that are or might be material, (3) attend meetings, conferences, and other proceedings when it is reasonable to do so, and (4) otherwise cooperate fully with us.

*Outcomes.* We cannot and do not guarantee the outcome of any matter. Any expression of our professional judgment regarding your matter or the potential outcome is, of course, limited by our knowledge of the facts and based on the law at the time of expression. It is also subject to any unknown or uncertain factors or conditions beyond our control. Any expressions on our part concerning the outcome of the representation, or any other legal matters, are based on our professional judgment and are not guarantees.

*Conflicts of Interest.* We attempt to identify actual and potential conflicts at the outset of any engagement. In some instances, the applicable rules of professional conduct may limit our ability to represent Client with conflicting or potentially conflicting interests. Those rules of conduct often allow us to exercise our independent judgment in determining whether our relationship with one client prevents us from representing another. In other situations, we may be permitted to represent a client only if both or all

Free Speech Systems, LLC
August 21, 2022
Page 6 of 12

Client consent to that representation. If a controversy unrelated to the subject matter of the representation develops between you and any other client of the Firm, we will follow the applicable rules of professional responsibility to determine whether we may represent either you or the other client in the unrelated matter. Unfortunately, sometimes conflicts arise or become apparent after work begins on an engagement. If this happens, we will do our best to address and resolve the situation in the manner that best serves the interests of all our affected Client. Rules concerning conflicts of interest vary with the jurisdiction. To avoid any uncertainty, the Connecticut Rules of Professional Conduct will be applicable to the representation.

*Fees.* The basis for determining our fee for legal services is set forth in the Engagement Letter itself. If you are unclear about the basis for determining your fee, please contact the attorney responsible for your representation.  Clients frequently ask us to estimate the fees and other charges they are likely to incur in connection with a particular matter. We are pleased to respond to such requests, whenever possible, with an estimate based upon our professional judgment. This estimate always carries the understanding that, unless we agree otherwise in writing, it does not represent a maximum, minimum, or fixed-fee quotation.

*Expenses.* Our Firm may incur and pay a variety of charges on your behalf in connection with the engagement. Whenever we incur such charges on your behalf, we will bill them to you as part of your invoice in accordance with the attached Client Expense Policy.

*Delinquent Account and Withdrawal of Engagement.* Because FSS is a chapter 11 debtor, the charging of fees and termination of services are subject to Bankruptcy Court approval.

*Additional Retainer.* Subject to Bankruptcy Court approval, if the representation will require a concentrated period of activity, such as a trial, arbitration, or hearing, we reserve the right to require the payment of all amounts then owing to us and the payment to us of an additional retainer for the fees and expenses we estimate will be incurred in preparing for and completing the trial, arbitration, or hearing, as well as arbitration fees likely to be assessed. If you fail to timely pay any  retainer deposit requested, we will have the right to cease performing further work for you and withdraw from the representation.

*Obligation to Pay Fees and Expenses.* Unless your Engagement Letter expressly provides that a third-party is agreeing to pay your attorney's fees and such third-party has agreed in writing, regardless of whether you are insured to cover the particular risk or pursuing parties for recovery of attorneys' fees and other charges, it remains your obligation to pay all amounts due to us within the time periods reflected in the Engagement Letter, as may be modified by an order of the Bankruptcy Court.

*Retention of Complementary Counsel.* From time to time during our engagement it may become prudent to engage additional counsel to work with and complement our representation of you. That complementary representation will only be done with your prior written consent and on terms and conditions which you approve. The engagement of complementary counsel may be done directly with you or through our firm, depending on the nature and extent of the representation involved, and shall be done only after written notice and approval of such retention by the Bankruptcy Court.

Free Speech Systems, LLC
August 21, 2022
Page 7 of 12

*Conclusion of Engagement.* Because our Firm has been engaged to provide legal services in connection with the representation in the Matter as specifically defined in our Engagement Letter, the attorney-client relationship terminates upon our completion of our services related to the representation in the Matter. After completion of the representation, upon written notification by the Firm that the matter is terminated, changes may occur in the applicable laws or regulations that could affect your future rights and liabilities regarding the Matter. Unless we are engaged after the completion of the representation to provide additional legal services, the Firm has no continuing obligation to give advice with respect to any future legal developments that may relate to the Matter.  If you later retain us to perform further or additional services, our attorney-client relationship will be subject to the terms of engagement agreed to at that time; in the absence of any specific agreement, these Additional Terms of Engagement shall apply to the further or additional representation.

*Termination.* We look forward to the opportunity to complete our representation of you on the specified matter. You may, however, terminate our representation at any time, with or without cause, by notifying us in writing. We will return your papers and other property to you promptly upon receipt of your request for those materials unless they are appropriately subject to a lien. You agree that we will own and retain our own files pertaining to the matter or case, including, for example, Firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal attorney's work product such as drafts, notes, internal memoranda, and legal and factual research including investigative reports, prepared by or for the internal use of attorneys. Your termination of our services will not affect your responsibility for payment of legal services rendered and other charges incurred before termination and in connection with an orderly transition of the matter.

*Document Retention.* You acknowledge and agree that the Firm may maintain all documents related to your matter digitally. The Firm is not required to maintain physical copies of any documents. At the conclusion of our representation of you, it is our firm's policy to return to you any physical documents to you. We will provide you with copies of any other documents you specifically request (such as copies of depositions, court documents, etc.), and you agree to pay for the associated copying costs and any professional time incurred in identifying any such documents you request. You agree that our Firm may elect to keep at its own expense, copies of any documents related to this matter or otherwise returned to you. Anytime following seven (7) years after the conclusion of our representation of you, the Firm may destroy or delete any files related to your engagement.

*Dispute Resolution.* The Engagement Letter is being entered and is to be performed within the State of Texas.  The Engagement Letter shall be interpreted in accordance with Texas law (without application of choice of law principles). FSS is under supervision of the Bankruptcy Court. Therefore, this Engagement Letter amends the Original Engagement Letter to delete all references and requirement for either party to arbitrate any disputes under this Engagement Agreement. Instead, all disputes regarding this Engagement Agreement shall be subject to review by the United States Bankruptcy Court.

*By returning the executed Engagement Letter, you acknowledge that you have been provided ample opportunity to have counsel explain to you the advantages and disadvantages of binding arbitration to make an informed decision about agreeing to the provision.*

Free Speech Systems, LLC
August 21, 2022
Page 8 of 12

*Modifications.* The Engagement Letter and these Additional Terms of Engagement reflect our entire agreement on the terms of this engagement. These written terms of engagement are not subject to any oral agreements or understandings, and any change in those terms can only be made in writing signed by you and the Firm.

Free Speech Systems, LLC
August 21, 2022
Page 9 of 12

### Hourly Billing Rate Schedule

| BILLER | RATE |
|---|---|
| F. Andino Reynal | $800 |
| Joseph Magliolo | $800 |
| Lynn Hardaway | $800 |
| West Medlin | $400 |

002931

Free Speech Systems, LLC
August 21, 2022
Page 10 of 12

Client Expense Policy

In connection with the representation of a client, the Firm may incur expenses. Unless the Engagement Letter expressly provides to the contrary, the Firm's and the Client's rights and responsibilities related to such expenses are as follows:

*Legal Research and Related Services.* The Firm subscribes to certain online research services. These subscription-based services are part of the Firm's overhead and not charged to the Client. Certain services are charged on a per-transaction including, without limitation, the following examples: UCC searches, lien searches, title searches and other record searches. The Client is responsible for these pre-transaction charges. The Firm will advance the costs for all such services and submit bills to you for reimbursement. The Firm may seek prior approval from you if the anticipated aggregate monthly expense for such services exceeds $500.00. The Firm reserves the right to have the Client pay these expenses directly.

*Document Management and eDiscovery Services.* The Firm subscribes to advanced document management software systems. These subscription-based systems are part of the Firm's overhead and not charged to the Client. The Client is responsible for eDiscovery services. eDiscovery service providers typically charge per gigabyte of information stored. Additional services from the outside vendor may be required other than storage of the information and typically these are separately charged.  If the Firm uses an eDiscovery service during the representation, then the Firm will seek the Client's prior approval before incurring expenses for such services. Rather than billing these expenses through the Firm, the Firm reserves the right to have the Client contract directly with the outside vendor to pay for these expenses. For the avoidance of doubt, the Client is responsible to the Firm for the payment of all fees and expenses incident to the firm's review and processing of discovery materials that are not handled by an outside vendor.

*Printing, Shipping, Postage and Related Expenses.* For all printing, shipping, postage, and related services the Firm may handle them in house or use an outside vendor. The Client is responsible for all such printing, shipping, postage, and related services at costs or the prevailing market rate if handled in house. The Firm may seek prior approval from the Client if the anticipated aggregate monthly expense for printing, shipping, postage, and related services exceeds $500.00. The Firm reserves the right to have the Client pay these expenses directly.

*Travel Expenses.* The Client will reimburse the Firm for expenses incurred in connection with out-of-town travel, but only for first class travel and, where appropriate, the cost of a rental car. All related travel expenses, i.e., lodging and meals, must be reasonable under the circumstances. The Firm will advance all such travel expenses and submit bills to you for reimbursement which will be included in the regular invoices to the Client. The attorney handling your matter will confer with you prior to traveling for your matter. Consistent with local bankruptcy rules, the Firm bills travel at ½ billable hourly rate when the lawyer is not working on the Client matter while travelling. The Firm will endeavor to locate a substitute service agent.

*Court Costs.* If requested by the Firm, the Client will advance court filing fees and all similar expenses prior to the Firm incurring such expenses. Any such expenses incurred by the Firm, will be included in the Firm's invoices to the Client for payment.

Free Speech Systems, LLC
August 21, 2022
Page 11 of 12

## EXHIBIT "1"

## Matters For Which FSS is Retaining The Reynal Firm

Fontaine v. Free Speech Systems, LLC, et al., D-1-GN-18-001605 (459th District Court, Travis County, Texas)

Heslin, et al. v. Free Speech Systems, LLC, et al, D-1-GN18-001835 (459th District Court, Travis County, Texas)

Pozner, et al. v. Free Speech Systems, LLC, et al. D-1-GN-18-001842 (459th District Court, Travis County, Texas)

Corsi et al. v. Free Speech Systems, LLC, et al., 21-50954 (5th Cir. Court of Appeals)

Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones and Free Speech Systems, LLC, Case No., X06-UWY-CV-18-6046436-S (the "Lafferty Matter") *

William Sherlach v. Alex Emric Jones and Free Speech Systems, LLC, X06-UWY-CV-18-6046437-S*

William Sherlach and Robert Parker v. Alex Emric Jones and Free Speech Systems, LLC, X06-UWY-CV-18-6046438-S*

*All these proceedings are before the Connecticut Superior Court, Waterbury District and consolidated in the Lafferty matter.

Free Speech Systems, LLC
August 21, 2022
Page 12 of 12

**<u>Exhibit "2"</u>**

**<u>Original Engagement Letter, Dated February 28, 2022</u>**

002934

# Fertitta & Reynal LLP

February 28, 2022

Alex Jones
Infowars, LLC.
Free Speech Systems, LLC.

**LEGAL SERVICES AGREEMENT (Subject to Binding Arbitration)** —*Fontaine v. Jones*, D-1-GN-18-001605; *Heslin v. Jones*, D-1-GN18-001835; *Pozner v. Jones*, D-1-GN-18-001842; *Lewis v. Jones*, D-1-GN-18-006623.

Dear Mr. Jones,

You have asked that Fertitta & Reynal LLP (the law firm) represent you; Infowars, LLC; and Free Speech Systems, LLC. in the above-referenced matters. "You" and "Clients" in this agreement refer to the clients to be represented and not to a person who pays any legal fees or expenses for the benefit of the client (a person who pays legal fees for another person is not the client).

We have met, discussed this case, and agreed that the law firm will handle this case based on monthly flat fee of $100,000, beginning March 1, 2022. We have further agreed that if the trials, currently scheduled to commence in April and May, are delayed for any reason, then the firm's monthly fee will be $50,000 per month until such time as the cases are set for trial again, at which point the fee would once more become $100,000 per month for trial.

The scope of our representation at this time is limited to our engagement to represent you regarding these cases and no other matter, including but not limited to any criminal, administrative, civil, forfeiture, immigration, or other matter. Any other legal services will require a written engagement agreement for that purpose.

You have carefully reviewed this letter and asked any questions that you had about the meaning of any language in this agreement (including the scope of representation and any applicable fees), we have agreed on the flat fee arrangement described above. Prior to your signature below on this agreement, we discussed the alternative of charging you on an hourly fee basis, instead of a flat fee. Specifically, we discussed the potential advantages and disadvantages of flat fees versus a fee

1

---

(Your initials)

based on hourly fees calculated as an hourly rate multiplied by each hour or portion of an hour for all time involved in this representation. For example, Fertitta Reynal's hourly rate is at least $800 an hour, depending on various factors, so the applicable hourly charges would be multiplied by the amount of time spent as measured by the hour (or increment of each hour).   You have consulted with an attorney and determined independently that a monthly flat fee arrangement is to your advantage.

The law firm includes F. Andino Reynal, Zachary Fertitta, Joseph Magliolo, and Lynn Hardaway, and any one of these may work on your case (in addition to interns, law clerks, and other sub-contracted attorneys for legal research and writing that the law firm employs at its own expense, assuming a flat fee) at Fertitta Reynal's discretion. With notice to you, the firm is authorized to employ such other persons who it deems necessary for the proper handling of your case; however, you will be asked to approve the employment of other persons not in our law firm and may be ~~required to pay for their services by advance fee retainer or otherwise.~~ These "other persons" may include (but are not limited to) consulting and/or testifying experts, investigators, consultants, translators, and other attorneys. *If mutually agreed*

Court costs, deposition costs, duplication costs, consultant's fees and expenses, room and board, travel, translators, and other professional fees incurred on your behalf will be paid directly by you, or when advanced by the firm, will be borne by and paid for by you upon receipt of a statement for said expenses.  Certain expenses will be forwarded to you for payment directly. *as mutually agreed*

The firm will provide to you, upon request, at monthly or otherwise appropriate intervals, an itemized statement setting forth in reasonable detail all advances for the above-mentioned expenses and a description in reasonable detail of all work performed on your behalf in these matters with the cost for services performed. Full payment is due on receipt of the statement of expenses.   Interest will be charged at the rate of ten percent (10%) per annum on any balance, whether for fees or expenses, more than thirty (30) days past due.

You understand that no representations have been made concerning the successful outcome of any actions that may be taken on your behalf.

In the event that you desire to terminate the firm and retain other counsel to represent your interests in any manner encompassed by this employment, it is understood that you agree to pay all fees, costs and expenses incurred by you or on your behalf up to and including the date of termination.

2

_____

(Your initials)

The firm may withdraw from your representation in this matter at any time for any reason permitted by law including, but not limited to, if you render the representation unreasonably difficult for the firm to carry out, insist that the firm engage in conduct that is contrary to the judgment and advice of the attorneys and/ or ethical requirements or other law, or fail to cooperate and comply fully with all reasonable requests by the firm on any matter encompassed by or made the basis of this representation or contract. The firm may also withdraw from your representation for non-payment of fees and expenses under this contract.

The firm shall withdraw if discharged by you. Such discharge shall be communicated in writing by you to the firm.  If permission for withdrawal from employment is required by the rules of the court, the firm shall withdraw if the court approves.

You and the law firm agree that any claim or dispute between them or against any agent, employee, successor, or assign of the other, whether related to this agreement or otherwise, and any claim or dispute related to this agreement or the attorney-client relationship or legal duties contemplated under this argument, including the validity of this arbitration clause, shall be resolved by binding arbitration.

If a dispute should arise under this agreement, either party may make a demand for arbitration by filing a demand in writing with the other.

The parties to this agreement may agree on a single arbitrator, but in the event that they cannot so agree, there shall be three arbitrators, one named in writing by each of the parties within thirty (30) days after demand for arbitration is made, and a third to be chosen by the two arbitrators so named.  Should either party fail to timely join in the appointment of the arbitrators, the arbitrators shall be appointed in accordance with the provisions of Texas Civil Practice and Remedies Code Section 171.041.

Any arbitration hearing conducted under the terms of this agreement, and all proceedings to enforce any of the provisions of this agreement, shall take place in Harris County, Texas only or a venue agreed upon by you and the law firm.  The hearing before the arbitrator(s) of the matter to be arbitrated shall be at the time and place within that county selected by the arbitrator(s).  Notice of hearing shall be given and the hearing conducted in accordance with the provisions of Section 171.044 et seq. of the Texas Civil Practice and Remedies Code.  The arbitrator(s) shall hear and determine the matter and shall execute and acknowledge the award

3

in writing and deliver a copy thereof to each of the parties by registered or certified mail.

If there is only one arbitrator, his or her decision shall be binding and conclusive on the parties.  If there are three arbitrators, the decision by any two shall be binding and conclusive.  The submission of a dispute to the arbitrator(s) and the rendering of the arbitrator(s)' decision shall be a condition precedent to any right of legal action on the dispute.   A judgment confirming the award of the arbitrators may be rendered by any court having jurisdiction; or the court may vacate, modify, or correct the award in accordance with the provisions of the Texas General Arbitration Act (Texas Civil Practice and Remedies Code Section 171.087 et seq.).

The cost and expenses of arbitration, including the fees of arbitrator(s), shall be borne by the losing party, or in such proportions as the arbitrator(s) shall determine. These fees, costs and expenses could be substantial.

The law firm advises you, regarding the advantages and disadvantages of arbitration as compared with a judicial (in court) determination of disputes, the following:

(1)     There could be cost and time savings with an arbitration; however, these cost and time savings are not guaranteed and arbitration could, in some instances, be more expensive and take longer than a judicial determination of a dispute.

(2)     Participation in arbitration results in the waiver of significant rights, such as the right to trial by jury.

(3)     Arbitration could possibly result in a reduced level of discovery; which has the potential of saving costs, but savings are not guaranteed.

(4)     Arbitration generally has the relaxed application of rules of evidence, which has the potential of saving costs, but savings are not guaranteed—and relaxed application of the rules of evidence may mean that certain evidence may be admitted or excluded in ways inconsistent with such rules.

(5)     Arbitration awards are generally final and results in the loss of the right to judicial review because arbitration decisions can be challenged only on very limited grounds; and

4

_____
(Your initials)

(6)   Generally, arbitrations are more private compared to a public trial (i.e., arbitrations are confidential and not open to the public—unlike what occurs in court).

We cite these factors and considerations so that you will be aware that there are some significant advantages and disadvantages of arbitration. Should you need more information about arbitration before signing this agreement, the law firm encourages you to ask questions, until you feel your questions are answered, and encourage you to seek independent counsel to advise you before signing this agreement if you feel that a third party could help you better understand your responsibility under this agreement.  While it is not necessary for you to get advice from a third party, the law firm encourages you to do so if you still have questions before signing this agreement.  By signing this agreement, you are representing that all your questions have been satisfactorily answered and that you either have, or have not, sought advice from independent counsel and that you are satisfied that entering into this contact of representation with an arbitration provision to handle disputes concerning it, is in your best interest, and you want to proceed accordingly.

Following the final disposition of your case, the firm will place your file in storage. The firm will destroy your file no earlier than five years from the date of the final disposition of your case. Please immediately contact me if you would like anything, especially any original documents or items, from the file.

If you use a credit card to pay legal fees or expenses, a 3% (three percent) convenience/processing fee will be added to the charge.   For example, if you pay $1,000 in fees on your credit card, the law firm will charge the card for $1,030. You understand and agree to this charge if you use a credit card.  If you do not want to incur the convenience/processing fee, then you are welcome to use another form of payment such as cash, check, money order, cashier's check, or bank wire.

All terms and conditions of our agreement are set forth in this letter and can only be modified in a subsequent writing that you and I sign. Please read this letter carefully and feel free to ask me any questions. If you are satisfied with this letter and the reasonableness of its terms and conditions, sign your initials and name where indicated as evidence that you have fully read, understand, and agree to the terms and conditions. I will provide you with a photocopy of the signed letter.  Further, if any language or provision in this agreement is determined by an arbitrator or court to be invalid or unenforceable, then the remaining provisions and language are preserved and shall be interpreted to give them full legal force and effect.

5

_____
(Your initials)

Sincerely,

F. ANDINO REYNAL

I have carefully read, understand, and agree to the terms and conditions as set forth in this fee agreement for legal services.  If I had any questions about the meaning of anything in this agreement, I asked those questions before signing below.

AGREED:

Alex Jones, individually and on behalf of
Infowars, LLC. and Free Speech Sytems, LLC.

6

_____
(Your initials)

713.228.5900        917 Franklin, Sixth Floor, Houston, Texas 77002    www.frlaw.us 002940

# Fertitta & Reynal LLP

February 28, 2022

Alex Jones
Infowars, LLC.
Free Speech Systems, LLC.

**LEGAL SERVICES AGREEMENT (Subject to Binding Arbitration)** —*Fontaine v. Jones*, D-1-GN-18-001605; *Heslin v. Jones*, D-1-GN18-001835; *Pozner v. Jones*, D-1-GN-18-001842; *Lewis v. Jones*, D-1-GN-18-006623.

Dear Mr. Jones,

You have asked that Fertitta & Reynal LLP (the law firm) represent you; Infowars, LLC; and Free Speech Systems, LLC. in the above-referenced matters. "You" and "Clients" in this agreement refer to the clients to be represented and not to a person who pays any legal fees or expenses for the benefit of the client (a person who pays legal fees for another person is not the client).

We have met, discussed this case, and agreed that the law firm will handle this case based on monthly flat fee of $100,000, beginning March 1, 2022. We have further agreed that if the trials, currently scheduled to commence in April and May, are delayed for any reason, then the firm's monthly fee will be $50,000 per month until such time as the cases are set for trial again, at which point the fee would once more become $100,000 per month for trial.

The scope of our representation at this time is limited to our engagement to represent you regarding these cases and no other matter, including but not limited to any criminal, administrative, civil, forfeiture, immigration, or other matter. Any other legal services will require a written engagement agreement for that purpose.

You have carefully reviewed this letter and asked any questions that you had about the meaning of any language in this agreement (including the scope of representation and any applicable fees), we have agreed on the flat fee arrangement described above. Prior to your signature below on this agreement, we discussed the alternative of charging you on an hourly fee basis, instead of a flat fee. Specifically, we discussed the potential advantages and disadvantages of flat fees versus a fee

1

_____
(Your initials)

based on hourly fees calculated as an hourly rate multiplied by each hour or portion of an hour for all time involved in this representation. For example, Fertitta Reynal's hourly rate is at least $800 an hour, depending on various factors, so the applicable hourly charges would be multiplied by the amount of time spent as measured by the hour (or increment of each hour).   You have consulted with an attorney and determined independently that a monthly flat fee arrangement is to your advantage.

The law firm includes F. Andino Reynal, Zachary Fertitta, Joseph Magliolo, and Lynn Hardaway, and any one of these may work on your case (in addition to interns, law clerks, and other sub-contracted attorneys for legal research and writing that the law firm employs at its own expense, assuming a flat fee) at Fertitta Reynal's discretion. With notice to you, the firm is authorized to employ such other persons who it deems necessary for the proper handling of your case; however, you will be asked to approve the employment of other persons not in our law firm and may be ~~required~~ to pay for their services by advance fee retainer or otherwise. These "other persons" may include (but are not limited to) consulting and/or testifying experts, investigators, consultants, translators, and other attorneys. *If mutually agreed*

Court costs, deposition costs, duplication costs, consultant's fees and expenses, room and board, travel, translators, and other professional fees incurred on your behalf will be paid directly by you, or when advanced by the firm, will be borne by and paid for by you upon receipt of a statement for said expenses. Certain expenses will be forwarded to you for payment directly. *as mutually agreed*

The firm will provide to you, upon request, at monthly or otherwise appropriate intervals, an itemized statement setting forth in reasonable detail all advances for the above-mentioned expenses and a description in reasonable detail of all work performed on your behalf in these matters with the cost for services performed. Full payment is due on receipt of the statement of expenses.   Interest will be charged at the rate of ten percent (10%) per annum on any balance, whether for fees or expenses, more than thirty (30) days past due.

You understand that no representations have been made concerning the successful outcome of any actions that may be taken on your behalf.

In the event that you desire to terminate the firm and retain other counsel to represent your interests in any manner encompassed by this employment, it is understood that you agree to pay all fees, costs and expenses incurred by you or on your behalf up to and including the date of termination.

2

_____
(Your initials)

713.228.5900        917 Franklin, Sixth Floor, Houston, Texas 77002        www.frlaw.us 002942

The firm may withdraw from your representation in this matter at any time for any reason permitted by law including, but not limited to, if you render the representation unreasonably difficult for the firm to carry out, insist that the firm engage in conduct that is contrary to the judgment and advice of the attorneys and/or ethical requirements or other law, or fail to cooperate and comply fully with all reasonable requests by the firm on any matter encompassed by or made the basis of this representation or contract. The firm may also withdraw from your representation for non-payment of fees and expenses under this contract.

The firm shall withdraw if discharged by you. Such discharge shall be communicated in writing by you to the firm. If permission for withdrawal from employment is required by the rules of the court, the firm shall withdraw if the court approves.

You and the law firm agree that any claim or dispute between them or against any agent, employee, successor, or assign of the other, whether related to this agreement or otherwise, and any claim or dispute related to this agreement or the attorney-client relationship or legal duties contemplated under this argument, including the validity of this arbitration clause, shall be resolved by binding arbitration.

If a dispute should arise under this agreement, either party may make a demand for arbitration by filing a demand in writing with the other.

The parties to this agreement may agree on a single arbitrator, but in the event that they cannot so agree, there shall be three arbitrators, one named in writing by each of the parties within thirty (30) days after demand for arbitration is made, and a third to be chosen by the two arbitrators so named. Should either party fail to timely join in the appointment of the arbitrators, the arbitrators shall be appointed in accordance with the provisions of Texas Civil Practice and Remedies Code Section 171.041.

Any arbitration hearing conducted under the terms of this agreement, and all proceedings to enforce any of the provisions of this agreement, shall take place in Harris County, Texas only or a venue agreed upon by you and the law firm. The hearing before the arbitrator(s) of the matter to be arbitrated shall be at the time and place within that county selected by the arbitrator(s). Notice of hearing shall be given and the hearing conducted in accordance with the provisions of Section 171.044 et seq. of the Texas Civil Practice and Remedies Code. The arbitrator(s) shall hear and determine the matter and shall execute and acknowledge the award

3

---

(Your initials)

713.228.5900          917 Franklin, Sixth Floor, Houston, Texas 77002          www.frlaw.us 002943

in writing and deliver a copy thereof to each of the parties by registered or certified mail.

If there is only one arbitrator, his or her decision shall be binding and conclusive on the parties. If there are three arbitrators, the decision by any two shall be binding and conclusive. The submission of a dispute to the arbitrator(s) and the rendering of the arbitrator(s)' decision shall be a condition precedent to any right of legal action on the dispute. A judgment confirming the award of the arbitrators may be rendered by any court having jurisdiction; or the court may vacate, modify, or correct the award in accordance with the provisions of the Texas General Arbitration Act (Texas Civil Practice and Remedies Code Section 171.087 et seq.).

The cost and expenses of arbitration, including the fees of arbitrator(s), shall be borne by the losing party, or in such proportions as the arbitrator(s) shall determine. These fees, costs and expenses could be substantial.

The law firm advises you, regarding the advantages and disadvantages of arbitration as compared with a judicial (in court) determination of disputes, the following:

(1)   There could be cost and time savings with an arbitration; however, these cost and time savings are not guaranteed and arbitration could, in some instances, be more expensive and take longer than a judicial determination of a dispute.

(2)   Participation in arbitration results in the waiver of significant rights, such as the right to trial by jury.

(3)   Arbitration could possibly result in a reduced level of discovery; which has the potential of saving costs, but savings are not guaranteed.

(4)   Arbitration generally has the relaxed application of rules of evidence, which has the potential of saving costs, but savings are not guaranteed—and relaxed application of the rules of evidence may mean that certain evidence may be admitted or excluded in ways inconsistent with such rules.

(5)   Arbitration awards are generally final and results in the loss of the right to judicial review because arbitration decisions can be challenged only on very limited grounds; and

4

(Your initials)

(6)   Generally, arbitrations are more private compared to a public trial (i.e., arbitrations are confidential and not open to the public—unlike what occurs in court).

We cite these factors and considerations so that you will be aware that there are some significant advantages and disadvantages of arbitration. Should you need more information about arbitration before signing this agreement, the law firm encourages you to ask questions, until you feel your questions are answered, and encourage you to seek independent counsel to advise you before signing this agreement if you feel that a third party could help you better understand your responsibility under this agreement. While it is not necessary for you to get advice from a third party, the law firm encourages you to do so if you still have questions before signing this agreement. By signing this agreement, you are representing that all your questions have been satisfactorily answered and that you either have, or have not, sought advice from independent counsel and that you are satisfied that entering into this contact of representation with an arbitration provision to handle disputes concerning it, is in your best interest, and you want to proceed accordingly.

Following the final disposition of your case, the firm will place your file in storage. The firm will destroy your file no earlier than five years from the date of the final disposition of your case. Please immediately contact me if you would like anything, especially any original documents or items, from the file.

If you use a credit card to pay legal fees or expenses, a 3% (three percent) convenience/processing fee will be added to the charge.  For example, if you pay $1,000 in fees on your credit card, the law firm will charge the card for $1,030. You understand and agree to this charge if you use a credit card.  If you do not want to incur the convenience/processing fee, then you are welcome to use another form of payment such as cash, check, money order, cashier's check, or bank wire.

All terms and conditions of our agreement are set forth in this letter and can only be modified in a subsequent writing that you and I sign. Please read this letter carefully and feel free to ask me any questions. If you are satisfied with this letter and the reasonableness of its terms and conditions, sign your initials and name where indicated as evidence that you have fully read, understand, and agree to the terms and conditions. I will provide you with a photocopy of the signed letter.  Further, if any language or provision in this agreement is determined by an arbitrator or court to be invalid or unenforceable, then the remaining provisions and language are preserved and shall be interpreted to give them full legal force and effect.

5

_____
(Your initials)

Sincerely,

F. ANDINO REYNAL

I have carefully read, understand, and agree to the terms and conditions as set forth in this fee agreement for legal services.  If I had any questions about the meaning of anything in this agreement, I asked those questions before signing below.

AGREED:

Alex Jones, individually and on behalf of
Infowars, LLC. and Free Speech Sytems, LLC.

6

(Your initials)

713.228.5900          917 Franklin, Sixth Floor, Houston, Texas 77002     www.frlaw.us  002946

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22—60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

**DECLARATION OF FEDERICO REYNAL IN SUPPORT OF**
**THE DEBTOR' APPLICATION TO EMPLOY THE REYNAL LAW FIRM, P.C.**
**UNDER 11 U.S.C. § 327(e), AS SPECIAL COUNSEL,**
**_NUNC PRO TUNC_ TO JULY 29, 2022**

I, Federico Reynal, declare under penalty of perjury as follows:

1.      I am an attorney at law duly admitted and in good standing to practice in the State

of Texas, United States District Court for the Southern District of Texas and the Fifth Circuit Court

of Appeals.  I am the founder of the Houston office of The Reynal Law Firm, P.C. (the "Firm" or

"The Reynal Firm"), located at 917 Franklin, Sixth Floor, Houston, Texas 77002.

2.      I am making this declaration in support of the Debtor's Application to Employ The

Reynal Law Firm, P.C. Under 11 U.S.C. § 327(e), as Special Counsel, _Nunc Pro Tunc_, to July 29,

2022 (the "Application").  Unless otherwise indicated, capitalized terms used but not defined

herein have the meanings ascribed to such terms in the Application.

3.      Except as otherwise noted, all facts set forth in this declaration are based upon my

personal knowledge, upon the client and matter records of The Reynal Firm reviewed by me or

derived from information available to me that I believe to be true and correct or opinion based

upon experience, knowledge and information concerning the restructuring of debtor-creditor

002947

relationships, workouts, chapter 11 process, and the Debtor. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

**A.     Scope of Services**

4.      Pursuant to the Engagement Agreement, the Application, and the Proposed Order attached thereto, The Reynal Firm will serve as special counsel to the Debtor in connection with the Matters, specified in the Engagement Letter and the Application.  More specifically, the Firm shall serve as primary litigation and trial counsel for FSS involving suits against FSS in Travis County and the appeal by Corsi to the Fifth Circuit Court of Appeals. The Reynal Firm will also be retained to assist Pattis & Smith LLC to prepare witnesses for trial, consult on presentation of the case and brief any issues that may arise during the course of the trial with respect to the Lafferty Matter.

**B.     Proposed Compensation**

5.      The Reynal Firm will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including §§ 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, Guidelines, and Orders for all services performed and expenses incurred during its representation of the Debtor.

6.      Subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and the Orders, The Reynal Firm intends to request the allowance of its compensation as set out in the Engagement Agreement. These rates reflect the rates that The Reynal Firm ordinarily charges clients in bankruptcy and non-bankruptcy matters and are less than or equal to the rates of similarly skilled and experienced attorneys in this district. The Reynal Firm submits that these agreed terms of reimbursement, compensation, and hourly

2

rates are reasonable. The Reynal Firm will notify the Debtor of any change in the hourly rates charged for services rendered.

### C.     Retainer.

7.      Under the proposed employment with the Debtor, The Reynal Firm seeks a $50,000 post-petition retainer and agrees it will continue to hold the Retainer in trust for satisfaction of its final fees and expenses as authorized by the Court, or as otherwise directed by the Court.

### D.     Disclosure of Connections

*i.     Search and General Descriptions of Connections*

8.      The Reynal Firm performed the following actions to determine whether it or any of its attorneys has any disclosable connections, to the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any of the judges for the U.S. Bankruptcy Court for the Southern District of Texas.

9.      I conducted a search of The Reynal Firm files to determine using the list of parties in interest listed in Schedule 1 hereto whether the Firm had any connections to or represented any of the parties listed on Schedule 1. The search revealed that the Firm had and did not represent any of the parties listed on Schedule 1. The Reynal Firm may have provided services to creditors or other parties in interest inadvertently omitted from Schedule 1 or the description above. If such connections exist, they would be on matters wholly unrelated to the service for which FSS seeks to engage The Reynal Firm.

10.      The results of the foregoing connections search process confirm that neither I, The Reynal Firm, nor any of its employees or partners, to the best of my knowledge, have any disqualifying connections.

3

002949

11.     Based on the connections review conducted to date and described herein, to the best of my knowledge and insofar as I can ascertain, I and The Reynal Firm do not hold an interest adverse to the Debtor or the estate with respect to the matter on which the Firm is to be employed.

12.     I am not a creditor, an equity security holder, or an insider of the Debtor; I am not and was not within 2 years before the Petition Date a director of the Debtor; and I do not have any interest materially adverse to the interests of the Debtor's bankruptcy estate or any class of creditors or equity security holders.

13.     The Reynal Firm is not a creditor, an equity security holder, or an insider of the Debtor; The Reynal Firm is not and was not within 2 years before the Petition Date an employee, officer, or director of the Debtor; and The Reynal Firm does not have any interest materially adverse to the interests of the Debtor's bankruptcy estate or any class of creditors or equity security holders.

14.     The Reynal Firm does not possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate. The Reynal Firm also does not possess or assert any economic interest that would create either an actual or potential dispute in which the estate is a rival claimant. The Reynal Firm does not have any incentive to act contrary to the best interests of the estate and its creditors.

**E.     Bankruptcy Rule 2016(b) Disclosures**

15.     Pursuant to Bankruptcy Code § 504 and Bankruptcy Rule 2016, The Reynal Firm has not shared or agreed to share (a) any of its compensation from the representation of the Debtor with any other persons, or (b) any compensation any other persons have received, may have received, or will receive.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 22, 2022,

By: /s/*Federico Reynal*
Federico Reynal

5

002951

## **SCHEDULE 1**

## **TO REYNAL DECLARATION**

### **SEARCHED PARTIES**

<u>Debtor & Professionals</u>

Law Office of Ray Battaglia                 Schwartz Associates

Shannon & Lee LLP


<u>Debtor's Equity</u>

Alexander E. Jones

<u>Largest 20 Unsecured Creditors & Litigation Claimants</u>

Elevated Solutions Group                 Dona Soto
Atomial LLC                              Erica Lafferty
Cloudfare, Inc.                          Francine Wheeler
Jacquelyn Blott                          Ian Hockley
Joel Skousen                             Jacqueline Barden
eCommerce CDN LLC                        Jennifer Hensel
Paul Watson                              Jeremy Richman
Greenair, Inc.                           Jillian Soto
Edgecast, Inc.                           Leonard Pozner
Ready Alliance Group, Inc.               Marcel Fontaine
Getty Images, Inc.                       Mark Barden
RatsMedical.com                          Neil Heslin
David Icke Books Limited                 Nicole Hockley
WWCR                                     PQPR Holdings Limited, LLC
CustomTattoNow.com                       Robert Parker
AT&T                                     Scarlett Lewis
Justin Lair                              Veronique De La Rosa
Brennan Gilmore                          William Sherlach
Carlee Soto-Parisi                       William Aledenberg
Carlos Soto                              Larry Klayman
Christopher Sadowski                     Randazza Legal Group

<u>Attorneys for Creditors and Parties in Interest</u>

Kaster Lynch Farrar & Ball LLP          Zeisler & Zeisler P.C.
Koskoff Koskoff & Bieder                Jordan & Ortiz, P.C.
Fertitta & Reynal LLP                   McDowell Heterhington LLP

The Akers Law Firm PLLC                  Akin Gump Strauss Hauer & Feld
Copycat Legal PLLC                       LLP
Waller Lansden Dortch & Davis,
LLP

<u>U.S. Bankruptcy Judges and Staff</u>

Chief Judge David R. Jones            Tracey Conrad
Judge Marvin Isgur                    Jeannie Chavez
Judge Christopher M. Lopez            LinhThu Do
Judge Jeffrey P. Norman               Tyler Laws
Judge Eduardo V. Rodriguez            Kimberly Picota
Albert Alonzo                         Vriana Portillo
Ana Castro                            Mario Rios

<u>U.S. Trustee Personnel</u>

Alicia Barcomb                        Jayson B. Ruff
Jacqueline Boykin                     Millie Sall
Luci Johnson-Davis                    Patricia Schmidt
Hector Duran                          Christy Simmons
Barbra Griffin                        Gwen Smith
Brian Henault                         Stephen Statham
Linda Motton                          Christopher R. Travis
Ha Nguyen                             Clarissa Waxton
Glenn Otto                            Jana Whitworth
Yasmin Rivera

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22—60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

**AMENDED DECLARATION OF FEDERICO REYNAL IN SUPPORT OF
THE DEBTOR'S APPLICATION TO EMPLOY THE REYNAL LAW FIRM, P.C.
UNDER 11 U.S.C. § 327(e), AS SPECIAL COUNSEL,
*NUNC PRO TUNC* TO JULY 29, 2022**

I, Federico Reynal, declare under penalty of perjury as follows:

1.      I am an attorney at law duly admitted and in good standing to practice in the State of Texas, United States District Court for the Southern District of Texas and the Fifth Circuit Court of Appeals.  I am the founder of the Houston office of The Reynal Law Firm, P.C. (the "Firm" or "The Reynal Firm"), located at 917 Franklin, Sixth Floor, Houston, Texas 77002.

2.      I am making this Amended Declaration in support of the Debtor's Application to Employ The Reynal Law Firm, P.C. Under 11 U.S.C. § 327(e), as Special Counsel, *Nunc Pro Tunc*, to July 29, 2022 (the "Application").  Unless otherwise indicated, capitalized terms used but not defined herein have the meanings ascribed to such terms in the Application.

3.      Except as otherwise noted, all facts set forth in this Amended Declaration are based upon my personal knowledge, upon the client and matter records of The Reynal Firm reviewed by me or derived from information available to me that I believe to be true and correct or opinion based upon experience, knowledge and information concerning the restructuring of debtor-creditor relationships, workouts, chapter 11 process, and the Debtor. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4.      On August 22, 2022, I submitted a Declaration (the "Original Declaration") in support of the Debtor's Application to Employ The Reynal Law Firm, P.C. Under 11 U.S.C. § 327(e), as Special Counsel, *Nunc Pro Tunc*, to July 29, 2022 (the "Application").

5.      In ¶ 9 of the Original Declaration, I stated that:

I conducted a search of The Reynal Firm files to determine using the list of parties in interest listed in Schedule 1 hereto whether the Firm had any connections to or represented any of the parties listed on Schedule 1. *The search revealed that the Firm had and did not represent any of the parties listed on Schedule 1.* The Reynal Firm may have provided services to creditors or other parties in interest inadvertently omitted from Schedule 1 or the description above. If such connections exist, they would be on matters wholly unrelated to the service for which FSS seeks to engage The Reynal Firm.

6.      Schedule 1 to the Original Declaration listed "Debtor's Equity: Alexander E. Jones".

7.      As set out in ¶¶ 6, 7, 8 of the Application and Original Engagement Agreement, Applicant has represented other defendants, including Alex E. Jones.

8.      I am filing this Amended Declaration to correct this statement in the Declaration.

9.      Except for this amendment to my Declaration, all other statements made in the Original Declaration remain true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2022,

By: /s/ *Federico Reynal*
    Federico Reynal

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

## AMENDED DECLARATION OF FEDERICO REYNAL IN SUPPORT OF THE DEBTOR'S APPLICATION TO EMPLOY THE REYNAL LAW FIRM, P.C. UNDER 11 U.S.C. § 327(e), AS SPECIAL COUNSEL, *NUNC PRO TUNC*, TO JULY 29, 2022

I, Federico Reynal, declare under penalty of perjury as follows:

1.      I am an attorney at law duly admitted and in good standing to practice in the State of Texas, United States District Court for the Southern District of Texas and the Fifth Circuit Court of Appeals.  I am the founder of the Houston office of The Reynal Law Firm, P.C. (the "Firm" or "The Reynal Firm"), located at 917 Franklin, Sixth Floor, Houston, Texas 77002.

2.      I am making this Amended Declaration in support of the Debtor's Application to Employ The Reynal Law Firm, P.C. Under 11 U.S.C. § 327(e), as Special Counsel, *Nunc Pro Tunc*, to July 29, 2022 (the "Application").  Unless otherwise indicated, capitalized terms used but not defined herein have the meanings ascribed to such terms in the Application.

3.      Except as otherwise noted, all facts set forth in this Amended Declaration are based upon my personal knowledge, upon the client and matter records of The Reynal Firm reviewed by me or derived from information available to me that I believe to be true and correct or opinion based upon experience, knowledge and information concerning the restructuring of debtor-creditor relationships, workouts, chapter 11 process, and the Debtor. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4.      On August 22, 2022, I submitted a Declaration (the "Original Declaration") in support of the Debtor's Application.

5.      In ¶ 9 of the Original Declaration, I stated that:

I conducted a search of The Reynal Firm files to determine using the list of parties in interest listed in Schedule 1 hereto whether the Firm had any connections to or represented any of the parties listed on Schedule 1. *The search revealed that the Firm had and did not represent any of the parties listed on Schedule 1.* The Reynal Firm may have provided services to creditors or other parties in interest inadvertently omitted from Schedule 1 or the description above. If such connections exist, they would be on matters wholly unrelated to the service for which FSS seeks to engage The Reynal Firm.

6.      Schedule 1 to the Original Declaration listed "Debtor's Equity: Alexander E. Jones".

7.      As set out in ¶¶ 6, 7, 8 of the Application and Original Engagement Agreement, Applicant has represented other defendants, including Alex E. Jones.

8.      I am filing this Amended Declaration to correct this statement in the Declaration.

9.      Except for this amendment to my Declaration, all other statements made in the Original Declaration remain true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 28, 2022,

By: /s/*Federico Reynal*
Federico Reynal

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Case No. 22-60043 |
| | § | |
| DEBTOR. | § | Chapter 11 (Subchapter V) |
| | § | |

## AMENDED DECLARATION OF NORMAN A. PATTIS IN SUPPORT OF THE DEBTOR'S APPLICATION TO EMPLOY PATTIS & SMITH LLC UNDER 11 U.S.C. § 327(e) AND 328(a), AS SPECIAL COUNSEL, *NUNC PRO TUNC*, TO AUGUST 1, 2022

I, Norman A. Pattis, declare under penalty of perjury as follows:

1.      I am an attorney at law duly admitted and in good standing to practice in the State of Connecticut.

2.      I am making this Amended Declaration in support of the Debtor's Emergency Application to Employ Pattis & Smith LLC Under 11 U.S.C. § 327(e) and 328(a), as Special Counsel, *Nunc Pro Tunc*, to August 1, 2022 (the "Application"). Unless otherwise indicated, capitalized terms used but not defined herein have the meanings ascribed to such terms in the Application.

3.      Except as otherwise noted, all facts set forth in this Amended Declaration are based upon my personal knowledge, upon the client and matter records of Pattis & Smith LLC ("P&SLLC") reviewed by me or derived from information available to me that I believe to be true and correct or opinion based upon experience, knowledge and information concerning the restructuring of debtor-creditor relationships, workouts, chapter 11 process, and the Debtor. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4.      On August 22, 2022, I executed a Declaration (the "Original Declaration") in support of the Debtor's Application.

5.      In ¶ 10 of the Original Declaration, I stated that:

I conducted a search of P&SLLC files to determine using the list of parties in interest listed in Schedule 1 hereto whether the Firm had any connections to or represented any of the parties listed on Schedule 1. *The search revealed that the Firm had and did not represent any of the parties listed on Schedule 1*. P&SLLC may have provided services to creditors or other parties in interest inadvertently omitted from Schedule 1 or the description above. If such connections exist, they would be on matters wholly unrelated to the service for which FSS seeks to engage P&SLLC.

6.      Schedule 1 to the Original Declaration listed "Debtor's Equity: Alexander E. Jones".

7.      As set out in ¶¶ 6, 7, 8 of the Application and Exhibit "A" to the Engagement Agreement, Applicant has represented other defendants, including Alex E. Jones.

8.      In ¶ 11 of the Application, FSS stated that "The Firm is not receiving any compensation for Professional Services by any other defendant in the Sandy Hook Lawsuits."

9.      As a result of negotiations with certain parties, Alex E. Jones will bear 40% of my Firm's 3 monthly $100,000.00 flat fees, with Alex Jones, paying all of August, 2022 flat fee to the Firm and FSS and Alex Jones paying the Firm $100,000 and $0 respectively for September 2022 monthly flat fee, and $80,000 and $20,000 respectively for October 2022 monthly flat fee. Therefore, ¶ 11 of the Application is no longer accurate and correct.

10.     I am filing this Amended Declaration to update ¶ 11 in the Application.

11.     Except for these amendments to my Declaration and Application set out herein, all other statements made in the Application and Original Declaration remain true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

002959

Executed on August 28, 2022,

By: /s/*Norman A. Pattis*
       Norman A. Pattis

002960

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| **Debtor.** | § | |

**AGREED ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW THE**
**CONNECTICUT LITIGATION TO CONTINUE TO FINAL JUDGMENT**
**[RELATES TO ECF NO. 15, 78]**

At Houston, in said District, came on for consideration the Emergency Motion for Relief

from the Automatic Stay (the "Motion") filed by David Wheeler, Francine Wheeler, Jacqueline

Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto

Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert

Parker (collectively, the "Connecticut Plaintiffs"); and it appearing to the Court that notice of the

hearing on the Motion is adequate, appropriate and sufficient under the circumstances of this case;

and it further appearing to the Court that prior to the Petition Date, Connecticut Plaintiffs commenced

three state-court actions against Free Speech Systems, LLC (the "Debtor" or "FSS") and non-debtor

Alex Jones ("Jones") in the Connecticut Superior Court: *Lafferty v. Jones* (UWYCV18- 6046436-

S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWYCV18- 6046438-S)

which have been consolidated under *Lafferty v. Jones* (UWYCV18- 6046436-S) (collectively, the

"State Court Litigation"); and it appearing that on July 29, 2022 (the "Petition Date"), the Debtor

filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas,

Victoria Division, which was later transferred to the Houston Division (the "Bankruptcy Court");

and the Connecticut Plaintiffs, the Debtor and Jones having reached the following agreement, set

002961

forth here below, the Connecticut Plaintiffs and Jones having memorialized the aspects of their agreement pertaining to witnesses at trial separately:

**AGREEMENT BETWEEN THE CONNECTICUT PLAINTIFFS AND THE DEBTOR, WITH JONES AGREEING TO PARAGRAPH 2**

1.      This Agreement is contingent on the entry of the lift-stay order set forth below and is integral to the parties' agreement concerning the lifting of the automatic stay.

2.      The Debtor agrees to accept all jurors selected in the State Court Litigation prior to the lifting of the stay and agrees to waive, *nunc-pro-tunc,* any objections to the selection of those jurors on the basis of the lifting of the stay and any objections arising from FSS's non-participation in the voir dire process. Jones also waives any objections to the selection of those jurors on the basis of the lifting of the stay and any objections arising from FSS's non-participation in the voir dire process.

3.      The Debtor intends that Pattis & Smith, LLC ("Pattis"), present counsel for the Debtor and Jones in the State Court Litigation, shall continue to represent both the Debtor and Jones.

4.      To that end, the Debtor agrees to concurrently seek a separate order on an emergency basis from the Bankruptcy Court authorizing Pattis to represent the Debtor, which the Connecticut Plaintiffs will not oppose.

5.      The Connecticut Plaintiffs agree not to move to disqualify Pattis so long as Pattis continues to represent both the Debtor and Jones in the State Court Litigation.

6.      Jones and the Debtor agree that Pattis will represent them jointly.

7.      The Connecticut Plaintiffs agree not to object to the Debtor's retention of Pattis or The Reynal Law Firm LLP ("Reynal") as special litigation counsel jointly representing the Debtor

002962

and Jones in the State Court Litigation, provided no application for admission *pro hac vice* is made for Reynal, or any member of that firm, in the Connecticut State Court, and Reynal is retained as non-appearing counsel only.

8.      The Connecticut Plaintiffs agree not to object to (a) the Debtor's request that Pattis receive a flat monthly fee of $100,000 for a two-month period, beginning on the date of the lift-stay and continuing two months thereafter, such flat fee to cover all legal services and out-of-pocket expenses rendered/incurred by Pattis during that period of time pursuant to sections 327(e) and 328(a) of the Bankruptcy Code or (b) Pattis receiving payment from non-debtor parties for services provided prior to such period. To the extent the Debtor requests Court approval for additional payment to Pattis in excess of this two-month period, the Connecticut Plaintiffs reserve their right to object to any such request to the extent such request is unreasonable.

9.      The Connecticut Plaintiffs agree not to object to the Debtor's retention of Reynal to represent the Debtor and Jones jointly as non-appearing counsel in connection with the State Court Litigation. The Connecticut Plaintiffs further agree not to object to reasonable and necessary fees and expenses of Reynal.

10.     The Debtor agrees that the Connecticut Plaintiffs' subpoena served on Jones will be valid for three trial days (not counting Mondays, which are not evidence days), and will be valid continuing until his testimony in the Connecticut Plaintiffs' case-in-chief is completed,  The Connecticut Plaintiffs will identify the start-date of that three day period on September 2, 2022.

11.     Any witnesses the Debtor and/or Jones intend to call live will be made available, in Connecticut, for the plaintiff's case-in-chief, at dates agreed upon by the parties. The Debtor will be authorized to pay the reasonable travel expenses and per diems of these witnesses in an amended

3

cash collateral budget, and the Connecticut Plaintiffs will not object to the budgeting or payment of those amounts.

12.     The Debtor and Jones will notify the Connecticut Plaintiffs as to which witnesses will be produced live on or before August 31, 2022 and will notify the Connecticut Plaintiffs as to the availability of those witnesses to testify in the Connecticut plaintiffs' case-in-chief on August 31 as well.  If those witnesses are not identified by that date and/or their availability not provided, then neither the Debtor nor Jones will call those witnesses live.

13.     The Debtor will not oppose or prevent the appearance of the following employee witnesses to testify live in Connecticut, and the Debtor will seek authorization to pay the reasonable travel expenses and per diems of these witnesses in an amended cash collateral budget, and the Connecticut Plaintiffs will not object to the budgeting or payment of those amounts:

> Owen Shroyer
> Daria Karpova
> Adan Salazar
> Christopher Daniels
> Louis Serrtuche
> Tim Fruge

14.     The Debtor will produce Brittany Paz, as a corporate designee for the Debtor, and the Connecticut Plaintiffs will not object to either the budgeting or payment of her reasonable compensation for testimony as the Debtor's corporate designee and $7,500 she is owed on a pre-petition basis as a critical vendor or by a co-defendant, without such payment being used as evidence in the State Court Litigation.

**NOW, THEREFORE, IT IS AGREED AND ORDERED THAT:**

1.     The automatic stay provision of 11 U.S.C. § 362(a) be and hereby is modified solely for the purpose of allowing the State Court Litigation to continue to proceed to judgment by the

002964

Connecticut State Court, subject to the approval of retention of state court trial counsel for FSS by the Bankruptcy Court, which order is being sought on an emergency basis by separate Motion.

2.      Except to assert the claim against the Debtor in the Debtor's bankruptcy case, the automatic stay shall continue to enjoin the Connecticut Plaintiffs and any other party, from exercising against the Debtor any remedies to collect or enforce any judgment against any assets of the Debtor or its bankruptcy estate including all property of the estate.  Nothing in this Order shall waive the rights of any party to the State Court Litigation, if any, to a stay of all actions on any judgment pending appeal

3.      All appeals of any judgment in the State Court Litigation by the Connecticut State Court are also not stayed and may proceed after judgment without further order of the Bankruptcy Court.

4.      Notwithstanding Bankruptcy Rule 4001(a)(3), the 14 days stay of an order granting relief from the automatic stay is waived, as the Court "orders otherwise".

5.      This Court shall retain sole and exclusive jurisdiction with respect to the automatic stay, its application to any actions other than those expressly provided for in this Order and any disputes arising in respect of termination of the lifting of the stay by failure to meet a necessary condition of the agreement reached between the parties and approved herein.

Houston, Texas
Dated: August ___, 2022

_____
UNITED STATES BANKRUPTCY JUDGE


*[Signature page follows}*

5

002965

AGREED TO IN FORM AND SUBSTANCE:

**FREE SPEECH SYSTEMS, LLC**                **THE CONNECTICUT PLAINTIFFS**


_____/s/Ray Battaglia_____          _____/s/ Ryan Chapple_____
Raymond W. Battaglia                        Ryan E. Chapple
State Bar No. 01918055                      State Bar No. 24036354
LAW OFFICES OF RAY BATTAGLIA, PLLC          CAIN & SKARNULIS PLLC

_Proposed Co- Counsel to the Debtor_        _Co-Counsel to the Connecticut Plaintiffs_



**ALEX JONES TO REFLECT
AGREEMENT TO PARAGRAPH 2**


_____/s/ Shelby Jordan_____
Shelby A. Jordan
State Bar No. 11016700
JORDAN & ORTIZ, P.C.

Counsel to Alex Jones

6

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22--60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| | § | |

**DEBTOR'S RESPONSE TO THE SANDY HOOK FAMILIES' CORRECTED MOTION
TO EXPEDITE MOTION TO (I) APPOINT TORT CLAIMANTS COMMITTEE AND
(II) REMOVE THE DEBTOR IN POSSESSION**

Free Speech Systems LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby files this response to *The Sandy Hook Families' Corrected Motion to Expedite Motion to (I) Appoint Tort Claimants' Committee and (II) Remove the Debtor in Possession* [ECF No. 107] (the "Motion to Expedite") filed by Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine ( the "Texas Plaintiffs") and David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (the "Connecticut Plaintiffs") (together the "Plaintiffs") and would state as follows:

**PRELIMINARY STATEMENT**

1.      The Plaintiffs' Motion to Expedite should be denied. First, there is no emergency justifying expedited relief present or even asserted. Second, the only issue in common among the Plaintiffs' *Motion to (I) Appoint Tort Claimants' Committee and (II) Remove the Debtor in Possession* [ECF No. 102] (the "Plaintiffs' Motion") and the Debtor's motion to use cash collateral [ECF No. 6] (the "Cash Collateral Motion") is whether the secured claim asserted by

002967

PQPR is void *ab initio*. But that issue is only tangentially relevant to the Plaintiffs' Motion, and judicial economy and the Debtor's estate is better served by holding separate hearings. The focus of the hearing on the Cash Collateral Motion should be on the validity of PQPR's asserted claim and the proposed use of cash collateral, rather than scurrilous attacks on the independence and business judgment of the Debtor's chief restricting officer (the "CRO"). Finally, there are additional reasons that justify allowing the full notice period for the Debtor and other parties-in-interest to respond to the Plaintiffs' Motion and holding separate hearings.

2.      While the Debtor and its CRO are endeavoring to reorganize the Debtor's business for the benefit of creditors, the Plaintiffs' objective is to put Alex Jones and the Debtor out of business.[1] The Plaintiffs' Motion is nothing more than a thinly veiled effort to derail the Debtor's reorganization in furtherance of that goal. The refusal of the Plaintiffs or their counsel to certify the accuracy of the Plaintiffs Motion as an emergency motion under Bankruptcy Local Rule 9013-1(i)—and instead seeking reduced notice through the limited Motion to Expedite—confirms that the Plaintiffs' Motion is just a distraction. Neither the Plaintiffs nor their counsel are willing to stand behind the allegations as required by this district's Bankruptcy Local Rules.

3.      At the end of the day, the Plaintiffs could have filed the Plaintiffs' Motion in time to be heard on regular notice if they wanted it considered at the same time as the Cash Collateral Motion. But they chose not to. They could have described the emergency requiring expedited relief and certified the accuracy of the Plaintiffs' Motion as required by the Bankruptcy Local Rules. But again, they chose not to. Under these circumstances, the Court should allow the Debtor and other parties in interest the twenty-one days to respond provided under the

---

[1] After the Petition Date, Chris Ball, an attorney representing the Texas Plaintiffs, made his clients' goals clear when he asked the jury in the Heslin/Lewis Suit to "*not only take Alex Jones's platform that he talks about away*" and "*make certain that he can't rebuild the platform*" and asserted "*that's what matters*." *See* https://www.youtube.com/clip/Ugkx811OqvsGol7sxgzxpL6LeZtf4BW-DVGH. The Plaintiffs are pursuing the same thing in this case and it is the very antithesis of the purposes of chapter 11 of the Bankruptcy Code.

002968

Bankruptcy Local Rules and time to conduct relevant discovery so they can fairly participate in this chapter 11 case.

## **RESPONSE**

### A.  There is No Emergency Justifying an Expedited Setting of the Plaintiffs' Motion.

4.      Emergency relief is only appropriate where a delay in the relief requested will cause material harm to the moving party or the bankruptcy estate. Bankruptcy Local Rule 9013-1(i) requires a "detailed statement why an emergency exists, and the date relief is needed to avoid the consequences of the emergency." In the same vein, this Court's procedures require an explanation in the body of the motion setting forth why emergency consideration is required and the harm that will be suffered if emergency relief is not obtained. *Court Procedures, Christopher M. Lopez, United States Bankruptcy Judge* at ¶ 5.

5.      No emergency exists here and neither the Plaintiffs' Motion nor the Motion to Expedite even attempt to argue that one does.[2] The Debtor's estate is operating profitably and generating significant positive cash flow. The Plaintiffs are actively involved in this chapter 11 case and able to investigate the Debtor's actions. The Debtor and PQPR have voluntarily agreed to provide the Plaintiffs and the Subchapter V Trustee all the information that a committee would customarily receive. If the Plaintiffs' Motion is an "emergency," it is hard to imagine *any* request for relief in a chapter 11 case for which the full notice period provided by the Bankruptcy Local Rules would be required.

---

[2] Merriam Webster provides two (2) definitions of "emergency": 1. "an unforeseen combination of circumstances or the resulting state that calls for immediate action" 2: an urgent need for assistance or relief. The Motion to Expedite fails to articulate any unforeseen circumstances requiring immediate action or urgent need for relief.

3

**B. Judicial Economy Would Not be Served by an Expedited Setting of the Plaintiffs' Motion at the Same Time as the Hearing on the Cash Collateral Motion.**

6.    The Plaintiffs attempt to justify an expedited setting on the grounds that "[m]any factual issues overlap between the cash collateral objections and the Sandy Hook Families' request to appoint a committee and remove the Debtor in Possession" and the reduced notice will enhance judicial economy. However, the Plaintiffs fail to identify any factual issues that overlap or describe how judicial economy would be better served by a combined hearing. There are none and it would not.

7.    The Plaintiffs objected to the Cash Collateral Motion on the grounds that the secured claim asserted by PQPR was void *ab initio* and use of cash collateral should be narrowly tailored with respect to insider payments. The Court has given the Plaintiffs wide latitude in the previous hearings on the use of cash collateral, but many hours of testimony and argument had absolutely nothing to do with the Plaintiffs' primary cash collateral objection.[3]

8.    While the issues in dispute on the Cash Collateral Motion are discrete, the Plaintiffs' Motion is more wide-ranging. The crux of that 10,000-word fiction is that removal of the Debtor as a debtor-in-possession and appointment of a tort claimants is justified because (1) the CRO had some undefined conflict of interest when he sent the Debtor an engagement letter on May 19, 2022, even though the Plaintiffs had taken action to dismiss all their claims against the InfoW Debtors with prejudice either by May 19, 2022; (2) the CRO's decision to address PQPR's lien through an avoidance action, a plan of reorganization, subordination, or other procedure after obtaining authority to use cash collateral; and (3) the Debtor engaged in insider

---

[3] Although the Debtor has doubts that either the Cash Collateral Motion or the Plaintiffs' Motion properly put the issue before the Court, no exigency exists that requires immediate consideration of the validity of the PQPR claim or lien. The Debtor and PQPR have not sough validation of the PQPR's asserted claim or liens in connection with the use of cash collateral. They have not sought a waiver of the rights to challenge PQPR's asserted claim or lien, nor have they requested any limited "challenge period" to contest PQPR's asserted claims or liens. And there is no jeopardy of limitations applying to any challenge to PQPR's claim or liens. Quite simply, there is no emergency even if the Plaintiffs' challenge to the Cash Collateral Motion fails.

002970

transactions and had substandard business operations and operating results prior to the Petition Date and the appointment of the CRO. Whether PQPR's asserted claim and lien are void *ab initio*—as opposed to merely avoidable under chapter 5 of the Bankruptcy Code or under TUFTA—is not *entirely* irrelevant to the Plaintiffs' Motion, but what is really at issue is whether the CRO exercised proper business judgement in deciding not to immediately challenge PQPR's claim in its first day motions.[4]

9.      Judicial economy and the Debtor's bankruptcy estate would be far better served if the hearing on cash collateral remains focused on the validity of PQPR's claim. If the Court allows the Plaintiffs to muddy the issue by setting the Plaintiffs' Motion at the same time as the Cash Collateral Motion, the hearing on cash collateral will devolve into the Plaintiffs' counsel throwing that mud instead of focusing on the evidence and arguments relevant to the validity of PQPR's claim and the wisdom of the proposed uses of cash on which PQPR asserts a lien. The result of a combined hearing would be more of the same absurd obfuscation of the cash collateral issues with improper character assassination of the CRO as has been the Plaintiffs main thrust to date.

C. **Other Cogent Reasons Compel Allowing the Full Notice Period and Hold Separate Hearings on the Cash Collateral Motion and the Plaintiffs' Motion.**

   i.   *Holding Hearings on the Cash Collateral Motion and the Plaintiffs' Motion at the Same Time Would Put the Debtor in a Difficult Position.*

10.     Combining the hearings on the Cash Collateral Motion and the Plaintiffs' Motion would also potentially put the Debtor in a catch-22. Responding to the Plaintiffs' Motion

---

[4] Most of the allegations in the Plaintiffs' Motion, if established, would tend toward PQPR's claim and/or lien being avoidable rather than void *ab initio*. The Debtor, through its CRO, recognized this and negotiated in its proposed cash collateral order for (a) no validation of PQPR's asserted claim or lien, (b) replacement liens only to the extent of the valid and unavoidable prepetition liens, (c) no releases of any causes of action, including avoidance actions, against PQPR, (d) no limit on the challenge period for any other party in interest in the Debtor's chapter 11 case, and (e) no restriction on the use of cash collateral to fund an avoidance action against PQPR. It is hard to imagine what else the Debtor could have received in a consensual cash collateral order, but the Plaintiffs views will presumably come to light in the hearing on the Cash Collateral Motion if the Plaintiffs are forced to focus.

002971

requires the Debtor to justify the business judgment behind its decision not to immediately challenge PQPR's asserted claim in connection with obtaining authority to use cash collateral. It would be useful—though not required—for the Debtor to present as evidence the documents that support the validity of PQPR's claim that the CRO considered when deciding to put off any fight with PQPR for another day.[5] However, that evidence would be contrary to the Plaintiff's position that PQPR's claim is invalid, to the detriment of the Debtor's estate.[6] The Court should not allow the Plaintiffs put the Debtor into that position through the dubious Motion to Expedite.

11.     Fortunately, there is a simple and practical solution. If the Court holds the hearing on the Plaintiffs' Motion *after* the hearing on the Cash Collateral Motion, the evidence for and against the validity of PQPR's claim will already have been presented to the Court and possibly ruled upon. Evidence showing the validity of the PQPR's claim and lien will have been submitted by PQPR, the entity with the clear interest in establishing the validity of its claim, rather than the Debtor incurring unnecessary expense trying to navigate between the Scylla and Charybdis that the Plaintiffs want to create to baselessly impede the Debtor's reorganization.[7]

---

[5] Although these documents are not strictly necessary to establish that the CRO exercised proper business judgment, they would be useful to the Court's final determination. The Debtor should be allowed to present such evidence in connection with the Plaintiffs' Motion without having to contradict the Plaintiffs' position that PQPR has no claim that requires adequate protection at the hearing on the Cash Collateral Hearing.

[6] It would of course be good for the Debtors' estate for the Plaintiffs to succeed in their opposition to PQPR's claim, even though there are significantly less expensive ways and more probable ways to achieve that result than in connection with a contested first-day motion for authority to use cash collateral.

[7] In any hearing on the use of cash collateral, "the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p)(2). The Debtor's burden is to establish that the proposed adequate protection is sufficient. 11 U.S.C. § 363(p)(1). The Plaintiffs are arguing, in effect, that *less or no* adequate protection is appropriate because PQPR does not have a valid claim secured by the Debtor's cash.

002972

ii. *Providing the Debtor and Other Parties in Interest the Standard Amount of Time to Respond to the Plaintiffs' Motion Would Allow the Debtor to Conduct Discovery and the Subchapter V Trustee to Investigate.*

12. The Debtor intends to take discovery related to the Plaintiffs' Motion. Written discovery will likely drastically reduce the disputed issues. Giving the Debtor twenty-one days to respond and setting a hearing a reasonable time thereafter will allow time for that process.

13. It would also give the Subchapter V Trustee time to investigate the costs and benefits of removing the Debtor as debtor in possession. The Debtor suggested to the Subchapter V Trustee prior to the filing of the Plaintiffs' Motion that she inspect the Debtor's operations but that has not yet been able to happen. Information about the ability of the Subchapter V Trustee to take control of the Debtor's operations without diminishing the value of the estate is necessary to determine whether to remove the Debtor as debtor-in-possession. The Court should allow reasonable time for that investigation.[8]

iii. *Allowing The Debtor and Other Parties in Interest the Standard Amount of Time to Respond to the Plaintiffs' Motion Would Allow the Plaintiffs to Properly Serve the Plaintiffs' Motion and Comply with the Bankruptcy Local Rules.*

14. Bankruptcy Local Rule 9013-1(d) governs service of pleadings related to contested matters in this district. The twenty largest unsecured creditors are among the parties that should be served with the Plaintiffs' Motion.

15. Here, the Plaintiffs failed to provide notice to any of the other unsecured creditors in this case of the Plaintiffs' Motion. The Plaintiffs are not the only creditors or parties in interest in this chapter 11 case and should not be allowed to ignore the notice requirements and trample the rights of other creditors whose primary interest is getting paid, not destroying the source from

---

[8] If anything, a reasonable amount of time would exceed the twenty-one-day period to respond provided under the Bankruptcy Local Rules. It would certainly not be less than that period.

7

which claims can be paid. Before a hearing on the Plaintiffs Motion takes place, this Court should compel the Plaintiffs to give adequate and proper service.

16.     Bankruptcy Local Rule 9013-1(i) is another problem for the Plaintiffs. The rule provides that "that a motion seeking an emergency hearing must be certified for its accuracy by the party seeking emergency relief or by its counsel." The allegations in the *motion* must be certified as accurate.

17.     In an apparent attempt to avoid certifying the accuracy of the Plaintiffs' Motion, the Plaintiffs instead filed it as a regular motion and then filed separately the Motion to Expedite. The certification attached to the Motion to Expedite provides:

### BLR 9013-1(i) CERTIFICATE

Pursuant to BLR 9013-1(i), I hereby certify that the information contained in the foregoing document with respect to the need for emergency relief is accurate, true, and correct to the best of my knowledge.

/s/ Jarrod B. Martin
Jarrod B. Martin

The only thing being certified as accurate is the "need for emergency relief." But the Motion to Expedite does not assert there *is* any need for emergency relief. *See supra* ¶ 5. The certification is a clever effort by the Plaintiffs to certify nothing at all.

18.     The reason for the reluctance of the Plaintiffs or their attorneys to certify the accuracy of the Plaintiffs' Motion will become obvious at trial. The evidence will show that the Plaintiffs' Motion is brimming with inaccuracies and allegations that have no basis in fact.

19.     The Bankruptcy Local Rules in this district make requesting emergency relief procedurally easy but require movants to stand behind their allegations through certification. The Plaintiffs and their counsel are unwilling to make that required certification and take responsibility for the many inaccuracies in the Plaintiffs' Motion. In light of this failure, the

002974

Court should give the Debtor and other parties in interest the full notice period provided by the Bankruptcy Local Rules and time for discovery.

## **CONCLUSION**

20.     There is no emergency here and judicial economy will not be served by an expedited hearing on the Plaintiffs' Motion. The Plaintiffs could have easily filed the Plaintiffs' Motion in time to allow it to be set at the same time as the Cash Collateral Motion. The Plaintiffs—or, more likely, their attorneys—chose not to do so, just like they chose not to properly serve the Plaintiffs' Motion or certify to its accuracy as required by the Bankruptcy Local Rules. The Motion to Expedite should therefore be denied and the hearing set after the Debtor and other parties in interest have the full twenty-one days to object and time to conduct discovery.

21.     Further, the hearing on the Plaintiffs' Motion should be conducted separately from the hearing on the Cash Collateral Motion. The factual and legal issues are distinct and judicial economy would be furthered by separate hearings. The Plaintiffs have wasted enough of the Court's time and the estate's money already.

*[Remainder of Page Intentionally Left Blank]*

002975

Dated: August 28, 2022.                        **LAW OFFICES OF RAY BATTAGLIA, PLLC**

/s/*Raymond W. Battaglia*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Counsel to the Debtor and Debtor-In-Possession*

-and-

**SHANNON & LEE LLP**

/s/*R. J. Shannon*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served (a) at the time of filing, by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service and (b) within one hour of filing, by email on the following parties:

Ryan Chapple
CAIN & SKARNULIS PLLC
303 Colorado Street Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Randy W. Williams
BYMAN & ASSOCIATES PLLC
7924 Broadway, Suite 104
Pearland, Texas 77581
rww@bymanlaw.com

Jarrod B. Martin
Chamberlain, Hrdlicka, White, Williams &
Aughtry, PC
1200 Smith Street, Suite 1400
Houston, TX 77002
jarrod.martin@chamberlainlaw.com

Avi Moshenberg
McDowell Hetherington LLP
1001 Fannin Street, Suite 2700
Houston, Texas 77002
avi.moshenberg@mhllp.com

Melissa Haselden
Subchapater V Trustee
700 Milam, Suite 1300
mhaselden@haseldenfarrow.com

Ha Nguyen
OFFICE OF THE U.S. TRUSTEE
515 Rusk Ave STE 3516
Houston, TX 77002
Ha.Nguyen@usdoj.gov

*/s/R. J. Shannon*
R. J. Shannon

002977

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

**ORDER APPROVING DEBTOR'S APPLICATION**
**TO EMPLOY THE REYNAL LAW FIRM, P.C. UNDER 11 U.S.C. § 327(e),**
**AS SPECIAL COUNSEL, *NUNC PRO TUNC* JULY 29, 2022**

Upon the application (the "Application")[1] filed by the Debtor to retain and employ The

Reynal Law Firm, P.C. ("The Reynal Firm") pursuant to Bankruptcy Code §§ 327(e) and 330 and

Bankruptcy Local Rule 2014-1, as more fully set forth in the Application and all exhibits and

attachments to the Application; and upon the Court's finding that (i) the Court has jurisdiction over

this matter pursuant to 28 U.S.C. § 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. §

157(b); (iii) venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the

Application, the Reynal Declaration and the Amended Reynal Declaration are in full compliance

with all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local

Rules, and Orders and procedures of this Court; (v) The Reynal Firm does not represent an interest

adverse to the Debtor's estate with respect to the matters upon which it is to be engaged; (vi) The

Reynal Firm is qualified to represent the Debtor's estate under § 327(e) of the Bankruptcy Code;

(vii) the terms of The Reynal Firm's employment have been disclosed and are reasonable under

---

[1]     Capitalized terms not defined herein have the meaning set forth in the Application or in the Agreed Order
Modifying the Automatic Stay to Allow the Connecticut Litigation to Continue to Final Judgement [Relates
to ECF No. 17, 78] ("Agreed Lift Stay Order").

the circumstances; (viii) proper and adequate notice of the Application, the deadline to file any objections to the Application, and the hearing thereon was given, and no other or further notice is necessary; (ix) the legal and factual bases set forth in the Application establish just cause for the relief granted herein; (x) the relief sought in the Application is in the best interest of the Debtor's estate; (xi) any timely objection to the Application having been withdrawn or overruled for the reasons stated on the record at the hearing on the Application (xii) the Debtor, Alex Jones and the Connecticut Plaintiffs have announced agreements on the record, including Connecticut Plaintiffs agreement not to object to the Debtor's retention of the Reynal Firm, as special counsel to the Debtor to, among other things, represent the Debtor and Jones jointly in the State Court Litigation, *provided that* no application for admission *pro hac vice* is made for attorney Reynal or any member of the Reynal Firm in the Connecticut State Court, and *further provided that* attorney Reynal is retained as non-appearing counsel in connection with the Connecticut State Court, and not to object to reasonable and necessary fees and expense of The Reynal Firm; (xiii) and it further appearing that the agreement by the Debtor and Alex Jones for the Debtor to pay only 50% of all the reasonable fees and expense of The Reynal Firm incurred under the Engagement Agreement has resolved the objection of the United States Trustee to the Application; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      In accordance with Bankruptcy Code §§ 327(e) and 330 and Bankruptcy Local Rule 2014-1, the Debtor is authorized to employ and retain The Reynal Firm commencing on July 29, 2022, as special counsel, under the terms and conditions set forth in the Application and the Engagement Letter attached to the Application as **Exhibit B** and this Order.

002979

2.      The Reynal Firm is authorized to perform Professional Services for the Debtor that are necessary or appropriate in connection with serving as special counsel in connection with the Matters and the agreements described in this Order.

3.      The Reynal Firm shall be compensated for its services and reimbursed for related expenses in accordance with the terms and conditions of the Engagement Agreement, as set forth in the Application and subject to the procedures Bankruptcy Code §§ 330 and 331 of the Bankruptcy Code, and in accordance with applicable Federal Rules of Bankruptcy Procedure, Local Rules, and any orders of this Court; provided however, the Debtor shall be authorized to pay only 50% of all the fees and expenses allowed by the Court to The Reynal Firm, notwithstanding any provision to the contrary in any other agreement between The Reynal Firm and the Debtor, as long as the Professional Services performed by The Reynal Firm involve both Alex Jones and the Debtor as parties to an action and comes within the scope of Professional Services described in the Engagement Letter.

4.      Pursuant to the Engagement Letter, FSS is authorized to provide The Reynal Firm the requested retainer of $50,000 (the "Retainer"). The Secured Lender consents to the provision of the Retainer to The Reynal Firm. The Reynal Firm shall hold the Retainer in trust on behalf of the Debtor, until further Order of the Court.

5.      All compensation for services rendered and reimbursement for expenses incurred in connection with the Debtor's bankruptcy case shall be paid after further application to and order of this Court, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and any orders of this Court.

6.      This Order shall be immediately effective and enforceable upon entry.

002980

7.      This Order, and all acts taken in furtherance or reliance thereon, shall be effective notwithstanding any objection until further order of this Court.

8.      Notwithstanding anything to the contrary in the Application, the Engagement Agreement, the Declaration attached to the Application and the Amended Declaration, The Reynal Firm shall not be entitled to reimbursement of expenses or fees from the Debtor in connection with any objection to its fees, without further order of the Court.

9.      The Reynal Firm shall not charge a markup to the Debtor with respect to any fees billed by contract attorneys who are hired by The Reynal Firm to provide services to the Debtor and shall ensure that any such contract attorneys are subject to conflicts checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

10.     The Reynal Firm shall provide ten-business-days' notice to the Debtor and the U.S. Trustee before any increases in the rates set forth in the Application or the Engagement Agreement are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in § 330 of the Bankruptcy Code. Furthermore, the Court retains the right to review any rate increases pursuant to § 330 of the Bankruptcy Code.

11.     The Reynal Firm shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals.

12.     The Reynal Firm will review its files periodically during the pendency of this chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, The Reynal Firm will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by FED. R. BANKR. P. 2014(a).

002981

13.     To the extent that any of the Application, the Reynal Declaration and Amended Declaration, or the Engagement Agreement are inconsistent with this Order, the terms of the Order shall govern.

14.     The Debtor and The Reynal Firm are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2022

_____
**UNITED STATES BANKRUPTCY JUDGE**

5

002982

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

**ORDER APPROVING DEBTOR'S APPLICATION**
**TO EMPLOY PATTIS & SMITH LLC UNDER 11 U.S.C. § 327(e) AND 328(a),**
**AS SPECIAL COUNSEL, *NUNC PRO TUNC* TO AUGUST 1, 2022**

Upon the application (the "Application")[1] filed by the Debtor to retain and employ Pattis

& Smith LLC   ("P&SLLC") pursuant to Bankruptcy Code §§ 327(e), 328(a)  and 330 and

Bankruptcy Local Rule 2014-1, as more fully set forth in the Application and all exhibits and

attachments to the Application; and upon the Court's finding that (i) the Court has jurisdiction over

this matter pursuant to 28 U.S.C. § 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. §

157(b); (iii) venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the

Application, the Pattis Declaration and the Amended Pattis Declaration are in full compliance with

all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and

Orders and procedures of this Court; (v) P&SLLC does not represent an interest adverse to the

Debtor's estate with respect to the matters upon which it is to be engaged; (vi) P&SLLC is qualified

to represent the Debtor's estate under § 327(e) and 328(a) of the Bankruptcy Code; (vii) the terms

of P&SLLC's employment have been disclosed and are reasonable under the circumstances under

---

[1]     Capitalized terms not defined herein have the meaning set forth in the Application or in the Agreed Order
Modifying the Automatic Stay to Allow the Connecticut Litigation to Continue to Final Judgement [Relates
to ECF No. 17, 78] ("Agreed Lift Stay Order").

.

§ 328(a) of the Bankruptcy Code; (viii) proper and adequate notice of the Application, the deadline to file any objections to the Application, and the hearing thereon was given, and no other or further notice is necessary; (ix) the legal and factual bases set forth in the Application establish just cause for the relief granted herein; (x) the relief sought in the Application is in the best interest of the Debtor's estate; (xi) any timely objection to the Application having been withdrawn or overruled for the reasons stated on the record at the hearing on the Application; (xii) the Debtor, Alex Jones and the Connecticut Plaintiffs have agreed that the Connecticut Plaintiffs will not object to Alex Jones and the Debtor bearing and paying 40%  and 60% of P&SLLC's 3-months of $100,000 per month flat fee respectively; (xiii) the Connecticut Plaintiffs have agreed not to object to P&SLLC receiving payment from non-debtor parties for services prior to the Starting Payment Date, defined below; (xiv) and it further appearing that the Connecticut Plaintiffs reserve their right to object to request by the Debtor for approval to continue the retention of P&SLLC beyond October 30, 2022, and to make additional payment to P&SLLC for fees for Professional Services beyond the fees to be paid for two months; (xv) and it further appearing that the U.S. Trustee does not oppose the retention and payment of P&SLLC as set out in this Order, while reserving his right to object to any continued retention and additional fees and expenses to P&SLLC beyond October 30, 2022; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      Except as modified by the provisions of and agreements contained in this Order, the Debtor is authorized to employ and retain P&SLLC commencing on August 1, 2022 through and including October 30, 2022 (the "Application Period"), as special counsel, under the terms and conditions set forth in the Application, the Engagement Letter attached to the Application as Exhibit B and this Order, in accordance with Bankruptcy Code §§ 327(e) and 328(a).

002984

2.      P&SLLC is authorized to perform the Professional Services for the Debtor that are necessary or appropriate in connection with serving as special counsel in connection with the Sandy Hook Lawsuits.

3.      P&SLLC shall be compensated for its services and reimbursed for related expenses in accordance with the terms and conditions of the Engagement Agreement, as set forth in the Application and subject to Bankruptcy Code §§ 328(a), 330 and 331 of the Bankruptcy Code, and in accordance with applicable Federal Rules of Bankruptcy Procedure, Local Rules, and any orders of this Court.

4.      Notwithstanding any contrary payment provisions in writing between the Debtor and P&SLLC and approval of retention of P&SLLC by the Debtor, effective as of August 1, 2022, the Debtor shall be liable to P&SLLC for only $180,000.00 of the $300,000.00 of the total flat fee for Professional Services performed by P&SLLC during the Application Period. Beginning on the date the automatic stay is lifted in favor of the Connecticut Plaintiffs to proceed with the Connecticut Lawsuits (the "Starting Payment Date") and for two months thereafter, P&SLLC shall be paid $100,000 by the Debtor on the 5th day of September, 2022 for first month of Professional Services, and $80,000 by the Debtor on the 5th day of October, 2022, for the second month of Professional Services.

5.      This Order is without prejudice to the Debtor seeking a further extension and continuation of retention of P&SLLC in connection with the Sandy Hook Lawsuits and the Connecticut Plaintiffs' and U.S. Trustee's reservation of their right to object.

6.      This Order shall be immediately effective and enforceable upon entry.

7.      This Order, and all acts taken in furtherance or reliance thereon, shall be effective notwithstanding any objection until further Order of this Court.

002985

8.      Notwithstanding anything to the contrary in the Application, the Engagement Agreement, or any Declarations filed in connection with the Application, P&SLLC shall not be entitled to reimbursement of expenses or fees from the Debtor in connection with any objection to its fees, without further Order of the Court.

9.      P&SLLC will review its files periodically during the pendency of this Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, P&SLLC will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by Fed. R. Bankr. P. 2014(a).

10.     To the extent that any of the Application, the Pattis Declaration, the Amended Pattis Declaration or the Engagement Agreement are inconsistent with this Order, the terms of the Order shall govern.

11.     The Debtor and P&SLLC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

12.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2022

_____
**UNITED STATES BANKRUPTCY JUDGE**

002986

AO 435
(Rev. 04/18)

ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

**TRANSCRIPT ORDER**

**FOR COURT USE ONLY**

**DUE DATE:**

*Please Read Instructions:*

| 1. NAME Ryan Chapple | 2. PHONE NUMBER (512) 477-5000 | 3. DATE 8/29/2022 | |
|---|---|---|---|
| 4. DELIVERY ADDRESS OR EMAIL rchapple@cstrial.com; aprentice@cstrial.com | 5. CITY Austin | 6. STATE TX | 7. ZIP CODE 78701 |

| 8. CASE NUMBER 22-60043 | 9. JUDGE Lopez | DATES OF PROCEEDINGS | |
|---|---|---|---|
| | | 10. FROM 8/29/2022 | 11. TO 8/29/2022 |
| 12. CASE NAME In re Free Speech Systems, LLC | | LOCATION OF PROCEEDINGS | |
| | | 13. CITY Houston | 14. STATE TX |

**15. ORDER FOR**

- [ ] APPEAL
- [ ] NON-APPEAL
- [ ] CRIMINAL
- [ ] CIVIL
- [ ] CRIMINAL JUSTICE ACT
- [ ] IN FORMA PAUPERIS
- [x] BANKRUPTCY
- [ ] OTHER

**16. TRANSCRIPT REQUESTED** (Specify portion(s) and date(s) of proceeding(s) for which transcript is requested)

| PORTIONS | DATE(S) | PORTION(S) | DATE(S) |
|---|---|---|---|
| [ ] VOIR DIRE | | [ ] TESTIMONY (Specify Witness) | |
| [x] OPENING STATEMENT (Plaintiff) | 8/29/2022 | | |
| [x] OPENING STATEMENT (Defendant) | 8/29/2022 | | |
| [x] CLOSING ARGUMENT (Plaintiff) | 8/29/2022 | [ ] PRE-TRIAL PROCEEDING (Spcy) | |
| [x] CLOSING ARGUMENT (Defendant) | 8/29/2022 | | |
| [x] OPINION OF COURT | 8/29/2022 | | |
| [ ] JURY INSTRUCTIONS | | [x] OTHER (Specify) | 8/29/2022 |
| [ ] SENTENCING | | ENTIRE HEARING | |
| [ ] BAIL HEARING | | | |

**17. ORDER**

| CATEGORY | ORIGINAL (Includes Certified Copy to Clerk for Records of the Court) | FIRST COPY | ADDITIONAL COPIES | NO. OF PAGES ESTIMATE | COSTS |
|---|---|---|---|---|---|
| ORDINARY | [ ] | [ ] | NO. OF COPIES | | |
| 14-Day | [ ] | [ ] | NO. OF COPIES | | |
| EXPEDITED | [ ] | [ ] | NO. OF COPIES | | |
| 3-Day | [ ] | [ ] | NO. OF COPIES | | |
| DAILY | [x] | | NO. OF COPIES | | |
| HOURLY | [ ] | [ ] | NO. OF COPIES | | |
| REALTIME | | | NO. OF COPIES | | |

| CERTIFICATION (18. & 19.) By signing below, I certify that I will pay all charges (deposit plus additional). | ESTIMATE TOTAL | 0.00 |
|---|---|---|

| 18. SIGNATURE /s/ Ryan Chapple | PROCESSED BY |
|---|---|
| 19. DATE 8/29/2022 | PHONE NUMBER |
| TRANSCRIPT TO BE PREPARED BY | COURT ADDRESS |

| | DATE | BY |
|---|---|---|
| ORDER RECEIVED | | |

| DEPOSIT PAID | | DEPOSIT PAID | |
|---|---|---|---|
| TRANSCRIPT ORDERED | | TOTAL CHARGES | 0.00 |
| TRANSCRIPT RECEIVED | | LESS DEPOSIT | 0.00 |
| ORDERING PARTY NOTIFIED TO PICK UP TRANSCRIPT | | TOTAL REFUNDED | |
| PARTY RECEIVED TRANSCRIPT | | TOTAL DUE | 0.00 |

002987

DISTRIBUTION:    COURT COPY    TRANSCRIPTION COPY    ORDER RECEIPT    ORDER COPY

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 29, 2022
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

**AGREED ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW THE
CONNECTICUT LITIGATION TO CONTINUE TO FINAL JUDGMENT
[RELATES TO ECF NOS. 15, 78]**

At Houston, in said District, came on for consideration the Emergency Motion for Relief from the Automatic Stay (the "Motion") filed by David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "Connecticut Plaintiffs"); and it appearing to the Court that notice of the hearing on the Motion is adequate, appropriate and sufficient under the circumstances of this case; and it further appearing to the Court that prior to the Petition Date, Connecticut Plaintiffs commenced three state-court actions against Free Speech Systems, LLC (the "Debtor" or "FSS") and non-debtor Alex Jones ("Jones") in the Connecticut Superior Court: *Lafferty v. Jones* (UWYCV18- 6046436-S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWYCV18- 6046438-S) which have been consolidated under *Lafferty v. Jones* (UWYCV18- 6046436-S) (collectively, the "State Court Litigation"); and it appearing that on July 29, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas, Victoria Division, which was later transferred to the Houston Division (the "Bankruptcy Court"); and the Connecticut Plaintiffs, the Debtor and Jones having reached the following agreement, set

1

forth here below, the Connecticut Plaintiffs and Jones having memorialized the aspects of their agreement pertaining to witnesses at trial separately:

**AGREEMENT BETWEEN THE CONNECTICUT PLAINTIFFS AND THE DEBTOR, WITH JONES AGREEING TO PARAGRAPH 2**

1.     This Agreement is contingent on the entry of the lift-stay order set forth below and is integral to the parties' agreement concerning the lifting of the automatic stay.

2.     The Debtor agrees to accept all jurors selected in the State Court Litigation prior to the lifting of the stay and agrees to waive, *nunc-pro-tunc,* any objections to the selection of those jurors on the basis of the lifting of the stay and any objections arising from FSS's non-participation in the voir dire process. Jones also waives any objections to the selection of those jurors on the basis of the lifting of the stay and any objections arising from FSS's non-participation in the voir dire process.

3.     The Debtor intends that Pattis & Smith, LLC ("Pattis"), present counsel for the Debtor and Jones in the State Court Litigation, shall continue to represent both the Debtor and Jones.

4.     To that end, the Debtor agrees to concurrently seek a separate order on an emergency basis from the Bankruptcy Court authorizing Pattis to represent the Debtor, which the Connecticut Plaintiffs will not oppose.

5.     The Connecticut Plaintiffs agree not to move to disqualify Pattis so long as Pattis continues to represent both the Debtor and Jones in the State Court Litigation.

6.     Jones and the Debtor agree that Pattis will represent them jointly.

7.     The Connecticut Plaintiffs agree not to object to the Debtor's retention of Pattis or The Reynal Law Firm LLP ("Reynal") as special litigation counsel jointly representing the Debtor

2

and Jones in the State Court Litigation, provided no application for admission *pro hac vice* is made for Reynal, or any member of that firm, in the Connecticut State Court, and Reynal is retained as non-appearing counsel only.

8.     The Connecticut Plaintiffs agree not to object to (a) the Debtor's request that Pattis receive a flat monthly fee of $100,000 for a two-month period, beginning on the date of the lift-stay and continuing two months thereafter, such flat fee to cover all legal services and out-of-pocket expenses rendered/incurred by Pattis during that period of time pursuant to sections 327(e) and 328(a) of the Bankruptcy Code or (b) Pattis receiving payment from non-debtor parties for services provided prior to such period. To the extent the Debtor requests Court approval for additional payment to Pattis in excess of this two-month period, the Connecticut Plaintiffs reserve their right to object to any such request to the extent such request is unreasonable.

9.     The Connecticut Plaintiffs agree not to object to the Debtor's retention of Reynal to represent the Debtor and Jones jointly as non-appearing counsel in connection with the State Court Litigation. The Connecticut Plaintiffs further agree not to object to reasonable and necessary fees and expenses of Reynal.

10.     The Debtor agrees that the Connecticut Plaintiffs' subpoena served on Jones will be valid for three trial days (not counting Mondays, which are not evidence days), and will be valid continuing until his testimony in the Connecticut Plaintiffs' case-in-chief is completed,  The Connecticut Plaintiffs will identify the start-date of that three day period on September 2, 2022.

11.     Any witnesses the Debtor and/or Jones intend to call live will be made available, in Connecticut, for the plaintiff's case-in-chief, at dates agreed upon by the parties. The Debtor will be authorized to pay the reasonable travel expenses and per diems of these witnesses in an amended

3

cash collateral budget, and the Connecticut Plaintiffs will not object to the budgeting or payment of those amounts.

12.     The Debtor and Jones will notify the Connecticut Plaintiffs as to which witnesses will be produced live on or before August 31, 2022 and will notify the Connecticut Plaintiffs as to the availability of those witnesses to testify in the Connecticut plaintiffs' case-in-chief on August 31 as well.  If those witnesses are not identified by that date and/or their availability not provided, then neither the Debtor nor Jones will call those witnesses live.

13.     The Debtor will not oppose or prevent the appearance of the following employee witnesses to testify live in Connecticut, and the Debtor will seek authorization to pay the reasonable travel expenses and per diems of these witnesses in an amended cash collateral budget, and the Connecticut Plaintiffs will not object to the budgeting or payment of those amounts:

Owen Shroyer
Daria Karpova
Adan Salazar
Christopher Daniels
Louis Serrtuche
Tim Fruge

14.     The Debtor will produce Brittany Paz, as a corporate designee for the Debtor, and the Connecticut Plaintiffs will not object to either the budgeting or payment of her reasonable compensation for testimony as the Debtor's corporate designee and $7,500 she is owed on a pre-petition basis as a critical vendor or by a co-defendant, without such payment being used as evidence in the State Court Litigation.

**NOW, THEREFORE, IT IS AGREED AND ORDERED THAT:**

1.     The automatic stay provision of 11 U.S.C. § 362(a) be and hereby is modified solely for the purpose of allowing the State Court Litigation to continue to proceed to judgment by the

002991

Connecticut State Court, subject to the approval of retention of state court trial counsel for FSS by the Bankruptcy Court, which order is being sought on an emergency basis by separate applications.

2.      Except to assert the claim against the Debtor in the Debtor's bankruptcy case, the automatic stay shall continue to enjoin the Connecticut Plaintiffs and any other party, from exercising against the Debtor any remedies to collect or enforce any judgment against any assets of the Debtor or its bankruptcy estate including all property of the estate.  Nothing in this Order shall waive the rights of any party to the State Court Litigation, if any, to a stay of all actions on any judgment pending appeal

3.      All appeals of any judgment in the State Court Litigation by the Connecticut State Court are also not stayed and may proceed after judgment without further order of the Bankruptcy Court.

4.      Notwithstanding Bankruptcy Rule 4001(a)(3), the 14 days stay of an order granting relief from the automatic stay is waived, as the Court "orders otherwise".

5.      This Court shall retain sole and exclusive jurisdiction with respect to the automatic stay, its application to any actions other than those expressly provided for in this Order and any disputes arising in respect of termination of the lifting of the stay by failure to meet a necessary condition of the agreement reached between the parties and approved herein.


Signed:  August 29, 2022

Christopher Lopez
United States Bankruptcy Judge


*[Signature page follows}*

5

002992

AGREED TO IN FORM AND SUBSTANCE:

**FREE SPEECH SYSTEMS, LLC**                **THE CONNECTICUT PLAINTIFFS**


_____/s/Ray Battaglia_____          _____/s/ Ryan Chapple_____
Raymond W. Battaglia                     Ryan E. Chapple
State Bar No. 01918055                   State Bar No. 24036354
LAW OFFICES OF RAY BATTAGLIA, PLLC       CAIN & SKARNULIS PLLC

*Proposed Co- Counsel to the Debtor*     *Co-Counsel to the Connecticut Plaintiffs*



**ALEX JONES TO REFLECT
AGREEMENT TO PARAGRAPH 2**


_____/s/ Shelby Jordan_____
Shelby A. Jordan
State Bar No. 11016700
JORDAN & ORTIZ, P.C.

Counsel to Alex Jones

6

**UNITED STATES BANKRUPTCY COURT**

**Southern District of Texas**

PDF FILE WITH AUDIO FILE ATTACHMENT

2022-60043

Free Speech Systems LLC

| | |
|---|---|
| Case Type : | bk |
| Case Number : | 2022-60043 |
| Case Title : | Free Speech Systems LLC |
| Audio Date\Time: | 8/29/2022 12:59:58 PM |
| Audio File Name : | 4bk2022-60043_20220829-125958.mp3 |
| Audio File Size : | 16388 KB |
| Audio Run Time : | [00:34:08] (hh:mm:ss) |

**Help using this file:**

An audio file is embedded as an attachment in this PDF document. To listen to the file, click the Attachments tab or the Paper Clip icon.  Select the Audio File and click Open.

**MPEG Layer-3 audio coding technology from Fraunhofer IIS and Thomson.**

**This digital recording is a copy of a court proceeding and is provided as a convenience to the public.  In accordance with 28 U.S.C. § 753 (b) "[n]o transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record."**

002994

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 29, 2022

Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

**ORDER APPROVING DEBTOR'S APPLICATION
TO EMPLOY THE REYNAL LAW FIRM, P.C. UNDER 11 U.S.C. § 327(e),
AS SPECIAL COUNSEL, EFFECTIVE  AS JULY 29, 2022**

Upon the application (the "Application")[1] filed by the Debtor to retain and employ The

Reynal Law Firm, P.C. ("The Reynal Firm") pursuant to Bankruptcy Code §§ 327(e) and 330 and

Bankruptcy Local Rule 2014-1, as more fully set forth in the Application and all exhibits and

attachments to the Application; and upon the Court's finding that (i) the Court has jurisdiction over

this matter pursuant to 28 U.S.C. § 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. §

157(b); (iii) venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the

Application, the Reynal Declaration and the Amended Reynal Declaration are in full compliance

with all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local

Rules, and Orders and procedures of this Court; (v) The Reynal Firm does not represent an interest

adverse to the Debtor's estate with respect to the matters upon which it is to be engaged; (vi) The

Reynal Firm is qualified to represent the Debtor's estate under § 327(e) of the Bankruptcy Code;

(vii) the terms of The Reynal Firm's employment have been disclosed and are reasonable under

---

[1]     Capitalized terms not defined herein have the meaning set forth in the Application or in the Agreed Order
Modifying the Automatic Stay to Allow the Connecticut Litigation to Continue to Final Judgement [Relates
to ECF No. 15, 78] ("Agreed Lift Stay Order").

the circumstances; (viii) proper and adequate notice of the Application, the deadline to file any objections to the Application, and the hearing thereon was given, and no other or further notice is necessary; (ix) the legal and factual bases set forth in the Application establish just cause for the relief granted herein; (x) the relief sought in the Application is in the best interest of the Debtor's estate; (xi) any timely objection to the Application having been withdrawn or overruled for the reasons stated on the record at the hearing on the Application (xii) the Debtor, Alex Jones and  the Connecticut Plaintiffs have announced agreements on the record, including Connecticut Plaintiffs agreement not to object to the Debtor's retention of the Reynal Firm, as special counsel to the Debtor to, among other things, represent the Debtor and Jones jointly in the State Court Litigation, *provided that* no application for admission *pro hac vice* is made for attorney Reynal or any member of the Reynal Firm in the Connecticut State Court, and *further provided that* attorney Reynal is retained as non-appearing counsel in connection with the Connecticut State Court, and not to object to reasonable and necessary fees and expense of The Reynal Firm; (xiii) and it further appearing that the agreement by the Debtor and Alex Jones for the Debtor to pay only 50% of all the reasonable fees and expense of The Reynal Firm incurred under the Engagement Agreement has resolved the objection of the United States Trustee to the Application; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      In accordance with Bankruptcy Code §§ 327(e) and 330 and Bankruptcy Local Rule 2014-1, the Debtor is authorized to employ and retain The Reynal Firm commencing on July 29, 2022, as special counsel, under the terms and conditions set forth in the Application and the Engagement Letter attached to the Application as **Exhibit A** and this Order.

2

2.      The Reynal Firm is authorized to perform Professional Services for the Debtor that are necessary or appropriate in connection with serving as special counsel in connection with the Matters and the agreements described in this Order.

3.      The Reynal Firm shall be compensated for its services and reimbursed for related expenses in accordance with the terms and conditions of the Engagement Agreement, as set forth in the Application and subject to the procedures Bankruptcy Code §§ 330 and 331 of the Bankruptcy Code, and in accordance with applicable Federal Rules of Bankruptcy Procedure, Local Rules, and any orders of this Court; provided however, the Debtor shall be authorized to pay only 50% of all the fees and expenses allowed by the Court to The Reynal Firm, notwithstanding any provision to the contrary in any other agreement between The Reynal Firm and the Debtor, as long as the Professional Services performed by The Reynal Firm involve both Alex Jones and the Debtor as parties to an action and comes within the scope of Professional Services described in the Engagement Letter.

4.      Pursuant to the Engagement Letter, FSS is authorized to provide The Reynal Firm the requested retainer of $50,000 (the "Retainer"). The Secured Lender consents to the provision of the Retainer to The Reynal Firm. The Reynal Firm shall hold the Retainer in trust on behalf of the Debtor, until further Order of the Court.

5.      All compensation for services rendered and reimbursement for expenses incurred in connection with the Debtor's bankruptcy case shall be paid after further application to and order of this Court, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and any orders of this Court.

6.      This Order shall be immediately effective and enforceable upon entry.

3

7.      This Order, and all acts taken in furtherance or reliance thereon, shall be effective notwithstanding any objection until further order of this Court.

8.      Notwithstanding anything to the contrary in the Application, the Engagement Agreement, the Declaration attached to the Application and the Amended Declaration, The Reynal Firm shall not be entitled to reimbursement of expenses or fees from the Debtor in connection with any objection to its fees, without further order of the Court.

9.      The Reynal Firm shall not charge a markup to the Debtor with respect to any fees billed by contract attorneys who are hired by The Reynal Firm to provide services to the Debtor and shall ensure that any such contract attorneys are subject to conflicts checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

10.     The Reynal Firm shall provide ten-business-days' notice to the Debtor and the U.S. Trustee before any increases in the rates set forth in the Application or the Engagement Agreement are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in § 330 of the Bankruptcy Code. Furthermore, the Court retains the right to review any rate increases pursuant to § 330 of the Bankruptcy Code.

11.     The Reynal Firm shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals.

12.     The Reynal Firm will review its files periodically during the pendency of this chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, The Reynal Firm will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by FED. R. BANKR. P. 2014(a).

002998

13.     To the extent that any of the Application, the Reynal Declaration and Amended Declaration, or the Engagement Agreement are inconsistent with this Order, the terms of the Order shall govern.

14.     The Debtor and The Reynal Firm are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Signed:  August 29, 2022

_____
Christopher Lopez
United States Bankruptcy Judge

5

002999

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 29, 2022

Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

**ORDER APPROVING DEBTOR'S APPLICATION**
**TO EMPLOY PATTIS & SMITH LLC UNDER 11 U.S.C. § 327(e) AND 328(a),**
**AS SPECIAL COUNSEL, EFFECTIVE AS AUGUST 1, 2022**

Upon the application (the "Application")[1] filed by the Debtor to retain and employ Pattis

& Smith LLC ("P&SLLC") pursuant to Bankruptcy Code §§ 327(e), 328(a) and 330 and

Bankruptcy Local Rule 2014-1, as more fully set forth in the Application and all exhibits and

attachments to the Application; and upon the Court's finding that (i) the Court has jurisdiction over

this matter pursuant to 28 U.S.C. § 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. §

157(b); (iii) venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the

Application, the Pattis Declaration and the Amended Pattis Declaration are in full compliance with

all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and

Orders and procedures of this Court; (v) P&SLLC does not represent an interest adverse to the

Debtor's estate with respect to the matters upon which it is to be engaged; (vi) P&SLLC is qualified

to represent the Debtor's estate under § 327(e) and 328(a) of the Bankruptcy Code; (vii) the terms

of P&SLLC's employment have been disclosed and are reasonable under the circumstances under

---

[1]        Capitalized terms not defined herein have the meaning set forth in the Application or in the Agreed Order
Modifying the Automatic Stay to Allow the Connecticut Litigation to Continue to Final Judgement [Relates
to ECF No. 15, 78] ("Agreed Lift Stay Order").

.

§ 328(a) of the Bankruptcy Code; (viii) proper and adequate notice of the Application, the deadline to file any objections to the Application, and the hearing thereon was given, and no other or further notice is necessary; (ix) the legal and factual bases set forth in the Application establish just cause for the relief granted herein; (x) the relief sought in the Application is in the best interest of the Debtor's estate; (xi) any timely objection to the Application having been withdrawn or overruled for the reasons stated on the record at the hearing on the Application; (xii) the Debtor, Alex Jones and the Connecticut Plaintiffs have agreed that the Connecticut Plaintiffs will not object to Alex Jones and the Debtor bearing and paying 40%  and 60% of P&SLLC's 3-months of $100,000 per month flat fee respectively; (xiii) the Connecticut Plaintiffs have agreed not to object to P&SLLC receiving payment from non-debtor parties for services prior to the Starting Payment Date, defined below; (xiv) and it further appearing that the Connecticut Plaintiffs reserve their right to object to request by the Debtor for approval to continue the retention of P&SLLC beyond October 30, 2022, and to make additional payment to P&SLLC for fees for Professional Services beyond the fees to be paid for two months; (xv) and it further appearing that the U.S. Trustee does not oppose the retention and payment of P&SLLC as set out in this Order, while reserving his right to object to any continued retention and additional fees and expenses to P&SLLC beyond October 30, 2022; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      Except as modified by the provisions of and agreements contained in this Order, the Debtor is authorized to employ and retain P&SLLC commencing on August 1, 2022 through and including October 30, 2022 (the "Application Period"), as special counsel, under the terms and conditions set forth in the Application, the Engagement Letter attached to the Application as Exhibit A and this Order, in accordance with Bankruptcy Code §§ 327(e) and 328(a).

2

2.      P&SLLC is authorized to perform the Professional Services for the Debtor that are necessary or appropriate in connection with serving as special counsel in connection with the Sandy Hook Lawsuits.

3.      P&SLLC shall be compensated for its services and reimbursed for related expenses in accordance with the terms and conditions of the Engagement Agreement, as set forth in the Application and subject to Bankruptcy Code §§ 328(a), 330 and 331 of the Bankruptcy Code, and in accordance with applicable Federal Rules of Bankruptcy Procedure, Local Rules, and any orders of this Court.

4.      Notwithstanding any contrary payment provisions in writing between the Debtor and P&SLLC and approval of retention of P&SLLC by the Debtor, effective as of August 1, 2022, the Debtor shall be liable to P&SLLC for only $180,000.00 of the $300,000.00 of the total flat fee for Professional Services performed by P&SLLC during the Application Period. Beginning on the date the automatic stay is lifted in favor of the Connecticut Plaintiffs to proceed with the Connecticut Lawsuits (the "Starting Payment Date") and for two months thereafter, P&SLLC shall be paid $100,000 by the Debtor on the 5th day of September, 2022 for first month of Professional Services, and $80,000 by the Debtor on the 5th day of October, 2022, for the second month of Professional Services.

5.      This Order is without prejudice to the Debtor seeking a further extension and continuation of retention of P&SLLC in connection with the Sandy Hook Lawsuits and the Connecticut Plaintiffs' and U.S. Trustee's reservation of their right to object.

6.      This Order shall be immediately effective and enforceable upon entry.

7.      This Order, and all acts taken in furtherance or reliance thereon, shall be effective notwithstanding any objection until further Order of this Court.

003002

8.      Notwithstanding anything to the contrary in the Application, the Engagement Agreement, or any Declarations filed in connection with the Application, P&SLLC shall not be entitled to reimbursement of expenses or fees from the Debtor in connection with any objection to its fees, without further Order of the Court.

9.      P&SLLC will review its files periodically during the pendency of this Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, P&SLLC will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by FED. R. BANKR. P. 2014(a).

10.     To the extent that any of the Application, the Pattis Declaration, the Amended Pattis Declaration or the Engagement Agreement are inconsistent with this Order, the terms of the Order shall govern.

11.     The Debtor and P&SLLC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

12.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Signed:  August 29, 2022

Christopher Lopez
United States Bankruptcy Judge

4

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

**GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY, AND
DISCLAIMER REGARDING DEBTOR'S SCHEDULES AND STATEMENTS**

The Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Schedules and Statements") filed by Free Speech Systems, LLC, the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor") are unaudited and were prepared pursuant to section 521 of Title 11 of the United States Code and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") by the Debtor's chief restructuring officer (the "CRO"). While the CRO has made reasonable efforts to file complete and accurate Schedules and Statements based upon information available at the time of preparation, the Schedules and Statements remain subject to further review and verification by the Debtor. Subsequent information may result in material changes in financial and other data contained in the Schedules and Statements. The Debtor reserves the right to amend its Schedules and Statements from time to time as may be necessary or appropriate. The Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding Debtor's Schedules and Statements (the "Global Notes") is incorporated by reference in, and comprises an integral part of, the Schedules and Statements and should be referred to and reviewed in connection with any review of the Schedules and Statements.

1.      Description of the Cases and "As Of" Information Date. On July 29, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor currently operates its business and possess its property as a debtor-in-possession under section 1184 of the Bankruptcy Code. Unless otherwise noted, all asset and liability information is as of the Petition Date.

2.      Basis of Presentation. These Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), nor are they intended to fully reconcile to any financial statements otherwise prepared and/or distributed by the Debtor.

3.      Causes of Action. Despite its reasonable efforts, as described above, the Debtor may not have set forth all of its claims, causes of actions and potential recoveries in its Schedules and Statements. The Debtor reserves all rights with respect to any causes of action it may possess, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such causes of action.

003004

4.      Insiders. The listing or failure to list a person or other entity as an "insider" in the Schedules and Statements is not intended to be nor should it be construed as a binding admission that such person or entity is or is not an insider. The Debtor reserves the right to dispute or challenge the designation of any individual or entity in connection with any other matter arising in the Debtor's chapter 11 case.

5.      Intellectual Property Rights. Any omission of intellectual property from the Schedules and Statements shall not be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms or have been assigned or otherwise transferred pursuant to a sale, acquisition or other transaction.  In accordance with the foregoing, the Debtor reserves all of its rights with respect to the legal status of any and all intellectual property rights, regardless of whether such intellectual property rights are or are not listed in the Schedules and Statements.

6.      Summary of Significant Reporting Policies. The Schedules and Statements have been signed by W. Marc Schwartz, the CRO to the Debtor. In reviewing and signing the Schedules and Statements, Mr. Schwartz has necessarily relied upon the efforts, statements, and representations of the Debtor's business records and personnel. Mr. Schwartz has not personally verified the accuracy of each such statement and representation, including, but not limited to, statements and representations concerning amounts owed to creditors. The Debtor made reasonable efforts to accurately report asset, liability, disbursement and other information on its Statements and Schedules, and the Debtor adopted the following conventions in the preparation of the Schedules and Statements.

a.      Fair Market Value; Book Value. Unless otherwise noted, the value of each asset and liability of the Debtor is shown on the basis of the book value of such asset or liability in the Debtor's accounting books and records. As applicable, assets that have been fully depreciated or were expensed for accounting purposes have no net book value. As a result, the value of the Debtor's assets and liabilities set forth on the Schedules and Statements may not always reflect the current market values of such property and/or liabilities. The Debtor reserves its right to amend or adjust the value of each asset or liability set forth herein.

b.      Liabilities. The Debtor reserves the right to dispute any liability indicated in its Schedules notwithstanding the designation in the Schedules and Statements.

c.      Claims. The Debtor's Schedules and Statements list creditors and set forth the Debtor's estimate of the claims of creditors as of the Petition Date. The Bankruptcy Court has authorized the Debtor to, among other things make payments to certain critical vendors and utility providers. As a result, the actual unpaid claims of creditors that ultimately may be allowed in this case may differ from the amounts set forth in the Schedules and Statements. The inclusion of any such amounts in the Schedules and Statements shall not be deemed to obligate the Debtor to pay such amounts in and of themselves.

d.      Disputed, Contingent and/or Unliquidated Claims. Schedules D and E/F permit the Debtor to designate a claim as disputed, contingent and/or unliquidated. A failure

2

to designate a claim on any of these Schedules as disputed, contingent and/or unliquidated does not constitute an admission that such claim is not subject to objection. The Debtor reserves the right to dispute, or assert offsets or defenses to, any claim reflected on these Schedules as to amount, liability, or status. Moreover, the Debtor reserves the right to amend its Schedules and Statements as necessary and appropriate.

7.   <u>General Conventions Relating to the Schedules of Assets and Liabilities</u>. The

Debtor adopted the following conventions in connection with the preparation of the Schedules:

a.   <u>Schedule D</u>. Except as otherwise agreed pursuant to a stipulation or agreed order entered by the Bankruptcy Court, the Debtor reserves the right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of the Debtor. Moreover, although the Debtor may have scheduled claims of various creditors as secured claims, the Debtor reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim. The descriptions provided on Schedule D are intended only to be a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

b.   <u>Schedule G</u>. While reasonable efforts have been made to ensure the accuracy of the Schedule of Executory Contracts, inadvertent errors or omissions may have occurred. The Debtor hereby reserves all rights to dispute the validity, status or enforceability of any contract, agreement or lease set forth on Schedule G and to amend or supplement such Schedule as necessary. The contracts, agreements and leases listed on Schedule G may have expired or may have been modified, amended or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letter and other documents, instruments and agreements which may not be listed therein. Certain of the real property leases listed on Schedule G may contain renewal options, guarantees of payments, options to purchase, rights of first refusal, rights to lease additional space and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth on Schedule G. Certain of the executory agreements may not have been memorialized and could be subject to dispute. Additionally, the Debtor may be parties to various other agreements concerning real property, such as easements, rights of way, subordination, non-disturbance, supplemental agreements, amendments/letter agreements, title documents, consents, site plans, maps and other miscellaneous agreements. Such agreements, if any, are not set forth on Schedule G. Certain of the agreements listed on

3

Schedule G may be in the nature of conditional sales agreements or secured financings. The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease. The Debtor reserves all rights, claims and causes of action with respect to the contracts and agreements listed on these Schedules and Statements, including the right to dispute or challenge the characterization or the structure of any transaction, document or instrument.

c.      <u>Schedule H</u>. Codefendants in litigation matters involving the Debtor are not listed in Schedule H unless the trial court has made a ruling that results in an identity of interest between the Debtor and such co-defendant.

[*Remainder of Page Intentionally Left Blank*]

003007

**Fill in this information to identify the case:**

Debtor name ___Free Speech Systems, LLC___

United States Bankruptcy Court for the: ___Southern___ District of ___Texas___
(State)

Case number (If known): ___22-60043___

☐ Check if this is an amended filing

Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals

12/15

---

### Part 1:  Summary of Assets

1. **Schedule A/B: Assets–Real and Personal Property** (Official Form 206A/B)

    1a. **Real property:**
    Copy line 88 from *Schedule A/B*.................................................

$ 1,335,971.23

    1b. **Total personal property:**
    Copy line 91A from *Schedule A/B*.............................................

$ 13,327,463.23

    1c. **Total of all property:**
    Copy line 92 from *Schedule A/B*...............................................

$ 14,663,434.46

---

### Part 2:  Summary of Liabilities

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
    Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*.............................

$ 53,646,687.84

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

    3a. **Total claim amounts of priority unsecured claims:**
    Copy the total claims from Part 1 from line 5a of *Schedule E/F* .........................

$ _____

    3b. **Total amount of claims of nonpriority amount of unsecured claims:**
    Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F* ....................

+ $ 995,824.64

4. **Total liabilities**.....................................................................
    Lines 2 + 3a + 3b

$ 54,642,512.48

---

003008

**Fill in this information to identify the case:**

Debtor name __Free Speech Systems, LLC__

United States Bankruptcy Court for the: __Southern__   District of __Texas__
(State)

Case number (if known): __22-60043__

☐ Check if this is an amended filing

## Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property   12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

### Part 1:   Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

   ☐ No. Go to Part 2.
   ☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

2. **Cash on hand** — $ 951.31

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

   Please see attached schedule for additional Bank accounts

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1. ███████ | Checking | 8 5 6 3 | $ 118,999.04 |
| 3.2. ███████ | Checking | 8 5 1 4 | $ 1,163,808.79 |

   *See continuation sheet*

4. **Other cash equivalents** *(Identify all)*

   4.1. ___ — $_____
   4.2. _____ $_____

5. **Total of Part 1** — $1,284,759.14

   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

### Part 2:   Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

   ☐ No. Go to Part 3.
   ☑ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

7. **Deposits, including security deposits and utility deposits**

   Description, including name of holder of deposit

| 7.1. ███████ (Credit card processing) | $ 500,000.00 |
|---|---|
| 7.2. LIT Industrial (Security Deposit) | $ 33,360.00 |

Debtor  Free Speech Systems, LLC _____  Case number (if known) 22 60043 _____

Name

---

**8  Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**  Please see attached schedule
for additional prepayments

Description, including name of holder of prepayment

8 1. The Travelers Companies (Prepaid Insurance) _____  $ 1,224.50

8.2. The Hartford (Prepaid Insurance) _____  $ 1,444.31

\* See continuation sheet \*

**9. Total of Part 2.**  $ 687,969.95

Add lines 7 through 8. Copy the total to line 81.

---

### Part 3:  Accounts receivable

**10.  Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.

☑ Yes. Fill in the information below.

|  |  | **Current value of debtor's interest** |
|---|---|---|

**11  Accounts receivable**

| | face amount | doubtful or uncollectible accounts | | Current value of debtor's interest |
|---|---|---|---|---|
| 11a. 90 days old or less: | 0.00 | – 0.00 | = ......→ | $ 0.00 |
| 11b. Over 90 days old: | 9,788,413.22 | – 0.00 | = ......→ | $ 9,788,413 22 |

**12  Total of Part 3**  $ 9,788,413.22

Current value on lines 11a + 11b = line 12. Copy the total to line 82.

---

### Part 4:  Investments

**13.  Does the debtor own any investments?**

☑ No. Go to Part 5.

☐ Yes. Fill in the information below.

|  | **Valuation method used for current value** | **Current value of debtor's interest** |
|---|---|---|

**14.  Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

| 14 1. _____ | _____ | $ _____ |
| 14.2. _____ | _____ | $ _____ |

**15.  Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:                                    % of ownership:

| 15.1. _____ | _____ % | _____ | $ _____ |
| 15.2. _____ | _____ % | _____ | $ _____ |

**16.  Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

| 16.1. _____ | _____ | $ _____ |
| 16.2. _____ | _____ | $ _____ |

**17.  Total of Part 4**  $ 0.00

Add lines 14 through 16. Copy the total to line 83.

---

Debtor     Free Speech Systems, LLC
           _____          Case number (if known) 22-60043
           Name

---

**Part 5:    Inventory, excluding agriculture assets**

18. Does the debtor own any inventory (excluding agriculture assets)?

☐ No. Go to Part 6.

☑ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. **Raw materials** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |
| 20. **Work in progress** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |
| 21. **Finished goods, including goods held for resale** | | | | |
| Merchandise | 07/29/2022 MM / DD / YYYY | $ 1,327,107.43 | Net Book Value | $ 1,327,107.43 |
| 22. **Other inventory or supplies** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |

23. **Total of Part 5**
    Add lines 19 through 22. Copy the total to line 84.
    $ 1,327,107.43

24. Is any of the property listed in Part 5 perishable?
    ☐ No
    ☐ Yes

25. Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?
    ☐ No
    ☐ Yes. Book value 89,882.37     Valuation method Net Book Value     Current value 89,882.37

26. Has any of the property listed in Part 5 been appraised by a professional within the last year?
    ☐ No
    ☐ Yes

---

**Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)**

27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28. **Crops—either planted or harvested** | | | |
| _____ | $_____ | _____ | $_____ |
| 29. **Farm animals** Examples: Livestock, poultry, farm-raised fish | | | |
| _____ | $_____ | _____ | $_____ |
| 30. **Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| _____ | $_____ | _____ | $_____ |
| 31. **Farm and fishing supplies, chemicals, and feed** | | | |
| _____ | $_____ | _____ | $_____ |
| 32. **Other farming and fishing-related property not already listed in Part 6** | | | |
| _____ | $____ | _____ | $_____ |

Debtor **Free Speech Systems, LLC**
_____
Name

Case number (if known) 22-60043
_____

33. **Total of Part 6.**

Add lines 28 through 32. Copy the total to line 85.

$ 0.00

34. **Is the debtor a member of an agricultural cooperative?**

☐ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

☐ No

☐ Yes

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes. Book value $_____ Valuation method _____ Current value $_____

36. **Is a depreciation schedule available for any of the property listed in Part 6?**

☐ No

☐ Yes

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☐ No

☐ Yes

---

**Part 7:** **Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.

☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** | | | |
| Rugs, Chairs, Lamps and other Office Furnitures | $ 3,285.92 | Net Book Value | $ 3,285.92 |
| 40. **Office fixtures** | | | |
| | $ ___ | _____ | $_____ |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| Computer Equipments and Software | $ 44,180.49 | Net Book Value | $ 44,180.49 |
| 42. **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1 Artwork | $ 73.00 | Net Book Value | $ 73.00 |
| 42.2 _____ | $_____ | _____ | $_____ |
| 42.3 _____ | $_____ | _____ | $_____ |

43. **Total of Part 7.**

Add lines 39 through 42. Copy the total to line 86.

$ 47,539.41

44. **Is a depreciation schedule available for any of the property listed in Part 7?**

☐ No

☑ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☑ No

☐ Yes

003012

Debtor  Free Speech Systems, LLC _____     Case number *(if known)* 22-60043 _____
        Name

## Part 8:  Machinery, equipment, and vehicles

46.  **Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.

☑ Yes. Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e , VIN, HIN, or N-number) | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47.  Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1  2021 Winnebago Adventurer Model 35F (VIN:1F66F5DN1LOA03038) | $ 0.00 | Net Book Value | $ 0.00 |
| 47 2  2015 Ford F-450 Model F45 (VIN: 1FDUF4HT0FEC06013) | $ 148,890.74 | Net Book Value | $ 148,890.74 |
| 47 3 _____ | $ _____ | _____ | $ _____ |
| 47.4 _____ | $ _____ | _____ | $ _____ |
| **48.  Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 48.1 _____ | $ _____ | _____ | $ _____ |
| 48.2 _____ | $ _____ | _____ | $ _____ |
| **49.  Aircraft and accessories** | | | |
| 49.1 _____ | $ _____ | _____ | $ _____ |
| 49 2 _____ | $ _____ | _____ | $ _____ |
| **50.  Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | | |
| Production and Other Equipments | $ 40,262.53 | Net Book Value | $ 40,262.53 |

51.  **Total of Part 8.**
Add lines 47 through 50. Copy the total to line 87.

$ 189,153.27 _____

52.  **Is a depreciation schedule available for any of the property listed in Part 8?**

☐ No

☑ Yes

53.  **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☑ No

☐ Yes

Debtor   Free Speech Systems, LLC
                Name

Case number (if known)   22-60043

## Part 9:   Real property

54. **Does the debtor own or lease any real property?**

☐ No. Go to Part 10.

☑ Yes. Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 Warehouse Improvement (3019 Alvin Devane Blvd Austin, TX 78741) | Leasehold Improvement | $ 1,335,971.23 | Net Book Value | $ 1,335,971.23 |
| 55.2 _____ | _____ | $_____ | _____ | $_____ |
| 55.3 _____ | _____ | $_____ | _____ | $_____ |
| 55.4 _____ | _____ | $_____ | _____ | $_____ |
| 55.5 _____ | _____ | $_____ | _____ | $_____ |
| 55.6 _____ | _____ | $_____ | _____ | $_____ |

56. **Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

$ 1,335,971.23

57. **Is a depreciation schedule available for any of the property listed in Part 9?**

☐ No

☑ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No

☐ Yes

## Part 10:   Intangibles and intellectual property

59. **Does the debtor have any interests in intangibles or intellectual property?**

☐ No. Go to Part 11.

☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets**<br>_____ | $_____ | _____ | $_____ |
| 61. **Internet domain names and websites**<br>Domain Names, Websites and Website Developments | $ 2,520.81 | Net Book Value | $ 2,520.81 |
| 62. **Licenses, franchises, and royalties**<br>_____ | $_____ | _____ | $_____ |
| 63. **Customer lists, mailing lists, or other compilations**<br>_____ | $_____ | _____ | $_____ |
| 64. **Other intangibles, or intellectual property**<br>_____ | $_____ | _____ | $_____ |
| 65. **Goodwill**<br>_____ | $_____ | _____ | $_____ |

66. **Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.

$ 2,520.81

Debtor    Free Speech Systems, LLC
          _____
          Name

Case number (if known) 22-60043
_____

67. **Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C. §§ 101(41A) and 107)?**
- ☑ No
- ☐ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
- ☐ No
- ☑ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
- ☑ No
- ☐ Yes

### Part 11:   All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**

Include all interests in executory contracts and unexpired leases not previously reported on this form.

- ☑ No. Go to Part 12.
- ☐ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

71. **Notes receivable**

Description (include name of obligor)

_____   _____  −  _____  = →   $_____
                                   Total face amount   doubtful or uncollectible amount

72. **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

_____   Tax year _____   $_____
_____   Tax year _____   $_____
_____   Tax year _____   $_____

73. **Interests in insurance policies or annuities**

_____   $_____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

_____   $

Nature of claim    _____

Amount requested   $_____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

_____   $_____

Nature of claim    _____

Amount requested   $__       _____

76. **Trusts, equitable or future interests in property**

_____   $_____

77. **Other property of any kind not already listed**  *Examples:* Season tickets, country club membership

_____   $_____
_____   $_____

78. **Total of Part 11.**

Add lines 71 through 77. Copy the total to line 90.   $ 0.00

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
- ☐ No
- ☐ Yes

003015

Debtor ___Free Speech Systems, LLC_____   Case number (if known)_22-60043___   ____

Name

---

| **Part 12:** | **Summary** |
| --- | --- |

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property |
| --- | --- | --- |
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $ 1,284,759.14 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $ 687,969.95 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $ 9,788,413.22 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $ 0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $ 1,327,107.43 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $ 0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $ 47,539.41 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $ 189,153.27 | |
| 88. **Real property.** *Copy line 56, Part 9.* ...................................➔ | | $ 1,335,971.23 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $ 2,520.81 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $ 0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column.............................91a. | $ 13,327,463.23 | 91b. $ 1,335,971.23 |

91a. $ 13,327,463.23 **+** 91b. $ 1,335,971.23

92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. ........................................................................ $ 14,663,434.46

---

Debtor: Free Speech Systems, LLC                                    Case Number: 22 - 60043

Part 1.
3. Additional checking, savings, money market, or financial brokerage accounts

| Name of Institution | Account Type | Last 4 digits of Account Number | Current value of debtor's Interest |
|---|---|---|---|
| ████████ | Checking | 8522 | $1,000.00 |
| ████████ | Checking | 8621 | $0.00 |
| ████████ | Checking | 5675 | $0.00 |
| ████████ | Checking | 8746 | $0.00 |

Part 2.
8. Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent

| Description, including name of holder of prepayment | Current value of debtor's Interest |
|---|---|
| Frost Insurance Agency | $4,899.14 |
| Stratus | $2,124.27 |
| Shannon & Lee LLP | $100,000.00 |
| ATXHD, Inc | $41,342.00 |
| Protection 1 Alarm | $2,559.73 |
| CubeSmart | $1,016.00 |

[To Supplement: Retainer of The Law Offices of Ray Battaglia, PLLC on the Petition Date - Est. $77,235.00]

**Fill in this information to identify the case:**

Debtor name ___Free Speech Systems, LLC___

United States Bankruptcy Court for the: ___Southern___ District of ___Texas___
(State)

Case number (If known): ___22-60043___

☐ Check if this is an amended filing

## Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible.

1. **Do any creditors have claims secured by debtor's property?**
   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
   ☐ Yes. Fill in all of the information below.

**Part 1:     List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim |
|---|---|---|

**2.1**

| | |
|---|---|
| Creditor's name | Describe debtor's property that is subject to a lien |
| PQPR Holdings Limited LLC | Please see attached     $ 53,646,687.84     $ 14,663,434.46 |

Creditor's mailing address

3005 S Lamar Blvd Ste D109-317

Austin TX 78704-8864

**Describe the lien**
Uniform Commercial Code Lien

**Is the creditor an insider or related party?**
☐ No
■ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

Date debt was incurred   2020/08/13

Last 4 digits of account number   ___ ___ ___ ___

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor, and its relative priority.

**2.2**

| | |
|---|---|
| Creditor's name | Describe debtor's property that is subject to a lien |
| | $_____     $_____ |

Creditor's mailing address

**Describe the lien**

Creditor's email address, if known

**Is the creditor an insider or related party?**
☐ No
☐ Yes

Date debt was incurred

**Is anyone else liable on this claim?**
☐ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

Last 4 digits of account number   ___ ___ ___ ___

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Do multiple creditors have an interest in the same property?**
☐ No
☐ Yes. Have you already specified the relative priority?
   ☐ No. Specify each creditor, including this creditor, and its relative priority.

   ☐ Yes. The relative priority of creditors is specified on lines ___

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**          $_____

003018

Debtor __Free Speech Systems, LLC_____  Case number (if known) 22-60043_____
      Name

| Part 2: | List Others to Be Notified for a Debt Already Listed in Part 1 |
|---------|-----------------------------------------------------------------|

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|------------------|------------------------------------------------------------|-------------------------------------------------|
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |
| | Line 2. __ | ___ ___ ___ ___ |

Free Speech Systems, LLC

### 2.1    Describe debtor's property that is subject to a lien

(1) All fixtures and personal property of every kind and nature, including all accounts, goods (including inventory and equipment), documents (including, if applicable, electronic documents), instruments, promissory notes, chattel paper (whether tangible or electronic), letters of credit, letter of credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including all payment intangibles), intellectual property, domain names, trademarks (including but not limited to the nutritional supplement marks Living Cleanse, Honor Roll, ExtendaWise, Haappease, Gut Fution, Vasobeet, Ultimate Female Force, The Real Red Pill, Bodease, Incuren, Flora Life, Immune Wall, Pollen Block, Alpha Power, DNA Force, Survival Shield, and Survivial Shield X-2, and the brand Infowars Life), trade names, money, deposit accounts, and any other contract rights or rights to the payment of money; and all gross revenue, receivables and proceeds and products of each of the foregoing in subparagraph (1), all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with repect to any of the foregoing

**Fill in this information to identify the case:**

Debtor    Free Speech Systems LLC

United States Bankruptcy Court for the:   Southern   District of   Texas
(State)

Case number   22-60043
(If known)

☐ Check if this is an
   amended filing

Official Form 206E/F

# Schedule E/F: Creditors Who Have Unsecured Claims    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B*) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:**    List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).
   ☒ No. Go to Part 2.
   ☐ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | Total claim | Priority amount |
|---|---|---|---|

**2.1**   Priority creditor's name and mailing address

_____

_____

_____

**Date or dates debt was incurred**

_____

**Last 4 digits of account number** ___ ___ ___ ___

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (____)

**As of the petition filing date, the claim is:**   $_____    $_____
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

_____

**Is the claim subject to offset?**
☐ No
☐ Yes

**2.2**   Priority creditor's name and mailing address

_____

_____

_____

**Date or dates debt was incurred**

_____

**Last 4 digits of account number** ___ ___ ___ ___

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (____)

**As of the petition filing date, the claim is:**   $_____    $_____
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

_____

**Is the claim subject to offset?**
☐ No
☐ Yes

**2.3**   Priority creditor's name and mailing address

_____

_____

_____

**Date or dates debt was incurred**

_____

**Last 4 digits of account number** ___ ___ ___ ___

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (____)

**As of the petition filing date, the claim is:**   $_____    $_____
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

_____

**Is the claim subject to offset?**
☐ No
☐ Yes

003021

Debtor  Free Speech Systems LLC
Name

Case number *(if known)* 22-60043

## Part 2:  List All Creditors with NONPRIORITY Unsecured Claims

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

|  | | Amount of claim |
|---|---|---|

**3.1**

**Nonpriority creditor's name and mailing address**
Addshoppers, Inc

15806 Brookway Dr Ste 200

Huntersville, NC 28078

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$ 2,989.00

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.2**

**Nonpriority creditor's name and mailing address**
Air Supply of North Texas aka Precision Oxygen

2829 Fort Worth Avenue

Dallas, TX 75211

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$ 105.48

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.3**

**Nonpriority creditor's name and mailing address**
Airco Mechanical, LTD

PO Box 1598

Round Rock, TX 78680

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$ 17,268.71

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.4**

**Nonpriority creditor's name and mailing address**
AT&T Mobile

PO Box 5001

Carol Stream, IL 60197-5001

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$ 5,167.41

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.5**

**Nonpriority creditor's name and mailing address**
Atomial, LLC

1920 E. Riverside Drive Suite A-120 #124

Austin, TX 78741

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$ 50,400.00

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.6**

**Nonpriority creditor's name and mailing address**
Austin Security & Investigation Solutions

PO Box 2904

Pflugerville, TX 78691

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$ 5,961.87

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

003022

Debtor _____ Free Speech Systems LLC _____   Case number (if known) _22-60043_____
        Name

| Part 2: | Additional Page |
|---|---|

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |
|---|---|

**3.7** Nonpriority creditor's name and mailing address
Blott, Jacquelyn, Attorney at Law

200 University Boulevard Suite 225 #251

Round Rock, TX 78665

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☒ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: _____

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 58,280.00

**3.8** Nonpriority creditor's name and mailing address
City of Austin

PO Box 2267

Austin, TX 78783

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 6,532.68

**3.9** Nonpriority creditor's name and mailing address
CTRMA Processing

PO Box 734182

Dallas, TX 75373

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 24.23

**3.10** Nonpriority creditor's name and mailing address
eCommerce CDN, LLC

221 E 63rd Street

Savannah, GA 31405

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 27,270.00

**3.11** Nonpriority creditor's name and mailing address
Elevated Solutions Group

706 W Ben White Blvd, Bldg B, Ste 188

Austin, TX 78740

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 319,148.16

003023

| Debtor | Free Speech Systems LLC | Case number (if known) | 22-60043 |
|---|---|---|---|
| | Name | | |

## Part 2: Additional Page

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |
|---|---|

**3.12** 

**Nonpriority creditor's name and mailing address**

Getty Images, Inc

PO Box 953604

St. Louis, MO 63195-3604

**As of the petition filing date, the claim is:**
Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed
- ☐ Liquidated and neither contingent nor disputed

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 9,201.25

---

**3.13**

**Nonpriority creditor's name and mailing address**

Gibson, Ronald

4012 Pleasant Grove Church Rd

Shelby NC, 28150-2842

**As of the petition filing date, the claim is:**
Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 3,000.00

---

**3.14**

**Nonpriority creditor's name and mailing address**

Gracenote Media Services, LLC

29421 Network Place

Chicago, IL 60673-1294

**As of the petition filing date, the claim is:**
Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 119.98

---

**3.15**

**Nonpriority creditor's name and mailing address**

Greenair, Inc

23569 Center Ridge Road

Westlake, OH 44145

**As of the petition filing date, the claim is:**
Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 12,240.00

---

**3.16**

**Nonpriority creditor's name and mailing address**

Impact Fire Services LLC

PO Box 735063

Dallas, TX 75373-5063

**As of the petition filing date, the claim is:**
Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the claim:** _____

**Date or dates debt was incurred** _____

**Last 4 digits of account number** __ __ __ __

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 165.00

---

003024

| Debtor | Free Speech Systems, LLC | | Case number (if known) | 22-60043 |
| | Name | | | |

## Part 2: Additional Page

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |
|---|---|

**3.17** Nonpriority creditor's name and mailing address

JCE SEO

6101 Broadway

San Antonio, TX 78209

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 5,000.00

---

**3.18** Nonpriority creditor's name and mailing address

JW JIB Productions, LLC

2921 Carvelle Drive

Riviera Beach, FL 33404

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 7,000.00

---

**3.19** Nonpriority creditor's name and mailing address

Konica Minolta Premier Finance

PO Box 41602

Philadelphia, PA 19101-1602

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 1,847.87

---

**3. 20** Nonpriority creditor's name and mailing address

Kount An Equifax Company

PO Box 740253

Atlanta, GA 30374

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 11,172.00

---

**3.21** Nonpriority creditor's name and mailing address

Lumen/Level 3 Communications

PO Box 910182

Denver, CO 80291-0182

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 7,906.43

003025

Debtor   Free Speech Systems LLC
         Name

Case number (*if known*)   22-60043

## Part 2:   Additional Page

| | Amount of claim |
|---|---|
| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | |

**3.22** Nonpriority creditor's name and mailing address

Lyman, Daniel

5832 Elton Road

Venice, FL 34293

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 3,500.00

**3.23** Nonpriority creditor's name and mailing address

PQPR Holdings

3005 S Lamar Blvd Ste D109-317

Austin TX 78704-8864

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

As of the petition filing date, the claim is:
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

**3.24** Nonpriority creditor's name and mailing address

MRJR Holdings, LLC

PO Box 27740

Las Vegas, NV 89426

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

As of the petition filing date, the claim is:
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

**3. 25** Nonpriority creditor's name and mailing address

Sparkletts & Sierra Springs

PO Box 660579

Dallas, TX 75266-0579

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 1,084.14

**3.26** Nonpriority creditor's name and mailing address

Texas Gas Service

PO Box 219913

Kansas City, MO 64121

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 1,078.28

003026

| Debtor | Free Speech Systems LLC | Case number (if known) | 22-60043 |
|---|---|---|---|
| | Name | | |

## Part 2: | Additional Page

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |
|---|---|

**3.27** | **Nonpriority creditor's name and mailing address**
Willow Grove Productions

1810 Rockcliff Road

Austin, TX 78746

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 2,700.00

---

**3.28** | **Nonpriority creditor's name and mailing address**
WMQM-AM 1600

21 Stephen Hill Road

Atoka, TN 38004

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 2,500.00

---

**3.29** | **Nonpriority creditor's name and mailing address**
American Express

200 Vesey Street

New York, NY 10285

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 54,279.78

---

**3. 30** | **Nonpriority creditor's name and mailing address**
David Jones

3005 S Lamar Blvd Ste D109-317

Austin TX 78704-8864

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 150,000.00

---

**3.31** | **Nonpriority creditor's name and mailing address**
Campco

4625 W. Jefferson Blvd

Los Angeles, CA 90016

Date or dates debt was incurred _____

Last 4 digits of account number __ __ __ __

**As of the petition filing date, the claim is:**
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: _____

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

003027

Debtor      Free Speech Systems LLC                                              Case number *(if known)* 22-60043
            Name

| Part 2: | Additional Page |

| | Amount of claim |
|---|---|
| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | |

**3.32** Nonpriority creditor's name and mailing address

CustomTattoNow.com

16107 Kensington Dr #172

Sugar Land, TX 77479

As of the petition filing date, the claim is:
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: _____

Date or dates debt was incurred        _____
Last 4 digits of account number        __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

**3.33** Nonpriority creditor's name and mailing address

David Icke Books Limited

1a Babbington Lane

Derby, England DE11SU

As of the petition filing date, the claim is:
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: _____

Date or dates debt was incurred        _____
Last 4 digits of account number        __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

**3.34** Nonpriority creditor's name and mailing address

American Media/Reality Zone

PO Box 4646

Thousand Oaks, CA 91359

As of the petition filing date, the claim is:
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: _____

Date or dates debt was incurred        _____
Last 4 digits of account number        __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

**3.35** Nonpriority creditor's name and mailing address

Justin Lair

1313 Lookout Ave

Klamath Falls, OR 97601

As of the petition filing date, the claim is:
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: _____

Date or dates debt was incurred        _____
Last 4 digits of account number        __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

**3.36** Nonpriority creditor's name and mailing address

RatsMedical.com

1211 E Bridle Trail Rd

Draper, UT 84020

As of the petition filing date, the claim is:
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: _____

Date or dates debt was incurred        _____
Last 4 digits of account number        __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

003028

| Debtor | Free Speech Systems LLC | | |
|---|---|---|---|
| | Name | | |
| | | Case number (if known) | 22-60043 |

## Part 2: Additional Page

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |
|---|---|

**3.37** Nonpriority creditor's name and mailing address

███████████████████████

███████████████████████
███████████████████████

As of the petition filing date, the claim is:
Check all that apply.
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ Liquidated and neither contingent nor disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

---

**3.38** Nonpriority creditor's name and mailing address

Skousen, Joel

PO Box 565

Spring City, UT 84662

As of the petition filing date, the claim is:
Check all that apply.
- ■ Contingent
- ■ Unliquidated
- ■ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

---

**3.39** Nonpriority creditor's name and mailing address

Wisconsin Dept. of Revenue

PO Box 3028

Milwaukee, WI 53201-3028

As of the petition filing date, the claim is:
Check all that apply.
- ■ Contingent
- ■ Unliquidated
- ■ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

---

**3.40** Nonpriority creditor's name and mailing address

Watson, Paul

9 Riverdale Road Ranmoor Sheffield

South Yorkshire, United Kingdom S10 3FA

As of the petition filing date, the claim is:
Check all that apply.
- ■ Contingent
- ■ Unliquidated
- ■ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

---

**3.41** Nonpriority creditor's name and mailing address

Verizon Wireless

PO Box 660108

Dallas, TX 75266

As of the petition filing date, the claim is:
Check all that apply.
- ■ Contingent
- ■ Unliquidated
- ■ Disputed

Basis for the claim: _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

Is the claim subject to offset?
- ☐ No
- ☐ Yes

$ 0.00

---

003029

| Debtor | Free Speech Systems LLC | | |
|---|---|---|---|
| | Name | | |
| | | Case number *(if known)* | 22-60043 |

## Part 2: Additional Page

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |
|---|---|

---

**3.42** | **Nonpriority creditor's name and mailing address**

Miller, Sean

PO Box 763

Wyalusing, PA 18853

**As of the petition filing date, the claim is:**
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed
- ☐ Liquidated and neither contingent nor disputed

**Basis for the claim:** _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 0.00

---

**3.43** | **Nonpriority creditor's name and mailing address**

Spectrum Enterprise aka Time Warner Cable

PO Box 60074

City of Industry, CA 91716

**As of the petition filing date, the claim is:**
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

**Basis for the claim:** _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 0.00

---

**3.44** | **Nonpriority creditor's name and mailing address**

Ready Alliance Group, Inc

PO Box 1709

Sandpoint, ID 83864

**As of the petition filing date, the claim is:**
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

**Basis for the claim:** _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 0.00

---

**3. 45** | **Nonpriority creditor's name and mailing address**

One Party America, LLC

6700 Woodlands Parkway Suite 230-309

The Woodlands, TX 77382

**As of the petition filing date, the claim is:**
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

**Basis for the claim:** _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 0.00

---

**3.46** | **Nonpriority creditor's name and mailing address**

LCJ Pictures LLC

PO Box 19549

Austin, TX 78760

**As of the petition filing date, the claim is:**
*Check all that apply.*
- ☑ Contingent
- ☐ Unliquidated
- ☑ Disputed

**Basis for the claim:** _____

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 89,882.37

---

003030

Debtor ___Free Speech Systems LLC_____     Case number (if known) ___22-60043___

         Name

| Part 2: | Additional Page |

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |

**3.47** Nonpriority creditor's name and mailing address
Brennan Gilmore

c/o Civil Rights Clinic, 600 New Jersey Ave NW

Washington, DC 20001

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: Litigation Settlement

$ 50,000.00

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

**3.48** Nonpriority creditor's name and mailing address
Christopher Sadowski

c/o Copy Cat Legal PLLC, 3111 N. University Drive,

Coral Springs, FL 33065

As of the petition filing date, the claim is:
Check all that apply.
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: Asserted copyright

$ 90,000.00

Date or dates debt was incurred _____
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

**3.49** Nonpriority creditor's name and mailing address
Neil Heslin

c/o Jarrod B. Martin, Chamberlain Hrdlicka

1200 Smith Street, Suite 1400, Houston TX 77002

As of the petition filing date, the claim is:
Check all that apply.
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: Litigation claim

$ 0.00

Date or dates debt was incurred    2018
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

**3. 50** Nonpriority creditor's name and mailing address
Scarlett Lewis

c/o Jarrod B. Martin, Chamberlain Hrdlicka

1200 Smith Street, Suite 1400, Houston TX 77002

As of the petition filing date, the claim is:
Check all that apply.
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: Litigation Claim

$ 0.00

Date or dates debt was incurred    2018
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

**3.51** Nonpriority creditor's name and mailing address
Leonard Pozner

c/o Jarrod B. Martin, Chamberlain Hrdlicka

1200 Smith Street, Suite 1400, Houston TX 77002

As of the petition filing date, the claim is:
Check all that apply.
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: Litigation Claim

$ 0.00

Date or dates debt was incurred    2018
Last 4 digits of account number __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

003031

Debtor _____Free Speech Systems LLC_____     Case number (if known) ___22-60043___
        Name

## Part 2:    Additional Page

| | Amount of claim |
|---|---|
| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | |

---

**3.52**  Nonpriority creditor's name and mailing address
Veronique De La Rosa

c/o Jarrod B. Martin, Chamberlain Hrdlicka

1200 Smith Street, Suite 1400, Houston, TX 77002

As of the petition filing date, the claim is:
Check all that apply.
■ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: Litigation Claim

Date or dates debt was incurred    2018
Last 4 digits of account number    __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

**3.53**  Nonpriority creditor's name and mailing address
Marcel Fontaine

c/o Jarrod B. Martin, Chamberlain Hrdlicka

1200 Smith Street, Suite 1400, Houston, TX 77002

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Litigation Claim

Date or dates debt was incurred    2018
Last 4 digits of account number    __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

**3.54**  Nonpriority creditor's name and mailing address
David Wheeler

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Litigation Claim

Date or dates debt was incurred    2018
Last 4 digits of account number    __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

**3.55**  Nonpriority creditor's name and mailing address
Francine Wheeler

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Litigation Claim

Date or dates debt was incurred    2018
Last 4 digits of account number    __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

**3.56**  Nonpriority creditor's name and mailing address
Jacqueline Barden

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Litigation Claim

Date or dates debt was incurred    2018
Last 4 digits of account number    __ __ __ __

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

003032

Debtor    Free Speech Systems LLC                                    22-60043
_____              _____
        Name                                          Case number (if known)

| Part 2: | Additional Page |

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |

**3.57** | **Nonpriority creditor's name and mailing address**
Mark Barden

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

Date or dates debt was incurred    2018

Last 4 digits of account number    ___ ___ ___ ___

**As of the petition filing date, the claim is:**
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed
- ☐ Liquidated and neither contingent nor disputed

**Basis for the claim:**   Litigation Claim

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 0.00

---

**3.58** | **Nonpriority creditor's name and mailing address**
Nicole Hockley

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St. STE 2850, Austin, TX 78701

Date or dates debt was incurred    2018

Last 4 digits of account number    ___ ___ ___ ___

**As of the petition filing date, the claim is:**
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

**Basis for the claim:**   Litigation Claim

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 0.00

---

**3.59** | **Nonpriority creditor's name and mailing address**
Ian Hockley

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

Date or dates debt was incurred    2018

Last 4 digits of account number    ___ ___ ___ ___

**As of the petition filing date, the claim is:**
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

**Basis for the claim:**   Litigation Claim

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 0.00

---

**3.60** | **Nonpriority creditor's name and mailing address**
Jennifer Hensel

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

Date or dates debt was incurred    2018

Last 4 digits of account number    ___ ___ ___ ___

**As of the petition filing date, the claim is:**
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

**Basis for the claim:**   Litigation Claim

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 0.00

---

**3.61** | **Nonpriority creditor's name and mailing address**
Donna Soto

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

Date or dates debt was incurred    2018

Last 4 digits of account number    ___ ___ ___ ___

**As of the petition filing date, the claim is:**
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

**Basis for the claim:**   Litigation Claim

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

$ 0.00

003033

Debtor ___Free Speech Systems LLC_____   Case number (if known) ___22-60043___
         Name

| Part 2: | Additional Page |

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |

---

**3.62** **Nonpriority creditor's name and mailing address**
Carlee Soto Parisi

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

**As of the petition filing date, the claim is:**
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed
☐ Liquidated and neither contingent nor disputed

**Basis for the claim:** Litigation Claim

$ 0.00

Date or dates debt was incurred     2018

Last 4 digits of account number     __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.63** **Nonpriority creditor's name and mailing address**
Carlos M. Soto

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St. STE 2850, Austin, TX 78701

**As of the petition filing date, the claim is:**
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

**Basis for the claim:** Litigation Claim

$ 0.00

Date or dates debt was incurred     2018

Last 4 digits of account number     __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.64** **Nonpriority creditor's name and mailing address**
Jillian Soto-Marino

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

**As of the petition filing date, the claim is:**
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

**Basis for the claim:** Litigation Claim

$ 0.00

Date or dates debt was incurred     2018

Last 4 digits of account number     __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.65** **Nonpriority creditor's name and mailing address**
William Aldenberg

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

**As of the petition filing date, the claim is:**
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

**Basis for the claim:** Litigation Claim

$ 0.00

Date or dates debt was incurred     2018

Last 4 digits of account number     __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.66** **Nonpriority creditor's name and mailing address**
William Sherlach

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

**As of the petition filing date, the claim is:**
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

**Basis for the claim:** Litigation Claim

$ 0.00

Date or dates debt was incurred     2018

Last 4 digits of account number     __ __ __ __

**Is the claim subject to offset?**
☐ No
☐ Yes

---

003034

Debtor    Free Speech Systems LLC                                22-60043
          Name                                        Case number (if known)

| Part 2: | Additional Page |
|---|---|

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | Amount of claim |
|---|---|

**3.67** Nonpriority creditor's name and mailing address
Robert Parker

c/o Ryan Chapple, Cain & Skarnulis PLLC

303 Colorado St, STE 2850, Austin, TX 78701

Date or dates debt was incurred          2018

Last 4 digits of account number     __ __ __ __

As of the petition filing date, the claim is:
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim:   Litigation Claim

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

**3.68** Nonpriority creditor's name and mailing address
Yan Luis

c/o Noor A. Sabb, 280 North Broadway, STE 300

Jericho, New York 11753

Date or dates debt was incurred

Last 4 digits of account number     __ __ __ __

As of the petition filing date, the claim is:
*Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

Basis for the claim:   ADA Claim

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

**3.__** Nonpriority creditor's name and mailing address

Date or dates debt was incurred

Last 4 digits of account number     __ __ __ __

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

**3.__** Nonpriority creditor's name and mailing address

Date or dates debt was incurred

Last 4 digits of account number     __ __ __ __

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

**3.__** Nonpriority creditor's name and mailing address

Date or dates debt was incurred

Last 4 digits of account number     __ __ __ __

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:

Is the claim subject to offset?
☐ No
☐ Yes

$ 0.00

---

003035

Debtor   Free Speech Systems LLC

Name

Case number *(if known)*_____

| Part 3: | List Others to Be Notified About Unsecured Claims |
|---------|---------------------------------------------------|

4. **List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

   **If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| Name and mailing address | On which line in Part 1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| 4.1. | Line ____ <br> ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.2. | Line ____ <br> ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.3. | Line ____ <br> ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.4. | Line ____ <br> ☐ Not listed. Explain _____ | __ __ __ __ |
| 41. | Line ____ <br> ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.5. | Line ____ <br> ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.6. | Line ____ <br> ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.7. | Line ____ <br> ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.8. | Line ____ <br> ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.9. | Line ____ <br> ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.10. | Line ____ <br> ☐ Not listed. Explain _____ | __ __ __ __ |
| 4.11. | Line ____ <br> ☐ Not listed. Explain _____ | __ __ __ __ |

003036

Debtor _____Free Speech Systems, LLC_____         Case number (if known)_____
             Name

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |

5. **Add the amounts of priority and nonpriority unsecured claims.**

| | | **Total of claim amounts** |
|---|---|---|
| 5a. **Total claims from Part 1** | 5a. | $ 0.00 |
| 5b. **Total claims from Part 2** | + 5b. | $ 995,824.64 |
| 5c. **Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ 995,824.64 |

003037

**Fill in this information to identify the case:**

Debtor name _Free Speech Systems, LLC_

United States Bankruptcy Court for the: _Southern_   District of _Texas_
(State)

Case number (If known): _22-60043_   Chapter _11_

☐ Check if this is an amended filing

Official Form 206G

# Schedule G: Executory Contracts and Unexpired Leases

12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

**1. Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| **2.1** | State what the contract or lease is for and the nature of the debtor's interest | Financial services Agreement | ███████████████████████ |
| | | For Credit Card Processing and Other Financial Service | |
| | State the term remaining | 9 years and 2 months | PQPR Holdings Limited LLC: PO Box 19549 Austin TX 78760 - 9549 |
| | List the contract number of any government contract | | |
| **2.2** | State what the contract or lease is for and the nature of the debtor's interest | Employment Agreement | Alex Jones: 3019 Alvin Devane Blvd Austin TX 78741 |
| | | For Employment of Alex Jones | |
| | State the term remaining | "At will" Basis | |
| | List the contract number of any government contract | | |
| **2.3** | State what the contract or lease is for and the nature of the debtor's interest | Lease Agreement | BCC UBC LLC: 901 S. Mopac Expressway Plaza I, Suite 60, Austin , TX 78746 |
| | | Studio Lease | |
| | State the term remaining | 2 years and 5 Months | |
| | List the contract number of any government contract | | |
| **2.4** | State what the contract or lease is for and the nature of the debtor's interest | Service Agreement | Austin Security and Investigation Solutions LLC: PO Box 2904 Pflugerville, TX 78691 |
| | | For Back Ground Checks and Investigative Services | |
| | State the term remaining | 9 Months, Renews Automatically | |
| | List the contract number of any government contract | | |
| **2.5** | State what the contract or lease is for and the nature of the debtor's interest | Building and Land Lease Agreement | Expo Glo, LLC: 1717 McKinney Ave, Suite 1900 Dallas, TX 75202-1236 |
| | | Warehouse Lease | |
| | State the term remaining | Renews Monthly | |
| | List the contract number of any government contract | | |

003038

**Fill in this information to identify the case:**

Debtor name   Free Speech Systems, LLC

United States Bankruptcy Court for the: Southern    District of   Texas
                                                    (State)

Case number (If known):   22-60043

☐ Check if this is an amended filing

Official Form 206H
## Schedule H: Codebtors
12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Does the debtor have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☑ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, *Schedules D-G.* Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.**

| | Column 1: Codebtor | | Column 2: Creditor | |
|---|---|---|---|---|
| | **Name** | **Mailing address** | **Name** | Check all schedules that apply: |
| 2.1 | Alex E. Jones | 3019 Alvin Devane Blvd. <br> Street <br><br> Austin   TX   78741 <br> City   State   ZIP Code | Niel Heslin | ☐ D <br> ☑ E/F <br> ☐ G |
| 2.2 | Alex E. Jones | 3019 Alvin Devane Blvd. <br> Street <br><br> Austin   TX   78741 <br> City   State   ZIP Code | Scarlett Lewis | ☐ D <br> ☑ E/F <br> ☐ G |
| 2.3 | Alex E. Jones | 3019 Alvin Devane Blvd. <br> Street <br><br> Austin   TX   78741 <br> City   State   ZIP Code | Leonard Pozner | ☐ D <br> ☑ E/F <br> ☐ G |
| 2.4 | Alex E. Jones | 3019 Alvin Devane Blvd. <br> Street <br><br> Austin   TX   78741 <br> City   State   ZIP Code | Veronique De La Rosa | ☐ D <br> ☑ E/F <br> ☐ G |
| 2.5 | Alex E. Jones | 3019 Alvin Devane Blvd. <br> Street <br><br> Austin   TX   78741 <br> City   State   ZIP Code | Marcel Fontaine | ☐ D <br> ☑ E/F <br> ☐ G |
| 2.6 | | Street <br><br> City   State   ZIP Code | | ☐ D <br> ☐ E/F <br> ☐ G |

003039

**Fill in this information to identify the case and this filing:**

Debtor Name ___Free Speech Systems, LLC___

United States Bankruptcy Court for the: ___Southern___ District of ___Texas___
(State)

Case number (*If known*): ___22-60043___

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors      12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☒ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☒ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☒ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☒ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☒ *Schedule H: Codebtors* (Official Form 206H)

☒ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* _____

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒ Other document that requires a declaration ___Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding Debtor's Schedules and Statements.___

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___08/29/2022___          ✗ _W. Marc Schwartz_____
          MM / DD / YYYY               Signature of individual signing on behalf of debtor

                              ___W. Marc Schwartz_____
                              Printed name

                              ___Chief Restructuring Officer___
                              Position or relationship to debtor

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

### GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY, AND DISCLAIMER REGARDING DEBTOR'S SCHEDULES AND STATEMENTS

The Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Schedules and Statements") filed by Free Speech Systems, LLC, the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor") are unaudited and were prepared pursuant to section 521 of Title 11 of the United States Code and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") by the Debtor's chief restructuring officer (the "CRO"). While the CRO has made reasonable efforts to file complete and accurate Schedules and Statements based upon information available at the time of preparation, the Schedules and Statements remain subject to further review and verification by the Debtor. Subsequent information may result in material changes in financial and other data contained in the Schedules and Statements. The Debtor reserves the right to amend its Schedules and Statements from time to time as may be necessary or appropriate. The Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding Debtor's Schedules and Statements (the "Global Notes") is incorporated by reference in, and comprises an integral part of, the Schedules and Statements and should be referred to and reviewed in connection with any review of the Schedules and Statements.

1.    Description of the Cases and "As Of" Information Date. On July 29, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor currently operates its business and possess its property as a debtor-in-possession under section 1184 of the Bankruptcy Code. Unless otherwise noted, all asset and liability information is as of the Petition Date.

2.    Basis of Presentation. These Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), nor are they intended to fully reconcile to any financial statements otherwise prepared and/or distributed by the Debtor.

3.    Causes of Action. Despite its reasonable efforts, as described above, the Debtor may not have set forth all of its claims, causes of actions and potential recoveries in its Schedules and Statements. The Debtor reserves all rights with respect to any causes of action it may possess, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such causes of action.

003041

4.      Insiders. The listing or failure to list a person or other entity as an "insider" in the Schedules and Statements is not intended to be nor should it be construed as a binding admission that such person or entity is or is not an insider. The Debtor reserves the right to dispute or challenge the designation of any individual or entity in connection with any other matter arising in the Debtor's chapter 11 case.

5.      Intellectual Property Rights. Any omission of intellectual property from the Schedules and Statements shall not be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms or have been assigned or otherwise transferred pursuant to a sale, acquisition or other transaction.  In accordance with the foregoing, the Debtor reserves all of its rights with respect to the legal status of any and all intellectual property rights, regardless of whether such intellectual property rights are or are not listed in the Schedules and Statements.

6.      Summary of Significant Reporting Policies. The Schedules and Statements have been signed by W. Marc Schwartz, the CRO to the Debtor. In reviewing and signing the Schedules and Statements, Mr. Schwartz has necessarily relied upon the efforts, statements, and representations of the Debtor's business records and personnel. Mr. Schwartz has not personally verified the accuracy of each such statement and representation, including, but not limited to, statements and representations concerning amounts owed to creditors. The Debtor made reasonable efforts to accurately report asset, liability, disbursement and other information on its Statements and Schedules, and the Debtor adopted the following conventions in the preparation of the Schedules and Statements.

a.      Fair Market Value; Book Value. Unless otherwise noted, the value of each asset and liability of the Debtor is shown on the basis of the book value of such asset or liability in the Debtor's accounting books and records. As applicable, assets that have been fully depreciated or were expensed for accounting purposes have no net book value. As a result, the value of the Debtor's assets and liabilities set forth on the Schedules and Statements may not always reflect the current market values of such property and/or liabilities. The Debtor reserves its right to amend or adjust the value of each asset or liability set forth herein.

b.      Liabilities. The Debtor reserves the right to dispute any liability indicated in its Schedules notwithstanding the designation in the Schedules and Statements.

c.      Claims. The Debtor's Schedules and Statements list creditors and set forth the Debtor's estimate of the claims of creditors as of the Petition Date. The Bankruptcy Court has authorized the Debtor to, among other things make payments to certain critical vendors and utility providers. As a result, the actual unpaid claims of creditors that ultimately may be allowed in this case may differ from the amounts set forth in the Schedules and Statements. The inclusion of any such amounts in the Schedules and Statements shall not be deemed to obligate the Debtor to pay such amounts in and of themselves.

d.      Disputed, Contingent and/or Unliquidated Claims. Schedules D and E/F permit the Debtor to designate a claim as disputed, contingent and/or unliquidated. A failure

2

to designate a claim on any of these Schedules as disputed, contingent and/or unliquidated does not constitute an admission that such claim is not subject to objection. The Debtor reserves the right to dispute, or assert offsets or defenses to, any claim reflected on these Schedules as to amount, liability, or status. Moreover, the Debtor reserves the right to amend its Schedules and Statements as necessary and appropriate.

7.  <u>General Conventions Relating to the Schedules of Assets and Liabilities</u>. The

Debtor adopted the following conventions in connection with the preparation of the Schedules:

    a.  <u>Schedule D</u>. Except as otherwise agreed pursuant to a stipulation or agreed order entered by the Bankruptcy Court, the Debtor reserves the right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of the Debtor. Moreover, although the Debtor may have scheduled claims of various creditors as secured claims, the Debtor reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim. The descriptions provided on Schedule D are intended only to be a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

    b.  <u>Schedule G</u>. While reasonable efforts have been made to ensure the accuracy of the Schedule of Executory Contracts, inadvertent errors or omissions may have occurred. The Debtor hereby reserves all rights to dispute the validity, status or enforceability of any contract, agreement or lease set forth on Schedule G and to amend or supplement such Schedule as necessary. The contracts, agreements and leases listed on Schedule G may have expired or may have been modified, amended or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letter and other documents, instruments and agreements which may not be listed therein. Certain of the real property leases listed on Schedule G may contain renewal options, guarantees of payments, options to purchase, rights of first refusal, rights to lease additional space and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth on Schedule G. Certain of the executory agreements may not have been memorialized and could be subject to dispute. Additionally, the Debtor may be parties to various other agreements concerning real property, such as easements, rights of way, subordination, non-disturbance, supplemental agreements, amendments/letter agreements, title documents, consents, site plans, maps and other miscellaneous agreements. Such agreements, if any, are not set forth on Schedule G. Certain of the agreements listed on

3

Schedule G may be in the nature of conditional sales agreements or secured financings. The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease. The Debtor reserves all rights, claims and causes of action with respect to the contracts and agreements listed on these Schedules and Statements, including the right to dispute or challenge the characterization or the structure of any transaction, document or instrument.

c.   <u>Schedule H</u>. Codefendants in litigation matters involving the Debtor are not listed in Schedule H unless the trial court has made a ruling that results in an identity of interest between the Debtor and such co-defendant.

[*Remainder of Page Intentionally Left Blank*]

003044

**Fill in this information to identify the case:**

Debtor name   Free Speech Systems, LLC

United States Bankruptcy Court for the:   Southern    District of   Texas
                                                (State)

Case number (If known):   22-60043

☐ Check if this is an amended filing

## Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy   04/19

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

| Part 1: | Income |
| --- | --- |

**1. Gross revenue from business**

☐ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
| --- | --- | --- | --- | --- |
| From the beginning of the fiscal year to filing date: | From 01/01/2022<br>MM / DD / YYYY | to Filing date | ☑ Operating a business<br>☐ Other _____ | $ 20,989,725.21 |
| For prior year: | From 01/01/2021<br>MM / DD / YYYY | to 12/31/2021<br>MM / DD / YYYY | ☑ Operating a business<br>☐ Other _____ | $ 31,670,153.75 |
| For the year before that: | From 01/01/2020<br>MM / DD / YYYY | to 12/31/2020<br>MM / DD / YYYY | ☑ Operating a business<br>☐ Other _____ | $ 35,231,342.69 |

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

| | | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
| --- | --- | --- | --- | --- |
| From the beginning of the fiscal year to filing date: | From _____<br>MM / DD / YYYY | to Filing date | _____ | $ _____ |
| For prior year: | From _____<br>MM / DD / YYYY | to _____<br>MM / DD / YYYY | _____ | $ _____ |
| For the year before that: | From _____<br>MM / DD / YYYY | to _____<br>MM / DD / YYYY | _____ | $ _____ |

Debtor    Free Speech Systems, LLC
_____     Case number (if known) 22-60043
     Name

---

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |

**3. Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers—including expense reimbursements—to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None

| | Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|---|
| 3.1. | American Express<br><sub>Creditor's name</sub><br>200 Vesey Street<br><sub>Street</sub><br><br>New York   NY   10285<br><sub>City    State    ZIP Code</sub> | 07/05/22<br><br>06/29/22<br><br>06/13/22 | $ 1,013,825.21 | ☐ Secured debt<br>☑ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☑ Services<br>☐ Other _____ |
| 3.2. | PQPR Holdings Limited<br><sub>Creditor's name</sub><br>3005 S Lamar Blvd Ste D109-317<br><sub>Street</sub><br><br>Austin   TX   78704-8864<br><sub>City    State    ZIP Code</sub> | 07/26/22<br><br>06/30/22<br><br>06/28/22 | $ 1,728,051.95 | ☑ Secured debt<br>☑ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |

**\*See Continuation in Attached\***

**4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None

| | Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|---|
| 4.1. | PQPR Holdings Limited<br><sub>Insider's name</sub><br>3005 S Lamar Blvd Ste D109-317<br><sub>Street</sub><br><br>Austin   TX   78704-8864<br><sub>City    State    ZIP Code</sub><br><br>**Relationship to debtor**<br>72% Owned by Owner | 07/26/22<br><br>06/30/22<br><br>06/28/22 | $ 3,078,934.33 | Payments on Promissory Note and Advances |
| 4.2. | David Jones<br><sub>Insider's name</sub><br>3019 Alvin Devane Blvd, Ste 300<br><sub>Street</sub><br><br>Austin   TX   78741<br><sub>City    State    ZIP Code</sub><br><br>**Relationship to debtor**<br>Relative of the Owner | 10/7/21 | $ 150,000.00 | Payments on Advances |

---

| Debtor | Free Speech Systems, LLC | Case number *(if known)* 22-60043 |
|---|---|---|
| | Name | |

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| | Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|---|
| 5.1. | | | | $ |
| | Creditor's name | | | |
| | Street | | | |
| | | | | |
| | City           State      ZIP Code | | | |
| 5.2. | | | | $ |
| | Creditor's name | | | |
| | Street | | | |
| | | | | |
| | City           State      ZIP Code | | | |

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| | Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|---|
| | Creditor's name | | | $ |
| | Street | | | |
| | | Last 4 digits of account number: XXXX– __ __ __ __ | | |
| | City           State      ZIP Code | | | |

---

**Part 3:    Legal Actions or Assignments**

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None

| | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | Leonard Pozner, Veronique De La Rosa v. Free Speech Systmes LLC | 01 Determination of removed claim o | U.S. Bankruptcy Court Western District of Texas (Austin) | ☐ Pending |
| | | | Name | ☐ On appeal |
| | **Case number** | | 903 San Jacinto Blvd., Suite 322 | ☑ Concluded |
| | 22-01021-hcm | | Street | |
| | | | Austin          TX          78701 | |
| | | | City           State      ZIP Code | |
| 7.2. | Marcel Fontaine v. Alex E. Jones, InfoWars, LLC, Free Speech Systems, | 01 Determination of removed claim o | U.S. Bankruptcy Court Western District of Texas (Austin) | ☐ Pending |
| | | | Name | ☐ On appeal |
| | **Case number** | | 903 San Jacinto Blvd., Suite 322 | ☑ Concluded |
| | 22-01022-hcm | | Street | |
| | | | Austin          TX          78701 | |
| | | | City           State      ZIP Code | |

*See Continuation in Attached*

Debtor ___Free Speech Systems, LLC_____  Case number (if known)__22-60043_____
　　　　　Name

---

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's name and address | Description of the property | Value |
|---|---|---|
| | _____ | $_____ |
| Custodian's name | | |
| Street | **Case title** | **Court name and address** |
| _____ | _____ | |
| City　　　State　　ZIP Code | **Case number** | Name |
| | _____ | Street |
| | **Date of order or assignment** | City　　　State　　ZIP Code |
| | _____ | |

---

## Part 4:　Certain Gifts and Charitable Contributions

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☐ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|
| 9.1. Bartlett Emergency Group, PA | Cash | 09/02/2021 | $ 10,000.00 |
| 　　　Recipient's name | | | |
| 349 Bartlett Road | _____ | | |
| Street | | | |
| Crane　　　TX　　79731 | | | |
| City　　　State　　ZIP Code | | | |
| Recipient's relationship to debtor | | | |
| _____ | | | |
| 9.2. _____ | _____ | _____ | $　　___ |
| 　　　Recipient's name | | | |
| Street | _____ | | |
| City　　　State　　ZIP Code | | | |
| Recipient's relationship to debtor | | | |
| _____ | | | |

---

## Part 5:　Certain Losses

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss | Date of loss | Value of property lost |
|---|---|---|---|
| | If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. | | |
| | List unpaid claims on Official Form 106A/B (*Schedule A/B: Assets – Real and Personal Property*). | | |
| _____ | _____ | _____ | $_____ |

---

003048

Debtor   Free Speech Systems, LLC
_____
Name

Case number (if known) 22-60043
_____

---

## Part 6:   Certain Payments or Transfers

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None

|  | Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | Shannon & Lee LLP | | 06/06/2022 | $ 100,000.00 (retainer) |
| | **Address** | | 07/28/2022 | $84,034.12 |
| | 700 Milam Street, Suite 1300 | | 07/29/2022 | $50,000 (retainer) |
| | Street | | | |
| | Houston      TX    77002 | | | |
| | City         State  ZIP Code | | | |
| | **Email or website address** | | | |
| | https://www.shannonleellp.com/ | | | |
| | **Who made the payment, if not debtor?** | | | |
| | Payments made through SALLC trust account | | | |

| | Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.2. | Schwartz Associates LLC | | 06/10/2022 | $ 398,030.00 |
| | **Address** | | | |
| | 712 Main Street, Suite 1830 | | | |
| | Street | | | |
| | Houston      TX    77002 | | | |
| | City         State  ZIP Code | | | |
| | **Email or website address** | | | |
| | https://schwartzassociates.us/ | | | |
| | **Who made the payment, if not debtor?** | | | |

[To Supplement: Payments to The Law Offices of Ray Battaglia, PLLC - Total value est. $127,074.00]

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|
| | | | $_____ |
| **Trustee** | | | |
| | | | |

---

Debtor   Free Speech Systems, LLC                                    Case number *(if known)* 22-60043
         Name

**13. Transfers not already listed on this statement**

List any transfers of money or other property—by sale, trade, or any other means—made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| | Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|---|
| 13.1. | _____ | _____ | _____ | $_____ |
| | **Address** | _____ | | |
| | _____ | | | |
| | Street | | | |
| | _____ | | | |
| | City          State     ZIP Code | | | |
| | **Relationship to debtor** | | | |
| | _____ | | | |

| | Who received transfer? | | | |
|---|---|---|---|---|
| 13.2. | _____ | _____ | _____ | $_____ |
| | **Address** | _____ | | |
| | _____ | | | |
| | Street | | | |
| | _____ | | | |
| | City          State     ZIP Code | | | |
| | **Relationship to debtor** | | | |
| | _____ | | | |

| Part 7: | Previous Locations |
|---|---|

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| | Address | | Dates of occupancy | |
|---|---|---|---|---|
| 14.1. | _____ | | From _____ | To _____ |
| | Street | | | |
| | _____ | | | |
| | City          State     ZIP Code | | | |
| 14.2. | _____ | | From _____ | To _____ |
| | Street | | | |
| | _____ | | | |
| | City          State     ZIP Code | | | |

Debtor    Free Speech Systems, LLC
_____    Case number (if known)___22-60043_____
          Name

| Part 8: | Health Care Bankruptcies |
|---|---|

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:

— diagnosing or treating injury, deformity, or disease, or

— providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| | Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|---|
| 15.1. | _____<br>Facility name | _____<br>_____ | _____ |
| | _____<br>Street | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. | **How are records kept?** |
| | _____<br>City        State        ZIP Code | _____ | *Check all that apply:*<br>☐ Electronically<br>☐ Paper |

| | Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|---|
| 15.2. | _____<br>Facility name | _____<br>_____ | _____ |
| | _____<br>Street | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. | **How are records kept?** |
| | _____<br>City        State        ZIP Code | _____ | *Check all that apply:*<br>☐ Electronically<br>☐ Paper |

| Part 9: | Personally Identifiable Information |
|---|---|

**16. Does the debtor collect and retain personally identifiable information of customers?**

☐ No.

☑ Yes. State the nature of the information collected and retained.   Name, address, credit card information

    Does the debtor have a privacy policy about that information?

    ☐ No

    ☑ Yes

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.

    Yes. Does the debtor serve as plan administrator?

    ☐ No. Go to Part 10.

    ☐ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
|---|---|
| _____ | EIN: ___ ___ – ___ ___ ___ ___ ___ ___ ___ |

    Has the plan been terminated?

    ☐ No

    ☑ Yes

Debtor   Free Speech Systems, LLC
_____
Name

Case number (if known) 22-60043

---

| **Part 10:** | **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units** |

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| | Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.1. | _____<br>Name<br>_____<br>Street<br>_____<br>City    State    ZIP Code | XXXX–___ ___ ___ ___ | ☐ Checking<br>☐ Savings<br>☐ Money market<br>☐ Brokerage<br>☐ Other_____ | _____ | $_____ |
| 18.2. | _____<br>Name<br>_____<br>Street<br>_____<br>City    State    ZIP Code | XXXX–___ ___ ___ ___ | ☐ Checking<br>☐ Savings<br>☐ Money market<br>☐ Brokerage<br>☐ Other_____ | _____ | $_____ |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____<br>Name<br>_____<br>Street<br>_____<br>City    State    ZIP Code | _____<br>_____<br>_____<br>**Address**<br>_____ | _____<br>_____<br>_____ | ☐ No<br>☐ Yes |

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____<br>Name<br>_____<br>Street<br>_____<br>City    State    ZIP Code | _____<br>_____<br>_____<br>**Address**<br>_____ | _____<br>_____<br>_____ | ☐ No<br>☐ Yes |

---

003052

| Debtor | Free Speech Systems, LLC | | Case number *(if known)* 22-60043 |
|---|---|---|---|
| | Name | | |

---

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|---|---|

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| | | | $ |
| Name | | | |
| Street | | | |
| City          State          ZIP Code | | | |

---

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☑ No
☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| | | | ☐ Pending |
| Case number | Name | | ☐ On appeal |
| | Street | | ☐ Concluded |
| | City          State          ZIP Code | | |

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |
| Name | Name | | |
| Street | Street | | |
| City          State          ZIP Code | City          State          ZIP Code | | |

---

Debtor   Free Speech Systems, LLC
_____
Name

Case number (if known) 22-60043
_____

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| Name | Name | _____ | _____ |
| Street | Street | _____ | |
| | | _____ | |
| City          State     ZIP Code | City          State     ZIP Code | | |

---

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None

| | Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|---|
| 25.1. | Name<br>Street<br>City          State     ZIP Code | _____<br>_____<br>_____ | EIN: ___ ___ – ___ ___ ___ ___ ___ ___ ___<br>**Dates business existed**<br><br>From _____   To _____ |
| 25.2. | Name<br>Street<br>City          State     ZIP Code | _____<br>_____<br>_____ | EIN: ___ ___ – ___ ___ ___ ___ ___ ___ ___<br>**Dates business existed**<br><br>From _____   To _____ |
| 25.3. | Name<br>Street<br>City          State     ZIP Code | _____<br>_____<br>_____ | EIN: ___ ___ – ___ ___ ___ ___ ___ ___ ___<br>**Dates business existed**<br><br>From _____   To _____ |

Debtor    Free Speech Systems, LLC
          _____          Case number (if known)__22-60043_____
          Name

---

26. **Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26a.1. **Schwartz Associates LLC**<br>Name<br>712 Main Street, Ste. 1830<br>Street | From 05/19/2022  To Present |
| Houston                      TX            77006<br>City                            State          ZIP Code | |

| Name and address | Dates of service |
|---|---|
| 26a.2. **Melinda Flores**<br>Name<br>261 Ashleaf Dr<br>Street | From 09/26/2016  To 07/29/2022 |
| Buda                         TX            78610<br>City                            State          ZIP Code | |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26b.1. **Schwartz Associates LLC**<br>Name<br>712 Main Street, Ste. 1830<br>Street | From 05/19/2022  To Present |
| Houston                      TX            77006<br>City                            State          ZIP Code | |

| Name and address | Dates of service |
|---|---|
| 26b.2. **Bob Roe**<br>Name<br>219 Black Wolf Run<br>Street | From _____  To _____ |
| Austin                       TX            78738<br>City                            State          ZIP Code | |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.    Please see attached

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1. **Schwartz Associates LLC**<br>Name<br>712 Main Street, Ste. 1830<br>Street | _____<br>_____ |
| Houston                      TX            77006<br>City                            State          ZIP Code | _____ |

---

Debtor   Free Speech Systems, LLC
_____
         Name

Case number (if known) 22-60043
                        _____

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.2. Melinda Flores | _____ |
| Name | _____ |
| 261 Ashleaf Dr | |
| Street | _____ |

| City Buda | State TX | ZIP Code 78610 |

*See Continuation in Attached*

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☑ None

| Name and address |
|---|
| 26d.1. _____ |
| Name |
| _____ |
| Street |
| _____ |
| City                    State          ZIP Code |

| Name and address |
|---|
| 26d.2. _____ |
| Name |
| _____ |
| Street |
| _____ |
| City                    State          ZIP Code |

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No
☑ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| _____ | _____ | $_____ |

| Name and address of the person who has possession of inventory records |
|---|
| 27.1. _____ |
| Name |
| _____ |
| Street |
| _____ |
| City                    State          ZIP Code |

Debtor    Free Speech Systems, LLC
          _____          Case number (if known) 22-60043
          Name                                                                     _____

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| _____ | _____ | $ _____ |

| Name and address of the person who has possession of inventory records |
|---|

27.2.  _____
       Name

       _____
       Street

       _____
       City                          State      ZIP Code

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Alex Jones | 3019 Alvin Devane Blvd Austin TX 78741 | Owner | 100% |
| Marc Schwartz | 712 Main Street Ste. 1830 Houston TX 77002 | Chief Restructuring Officer | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☑ No
☐ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| _____ | _____ | _____ | From _____ To _____ |
| _____ | _____ | _____ | From _____ To _____ |
| _____ | _____ | _____ | From _____ To _____ |
| _____ | _____ | _____ | From _____ To _____ |

30. **Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
☑ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1.  Alex Jones | 932,277.89 | 7/27/22 | Draws |
| Name | | | |
| 3019 Alvin Devane Blvd | | 7/8/22 | |
| Street | | | |
| Austin              TX       78741 | | 6/29/22 | |
| City          State    ZIP Code | | | |
| Relationship to debtor | | 6/15/22 | |
| Owner | | 6/13/22 | |

Debtor  Free Speech Systems, LLC
_____
Name

Case number (if known)  22-60043
_____

|  | Name and address of recipient | 3,078,934.33 | 7/26/22 | Loans and Advances |
|---|---|---|---|---|
| 30.2 | PQPR Holdings Limited LLC | | 6/30/22 | |
| | Name | | | |
| | 3005 S Lamar Blvd Ste D109-317 | | 6/28/22 | |
| | Street | | | |
| | Austin                    TX          78704-8864 | | 6/13/22 | |
| | City                     State        ZIP Code | | | |
| | **Relationship to debtor** | | 5/31/22 | |
| | Affiliate - >20% Owned by or for the benefit of AEJ | | | |

*See Continuation in Attached*

**31.** **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| _____ | EIN: ___ ___ – ___ ___ ___ ___ ___ ___ ___ |

**32.** **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| _____ | EIN: ___ ___ – ___ ___ ___ ___ ___ ___ ___ |

---

**Part 14:**    **Signature and Declaration**

---

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    08/29/2022
                      MM / DD / YYYY

✗ _W. Marc Schwartz_ (signature)                    Printed name  W. Marc Schwartz
Signature of individual signing on behalf of the debtor

Position or relationship to debtor  Chief Restructuring Officer

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

☐ No
☑ Yes

**Part 2.3. Payments to Creditors wihtin 90 days**

| Date | Name | Address | Reasons for Payment | Amount |
|------|------|---------|---------------------|--------|
| 07/22/2022 | Addshoppers, Inc | 15806 Brookway Dr Ste 200 Huntersville, NC 28078 | Seuppliers or Vendors | 2,989.00 |
| 07/22/2022 | Addshoppers, Inc | 15807 Brookway Dr Ste 200 Huntersville, NC 28078 | Seuppliers or Vendors | 2,989.00 |
| 06/10/2022 | Addshoppers, Inc | 15808 Brookway Dr Ste 200 Huntersville, NC 28078 | Seuppliers or Vendors | 2,989.00 |
| 05/09/2022 | Addshoppers, Inc | 15809 Brookway Dr Ste 200 Huntersville, NC 28078 | Seuppliers or Vendors | 2,989.00 |
| 05/26/2022 | Air Supply of North Texas aka Precision Oxygen | 2829 Fort Worth Avenue Dallas, TX 75211 | Seuppliers or Vendors | 229.18 |
| 07/22/2022 | Airco Mechanical, LTD | PO Box 1598 Round Rock, TX 78680 | Seuppliers or Vendors | 6,491.86 |
| 06/13/2022 | Airco Mechanical, LTD | PO Box 1598 Round Rock, TX 78681 | Seuppliers or Vendors | 641.39 |
| 05/23/2022 | Airco Mechanical, LTD | PO Box 1598 Round Rock, TX 78682 | Seuppliers or Vendors | 3,824.52 |
| 08/19/2022 | AT&T Mobile | PO Box 5001 Carol Stream, IL 60197-5001 | Seuppliers or Vendors | 5,167.41 |
| 06/03/2022 | AT&T Mobile | PO Box 5001 Carol Stream, IL 60197-5002 | Seuppliers or Vendors | 3,919.83 |
| 05/05/2022 | AT&T Mobile | PO Box 5001 Carol Stream, IL 60197-5003 | Seuppliers or Vendors | 3,919.80 |
| 07/22/2022 | Atomial, LLC | 1920 E. Riverside Drive Suite A-120 #124  Austin, TX 78741 | Seuppliers or Vendors | 25,200.00 |
| 06/01/2022 | Atomial, LLC | 1921 E. Riverside Drive Suite A-120 #124  Austin, TX 78741 | Seuppliers or Vendors | 25,200.00 |
| 05/25/2022 | Atomial, LLC | 1922 E. Riverside Drive Suite A-120 #124  Austin, TX 78741 | Seuppliers or Vendors | 25,200.00 |
| 05/03/2022 | Atomial, LLC | 1923 E. Riverside Drive Suite A-120 #124  Austin, TX 78741 | Seuppliers or Vendors | 25,200.00 |
| 08/19/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78691 | Seuppliers or Vendors | 16,019.35 |
| 08/12/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78692 | Seuppliers or Vendors | 28,044.34 |
| 07/28/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78693 | Seuppliers or Vendors | 2,037.69 |
| 07/28/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78694 | Seuppliers or Vendors | 6,208.14 |
| 07/22/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78695 | Seuppliers or Vendors | 6,348.86 |
| 07/18/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78696 | Seuppliers or Vendors | 5,829.26 |
| 07/12/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78697 | Seuppliers or Vendors | 6,397.58 |
| 06/27/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78698 | Seuppliers or Vendors | 6,397.58 |
| 06/10/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78699 | Seuppliers or Vendors | 6,397.58 |
| 06/10/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78700 | Seuppliers or Vendors | 6,397.58 |
| 05/31/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78701 | Seuppliers or Vendors | 6,486.88 |
| 05/31/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78702 | Seuppliers or Vendors | 3,382.81 |
| 05/31/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78703 | Seuppliers or Vendors | 3,972.78 |
| 05/19/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78704 | Seuppliers or Vendors | 3,972.78 |
| 05/19/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78705 | Seuppliers or Vendors | 2,029.69 |
| 05/11/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78706 | Seuppliers or Vendors | 3,972.78 |
| 05/09/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78707 | Seuppliers or Vendors | 4,541.09 |
| 05/02/2022 | Austin Security & Investigation Solutions | PO Box 2904 Pflugerville, TX 78708 | Seuppliers or Vendors | 4,010.66 |
| 05/25/2022 | Blott, Jacquelyn, Attorney at Law | 200 University Boulevard Suite 225 #251 Round Rock, TX 78665 | Seuppliers or Vendors | 20,000.00 |
| 07/05/2022 | City of Austin | PO Box 2267 Austin, TX 78783 | Seuppliers or Vendors | 855.76 |
| 07/05/2022 | City of Austin | PO Box 2267 Austin, TX 78784 | Seuppliers or Vendors | 550.69 |
| 07/05/2022 | City of Austin | PO Box 2267 Austin, TX 78785 | Seuppliers or Vendors | 3,246.03 |
| 07/05/2022 | City of Austin | PO Box 2267 Austin, TX 78786 | Seuppliers or Vendors | 1,213.48 |
| 06/01/2022 | City of Austin | PO Box 2267 Austin, TX 78787 | Seuppliers or Vendors | 1,031.78 |
| 06/01/2022 | City of Austin | PO Box 2267 Austin, TX 78788 | Seuppliers or Vendors | 491.21 |
| 06/01/2022 | City of Austin | PO Box 2267 Austin, TX 78789 | Seuppliers or Vendors | 727.55 |
| 06/01/2022 | City of Austin | PO Box 2267 Austin, TX 78790 | Seuppliers or Vendors | 2,974.75 |
| 05/03/2022 | City of Austin | PO Box 2267 Austin, TX 78791 | Seuppliers or Vendors | 4,826.58 |
| 06/03/2022 | CTRMA Processing | PO Box 734182 Dallas, TX 75373 | Seuppliers or Vendors | 87.00 |
| 05/23/2022 | CTRMA Processing | PO Box 734182 Dallas, TX 75374 | Seuppliers or Vendors | 107.21 |
| 05/23/2022 | CTRMA Processing | PO Box 734182 Dallas, TX 75375 | Seuppliers or Vendors | 93.40 |
| 04/29/2022 | CTRMA Processing | PO Box 734182 Dallas, TX 75376 | Seuppliers or Vendors | 84.39 |
| 06/24/2022 | eCommerce CDN, LLC | 221 E 63rd Street Savannah, GA 31405 | Seuppliers or Vendors | 27,270.00 |
| 06/08/2022 | eCommerce CDN, LLC | 222 E 63rd Street Savannah, GA 31405 | Seuppliers or Vendors | 12,270.00 |
| 05/21/2022 | eCommerce CDN, LLC | 223 E 63rd Street Savannah, GA 31405 | Seuppliers or Vendors | 15,000.00 |
| 05/09/2022 | eCommerce CDN, LLC | 224 E 63rd Street Savannah, GA 31405 | Seuppliers or Vendors | 13,635.00 |
| 06/17/2022 | Getty Images, Inc | PO Box 953604 St. Louis, MO 63195-3604 | Seuppliers or Vendors | 9,201.25 |
| 06/03/2022 | Getty Images, Inc | PO Box 953604 St. Louis, MO 63195-3605 | Seuppliers or Vendors | 9,201.25 |
| 05/11/2022 | Getty Images, Inc | PO Box 953604 St. Louis, MO 63195-3606 | Seuppliers or Vendors | 9,201.25 |
| 06/13/2022 | Gibson, Ronald | 4012 Pleasant Grove Church Rd Shelby NC, 28150-2842 | Seuppliers or Vendors | 1,500.00 |
| 04/30/2022 | Gibson, Ronald | 4013 Pleasant Grove Church Rd Shelby NC, 28150-2842 | Seuppliers or Vendors | 1,500.00 |
| 06/17/2022 | Gracenote Media Services, LLC | 29421 Network Place Chicago, IL 60673-1294 | Seuppliers or Vendors | 119.98 |
| 06/03/2022 | Gracenote Media Services, LLC | 29422 Network Place Chicago, IL 60673-1294 | Seuppliers or Vendors | 119.98 |
| 05/20/2022 | Gracenote Media Services, LLC | 29423 Network Place Chicago, IL 60673-1294 | Seuppliers or Vendors | 119.98 |
| 06/24/2022 | JCE SEO | 6101 Broadway San Antonio, TX 78209 | Seuppliers or Vendors | 5,000.00 |
| 06/09/2022 | JCE SEO | 6102 Broadway San Antonio, TX 78209 | Seuppliers or Vendors | 5,000.00 |

| | Part 2.3. Payments to Creditors wihtin 90 days | | | |
|---|---|---|---|---|
| Date | Name | Address | Reasons for Payment | Amount |
| 05/21/2022 | JCE SEO | 6103 Broadway San Antonio, TX 78209 | Seuppliers or Vendors | 5,000.00 |
| 05/09/2022 | JCE SEO | 6104 Broadway San Antonio, TX 78209 | Seuppliers or Vendors | 5,000.00 |
| 07/22/2022 | JW JIB Productions, LLC | 2921 Carvelle Drive Riviera Beach, FL 33404 | Seuppliers or Vendors | 3,500.00 |
| 06/24/2022 | JW JIB Productions, LLC | 2922 Carvelle Drive Riviera Beach, FL 33404 | Seuppliers or Vendors | 3,600.00 |
| 06/09/2022 | JW JIB Productions, LLC | 2923 Carvelle Drive Riviera Beach, FL 33404 | Seuppliers or Vendors | 3,500.00 |
| 05/27/2022 | JW JIB Productions, LLC | 2924 Carvelle Drive Riviera Beach, FL 33404 | Seuppliers or Vendors | 7,000.00 |
| 05/18/2022 | JW JIB Productions, LLC | 2925 Carvelle Drive Riviera Beach, FL 33404 | Seuppliers or Vendors | 3,500.00 |
| 07/22/2022 | Konica Minolta Premier Finance | PO Box 41602 Philadelphia, PA 19101-1602 | Seuppliers or Vendors | 1,761.27 |
| 06/27/2022 | Konica Minolta Premier Finance | PO Box 41602 Philadelphia, PA 19101-1603 | Seuppliers or Vendors | 1,847.87 |
| 05/23/2022 | Konica Minolta Premier Finance | PO Box 41602 Philadelphia, PA 19101-1604 | Seuppliers or Vendors | 1,761.27 |
| 05/09/2022 | Konica Minolta Premier Finance | PO Box 41602 Philadelphia, PA 19101-1605 | Seuppliers or Vendors | 1,847.87 |
| 06/03/2022 | Lumen/Level 3 Communications | PO Box 910182 Denver, CO 80291-0182 | Seuppliers or Vendors | 8,960.63 |
| 05/23/2022 | Lumen/Level 3 Communications | PO Box 910182 Denver, CO 80291-0183 | Seuppliers or Vendors | 10,560.15 |
| 05/20/2022 | Lumen/Level 3 Communications | PO Box 910182 Denver, CO 80291-0184 | Seuppliers or Vendors | 9,900.70 |
| 06/22/2022 | Lyman, Daniel | 5832 Elton Road Venice, FL 34293 | Seuppliers or Vendors | 3,500.00 |
| 05/20/2022 | Lyman, Daniel | 5833 Elton Road Venice, FL 34293 | Seuppliers or Vendors | 3,500.00 |
| 06/24/2022 | MRJR Holdings, LLC | PO Box 27740 Las Vegas, NV 89426 | Seuppliers or Vendors | 12,000.00 |
| 06/17/2022 | MRJR Holdings, LLC | PO Box 27740 Las Vegas, NV 89427 | Seuppliers or Vendors | 24,000.00 |
| 05/20/2022 | MRJR Holdings, LLC | PO Box 27740 Las Vegas, NV 89428 | Seuppliers or Vendors | 12,000.00 |
| 05/18/2022 | MRJR Holdings, LLC | PO Box 27740 Las Vegas, NV 89429 | Seuppliers or Vendors | 12,000.00 |
| 05/12/2022 | MRJR Holdings, LLC | PO Box 27740 Las Vegas, NV 89430 | Seuppliers or Vendors | 12,000.00 |
| 05/06/2022 | MRJR Holdings, LLC | PO Box 27740 Las Vegas, NV 89431 | Seuppliers or Vendors | 12,000.00 |
| 07/01/2022 | Sparkletts & Sierra Springs | PO Box 660579 Dallas, TX 75266-0579 | Seuppliers or Vendors | 948.12 |
| 06/03/2022 | Sparkletts & Sierra Springs | PO Box 660579 Dallas, TX 75266-0580 | Seuppliers or Vendors | 945.19 |
| 05/23/2022 | Sparkletts & Sierra Springs | PO Box 660579 Dallas, TX 75266-0581 | Seuppliers or Vendors | 1,454.39 |
| 05/23/2022 | Texas Gas Service | PO Box 219913 Kansas City, MO 64121 | Seuppliers or Vendors | 172.48 |
| 07/22/2022 | Willow Grove Productions | 1810 Rockcliff Road Austin, TX 78746 | Seuppliers or Vendors | 2,700.00 |
| 05/18/2022 | Willow Grove Productions | 1811 Rockcliff Road Austin, TX 78746 | Seuppliers or Vendors | 2,450.00 |
| 06/17/2022 | WMQM-AM 1600 | 21 Stephen Hill Road Atoka, TN 38004 | Seuppliers or Vendors | 2,500.00 |
| 05/23/2022 | WMQM-AM 1600 | 22 Stephen Hill Road Atoka, TN 38004 | Seuppliers or Vendors | 2,500.00 |
| 05/20/2022 | WMQM-AM 1600 | 23 Stephen Hill Road Atoka, TN 38004 | Seuppliers or Vendors | 2,500.00 |
| 05/12/2022 | American Media/Reality Zone | PO Box 4646 Thousand Oaks, CA 91359 | Seuppliers or Vendors | 801.00 |
| 06/22/2022 | ███████ | ███████ | Seuppliers or Vendors | 25.00 |
| 06/22/2022 | ███████ | ███████ | Seuppliers or Vendors | 25.00 |
| 06/14/2022 | ███████ | ███████ | Seuppliers or Vendors | 15.00 |
| 06/14/2022 | ███████ | ███████ | Seuppliers or Vendors | 15.00 |
| 06/10/2022 | ███████ | ███████ | Seuppliers or Vendors | 15.00 |
| 05/27/2022 | ███████ | ███████ | Seuppliers or Vendors | 15.00 |
| 05/23/2022 | ███████ | ███████ | Seuppliers or Vendors | 15.00 |
| 05/23/2022 | ███████ | ███████ | Seuppliers or Vendors | 25.00 |
| 05/06/2022 | ███████ | ███████ | Seuppliers or Vendors | 15.00 |
| 05/03/2022 | ███████ | ███████ | Seuppliers or Vendors | 25.00 |
| 06/22/2022 | Watson, Paul | 9 Riverdale Road Ranmoor Sheffield South Yorkshire, United Kingdom S10 3FA | Seuppliers or Vendors | 25,000.00 |
| 05/23/2022 | Watson, Paul | 10 Riverdale Road Ranmoor Sheffield South Yorkshire, United Kingdom S10 3FA | Seuppliers or Vendors | 25,000.00 |
| 05/03/2022 | Watson, Paul | 11 Riverdale Road Ranmoor Sheffield South Yorkshire, United Kingdom S10 3FA | Seuppliers or Vendors | 25,000.00 |
| 07/22/2022 | Verizon Wireless | PO Box 660108 Dallas, TX 75266 | Seuppliers or Vendors | 531.80 |
| 06/03/2022 | Verizon Wireless | PO Box 660108 Dallas, TX 75267 | Seuppliers or Vendors | 513.13 |
| 05/20/2022 | Verizon Wireless | PO Box 660108 Dallas, TX 75268 | Seuppliers or Vendors | 524.18 |
| 06/22/2022 | Miller, Sean | PO Box 763 Wyalusing, PA 18853 | Seuppliers or Vendors | 3,200.00 |
| 05/20/2022 | Miller, Sean | PO Box 763 Wyalusing, PA 18854 | Seuppliers or Vendors | 3,200.00 |
| 07/01/2022 | Spectrum Enterprise aka Time Warner Cable | PO Box 60074 City of Industry, CA 91716 | Seuppliers or Vendors | 2,106.03 |
| 06/03/2022 | Spectrum Enterprise aka Time Warner Cable | PO Box 60074 City of Industry, CA 91717 | Seuppliers or Vendors | 2,072.17 |
| 05/20/2022 | Spectrum Enterprise aka Time Warner Cable | PO Box 60074 City of Industry, CA 91718 | Seuppliers or Vendors | 4,176.54 |
| 06/24/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83864 | Seuppliers or Vendors | 10,125.81 |

**Part 2.3. Payments to Creditors wihtin 90 days**

| Date | Name | Address | Reasons for Payment | Amount |
|------|------|---------|---------------------|--------|
| 06/21/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83865 | Seuppliers or Vendors | 23,036.81 |
| 06/14/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83866 | Seuppliers or Vendors | 9,667.30 |
| 06/14/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83867 | Seuppliers or Vendors | 45,000.00 |
| 06/14/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83868 | Seuppliers or Vendors | 23,349.52 |
| 05/28/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83869 | Seuppliers or Vendors | 47,349.37 |
| 05/27/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83870 | Seuppliers or Vendors | 49,292.22 |
| 05/25/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83871 | Seuppliers or Vendors | 57,369.70 |
| 05/23/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83872 | Seuppliers or Vendors | 85,823.99 |
| 05/20/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83873 | Seuppliers or Vendors | 1,962.00 |
| 05/20/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83874 | Seuppliers or Vendors | 29,216.11 |
| 05/16/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83875 | Seuppliers or Vendors | 42,347.58 |
| 05/13/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83876 | Seuppliers or Vendors | 35,160.81 |
| 05/12/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83877 | Seuppliers or Vendors | 27,760.85 |
| 05/11/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83878 | Seuppliers or Vendors | 32,455.68 |
| 05/06/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83879 | Seuppliers or Vendors | 54,634.23 |
| 05/03/2022 | Ready Alliance Group, Inc | PO Box 1709 Sandpoint, ID 83880 | Seuppliers or Vendors | 29,043.77 |
| 07/01/2022 | One Party America, LLC | 6700 Woodlands Parkway Suite 230-309 The Woodlands, TX 77382 | Seuppliers or Vendors | 50,000.00 |
| 06/24/2022 | One Party America, LLC | 6700 Woodlands Parkway Suite 230-309 The Woodlands, TX 77382 | Seuppliers or Vendors | 70,000.00 |

## Part 2.4 (Payments to Insiders)
## Payments to PQPR
### July 29, 2021 - July 29, 2022

| Date | Transaction Type | Num | Name | Memo/Description | Account | Split | Amount |
|---|---|---|---|---|---|---|---|
| 7/26/2022 | Journal Entry | 140 | | To record principal payment on Note 2 between July 1 and July 26 2022 | 27000 Note Due to PQPR/2021/11/10 25,300.000 Note 27000 Note Due to PQPR/2021/11/10 | | -45,722.54 |
| 6/30/2022 | Journal Entry | 40 | | To record Jun 2022 Note 2 Principal Payment | 25,300,000 Note | -Split- | -152,664.03 |
| 6/28/2022 | Expense | | | INTERNET TRANSFER FROM CHK 8514 TO CHK 8555 4572368 | Advances from PQPR | 10000 Cash:10100 Operating Account - Security Bank | -300,000.00 |
| 6/13/2022 | Transfer | | | INTERNET TRANSFER FROM CHK 8514 TO CHK 8555 4862320 | Advances from PQPR | 10000 Cash:10100 Operating Account - Security Bank | -150,000.00 |
| 5/31/2022 | Journal Entry | 39 | | To record May 2022 Note 2 Principal Payment | 27000 Note Due to PQPR/2021/11/10 25,300,000 Note | -Split- | -147,207.82 |
| 5/31/2022 | Expense | | | INTERNET TRANSFER FROM CHK 8514 TO CHK 1550 4179825 | Advances from PQPR | 10000 Cash:10100 Operating Account - Security Bank | -250,000.00 |
| 5/24/2022 | Expense | | | | Advances from PQPR | 10000 Cash:10100 Operating Account - Security Bank | -75,000.00 |
| 5/24/2022 | Expense | | | INTERNET TRANSFER FROM CHK 8514 TO CHK 1550 4006193 | Advances from PQPR | 10000 Cash:10100 Operating Account - Security Bank | -200,000.00 |
| 5/23/2022 | Expense | | | INTERNET TRANSFER FROM CHK 8514 TO CHK 1550 3766594 | Advances from PQPR | 10000 Cash:10100 Operating Account - Security Bank | -200,000.00 |
| 4/30/2022 | Journal Entry | | | | Interest Payable 27000 Note Due to PQPR/2021/11/10 | | -2,622.17 |
| 4/30/2022 | Journal Entry | 38 | | To record Apr 2022 Note 2 Principal Payment | 25,300,000 Note | -Split- | -154,835.39 |
| 4/29/2022 | Expense | | | | Advances from PQPR | 10000 Cash:10130 Depository Account - Security Bank | -50,000.00 |
| 4/28/2022 | Expense | | | | Advances from PQPR | 10000 Cash:10130 Depository Account - Security Bank | -100,000.00 |
| 4/26/2022 | Expense | | | | Advances from PQPR | 10000 Cash:10130 Depository Account - Security Bank | -50,000.00 |
| 4/18/2022 | Expense | | | | Advances from PQPR | 10000 Cash:10130 Depository Account - Security Bank | -50,000.00 |
| 4/14/2022 | Expense | | | INTERNET TRANSFER FROM CHK 8563 TO CHK 1550 7502977 | Advances from PQPR | 10000 Cash:10130 Depository Account - Security Bank | -75,000.00 |
| 4/1/2022 | Expense | | | INTERNET TRANSFER FROM CHK 8514 TO CHK 1550 3118799 | Advances from PQPR 27000 Note Due to PQPR/2021/11/10 | 10000 Cash:10100 Operating Account - Security Bank | -175,000.00 |
| 3/31/2022 | Journal Entry | 37 | | To record Mar 2022 Note 2 Principal Payment | 25,300,000 Note 27000 Note Due to PQPR/2021/11/10 | -Split- | -171,342.36 |
| 2/28/2022 | Journal Entry | 36 | | To record Feb 2022 Note 2 Principal Payment | 25,300,000 Note | -Split- | -126,689.16 |
| 2/18/2022 | Expense | | | | Advances from PQPR 27000 Note Due to PQPR/2021/11/10 | 10000 Cash:10130 Depository Account - Security Bank | -160,000.00 |
| 1/31/2022 | Journal Entry | 35 | | To record Jan 2022 Note 2 Principal Payment | 25,300,000 Note 27000 Note Due to PQPR/2021/11/10 | -Split- | -135,256.08 |
| 12/31/2021 | Journal Entry | 40 | | To record Dec 2021 Principal payment on Note 2 | 29000 Note Payable PQPR | -Split- | -170,676.17 |
| 12/31/2021 | Journal Entry | 42 | | To reverse incorrect Dec Entries | 29000 Note Payable PQPR | -Split- | 8,000.00 |
| 12/10/2021 | Journal Entry | Aur121021 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 12/9/2021 | Journal Entry | Aur120921 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 12/8/2021 | Journal Entry | Aur120821 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 12/7/2021 | Journal Entry | Aur120721 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |

003062

| Date | Type | Num | Name | Memo | Account | Split | Amount |
|---|---|---|---|---|---|---|---|
| 12/6/2021 | Journal Entry | Aur120621 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 12/3/2021 | Journal Entry | Aur120321 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 12/2/2021 | Journal Entry | Aur120121 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 12/2/2021 | Journal Entry | Aur120221 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/30/2021 | Journal Entry | 39 | | To record Nov 2021 Interest payment on Note 2 | 29000 Note Payable PQPR | -Split- | -87,102.25 |
| 11/30/2021 | Journal Entry | 39 | | To record Nov 2021 Interest payment on Note 2 | 29000 Note Payable PQPR | -Split- | -20,650.61 |
| 11/30/2021 | Journal Entry | 41 | | To reverse incorrect Nov Entries | 29000 Note Payable PQPR | -Split- | 19,000.00 |
| 11/30/2021 | Journal Entry | Aur113021 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/29/2021 | Journal Entry | Aur112921 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/26/2021 | Journal Entry | Aur112621 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/24/2021 | Journal Entry | Aur112421 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/23/2021 | Journal Entry | Aur112321 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/22/2021 | Journal Entry | Aur112221 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/19/2021 | Journal Entry | Aur111921 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/18/2021 | Journal Entry | Aur111821 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/17/2021 | Journal Entry | Aur111721 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/16/2021 | Journal Entry | Aur111621 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/15/2021 | Journal Entry | Aur111521 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/12/2021 | Journal Entry | Aur111221 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/10/2021 | Journal Entry | Aur111021 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/9/2021 | Journal Entry | Aur110921 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/8/2021 | Journal Entry | Aur110821 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/5/2021 | Journal Entry | Aur110521 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/4/2021 | Journal Entry | Aur110421 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/3/2021 | Journal Entry | Aur110321 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 11/2/2021 | Journal Entry | Aur110221 | | Note Payable PQPR | 29000 Note Payable PQPR | -Split- | -1,000.00 |
| 10/8/2021 | Check | WIRE | PQPR Holdings Limited, LLC | PQPR/FSS 081320 Note Payment 14 - Interest & Principle | 10710 SECURITY BANK OF CRAWFORD:Sec Bank of Crawford Depository | -Split- | -5,825.16 |

003063

| Date | Type | Num | Name | Memo | Account | Split | Amount |
|---|---|---|---|---|---|---|---|
| 9/28/2021 | Check | WIRE | PQPR Holdings Limited, LLC | PQPR/FSS 081320 Note Payment 13 - Interest & Principle | 29000 Note Payable PQPR | 10710 SECURITY BANK OF CRAWFORD:Sec Bank of Crawford Depository | -13,654.89 |
| 9/20/2021 | Journal Entry | 33 | | | 29000 Note Payable PQPR | -Split- | -1,708.05 |
| 8/24/2021 | Check | WIRE | PQPR Holdings Limited, LLC | PQPR/FSS 081320 Note Payment 10 - Interest & Principle | 29000 Note Payable PQPR | 10710 SECURITY BANK OF CRAWFORD:Sec Bank of Crawford Depository | -6,559.05 |
| 8/11/2021 | Check | WIRE | PQPR Holdings Limited, LLC | PQPR/FSS 081320 Note Payment 9 - Interest & Principle | 29000 Note Payable PQPR | 10710 SECURITY BANK OF CRAWFORD:Sec Bank of Crawford Depository | -1,418.60 |

**(3,078,934.33)**

003064

Part 3.

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits (Continued)**

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| Neil Heslin v. Alexander E. Jones, InfoWars, LLC, Free Speech Systems, LLC and Owen Shroyer | 01 Determination of removed claim or cause | U.S. Bankruptcy Court Western District of Texas (Austin) — Name; 903 San Jacinto Blvd., Suite 322 — Street | ☐ Pending ☐ On appeal ☑ Concluded |
| **Case number** 22-01023-hcm | | Austin — City; TX — State; 78701 — ZIP Code | |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| Scarlett Lewis v. Alexander E. Jones, InfoWars, LLC, and Free Speech Systems, LLC | 01 Determination of removed claim or cause | U.S. Bankruptcy Court Western District of Texas (Austin) — Name; 903 San Jacinto Blvd., Suite 322 — Street | ☐ Pending ☐ On appeal ☑ Concluded |
| **Case number** 22-01024-hcm | | Austin — City; TX — State; 78701 — ZIP Code | |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| Gilmore v. Jones et al | 320 Assault Libel & Slander | U.S. District Court Western District of Virginia (Charlottesville) — Name; 255 W. Main Street Room 304 — Street | ☐ Pending ☐ On appeal ☑ Concluded |
| **Case number** 3:18-cv-00017-NKM-JCH | | Charlottesville — City; VA — State; 22902 — ZIP Code | |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| Klayman v. Infowars, LLC et al | 320 Assault Libel & Slander | U.S. District Court for the Southern District of Florida (Ft Lauderdale) — Name; 299 East Broward Boulevard #108 — Street | ☐ Pending ☐ On appeal ☑ Concluded |
| **Case number** 0:20-cv-61912-AMC | | Fort Lauderdale — City; FL — State; 33301 — ZIP Code | |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| Murdock v. Jones et al | 890 Other Statutory Actions | U.S. District Court District of New Jersey (Trenton) — Name; 402 East State Street — Street | ☐ Pending ☐ On appeal ☑ Concluded |
| **Case number** 3:21-cv-13184-MAS-DEA | | Trenton — City; NJ — State; 08608 — ZIP Code | |

003065

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| Free Speech Systems, LLC v. Federal Aviation Administration et al | 440 Civil Rights: Other | U.S. District Court Western District of Texas (Austin) | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| | | Name | |
| | | 501 West Fifth Street, Suite 1100 | |
| | | Street | |
| **Case number** | | | |
| 1:21-cv-00826-RP | | Austin        TX        78701 | |
| | | City         State      ZIP Code | |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| Yan Luis v. Free Speech Systems LLC | 446 Civil Rights: Americans with Disabilities - Other | U.S. District Court Southern District of New York (Foley Square) | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| | | Name | |
| | | 40 Foley Square | |
| | | Street | |
| **Case number** | | | |
| 1:22-cv-01594-PAE | | New York       NY        10007 | |
| | | City         State      ZIP Code | |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| Larry Klayman v. Infowars, LLC, et al | 320 Assault Libel & Slander | U.S. Court of Appeals, Eleventh Circuit | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| | | Name | |
| | | 56 Forsyth Street, N.W. | |
| | | Street | |
| **Case number** | | | |
| 22-11230 | | Atlanta        GA        30303 | |
| | | City         State      ZIP Code | |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources Inc | 01 Determination of removed claim or cause | U.S. Bankruptcy Court District of Connecticut (Bridgeport) | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| | | Name | |
| | | 915 Lafayette Boulevard | |
| | | Street | |
| **Case number** | | | |
| 22-05004 | | Bridgeport      CT        06604 | |
| | | City         State      ZIP Code | |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| William Sherlach v. Alex E. Jones, Free Speech Systems LLC, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications, Inc and Midas Resources Inc | 01 Determination of removed claim or cause | U.S. Bankruptcy Court District of Connecticut (Bridgeport) | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| | | Name | |
| | | 915 Lafayette Boulevard | |
| | | Street | |
| **Case number** | | | |
| 22-05005 | | Bridgeport      CT        06604 | |
| | | City         State      ZIP Code | |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| William Sherlach v. Alex E. Jones, Free Speech Systems LLC, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc and Midas Resources Inc | 01 Determination of removed claim or cause | U.S. Bankruptcy Court District of Connecticut (Bridgeport) | ☐ Pending ☐ On appeal ☑ Concluded |

**Case number**

22-05006

| | | | |
|---|---|---|---|
| **Name** | | | |
| 915 Lafayette Boulevard | | | |
| **Street** | | | |
| Bridgeport | CT | 06604 | |
| **City** | **State** | **ZIP Code** | |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique de la Rosa, Marcel Fontaine v. Info W, LLC, Alex E. Jones, Free Speech Systems, LLC | 01 Determination of removed claim or cause | U.S. Bankruptcy Court Western District of Texas (Waco) | ☐ Pending ☐ On appeal ☑ Concluded |

**Case number**

22-06004-mmp

**Name**: 800 Franklin Avenue, #140
**Street**

| Waco | TX | 76701 |
|---|---|---|
| **City** | **State** | **ZIP Code** |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| Dennis Clark v. Free Speech Systems, LLC | 820 Copyright | U.S. District Court Western District of Texas (Austin) | ☑ Pending ☐ On appeal ☐ Concluded |

**Case number**

1:22-cv-00061-JRN

**Name**: 501 West Fifth Street, Suite 1100
**Street**

| Austin | TX | 78701 |
|---|---|---|
| **City** | **State** | **ZIP Code** |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| Corsi v. Infowars | 320 Assault Libel & Slander | U.S. Court of Appeals, Fifth Circuit | ☑ Pending ☐ On appeal ☐ Concluded |

**Case number**

21-50964

**Name**: 600 S. Maestri Place, Suite 115
**Street**

| New Orleans | LA | 70130-3408 |
|---|---|---|
| **City** | **State** | **ZIP Code** |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| Free Speech Systems, LLC, Infowars, LLC, Prison Planet TV, LLC v. Erica L . Garbatini | 68 Dischargeability - 523(a)(6), willful and malicious injury | U.S. Bankruptcy Court District of Connecticut (Bridgeport) | ☑ Pending ☐ On appeal ☐ Concluded |

**Case number**

21-05009

**Name**: 915 Lafayette Boulevard
**Street**

| Bridgeport | CT | 06604 |
|---|---|---|
| **City** | **State** | **ZIP Code** |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| Free Speech Systems, LLC v. Federal Aviation Administration et al | 440 Civil Rights: Other | U.S. District Court Western District of Texas (Del Rio) | ☑ Pending ☐ On appeal ☐ Concluded |

**Case number**

2:21-cv-00051-AM

**Name**: 111 East Broadway, Room L100
**Street**

| Del Rio | TX | 78840 |
|---|---|---|
| **City** | **State** | **ZIP Code** |

003067

**Part 13. 26c.**

List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

| Name | Address |
|------|---------|
| Stephen Lemmon | 1801 South MoPac Expressway, Suite 320 Austin, TX 78746 |
| Jeffrey Shulse | 3511 Pinemont #C5 Houston, TX 77018 |

**Part 13. 30.**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

| Name | Address | Amount | Dates |
|------|---------|--------|-------|
| MRJR Holdings, LLC | PO Box 27740 Las Vegas, NV 89126 | $240,000.00 | 08/13/2021 - 06/24/2022 |

**Relationship to Debtor**: Sister Company
**Reasons for Providing Value**: For Consulting Services Provided

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:                                          §
FREE SPEECH SYSTEMS, LLC                        §
                                                §    CASE NO.  22-60043
                                                §    (Chapter 11)
                                                §
                                                §

## NOTICE OF APPEARANCE AND
## REQUEST FOR NOTICE AND SERVICE OF PAPERS

TO THE HONORABLE JUDGE OF SAID COURT:

PLEASE TAKE NOTICE that the undersigned attorney is appearing for Security Bank of Crawford in the above-entitled and numbered cause.  Security Bank of Crawford is a creditor of the Debtor, Free Speech Systems, LLC, and is a party in interest in this case.

PLEASE TAKE FURTHER NOTICE that the undersigned on behalf of  Security Bank of Crawford and pursuant to Bankruptcy Rule 9010 hereby requests that all notices given or required to be given in this case and all papers served or required to be served in this case be given to and served upon the undersigned at the office address and telephone number set forth below.  This request included without limitation, not only those notices and papers referred to in the bankruptcy rules, but also includes notices of any orders, applications, complaints, demands, hearings, motions, petitions, pleadings, or requests or otherwise with regard to the above-referenced bankruptcy proceeding.

Respectfully submitted,

JOHN MALONE, PLLC

BY: _____
JOHN MALONE
ATTORNEY FOR CREDITOR
SBOT #12874200
5400 Bosque Blvd., Ste. 308
Waco, Texas 76710
(254) 772-3722
Fax No. (254) 772-3172
Email:  john@johnmalonepc.com

003069

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice of Appearance has been served upon the following by electronic means as listed on the Court's ECF noticing systems or by United States first class mail, postage prepaid on this the _____ day of August, 2022.

Debtor's
Attorney:    Raymond WIlliam Battaglia
66 Granburg Circle
San Antonio, Texas 78218

Debtor:    Free Speech Systems, LLC
3019 Alvin Devane Blvd., Ste. 300
Austin, Texas 78741

Trustee:    Melissa A Haselden
Pennzoil Place
700 Milam, Ste. 1300
Houston, Texas 77002

JOHN MALONE

```
 1                   UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                         HOUSTON DIVISION

 3                                )  CASE NO: 22-60043-cml
                                  )
 4    FREE SPEECH SYSTEMS, LLC,    )  Houston, Texas
                                  )
 5                                )  Monday, August 29, 2022
                      Debtor.     )
 6                                )  1:00 P.M. to 1:34 P.M.
                                  )
 7    ---------------------------)


 8
                           MOTIONS HEARING
 9
             BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
10                 UNITED STATES BANKRUPTCY JUDGE


11
      APPEARANCES:
12
      For Free Speech Systems, KYUNG SHIK LEE
13    LLC:                      Kyung S. Lee, PLLC
                                4723 Oakshire Drive, Apt. B
14                              Houston, TX 77027

15                              RAYMOND WILLIAM BATTAGLIA
                                Law Offices of Ray Battaglia, PLLC
16                              66 Granburg Circle
                                San Antonio, TX 78218
17
      For Veronique De La
18    Rosa, et al.:             AVI MOSHENBERG
                                McDowell Hetherington, LLP
19                              1001 Fannin, Suite 2700
                                Houston, TX 770
20
      For David Wheeler,
21    et al.:                   RANDY W. WILLIAMS
                                Byman & Associates, PLLC
22                              7924 Broadway, Suite 104
                                Pearland, TX 77581
23
      For the U.S. Trustee:     HA MINH NGUYEN
24                              Office of the United States Trustee
                                515 Rusk Street, Suite 3516
25                              Houston, TX 77002
```

Page 2

```
 1
    For Connecticut          ALINOR STERLING
 2  Plaintiffs:              Koskoff Koskoff and Bieder
                             350 Orange Street
 3                           New Haven, CT 06511

 4  For PQPR:                STEPHEN LEMMON
                             Streusand Landon Ozburn and Lemmon
 5                           1801 S Mopac Expressway, Suite 320
                             Austin, TX 78746
 6

 7  For the SubChapter V     MELISSA ANNE HASELDEN
    Trustee:
 8                           Haselden Farrow, PLLC
                             Pennzoil Place
 9                           700 Milam, Suite 1300
                             Houston, TX 77002
10
    Court Reporter:          ZILDE MARTINEZ
11
    Courtroom Deputy:        ZILDE MARTINEZ
12
    Transcribed by:          Veritext Legal Solutions
13                           330 Old Country Road, Suite 300
                             Mineola, NY 11501
14                           Tel: 800-727-6396

15

16

17

18

19

20

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  Transcript produced by transcription service.
```

003072

1          HOUSTON, TEXAS; MONDAY, AUGUST 29, 2022; 1:00 P.M.

2                         (Call to Order)

3          THE COURT:  Okay.  Good afternoon everyone, this

4     is Judge Lopez.  Today is August 29th.  I'm going to call

5     the 1:00 p.m. case, Free Speech Systems, LLC here on Motion

6     for Relief from Stay and two emergency applications to

7     employ special counsel.  Folks, I would remind everyone

8     who's listening that the line is completely unmuted, so I'd

9     ask that everyone please take a look at your phone and put

10    it on mute.  I'm going to try to conduct this hearing that

11    way.  If I hear too much back noise, I will hit 5 star,

12    which will mute everyone's lines, but let's see how that

13    goes today.  So let me take appearances first and I'll start

14    in the courtroom.

15         MR. LEE:  Good afternoon, Your Honor.  Kyung Lee,

16    L-E-E, for the Debtor, with Shannon and Lee LLP.  At

17    counsel's table, I have R.J. Shannon, my partner, as well as

18    Mr. Brock Schultz, who's the Chief Restructure Officer of

19    the Debtor.  On video, we should have the lead bankruptcy

20    counsel for the Debtor, Ray Battaglia, as well as I've asked

21    at least until the settlement's worked out, Andino Reynal

22    from the Reynal Law Firm, the Special Counsel Number 2, and

23    then Mr. Norm Pattis from the Pattis Law Firm, Special

24    Counsel Number 1, and again, so those two also should be in

25    case you have questions for them, Your Honor.

```
1              THE COURT:  Okay.  Thank you.

2              MR. MOSHENBERG:  Good morning, Your Honor, Avi

3   Moshenberg on behalf of the  Texas Plaintiffs.  Also Marty

4   Brimmage is here with us.

5              THE COURT:  Good afternoon.

6              MR. MOSHENBERG:  And I think Jarrod Martin should

7   be listening by phone, as well.

8              THE COURT:  Okay.  Thank you.

9              MR. WILLIAMS:  Good afternoon, Your Honor, Randy

10  Williams for the Connecticut Plaintiffs.

11             THE COURT:  Good afternoon, Mr. Williams.  Good to

12  see you.

13             MR. NGUYEN:  Good morning, Your Honor, Ha Nguyen

14  for the US Trustee.

15             THE COURT:  Good afternoon, Mr. Nguyen.  Okay.

16  Let me just open it up and see who wishes to make an

17  appearance.

18             MS. HASELDEN:  Good afternoon, Your Honor.

19             THE COURT:  Oh, Ms. Haselden.

20             MS. HASELDEN:  Oh I'm sorry, Melissa Haselden.

21             THE COURT:  I apologize, no, no.  Please.

22             MS. HASELDEN:  Subchapter 5 Trustee.

23             THE COURT:  Subchapter 5 Trustee.  Good afternoon.

24  I apologize.  I was sort of starring at the screen and

25  didn't stop to look up.  So I apologize.  Thank you.  Good
```

1    to see you.  Okay.  Mr. Battaglia, I see you there.  I will

2    consider you have a already kind of made an appearance on

3    behalf, with Mr. Lee, so --

4              MR. BATTAGLIA:  Thank you, Your Honor.

5              THE COURT:  Who else wishes to make appearance?

6              MS. STERLING:  Good -- good afternoon, Your Honor.

7    I'm trying to (indiscernible).

8              THE COURT:  Good afternoon, Ms. Sterling.  Okay.

9    Mr. Lemmon?

10             MR. LEMMON:  Yes, Your Honor, I apologize I'm

11   having trouble with my desktop microphone.  Steve Lemmon for

12   PQPR.

13             THE COURT:  Good afternoon.  Anyone else?

14   Alrighty, Mr. Lee, I'll turn it over to you, sir.

15             MR. LEE:  Thank you, Your Honor.  As I reported to

16   the Court and the other parties about 7:00 this morning, we

17   have resolution with respect to all three matters that you

18   indicated at the beginning of the hearing.  So, what I was

19   hoping to do was to basically present those to you in the

20   form of proffers to the attorneys on presentation by the

21   lawyers, and to the extent that you need more evidence

22   afterwards, we can do that.  And so I will start off with

23   the major agreement, which is the agreement on the emergency

24   motion in the stay, ECF 15, which has been resolved by

25   Agreed Order ECF 112.

```
 1              THE COURT:  Okay.
 2              MR. LEE:  That project was handled by Mr.
 3   Battaglia as well as Ms. Sterling and Mr. Ryan Chapple.  So
 4   with respect to that agreement at ECF 112, which
 5   memorializes that understanding, I'm going to turn the forum
 6   over to Mr. Battaglia and Ms. Sterling and Mr. Chapple to
 7   let them explain that to you and walk you through the agreed
 8   order.
 9              THE COURT:  Okay. Thank you.  Before you begin,
10   Mr. Battaglia, again, I'm going to ask everyone to take a
11   look at your phone and put it on mute.  We're about one
12   second away from me muting the entire line, folks having to
13   hit five star and I'm really trying to avoid doing that,
14   it's just to have some attorneys on the phone and it makes
15   it a little bit easier.  So Mr. Battaglia, let me turn
16   things over to you, sir.
17              MR. BATTAGLIA:  Yes, thank you, Your Honor, Ray
18   Battaglia for Free Speech Systems.  The order -- proposed
19   agreed order lifting the stay has been uploaded to the Court
20   last night.  It was negotiated pretty heavily between the
21   Connecticut Plaintiff's Counsel, Ms. Sterling, the
22   litigation Counsel, Mr. Patterson's office, Mr. Jones'
23   Counsel, with respect to one particular paragraph; and
24   essentially what the order provides is that it modifies the
25   stay, just in the same fashion that we did with respect to
```

1    the Texas Plaintiffs to allow the case to go forward and be

2    litigated judgment.  It accommodates some matters that are

3    important for the estate to be able to retain counsel.

4    We've reached agreement with respect to and with the

5    Connecticut Plaintiffs about the retention and payment of

6    counsel, obviously subject to the retention and subject to

7    further agreements with the US Trustee's office, which Mr.

8    Nguyen will announce shortly.  It provides for the payment

9    of the Debtor's witnesses to attend the trial.  There are

10   certain witnesses that the Connecticut Plaintiffs wish to

11   appear and we have indicated that we do not oppose their

12   appearance, that we will not interfere with their

13   appearance, and we will provide for payments, should they go

14   per diam and other expenses.  But unfortunately we have no

15   ability to compel and individual to show up for trial.  It's

16   also in the agreement about Mr. Jones and the extent of his

17   subpoena.  I'm not sure it's helpful to go through each and

18   every paragraph, but that's generally what it does.  It

19   facilitates the trial to go forward through judgement.

20           THE COURT:  Okay. And I have had the opportunity

21   to --

22           MR. BATTAGLIA:  And I'm happy to answer any

23   questions to allow Ms. Sterling.

24           THE COURT:  Okay.  Ms. Sterling, I -- and just so

25   everybody knows, I did have an opportunity to read the

1    proposed order at 112.  So if that's the order that we're

2    talking about, that's -- I -- I have had an opportunity to

3    read it.  So Ms. Sterling, I'll turn it over to you.

4            MS. STERLING:  Thank you, Your Honor.  Thank you.

5    Can you hear me okay?

6            THE COURT:  Just fine.

7            MS. STERLING:  I don't have a lot to echo to Mr.

8    Battaglia's presentation.  There are some terms that are in

9    the proposed order (indiscernible) --

10            THE COURT:  Ms. Sterling you -- Ms. Sterling,

11   you're breaking up.  Is it possible for you to just pick up

12   the phone?  That's completely fine with me.

13            MS. STERLING:  Yes, Your Honor.  Is that better?

14            MR. LEE:  That's much better.

15            THE COURT:  Much better, thank you.

16            MS. STERLING:  Okay.  Okay. I'm so glad and thank

17   you for saying something.  But so there are some provisions

18   in the agreement with respect to the -- with respect to the

19   acceptance of the jurors from the Connecticut trial and some

20   other aspects of the agreement that are denied to enable

21   Free Speech Systems to join the -- join the case at it

22   progresses so that we can commence evidence on September

23   13th, as scheduled, and beyond that, I don't have a lot of

24   comments, I mean, the order speaks for itself.

25            THE COURT:  Yeah.  I understood the Order and I

1    appreciate the comments.  Is the stay would lift and then

2    allow the -- essentially it sounds like something has

3    already started and this would help facilitate kind of

4    continuing with that trial without major disruption as to

5    another FSS coming when a process has already started.  So I

6    -- I've read the order and understand what's happening and I

7    think it's smart and it makes a lot of sense to me.  So I

8    have had an opportunity to read it.

9         Look, I know that this is -- for the bankruptcy

10   people, this is extraordinary relief in the first 30 days of

11   a case, and I know a lot of hard work went into that and I

12   appreciate all the professionals working really hard.  It's

13   easy to read a document.  What's not easy is to know how

14   much hard work went behind it.  This was heavily contested,

15   so the fact that the parties have reached agreement on this,

16   I want to thank all the professionals.  And I understand

17   that we still have some applications to cover, but just the

18   fact that we're here, certainly parties are at least talking

19   and I very much appreciate that.

20        Does anyone else wish to be hear in connection

21   with the motion to lift the stay?  Okay.  I just had one

22   quick comment and that is its non-substantive, but I, my law

23   clerk has an eagle eye and she caught something here.  It's

24   on Page 5 of 6 and this is minor, it says, the last sentence

25   says subject to the approval and retention of State Court

1   trial counsel by FSS, by the Bankruptcy Court, which order

2   is being sought on an emergency by separate -- I believe

3   it's applications should be there instead of motion, but I

4   can make that tweak, it's non-substantive.  You all okay

5   with that?

6          MR. LEE:  Yes, Your Honor.

7          THE COURT:  Okay.

8          MR. BATTAGLIA:  Yes, Your Honor.

9          THE COURT:  Okay.  Well, I have reviewed the

10  order, the parties have reached a settlement on this. This

11  will help facilitate the trial in Connecticut.  I'll sign

12  this order today.  Folks can give notice to the Connecticut

13  State Court.  This, to me, resolves any issues with respect

14  to the application of the automatic stay in that case.  So I

15  think this order makes a lot of sense and I will sign it.  I

16  would note, just for the record, that the order allows the

17  litigation to continue to final judgement, including any

18  appeals, but any enforcement of that order with respect to

19  FSS is stayed.  So I just want everybody to be clear and by

20  that I mean folks have to come to this Court.  I just wanted

21  that to be really clear.  Any enforcement actions would need

22  to come back to this Court, but this certainly facilitate

23  that to occur, so -- okay.  I have approved, I believe the

24  Connecticut Plaintiffs have satisfied their duty at

25  requisite cause and there's agreement on the record on that

1    and I will sign the order at 1:12, so let's -- where do we

2    go next?

3            MR. LEE:  Thank you, Your Honor, the next matter

4    will be the Pattis and Smith Application at ECF 93.

5            THE COURT:  Okay.

6            MR. LEE:  When we filed that initial application

7    as ECF 93, it sought to retain Pattis and Smith on a fixed

8    fee basis at $100,000 a month, starting at August 1, 2022,

9    for -- through the trial period.

10           THE COURT:  Um-hum.

11           MR. LEE:  We had objections and discussions

12   regarding the duration of that as well as the payment of

13   that firm and as a result of negotiations and agreements, we

14   have reached resolution, whereby the following will take

15   place.  Number 1, the Pattis Firm will be retained, pursuant

16   to the engagement agreement as was set forth, modified by

17   the following:  A) Mr. Jones, Alex Jones, will bear 40

18   percent of the $300,000 fee associated with the Pattis

19   retention, and he will cover the first $100,000 fee which is

20   associate with the August payment, and then the -- so we'll

21   cover him, except he covered $60,000 of our first month.  So

22   for September we will pay the $100,000, which makes up for

23   some of that for his $40,000 and for October, we will pay

24   $80,000 and he'll pay $20,000 which will then make up for

25   the entire 40/60 formula.

1          THE COURT:  Okay.

2          MR. LEE:  Mr. Ha has some comments with respect to

3    the language and the efforts to the process by which we may

4    need him more after the three months because there may be

5    additional activity and he made me take out some language

6    which I put in regarding the method.  Now it comes down to

7    if the Debtor needs Pattis and Smith after October 30th,

8    '22, it's incumbent upon us to come to you and ask for that

9    extension.  So the order that's been uplifted as to Pattis

10   and Smith 93 is Document Number 115, and that --

11         THE COURT:  Um-hum.

12         MR. LEE:  -- and reflects --

13         THE COURT:  Do you know what just happened?  Keep

14   going.

15         MR. LEE:  That reflects the agreement that I've

16   reached with Mr. Ha, this morning, and has all the language

17   changes --

18         THE COURT:  Mr. Battaglia can you hear us?  Put

19   your hand out if you can hear us?  Okay.  Perfect,

20         MR. BATTAGLIA:  Yes, Your Honor, I can hear.

21         THE COURT:  Thank you.  Please continue.

22         MR. LEE:  -- that he has requested.  So in

23   conjunction with that, I would ask the Court to take notice

24   of Docket Number 99, which is a Notice of this hearing, as

25   well as Docket Number 109, which is a witness and exhibit

1    list which has all of the agreements attached to it and asks

2    that to be admitted into evidence.  And one of the reasons

3    we had to file an amended disclosure for both of that was

4    because of an error that I made, which is that it recited

5    that they hadn't represented anyone on Schedule I and the

6    Schedule I contained Mr. Jones.

7           THE COURT:  Keep going.

8           MR. LEE:  So I'd ask the Court to take Judicial

9    notice of 109, 99, admit the exhibits in 109, and approve

10   the order set out and uploaded this morning at 115 for

11   Pattis and Smith, Your Honor.

12          THE COURT:  Okay.  Let me just turn to the United

13   States Trustee, Mr. Nguyen?

14          MR. NGUYEN:  Ha for the US Trustee.  Mr. Lee is

15   correct that we did come to an agreement.  We worked over

16   the weekend to make sure that we've addressed, Your Honor's

17   concern of whether FSS gets its fair share.

18          THE COURT:  Um-hum.

19          MR. NGUYEN:  We believe the 40/60 from Mr. Pattis'

20   application is appropriate within the month of August and

21   there was some dispute between whether services was provided

22   to FSS.  So given all the changes that Mr. Lee made to the

23   order this morning, we have an agreement on the retention of

24   Mr. Pattis for his representation of FSS in the Connecticut

25   litigation.

```
 1            THE COURT:  Okay. Does anyone else wish to be
 2    heard in connection with the Pattis and Smith application?
 3    Okay.  All right, folks, again we're about -- all right.
 4    You want to -- can you mute the line?  Okay, folks want to
 5    talk, you have to hit five star.
 6            I will note that for the record, it was an
 7    emergency application to employ Pattis and Smith under
 8    Section 327 E and 328 E, special counsel to the Debtor.
 9    I'll note a couple of things just for the record.  The order
10    says nun pro tunc to August 1st.  I know that -- that's a
11    touchy word.  I think we're all meaning effective as?
12            MR. LEE:  Yes, Your Honor.
13            MR. NGUYEN:  Yes, Your Honor.
14            THE COURT:  Okay. Just -- just for the record is
15    clear, as a matter of fact, I'm going to change it to
16    effective as, just so we're all on the same page.  I believe
17    it's in the best interest of the estate.  I believe that the
18    Debtor have established the need for counsel in light of the
19    motion to -- the agreed order lifting the automatic stay.  I
20    appreciate the work of the United States Trustee here and
21    all the parties involved.  I believe the terms are fair and
22    reasonable under the circumstances.  And quite frankly, Mr.
23    Pattis needs to get out there right away, and so it's
24    important that we took this up on an emergency basis, so I'm
25    approving emergency consideration of this application and I
```

1    will approve the order at 115.  Again, I just have a couple

2    of just a minor, minor, two minor comments.  One is I'm

3    going to change a nun pro tunc to effective as, just to

4    avoid any confusion as to that.

5              MR. LEE:  Yes, Your Honor.

6              THE COURT:  Footnote one, refers to ECF Numbers 17

7    and 78, I believe it's 15 and 78 to be consistent with the

8    motion.

9              MR. LEE:  Yes, Your Honor.

10             THE COURT:  And then on let's see, Paragraph 1 and

11   someone can tell me I'm wrong, but I believe we're right on

12   this, it says under the terms and conditions set forth in

13   the application, the engagement letter attached to the

14   application as Exhibit B, it's Exhibit A.  Minor change.  I

15   can --

16             MR. LEE:  Thank you.

17             THE COURT:  I can -- I can make that change.

18             MR. LEE:  Thank you, Your Honor, I appreciate

19   that.

20             THE COURT:  Okay?  And with that, those two

21   tweaks, I will sign the order.  I did -- do appreciate the

22   work and I appreciate the revision. I think it makes a lot

23   of sense and I appreciate the work of the United States

24   Trustee in that effort as well as Debtor's counsel for

25   hearing me out.  So, that takes us to Mr. Reynal and the

1    Reynal Law Firm, I should say.

2         MR. LEE:  Thank you, Your Honor.  With respect to

3    ECF -- Mr. -- the Reynal Law firm application, which is ECF

4    94.  At the time we filed that application, Your Honor, it

5    contemplated the retention of the Reynal firm.  Just as a

6    way of background, that is the firm that represented the

7    Debtor, FSS in connection with the Travis County lawsuit

8    that just went to trial, and we need Mr. -- the Reynal Firm

9    to do really two things that we can define as "Matters" in

10   the application.  And that has to do with the work related

11   to the Texas litigation, the Sandy Hook Texas litigation, as

12   well as assisting Mr. Pattis in Connecticut and as you will

13   note in the lift stay of order, there are certain provisions

14   regarding Mr. Reynal, specifically relating to Paragraph 9

15   where he would be assisting Mr. Pattis but in a non-

16   appearing counsel role and other means that we have made,

17   and that's the basis for the emergency here.  As a result of

18   negotiations over the weekend with the US Trustee, we have

19   also reached an agreement whereby the firm, the Reynal Firm,

20   and the Debtor and the US Trustee have agreed that Alex

21   Jones, again, will pick up 50 percent of the fees to be

22   earned by the Reynal Firm.  So the way we drafted it for the

23   order is that the State will be responsible for 50 percent

24   of the now fees and expenses of the Renal firm at their

25   hourly rates.  We are going back again to July 29th '22.  In

1    this case the petition date, and the order that I've

2    uplifted this morning reflects that agreement that we've

3    reached with the United States Trustee and the corrections

4    that we've made, and again, you'll notice the same

5    corrections have to be made as to nun pro tunc and as well

6    as I believe the footnote one.

7              THE COURT:  Um-hum.  Okay.  And does anyone else

8    wish to be heard in connection with the Reynal Firm

9    retention.

10             MR. NGUYEN:  Yeah Ha Nguyen, for the US Trustee.

11   We did come to an agreement on the Reynal application.  It's

12   50/50 and this is not a 320A application, so there's going

13   to be a fee application, so once Mr. Reynal file his

14   application we're going to be doing our work and taking a

15   look at the application under Section 230.  It is my

16   understanding it's whatever you allowed under the fee

17   application; Mr. Jones would be responsible for 50 percent

18   of the allowed fees.

19             THE COURT:  Okay.

20             MR. LEE:  That's correct.

21             THE COURT:  Okay. Thank you.

22             MR. NGUYEN:  Thank you, Your Honor.

23             THE COURT:  Anyone else wish to be heard and if

24   you do want to be heard, you're going to need to hit five

25   star, so we can recognize you.  Okay.  Before the Court is

1    an application to employ the Reynal Law firm, again, I'm

2    going to grant emergency consideration of the application

3    based on the statements and the revised fee structure that

4    is set forth for the Reynal Law Firm, I believe, certainly

5    satisfies the standard under Section 327E.  Mr. Reynal will

6    be filing fee applications found under Sections 330, so and

7    based on the agreement that Mr. Jones will -- the agreement

8    for Mr. Jones to cover a portion of the fees, that fee

9    structure, I believe it's appropriate under the

10   circumstances, I'm going to approve the Reynal Law Firm

11   retention. I  will make the same changes  including the

12   Exhibit A, changing those minor, they're non-substantive and

13   they will not affect the relief requested there, so I'm

14   going to sign these three orders and I sign that today.  It

15   is my understanding, Mr. Lee, that once I sign these three

16   order, effectively the agreement within the order lifting

17   the stay goes into effect and the Connecticut State Court

18   can take comfort that the trial -- that the automatic stay

19   is lifted to allow that trial to proceed.

20          MR. LEE:  That is correct, Your Honor.

21          THE COURT:  Okay.

22          MR. LEE:  And the only issue that I have with

23   respect to the A and B is I just want to take one second to

24   see if I did it correctly, and the reason why is --

25          THE COURT:  If you're looking for the --

1          MR. LEE:  It's Exhibit A.  That's correct, Your

2     Honor.  I -- because there was an engagement agreement that

3     was appended to the Reynal --

4          THE COURT:  Yep,

5          MR. LEE:  -- Law Firm, and I just wanted to make

6     sure it wasn't referencing that, but it was the engagement

7     agreement that we had with the Reynal Firm post-petition.

8          THE COURT:  Okay.  No.

9          MR. LEE:  That is correct, Your Honor.

10          THE COURT:  I very much appreciate it.  So, that's

11     my understanding and that once I sign these orders, and I'll

12     get them signed on the docket within the hour that we're

13     done, they'll hit the docket.  My understanding is the stay

14     is now -- will then be lifted for all purposes in terms of

15     having the trial in Connecticut, FSS will be a full

16     participant in that trial.

17          MR. LEE:  And they're waiting for you to do that

18     so they can start the race.

19          THE COURT:  Okay.  All righty.  Well, that -- that

20     takes us there.  (Indiscernible) can you unmute the line, I

21     suspect folks are going to want to have a thought, and

22     again, everyone please put your phone on mute.  There was

23     another motion filed and should we pick a date for that?

24          MR. LEE:  To argue that motion -- as to that

25     motion?

```
 1              THE COURT:  Well no, here's what I'm going to do.
 2    I don't want to take the motion -- well, let me back up for
 3    a second.  There was an expedited motion filed by the
 4    Plaintiffs to appoint a committee and to remove the Debtor
 5    as the Debtor in possession.  It requested expedited
 6    consideration because the cash collateral -- there's a
 7    hearing currently set for cash collateral on September 13th
 8    and they wanted to have it heard at the same time.  I
 9    believe full notice is required for such a important motion.
10    So I'm going to deny emergency consideration of this, but
11    I'm going to give the Debtors two options.  I can hear this
12    on September 20th, which is a week after, and if the parties
13    want to, you can agree to hold cash collateral, I'm sure the
14    parties can agree on a one week extension of the cash
15    collateral so that it doesn't blow the budget.  I think you
16    all can agree to a week and maybe put Mr. Schwartz up once,
17    or you can come back and hold it, Mr. Schwartz will get up
18    the second time if that's what he has to do.  I'm going to
19    leave it up to the Debtors as to what you want to do.  If
20    you all can get agreement on the cash collateral extension
21    for one week, I'm happy to hear them both at the same time
22    and I'll sign that order.  If you want a -- something more -
23    - you want to hold a hearing on the 13th on cash collateral
24    and then the substantive motion on the 20th, I'll do that.
25    But that'll give you full notice -- a full notice period.
```

1      You all just let me know what you want to do.  All righty?

2             MR. LEE:  Are those the only two options we have,

3      Your Honor?

4             THE COURT:  Unless you -- no, I'm open for others,

5      I'm just -- I just know there's got to be full notice on

6      that.  But I can hold that hearing on the 20th unless

7      somebody tells me otherwise and we can start at 1 p.m.,

8      unless you all want to agree on another date, I'm just

9      saying that's the earliest that I could hear it, to make

10     sure that the -- that the Debtor gets full notice.  So you

11     all can just give it some thought, but you all can come up

12     with, you know, everybody knows you reach out to my case

13     manager, she can get you a date.  But I don't want to wait a

14     long time on this, so I don't want this getting pushed into,

15     you know, late October or early or mid-October.  I want it

16     dealt with right away because there's some serious

17     allegations in there and we have to find out what's going

18     on.  Okay?

19            MR. LEE:  We'll confer internally and also discuss

20     it with both the Connecticut and Texas Plaintiffs.

21            THE COURT:  Okay.  Okay.  Let me just hear from

22     the Connecticut and Texas plaintiffs, are you all okay with

23     that?  I just want to -- I -- it won't be the 13th, but you

24     can get the 20th, if that's what you want.  The soonest,

25     which is just a week after.  It's a really important motion

1    and I -- there's a lot of moving pieces today with the

2    lifting of the stay and I want to make sure that the Debtor

3    gets every opportunity, because the request is, is serious,

4    and I'm going to take it seriously.

5         MR. MOSHENBERG:  I appreciate, Your Honor, and we

6    are very serious (indiscernible) in the relief that we

7    sought.  Given, we were very careful with the facts of law

8    before we requested that relief.

9         THE COURT:  Um-hum.

10        MR. MOSHENBERG:  So we agree with you about how

11   serious it is.  Are we open to the 20th?  I want to check

12   without counsel, I think that --

13        THE COURT:  I was just giving you a date.  Don't

14   hold me to the 20th.  I'm not going to lock it in, I want

15   you all to talk, but that would be the soonest.

16        MR. MOSHENBERG:  Right and I think -- I think the

17   issue is are we okay with doing an interim cash collateral

18   order to get us to have the hearing both at the same time?

19        THE COURT:  Yeah, I'm completely fine with that

20   and I think there's a way to do it and I don't want -- I

21   think we're done with the large PQPR payments in terms of

22   what I would call the repayment.

23        MR. MOSHENBERG:  Right.

24        THE COURT:  And there -- there's a way to extend

25   the budget where it makes sense and you just kick it out for

1    a week, on the appropriate week and Mr. Schwartz would know

2    what week it coincides so it doesn't, you know if there's a

3    payroll week, obviously the payroll would get paid, that

4    kind of stuff to kick it out a week, make sure, you know on

5    the same terms and conditions as on the interim, you know,

6    something that makes sense.  I think we can do that.

7            MR. MOSHENBERG:  Yeah, I think that makes total

8    sense for the Texas Plaintiffs vantage point.  The one thing

9    I want to caution against is I think we should have the cash

10   collateral final hearing at the same time as the motion on

11   the --

12           THE COURT:  Well, I'm going to let Mr. Schwartz

13   figure out if he wants to get up once or twice.  I'm going

14   to let them talk about it --

15           MR. MOSHENBERG:  Okay.

16           THE COURT:  -- because I suspect he will have to

17   get up both times, though if it's -- I agree, from a

18   practical standpoint, it makes sense, but it's --

19           MR. MOSHENBERG:  And there's --

20           THE COURT:  -- the Debtors motion on cash

21   collateral, it's your motion on for the relief that you're

22   requesting.  Technically not two sides are asking for it, so

23   everybody kind of gets their own day.

24           MR. MOSHENBERG:  Okay.

25           THE COURT:  All right?

1          MR. WILLIAMS:  Your Honor, Randy Williams for the

2     Connecticut Plaintiffs --

3          THE COURT:  Yes, sir.

4          MR. WILLIAMS:  Hear you loud and clear.  We had

5     already been considering if we could get them together to

6     have an extension.  I mean, after they confer, I'm sure

7     we'll be in touch and we can --

8          THE COURT:  Yeah.

9          MR. WILLIAMS:  -- we'll try and get it worked out.

10          THE COURT:  And I will tell you if it's just

11     pushing it out a week or two on the same terms and

12     conditions as it was there, obviously not the -- I think

13     we're -- you know which payments I'm talking about, Mr.

14     Schwartz, the 250 and the -- none of that.  But we can --

15     you can push it out in a way and I'll sign the order.  If

16     there's agreement among the parties so that it makes sense.

17     I'll leave that up to the parties.  But I'm willing to sign

18     that order and I don't think we need a hearing for it, if

19     that's what the parties can agree on.  Okay?

20          MR. LEE:  Your Honor, I would just raise issue

21     it's unlikely to happen in this case, but what happens if

22     the parties have a --

23          THE COURT:  Mute the lines. Sorry folks. Go ahead.

24          MR. LEE:  What would you like for us to do in the

25     event there's a impasse between the parties?  Do you want us

1    to come to the Court or --

2            THE COURT:  If there is an impasse between the

3    parties on the proposed date?

4            MR. LEE:  Yes, Your Honor.

5            THE COURT:  Then you're leaving it up to me.  I'm

6    just telling everyone now.

7            MR. LEE:  Okay.

8            THE COURT:  Ms. Saldano pick a date and then we'll

9    go forward on --

10           MR. LEE:  Thank you, Your Honor.

11           THE COURT:  Honestly, if there's an impasse, on an

12   extended date then cash collateral's already set for the

13   13th.  The question is --

14           MR. LEE:  Right.  Right.

15           THE COURT:  -- that going to get pushed to another

16   date?  And if there's another date that the parties can't

17   agree upon, yeah --

18           MR. LEE:  Is that the cash collateral that we're

19   concerned about, it's the date for the hearing on the Tort

20   Committee motion.

21           THE COURT:  Yeah.

22           MR. LEE:  We cannot agree on that date.

23           THE COURT:  You know look, I will -- I will tell

24   everyone that I'm just looking at my calendar now.  All

25   right, in my mind it will be the 20th or the 27th.  I mean,

1    it'll be in September.  Late September at that point and you

2    all can figure that out.  Okay?  But I want to make sure

3    that a minimum, you have due notice -- due process and

4    notice and an opportunity to get your story out, and I don't

5    want that done on an expedited basis.

6            MR. LEE:  Thank you, Your Honor.

7            THE COURT:  Okay?  So you all can agree to that if

8    you can.  If not, then we'd all -- it's -- it's not a

9    problem for the Court.  The Court will be here on the 13th.

10   The Court will be here on the 20th or the 27th.  I'll let

11   you all work it out and I know Mr. Schwartz, you're going to

12   have to confer, figure out what witnesses you're going to

13   want to appear, and I think you should have an opportunity

14   to think about that, but not today.

15           MR. SCHWARTZ:  Thank you, Your Honor, appreciate

16   that.

17           THE COURT:  Okay?  So, yeah, if we do it, we're

18   going to -- it will be the 20th or the 27th, in the

19   afternoon, both days and we will start and then we'll finish

20   when we're finished.

21           MR. NGUYEN:  Your Honor, we're going to be back on

22   the 20th anyway because we have the September five status

23   hearing and that was set for September 20th for

24   (indiscernible) FSS.

25           THE COURT:  Got it.  Got it.  Okay.  We'll I'll

003096

1   let you all -- you needed to hear that from me, and so I

2   think it's unfair for me to set a date today without having

3   everyone  have a opportunity to huddle up and have that

4   conversation.

5        I would ask, and again, I won't know. I really

6   won't, if there is, just like someone did with the Texas or

7   whenever that trial is over, if there's some order of, you

8   know, kind of judgement or something in the jury, I just

9   want to know that it's over.  Just so I know that that stage

10  has concluded.  If someone could file something on the

11  docket, that would just be very helpful to me.  I don't need

12  a blow by blow; I need it ended.  That kind of -- that kind

13  of stuff, okay?  Anything else we need to talk about today?

14       MR. LEE:  No, Your Honor, on the Debtor's part,

15       THE COURT:  Mr. Lee, the other thing we have and

16  we don't need to pick a date right now, but I do think we

17  need, at some point, within one of these dates, we have the

18  Schwartz and -- and the Debtor's professionals applications

19  to take up and we got to just take that up and we can pick a

20  date on that as well, but we don't need to do it right now.

21  I just want to keep it on the radar, but while everybody's

22  talking date, maybe we can all agree and see what makes the

23  most sense.

24       MR. LEE:  Music to my ears, Your Honor.

25       THE COURT:  Okay?  All righty.  And I want to make

1   sure whatever date that the parties pick, it's still

2   important to me the US Trustee be here, Subchapter V Trustee

3   be here for those dates, so whatever date, if you all can

4   just loop them in, I want to make sure that they have an

5   opportunity to be here and to participate in whatever manner

6   they so choose.  And I would note in one of the

7   applications, this is probably more information, there's a

8   reservation of rights if someone has to come back to the

9   Court if someone has to come back to ask for an extension.

10  Everybody's rights are reserved obviously if somebody needs

11  to come back after October, US Trustee's right, Subchapter V

12  Trustees, everybody's rights are reserved for things that

13  are not in there but sounds like today was -- all right.

14          Sounds like there's going to be a trial in

15  Connecticut and I appreciate everybody's hard work, and I

16  will see everyone at maybe the 13th, maybe the 20th, maybe

17  the 27th.  You all let me know.  Thank you.

18          MR. LEE:  Thank you, Your Honor.

19          OFFICER:  All rise.

20      (Proceedings adjourned at 1:35 p.m.)

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

003099

```
 1                        CERTIFICATION

 2

 3    I certify that the foregoing is a correct transcript from

 4    the electronic sound recording of the proceedings in the

 5    above-entitled matter.

 6

 7    Sonya N. Ledanski Hyde

 8

 9

10    Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  August 31, 2022
```

003100

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Chapter 11** |
| **Free Speech Systems LLC,** | § | |
| | § | **Case No. 22-60043 (CML)** |
| **Debtor.** | § | |

### PQPR HOLDINGS LIMITED, LLC'S AMENDED MOTION TO DIRECT SUBCHAPTER V TRUSTEE TO INVESTIGATE FINANCIAL OPERATIONS OF THE DEBTOR

PQPR Holdings Limited, LLC ("PQPR"), the secured creditor of the Debtor and a party-in-interest, respectfully submits this Motion to Direct the Subchapter V Trustee to Investigate the Financial Operations of the Debtor, as follows:

1.      This case incepted with the filing of a Petition for Relief on August 3, 2022, and is designated as a small business case under Subchapter V of the Bankruptcy Code.  PQPR is the secured creditor of the Debtor.  The Debtor is run by a Chief Restructuring Officer, Marc Schwartz.

2.      The bankruptcy case was deemed necessary by the Debtor because of litigation brought against the Debtor by certain tort plaintiffs in Texas and Connecticut (the "Sandy Hook Plaintiffs").  The Debtor's business operations are profitable, and the Sandy Hook Plaintiffs have even admitted that the Debtor is extremely solvent and highly profitable.

3.      Despite their repeated admissions that the Debtor is solvent and profitable, the Sandy Hook Plaintiffs have filed a motion making accusations against the Debtor, PQPR, and Mr. Schwartz.  That motion seeks to have management of the Debtor replaced (it does not say who should serve as manager) and seeks a tort committee paid for by the Debtor to conduct a series of inquisitions and litigation.

4.      The motion filed by the Sandy Hook Plaintiffs is replete with misstatements and contradictions.  Presumably these misstatements are a result of incomplete and disorganized discovery that has taken place in the state court litigation.  Such discovery failures have led to the entry of "death penalty" sanctions in the state courts.

5.      Thus, the parties and the Court are presented with the uncommon situation of a profitable debtor, irredeemably flawed ongoing litigation, and a highly suspicious atmosphere leading to incorrect assertions, such as the charge that Alex Jones received distributions of some $68 million in the last two years.  This particular allegation was apparently a result of counsel for the Sandy Hook Plaintiffs misunderstanding the difference between a balance sheet and an income statement but is representative of the misunderstandings and misstatements concerning the Debtor's finances.[1]

6.      A Subchapter V Trustee is supposed to fulfill a special role in a bankruptcy case.  The Subchapter V Trustee is specifically empowered by the code to investigate the financial circumstances of the Debtor:

7.      Section 1184 provides:

> Subject to such limitations or conditions as the court may prescribe, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all functions and duties, except the duties specified in paragraphs (2), (3), and (4) of section 1106(a) of this title, of a trustee serving in a case under this chapter, including operating the business of the debtor.

8.      Section 1106(a) provides, in part:

> (3)  *except to the extent that the court orders otherwise*, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of

---

[1]    These misunderstandings resulted in Plaintiffs filing a TUFTA lawsuit in state court asserting that the grant of PQPR's liens was a fraudulent transfer.  Of course, that cause of action is now property of the estate and would presumably be treated in some way in a plan of reorganization.

003102

such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable—

(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

(B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates;

9.     Section 1183 deals with the duties of a Subchapter V Trustee, and provides that the trustee, not the debtor, is to conduct a financial examination of the debtor, but only if the Court so orders:

(b)  DUTIES.—The trustee shall—

(1)  perform the duties specified in paragraphs (2), (5), (6), (7), and (9) of section 704(a) of this title;

(2)  perform the duties specified in paragraphs (3), (4), and (7) of section 1106(a) of this title, if the court, for cause and on request of a party in interest, the trustee, or the United States trustee, so orders…

10.     Thus, Subchapter V specifically contemplates that the trustee, not the debtor, is specifically to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor [and] the operation of the debtor's business…" but only after an order from the Court.  This makes eminent sense in this particular case.  The Subchapter V Trustee is impartial.  The Subchapter V Trustee is in the best position, legally and practically, to conduct an investigation into the Debtor's finances, past and present.

11.     *In re Corinthian Communications, Inc.,* No. 22-10425 (MG), 2022 WL 3051570 (Bankr. S.D.N.Y. Aug. 3, 2022), is instructive.  There, the U.S. Trustee sought to remove the debtor in possession, alleging fraud in PPP loan applications in failing to disclose common management with other businesses, failure to follow corporate formalities, conflicts of interest,

3

and general mismanagement.  *Id*. at *3-4.  At the hearing, the debtor argued that it would fail if management was replaced.  *Id*. at *5.  The Subchapter V Trustee reported that the debtor had not been especially forthcoming in providing information.  *Id*.  The court noted that "the result of removing the debtor as debtor-in-possession could very well lead to the failure, collapse of the business, which I don't think would benefit anyone."  *Id*. at *6, 8.  Thus, the court determined to expand the powers of the Subchapter V Trustee to investigate the debtor's business and held off on determination of the motion to replace the debtor-in-possession pending the report of the investigation.  *Id*. at *7-8.

12.     PQPR suggests the instant case is somewhat similar to *Corinthian* and believes the Subchapter V Trustee should be directed to conduct an investigation.  PQPR will agree to the use of up to $100,000 of its cash collateral for an investigation by the Subchapter V Trustee.  If the Subchapter V Trustee finds evidence of malfeasance by the Debtor, the Subchapter V Trustee can and should report such to the Court and the parties.

13.     PQPR asserts that having a comprehensive and impartial examination of the Debtor's finances is a preferable alternative to protracted and perhaps unfounded, but certainly unnecessary, litigation.[2]  Such litigation will likely be deleterious to the Debtor's operations, as it necessarily takes up much of the time of the CRO, not to mention the expenditure of funds for unnecessary litigation.  Enough is being spent on the state court litigation as it is.  Presumably even the Sandy Hook Plaintiffs would agree that having the Debtor make as much money as possible is in everyone's best interest.

14.     Therefore, PQPR requests that the Court enter an order:

---

[2]     PQPR believes the currently scheduled depositions of PQPR and the Debtor should go forward on September 6 and 8, but believes that any hearing on the Sandy Hook Plaintiffs' motion should be deferred until after the Subchapter V Trustee has completed her review.

4

a.  directing the Subchapter V Trustee to conduct an investigation into the Debtor's finances, past and present, and to report back to the Court;

b.  providing that up to $100,000.00 in cash collateral may be spent on such investigation;

c.  providing that the pending motion for appointment of a tort claims committee and removing the debtor in possession be abated until such time as the Subchapter V Trustee has reported to the Court; and

d.  for such other and further relief as is appropriate.

Dated:  August 31, 2022                          Respectfully submitted,

By: */s/ Stephen W. Lemmon*
    Stephen W. Lemmon
    Texas Bar. No. 12194500
    STREUSAND, LANDON, OZBURN &
    LEMMON, LLP
    1801 S. MoPac Expressway, Suite 320
    Austin, Texas 78746
    Telephone: (512) 236-9900
    Facsimile: (512) 236-9904
    lemmon@slollp.com

    **ATTORNEYS FOR**
    **PQPR HOLDINGS LIMITED, LLC**

5

## CERTIFICATE OF CONFERENCE

I hereby certify that on August 30, 2022, I conferred by email with counsel for the Texas Plaintiffs, the Connecticut Plaintiffs, the Debtor, Alex Jones, the Subchapter V Trustee, and the U.S. Trustee. The Texas Plaintiffs are opposed.  The Debtor does not oppose the relief sought.  The remaining parties have not responded as of the date of this filing.

*/s/ Stephen W. Lemmon*
Stephen W. Lemmon

6

003106

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2022, a true and correct copy of the foregoing instrument was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system, and/or U.S.P.S. first class mail, including the following:

Raymond W. Battaglia
**LAW OFFICES OF RAY BATTAGLIA, PLLC**
66 Granburg Circle
San Antonio, Texas 78218
rbattaglialaw@outlook.com
***Proposed Counsel to the Debtor and Debtor-In-Possession***

Kyung S. Lee
R. J. Shannon
**SHANNON & LEE LLP**
700 Milam Street, STE 1300
Houston, Texas 77002
klee@shannonleellp.com
rshannon@shannonleellp.com
***Proposed Counsel to the Debtor and Debtor-In-Possession***

Avi Moshenberg
**MCDOWELL HETHERINGTON LLP**
1001 Fannin Street, Suite 2700
Houston, Texas 77002
E: Avi.Moshenberg@mhllp.com
***Counsel for the Texas Plaintiffs***

Jarrod B. Martin
**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, PC**
1200 Smith Street, Suite 1400
Houston, Texas 77002
E: jarrod.martin@chamberlainlaw.com
***Bankruptcy Counsel for the Texas Plaintiffs***

Ryan E. Chapple
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
Email: rchapple@cstrial.com

Randy W. Williams
**BYMAN & ASSOCIATES PLLC**
7924 Broadway, Suite 104
Pearland, Texas 77581
Email: rww@bymanlaw.com
***Bankruptcy Counsel for Connecticut Plaintiffs***

Melissa Haselden
Subchapater V Trustee
700 Milam, Suite 1300
mhaselden@haseldenfarrow.com
***Trustee***

Ha Nguyn
OFFICE OF THE U.S. TRUSTEE
515 Rusk Ave STE 3516
Houston, TX 77002
Ha.Nguyen@usdoj.gov
***U.S. Trustee***

7

## USPS Service List

### Twenty Largest Unsecured Creditors

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

AtomialLLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

eCommerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire Sl0 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DEl 3EE
United Kingdom

WWCR
1300WWCRAve
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

Justin Lair
1313 Outlook Ave.
Klamath Falls, OR 97601

*/s/ Stephen W. Lemmon*
Stephen W. Lemmon

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Chapter 11** |
| **Free Speech Systems LLC,** | § | |
| | § | **Case No. 22-60043 (CML)** |
| **Debtor.** | § | |

**ORDER GRANTING PQPR HOLDINGS LIMITED, LLC'S AMENDED MOTION TO**
**DIRECT SUBCHAPTER V TRUSTEE TO INVESTIGATE**
**FINANCIAL OPERATIONS OF THE DEBTOR**
[Docket No. __]

On August 31, 2022, PQPR Holdings Limited LLC filed its Motion to Direct Subchapter V trustee to Investigate Financial Operations of the Debtor.  The Court finds and concludes that the motion has merit and should be GRANTED.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Subchapter V Trustee is directed to conduct an investigation into the Debtor's finances, past and present, and to report back to the Court;

2.      An amount not to exceed $100,000.00 in cash collateral may be used to fund the expenses of such investigation;

3.      The pending Motion to (1) Appoint Tort Claimants Committee and (II) Remove the Debtor in Possession filed by the Sandy Hook Plaintiffs [Docket No. 102] is abated until such time as the Subchapter V Trustee has reported to the Court.

Signed: _____

_____
Christopher Lopez
United States Bankruptcy Judge

003109

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**

In     Free Speech Systems LLC
Re:    Debtor                              Case No.: 22−60043

                                           Chapter:  11

---

## NOTICE OF FILING OF OFFICIAL TRANSCRIPT

An official transcript has been filed in this case and it may contain information protected under the E−Government Act of 2002, and Fed. R. Bank. P. 9037.

Transcripts will be electronically available on PACER to the public 90 days after their filing with the court. To comply with privacy requirements of Fed. R. Bank. P. 9037, the parties must ensure that certain protected information is redacted from transcripts prior to their availability on PACER.

If redaction is necessary, the parties must file a statement of redaction listing the items to be redacted, citing the transcript's docket number, the item's location by page and line, and including only the following portions of the protected information. This statement must be filed within 21 days of the transcript being filed. A suggested form for the statement of redaction is available at http://www.txs.uscourts.gov.

- the last four digits of the social security number or taxpayer identification number;
- the year of the individual's birth;
- the minor's initials;
- the last four digits of the financial account number; and
- the city and state of the home address.

Any additional redaction requires a separate motion and Court approval.

A party may review the transcript at the Clerk's Office public terminals or purchase it by following the instruction on our website at http://www.txs.uscourts.gov or by calling (713) 250−5500 . A party is only responsible for reviewing the:

- opening and closing statements made on the party's behalf;
- statements of the party;
- testimony of any witness called by the party; and
- any other portion of the transcript as ordered by the court.

Redaction is your responsibility. The Clerk, court reporter, or transcriber will not review this transcript for compliance.

Nathan Ochsner
Clerk of Court

AO 435
(Rev. 04/18)

ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

**TRANSCRIPT ORDER**

*Please Read Instructions:*

| FOR COURT USE ONLY |
|---|
| DUE DATE: |

| 1. NAME Ryan Chapple | 2. PHONE NUMBER (512) 477-5000 | 3. DATE 8/29/2022 | |
|---|---|---|---|
| 4. DELIVERY ADDRESS OR EMAIL rchapple@cstrial.com; aprentice@cstrial.com | 5. CITY Austin | 6. STATE TX | 7. ZIP CODE 78701 |

| 8. CASE NUMBER 22-60043 | 9. JUDGE Lopez | DATES OF PROCEEDINGS | |
|---|---|---|---|
| | | 10. FROM 8/29/2022 | 11. TO 8/29/2022 |
| 12. CASE NAME In re Free Speech Systems, LLC | | LOCATION OF PROCEEDINGS | |
| | | 13. CITY Houston | 14. STATE TX |

**15. ORDER FOR**

| | | | |
|---|---|---|---|
| ☐ APPEAL | ☐ CRIMINAL | ☐ CRIMINAL JUSTICE ACT | ☒ BANKRUPTCY |
| ☐ NON-APPEAL | ☐ CIVIL | ☐ IN FORMA PAUPERIS | ☐ OTHER |

**16. TRANSCRIPT REQUESTED** (Specify portion(s) and date(s) of proceeding(s) for which transcript is requested)

| PORTIONS | DATE(S) | PORTION(S) | DATE(S) |
|---|---|---|---|
| ☐ VOIR DIRE | | ☐ TESTIMONY (Specify Witness) | |
| ☒ OPENING STATEMENT (Plaintiff) | 8/29/2022 | | |
| ☒ OPENING STATEMENT (Defendant) | 8/29/2022 | | |
| ☒ CLOSING ARGUMENT (Plaintiff) | 8/29/2022 | ☐ PRE-TRIAL PROCEEDING (Spcy) | |
| ☒ CLOSING ARGUMENT (Defendant) | 8/29/2022 | | |
| ☒ OPINION OF COURT | 8/29/2022 | | |
| ☐ JURY INSTRUCTIONS | | ☒ OTHER (Specify) | 8/29/2022 |
| ☐ SENTENCING | | ENTIRE HEARING | |
| ☐ BAIL HEARING | | | |

**17. ORDER**

| CATEGORY | ORIGINAL (Includes Certified Copy to Clerk for Records of the Court) | FIRST COPY | ADDITIONAL COPIES | NO. OF PAGES ESTIMATE | COSTS |
|---|---|---|---|---|---|
| ORDINARY | ☐ | ☐ | NO. OF COPIES | | |
| 14-Day | ☐ | ☐ | NO. OF COPIES | | |
| EXPEDITED | ☐ | ☐ | NO. OF COPIES | | |
| 3-Day | ☐ | ☐ | NO. OF COPIES | | |
| DAILY | ☒ | ☐ | NO. OF COPIES | | |
| HOURLY | ☐ | ☐ | NO. OF COPIES | | |
| REALTIME | | | | | |

| CERTIFICATION (18. & 19.) By signing below, I certify that I will pay all charges (deposit plus additional). | ESTIMATE TOTAL | 0.00 |
|---|---|---|

| 18. SIGNATURE /s/ Ryan Chapple | PROCESSED BY |
|---|---|
| 19. DATE 8/29/2022 | PHONE NUMBER |
| TRANSCRIPT TO BE PREPARED BY | COURT ADDRESS |

| | DATE | BY |
|---|---|---|
| ORDER RECEIVED | | |
| DEPOSIT PAID | | |
| TRANSCRIPT ORDERED | | |
| TRANSCRIPT RECEIVED | | |
| ORDERING PARTY NOTIFIED TO PICK UP TRANSCRIPT | | |
| PARTY RECEIVED TRANSCRIPT | | |

| DEPOSIT PAID | |
|---|---|
| TOTAL CHARGES | 0.00 |
| LESS DEPOSIT | 0.00 |
| TOTAL REFUNDED | |
| TOTAL DUE | 0.00 |

003111

DISTRIBUTION:     COURT COPY     TRANSCRIPTION COPY     ORDER RECEIPT     ORDER COPY

AO 435
(Rev. 04/18)

**INSTRUCTIONS**

## GENERAL

**Use.**  Use this form to order the transcription of proceedings.  Complete a separate order form for each case number for which transcripts are ordered.

**Completion**.  Complete Items 1-19.  Do *not* complete shaded areas which are reserved for the court's use.

**Order Copy.**  Keep a copy for your records.

**Submitting to the Court.**  Submit the form in the format required by the court.

**Deposit Fee.**  The court will notify you of the amount of the required deposit fee which may be mailed or delivered to the court.  Upon receipt of the deposit, the court will process the order.

**Delivery Time.**  Delivery time is computed from the date of receipt of the deposit fee or for transcripts ordered by the federal government from the date of receipt of the signed order form.

**Completion of Order.**  The court will notify you when the transcript is completed.

**Balance Due.**  If the deposit fee was insufficient to cover all charges, the court will notify you of the balance due which must be paid prior to receiving the completed order.

## SPECIFIC

Items 1-19.    These items should always be completed.
Item 8.        Only one case number may be listed per order.
Item 15.       Place an "X" in each box that applies.
Item 16.       Place an "X" in the box for each portion requested.  List specific date(s) of the proceedings for which transcript is requested.  Be sure that the description is clearly written to facilitate processing.  Orders may be placed for as few pages of transcript as are needed.
Item 17.       *Categories*.  There are six (6) categories of transcripts which may be ordered.  These are:
               *Ordinary*.  A transcript to be delivered within thirty (30) calendar days after receipt of an order.  (Order is considered received upon receipt of the deposit.)
               *14-Day*.  A transcript to be delivered within fourteen (14) calendar days after receipt of an order.
               *Expedited*.  A transcript to be delivered within seven (7) calendar days after receipt of an order.
               *3-Day*.  A transcript to be delivered within three (3) calendar days after receipt of an order.
               *Daily*.  A transcript to be delivered following adjournment and prior to the normal opening hour of the court on the following morning whether or not it actually is a court day.
               *Hourly*.  A transcript of proceedings ordered under unusual circumstances to be delivered within two (2) hours.
               *Realtime*.  A draft unedited transcript produced by a certified realtime reporter as a byproduct of realtime to be delivered electronically during proceedings or immediately following adjournment.

**NOTE**: Full price may be charged only if the transcript is delivered within the required time frame.  For example, if an order for expedited transcript is not completed and delivered within seven (7) calendar days, payment would be at the 14-day *delivery* rate, and if not completed and delivered within 14 calendar days, payment would be at the ordinary delivery rate.

               *Ordering*.  Place an "X" in each box that applies.  Indicate the number of additional copies ordered.
               *Original*.  Original typing of the transcript.  An original must be ordered and prepared prior to the availability of copies.  The original fee is charged only once.  The fee for the original includes the copy for the records of the court.
               *First Copy*.  First copy of the transcript after the original has been prepared.  All parties ordering copies must pay this rate for the first copy ordered.
               *Additional Copies*.  All other copies of the transcript ordered by the same party.
Item 18.       Sign in this space to certify that you will pay all charges.  (This includes the deposit plus any additional charges.)
Item 19.       Enter the date of signing.

Shaded Area.  Reserved for the court's use.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Case No. 22-60043 |
| FREE SPEECH SYSTEMS, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | |

**STIPULATION AND AGREED ORDER TO TERMINATE**
**CLIENT SERVICES AGREEMENT BETWEEN**
**THE DEBTOR AND ADP TOTALSOURCE, INC.**

WHEREAS, Free Speech Systems, LLC (the 'Debtor") and ADP TotalSource, Inc. ("TotalSource") are parties to that certain Client Services Agreement (the "CSA") dated October 20, 2016, pursuant to which TotalSource provides to the Debtor human resource services under an arrangement whereby the parties act as co-employers of the employees providing services to the Debtor; and

WHEREAS, Part 2, Section 10 of the CSA permits either party to terminate the CSA for any reason whatsoever on thirty (30) days' written notice of one to the other; and

WHEREAS, TotalSource has communicated to the Debtor its desire to terminate the CSA; and

WHEREAS, the Debtor is willing to agree to a termination of the CSA on a date no sooner than September 30, 2022.

NOW, THEREFORE, it is stipulated by the parties and upon approval by the Bankruptcy Court, ordered that:

1.     The CSA shall terminate effective at 11:59 pm on September 30, 2022.

2.      In connection with such termination, TotalSource shall provide the Debtor with such information as it customarily provides other parties to CSAs upon termination.

3.      TotalSource shall in the ordinary course provide the Debtor's employees covered by the CSA with W-2 forms for work performed up to the termination of the CSA.

_____

Christopher J. Lopez
United States Bankruptcy Judge


STIPULATED AND AGREED ON August 25, 2022 BY AND BETWEEN:

**ADP TOTALSOURCE, INC.**                    **FREE SPEECH SYSTEMS, LLC**


_/s/ Joseph S.U. Bodoff_                          _/s/ Ray Battaglia_
Joseph S.U. Bodoff                                Raymond W. Battaglia
Pro Hac Vice (Mass. Bar No. 549116)               State Bar No. 01918055
jbodoff@rubinrudman.com                           rbattaglia@outlook.com
**RUBIN AND RUDMAN LLP**                          **LAW OFFICES OF RAY BATTAGLIA, PLLC**
53 State Street                                   66 Granburg Circle
Boston, Massachusetts 02109                       San Antonio, Texas 78218
Tel: (617) 330-7038                               Tel: (210) 601-9405

                                                  and

                                                  Kyung S. Lee
                                                  State Bar No. 12128400
                                                  klee@shannonleellp.com
                                                  R.J. Shannon
                                                  State Bar No. 24108062
                                                  rshannon@shannonleellp.com
                                                  **SHANNON & LEE LLP**
                                                  700 Milam Street, Suite 1300
                                                  Houston, Texas 77002
                                                  Tel: (713) 714-5770

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | Case No. 22-60034 |
| FREE SPEECH SYSTEMS, LCC, | Chapter 11 |
| DEBTOR. | (Subchapter V Debtor) |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER**
**ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES OF RETAINED PROFESSIONALS**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Free Speech Systems, LLC (the "Debtor" or "FSS") moves for the entry of an order establishing procedures for interim compensation and reimbursement of expenses of Retained Professionals (as defined herein). In support of this Motion, the Debtor respectfully represents as follows:

## BACKGROUND

1.      On July 29, 2022 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Case</u>"). The Debtor has continued to operate as a debtor in possession pursuant to § 1182(2) of the Bankruptcy Code.

2.      Additional information about the Debtor's business and affairs, capital structure, prepetition indebtedness, and the events leading up to the Petition Date can be found in the *Declaration of W. Marc Schwartz in Support of Voluntary Petition and First Day Motions* (the "<u>First Day Declaration</u>") [ECF. No. 10], which is incorporated herein by reference.

## RELIEF REQUESTED

3.      Pursuant to sections 105(a) and 331 of the Bankruptcy Code, Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 2016-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "<u>Local Bankruptcy Rules</u>"), the Debtor hereby seeks entry of an order, substantially in the form attached hereto, establishing procedures for the compensation and reimbursement of professionals whose retentions are approved by this Court pursuant to section 327 of the Bankruptcy Code on a monthly basis, on terms comparable to the procedures established in other chapter 11 cases.

## RELEVANT FACTS

4.      By applications to be filed with the Court, the Debtor will seek authorization to retain and employ, pursuant to sections 327(a), 327(e) and 328(a) of the Bankruptcy Code: (a) Law Offices of Raymond W. Battaglia, as lead bankruptcy counsel, (b) Shannon & Lee LLP, as co-counsel general bankruptcy counsel, (c) W. Marc Schwartz and Schwartz Associates LLC (together with W. Marc Schwartz "<u>SALLC</u>"), as CRO and financial advisor, (d) The Reynal Law Firm LLP, as special litigation counsel (e) Pattis & Smith, LLC, as special Connecticut litigation

003116

counsel, and (f) any other professionals the Debtor or the estate may retain pursuant to a Bankruptcy Court order, including the subchapter v trustee and her professionals  (collectively, the "Retained Professionals").

## COMPENSATION PROCEDURES

5.      Except as otherwise provided in an order of the Court authorizing the retention of a particular Retained Professional, the Debtor proposes that the Retained Professionals be permitted to seek interim payment of compensation and reimbursement of expenses in accordance with the following procedures (collectively, the "Compensation Procedures"):

   a.  Each Retained Professional seeking monthly compensation must submit a monthly fee statement (a "Monthly Fee Statement"), which submission may be via hand delivery, overnight courier, first class mail or e-mail, so as to be received no later than 30 days after the end of the month for which the fees are sought, to the following parties (collectively, the "Notice Parties"):

      i.  The Debtor, Marc Schwartz as Chief Restructuring Officer of FSS, c/o Schwartz Associates LLC, 712 Main Street, Suite 1830, Houston, Texas 77002 (Attn: Mschwartz@schwartzassociates.us);

      ii.  The Debtor's Counsel, Shannon & Lee LLP, 700 Milam Street, Suite 1300, Houston, TX 77002 (Attn: RJ Shannon, rshannon@shannonleellp.com); and

      iii.  Any other parties that the Court may designate.

   b.  Unless otherwise provided in the order authorizing the Retained Professional's retention, each Retained Professional's Monthly Fee Statement, in accordance with Local Bankruptcy Rule 2016-1, shall include (i) a monthly invoice with fee and expense detail that describes the fees and expenses incurred by such Retained Professional, and (ii) any additional information required by the Local Bankruptcy Rules, the Bankruptcy Rules, the Court, or applicable law.

   c.  Time spent traveling without actively working on the Chapter 11 Case shall be billed at 50% of the professional's normal hourly rate.

   d.  Any Retained Professional who fails to submit a Monthly Fee Statement for a particular month or months may subsequently submit a consolidated Monthly Fee

003117

Statement for multiple months provided that separate fee and expense information for each applicable month is provided in the consolidated statement.

e.  All Monthly Fee Statements shall comply with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and applicable law.

f.  Each Notice Party will have 14 days after service of a Monthly Fee Statement to object to such statement (the "Objection Deadline"). Upon the expiration of the Objection Deadline, the Debtor will be authorized to pay each Retained Professional an amount (the "Authorized Payment") equal to the lesser of (i) 80% of the fees and 100% of the expenses requested in the Monthly Fee Statement (the "Maximum Payment") and (ii) the aggregate amount of fees and expenses not subject to an unresolved objection pursuant to paragraph 5(g) below.

g.  If any Notice Party objects to a Retained Professional's Monthly Fee Statement, it must serve on the affected Retained Professional and each of the other Notice Parties a written objection (the "Objection") so that it is received on or before the Objection Deadline. Thereafter, the objecting party and the affected Retained Professional may attempt to resolve the Objection on a consensual basis. If the parties are unable to reach a resolution of the Objection within 14 days after service of the Objection, or such later date as may be agreed upon by the objecting Notice Party and the affected Retained Professional, the affected Retained Professional may either: (i) file a response to the Objection with the Court, together with a request for payment of the difference, if any, between the Maximum Payment and the Authorized Payment made to the affected Retained Professional (the "Incremental Amount") and schedule such matter for hearing on at least 14 days' notice; or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Court will consider and dispose of the Objection if requested by the affected Retained Professional. Failure by a Notice Party to object to a Monthly Fee Statement shall not constitute a waiver of any kind nor prejudice that Notice Party's right to object to any Interim Fee Application (as defined below) subsequently filed by a Retained Professional.

h.  Following the Objection Deadline, each Retained Professional that has not already submitted an electronic bill to the Debtor shall email to accounting@freespeechsystems.com an invoice reflecting amounts then payable pursuant to paragraph 5(f) above to the Debtor's e-billing system in .PDF format (or in such other format reasonably requested by the Debtor).

i.  Each Retained Professional may submit its first Monthly Fee Statement on or before September 15, 2022 and such Monthly Fee Statement shall be for the period from July 29, 2022, through and including August 31, 2022.

003118

j.   Upon the four-month period ending November 29, 2022, (each, an "Interim Fee Period"), each of the Retained Professionals will file with the Court and serve on the Notice Parties an application pursuant to sections 330 and 331 of the Bankruptcy Code (an "Interim Fee Application") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by the Retained Professional in its Monthly Fee Statements for the applicable Interim Fee Period, including: (i) any revisions to the fee detail previously submitted with a Monthly Fee Statement; (ii) any consensual resolution of an Objection to one or more Monthly Fee Statements; and (iii) any difference between any amounts owed to the Retained Professional and the Authorized Payments made with respect to the Interim Fee Period. Retained Professionals also will file a notice of opportunity for hearing in accordance with Local Bankruptcy Rule 9013-1(d), which shall be served on the Notice Parties and all parties that have filed a notice of appearance with the Clerk of this Court and requested such notice. To the extent practicable, all Interim Fee Applications will be noticed together to be heard on the same hearing date and with the same objection deadline.

k.   Interim Fee Applications must be filed on or before the 40th day after the end of the Interim Fee Period for which the application seeks allowance of fees and reimbursement of expenses. An Interim Fee Application must include a basic summary of the Monthly Fee Statements that are the subject of the request and any other information requested by the Court or required by the Bankruptcy Rules and the Local Bankruptcy Rules. A Retained Professional filing an Interim Fee Application shall comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and applicable law.

l.   The first Interim Fee Application must be filed on or before December 10, 2022 for the Interim Fee Period from July 29, 2022 through November 29, 2022. Any objections to an Interim Fee Application (an "Additional Objection") shall be filed with the Court and served upon the affected Retained Professional and the Notice Parties so as to be received on or before the 14th day (or the next business day if such day is not a business day) following the filing and service of the Interim Fee Application, which service may be via e-mail, hand delivery, overnight courier or first class mail. If no Objections are pending and no Additional Objections are timely filed, the Court may grant an Interim Fee Application without a hearing. Upon allowance by the Court of a Retained Professional's Interim Fee Application, the Debtor shall be authorized to promptly pay such Retained Professional all requested fees and expenses not previously paid (including any Incremental Amount).

m.   Upon allowance by the Court of a Retained Professional's Interim Fee Application, with or without a hearing, Retained Professionals shall email to accounting@freespeechsystems.com an invoice reflecting all allowed, requested fees and expenses not previously paid (including any Incremental Amount) to the

003119

Debtor's e-billing system in .PDF format (or in such other format reasonably requested by the Debtor). For the avoidance of doubt, Retained Professional shall not be required to include in such invoices fee and expense detail or other information already submitted to the Notice Parties in connection with Monthly Fee Statements or otherwise.

n. The pendency of an Objection or Additional Objection or the entry of a Court order holding that the prior payment of compensation or the reimbursement of expenses was improper as to a particular Monthly Fee Statement will not disqualify a Retained Professional from the future payment of compensation or reimbursement of expenses as set forth above, unless the Court orders otherwise.

o. There will be no penalties for failing to file a Monthly Fee Statement or an Interim Fee Application in a timely manner; provided, however, that if any Interim Fee Application covers more than a four-month period, the Bankruptcy Administrator shall have an additional 14 days beyond the period set forth in paragraph 5(l) above to file an Additional Objection.

p. Neither (i) the payment of or the failure to pay, in whole or in part, interim compensation and reimbursement of expenses under the Compensation Procedures nor (ii) the filing of, or failure to file, an Objection to any Monthly Fee Statement or an Additional Objection to any Interim Fee Application will bind any party in interest or the Court with respect to the final applications for allowance of compensation and reimbursement of expenses of Retained Professionals.

q. Any Notice Party may request that a Retained Professional deliver a Monthly Fee Statement or an Interim Fee Application in an electronically searchable format mutually acceptable to the parties.

## ARGUMENT

6. Pursuant to section 331 of the Bankruptcy Code, all professionals are entitled to submit applications for interim compensation and reimbursement of expenses every 120 days, or more often if the court permits.[1] Bankruptcy Rule 2016(a) provides that a professional seeking

---

[1] Section 331 of the Bankruptcy Code provides, in relevant part, as follows:

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the

interim compensation and reimbursement of expenses must file an application setting forth, among other things, "a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). Finally, section 105(a) of the Bankruptcy Code authorizes the Court to issue any order "that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," thereby codifying the bankruptcy court's inherent equitable powers. 11 U.S.C. § 105(a).

7.      Courts regularly have entered orders approving professional compensation procedures that provide for interim compensation and expense reimbursement on a monthly basis. Establishing procedures for monthly compensation ensures that professionals are not forced to fund a reorganization case. *See In re Int'l Horizons, Inc.*, 10 B.R. 895, 897 (Bankr. N.D. Ga. 1981) (providing for "reasonable interim compensation" for professionals of the debtor to avoid requiring professionals to "fund [the] reorganization proceeding"). Appropriate factors to consider in deciding whether to establish procedures for monthly interim compensation include "the size of [the] reorganization cases, the complexity of the issues involved, and the time required on the part of the [professionals of] the Debtor in providing services necessary to achieve a successful reorganization of the Debtor." *Id.*

8.      The Debtor submits that the Compensation Procedures sought herein are appropriate considering the above factors. This is a complex subchapter v case that requires significant investment of time and resources by the Retained Professionals. Establishing an orderly, regular process for the allowance and payment of compensation and reimbursement of expenses for Retained Professionals will prevent such professionals from bearing the unjust burden

---

date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title.

11 U.S.C. § 331.

of funding the Chapter 11 Case and will enable the Debtor to closely monitor the costs of administration and establish consistent procedures to pay such costs.  Further, the Compensation Procedures will streamline the professional compensation process and enable the Court and all other parties to monitor more effectively the professional fees incurred in the Chapter 11 Case.

**NOTICE**

9.      The Debtor will provide notice of this Motion, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties in interest, including by serving a copy of the Motion and any accompanying order on: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the parties listed on the Debtor's list of 20 largest unsecured claims; (c) the secured creditor and counsel thereto; (d) the Internal Revenue Service; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**<u>NO PRIOR REQUEST</u>**

10.      No prior request for the relief sought in this Motion has been made to this or any other Court in connection with this Chapter 11 Case.

WHEREFORE, the Debtor respectfully requests that the Court:  (i) enter an order, substantially in the form attached hereto, granting the relief requested herein; and (ii) grant such other and further relief to the Debtor as the Court may deem just and proper.

Dated: September 7, 2022.

**FREE SPEECH SYSTEMS, LLC**

/s/ *Raymond W. Battaglia*
Law Office of Raymond W. Battaglia
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle

003122

San Antonio, Texas 78218

Proposed Counsel to FSS, Debtor and
Debtor-in-Possession

-and-

/s/ *Kyung S. Lee*

SHANNON & LEE, LLP
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R.J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam
Pennzoil Place-13th Floor
Houston, Texas 77002

Proposed Co-Counsel for FSS, Debtor and
Debtor-in-Possession

003123

## <u>CERTIFICATE OF SERVICE</u>

[Service List Updated as of August 24, 2022]

I hereby certify that a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service on the date of filing, (b) by U.S.P.S. first class mail on all parties indicated in the attached service list within 24 hours of the filing, and (c) the following parties by email within 24 hours of the date of filing:

Attn: Mark Bankson
William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

Attn: Alinor C. Sterling
Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581
rww@bymanlaw.com

Attn: Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002
jarrod.martin@chamberlinlaw.com

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002
mhaselden@haseldenfarro.com

Attn: Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548
christopher.dylla@oag.texas.gov

Attn: Ha M. Nguyen
Jayson B. Ruff
Office of U.S. Trustee
515 Rusk, Suite 3516
Houston, TX 77002
ha.nguyen@usdoj.gov
jayson.b.ruff@usdoj.gov

*/s/Kyung S. Lee*

11

**USPS Service List**
**Twenty Largest Unsecured Creditors**

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

Commerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

003126

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

## **Parties Claiming Interest or Lien Affected**

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

## **Parties Filing Notice of Appearance**

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701

Stephen A. Roberts
Stephen A. Roberts PC
1400 Marshall Ln
Austin, Texas 78703

Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002

Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548

Jason A. Starks
Delia Garza
Travis County Attorney
P.O. Box 1748Austin, Texas 78767

13

**<u>Subchapter V Trustee</u>**

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002

**<u>U.S. Trustee</u>**

Attn: Ha M. Nguyen
Jayson B. Ruff
Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

**<u>Additional Notice Parties</u>**

Attn: Mark Bankson
William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterling
Christopher Mattei
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 0660

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE: | Case No. 22-60034 |
| FREE SPEECH SYSTEMS, LLC, | Chapter 11 |
| DEBTOR. | (Subchapter V Debtor) |

## ORDER ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES OF RETAINED PROFESSIONALS

This matter coming before the Court on the *Debtor's Motion for an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals* (the "Motion"),[1] filed by Free Speech Systems, LLC (the "Debtor"); the Court having reviewed the Motion and having considered the statements of counsel with respect to the Motion at a hearing before the Court (the "Hearing"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ and 1334, (b) venue is proper in this district pursuant to 28 U.S.C. § 1409, (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (d) notice of the Motion and the Hearing was sufficient under the circumstances and (e) the Compensation Procedures set forth below are reasonable and appropriate for this Chapter 11 Case; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

003129

2.      Except as otherwise provided in an order of the Court authorizing the retention of a particular professional, the professionals specifically retained pursuant to an order of the Court in the Chapter 11 Case and the subchapter v trustee and her professionals (collectively, the "<u>Retained Professionals</u>") may seek interim payment of compensation and reimbursement of expenses in accordance with the following procedures (collectively, the "<u>Compensation Procedures</u>"):

a.   Each Retained Professional seeking monthly compensation must submit a monthly fee statement (a "<u>Monthly Fee Statement</u>"), which submission may be via hand delivery, overnight courier, first class mail or e-mail, so as to be received no later than 30 days after the end of the month for which the fees are sought, to the following parties (collectively, the "Notice Parties"):

i.   The Debtor, Marc Schwartz as Chief Restructuring Officer of FSS, c/o SchwartzAssociates, 712 Main Street, Suite 1830, Houston, Texas 77002 (Attn: Mschwartz@schwartzassociates.us);

ii.   The Debtor' Counsel, Shannon & Lee LLP, 700 Milam Street, Suite 1300, Houston, TX 77002 (Attn: R.J. Shannon, rshannon@shannonleellp.com); and

iii.   Any other parties that the Court may designate.

b.   Unless otherwise provided in the order authorizing the Retained Professional's retention, each Retained Professional's Monthly Fee Statement, in accordance with Local Bankruptcy Rule 2016-1, shall include (i) a monthly invoice with fee and expense detail that describes the fees and expenses incurred by such Retained Professional and (ii) any additional information required by the Local Bankruptcy Rules, the Bankruptcy Rules, the Court, or applicable law.

c.   Time spent traveling without actively working on the Chapter 11 Case shall be billed at 50% of the professional's normal hourly rate.

d.   Any Retained Professional who fails to submit a Monthly Fee Statement for a particular month or months may subsequently submit a consolidated Monthly Fee Statement for multiple months provided that separate fee and expense information for each applicable month is provided in the consolidated statement.

e.   All Monthly Fee Statements shall comply with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and applicable law.

f.   Each Notice Party will have 14 days after service of a Monthly Fee Statement to object to such statement (the "<u>Objection Deadline</u>"). Upon the expiration of the

3

Objection Deadline, the Debtor will be authorized to pay each Retained Professional an amount (the "Authorized Payment") equal to the lesser of (i) 80% of the fees and 100% of the expenses requested in the Monthly Fee Statement (the "Maximum Payment") and (ii) the aggregate amount of fees and expenses not subject to an unresolved objection pursuant to paragraph 2(g) below.

g.   If any Notice Party objects to a Retained Professional's Monthly Fee Statement, it must serve on the affected Retained Professional and each of the other Notice Parties a written objection (the "Objection") so that it is received on or before the Objection Deadline.  Thereafter, the objecting party and the affected Retained Professional may attempt to resolve the Objection on a consensual basis.  If the parties are unable to reach a resolution of the Objection within 14 days after service of the Objection, or such later date as may be agreed upon by the objecting Notice Party and the affected Retained Professional, the affected Retained Professional may either:  (i) file a response to the Objection with the Court, together with a request for payment of the difference, if any, between the Maximum Payment and the Authorized Payment made to the affected Retained Professional (the "Incremental Amount") and schedule such matter for hearing on at least 14 days' notice; or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Court will consider and dispose of the Objection if requested  by the affected Retained Professional.  Failure by a Notice Party to object to a Monthly Fee Statement shall not constitute a waiver of any kind nor prejudice that Notice Party's right to object to any Interim Fee Application (as defined below) subsequently filed by a Retained Professional.

h.   Following the Objection Deadline, each Retained Professional that has not already submitted an electronic bill to the Debtor shall email to account@freespeechsytems.com an invoice reflecting amounts then payable pursuant to paragraph 2(f) above to the Debtor's e-billing system in .PDF format (or in such other format reasonably requested by the Debtor).

i.   Each Retained Professional may submit its first Monthly Fee Statement on or before September 15, 2022 and such Monthly Fee Statement shall be for the period from July 29, 2022 through and including August 31, 2022.

j.   Commencing with the four-month period ending November 29, 2022, and at four-month intervals thereafter (each, an "Interim Fee Period"), each of the Retained Professionals will file with the Court and serve on the Notice Parties an application pursuant to sections 330 and 331 of the Bankruptcy Code (an "Interim Fee Application") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by the Retained Professional in its Monthly Fee Statements for the applicable Interim Fee Period, including: (i) any revisions to the fee detail previously submitted with a Monthly Fee Statement; (ii) any consensual resolution of an Objection to one or more Monthly Fee Statements; and (iii) any

003131

difference between any amounts owed to the Retained Professional and the Authorized Payments made with respect to the Interim Fee Period. Retained Professionals also will file a notice of opportunity for hearing in accordance with Local Bankruptcy Rule 9013-1(d), which shall be served on the Notice Parties and all parties that have filed a notice of appearance with the Clerk of this Court and requested such notice. To the extent practicable, all Interim Fee Applications will be noticed together to be heard on the same hearing date and with the same objection deadline.

k.  Interim Fee Applications must be filed on or before the 40th day after the end of the Interim Fee Period for which the application seeks allowance of fees and reimbursement of expenses. An Interim Fee Application must include a basic summary of the Monthly Fee Statements that are the subject of the request and any other information requested by the Court or required by the Bankruptcy Rules and the Local Bankruptcy Rules. A Retained Professional filing an Interim Fee Application shall comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and applicable law.

l.  The first Interim Fee Application must be filed on or before December 10, 2022 for the Interim Fee Period from July 29, 2022 through November 29, 2022. Any objections to an Interim Fee Application (an "Additional Objection") shall be filed with the Court and served upon the affected Retained Professional and the Notice Parties so as to be received on or before the 14th day (or the next business day if such day is not a business day) following the filing and service of the Interim Fee Application, which service may be via e-mail, hand delivery, overnight courier or first class mail. If no Objections are pending and no Additional Objections are timely filed, the Court may grant an Interim Fee Application without a hearing. Upon allowance by the Court of a Retained Professional's Interim Fee Application, the Debtor shall be authorized to promptly pay such Retained Professional all requested fees and expenses not previously paid (including any Incremental Amount).

m.  Upon allowance by the Court of a Retained Professional's Interim Fee Application, with or without a hearing, Retained Professionals shall email to account@freespeechsytems.com an invoice reflecting all allowed, requested fees and expenses not previously paid (including any Incremental Amount) to the Debtor's e-billing system in .PDF format (or in such other format reasonably requested by the Debtor). For the avoidance of doubt, Retained Professional shall not be required to include in such invoices fee and expense detail or other information already submitted to the Notice Parties in connection with Monthly Fee Statements or otherwise.

n.  The pendency of an Objection or Additional Objection or the entry of a Court order holding that the prior payment of compensation or the reimbursement of expenses

was improper as to a particular Monthly Fee Statement will not disqualify a Retained Professional from the future payment of compensation or reimbursement of expenses as set forth above, unless the Court orders otherwise.

o.   There will be no penalties for failing to file a Monthly Fee Statement or an Interim Fee Application in a timely manner; provided, however, that if any Interim Fee Application covers more than a four-month period, the Bankruptcy Administrator shall have an additional 14 days beyond the period set forth in paragraph 2(l) above to file an Additional Objection.

p.   Neither (i) the payment of or the failure to pay, in whole or in part, interim compensation and reimbursement of expenses under the Compensation Procedures nor (ii) the filing of, or failure to file, an Objection to any Monthly Fee Statement or an Additional Objection to any Interim Fee Application will bind any party in interest or the Court with respect to the final applications for allowance of compensation and reimbursement of expenses of Retained Professionals.

q.   Any Notice Party may request that a Retained Professional deliver a Monthly Fee Statement or an Interim Fee Application in an electronically searchable format mutually acceptable to the parties.

3.   Notice given in accordance with the Compensation Procedures is deemed sufficient and adequate and in full compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

4.   The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

5.   This Court shall retain exclusive jurisdiction over all matters arising from or related to the implementation, enforcement or interpretation of this Order.

Houston, Texas
Dated: _____, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

003133

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **Free Speech Systems LLC,** | § | |
| | § | **Case No. 22-60043 (CML)** |
| **Debtor.** | § | |

**PQPR HOLDINGS LIMITED, LLC'S MOTION TO EXPEDITE CONSIDERATION OF**
**AMENDED MOTION TO DIRECT SUBCHAPTER V TRUSTEE TO INVESTIGATE**
**<u>FINANCIAL OPERATIONS OF THE DEBTOR</u>**

   **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

   **Represented parties should act through their attorney.**

   **Expedited relief has been requested. If the Court considers the motion on an expedited basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the expedited consideration is not warranted, you should file an immediate response.**

   **Expedited relief is requested on or before September 20, 2022.**

PQPR Holdings Limited, LLC ("<u>PQPR</u>"), the secured creditor of the Debtor and a party-in-interest, respectfully submits this Motion to Expedite the Hearing on PQPR's Amended Motion to Direct the Subchapter V Trustee to Investigate the Financial Operations of the Debtor [Dkt. 127], as follows:

1.    The Subchapter V Trustee has agreed to conduct an investigation of the Debtor's finances per PQPR's motion.

2.      PQPR desires that the investigation be commenced as soon as possible. PQPR has offered to make its consultant available to the Subchapter V Trustee to explain what he knows of the Debtor's financial operations and the debt owed to PQPR by the Debtor.  It is hoped that such a meeting will greatly help the Subchapter V Trustee more quickly understand the operations. Because of such consultant's previously planned international travel commitments, that meeting would need to take place before September 14, 2022.

3.      As stated in its motion, PQPR believes that an impartial but full examination of the Debtor is considerably less wasteful than adversarial discovery and hearing the currently pending Motion to (I) Appoint Tort Claimants Committee and (II) Remove the Debtor in Possession [Dkt. 102].  PQPR does not seek dismissal of such motion, but merely asks that it be considered only after the Subchapter V Trustee has had an opportunity to report the results of her investigation to the Court.[1]

4.      Because of the logistical and scheduling issues, PQPR requests that the hearing on its Amended Motion to Authorize and Direct Investigation by Trustee be considered on an expedited basis and requests a hearing on or before September 20, 2022, (when a Status Conference is already set in this case).

Dated:  September 8, 2022          Respectfully submitted,

By: /s/ Stephen W. Lemmon
      Stephen W. Lemmon
      Texas Bar. No. 12194500
      STREUSAND, LANDON, OZBURN
      & LEMMON, LLP
      1801 S. MoPac Expressway, Suite 320

---

[1]  PQPR also does not seek the cancelation of the deposition of its corporate representative, currently scheduled for October 4, but does believe that such deposition should be limited to the issues concerning the PQPR debt (the deposition is noticed regarding the cash collateral motion).  PQPR suggests that it would be in the best interests of all parties to wait on depositions until after the Subchapter V Trustee's investigation and report is complete, but previously committed to such deposition and will  honor such commitment if the tort claimants believe that is a good use of their clients' time and money.

Austin, Texas 78746
Telephone: (512) 236-9900
Facsimile: (512) 236-9904
lemmon@slollp.com

ATTORNEYS FOR
PQPR HOLDINGS LIMITED, LLC

## CERTIFICATE OF CONFERENCE

I hereby certify that on September 8, 2022, I conferred by email with counsel for the Texas Plaintiffs, the Connecticut Plaintiffs, the Debtor, Alex Jones, the Subchapter V Trustee, and the U.S. Trustee.  Counsel for the tort claimants are opposed to expedited consideration.  The Debtor is not apposed to expedited consideration.  Neither the U.S. Trustee nor the sub V Trustee expressed an opinion.

*/s/ Stephen W. Lemmon*
Stephen W. Lemmon

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2022, a true and correct copy of the foregoing instrument was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system, and/or U.S.P.S. first class mail, including the following:

Raymond W. Battaglia
LAW OFFICES OF RAY BATTAGLIA, PLLC
66 Granburg Circle
San Antonio, Texas 78218
rbattaglialaw@outlook.com
Proposed Counsel to the Debtor and Debtor-In-Possession

Kyung S. Lee
R. J. Shannon
SHANNON & LEE LLP
700 Milam Street, STE 1300
Houston, Texas 77002
klee@shannonleellp.com
rshannon@shannonleellp.com
Proposed Counsel to the Debtor and Debtor-In-Possession

Avi Moshenberg
MCDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2700
Houston, Texas 77002
E: Avi.Moshenberg@mhllp.com
Counsel for the Texas Plaintiffs

Jarrod B. Martin
CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY, PC
1200 Smith Street, Suite 1400
Houston, Texas 77002
E: jarrod.martin@chamberlainlaw.com
Bankruptcy Counsel for the Texas Plaintiffs

Ryan E. Chapple
CAIN & SKARNULIS PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
Email: rchapple@cstrial.com

Randy W. Williams
BYMAN & ASSOCIATES PLLC
7924 Broadway, Suite 104
Pearland, Texas 77581
Email: rww@bymanlaw.com
Bankruptcy Counsel for
Connecticut Plaintiffs

Melissa Haselden
Subchapater V Trustee
700 Milam, Suite 1300
mhaselden@haseldenfarrow.com
Trustee

Ha Nguyen
OFFICE OF THE U.S. TRUSTEE
515 Rusk Ave STE 3516
Houston, TX 77002
Ha.Nguyen@usdoj.gov
U.S. Trustee

**USPS Service List - Twenty Largest Unsecured Creditors**

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

eCommerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire Sl0 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DEl 3EE
United Kingdom

WWCR
1300WWCRAve
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

Justin Lair
1313 Outlook Ave.
Klamath Falls, OR 97601

*/s/ Stephen W. Lemmon*
Stephen W. Lemmon

003138

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Chapter 11** |
| **Free Speech Systems LLC,** | § | |
| | § | **Case No. 22-60043 (CML)** |
| **Debtor.** | § | |

**ORDER GRANTING PQPR HOLDINGS LIMITED, LLC'S MOTION FOR**
**EXPEDITED CONSIDERATION OF PQPR HOLDINGS LIMITED, LLC'S**
**AMENDED MOTION TO DIRECT SUBCHAPTER V TRUSTEE TO**
**INVESTIGATE FINANCIAL OPERATIONS OF THE DEBTOR**
[Docket No. ___]

On September 8, 2022, PQPR Holdings Limited LLC filed its Motion for Expedited Consideration of its Amended Motion to Direct Subchapter V trustee to Investigate Financial Operations of the Debtor.  The Court finds and concludes that the motion has merit and should be GRANTED.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      A hearing will take place on _____, 2022 on PQPR Holdings Limited LLC's Amended Motion to Direct Subchapter V trustee to Investigate Financial Operations of the Debtor.

Signed:                                          _____

Christopher Lopez
United States Bankruptcy Judge

003139

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Case No. 22–60043** |
| | § | |
| **Free Speech Systems, LLC,** | § | **Chapter 11** |
| | § | **Subchapter V** |
| **Debtor.** | § | |

---

**THE TEXAS PLAINTIFFS' EMERGENCY MOTION TO COMPEL DISCOVERY FROM PQPR HOLDINGS LIMITED, LLC**

---

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> EMERGENCY RELIEF HAS BEEN REQUESTED. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE CHRISTOPHER M. LOPEZ, UNITED STATES BANKRUPTCY JUDGE:**

Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (the "**Texas Plaintiffs**"), creditors and parties-in-interest, by and through their undersigned counsel, file this Emergency Motion to Compel Discovery from PQPR Holdings Limited, LLC (the "**Motion**") and respectfully state the following:

---

003140

## JURISDICTION AND VENUE

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012–6 (S.D. Tex. May 24, 2012).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.  The statutory bases for the relief requested herein are 11 U.S.C. §§ 105 of the Bankruptcy Code,[1] Rules 7026, 7033, 7034, 9014 of the Federal Rules of Bankruptcy Procedure,[2] and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas.

3.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PRELIMINARY STATEMENT

4.  A key question that has emerged in this bankruptcy is whether the alleged $54 million secured debt that Free Speech Systems LLC ("**FSS**" or the "**Debtor**") owes PQPR Holdings Limited, LLC ("**PQPR**") is a valid claim (the "**PQPR Claim**").  The PQPR Claim allegedly arose from unpaid amounts due from the debtor for vitamin products purchased by PQPR, marked up, and then resold to the Debtor dating back to some unspecified date prior to 2018.  The question over the PQPR Claim's validity goes to several motions presently before the Court. One of these motions is the Debtor's cash-collateral motion[3]—in which Alex Jones's company, FSS, seeks to pay enormous sums to Alex Jones's other company, PQPR, under the alleged PQPR Claim.  The Texas Plaintiffs (and the Connecticut Plaintiffs) objected to the cash-collateral motion largely because they

---

[1] Any reference to "**Code**" or "**Bankruptcy Code**" is a reference to Title 11 of the United States Code, and any reference to "**Section**" or "**§**" refers to the corresponding section in Title 11, unless stated otherwise.

[2] Any reference to "**Rules**" or "**Bankruptcy Rules**" is a reference to the Federal Rules of Bankruptcy Procedure, unless stated otherwise.

[3] ECF No. 6

doubted the debt's legitimacy.  In support of their objection, they served PQPR with *The Sandy Hook Plaintiff's First Set of Interrogatories and First Requests for Production of Documents to PQPR Holdings Limited, LLC* (the "**Requests**"), aimed at unearthing evidence about the PQPR Claim.

5.     PQPR responded by lodging a volley of impermissible boilerplate objections and by making a production wholly insufficient under the standard required by the Bankruptcy Rules, and far less than what the requests sought. At bottom, it has largely refused to provide documents and information in response to requests that investigate the core issue of whether the PQPR Claim is real.  It merely produced a handful of self-serving documents, like recently prepared spreadsheets allegedly used to calculate the debt, without historical documents proving the creation or accrual of that alleged debt or which could corroborate or undermine its alleged legitimacy.

6.     What's more, instead of responding to reasonable discovery requests or even conferring with the Texas Plaintiffs about its discovery responses, PQPR has: (1) filed a motion to have the Subchapter V Trustee conduct an investigation; (2) sought to expedite that motion; and (3) requests that the Court abate the hearing on the Sandy Hook Plaintiffs' motion to appoint a tort committee and remove FSS as debtor in possession.  PQPR's failure to produce documents and information in accordance with its obligations under the Rules casts serious doubt on any assurances of its offering to cooperate with an investigation by the subchapter V Trustee into the validity of the PQPR Claim. The intransigence PQPR has demonstrated raises questions as to whether PQPR is a true creditor, or a mere front to funnel Alex Jones's money.

7.     Regardless of whether PQPR desires to cooperate in discovery—and all current signs indicate that it does not want to—the Rules do not account for a party's whims; PQPR must comply.  By this motion, the Texas Plaintiffs respectfully request that the Court compel PQPR to provide the information sought by the Requests.

## BACKGROUND

8.     The Texas Plaintiffs sued Alex Jones and FSS ("**Jones Defendants**") based on their lies that the mass shooting at Sandy Hook Elementary was a hoax.[4]  During the litigation, these Jones Defendants' discovery abuses were so severe and recurrent that the trial court granted default judgments on liability.  Subsequent to the default judgment, a series of trials on the issue of damages commenced.  The first of the Texas Plaintiffs' damages trials was this past August and resulted in the jury awarding over $49 million.  Before the bankruptcy was filed, two other cases were set to be tried this year.

9.     While these cases were pending, however, the Jones Defendants started diverting their assets.  Along with drawing millions of dollars from FSS, Alex Jones had his company enter into two secured promissory notes with PQPR, a company owned and controlled directly and indirectly by Alex Jones and his parents.  The notes cover a supposedly unpaid debt that began accruing years earlier in an arrangement where FSS sold PQPR's products on the InfoWars website.  Under this alleged arrangement, PQPR was to be reimbursed for the costs of the products and receive a percentage of the sales revenue.  FSS supposedly never paid PQPR, and accumulated a $54 million debt.  Before default judgments were rendered, FSS had no memory of this $54 million debt.  But after

---

[4] Marcel Fontaine's claims are based on falsehoods the Jones Defendants spread that he was the shooter responsible for murdering 17 people at a high school in Parkland, Florida.

these default judgments were entered in favor of the Texas Plaintiffs, FSS conveniently recalled these ostensible debts and began paying PQPR about $11,000 a day.

10.     The validity of the PQPR Claim is a central issue in this chapter 11 case, and therefore a full and transparent discovery process is crucial to this case's speedy resolution.   The Texas Plaintiffs have a pending motion to appoint a tort claimants' committee and to remove FSS as debtor in possession, in large part because of the PQPR debt's disputed legitimacy.[5]   PQPR responded with its own motion, asking the Court to authorize the subchapter V trustee to investigate the alleged debt—implicitly indicating to the Court that PQPR will cooperate fully in such an investigation, and have now asked the Court to expedite consideration of its motion.[6]

11.     But PQPR has not cooperated in an investigation or the discovery process, and instead has caused unnecessary delay, the accrual of costs to the estate, and wasted time as a result of its discovery games.  PQPR has obstructed the Texas Plaintiffs' attempts to investigate the PQPR Claim as it relates to SS's cash-collateral motion.  As the Court knows, that motion seeks to pay PQPR sizable amounts for the PQPR Claim, a course of action to which the Texas Plaintiffs emphatically object.

12.     In support of their objection, the Texas Plaintiffs served PQPR with interrogatories and requests for production that explore the alleged debt's validity.[7]  PQPR responded with boilerplate objections that do not apply, and vague objections that obscure whether PQPR is withholding responsive documents.[8]  Unfortunately, when confronted

---

[5]  ECF Nos. 102, 103, and 104.
[6]  ECF Nos.124 and 136.
[7]  *See* **Exhibit 1**.
[8]  *See* **Exhibit 2**.

about its discovery responses, PQPR disappeared.  The Texas Plaintiffs have emailed PQPR's counsel numerous times in the past week to confer about its discovery responses.[9]

13.     But PQPR, adhering to the Alex Jones and FSS discovery playbook, has ignored the emails altogether, and has not responded to or spoken with the Texas Plaintiffs to meet and confer.

## ARGUMENTS AND AUTHORITIES

14.     The Court should compel PQPR to produce all responsive, non-privileged, documents and information sought in the Texas Plaintiffs' discovery requests.[10]  "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit."[11]  Responses to written discovery that contain an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."[12]  Through that lens, PQPR's barebones responses and objection warrant an order compelling full and complete discovery.

---

[9] *See* **Exhibit 3**.
[10] Fed. R. Civ. P. 37(a)(1) (stating that after a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery).
[11] Fed. R. Civ. P. 26(b)(1).
[12] Fed. R. Civ. P. 37(a)(4).

**A. THE TEXAS PLAINTIFFS' DISCOVERY REQUESTS RELATE TO THE CORE ISSUE OF WHETHER THE PQPR DEBT IS LEGITIMATE.**

15.      The Texas Plaintiffs' discovery requests target the key concerns raised in their objection to the Debtor's cash-collateral motion—whether the PQPR Claim is valid.[13] Even if that issue is deferred and not addressed in the context of cash collateral, it is relevant to the Tort Committee Motion and will be front and center in connection with any ultimate plan proceedings and/or adversary proceedings related to the PQPR debt and its alleged secured status.  PQPR does not seem to disagree that the validity of the PQPR Claim is a discoverable topic, it manifestly is.  Yet, PQPR has largely refused to provide documents and information in response to requests that investigate this core issue.  It produced merely self-serving records, like a recently prepared spreadsheet allegedly used to calculate the debt, and produced none of the historical documents proving when the alleged debt was establish or how it accrued, which could corroborate or undermine its legitimacy.  The Texas Plaintiffs requested support for PQPR's alleged secured claim, and they're entitled to discover them.

16.      The following summary of these requests shows they are well in line with the process contemplated by the Rules:[14]

- **Requests 1–5:** seek communications and documents related to any contracts between FSS and PQPR—including their drafting, negotiation, transmittals, and execution.

- **Request 6:** seeks documents and communications evidencing efforts by FSS or PQPR to enforce any of their contracts.

- **Request 7:** seeks documents and communications relating to the negotiation of the forbearance agreement between FSS and PQPR—including its drafting, negotiation, transmittal, and execution.

---

[13] *See also* ECF No. 27.
[14] *See* Ex. 1

- **Request 8:** seeks PQPR's financial statements, profit and loss reports, reports of expenditures, bank statements, ledgers, accounting-software (like QuickBooks) entries.

- **Requests 9–12:** seek documents and communications related to products or services exchanged between PQPR and FSS and payments made in return and other payments by FSS to PQPR.

- **Requests 13–21:** seek documents and communications related to PQPR's organization, employee lists and records, and business operations.

- **Interrogatories 1–2:** seek to identify by year amounts paid by PQPR for products and services it bought on behalf of or sold to FSS, and amounts paid by FSS to PQPR for products and services.

- **Interrogatories 3–4:** seek to identify who participated in the negotiations of any contracts between FSS and PQPR, and who participated in efforts by FSS or PQPR to enforce them.

- **Interrogatories 5–6:** seek to identify PQPR's employees and facilities.

- **Interrogatories 7–8:** seek to identify payments PQPR made to its owner(s) and to identify who provided accounting or bookkeeping services.

17.     These requests are relevant to the validity of the PQPR Claim, and the Texas Plaintiffs are entitled to discovery on that issue before the Debtor pays PQPR the enormous amounts proposed in its cash-collateral motion.

**B. PQPR'S DISCOVERY RESPONSES CREATE NO LEGAL GROUNDS FOR DENYING DISCOVERY.**

18.     Nevertheless, PQPR apparently refuses to produce documents and information sought in the discovery requests. As a threshold matter, it's unclear what documents and information PQPR is withholding and under what objection the documents and information are being withheld. For the most part, PQPR simply lists boilerplate objections and then declares what documents it will supposedly produce. Given the nature of information requested and that PQPR produced a meager 119 pages, either PQPR is

withholding documents or the documents do not exist. (Unfortunately, PQPR has refused to speak or email the Texas Plaintiffs, let alone enlighten the Texas Plaintiffs which of the options it is.)  It is impossible to imagine that no further responsive documents exist, but if that is the case PQPR should withdraw its objections and state they have produced everything. Obviously, the non-existence of further files is itself is probative of whether the PQPR Claim is valid.

19.     If the documents do exist but are being withheld, then the Texas Plaintiffs are entitled to receive those documents—and to know what objection they're being withheld under.

20.     To date, however, PQPR has obscured whether other responsive documents exist or are being withheld.  Instead, it has only allowed the Texas Plaintiffs access to the self-serving information on the debt's validity that it's willing to share.  So, for example, rather than provide all responsive information, PQPR uses boilerplate objections insisting the requests "are not relevant to the [Plaintiffs] claims or the promissory notes at issue" and repeatedly chooses instead to produce only the "promissory notes at issue in this matter the work papers used to determine the debt underlying the notes."[15]  The Texas Plaintiffs are entitled to discover more than this, and if PQPR thinks differently, it must specifically identify why, in proper responses and objections, not the boilerplate objections that are disdained by the Rules.

21.     Independent of PQPR's unsupportable objections, PQPR has refused to produce any documents in native format or any documents and communications evidencing the execution or transmittal of any documents produced.  Production in native format, with

---

[15] *See generally* Ex. 2.

metadata intact is common in discovery and essential to dating the creation of the alleged notes. But, PQPR produced only pdf versions of records like the two promissory notes and security agreement at issue. And beyond that, it has not produced *any* documents evidencing when the promissory notes and security agreement were actually executed. No emails attaching them were produced. No records requesting that Jones sign them were produced. No communications were produced that discuss with FSS why promissory notes are needed. Nor were any communications produced explaining why the notes needed to be secured by essentially everything FSS owns. In a case where the authenticity of the underlying debt, the promissory notes, and the security agreement are in question, native files showing when these documents were created and transmitted must be produced.

22.     As another example, despite being requested in the underlying Sandy Hook cases, PQPR has only now produced a handful of invoices to FSS supposedly issued in 2015. But PQPR has produced no documents or communications showing when these invoices were made or transmitted to FSS. PQPR has not produced accounting entries (certainly not in native format) substantiating when the supposed debts were recorded in PQPR's books. PQPR has not produced any documents or communications it received from FSS in response to these supposed invoices that were issued. PQPR has not provided any underlying records supporting the amounts owed that are reflected in the invoices. Again, the authenticity of these invoices goes to the core issue of whether the PQPR Claim is legitimate. Yet PQPR has produced no responsive documents or information requested that one would expect to exist if the debt was *bona fide*. Instead, PQPR handpicked the documents it wants the Texas Plaintiffs to see—not what responsive documents actually exist.

23.     And little needs to be said about PQPR's objection that the requests are "not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues."[16]  That PQPR believes one set of discovery requests into whether a $54 million debt should be paid is too burdensome and expensive begs the question of how massive an alleged debt must be before its legitimacy merits discovery.  Nothing about the discovery requests themselves impose any unreasonable burden or expense, and PQPR has not attempted to identify anything to that effect.  PQPR has not articulated what actual burden and expense the requests would cause it to incur, because it cannot do so. In any event, any hypothetical burden or expense would hardly outweigh discovery into one of the core issues in this bankruptcy and the Debtor's cash-collateral motion—the PQPR Claim's legitimacy.  How PQPR can insist that third-party discovery into the debt's validity carries low importance to other parties' motion and objections raises serious concerns about PQPR's commitment to cooperate in any investigation.

24.     The peculiar circumstances surrounding the PQPR Claim should place the Court on high alert that important information in the documents and communications exist that PQPR does not want to provide.  When weighing burdens and benefits here, the scales tip in favor of discovery.

## EMERGENCY RELIEF REQUESTED

25.     Emergency consideration of this Motion is warranted because the information requested in discovery is necessary for preparation relating to the corporate

---

[16] *See generally* Ex. 2.

representative depositions of PQPR and FSS, with the FSS deposition scheduled for September 23, 2022.

## CONCLUSION

WHEREFORE, the Texas Plaintiffs respectfully request that the Court enter an order compelling PQPR to produce all responsive information sought in the Texas Plaintiffs' discovery requests and granting related relief.

Dated: September 9, 2022

Respectfully submitted,

MCDOWELL HETHERINGTON LLP

By: */s/ Avi Moshenberg*
Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, Texas 77002
D: 713-337-5580
F: 713-337-8850
E: Avi.Moshenberg@mhllp.com

*Counsel for the Texas Plaintiffs*

and

CHAMBERLAIN, HRDLICKA, WHITE,
    WILLIAMS & AUGHTRY, PC

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
Tara T. LeDay
Texas Bar No. 24106701
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com
E: tara.leday@chamberlainlaw.com

*Bankruptcy Counsel for the Texas Plaintiffs*

003151

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 9, 2022, a true and correct copy of this Motion was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

## **BLR 9013-1(i) CERTIFICATE**

Pursuant to BLR 9013-1(i), I hereby certify that the facts and circumstances giving rise to the emergency relief contained in the Motion are true and correct to the best of my knowledge, information, and belief.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

# Exhibit 1

003153

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **Free Speech Systems LLC,** | § | |
| | § | **Case No. 22–60043 (CML)** |
| Debtor. | § | |

---

## THE SANDY HOOK TEXAS PLAINTIFFS' FIRST SET OF INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PQPR HOLDINGS LIMITED, LLC

---

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), as made applicable hereto by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Federal Bankruptcy Rules**"), and the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (collectively, the "**Texas Plaintiffs**") creditors and parties-in-interest in the above-captioned case ("**Bankruptcy Case**"), by and through their undersigned counsel, serve their First Set of Interrogatories (collectively, the "**Interrogatories**" and each individually, an "**Interrogatory**") and First Requests for Production of Documents (collectively, the "**Requests**" and each individually, a "**Request**") to PQPR Holdings Limited, LLC ("**PQPR**").  Please produce on a rolling basis all Documents and other things requested herein, in accordance with the definitions and instructions set forth herein and all applicable Federal Rules, Federal Bankruptcy Rules, and Local Rules to the offices of McDowell Hetherington, LLP, 1001 Fannin Street, Suite 2700, Houston, Texas 77002, and by electronic mail to the undersigned counsel.  The written responses to these Requests shall be due on August 17, 2022.

**THE SANDY HOOK TEXAS PLAINTIFFS' FIRST SET OF INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PQPR HOLDINGS LIMITED, LLC**

**PAGE | 1**

003154

## DEFINITIONS

The following definitions apply to the Requests.  Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1.      The term "**Affiliate**" or "**Affiliates**" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

2.      The terms "**all**," "**any**," and "**each**" shall each be construed as encompassing any and all of these terms.

3.      The connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents or responses that might otherwise be construed to be outside of its scope.

4.      The term "**concerning**" shall mean relating to (however remotely), referring to, describing, evidencing, or constituting.

5.      The term "**Debtors**" shall refer to Free Speech Systems, LLC.

6.      The term "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of the term "*documents or electronically stored information*" in Fed. R. Civ. P. 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, and other data or data compilations.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

7.      The term "**FSS**" shall mean and refer to "Free Speech Systems, LLC."

8.      The term "**including**" shall mean "including, but not limited to."

**THE SANDY HOOK TEXAS PLAINTIFFS' FIRST SET OF INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PQPR HOLDINGS LIMITED, LLC**

**PAGE | 2**

003155

9.      The term "*Person*" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

10.     The term "*Petition Date*" shall mean July 29, 2022.

11.     The term "*PQPR*" shall mean PQPR Holdings Limited, LLC.

12.     The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, consultants, advisors, and testifying or non-testifying experts.

13.     The terms "*You*" and "*Your*" shall mean and refer to PQPR Holdings Limited, LLC.

14.     The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

15.     Any references to a Person shall be deemed to include such Person's agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, or any other individual or entity acting or purporting to act on behalf of such Person.

16.     The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

## INSTRUCTIONS

1.      These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules, the Federal Rules, and the Local Rules.

2.      Each Request is continuing in nature.  If at any time additional Documents responsive to the Requests come into Your possession, custody, or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

**THE SANDY HOOK TEXAS PLAINTIFFS' FIRST SET OF INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PQPR HOLDINGS LIMITED, LLC**

003156

3.      You are requested to produce all Documents and information requested herein that are within Your possession, custody, or control or in the possession, custody, or control of Your current and former officers, directors, agents, employees, representatives, Affiliates, Professionals, or any other Person or entity acting or purporting to act on Your behalf.

4.      All Documents shall be produced in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format.  All Documents shall be produced with metadata, including but not limited to the date created/sent, author, recipients, cc-copies, bcc-blind copies, and whether the document contains redactions.

5.      If the response to any Request consists, in whole or in part, of an objection on the basis of or including burdensomeness, then provide those documents that can be produced without undue burden.  For such documents that are too burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved, and the estimated costs of the search.

6.      Any Document or other information that falls within the scope of these Requests that is withheld on the basis of a claim of privilege, work product protection, or any other grounds should be identified in writing by date, title/file name/"re line"/subject, addressee/to/cc/bcc, addressor/from, document type, and topic covered and listed with a statement of the grounds alleged for withholding such document, communication, or other information, including any common interest or joint defense privilege claimed.

7.      If Your response to any Request is any other objection, You must indicate if information is being withheld based on the objection(s), provide all information not covered by the objection, and state the specific basis of the objection.

**THE SANDY HOOK TEXAS PLAINTIFFS' FIRST SET OF INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PQPR HOLDINGS LIMITED, LLC**

**PAGE | 4**

003157

8.      If any Document responsive to these Requests has been destroyed, state when the Document was destroyed, identify the Person who destroyed the Document, and the Person who directed that it be destroyed.  Additionally, detail the reasons for the destruction, describe the nature of the Document, identify the Persons who created, sent, received, or reviewed the Document, and state in as much detail as possible the contents of the Document.

9.      Subject to Instruction No. 4 above, Documents should be produced in the manner they are kept in the ordinary course of business.  In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

10.      Except where otherwise specified, the Requests seek Documents dated, created, or otherwise obtained through the present.  For the avoidance of doubt, these Requests seek Documents created before and after the Petition Date.

11.      By serving these Requests, the Sandy Hook Plaintiffs reserve all rights, do not waive any of their rights, and expressly reserve the right to modify or otherwise to supplement these Requests.

## **REQUESTS FOR PRODUCTION**

1.      Produce all agreements, contracts, and/or promissory notes between FSS and PQPR.

2.      Produce all documents and communications evidencing any agreements, contracts, and/or promissory notes between FSS and PQPR.

3.      Produce all communications (internal and with FSS) relating to the negotiation of terms and execution of any agreements, contracts, and/or promissory notes between FSS and

**THE SANDY HOOK TEXAS PLAINTIFFS' FIRST SET OF INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PQPR HOLDINGS LIMITED, LLC**

**PAGE | 5**

003158

PQPR—including but not limited to exchange of drafts of any agreements, contracts, and/or promissory notes and all documentation evidencing their transmittals in real time.

4.      Produce all communications (internal and with FSS) evidencing the alleged debts memorialized by the promissory notes between FSS and PQPR dated August 2020 and November 2021.

5.      Produce all communications (internal and with FSS) relating to security agreement between FSS and PQPR dated August 2020.

6.      Produce all documents and communications evidencing any efforts by FSS or PQPR to enforce the terms of any agreements, contracts, and/or promissory notes between FSS and PQPR.

7.      Produce all communications (internal and with FSS) relating to the negotiation of terms of any forbearance agreement with FSS—including but not limited to exchange of drafts and all documentation evidencing transmittals in real time.

8.      Produce unredacted copies of all financial statements (balance sheets, income statements, statements of equity or retained earnings, cash flow), profit and loss reports, reports of expenditures, bank statements, ledgers, Quickbooks (or other accounting software) entries, and the like, from September 1, 2013, to present.

9.      Produce all documents and communications evidencing PQPR's payment of products it bought on behalf of or sold to FSS.

10.     Produce all documents and communications evidencing payments made by FSS to PQPR.

**THE SANDY HOOK TEXAS PLAINTIFFS' FIRST SET OF INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PQPR HOLDINGS LIMITED, LLC**

11.     Produce all documents and communications evidencing PQPR's requests to FSS to pay for goods and services bought by PQPR on behalf of or sold to FSS.

12.     Produce all documents and communications evidencing the services that were provided by FSS to PQPR, and evidencing PQPR's payment for such services.

13.     Produce all organizational charts and/or employee lists for PQPR, from September 1, 2013, to present.

14.     Produce all documents and communications related to the ownership of the warehouse in which PQPR operates, including any lease or purchase agreements.

15.     Produce all documents and communications evidencing the ownership of PQPR, from its inception to the present.

16.     Produce all records of payments made by PQPR to its owner(s), from September 1, 2013, to present.

17.     Produce all records identified in response to the interrogatories listed below.

18.     Produce all wage and employment records of any employees of PQPR, and/or documents sufficient to identify the PQPR employee payroll, the wages paid each employee, the dates the employee performed services for PQPR, and what services were performed.

19.     If any manager or member of the PQPR received compensation for services to PQPR, produce documents sufficient to identify the amounts paid to such manager or member, and what services were performed in exchange for such payments.

20.     Produce all leases to which PQPR is a party, and all title to any real property PQPR holds.

**THE SANDY HOOK TEXAS PLAINTIFFS' FIRST SET OF INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PQPR HOLDINGS LIMITED, LLC**

**PAGE | 7**

003160

21.     Produce all tax returns filed by PQPR or on behalf of PQPR, from September 1, 2013 to the present.

## **INTERROGATORIES**

1.     Identify, by year, all amounts paid by PQPR for products and services which PQPR bought on behalf of or sold to FSS, from January 1, 2013 to present.

2.     Identify, by year, all amounts paid by FSS to PQPR for products and services which PQPR bought on behalf, or sold to FSS from January 1, 2018 to present.

3.     Identify who participated in the negotiations of any agreements, contracts, and/or promissory notes between FSS and PQPR.

4.     Identify who participated in any efforts by FSS or PQPR to enforce any agreements, contracts, and/or promissory notes between FSS and PQPR.

5.     Identify all employees of PQPR from January 1, 2013, to present. For purposes of this request, "employees" means all persons paid, by PQPR, wages reportable on either IRS forms 1099 or W-2, and for which PQPR was not reimbursed by any other entity.

6.     Identify all facilities, including warehouses, offices, and physical locations, used by, maintained by, or owned by PQPR.

7.     Identify all payments made by PQPR to its owner(s), from January 1, 2013, to present.

8.     Identify who provided accounting or bookkeeping services to FSS, in what time frame, and what services were provided.

Dated: August 9, 2022

**THE SANDY HOOK TEXAS PLAINTIFFS' FIRST SET OF INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PQPR HOLDINGS LIMITED, LLC**

**PAGE | 8**

003161

Respectfully submitted,

**MCDOWELL HETHERINGTON LLP**

*/s/ Avi Moshenberg*
Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, Texas 77002
D: 713-337-5580
F: 713-337-8850
E: Avi.Moshenberg@mhllp.com

***Counsel for the Texas Plaintiffs***

**CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY, PC**

Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

***Bankruptcy Counsel for the Texas Plaintiffs***

<u>**Certificate of Service**</u>

I certify that on August 9, 2022, a true and correct copy of the foregoing document was served via email to PQPR's counsel.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

**THE SANDY HOOK TEXAS PLAINTIFFS' FIRST SET OF INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PQPR HOLDINGS LIMITED, LLC**

**PAGE | 9**

003162

# Exhibit 2

003163

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Chapter 11** |
| **Free Speech Systems LLC,** | § | |
| | § | **Case No. 22-60043 (CML)** |
| **Debtor.** | § | |

---

**PQPR HOLDINGS LIMITED, LLC'S OBJECTIONS AND ANSWERS TO**
**TEXAS PLAINTIFFS' FIRST SET OF INTERROGATORIES AND**
**FIRST REQUESTS FOR PRODUCTION**

TO:    Counsel for the Texas Plaintiffs, Avi Moshenberg, McDowell Hetherington, LLP, 1001 Fannin Street, Suite 2700, Houston, Texas 77002; Bankruptcy Counsel for the Texas Plaintiffs, Jarrod B. Martin, Chamberlain, Hrdlicka, White, Williams & Aughtry, PC, 1200 Smith Street, Suite 1400, Houston, Texas 77002.

PQPR Holdings Limited, LLC ("PQPR") serves its Objections and Responses to Neil Heslin, Scartlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (collectively, the "Texas Plaintiffs") First Set of Interrogatories and First Requests for Production of Documents (the "Discovery Requests") in the above-entitled and numbered cause pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as made applicable hereto by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure.  PQPR expressly reserves the right to amend or supplement these responses in accordance with Rule 26 of the Federal Rules of Civil Procedure.

**RESERVATION OF RIGHTS**

These responses are made solely for the purposes of this action.  Each response is subject to all objections as to confidence, attorney-client communication and/or work-product privilege, relevance, materiality, admissibility, and any and all other objections and grounds that would require the exclusion of any statement, admission, or document, if any requests were made, or any statement contained herein were made by a witness present and testifying in court or at a hearing, or any documents produced herein were proffered as evidence in a court or at a hearing, all of

which objections and grounds are expressly reserved and may be interposed at the time of trial or hearing.

The following responses and objections are based upon information presently available and, except for explicit facts admitted herein, no incidental or implied admissions are intended hereby.  The fact that PQPR has responded or objected to any of the requests or part thereof should not be taken as an admission that PQPR accepts or admits the existence of any facts set forth or assumed by such request and/or that such response constitutes admissible evidence.  The fact that PQPR has responded to all or part of a request is not intended and shall not be construed to be a waiver by PQPR of all or any part of any objection(s) to any request.

Any statement hereinafter that inspection will be permitted does not signify that responsive documents actually exist but means only that if responsive documents are located after a reasonable search, subject to PQPR's objections, they will be produced for inspection at a mutually agreeable time and location.

PQPR reserves the right to amend or supplement the following responses in accordance with the Federal Rules of Civil Procedure, as this matter proceeds and new or additional information is obtained.

## GENERAL OBJECTIONS

PQPR incorporates by reference, as if fully set forth herein, its August 17, 2022, Preliminary Objection to the Texas Plaintiffs' First Set of Interrogatories and First Requests for Productions of Documents.  Specifically, the Discovery Requests are improper under Federal Rules 29, 33, and 34.

PQPR objects to the instructions and definitions listed in the Discovery Requests to the extent such instructions or definitions impose obligations on PQPR that are not required by, or that exceed the scope within, the Federal Rules of Civil Procedure.  Further, PQPR objects to any attempt by the Texas Plaintiffs to seek to describe any persons or entities other than PQPR itself,

2

and PQPR does not have sufficient information to enable it to answer or respond on the basis of information known to other persons or entities.

PQPR further objects that much of the propounded discovery is irrelevant at this time, and thus premature.  PQPR volunteered to produce documents to the Texas Plaintiffs prior to any Discovery Requests being served.  PQPR has already produced documents relating to the cash collateral issue.  PQPR is willing to produce documents to the sub V trustee as part of her examination, but it is not proper at this time for the Texas Plaintiffs to make inquiry into other matters that either relate to the ongoing state court litigation or to the motions filed by the Texas Plaintiffs after the Discovery Requests were served.

All of PQPR's responses are subject to these general objections, which are incorporated into each specific response below as if fully set forth therein.  PQPR will supplement these answers, responses and objections to the extent required by the Federal Rules of Civil Procedure.  Without waiving the foregoing, PQPR further responds as follows:

<u>**OBJECTIONS AND ANSWERS TO REQUESTS FOR PRODUCTION**</u>

<u>**REQUEST NO. 1:**</u>  Produce all agreements, contracts, and/or promissory notes between FSS and PQPR.

> <u>**OBJECTION:**</u>  PQPR objects to this request because documents and information that is not relevant to the Texas Plaintiffs' claims. The request is irrelevant and unreasonably broad because it seeks documents regardless of when they were created and that are irrelevant to Plaintiff's claims.

> <u>**ANSWER:**</u>    PQPR has produced the promissory notes at issue in this matter the work papers used to determine the debt underlying the notes.

<u>**REQUEST NO. 2:**</u>  Produce all documents and communications evidencing any agreements, contracts, and/or promissory notes between FSS and PQPR.

> <u>**OBJECTION:**</u>  PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.  The request is unreasonably broad because it seeks documents regardless of when they were created and that are irrelevant to Plaintiff's claims.  PQPR further objects because the request is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit.

3

**ANSWER:**    PQPR has produced the promissory notes at issue in this matter the work papers used to determine the debt underlying the notes.

**REQUEST NO 3:** Produce all communications (internal and with FSS) relating to the negotiation of terms and execution of any agreements, contracts, and/or promissory notes between FSS And PQPR—including but not limited to exchange of drafts of any agreements, contracts, and/or promissory notes and all documentation evidencing their transmittals in real time.

**OBJECTION:**   PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.  The request is unreasonably broad because it seeks documents regardless of when they were created and that are irrelevant to Plaintiff's claims.  PQPR further objects because the request is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit.

**ANSWER:**    PQPR has produced the promissory notes at issue in this matter the work papers used to determine the debt underlying the notes.

**REQUEST NO. 4:**  Produce all communications (internal and with FSS) evidencing the alleged debts memorialized by the promissory notes between FSS and PQPR dated August 2020 and November 2021.

**OBJECTION:**  PQPR objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues.

**ANSWER:**    PQPR has produced the promissory notes at issue in this matter the work papers used to determine the debt underlying the notes.

**REQUEST NO. 5:**  Produce all communications (internal and with FSS) relating to security agreement between FSS and PQPR dated August 2020.

**OBJECTION:**  PQPR objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues.

**ANSWER:**    PQPR has produced the promissory notes at issue in this matter the work papers used to determine the debt underlying the notes.

**REQUEST NO. 6:**  Produce all documents and communications evidencing any efforts by FSS or PQPR to enforce the terms of any agreements, contracts, and/or promissory notes between FSS and PQPR.

**OBJECTION:**  PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.   The request is unreasonably broad because it seeks documents regardless of when they were created and that are irrelevant to Plaintiff's claims.  PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request

4

003167

outweighs its likely benefit and the information requested is of low importance to resolving the issues.

**ANSWER:**   PQPR has produced the promissory notes at issue in this matter the work papers used to determine the debt underlying the notes.

**REQUEST NO. 7:**   Produce all communications (internal and with FSS) relating to the negotiation of terms of any forbearance agreement with FSS—including but not limited to exchange of drafts and all documentation evidencing transmittals in real time.

**OBJECTION:**   PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.   The request is unreasonably broad because it seeks documents regardless of when they were created and that are irrelevant to Plaintiff's claims.  PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues.

**ANSWER:**   PQPR has produced the promissory notes at issue in this matter the work papers used to determine the debt underlying the notes.

**REQUEST NO. 8:**   Produce unredacted copies of all financial statements (balance sheets, income statements, statements of equity or retained earnings, cash flow), profit and loss reports, reports of expenditures, bank statements, ledgers, Quickbooks (or other accounting software) entries, and the like, from September 1, 2013, to present.

**OBJECTION:**   PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue. The request is unreasonably broad and ambiguous because it does not specify that the documents sought are those of PQPR and because it seeks documents for a time period that far precedes the promissory notes at issue.   PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues.   Furthermore, potentially responsive documents are confidential and proprietary.

**ANSWER:**   PQPR has produced the promissory notes at issue in this matter the work papers used to determine the debt underlying the notes.

**REQUEST NO. 9:**   Produce all documents and communications evidencing PQPR's payment of products it bought on behalf of or sold to FSS.

**OBJECTION:**   PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.  This request is overly broad because it seeks all documents regardless of when they were created.  PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues.  Furthermore, potentially responsive documents are confidential and proprietary.

003168

**ANSWER:**  PQPR has produced the promissory notes at issue in this matter the work papers used to determine the debt underlying the notes.

**REQUEST NO. 10:**  Produce all documents and communications evidencing payments made by FSS to PQPR.

**OBJECTION:**  PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.  This request is overly broad because it seeks all documents regardless of when they were created.  PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues. Furthermore, potentially responsive documents are confidential and proprietary.

**ANSWER:**  PQPR has produced the promissory notes at issue in this matter the work papers used to determine the debt underlying the notes.

**REQUEST NO. 11:**  Produce all documents and communications evidencing PQPR's requests to FSS to pay for goods and services bought by PQPR on behalf of or sold to FSS.

**OBJECTION:**  PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.  This request is overly broad because it seeks all documents regardless of when they were created.  PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues.  Furthermore, potentially responsive documents are confidential and proprietary.

**ANSWER:**  PQPR has produced the promissory notes at issue in this matter the work papers used to determine the debt underlying the notes.

**REQUEST NO. 12:**  Produce all documents and communications evidencing the services that were provided by FSS to PQPR, and evidencing PQPR's payment for such services.

**OBJECTION:**  PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.  This request is overly broad because it seeks all documents regardless of when they were created.  The request is ambiguous because it is not clear what "services" it refers to.  PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues.

**ANSWER:.**   PQPR has produced the promissory notes at issue in this matter the work papers used to determine the debt underlying the notes.

**REQUEST NO. 13:**  Produce all organizational charts and/or employee lists for PQPR, from September 1, 2013, to present.

003169

**OBJECTION:** PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue. PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues. Furthermore, potentially responsive documents are confidential and proprietary.

**REQUEST NO. 14:** Produce all documents and communications related to the ownership of the warehouse in which PQPR operates, including any lease or purchase agreements.

**OBJECTION:** PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue. PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues. Furthermore, potentially responsive documents are confidential and proprietary.

**REQUEST NO. 15:** Produce all documents and communication evidencing the ownership of PQPR, from its inception to the present.

**OBJECTION:** PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue. PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues. Furthermore, potentially responsive documents are confidential and proprietary.

**REQUEST NO. 16:** Produce all records of payments made by PQPR to its owner(s), from September 1, 2013, to present.

**OBJECTION:** PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue. PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues. Furthermore, potentially responsive documents are confidential and proprietary.

**REQUEST NO. 17:** Produce all records identified in response to the interrogatories listed below.

**OBJECTION:** PQPR incorporates by reference the objections set forth in the Answers to Interrogatories below.

**REQUEST NO. 18:** Produce all wage and employment records of any employees of PQPR, and/or documents sufficient to identify the PQPR employee payroll, the wages paid each employee, the dates the employee performed services for PQPR, and what services were performed.

**OBJECTION:** PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue. PQPR further objects to this request because it is not proportional to the needs of the case because the

7

burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues.   Furthermore, potentially responsive documents are confidential and proprietary.

**REQUEST NO. 19:**  If any manager or member of the PQPR received compensation for services to PQPR, produce documents sufficient to identify the amounts paid to such manager or member, and what services were performed in exchange for such payments.

> **OBJECTION:**   PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.  PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues.   Furthermore, potentially responsive documents are confidential and proprietary.

**REQUEST NO. 20:**  Produce all leases to which PQPR is a party, and all title to any real property PQPR holds.

> **OBJECTION:**   PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.  PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues.   Furthermore, potentially responsive documents are confidential and proprietary.

**REQUEST NO. 21:**  Produce all tax returns filed by PQPR or on behalf of PQPR, from September 1, 2013 to the present.

> **OBJECTION:**   PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.  PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues.   Furthermore, potentially responsive documents are confidential and proprietary.

003171

## OBJECTIONS AND ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:**  Identify, by year, all amounts paid by PQPR for products and services which PQPR bought on behalf of or sold to FSS, from January 1, 2013 to present.

> **OBJECTION:**  PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.  This request is overly broad because it seeks all documents regardless of when they were created.  PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues.  Furthermore, potentially responsive documents are confidential and proprietary.

> **ANSWER:**    See the work papers used to determine the debt underlying the promissory notes, which have been produced.

**INTERROGATORY NO. 2:**  Identify, by year, all amounts paid by FSS to PQPR for products and services which PQPR bought on behalf, or sold to FSS from January 1, 2013 to present.

> **OBJECTION:**  PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.  This request is overly broad because it seeks all documents regardless of when they were created.  PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues. Furthermore, potentially responsive documents are confidential and proprietary.

> **ANSWER:**    See the work papers used to determine the debt underlying the promissory notes, which have been produced.

**INTERROGATORY NO. 3:**  Identify who participated in the negotiations of any agreements, contracts, and/or promissory notes between FSS and PQPR.

> **OBJECTION:**  PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.  The request is unreasonably broad because it seeks documents regardless of when they were created and that are irrelevant to Plaintiff's claims.  PQPR further objects because the request is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit.

> **ANSWER:**    See the work papers used to determine the debt underlying the promissory notes, which have been produced.

**INTERROGATORY NO. 4:**  Identify who participated in any efforts by FSS or PQPR to enforce any agreements, contracts, and/or promissory notes between FSS and PQPR.

> **OBJECTION:**  PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue.   The request is unreasonably broad because it seeks documents regardless of when they were created and

003172

that are irrelevant to Plaintiff's claims. PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues.

**ANSWER:**   See the work papers used to determine the debt underlying the promissory notes, which have been produced.

**INTERROGATORY NO. 5:**  Identify all employees of PQPR from January 1, 2013, to present. For purposes of this request, "employees" means all persons paid, by PQPR, wages reportable on either IRS forms 1099 or W-2, and for which PQPR was not reimbursed by any other entity.

**OBJECTION:**   PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue. PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues. Furthermore, potentially responsive documents are confidential and proprietary.

**INTERROGATORY NO. 6:**   Identify all facilities, including warehouses, offices, and physical locations, used by, maintained by, or owned by PQPR.

**OBJECTION:**   PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue. PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues. Furthermore, potentially responsive documents are confidential and proprietary.

**INTERROGATORY NO. 7:**  Identify all payments made by PQPR to its owner(s), from January 1, 2013, to present.

**OBJECTION:**   PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue. PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues. Furthermore, potentially responsive documents are confidential and proprietary.

**INTERROGATORY NO. 8:**  Identify who provided accounting or bookkeeping services to FSS, in what time frame, and what services were provided.

**OBJECTION:**   PQPR objects to this request because it seeks documents that are not relevant to the Texas Plaintiffs' claims or the promissory notes at issue. PQPR further objects to this request because it is not proportional to the needs of the case because the burden or expense of the request outweighs its likely benefit and the information requested is of low importance to resolving the issues. Furthermore, potentially responsive documents are confidential and proprietary.

003173

Respectfully submitted,

*/s/ Stephen W. Lemmon*
Stephen W. Lemmon
Texas Bar. No. 12194500
STREUSAND, LANDON, OZBURN & LEMMON, LLP
1801 S. MoPac Expressway, Suite 320
Austin, Texas 78746
Telephone: (512) 236-9900
Facsimile: (512) 236-9904
lemmon@slollp.com
**ATTORNEYS FOR**
**PQPR HOLDINGS LIMITED, LLC**

11

003174

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on this 30th day of August, 2022 via electronic mail, first-class mail and/or certified mail return receipt requested, on the following:

**MCDOWELL HETHERINGTON LLP**
Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, Texas 77002
Email: Avi.Moshenberg@mhllp.com
*Counsel for the Texas Plaintiffs*

**CHAMBERLAIN, HRDLICKA, WHITE,**
**WILLIAMS & AUGHTRY, PC**
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
Email: jarrod.martin@chamberlainlaw.com
*Bankruptcy Counsel for the Texas Plaintiffs*

*/s/ Stephen W. Lemmon*
Stephen W. Lemmon

12

# Exhibit 3

**From:** Martin, Jarrod B.
**Sent:** Thursday, September 8, 2022 3:46 PM
**To:** Avi Moshenberg <avi.moshenberg@mhllp.com>
**Subject:** FW: FSS/PQPR Discovery

Jarrod B. Martin
Shareholder

Chamberlain Hrdlicka
Attorneys at Law

Direct: 713.356.1280
E-Mail: jarrod.martin@chamberlainlaw.com

**From:** Martin, Jarrod B.
**Sent:** Tuesday, September 6, 2022 5:42 PM
**To:** Kyung S. Lee <klee@shannonleellp.com>; Ray Battaglia <rwbresolve@gmail.com>; Steve Lemon <lemmon@slollp.com>; R. J. Shannon <rshannon@shannonleellp.com>
**Cc:** Avi Moshenberg <avi.moshenberg@mhllp.com>; Ryan Chapple <rchapple@cstrial.com>
**Subject:** RE: FSS/PQPR Discovery

All,

This is a follow up email on the request for a privilege log from FSS and PQPR. This is the 3rd email about the privilege log.

I am also following up on the request for a meet and confer call with Steve on the PQPR discovery. This is the 2nd email about the PQPR discovery responses.

I'd also like to get an update on the status of filing the protective order.

I would propose tomorrow after the 341 meeting for a call to discuss the privilege logs, the PQPR discovery responses, and the protective order. Please let me know if this works.

003176

Jarrod B. Martin
Shareholder

Chamberlain Hrdlicka
*Attorneys at Law*

Direct: 713.356.1280
E-Mail: jarrod.martin@chamberlainlaw.com

---

**From:** Martin, Jarrod B.
**Sent:** Tuesday, September 6, 2022 10:06 AM
**To:** Kyung S. Lee <klee@shannonleellp.com>; Ray Battaglia <rwbresolve@gmail.com>; Steve Lemon <lemmon@slollp.com>; R. J. Shannon <rshannon@shannonleellp.com>
**Cc:** Avi Moshenberg <avi.moshenberg@mhllp.com>; Ryan Chapple <rchapple@cstrial.com>
**Subject:** RE: FSS/PQPR Discovery

Also, I wanted to follow up on where we are at on the entry of the protective orders. I know we are signed off on the form of order.

Jarrod B. Martin
Shareholder

Chamberlain Hrdlicka
*Attorneys at Law*

Direct: 713.356.1280
E-Mail: jarrod.martin@chamberlainlaw.com

---

**From:** Martin, Jarrod B. <Jarrod.Martin@chamberlainlaw.com>
**Sent:** Monday, September 5, 2022 6:52 PM
**To:** Kyung S. Lee <klee@shannonleellp.com>; Ray Battaglia <rwbresolve@gmail.com>; Steve Lemon <lemmon@slollp.com>; R. J. Shannon <rshannon@shannonleellp.com>
**Cc:** Avi Moshenberg <avi.moshenberg@mhllp.com>; Ryan Chapple <rchapple@cstrial.com>
**Subject:** Re: FSS/PQPR Discovery

I hope everyone had a good holiday. I don't expect a response today given the holiday, but I would appreciate a response tomorrow. What's the timetable on a privilege log? Additionally, I'd like to set up a meet and confer call with Steve regarding PQPR's discovery responses. Please let me know your schedule tomorrow so Avi, myself and Ryan can get on a call with you. We believe the responses are deficient and if not amended, we'll tee up something with Judge Lopez. Thanks.

Jarrod B. Martin
Shareholder
Chamberlain Hrdlicka
Mobile: 832.757.6949
E-Mail: jarrod.martin@chamberlainlaw.com

---

**From:** Martin, Jarrod B. <Jarrod.Martin@chamberlainlaw.com>
**Sent:** Friday, September 2, 2022 8:49 AM
**To:** Kyung S. Lee <klee@shannonleellp.com>; Ray Battaglia <rwbresolve@gmail.com>; Steve Lemon <lemmon@slollp.com>; R. J. Shannon <rshannon@shannonleellp.com>

003177

**Cc:** Avi Moshenberg <avi.moshenberg@mhllp.com>; Ryan Chapple <rchapple@cstrial.com>
**Subject:** FSS/PQPR Discovery

Hey all,

Can you provide an estimate on the timing for providing a privilege log? Ray, do you want to take the first pass at the interim cash collateral order? Same terms, new budget, new final hearing date.

Going forward, I think we keep the email list limited to this group, adding in Melisssa as needed. Let me know if you agree. Enjoy the holiday weekend if we don't talk before then.

Jarrod B. Martin
Shareholder
Chamberlain Hrdlicka
Mobile: 832.757.6949
E-Mail: jarrod.martin@chamberlainlaw.com

003178

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22–60043** |
| | § | |
| **Free Speech Systems, LLC,** | § | |
| | § | **Chapter 11** |
| **Debtor.** | § | **Subchapter V** |

---

**ORDER GRANTING THE TEXAS PLAINTIFFS' EMERGENCY MOTION TO
COMPEL DISCOVERY FROM PQPR HOLDINGS LIMITED, LLC**

---

Upon the Texas Plaintiffs' Emergency Motion to Compel Discovery from PQPR Holdings Limited, LLC (the "**Motion**")[1]; and the district court having jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157; and this Court having found that venue of this proceeding the Motion in this district is proper pursuant to 28 U.S.C. § 1408; and this Court having reviewed the Motion; having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.     The Texas Plaintiffs' Motion to Compel is hereby **GRANTED**.

2.     Within 7 calendar days of this Order, PQPR will perform a reasonable search for and produce all non-privileged documents responsive to all requests in *The Sandy Hook Plaintiff's First Set of Interrogatories and First Requests for Production of Documents to PQPR Holdings Limited, LLC*.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

003179

3.     The responsive documents shall be produced in the manner and format set forth in the Instructions of the Requests, to wit, in TIFF or native format with all available metadata.

4.     Within 7 days, PQPR shall also give complete and accurate replies to all interrogatories in the Requests in the manner and format set forth in the Instructions therein.

5.     To the extent that PQPR is unable to locate or to obtain any documents responsive to a specific request, it shall, for each individual request, provide the Texas Plaintiffs with a written certification, signed pursuant to Rule 11 of the Federal Rules of Civil Procedure, that PQPR has exhausted all reasonable efforts to obtain any responsive documents and is not in the possession, custody, or control of any responsive, non-privileged documents.

**SIGNED THIS _____ DAY OF _____, 2022.**

**THE HONORABLE CHRISTOPHER M. LOPEZ,
UNITED STATES BANKRUPTCY JUDGE**

**ORDER GRANTING THE TEXAS PLAINTIFFS' EMERGENCY MOTION TO COMPEL DISCOVERY FROM PQPR HOLDINGS LIMITED, LLC**                                                      **PAGE | 2**

003180

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Case No. 22–60043** |
| | § | |
| **Free Speech Systems, LLC,** | § | |
| | § | **Chapter 11** |
| Debtor. | § | **Subchapter V** |

---

### NOTICE OF HEARING

---

PLEASE TAKE NOTICE that a hearing on *The Texas Plaintiffs' Emergency Motion To Compel Discovery From PQPR Holdings Limited, LLC* [ECF No. 137] was scheduled for **September 13, 2022 at 1:30 p.m.**, prevailing central standard time in the United States Bankruptcy Court for the Southern District of Texas before the Honorable Christopher M. Lopez, 515 Rusk, Houston, TX 77002, Courtroom No. 401. You may attend in person or by video/telephone.  To access the hearing, Dial 1-832-917-1510. Conference Code: 590153. Telephonic participants may connect on-line to view the Courts broadcast onto the courtrooms television monitors. To view online, you may connect through the website located at the following website: https://www.gotomeet.me/JudgeLopez.

Dated: September 9, 2022

Respectfully submitted,

**CHAMBERLAIN, HRDLICKA, WHITE,**
**WILLIAMS & AUGHTRY, PC**

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

*Bankruptcy Counsel for the Texas Plaintiffs*

003181

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 9, 2022, a true and correct copy of this Motion was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Case No. 22–60043** |
| | § | |
| **Free Speech Systems, LLC,** | § | |
| | § | **Chapter 11** |
| Debtor. | § | **Subchapter V** |

---

**CORRECTED NOTICE OF HEARING**

---

PLEASE TAKE NOTICE that a hearing on *The Texas Plaintiffs' Emergency Motion To Compel Discovery From PQPR Holdings Limited, LLC* [ECF No. 137] was scheduled for September 13, 2022 at 1:00 p.m., prevailing central standard time in the United States Bankruptcy Court for the Southern District of Texas before the Honorable Christopher M. Lopez, 515 Rusk, Houston, TX 77002, Courtroom No. 401. You may attend in person or by video/telephone.  To access the hearing, Dial 1-832-917-1510. Conference Code: 590153. Telephonic participants may connect on-line to view the Courts broadcast onto the courtrooms television monitors. To view online, you may connect through the website located at the following website: https://www.gotomeet.me/JudgeLopez.

Dated: September 9, 2022 Respectfully submitted,

**CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY, PC**

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

*Bankruptcy Counsel for the Texas Plaintiffs*

003183

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 9, 2022, a true and correct copy of this Motion was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 12, 2022

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|   |   |   |
|---|---|---|
| In re: | ) | Case No. 22-60043 |
| | ) | |
| FREE SPEECH SYSTEMS, LLC, | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Debtor. | ) | |

**STIPULATION AND AGREED ORDER TO TERMINATE
CLIENT SERVICES AGREEMENT BETWEEN
THE DEBTOR AND ADP TOTALSOURCE, INC.**

WHEREAS, Free Speech Systems, LLC (the 'Debtor") and ADP TotalSource, Inc.

("TotalSource") are parties to that certain Client Services Agreement (the "CSA") dated October

20, 2016, pursuant to which TotalSource provides to the Debtor human resource services under

an arrangement whereby the parties act as co-employers of the employees providing services to

the Debtor; and

WHEREAS, Part 2, Section 10 of the CSA permits either party to terminate the CSA for

any reason whatsoever on thirty (30) days' written notice of one to the other; and

WHEREAS, TotalSource has communicated to the Debtor its desire to terminate the

CSA; and

WHEREAS, the Debtor is willing to agree to a termination of the CSA on a date no

sooner than September 30, 2022.

NOW, THEREFORE, it is stipulated by the parties and upon approval by the Bankruptcy

Court, ordered that:

1.      The CSA shall terminate effective at 11:59 pm on September 30, 2022.

2.      In connection with such termination, TotalSource shall provide the Debtor with such information as it customarily provides other parties to CSAs upon termination.

3.      TotalSource shall in the ordinary course provide the Debtor's employees covered by the CSA with W-2 forms for work performed up to the termination of the CSA.

Signed:  September 12, 2022

_____
Christopher Lopez
United States Bankruptcy Judge

STIPULATED AND AGREED ON August 25, 2022 BY AND BETWEEN:

**ADP TOTALSOURCE, INC.**                    **FREE SPEECH SYSTEMS, LLC**


 */s/ Joseph S.U. Bodoff*                          */s/ Ray Battaglia*
Joseph S.U. Bodoff                             Raymond W. Battaglia
Pro Hac Vice (Mass. Bar No. 549116)            State Bar No. 01918055
jbodoff@rubinrudman.com                        rbattaglia@outlook.com
**RUBIN AND RUDMAN LLP**                       **LAW OFFICES OF RAY BATTAGLIA, PLLC**
53 State Street                                66 Granburg Circle
Boston, Massachusetts 02109                    San Antonio, Texas 78218
Tel: (617) 330-7038                            Tel: (210) 601-9405

                                               and

                                               Kyung S. Lee
                                               State Bar No. 12128400
                                               klee@shannonleellp.com
                                               R.J. Shannon
                                               State Bar No. 24108062
                                               rshannon@shannonleellp.com
                                               **SHANNON & LEE LLP**
                                               700 Milam Street, Suite 1300
                                               Houston, Texas 77002
                                               Tel: (713) 714-5770

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Chapter 11** |
| **Free Speech Systems LLC,** | § | |
| | § | **Case No. 22-60043 (CML)** |
| **Debtor.** | § | |


**PQPR HOLDINGS LIMITED, LLC'S RESPONSE TO THE TEXAS PLAINTIFFS'**
**EMERGENCY MOTION TO COMPEL DISCOVERY**
**[Related Docket No. 137]**

PQPR Holdings Limited, LLC ("PQPR") respectfully submits this Response to the Texas

Plaintiffs' Emergency Motion to Compel Discovery [Dkt. 137] (the "Emergency Motion"), as

follows:

1.    The Emergency Motion makes a series of complaints.  PQPR will not be able to

respond to each of them in the time before the hearing set on the Emergency Motion.

2.    Movants served the First Set of Interrogatories and First Requests for Production

of Documents to PQPR (the "Discovery Requests") on August 9, 2022, demanding a response in

just eight days.  The Discovery Requests were allegedly in the context of Debtor's Emergency

Motion for Interim and Final Orders (I) Authorizing the Use of Cash Collateral Pursuant to Section

105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and

(II) Granting Adequate Protection to the Pre-Petition Secured Lender [Dkt. 6] (the "Cash Collateral

Motion").  Despite the fact that the Discovery Requests improperly demanded a response in less

than the 30 days provided by the rules, PQPR responded early and produced documents relevant

to the Cash Collateral Motion.  PQPR voluntarily scheduled the deposition of its representative

concerning the circumstances of the debt and notes and voluntarily produced the work papers

relating to the forensic investigation of the debt.  PQPR volunteered to produce that witness for deposition on September 8.  Movants, instead, requested to take such deposition on October 4.

3.      PQPR respectfully suggests that the Emergency Motion is not necessary nor a good use of the Court's time.  Movants seem to agree that discovery should be limited to the question of whether PQPR's debt is valid.  While PQPR has produced the documents from the forensic review of the debt, movants' discovery seeks clearly irrelevant documents, including what are effectively requests for all documents and communications between PQPR and the Debtor from the beginning of time.  The objections were  not boilerplate, but necessary to protect the objections to irrelevant or over broad requests.[1]

4.      Finally, the Emergency Motion itself highlights the overall point that a continuation of the course of the state-court litigation in this Court would be wasteful and work against the best interests of the estate and its constituents.  As PQPR has noted, the state-court litigation (to which PQPR is not a party) has been a continuing discovery nightmare.  The Debtor and other defendants have been severely sanctioned, even though thousands of documents have been produced and a multitude of depositions taken at incredible expense.  PQPR is not suggesting that the defendants' conduct in the state-court litigation was proper, or that the state courts did not properly rule – that is the province of those courts.  But PQPR does not have access to those deposition transcripts or to the documents produced by the defendants and does not want to engage in "gotcha discovery."

5.      The Subchapter V Trustee has engaged counsel and begun a review and investigation of the Debtor, including a comprehensive review of PQPR's debt.  PQPR is fully cooperating with such investigation and review and has already met at length with the Subchapter V Trustee and counsel.  PQPR has pointed out that such a review by an impartial party is the most

---

[1]  The Court may recall that PQPR, before any request at all, at the initial cash collateral proceeding, volunteered to produce documents relating to the debt.

efficient way to obtain information.  PQPR has suggested that litigation efforts by movants not be heard until after the Subchapter V Trustee has reported the results of its investigation. Nevertheless, PQPR will honor movants' request to have PQPR's representative on the debt be deposed October 4.  PQPR suggests the instant emergency motion to compel is premature, at best. Therefore, PQPR requests that movant's Emergency Motion be denied

Dated:  September 12, 2022                    Respectfully submitted,

                                             By: /s/ Stephen W. Lemmon
                                                 Stephen W. Lemmon
                                                 Texas Bar. No. 12194500
                                                 STREUSAND, LANDON, OZBURN &
                                                 LEMMON, LLP
                                                 1801 S. MoPac Expressway, Suite 320
                                                 Austin, Texas 78746
                                                 Telephone: (512) 236-9900
                                                 Facsimile: (512) 236-9904
                                                 lemmon@slollp.com

                                             ATTORNEYS FOR
                                             PQPR HOLDINGS LIMITED, LLC

003189

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22—60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

**SUPPLEMENTAL DISCLOSURE BY ANDINO REYNAL IN CONNECTION WITH**
**SERVING AS SPECIAL COUNSEL FOR THE DEBTOR**
**[RELATES TO ECF NO. 94, 110 and 119]**

I, Federico Reynal, declare under penalty of perjury as follows:

1.       I am an attorney at law duly admitted and in good standing to practice in the State of Texas, United States District Court for the Southern District of Texas and the Fifth Circuit Court of Appeals.  I am the founder of the Houston office of The Reynal Law Firm, P.C. (the "Firm" or "The Reynal Firm"), located at 917 Franklin, Sixth Floor, Houston, Texas 77002.

2.       By the Order Approving Debtor's Application to Employ The Reynal Law Firm, P.C. under 11 U.S.C. § 327(e), as Special Counsel, effective as of July 29, 2022 [ECF No. 119], the Bankruptcy Court approved the retention of my Firm by the Debtor as special litigation counsel.

3.       I am providing this Supplemental Disclosure in connection with my Firm serving as Special Counsel for the Debtor ("Supplemental Disclosure"). Unless otherwise indicated, capitalized terms used but not defined herein have the meanings ascribed to such terms in the Application.

4.       Except as otherwise noted, all facts set forth in this Supplemental Disclosure are based upon my personal knowledge, upon the client and matter records of The Reynal Firm

003190

reviewed by me or derived from information available to me that I believe to be true and correct or opinion based upon experience, knowledge and information concerning the restructuring of debtor-creditor relationships, workouts, chapter 11 process, and the Debtor. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

5.      Since May 19, 2022, FSS retained Schwartz as its Chief Restructuring Officer ("CRO"). Schwartz asked counsel for FSS whether anyone knew of a financial executive who was available to come and work at FSS in the accounting department. I recommended Jeffery Shulse ("Shulse") to the CRO. Shulse has over twenty years' experience in providing business, operational and financial consulting to businesses and as a CFO and CEO of businesses in the oil and gas production and construction industries.

6.      With the recommendation of the CRO, FSS hired Shulse as FSS' Business Manager in May of 2022. As the Business Manager, Shulse works with Schwartz and SALLC to (a) implement viable accounting and financial management functions; (b) implement needed internal accounting controls, and (c) establish uniform accounting expense and personnel policies. Shulse has a BBA in accounting from the University of Houston and a J.D. from the University of Houston Law Center.

7.      I represented Shulse as a client when he was charged in 2016 in his capacity as the Chief Executive Officer of Black Elk Energy. Shulse was charged with securities fraud and wire fraud conspiracy. Shulse argued for three years that he was unaware of any alleged wrongdoing orchestrated by the Platinum Partners hedge fund, the entity which had installed Shulse as the CEO of Black Elk. Eventually, the prosecution dismissed all the charges against Shulse as long as he avoided other arrests as part of a deferred prosecution agreement.

003191

8.      I have been paid all fees owed from Shulse for representing him on the Black Elk matter. Furthermore, I no longer represent Shulse in any capacity.

9.      As a result of my representation of Shulse, he and I have become friends, and we occasionally do social events, like dinners, together.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 12, 2022,

By: /s/*Federico Reynal*
Federico Reynal

3

003192

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 22–60043 |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Chapter 11** |
| | § | **Subchapter V** |
| Debtor. | § | |

## THE TEXAS PLAINTIFFS' WITNESS AND EXHIBIT LIST FOR HEARING SCHEDULED FOR SEPTEMBER 13, 2022 AT 1:00 P.M.

Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (collectively, "**Texas Plaintiffs**"), creditors and parties-in-interest in the above-captioned case, file their Witness and Exhibit List for the hearing to be held on September 13, 2022, at 1:00 p.m. (prevailing Central Time) as follows:

### WITNESSES

The Sandy Hook Plaintiffs may call the following witnesses at the Hearing:

1. Jarrod B. Martin.

2. Any witness called or designated by any other party.

3. Any witness necessary to rebut the evidence or testimony of any witness offered or designated by any other party

### EXHIBITS

| EXHIBIT | DESCRIPTION | MARK | OFFER | OBJECT | ADMIT | W/D | DISPOSITION AFTER TRIAL |
|---|---|---|---|---|---|---|---|
| **1.** | Email chain (September 2 – September 8, 2022) regarding PQPR Discovery [ECF 137-3] | | | | | | |

| EXHIBIT | DESCRIPTION | MARK | OFFER | OBJECT | ADMIT | W/D | DISPOSITION AFTER TRIAL |
|---|---|---|---|---|---|---|---|
| 2. | Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [ECF 98] | | | | | | |
| 3. | Any document or pleading filed in the above-captioned main cases | | | | | | |
| 4. | Any exhibit necessary for impeachment and/or rebuttal purposes | | | | | | |
| 5. | Any exhibit identified or offered by any other party | | | | | | |

## <u>RESERVATION OF RIGHTS</u>

The Sandy Hook Plaintiffs reserve the right to call or to introduce one or more, or none, of the witnesses and exhibits listed above, and further reserve the right to supplement this list prior to the Hearing.

Dated: September 12, 2022

MCDOWELL HETHERINGTON LLP

Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street
Suite 2700
Houston, TX 77002
P: 713-337-5580
F: 713-337-8850
E: avi.moshenberg@mhllp.com

*Counsel for the Texas Plaintiffs*

*AND*

**CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY, PC**

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

***Bankruptcy Counsel for the Texas Plaintiff***

## **Certificate of Service**

I certify that on September 12, 2022, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Jarrod B. Martin
Jarrod B. Martin

# Exhibit 1

003197

# Exhibit 3

**From:** Martin, Jarrod B.
**Sent:** Thursday, September 8, 2022 3:46 PM
**To:** Avi Moshenberg <avi.moshenberg@mhllp.com>
**Subject:** FW: FSS/PQPR Discovery

Jarrod B. Martin
Shareholder

Chamberlain Hrdlicka
Attorneys at Law

Direct: 713.356.1280
E-Mail: jarrod.martin@chamberlainlaw.com

**From:** Martin, Jarrod B.
**Sent:** Tuesday, September 6, 2022 5:42 PM
**To:** Kyung S. Lee <klee@shannonleellp.com>; Ray Battaglia <rwbresolve@gmail.com>; Steve Lemon <lemmon@slollp.com>; R. J. Shannon <rshannon@shannonleellp.com>
**Cc:** Avi Moshenberg <avi.moshenberg@mhllp.com>; Ryan Chapple <rchapple@cstrial.com>
**Subject:** RE: FSS/PQPR Discovery

All,

This is a follow up email on the request for a privilege log from FSS and PQPR. This is the 3rd email about the privilege log.

I am also following up on the request for a meet and confer call with Steve on the PQPR discovery. This is the 2nd email about the PQPR discovery responses.

I'd also like to get an update on the status of filing the protective order.

I would propose tomorrow after the 341 meeting for a call to discuss the privilege logs, the PQPR discovery responses, and the protective order. Please let me know if this works.

Jarrod B. Martin
Shareholder

Chamberlain Hrdlicka
*Attorneys at Law*

Direct: 713.356.1280
E-Mail: jarrod.martin@chamberlainlaw.com

---

**From:** Martin, Jarrod B.
**Sent:** Tuesday, September 6, 2022 10:06 AM
**To:** Kyung S. Lee <klee@shannonleellp.com>; Ray Battaglia <rwbresolve@gmail.com>; Steve Lemon <lemmon@slollp.com>; R. J. Shannon <rshannon@shannonleellp.com>
**Cc:** Avi Moshenberg <avi.moshenberg@mhllp.com>; Ryan Chapple <rchapple@cstrial.com>
**Subject:** RE: FSS/PQPR Discovery

Also, I wanted to follow up on where we are at on the entry of the protective orders. I know we are signed off on the form of order.

Jarrod B. Martin
Shareholder

Chamberlain Hrdlicka
*Attorneys at Law*

Direct: 713.356.1280
E-Mail: jarrod.martin@chamberlainlaw.com

---

**From:** Martin, Jarrod B. <Jarrod.Martin@chamberlainlaw.com>
**Sent:** Monday, September 5, 2022 6:52 PM
**To:** Kyung S. Lee <klee@shannonleellp.com>; Ray Battaglia <rwbresolve@gmail.com>; Steve Lemon <lemmon@slollp.com>; R. J. Shannon <rshannon@shannonleellp.com>
**Cc:** Avi Moshenberg <avi.moshenberg@mhllp.com>; Ryan Chapple <rchapple@cstrial.com>
**Subject:** Re: FSS/PQPR Discovery

I hope everyone had a good holiday. I don't expect a response today given the holiday, but I would appreciate a response tomorrow. What's the timetable on a privilege log? Additionally, I'd like to set up a meet and confer call with Steve regarding PQPR's discovery responses. Please let me know your schedule tomorrow so Avi, myself and Ryan can get on a call with you. We believe the responses are deficient and if not amended, we'll tee up something with Judge Lopez. Thanks.

Jarrod B. Martin
Shareholder
Chamberlain Hrdlicka
Mobile: 832.757.6949
E-Mail: jarrod.martin@chamberlainlaw.com

---

**From:** Martin, Jarrod B. <Jarrod.Martin@chamberlainlaw.com>
**Sent:** Friday, September 2, 2022 8:49 AM
**To:** Kyung S. Lee <klee@shannonleellp.com>; Ray Battaglia <rwbresolve@gmail.com>; Steve Lemon <lemmon@slollp.com>; R. J. Shannon <rshannon@shannonleellp.com>

003199

**Cc:** Avi Moshenberg <avi.moshenberg@mhllp.com>; Ryan Chapple <rchapple@cstrial.com>
**Subject:** FSS/PQPR Discovery

Hey all,

Can you provide an estimate on the timing for providing a privilege log? Ray, do you want to take the first pass at the interim cash collateral order? Same terms, new budget, new final hearing date.

Going forward, I think we keep the email list limited to this group, adding in Melisssa as needed. Let me know if you agree. Enjoy the holiday weekend if we don't talk before then.

Jarrod B. Martin

Shareholder

Chamberlain Hrdlicka

Mobile: 832.757.6949

E-Mail: jarrod.martin@chamberlainlaw.com

003200

# Exhibit 2

003201

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 24, 2022

Nathan Ochsner, Clerk

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

### SECOND INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). This order is the second interim order ("Second Interim Order"), negotiated between the Debtor and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral. The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1. <u>Interim Use</u>. The Court approves the interim use of cash collateral as set forth herein.

2.    <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.    <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>").  All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.    <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Second Interim Order (the "<u>Interim Period</u>") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.    <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $20,000.

6.    <u>Payment to PQPR for Inventory Purchase</u>. Notwithstanding the limitation on payments to insiders set forth in the preceding paragraph, the Debtor is authorized to use Cash Collateral to pay PQPR up to $750,000 as provided in the Budget for "Repay PQPR Inventory" (each payment comprising a portion of the $750,000, a "<u>PQPR Payment</u>").  Creditors and parties in interest shall have thirty (30) days from the date

they receive notice that a PQPR Payment was issued to object to the appropriateness of that payment and file pleadings with the Court seeking to clawback the PQPR Payment. The Debtor shall provide notice of a PQPR Payment to creditors and parties in interest on the same day the payment is issued.

7.    <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.    <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.    <u>Adequate Protection – Replacement Liens</u>.    The adequate protection and related carve outset forth in the First Interim Order are incorporated in the Second Interim Order.

10.    <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.    <u>Credit Card Processing</u>. The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.

12.    <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the

U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13. <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14. <u>Discovery</u>. The Tort Plaintiffs issued written discovery to the Debtor and PQPR relating to the use of cash collateral on a final basis. PQPR and the Debtor will provide written discovery responses and produce responsive documents to the Tort Plaintiffs no later than August 30. If PQPR and the Debtor have objections to discovery, it will be their obligation file written objections to discovery before August 30, 2022. PQPR and the Debtor will make a good faith effort to begin producing responsive documents on a rolling basis as soon as possible, but not later than August 29th, 2022. The Tort Plaintiffs will provide deposition topics no later than August 22, which may be subject to amendment once document production is reviewed. The Debtor shall present a corporate representative for deposition on September 6, 2022. PQPR shall present a corporate representative for deposition on September 8. PQPR, the Debtor, and the Tort Plaintiffs agree that any discovery dispute may be heard on an emergency basis.

15. <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on September 13, 2022, at 1:00 p.m. Central time.

Signed:  August 24, 2022

Christopher Lopez
United States Bankruptcy Judge

**Free Speech Systems LLC**
**Forecasted Interim Cash Flow Budget (Week 4 - Week 7)**
**Between August 20, 2022 and September 16, 2022**

| | Period | 08/20/2022-08/26/2022 | 08/27/2022-09/02/2022 | 09/03/2022-09/09/2022 | 09/10/2022-09/16/2022 | Total |
|---|---|---|---|---|---|---|
| | Week Number | 4 | 5 | 6 | 7 | |
| **Income** | | | | | | |
| Product Sales | | $ 900,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 3,900,000.00 |
| Advertising | | $ 480,166.46 | $ - | $ - | $ - | $ 480,166.46 |
| Donations | | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 12,564.99 |
| **Total Income** | | $ 1,383,307.71 | $ 1,003,141.25 | $ 1,003,141.25 | $ 1,003,141.25 | $ 4,392,731.45 |
| **Selling & Product Costs** | | | | | | |
| Inventory Purchase | | $ (76,155.17) | $ (76,155.17) | $ (225,294.19) | $ (225,294.19) | $ (602,898.72) |
| Repay PQPR Inventory | | $ (250,000.00) | $ - | $ (500,000.00) | $ - | $ (750,000.00) |
| Merchant Account Fees | | $ (44,100.00) | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (191,100.00) |
| Shipping cost for drop ship orders | | $ (11,957.62) | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (51,816.36) |
| Fulfillment Services | | $ (219,512.20) | $ (243,902.44) | $ (243,902.44) | $ (243,902.44) | $ (951,219.51) |
| Processor Fees | | $ (36,000.00) | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (156,000.00) |
| eCommerce Store Maintenance | | $ - | $ (27,270.00) | $ - | $ - | $ (27,270.00) |
| Texas Sales Tax | | $ - | $ (5,337.87) | $ - | $ - | $ (5,337.87) |
| **Total Cost of Goods Sold** | | $ (637,724.99) | $ (454,951.73) | $ (1,071,482.87) | $ (571,482.87) | $ (2,735,642.47) |
| **Operating Expenses** | | | | | | |
| **Advertising & Promotion** | | | | | | |
| Advertising & Promotion | | $ - | $ (3,041.98) | $ - | $ - | $ (3,041.98) |
| Print Media | | $ - | $ (3,000.00) | $ - | $ - | $ (3,000.00) |
| Radio Show Advertising | | $ - | $ (11,500.00) | $ - | $ - | $ (11,500.00) |
| **Total Advertising & Promotion** | | $ - | $ (17,541.98) | $ - | $ - | $ (17,541.98) |
| **Computer/IT/IP Expense** | | | | | | |
| Internet & TV services | | $ - | $ (2,082.90) | $ - | $ (1,608.39) | $ (3,691.30) |
| Software License Fees | | $ - | $ (140.80) | $ - | $ - | $ (140.80) |
| Server Hosting Service | | $ - | $ (28,595.13) | $ - | $ - | $ (28,595.13) |
| CDN Video Cloud Storage | | $ - | $ (55,728.00) | $ - | $ - | $ (55,728.00) |
| Satellite Service | | $ - | $ (137,282.93) | $ - | $ - | $ (137,282.93) |
| Imaging License Fee | | $ - | $ (9,201.25) | $ - | $ - | $ (9,201.25) |
| Software & Apps | | $ - | $ (5,000.00) | $ - | $ - | $ (5,000.00) |
| Website Hosting | | $ - | $ - | $ - | $ (266.50) | $ (266.50) |
| **Total Computer/IT/IP Expense** | | $ - | $ (238,031.01) | $ - | $ (1,874.89) | $ (239,905.91) |
| Insurance | | $ - | $ (2,166.50) | $ - | $ - | $ (2,166.50) |
| **Office & Administrative Expense** | | | | | | $ - |
| Bank Fees & Service Charges | | $ (69.38) | $ (77.08) | $ (77.08) | $ (77.08) | $ (300.63) |
| Equipment Rental | | $ - | $ (1,989.90) | $ - | $ - | $ (1,989.90) |
| Office Supplies/Printing/Copy | | $ (3.17) | $ (3.53) | $ (3.53) | $ (3.53) | $ (13.76) |
| Business Meals | | $ (423.88) | $ (470.97) | $ (470.97) | $ (470.97) | $ (1,836.79) |
| **Total Office & Administrative Expense** | | $ (496.43) | $ (2,541.48) | $ (551.58) | $ (551.58) | $ (4,141.08) |
| Outsourced Services | | $ - | $ - | $ - | $ - | |
| Consulting Services | | $ - | $ - | $ - | $ - | |
| **Utilities** | | | | | | |
| Electricity | | $ - | $ - | $ - | $ (5,107.63) | $ (5,107.63) |
| HVAC | | $ - | $ (256.19) | $ - | $ - | $ (256.19) |
| CAM Charges | | $ - | $ (20,364.16) | $ - | $ - | $ (20,364.16) |
| Water & Sewer | | $ - | $ (1,708.55) | $ - | $ - | $ (1,708.55) |
| Gas Service | | $ - | $ (132.09) | $ - | $ - | $ (132.09) |
| Pest Control | | $ - | $ (244.65) | $ - | $ - | $ (244.65) |
| Waste Management | | $ - | $ (351.81) | $ - | $ - | $ (351.81) |
| **Total Utilities** | | $ - | $ (23,057.46) | $ - | $ (5,107.63) | $ (28,165.09) |
| **Occupancy** | | | | | | |
| Rent | | $ - | $ (33,408.51) | $ - | $ - | $ (33,408.51) |
| Office Security | | $ - | $ (31,111.90) | $ - | $ - | $ (31,111.90) |
| Repair & Maintenance - Building | | $ - | $ (1,777.19) | $ - | $ - | $ (1,777.19) |
| Janitorial | | $ - | $ (5,983.33) | $ - | $ - | $ (5,983.33) |
| **Total Occupancy** | | $ - | $ (72,280.93) | $ - | $ - | $ (72,280.93) |
| Supplies | | $ - | $ (1,258.02) | $ - | $ - | $ (1,258.02) |
| Telephone | | | $ (18,337.88) | $ - | $ - | $ (18,337.88) |
| **Personnel Expenses** | | | | | | $ - |
| Salaries & Wages - Base | | $ - | $ (168,467.44) | $ - | $ (168,467.44) | $ (336,934.88) |
| Payroll Tax | | $ - | $ (13,287.76) | $ - | $ (13,287.76) | $ (26,575.52) |
| Alex Jones Salary | | $ - | $ (20,000.00) | $ - | $ (20,000.00) | $ (40,000.00) |

EXHIBIT

A

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 4 - Week 7)**

**Between August 20, 2022 and September 16, 2022**

| Period | 08/20/2022-<br>08/26/2022 | 08/27/2022-<br>09/02/2022 | 09/03/2022-<br>09/09/2022 | 09/10/2022-<br>09/16/2022 | Total |
|---|---|---|---|---|---|
| **Total Personnel Expenses** | $ - | $ (201,755.20) | $ - | $ (201,755.20) | $ (403,510.40) |
| **Travel** | | | | | $ - |
| Mileage/Parking/Tolls | $ (150.67) | $ (167.41) | $ (167.41) | $ (167.41) | $ (652.90) |
| Vehicle Leases | $ - | $ - | $ (1,470.56) | $ - | $ (1,470.56) |
| **Total Travel Expenses** | $ (150.67) | $ (167.41) | $ (1,637.97) | $ (167.41) | $ (2,123.46) |
| **Total Operating Expenses** | $ (647.10) | $ (577,137.87) | $ (2,189.56) | $ (209,456.72) | $ (789,431.24) |
| **Non-Operating Expenses** | | | | | $ - |
| Payment on PQPR Note | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| AMEX Payment | $ - | $ - | $ - | $ - | $ - |
| **Total Other Expenses** | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| **Professional Fees** | | | | | |
| Subchapter v Trustee retainer | | | | $ (25,000.00) | $ (25,000.00) |
| Fulfillment Expert | $ (12,500.00) | $ - | $ - | $ - | $ (12,500.00) |
| Witness expenses and cost | | | | | |
| Pattis & Smith | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| Reynal Law Firm, PC | $ - | $ - | $ (50,000.00) | $ - | $ (50,000.00) |
| SALLC Fees | $ - | $ - | $ - | | $ - |
| Shannon & Lee LLP | $ - | $ - | $ - | | $ - |
| Ray Battaglia | $ - | $ - | $ - | | $ - |
| **Total Professional Fees** | $ (12,500.00) | $ - | $ (150,000.00) | $ (25,000.00) | $ (187,500.00) |
| **Total Cash Flow** | $ 727,435.62 | $ (33,948.36) | $ (225,531.18) | $ 192,201.66 | $ 660,157.73 |

003207

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22–60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | |
| | § | **Chapter 11** |
| **Debtor.** | § | **Subchapter V** |

---

### SANDY HOOK FAMILIES' OBJECTION TO PQPR HOLDINGS LIMITED, LLC'S MOTION TO EXPEDITE CONSIDERATION OF AMENDED MOTION TO DIRECT SUBCHAPTER V TRUSTEE TO INVESTIGATE FINANCIAL OPERATIONS OF THE DEBTOR

---

TO THE HONORABLE CHRISTOPHER M. LOPEZ, UNITED STATES BANKRUPTCY JUDGE:

Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine ("**Texas Plaintiffs**") and David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker ("**Connecticut Plaintiffs**") (together, "**Sandy Hook Families**"), creditors and parties-in-interest file this objection to *PQPR Holdings Limited, LLC's Motion to Expedite Consideration of Amended Motion to Direct Subchapter V Trustee to Investigate Financial Operations of the Debtor* ("**Motion to Expedite**")[1] filed by PQPR Holdings Limited, LLC ("**PQPR**") and respectfully show the Court the following:

---

[1] ECF No. 136.

1.      PQPR's Motion to Expedite is a self-serving attempt to derail the currently pending *Sandy Hook Families' Motion to (I) Appoint a Tort Claimants Committee and (II) Remove the Debtor in Possession.*[2]  PQPR provides no true rationale or justification for expedited relief and was only prompted to file the underlying *Amended Motion to Direct Subchapter V Trustee to Investigate Financial Operations of the Debtor* ("**Motion to Investigate**")[3] when Free Speech Systems, LLC ("**Debtor**" or "**FSS**")—which, like PQPR, is controlled by the Jones family—was at risk of being removed as Debtor in Possession. Thereafter, the instant Motion to Expedite came in response to numerous, and largely unanswered, meet-and-confer requests on discovery disputes between PQPR and the Sandy Hook Families.  Indeed, the relief requested in the Motion to Expedite is particularly dubious given that PQPR's claimed debt with FSS has accrued for five or more years without any action by PQPR—until now.

2.      In any event, emergency relief is only appropriate where a delay in the relief requested will cause material harm to the moving party or the bankruptcy estate. Bankruptcy Local Rule 9013-1(i) requires a "detailed statement why an emergency exists, and the date relief is needed to avoid the emergency."  Emergency relief is not appropriate here because PQPR has not come close to detailing the material harm necessary to establish an emergency.

3.      On the contrary, the real harm would be hearing PQPR's motion on an emergency basis—for three reasons:

---

[2]  ECF No. 102.
[3]  ECF No. 127.

4.      ***First***, allowing for a full notice period allows all parties in interest to consider the implications of the Motion to Investigate and file a well-thought out response if parties deem necessary.   While the Sandy Hook Families have every confidence in the independence of the Subchapter V Trustee, the Sandy Hook Families have serious concerns with the relief requested in the underlying Motion to Investigate and need an opportunity to raise those concerns to the Court and other stakeholders with diligence and thoroughness.

5.      ***Second***, PQPR's proposed method of investigation is to provide the Subchapter V Trustee with a PQPR consultant.   A true "comprehensive and impartial examination," as requested by PQPR,[4] would require independent analysis by the Subchapter V Trustee of the Debtor's organizational structure, financial obligations, contracts, and agreements, which includes transactions between PQPR and the Debtor. Thus, the PQPR consultant should not be the main scope of such investigation, let alone a reason to expedite the requested relief.   Moreover, if PQPR is asking for an investigation of the *Debtor*, how will the *PQPR* consultant be able to "more quickly help the Subchapter V Trustee understand the operations?"[5]   Rather, an investigation of the *Debtor* would primarily consist of thorough meetings with a *Debtor* representative.   There is simply no reason to seek expedited relief based on the unavailability of PQPR's consultant.

6.      ***Third***, even assuming PQPR's consultant was necessary to (or even welcome to participate in) any investigation by the Subchapter V Trustee, PQPR has not provided a

---

[4] *Id.* at ¶ 13.
[5] ECF No. 136 at ¶ 2.

"detailed statement" of material harm to the Debtor's estate if the PQPR consultant became involved in an investigation that was authorized by the Court *after* a regular briefing period.

7.      In conclusion, there is no date of relief that would avoid PQPR's concocted emergency.  The unavailability of PQPR's consultant is not an emergency, and PQPR's "desire[] that the investigation be commenced as soon as possible" does not an emergency create.[6]  For the foregoing reasons, the Sandy Hook Families request that the Court deny PQPR's Motion to Expedite and that the Motion to Investigate be heard on regular notice.

Dated: September 12, 2022

Respectfully submitted,

**McDowell Hetherington LLP**

By: */s/ Avi Moshenberg*
Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, Texas 77002
D: 713-337-5580
F: 713-337-8850
E: Avi.Moshenberg@mhllp.com

*Counsel for the Texas Plaintiffs*

and

---

[6] ECF No. 136 at ¶ 2.

**CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY, PC**

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
Tara T. LeDay
Texas Bar No. 24106701
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com
E: tara.leday@chamberlainlaw.com

***Bankruptcy Counsel for the Texas Plaintiffs***

By: */s/ Ryan Chapple*
Ryan E. Chapple
State Bar No. 24036354
Email: rchapple@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile

and

Randy W. Williams
State Bar No. 21566850
Email: rww@bymanlaw.com
**BYMAN & ASSOCIATES PLLC**
7924 Broadway, Suite 104
Pearland, Texas 77581
281-884-9262

***Bankruptcy Counsel for Connecticut Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 12, 2022, a true and correct copy of this Objection was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Jarrod B. Martin*　　　　　

Jarrod B. Martin

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 22-60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | **CHAPTER 11** |
| | § | |
| **DEBTOR** | § | |

**UNITED STATES TRUSTEE'S OBJECTION TO THE APPLICATION OF THE DEBTOR FOR AN ORDER (A) AUTHORIZING EMPLOYMENT OF W. MARC SCHWARTZ AS CHIEF RESTRUCTURING OFFICER, (B) AUTHORIZING EMPLOYMENT OF STAFF OF SCHWARTZ ASSOCIATES, LLC IN DISCHARGE OF DUTIES AS CHIEF RESTRUCTURING OFFICER, AND (C) GRANTING RELATED RELIEF**

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), by and through his undersigned counsel, hereby submits his objection (the "Objection") to Free Speech Systems, LLC's (the "Debtor" or "FSS") application to employ W. Marc Schwartz as chief restructuring officer ("Schwartz") and employing the staff of Schwartz and Associates LLC (collectively referred to as "Schwartz Application") pursuant to Section 327(a) of the Bankruptcy Code. In support of his Objection to the Schwartz Application, the U.S. Trustee states to the Court as follows:

**INTRODUCTION**

1. The U.S. Trustee objects to the Schwartz Application because Schwartz failed to disclose his connections to FSS in the bankruptcy cases of InfoW, LLC, IWHealth, LLC and Prison Planet TV, LLC (collectively referred to as the "InfoW Debtors" or "InfoW Cases").[1] In the InfoW Cases, the InfoW Debtors represented to the Court and parties that they would negotiate at arm's

---

[1] References to the InfoW Cases refer to Case Nos. 22-60020, 22-60021, and 22-60022 filed in the Southern District of Texas. References to the "InfoW Docket" refer to Case No. 22-60020.

003214

length with FSS and Alex Jones ("Jones"), the proposed third-party funders and counterparties to the negotiations. Schwartz was designated as chief restructuring officer (the "CRO") for the InfoW Debtors and was poised to play a key role in the negotiations. Yet, while the InfoW Debtors were seeking to employ Schwartz as their CRO, Schwartz sought employment with FSS. On May 19, 2022, Schwartz sent an engagement letter to FSS confirming that "Alex E. Jones, has delegated to W. Marc Schwartz…those managerial duties ¶ 8.01 of Free Speech Systems, LLC's Company Agreement to act as its Chief Restructuring Officer." FSS Docket No. 83-2.[2] During the InfoW Cases, Schwartz never disclosed his connections to FSS, and he failed to amend or supplement his declaration in the InfoW Cases, in which he affirmatively stated that he had no connections to FSS (the "InfoW Schwartz Declaration"). The connections to FSS were only discovered in this case.

2.   The defective disclosures in the InfoW Schwartz Declaration, while filed in a previous case, are not minor matters to ignore.  The Court should address the issue in this case, which is, in many ways, a continuation of the previous cases. Section 327(a) of the Bankruptcy Code provides the Court with broad discretion to consider prior acts of the applicant to determine whether to approve an employment application.  Moreover, the disclosure mandate in Bankruptcy Rule 2014 is clear—professionals must disclose all connections and may not unilaterally determine which connections impact their disinterestedness. Schwartz did not comply with this mandate. Schwartz's conduct in the InfoW Cases involved related debtors and almost the identical parties in interest. Schwartz was employed by FSS while the InfoW Debtors, under his authorization and approval, filed pleadings and made statements to the Court in the InfoW Cases that indicated that all InfoW estate professionals, including the CRO, were independent and without outside influences. Schwartz should not be exempt from the consequences of his nondisclosure because the InfoW

___

[2] The references to the "FSS Docket" refer to Case No. 22-60043, filed in the Southern District of Texas.

003215

Cases were dismissed; especially when Schwartz is now seeking approval from this Court to be employed by FSS – the very connection that Schwartz previously concealed from the Court.

3.   This is an unusual scenario.  The Court never had the opportunity to rule on Schwartz's application in the InfoW Cases. Because the InfoW Cases are now closed, it is appropriate for the Court in this case to exercise its broad discretion under Section 327 to consider the nondisclosures in the related InfoW Cases to determine whether to approve the Schwartz's Application. To protect the integrity of the bankruptcy system, the Court should refuse to overlook the disclosure failures in the InfoW Cases and as a result, should deny the Schwartz Application in the present case.

4.   Separately, the Sandy Hook Plaintiffs have raised various allegations in their Motion to (I) Appoint Tort Claimants Committee and (II) Remove the Debtor in Possession, and if proven true, would be additional grounds to deny the Schwartz Application. Alternatively, if the Court is not inclined to deny the Schwartz Application for the reasons stated in the Objection, the U.S. Trustee requests that the ruling on the Schwartz Application be deferred until the hearing on the removal of the debtor-in-possession.

## **FACTUAL BACKGROUND**

### **A.  General Information**

5.   On July 29, 2022, FSS filed a chapter 11 voluntary petition and elected to proceed under Subchapter V of chapter 11 on its petition.

6.   On August 2, 2022, the U.S. Trustee appointed Melissa Haselden as the FSS' Subchapter V Trustee in the present case.

7.   No committee has been appointed. Unless the Court determines there is cause for the appointment of a creditors' committee and orders the appointment of one, the U.S. Trustee is prohibited from soliciting and appointing a committee in a subchapter V case. 11 U.S.C. §

003216

1102(a)(3).

**B. The InfoW Debtors create a structure to negotiate opposite FSS and Jones and file their bankruptcy cases.**

8.   On April 17, 2022, and April 18, 2022, the InfoW Debtors filed chapter 11 voluntary petitions and elected to proceed under Subchapter V of chapter 11 on their respective petitions.[3] The InfoW Debtors, like FSS, were all 100% owned by Alex Jones before the filing of the cases. InfoW Docket No. 6 at ¶¶ 6.

9.   On April 18, 2022, the U.S. Trustee appointed Melissa Haselden as the InfoW Debtors' Subchapter V Trustee.

10. Before the filing of the InfoW Cases, in 2018, certain plaintiffs brought actions in Texas and Connecticut against Jones, FSS, and the InfoW Debtors relating to statements made by Jones and other employees of FSS stating, among other things, that the Sandy Hook school shootings were a hoax (such plaintiffs are referred to herein as the "Sandy Hook Plaintiffs" and individually as the "Connecticut Plaintiffs" and "Texas Plaintiffs").

11. In 2022, Jones, FSS, and the InfoW Debtors sought to limit their liability to the Sandy Hook Plaintiffs' defamation claims through the creation of the Litigation Settlement Trust (the "LST") and the Plan Support Agreement (the "PSA). Three days prior to the filing of the InfoW Cases, the InfoW Debtors, Jones, and FSS entered into the LST, with Jones and FSS agreeing to fund $725,000 into the LST to pay the administrative expenses of the InfoW Cases. The LST was designed to remove control of the equity of the InfoW Debtors from Jones and give it to a trust held by trustees.  According to the InfoW Debtors, "[t]his provides a clean break between the [InfoW]Debtors' former management and allows the funding of a proposed plan to be negotiated

---

[3] InfoW, LLC filed just shortly before midnight on April 17, 2022, while IWHealth, LLC and Prison Planet TV, LLC's petitions were docketed shortly after midnight on April 18, 2022.

003217

at arm's length between the Debtors, FSS, and Jones."  InfoW Docket No. 6 at ¶¶ 18.

12. Simultaneously with the creation of the LST, the InfoW Debtors entered into the PSA with Jones and FSS that dictated a roadmap for the InfoW Cases. FSS and Jones would be the funders of the plan because the InfoW Debtors had little or no assets. InfoW Docket No. 6 at 7. As part of the roadmap, the InfoW Debtors sought to retain Schwartz as the chief restructuring officer for the InfoW Debtors. InfoW Docket No. 6-2.

13. On April 18, 2022, the InfoW Debtors filed an emergency application to employ Schwartz as the CRO. The application was accompanied by the InfoW Schwartz Declaration as required by Bankruptcy Rule 2014.

14. The InfoW Schwartz Declaration provided that:

> SALLC performed the following actions to determine whether it or any of its professionals has any disclosable connections to the Debtors, creditors, any other party in interest, their attorneys, and accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any of the judges for the U.S. Bankruptcy Court for the Southern District of Texas:
>
> …(b) Second, SALLC staff conducted a computerized search of all clients of SALLC using the list of parties in interest listed in Schedule I hereto.
>
> … I personally reviewed the list of parties in interest listed in Schedule I hereto. I do not have any connections with the searched parties other than (a) I have worked with certain of the professionals on matters unrelated to the Debtor and (b) I have worked on matters before the U.S. Bankruptcy Court for the Southern District of Texas unrelated to the Debtors.

InfoW Docket No. 7-1, ¶ 4.

15. Schedule I attached to the InfoW Schwartz Declaration included "Free Speech Systems, LLC" and "Alex Jones" as "Searched Parties." InfoW Docket No. 7-3.

16. On April 27, 2022, the Connecticut Plaintiffs filed a motion to dismiss the InfoW Cases. InfoW Docket No. 36. On that same day, the Texas Plaintiffs joined the motion to dismiss and filed their supplemental motion to dismiss. InfoW Docket No. 42.

003218

17. On April 29, 2022, the U.S. Trustee filed his motion to dismiss. InfoW Docket No. 50. The U.S. Trustee alleged, among other reasons, that the InfoW Cases were filed in bad faith and were engineered for the purpose of shielding Jones and FSS from liability. *Id*. at ¶ 36.

18. A status conference was held on April 29, 2022. At the status conference, the Court scheduled an evidentiary hearing for all three motions to dismiss for May 27, 2022.

19. On May 13, 2022, the Connecticut Plaintiffs filed a notice of dismissal with prejudice of claims against the InfoW Debtors in the United States Bankruptcy Court for the District of Connecticut. A status conference was scheduled for May 24, 2022, for the Connecticut Court to consider the Connecticut Plaintiffs' dismissal of the InfoW Debtors from the defamation lawsuits. InfoW Docket No. 98.

20. On May 19, 2022, the Texas Plaintiffs agreed to dismiss their claims against the InfoW Debtors in the defamation lawsuits filed in state court. The Court entered the "Stipulation and Order" which memorialized this agreement between the Texas Plaintiffs and the InfoW Debtors. InfoW Docket No. 99.

**C. Schwartz and Attorney Lee begin to represent FSS in addition to the InfoW Debtors but do not inform the Court.**

21. On May 18, 2022, the InfoW Debtors, through Kyung Lee ("Attorney Lee"), filed an Emergency Motion to Continue Hearing Date on Motion to Dismiss (the "Emergency Continuance Motion"). In the continuance request, the InfoW Debtors represented that:

> Continuing the Original Hearing Date until June will also permit the CRO who has been engulfed in evaluating the dismissals with prejudice issues to now focus on the remaining creditors of the Debtors. The CRO will be able to evaluate either before or by the June hearing date whether he should proceed with trying to confirm a subchapter v plan of reorganization or handle these claims outside of bankruptcy. Again, such effort will be [sic] wise use of limited financial resources. Such an approach will also save valuable judicial resources.

InfoW Docket No. 95, at ¶ 21.

6

22. On May 19, 2022, the Court conducted a hearing on the Emergency Continuance Motion. At the hearing, the Connecticut Plaintiffs and Texas Plaintiffs announced that they were proceeding with their dismissal with prejudice of the InfoW Debtors as defendants in both the Texas and Connecticut defamation lawsuits.

23. In consideration of parties working to finalize the state court dismissals with prejudice, Attorney Lee requested additional time to respond to the U.S. Trustee's motion to dismiss the InfoW Cases. Among the bases for the continuance was that the CRO needed additional time to fulfill his fiduciary duties to the other creditors and Attorney Lee stated that "the other part that I have to do is renegotiate the plan support agreement if the debtors intended to move forward with respect to a small subchapter v plan." Tr. May 19, 2022, at 16, 21-24.

24. Based on the representations made by Attorney Lee, the Court reset the evidentiary hearing for June 10, 2022. Towards the conclusion of the status hearing, Attorney Lee assured the Court of Schwartz's commitment to the InfoW Debtors and stated the following:

> MR. LEE: I do want you to know that Mr. Schwartz in his fiduciary capacity is evaluating all alternatives.
>
> THE COURT: Oh, I'm sure he is.
>
> MR. LEE: I just want you to know that.

Tr. May 19, 2022, at 23, 13-16.

25. Despite those representations, according to Schwartz, sometime on that same day, May 19, 2022, Attorney Lee asked Schwartz to send an engagement letter to FSS outlining his retention as the CRO for FSS. Schwartz prepared an engagement letter that day and it was sent via e-mail to Ray Battaglia, counsel for FSS. FSS Docket No. 14-4.

26. On May 26, 2022, Attorney Lee appeared on behalf of the InfoW Debtors at the Section

7

341 Meeting. Due to a conflict, Schwartz did not attend the 341 Meeting. The U.S. Trustee continued the creditors' meeting for one week, to June 2, 2022. As of May 26, 2022, there was no agreement between the U.S. Trustee and the InfoW Debtors to dismiss the InfoW Cases.

27. On June 1, 2022, the U.S. Trustee and the InfoW Debtors finalized a stipulated dismissal order. The stipulated dismissal order was submitted later that day.

28. On June 2, 2022, the InfoW Debtors, through Attorney Lee, filed a response to the U.S. Trustee's motion to dismiss. The InfoW Debtors asserted that, as of June 2, 2022, the InfoW Cases still served valid bankruptcy purposes, despite their agreement with the U.S. Trustee to dismissal just a day before. At the time of the response, both Attorney Lee and Schwartz were providing services to FSS, but the InfoW Debtors stated that the CRO was "independent" and "the duty of the Debtors and their professionals as estate fiduciaries is clear and unwavering." InfoW Docket No. 112 at ¶¶ 6-7. The response did not mention any relationship between FSS and Schwartz or between Lee and FSS.

29. On June 10, 2022, the Court held a hearing on the motion to dismiss and allowed all parties to provide any comments. Neither Schwartz nor Lee, who both addressed the Court that day, informed the Court of their connections to FSS. The Court then entered the stipulated order dismissing the InfoW cases. InfoW Docket No. 114.

**D.  During the FSS case, the Court and parties learn about Schwartz's and Lee's representation of FSS during the InfoW cases.**

30. On July 26, 2022, the damages phase of the defamation lawsuit against FSS and Jones began in Austin, Texas. On July 29, 2022, at the conclusion of the first week of trial in Austin, FSS filed for bankruptcy protection.

31. On that same day, Schwartz filed a Declaration with the Court in support of the first day motions. Docket No. 10. In that Declaration, Schwartz informed the Court for the first time that

003221

"[o]n June 7, 2022, the Debtor confirmed my retention as the Debtor's Chief Restructuring Officer (the "CRO") and SALLC as its financial advisors as of May 19, 2022. *Id.* at ¶ 9. Schwartz also declared, "Since May 19, 2022, FSS has retained Schwartz as its Chief Restructuring Officer ("CRO"), with broad powers to review the company's past financial performance, analyze the condition of FSS's books and records and evaluate whether FSS is a business that can be reorganized." *Id.* at ¶ 40. SALLC was retained to perform various accounting and forensic work associated with his mandate.

32. On August 1, 2022, at the consent of FSS and the Texas Plaintiffs, the Court entered an order lifting the automatic stay and allowing the trial in Austin to proceed to judgment. Further, at this hearing, the Court expressed concerns about transparency in the bankruptcy process, specifically the May 19th engagement between Schwartz and FSS while the InfoW Cases were pending. The Court asked the following:

> I need to understand as well, on May 19th, you were representing three debtors who are on the opposite side of a proposed plan support agreement. We never took action but you were also seeking retention from Free Speech at the same time? I don't think I ever knew about that.

33. On August 3, 2022, the Court conducted a cash collateral hearing (the "August 3rd hearing"). At the hearing, Schwartz, who was now acting as the CRO for FSS, testified for several hours. Again, a point of concern raised by the Court was the nondisclosure of connections between the estate professionals[4] in the InfoW Cases and FSS and Jones. The Court asked the following:

> Let me get the question – I might as well ask it now because it's a good spot...I just need to understand it. On May 19th, there was a hearing before me where on May 18th, there was a request for a continuation on a motion to dismiss…and in this case, there is a letter dated by you to Free Speech dated the same day. I may

---

[4] During CRO Schwartz's testimony, the Court indicated that it had concerns regarding Attorney Lee's retention by FSS as well: "I [ask] Mr. Lee a few questions as well at some point, but I'll need to understand that as well, but today's not that day. Today's cash collateral, and so I do want – and I know I took this off on a tangent." Tr. August 3, 2022, at 150, 9-11.

be reading much into this, but it seems to me that you – either you wrote the letter that day or you had been in conversation with Free Speech before you wrote that – before that day you sent the letter. And I just need to understand – none of this was ever disclosed to me in connection with the case and the cases were dismissed on June the 10th officially, which tells me that Mr. Jones signed a retention letter. So, you were actively retained before these cases were dismissed – the last cases were dismissed – and I just need to understand, one, why that was never disclosed to me, and two, when did you begin to start soliciting or having conversations about representing Free Speech Systems…

Tr. August 3, 2022, at 147-148, 21:19.

In response to the Court's questions, Schwartz stated that he could not recall the date but assured the Court that conversations concerning the FSS engagement only occurred "after we had been substantially convinced that we were going to be terminating the InfoWars bankruptcy." Tr. August 3, 2022, at 149, 4-8.

34. After listening to several hours of testimony at the August 3rd Hearing and upon the Sandy Hook Families' oral request for the formation of a tort claimant committee, the Court stated the following:

[T]here's been oral request for the appointment of a committee, and that can be done by the Court for cause. I'm not going to grant that today, but I am going to express some real concerns about what I heard, and I'll express what they are. You know, whether you realize it or not, Mr. Schwartz was negotiating on both sides of a deal.

Tr. August 3, 2022, at 239, 9:17.

35. Based on the testimony at the August 3rd Hearing, the Court further questioned the independence of Attorney Lee and Schwartz at the outset of the present case as it relates to potential claims against Jones and other insiders:

[T]he Debtor is going to have to make some tough decisions at some point. And it's going to have to really analyze those claims and see whether those claims have any merit…[and] I'm not sure that parties who were introduced in the last case could fill that role either. But the Debtor needs to hear that from me, and I think debtors are entitled, especially early on in a case, to think about what the judge may have to say. And these are certainly rare comments, but these are

10

003223

certainly uncommon cases.

Tr. August 3, 2022, at 241, 5-19.

36. On August 20, 2022, FSS filed applications to employ Schwartz (the "FSS Schwartz Declaration") as the Debtor's CRO and Shannon and Lee LLP ("S & L") as co-counsel.

37. In the Schwartz Application, FSS asserted that "the CRO and SALLC's mandate to 'lead InfoW's management and personnel through the restructuring process' had for all practical purposes concluded by May 19, and for sure by June 6." FSS Docket No. 83, ¶ 44.

38. On August 25, 2022, the Sandy Hook Families filed a motion to request the appointment of a tort claimants committee and to remove the debtor-in-possession. The Sandy Hook Families alleged, among other reasons, that Schwartz mismanaged the estate resources for Alex Jones' benefit and failed to disclose his connections to FSS while acting as the CRO for the InfoW Debtors. FSS Docket No. 102.

## OBJECTION

39. The Schwartz Application should be denied due to Schwartz's omissions of his connections to FSS and Jones in the related InfoW Cases. The disclosure process is self-policed by the professionals that appear before the Court, and when a disclosure violation occurs, it should be met with a strong rebuke. While this is an unusual scenario in that Schwartz's application in the InfoW Cases was never heard and the InfoW Cases are now closed, the current case is related to the prior cases and includes substantially all the same players.   To effectuate the disclosure mandates in Bankruptcy Rule 2014 and to address the prior nondisclosure, the Court should exercise its broad discretion under Section 327 to consider Schwartz's prior acts in violation of the disclosure obligations and to deny the Schwartz Application in this related case.

**A. The Court has Broad Discretion under 11 U.S.C. § 327(a) in Deciding Whether to Approve an Application to Employ an Estate Professional.**

11

40. The Bankruptcy Code provides a uniform scheme for retaining and compensating court-authorized attorneys under 11 U.S.C. §§ 327-331, 503, and 507. Section 327 provides that the debtor-in-possession may employ, with the Court's approval, professionals who are disinterested and who do not hold or represent interest adverse to the estate. 11 U.S.C. §§ 327.[5] In addition, the applicants must also comply with Bankruptcy Rule 2014(a). *See In re Bechuck*, 472 B.R. 371, 375 (Bankr. S.D. Tex. 2012).

41. Section 327(a) of the Bankruptcy Code provides the Court with a wide latitude of discretion when professionals are seeking to work on behalf the bankruptcy estates. The statutory language of section 327(a) shows that Congress intended the bankruptcy court to have broad discretion in making its determination, as it provides that "the trustee [or debtor in possession, under 11 U.S.C. § 1107], with the court's approval *may* employ one or more [professionals]." [emphasis added]. Congress could not have more clearly stated that (i) no professionals, on any terms, can be employed without prior court authorization, and (ii) the court has broad discretion in deciding whether to approve or disapprove an employment application, and is not required to accept the proposed professional's application. The court may – or may not, in its sound discretion – approve a proposed employment application. *Cf. United States v. Rodgers,* 461 U.S. 677, 706 (1983) ("the word 'may,' when used in a statute, usually implies some degree of discretion").

---

[5] The term "disinterested person" means a person that (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor." 11 U.S.C. § 101(14). The term "insider" includes, among others, (1) director of the debtor; (2) officer of the director; and (3) person in control of the debtor. 11 U.S.C. §§ 101(31)(B)(i)-(iii). The term "insider" also includes "affiliate, or insider of an affiliate as if such affiliate were the debtor." 11 U.S.C. § 101(31)(E). Under these definitions, Schwartz may not be qualified as a disinterested person and the Schwartz Application should be denied if Schwartz is an insider pursuant to Section 101(31)(E), as well as those other reasons articulated in the Objection. Schwartz acted as the CRO for the InfoW Debtors and was in control of those debtors during the pendency of the InfoW Cases. The InfoW Debtors are arguably affiliates of FSS, and under Sections 101(31)(E) and 101(14), Schwartz may not be disinterested for purposes of Section 327.

003225

42. Many decisions hold that bankruptcy courts have broad discretion in deciding whether to approve an application to employ an estate professional under section 327(a). *See, e.g.*, *In re Jackson*, 484 B.R. 141, 154 (Bankr. S.D. Tex. 2012) *citing Arnes v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995); *In re Bigler, LP*, 422 B.R. 638, 643 (Bankr. S.D. Tex. 2010) ("This Court has substantial discretion to grant an application to employ a professional for the estate."); *Miller v. United States Trustee*, 197 F.3d 13, 17 (1st Cir. 1999) ("Bankruptcy courts historically have been accorded wide discretion to oversee the terms and conditions of a debtor's engagement of professionals[.]"); *Interwest Bus. Equip. v. United States Trustee*, 23 F.3d 311, 315 (10th Cir.)("[W]e will not second guess a decision not to approve professionals under § 327 unless it exhibits a clear abuse of discretion[.]"); *Harold & Williams Dev. Co.*, 977 F.2d 906, 909(4th Cir. 1992) (the Bankruptcy Code "gives broad discretion to the bankruptcy court over the appointment of professionals to work on behalf of the . . . estate"); In re *Martin*, 817 F.2d 175, 182 (1st Cir. 1987) ("Historically, bankruptcy courts have been accorded wide discretion in connection with fact-intensive matters, and in regard to the terms and conditions of the engagement of professionals."); *Elias v. Lisowski Law Firm (In re Elias)*, 215 B.R. 600, 603 (B.A.P. 9th 1997) ("A bankruptcy court's decision regarding an application for the employment of a professional is reviewed for abuse of discretion.").

43. The Court is not required to approve an application that satisfies the requirements of Section 327(a). "Even if the technical requirements of disinterestedness and not holding or representing an interest adverse to the estate are met, the Court has the discretion to deny the application." *In re LTHM Houston-Operations*, LLC, 2014 WL 5449737, at *5 (Bankr. S.D. Tex. 2014). Additionally, "while disinterestedness and the absence of conflicts may be central to the inquiry, they are by no means exclusive. Indeed, section 327(a) vests the authority for 'approval'

003226

within the sound discretion of the court. That authority would be eviscerated were the Court required to approve counsel who met the technical test for disinterest but was ill-suited for other reasons…" *In re Kurtzman,* 220 B.R. 538, 542 (S.D.N.Y. 1998).

44. In the exercise of its discretion under Section 327, the Court is instructed "into taking account the facts of a particular bankruptcy case and the overall objectives of the bankruptcy system." *LTHM Houston-Operations, at \*5; see also Official Comm. of Unsecured Creditors v. Harris* (*In re Southwest Food Distribs., LLC*), 561 F.3d 1106, 1112-13 (10th Cir. 2009) (bankruptcy court does not err in considering proposed compensation terms when ruling on employment application); *Harold & Williams Dev. Co.*, 977 F.2d at 910 (bankruptcy court must not "abdicate the equitable discretion granted to it," but must "take into account the facts of a particular case and the overall objectives of the bankruptcy system")*; In re Kurtzman*, 220 B.R. 538, 540 (S.D.N.Y. 1998) (finding that the bankruptcy court did not abuse its discretion when it denied the retention of counsel based on "prior problems involving time records, billing errors, professional conduct, and overall costs of legal services that had led to its conclusion of loss of confidence in the firm") Here, the requirements that professionals lay bare their connections play an integral part of the Court's function to determine a proposed professional's fitness to represent the bankruptcy estate. "Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts." *In re Downs*, 103 F.3d. 472, 480 (6th Cir. 1996). Bankruptcy courts must be able to expect the proposed professional appointed under 327 to disclose all connections and follow the applicable rules concerning disclosure. "Plainly, the Court will not approve the employment of counsel that does not comport with the applicable ethical and disciplinary regulations." *In re Doors & More Inc.*, 126 B.R. 43, 45 (Bankr. E.D. Mich. 1991).

**B. As Part of Their Duty to the Court and the Estate, Professionals Have a Continuing Duty to Disclose All Connections with Creditors and Parties in Interest.**

45. Bankruptcy Rule 2014 imposes a complementary duty of disclosure on the applicant so that the Court and parties in interest can determine whether the professional satisfies Section 327's disinterestedness requirements. Rule 2014 has one primary purpose – to facilitate strict compliance with Section 327. "[T]he requirements of Fed. R. Bankr. P. 2014 are more encompassing than those governing disinterestedness inquiry under section 327. For while retention under section 327 is only limited by interests that are 'materially adverse,' under Rule 2014, 'all connections' that are not so remote as to be *de minimis* must be disclosed." *In re Leslie Fay Companies, Inc*., 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994).

46. The applicant has the duty to disclose all relevant information to the court and "may not exercise any discretion to withhold information." *In re Woodcraft Studios, Inc*., 464 B.R. 1, 8 (N.D. Cal. 2011). Thus, "professionals 'cannot pick or choose which connections are irrelevant or trivial.'" *U.S. v. Gallene*, 182 F.3d 578, 588 (7th Cir. 1999) (concluding that a misstatement in a Rule 2014 statement constitutes a material misstatement for purposes of 18 U.S.C. § 152). The duty to disclose under Bankruptcy Rule 2014 is ongoing, continues throughout the case, and "requires 'spontaneous, timely, and complete disclosure.'" *In re The Harris Agency*, 462 B.R. 514, 524 (E.D. Pa. 2011); *see also In re Granite Partners, L.P., 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998)* (court should not have to "rummage through files or conduct independent fact-finding investigations" to determine whether the professional should be disqualified).

47. Applicants "who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 465 (5th Cir. 2012) (citations omitted). "[L]ack of disclosure in and of itself is sufficient to warrant disqualification, even if in the end

15

there was no prejudice." *In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 664 (Bankr. N.D. Ill. 2001); *see also In re Rabex Amuru of N.C., Inc.*, 198 B.R. 892, 897 (Bankr.M.D.N.C.1996) (attorneys for debtor removed because of appearance of impropriety, even though no harm done to debtor). Professionals must "be meticulous in disclosing 'all connections' with the debtor and other parties in interest, the failure to do so justifying a court's taking significant punitive or corrective action." *In re Byington*, 454 B.R. 648, 657 (Bankr. W.D. Va. 2011); *see also In re EBW Laser Inc.*, 333 B.R. 351, 359 (Bankr. M.D.N.C. 2005) ("The Bankruptcy Court may, in its discretion, disqualify counsel, or deny compensation, as a sanction for failure to make the disclosure required.").

## C. In Exercising Its Broad Discretion, the Court Should Deny Schwartz's Application Because of His Failure to Affirmatively and Timely Disclose His Connections with FSS.

48. The defective disclosure in the InfoW Schwartz Declaration, which was a statement under penalty of perjury before the Court, is not a minor matter. It "goes to the heart of the integrity of the bankruptcy system." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005). "[T]he duty to disclose under Bankruptcy Rule 2014 is considered sacrosanct because the complete and candid disclosure by an attorney seeking employment is indispensable to the court's discharge of its duty to assure the attorney's eligibility for employment under section 327(a) and to make an informed decision on whether the engagement is in the best interest of the estate." *Id.* As noted, Rule 2014 "is not intended to condone a game of cat and mouse where the professional seeking appointment provides only enough disclosure to whet the appetite of the UST, the court, and other parties in interest, and the burden shifts to those entities to make inquiry in an effort to expand the disclosure." *In re Matco Elec. Group, Inc.*, 383 B.R. 848, 853-54 (Bankr. N.D.N.Y. 2008).

49. Additionally, the parties that retained Schwartz as the CRO played significant parts in the

InfoW Cases and were on opposite sides of each other. Under the PSA and LST in the InfoW Cases, Jones and FSS were designated as the "Third Party Funders." The question regarding the validity of the PSA and LST, and the negotiations surrounding the origination of these documents, were contested issues at the center of the InfoW Cases. Unlike other plan support agreements in other chapter 11 cases, no creditors, including the Sandy Hook Plaintiffs, participated in the drafting or negotiations of the PSA and LST. The primary parties to those negotiations were the InfoW Debtors, FSS, and Jones. FSS was on the other side of the transaction from the InfoW Debtors. Schwartz acted as the CRO for the InfoW Debtors, and after May 19, 2022, was also the CRO for FSS, of which he was ultimately hired by Jones to serve those roles. Even Schwartz acknowledged that the questions of control, independence, and loyalty were key concerns in the InfoW Cases, stating: "Concerns were expressed at the inception of the InfoW Debtors' bankruptcy case whether I would be serving Alex Jones or the creditors of InfoW Debtors." FSS Docket No. 83-3, ¶ 27. Schwartz did not disclose his connections to FSS or Jones during the InfoW Cases. Bankruptcy Rule 2014 required that Schwartz discloses any and all connections to these parties or any subsequent connections that developed during the InfoW Cases. Schwartz had a duty to inform the Court of his connections to FSS and Jones, while acting as the CRO for the InfoW Debtors.

50. Even after the InfoW Debtors reached agreements with the Sandy Hook Plaintiffs, the InfoW Debtors, taking their directions from Schwartz, did not agree to dismiss the InfoW Cases until June 1, 2022. Attorney Lee informed the Court on May 19, 2022, that he might have to renegotiate the PSA with FSS and Jones to pay the remaining creditors should the InfoW Debtors remain in bankruptcy. In effect, Schwartz would be negotiating on one side as the CRO for the InfoW Debtors and on the other side, as the CRO for FSS. As the Court correctly recognized,

17

Schwartz was on both sides of the deal. Tr. August 3, 2022, at 239, 9:17.

51. Moreover, Schwartz had multiple opportunities to disclose to the Court his connections to FSS and Jones. Although Schwartz was engaged as CRO for FSS, the InfoW Debtors filed a response to the U.S. Trustee's motion to dismiss, maintaining that "the duty of the Debtors and their professionals as estate fiduciaries is clear and unwavering." FSS Docket No. 112, ¶ 7. The response is silent concerning the fact that just days before, Attorney Lee asked Schwartz to send an engagement letter to FSS outlining his retention as the CRO for FSS, which Schwartz prepared and sent via e-mail to Ray Battaglia, counsel for FSS. Following the response on June 2, the Court conducted a hearing on the stipulation to dismiss in the InfoW Cases on June 10, 2022. Neither the CRO nor Attorney Lee, who both addressed the Court that day, informed the Court of their connections to FSS. By remaining silent, whether in pleadings, at hearings, or by failing to amend the Schwartz Declaration, Schwartz misrepresented his connections to the Court.

52. The Court should also reject Schwartz's attempt to excuse his noncompliance with the disclosure requirements. In the Schwartz Application, Schwartz states that "[for] all practical purposes, my mandate to reorganize the [InfoW Debtors] had concluded" as of May 19, 2022. This statement ignores the InfoW Debtors' own assertions in the Emergency Continuance Motion, filed on May 18, 2022, that Schwartz required more time to fulfill his duties to the creditors. Even if the statement was accurate, it did not absolve Schwartz of his disclosure obligations under Bankruptcy Rule 2014. "The professional must disclose all facts that bear on his disinterestedness and cannot usurp the court's function by unilaterally choosing which connections impact his disinterestedness…" *Keller Fin. Servs.* 248 B.R. 859, 897 (Bankr. M.D. Fla 2000). Here, it was not for Schwartz to pick and choose which connections were material requiring disclosure and which connections were so remotely *de minimis* that they can be ignored. Bankruptcy Rule 2014

003231

required that Schwartz lay bare all of his connections, whether or not he believed them to be material, and to allow the Court to serve its function in determining Schwartz's fitness to represent the estate. Schwartz failed to do so here.

53. Additionally, Schwartz's contention that he was not required to supplement the stale information on the InfoW Schwartz Declaration is without merit and not supported by the case law on continuing disclosures in bankruptcy.[6] Bankruptcy Rule 2014 does not limit disclosures exclusively at the timing of the filing of the application. Rather, Rule 2014 requires the professional to put forth information to the best of the applicant's knowledge and should the applicant's knowledge change during the application period, the applicant is required to supplement. "Although this provision does not explicitly require ongoing disclosure case law has uniformly held that under Rule 2014(a)(1), full disclosure is a *continuing responsibility*, and (2) [the professional] is under a duty to promptly notify the court if any potential for conflict arises." *In re W. Delta Oil Co., Inc.*, 432 F.3d 347, 355 (5th Cir. 2005) (emphasis added). "Thus, any professional who seeks to be employed by a bankruptcy estate assumes an affirmative duty to disclose all connections with parties in interest, and to reveal any interest which may be antagonistic or opposite of the interest of the estate. Such duty continues to exist throughout the

---

[6] Q. In your experience as a bankruptcy professional, do you think there's a continuing obligation for professionals that appear before the court to supplement their disclosures and tell the court of any connections that occurred during the case?

A. Yeah. The appointment orders require that.

Q. And that didn't happen in the InfoW Cases, correct?

A. Correct. There was no appointment.

Q. But you still had a verified statement that was filed with the Court, and you didn't supplement that verified statement?

A. No, I didn't – I was never appointed.

003232

pendency of the employment." *In re C & C Demo, Inc.*, 273 B.R. 502, 506 (Bankr. E.D. Tex. 2001). Here, Schwartz failed to supplement the InfoW Schwartz Declaration with new information regarding his connections to FSS. Schwartz's failure to inform the Court, U.S. Trustee, and the creditors of his connections during the InfoW Cases was inexcusable and any claim otherwise should be rejected. "Continuing disclosure is necessary to preserve the integrity of the bankruptcy system by ensuring that the trustee's professionals remain conflict free." *In re Granite Partners, L.P.*, 219 B.R. at 35.

54. While noncompliance with Bankruptcy Rule 2014 may result in disqualification and/or total disgorgement of fees, Schwartz's transgressions in the InfoW Cases eclipsed the confines of Bankruptcy 2014 because those cases are now dismissed. Bankruptcy Rule 2014 alone is not sufficient to address Schwartz's nondisclosure of his connections to FSS in the InfoW Cases. However, the integrity of the bankruptcy system requires that the Court address Schwartz's omissions of his connections to FSS and Jones in the InfoW Schwartz Declaration. Here, it is appropriate for the Court to exercise its broad discretion under Section 327(a) to address Schwartz's prior acts in the related cases—which this case is, in many ways, a continuation of— and deny the Schwartz Application. Put simply, Schwartz did not inform the Court of his connections to FSS in a related case, involving many of the same parties. When FSS was represented to be on the opposite side of negotiations with the InfoW Debtors, Schwartz was employed by FSS while pleadings filed and statements made to the Court at the time indicated that all estate professionals, including himself and Attorney Lee, were independent and without outside influences. Schwartz should not be exempt from the consequences of his prior acts because the InfoW Cases were dismissed; especially when Schwartz is now seeking approval from this Court to be employed by FSS—thereby asking the Court to bless the very connection that Schwartz

20

previously concealed from the Court. To maintain the integrity of the bankruptcy system and to fully effectuate the mandatory disclosure requirements in Rule 2014, the Court should deny the Schwartz Application.

## CONCLUSION

**Wherefore,** the U.S. Trustee respectfully requests that the Court deny the Schwartz Application and grant such other relief as is just and proper. In the alternative to the relief requested herein, the U.S. Trustee requests that the Court defer ruling on the Schwartz Application and consider all facts related to Schwartz's employment with the Sandy Hook Plaintiffs' request to remove the debtor-in-possession at the same time.

> RESPECTFULLY SUBMITTED:
> KEVIN M. EPSTEIN
> UNITED STATES TRUSTEE

DATED: 9/12/2022

> */s/ HA M NGUYEN*
> Ha Nguyen, Trial Attorney
> CA Bar #305411
> FED ID NO. 3623593
> United States Department of Justice
> Office of the United States Trustee
> 515 Rusk Street, Suite 3516
> Houston, Texas 77002
> E-mail: Ha.Nguyen@usdoj.gov
> Cell: 202-590-7962

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission to all Pacer System participants in these bankruptcy cases, on the 12th day of September, 2022.

> /s/ Ha M. Nguyen
> Ha M. Nguyen

003234

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 22-60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | **CHAPTER 11** |
| | § | |
| **DEBTOR** | § | |

**UNITED STATES TRUSTEE'S OBJECTION TO THE APPLICATION OF DEBTOR
FOR AN ORDER (A) AUTHORIZING THE EMPLOYMENT OF SHANNON & LEE
LLP AS BANKRUPTCY CO-COUNSEL FOR THE DEBTOR AND (B) GRANTING
RELATED RELIEF**

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), by and through his undersigned counsel, hereby submits his objection (the "Objection") to the Debtor's Application for an Order (A) Authorizing Employment of Shannon & Lee LLP as Bankruptcy Co-Counsel for the Debtor and (B) Granting Related Relief (the "S & L Application"). In support of his Objection to the S & L Application, the U.S. Trustee states to the Court as follows:

**INTRODUCTION**

1.   The U.S. Trustee objects to the S & L Application because Shannon & Lee LLP ("S & L"), through attorney Kyung Lee ("Attorney Lee"), failed to disclose its connections to Free Speech Systems, LLC ("FSS" or the "Debtor") in the bankruptcy cases of InfoW, LLC, IWHealth, LLC and Prison Planet TV, LLC (collectively referred to as the "InfoW Debtors" or the "InfoW Cases").[1] In the InfoW Cases, the InfoW Debtors represented to the Court and parties that they would negotiate at arm's length with FSS and Alex Jones ("Jones"), the proposed third-party funders and counterparties to the negotiations.  On May 19, 2022, S & L filed an application in the

---

[1] References to the InfoW Cases refer to Case Nos. 22-60020, 22-60021, and 22-60022 filed in the Southern District of Texas. The cite to "InfoW Docket" refers to Case No. 22-60020.

003235

InfoW Cases whereby it sought to be employed as bankruptcy counsel for the InfoW Debtors. Attached to the application was a declaration by Attorney Lee, affirmatively stating that S & L had no connections to FSS and Jones (the "InfoW Lee Declaration"). Shortly after filing the application, however, S & L began providing legal services to FSS, while contemporaneously representing the InfoW Debtors.

2.  S & L never amended or supplemented the InfoW Lee Declaration after its attorney was retained by FSS and did not otherwise inform the Court, creditors, and U.S. Trustee of its connections during the InfoW Cases as required by Bankruptcy Rule 2014. The connections to FSS and Jones were only recently discovered in this case, after the Court conducted its own inquiry and questioned the professionals at the "First Day Hearing" on August 1, 2022. In addition to the violations under Bankruptcy Rule 2014, the lack of full disclosure in the InfoW Lee Declaration also violated the Southern District of Texas' Guidelines for Professional Conduct. All practicing attorneys in this district "[owe] to the judiciary, candor, diligence, and the utmost respect." *See* S.D. Tex. Local R., Appendix D. Guidelines for Professional Conduct.

3.  The defective disclosures in the InfoW Lee Declaration, while filed in a previous case, are not minor matters to ignore. The Court should address the issue in this case, which is, in many ways, a continuation of the previous cases. Section 327(a) of the Bankruptcy Code provides the Court with broad discretion to consider prior acts of the applicant to determine whether to approve an employment application. The Court should consider S & L's nondisclosure in order to effectuate the disclosure obligations required by Bankruptcy Rule 2014.  S & L's conduct in the InfoW Cases involved related debtors and almost the identical parties in interest. Moreover, Attorney Lee was employed by FSS while he filed pleadings and made statements to the Court in the InfoW Cases that indicated that all InfoW estate professionals including Attorney Lee were independent and

003236

without outside influences. S & L should not be exempt from the consequences of its omissions because the InfoW Cases were dismissed; especially when S & L is now seeking approval from this Court to be employed by FSS—the very connection that S & L previously concealed from the Court. The disclosure procedures in Bankruptcy Rule 2014 are clear—the proposed professional must disclose all connections and may not unilaterally determine which connections impact his disinterestedness. S & L did not comply with its disclosure obligations, and during its noncompliance, it violated the ethical duties of candor, diligence, and the utmost respect owed to the Court.

4.   This is an unusual scenario. The Court never had the opportunity to rule on S & L's application in the InfoW Cases. Because the InfoW Cases are now closed, it is appropriate for the Court in the present case to exercise its broad discretion under Section 327(a) to consider the nondisclosure in the related InfoW Cases to determine whether to approve the S & L Application. To protect the integrity of the bankruptcy system, the Court should refuse to overlook the disclosure failures in the InfoW Cases and as a result, should deny the S & L Application in the present case.

## FACTUAL BACKGROUND

### A.  General Information.

5.   On July 29, 2022, FSS filed a chapter 11 voluntary petition and elected to proceed under Subchapter V of chapter 11 on its petition.

6.   On August 2, 2022, the U.S. Trustee appointed Melissa Haselden as the FSS' Subchapter V Trustee in the present case.

7.   No committee has been appointed. Unless the Court determines there is cause for the appointment of a creditors' committee and orders the appointment of one, the U.S. Trustee is

003237

prohibited from soliciting and appointing a committee in a subchapter V case. 11 U.S.C. § 1102(a)(3).

**B. The InfoW Debtors create a structure to negotiate opposite FSS and Jones after filing their bankruptcy cases.**

8.  On April 17, 2022, and April 18, 2022, the InfoW Debtors filed chapter 11 voluntary petitions and elected to proceed under Subchapter V of chapter 11 on their respective petitions.[2] The InfoW Debtors, like FSS, were all 100% owned by Alex Jones prior to the filing of the cases. InfoW Docket No. 6 at ¶ 6.

9.  On April 18, 2022, the U.S. Trustee appointed Melissa Haselden as the InfoW Debtors' Subchapter V Trustee.

10. Before the filing of the InfoW Cases, in 2018, certain plaintiffs brought actions in Texas and Connecticut against Jones, FSS, and the InfoW Debtors relating to statements made by Jones and other employees of FSS stating, among other things, that the Sandy Hook school shootings were a hoax (such plaintiffs are referred to herein as the "Sandy Hook Plaintiffs" and individually as the "Connecticut Plaintiffs" and "Texas Plaintiffs").

11. In 2022, Jones, FSS, and the InfoW Debtors sought to limit their liability to the Sandy Hook Plaintiffs' defamation claims through the creation of the Litigation Settlement Trust (the "LST") and the Plan Support Agreement (the "PSA). Three days prior to the filing of the InfoW Cases, the InfoW Debtors, Jones, and FSS entered into the LST, with Jones and FSS agreeing to fund $725,000 into the LST to pay the administrative expenses of the InfoW Cases. The LST was designed to remove control of the equity of the InfoW Debtors from Jones and give it to a trust held by trustees.  According to the InfoW Debtors, "[t]his provides a clean break between the

---

[2] InfoW, LLC filed just shortly before midnight on April 17, 2022, while IWHealth, LLC and Prison Planet TV, LLC's petitions were docketed shortly after midnight on April 18, 2022.

[InfoW]Debtors' former management and allows the funding of a proposed plan to be negotiated at arm's length between the Debtors, FSS, and Jones."  InfoW Docket No. 6 at ¶ 18.

12. Simultaneously with the creation of the LST, the InfoW Debtors entered into the PSA with Jones and FSS that dictated a roadmap for the InfoW Cases. FSS and Jones would be the funders of the plan because the InfoW Debtors had little or no assets. InfoW Docket No. 6 at 7. As part of the roadmap, the InfoW Debtors sought to retain W. Marc Schwartz as the chief restructuring officer ("CRO Schwartz") for the InfoW Debtors. InfoW Docket No. 6-2.

13. On April 27, 2022, the Connecticut Plaintiffs filed a motion to dismiss the InfoW Cases. InfoW Docket No. 36. On that same day, the Texas Plaintiffs joined the motion to dismiss and filed their supplemental motion to dismiss. InfoW Docket No. 42.

14. On April 29, 2022, the U.S. Trustee filed his motion to dismiss. InfoW Docket No. 50. The U.S. Trustee alleged, among other reasons, that the InfoW Cases were filed in bad faith and were engineered for the purpose of shielding Jones and FSS from liability. Id. at ¶ 36.

15. A status conference was held on April 29, 2022. At the status conference, the Court scheduled an evidentiary hearing for all three motions to dismiss for May 27, 2022.

16. On May 13, 2022, the Connecticut Plaintiffs filed a notice of dismissal with prejudice of claims against the InfoW Debtors in the United States Bankruptcy Court for the District of Connecticut. A status conference was scheduled for May 24, 2022, for the Connecticut Court to consider the Connecticut Plaintiffs' dismissal of the InfoW Debtors from the defamation lawsuits. InfoW Docket No. 98.

17. On May 19, 2022, the Texas Plaintiffs agreed to dismiss their claims against the InfoW Debtors in the defamation lawsuits filed in state court. The Court entered the "Stipulation and Order" which memorialized this agreement between the Texas Plaintiffs and the InfoW Debtors.

InfoW Docket No. 99.

**C.  Lee and Schwartz begin to represent FSS in addition to the InfoW Debtors but do not inform the Court.**

18. On May 18, 2022, the InfoW Debtors filed an Emergency Motion to Continue Hearing Date on Motion to Dismiss (the "Emergency Continuance Motion"). In the continuance request, the InfoW Debtors represented that:

> Continuing the Original Hearing Date until June will also permit the CRO who has been engulfed in evaluating the dismissals with prejudice issues to now focus on the remaining creditors of the Debtors. The CRO will be able to evaluate either before or by the June hearing date whether he should proceed with trying to confirm a subchapter v plan of reorganization or handle these claims outside of bankruptcy. Again, such effort will be [sic] wise use of limited financial resources. Such an approach will also save valuable judicial resources.

InfoW Docket No. 95, at ¶ 21.

19. On the morning of May 19, 2022, Attorney Lee filed an Application to Employ Kyung S. Lee PLLC ("KSLPLLC") as Attorneys for the Debtors (the "Lee Application"). InfoW Docket No. 97. The Lee Application was accompanied by the InfoW Lee Declaration. InfoW Docket No. 97-1.

20. In the InfoW Lee Declaration, Attorney Lee affirmatively stated that he had no connections with FSS and Jones. The InfoW Lee Declaration provided the following:

> KSLPLLC performed the following actions to determine whether it or any of its attorneys has any disclosable connections, to the Debtors, creditors, any other party in interest, their respect[sic] attorneys and accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any of the judges for the Southern District of Texas. I conducted a search of KSLPLLC files to determine using the list of parties listed in Schedule I hereto whether the firm had any connections to or represented any of the parties listed on Schedule 1. The search revealed that the firm had not and did not presently represent any of the parties listed on Schedule 1.
>
> The results of the forging connections search process confirm that neither I, KSLPLLC, nor any of its employees or shareholders, to the best of my knowledge, have any disqualifying connections…the only connection to any of

6

003240

the parties on Schedule 1 is by virtue of having represented the three Debtors while a partner at PLR.

InfoW Docket No. 97-1, at ¶¶ 10-12.

21. Schedule I attached to the InfoW Lee Declaration included "Free Speech Systems LLC" and "Alex Jones" as "Searched Parties." InfoW Docket No. 97-1. Attorney Lee signed and executed the InfoW Lee Declaration on May 19, 2022. *Id*.

22. In the afternoon of May 19, 2022, the Court conducted a hearing on the Emergency Continuance Motion. At the hearing, the Connecticut Plaintiffs and Texas Plaintiffs announced that they were proceeding with their dismissal with prejudice of the InfoW Debtors as defendants in both the Texas and Connecticut defamation lawsuits.

23. In consideration of parties working to finalize the state court dismissals with prejudice, Attorney Lee requested additional time to respond to the U.S. Trustee's motion to dismiss the InfoW Cases. Among the bases for the continuance was that the CRO needed additional time to fulfill his fiduciary duties to the other creditors and Attorney Lee stated that "the other part that I have to do is renegotiate the plan support agreement if the debtors intended to move forward with respect to a small subchapter v plan." Tr. May 19, 2022, at 16, 21-24.

24. Based on the representations made by Attorney Lee, the Court reset the evidentiary hearing for June 10, 2022. Towards the conclusion of the status hearing, Attorney Lee assured the Court of the chief restructuring officer's commitment to the InfoW Debtors and stated the following:

> MR. LEE: I do want you to know that Mr. Schwartz in his fiduciary capacity is evaluating all alternatives.
>
> THE COURT: Oh, I'm sure he is.
>
> MR. LEE: I just want you to know that.

Tr. May 19, 2022, at 23, 13-16.

003241

25. Despite those representations, according to CRO Schwartz, sometime on that same day, May 19, 2022, Attorney Lee asked CRO Schwartz to send an engagement letter to FSS outlining his retention as the CRO for FSS. CRO Schwartz prepared an engagement letter that day and it was sent via e-mail to Ray Battaglia, counsel for FSS. FSS Docket No. 14-4.

26. On May 26, 2022, Attorney Lee appeared on behalf of the InfoW Debtors at the Section 341 Meeting. The U.S. Trustee continued the creditors' meeting for one week, to June 2, 2022. As of May 26, 2022, there was no agreement between the U.S. Trustee and the InfoW Debtors to dismiss the InfoW Cases.

27. On June 1, 2022, the U.S. Trustee and the InfoW Debtors finalized a stipulated dismissal order. The stipulated dismissal order was submitted later that day.

28. On June 2, 2022, the InfoW Debtors, through Attorney Lee, filed a response to the U.S. Trustee's motion to dismiss. The InfoW Debtors asserted that, as of June 2, 2022, the InfoW Cases still served valid bankruptcy purposes, despite their agreement with the U.S. Trustee to dismissal just a day before. At the time of the response, both Attorney Lee and CRO Schwartz were providing services to FSS, but the InfoW Debtors stated that the CRO was "independent" and "the duty of the Debtors and their professionals as estate fiduciaries is clear and unwavering." InfoW Docket No. 112 at ¶¶ 6-7. The response did not mention any relationship between FSS and Schwartz or between Lee and FSS.

29. On June 10, 2022, the Court held a hearing on the motion to dismiss and allowed all parties to provide any comments. Neither Schwartz nor Lee, who both addressed the Court that day, informed the Court of their connections to FSS. The Court then entered the stipulated order dismissing the InfoW cases. InfoW Docket No. 114.

**D.  During the FSS case, the Court and parties learn about Schwartz's and Lee's representation of FSS during the InfoW cases.**

003242

30. On July 26, 2022, the damages phase of the defamation lawsuit against FSS and Jones began in Austin, Texas. On July 29, 2022, at the conclusion of the first week of trial in Austin, FSS filed for bankruptcy protection.

31. On that same day, CRO Schwartz filed a Declaration with the Court in support of the first day motions. Docket No. 10. In that Declaration, Schwartz informed the Court for the first time that "[o]n June 7, 2022, the Debtor confirmed my retention as the Debtor's Chief Restructuring Officer (the "CRO") and SALLC as its financial advisors as of May 19, 2022. *Id.* at ¶ 9. Schwartz also declared, "Since May 19, 2022, FSS has retained Schwartz as its Chief Restructuring Officer ("CRO"), with broad powers to review the company's past financial performance, analyze the condition of FSS's books and records and evaluate whether FSS is a business that can be reorganized." *Id.* at ¶ 40. SALLC was retained to perform various accounting and forensic work associated with his mandate.

32.  On August 1, 2022, at the consent of FSS and the Texas Plaintiffs, the Court entered an order lifting the automatic stay and allowing the trial in Austin to proceed to judgment. Further, at this hearing, the Court expressed concerns about transparency in the bankruptcy process, specifically the May 19th engagement between CRO Schwartz and FSS while the InfoW Cases were pending. The Court asked the following:

> I need to understand as well, on May 19th, you were representing three debtors who are on the opposite side of a proposed plan support agreement. We never took action but you were also seeking retention from Free Speech at the same time? I don't think I ever knew about that.

33. On August 3, 2022, the Court conducted a cash collateral hearing (the "August 3rd hearing"). At the hearing, CRO Schwartz, who was now acting as the CRO for FSS, testified for several hours. Again, a point of concern raised by the Court was the nondisclosure of connections

003243

between the estate professionals[3] in the InfoW Cases and FSS and Jones. The Court asked the following:

> Let me get the question – I might as well ask it now because it's a good spot...I just need to understand it. On May 19th, there was a hearing before me where on May 18th, there was a request for a continuation on a motion to dismiss…and in this case, there is a letter dated by you to Free Speech dated the same day. I may be reading much into this, but it seems to me that you – either you wrote the letter that day or you had been in conversation with Free Speech before you wrote that – before that day you sent the letter. And I just need to understand – none of this was ever disclosed to me in connection with the case and the cases were dismissed on June the 10th officially, which tells me that Mr. Jones signed a retention letter. So, you were actively retained before these cases were dismissed – the last cases were dismissed – and I just need to understand, one, why that was never disclosed to me, and two, when did you begin to start soliciting or having conversations about representing Free Speech Systems…

Tr. August 3, 2022 at 147-148, 21:19.

In response to the Court's questions, CRO Schwartz stated that he could not recall the date but assured the Court that conversations concerning the FSS engagement only occurred "after we had been substantially convinced that we were going to be terminating the InfoWars bankruptcy." Tr. August 3, 2022 at 149, 4-8.

34. After listening to several hours of testimony at the August 3rd Hearing and upon the Sandy Hook Families' oral request for the formation of a tort claimant committee, the Court stated the following:

> [T]here's been oral request for the appointment of a committee, and that can be done by the Court for cause. I'm not going to grant that today, but I am going to express some real concerns about what I heard, and I'll express what they are. You know, whether you realize it or not, Mr. Schwartz was negotiating on both sides of a deal.

Tr. August 3, 2022 at 239, 9:17.

---

[3] During CRO Schwartz's testimony, the Court indicated that it had concerns regarding Attorney Lee's retention by FSS as well: "I [ask] Mr. Lee a few questions as well at some point, but I'll need to understand that as well, but today's not that day. Today's cash collateral, and so I do want – and I know I took this off on a tangent." Tr. August 3, 2022, at 150, 9-11.

35. Based on the testimony at the August 3rd Hearing, the Court further questioned the independence of S & L and CRO Schwartz at the outset of the present case as it relates to potential claims against Jones and other insiders:

> [T]he Debtor is going to have to make some tough decisions at some point. And it's going to have to really analyze those claims and see whether those claims have any merit…[and] I'm not sure that parties who were introduced in the last case could fill that role either. But the Debtor needs to hear that from me, and I think debtors are entitled, especially early on in a case, to think about what the judge may have to say. And these are certainly rare comments, but these are certainly uncommon cases.

Tr. August 3, 2022, at 241, 5-19.

36. On August 20, 2022, FSS filed applications to employ CRO Schwartz (the "Schwartz Application") as the Debtor's Chief Restructuring Officer and S & L as co-counsel. The S & L Application was accompanied by a declaration by Attorney Lee (the "FSS Lee Declaration"). The FSS Lee Declaration disclosed for the first time that "the first services any attorney of Shannon & Lee LLP provided to FSS occurred on May 24, 2022, were provided by me through Kyung S. Lee PLLC…" FSS Docket No. 85-3, ¶ 26.  Further, the S & L Application disclosed that "KSLPLLC received payment from the Debtor of $21,986.59 for services provided to FSS from May 24, 2022, through May 31, 2022." *Id*. at FN. 1.[4] Lastly, the FSS Lee Declaration provided that S & L "represented the InfoW Debtors in the negotiations of the Plan Support Agreement under which FSS and Alex Jones committed to provide funding for the InfoW Debtors." *Id.* at 85-3, ¶ 15(b).

37. In the Schwartz Application, FSS asserted that "the CRO and SALLC's mandate to 'lead

---

[4] FSS filed a Statement of Financial Affairs (the "SOFA") on August 29, 2022. FSS Docket No. 122. Question 11 on the SOFA requires disclosure of payments related to bankruptcy – "List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case." Payments to Shannon & Lee were identified, as of June 6, 2022, however, no payments in the amount of $21, 986.59 were recorded on FSS's SOFA.

11

InfoW's management and personnel through the restructuring process' had for all practical purposes concluded by May 19, and for sure by June 6." FSS Docket No. 83, ¶ 44.

38. On August 25, 2022, the Sandy Hook Plaintiffs filed a motion to request the appointment of a tort claimants committee and to remove the debtor-in-possession. The Sandy Hook Plaintiffs alleged, among other reasons, that CRO Schwartz mismanaged the estate resources for Jones' benefit and failed to disclose his connections to FSS while acting as the CRO for the InfoW Debtors. FSS Docket No. 102.

## **OBJECTION**

39. The S & L Application should be denied due to S & L's deficient disclosure of its attorney's connections to FSS and Jones in the related InfoW Cases. The disclosure process is self-policed by the professionals that appear before the Court, and when a disclosure violation occurs, it should be met with a strong rebuke. While this is an unusual scenario in that S & L's application in the InfoW Cases was never heard and the InfoW Cases are now closed, the current case is related to the prior cases and includes substantially all the same players.  To effectuate the disclosure mandates in Bankruptcy Rule 2014 and to address the prior nondisclosure, the Court should exercise its broad discretion under Section 327(a) to consider S & L's prior acts in violation of the disclosure obligations and to deny the S & L Application in this related case.

### A. The Court has Broad Discretion under 11 U.S.C. § 327(a) in Deciding Whether to Approve an Application to Employ an Estate Professional.

40. The Bankruptcy Code provides a uniform scheme for retaining and compensating court-authorized attorneys under 11 U.S.C. §§ 327-331, 503, and 507. Section 327 provides that the debtor-in-possession may employ, with the Court's approval, professionals who are disinterested and who do not hold or represent interest adverse to the estate. 11 U.S.C. §§ 327. In addition, the applicants must also comply with Bankruptcy Rule 2014(a). *See In re Bechuck*, 472 B.R. 371, 375

12

(Bankr. S.D. Tex. 2012).

41. Section 327(a) of the Bankruptcy Code provides the Court with a wide latitude of discretion when professionals are seeking to work on behalf the bankruptcy estates. The statutory language of section 327(a) shows that Congress intended the bankruptcy court to have broad discretion in making its determination, as it provides that "the trustee [or debtor in possession, under 11 U.S.C. § 1107], with the court's approval *may* employ one or more [professionals]." [emphasis added]. Congress could not have more clearly stated that (i) no professionals, on any terms, can be employed without prior court authorization, and (ii) the court has broad discretion in deciding whether to approve or disapprove an employment application, and is not required to accept the proposed professional's application. The court may – or may not, in its sound discretion – approve a proposed employment application. *Cf. United States v. Rodgers,* 461 U.S. 677, 706 (1983) ("the word 'may,' when used in a statute, usually implies some degree of discretion").

42. Many decisions hold that bankruptcy courts have broad discretion in deciding whether to approve an application to employ an estate professional under section 327(a). *See, e.g.*, *In re Jackson*, 484 B.R. 141, 154 (Bankr. S.D. Tex. 2012) *citing Arnes v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995); *In re Bigler, LP*, 422 B.R. 638, 643 (Bankr. S.D. Tex. 2010) ("This Court has substantial discretion to grant an application to employ a professional for the estate."); *Miller v. United States Trustee*, 197 F.3d 13, 17 (1st Cir. 1999) ("Bankruptcy courts historically have been accorded wide discretion to oversee the terms and conditions of a debtor's engagement of professionals[.]"); *Interwest Bus. Equip. v. United States Trustee*, 23 F.3d 311, 315 (10th Cir. 1994) ("[W]e will not second guess a decision not to approve professionals under § 327 unless it exhibits a clear abuse of discretion[.]"); *Harold & Williams Dev. Co.*, 977 F.2d 906, 909 (4th Cir. 1992) (the Bankruptcy Code "gives broad discretion to the bankruptcy court over the

13

appointment of professionals to work on behalf of the . . . estate"); *In re Martin*, 817 F.2d 175, 182 (1st Cir. 1987) ("Historically, bankruptcy courts have been accorded wide discretion in connection with fact-intensive matters, and in regard to the terms and conditions of the engagement of professionals."); *Elias v. Lisowski Law Firm (In re Elias)*, 215 B.R. 600, 603 (B.A.P. 9th 1997) ("A bankruptcy court's decision regarding an application for the employment of a professional is reviewed for abuse of discretion.").

43. The Court is not required to approve an application that satisfies the requirements of Section 327(a). "Even if the technical requirements of disinterestedness and not holding or representing an interest adverse to the estate are met, the Court has the discretion to deny the application." *In re LTHM Houston-Operations*, LLC, 2014 WL 5449737, at *5 (Bankr. S.D. Tex. 2014). Additionally, "while disinterestedness and the absence of conflicts may be central to the inquiry, they are by no means exclusive. Indeed, section 327(a) vests the authority for 'approval' within the sound discretion of the court. That authority would be eviscerated were the Court required to approve counsel who met the technical test for disinterest but was ill-suited for other reasons…" *In re Kurtzman,* 220 B.R. 538, 542 (S.D.N.Y. 1998).

44. In the exercise of its discretion under Section 327, the Court is instructed "into taking account the facts of a particular bankruptcy case and the overall objectives of the bankruptcy system." *LTHM Houston-Operations, at *5; see also Official Comm. of Unsecured Creditors v. Harris* (*In re Southwest Food Distribs., LLC*), 561 F.3d 1106, 1112-13 (10th Cir. 2009) (bankruptcy court does not err in considering proposed compensation terms when ruling on employment application); *Harold & Williams Dev. Co.*, 977 F.2d at 910 (bankruptcy court must not "abdicate the equitable discretion granted to it," but must "take into account the facts of a particular case and the overall objectives of the bankruptcy system")*; In re Kurtzman*, 220 B.R.

14

538, 540 (S.D.N.Y. 1998) (finding that the bankruptcy court did not abuse its discretion when it denied the retention of counsel based on "prior problems involving time records, billing errors, professional conduct, and overall costs of legal services that had led to its conclusion of loss of confidence in the firm"). Here, the requirements that professionals lay bare their connections play an integral part of the Court's function to determine a proposed professional's fitness to represent the bankruptcy estate. "Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts." *In re Downs*, 103 F.3d. 472, 480 (6th Cir. 1996). Bankruptcy courts must be able to expect the proposed professional appointed under 327 to disclose all connections and follow the applicable rules concerning disclosure. "Plainly, the Court will not approve the employment of counsel that does not comport with the applicable ethical and disciplinary regulations." *In re Doors & More Inc.*, 126 B.R. 43, 45 (Bankr. E.D. Mich. 1991).[5]

**B. As Part of Their Duty to the Court and the Estate, Professionals Have a Continuing Duty to Disclose All Connections with Creditors and Parties in Interest.**

45. Bankruptcy Rule 2014 imposes a complementary duty of disclosure on the applicant so that the Court and parties in interest can determine whether the professional satisfies disinterestedness requirements. Rule 2014 has one primary purpose—to facilitate strict compliance with section 327. "[T]he requirements of Fed. R. Bankr. P. 2014 are more

---

[5] In exercising discretion to deny an application to employ, "the bankruptcy court should interfere with the trustee's choice of counsel only in the rarest cases, such as when the proposed attorney has a conflict of interest, or when it is clear that the best interest of the estate would not be served by the trustee's choice." *In re Smith*, 507 F.3d 64, 71 (2d Cir. 2007)(internal quotations omitted). In the present case, the Court is not depriving the Debtor of its choice in counsel, notably because S & L is proposed co-counsel. If the Court denies the S & L Application, the Debtor continues to be represented by another counsel. While the Bankruptcy Code provides deference to a debtor's choice of counsel, that deference is not absolute. "In a Chapter 11 case, it is fundamental that a debtor in possession or a trustee is obligated to act not in his or her own best interest, but rather in the best interest of the entire estate, including the creditors and owners of the debtor estate." *In re Doors & More Inc.*, 126 B.R. 43 at 45. Here, S & L's prior acts, namely the omissions of its connections to FSS and Jones, require the Court to take actions to preserve the integrity of the bankruptcy system and effectuate the disclosure mandates. The seriousness of the omissions and need to preserve the integrity of the system outweigh the Debtor's choice of counsel, especially when the Debtor is represented by co-counsel.

003249

encompassing than those governing disinterestedness inquiry under section 327. For while retention under section 327 is only limited by interests that are 'materially adverse,' under Rule 2014, 'all connections' that are not so remote as to be *de minimis* must be disclosed." *In re Leslie Fay Companies, Inc*., 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994).

46. The applicant has the duty to disclose all relevant information to the court and "may not exercise any discretion to withhold information." *In re Woodcraft Studios, Inc*., 464 B.R. 1, 8 (N.D. Cal. 2011). Thus, "professionals 'cannot pick or choose which connections are irrelevant or trivial.'" *U.S. v. Gallene*, 182 F.3d 578, 588 (7th Cir. 1999) (concluding that a misstatement in a Rule 2014 statement constitutes a material misstatement for purposes of 18 U.S.C. § 152). The duty to disclose under Bankruptcy Rule 2014 is ongoing, continues throughout the case, and "requires 'spontaneous, timely, and complete disclosure.'" *In re The Harris Agency*, 462 B.R. 514, 524 (E.D. Pa. 2011); *see also In re Granite Partners, L.P., 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998)* (court should not have to "rummage through files or conduct independent fact-finding investigations" to determine whether the professional should be disqualified).

47. The disclosure requirements in Rule 2014 are "rooted in the fiduciary relationship between courts and attorneys." *In re Griffin*, 313 B.R. 757, 763 (Bankr. N.D. Ill. 2004). "Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts." *In re Downs*, 103 F.3d. 472, 480 (6th Cir. 1996). Applicants "who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 465 (5th Cir. 2012) (citations omitted). "[L]ack of disclosure in and of itself is sufficient to warrant disqualification, even if in the end there was no prejudice." *In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 664 (Bankr.

003250

N.D. Ill. 2001); *see also In re Rabex Amuru of N.C., Inc.*, 198 B.R. 892, 897 (Bankr. M.D.N.C. 1996) (attorneys for debtor removed because of appearance of impropriety, even though no harm done to debtor). Professionals must "be meticulous in disclosing 'all connections' with the debtor and other parties in interest, the failure to do so justifying a court's taking significant punitive or corrective action." *In re Byington*, 454 B.R. 648, 657 (Bankr. W.D. Va. 2011); *see also In re EBW Laser Inc*., 333 B.R. 351, 359 (Bankr. M.D.N.C. 2005) ("The Bankruptcy Court may, in its discretion, disqualify counsel, or deny compensation, as a sanction for failure to make the disclosure required.").

### C. In Exercising Its Broad Discretion, the Bankruptcy Court Should Deny the S & L Application Because of Its Failure to Affirmatively and Timely Disclose Its Connections with FSS.

48. The defective disclosure in the InfoW Lee Declaration, which was a statement under penalty of perjury before the Court, is not a minor matter. It "goes to the heart of the integrity of the bankruptcy system." *In re eToys, Inc*., 331 B.R. 176, 189 (Bankr. D. Del. 2005). "[T]he duty to disclose under Bankruptcy Rule 2014 is considered sacrosanct because the complete and candid disclosure by an attorney seeking employment is indispensable to the court's discharge of its duty to assure the attorney's eligibility for employment under section 327(a) and to make an informed decision on whether the engagement is in the best interest of the estate." *Id.* As noted, Rule 2014 "is not intended to condone a game of cat and mouse where the professional seeking appointment provides only enough disclosure to whet the appetite of the UST, the court, and other parties in interest, and the burden shifts to those entities to make inquiry in an effort to expand the disclosure." *In re Matco Elec. Group, Inc.*, 383 B.R. 848, 853-54 (Bankr. N.D.N.Y. 2008).

49. Under the PSA and LST in the InfoW Cases, Jones and FSS were designated as the "Third Party Funders." The question regarding the validity of the PSA and LST, and the negotiations surrounding the origination of these documents were contested issues at the center of the InfoW

003251

Cases. Unlike other plan support agreements in other chapter 11 cases, no creditors, including the Sandy Hook Plaintiffs, participated in the drafting or negotiations of the PSA and LST. The primary parties to those negotiations were the InfoW Debtors, FSS, and Jones. FSS was on the other side of the transaction from the InfoW Debtors. Even after the InfoW Debtors reached agreements with the Sandy Hook Plaintiffs, the InfoW Debtors did not agree to dismiss the case until June 1, 2022. Attorney Lee informed the Court on May 19, 2022, that he might have to renegotiate the PSA with FSS and Jones to pay the remaining creditors should the InfoW Debtors remain in bankruptcy.

50. Moreover, S & L had multiple opportunities to disclose to the Court its connections to FSS and Jones. After S & L was retained by FSS as counsel, the InfoW Debtors, through Attorney Lee filed a response to the U.S. Trustee's motion to dismiss, maintaining that "the duty of the Debtors and their professionals as estate fiduciaries is clear and unwavering." FSS Docket No. 112, ¶ 7. The response is silent concerning the fact that just days before, Attorney Lee provided legal services for FSS and was employed as its bankruptcy counsel. Following the response on June 2, the Court conducted a hearing on the stipulation to dismiss in the InfoW Cases on June 10, 2022. Neither the CRO nor Attorney Lee, who both addressed the Court that day, informed the Court of their connections to FSS. By remaining silent, whether in pleadings, at hearings, or by failing to amend the Lee Declaration, S & L misrepresented its connections to the Court and violated the ethical duties of candor and diligence. *See* S.D. Tex. Local R., Appendix D. Guidelines for Professional Conduct; *see also In re Bradley*, 495 B.R. 747, 786 (Bankr. S.D. Tex. 2013)(Attorney's failure to correct misstatements demonstrated lack of candor and respect to the Court).

51. While noncompliance with Bankruptcy Rule 2014 may result in disqualification and/or

total disgorgement of fees in the InfoW Cases, S & L's transgressions in the InfoW Cases eclipsed the confines of Bankruptcy Rule 2014 because those cases are now dismissed. Bankruptcy Rule 2014 alone is not sufficient to address S & L's nondisclosure of its connections to FSS and Jones in the InfoW Cases. However, the integrity of the bankruptcy system requires that the Court address S&L's omissions of its connections to FSS and Jones in the InfoW Lee Declaration. Here, it is appropriate for the Court to exercise its broad discretion under Section 327(a) to address S & L's prior acts in the related cases— which this case is essentially a continuation of—and deny the S & L Application. Put simply, S & L, through Attorney Lee, did not inform the Court of its connections in a related case, involving the identical parties in interest. S & L was employed by FSS while Attorney Lee filed pleadings and made statements to the Court that indicated that all estate professionals including CRO Schwartz and Attorney Lee were independent and without outside influences. S & L should not be exempt from the consequences of its prior acts because the InfoW Cases were dismissed; especially when S & L is now seeking approval from this Court to be employed by FSS—thereby asking the Court to bless the very connection that S & L previously concealed from the Court. To maintain the integrity of the bankruptcy system and to fully effectuate the mandatory disclosure requirements in Rule 2014, the Court should deny the S & L Application.

003253

## CONCLUSION

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court deny the S & L

Application and grant such other relief as is just and proper.

RESPECTFULLY SUBMITTED:
KEVIN M. EPSTEIN
UNITED STATES TRUSTEE

DATED: 9/12/2022                                */s/ HA M NGUYEN*
Ha Nguyen, Trial Attorney
CA Bar #305411
FED ID NO. 3623593
United States Department of Justice
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, Texas 77002
E-mail: Ha.Nguyen@usdoj.gov
Cell: 202-590-7962

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission to all Pacer System participants in these bankruptcy cases, on the 12th day of September, 2022.

/s/ Ha M. Nguyen
Ha M. Nguyen

003254

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

**SANDY HOOK FAMILIES' JOINDER TO THE OBJECTION OF UNITED
STATES TRUSTEE TO APPLICATION OF DEBTOR FOR AN ORDER
(A) AUTHORIZING EMPLOYMENT OF W. MARC SCHWARTZ AS CHIEF
RESTRUCTURING OFFICER, (B) AUTHORIZING EMPLOYMENT OF STAFF
OF SCWARTZ ASSOCIATES, LLC IN DISCHARGE OF DUTIES AS CHIEF
RESTRUCTURING OFFICER, AND (C) GRANTING RELATED RELIEF
[Related to ECF Nos. 83 and 145]**

Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (collectively the Texas Plaintiffs) and David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (collectively the Connecticut Plaintiffs) (and together the Sandy Hook Families) hereby file this joinder (Joinder) to the *Objection of United States Trustee to Application of Debtor for an Order (A) Authorizing the Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing the Employment of Staff of Schwartz Associates, LLC in Discharge of Duties as Chief Restructuring Officer, and (C) Granting Related Relief* (the Objection) [Dkt. 145], filed in response to *Application of Debtor for an Order (A) Authorizing the Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing the Employment of Staff of Schwartz Associates, LLC in Discharge of Duties as Chief Restructuring Officer, and (C) Granting Related Relief* (the Employment Application) [Dkt. 83].  In support of this Joinder, the Sandy Hook Families state as follows:

003255

1.      The Sandy Hook Families join in, and hereby incorporate by reference, the arguments made by the United States Trustee in the Objection.

2.      The Debtor filed its Employment Application on August 20, 2022.

3.      The United States Trustee filed the Objection on September 12, 2022.

4.      For the reasons stated in the Objection and this Joinder, the Sandy Hook Families respectfully request that the Court deny the Employment Application and grant such other and further relief as it may deem just and proper.

Respectfully submitted this 12th day of September 2022.

MCDOWELL HETHERINGTON LLP

Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, Texas 77002
D: 713-337-5580
F: 713-337-8850
E: Avi.Moshenberg@mhllp.com

*Counsel for the Texas Plaintiffs*

and

CHAMBERLAIN, HRDLICKA, WHITE,
    WILLIAMS & AUGHTRY, PC

By: */s/Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

*Bankruptcy Counsel for the Texas
Plaintiffs*

By: */s/ Ryan Chapple*
Ryan E. Chapple
State Bar No. 24036354
Email:rchapple@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile

and

Randy W. Williams
State Bar No. 21566850
Email: rww@bymanlaw.com
**BYMAN & ASSOCIATES PLLC**
7924 Broadway, Suite 104
Pearland, Texas 77581
281-884-9262

***Bankruptcy Counsel for Connecticut Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Joinder has been served on counsel for Debtor, Debtor, and all parties receiving or entitled to notice through CM/ECF on this 12th day of September 2022.

*/s/ Ryan E. Chapple*
Ryan E. Chapple

003257

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| | § | |
| Debtor. | § | |

## THIRD INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>" or "<u>FSS</u>") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "<u>Motion</u>").   In the Motion,  the Debtor  requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of  title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "<u>Bankruptcy Code</u>"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein.  The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "<u>First Interim Order</u>"). On August 24, 2022, the Court entered a *Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("<u>Second Interim Order</u>") [Dkt. No. 98].  This order is the third interim order ("<u>Third Interim Order</u>"), negotiated between the Debtor and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "<u>Tort Plaintiffs</u>"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral.  The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      <u>Interim Use</u>. The Court approves the interim use of cash collateral as set forth herein.

2.      Interim Order. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.      DIP Account. The Debtor shall maintain debtor in possession ("DIP") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "DIP Account").  All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.      Terms of Cash Collateral Use. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Third Interim Order (the "Interim Period") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.      No Payments to Insiders. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, either directly or indirectly, as that term is defined in section 101(31) of the Bankruptcy Code.  Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $20,000.

6.      Payment to PQPR for Inventory Purchase. The (i) rights of Creditors and parties in interest to object to the appropriateness of post-petition payments to PQPR for Inventory Purchases and file pleadings with the Court seeking to clawback the PQPR Payment and (ii) the obligation of the Debtor to provide notice

of a PQPR Payment to creditors and parties in interest as set forth in the First and Second Interim Cash Collateral Orders are fully preserved by this Order.

7.    <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.    <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.    <u>Adequate Protection – Replacement Liens</u>.  The adequate protection and related carve out set forth in the First and Second Interim Orders are incorporated in the Third Interim Order.

10.    <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.    <u>Credit Card Processing</u>. The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.

12.    <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13.     <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14.     <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on October 12, 2022, at _____ a.m. Central time.

Houston, Texas
Dated: September ___, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 8- Week 11)**

**Between  September 17, 2022 and October 14, 2022**

| | Period | 09/17/2022-<br>09/23/2022 | 09/24/2022-<br>09/30/2022 | 10/01/2022-<br>10/07/2022 | 10/08/2022-<br>10/14/2022 | Total |
|---|---|---|---|---|---|---|
| | Week Number | 8 | 9 | 10 | 11 | |
| **Income** | | | | | | |
| Product Sales | | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 4,000,000.00 |
| Advertising | | $ 100,000.00 | $ 100,000.00 | $ 100,000.00 | $ 100,000.00 | $ 400,000.00 |
| Donations | | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 12,564.99 |
| **Total Income** | | $ 1,103,141.25 | $ 1,103,141.25 | $ 1,103,141.25 | $ 1,103,141.25 | $ 4,412,564.99 |
| **Selling & Product Costs** | | | | | | |
| Inventory Purchase | | $ (225,294.19) | $ (225,294.19) | $ (225,294.19) | $ (225,294.19) | $ (901,176.75) |
| Repay PQPR Inventory | | $ - | $ - | $ - | $ - | $ - |
| Merchant Account Fees | | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (196,000.00) |
| Shipping cost for drop ship orders | | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (53,144.99) |
| Fulfillment Services | | $ (293,902.44) | $ (293,902.44) | $ (293,902.44) | $ (293,902.44) | $ (1,175,609.76) |
| Processor Fees | | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (160,000.00) |
| eCommerce Store Maintenance | | $ - | $ (27,270.00) | $ - | $ - | $ (27,270.00) |
| Texas Sales Tax | | $ - | $ (5,337.87) | $ - | $ - | $ (5,337.87) |
| **Total Cost of Goods Sold** | | $ (621,482.87) | $ (654,090.74) | $ (621,482.87) | $ (621,482.87) | $ (2,518,539.36) |
| **Operating Expenses** | | | | | | |
| **Advertising & Promotion** | | | | | | |
| Advertising & Promotion | | $ - | $ (3,041.98) | $ - | $ - | $ (3,041.98) |
| Print Media | | $ - | $ (3,000.00) | $ - | $ - | $ (3,000.00) |
| Radio Show Advertising | | $ - | $ (11,500.00) | $ - | $ - | $ (11,500.00) |
| **Total Advertising & Promotion** | | $ - | $ (17,541.98) | $ - | $ - | $ (17,541.98) |
| **Computer/IT/IP Expense** | | | | | | |
| Internet & TV services | | $ - | $ (2,082.90) | $ - | $ (1,608.39) | $ (3,691.30) |
| Software License Fees | | $ - | $ (140.80) | $ - | $ - | $ (140.80) |
| Server Hosting Service | | $ - | $ (28,595.13) | $ - | $ - | $ (28,595.13) |
| CDN Video Cloud Storage | | $ - | $ (55,728.00) | $ - | $ - | $ (55,728.00) |
| Satellite Service | | $ - | $ (137,282.93) | $ - | $ - | $ (137,282.93) |
| Imaging License Fee | | $ - | $ (9,201.25) | $ - | $ - | $ (9,201.25) |
| Software & Apps | | $ - | $ (5,000.00) | $ - | $ - | $ (5,000.00) |
| 62410 Contract Broadcase Services | | $ (11,200.00) | | | | $ (11,200.00) |
| 62420 Contract Radio Show Production | | $ (25,000.00) | | | | $ (25,000.00) |
| 62430 Contract Video Production | | $ (10,000.00) | | | | $ (10,000.00) |
| 62470 Free Lance Contributors | | $ (3,500.00) | | | | $ (3,500.00) |
| Website Hosting | | $ - | $ - | $ - | $ - | |
| **Total Computer/IT/IP Expense** | | $ (49,700.00) | $ (238,031.01) | $ - | $ (1,608.39) | $ (289,339.41) |
| Insurance | | $ - | $ (2,166.50) | $ - | | $ (2,166.50) |
| **Office & Administrative Expense** | | | | | | |
| Bank Fees & Service Charges | | $ (77.08) | $ (77.08) | $ (77.08) | $ (77.08) | $ (308.34) |
| Equipment Rental | | $ - | $ (1,989.90) | $ - | $ - | $ (1,989.90) |
| Office Supplies/Printing/Copy | | $ (3.53) | $ (3.53) | $ (3.53) | $ (3.53) | $ (14.11) |
| Business Meals | | $ (470.97) | $ (470.97) | $ (470.97) | $ (470.97) | $ (1,883.89) |
| **Total Office & Administrative Expense** | | $ (551.58) | $ (2,541.48) | $ (551.58) | $ (551.58) | $ (4,196.24) |
| | | | | | | |
| **Utilities** | | | | | | |
| Electricity | | $ - | $ - | $ - | $ (5,107.63) | $ (5,107.63) |
| HVAC | | $ - | $ (256.19) | $ - | $ - | $ (256.19) |
| CAM Charges | | $ - | $ (20,364.16) | $ - | $ - | $ (20,364.16) |
| Water & Sewer | | $ - | $ (1,708.55) | $ - | $ - | $ (1,708.55) |

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 8- Week 11)**

**Between  September 17, 2022 and October 14, 2022**

| | Period | 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | Total |
|---|---|---|---|---|---|---|
| Gas Service | | $ - | $ (132.09) | $ - | $ - | $ (132.09) |
| Pest Control | | $ - | $ (244.65) | $ - | $ - | $ (244.65) |
| Waste Management | | $ - | $ (351.81) | $ - | $ - | $ (351.81) |
| **Total Utilities** | | **$ -** | **$ (23,057.46)** | **$ -** | **$ (5,107.63)** | **$ (28,165.09)** |
| **Occupancy** | | | | | | |
| Rent | | $ - | $ (33,408.51) | $ - | $ - | $ (33,408.51) |
| Office Security | | $ - | $ (31,111.90) | $ - | $ - | $ (31,111.90) |
| Repair & Maintenance - Building | | $ - | $ (1,777.19) | $ - | $ - | $ (1,777.19) |
| Janitorial | | $ - | $ (5,983.33) | $ - | $ - | $ (5,983.33) |
| **Total Occupancy** | | **$ -** | **$ (72,280.93)** | **$ -** | **$ -** | **$ (72,280.93)** |
| Supplies | | $ - | $ (1,258.02) | $ - | $ - | $ (1,258.02) |
| Telephone | | $ - | $ (18,337.88) | $ - | $ - | $ (18,337.88) |
| **Personnel Expenses** | | | | | | $ - |
| Salaries & Wages - Base | | $ - | $ (168,467.44) | $ - | $ (168,467.44) | $ (336,934.88) |
| Payroll Tax | | $ - | $ (13,287.76) | $ - | $ (13,287.76) | $ (26,575.52) |
| Alex Jones Salary | | $ - | $ (20,000.00) | $ - | $ (20,000.00) | $ (40,000.00) |
| **Total Personnel Expenses** | | **$ -** | **$ (201,755.20)** | **$ -** | **$ (201,755.20)** | **$ (403,510.40)** |
| **Travel** | | | | | | |
| Mileage/Parking/Tolls | | $ (167.41) | $ (167.41) | $ (167.41) | $ (167.41) | $ (669.64) |
| Vehicle Leases | | $ - | $ - | $ - | $ (1,470.56) | $ (1,470.56) |
| **Total Travel Expenses** | | **$ (167.41)** | **$ (167.41)** | **$ (167.41)** | **$ (1,637.97)** | **$ (2,140.20)** |
| **Total Operating Expenses** | | **$ (50,419.00)** | **$ (577,137.87)** | **$ (719.00)** | **$ (210,660.78)** | **$ (838,936.64)** |
| **Non-Operating Expenses** | | | | | | |
| Payment on PQPR Note | | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| AMEX Payment | | $ - | $ - | $ - | $ - | |
| **Total Other Expenses** | | **$ (5,000.00)** | **$ (5,000.00)** | **$ (5,000.00)** | **$ (5,000.00)** | **$ (20,000.00)** |
| **Professional Fees** | | | | | | |
| Subchapter v Trustee retainer | | | | | | |
| Fulfillment Expert | | $ (22,487.56) | $ - | $ - | $ - | $ (22,487.56) |
| Economic Loss Expert | | | | | | $ - |
| Alex Jones at Trial Cost | | $ (80,920.00) | | | | $ (80,920.00) |
| Witness expenses and trial costs | | $ (34,048.00) | | | | $ (34,048.00) |
| Brittany Paz | | | | | | $ - |
| Pattis & Smith | | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| Reynal Law Firm, PC | | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| SALLC Fees | | | $ - | $ - | $ (188,018.31) | $ (188,018.31) |
| Shannon & Lee LLP | | | $ - | $ - | $ (207,348.36) | $ (207,348.36) |
| Ray Battaglia | | | $ - | $ - | $ (47,316.80) | $ (47,316.80) |
| **Total Professional Fees** | | **$ (137,455.56)** | **$ -** | **$ (200,000.00)** | **$ (442,683.47)** | **$ (780,139.03)** |
| **Total Cash Flow** | | **$ 288,783.82** | **$ (133,087.37)** | **$ 275,939.38** | **$ (176,685.88)** | **$ 254,949.95** |



EXHIBIT

A

003263

# UNITED STATES BANKRUPTCY COURT

## Southern District of Texas

PDF FILE WITH AUDIO FILE ATTACHMENT

2022-60043

Free Speech Systems LLC

| | |
|---|---|
| Case Type : | bk |
| Case Number : | 2022-60043 |
| Case Title : | Free Speech Systems LLC |
| Audio Date\Time: | 9/13/2022 1:03:02 PM |
| Audio File Name : | 4bk2022-60043_20220913-130302.mp3 |
| Audio File Size : | 21962 KB |
| Audio Run Time : | [00:45:45] (hh:mm:ss) |

**Help using this file:**

An audio file is embedded as an attachment in this PDF document. To listen to the file, click the Attachments tab or the Paper Clip icon.  Select the Audio File and click Open.

**MPEG Layer-3 audio coding technology from Fraunhofer IIS and Thomson.**

**This digital recording is a copy of a court proceeding and is provided as a convenience to the public.  In accordance with 28 U.S.C. § 753 (b) "[n]o transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record."**

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
September 13, 2022
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **Free Speech Systems LLC,** | § | |
| | § | **Case No. 22-60043 (CML)** |
| Debtor. | § | |

**ORDER DENYING MOTION FOR EXPEDITED CONSIDERATION OF
PQPR HOLDINGS LIMITED, LLC'S  AMENDED MOTION TO DIRECT SUBCHAPTER
V TRUSTEE TO  INVESTIGATE FINANCIAL OPERATIONS OF THE DEBTOR**
[Docket No. 136]

The Court denies PQPR Holdings Limited LLC's Motion for Expedited Consideration of its Amended Motion to Direct Subchapter V Trustee to Investigate Financial Operations of the Debtor.

The Court will consider the Amended Motion to Direct Subchapter V Trustee to Investigate Financial Operations of the Debtor on October 12, 2022 at 10:00 a.m.

Signed:  September 13, 2022

_____
Christopher Lopez
United States Bankruptcy Judge

003265

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 13, 2022

Nathan Ochsner, Clerk

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## THIRD INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion").   In the Motion,  the Debtor  requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of  title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein.  The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). On August 24, 2022, the Court entered a *Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Second Interim Order") [Dkt. No. 98].  This order is the third interim order ("Third Interim Order"), negotiated between the Debtor and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral.  The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      Interim Use. The Court approves the interim use of cash collateral as set forth herein.

2.        <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.        <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>").  All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.        <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Third Interim Order (the "<u>Interim Period</u>") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.        <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, either directly or indirectly, as that term is defined in section 101(31) of the Bankruptcy Code.  Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $20,000.

6.        <u>Payment to PQPR for Inventory Purchase</u>. The (i) rights of Creditors and parties in interest to object to the appropriateness of post-petition payments to PQPR for Inventory Purchases and file pleadings with the Court seeking to clawback the PQPR Payment and (ii) the obligation of the Debtor to provide notice

of a PQPR Payment to creditors and parties in interest as set forth in the First and Second Interim Cash Collateral Orders are fully preserved by this Order.

7.    <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.    <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.    <u>Adequate Protection – Replacement Liens</u>.  The adequate protection and related carve out set forth in the First and Second Interim Orders are incorporated in the Third Interim Order.

10.    <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.    <u>Credit Card Processing</u>. The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.

12.    <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13.     <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14.     <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on October 12, 2022, at 10:00 a.m. Central time.

Signed:  September 13, 2022

Christopher Lopez
United States Bankruptcy Judge

003269

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 8- Week 11)**

**Between  September 17, 2022 and October 14, 2022**

| | Period 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | Total |
|---|---|---|---|---|---|
| Week Number | 8 | 9 | 10 | 11 | |
| **Income** | | | | | |
| Product Sales | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 4,000,000.00 |
| Advertising | $ 100,000.00 | $ 100,000.00 | $ 100,000.00 | $ 100,000.00 | $ 400,000.00 |
| Donations | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 12,564.99 |
| **Total Income** | $ 1,103,141.25 | $ 1,103,141.25 | $ 1,103,141.25 | $ 1,103,141.25 | $ 4,412,564.99 |
| **Selling & Product Costs** | | | | | |
| Inventory Purchase | $ (225,294.19) | $ (225,294.19) | $ (225,294.19) | $ (225,294.19) | $ (901,176.75) |
| Repay PQPR Inventory | $ - | $ - | $ - | $ - | $ - |
| Merchant Account Fees | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (196,000.00) |
| Shipping cost for drop ship orders | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (53,144.99) |
| Fulfillment Services | $ (293,902.44) | $ (293,902.44) | $ (293,902.44) | $ (293,902.44) | $ (1,175,609.76) |
| Processor Fees | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (160,000.00) |
| eCommerce Store Maintenance | $ - | $ (27,270.00) | $ - | $ - | $ (27,270.00) |
| Texas Sales Tax | $ - | $ (5,337.87) | $ - | $ - | $ (5,337.87) |
| **Total Cost of Goods Sold** | $ (621,482.87) | $ (654,090.74) | $ (621,482.87) | $ (621,482.87) | $ (2,518,539.36) |
| **Operating Expenses** | | | | | |
| **Advertising & Promotion** | | | | | |
| Advertising & Promotion | $ - | $ (3,041.98) | $ - | $ - | $ (3,041.98) |
| Print Media | $ - | $ (3,000.00) | $ - | $ - | $ (3,000.00) |
| Radio Show Advertising | $ - | $ (11,500.00) | $ - | $ - | $ (11,500.00) |
| **Total Advertising & Promotion** | $ - | $ (17,541.98) | $ - | $ - | $ (17,541.98) |
| **Computer/IT/IP Expense** | | | | | |
| Internet & TV services | $ - | $ (2,082.90) | $ - | $ (1,608.39) | $ (3,691.30) |
| Software License Fees | $ - | $ (140.80) | $ - | $ - | $ (140.80) |
| Server Hosting Service | $ - | $ (28,595.13) | $ - | $ - | $ (28,595.13) |
| CDN Video Cloud Storage | $ - | $ (55,728.00) | $ - | $ - | $ (55,728.00) |
| Satellite Service | $ - | $ (137,282.93) | $ - | $ - | $ (137,282.93) |
| Imaging License Fee | $ - | $ (9,201.25) | $ - | $ - | $ (9,201.25) |
| Software & Apps | $ - | $ (5,000.00) | $ - | $ - | $ (5,000.00) |
| 62410 Contract Broadcase Services | $ (11,200.00) | | | | $ (11,200.00) |
| 62420 Contract Radio Show Production | $ (25,000.00) | | | | $ (25,000.00) |
| 62430 Contract Video Production | $ (10,000.00) | | | | $ (10,000.00) |
| 62470 Free Lance Contributors | $ (3,500.00) | | | | $ (3,500.00) |
| Website Hosting | $ - | $ - | $ - | $ - | |
| **Total Computer/IT/IP Expense** | $ (49,700.00) | $ (238,031.01) | $ - | $ (1,608.39) | $ (289,339.41) |
| Insurance | | $ (2,166.50) | $ - | | $ (2,166.50) |
| **Office & Administrative Expense** | | | | | |
| Bank Fees & Service Charges | $ (77.08) | $ (77.08) | $ (77.08) | $ (77.08) | $ (308.34) |
| Equipment Rental | $ - | $ (1,989.90) | $ - | $ - | $ (1,989.90) |
| Office Supplies/Printing/Copy | $ (3.53) | $ (3.53) | $ (3.53) | $ (3.53) | $ (14.11) |
| Business Meals | $ (470.97) | $ (470.97) | $ (470.97) | $ (470.97) | $ (1,883.89) |
| **Total Office & Administrative Expense** | $ (551.58) | $ (2,541.48) | $ (551.58) | $ (551.58) | $ (4,196.24) |
| **Utilities** | | | | | |
| Electricity | $ - | $ - | $ - | $ (5,107.63) | $ (5,107.63) |
| HVAC | $ - | $ (256.19) | $ - | $ - | $ (256.19) |
| CAM Charges | $ - | $ (20,364.16) | $ - | $ - | $ (20,364.16) |
| Water & Sewer | $ - | $ (1,708.55) | $ - | $ - | $ (1,708.55) |

003270

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 8- Week 11)**

**Between  September 17, 2022 and October 14, 2022**

| | Period | 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | Total |
|---|---|---|---|---|---|---|
| Gas Service | | $ - | $ (132.09) | $ - | $ - | $ (132.09) |
| Pest Control | | $ - | $ (244.65) | $ - | $ - | $ (244.65) |
| Waste Management | | $ - | $ (351.81) | $ - | $ - | $ (351.81) |
| **Total Utilities** | | **$ -** | **$ (23,057.46)** | **$ -** | **$ (5,107.63)** | **$ (28,165.09)** |
| **Occupancy** | | | | | | |
| Rent | | $ - | $ (33,408.51) | $ - | $ - | $ (33,408.51) |
| Office Security | | $ - | $ (31,111.90) | $ - | $ - | $ (31,111.90) |
| Repair & Maintenance - Building | | $ - | $ (1,777.19) | $ - | $ - | $ (1,777.19) |
| Janitorial | | $ - | $ (5,983.33) | $ - | $ - | $ (5,983.33) |
| **Total Occupancy** | | **$ -** | **$ (72,280.93)** | **$ -** | **$ -** | **$ (72,280.93)** |
| Supplies | | $ - | $ (1,258.02) | $ - | $ - | $ (1,258.02) |
| Telephone | | $ - | $ (18,337.88) | $ - | $ - | $ (18,337.88) |
| **Personnel Expenses** | | | | | | $ - |
| Salaries & Wages - Base | | $ - | $ (168,467.44) | $ - | $ (168,467.44) | $ (336,934.88) |
| Payroll Tax | | $ - | $ (13,287.76) | $ - | $ (13,287.76) | $ (26,575.52) |
| Alex Jones Salary | | $ - | $ (20,000.00) | $ - | $ (20,000.00) | $ (40,000.00) |
| **Total Personnel Expenses** | | **$ -** | **$ (201,755.20)** | **$ -** | **$ (201,755.20)** | **$ (403,510.40)** |
| **Travel** | | | | | | |
| Mileage/Parking/Tolls | | $ (167.41) | $ (167.41) | $ (167.41) | $ (167.41) | $ (669.64) |
| Vehicle Leases | | $ - | $ - | $ - | $ (1,470.56) | $ (1,470.56) |
| **Total Travel Expenses** | | **$ (167.41)** | **$ (167.41)** | **$ (167.41)** | **$ (1,637.97)** | **$ (2,140.20)** |
| **Total Operating Expenses** | | **$ (50,419.00)** | **$ (577,137.87)** | **$ (719.00)** | **$ (210,660.78)** | **$ (838,936.64)** |
| **Non-Operating Expenses** | | | | | | |
| Payment on PQPR Note | | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| AMEX Payment | | $ - | $ - | $ - | $ - | |
| **Total Other Expenses** | | **$ (5,000.00)** | **$ (5,000.00)** | **$ (5,000.00)** | **$ (5,000.00)** | **$ (20,000.00)** |
| **Professional Fees** | | | | | | |
| Subchapter v Trustee retainer | | | | | | |
| Fulfillment Expert | | $ (22,487.56) | $ - | $ - | $ - | $ (22,487.56) |
| Economic Loss Expert | | | | | | $ - |
| Alex Jones at Trial Cost | | $ (80,920.00) | | | | $ (80,920.00) |
| Witness expenses and trial costs | | $ (34,048.00) | | | | $ (34,048.00) |
| Brittany Paz | | | | | | $ - |
| Pattis & Smith | | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| Reynal Law Firm, PC | | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| SALLC Fees | | | $ - | $ - | $ (188,018.31) | $ (188,018.31) |
| Shannon & Lee LLP | | | $ - | $ - | $ (207,348.36) | $ (207,348.36) |
| Ray Battaglia | | | $ - | $ - | $ (47,316.80) | $ (47,316.80) |
| **Total Professional Fees** | | **$ (137,455.56)** | **$ -** | **$ (200,000.00)** | **$ (442,683.47)** | **$ (780,139.03)** |
| **Total Cash Flow** | | **$ 288,783.82** | **$ (133,087.37)** | **$ 275,939.38** | **$ (176,685.88)** | **$ 254,949.95** |



EXHIBIT

A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FREE SPEECH SYSTEMS, LLC | ) | Case No. 22-60043 |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |
| | ) | |

## CHAPTER 11, SUBCHAPTER V STATUS REPORT

Free Speech Systems, LLC., the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby files this status report pursuant to the Court's order entered on August 12, 2022 [ECF No. 65] and respectfully states as follows:

1.      The Debtor is in the process of preparing its projections of disposable income necessary to propose a plan of reorganization in this case and prepare valuations of its assets. The Debtor believes that the disposable income will be the principal source of funds available for distribution in this chapter 11 case.

2.      The Debtor intends to work with its creditors and attempt to obtain a consensual plan. To date, the Debtor has scheduled meetings with PQPR Holdings Limited, LLC ("PQPR") regarding its treatment under a plan. The first such meeting was scheduled for September 13, 2022, but was postponed due to the hearing regarding a discovery dispute involving PQPR that was set for that day. Additionally, the Debtor has reached out to the bankruptcy counsel for the various tort claimants in the Texas and Connecticut litigation (collectively, the "Plaintiffs") to communicate its willingness to have discussions regarding a plan of reorganization. The Debtor believes that reconciling PQPR and the Plaintiffs would present the most difficult challenge to a consensual plan and therefore has therefore focused its efforts on those creditors to date.

3.      The Debtor has also requested that the subchapter v trustee become more involved in the case in an effort to move the case forward. On September 12, 2022, the subchapter v trustee and her potential proposed counsel visited the Debtor's facility to gain insight to the Debtor's operations. And although the Debtor believes that it is capable of investigating PQPR's asserted secured claim and potential avoidance actions, it believes that expanding the subchapter v trustee's duties may ultimately prove beneficial to allow the parties to focus on working to a plan of reorganization.

4.      Fruitful negotiations with the Plaintiffs are hindered pending resolution of several pending motions. The U.S. Trustee's objections to the employment of the CRO and Shannon & Lee LLP limit the Debtor's ability to prepare a plan of reorganization and the Plaintiffs appear reluctant to enter discussions while their motion for the appointment of a tort claimants committee and removal of the Debtor as debtor in possession is pending. Nonetheless, the Debtor continues to work toward a plan in this case.

*[Remainder of Page Intentionally Left Blank]*

003273

Dated: September 13, 2022

**LAW OFFICES OF RAY BATTAGLIA, PLLC**

/s/ *Raymond W. Battaglia*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Co-Counsel to the Debtor and Debtor i-Possession*

-and-

**SHANNON & LEE LLP**

/s/*R. J. Shannon*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

003274

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2022, a true and correct of the foregoing document was served electronically via the Court's CM/ECF system on all parties registered to receive such service.

_/s/R. J. Shannon_____

4

AO 435
(Rev. 04/18)

ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

**TRANSCRIPT ORDER**

**FOR COURT USE ONLY**

**DUE DATE:**

*Please Read Instructions:*

| 1. NAME Ryan Chapple | 2. PHONE NUMBER (512) 477-5000 | 3. DATE 8/29/2022 | |
|---|---|---|---|
| 4. DELIVERY ADDRESS OR EMAIL rchapple@cstrial.com; aprentice@cstrial.com | 5. CITY Austin | 6. STATE TX | 7. ZIP CODE 78701 |

| 8. CASE NUMBER 22-60043 | 9. JUDGE Lopez | DATES OF PROCEEDINGS | |
|---|---|---|---|
| | | 10. FROM 8/29/2022 | 11. TO 8/29/2022 |
| 12. CASE NAME In re Free Speech Systems, LLC | | LOCATION OF PROCEEDINGS | |
| | | 13. CITY Houston | 14. STATE TX |

**15. ORDER FOR**

| ☐ APPEAL | ☐ CRIMINAL | ☐ CRIMINAL JUSTICE ACT | ☒ BANKRUPTCY |
|---|---|---|---|
| ☐ NON-APPEAL | ☐ CIVIL | ☐ IN FORMA PAUPERIS | ☐ OTHER |

**16. TRANSCRIPT REQUESTED** (Specify portion(s) and date(s) of proceeding(s) for which transcript is requested)

| PORTIONS | DATE(S) | PORTION(S) | DATE(S) |
|---|---|---|---|
| ☐ VOIR DIRE | | ☐ TESTIMONY (Specify Witness) | |
| ☒ OPENING STATEMENT (Plaintiff) | 8/29/2022 | | |
| ☒ OPENING STATEMENT (Defendant) | 8/29/2022 | | |
| ☒ CLOSING ARGUMENT (Plaintiff) | 8/29/2022 | ☐ PRE-TRIAL PROCEEDING (Spcy) | |
| ☒ CLOSING ARGUMENT (Defendant) | 8/29/2022 | | |
| ☒ OPINION OF COURT | 8/29/2022 | | |
| ☐ JURY INSTRUCTIONS | | ☒ OTHER (Specify) | 8/29/2022 |
| ☐ SENTENCING | | ENTIRE HEARING | |
| ☐ BAIL HEARING | | | |

**17. ORDER**

| CATEGORY | ORIGINAL (Includes Certified Copy to Clerk for Records of the Court) | FIRST COPY | ADDITIONAL COPIES | NO. OF PAGES ESTIMATE | COSTS |
|---|---|---|---|---|---|
| ORDINARY | ☐ | ☐ | NO. OF COPIES | | |
| 14-Day | ☐ | ☐ | NO. OF COPIES | | |
| EXPEDITED | ☐ | ☐ | NO. OF COPIES | | |
| 3-Day | ☐ | ☐ | NO. OF COPIES | | |
| DAILY | ☒ | ☐ | NO. OF COPIES | | |
| HOURLY | ☐ | ☐ | NO. OF COPIES | | |
| REALTIME | | | | | |

| CERTIFICATION (18. & 19.) By signing below, I certify that I will pay all charges (deposit plus additional). | ESTIMATE TOTAL | 0.00 |
|---|---|---|

| 18. SIGNATURE /s/ Ryan Chapple | PROCESSED BY |
|---|---|
| 19. DATE 8/29/2022 | PHONE NUMBER |
| TRANSCRIPT TO BE PREPARED BY | COURT ADDRESS |

| | DATE | BY |
|---|---|---|
| ORDER RECEIVED | | |

| DEPOSIT PAID | | DEPOSIT PAID | |
|---|---|---|---|
| TRANSCRIPT ORDERED | | TOTAL CHARGES | 0.00 |
| TRANSCRIPT RECEIVED | | LESS DEPOSIT | 0.00 |
| ORDERING PARTY NOTIFIED TO PICK UP TRANSCRIPT | | TOTAL REFUNDED | |
| PARTY RECEIVED TRANSCRIPT | | TOTAL DUE | 0.00 |

003276

DISTRIBUTION:    COURT COPY    TRANSCRIPTION COPY    ORDER RECEIPT    ORDER COPY

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 22-60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | **CHAPTER 11** |
| | § | |
| **DEBTOR** | § | |

**UNITED STATES TRUSTEE'S AMENDED OBJECTION TO THE APPLICATION OF DEBTOR FOR AN ORDER (A) AUTHORIZING THE EMPLOYMENT OF SHANNON & LEE LLP AS BANKRUPTCY CO-COUNSEL FOR THE DEBTOR AND (B) GRANTING RELATED RELIEF**

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), by and through his undersigned counsel, hereby submits his objection (the "Objection") to the Debtor's Application for an Order (A) Authorizing Employment of Shannon & Lee LLP as Bankruptcy Co-Counsel for the Debtor and (B) Granting Related Relief (the "S & L Application"). In support of his Objection to the S & L Application, the U.S. Trustee states to the Court as follows:

## **INTRODUCTION**

1.   The U.S. Trustee objects to the S & L Application because attorney Kyung Lee ("Attorney Lee"), a partner at Shannon & Lee LLP ("S & L"), failed to disclose his connections to Free Speech Systems, LLC ("FSS" or the "Debtor") in the bankruptcy cases of InfoW, LLC, IWHealth, LLC and Prison Planet TV, LLC (collectively referred to as the "InfoW Debtors" or the "InfoW Cases").[1] In the InfoW Cases, the InfoW Debtors represented to the Court and parties that they would negotiate at arm's length with FSS and Alex Jones ("Jones"), the proposed third-party funders and counterparties to the negotiations.  On May 19, 2022, Attorney Lee, through the law

---

[1] References to the InfoW Cases refer to Case Nos. 22-60020, 22-60021, and 22-60022 filed in the Southern District of Texas. The cite to "InfoW Docket" refers to Case No. 22-60020.

003277

firm Kyung S. Lee PLLC ("KSLPLLC"), filed an application in the InfoW Cases whereby KSLPLLC sought to be employed as bankruptcy counsel for the InfoW Debtors. Attached to the application was a declaration by Attorney Lee, affirmatively stating that he had no connections to FSS and Jones (the "InfoW Lee Declaration"). Shortly after filing the application, however, Attorney Lee began providing legal services to FSS, while contemporaneously representing the InfoW Debtors.

2.    Attorney Lee never amended or supplemented the InfoW Lee Declaration after he was retained by FSS and did not otherwise inform the Court, creditors, and U.S. Trustee of his connections during the InfoW Cases as required by Bankruptcy Rule 2014. Attorney Lee's connections to FSS and Jones were only recently discovered in this case, after the Court conducted its own inquiry and questioned the professionals at the hearing on August 3, 2022. In addition to the violations under Bankruptcy Rule 2014, the lack of full disclosure in the InfoW Lee Declaration also violated the Southern District of Texas' Guidelines for Professional Conduct. All practicing attorneys in this district "[owe] to the judiciary, candor, diligence, and the utmost respect." *See* S.D. Tex. Local R., Appendix D. Guidelines for Professional Conduct.

3.    The defective disclosures in the InfoW Lee Declaration, while filed in a previous case, are not minor matters to ignore. The Court should address the issue in this case, which is, in many ways, a continuation of the previous cases. Section 327(a) of the Bankruptcy Code provides the Court with broad discretion to consider prior acts of the applicant to determine whether to approve an employment application. The Court should consider the nondisclosure in order to effectuate the disclosure obligations required by Bankruptcy Rule 2014. The conduct in the InfoW Cases involved related debtors and almost the identical parties in interest. Moreover, Attorney Lee was employed by FSS while he filed pleadings and made statements to the Court in the InfoW Cases

2

that indicated that all InfoW estate professionals including Attorney Lee were independent and without outside influences. S & L, through the conduct of its named partner, should not be exempt from the consequences of the omissions because the InfoW Cases were dismissed; especially when S & L, with Attorney Lee, is now seeking approval from this Court to be employed by FSS—the very connection that was previously concealed from the Court. The disclosure procedures in Bankruptcy Rule 2014 are clear—the proposed professional must disclose all connections and may not unilaterally determine which connections impact his disinterestedness. S & L's attorney did not comply with his disclosure obligations, and through his noncompliance violated the ethical duties of candor, diligence, and the utmost respect owed to the Court.

4.   This is an unusual scenario. The Court never had the opportunity to rule on the employment application in the InfoW Cases. Because the InfoW Cases are now closed, it is appropriate for the Court in the present case to exercise its broad discretion under Section 327(a) to consider the nondisclosure in the related InfoW Cases to determine whether to approve the S & L Application. To protect the integrity of the bankruptcy system, the Court should refuse to overlook the disclosure failures in the InfoW Cases and as a result, should deny the S & L Application in the present case.

## FACTUAL BACKGROUND

### A.  General Information.

5.   On July 29, 2022, FSS filed a chapter 11 voluntary petition and elected to proceed under Subchapter V of chapter 11 on its petition.

6.   On August 2, 2022, the U.S. Trustee appointed Melissa Haselden as the FSS' Subchapter V Trustee in the present case.

7.   No committee has been appointed. Unless the Court determines there is cause for the

003279

appointment of a creditors' committee and orders the appointment of one, the U.S. Trustee is prohibited from soliciting and appointing a committee in a subchapter V case. 11 U.S.C. § 1102(a)(3).

**B.   The InfoW Debtors create a structure to negotiate opposite FSS and Jones after filing their bankruptcy cases.**

8.   On April 17, 2022, and April 18, 2022, the InfoW Debtors filed chapter 11 voluntary petitions and elected to proceed under Subchapter V of chapter 11 on their respective petitions.[2] The InfoW Debtors, like FSS, were all 100% owned by Jones prior to the filing of the cases. InfoW Docket No. 6 at ¶ 6.

9.   On April 18, 2022, the U.S. Trustee appointed Melissa Haselden as the InfoW Debtors' Subchapter V Trustee.

10. Before the filing of the InfoW Cases, in 2018, certain plaintiffs brought actions in Texas and Connecticut against Jones, FSS, and the InfoW Debtors relating to statements made by Jones and other employees of FSS stating, among other things, that the Sandy Hook school shootings were a hoax (such plaintiffs are referred to herein as the "Sandy Hook Plaintiffs" and individually as the "Connecticut Plaintiffs" and "Texas Plaintiffs").

11. In 2022, Jones, FSS, and the InfoW Debtors sought to limit their liability to the Sandy Hook Plaintiffs' defamation claims through the creation of the Litigation Settlement Trust (the "LST") and the Plan Support Agreement (the "PSA). Three days prior to the filing of the InfoW Cases, the InfoW Debtors, Jones, and FSS entered into the LST, with Jones and FSS agreeing to fund $725,000 into the LST to pay the administrative expenses of the InfoW Cases. The LST was designed to remove control of the equity of the InfoW Debtors from Jones and give it to a trust

---

[2] InfoW, LLC filed just shortly before midnight on April 17, 2022, while IWHealth, LLC and Prison Planet TV, LLC's petitions were docketed shortly after midnight on April 18, 2022.

003280

held by trustees.  According to the InfoW Debtors, "[t]his provides a clean break between the [InfoW]Debtors' former management and allows the funding of a proposed plan to be negotiated at arm's length between the Debtors, FSS, and Jones."  InfoW Docket No. 6 at ¶ 18.

12. Simultaneously with the creation of the LST, the InfoW Debtors entered into the PSA with Jones and FSS that dictated a roadmap for the InfoW Cases. FSS and Jones would be the funders of the plan because the InfoW Debtors had little or no assets. InfoW Docket No. 6 at 7. As part of the roadmap, the InfoW Debtors sought to retain W. Marc Schwartz as the chief restructuring officer ("CRO Schwartz") for the InfoW Debtors. InfoW Docket No. 6-2.

13. On April 27, 2022, the Connecticut Plaintiffs filed a motion to dismiss the InfoW Cases. InfoW Docket No. 36. On that same day, the Texas Plaintiffs joined the motion to dismiss and filed their supplemental motion to dismiss. InfoW Docket No. 42.

14. On April 29, 2022, the U.S. Trustee filed his motion to dismiss. InfoW Docket No. 50. The U.S. Trustee alleged, among other reasons, that the InfoW Cases were filed in bad faith and were engineered for the purpose of shielding Jones and FSS from liability. *Id*. at ¶ 36.

15. A status conference was held on April 29, 2022. At the status conference, the Court scheduled an evidentiary hearing for all three motions to dismiss for May 27, 2022.

16. On May 13, 2022, the Connecticut Plaintiffs filed a notice of dismissal with prejudice of claims against the InfoW Debtors in the United States Bankruptcy Court for the District of Connecticut. A status conference was scheduled for May 24, 2022, for the Connecticut Court to consider the Connecticut Plaintiffs' dismissal of the InfoW Debtors from the defamation lawsuits. InfoW Docket No. 98.

17. On May 18, 2022, the Texas Plaintiffs agreed to dismiss their claims against the InfoW Debtors in the defamation lawsuits filed in state court. On May 19, 2022, the Court entered the

003281

"Stipulation and Order" which memorialized this agreement between the Texas Plaintiffs and the

InfoW Debtors. InfoW Docket No. 99.

**C.  Lee and Schwartz begin to represent FSS in addition to the InfoW Debtors but do not inform the Court.**

18. On May 18, 2022, the InfoW Debtors filed an Emergency Motion to Continue Hearing

Date on Motion to Dismiss (the "Emergency Continuance Motion"). In the continuance request,

the InfoW Debtors represented that:

> Continuing the Original Hearing Date until June will also permit the CRO who has been engulfed in evaluating the dismissals with prejudice issues to now focus on the remaining creditors of the Debtors. The CRO will be able to evaluate either before or by the June hearing date whether he should proceed with trying to confirm a subchapter v plan of reorganization or handle these claims outside of bankruptcy. Again, such effort will be [sic] wise use of limited financial resources. Such an approach will also save valuable judicial resources.

InfoW Docket No. 95, at ¶ 21.

19. On the morning of May 19, 2022, Attorney Lee filed an Application to Employ KSLPLLC

as Attorneys for the Debtors (the "KSLPLLC Application"). InfoW Docket No. 97. The KSLPLLC

Application was accompanied by the InfoW Lee Declaration. InfoW Docket No. 97-1.

20. In the InfoW Lee Declaration, Attorney Lee affirmatively stated that he had no connections

with FSS and Jones. The InfoW Lee Declaration provided the following:

> KSLPLLC performed the following actions to determine whether it or any of its attorneys has any disclosable connections, to the Debtors, creditors, any other party in interest, their respect[sic] attorneys and accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any of the judges for the Southern District of Texas. I conducted a search of KSLPLLC files to determine using the list of parties listed in Schedule I hereto whether the firm had any connections to or represented any of the parties listed on Schedule 1. The search revealed that the firm had not and did not presently represent any of the parties listed on Schedule 1.
>
> The results of the forging connections search process confirm that neither I, KSLPLLC, nor any of its employees or shareholders, to the best of my knowledge, have any disqualifying connections…the only connection to any of

6

the parties on Schedule 1 is by virtue of having represented the three Debtors while a partner at PLR.

InfoW Docket No. 97-1, at ¶¶ 10-12.

21. Schedule I attached to the InfoW Lee Declaration included "Free Speech Systems LLC" and "Alex Jones" as "Searched Parties." InfoW Docket No. 97-1. Attorney Lee signed and executed the InfoW Lee Declaration on May 19, 2022. *Id*.

22. In the afternoon of May 19, 2022, the Court conducted a hearing on the Emergency Continuance Motion. At the hearing, the Connecticut Plaintiffs and Texas Plaintiffs announced that they were proceeding with their dismissal with prejudice of the InfoW Debtors as defendants in both the Texas and Connecticut defamation lawsuits.

23. In consideration of parties working to finalize the state court dismissals with prejudice, Attorney Lee requested additional time to respond to the U.S. Trustee's motion to dismiss the InfoW Cases. Among the bases for the continuance was that the CRO needed additional time to fulfill his fiduciary duties to the other creditors and Attorney Lee stated that "the other part that I have to do is renegotiate the plan support agreement if the debtors intended to move forward with respect to a small subchapter v plan." Tr. May 19, 2022, at 16, 21-24.

24. Based on the representations made by Attorney Lee, the Court reset the evidentiary hearing for June 10, 2022. Towards the conclusion of the status hearing, Attorney Lee assured the Court of the chief restructuring officer's commitment to the InfoW Debtors and stated the following:

> MR. LEE: I do want you to know that Mr. Schwartz in his fiduciary capacity is evaluating all alternatives.
>
> THE COURT: Oh, I'm sure he is.
>
> MR. LEE: I just want you to know that.

Tr. May 19, 2022, at 23, 13-16.

7

003283

25. Despite those representations, according to CRO Schwartz, sometime on that same day, May 19, 2022, Attorney Lee asked CRO Schwartz to send an engagement letter to FSS outlining his retention as the CRO for FSS. CRO Schwartz prepared an engagement letter that day and it was sent via e-mail to Ray Battaglia, counsel for FSS. FSS Docket No. 14-4.

26. On May 26, 2022, Attorney Lee appeared on behalf of the InfoW Debtors at the Section 341 Meeting. The U.S. Trustee continued the creditors' meeting for one week, to June 2, 2022. As of May 26, 2022, there was no agreement between the U.S. Trustee and the InfoW Debtors to dismiss the InfoW Cases.

27. On June 1, 2022, the U.S. Trustee and the InfoW Debtors finalized a stipulated dismissal order. The stipulated dismissal order was submitted later that day.

28. On June 2, 2022, the InfoW Debtors, through Attorney Lee, filed a response to the U.S. Trustee's motion to dismiss. The InfoW Debtors asserted that, as of June 2, 2022, the InfoW Cases still served valid bankruptcy purposes, despite their agreement with the U.S. Trustee to dismissal just a day before. At the time of the response, both Attorney Lee and CRO Schwartz were providing services to FSS, but the InfoW Debtors stated that the CRO was "independent" and "the duty of the Debtors and their professionals as estate fiduciaries is clear and unwavering." InfoW Docket No. 112 at ¶¶ 6-7. The response did not mention any relationship between FSS and Schwartz or between Lee and FSS.

29. On June 10, 2022, the Court held a hearing on the motion to dismiss and allowed all parties to provide any comments. Neither Schwartz nor counsel for the InfoW Debtors, who both addressed the Court that day, informed the Court of any connections to FSS. The Court then entered the stipulated order dismissing the InfoW cases. InfoW Docket No. 114.

**D. During the FSS case, the Court and parties learn about Schwartz's and Lee's representation of FSS during the InfoW cases.**

8

003284

30. On July 26, 2022, the damages phase of the defamation lawsuit against FSS and Jones began in Austin, Texas. On July 29, 2022, at the conclusion of the first week of trial in Austin, FSS filed for bankruptcy protection.

31. On that same day, CRO Schwartz filed a Declaration with the Court in support of the first day motions. Docket No. 10. In that Declaration, Schwartz informed the Court for the first time that "[o]n June 7, 2022, the Debtor confirmed my retention as the Debtor's Chief Restructuring Officer (the "CRO") and SALLC as its financial advisors as of May 19, 2022. *Id.* at ¶ 9. Schwartz also declared, "Since May 19, 2022, FSS has retained Schwartz as its Chief Restructuring Officer ("CRO"), with broad powers to review the company's past financial performance, analyze the condition of FSS's books and records and evaluate whether FSS is a business that can be reorganized." *Id.* at ¶ 40. SALLC was retained to perform various accounting and forensic work associated with his mandate.

32. On August 1, 2022, at the consent of FSS and the Texas Plaintiffs, the Court entered an order lifting the automatic stay and allowing the trial in Austin to proceed to judgment. Further, at this hearing, the Court expressed concerns about transparency in the bankruptcy process, specifically the May 19th engagement between CRO Schwartz and FSS while the InfoW Cases were pending. The Court asked the following:

> I need to understand as well, on May 19th, you were representing three debtors who are on the opposite side of a proposed plan support agreement. We never took action but you were also seeking retention from Free Speech at the same time? I don't think I ever knew about that.

33. On August 3, 2022, the Court conducted a cash collateral hearing (the "August 3rd hearing"). At the hearing, CRO Schwartz, who was now acting as the CRO for FSS, testified for several hours. Again, a point of concern raised by the Court was the nondisclosure of connections

003285

between the estate professionals[3] in the InfoW Cases and FSS and Jones. The Court asked the following:

> Let me get the question – I might as well ask it now because it's a good spot...I just need to understand it. On May 19th, there was a hearing before me where on May 18th, there was a request for a continuation on a motion to dismiss…and in this case, there is a letter dated by you to Free Speech dated the same day. I may be reading much into this, but it seems to me that you – either you wrote the letter that day or you had been in conversation with Free Speech before you wrote that – before that day you sent the letter. And I just need to understand – none of this was ever disclosed to me in connection with the case and the cases were dismissed on June the 10th officially, which tells me that Mr. Jones signed a retention letter. So, you were actively retained before these cases were dismissed – the last cases were dismissed – and I just need to understand, one, why that was never disclosed to me, and two, when did you begin to start soliciting or having conversations about representing Free Speech Systems…

Tr. August 3, 2022 at 147-148, 21:19.

In response to the Court's questions, CRO Schwartz stated that he could not recall the date but assured the Court that conversations concerning the FSS engagement only occurred "after we had been substantially convinced that we were going to be terminating the InfoWars bankruptcy." Tr. August 3, 2022 at 149, 4-8.

34. After listening to several hours of testimony at the August 3rd Hearing and upon the Sandy Hook Families' oral request for the formation of a tort claimant committee, the Court stated the following:

> [T]here's been oral request for the appointment of a committee, and that can be done by the Court for cause. I'm not going to grant that today, but I am going to express some real concerns about what I heard, and I'll express what they are. You know, whether you realize it or not, Mr. Schwartz was negotiating on both sides of a deal.

Tr. August 3, 2022 at 239, 9:17.

---

[3] During CRO Schwartz's testimony, the Court indicated that it had concerns regarding Attorney Lee's retention by FSS as well: "I [ask] Mr. Lee a few questions as well at some point, but I'll need to understand that as well, but today's not that day. Today's cash collateral, and so I do want – and I know I took this off on a tangent." Tr. August 3, 2022, at 150, 9-11.

003286

35. Based on the testimony at the August 3rd Hearing, the Court further questioned the independence of S & L and CRO Schwartz at the outset of the present case as it relates to potential claims against Jones and other insiders:

> [T]he Debtor is going to have to make some tough decisions at some point. And it's going to have to really analyze those claims and see whether those claims have any merit…[and] I'm not sure that parties who were introduced in the last case could fill that role either. But the Debtor needs to hear that from me, and I think debtors are entitled, especially early on in a case, to think about what the judge may have to say. And these are certainly rare comments, but these are certainly uncommon cases.

Tr. August 3, 2022, at 241, 5-19.

36. On August 20, 2022, FSS filed applications to employ CRO Schwartz (the "Schwartz Application") as the Debtor's Chief Restructuring Officer and S & L as co-counsel. The S & L Application was accompanied by a declaration by Attorney Lee (the "FSS Lee Declaration"). The FSS Lee Declaration disclosed for the first time that "the first services any attorney of Shannon & Lee LLP provided to FSS occurred on May 24, 2022, were provided by me through Kyung S. Lee PLLC…" FSS Docket No. 85-3, ¶ 26.  Further, the S & L Application disclosed that "KSLPLLC received payment from the Debtor of $21,986.59 for services provided to FSS from May 24, 2022, through May 31, 2022." *Id*. at FN. 1.[4] Lastly, the FSS Lee Declaration provided that attorneys of S & L "represented the InfoW Debtors in the negotiations of the Plan Support Agreement under which FSS and Alex Jones committed to provide funding for the InfoW Debtors." *Id.* at 85-3, ¶ 15(b).

---

[4] FSS filed a Statement of Financial Affairs (the "SOFA") on August 29, 2022. FSS Docket No. 122. Question 11 on the SOFA requires disclosure of payments related to bankruptcy – "List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case." Payments to Shannon & Lee were identified, as of June 6, 2022, however, no payments in the amount of $21, 986.59 were recorded on FSS's SOFA.

003287

37. In the Schwartz Application, FSS asserted that "the CRO and SALLC's mandate to 'lead InfoW's management and personnel through the restructuring process' had for all practical purposes concluded by May 19, and for sure by June 6." FSS Docket No. 83, ¶ 44.

38. On August 25, 2022, the Sandy Hook Plaintiffs filed a motion to request the appointment of a tort claimants committee and to remove the debtor-in-possession. The Sandy Hook Plaintiffs alleged, among other reasons, that CRO Schwartz mismanaged the estate resources for Jones' benefit and failed to disclose his connections to FSS while acting as the CRO for the InfoW Debtors. FSS Docket No. 102.

## OBJECTION

39. The S & L Application should be denied due to Attorney Lee's deficient disclosure of his connections to FSS and Jones in the related InfoW Cases. The disclosure process is self-policed by the professionals that appear before the Court, and when a disclosure violation occurs, it should be met with a strong rebuke. While this is an unusual scenario in that the KSLPLLC Application in the InfoW Cases was never heard and the InfoW Cases are now closed, the current case is related to the prior cases and includes substantially all the same players.  To effectuate the disclosure mandates in Bankruptcy Rule 2014 and to address the prior nondisclosure, the Court should exercise its broad discretion under Section 327(a) to consider the prior acts of an S & L attorney in violation of the disclosure obligations and to deny the S & L Application in this related case.

**A. The Court has Broad Discretion under 11 U.S.C. § 327(a) in Deciding Whether to Approve an Application to Employ an Estate Professional.**

40. The Bankruptcy Code provides a uniform scheme for retaining and compensating court-authorized attorneys under 11 U.S.C. §§ 327-331, 503, and 507. Section 327 provides that the debtor-in-possession may employ, with the Court's approval, professionals who are disinterested and who do not hold or represent interest adverse to the estate. 11 U.S.C. §§ 327. In addition, the

003288

applicants must also comply with Bankruptcy Rule 2014(a). *See In re Bechuck*, 472 B.R. 371, 375 (Bankr. S.D. Tex. 2012).

41. Section 327(a) of the Bankruptcy Code provides the Court with a wide latitude of discretion when professionals are seeking to work on behalf the bankruptcy estates. The statutory language of section 327(a) shows that Congress intended the bankruptcy court to have broad discretion in making its determination, as it provides that "the trustee [or debtor in possession, under 11 U.S.C. § 1107], with the court's approval *may* employ one or more [professionals]." [emphasis added]. Congress could not have more clearly stated that (i) no professionals, on any terms, can be employed without prior court authorization, and (ii) the court has broad discretion in deciding whether to approve or disapprove an employment application, and is not required to accept the proposed professional's application. The court may – or may not, in its sound discretion – approve a proposed employment application. *Cf. United States v. Rodgers,* 461 U.S. 677, 706 (1983) ("the word 'may,' when used in a statute, usually implies some degree of discretion").

42. Many decisions hold that bankruptcy courts have broad discretion in deciding whether to approve an application to employ an estate professional under section 327(a). *See, e.g.*, *In re Jackson*, 484 B.R. 141, 154 (Bankr. S.D. Tex. 2012) *citing Arnes v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995); *In re Bigler, LP*, 422 B.R. 638, 643 (Bankr. S.D. Tex. 2010) ("This Court has substantial discretion to grant an application to employ a professional for the estate."); *Miller v. United States Trustee*, 197 F.3d 13, 17 (1st Cir. 1999) ("Bankruptcy courts historically have been accorded wide discretion to oversee the terms and conditions of a debtor's engagement of professionals[.]"); *Interwest Bus. Equip. v. United States Trustee*, 23 F.3d 311, 315 (10th Cir. 1994) ("[W]e will not second guess a decision not to approve professionals under § 327 unless it exhibits a clear abuse of discretion[.]"); *Harold & Williams Dev. Co.*, 977 F.2d 906, 909

13

(4th Cir. 1992) (the Bankruptcy Code "gives broad discretion to the bankruptcy court over the appointment of professionals to work on behalf of the . . . estate"); *In re Martin*, 817 F.2d 175, 182 (1st Cir. 1987) ("Historically, bankruptcy courts have been accorded wide discretion in connection with fact-intensive matters, and in regard to the terms and conditions of the engagement of professionals."); *Elias v. Lisowski Law Firm (In re Elias)*, 215 B.R. 600, 603 (B.A.P. 9th 1997) ("A bankruptcy court's decision regarding an application for the employment of a professional is reviewed for abuse of discretion.").

43. The Court is not required to approve an application that satisfies the requirements of Section 327(a). "Even if the technical requirements of disinterestedness and not holding or representing an interest adverse to the estate are met, the Court has the discretion to deny the application." *In re LTHM Houston-Operations*, LLC, 2014 WL 5449737, at *5 (Bankr. S.D. Tex. 2014). Additionally, "while disinterestedness and the absence of conflicts may be central to the inquiry, they are by no means exclusive. Indeed, section 327(a) vests the authority for 'approval' within the sound discretion of the court. That authority would be eviscerated were the Court required to approve counsel who met the technical test for disinterest but was ill-suited for other reasons…" *In re Kurtzman,* 220 B.R. 538, 542 (S.D.N.Y. 1998).

44. In the exercise of its discretion under Section 327, the Court is instructed "into taking account the facts of a particular bankruptcy case and the overall objectives of the bankruptcy system." *LTHM Houston-Operations, at *5; see also Official Comm. of Unsecured Creditors v. Harris* (*In re Southwest Food Distribs., LLC*), 561 F.3d 1106, 1112-13 (10th Cir. 2009) (bankruptcy court does not err in considering proposed compensation terms when ruling on employment application); *Harold & Williams Dev. Co.*, 977 F.2d at 910 (bankruptcy court must not "abdicate the equitable discretion granted to it," but must "take into account the facts of a

14

particular case and the overall objectives of the bankruptcy system"); *In re Kurtzman*, 220 B.R. 538, 540 (S.D.N.Y. 1998) (finding that the bankruptcy court did not abuse its discretion when it denied the retention of counsel based on "prior problems involving time records, billing errors, professional conduct, and overall costs of legal services that had led to its conclusion of loss of confidence in the firm"). Here, the requirements that professionals lay bare their connections play an integral part of the Court's function to determine a proposed professional's fitness to represent the bankruptcy estate. "Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts." *In re Downs*, 103 F.3d. 472, 480 (6th Cir. 1996). Bankruptcy courts must be able to expect the proposed professional appointed under 327 to disclose all connections and follow the applicable rules concerning disclosure. "Plainly, the Court will not approve the employment of counsel that does not comport with the applicable ethical and disciplinary regulations." *In re Doors & More Inc.*, 126 B.R. 43, 45 (Bankr. E.D. Mich. 1991).[5]

**B.  As Part of Their Duty to the Court and the Estate, Professionals Have a Continuing Duty to Disclose All Connections with Creditors and Parties in Interest.**

45. Bankruptcy Rule 2014 imposes a complementary duty of disclosure on the applicant so that the Court and parties in interest can determine whether the professional satisfies disinterestedness requirements. Rule 2014 has one primary purpose—to facilitate strict

---

[5] In exercising discretion to deny an application to employ, "the bankruptcy court should interfere with the trustee's choice of counsel only in the rarest cases, such as when the proposed attorney has a conflict of interest, or when it is clear that the best interest of the estate would not be served by the trustee's choice." *In re Smith*, 507 F.3d 64, 71 (2d Cir. 2007)(internal quotations omitted). In the present case, the Court is not depriving the Debtor of its choice in counsel, notably because S & L is proposed co-counsel. If the Court denies the S & L Application, the Debtor continues to be represented by another counsel. While the Bankruptcy Code provides deference to a debtor's choice of counsel, that deference is not absolute. "In a Chapter 11 case, it is fundamental that a debtor in possession or a trustee is obligated to act not in his or her own best interest, but rather in the best interest of the entire estate, including the creditors and owners of the debtor estate." *In re Doors & More Inc.*, 126 B.R. 43 at 45. Here, the prior acts of an S&L attorney, namely the omissions of his connections to FSS and Jones, require the Court to take actions to preserve the integrity of the bankruptcy system and effectuate the disclosure mandates. The seriousness of the omissions and need to preserve the integrity of the system outweigh the Debtor's choice of counsel, especially when the Debtor is represented by co-counsel.

003291

compliance with section 327. "[T]he requirements of Fed. R. Bankr. P. 2014 are more encompassing than those governing disinterestedness inquiry under section 327. For while retention under section 327 is only limited by interests that are 'materially adverse,' under Rule 2014, 'all connections' that are not so remote as to be *de minimis* must be disclosed." *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994).

46. The applicant has the duty to disclose all relevant information to the court and "may not exercise any discretion to withhold information." *In re Woodcraft Studios, Inc.*, 464 B.R. 1, 8 (N.D. Cal. 2011). Thus, "professionals 'cannot pick or choose which connections are irrelevant or trivial.'" *U.S. v. Gallene*, 182 F.3d 578, 588 (7th Cir. 1999) (concluding that a misstatement in a Rule 2014 statement constitutes a material misstatement for purposes of 18 U.S.C. § 152). The duty to disclose under Bankruptcy Rule 2014 is ongoing, continues throughout the case, and "requires 'spontaneous, timely, and complete disclosure.'" *In re The Harris Agency*, 462 B.R. 514, 524 (E.D. Pa. 2011); *see also In re Granite Partners, L.P., 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998)* (court should not have to "rummage through files or conduct independent fact-finding investigations" to determine whether the professional should be disqualified).

47. The disclosure requirements in Rule 2014 are "rooted in the fiduciary relationship between courts and attorneys." *In re Griffin*, 313 B.R. 757, 763 (Bankr. N.D. Ill. 2004). "Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts." *In re Downs*, 103 F.3d 472, 480 (6th Cir. 1996). Applicants "who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 465 (5th Cir. 2012) (citations omitted). "[L]ack of disclosure in and of itself is sufficient to warrant disqualification, even if in

16

the end there was no prejudice." *In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 664 (Bankr. N.D. Ill. 2001); *see also In re Rabex Amuru of N.C., Inc.*, 198 B.R. 892, 897 (Bankr. M.D.N.C. 1996) (attorneys for debtor removed because of appearance of impropriety, even though no harm done to debtor). Professionals must "be meticulous in disclosing 'all connections' with the debtor and other parties in interest, the failure to do so justifying a court's taking significant punitive or corrective action." *In re Byington*, 454 B.R. 648, 657 (Bankr. W.D. Va. 2011); *see also In re EBW Laser Inc.*, 333 B.R. 351, 359 (Bankr. M.D.N.C. 2005) ("The Bankruptcy Court may, in its discretion, disqualify counsel, or deny compensation, as a sanction for failure to make the disclosure required.").

### C. In Exercising Its Broad Discretion, the Bankruptcy Court Should Deny the S & L Application Because of Attorney Lee's Failure to Affirmatively and Timely Disclose His Connections with FSS.

48. The defective disclosure in the InfoW Lee Declaration, which was a statement under penalty of perjury before the Court, is not a minor matter. It "goes to the heart of the integrity of the bankruptcy system." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005). "[T]he duty to disclose under Bankruptcy Rule 2014 is considered sacrosanct because the complete and candid disclosure by an attorney seeking employment is indispensable to the court's discharge of its duty to assure the attorney's eligibility for employment under section 327(a) and to make an informed decision on whether the engagement is in the best interest of the estate." *Id.* As noted, Rule 2014 "is not intended to condone a game of cat and mouse where the professional seeking appointment provides only enough disclosure to whet the appetite of the UST, the court, and other parties in interest, and the burden shifts to those entities to make inquiry in an effort to expand the disclosure." *In re Matco Elec. Group, Inc.*, 383 B.R. 848, 853-54 (Bankr. N.D.N.Y. 2008).

49. Under the PSA and LST in the InfoW Cases, Jones and FSS were designated as the "Third Party Funders." The question regarding the validity of the PSA and LST, and the negotiations

17

surrounding the origination of these documents were contested issues at the center of the InfoW Cases. Unlike other plan support agreements in other chapter 11 cases, no creditors, including the Sandy Hook Plaintiffs, participated in the drafting or negotiations of the PSA and LST. The primary parties to those negotiations were the InfoW Debtors, FSS, and Jones. FSS was on the other side of the transaction from the InfoW Debtors. Even after the InfoW Debtors reached agreements with the Sandy Hook Plaintiffs, the InfoW Debtors did not agree to dismiss the case until June 1, 2022. Attorney Lee informed the Court on May 19, 2022, that he might have to renegotiate the PSA with FSS and Jones to pay the remaining creditors should the InfoW Debtors remain in bankruptcy.

50. Moreover, Attorney Lee had multiple opportunities to disclose to the Court his connections to FSS and Jones. After Attorney Lee was retained by FSS as counsel, the InfoW Debtors filed a response to the U.S. Trustee's motion to dismiss, maintaining that "the duty of the Debtors and their professionals as estate fiduciaries is clear and unwavering." FSS Docket No. 112, ¶ 7. The response is silent concerning the fact that just days before, Attorney Lee provided legal services for FSS and was employed as its bankruptcy counsel. Following the response on June 2, the Court conducted a hearing on the stipulation to dismiss in the InfoW Cases on June 10, 2022. Neither the CRO nor counsel for the InfoW Debtors, who both addressed the Court that day, informed the Court of any connections to FSS. By remaining silent, whether in pleadings, at hearings, or by failing to amend the InfoW Lee Declaration, Attorney Lee misrepresented his connections to the Court and violated the ethical duties of candor and diligence. *See* S.D. Tex. Local R., Appendix D. Guidelines for Professional Conduct; *see also In re Bradley*, 495 B.R. 747, 786 (Bankr. S.D. Tex. 2013)(Attorney's failure to correct misstatements demonstrated lack of candor and respect to the Court).

18

51. While noncompliance with Bankruptcy Rule 2014 may result in disqualification and/or total disgorgement of fees in the InfoW Cases, the transgressions in the InfoW Cases eclipsed the confines of Bankruptcy Rule 2014 because those cases are now dismissed. Bankruptcy Rule 2014 alone is not sufficient to address Attorney Lee's nondisclosure of his connections to FSS and Jones in the InfoW Cases. However, the integrity of the bankruptcy system requires that the Court address Attorney Lee's omissions of his connections to FSS and Jones in the InfoW Lee Declaration. Here, it is appropriate for the Court to exercise its broad discretion under Section 327(a) to address Attorney Lee's prior acts in the related cases—which this case is essentially a continuation of—and deny the S & L Application. Put simply, Attorney Lee did not inform the Court of his connections in a related case, involving the identical parties in interest. Attorney Lee was employed by FSS while he filed pleadings and made statements to the Court that indicated that all estate professionals including CRO Schwartz and Attorney Lee were independent and without outside influences. S & L should not be exempt from the consequences of the prior acts of its named partner attorney because the InfoW Cases were dismissed; especially when S & L, through the same attorney, is now seeking approval from this Court to be employed by FSS— thereby asking the Court to bless the very connection that Attorney Lee previously failed to disclose to the Court. To maintain the integrity of the bankruptcy system and to fully effectuate the mandatory disclosure requirements in Rule 2014, the Court should deny the S & L Application.

003295

## <u>CONCLUSION</u>

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court deny the S & L

Application and grant such other relief as is just and proper.

RESPECTFULLY SUBMITTED:
KEVIN M. EPSTEIN
UNITED STATES TRUSTEE

DATED: 9/14/2022

*/s/ HA M NGUYEN*
Ha Nguyen, Trial Attorney
CA Bar #305411
FED ID NO. 3623593
United States Department of Justice
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, Texas 77002
E-mail: Ha.Nguyen@usdoj.gov
Cell: 202-590-7962

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by electronic means
via ECF transmission to all Pacer System participants in these bankruptcy cases, on the 14th day
of September, 2022.

/s/ Ha M. Nguyen
Ha M. Nguyen

003296

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

### APPLICATION OF DEBTOR FOR AN ORDER (A) AUHTHORIZING EMPLOYMENT OF MARTIN, DISIERE, JEFFERSON & WISDOM L.L.P. UNDER 11 U.S.C. § 327(e), AS SPECIAL COUNSEL, EFFECTIVE AS OF AUGUST 30, 2022, AND (B) GRANTING RELATED RELIEF

THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Free Speech Systems, LLC (the "Debtor" or "FSS"), the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby moves for entry of an order, substantially in the form attached hereto (the "Proposed Order") pursuant to sections 105(a) and 327(e) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the retention of Martin, Disiere, Jefferson & Wisdom L.L.P. (the "MDJW Law Firm" or the "Firm") as special counsel to FSS (the "Application") pursuant to that certain engagement letter agreement by and between the Debtor and the MDJW Law Firm, a copy of which is attached hereto as Exhibit A

(the "Engagement Agreement"), as modified by the Proposed Order. In support of the Application,

the Debtor submits the Declaration of Christopher W. Martin, attached hereto as Exhibit B (the

"Martin Declaration") and respectfully represents as follows:

## JURISDICTION

1.      The United States Bankruptcy Court for the Southern District of Texas (the

"Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core

proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28

U.S.C. § 1408.

2.      The bases for the relief requested herein are sections 105, 327(e), 330, and 363(b)

of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1of the Local Rules

for the Bankruptcy Court for the Southern District of Texas (the "Local Rules").

## BACKGROUND

### A. Case Background

3.      On July 29, 2022 (the "Petition Date"), the Debtor commenced a case by filing a

petition for relief under chapter 11, subchapter v, of the Bankruptcy Code with the Court.

4.      The Debtor continues to operate its businesses and manage its properties as a

Debtor and a Debtor-in-Possession pursuant to Bankruptcy Code § 1182(2).

5.      As of the filing of this Application, no creditors' committee has been appointed in

the Chapter 11 Case by the Office of the United States Trustee for Region 7 (the "U.S. Trustee").

### B.      Proposed Employment of the MDJW Law Firm

    *i.*      *Scope of Employment*

2

003298

6.    Subject to the Court's approval, the Debtor desires to employ and retain the MDJW Law Firm effective as of August 30, 2022 ("Effective Retention Date"), as its special counsel in connection with the appeal of the following cases:

Fontaine v. Free Speech Systems, LLC, et al., D-1-GN-18-001605 (459th District Court, Travis County, Texas) [Chris, the engagement letter says Fontaine is 160, and I have it as 605. Can you check? I think you are missing a digit.

Heslin, et al. v. Free Speech Systems, LLC, et al, D-1-GN18-001835 (459th District Court, Travis County, Texas)

Pozner, et al. v. Free Speech Systems, LLC, et al. D-1-GN-18-001842 (459th District Court, Travis County, Texas)

Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, Marcel Fontaine vs. Alex Jones, Free Speech Systems LLC, PQPR Holdings Limited LLC, PLJR Holdings, LLC, Carol Jones, Case No. D-1-Gn-22-001610 (collectively, the "Travis County Sandy Hook Lawsuits")

7.    The Debtor also desires to retain the MDJW Law Firm to assist The Reynal Firm in any capacity needed on the Travis County Sandy Hook Lawsuits, including but not limited to discovery, law and motion briefing and pleadings, witness preparations to testify, strategy development and execution, pre-trial jury research, trial preparation and assisting in trial in any way needed ( serving as appellate counsel and on the matters in this paragraph, collectively, the "Professional Services").

ii.    *Necessity of Employment*

8.    The Debtor desires to retain the MDJW Law Firm to represent it as its primary appellate counsel and supportive litigation counsel on the Travis County Sandy Hook Lawsuits because (a) the Firm has extensive experience and knowledge with Texas appellate practice and procedure, with the partners at the MDJW Law Firm having handled appeals in Texas courts, the Firm's appellate section lead by Board Certified Appellate attorney and senior partner, Levon Hovnatanian;  (b) due to the subject matter of the Travis Country Sandy Hook Lawsuits and the

3

parties involved, it would be virtually impossible to retain an appellate Firm of the MDJW Law Firm stature or a trial firm to serve as support trial counsel at this point and at these rates, without causing great prejudice to FSS and its creditors (even if it could be done, the cost to have another firm learn the extensive record and discovery in this case, would far exceed the budgeted cost for retaining the MDJW Law Firm on an hourly basis).

9.     The Debtor believes that the Firm is well qualified to perform the requested Professional Services.

10.     The Firm's proposed compensation shall continue at the Firm's normal hourly rates set out in the Engagement Letter. The hourly rate structure is beneficial to the FSS estate based on the projected type of work the MDJW Law Firm will be doing in the foreseeable future for the Debtor. If circumstances change, the Debtor will seek an amendment of the retention of the MDJW Law Firm.

11.     No agreement exists, nor will any be made, to share any compensation received by the Firm for its services with any other person or firm, except as permitted by 11 U.S.C. § 504(b) and Bankruptcy Rule 2016.

12.     No promises have been made to or received by the Firm as to payment or compensation in connection with the FSS bankruptcy case, other than in accordance with the provisions of the Bankruptcy Code and applicable Bankruptcy Rule.

13.     To the best of the Debtor's knowledge, and, as set forth in the proposed attorney's declaration (the "Martin Declaration") attached to this Motion as Exhibit A, the Firm does not have an adverse interest with respect to the matters on which the Firm is to be employed as special litigation counsel as required by 11 U.S.C.§ 327(e).

4

14.     The MDJW Law Firm intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including §§ 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the guidelines (the "Guidelines") established by the U.S. Trustee, and any orders of this Court in this Chapter 11 Case (the "Orders"), for all services performed and expenses incurred during its representation of the Debtor.

15.     Alex E. Jones ("Jones") has agreed to bear and pay 40% of the allowed fees and expenses of MDJW Law Firm, and, therefore, the FSS estate shall only be liable for 60% of the allowed fees and expenses of the MDJW Law Firm.

16.     The Debtor believes that the MDJW Law Firm's agreed terms of reimbursement, compensation, and hourly rates are reasonable. The MDJW Law Firm will notify the Debtor and the U.S. Trustee of any change in the hourly rates charged for services rendered while the Chapter 11 Case is pending.

## RELIEF AS OF AUGUST 30, 2022, IS APPROPRIATE

17.     Pursuant to the Debtor's request, the Firm has agreed to serve as special counsel on and begun work, as deadlines arise from the jury verdicts in the Travis County Sandy Hook Lawsuits, with assurances that the Debtor would seek approval of its employment and retention effective as of August 30, 2022, so that the Firm may be compensated for services it has provided FSS prior to the filing of this Application. No party in interest should be prejudiced as the Firm is providing valuable services to the estate at this time.

003301

## RELIEF REQUESTED

18.     The Debtor requests that the Court enter an order substantially in the form of the

Proposed Order authorizing the Debtor to retain the MDJW Law Firm as special counsel, pursuant

to the terms of the Engagement Agreement, as modified by the Proposed Order, effective as of

August 30, 2022.

## BASIS FOR RELIEF

19.     Bankruptcy Code § 327(e) provides that subject to bankruptcy court approval,

trustees—and debtor-in-possession—"may employ, for a specified special purpose, other than to

represent the trustee in conducting the case, an attorney that has represented the debtor, if in the

best interest of the estate, and, if such attorney does not represent or hold any interest adverse to

the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11

U.S.C. § 327(e).

20.     Bankruptcy Rule 2014 requires certain disclosures prior to the entry of an order

approving the employment of a professional. According to Bankruptcy Rule 2014, the application

must:

> (a)     Be filed by the trustee or committee and served on the United States Trustee (except in case under chapter 9 of the Bankruptcy Code).

> (b)     State the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee; and

> (c)     Be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

6

**A.**     **The MDJW Law Firm Meets the Requirements of Bankruptcy Code § 327(e)**

21.     Based on the Martin Declaration, the Debtor submits that the MDJW Law Firm neither holds nor represents a disqualifying adverse interest. 11 U.S.C. § 327(e).

22.     The Martin Declaration also discloses no connections with the Debtor that would disqualify the MDJW Law Firm. The Debtor is not aware of any connections in addition to those disclosed in the Martin Declaration.

**B.**     **This Application and the Martin Declaration Meet the Requirements of Bankruptcy Rule 2014**

23.     This Application and the Martin Declaration meet the requirements as set out in Bankruptcy Rule 2014.  This Application is made by the Debtor and sets out the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, the proposed arrangement for compensation.  The Martin Declaration is a verified statement pursuant to 28 U.S.C § 1746 that sets out all connections that the MDJW Law Firm has with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.  The Debtor is not aware of any other connections in addition to those disclosed in the Martin Declaration.

<u>CONCLUSION</u>

WHEREFORE, the Debtor respectfully requests that this Court enter an order substantially in the form of the Proposed Order approving the employment of the MDJW Law Firm commencing on August 30, 2022 and grant any other relief that is just and proper.

*[Remainder of Page Intentionally Left Blank]*

7

003303

Dated: September 14, 2022

Respectfully submitted,

_/s/ W. Marc Schwartz_
W. Marc Schwartz
Chief Restructuring Officer and Authorized
Representative of Free Speech Systems,
LLC, Debtor and Debtor-in-Possession

8

003304

## CERTIFICATE OF SERVICE

[Service List Updated as of 9.14.22]

I hereby certify that a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service on the date of filing, (b) by U.S.P.S. first class mail on all parties indicated in the attached service list within 24 hours of the filing, and (c) the following parties by email within 24 hours of the date of filing:

Attn: Mark Bankson
William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

Attn: Alinor C. Sterling
Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581
rww@bymanlaw.com

Attn: Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002
jarrod.martin@chamberlinlaw.com

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002
mhaselden@haseldenfarro.com

Attn: Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548
christopher.dylla@oag.texas.gov

Attn: Ha M. Nguyen
Jayson B. Ruff
Office of U.S. Trustee
515 Rusk, Suite 3516
Houston, TX 77002
ha.nguyen@usdoj.gov
jayson.b.ruff@usdoj.gov

*/s/Kyung S. Lee*

10

003306

**USPS Service List**
**Twenty Largest Unsecured Creditors**

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

Commerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

11

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

## Parties Claiming Interest or Lien Affected

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

## Parties Filing Notice of Appearance

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701

Stephen A. Roberts
Stephen A. Roberts PC
1400 Marshall Ln
Austin, Texas 78703

Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002

Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548

Jason A. Starks
Delia Garza
Travis County Attorney
P.O. Box 1748Austin, Texas 78767

003308

**Subchapter V Trustee**

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002

**U.S. Trustee**

Attn: Ha M. Nguyen
Jayson B. Ruff
Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

**Additional Notice Parties**

Attn: Mark Bankson
William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterling
Christopher Mattei
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 0660

Attn: Trent Thomas
BCC UBC LLC
1608 W. 5th Street, Suite 240
Austin, Texas 78703

**Exhibit A**

**MDJW Engagement Agreement**

003310



Martin, Disiere, Jefferson & Wisdom
——— ATTORNEYS AT LAW ———

FREE SPEECH SYSTEMS, LLC
August 30, 2022
Page 1 of 4

# Martin, Disiere, Jefferson&Wisdom L.L.P.
### ——— ATTORNEYS AT LAW ———
808 Travis ● Suite 1100 ● Houston, Texas 77002 ● Phone: 713-632-1700 ● Fax: 713-222-0101 ● www.mdjwlaw.com

CHRISTOPHER W. MARTIN
PARTNER
Direct: 713-632-170 1
e-mail: martin@mdjwlaw.com
Board Certified ● Consumer Law
Texas Board of Legal Specialization

August 30, 2022

**<u>Via Email</u>**
W. MARC SCHWARTZ
CHIEF RESTRUCTURING OFFICER
FREE SPEECH SYSTEMS, LLC
3019 Alvin Devane Blvd. Ste 300
Austin, TX 78741
Email: mschwartz@schwartzassociates.us

RE:    *FONTAINE V JONES Case No. D-1-GN-18-00160 5; HESLIN V JONES Case No. D-1-GN-1 8-001 835; POZNER V. JONES Case No. D-1- GN-1 8-001 842; NEIL HESLIN, SCARLETT LEWIS, LEONARD POZNER, VERONIQUE DE LA ROSA, MARCEL FONTAINE VS. ALEX JONES, FREE SPEECH SYSTEMS LLC, PQPR HOLDINGS LIMITED LLC, PLJR HOLDINGS, LLC, CAROL JONES Case No. D-1- GN-22-001610*

Dear Mr. Schwartz:

This will follow our recent communication I have had with Andino Reynal regarding FREE SPEECH SYSTEMS LLC'S ("FSS" or "Debtor") interest in retaining our Firm's professional services. This letter contains our Fee & Legal Representation Agreement ("Agreement") for your review and execution so that the terms of our representation will be understood and mutually agreeable. Notwithstanding entry into the Agreement by us, I understand that my firm's official retention by FSS requires approval by the Bankruptcy Court. You have assured me that FSS will seek approval of my firm's retention such that it will relate back to August 30, 2022, so that our firm can begin work immediately and yet be compensated for that work when the order is signed by the Bankruptcy Court.



Martin, Disiere, Jefferson & Wisdom
———— ATTORNEYS AT LAW ————

FREE SPEECH SYSTEMS, LLC
August 30, 2022
Page 2 of 4

**Introduction**. The law firm of Martin, Disiere, Jefferson & Wisdom L.L.P ("MDJW," "Firm," "We," "Us" or "Our") have been asked to serve as special legal counsel and/or provide legal advice to FREE SPE E CH SYSTE MS, LLC, ("Client" or "You") arising out the Sandy Hook shooting litigation in Texas referenced above (collectively, the "Travis County Sandy Hook Lawsuits" described in the subject matter of this letter).

**Scope of Representation**. Our representation of FRE E SPE E CH SYSTE MS, LLC, will include providing our legal professional services related to the above-referenced suits beginning now and continuing through any resolution (e.g., settlement, dismissal, final judgment, or trial unless instructed or otherwise withdrawn). You have asked us to handle the appeal of the recently tried Texas case. We envision serving as co-counsel with The Reynal Firm as needed in the still-pending cases in any capacity desired. The Reynal Firm shall remain lead counsel and will determine the work we need to do for the Client, and we are also available to assist The Reynal Firm in any capacity needed including discovery, law and motion briefing and pleadings, witness preparations to testify, strategy development and execution, pre-trial jury research, trial preparation and assisting in trial in any way needed. The appeal(s) will be handled through our Firm's appellate section lead by Board Certified Appellate attorney and senior Partner, Levon Hovnatanian.

**Litigation Expenses.** We will charge our actual expenses as incurred. Our law firm will bill for Our fees and expenses which We incur on a monthly basis. Such bill shall be informational only. FSS shall pay those expense when allowed by the Bankruptcy Court pursuant to an Order Authorizing Interim Compensation or pursuant an order of the Bankruptcy Court authorizing payment pursuant to an interim or final fee application order. The Client shall have the timelines provided for by the Bankruptcy Court to object to the reasonableness of the expenses incurred.

Expenses are highly unpredictable, particularly since expenses are a function of the tactics and actions taken by the other party, e.g., discovery requests, motions, etc. Further, your own objectives in the litigation may change. For example, you may wish for Us to file certain motions that will require attorney time that might not otherwise be expended. Therefore, we cannot accurately estimate litigation expenses at this time, however, we will work with you both to keep legal fees and expenses down. You have the right to ask for a budget report prior to us performing any needed work and we will do so if you ask. If you need a budget prior to Our beginning any legal work, we can provide you with a budget before the work begins.

**Hourly Fees.** Our compensation for professional services rendered for Our representation of FRE E SPE E CH SYSTE MS, LLC in the Travis County Sandy Hook Lawsuits through trial and on appeal will be billed at Our hourly rates identified below. Our firm's hourly rates for 2022 are as follows:



Martin, Disiere, Jefferson & Wisdom
———— ATTORNEYS AT LAW ————

FREE SPEECH SYSTEMS, LLC
August 30, 2022
Page 3 of 4

| | |
|---|---|
| Chris Martin & Levon Hovnatanian | $425 |
| Other Partners as needed | $295 |
| Senior Associates/Counsel as needed | $245 |
| Junior Associates as needed | $195 |
| Paralegals as needed | $145 |

Our hourly rates are adjusted annually, and those rates will be reflected in the invoices. Expenses actually incurred will also be either billed or sent to you for direct payment if from a third-party vendor. If permitted by the Bankruptcy Code, You agree to retain and pay any needed expert witnesses directly and Our firm will not have direct responsibility for the payment of expert witness fees and expenses. We will bill You monthly for all fees and expenses for Our work on your cases.  You agree to pay each of Our invoices pursuant to any court orders authorizing interim or final payment of the firm's fees and expenses.

**Payment of Fees and Expenses**. All Our fees and expenses are payable at the offices of Martin, Disiere, Jefferson & Wisdom L.L.P., 808 Travis, Suite 1100, Houston, Texas, 77002 within the deadlines established by the court orders approving payment of each invoice by check, wire transfer or other legal tender. If you or your representative dispute any portion of any invoice, you agree to pay *all undisputed portions* of the invoice timely together with providing a written explanation outlining any billing questions or billing disputes you may have as to any entries not being timely paid. You agree to timely discuss any billing questions or billing disputes with us and make good faith efforts to resolve any questions or disputes regarding any invoice. We agree that your failure to timely pay any of Our invoices in whole or part is grounds for Our immediate withdrawal from the cases as counsel.

**Termination.** Subject to Bankruptcy Court approval, party to this Agreement may terminate this agreement at any time for any reason upon ten (10) days' written notice to the other party at the last known mailing address of that party.

**Withdrawal.** If We find it necessary or desirable to in these cases for any reason including but not limited to nonpayment of Our fees, failure to pay Our incurred expenses, or lack of cooperation with us, you hereby agree to seek substitute counsel if you so desire and to approve any compliant motion We will file with the court requesting such withdrawal, regardless of whether or not such substitute counsel has been obtained.

**Law to Apply.** This Agreement shall be construed and integrated under and in accordance with the laws of the State of Texas. Any proceeding to enforce or concerning this Agreement shall be resolved by the Bankruptcy Court. This Agreement shall be binding upon and inure to the benefit of the parties hereto as well as their successors and assigns. Further, this Agreement supersedes



Martin, Disiere, Jefferson & Wisdom
——— ATTORNEYS AT LAW ———

FREE SPEECH SYSTEMS, LLC
August 30, 2022
Page 4 of 4

any prior written or oral understandings or agreements between the parties concerning the subject matter of this Agreement.

Please carefully read and make sure You on behalf of yourself, your personal interests and your business interests fully understand this Agreement or have another attorney review it and advise You concerning its terms. If the foregoing conditions meet with your complete approval, please sign and date the original of this letter indicated below and return it to me and retain a copy for your files.

We appreciate the opportunity to provide representation and look forward to working with you, your business associates, and your legal team.

Very truly yours,

MARTIN, DISIERE JEFFERSON & WISDOM L.L.P.

Christopher W. Martin

AGREED:

Printed Name: <u>W. Marc Schwartz</u>

Signature: <u>W. Marc Schwartz</u>          <u>September 14, 2022</u>
W. Marc Schwartz                           Date
Chief Restructuring Officer
FREE SPEECH SYSTEMS, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Case No. 22-60043 |
| | § | |
| DEBTOR. | § | Chapter 11 (Subchapter V) |
| | § | |

DECLARATION OF CHRISTOPHER W. MARTIN IN SUPPORT OF
THE DEBTOR' APPLICATION TO EMPLOY MARTIN, DISIERE, JEFFERSON &
WISDOM L.L.P UNDER 11 U.S.C. § 327(e), AS SPECIAL COUNSEL,
EFFECTIVE AS OF AUGUST 30, 2022

I, Christopher W. Martin, declare under penalty of perjury as follows:

1.      I am an attorney at law duly admitted and in good standing to practice in the State

of Texas, United States District Court for the Southern District of Texas and the Fifth Circuit Court

of Appeals. I am the founder of the Houston office of Martin, Disiere, Jefferson & Wisdom L.L.P.

(the "Firm" or the "MDJW Law Firm"), located at 808 Travis, Suite 1100, Houston, Texas 77002.

2.      I am making this declaration in support of the Debtor's Application to Employ

Martin, Disiere, Jefferson & Wisdom L.L.P. Under 11 U.S.C. § 327(e), as Special Counsel,

Effective as of August 30, 2022 (the "Application"). Unless otherwise indicated, capitalized terms

used but not defined herein have the meanings ascribed to such terms in the Application.

3.      Except as otherwise noted, all facts set forth in this declaration are based upon my

personal knowledge, upon the client and matter records of the MDJW Law Firm reviewed by me

or derived from information available to me that I believe to be true and correct. If called upon to

testify, I would testify competently to the facts set forth in this Declaration.

### A.      Scope of Services

4.      Pursuant to the Engagement Agreement, the Application, and the Proposed Order attached thereto, the MDJW Law Firm will serve as special counsel to the Debtor in connection with the appeal of the Travis County Sandy Hook Lawsuits and serve as supporting litigation counsel to The Reynal Firm on the same lawsuits as more particularly specified in the Engagement Letter.

### B.      Proposed Compensation

5.      The MDJW Law Firm will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including §§ 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, Guidelines, and Orders for all services performed and expenses incurred during its representation of the Debtor.

6.      Subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and the Orders, the MDJW Law Firm intends to request the allowance of its compensation as set out in the Engagement Agreement. These rates reflect the rates that MDJW Law Firm ordinarily charges clients in bankruptcy and non-bankruptcy matters and are less than or equal to the rates of similarly skilled and experienced attorneys in this district. The MDJW Law Firm submits that these agreed terms of reimbursement, compensation, and hourly rates are reasonable. The MDJW Law Firm will notify the Debtor of any change in the hourly rates charged for services rendered.

003316

**C.**    **Disclosure of Connections**

*i.*    *Search and General Descriptions of Connections*

7.    The MDJW Law Firm performed the following actions to determine whether it or any of its attorneys has any disclosable connections, to the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any of the judges for the U.S. Bankruptcy Court for the Southern District of Texas.

8.    I conducted a search of the MDJW Law Firm files to determine using the list of parties in interest listed in <u>Schedule 1</u> hereto whether the Firm had any connections to or represented any of the parties listed on Schedule 1.

9.    Except for Alex E. Jones, the search revealed that the Firm had and did not represent any of the parties listed on Schedule 1. It is contemplated that the Firm will also represent Mr. Jones in connection with the appeal of any judgements from the Travis County Sandy Hook Lawsuits.

10.    Furthermore, the MDJW Law Firm may have provided services to creditors or other parties in interest inadvertently omitted from Schedule 1 or the description above. If such connections exist, they would be on matters wholly unrelated to the service for which FSS seeks to engage the MDJW Law Firm.

11.    The results of the foregoing connections search process confirm that neither I, the MDJW Law Firm, nor any of its employees or partners, to the best of my knowledge, have any disqualifying connections.

3

12.     Based on the connections review conducted to date and described herein, to the best of my knowledge and insofar as I can ascertain, I and the MDJW Law Firm do not hold an interest adverse to the Debtor or the estate with respect to the matter on which the Firm is to be employed.

13.     I am not a creditor, an equity security holder, or an insider of the Debtor; I am not and was not within 2 years before the Petition Date a director of the Debtor; and I do not have any interest materially adverse to the interests of the Debtor's bankruptcy estate or any class of creditors or equity security holders.

14.     The MDJW Law Firm is not a creditor, an equity security holder, or an insider of the Debtor; the MDJW Law Firm is not and was not within 2 years before the Petition Date an employee, officer, or director of the Debtor; and the MDJW Law Firm does not have any interest materially adverse to the interests of the Debtor's bankruptcy estate or any class of creditors or equity security holders.

15.     The MDJW Law Firm does not possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate. The MDJW Law Firm also does not possess or assert any economic interest that would create either an actual or potential dispute in which the estate is a rival claimant. The MDJW Law Firm does not have any incentive to act contrary to the best interests of the estate and its creditors.

**D.     Bankruptcy Rule 2016(b) Disclosures**

16.     Pursuant to Bankruptcy Code § 504 and Bankruptcy Rule 2016, the MDJW Law Firm has not shared or agreed to share (a) any of its compensation from the representation of the Debtor with any other persons, or (b) any compensation any other persons have received, may have received, or will receive.

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed on September 14, 2022,

By: /s/*Christopher W. Martin*
Christopher W. Martin

5

003319

## SCHEDULE 1

## TO MARTIN DECLARATION

## SEARCHED PARTIES

Debtor & Professionals

    Law Office of Ray Battaglia             Schwartz Associates

    Shannon & Lee LLP


Debtor's Equity

    Alexander E. Jones

Largest 20 Unsecured Creditors & Litigation Claimants

| | |
|---|---|
| Elevated Solutions Group | Dona Soto |
| Atomial LLC | Erica Lafferty |
| Cloudfare, Inc. | Francine Wheeler |
| Jacquelyn Blott | Ian Hockley |
| Joel Skousen | Jacqueline Barden |
| eCommerce CDN LLC | Jennifer Hensel |
| Paul Watson | Jeremy Richman |
| Greenair, Inc. | Jillian Soto |
| Edgecast, Inc. | Leonard Pozner |
| Ready Alliance Group, Inc. | Marcel Fontaine |
| Getty Images, Inc. | Mark Barden |
| RatsMedical.com | Neil Heslin |
| David Icke Books Limited | Nicole Hockley |
| WWCR | PQPR Holdings Limited, LLC |
| CustomTattoNow.com | Robert Parker |
| AT&T | Scarlett Lewis |
| Justin Lair | Veronique De La Rosa |
| Brennan Gilmore | William Sherlach |
| Carlee Soto-Parisi | William Aledenberg |
| Carlos Soto | Larry Klayman |
| Christopher Sadowski | Randazza Legal Group |

Attorneys for Creditors and Parties in Interest

| | |
|---|---|
| Kaster Lynch Farrar & Ball LLP | Zeisler & Zeisler P.C. |
| Koskoff Koskoff & Bieder | Jordan & Ortiz, P.C. |
| Fertitta & Reynal LLP | McDowell Heterhington LLP |

The Akers Law Firm PLLC
Copycat Legal PLLC
Waller Lansden Dortch & Davis,
LLP

Akin Gump Strauss Hauer & Feld
LLP

U.S. Bankruptcy Judges and Staff

Chief Judge David R. Jones
Judge Marvin Isgur
Judge Christopher M. Lopez
Judge Jeffrey P. Norman
Judge Eduardo V. Rodriguez
Albert Alonzo
Ana Castro

Tracey Conrad
Jeannie Chavez
LinhThu Do
Tyler Laws
Kimberly Picota
Vriana Portillo
Mario Rios

U.S. Trustee Personnel

Alicia Barcomb
Jacqueline Boykin
Luci Johnson-Davis
Hector Duran
Barbra Griffin
Brian Henault
Linda Motton
Ha Nguyen
Glenn Otto
Yasmin Rivera

Jayson B. Ruff
Millie Sall
Patricia Schmidt
Christy Simmons
Gwen Smith
Stephen Statham
Christopher R. Travis
Clarissa Waxton
Jana Whitworth

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

## ORDER APPROVING DEBTOR'S APPLICATION TO EMPLOY MARTIN, DISIERE, JEFFERSON & WISDOM L.L.P. UNDER 11 U.S.C. § 327(e), AS SPECIAL COUNSEL, EFFECTIVE AS OF AUGUST 30, 2022

Upon the application (the "Application")[1] filed by the Debtor to retain and employ Martin, Disiere, Jefferson & Wisdom L.L.P. (the "MDJW Law Firm" or "Firm") pursuant to Bankruptcy Code §§ 327(e) and 330 and Bankruptcy Local Rule 2014-1, as more fully set forth in the Application and all exhibits and attachments to the Application; and upon the Court's finding that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iii) venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the Application and the Martin Declaration are in full compliance with all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and Orders and procedures of this Court; (v) the MDJW Law Firm does not represent an interest adverse to the Debtor's estate with respect to the matters upon which it is to be engaged; (vi) the MDJW Law Firm is qualified to represent the Debtor's estate under § 327(e) of the Bankruptcy Code; (vii) the terms of MDJW Law Firm's employment have been disclosed and are reasonable under the circumstances; (viii) proper and adequate notice of the Application, the deadline to file

---

[1] Capitalized terms not defined herein have the meaning set forth in the Application.

any objections to the Application, and the hearing thereon was given, and no other or further notice is necessary; (ix) the legal and factual bases set forth in the Application establish just cause for the relief granted herein; (x) the relief sought in the Application is in the best interest of the Debtor's estate; (xi) any timely objection to the Application having been withdrawn or overruled for the reasons stated on the record at the hearing on the Application; (xii) and it further appearing that the Debtor and Alex Jones ("Jones") announced an agreement for the Debtor to pay only 60% of all the allowed fees and expenses to the MDJW Law Firm and such agreement is in the best interest of the estate; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      In accordance with Bankruptcy Code §§ 327(e) and 330 and Bankruptcy Local Rule 2014-1, the Debtor is authorized to employ and retain the MDJW Law Firm commencing on August 30, 2022, as special counsel, under the terms and conditions set forth in the Application, this Order and the Engagement Letter attached to the Application as Exhibit A.

2.      The MDJW Law Firm is authorized to perform Professional Services for the Debtor that are necessary or appropriate in connection with serving as special counsel in connection with the Travis County Sandy Hook Lawsuits.

3.      The MDJW Law Firm shall be compensated for its services and reimbursed for related expenses in accordance with the terms and conditions of the Engagement Agreement, as set forth in the Application and subject to the procedures Bankruptcy Code §§ 330 and 331 of the Bankruptcy Code, and in accordance with applicable Federal Rules of Bankruptcy Procedure, Local Rules, and any orders of this Court.

4.      All compensation for services rendered and reimbursement for expenses incurred in connection with the above-captioned bankruptcy case shall be paid after further application to

2

003323

and order of this Court, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and any orders of this Court.

5.      This Order shall be immediately effective and enforceable upon entry.

6.      This Order, and all acts taken in furtherance or reliance thereon, shall be effective notwithstanding any objection until further order of this Court.

7.      Notwithstanding anything to the contrary in the Application, the Engagement Agreement, or the Declaration attached to the Application, the MDJW Law Firm shall not be entitled to reimbursement of expenses or fees from the Debtor in connection with any objection to its fees, without further order of the Court.

8.      The MDJW Law Firm shall not charge a markup to the Debtor with respect to any fees billed by contract attorneys who are hired by the MDJW Law Firm to provide services to the Debtor and shall ensure that any such contract attorneys are subject to conflicts checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

9.      The MDJW Law Firm shall provide ten-business-days' notice to the Debtor and the U.S. Trustee before any increases in the rates set forth in the Application or the Engagement Agreement are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in § 330 of the Bankruptcy Code. Furthermore, the Court retains the right to review any rate increases pursuant to § 330 of the Bankruptcy Code.

10.     The MDJW Law Firm shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals.

11.     The MDJW Law Firm will review its files periodically during the pendency of this Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If

3

any new relevant facts or relationships are discovered or arise, the MDJW Law Firm will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by FED. R. BANKR. P. 2014(a).

12.     To the extent that any of the Application, the Martin Declaration, or the Engagement Agreement are inconsistent with this Order, the terms of the Order shall govern.

13.     The Debtor and the MDJW Law Firm are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

14.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2022

_____
**UNITED STATES BANKRUPTCY JUDGE**

003325

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| | § | |
| Debtor. | § | |

**WITNESS LIST AND EXHIBIT LIST**
**FOR HEARING SET SEPTEMBER 20, 2022**

Melissa Haselden, Subchapter V Trustee, (the "Trustee") files its Witness and Exhibit List for the hearing to be held on **September 20, 2022, at 1:00 p.m. (prevailing Central Time)** (the "Hearing") as follows.

**Witnesses**

The Trustee may call the following witnesses at the Hearing:

1.  Any witness listed by any other party; and

2.  Rebuttal witnesses as necessary.

1

003326

**Exhibits**

| No. | Description | Mark | Offer | Object | Admit | Sealed | W/D |
|---|---|---|---|---|---|---|---|
| | Any document or pleading filed in the above-captioned main cases. | | | | | | |
| | Any exhibit necessary for impeachment and/or rebuttal purposes. | | | | | | |
| | Any exhibit identified or offered by any other party. | | | | | | |

The Trustee reserves the right to supplement or amend this Witness and Exhibit List and to identify additional exhibits, including but not limited to rebuttal and impeachment exhibits, prior to the conclusion of the Hearing.

Houston, TX
Dated: September 15, 2022

/s/ *Elizabeth Freeman*

**JACKSON WALKER LLP**
Elizabeth Freeman (TX Bar No. 2400922)
Sean Gallagher (TX Bar No. 24101781)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: efreeman@jw.com
      sgallagher@jw.com

**PROPOSED COUNSEL FOR MELISSA
HASELDEN, SUBCHAPTER V TRUSTEE**

4

**<u>Certificate of Service</u>**

I certify that on September 15, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Elizabeth Freeman*
Elizabeth Freeman

003328

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|   |   |   |
|---|---|---|
| In re: | § | Chapter 11 (Subchapter V) |
| FREE SPEECH SYSTEMS LLC, | § | |
| . | § | Case No. 22-60043 (CML) |
| | § | |
| Debtor. | § | Jointly Administered |

**SUBCHAPTER V TRUSTEE'S STATEMENT REGARDING**
**THE APPLICATIONS OF THE DEBTOR FOR EMPLOYMENT**
**OF W. MARC SCHWARTZ AS CHIEF RESTRUCTURING OFFICER**
**AND SHANNON & LEE LLP AS BANKRUPTCY CO-COUNSEL FOR THE DEBTOR**

Melissa Haselden, ( "<u>Subchapter V Trustee</u>") files this Statement regarding the *Application Of Debtor For An Order For An Order (A) Authorizing Employment Of W. Marc Schwartz As Chief Restructuring Officer, (B) Authorizing Employment Of Staff Of Schwartz Associates, LLC In Discharge Of Duties As Chief Restructuring Officer, And (C) Granting Related Relief* [Docket No. 83] and *Application of Debtor For An Order (A) Authorizing Employment of Shannon & Lee LLP As Bankruptcy Co-Counsel For the Debtor And (B) Granting Related Relief* [Docket No. 85] (collectively the "<u>Motions</u>") and states the following:

At this time, the Subchapter V Trustee takes no position with respect to the Motions but reserves the right to supplement, amend or modify this position as information becomes available and reserves the right to fully participate in the hearing on the Motions.

Dated: September 15, 2022

/s/ *Elizabeth Freeman*

**JACKSON WALKER LLP**
Elizabeth Freeman (TX Bar No. 2400922)
Sean Gallagher (TX Bar No. 24101781)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: efreeman@jw.com
          sgallagher@jw.com

*Proposed   Counsel   for   Melissa   Haselden,
Subchapter V Trustee*

003330

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 15, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Elizabeth Freeman*
Elizabeth Freeman

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

### SANDY HOOK FAMILIES' JOINDER TO UNITED STATES TRUSTEE'S AMENDED OBJECTION TO THE APPLICATION OF DEBTOR FOR AN ORDER (A) AUTHORIZING EMPLOYMENT OF SHANNON & LEE LLP AS BANKRUPTCY CO-COUNSEL FOR THE DEBTOR AND (B) GRANTING RELATED RELIEF
### [Related to ECF Nos. 85 and 154]

Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (collectively the Texas Plaintiffs) and David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (collectively the Connecticut Plaintiffs) (and together the Sandy Hook Families) hereby file this joinder (Joinder) to the *United States Trustee's Amended Objection to the Application of Debtor for an Order (A) Authorizing the Employment of Shannon & Lee LLP as Bankruptcy Co-Counsel for the Debtor and (B) Granting Related Relief* (the Objection) [Dkt. 154], filed in response to *Application of the Debtor for an Order (A) Authorizing the Employment of Shannon & Lee LLP as Bankruptcy Co-Counsel to the Debtor and (B) Granting Related Relief* (the Employment Application) [Dkt. 85].  In support of this Joinder, the Sandy Hook Families state as follows:

1.     The Sandy Hook Families join in, and hereby incorporate by reference, the arguments made by the United States Trustee in the Objection.

003332

2.      The Debtor filed its Employment Application on August 20, 2022.

3.      The United States Trustee filed the Objection on September 14, 2022.

4.      For the reasons stated in the Objection and this Joinder, the Sandy Hook

Families respectfully request that the Court deny the Employment Application and grant

such other and further relief as it may deem just and proper.

Respectfully submitted this 15th day of September 2022.

McDOWELL HETHERINGTON LLP

Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, Texas 77002
D: 713-337-5580
F: 713-337-8850
E: Avi.Moshenberg@mhllp.com

*Counsel for the Texas Plaintiffs*

and

CHAMBERLAIN, HRDLICKA, WHITE,
    WILLIAMS & AUGHTRY, PC

By: */s/Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

*Bankruptcy Counsel for the Texas
Plaintiffs*

003333

By: */s/ Ryan Chapple*
Ryan E. Chapple
State Bar No. 24036354
Email: rchapple@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile

and

Randy W. Williams
State Bar No. 21566850
Email: rww@bymanlaw.com
**BYMAN & ASSOCIATES PLLC**
7924 Broadway, Suite 104
Pearland, Texas 77581
281-884-9262

***Bankruptcy Counsel for Connecticut Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Joinder has been served on counsel for Debtor, Debtor, and all parties receiving or entitled to notice through CM/ECF on this 15th day of September 2022.

*/s/ Ryan E. Chapple*
Ryan E. Chapple

003334

AO 435
(Rev. 04/18)

ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

**TRANSCRIPT ORDER**

FOR COURT USE ONLY

DUE DATE:

*Please Read Instructions:*

| 1. NAME Anush Khatri | | 2. PHONE NUMBER (609) 206-9588 | 3. DATE 9/15/2022 | |
|---|---|---|---|---|
| 4. DELIVERY ADDRESS OR EMAIL akhatri@reorg.com | | 5. CITY New York | 6. STATE NY | 7. ZIP CODE 10010 |
| 8. CASE NUMBER 22-60043 | 9. JUDGE Christopher M. Lopez | DATES OF PROCEEDINGS | | |
| | | 10. FROM 9/13/2022 | 11. TO 9/13/2022 | |
| 12. CASE NAME Free Speech Systems | | LOCATION OF PROCEEDINGS | | |
| | | 13. CITY Houston | 14. STATE Texas | |

15. ORDER FOR

- [ ] APPEAL
- [ ] NON-APPEAL
- [ ] CRIMINAL
- [ ] CIVIL
- [ ] CRIMINAL JUSTICE ACT
- [ ] IN FORMA PAUPERIS
- [x] BANKRUPTCY
- [ ] OTHER

16. TRANSCRIPT REQUESTED (Specify portion(s) and date(s) of proceeding(s) for which transcript is requested)

| PORTIONS | DATE(S) | PORTION(S) | DATE(S) |
|---|---|---|---|
| [ ] VOIR DIRE | | [ ] TESTIMONY (Specify Witness) | |
| [ ] OPENING STATEMENT (Plaintiff) | | | |
| [ ] OPENING STATEMENT (Defendant) | | | |
| [ ] CLOSING ARGUMENT (Plaintiff) | | [ ] PRE-TRIAL PROCEEDING (Spcy) | |
| [ ] CLOSING ARGUMENT (Defendant) | | | |
| [ ] OPINION OF COURT | | | |
| [ ] JURY INSTRUCTIONS | | [ ] OTHER (Specify) | |
| [ ] SENTENCING | | | |
| [ ] BAIL HEARING | | | |

17. ORDER

| CATEGORY | ORIGINAL (Includes Certified Copy to Clerk for Records of the Court) | FIRST COPY | ADDITIONAL COPIES | NO. OF PAGES ESTIMATE | COSTS |
|---|---|---|---|---|---|
| ORDINARY | [ ] | [ ] | NO. OF COPIES | | |
| 14-Day | [ ] | [ ] | NO. OF COPIES | | |
| EXPEDITED | [ ] | [ ] | NO. OF COPIES | | |
| 3-Day | [ ] | [ ] | NO. OF COPIES | | |
| DAILY | [x] | [x] | NO. OF COPIES 1 | | |
| HOURLY | [ ] | [ ] | NO. OF COPIES | | |
| REALTIME | | | | | |

CERTIFICATION (18. & 19.)
By signing below, I certify that I will pay all charges
(deposit plus additional).

ESTIMATE TOTAL

0.00

| 18. SIGNATURE Anush Khatri | PROCESSED BY |
|---|---|
| 19. DATE 9/15/2022 | PHONE NUMBER |
| TRANSCRIPT TO BE PREPARED BY Trinity Transcription Services | COURT ADDRESS |

| ORDER RECEIVED | DATE | BY | | |
|---|---|---|---|---|
| DEPOSIT PAID | | | DEPOSIT PAID | |
| TRANSCRIPT ORDERED | | | TOTAL CHARGES | 0.00 |
| TRANSCRIPT RECEIVED | | | LESS DEPOSIT | 0.00 |
| ORDERING PARTY NOTIFIED TO PICK UP TRANSCRIPT | | | TOTAL REFUNDED | |
| PARTY RECEIVED TRANSCRIPT | | | TOTAL DUE | 0.00 |

DISTRIBUTION:     COURT COPY     TRANSCRIPTION COPY     ORDER RECEIPT     ORDER COPY

003335