**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22--60043** |
| **FREE SPEECH SYSTEMS, LLC,** | § | |
| | § | |
| DEBTOR. | § | **Chapter 11 (Subchapter V)** |
| | § | |

**WITNESS AND EXHIBIT LIST**

| | |
|---|---|
| Judge: | Hon. Christopher M. Lopez |
| Hearing Date: | Tuesday, September 20, 2022 |
| Hearing Time: | 1:00 p.m. (Central Standard Time) |
| Party's Name: | Free Speech Systems, LLC |
| Attorney's Name: | Ray Battaglia; Kyung S. Lee; RJ Shannon |
| Attorney's Phone: | (713) 714-5770 |
| Nature of Proceeding: | Hearing on: <ul><li>Application of Debtor for an Order (A) Authorizing Employment of Shannon & Lee LLP as Bankruptcy Co-Counsel for the Debtor, and (B) Granting Related [ECF No. 85] (the "S&L Application")</li><li>Application of Debtor for an Order (A) Authorizing Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing Employment of Staff of Schwartz Associates, LLC In Discharge of Duties as Chief Restructuring Officer, and (C) Granting Related [ECF No. 83] (the "CRO Application")</li></ul> |

Free Speech Systems, LLC, the debtor and debtor in possession in the above captioned

chapter 11 case (the "Debtor"), hereby submits this witness and exhibit list in connection with the

hearing to be held on Tuesday, September 20, 2022, at 1:00 p.m. (Central Standard Time) (the

"Hearing") on the S&L Application and the CRO Application.

**WITNESSES**

The Debtor may call any of the following witnesses at the Hearing, whether in person or by proffer:

1. W. Marc Schwartz, Chief Restructuring Officer of Free Speech Systems, LLC;

2. Kyung S. Lee, Partner, Shannon & Lee LLP;

3. Jayson B. Ruff, Attorney, Office of the U.S. Trustee;

4. Any witness called or designated by any other parties;

5. Any witnesses necessary to rebut the testimony of any witnesses called or designated by any other parties.

**EXHIBITS**

The Debtor may offer for admission into evidence any of the following exhibits, and any exhibit designated by any other party, at the Hearing:

| Ex. | Description | Offered | Objection | Admitted /Not Admitted | Disposition |
|---|---|---|---|---|---|
| 1 | Application of Debtor for an Order (A) Authorizing Employment of Shannon & Lee LLP as Bankruptcy Co-Counsel for the Debtor, and (B) Granting Related Relief [ECF No. 85] | | | | |
| 2 | Proposed Order Approving Debtor's Application to Employ Shannon & Lee LLP as Bankruptcy Co-Counsel [ECF No. 85-1] | | | | |
| 3 | Engagement Agreement Executed June 6, 2022, between Shannon & Lee LLP and Free Speech Systems, LLC [ECF No. 85-2] | | | | |
| 4 | Declaration of Kyung S. Lee in Support of the Debtor's Application to Employ Shannon & Lee LLP as Bankruptcy Co-Counsel [ECF No. 85-3] | | | | |

003337

| Ex. | Description | Offered | Objection | Admitted /Not Admitted | Disposition |
|-----|-------------|---------|-----------|------------------------|-------------|
| 5 | Shannon & Lee LLP Connections Search Results dated August 16, 2022 | | | | |
| 6 | Shannon & Lee Supplemental Connections Search Results dated September 16, 2022 | | | | |
| 7 | Shannon & Lee LLP Invoice and Time Records re Representation of Free Speech Systems, LLC from June 1, 2022. | | | | |
| 8 | Shannon & Lee LLP Invoice and Time Records re Representation of Free Speech Systems, LLC from July 1, 2022, to July 29, 2022 | | | | |
| 9 | Kyung S. Lee PLLC Invoice and Time Records re | | | | |
| 10 | Voluntary Petition [Dkt. No. 1; Case No. 22-60020] | | | | |
| 11 | Order for Joint Administration [Dkt. No. 8; Case No. 22-60020] | | | | |
| 12 | Debtors' Emergency Motion for Order Authorizing Appointment of Russel F. Nelms and Richard S. Schmidt as Trustees of the 2022 Litigation Settlement Trust and Granting Related Relief [Dkt No. 6; Case No. 22-60020] | | | | |
| 13 | Debtors' Emergency Application for Interim and Final Orders (A) Authorizing Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing Employment of Staff of Schwartz Associates, LLC in Discharge of Duties and Chief Restructuring Officer, and (C) Granting Related Relief [Dkt. No. 7; Case No. 22-60020] | | | | |

3

| Ex. | Description | Offered | Objection | Admitted /Not Admitted | Disposition |
|---|---|---|---|---|---|
| 14 | Notice of Amended and Restated Declaration of Trust and Plan Support Agreement [Dkt. No. 48; Case No. 22-60020] | | | | |
| 15 | Agenda of Matters that May Be Discussed at the April 29, 2022 Status Conference [Dkt No. 49; Case No. 22-60020] | | | | |
| 16 | Expedited Request for Status Conference [Dkt. No. 85; Case No. 22-60020] | | | | |
| 17 | The Texas Plaintiffs' Joinder in the Expedited Request for Status Conference [Dkt. No. 86; Case No. 22-60020] | | | | |
| 18 | May 17, 2022, Email from Jayson Ruff to Kyung Lee | | | | |
| 19 | Debtors' Application to Employ Kyung S. Lee PLLC as Bankruptcy Counsel Effective as of May 16, 2022 [Dkt No. 97; Case No. 22-60020] | | | | |
| 20 | Notice of Filing of Unopposed Motion to Dismiss Plaintiffs' Claims against Removing Defendants Infowars LLC (aka InfoW, LLC), Infowars Health, LLC (aka IWHealth, LLC), and Prison Planet TV, LLC with Prejudice and June 24, 2022 [SIC] Status Conference in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division [Dkt. No. 98; Case No. 22-60020] | | | | |
| 21 | Signed Stipulation and Order [Dkt. No. 99; Case No. 22-60020] | | | | |
| 22 | Transcript of May 19, 2022, Hearing in Case No. 22-60020 | | | | |

003339

| Ex. | Description | Offered | Objection | Admitted /Not Admitted | Disposition |
|---|---|---|---|---|---|
| 23 | May 19, 2022, Email from Kyung Lee to Marc Schwartz re Meeting re FSS on May 24, 2022 | | | | |
| 24 | May 21, 2022, Email from Kyung Lee to Marc Schwartz, Harold Lee, and Christian Schwartz re Dismissal of Case No. 22-60020 | | | | |
| 25 | May 23, 2022, Email from Kyung Lee to Marc Schwartz, Christian Schwarz, and Harold Lee re Draft Motion to Dismiss Case No. 22-60020 | | | | |
| 26 | May 25 to June 1, 2022, Emails among Kyung Lee and Jayson Ruff re Stipulation Dismissing Case No. 22-60020 | | | | |
| 27 | Stipulation and Agreed Order Dismissing Debtors' Chapter 11 Cases [Dkt. No. 10; Case No. 22-60020] | | | | |
| 28 | Application of Debtor for an Order (A) Authorizing Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing Employment of Staff of Schwartz Associates, LLC in Discharge of Duties as Chief Restructuring Officer, and (C) Granting Related Relief [ECF No. 83] | | | | |
| 29 | Proposed Order (A) Authorizing Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing Employment of Staff of Schwartz Associates, LLC in Discharge of Duties and Chief Restructuring Officer, and (C) Granting Related Relief [ECF No. 83-1] | | | | |
| 30 | Engagement Agreement Executed June 6, 2022, between Schwartz Associates LLC and Marc Schwartz and Free Speech Systems, LLC [ECF No. 83-2] | | | | |

003340

| Ex. | Description | Offered | Objection | Admitted /Not Admitted | Disposition |
|---|---|---|---|---|---|
| 31 | Declaration of W. Marc Schwartz [ECF No. 83-3] | | | | |
| 32 | Company Agreement of Free Speech Systems, LLC [ECF No. 83-4] | | | | |
| 33 | Marc Schwarz Time Records for Free Speech Systems, LLC from May 1, 2022, to May 31, 2022 | | | | |
| 34 | Marc Schwarz Time Records for INfoW, LLC from May 1, 2022, to May 31, 2022 | | | | |

The Debtor reserves the right to supplement, amend or delete any witness and exhibits prior to the hearing.  The Debtor also reserves the right to use any exhibits presented by any other party and to ask the Court to take judicial notice of any document.  The Debtor finally reserves the right to introduce exhibits previously admitted.

[*Remainder of Page Intentionally Left Blank*]

003341

Dated: September 16, 2022

LAW OFFICES OF RAY BATTAGLIA, PLLC

Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Co-Counsel to the Debtor and Debtor-In-Possession*

-and-

SHANNON & LEE LLP

/s/ *R. J. Shannon*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor-in-Possession*

7

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22--60043** |
| | § | |
| **DEBTOR.** | § | |
| | § | **Chapter 11 (Subchapter V)** |

## APPLICATION OF DEBTOR FOR AN ORDER (A) AUHTHORIZING EMPLOYMENT OF SHANNON & LEE LLP AS BANKRUPTCY CO-COUNSEL FOR THE DEBTOR, AND (B) GRANTING RELATED RELIEF

THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Free Speech Systems, LLC (the "Debtor" or "FSS"), the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby moves for entry of an order, substantially in the form attached hereto (the "Proposed Order") pursuant to sections 105(a) and 327 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the retention of Shannon & Lee LLP ("S&L" or the "Firm") as bankruptcy co-counsel for FSS (the "Application") pursuant to that certain engagement letter agreement by and between the Debtor and S&L, a copy of which is attached hereto as Exhibit A (the "Engagement Agreement"), as modified by the Proposed

Order. In support of the Application, the Debtor submits the Declaration of Kyung S. Lee attached hereto as Exhibit B (the "Lee Declaration") and respectfully represents as follows:

## JURISDICTION

1.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

2.     The bases for the relief requested herein are sections 105, 327, and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules for the Bankruptcy Court for the Southern District of Texas (the "Local Rules").

## BACKGROUND

### A.  Case Background

3.     On July 29, 2022 (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11, subchapter v, of the Bankruptcy Code (the "Chapter 11 Case") with the Court.

4.     The Debtor continues to operate its businesses and manage its properties as a Debtor and a Debtor-in-Possession pursuant to Bankruptcy Code § 1182(2).

5.     As of the filing of this Application, no creditors' committee has been appointed in the Chapter 11 Case by the Office of the United States Trustee for Region 7 (the "U.S. Trustee").

### B.     Proposed Employment of S&L

   *i.*     *Scope of Employment*

6.     Subject to the Court's approval, S&L will serve as bankruptcy co-counsel in connection with the Debtor's Chapter 11 Case, commencing on July 29, 2022.

2

      *ii.*      *Necessity of Employment*

7.     The Debtor believes that the assistance of counsel specializing in bankruptcy was and is necessary and appropriate to administer this Chapter 11 Case with the goal of ultimately confirming a plan of reorganization. The Debtor cannot proceed in chapter 11 without counsel and would face extreme difficulty complying with the provisions of the Bankruptcy Code and successfully reorganizing its financial affairs for the benefit of its creditors without attorneys who focus their practice on corporate bankruptcy.

      *iii.*     *Reasons for Selection*

8.     The Debtor seeks to retain S&L because of the extensive experience of its attorneys. Mr. Shannon and Mr. Lee have extensive experience in all aspects of corporate bankruptcy and in representing chapter 11 debtors in this district. Further, due to their involvement in the bankruptcy cases of the InfoWDebtors (defined below), S&L attorneys have familiarity with the Debtor's corporate structure, the litigation brought against the Debtor related to statements after the Sandy Hook mass shooting (the "Sandy Hook Litigation"), and many of the relevant creditors and parties in interest.  Familiarity with the Sandy Hook Litigation has been particularly important in the early stages of the Chapter 11 Case.

9.     S&L is familiar with the Debtor's financial condition in connection with the preparation of the Debtor's petition, schedules, and statement prior to the Petition Date. Substantial effort was also expended by the CRO to bringing the books and records of FSS up to speed prior to the Petition Date. The CRO also spent significant time to understanding the commercial and vendor relationship forming the core basis of FSS's business.  S&L was intimately involved in that entire learning process.

3

10.     Any other firm would need to expend significant time and effort to become familiar with the Debtor's business and business model that would delay making progress in administering the Chapter 11 Case.

11.     The Debtor therefore believes that S&L is well-qualified and uniquely able to represent the Debtor in the Chapter 11 Case in an efficient and timely manner as bankruptcy co-counsel for FSS.

     *iv.    Proposed Compensation & Reimbursement*

12.     S&L intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including §§ 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the guidelines (the "Guidelines") established by the U.S. Trustee, and any orders of this Court in this Chapter 11 Case (the "Orders"), for all services performed and expenses incurred during its representation of the Debtor.

13.     Subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and the Orders, the Debtor proposes to pay S&L as set out in the Engagement Agreement attached hereto as Exhibit B and as summarized in the following chart:

| BILLER | RATE |
|---|---|
| Kyung S. Lee | $850 |
| RJ Shannon | $650 |
| Associate Attorneys | $300 - $650 |
| Paralegals | $150 - $250 |
| Legal Assistants | $50-$100 |

14.     The Debtor believes that S&L's agreed terms of reimbursement, compensation, and hourly rates are reasonable. S&L will notify the Debtor and the U.S. Trustee of any change in the hourly rates charged for services rendered while the Chapter 11 Case is pending.

4

*v.*      *Retainer*

15.      Effective as of June 1, 2022, Kyung Lee and R. J. Shannon formed the law firm of Shannon & Lee LLP to practice corporate bankruptcy law. Mr. Shannon and Lee are the only two attorneys of S&L. On June 6, 2022, FSS executed the Engagement Letter and retaining S&L.[1] FSS paid S&L a retainer of $100,000 on or about June 7, 2022, that was held in trust in S&L's IOLTA account.

16.      On July 28, 2022, (a) FSS paid S&L $84,034.12 for work performed by S&L during the month of June 2022 and (b) S&L took into income $99,177.32 from the $100,000 retainer for work performed by S&L from July 1 to July 29, 2022.[2] $822.68 remained in the S&L IOLTA account.

17.      On July 29, 2022, prior to the filing of its petition for chapter 11 relief, FSS replenished S&L's IOLTA account with a wire transfer of $50,000. The total amount of retainer S&L held in its IOLTA account on behalf of FSS on the Petition Date was $50,822.68 (the "Retainer"). S&L continues to hold the Retainer in trust in its IOLTA Account.

18.      The Proposed Order provides that S&L shall continue to hold the Retainer in trust for satisfaction of its final fees and expenses as authorized by the Court, or as otherwise directed by the Court.

*vi.*      *Connections*

19.      The Lee Declaration sets out S&L's connections with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, and

---

[1] The Engagement Letter was effective May 24, 2022, on which date Kyung Lee began providing services to FSS, practicing through Kyung S. Lee PLLC ("KSLPLLC"). KSLPLLC received payment from the Debtor of $21,986.59 for services provided to FSS from May 24, 2022, through May 31, 2022.

[2] This amount included an estimate of six hours of services for each of Mr. Shannon and Mr. Lee on July 28 and July 29, 2022. The actual time expended exceeded the estimate.

003347

any person employed in the office of the United States Trustee. To the best of the Debtor's knowledge, S&L does not hold any connections other than those disclosed in the Lee Declaration.

20.     Mr. Shannon and Mr. Lee previously represented InfoW, LLC, IWHealth, LLC, and Prison Planet TV, LLC (the "InfoWDebtors"), in the cases jointly administered as Case No. 22-60020 before this Court.[3] One or more of the InfoWDebtors were defendants in the Sandy Hook Litigation. On May 13, 2022, the Connecticut Sandy Hook plaintiffs filed notices of dismissal with prejudice as to their claims against the InfoWDebtors.[4] *See* Dkt. No. 98, Case No. 22-60020 (Bankr. S.D. Tex.). On May 18, 2022, the Texas Sandy Hook plaintiffs and the InfoWDebtors entered a stipulation to resolve their claims against the InfoWDebtors, which was approved and ordered by the Court on May 19, 2022. *See* Dkt. Nos. 96 and 98, Case No. 22-60020 (Bankr. S.D. Tex.). The InfoWDebtors and the U.S. Trustee agreed to the dismissal of the InfoWDebtors' chapter 11 cases on June 1, 2022, which dismissal was ordered by the Court on June 10, 2022. Dkt. Nos. 110 and 114, Case No. 22-60020 (Bankr. S.D. Tex.). The Debtor does not have any claims against the InfoWDebtors and does not believe that the InfoWDebtors have any claims against the Debtor.

21.     The Debtor believes that S&L neither holds nor represents a disqualifying interest that is adverse to the estate and is a "disinterested person." If any new relevant facts or relationships are discovered, S&L will supplement its disclosure to the Court.

---

[3] The InfoWDebtors' applications to employ of Parkins & Rubio LLP and KSLPLLC were never approved in the InfoWDebtors' chapter 11 cases.

[4] Upon the dismissal with prejudice of the Connecticut Sandy Hook plaintiffs' claims against the InfoWDebtors—and the then forthcoming dismissal of claims with prejudice of the Texas Sandy Hook plaintiffs—the restructuring contemplated by the Plan Support Agreement at in the InfoWDebtors' bankruptcy case was no longer possible.

003348

### vii.    Co-Counsel Relationship

22.     S&L is being retained to serve as co-counsel for FSS along with The Law Offices of Ray W. Battaglia, PLLC (the "Battaglia Firm").  The two law firms have agreed to a division of labor substantially like the manner which multiple attorneys within the same law firm would handle a similar case.  Each firm is aware of the need to avoid duplication of effort and have taken steps to minimize the degree to which their services will overlap.  S&L will be primarily responsible for the day-to-day management of the case, issues involving the Sandy Hook Litigation, and all routine activities typical to the Chapter 11 Case.  The Battaglia Firm will provide legal advice regarding strategy for the Chapter 11 Case and implementation of that strategy.  The firms will allocate primary responsibility as appropriate for drafting pleadings and handling contested matters and meetings with the Debtor and opposing counsel.  For certain matters it will be necessary to involve more than one lawyer and the firms will jointly handle such matters, mindful of the need to avoid duplication whenever possible.

## RELIEF REQUESTED

23.     The Debtor requests that the Court enter an order substantially in the form of the Proposed Order authorizing the Debtor to retain S&L as bankruptcy co-counsel, pursuant to the terms of the Engagement Agreement, as modified by the Proposed Order, effective as of July 29, 2022.

## BASIS FOR RELIEF

24.     Subject to bankruptcy court approval, Bankruptcy Code § 327(a) authorizes trustees—and Debtor-in-Possession—to "employ one or more attorney's accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the

7

trustee's duties . . . ." Bankruptcy Code § 327(c) provides that "[i]n a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest."

25.     Bankruptcy Rule 2014 requires certain disclosures prior to the entry of an order approving the employment of a professional. According to Bankruptcy Rule 2014, the application must:

> (a)     Be filed by the trustee or committee and served on the United States Trustee (except in case under chapter 9 of the Bankruptcy Code);
>
> (b)     State the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee; and
>
> (c)     Be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

## A.     S&L Meets the Requirements of Bankruptcy Code § 327(a)

26.     Based on the Lee Declaration, the Debtor submits that S&L neither holds nor represents a disqualifying adverse interest and is a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code.

27.     The term "disinterested person" is defined by the Bankruptcy Code. According to Bankruptcy Code § 101(14):

> The term "disinterested person" means a person that— (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have

003350

> an interest materially adverse to the interest of the estate or of any
> class of creditors or equity security holders, by reason of any direct
> or indirect relationship to, connection with, or interest in, the debtor,
> or for any other reason.

28.     The Lee Declaration discloses no connections with the Debtor that would disqualify S&L as a "disinterested person" and the Debtor is aware of no connections in addition to those disclosed in the Lee Declaration.

**B.     This Application and the Lee Declaration Meet the Requirements of Bankruptcy Rule 2014**

29.     This Application and the Lee Declaration meet the requirements as set out in Bankruptcy Rule 2014.  This Application is made by the Debtor and sets out the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, the proposed arrangement for compensation.  The Lee Declaration is a verified statement pursuant to 28 U.S.C § 1746 that sets out all connections that S&L has with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.  The Debtor is not aware of any other connections in addition to those disclosed in the Lee Declaration.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter an order substantially in the form of the Proposed Order approving the employment of S&L commencing on July 29, 2022, and grant any other relief that is just and proper.

*[Remainder of Page Intentionally Left Blank]*

9

003351

Dated: August 20, 2022

Respectfully submitted,

W. Marc Schwartz
Chief Restructuring Officer and Authorized
Representative of Free Speech Systems,
LLC, Debtor and Debtor-in-Possession

003352

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service on the date of filing, (b) by U.S.P.S. first class mail on all parties indicated in the attached service list within 1 business day of the filing, and (c) the following parties by email on the date of filing:

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Attn: Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Attn: Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581
rww@bymanlaw.com

Attn: Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002
jarrod.martin@chamberlinlaw.com

003353

Attn: Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548
christopher.dylla@oag.texas.gov

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002
mhaselden@haseldenfarro.com

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of U.S. Trustee
515 Rusk, Suite 3516
Houston, TX 77002
ha.nguyen@usdoj.gov
jayson.b.ruff@usdoj.gov

*/s/R. J. Shannon*

003354

**USPS Service List**

**Twenty Largest Unsecured Creditors**

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

Commerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

13

003355

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

## Parties Claiming Interest or Lien Affected

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

## Parties Filing Notice of Appearance

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701

Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002

Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581

Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

## Subchapter V Trustee

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002

## U.S. Trustee

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

## Additional Notice Parties

003356

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterling, Christopher
Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 0660

003357

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22—60043** |
| | § | |
| **DEBTOR.** | § | |
| | § | **Chapter 11 (Subchapter V)** |

## ORDER APPROVING DEBTOR'S APPLICATION
## TO EMPLOY SHANNON & LEE LLP AS BANKRUPTCY CO-COUNSEL

Upon the application (the "Application")[1] filed by the Debtor to retain and employ Shannon

& Lee LLP ("S&L") pursuant to Bankruptcy Code §§ 327(a) and 330 and Bankruptcy Local Rule

2014-1, as more fully set forth in the Application and all exhibits and attachments to the

Application; and upon the Court's finding that (i) the Court has jurisdiction over this matter

pursuant to 28 U.S.C. § 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iii)

venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the Application and the

Lee Declaration are in full compliance with all applicable provisions of the Bankruptcy Code,

Bankruptcy Rules, Bankruptcy Local Rules, and Orders and procedures of this Court; (v) S&L

does not represent an interest adverse to the Debtor's estate with respect to the matters upon which

it is to be engaged and is a "disinterested person" within the meaning of that term under § 101(14)

of the Bankruptcy Code; (vi) S&L is qualified to represent the Debtor's estate under § 327 of the

Bankruptcy Code; (vii) the terms of S&L's employment have been disclosed and are reasonable

under the circumstances; (viii) proper and adequate notice of the Application, the deadline to file

any objections to the Application, and the hearing thereon was given, and no other or further notice

---

[1] Capitalized terms not defined herein have the meaning set forth in the Application.

is necessary; (ix) the legal and factual bases set forth in the Application establish just cause for the relief granted herein; (x) the relief sought in the Application is in the best interest of the Debtor's estate; (xi) any timely objection to the Application having been withdrawn or overruled for the reasons stated on the record at the hearing on the Application; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      In accordance with Bankruptcy Code §§ 327(a) and 330 and Bankruptcy Local Rule 2014-1, the Debtor is authorized to employ and retain S&L commencing on the Petition Date, as bankruptcy co-counsel, under the terms and conditions set forth in the Application and the Engagement Letter attached to the Application as <u>Exhibit B</u>.

2.      S&L is authorized to perform any and all legal services for the Debtor that are necessary or appropriate in connection with the Chapter 11 Case.

3.      S&L shall be compensated for its services and reimbursed for related expenses in accordance with the terms and conditions of the Engagement Agreement, as set forth in the Application and subject to the procedures Bankruptcy Code §§ 330 and 331 of the Bankruptcy Code, and in accordance with applicable Federal Rules of Bankruptcy Procedure, Local Rules, and any orders of this Court.

4.      S&L shall continue to hold the Retainer (as defined in the Application) in trust on behalf of the Debtor, until further order of the Court.

5.      All compensation for services rendered and reimbursement for expenses incurred in connection with the above-captioned Chapter 11 Case shall be paid after further application to and order of this Court, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and any orders of this Court.

6.      This order shall be immediately effective and enforceable upon entry.

003359

7.     This order, and all acts taken in furtherance or reliance thereon, shall be effective notwithstanding any objection until further order of this Court.

8.     Notwithstanding anything to the contrary in the Application, the Engagement Agreement, or the Declaration attached to the Application, S&L shall not be entitled to reimbursement of expenses or fees from the Debtor in connection with any objection to its fees, without further order of the Court.

9.     S&L shall not charge a markup to the Debtor with respect to any fees billed by contract attorneys who are hired by S&L to provide services to the Debtor and shall ensure that any such contract attorneys are subject to conflicts checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

10.     S&L shall provide ten-business-days' notice to the Debtor and the U.S. Trustee before any increases in the rates set forth in the Application or the Engagement Agreement are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in § 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to § 330 of the Bankruptcy Code.

11.     S&L shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals.

12.     S&L will review its files periodically during the pendency of this Chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, S&L will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by FED. R. BANKR. P. 2014(a).

003360

13. To the extent that any of the Application, the Lee Declaration, or the Engagement Agreement are inconsistent with this Order, the terms of the Order shall govern.

14. The Debtor and S&L are authorized to take all actions necessary to effectuate the relief granted pursuant to this order in accordance with the Application.

15. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this order.


Dated: _____, 2022

_____
**UNITED STATES BANKRUPTCY JUDGE**

003361

## **Exhibit A**

Engagement Agreement

003362



Kyung S. Lee
Attorney at Law

Pennzoil Place
700 Milam St.
Suite 1300
Houston, TX 77002

# SHANNON & LEE LLP

klee@kslpllc.com | Direct: 713-301-4751

June 6, 2022

## PRIVILEGED AND CONFIDENTIAL

Alex E. Jones
Managing Member
Free Speech Systems, LLC
910 West Mary Street
Austin, Texas 78704

Re: <u>Attorney Engagement Letter of Shannon & Lee LLP by Free Speech Systems, LLC</u>

Dear Mr. Jones:

Thank you for selecting Shannon & Lee LLP ("<u>S&L</u>" or the "<u>Firm</u>") as legal counsel for Free Speech Systems, LLC ("<u>FSS</u>", "<u>you</u>" or "<u>Client</u>"). We appreciate the trust and confidence that your decision places in us and we look forward to building a close and mutually rewarding relationship.

The purpose of this letter and the attached Terms of Retention (together, the "<u>Engagement Letter</u>") is to set forth the terms of legal representation of the above referenced Client.

*Scope of Engagement.* S&L shall serve as attorney and legal counsel for the Client in connection with the following (the "<u>Matter</u>"): Serve as co-restructuring counsel for the Client, effective as of May 24, 2022.[1]

*Legal Fees and Expenses.* For the work performed by S&L for the Client, S&L shall be entitled to a fee in the amount equal to the time expended by each attorney, paralegal and other staff member multiplied by the hourly rates set forth in the attached Hourly Billing Rate Schedule. The Client is responsible for reimbursing the Firm for expenses incurred on behalf of the Client pursuant to the attached Client Expense Policy.

---

[1] As S&L was formed on June 1, 2022, fees earned prior to June 1, 2022 shall be allocated to the respective professional liability company between the two partners. For work performed and fees earned after June 1, 2022, such fees shall be deemed to be earned by S&L. This notice is being provided due to recent departure of the two partners from their previous law firms and practice of law with their respective limited liability companies during the stub period of May 15, 2022 through June 1, 2022.

Alex E. Jones
June 6, 2022
Page 2 of 11

*Retainer.* As a condition to S&L accepting this engagement on your behalf, you have agreed to provide a retainer of $1000,000.00 (the "Retainer") in connection with this Matter. The instructions for remitting the retainer funds to the Firm will be provided in a separate electronic correspondence. The Retainer will serve as a security deposit and will be applied towards your final invoice for this Matter. Any balance will be returned to you. If you do not pay your invoices timely, the Firm may apply the Retainer to an unpaid invoice. The Firm reserves the right to have the Retainer replenished by the Client if the Firm anticipates that there is a risk in collecting future attorney's fees and/or reimbursement of costs. Prior to filing for bankruptcy, the Firm shall take into income any fees and costs incurred and invoiced such that the Firm and the Client do not have a debtor-creditor relationship as of the filing date.

*Invoices/Fee Statements.* The Firm's invoices will be issued to you during the month, if not more often, following the month that services are provided. The invoice will include a fee statement providing the details of the legal services performed, and the expenses incurred, for the Client. The invoices shall be informational only and shall be paid upon allowance by a Bankruptcy Court order.

*Conflicts.* The Firm has conducted an initial conflicts search based on information you provided. The Firm did not identify any connection that would prevent the Firm from representing you in this Matter. S&L may conduct additional conflicts searches following the commencement of this engagement. If the Firm identifies any conflict, then the Firm shall immediately notify the Client and the Firm and the Client shall take further actions as may reasonably be required to satisfy the Firm's ethical obligations and duties to the Client, all as more particularly described in the Terms of Retention.

The two partners of S&L have acted as general bankruptcy counsel for InfoW, LLC, IWHealth, LLC and Prison Private tv Ltd. These three companies are affiliates of FSS, have license agreements with FSS and are in the process of having their Subchapter v bankruptcy cases dismissed. If any issues arise in connection with the license agreement between the FSS and InfoW, S&L intends to have co-counsel or conflict counsel matters related to such dispute. Otherwise, the Firm does not believe that such connection precludes it from representing FSS on the matters to which it is being asked to be engaged.

*General Prospective Waiver and Informed Consent.* The Firm represents many other companies and individuals. It is possible that during the time that we are representing you, some of our present or future Clients will have disputes or transactions with you. You agree that we may continue to represent or may undertake in the future to represent existing or new Client in any business or transactional matter that is not substantially related to our work for you, even if the interests of such Client in those other matters are directly adverse to you. We are not aware of any such matters at the present time. We agree, however, that your prospective consent to conflicting representations contained in the preceding sentence shall not apply in any instance where, as a result of our representation of you, we have obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in any such other matter by such client to your material disadvantage. _You are not giving the Firm a prospective waiver as to conflicting representation related to a litigation matter against you._ We encourage you to seek independent counsel regarding the import of the potential conflicts and prospective waiver discussed and this acknowledgment, waiver and informed consent. We

003364

Alex E. Jones
June 6, 2022
Page 3 of 11

emphasize that you remain completely free to seek independent counsel at any time even if you decide to sign this Engagement Letter agreeing to its terms and the Terms of Retention.

Please call me with any questions you have after you complete your review of this Engagement Letter including the Terms of Retention. If the Engagement Letter is acceptable to you in this form, please indicate so by signing, dating, and returning it to me and funding the Retainer.

Very truly yours,

*Kyung S. Lee*

Kyung S. Lee
Kyung S. Lee PLLC
Shannon & Lee LLP

ACCEPTED AND AGREED:

Free Speech Systems, LLC

Authorized Officer of Free Speech Systems, LLC

Dated

Alex E. Jones
June 6, 2022
Page 4 of 11

## ADDENDUM TO ENGAGEMENT LETTER

The appropriate Client point of contact to address payment status:

Name:
Title:
Phone:
Work Email:

Invoices are to be delivered as follows:

☐ By email: _____

  Email: _____

☐ By regular mail:

Address: _____

_____

_____

003366

Alex E. Jones
June 6, 2022
Page 5 of 11

## TERMS OF RETENTION

These Terms of Retention are part of the S&L Engagement Letter. Because they are an integral part of our agreement to provide legal services, we ask that you review this document carefully. If you have any questions after reading it, please contact us promptly.

*Who Will Provide Legal Services?* In most cases, one attorney will be your principal contact. From time to time, that attorney may delegate parts of your work to other attorneys or to legal assistants or non-legal professionals in the Firm. We do this to involve those with special knowledge or experience in an area and to provide services to you in a timely, efficient, and cost-effective manner. I will be the primary attorney from our Firm who will be representing the Client.

*Scope of the Representation.* As a Firm, we undertake to provide representation and advice on the legal matters for which we are engaged, and it is important that we both have a clear understanding of the legal services that the Firm has agreed to provide. In our Engagement Letter with you, we specify the matter in which we will provide representation and the scope of the services we will provide. Please note that we do not provide legal advice regarding any tax issues or effects nor are we responsible for notifying any insurance carrier of any lawsuit. If there are any questions about the terms of engagement, including the scope of the representation that we are to provide in the matter, please raise those questions promptly with your principal contact at the Firm.

*Identity of Client.* It is our policy to represent only the person or entity identified in our Engagement Letter and not any affiliates. For example, unless otherwise specifically stated in our Engagement Letter, if you are a business organization (corporation, partnership, LLC, etc.), our representation does not include any parents, subsidiaries, employees, officers, owners, or affiliates (including commonly owned companies); if you are an individual, our representation does not include your employer, partners, spouse, siblings, or other family members.

*Your Cooperation.* To enable us to provide effective representation, you agree to: (1) disclose to us, fully and accurately and on a timely basis, all facts and documents that are or might be material or that we may request, (2) keep us apprised on a timely basis of all developments relating to the representation that are or might be material, (3) attend meetings, conferences, and other proceedings when it is reasonable to do so, and (4) otherwise cooperate fully with us.

*Outcomes.* We cannot and do not guarantee the outcome of any matter. Any expression of our professional judgment regarding your matter or the potential outcome is, of course, limited by our knowledge of the facts and based on the law at the time of expression. It is also subject to any unknown or uncertain factors or conditions beyond our control. Any expressions on our part concerning the outcome of the representation, or any other legal matters, are based on our professional judgment and are not guarantees.

*Conflicts of Interest.* We attempt to identify actual and potential conflicts at the outset of any engagement. In some instances, the applicable rules of professional conduct may limit our ability to represent Client with conflicting or potentially conflicting interests. Those rules of conduct often allow us to exercise our independent judgment in determining whether our relationship with one client prevents us from representing another. In other situations, we may be permitted to represent a client only if both or all

003367

Alex E. Jones
June 6, 2022
Page 6 of 11

Client consent to that representation. If a controversy unrelated to the subject matter of the representation develops between you and any other client of the Firm, we will follow the applicable rules of professional responsibility to determine whether we may represent either you or the other client in the unrelated matter. Unfortunately, sometimes conflicts arise or become apparent after work begins on an engagement. If this happens, we will do our best to address and resolve the situation in the manner that best serves the interests of all of our affected Client. Rules concerning conflicts of interest vary with the jurisdiction. In order to avoid any uncertainty, the Texas Disciplinary Rules of Professional Conduct will be applicable to the representation.

Texas law requires that we inform the Client of the existence of a grievance process. The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with a lawyer involves professional misconduct, the State Bar's Office of Chief Disciplinary Counsel will provide you with information about how to file a complaint. Please call 1-800-932-1900 for more information. Also, the Supreme Court of Texas has promulgated The Texas Lawyer's Creed - A Mandate for Professionalism, which states that an attorney should inform a client of the creed's contents when undertaking a representation. We will send you a copy of the creed upon request. It is also available online at https://www.texasbar.com.

*Fees.* The basis for determining our fee for legal services is set forth in the Engagement Letter itself. If you are unclear about the basis for determining your fee, please contact the attorney responsible for your representation. Clients frequently ask us to estimate the fees and other charges they are likely to incur in connection with a particular matter. We are pleased to respond to such requests, whenever possible, with an estimate based upon our professional judgment. This estimate always carries the understanding that, unless we agree otherwise in writing, it does not represent a maximum, minimum, or fixed-fee quotation.

*Expenses.* Our Firm may incur and pay a variety of charges on your behalf in connection with the engagement. Whenever we incur such charges on your behalf, we will bill them to you as part of your invoice in accordance with the attached Client Expense Policy.

*Delinquent Account and Withdrawal of Engagement.* We will bill you on a periodic basis, for fees and other charges, as described in the Engagement Letter. Should your account become delinquent and satisfactory payment terms are not arranged, as permitted under the rules regulating our profession, we will be required to withdraw from the representation. In most cases, and except as prohibited by ethical considerations, if your account becomes more than 30 days delinquent, we will cease representation until we can arrive at a mutually satisfactory arrangement for payment of the delinquent account and the resumption of services. At such time we may charge interest on the outstanding amount due of one and a half percent per month or the maximum amount allowed under applicable law, whichever is less.

*Additional Retainer.* If the representation will require a concentrated period of activity, such as a trial, arbitration, or hearing, we reserve the right to require the payment of all amounts then owing to us and the payment to us of an additional retainer for the fees and expenses we estimate will be incurred in preparing for and completing the trial, arbitration, or hearing, as well as arbitration fees likely to be assessed. If you fail to timely pay any   retainer deposit requested, we will have the right to cease performing further work for you and withdraw from the representation.

Alex E. Jones
June 6, 2022
Page 7 of 11

*Obligation to Pay Fees and Expenses.* Unless your Engagement Letter expressly provides that a third-party is agreeing to pay your attorney's fees and such third-party has agreed in writing, regardless of whether you are insured to cover the particular risk or you are pursuing parties for recovery of attorneys' fees and other charges, it remains your obligation to pay all amounts due to us within the time periods reflected in the Engagement Letter.

*Retention of Complementary Counsel.* From time to time in the course of our engagement it may become prudent to engage additional counsel to work with and complement our representation of you. That complementary representation will only be done with your prior written consent and on terms and conditions which you approve. The engagement of complementary counsel may be done directly with you or through our firm, depending on the nature and extent of the representation involved.

*Conclusion of Engagement.* Because our Firm has been engaged to provide legal services in connection with the representation in the matter as specifically defined in our Engagement Letter, the attorney-client relationship terminates upon our completion of our services related to the representation in the matter. After completion of the representation, upon written notification by the Firm that the matter is terminated, changes may occur in the applicable laws or regulations that could affect your future rights and liabilities in regard to the matter. Unless we are actually engaged after the completion of the representation to provide additional legal services, the Firm has no continuing obligation to give advice with respect to any future legal developments that may relate to the matter. If you later retain us to perform further or additional services, our attorney-client relationship will be subject to the terms of engagement agreed to at that time; in the absence of any specific agreement, these Additional Terms of Engagement shall apply to the further or additional representation.

*Termination.* We look forward to the opportunity to complete our representation of you on the specified matter. You may, however, terminate our representation at any time, with or without cause, by notifying us in writing. We will return your papers and other property to you promptly upon receipt of your request for those materials unless they are appropriately subject to a lien. You agree that we will own and retain our own files pertaining to the matter or case, including, for example, Firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal attorney's work product such as drafts, notes, internal memoranda, and legal and factual research including investigative reports, prepared by or for the internal use of attorneys. Your termination of our services will not affect your responsibility for payment of legal services rendered and other charges incurred before termination and in connection with an orderly transition of the matter.

*Document Retention.* You acknowledge and agree that the Firm may maintain all documents related to your matter digitally. The Firm is not required to maintain physical copies of any documents. At the conclusion of our representation of you, it is our firm's policy to return to you any physical documents to you. We will provide you with copies of any other documents you specifically request (such as copies of depositions, court documents, etc.), and you agree to pay for the associated copying costs and any professional time incurred in identifying any such documents you request. You agree that our Firm may elect to keep at its own expense, copies of any documents related to this matter or otherwise returned to you. Anytime following seven (7) years after the conclusion of our representation of you, the Firm may destroy or delete any files related to your engagement.

003369

*Dispute Resolution.* The Engagement Letter is being entered and is to be performed within the State of Texas. The Engagement Letter shall be interpreted in accordance with Texas law (without application of choice of law principles). All parties to the Engagement Letter agree that Houston, Harris County, Texas is the only permitted location (the venue) for the resolution of all disputes that arise under or relate in any way to the Engagement Letter or to any of the services provided by our Firm.

*Binding Arbitration.* Any dispute arising out of or relating to this agreement, our interactions leading to it, or our performance of the agreement or of the representation of you shall be resolved through binding arbitration in Harris County, Texas. First, sixty (60) days before filing any arbitration proceeding, the party requesting relief must demand and attend mandatory mediation before a mutually acceptable mediator to attempt to resolve any dispute. In the event the parties are unable to resolve such dispute, the affected party shall initiate an arbitration proceeding utilizing the rules of (but not employing) the American Arbitration Association ("AAA") for the arbitration of complex commercial cases. In any dispute of less than $250,000, the parties shall jointly appoint a single arbitrator. In any dispute of a greater amount, each party shall appoint his/her or its own party arbitrator, and these two-party arbitrators shall in turn appoint a third, neutral arbitrator. All party arbitrators' conduct and tests for eligibility shall be governed by AAA rules of disinterest. The time limits hereunder shall not apply in the event emergency injunctive relief is required, but only to the extent of such emergency injunctive relief itself. The decision by the arbitration panel will be final and binding.

You should know that for your agreement to arbitrate to be effective under Texas law, you as the client must receive sufficient information about the differences between litigation and arbitration to permit you to make an informed decision about whether to agree to binding arbitration. Under the Texas Rules of Disciplinary Procedure, we can explain the significant advantages and disadvantages of binding arbitration to the extent we reasonably believe is necessary for an informed decision by you. The scope of the explanation will depend on the sophistication, education and experience of the client.

In the case of a highly sophisticated client such as a large business entity that frequently employs outside lawyers, no explanation at all may be necessary. In situations involving Clients who are individuals or small businesses, we normally advise the client of the following possible advantages and disadvantages of arbitration as compared to a judicial resolution of disputes: (1) the cost and time savings frequently found in arbitration, (2) the waiver of significant rights, such as the right to a jury trial, (3) the possible reduced level of discovery, (4) the relaxed application of the rules of evidence, and (5) the loss of the right to a judicial appeal because arbitration decisions can be challenged only on very limited grounds.

Additional factors you as the client should consider are: (1) the privacy of the arbitration process compared to a public trial; (2) the method for selecting arbitrators; and (3) the obligation, if any, of the client to pay some or all of the fees and costs of arbitration, if those expenses could be substantial. Although the disclosure can vary from client to client, depending on the circumstances, the overriding concern is that we should provide information necessary for the client to make an informed decision.

Alex E. Jones
June 6, 2022
Page 9 of 11

*By returning the executed Engagement Letter, you acknowledge that you have been provided ample opportunity to have counsel explain to you the advantages and disadvantages of binding arbitration to make an informed decision about agreeing to the provision.*

*Modifications.* The Engagement Letter and these Additional Terms of Engagement reflect our entire agreement on the terms of this engagement. These written terms of engagement are not subject to any oral agreements or understandings, and any change in those terms can only be made in writing signed by you and the Firm.

Alex E. Jones
June 6, 2022
Page 10 of 11

## Hourly Billing Rate Schedule

| BILLER | RATE |
|---|---|
| Kyung S. Lee | $850 |
| R.J. Shannon | $650 |
| Associate Attorneys | $300 - $600 |
| Paralegals | $150 - $250 |
| Legal Assistants | $50 - $100 |

Alex E. Jones
June 6, 2022
Page 11 of 11

Client Expense Policy

In connection with the representation of a client, the Firm may incur expenses. Unless the Engagement Letter expressly provides to the contrary, the Firm's and the Client's rights and responsibilities related to such expenses are as follows:

*Legal Research and Related Services.* The Firm subscribes to certain online research services. These subscription-based services are part of the Firm's overhead and not charged to the Client. Certain services are charged on a per-transaction including, without limitation, the following examples: UCC searches, lien searches, title searches and other record searches. The Client is responsible for these pre-transaction charges. The Firm will advance the costs for all such services and submit bills to you for reimbursement. The Firm may seek prior approval from you if the anticipated aggregate monthly expense for such services exceeds $500.00. The Firm reserves the right to have the Client pay these expenses directly.

*Document Management and eDiscovery Services.* The Firm subscribes to advanced document management software systems. These subscription-based systems are part of the Firm's overhead and not charged to the Client. The Client is responsible for eDiscovery services. eDiscovery service providers typically charge per gigabyte of information stored. Additional services from the outside vendor may be required other than storage of the information and typically these are separately charged. If the Firm uses an eDiscovery service during the representation, then the Firm will seek the Client's prior approval before incurring expenses for such services. Rather than billing these expenses through the Firm, the Firm reserves the right to have the Client contract directly with the outside vendor to pay for these expenses. For the avoidance of doubt, the Client is responsible to the Firm for the payment of all fees and expenses incident to the firm's review and processing of discovery materials that are not handled by an outside vendor.

*Printing, Shipping, Postage and Related Expenses.* For all printing, shipping, postage, and related services the Firm may handle them in house or use an outside vendor. The Client is responsible for all such printing, shipping, postage, and related services at costs or the prevailing market rate if handled in house. The Firm may seek prior approval from the Client if the anticipated aggregate monthly expense for printing, shipping, postage, and related services exceeds $500.00. The Firm reserves the right to have the Client pay these expenses directly.

*Travel Expenses.* The Client will reimburse the Firm for expenses incurred in connection with out-of-town travel, but only for coach class travel and, where appropriate, the cost of a rental car. All related travel expenses, i.e., lodging and meals, must be reasonable under the circumstances. The Firm will advance all such travel expenses and submit bills to you for reimbursement which will be included in the regular invoices to the Client. The attorney handling your matter will confer with you prior to traveling for your matter. Consistent with local bankruptcy rules, the Firm bills travel at ½ billable hourly rate when the lawyer is not working on the Client matter while travelling. The Firm will endeavor to locate a substitute service agent.

*Court Costs.* If requested by the Firm, the Client will advance court filing fees and all similar expenses prior to the Firm incurring such expenses. Any such expenses incurred by the Firm, will be included in the Firm's invoices to the Client for payment.

**Exhibit B**

Lee Declaration

003374

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22—60043** |
| | § | |
| **DEBTOR.** | § | **Chapter 11 (Subchapter V)** |
| | § | |

**DECLARATION OF KYUNG S. LEE IN SUPPORT OF
THE DEBTOR' APPLICATION TO EMPLOY
SHANNON & LEE LLP AS BANKRUPTCY CO-COUNSEL**

I, Kyung S. Lee, declare under penalty of perjury as follows:

1.　　I am an attorney at law duly admitted and in good standing to practice in the State of Texas and United States District Court for the Southern District of Texas. As of June 1, 2022, I am a partner in the Houston office of the law firm Shannon & Lee LLP ("S&L"), located at 700 Milam Street, Suite 1300, Houston, Texas 77002.

2.　　I am making this declaration in support of the Debtor's Application to Employ Shannon & Lee LLP as Bankruptcy Co-Counsel, effective as of July 29, 2022 (the "Application"). Unless otherwise indicated, capitalized terms used but not defined herein have the meanings ascribed to such terms in the Application.

3.　　Except as otherwise noted, all facts set forth in this declaration are based upon my personal knowledge, upon the client and matter records of S&L reviewed by me or derived from information available to me that I believe to be true and correct or opinion based upon experience, knowledge and information concerning the restructuring of debtor-creditor relationships, workouts, chapter 11 process and the Debtor. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

**A.      Scope of Services**

4.      Pursuant to the Engagement Agreement, the Application, and the Proposed Order attached thereto, S&L will serve as bankruptcy co-counsel to the Debtor in connection with the Chapter 11 Case for the period commencing on July 29, 2022.  In connection with this representation, S&L will take all necessary and appropriate actions to administer the Debtor's Chapter 11 Case.

**B.      Proposed Compensation**

5.      S&L will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including §§ 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, Guidelines, and Orders for all services performed and expenses incurred during its representation of the Debtor.

6.      Subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and the Orders, S&L intends to request the allowance of its compensation as set out in the Engagement Agreement and as summarized in the following chart:

| BILLER | RATE |
|---|---|
| Kyung S. Lee | $850 |
| R.J. Shannon | $650 |
| Other Associate Attorneys | $300 - $600 |
| Paralegals | $150 - $250 |
| Legal Assistants | $50-$100 |

7.      These rates reflect the rates that S&L ordinarily charges clients in bankruptcy and non-bankruptcy matters and are less than or equal to the rates of similarly skilled and experienced attorneys in this district.  S&L submits that these agreed terms of reimbursement, compensation,

2

and hourly rates are reasonable. S&L will notify the Debtor of any change in the hourly rates charged for services rendered.

**C.      Retainer & Prepetition Payments**

8.      Pursuant to the Engagement Agreement, FSS retained S&L to represent it in connection with its restructuring, effective as of May 24, 2022. Pursuant to the Engagement Agreement, FSS paid S&L a $100,000 retainer.

9.      S&L invoiced FSS for work it did during the month of June 2022 in the total amount of $84,034.12. Prior to the Petition Date, FSS paid the June invoice.

10.      S&L then invoiced FSS for work it did during the period July 1-July 29, 2022 in the total amount of $99,177.32. Prior to the Petition Date, the Firm took into income $99,177.32 from the Retainer, leaving a balance of $822.68 in S&L's IOLTA account.

11.      Prior to the Petition Date, FSS wired $50,000 to S&L's IOLTA account to replenish the Retainer. As of the Petition Date, S&L's IOLTA account balance was $50,822.68 (the "Retainer").

12.      Under the proposed employment with the Debtor, S&L will continue to hold the Retainer in trust for satisfaction of its final fees and expenses as authorized by the Court, or as otherwise directed by the Court.

**D.      Disclosure of Connections**

*i.      Search and General Descriptions of Connections*

13.      S&L performed the following actions to determine whether it or any of its attorneys has any disclosable connections, to the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any of the judges for the U.S. Bankruptcy Court for the Southern District of Texas.

3

14. I conducted a search of S&L files to determine using the list of parties in interest listed in <u>Schedule 1</u> hereto whether the Firm had any connections to or represented any of the parties listed on Schedule 1. The search revealed that the Firm had and did not represent any of the parties listed on Schedule 1. S&L may have provided services to creditors or other parties in interest inadvertently omitted from Schedule 1 or the description above. If such connections exist, they would be on matters wholly unrelated to the service for which FSS seeks to engage S&L.

15. The email and computerized search uncovered no connections other than the following:

    a. S&L represented the Debtor prior to the Petition Date.

    b. Mr. Shannon and I previously represented the InfoWDebtors in their chapter 11 cases jointly administered under Case No. 22-60020. Certain creditors of the InfoWDebtors are also creditors of FSS. Additionally, Mr. Shannon and I represented the InfoWDebtors in the negotiations of the Plan Support Agreement under which FSS and Alex Jones committed to provide funding for the InfoWDebtors' contemplated reorganization, prior to the dismissal of the Sandy Hook plaintiffs' decision to dismiss their claims against the InfoWDebtors with prejudice.

    c. Mr. Schwartz was the CRO of the InfoWDebtors while S&L attorneys represented the InfoWDebtors.

    d. Mr. Shannon was previously employed by Akin Gump Strauss Hauer & Feld LLP.

    *ii. Further Description of Connections to the InfoWDebtors*

16. Beginning on or about March 23, 2022, I, as a partner of Parkins Lee & Rubio LLP, and R.J. Shannon, as an associate, represented the InfoWDebtors in connection with their chapter 11 cases that were filed on April 17 and 18, 2022. On May 15, 2022, I began representing the InfoWDebtors, practicing under Kyung S. Lee PLLC. On June 1, 2022, S&L began business and provided services to the InfoWDebtors in connection with the hearing on the stipulation and order dismissing the InfoWDebtors cases and final administrative matters after the dismissal of the cases.

4

17.     After extensive negotiations prior to filing their petitions, Alex Jones assigned his interests in the InfoWDebtors to a litigation Settlement Trust (the "LST") and Mr. Jones and FSS entered into a Plan Support Agreement (the "PSA"). Mr. Shannon and I represented the InfoWDebtors in connection with those negotiations.

18.     Section 8 of the PSA contained various provisions under which the PSA and the obligations of the parties thereto would terminate. The provisions under which the PSA would terminate under its terms included, among other things: (i) dismissal of the InfoWDebtors' chapter 11 cases; (ii) failure to obtain appointment of the trustees for LST; (iii) failure to file a plan pursuant to the terms of the PSA; (iv) failure to obtain confirmation of a plan pursuant to the terms of the PSA; and (v) the remand of the Sandy Hook Actions and continuation of the state court proceedings.

19.     On April 17 and April 18, 2022, the InfoWDebtors filed petitions for relief under chapter 11, subchapter v, of the Bankruptcy Code.

20.     The Texas Sandy Hook plaintiffs, the Connecticut Sandy Hook plaintiffs, and the U.S. Trustee immediately filed emergency motions to dismiss the bankruptcy cases of the InfoWDebtors.

21.     Although the InfoWDebtors filed emergency motions to appoint trustees for the LST and retain W. Marc Schwartz to serve as the CRO for InfoWDebtors, the Texas Sandy Hook plaintiffs, Connecticut Sandy Hook plaintiffs, and the U.S. Trustee each opposed hearings on those emergency motions prior to their motions to dismiss.

22.     By May 6, 2022, counsel for both the Texas and Connecticut plaintiffs announced that they were dismissing their claims against the InfoWDebtors from their respective lawsuits. CRO Schwartz directed me to work with plaintiffs' counsel to make sure that their claims were

5

003379

withdrawn with prejudice against the InfoWDebtors. The InfoWDebtors finalized, submitted and had the Bankruptcy Court approve the Stipulations of Dismissal of the Texas plaintiffs Claims with prejudice by May 19, 2022. The Connecticut plaintiffs filed pleadings to dismiss their claims against the InfoWDebtors with prejudice in the removed actions on or about May 13, 2022.

23.     After dismissal of the Sandy Hook plaintiffs' claims against the InfoWDebtors, the PSA could no longer serve its intended purpose and had terminated by its own terms. While counsel for Alex Jones and FSS advised the Court that the parties would extend the PSA deadlines beyond April 30, 2022, the Amended PSA was negotiated but never executed because the LST trustees were never appointed.

24.     The CRO of the InfoWDebtors and I then analyzed the best way to go forward with the remaining claims against the InfoWDebtors and concluded that, in light of the U.S. Trustee's continued opposition to the bankruptcy cases, dismissal of the InfoWDebtors' bankruptcy cases was in the best interest of the estate. First, the InfoWDebtors still had to litigate with the U.S. Trustee regarding dismissal. Second, the *raison d'etre* for the bankruptcy (to have the plaintiffs participate as claimants under the plan of reorganization) no longer existed. Third, the estate had limited access to funds to administer the estate, in light of the termination of the PSA. Fourth, dismissals of both Texas and Connecticut plaintiffs' claims with prejudice left the estate with only four remaining creditors.

25.     The CRO then directed me to work with the U.S. Trustee's office to have the InfoWDebtors' bankruptcy cases dismissed. On June 1, 2022, the U.S. Trustee and the Debtors filed a Stipulation and Agreed Order Dismissing Debtors' Chapter 11 Cases. On June 10, 2022, the Bankruptcy Court approved the Stipulation and Agreed Order Dismissing Debtors' Chapter 11 Cases.

003380

26.     The first services any attorney of Shannon & Lee LLP provided to FSS occurred on May 24, 2022, were provided by me through Kyung S. Lee PLLC when I traveled to Austin, Texas to discuss the potential restructuring relating to FSS. The InfoWDebtors were negotiating the terms of the stipulation with the U.S. Trustee to dismiss the case that was filed on June 1, 2022, at this time.

27.     As of May 19, 2022, and continuing through today, the InfoWDebtors and FSS are not adverse. No default exists under the license agreement between InfoW and FSS. To the best of my knowledge, there are no claims between FSS and the InfoWDebtors.

28.     Out of an abundance of caution and to assure the Court and the FSS creditors that S&L does not have a bias or an adverse interest against FSS or its estate, Kyung S. Lee PLLC submitted a written resignation of its engagement to serve as restructuring counsel to InfoWDebtors prior to submission of the Application.

29.     The results of the foregoing connections search process confirm that neither I, S&L, nor any of its employees or partners, to the best of my knowledge, have any disqualifying connections. Neither I, S&L, or any partner of S&L (a) have any debt or equity securities in the Debtor, (b) are an insider of the Debtor, or (c) was a creditor of the Debtor on the Petition Date.

### E.  Affirmative Statement of Disinterestedness

30.     Based on the connections review conducted to date and described herein, to the best of my knowledge and insofar as I can ascertain, I and S&L are "disinterested persons" within the meaning of Bankruptcy Code § 101(14), as modified by Bankruptcy Code § 1107(b), as required by Bankruptcy Code § 327(a).

31.     I am not a creditor, an equity security holder, or an insider of the Debtor; I am not and was not within 2 years before the Petition Date a director of the Debtor; and I do not have any

7

interest materially adverse to the interests of the Debtor's bankruptcy estate or any class of creditors or equity security holders.

32.     S&L is not a creditor, an equity security holder, or an insider of the Debtor; S&L is not and was not within 2 years before the Petition Date an employee, officer, or director of the Debtor; and S&L does not have any interest materially adverse to the interests of the Debtor's bankruptcy estate or any class of creditors or equity security holders.

33.     S&L does not possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate. S&L also does not possess or assert any economic interest that would create either an actual or potential dispute in which the estate is a rival claimant. S&L does not have any incentive to act contrary to the best interests of the estate and its creditors.

    **F.     Bankruptcy Rule 2016(b) Disclosures**

34.     Pursuant to Bankruptcy Code § 504 and Bankruptcy Rule 2016, S&L has not shared or agreed to share (a) any of its compensation from the representation of the Debtor with any other persons, or (b) any compensation any other persons have received, may have received, or will receive.

    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August  20, 2022,

                                        By: /s/*Kyung S. Lee*
                                             Kyung S. Lee

8

003382

**SCHEDULE 1**

**TO LEE DECLARATION**

**SEARCHED PARTIES**

Debtor & Professionals

    Law Office of Ray Battaglia             Schwartz Associates

Debtor's Equity

    Alexander E. Jones

Largest 20 Unsecured Creditors & Litigation Claimants

| | |
|---|---|
| Elevated Solutions Group | Dona Soto |
| Atomial LLC | Erica Lafferty |
| Cloudfare, Inc. | Francine Wheeler |
| Jacquelyn Blott | Ian Hockley |
| Joel Skousen | Jacqueline Barden |
| eCommerce CDN LLC | Jennifer Hensel |
| Paul Watson | Jeremy Richman |
| Greenair, Inc. | Jillian Soto |
| Edgecast, Inc. | Leonard Pozner |
| Ready Alliance Group, Inc. | Marcel Fontaine |
| Getty Images, Inc. | Mark Barden |
| RatsMedical.com | Neil Heslin |
| David Icke Books Limited | Nicole Hockley |
| WWCR | PQPR Holdings Limited, LLC |
| CustomTattoNow.com | Robert Parker |
| AT&T | Scarlett Lewis |
| Justin Lair | Veronique De La Rosa |
| Brennan Gilmore | William Sherlach |
| Carlee Soto-Parisi | William Aledenberg |
| Carlos Soto | Larry Klayman |
| Christopher Sadowski | Randazza Legal Group |

Attorneys for Creditors and Parties in Interest

| | |
|---|---|
| Kaster Lynch Farrar & Ball LLP | Jordan & Ortiz, P.C. |
| Koskoff Koskoff & Bieder | McDowell Heterhington LLP |
| Fertitta & Reynal LLP | The Akers Law Firm PLLC |
| Pattis & Smith, LLC | Copycat Legal PLLC |
| Zeisler & Zeisler P.C. | |

Waller Lansden Dortch & Davis, LLP

Akin Gump Strauss Hauer & Feld LLP

U.S. Bankruptcy Judges and Staff

Chief Judge David R. Jones
Judge Marvin Isgur
Judge Christopher M. Lopez
Judge Jeffrey P. Norman
Judge Eduardo V. Rodriguez
Albert Alonzo
Ana Castro

Tracey Conrad
Jeannie Chavez
LinhThu Do
Tyler Laws
Kimberly Picota
Vriana Portillo
Mario Rios


U.S. Trustee Personnel

Alicia Barcomb
Jacqueline Boykin
Luci Johnson-Davis
Hector Duran
Barbra Griffin
Brian Henault
Linda Motton
Ha Nguyen
Glenn Otto
Yasmin Rivera

Jayson B. Ruff
Millie Sall
Patricia Schmidt
Christy Simmons
Gwen Smith
Stephen Statham
Christopher R. Travis
Clarissa Waxton
Jana Whitworth

003384

# Conflict Check Summary

Performed On:

2022-08-16 @ 05.37 PM

By:

R. J. Shannon (rshannon@shannonleellp.com)

## Overview

The purpose of this report is to perform an in-depth search within this firm's practice management system for various terms which may indicate a conflict with a prospective client.  The presence of results in this report does not indicate a conflict, rather it indicates a place that a human should verify that a conflict does not exist.

| Terms Searched | Status |
| --- | --- |
| Elevated Solutions Group | No Results |
| Atomial LLC | No Results |
| Cloudfare, Inc. | No Results |
| Jacquelyn Blott | No Results |
| Joel Skousen | No Results |
| eCommerce CDN LLC | No Results |
| Paul Watson | No Results |
| Greenair, Inc. | No Results |
| Edgecast, Inc. | No Results |
| Ready Alliance Group, Inc. | No Results |
| Getty Images, Inc. | No Results |
| RatsMedical.com | No Results |
| David Icke Books Limited | No Results |
| WWCR | No Results |
| CustomTattoNow.com | No Results |
| AT&T | No Results |
| Justin Lair | No Results |
| Brennan Gilmore | No Results |
| Carlee Soto-Parisi | No Results |
| Carlos Soto | No Results |
| Christopher Sadowski | No Results |
| Dona Soto | No Results |
| Erica Lafferty | No Results |
| Francine Wheeler | No Results |
| Ian Hockley | No Results |



| | |
|---|---|
| Jacqueline Barden | No Results |
| Jennifer Hensel | No Results |
| Jeremy Richman | No Results |
| Jillian Soto | No Results |
| Leonard Pozner | No Results |
| Marcel Fontaine | No Results |
| Mark Barden | No Results |
| Neil Heslin | No Results |
| Nicole Hockley | No Results |
| PQPR Holdings Limited, LLC | No Results |
| Robert Parker | No Results |
| Scarlett Lewis | No Results |
| Veronique De La Rosa | No Results |
| William Sherlach | No Results |
| William Aledenberg | No Results |
| Larry Klayman | No Results |
| Randazza Legal Group | No Results |
| Kaster Lynch Farrar & Ball LLP | No Results |
| Koskoff Koskoff & Bieder | No Results |
| Fertitta & Reynal LLP | No Results |
| Pattis & Smith, LLC | No Results |
| Zeisler & Zeisler P.C. | No Results |
| Jordan & Ortiz, P.C. | No Results |
| McDowell Heterhington LLP | No Results |
| The Akers Law Firm PLLC | No Results |
| Copycat Legal PLLC | No Results |
| Waller Lansden Dortch & Davis, LLP | No Results |
| Akin Gump Strauss Hauer & Feld LLP | No Results |
| Chief Judge David R. Jones | No Results |
| Judge Marvin Isgur | No Results |
| Judge Christopher M. Lopez | No Results |
| Judge Jeffrey P. Norman | No Results |
| Judge Eduardo V. Rodriguez | No Results |
| Albert Alonzo | No Results |
| Ana Castro | No Results |
| Tracey Conrad | No Results |
| Jeannie Chavez | No Results |
| LinhThu Do | No Results |
| Tyler Laws | No Results |



003386

| | |
|---|---|
| Kimberly Picota | No Results |
| Vriana Portillo | No Results |
| Mario Rios | No Results |
| Alicia Barcomb | No Results |
| Jacqueline Boykin | No Results |
| Luci Johnson-Davis | No Results |
| Hector Duran | No Results |
| Barbra Griffin | No Results |
| Brian Henault | No Results |
| Linda Motton | No Results |
| Ha Nguyen | No Results |
| Glenn Otto | No Results |
| Yasmin Rivera | No Results |
| Jayson B. Ruff | No Results |
| Millie Sall | No Results |
| Patricia Schmidt | No Results |
| Christy Simmons | No Results |
| Gwen Smith | No Results |
| Stephen Statham | No Results |
| Christopher R. Travis | No Results |
| Clarissa Waxton | No Results |
| Jana Whitworth | No Results |

| Objects | Status |
|---|---|
| Calendar Entries | Not Searched |
| Communications Entries | Not Searched |
| Contact Custom Fields | Not Searched |
| Contacts | Searched |
| Documents | Not Searched |
| Expense Entries | Not Searched |
| Folders | Not Searched |
| Matter Custom Fields | Not Searched |
| Matter Notes | Not Searched |
| Matters | Searched |
| Relationships | Searched |
| Time Entries | Searched |



# Conflict Check Summary

Performed On:

2022-09-16 @ 01.32 AM

By:

R. J. Shannon (rshannon@shannonleellp.com)

## Overview

The purpose of this report is to perform an in-depth search within this firm's practice management system for various terms which may indicate a conflict with a prospective client.  The presence of results in this report does not indicate a conflict, rather it indicates a place that a human should verify that a conflict does not exist.

| Terms Searched | Status |
|---|---|
| Airco Mechanical | No Results |
| Addshoppers | No Results |
| ADP | No Results |
| Alex Jones | No Results |
| Ally Auto | No Results |
| Amazon | No Results |
| American Express | No Results |
| American Media | No Results |
| Reality Zone | No Results |
| Andrews, Christopher | No Results |
| Chistopher Andrews | No Results |
| AT&T | No Results |
| Atomial | No Results |
| AWIO Web | No Results |
| Balcones Recycling | No Results |
| Biodec | No Results |
| Blott, Jacquelyn | No Results |
| Jacquelyn Blott | No Results |
| Gilmore, Brennan | No Results |
| Brennan Gilmore | No Results |
| Campco | No Results |
| Carlee Soto-Parisi | No Results |
| Carlos Soto | No Results |
| Chelsea Green Publishing | No Results |
| Christopher Sadowski | No Results |



| | |
|---|---|
| Copycat Legal | No Results |
| City of Austin | No Results |
| Cloudfare | No Results |
| Constant Contact | No Results |
| CustomtattoNow | No Results |
| David Icke Books | No Results |
| Ickonic Enterprises | No Results |
| Deese, Stetson | No Results |
| Stetson, Deese | No Results |
| DirectTV | No Results |
| Dona Soto | No Results |
| eBay | No Results |
| eCommerce CDN | No Results |
| Edgecast | No Results |
| Elevated Solutions | No Results |
| EPS, LLC | No Results |
| Erica Lafferty | No Results |
| ERM Protect | No Results |
| Frost Insurance Agency | No Results |
| Fracine Wheeler | No Results |
| FW Robert Broadcasting Co | No Results |
| Gabriela Tolentino | No Results |
| Getty Images | No Results |
| Gracenote | No Results |
| Greenair | No Results |
| Haivision | No Results |
| Impact Fire Services | No Results |
| Independent Publishers Group | No Results |
| Iron Mountain | No Results |
| Jacqueline Barden | No Results |
| Jennifer Hensel | No Results |
| Jeremy Richman | No Results |
| JCE SEO | No Results |
| Jullian Soto | No Results |
| Justin Lair | No Results |
| JW JIB | No Results |
| KI4U.com | No Results |
| Konica Minnolta | No Results |
| Larry Klayman | No Results |



| | |
|---|---|
| Klayman, Larry | No Results |
| Leonard Pozner | No Results |
| Lincoln-Remi Group, LLC | No Results |
| LIT Industrial | No Results |
| Logo It | No Results |
| Lumen | No Results |
| Level 3 Communications | No Results |
| Marcel Fontaine | No Results |
| Mark Barden | No Results |
| Magento | No Results |
| Microsoft Bing | No Results |
| Miller, Sean | No Results |
| Sean Miller | No Results |
| mongoDB | No Results |
| MRJR Holdings | No Results |
| Music Videos Distributors | No Results |
| MVD Entertainment Group | No Results |
| Heslin, Neil | No Results |
| Neil Heslin | No Results |
| Nicole Hockley | No Results |
| NetSuite | No Results |
| Koskoff | No Results |
| New Relic | No Results |
| Newegg.com | No Results |
| One Party America | No Results |
| Orkin | No Results |
| Pattison Law Firm | No Results |
| Payarc | No Results |
| Paymentus | No Results |
| Paz Law | No Results |
| Perfect Imprints | No Results |
| Perkins, Wes | No Results |
| Wes Perkins | No Results |
| Poulsen, Debra | No Results |
| PQPR | No Results |
| Stephen Lemmon | No Results |
| Protection 1 Alarm | No Results |
| Percision Oxygen | No Results |
| Pipe Hitters Union | No Results |



003390

| | |
|---|---|
| Post Hill Press | No Results |
| Pullman & Comly | No Results |
| Power Reviews | No Results |
| Precision Camera | No Results |
| Private Jets | No Results |
| Public Storage | No Results |
| Randazza | No Results |
| Ratsmedical.com | No Results |
| Ready Alliance Group | No Results |
| Renaissance | No Results |
| Resistance Manifesto | No Results |
| Restor America | No Results |
| Robert Parker | No Results |
| Scarlett Lewis | No Results |
| Security Bank of Crawford | No Results |
| Simon & Schuster | No Results |
| SintecMedia NYC | No Results |
| Operative | No Results |
| Skousen, Joel | No Results |
| Joel Skousen | No Results |
| Skyhorse Publishing | No Results |
| Sparketts & Sierra Springs | No Results |
| SLNT | No Results |
| Spectrum Enterprise | No Results |
| Time Warner Cable | No Results |
| Stamps.com | No Results |
| Stone Edge Technologies | No Results |
| Stratus Technologies | No Results |
| Studio 2426 | No Results |
| Synergy North America | No Results |
| TD Canada Trust | No Results |
| Texas Disposal Systems | No Results |
| Texas Gas Service | No Results |
| Texas Comptroller | No Results |
| Textedly | No Results |
| The Creative Group | No Results |
| The Hartford | No Results |
| The Steam Team | No Results |
| Third Coast Graphics | No Results |



| | |
|---|---|
| Travelers | No Results |
| Travis County | No Results |
| Thomas, David | No Results |
| David Thomas | No Results |
| U.S. Legal Support | No Results |
| Uline Shipping Supply | No Results |
| Vazquez, Valdemar Rodriguez | No Results |
| Valdemar Vazquez | No Results |
| Verizon | No Results |
| Veronica De La Rosa | No Results |
| Vultr | No Results |
| Waste Connections Lone Star | No Results |
| Water Event | No Results |
| Pure Water Solutions | No Results |
| Watson, Paul | No Results |
| Paul Watson | No Results |
| Westwood One, LLC | No Results |
| William Scherlach | No Results |
| Willaim Aldenberg | No Results |
| Willow Grove Productions | No Results |
| Wisconsin Dept. of Revenue | No Results |
| WMQM-AM 1600 | No Results |
| WWCR | No Results |
| Your Promotional Products, LLC | No Results |
| Zendesk, Inc. | No Results |
| Zoom US | No Results |
| Kaster Lynch Farrar & Ball LLP | No Results |
| The Reynal Law Firm | No Results |
| Pattis & Smith | No Results |
| Zeisler & Zeisler | No Results |
| Jordan & Ortiz | No Results |
| McDowll Hetherington | No Results |
| Akers Law Form | No Results |
| Waller Landsen | No Results |
| Akin Gump | No Results |
| Chief Judge David R. Jones | No Results |
| Judge Marvin Isgur | No Results |
| Judge Chistopher Lopez | No Results |
| Judge Jeffry Norman | No Results |



| | |
|---|---|
| Judge Eduardo V. Rodriguez | No Results |
| Albert Alonzo | No Results |
| Ana Castro | No Results |
| Tracey Conrad | No Results |
| Jeannie Chavez | No Results |
| LinhThu Do | No Results |
| Tyler Laws | No Results |
| Kimberly Picota | No Results |
| Vriana Portillo | No Results |
| Mario Rios | No Results |
| Alicia Barcomb | No Results |
| Jacqueline Boykin | No Results |
| Luci Johnson-Davis | No Results |
| Hector Duran | No Results |
| Barbra Griffin | No Results |
| Brian Henault | No Results |
| Linda Motton | No Results |
| Ha Nguyen | No Results |
| Glenn Otto | No Results |
| Yasmin Rivera | No Results |
| Jayson Ruff | No Results |
| Millie Sal | No Results |
| Patrica Schmidt | No Results |
| Christy Simmons | No Results |
| Gwen Smith | No Results |
| Stephen Statham | No Results |
| Christopher Travis | No Results |
| Clarissa Waxton | No Results |
| Jana Whitworth | No Results |

| Objects | Status |
|---|---|
| Calendar Entries | Not Searched |
| Communications Entries | Not Searched |
| Contact Custom Fields | Not Searched |
| Contacts | Searched |
| Documents | Not Searched |
| Expense Entries | Not Searched |
| Folders | Not Searched |
| Matter Custom Fields | Searched |



| Matter Notes | Searched |
|---|---|
| Matters | Searched |
| Relationships | Searched |
| Time Entries | Not Searched |



 **SHANNON & LEE LLP**

# INVOICE

Invoice # 10
Date: 07/05/2022
Due On: 08/04/2022

700 Milam, Suite 1300
Houston, Texas 77002
United States

Free Speech Systems, LLC

## 00008-Free Speech Systems, LLC
## Financial Restructuring

### Services

| Date | Attorney | Description | Hours | Rate | Total |
|------|----------|-------------|-------|------|-------|
| 06/01/2022 | KSL | Continue to gather agreements, data from state court receiver discovery and share new discovery on financial data with counsel and CRO that affects restructuring strategy (.5) | 0.50 | $850.00 | $425.00 |
| 06/02/2022 | KSL | Handle issues relating to FSS bankruptcy preparation and follow-up with calls and Zoom meetings with co-counsel to discuss how to approach FSS and key issues relating to same (1); continue to scour State Court discovery and pull key discovery that could affect bankruptcy case (1.) | 2.00 | $850.00 | $1,700.00 |
| 06/03/2022 | KSL | Review issues relating to ████ Agreement, and other arrangements relating to transactions between PQPR and FSS and analyze same; extended t/c with S. Lemmon to understand position of David Jones and Anthony on issues from PQPR and ████; further calls with Marc Schwartz to discuss schedule of preparation for filing; t/c with R. Battaglia to discuss same (2) | 2.00 | $850.00 | $1,700.00 |
| 06/05/2022 | RJS | Conference with K. Lee re PQPR lien and note; draft memo re PQPR lien and note . | 3.60 | $625.00 | $2,250.00 |
| 06/05/2022 | KSL | Handle call with Marc Schwartz and RJ Shannon on results of analysis of ████ Agreement and impact of percentages in agreement on ability of FSS to make any income (1.0) | 1.00 | $850.00 | $850.00 |
| 06/06/2022 | RJS | Travel to and return from Austin re meeting about restructuring and goals (1/2 rate) | 5.00 | $312.50 | $1,562.50 |
| 06/06/2022 | RJS | Meeting in Austin re restructuring and potential bankruptcy among FSS professionals and conference with separate attorneys from Alex Jones and PQPR. | 4.50 | $625.00 | $2,812.50 |

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 06/06/2022 | KSL | Travel to and from Austin, Texas for FSS meetings (3)(6 hours billed at 1/2 travel time); meeting with counsel, CRO and SchwartzAssociates and B. Roe to discuss preparing for FSS bankruptcy case (5.0)(meeting joined by Shelby Jordan and Steve Lemmon at different portions of the meeting) | 8.00 | $850.00 | $6,800.00 |
| 06/07/2022 | KSL | Extended conference call to clarify position of FSS and its advisors relating to restructuring and its goals (1.0); further review of issues relating to projected timeline for filing, what has to be accomplished prior to that time and whether it is feasible to do so (1.0) | 2.00 | $850.00 | $1,700.00 |
| 06/08/2022 | KSL | O/c with Marc Schwartz to highlight new issues to handle relating to FSS preparation for bankruptcy (.5); analyze data from State Court discovery and handle new data and share with other parties, mark and note for inclusion into Marc Schwarz declaration (1.5) | 2.00 | $0.00 | $0.00 |
| 06/09/2022 | KSL | Continue to review State Court Discovery files to determine a) Cash movement from Security Bank accounts for Cash Management Motion, b) net worth discovery folder to determine whether financials produced contradict true condition of FSS as analyzed by Marc Schwartz, and c) review death penalty sanctions and why it occurred and what it means (3)) | 3.00 | $850.00 | $2,550.00 |
| 06/10/2022 | RJS | Review NDA for Axos Bank and revise same for March Schwartz. | 0.50 | $625.00 | $312.50 |
| 06/11/2022 | RJS | Review various emails and docket entries re Conn. sanctions motion; gather various relevant documents relevant to the same; draft email to N. Pattis re same. | 0.80 | $625.00 | $500.00 |
| 06/13/2022 | RJS | Teleconference re various litigation and restructuring matters. | 1.00 | $625.00 | $625.00 |
| 06/13/2022 | KSL | Focus on assisting Marc Schwartz on assuring FSS does not suffer any additional penalties and sanctions in connection with corporate representative depositions in Connecticut by reviewing State Court discovery to analyze scope of corporate representative discovery, depositions taken to date, and handle any financial data discussed during such discovery as it relates to present efforts to analyze financial condition of FSS (4) | 4.00 | $850.00 | $3,400.00 |
| 06/14/2022 | RJS | Call re restructuring matters. | 1.00 | $625.00 | $625.00 |
| 06/14/2022 | KSL | Review Motion for Sanctions for Bad Faith Removal in preparation for responding to same or assisting Norm Pattis and Cameron Atkinson (1.5); lunch meeting with Marc Schwartz to discuss FSS issues and catch up on work to be done (1.5); extended call with team to review issues on project timeline and what work needs to be done (1.0); review notices of deposition for corporate representatives (.5); review motions for sanctions and response available to Connecticut and | 5.00 | $850.00 | $4,250.00 |

| | | Texas counsel (.5) | | | |
|---|---|---|---|---|---|
| 06/15/2022 | RJS | Email Marc re next steps in matter in response to email re information (.3); analyze corporate rep. deposition in Conn matter and email team re same (.2); analyze Texas sanctions motion re removal (.5); draft email re same to team (.3); gather relevant documents re same (2.0); draft detailed email re same to A. Reynal (.4). | 3.70 | $625.00 | $2,312.50 |
| 06/15/2022 | KSL | O/c with Marc Schwartz after the ROCC breakfast to discuss status of financial statement preparation for FSS (.5); analyze Norm Pattis emails on status of bankruptcy preparation and timing of when case will be ready for filing (.5); emails with RJ Shannon on new issues raised by FSS (.5); t/c with S. Lemmon, counsel for PQPR on restructuring issues (.5); analyze and handle conference calls among CRO, counsel and PQPR on various business and negotiating issues on transaction between the parties (1) | 3.00 | $850.00 | $2,550.00 |
| 06/16/2022 | KSL | Continue to gather factoids from State Court Discovery folders and depositions to incorporate into Marc Schwartz Declaration (1.0); analyze and restructure form of Schwartz Declaration (1.0) | 2.00 | $850.00 | $1,700.00 |
| 06/17/2022 | KSL | Continue review of State Court Discovery files to gather factoids for Schwartz Declaration and create inserts for various sections of Schwartz Declaration (2) | 2.00 | $850.00 | $1,700.00 |
| 06/19/2022 | RJS | Travel to Austin re meeting re restructuring (1/2 rate). | 2.50 | $625.00 | $1,562.50 |
| 06/20/2022 | KSL | Travel to and from Austin, Texas for meetings at FSS headquarters on Alvin Devane with counsel, B. Roe, Alex Jones, Shelby Jordan, Ray Battaglia and Marc Schwartz (3.0)(6.0 hours at 1/2 travel time per US Trustee Guidelines); attend meeting at FSS with counsel and business people to discuss status of FSS case preparation (4.0) | 7.00 | $850.00 | $5,950.00 |
| 06/20/2022 | RJS | Attend meeting in Austin, TX re restructuring. | 4.00 | $625.00 | $2,500.00 |
| 06/21/2022 | RJS | Gather documents needed for Axos bank; draft email to M. Schwartz, K. Lee, and R. Battaglia attaching same. | 0.20 | $625.00 | $125.00 |
| 06/21/2022 | KSL | Review outline of to dos to prepare for Chapter 11 filing for FSS (.5); analyze status of State Court Discovery files to determine additional documents and data to be used in Marc Schwartz Declaration (2.5); lunch meeting with Marc Schwartz and Jeff Shulse to determine status of financial information preparation for FSS Bankruptcy Filing (2.0) | 5.00 | $850.00 | $4,250.00 |
| 06/22/2022 | RJS | Attention to email from Texas SOS re certificate of fact; draft email re same to M. Schwartz; attention to email from R. Battaglia and M. Schwartz re meeting with PQPR; draft response re same suggesting Zoom meeting; draft email to A. Reynal re sanctions motion | 0.40 | $625.00 | $250.00 |

| | | | | | |
|---|---|---|---|---|---|
| | | hearing on 6/14/22. | | | |
| 06/22/2022 | RJS | Draft Declaration re sanctions motion re removal. | 5.73 | $625.00 | $3,581.25 |
| 06/23/2022 | RJS | Finalize Declaration re Texas sanctions motion and gather exhibits; draft email to A. Reynal and team re same. | 1.91 | $625.00 | $1,193.75 |
| 06/23/2022 | KSL | Review and edit Declaration of RJ Shannon in Response and in Support of Opposition to Bad Faith Removal Motions by Plaintiffs (1.0); review Exhibits 23, 24 and 25 of the Declaration and determine whether they support arguments made in the Declaration and response of Heslin Plaintiff to same (1.0); conference calls and review of exhibits on latest status of ability of Schwartz to generate accurate financial information for FSS to file chapter 11 and sustain company in Chapter 11 (1); review new issues raised by State Court actions and hearings on attorneys' fees in Texas State Court (1.0) | 4.00 | $850.00 | $3,400.00 |
| 06/24/2022 | RJS | Attend hearing on motion re amending sanctions order; organize notes re same. | 1.04 | $625.00 | $650.00 |
| 06/24/2022 | RJS | Attention to K. Lee email re FSS-PQPR memorandum; provide comments to same; draft email re same to K. Lee. | 0.58 | $625.00 | $362.50 |
| 06/24/2022 | KSL | Review and analyze MOU to determine whether arrangement works and is feasible; listen to response from S. Lemmon on MOU; discuss same with client and opposing counsel and determine approach that is equitable for both parties; review corporate deposition transcript of Zimmerman, Dew and several others on various topics to determine whether factoids available for Marc Schwartz Declaration; review David Jones deposition to do same (3) | 3.00 | $850.00 | $2,550.00 |
| 06/25/2022 | RJS | Attention to emails re Friday hearing; draft email to K. Lee, R. Battaglia, M. Schwartz re same. | 0.48 | $625.00 | $300.00 |
| 06/27/2022 | RJS | Obtain transcript of 6/10/22 hearing in IW bankruptcy case; draft email to team re same; attention to response from A. Reynal; initial call re modification of PQPR deal. | 0.50 | $625.00 | $312.50 |
| 06/27/2022 | RJS | Call with S. Lemmon, M. Schwartz, K. Lee, and R. Battaglia re amending PQPR relationship. | 1.30 | $625.00 | $812.50 |
| 06/27/2022 | KSL | Complete review of Exhibits 23, 24 and 25 to RJ Declaration to assure that "bad faith" arguments are addressed and supported by response filed (1.0); Handle fall out from issues relating to circulation of MOU by J. Shulse and why such proposal is opposed by S. Lemmon (1.0); Call with M. Schwartz to discuss issues relating to financial information for FSS (.5); edit and revise latest draft of M. Schwartz Declaration (1.0); | 4.50 | $850.00 | $3,825.00 |

| | | | | | |
|---|---|---|---|---|---|
| | | Conference call with R. Battaglia and R. Shannon to discuss strategy on how to handle State Court cases (1.0) | | | |
| 06/28/2022 | RJS | Finalize declaration re Texas sanctions motion; send same to A. Reynal; review pleadings in Texas state court in advance of 3 pm call with S. Jordan, R. Battaglia, K. Lee, and A. Reynal. | 2.84 | $625.00 | $1,775.00 |
| 06/28/2022 | RJS | Prepare response re email re PQPR; prepare for and attend 3 pm meeting re litigation. | 1.90 | $625.00 | $1,187.50 |
| 06/28/2022 | RJS | Prepare WIP List for filing | 3.17 | $625.00 | $1,981.25 |
| 06/28/2022 | KSL | Write emails to M. Schwartz on financials and status of when they will be ready, negotiations on revised arrangements with PQPR and new agreements to be entered into among the parties (.5); extended conference call among Ray Battaglia and S. Lemmon to discuss latest developments on PQPR and SFF (.5); Call on FSS with team on MOU and action plan required on same (1.0); continue to review depositions of corporate representatives and Alex Jones to determine factoids critical to Marc Schwartz Declaration (1.0) | 3.00 | $850.00 | $2,550.00 |
| 06/29/2022 | RJS | Draft email re CODI tax implications to R. Battaglia, S. Jordan, and K. Lee; finish drafting WIP/Task List for bankruptcy filing; draft email to K. Lee and R. Battaglia re same; | 2.20 | $625.00 | $1,375.00 |
| 06/29/2022 | KSL | Outline topics on which data is required from SchwartzAssociates to complete (1.0); review status of Schwartz Declaration to determine new topics to include for finalization (1.0); Lunch with Marc Schwartz and RJ Shannon to review issues on FSS and how to break log jam in financial data requirements to make progress for filing chapter 11 (1.0); t/c with R. Battaglia and Steve Lemmon to discuss issues relating to new agreement between the parties (1.0); continue to edit and revise Schwartz Declaration (1.0) | 5.00 | $850.00 | $4,250.00 |
| 06/30/2022 | RJS | Zoom call with M. Schwartz and K. Lee re PQPR financials; attention to K. Lee email re same and S. Lemmon request to destroy same; research and draft detailed email re same; teleconference with M. Schwartz, C. Schwartz, K. Lee, R. Battaglia, and S. Jordan re same. | 4.70 | $625.00 | $2,937.50 |
| 06/30/2022 | RJS | Research SOL issues re malpractice claims; draft email to team re same. | 0.40 | $625.00 | $250.00 |
| 06/30/2022 | KSL | T/c with R. Battaglia on latest developments in case (.5); review financials provided by M. Schwartz (1.0); t/c with S. Lemmon on PQPR Financials (.4); review issues relating to return of financials (.6); review issues relating to 13 week cash flow forecasts for FSS (.5); | 6.00 | $850.00 | $5,100.00 |

003399

edit and revise M. Schwartz Declaration as it relates to history of FSS, years 2009-2014 and add in excerpts from deposition transcripts (2.0); conference call with client and legal team to discuss PQPR Financials (.5); review data on cash management system at FSS and locate pleadings relating to same (.5)

| | |
|---|---|
| **Quantity Subtotal** | **127.95** |
| **Services Subtotal** | **$93,356.25** |

## Expenses

| Type | Date | Description | Quantity | Rate | Total |
|------|------|-------------|----------|------|-------|
| Expense | 06/21/2022 | Texas SOS Search and Filings: Texas SOS search and certificate of fact for Free Speech Systems, LLC | 1.00 | $15.00 | $15.00 |
| | | | | **Expenses Subtotal** | **$15.00** |

| Time Keeper | Position | Hours | Rate | Total |
|-------------|----------|-------|------|-------|
| Kyung Lee | Attorney | 72.0 | $850.00 | $61,200.00 |
| Kyung Lee | Attorney | 2.0 | $0.00 | $0.00 |
| R. J. Shannon | Attorney | 48.95 | $625.00 | $30,593.75 |
| R. J. Shannon | Attorney | 5.0 | $312.50 | $1,562.50 |

| | |
|---|---|
| **Quantity Total** | **127.95** |
| **Subtotal** | **$93,371.25** |
| **Invoice Discount   10.0% (-$9,337.13)** | |
| *Agreed 10% discount* | |
| **Total** | **$84,034.12** |
| **Payment (07/28/2022)** | **-$84,034.12** |
| **Balance Owing** | **$0.00** |

# Detailed Statement of Account

## Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|----------------|--------|------------|-------------------|-------------|

| 10 | | | 08/04/2022 | $84,034.12 | $84,034.12 | $0.00 |

## IOLTA Trust Account

| Date | Type | Description | Matter | Receipts | Payments | Balance |
|------|------|-------------|--------|----------|----------|---------|
| 06/18/2022 | Retainer | Retainer for representation | 00008-Free Speech Systems, LLC | | $100,000.00 | $100,000.00 |
| 07/28/2022 | | Payment for invoice #12 | 00008-Free Speech Systems, LLC | $99,177.32 | | $822.68 |
| 07/29/2022 | Retainer | Retainer in advance of bankruptcy filing. | 00008-Free Speech Systems, LLC | | $50,000.00 | $50,822.68 |
| | | | **IOLTA Trust Account Balance** | | **$0.00** | |

Please make all amounts payable to: Shannon & Lee LLP

Please pay within 30 days.

003401

 **SHANNON & LEE LLP**

# INVOICE

Invoice # 12
Date: 07/28/2022
Due On: 08/28/2022

700 Milam, Suite 1300
Houston, Texas 77002
United States

Free Speech Systems, LLC

## 00008-Free Speech Systems, LLC
## Financial Restructuring

### Services

| Date | Attorney | Description | Hours | Rate | Total |
|------|----------|-------------|-------|------|-------|
| 07/01/2022 | RJS | Draft list of items needed for filing; send same to M. Schwartz and team. | 0.60 | $625.00 | $375.00 |
| 07/01/2022 | KSL | Review revised term sheet with PQPR to determine whether formula works (.5); obtain background facts to start drafting Cash Management Motion and edit same (1.5); numerous t/cs with M. Schwartz to discuss status of amendments with PQPR (.6); attend Focus Group hosted by A. Feryal and participate on jury perception of Alex Jones (4.0) | 6.60 | $850.00 | $5,610.00 |
| 07/01/2022 | KSL | Work on outlining potential Plan of Reorganization as a way to defend against bad faith filing (1.0); t/c with S. Lemmon on Blue Ascension and follow-up with M.Schwartz (1.0); extended calls with Schwartz Associates and co-counsel to analyze whether FSS is ready to file chapter 11 (1.0); continue to outline pros and cons of filing and circulate for review by co-counsel (1.0) | 4.00 | $850.00 | $3,400.00 |
| 07/01/2022 | KSL | T/c with S. Lemmon on new issues between FSS and PQPR (.3); t/w with R. Shannon to discuss same and any new developments on FSS (.3); call with FSS financial and legal to go over new issues, status of financials and preparation for filing chapter 11 (1.0); revise and edit M.Schwartz Declaration by adding in sections on First Day Motions and correcting changes made by M. Schwartz (2.0) | 3.60 | $850.00 | $3,060.00 |
| 07/04/2022 | RJS | Draft declaration re tax return for petition (.3); draft list of equityholders for petition (.1); draft motion re notice to employees (1.0). | 1.40 | $625.00 | $875.00 |
| 07/05/2022 | RJS | Draft motion to extend time to file schedules and | 2.61 | $625.00 | $1,631.25 |

| | | statements; draft motion re notice to Employees. | | | |
|---|---|---|---|---|---|
| 07/05/2022 | KSL | T/c with R. Battaglia to discuss issues to handle and approach to same on FSS filing (.4); work on editing and revising Cash Management Motion (1.5); numerous calls and discussions on revised agreement with PQPR for shipment of goods and split of revenues, theft issues with personnel and logistics of getting good financials from FSS (2.0); numerous t/c with S. Lemmon on issues relating to PQPR disputes (.5) | 4.40 | $850.00 | $3,740.00 |
| 07/06/2022 | RJS | Revise cash management motion | 1.40 | $625.00 | $875.00 |
| 07/06/2022 | KSL | T/c with R. Battaglia and S. Lemmon re: Term Sheet over PQPR revised agreement; email group on status of negotiations with PQPR; update RJ Shannon on status of negotiations; review with Marc Schwartz on 2nd quarter results; t/c with S. Lemmon on status of negotiations over PQPR terms (4) | 4.00 | $850.00 | $3,400.00 |
| 07/07/2022 | KSL | T/c with S. Lemmon to update on new issue for the day with PQPR (.4); Call with S. Lemmon, S. Jordan, R. Battaglia and R. Shannon to discuss new operational issues, PQPR Agreement and follow-up required (2.5); call with M. Schwartz to analyze status of financial projections and how to handle (1.0); extended call with state court litigators to find out exact schedule for trial and deadlines (2.0) | 5.90 | $850.00 | $5,015.00 |
| 07/08/2022 | KSL | Review emails and prepare for new issues to handle on FSS (.5); extended calls on PQPR Forbearance Agreement and revisions to same and discuss with M.Schwartz and R. Battaglia (3.0); continue to manage situation between PQPR and FSS as it relates to sharing of costs and allocation of burdens (1.0) | 4.50 | $850.00 | $3,825.00 |
| 07/11/2022 | KSL | Assist S.Jordan on indemnity issues between FSS and Alex Jones and counsel on same (.5); analyze timing of trials and handle issues relating to filing timing and why FSS needs a longer track record of going into chapter 11 (1.0); extended call with FSS group to discuss strategy on filing and break out of assignments for group (1.0); follow-up drafting of pleadings with further revisions to Declaration of M.Schwarz and other First Day pleadings (2.0) | 4.50 | $850.00 | $3,825.00 |
| 07/12/2022 | KSL | Emails with R. Shannon on status of case (.3); emails on potential plan structure (.3); t/c with N. Pattis on status of Connecticut litigation (.3); discuss with M. Schwartz and R. Battaglia pros and cons of going into bankruptcy too early (1.0) | 1.90 | $850.00 | $1,615.00 |
| 07/14/2022 | RJS | Attend status call re matter (.5); draft detailed email outlining research re bias considerations in abstention (2.5). | 3.00 | $625.00 | $1,875.00 |
| 07/14/2022 | KSL | Review markup to PQPR agreement by M.Schwartz | 4.00 | $850.00 | $3,400.00 |

003403

|  |  | and discuss same with R. Battaglia and R. Shannon (.5); go through issues with M. Schwartz on preparation of financials and analysis of financials for bankruptcy (1.0); t/c with S. :emmon on new issues between PQPR and FSS (.5); discuss same with M. Schwartz and handle solutions with R. Battaglia and close loop (1.0); legal research on point advocated by S. Jordan that federal district court will consider whether defendant will get a fair trial as a factor in remanding (1.0) |  |  |  |
|---|---|---|---|---|---|
| 07/15/2022 | RJS | Attend pretrial hearing re Heslin and Lewis matter via teleconference. | 3.07 | $625.00 | $1,918.75 |
| 07/15/2022 | KSL | Participate in observing Pre-Trial conference with A. Reyal in Judge Gamble's court and analyze whether A. Jones and FSS may receive a fair trial (9 hours reduced to 6)(6) | 6.00 | $850.00 | $5,100.00 |
| 07/16/2022 | KSL | Extended conference call with Alex Jones, Marc Schwartz, Shelby Jordan, Andino Reynal, R. Shannon, Norm Pattis and Ray Battaglia to discuss timing of filing, how to handle state court litigation and other strategic concerns (2.5); t/c with S. Lemmon to update on FSS direction so that PQPR is on same page (.5) | 3.00 | $850.00 | $2,550.00 |
| 07/16/2022 | KSL | Meet S. Lemmon in Houston to discuss operational issues and the need for flexibility as to commercial relationship between PQPR and FSS (1.0) | 1.00 | $850.00 | $850.00 |
| 07/16/2022 | RJS | Extended conference call re strategy going forward (3.0); follow up call with K. Lee re same (.2). | 3.20 | $625.00 | $2,000.00 |
| 07/18/2022 | KSL | T/c with S. Lemmon re: funds transfer under new agreement (.2); follow-up with M.Schwartz to clarify issues (.2); revise and edit M.Schwartz Declaration (1.0); conference call with FSS legal and financial team to analyze status of filing date and preparation for same (1.0) | 2.40 | $850.00 | $2,040.00 |
| 07/18/2022 | RJS | Daily conference call re status of matter. | 1.00 | $625.00 | $625.00 |
| 07/19/2022 | KSL | Numerous t/c with S. Lemmon and incorporate comments in discussion with group call regarding various issues to prepare for chapter 11 filing (1.0) | 1.00 | $850.00 | $850.00 |
| 07/20/2022 | KSL | T/c with S. Lemmon and M. Schwartz on new business conflict between PQPR and FSS and need to amend Forbearance Agreement (1.0); participate in FSS daily call to determine status of preparation for filing bankruptcy (1.0) | 2.00 | $850.00 | $1,700.00 |
| 07/20/2022 | RJS | Daily conference call re status of matter (1.0); review draft order re lift stay and provide comments re same (.7). | 1.70 | $625.00 | $1,062.50 |
| 07/22/2022 | KSL | Prepare for group call to discuss latest developments on filing Chapter 11 for FSS and split of responsibility | 2.00 | $850.00 | $1,700.00 |

| | | | | | |
|---|---|---|---|---|---|
| | | (.5); analyze latest drafts of pleadings and edits to same, including comments to R. Battaglia drats (.5); call with FSS legal and financial to prepare for chapter 11 filing (1.0) | | | |
| 07/22/2022 | RJS | Daily status conference call (1.0); provide comments to signature block by email (.2). | 1.20 | $625.00 | $750.00 |
| 07/24/2022 | KSL | Revise and circulate Compensation Motion after review by M. Schwartz (.5); review and finalize Order on LIfting of Stay as to Heslin and Lewis (.5); draft and revise Motion to Lift Stay in favor of Heslin and Lewis (2.0) | 3.00 | $850.00 | $2,550.00 |
| 07/25/2022 | RJS | Revise draft of lift-stay motion; attend meeting with R. Battaglia, K. Lee, M. Schwartz, and J. Shulse; view voire dire in Heslin/Lewis matter. | 8.37 | $625.00 | $5,231.25 |
| 07/25/2022 | KSL | Revise and edit Order Lifting Stay in Favor of Heslin and Lewis (.4); revise and incorporate comments made by M.Schwartz to Compensation Motion and circulate (.3); numerous t/cs with S. Lemmon to obtain update on PQPR position of use of cash collateral and business negotiations (.6); review status of preparation for filing and status of First Day Motions to be reviewed (.5); O/c with CRO, Schwartz Associates, Jeff Shulse, R. Shannon and R. Battaglia to go through page turn of First Day Motions, 13 week budget draft and First Day Declaration (3); comprehensive review and edit of all First Day Motions and forward to R. Battaglia and R. Shannon (3 hours/2)(1.5); Incorporate and revise First Day Declaration of Marc Schwartz in Support of Voluntary Petitions and First Day Motions (3 hours/ 2)(1.5)' review and comment on Heslin\Lewis Motion to Lift Stay (.3) | 7.60 | $850.00 | $6,460.00 |
| 07/26/2022 | KSL | Emails with Shelby Jordan and Marc Schwartz on issues relating to fees and retainers (.3); evaluate comments to Heslin\Lewis Motion to Lift Stay and revise same, and order relating to same and circulate to team (.5); t/c with S. Lemmon to discuss status of cash collateral order, 13 week budget and follow-up on business issues between PQPR and FSS (.3); update team on conversation with S. Lemmon on use of cash collateral (.2); listen to trial of Heslin\Lewis State Court suit to determine whether claims are made about financial condition of FSS (4 hours/1/4)(1.0); extended o/c with FSS Financial and Legal team to review and obtain updates on data needed for First Day Motions (1.0) | 3.30 | $850.00 | $2,805.00 |
| 07/26/2022 | RJS | Attention to opening statements in Heslin/Lewis trial; prepare petition; conference call re status of matter. | 3.50 | $625.00 | $2,187.50 |
| 07/27/2022 | KSL | Review latest draft of Schwartz Declaration prior to meeting Schwartz for review and edit (.5); o/c with M. Schwartz, Harold Lee, Ray Battaglia, R. Shannon and Jeff Shulse to review 13-week cash flow forecast, | 6.50 | $850.00 | $5,525.00 |

| | | | | | |
|---|---|---|---|---|---|
| | | issues relating to budget, and revisions to Schwartz Declaration (2.5); conference call with team to discuss status of chapter 11 preparation (.5); edit and revise remaining First Day Motions (.5); revise and edit Schwartz Declaration (2.5) | | | |
| 07/27/2022 | RJS | Finalize draft of petition, largest 20, creditor list, equityholder list, declaration re largest 20, and corporate ownership statement; attend daily status call; prepare calculation of sanctions and send same to attorney team. | 4.60 | $625.00 | $2,875.00 |
| 07/28/2022 | RJS | Review and finalize petition and first-day filings for bankruptcy. | 6.00 | $625.00 | $3,750.00 |
| 07/28/2022 | KSL | Review and finalize pleadings, Declarations, emails, financials and discussions with PQPR counsel on issues relating to filing chapter 11 for FSS (6.0) | 6.00 | $850.00 | $5,100.00 |
| 07/29/2022 | RJS | Estimate of time to review and finalize first-day filings for bankruptcy case. | 6.00 | $625.00 | $3,750.00 |
| 07/29/2022 | KSL | Review and finalize pleadings, Declarations, emails, financials and discussions with PQPR counsel on issues relating to filing chapter 11 for FSS (6.0) | 6.00 | $850.00 | $5,100.00 |

**Quantity Subtotal**     140.85

**Services Subtotal**     $109,001.25

## Expenses

| Type | Date | Description | Quantity | Rate | Total |
|---|---|---|---|---|---|
| Expense | 06/06/2022 | Meals: Lunch for group while meeting at FSS for discussions on planning for bankruptcy | 1.00 | $156.63 | $156.63 |
| Expense | 06/06/2022 | Meals: Lunch for meeting in Austin, Texas with FSS Legal and Financial, consisting of Pizza and salads from Home Slice Pizza | 1.00 | $156.63 | $156.63 |
| Expense | 06/06/2022 | Mileage: Mileage to and from Austin, Texas for meetings at FSS in Austin, Texas | 1.00 | $177.00 | $177.00 |
| Expense | 06/14/2022 | Meals: Lunch with Marc Schwartz at Little Pappasito's to discuss status of case and any new developments | 1.00 | $72.32 | $72.32 |
| Expense | 06/16/2022 | Copy Costs: Copies of corporate documents and other legal agreements of FSS at Fed Ex Kinkos | 1.00 | $88.96 | $88.96 |
| Expense | 06/20/2022 | Meals: Dinner after meetings in Austin, Texas and drive back to Houston | 1.00 | $99.72 | $99.72 |
| Expense | 06/20/2022 | Mileage: Mileage recovery for trip to and from Austin, Texas for meetings on FSS in Austin, Texas | 1.00 | $177.00 | $177.00 |

003406

| | | | | | |
|---|---|---|---|---|---|
| Expense | 06/29/2022 | Meals: Lunch with Marc Schwartz and RJ Shannon at Nino's to discuss latest developments on FSS and new facts to review | 1.00 | $156.98 | $156.98 |
| Expense | 07/01/2022 | Parking: Parking and sandwiches from Antone's while observing Focus Group by Andino Feryal | 1.00 | $63.17 | $63.17 |
| Expense | 07/07/2022 | Meals: Antone's lunch sandwiches while working on pleadings and conference calls with Schwarz Associates | 1.00 | $28.03 | $28.03 |
| Expense | 07/25/2022 | Meals: Lunch sandwiches for meetings downtown at Schwartz Associates to discuss financials and page turn of First Day Motions | 1.00 | $19.33 | $19.33 |

| | |
|---|---|
| **Expenses Subtotal** | **$1,195.77** |

| Time Keeper | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Kyung Lee | Attorney | 93.2 | $850.00 | $79,220.00 |
| R. J. Shannon | Attorney | 47.65 | $625.00 | $29,781.25 |

| | |
|---|---|
| **Quantity Total** | **140.85** |
| **Subtotal** | **$110,197.02** |
| **Invoice Discount** | **10.0% (-$11,019.70)** |
| *Agreed 10% discount for co-counsel role* | |
| **Total** | **$99,177.32** |
| **Payment (07/28/2022)** | **-$99,177.32** |
| **Balance Owing** | **$0.00** |

# Detailed Statement of Account

## Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 12 | 08/28/2022 | $99,177.32 | $99,177.32 | $0.00 |

## IOLTA Trust Account

| Date | Type | Description | Matter | Receipts | Payments | Balance |
|------|------|-------------|--------|----------|----------|---------|
| 06/18/2022 | Retainer | Retainer for representation | 00008-Free Speech Systems, LLC | | $100,000.00 | $100,000.00 |
| 07/28/2022 | | Payment for invoice #12 | 00008-Free Speech Systems, LLC | $99,177.32 | | $822.68 |
| 07/29/2022 | Retainer | Retainer in advance of bankruptcy filing. | 00008-Free Speech Systems, LLC | | $50,000.00 | $50,822.68 |
| | | | **IOLTA Trust Account Balance** | | **$0.00** | |

Please make all amounts payable to: Shannon & Lee LLP

Please pay within 31 days.

003408

# Kyung S. Lee PLLC

**INVOICE**

700 Milam, Suite 1300
Houston, Texas 77002

Invoice # 2
Date: 06/07/2022
Due On: 07/07/2022

W. Marc Schwartz
Free Speech Systems, LLC
712 Main Street-Suite 1830
HOUSTON, Texas 77002

## 00003-Free Speech Systems, LLC

## Represent FSS in connection with preparation of FSS for potential filing of bankruptcy as a Subchapter v Debtor.

| Type | Date | Notes | Quantity | Rate | Total |
|------|------|-------|----------|------|-------|
| Service | 05/24/2022 | Research and email RJ Shannon on background research of FSS so as to be prepared for discussion in Austin (1.5); travel to and from Austin, Texas and not working (charged at 1/2 time of 6 hours)(3); extended conference with client, Schwartz Associates, B. Roe, S. Jordan, and RJ Shannon to discuss options and issues with FSS restructuring (5.0) | 9.50 | $850.00 | $8,075.00 |
| Service | 05/25/2022 | Follow-up with research on background facts relating to how FSS came about, operational history and litigation history of same for purposes of drafting First Day Declaration of Marc Schwartz (3.0) | 3.00 | $850.00 | $2,550.00 |
| Service | 05/25/2022 | Follow-up on data received at meeting, new data gathered and research for prose on historical operations of FSS (2.0) | 2.00 | $850.00 | $1,700.00 |
| Service | 05/26/2022 | Review and analyze 2 Valuation Reports for PQPR and FSS, analyze same for background information on FSS for pleadings and determine status of case information in both (2.0) | 2.00 | $850.00 | $1,700.00 |
| Service | 05/27/2022 | Coordinate with State Court counsel on sanctions issues and explain approach to handling same (.5); numerous conferences with S. Lemmon, counsel for PQPR (1.0); locate critical documents for S. Lemmon and forward (.5) | 2.00 | $850.00 | $1,700.00 |
| Service | 05/28/2022 | Analyze State Court litigation production to determine data produced to opposing counsel in state court and collect key documents to share with parties (2.0) | 2.00 | $850.00 | $1,700.00 |
| Service | 05/29/2022 | Continue to review financial data discovered during search of State Court litigation production and analyze same (2.0) | 2.00 | $850.00 | $1,700.00 |

003409

| Service | 05/30/2022 | Review and analyze background corporate documents and additional documents discovered from reviewing State Court production in DropBox files (2.0) | 2.00 | $850.00 | $1,700.00 |
| Service | 05/31/2022 | Work on Declaration for Marc Schwartz as CRO for FSS and incorporate facts learned through investigation (4.0) | 4.00 | $850.00 | $3,400.00 |
| | | | | **Total** | **$24,225.00** |

## Detailed Statement of Account

### Other Invoices

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 7 | 07/07/2022 | $184.09 | $0.00 | $184.09 |

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 2 | 07/07/2022 | $24,225.00 | $0.00 | $24,225.00 |
| | | | **Outstanding Balance** | **$24,409.09** |
| | | | **Total Amount Outstanding** | **$24,409.09** |

Please make all amounts payable to: Kyung S. Lee PLLC

Please pay within 30 days.

003410

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern _____ District of __Texas_____
                                        (State)

Case number (*if known*): _____ Chapter __11__

☐ Check if this is an
   amended filing

### Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    04/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

1. **Debtor's name**    InfoW, LLC

2. **All other names debtor used in the last 8 years**    InfoWars, LLC

   Include any assumed names, trade names, and *doing business as* names

3. **Debtor's federal Employer Identification Number (EIN)**    46 – 4546916 __ __ __ __

4. **Debtor's address**

   **Principal place of business**

   5606 N. Navarro STE 300-W
   Number      Street

   Victoria, TX 77904
   City            State     ZIP Code

   Victoria
   County

   **Mailing address, if different from principal place of business**

   _____
   Number      Street

   PO Box 1819
   P.O. Box

   Houston, TX 77251-1819
   City            State     ZIP Code

   **Location of principal assets, if different from principal place of business**

   _____
   Number      Street

   _____
   City            State     ZIP Code

5. **Debtor's website** (URL)    _____

Debtor    InfoW, LLC
          _____        Case number *(if known)* _____
          Name

**6. Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes .

_5331_ __ __

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

　　☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725 (amount subject to adjustment on 4/01/25 and every 3 years after that).

　　☒ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

　　☒ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

　　☐ A plan is being filed with this petition.

　　☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

　　☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

　　☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No

☐ Yes.  District _____  When _____  Case number _____
　　　　　　　　　　　　　　　　　　　MM / DD / YYYY

　　　　　　　District _____  When _____  Case number _____
　　　　　　　　　　　　　　　　　　　MM / DD / YYYY

003412

| Debtor | InfoW, LLC | | Case number (if known) | |
|---|---|---|---|---|
| | Name | | | |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☒ Yes.  Debtor __IW Health, LLC__  Relationship __Affiliate__

District __Southern District of Texas__  When __04/18/2022__
MM / DD / YYYY

Case number, if known _____

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
Number      Street

_____
City                                State ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

---

**13. Debtor's estimation of available funds**

*Check one:*

☐ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☒ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

---

003413

| Debtor | InfoW, LLC | | Case number *(if known)* | |
|---|---|---|---|---|
| | Name | | | |

| **15. Estimated assets** | ☒ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

| **16. Estimated liabilities** | ☐ $0-$50,000 | ☒ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __04/18/2022__
MM / DD / YYYY

✗ _W. Marc Schwartz_ (signature)     W. Marc Scwartz
Signature of authorized representative of debtor     Printed name

Title __Chief Restructuring Officer__

---

**18. Signature of attorney**

✗ _/s/ Kyung S. Lee_     Date __04/18/2022__
Signature of attorney for debtor     MM / DD / YYYY

Kyung S. Lee
Printed name

Parkins Lee & Rubio LLP
Firm name

700 Milam Street, STE 1300
Number    Street

Houston, TX, 77002
City      State    ZIP Code

(713) 715-1660     klee@parkinslee.com
Contact phone     Email address

121228400     Texas
Bar number     State

---

## CONTINUATION SHEET TO Q.10 OF VOLUNTARY PETITION

| Debtor | District | Relationship | Date of Filing | Case Number |
|--------|----------|--------------|----------------|-------------|
| Prison Planet TV, LLC | S.D. of Texas | Affiliate | 04/18/2022 | Unknown |

Fill in this information to identify the case:

Debtor name _____ InfoW, LLC _____

United States Bankruptcy Court for the:

_____ Southern District of Texas _____

Case number (if known): _____

☐ Check if this is an amended filing

# Official Form 204

# Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

**12/15**

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Brennan Gilmore c/o Civil Rights Clinic ATTN: Andrew Mendrala 600 New Jersey Avenue, NW Washington, DC 20001 | Andrew Mendrala (202) 662-9065 andrew.mendrala@georgetown.edu | Litigation claim | Disputed Unliquidated | | | $50,000 |
| 2 | Carlee Soto-Parisi c/o Koskoff Koskoff & Bieder 350 Fairfield Ave Bridgeport, CT 06604 | Christopher Mattei (203) 336-4421 cmattei@koskoff.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 3 | Christopher Sadowski c/o Copycat Legal PLLC 3111 N. University Drive Ste. 301 Coral Springs, FL 33065 | Daniel DeSouza (877) 437-6228 dan@copycatlegal.com | Potential lawsuit for Copyright Infringement | Contingent Disputed Unliquidated | | | $90,000.00 |
| 4 | Dona Soto c/o Koskoff Koskoff & Bieder 350 Fairfield Ave Bridgeport, CT 06604 | Christopher Mattei (203) 336-4421 cmattei@koskoff.com | Litigation claim | | | | Unknown |
| 5 | Erica Lafferty c/o Koskoff Koskoff & Bieder 350 Fairfield Ave Bridgeport, CT 06604 | Christopher Mattei (203) 336-4421 cmattei@koskoff.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 6 | Francine Wheeler c/o Koskoff Koskoff & Bieder 350 Fairfield Ave Bridgeport, CT 06604 | Christopher Mattei (203) 336-4421 cmattei@koskoff.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 7 | Ian Hockley c/o Koskoff Koskoff & Bieder 350 Fairfield Ave Bridgeport, CT 06604 | Christopher Mattei (203) 336-4421 cmattei@koskoff.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 8 | Jacqueline Barden c/o Koskoff Koskoff & Bieder 350 Fairfield Ave Bridgeport, CT 06604 | Christopher Mattei (203) 336-4421 cmattei@koskoff.com | Litigation claim | Disputed Unliquidated | | | Unknown |

003416

| Debtor | InfoW, LLC | Case number *(if known)* |
| | Name | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
|---|---|---|---|---|---|---|
| 9 Jennifer Hensel c/o Koskoff Koskoff & Bieder 350 Fairfield Ave Bridgeport, CT 06604 | Christopher Mattei (203) 336-4421 cmattei@koskoff.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 10 Jeremy Richman c/o Koskoff Koskoff & Bieder 350 Fairfield Ave Bridgeport, CT 06604 | Christopher Mattei (203) 336-4421 cmattei@koskoff.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 11 Jillian Soto c/o Koskoff Koskoff & Bieder 350 Fairfield Ave Bridgeport, CT 06604 | Christopher Mattei (203) 336-4421 cmattei@koskoff.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 12 Leonard Pozner c/o Kaster Lynch Farrar & Ball LLP 1117 Herkimer Houston, TX 77008 | Mark Bankston (713) 221-8330 mark@fbtrial.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 13 Marcel Fontaine c/o Kaster Lynch Farrar & Ball LLP 1117 Herkimer Houston, TX 77008 | Mark Bankston (713) 221-8300 mark@fbtrial.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 14 Mark Barden c/o Koskoff Koskoff & Bieder 350 Fairfield Ave Bridgeport, CT 06604 | Mark Bankston (713) 221-8300 mark@fbtrial.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 15 Neil Heslin c/o Kaster Lynch Farrar & Ball LLP 1117 Herkimer Houston, TX 77008 | Mark Bankston (713) 221-8300 mark@fbtrial.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 16 Nicole Hockley c/o Koskoff Koskoff & Bieder 350 Fairfield Ave Bridgeport, CT 06604 | Christopher Mattei (203) 336-4421 cmattei@koskoff.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 17 Robert Parker c/o Koskoff Koskoff & Bieder 350 Fairfield Ave Bridgeport, CT 06604 | Christopher Mattei (203) 221-8300 cmattei@koskoff.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 18 Scarlett Lewis c/o Kaster Lynch Farrar & Ball, LLP 1117 Herkimer Street Houston, TX 77008 | Mark Bankston (713) 221-8300 Mark@fbtrial.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 19 Veronique De La Rosa c/o Kaster Lynch Farrar & Ball LLP 1117 Herkimer Houston, TX 77008 | Mark Bankston (713) 221-8300 mark@fbtrial.com | Litigation claim | Disputed Unliquidated | | | Unknown |
| 20 William Sherlach c/o Koskoff Koskoff & Bieder 350 Fairfield Ave Bridgeport, CT 06604 | Christopher Mattei (203) 221-8300 cmattei@koskoff.com | Litigation claim | Disputed Unliquidated | | | Unknown |

003417

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INFOW, LLC | ) | Case No. 22 - _____ |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |

## LIST OF EQUITY SECURITY HOLDERS

| Registered Name of Holder of Security, Last Known Address or Place of Business | Class of Security | Number Registered | Kind of Interest |
|---|---|---|---|
| Robert Dew, Trustee<br>3019 Alvin Devane Blvd., Suite 300<br>Austin, TX 78741 | Common Equity | 100% | Membership Interests |

**DECLARATION UNDER PENALTY OF PERJURY
ON BEHALF OF A CORPORATION OR PARTNERSHIP**

I, the Chief Restructuring Officer of the limited liability company named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date: 04/18/2022

Signature: _W. Marc Schwartz_
W. Marc Schwartz

003418

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | |
| INFOW, LLC ) | Case No. 22 - _____ |
| ) | |
| Debtor. ) | Chapter 11 (Subchapter V) |

**DECLARATION OF W. MARC SCHWARTZ REGARDING
BANKRUPTCY CODE § 1116(1) REQUIREMENTS**

I, W. Marc Schwartz, hereby declare as follows:

1.      My name is W. Marc Schwartz.

2.      I am a founder of Schwartz & Associates, LLC ("SALLC"). SALLC has its principal offices at 712 Main Street, Suite 1830, Houston, Texas. SALLC has been engaged in business since 2019. The primary business of SALLC is bankruptcy and financial restructuring consulting, serving as financial/economic experts in civil litigation matters and, serving as court appointed receivers in federal and state court matters.  The firm is also licensed as an Investigations Company by the Texas Department of Public Safety.

3.      SALLC's services include financial forensics, supervising business operations as a trustee, examiner with expanded powers or receiver, valuing business assets and income tax related services   My firm represents individuals, companies and courts in a variety of assignments including as Chief Restructuring Officers, financial advisers, trustees and examiners in bankruptcy matters; working as testifying or consulting experts on damages and economic issues for parties involved in litigation and as a special master for courts where litigation matters are pending; serving as court appointed receivers in state and federal courts.

4.      I earned a Bachelor of Arts degree from Princeton University and a Master's in Business Administration degree from the University of Chicago Booth School of Business. I am licensed in Texas as a Certified Public Accountant, Certified in Financial Forensics by the American Institute of Certified Public Accountants, a Certified Fraud Examiner, and a Licensed Private Investigator.

5.      I have extensive experience serving as a fiduciary in bankruptcy cases as either a Chapter 11 Trustee, a Chief Restructuring Officer, or an Examiner with expanded powers. I have also acted as a receiver over several individuals and entities under state law.

6.      I was retained as of April __, 2022 by the Trustee of the Litigation Settlement Trust formed by InfoW, Inc. ("InfoW"), IWHealth, LLC ("IWH") and Prison Planet TV, LCC ("PTV", and together with the InfoW, IWH, and PTV, the "Debtors") as the Debtors' Chief Restructuring Officer.

7.      Since my retention, I have met with Bob Roe, a CPA retained to delve into the books of account of various entities affiliated with the Debtors and assist those entities to prepare accurate financials statements which could be relied upon by the reader to accurately reflect the financial condition and activities of the entities.  I have also met with counsel for the Debtors and Mr. Jones to obtain an understanding of the Debtors' operations.  I have also reviewed lists of assets owned by the Debtors.

8.      I have learned that the Debtor's have no purpose other than to hold assets which may be used by other entities.  They undertake no business activities, they do not sell, rent or lease to others anything.  Their assets do not generate any income for them. They have no bank accounts and do not pay money to anyone for any reason. They have no debt or other liabilities other than those related to pending or potential litigation.  For

2

these reasons, they have no financial statements or books of account and they do not file income tax returns.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: _04/18/2022_____          By: _____
                                                   W. Marc Schwartz

3

003421

## WRITTEN CONSENT OF THE MEMBERS OF INFOW, LLC

The undersigned, comprising all of the members of InfoW, LLC (the "Company"), a Texas limited liability company, hereby declares that, upon execution of this document, they consent and resolve as follows:

RESOLVED, that the Company is authorized to file a petition for chapter 11 bankruptcy relief;

RESOLVED FURTHER, that W. Marc Schwartz in his role as a consultant to the Company serving as Chief Restructuring Officer is authorized, empowered, and directed to take all appropriate actions for, in the name of, and on behalf of the Company in connection with any chapter 11 case authorized hereby, including the preparation, execution, and filing of a petition for chapter 11 relief; and

RESOLVED FURTHER; that the Company is authorized to continue the employment of the CRO and to retain any professionals and advisors to the extent necessary or useful in any chapter 11 case authorized hereby.

IN WITNESS WHEREOF, the undersigned, being all of the members of the Company, have executed this Consent.

Dated: _April 14, 2022_

ROBERT DEW

In his capacity as the Initial Trustee of the 2022 FSS Litigation Settlement Trust

003422

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 18, 2022

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INFOW, LLC | ) | Case No. 22 - 60020 |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |
| In re: | ) | |
| | ) | |
| IWHEALTH, LLC | ) | Case No. 22 - 60021 |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |
| In re: | ) | |
| | ) | |
| PRISON PLANET TV, LLC | ) | Case No. 22 - 60022 |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |

## <u>ORDER FOR JOINT ADMINISTRATION</u>

On the motion for joint administration of these cases under Bankruptcy Rule 1015, the Court orders that the above referenced cases are jointly administered. Additionally, the following checked items are ordered:

1. ____X____ One disclosure statement and plan of reorganization may be filed for all cases by any plan proponent.

2. ____X____ Parties may request joint hearings on matters pending in any of the jointly administered cases.

3. ____X____ A docket entry, substantially similar to the following, shall be entered on the docket for each of the Debtors, other than InfoW, LLC:

An order has been entered in this case consolidating this case with the case of InfoW, LLC, Case No. 22- 60020 for procedural purposes only and providing for its joint administration in accordance with the terms thereof. The docket in Case No. 22- 60020 should be consulted for all matters affecting the above listed case. All further pleadings and other papers shall be filed in, and all further docket entries shall be made in, Case No. 22- 60020 .

4. ___X___ The official caption of the Jointly Administered Chapter 11 Cases shall read as follows:

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) |
| INFOW, LLC, *et al.*, | ) Case No. 22 - 60020 |
| | ) |
| Debtors.[1] | ) Chapter 11 (Subchapter V) |
| | ) |
| | ) Jointly Administered |

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC, f/k/a Infowars, LLC (6916), IWHealth, LLC f/k/a Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005). The address for service to the Debtors is PO Box 1819, Houston, TX 77251-1819.

5. ___X___ The Debtors shall file monthly operating reports by consolidating the information required for each debtor into one report without being required to break out information on a debtor-by-debtor basis unless otherwise ordered by the Court; provided that the Debtors shall include schedules of disbursements on an individual debtor basis in such consolidated operating reports.

Only the lines checked are ordered.

Signed: April 18, 2022

_____
Christopher Lopez
United States Bankruptcy Judge

003424

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INFOW, LLC | ) | Case No. 22 - 60020 |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |
| In re: | ) | |
| | ) | |
| IWHEALTH, LLC | ) | Case No. 22 - 60021 |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |
| In re: | ) | |
| | ) | |
| PRISON PLANET TV, LLC | ) | Case No. 22 - 60022 |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |

**DEBTORS' EMERGENCY MOTION FOR ORDER AUTHORIZING APPOINTMENT OF RUSSELL F. NELMS AND RICHARD S. SCHMIDT AS TRUSTEES OF THE 2022 LITIGATION SETTLEMENT TRUST AND GRANTING RELATED RELIEF**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED AND IF THE COURT CONSIDERS THIS MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN TWENTY-ONE (21) DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF, OR IF YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

RELIEF IS REQUESTED ON OR BEFORE **APRIL 22, 2022**.

003425

InfoW, LLC ("InfoW"), IWHealth, LLC ("IW Health"), and Prison Planet TV, LLC ("Prison Planet TV", and together with InfoW and IW Health, the "Debtors"), the debtors and debtors-in-possession in the above-captioned chapter 11 cases, hereby move for entry of an order substantially in the form attached hereto (the "Proposed Order") pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the appointment of Russell F. Nelms and Richard S. Schmidt as the trustees (the "Litigation Settlement Trustees") of the 2022 FSS Litigation Settlement Trust (the "Litigation Settlement Trust") (the "Motion"), which trust holds all of the of the equity in the Debtors. In support of the Motion, the Debtors respectfully represent as follows:

## REQUEST FOR EMERGENCY HEARING

1.    The Debtors seek emergency consideration of this Motion on or before **April 22, 2022**, or as soon after as the Court's schedule will allow. Appointment of the Litigation Settlement Trustees is necessary so that the Debtors' corporate governance is in the hands of two individuals well-versed in fiduciary law and with years of experience supervising debtors to maximize recoveries for creditors. Former judges Russell F. Nelms and Richard S. Schmidt have both agreed to serve as Litigation Settlement Trustees, but only on the condition that their appointment is approved by the Court.

## JURISDICTION

2.    The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

2

3.     The basis for the relief requested herein is Bankruptcy Code § 105(a).

## BACKGROUND

### A.  Case Background

4.     On April 18, 2022 (the "<u>Petition Date</u>"), each of the Debtors commenced a case by filing a petition for relief under chapter 11, subchapter v, of the Bankruptcy Code (collectively, the "<u>Chapter 11 Cases</u>").

5.     The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

6.     As of the filing of this Motion, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for Region 7 (the "<u>U.S. Trustee</u>").

### B.  The Debtors

7.     The Debtors are holdings companies for certain intellectual property assets. Debtor InfoW owns copyrights and domain names related to "Infowars.com." Debtor IWHealth owns cash flow from royalties and/or an agreement with Youngevity. Debtor Prison Planet TV owns copyrights and domain names related to prisonplanet.tv.

8.      "Infowars"—a conspiracy-oriented website and media company—is operated by Free Speech Systems, LLC ("<u>FSS</u>"), which does business under a registered trademark for that name.  InfoW and Prison Planet TV license their intellectual property and domain names to FSS for use in its business but the Debtors do not produce or have any control over the content of Infowars. FSS maintains and operates the website https://www.infowars.com/.[1]

9.     Alex E. Jones ("<u>Jones</u>") owns one hundred percent (100%) of the equity in FSS. Prior to the Petition Date, Jones also owned one hundred percent (100%) of the equity of InfoW,

---

[1] The Debtors have been advised that all the assets of FSS serve as collateral to repay obligations to PQPR Holdings.

003427

IWHealth and Prison Planet TV. He assigned these equity interests to the 2022 Litigation Settlement Trust before the Petition Date.

### C. Pending Litigation Against the Debtors

10.     The Debtors' financial distress stems primarily from statements of Jones and other employees of FSS in the wake of the December 14, 2012, mass shooting at Sandy Hook Elementary School in which 20 children and 6 educators were killed by Adam Lanza. Various parents of the deceased victims of the Sandy Hook shooting assert, among other things, that these statements were defamatory and inflicted emotional distress.

11.     The relatives of the Sandy Hook victims and certain other parties (the "Sandy Hook Plaintiffs") assert, among other things, that Jones and other employees of FSS made defamatory statements and inflicted emotional distress. In 2018, the Sandy Hook Plaintiffs brought actions in Texas and Connecticut (collectively, the "Sandy Hook Lawsuits") against Jones, FSS, and certain of the Debtors. The crux of the allegations in the Sandy Hook Lawsuits is that Jones and FSS employees damaged the Sandy Hook Plaintiffs by saying or implying that the Sandy Hook shooting did not occur, and that the entire incident was a "false flag" hoax.

12.     The Debtors are also defendants in other pending litigation unrelated to the events at Sandy Hook elementary school:[2]

- *Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Kit Daniels*, Cause No. D-1-GN-18-001605, pending before the 459th District Court for Travis County, Texas—This case involves an article authored by an FSS employee about the shooter at Marjory Stoneman Douglas High School in Parkland, Florida. Iterations of the article included a photograph of the plaintiff, even though the plaintiff was not involved with the shooting or even in Florida at the time.

- *Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, PQPR Holdings Limited LC,*

---

[2] On April 11, 2022, the U.S. District Court for the Western District of Virginia entered a Stipulation and Order [Dkt. No. 504], resolving the defamation action in Brennan M. Gilmore v Alexander E. Jones, et. al., Case No. 3:18-cv-00017-NKM-JCH, resolving that litigation in exchange for a $50,000 settlement to the plaintiff.

003428

*JLJR Holdings, LLC, PLJR Holdings, LLC, Carol Jones, David Jones, PQPR Holdings, LLC, JLJR Holdings Limited, LLC, AEJ Holdings, LLC, AEJ Trust 2018*, Cause No. D-1-GN-22-001610, pending before the 200th District Court for Travis County, Texas—This lawsuit was brought by the plaintiffs in the other Texas lawsuits under the Texas Uniform Fraudulent Transfer Act ("<u>TUFTA</u>"). The allegations are that Jones diverted his assets to companies owned by insiders like his parents, his children, and himself. The Plaintiffs seek judgment allowing them to take possession and execute on the assets.

- *Larry Klayman v Infowars, LLC, et al.*, Case No. 20-61912, before the U.S. District Court for the Southern District of Florida, Fort Lauderdale Division—The plaintiff in this case brought claims against InfoWars, LLC, Free Speech Systems, LLC, Alex Jones, David Jones, and Owen Shroyer for defamation, Florida Deceptive and Unfair Trade Practices Act, tortious interference, and violation of the Lanham Act for publishing disparaging statements about the plaintiff. On April 14, 2022, the District Court entered a take-nothing judgment in favor of the InfoW and the other defendants. The plaintiff has appealed to the Eleventh Circuit Court of Appeals.

13.     Jones, FSS, and the Debtors have spent more than $10.0 million in legal fees and expenses since commencement of the Sandy Hook Lawsuits. Despite the substantial amount spent, both the Texas and Connecticut courts have imposed multiple sanctions and ruled that Jones, FSS, and the Debtors failed to comply with discovery requirements such that judgment on *liability* has been entered against them by default.[3] No court has yet to quantify the amount of the damages.

14.     The pending litigation presents a classic "race to the courthouse." The Texas court is scheduled to be the first damages case to go to trial and is set to commence with jury selection on April 25, 2022. The damages trial in the Texas actions is scheduled for months before the damages will be determined in the actions pending in Connecticut.

15.     Given the limited cash on hand available to the Debtors, Jones, and FSS, there is a substantial likelihood that efforts to collect on a judgment of the Texas actions would result in leaving nothing left for the Connecticut Sandy Hook Plaintiffs or other creditors. Indeed, prior to

---

[3] The applicable Debtors do not intend to challenge any determination of liability entered by the respective state courts unless the claimant elects to liquidate their claims through continuation of the litigation.

003429

even liquidating their claims, the Texas plaintiffs sought execution by initiating the TUFTA litigation.

### D. 2022 Litigation Settlement Trust

16.     To address the Sandy Hook Lawsuits and other litigation, and preserve assets for equal distribution to all creditors, the Debtors, Jones, and FSS have created the 2022 Litigation Settlement Trust to provide a mechanism for the payment in full of the litigation claims. A copy of the of trust is attached as Exhibit A hereto (the "Declaration of Trust").[4]

17.     The Litigation Settlement Trust removes control of the Debtors and settlement funds from FSS and Jones and ensures that settlement of or judgment in the Sandy Hook Lawsuits and other litigation will be paid according to the terms of the Declaration of Trust and any plan of reorganization confirmed in these Chapter 11 Cases. The Litigation Settlement Trust has been initially funded pursuant to the funding agreement attached to the Declaration of Trust and the Plan Support Agreement, attached hereto as Exhibit B hereto, as may be amended (the "PSA").[5] The "Initial Trust Funding" of $725,000 for administration of these Chapter 11 Cases has been paid to the interim trustee or the Debtors' professionals from exempt personal assets of Jones. Upon confirmation of a plan, the Litigation Settlement Trust is expected to be funded with additional funds, including $2,000,000 in cash on the effective date.

### E. Proposed Litigation Settlement Trustees

18.     The Declaration of Trust contemplates that the Litigation Settlement Trustees will be "two individuals approved by the Bankruptcy Court to serve as Trustees of the Litigation Settlement Trust who will replace the interim trustee serving in that capacity prior to the filing of

---

[4] The proposed Litigation Settlement Trustees have indicated that they intend to seek modifications to the Declaration of Trust.

[5] The proposed Litigation Settlement Trustees have indicated that they intend to seek certain modifications to the PSA.

003430

the Bankruptcy Cases." This provides a clean break between the Debtors' former management and allows the funding of a proposed plan to be negotiated at arm's length between the Debtors, FSS, and Jones. At the same time, the Litigation Settlement Trustees will be given access to the current financial information of FSS and Jones to effectuate a confirmable plan that provides payment in full of allowed claims.

19.     Former bankruptcy judges Russell F. Nelms and Richard S. Schmidt have agreed to serve as the Litigation Settlement Trustees. Russell F. Nelms was appointed as a judge for the U.S. Bankruptcy Court for the Northern District of Texas on November 22, 2004, and served through the end of his term on November 21, 2018. Richard S. Schmidt was appointed as a judge for the U.S. Bankruptcy Court for the Southern District of Texas on July 31, 1987, was reappointed in 2001, and served through the end of his term on July 30, 2015. Both Russel F. Nelms and Richard S. Schmidt have the experience, knowledge, and ability to oversee the Debtors, understand their duties to creditors and to facilitate the allowance of Litigation Claims for payment. They each have years of experience on and off the bench doing exactly this job.

## RELIEF REQUESTED

20.     The Debtors request entry of an order, substantially in the form of the Proposed Order attached hereto, authorizing the appointment of Russell F. Nelms and Richard S. Schmidt as the Litigation Settlement Trustees and granting related relief.

21.     The related relief incorporates certain terms of the Declaration of Trust with respect to the Litigation Settlement Trustees. In particular, the Debtors seek an order providing that the Litigation Settlement Trustees: (a) have all powers and duties of managers of the Debtors; (b) are exculpated for actions relating to or arising out of the Chapter 11 Cases except with respect to acts or omissions constituting willful misconduct or gross negligence as determined by a final order by

003431

a court of competent jurisdiction, (c) may be compensated from assets of the Litigation Settlement Trust that do not comprise assets of the Debtors' estates without further order of the Court, (d) may resign upon sixty (60) days' notice without further order of the Court; and (e) may be removed only by order of the Court for cause shown by clear and convincing evidence upon the motion of a majority of the members of the Litigation Settlement Trust Board (as defined in the Declaration of Trust).

## **BASIS FOR RELIEF**

22.     Section 105(a) of the Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." The provisions of chapter 11 of the Bankruptcy Code, and particularly subchapter v, aim ultimately to facilitate the confirmation of a consensual plan of reorganization. *See In re MPM Silicones*, LLC, No. 14-22503-RDD, 2014 WL 4637175, at *3 (Bankr. S.D.N.Y. Sept. 17, 2014) (discussing "the Bankruptcy Code's overall policy of fostering consensual plans of reorganization"); *cf.* 11 U.S.C. § 1183(b)(7) (requiring subchapter v trustees to "facilitat[e] the development of a consensual plan of reorganization."). Preservation of the bankruptcy estate is also a key feature of the Bankruptcy Code. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("Implicit in the duties of a Chapter 11 trustee or a debtor in possession as set out in Sections 1106 and 704 of the Bankruptcy Code is the duty of such a fiduciary to protect and preserve the estate, including an operating business's going-concern value"); *cf.* 11 U.S.C. § 503(b)(1)(A) (providing that "the actional, necessary costs and expenses of preserving the estate" are administrative expenses of the estate).

23.     The appointment of former judges Russell F. Nelms and Richard S. Schmidt as the Litigation Settlement Trustees will advance the goals of a consensual plan in these Chapter 11

8

Cases. The likelihood of a consensual plan negotiated by the Debtors' pre-Litigation Settlement Trust management is vanishingly small. The Sandy Hook Plaintiffs claim that Jones defamed and intentionally or negligently inflicted on them emotional distress. When Jones filed an offer of compromise pursuant to Connecticut procedure, the Connecticut plaintiffs responded that the "so-called offer is a transparent and desperate attempt by Alex Jones to escape a public reckoning under oath with his deceitful, profit-driven campaign against the plaintiffs and the memory of their loved ones lost at Sandy Hook." Neutral management for the Debtors that can engage in arm's-length negotiations is necessary for a consensual plan.

24. While the subchapter v trustee that will be appointed in this case would undoubtedly endeavor towards a consensual plan and could take over the operations of the Debtors under Bankruptcy Code § 1185, only the Debtor can propose a plan under Bankruptcy Code § 1189. The Litigation Settlement Trust goes further, empowering the Litigation Settlement Trustees to propose and implement a plan. Placing the subchapter v trustee in the Twilight Zone of being in control of the Debtors but not able to propose a plan is neither necessary nor beneficial here.

25. Appointment of Russell F. Nelms and Richard S. Schmidt as the Litigation Settlement Trustees will also prevent unnecessary diminution of the Debtors' estates. The subchapter v trustee's compensation for the expanded role would derive from the Debtors' bankruptcy estates, rather than the Litigation Settlement Trust. Nelms and Schmidt, on the other hand, will be paid from assets of the Litigation Settlement Trust that are not assets of the Debtors' bankruptcy estates.

26. Based on the foregoing, the Court is empowered by Bankruptcy Code § 105(a) to enter the Proposed Order and such other relief that is in the best interests of the Debtors, their estates, and their creditors.

003433

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form of the Proposed Order, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: April 18, 2022

**PARKINS LEE & RUBIO LLP**

*/s/R.J. Shannon*
Kyung S. Lee
TX Bar No. 12128400
R.J. Shannon
TX Bar No. 24108062
Pennzoil Place
700 Milam Street, Suite 1300
Houston, TX 77002
Email: klee@parkinslee.com
        rshannon@parkinslee.com
Phone: 713-715-1660
Fax:    713-715-1699

*Proposed Counsel to the Debtors and
Debtors-in-Possession*

## <u>CERTIFICATE OF ACCURACY</u>

I hereby certify that the foregoing statements are true and accurate to the best of my knowledge and belief. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ R.J. Shannon* .
R.J. Shannon

10

003434

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2022, a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service, (b) by U.S.P.S. first class mail on the parties indicated in the attached service list, and (c) the following parties by email:

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Norman A Pattis, Cameron L. Atkinson
Pattis & Smith, LLC
383 Orange Street
New Haven, CT 06511
npattis@pattisandsmith.com
catkinson@pattisandsmith.com

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Ray Battaglia
Law Office of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX
rbattaglialaw@outlook.com

Attn: Avi Moshenberg, Nick Lawson, Matthew
Caldwell
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com
nick.lawson@mhllp.com
matthew.caldwell@mhllp.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Richard S. Schmidt
615 Leopard, #635
Corpus Christi, TX 78401
rss@judgerss.com

Russell F. Nelms
115 Kay Lane
Westworth Village, TX 76114
rfargar@yahoo.com

Attn: W. Marc Schwartz
Schwartz Associates
712 Main Street, Ste. 1830
Houston, TX 77002
mschwartz@schwartzassociates.us

Attn: Matthew Okin
Okin Adams LLP
1113 Vine St., Ste. 240
Houston, TX 77002
mokin@okinadams.com

*/s/ R. J. Shannon*
R. J. Shannon

2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | |
|---|---|
| In re: )| |
| )| |
| INFOW, LLC )| Case No. 22 - 60020 |
| )| |
| Debtor. )| Chapter 11 (Subchapter V) |
| In re: )| |
| )| |
| IWHEALTH, LLC )| Case No. 22 - 60021 |
| )| |
| Debtor. )| Chapter 11 (Subchapter V) |
| In re: )| |
| )| |
| PRISON PLANET TV, LLC )| Case No. 22 - 60022 |
| )| |
| Debtor. )| Chapter 11 (Subchapter V) |

**ORDER AUTHORIZING APPOINTMENT OF RUSSELL F. NELMS AND RICHARD S. SCHMIDT AS TRUSTEES OF THE 2022 LITIGATION SETTLEMENT TRUST AND GRANTING RELATED RELIEF**

Upon the *Debtors' Emergency Motion for Order Authorizing Appointment of Russell F. Nelms and Richard S. Schmidt as Trustees of the 2022 Litigation Settlement Trust and Granting Related Relief* (the "Motion")[1] filed on April 18, 2022; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth

---

[1] Capitalized terms used by not otherwise defined in this Order shall have the meanings ascribed to such terms in the Motion.

in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1. The appointment of Russell F. Nelms and Richard S. Schmidt as the trustees (the "Litigation Settlement Trustees") of the 2022 Litigation Settlement Trust (the "Litigation Settlement Trust") is hereby authorized.

2. The Litigation Settlement Trustees shall have all the powers and duties of managers of the Debtors for all purposes, including the filing of any proceeding, case, suit, or other legal proceeding and operation of the Debtors as debtors-in-possession.

3. To the maximum extent permitted by applicable law, neither the Litigation Settlement Trustees nor any of their employees, agents, advisors or professionals have or may incur any liability to any holder of a claim or equity interest, or any other party in interest, for any act or omission in connection with, relating to or arising out of the above-captioned chapter 11 cases, except for their acts or omissions constituting willful misconduct or gross negligence, as finally determined by a court of competent jurisdiction.

4. The Litigation Settlement Trustees shall be entitled to receive reimbursement of expenses and compensation for services pursuant to the Declaration of Trust without further order of the Court, *provided that* such compensation is paid from property of the Litigation Settlement Trust that is not property of the Debtors' bankruptcy estates. Subject to appointment and acceptance of such appointment, the Litigation Settlement Trustees shall be entitled to hourly compensation from such non-estate property for services provided as follows:

| *Timekeeper* | *Rate* |
|---|---|
| Russell F. Nelms | $900.00 per Hour |
| Richard S. Schmidt | $900.00 per Hour |
| Paralegal or Administrative Staff | $125.00 per Hour |

2

5.       A Litigation Settlement Trustee may resign by giving not less than sixty (60) days' prior written notice to the Debtors.

6.       A Litigation Settlement Trustee may be removed pursuant to further order of the Bankruptcy Court on motion of a majority of the members of the Litigation Settlement Trust Board.  Any motion to remove a Trustee shall be "for cause" shown by clear and convincing evidence, and all costs and fees for the successful defense of any such action for cause shall be the obligation of the Litigation Settlement Trust.

7.       The filing of any pleadings or documents prior to the appointment of the Litigation Settlement Trustees shall not prevent the Litigation Settlement Trustees from withdrawing or directing the withdrawal of any pleading or document. The Litigation Settlement Trustees shall have the right to review, amend, withdraw, or request continuance with respect to any pleading filed by the Debtors prior to their appointment pursuant to this Order

8.       The proposed Litigation Settlement Trustees may negotiate revisions to the Declaration of Trust or PSA, provided that any such revisions are consistent with this Order. To the extent that any negotiated revisions to the Declaration of Trust or PSA are in conflict with this Order, this Order shall control.

9.       The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

10.       This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated: _____          _____
                                                                    UNITED STATES BANKRUPTCY JUDGE

003439

**EXHIBIT A**

**DECLARATION OF TRUST**

003440

# DECLARATION OF TRUST

# FOR THE

# 2022 Litigation Settlement Trust

---

BY AND AMONG

## DEBTORS:
## INFOW, L.L.C., IWHEALTH, L.L.C. AND
## PRISON PLANET TV, L.L.C.

AND

## THIRD-PARTY FUNDING CONTRIBUTORS

AND

## The 2022 LITIGATION SETTLEMENT TRUSTEES
## (AS NAMED HEREIN AND FROM
## TIME TOTIME)

Dated as of April 14, 2022

003441

# TABLE OF CONTENTS

**ARTICLE 1 ESTABLISHMENT OF THE LITIGATION SETTLEMENT TRUST** ........... 2
    1.1    Declaration of Trust ................................................................................. 2
    1.2    2022 Litigation Settlement Trust Assets. .............................................. 3
    1.3    Funding of the Litigation Settlement Trust & Exhibit "B". ................... 5
    1.4    Tax Matters ............................................................................................ 7
    1.5    Nature and Purpose of the Litigation Settlement Trust. ........................ 7
    1.6    Incorporation of a future Plan. .............................................................. 8
    1.7    Appointment as Representative. ............................................................. 8

**ARTICLE 2 TRUSTEES** ........................................................................................... 9
    2.1    Litigation Settlement Trustees ............................................................... 9
    2.2    Third-Party Funding Contributors ....................................................... 10
    2.3    Tenure, Removal, and Replacement of the Litigation Settlement Trustees. .......... 10
    2.4    Compensation of the Trustees. ............................................................. 12
    2.5    No Bond. .............................................................................................. 12
    2.6    Inquiries into Trustee's Authority. ....................................................... 12

**ARTICLE 3 DUTIES AND LIMITATIONS OF TRUSTEES** ................................. 12
    3.1    Role of the Litigation Settlement Trustees. .......................................... 12
    3.2    Authority of Litigation Settlement Trustees. ....................................... 13
    3.3    Payment of Litigation Settlement Trust Expenses. .............................. 15
    3.4    Books and Records. .............................................................................. 16
    3.5    Compliance with Laws. ....................................................................... 16
    3.6    Reliance by Litigation Settlement Trustees. ........................................ 16
    3.7    Investment and Safekeeping of Litigation Settlement Trust Assets ...... 17
    3.8    Limitation of Litigation Settlement Trustees's Authority. .................... 17
    3.9    Responsibilities of the Litigation Settlement Trustees. ........................ 17
    3.10   Standard of Care; Exculpation. ........................................................... 18

**ARTICLE 4 LITIGATION SETTLEMENT TRUST BOARD** .............................. 19
    4.1    Litigation Settlement Trust Board. ....................................................... 19
    4.2    Authority of the Litigation Settlement Trust Board. ............................. 19
    4.3    Meetings of the Litigation Settlement Trust Board. .............................. 19
    4.4    Notice and Waiver of Notice for Litigation Settlement Trustees and Litigation Settlement Trust Board. ....................................................... 20
    4.5    Manner of Acting. ................................................................................ 20
    4.6    Litigation Settlement Trust Board's Action Without a Meeting. ........... 21
    4.7    Tenure, Removal, and Replacement of the Members of the Litigation Settlement Trust Board. ....................................................................... 21
    4.8    Compensation of the Litigation Settlement Trust Board. ...................... 23
    4.9    Standard of Care; Exculpation. ........................................................... 23

**ARTICLE 5 LITIGATION SETTLEMENT TRUST INTERESTS** ...................... 24
    5.1    Issuance of Litigation Settlement Trust Interests. ................................ 24
    5.2    Interests Beneficial Only. ..................................................................... 24

003442

| | | |
|---|---|---:|
| 5.3 | Evidence of Beneficial Interests. | 25 |
| 5.4 | Securities Law Matters. | 25 |
| 5.5 | Transfer and Exchange. | 26 |
| 5.6 | Access to the Litigation Settlement Trust Register by the Litigation Settlement Trust Beneficiaries. | 28 |
| 5.7 | Absolute Owners. | 28 |
| 5.8 | Limitation on Suits by Litigation Settlement Trust Beneficiaries. | 28 |

**ARTICLE 6 DISTRIBUTIONS** ........................................................................ 29
| | | |
|---|---|---:|
| 6.1 | Use of Proceeds. | 29 |
| 6.2 | Manner of Payment of Distributable Proceeds. | 30 |

**ARTICLE 7 INDEMNIFICATION** .................................................................. 31
| | | |
|---|---|---:|
| 7.1 | Indemnification of Litigation Settlement Trustees. | 31 |

**ARTICLE 8 REPORTS** .................................................................................. 32
| | | |
|---|---|---:|
| 8.1 | Financial, Tax, and Other Information. | 32 |
| 8.2 | Other Required Reports. | 34 |
| 8.3 | Certain Non-Public Information. | 34 |
| 8.4 | Electronic Reporting. | 34 |

**ARTICLE 9 TERM; TERMINATION OF THE LITIGATION SETTLEMENT TRUST** 34
| | | |
|---|---|---:|
| 9.1 | Term; Termination of the Litigation Settlement Trust. | 34 |
| 9.2 | Continuance of Trust for Winding Up. | 35 |

**ARTICLE 10 AMENDMENT AND WAIVER** .................................................. 36
| | | |
|---|---|---:|
| 10.1 | Amendment and Waiver. | 36 |

**ARTICLE 11 MISCELLANEOUS PROVISIONS** .......................................... 37
| | | |
|---|---|---:|
| 11.1 | Intention of Parties to Establish the Litigation Settlement Trust. | 37 |
| 11.2 | Reimbursement of Trust Litigation-Settlement Costs. | 37 |
| 11.3 | Laws as to Construction. | 37 |
| 11.4 | Jurisdiction. | 37 |
| 11.5 | Severability. | 38 |
| 11.6 | Notices. | 38 |
| 11.7 | Fiscal Year. | 39 |
| 11.8 | Definitions. | 39 |
| 11.9 | Headings. | 40 |
| 11.10 | Counterparts. | 40 |
| 11.11 | Confidentiality. | 40 |
| 11.12 | Entire Agreement. | 41 |
| 11.13 | Modification of this Declaration or the Litigation Settlement Trust Terms.. | |
| 11.14 | Jurisdiction and Venue. | |

003443

# DECLARATION OF TRUST

This Declaration of Trust (this "Declaration") establishing the "2022 Litigation Settlement Trust" (the Litigation Settlement Trust) dated as of April 14, 2022, by and among the

     i.    Debtors InfoW, LLC (formerly known as Inforwars, Inc.), IWHealth, LLC (formerly known as Infowars Health, LLC) and Prison Planet TV, LLC ("PPTV") (IWI, IWHealth and PPTV collectively the "Debtors" and later the "Reorganized Debtors");

     ii.    the initial Trustee Robert Dew ("Initial Trustee);

     iii.    the two (2) Trustees named in any order entered by a Court of competent jurisdiction and approved by the Third-Party Funding Contributor[s] (the "Litigation Settlement Trustees" or "Trustees"),

     iv.    the Third-Party Funding Contributor[s] that initially fully fund this 2022 Litigation Settlement Trust (the "Litigation Settlement Trust" or "Declaration") as provided herein and that may, from time to time, fund this Trust to accomplish "Payment in Full" as provided herein; and

     v.    the Plan Support Agreement (the "PSA") and its parties ("PSA Parties") by which certain covenants and provided toward Payment in Full and by which the following assets are furnished by the Third-Party Funding Contributor[s], including cash and the transfer and assignment of ownership and voting rights of InfoW, LLC, IWHealth, LLC and PPTV, as provided herein

is executed in order to establish this Litigation Settlement Trust in connection with the proposal for "Payment in Full" of the "Litigation Settlement Trust Claims" (hereinafter defined) to ultimately be included in a confirmed plan of reorganization for the Debtors under Chapter 11 of the United States Bankruptcy Code, which filing shall be on or before April 17, 2022 (as it may be amended, modified, or supplemented, prior to confirmation the "Plan" and upon confirmation "Confirmed Plan") as may be authorized by the Initial Trustee. Capitalized terms used in this Declaration and not otherwise defined herein shall have the respective meanings ascribed to them in this Declaration, in the Glossary of Defined Terms (attached hereto as Exhibit "A"), or in the Plan Support Agreement; all other capitalized terms used herein are defined in Section 11.8 hereof.

## W I T N E S S E T H

WHEREAS, this Litigation Settlement Trust, created for the benefit of the Debtors and the Third-Party Funding Contributor[s], is intended to facilitate and underwrite the "Payment in Full" of the Litigation Settlement Trust Beneficiaries filed and allowed claims (the "Litigation Settlement Trust Claims"), as may exist from time to time and as may be funded for this purpose from time to time to achieve Payment in Full; and

WHEREAS, one or more of the Debtors referenced herein may file its respective voluntary petitions pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the

"Bankruptcy Court"), commencing a case and seeking to jointly administered the cases (the "Chapter 11 Cases") under the exclusive control of the Trustees named herein, as provided herein, and funded by Third-Party Funding Contributor[s] as herein provided; and

WHEREAS in order for the Litigation Settlement Trust to achieve the stated goal of Payment in Full of all Litigation Settlement Trust Claims, the Trust will be funded from time to time through funding committed by the Third-Party Funding Contributor[s], initially being Alex Jones and Free Speech Systems, LLC, agreeing to initially fund the obligations of this Litigation Settlement Trust with cash, assets and liens (as set out and limited herein) to support the goal of providing and assuring "Payment in Full" of all Litigation Settlement Trust Claims as provided herein and to receive the Resulting Releases as provided herein; and

WHEREAS, the Litigation Settlement Trust is created pursuant to, and to effectuate, the confirmation of Confirmed Plan(s) and shall exist for such purpose only and shall administer, as the case may be, each and all of the claims of all of the Plaintiffs' arising out of the Litigation Settlement Trust Claims filed in and administered by the Trustees in the Chapter 11 Cases and liquidated as set out herein by settlements, channeling injunction and mediation, or jury trial or trial in the United States District Court; and

WHEREAS, in the Bankruptcy Court, through a Confirmed Plan, the Trustees shall seek an order that incorporates into any Confirmed Plan this pre-filing established and created Litigation Settlement Trust to (a) in an expeditious but orderly manner, prosecute, settle, or otherwise dispose of the Litigation Settlement Trust Claims by Payment in Full, as successor to and representative of the estates of the Debtors in accordance with Sections 1145(a)(1) and 1123(b)(3)(B) of the Bankruptcy Code and (b) make timely distributions to the Litigation Settlement Trust Beneficiaries in conformity with the Confirmed Plan to achieve Payment in Full;

WHEREAS, in fulfilling its purpose, the Litigation Settlement Trust shall have both the objective and authority to continue or engage in the conduct of a trade or business to the extent reasonably necessary to, and consistent with, the purpose of the Litigation Settlement Trust; to conduct discovery under Rule 2004, of the Bankruptcy Rules of Procedure, compel production of documents as to any third party authorized under the Rule, and to protect the Debtors and the funding of the Debtors for the purposes of this Litigation Settlement Trust.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Confirmed Plan, the Debtors, Third-Party Funding Contributor[s] (herein sometimes the "Settlors"), and the Trustees agree as follows:

**ARTICLE 1**
**ESTABLISHMENT OF THE LITIGATION SETTLEMENT TRUST**

1.1     Declaration of Trust.

(a)     The Debtors and the Litigation Settlement Trustees hereby establish the Litigation Settlement Trust, which shall be known as the "Litigation Settlement Trust" on behalf of the Litigation Settlement Trust Beneficiaries and the Trustees hereby accept

such rights and properties assigned and transferred to them and the trust imposed upon them pursuant to this Declaration.

(b)      The principal office of the Litigation Settlement Trust is Heritage Mark Building, 5606 N. Navarro, Suite 300-W and 302-C, Victoria, TX 77904 [**Mail Address: IwHealth, LLC, PO Box 1819 Houston, TX 77251-1819**] and all Trust affairs, assets, books and records, shall be in care of the Initial Trustee in Austin, Texas acting on behalf of the two Litigation Settlement Trustees at such offices or other offices as designated from time to time by the Litigation Settlement Trustees.

1.2    Litigation Settlement Trust Assets.

(a)      In accordance with this Declaration and any future Confirmed Plan, as of the Effective Date, the Third-Party Funding Contributor[s], subject to the provisions of this Declaration and any subsequent Confirmation Order, hereby transfer, assign, and deliver to the Litigation Settlement Trustees for the benefit of the Litigation Settlement Trust Beneficiaries, and the Initial Trustee, on behalf of the two (2) Litigation Settlement Trustees hereby accepts on behalf of the Litigation Settlement Trust Beneficiaries:

(i)      all of the ownership rights, title, and voting rights in and to the Debtors and all of the Debtors' rights, title and interest in all, each and every tangible and intangible asset which such assignment of the ownership and governance shall specially provide that Alex Jones, his affiliate Free Speech Systems, LLC their agents, or anyone in any way related or affiliated to or related to them are barred and excluded from any active, direct or indirect control or participation in the management of any Chapter 11 Case Debtor; and

(ii)      all of the Debtors' respective rights, title, and interest in the Debtors' Privileges, defenses, counterclaims, and cross claims associated with the Litigation Settlement Trust Claims; and

(iii)      the "Litigation-Settlement Expense Fund" of not less than $725,000.00 in cash designated to pay the costs of administration, including the Initial Trustee and the Litigation Settlement Trustees retention, and retention by the Trustees of all professionals deemed necessary to accomplish the purpose of this Trust, including the Chapter 11 proceedings authorized by this Declaration and the Initial Trustee; and provided that the Third-Party Funding Contributor[s] shall maintain for not less than 120 days a balance after payment of all initial administrative expense retainers to Trustees and the Debtor's professionals, the minimum sum of $200,000.00 for continued payment of the costs of Administration of the Trust and the Chapter 11 Cases.

(iv)      Upon the transfer of these cash assets to the Litigation Settlement Trust, the Debtors shall have no interest in or obligation with respect to

such assets or, except as described in this Section 1.2, Section 1.3 or Section 1.4, the Litigation Settlement Trust.

(v)    such other assets and interests provided by the Third-Party Funding Contributor[s] or as provided in the Plan Support Agreement or as may be required under the agreed terms of the Confirmed Plan to be contributed by Third Parties.

All property, cash and rights described in this Section 1.2 are collectively referred to as the "Assets")

(b)    The Initial Trustee shall only have only the following rights and authority unless additional authority is expressly approved by all parties to this Declaration:

(i)    To receive Assets and all contributions of cash;

(ii)    To safeguard all Assets and cash and open bank accounts or otherwise provide for the handling and accounting of all transactions prior to the approval and appointment of the two Trustees;

(iii)    To act on behalf of all of the Debtors as the sole officer and director of each respective Debtor, including the authority to authorize the filing of Chapter 11 (11 U.S.C.§ 1101, et seq) cases for each or all of the Debtors;

(iv)    To cause to be made distributions of cash only with respect to retention of counsel and other case professionals retained by the Debtors in connection with the filing of the Chapter 11 Cases, which shall be expressly authorized to include such related expenses and execute the retention agreement of such counsel;

(v)    To turn-over all such Assets to the two (2) Litigation Settlement Trustees upon their appointment and approval, at which time all duties, rights and responsibilities shall end, and provided, however, all indemnity, exculpations, releases and protections of the Trustees shall apply equally to the Initial Trustee, who shall have no liability whatsoever for service as the Initial Trustee except for willful fraud or theft.

(vi)    The Third-Party Funding Contributor[s] shall be solely responsible for all compensation of the Initial Trustee who shall not be compensated by this Trust.

(c)    Upon approval and appointment, the Litigation Settlement Trustees shall collect all Assets and income earned with respect to, and all Litigation-Settlement Proceeds being the aggregate of, and derivative of, or attributable to, all proceeds available for payments made on account of, the Assets of the Litigation Settlement Trust, and contributed from any

source, including the Third Party Funding Contributors, which shall thereupon be added to the assets of the Litigation Settlement Trust and held as a part thereof (and which title shall be vested in the Litigation Settlement Trustees).

(d)     On or as promptly as practicable after the Effective Date of any Confirmed Plan the Reorganized Debtors shall (i) deliver or cause to be delivered to the Litigation Settlement Trustees any and all documents (or copies thereof) to the extent relating to the Litigation Settlement Trust Claims held by the Debtors, their employees, agents, advisors, attorneys, accountants, or any other professionals hired by the Debtors and (ii) provide reasonable access to the Litigation Settlement Trustees and its advisors to such employees of the Debtors, their agents, advisors, attorneys, accountants, or any other professionals hired by the Debtors with knowledge of matters relevant to the Litigation Settlement Trust Claims for the purpose of enabling the Litigation Settlement Trustees to fulfill its obligations under this Declaration, including the prosecution of the Litigation Settlement Trust Claims. Reorganized Debtors shall, pursuant to and subject to the terms and conditions of the Confirmed Plan, facilitate access to the Litigation Settlement Trustees and its advisors to employees and books and records of the Plan Support Agreement in connection with the obligations of the Litigation Settlement Trustees under this Declaration, including the settlement or defense and liquidation of the Litigation Settlement Trust Claims. Requests for such access shall be made through Reorganized Debtors or its representatives only and all such information, disclosures, and documents shall be held in the utmost confidence.

(e)     At any time and from time to time on and after the Effective Date, the Trustees and Reorganized Debtors agree (i) at the reasonable request of the Litigation Settlement Trustees to execute and/or deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed) and (ii) to take, or cause to be taken, all such further actions as the Litigation Settlement Trustees may reasonably request, in each case, in order to evidence or effectuate the transfer of the Litigation Settlement Trust Claims to the Litigation Settlement Trustees and to otherwise carry out the intent of the Confirmed Plan.

1.3     <u>Funding of the Litigation Settlement Trust</u>.

(a)     In accordance with this Litigation Settlement Trust, and as may be later provided in the Plan Support Agreement and the Confirmed Plan, Debtors and Reorganized Debtors shall, on the Effective Date:

(i)     transfer to the Litigation Settlement Trust the Initial Litigation-Settlement Expense Fund and

(ii)     from time to time thereafter may deliver additions to the Litigation-Settlement Expense Fund to the extent required by this Trust, the Plan Support Agreement and the Confirmed Plan.

(iii)     The Third-Party Funding Contributor[s] shall upon execution of this Declaration, assign to the Litigation Settlement Trust, all governance, in form satisfactory to the Trustees, of the respective Reorganized Debtors as may have filed from time

003448

to time a Chapter 11 Case, which such assignment of the governance shall exclude Alex Jones and his affiliate Free Speech Systems, LLC from any active, direct or indirect control or participation in the management of any Chapter 11 Case Debtor. As part of the assignment of governance, the Trustees shall be permitted to file any Title 11 case the Trustees deem advisable or proper from time to time (other than any involuntary case against any Third-Party Funding Contributor) and to prosecute such Chapter 11 Case as the sole and exclusive governing body of such Debtors upon approval of such governance by the respective Bankruptcy Court in which the Chapter 11 Case is filed.

(iv). Except pursuant to the terms of the Confirmed Plan, none of the Debtors and the Third-Party Funding Contributors shall have any further obligation to provide any funding with respect to the Litigation Settlement Trust; provided, however, to the extent that Payment in Full is not achieved as set out herein, none of the Third-Party Funding Contributor[s] shall be entitled to the Resulting Release provided herein. The Litigation Settlement Trustees shall use the Litigation-Settlement Expense Fund consistent with the purposes of this Litigation Settlement Trust and subject to the terms and conditions of this Declaration, and any Confirmed Plan.

(b)     All of the initial liquidity of the Litigation Settlement Trust shall be funded by the Third-Party Funding Contributor[s] in an amount estimated to provide for all costs and expenses associated with the administration of the Litigation Settlement Trust as such amounts are reasonably estimated, and thereafter, may be funded to accomplish, as the case may be, the "Payment in Full" of all Litigation Settlement Trust Claims, in exchange for a Resulting Release in favor of the Third-Party Funding Contributor(s) upon Payment in Full, but not prior Payment in Full. The initial funding shall be in amounts as agreed between the Third-Party Funding Contributor[s] and the Initial Trustee, as set for on Exhibit "B" [the Initial Litigation-Settlement Expense Fund] executed as a part and term of this Litigation Settlement Trust providing for future commitments to such funding for all purposes of this Litigation Settlement Trust; provided, however, nothing in this Litigation Trust obligates the Third-Party Funding Contributor(s) to fund any additional funds (whether by cash, cash equivalents, property or assets on liens on tangible and intangible property, after the payment of all initial funding set out on Exhibit "B"). It is the intention of the Third-Party Funding Contributor[s] to continue, prior to Plan Confirmation, to contribute sufficient liquidity to maintain a cash balance of $200,000.00 in the Litigation Settlement Trust, after the initial payment of Trustee and professional retainers, and thereafter for 120 days to be certain that all Administrative Expenses are paid, and thereafter as determined by the Third-Party Funding Contributors in each Third-Party's sole discretion. Nothing in this Litigation Trust or Declaration creates a right or cause of action in any respect against any Third-Party Funding Contributor for any funding beyond the initial funding set out in Exhibit "B" and for the express purpose of clarity, no person or entity, claimant, creditor, Interest Holder may bring any action directly against any Third-Party Funding Contributor under this Litigation Settlement Trust or Declaration nor may any third party seize, attach, garnish or otherwise assert in any manner a lien or claim of any nature or origin to the Litigation Settlement Fund assets at any time.

(c)     All costs and expenses associated with the Administration of the Litigation Settlement Trust, or the costs of administration of the Debtors' operations and Chapter

11 Cases shall be the responsibility of and paid by the Litigation Settlement Trust as approved and funded herein.

    1.4    <u>Tax Matters</u>.

    (a)    Solely for tax purposes, the Litigation Settlement Trust Beneficiaries and Reorganized Debtors (to the extent of its retained interest in the Litigation Settlement Trust for federal income tax purposes) (collectively, the "<u>Trust Tax Owners</u>") are treated as grantors and owners of the Litigation Settlement Trust pursuant to Section 671 et seq. of the Internal Revenue Code and the Treasury Regulations promulgated thereunder (the "<u>Treasury Regulations</u>") and any similar provisions of state or local law. It is intended that the Litigation Settlement Trust be classified as a liquidating trust under Section 301.7701-4(d) of the Treasury Regulations.

    (b)    For all federal, state and local income tax purposes, all persons (including, without limitation, the Debtors, the Trustees, and the Trust Tax Owners) shall take the position, subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, that the transfer of assets to the Litigation Settlement Trust is a deemed transfer to the Trust Tax Owners (as of the Initial Distribution Date), followed by a deemed transfer by such Trust Tax Owners to the Litigation Settlement Trust.

    (c)    The fair market value of the portion of the Litigation Settlement Trust Assets that is treated as having been transferred to each Trust Tax Owner pursuant to <u>Section 1.4(b)</u> hereof, and the fair market value of the portion of the Litigation Settlement Trust Assets that is treated for federal income tax purposes as having been transferred to any Trust Tax Owner or other distributee as a result of the allowance or disallowance of a Disputed Claim, shall be determined by the Litigation Settlement Trustees, and all persons (including, without limitation, the Litigation Settlement Trustees, the Trust Tax Owners, and the transferors, for tax purposes, of any assets transferred to the Litigation Settlement Trust) shall utilize the fair market value determined by the Litigation Settlement Trustees for all federal income tax purposes.

    (d)    The Litigation Settlement Trustees shall allocate any items of income, gain, loss, deduction, and credit of the Litigation Settlement Trust for federal income tax purposes among current and/or former Trust Tax Owners, such allocation shall be binding on all current and former Trust Tax Owners for all federal, state, and local income tax purposes and the current and former Trust Tax Owners shall be responsible (on a current basis) for the payment of any federal, state, and local income tax due on the income and gain so allocated to them.

    1.5    <u>Nature and Purpose of the Litigation Settlement Trust and Initial Trustee</u>.

    (a)    <u>Purpose</u>. Upon compliance with Section 3810 of the Delaware Statutory Trust Act, 12 <u>Del</u>. <u>C</u>., § 3801 et seq. (hereinafter the "<u>Act</u>"), the Litigation Settlement Trust shall be organized and established as a statutory trust pursuant to which the Litigation Settlement Trustees, subject to the terms and conditions contained herein and in a Confirmed Plan, is to (i) hold the assets of the Litigation Settlement Trust and dispose of the same in accordance with this Declaration and a Confirmed Plan in accordance with Treasury Regulation Section 301.7701-4(d) and (ii) oversee and direct the expeditious but orderly liquidation of the

assets of the Litigation Settlement Trust received from time to time. Accordingly, the primary purpose of the Litigation Settlement Trust is to liquidate the Litigation Settlement Trust Claims and accomplish Payment in Full, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Settlement Trust.

(b)     Relationship. This Declaration is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust under Texas law. The Litigation Settlement Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Litigation Settlement Trustees, or the Litigation Settlement Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Litigation Settlement Trust Beneficiaries to the Litigation Settlement Trustees and the Litigation Settlement Trust Board shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Declaration and as set forth in the Confirmed Plan.   In every event, the Trustees are not deemed in a fiduciary relationship to any Third-Party or any Litigation Settlement Trust Beneficiaries and in every event shall only have liability for their actual fraud or gross misconduct established under clear and convincing evidence standards.

(c)     Initial Trustee:  This Trust shall be initially administered by the Initial Trustee designated by the Third-Party Funding Contributors upon the initial funding.  The sole duty of the Initial Trustee shall be to preserve all Trust Assets contributed by the Third-Party Funding Contributors, including cash, equity and control rights in not fewer than the four entities listed on Exhibit "C" including the new entity resulting from the Merger transaction between Free Speech Systems, LLC and the new entity.  The Initial Trustee shall serve as the control person for each entity-asset of the Litigation Settlement Trust until the replacement two (2) Trustees are approved and commence service as Trustees under the provisions of this Trust, at which time the Initial Trustee shall resign and have no further rights or obligations under this Trust.

1.6     Incorporation of Confirmed Plan. Upon confirmation of a Plan, if any, pursuant to 11 U.S.C. § 1129,  the Confirmed Plan and the Confirmation Order are each hereby incorporated into this Declaration and made a part hereof by this reference; *provided, however*, to the extent that there is conflict between the provisions of this Declaration, the provisions of the Confirmed Plan, and/or the Confirmation Order, each such document shall have controlling effect in the following rank order: (i) this Declaration [which may not be modified or expanded by any Plan or Order unless fully agreed and consented to by all parties to this Declaration]; (ii) the Confirmation Order; and (iii) the Confirmed Plan; provided, however, nothing in any Confirmed Plan shall create a liability or obligation of any Third-Party Funding Contributor not expressly and in writing assumed; that is, a Confirmed Plan shall not compel payments of contributions by the Third-Party Funding Contributor not required under the Plan Support Agreement, nor grant a release until Payment in Full is reached.

1.7     Appointment as Representative.. Pursuant to this Declaration, and thereafter pursuant to section 1123(b)(3) of the Bankruptcy Code, the Confirmed Plan appoints

the then-serving Litigation Settlement Trustees (as the duly appointed representative of the Debtors' Estates) and, as such, the Litigation Settlement Trustees succeeds to all of the rights and powers of a trustee in bankruptcy with respect to prosecution, sale, transfer, or other disposition, as applicable, of the Litigation Settlement Trust Claims for the ratable benefit of the Litigation Settlement Trust Beneficiaries on all Litigation Trust Claims. To the extent that any Litigation Settlement Trust Claims cannot be transferred to the Litigation Settlement Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Settlement Trust Claims shall be deemed to have been retained by Reorganized Debtors, and the Litigation Settlement Trustees shall be deemed to have been designated as a representative of the Estates pursuant to section 1123 (b)(3)(B) of the Bankruptcy Code to enforce, pursue, sale, transfer, or otherwise dispose of, as applicable, such Litigation Settlement Trust Claims on behalf of the Estates.

## ARTICLE 2
## TRUSTEES

2.1     <u>Litigation Settlement Trustees</u>..  In accordance with this Litigation Settlement Trust, to be later incorporated in the Confirmed Plan and subject to the Confirmation Order, two individuals and citizens of the State of Texas are hereby named, constituted, and appointed as Litigation Settlement Trustees effective not later than 45 days after the date of funding and appointment of the Initial Trustee.  Absence of such appointed Trustees, this Trust shall terminate, and all funds returned to the respective Third-Party Funding Contributor.  Upon the appointment of the two Trustees, each shall promptly commence service and have all the rights, powers, and duties set forth herein and as otherwise provided by law including, which shall be broadly and liberally construed to accomplish the purpose of this Trust:

(b)     All of the powers and duties of managers of the Trust and of the Debtors for all purposes, including filing of any proceeding, case, suit, or other legal proceeding; operation of the Debtors as debtors, Debtors-in-Possession (with all rights and powers of a Trustee under 11 U.S.C. § 101, et. seq); and

(c)     All of the powers referenced, granted, or provided herein or as may be require to perform the duties of a Trustee provided herein and or in any proceeding brought under Title 11 U.S.C. ¶ 101 et. seq; and

(d)     All of the powers and duties provided under the laws of the State of Texas; and

(e)     All of the powers and duties provided in the Confirmed Plan.

Each of the Litigation Settlement Trustees is willing and does hereby accept the appointment to act and serve as Litigation Settlement Trustees of the Litigation Settlement Trust.

(f)     All other powers and duties set out in this Declaration, including those powers set out in §3.2 hereof.

2.2     Third-Party Funding Contributor(s).   In accordance with this Litigation Settlement Trust, to be incorporated in the Confirmed Plan and subject to the Confirmation Order, the Third-Party Funding Contributor(s) shall agree to contribute, from time to time for the purpose of the initial funding of the Litigation Settlement Trust and thereafter payment of all minimum balance of the Administrative Expenses (as that term is used in cases under 11 U.S.C.1101, et seq.) for the time provided herein, and thereafter, may agree to contribute, from time to time, sufficient funds to assure Payment in Full of all Litigation Settlement Trust Claims as may be provided in the Confirmed Plan, and until Termination as herein provided or until Payment in Full and recognition of the Resulting Releases to the Third-Party Contributor(s).

(a)     From time to time the Trustees may request of the Third-Party Funding Contributors current financial information, operating information, assets or account information ("Information") as reasonably needed to determine that each Third-Party Funding Contributor is maintaining operations and business sufficient to not only maintain the minimum balance in the Litigation Settlement Trust, but also to Pay in Full, on such terms as may be incorporated the Confirmed Plan, so as reasonably to allow the Trustees to have adequate assurances of future performance of any required Payment Stream to accomplish Payment in Full. The Information shall be produced only under this provision, and to the extent that there is any disagreement on Information production requested, the Trustees may seek orders from any Federal Court having jurisdiction over the Litigation Settlement Trust.  In every event the Information shall be held absolutely confidential and held pursuant to the confidentiality term of this Litigation Settlement Trust and such other confidentiality terms reasonably requested by the any Third-Party Funding Contributor and shall be received and held by the Trustees as "Trustees and Trustees' Professionals Eyes Only."

(b)     The Trustees shall not be subject to any subpoenas or efforts to pierce this confidentiality agreement other than the federal court having jurisdiction over the trust (this Trust being considered a Barton Doctrine Trust);  provided, however, to the extent that the Litigation Claimants have formed a committee or a recognized *ad hoc* committee, and designated a representative of that committee (the "Committee Representative"), then in such event, the Trustees may, after disclosure to any Third-Party Funding Contributor with an opportunity to file any objections with any Federal Court having jurisdiction, allow such Committee Representative access to such Information upon execution of a sufficient confidentiality agreement to protect such Information for the purpose of Settlement, but not otherwise.

(c)     Nothing in this confidentiality agreement terms or other term in the Litigation Trust shall create any separate liability of any Third-Party Funding Contributor for any sums other than the obligation to maintain the Settlement Trust balances for payment of Administrative Expenses, including any Chapter 11 Administrative Expenses, but not otherwise unless agreed to in writing by any such Third-Party Funding Contributor.

(d)     Nothing in this § 2.2 replaces the terms and restriction on Information set out in Section 11.11.

2.3     Tenure, Removal, and Replacement of the Litigation-Settlement and Litigation Settlement Trustees.

(a)     The Litigation Settlement Trustees (each, a "Trustee" and, together, the "Trustees") will each serve until resignation and the appointment of a successor pursuant to subsection (b) below, removal pursuant to subsection (c) below, or death (if applicable).

(b)     A Trustee may resign by giving not less than 60 days' prior written notice to the Debtors, or post confirmation, to the Litigation Settlement Trust Board.  Such resignation will become effective on the later to occur of: (i) the day specified in such notice and (ii) the appointment of a successor trustee as provided herein and the acceptance by such successor trustee of such appointment. If a successor trustee is not appointed or does not accept its appointment within 60 days following delivery of notice of resignation, the Litigation Settlement Trustee(s) may file a motion with the Bankruptcy Court or with the Delaware Court of Chancery (at the discretion of the Litigation Settlement Trustees and at the expense of the Litigation Settlement Trust), upon notice and hearing, for the appointment of a successor Trustee.

(c)     A Trustee may be removed by order of the Bankruptcy Court on motion of a majority of the members of the Litigation Settlement Trust Board.  Any motion to remove a Trustee shall be "for cause" shown by clear and convincing evidence, and all costs and fees for the successful defense of any such action for cause shall be the obligation of the Litigation Settlement Trust.

(d)     In the event of a vacancy in the position of a Trustee (whether by removal, resignation, or (if applicable) death), the vacancy will be filled by the appointment of a successor trustee by (i) majority vote and resolution of the Litigation Settlement Trust Board, and the acceptance by the successor trustee in accordance with Section 2.3(e) or (ii) an order of the Bankruptcy Court after an opportunity for a hearing; provided, however, that only the Litigation Settlement Trust Board shall have standing to seek such an order, except as provided in Section 2.3(b).  If a successor trustee is appointed by resolution, as provided in clause (i) of the preceding sentence, and such appointment is accepted by the successor trustee, the Litigation Settlement Trust Board shall file notice of such appointment and acceptance with the Bankruptcy Court, which notice will include the name, address, and telephone number of the successor trustee; provided that the filing of such notice shall not be a condition precedent to the vesting in the successor Trustee of all the estates, properties, rights, powers, trusts, and duties of its predecessor.

(e)     Any successor trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations of the predecessor Trustee hereunder and thereupon the successor trustee shall, without any further act, become vested with all the estates, properties, rights, powers, privileges, authorities, and duties of its predecessor in the Litigation Settlement Trust hereunder with like effect as if originally named herein and the successor trustee will not be liable personally for any act or omission of the predecessor Trustee.

(f)     Upon the appointment of a successor trustee, the predecessor Trustee (or the duly appointed legal representative of a deceased Trustee) shall, if applicable, when requested in writing by the successor trustee, execute and deliver an instrument or

instruments conveying and transferring to such successor trustee upon the trust herein expressed, without recourse to the predecessor Trustee, all the estates, properties, rights, powers, and trusts of such predecessor Trustee, and shall duly assign, transfer, and deliver to such successor trustee all property and money held hereunder, and all other assets and documents relating to the Litigation Settlement Trust, the Litigation Settlement Trust Claims, or the Litigation Settlement Trust Interests then in its possession and held hereunder.

(g)     During any period in which there is a vacancy in the position of a Trustee, the Litigation Settlement Trust Board may (to the extent permitted by the Act) appoint one of its members to serve as an interim Trustee, (the "Interim Trustee"). The Interim Trustee shall be subject to all the terms and conditions applicable to a Litigation Settlement Trustees hereunder. Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a member of the Litigation Settlement Trust Board merely by its appointment as Interim Trustee.

(h)     The death, resignation, retirement, removal, bankruptcy, dissolution, liquidation, incompetence, or incapacity to perform the duties of a Trustee shall not operate to dissolve, terminate, or annul the Litigation Settlement Trust.

2.4     <u>Compensation of the Trustees</u>.

(a)     As compensation, the Litigation Settlement Trustees shall be entitled to receive initially an hour rate set out below for all time involving Trustee services (or such other amount as agreed to from time to time by the Litigation Settlement Trustees and the Litigation Settlement Trust Board or as approved by the Bankruptcy Court, as the case may be), payable for the performance of services provided under and pursuant to this Declaration, and shall be reimbursed for all reasonable and documented expenses incurred in connection with the performance of its services hereunder.

(b)     The Litigation Settlement Trustees shall be entitled to receive compensation for services on an hourly rate, payable monthly on the 20th day of each month following the months such services were rendered, and shall be reimbursed for all reasonable and documented expenses incurred in connection with the performance of its services hereunder, or as may be ordered by the Bankruptcy Court

2.5     <u>No Bond</u>. The Trustees shall serve without bond.

2.6     <u>Inquiries into Trustee's Authority</u>.     Except as otherwise set forth in the Litigation Settlement Trust or in the Confirmed Plan, no Person dealing with the Litigation Settlement Trust shall be obligated to inquire into the authority of the Litigation Settlement Trustees in connection with the prosecution, protection, conservation, sale, or other disposition, as applicable, of the Litigation Settlement Trust Claims.

## ARTICLE 3
## DUTIES AND LIMITATIONS OF TRUSTEES

3.1     <u>Role of the Litigation Settlement Trustees</u>. In     furtherance     of     and consistent with the purpose of this Litigation Settlement Trust from execution date and as the

Confirmed Plan shall include, the Litigation Settlement Trustees, subject to the terms and conditions contained herein and later in the Confirmed Plan, shall, in an expeditious but orderly manner, liquidate and convert to Cash the assets of the Litigation Settlement Trust, engage in acts that would constitute ordinary performance of the obligations of a trustee under a liquidating litigation trust, make timely distributions of such Cash and not unduly prolong the duration of the Litigation Settlement Trust. The liquidation of the Litigation Settlement Trust Claims may be accomplished either through the prosecution, compromise and settlement, abandonment, dismissal, or other disposition of any or all claims, rights, or causes of action, or otherwise. In all circumstances, the Litigation Settlement Trustees shall act in the best interests of maximizing the value of the assets of the Litigation Settlement Trust for the Litigation Settlement Trust Beneficiaries and in furtherance of the purpose of the Litigation Settlement Trust and shall, where required pursuant to the terms of this Declaration, consult with the Litigation Settlement Trust Board. All of the Litigation Settlement Trustees' decisions with respect to the pursuit or settlement of the Litigation Settlement Trust Claims shall be taken in good faith.

3.2 <u>Authority of Litigation Settlement Trustees</u>. Subject to any limitations contained herein (including, without limitation, Article 4 hereof) or in the Confirmed Plan, the Litigation Settlement Trustees shall have the full power, authority, and discretion to take any and all actions as are necessary or advisable to carry out its responsibilities hereunder and to effectuate the purposes of the Litigation Settlement Trust, including, without limitation:

(a) full power, authority, and discretion to interpret, construe, and decide all questions and issues arising under any provision of this Declaration or of any agreement, notification, certificate, or document relating to or evidencing a Litigation Settlement Trust Interest (including, without limitation, the power, authority, and discretion to determine whether any particular holder or beneficial owner of a Litigation Settlement Trust Interest shall be entitled to exercise any right conferred hereunder or under any other relevant agreement, notification, certificate, document, or similar instrument), and the decisions of the Litigation Settlement Trustees with respect to all such matters shall be final, conclusive, and binding on all parties who have an interest in the Litigation Settlement Trust or any Litigation Settlement Trust Interest;

(b) receiving (and accepting), managing, supervising, and protecting the assets of the Litigation Settlement Trust on behalf of and for the benefit of the Litigation Settlement Trust Beneficiaries;

(c) holding legal title to any and all rights of the Litigation Settlement Trust Beneficiaries in or arising from the assets of the Litigation Settlement Trust, and, in consultation with the Litigation Settlement Trust Board, protecting and enforcing the rights to the assets of the Litigation Settlement Trust vested in the Litigation Settlement Trustees by this Declaration by any method deemed appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law, and general principles of equity;

(d) in consultation with the Litigation Settlement Trust Board, filing, initiating, prosecuting, and if necessary and appropriate, selling, compromising and settling, abandoning, or dismissing the Litigation Settlement Trust Claims;

(e)    in consultation with the Litigation Settlement Trust Board, commencing and/or pursuing any and all actions involving assets of the Litigation Settlement Trust that could arise or be asserted at any time, unless otherwise waived or relinquished in the Confirmed Plan;

(f)    distributing to some or all of the Litigation Settlement Trust Beneficiaries (as deemed appropriate by the Litigation Settlement Trustees) information regarding the Litigation Settlement Trust Claims and executing confidentiality agreements with such Litigation Settlement Trust Beneficiaries satisfactory to the Litigation Settlement Trustees in connection therewith, and the Litigation Settlement Trustees shall have the full power, authority, and discretion to withhold or restrict the delivery of any such information to any Litigation Settlement Trust Beneficiary if the Litigation Settlement Trustees determines in its reasonable discretion that such action is in the best interests of the Litigation Settlement Trust;

(g)    making all necessary filings in accordance with any applicable law, statute or regulation, and in consultation with counsel, seeking any advice or determination that may be necessary or appropriate under any such laws, statutes, or regulations;

(h)    executing and filing one or more registration statements and prospectuses (including any amendments or supplements thereto) under the Securities Act (if applicable) relating to the Litigation Settlement Trust Beneficial Interests and the preparation and filing of all periodic and other reports, forms, and other filings required under the Exchange Act and any other applicable federal or state securities laws;

(i)    taking of any action to cause the Litigation Settlement Trust to not be deemed an Investment Company under the Investment Act or subject to the Trust Indenture Act;

(j)    calculating and implementing of all distributions to be made to the Litigation Settlement Trust Beneficiaries;

(k)    filing of all required tax and information returns and paying of taxes and all other obligations of the Litigation Settlement Trust;

(l)    requesting any appropriate tax determination with respect to the Litigation Settlement Trust;

(m)    paying all expenses and making all other payments relating to any assets of the Litigation Settlement Trust;

(n)    obtaining insurance coverage with respect to (i) the liabilities and obligations of the Trustees under this Agreement (in the form of an errors and omissions policy or otherwise) and (ii) real and personal property, which may become assets of the Litigation Settlement Trust, if any;

(o)    in consultation with the Litigation Settlement Trust Board, negotiating, receiving, or accepting of the assignment or transfer of claims, rights, suits,

judgments, causes of action, recoveries and/or proceeds therefrom, from the holders thereof, to the extent that an assignment and/or transfer to the Litigation Settlement Trust is deemed to be in the best interests of maximizing the value of the assets of the Litigation Settlement Trust for the Litigation Settlement Trust Beneficiaries;

(p)    in consultation with the Litigation Settlement Trust Board, determining the amount of consideration to be provided for the assignment or transfer of claims, rights, suits, judgments, causes of action, recoveries, and/or proceeds therefrom;

(q)    in consultation with the Litigation Settlement Trust Board, compromising, adjusting, arbitrating, suing on or defending, abandoning, or otherwise dealing with and settling claims in favor of or against the Litigation Settlement Trust as the Litigation Settlement Trustees shall deem advisable;

(r)    determining and satisfying any and all liabilities created, incurred or assumed by the Litigation Settlement Trust;

(s)    in consultation with the Litigation Settlement Trust Board, retaining and paying such law firms, accounting firms, experts, advisors, consultants, investigators, appraisers, agents, employees, or other professionals and third parties as the Litigation Settlement Trustees may deem necessary or appropriate to assist the Litigation Settlement Trustees in carrying out the Litigation Settlement Trustees's powers and duties under this Declaration. The Litigation Settlement Trustees may commit the Litigation Settlement Trust to and shall pay all persons or entities retained or employed by the Litigation Settlement Trust reasonable compensation for services rendered and reasonable expenses incurred;

(t)    investing any moneys held as part of the assets of the Litigation Settlement Trust in accordance with, and subject to the limitations of, the terms of Section 3.7 and 3.8 hereof;

(u)    performing such other responsibilities as may be vested in the Litigation Settlement Trustees pursuant to the Confirmed Plan, this Declaration, orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Confirmed Plan; and

(v)    conducting the affairs of the Litigation Settlement Trust and operating the Litigation Settlement Trust so that the Litigation Settlement Trust will not fail to be classified as a liquidating trust within the meaning of Treasury Regulation 301.7701-4(d).

3.3    Payment of Litigation Settlement Trust Expenses.

(a)    The Litigation Settlement Trustees shall maintain the Litigation-Settlement Expense Fund and expend the assets of the Litigation-Settlement Expense Fund as are reasonably necessary to meet contingent liabilities and to maintain the value of the assets of the Litigation Settlement Trust during liquidation, and to pay reasonable administrative expenses (including but not limited to, (i) costs and expenses of the Litigation Settlement Trustees, (ii) reasonable fees, costs, and expenses of professionals retained by the Litigation Settlement Trustees, (iii) the expenses of members of the Litigation Settlement Trust Board permitted under

this Declaration, (iv) any taxes imposed on the Litigation Settlement Trust, (v) fees and expenses in connection with, arising out of or related to the Litigation Settlement Trust Claims or the performance by the Litigation Settlement Trustees of his duties hereunder in accordance with this Declaration, and (vi) to satisfy other liabilities incurred or assumed by the Litigation Settlement Trust (or to which the assets are otherwise subject) in accordance with the Confirmed Plan or this Declaration (collectively the "Litigation Trust Expenses").

      (b)     The Litigation Settlement Trustees may retain from the Litigation Settlement Trust Proceeds and add to the Litigation-Settlement Expense Fund, at any time and from time to time, such amounts as the Litigation Settlement Trustees deems reasonable and appropriate to ensure that the Litigation-Settlement Expense Fund will be adequate to meet the expenses and liabilities described in <u>Section 3.3(a)</u>.

      (c)     Notwithstanding any other provision of this Declaration to the contrary, the Litigation Settlement Trustees shall not be required to take any action or enter into or maintain any claim, demand, action, or proceeding relating to the Litigation Settlement Trust unless it shall have sufficient funds in the Litigation-Settlement Expense Fund for that purpose.

    3.4    <u>Books and Records</u>.

      (a)     The Litigation Settlement Trustees shall maintain in respect of the Litigation Settlement Trust and the Litigation Settlement Trust Beneficiaries, books and records relating to the assets and income of the Litigation Settlement Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Litigation Settlement Trust in such detail and for such period of time as may be necessary to enable the Litigation Settlement Trustees to make full and proper accounting in respect thereof in accordance with the provisions hereof and to comply with applicable provisions of law. Nothing in this Declaration requires the Litigation Settlement Trustees to file any accounting or seek approval of any court with respect to the administration of the Litigation Settlement Trust, or as a condition for any payment or distribution out of the assets of the Litigation Settlement Trust.

      (b)     Upon distribution of all Litigation-Settlement Proceeds and all other Cash from the Litigation Settlement Trust or the termination of the Litigation Settlement Trust, the Litigation Settlement Trustees shall retain the books, records, and files which shall have been delivered to or created by the Litigation Settlement Trustees.

    3.5    <u>Compliance with Laws</u>.    Any and all distributions of assets of the Litigation Settlement Trust and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, without limitation, applicable federal and state securities laws.

    3.6    <u>Reliance by Litigation Settlement Trustees</u>.  Except as otherwise provided herein:

      (a)     the Litigation Settlement Trustees may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Litigation Settlement Trustees to be genuine and to have been signed or presented by the proper party or parties;

(b)    persons dealing with the Litigation Settlement Trustees shall look only to the assets of the Litigation Settlement Trust to satisfy any liability incurred by the Litigation Settlement Trustees to such Person in carrying out the terms of this Declaration, and neither the Litigation Settlement Trustees nor any member of the Litigation Settlement Trust Board shall have any personal obligation to satisfy any such liability; and

(c)    the Litigation Settlement Trustees shall have the right at any time to seek instructions concerning the administration of this Declaration from the Bankruptcy Court or, in the event that the Bankruptcy Cases are closed, any Delaware Court of Chancery.

3.7    <u>Investment and Safekeeping of Litigation Settlement Trust Assets</u>. The Litigation Settlement Trustees shall invest all assets transferred to the Litigation Settlement Trustees (other than Litigation Settlement Trust Claims), all Litigation Settlement Trust Proceeds, the Litigation-Settlement Expense Fund and all income earned by the Litigation Settlement Trust (pending periodic distributions in accordance with the provisions of the Confirmed Plan) only in cash demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills; *provided, however*, that (i) the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the guidelines of the IRS, whether set forth in IRS rulings, other IRS pronouncements or otherwise, (ii) under no circumstances, shall the Litigation Settlement Trustees segregate the assets of the Litigation Settlement Trust on the basis of classification of the holders of Litigation Settlement Trust Interests, other than in accordance with the provisions of the Confirmed Plan, and (iii) the Litigation Settlement Trustees shall not "vary the investment" of the Litigation Settlement Trust Beneficiaries, within the meaning of Treasury Regulation Section 301.7701-4(c).

3.8    <u>Limitation of Litigation Settlement Trustees's Authority</u>. Notwithstanding anything herein to the contrary, the Litigation Settlement Trustees shall not (i) be authorized to engage in any trade or business, (ii) take such actions inconsistent with the prompt and orderly liquidation of the assets of the Litigation Settlement Trust as are required or contemplated by applicable law, the Confirmed Plan, and this Declaration, (iii) be authorized to engage in any activities inconsistent with the treatment of the Litigation Settlement Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684, or (iv) take any action to cause the Litigation Settlement Trust to be treated as a publicly traded partnership within the meaning of Section 7704 of the Internal Revenue Code, including, without limitation, any action to cause the Litigation Settlement Trust Interests, or any of them, to be traded on an established securities market or to be readily tradeable on a secondary market or the substantial equivalent thereof (if and only to the extent such limitation described in this clause (iv) is required to qualify and maintain the qualification of the Litigation Settlement Trust as a liquidating trust within the meaning of Treasury Regulation 301.7701-4(d)).

3.9    <u>Responsibilities of the Litigation Settlement Trustees</u>.

(a)     The Litigation Settlement Trustees shall have no obligation or duty to manage the assets of the Litigation Settlement Trust or to take any other act except as expressly required hereunder.  The Litigation Settlement Trustees's duties shall be limited to the following:

i.     serve as registered agent for service of process for the Litigation Settlement Trust under Section 3804(b) of the Act;

ii.     serve as the Delaware resident trustee under Section 3807(a) of the Act;

iii.     maintain the registered office of the Litigation Settlement Trust and forward to the Litigation Settlement Trustees within a reasonable time any process served upon it; and

iv.     perform all other requirements so that the Litigation Settlement Trust qualifies as a Delaware statutory trust under the Act.

(b)     The Litigation Settlement Trustees shall not have any duty or obligation with respect to the Litigation Settlement Trust Claims or any other assets of the Litigation Settlement Trust or the Litigation Settlement Trust except as otherwise specifically provided in this Agreement, and the Litigation Settlement Trustees shall be a trustee of the Litigation Settlement Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Act.  No implied duties or obligations shall be read into this Agreement against the Litigation Settlement Trustees.  Notwithstanding the foregoing, the Litigation Settlement Trustees are authorized to take all actions which the Litigation Settlement Trustees deems necessary, convenient, or incidental to effect the purposes of the Litigation Settlement Trust, all as set forth in written instructions from the Litigation Settlement Trustees in accordance with this Declaration.  The right of the Litigation Settlement Trustees to perform any act enumerated herein shall not be construed as a duty.

3.10     Standard of Care; Exculpation.     To the fullest extent permitted by law, neither the Litigation Settlement Trustees persons acting under the direction of the Litigation Settlement Trustees, nor any of their respective members, designees or professionals, nor any of their duly designated agents or representatives, shall be liable, responsible, or accountable in damages or otherwise for any loss, damage, or claim incurred by reason of any act or omission taken or omitted to be taken by the other Trustee or such Trustee's agents or representatives, nor shall the Litigation Settlement Trustees or the Litigation Settlement Trustees be liable, responsible, or accountable in damages or otherwise for any loss, damage, or claim incurred by reason of any act or omission taken or omitted to be taken by either such Trustee in good faith other than acts or omissions resulting from each such Trustee's own bad faith, willful misconduct, gross negligence, actual fraud, or knowing violation of law determined by clear and convincing evidence.  Each of the Litigation Settlement Trustees and each of their respective members may, in connection with the performance of their respective functions, and in each of their sole and absolute discretion, consult with their respective attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons.  Notwithstanding such

authority, neither the Litigation Settlement Trustees nor the Litigation Settlement Trustees nor any of their respective members shall be under any obligation to consult with their respective attorneys, accountants, financial advisors, or agents, and the good faith determination not to do so shall not result in the imposition of liability on either of the Litigation Settlement Trustees or, as applicable, their respective members or designees, unless such determination is based on bad faith, willful misconduct, gross negligence, or knowing violation of law. As provided herein, the Litigation Settlement Trustees shall not be in a fiduciary relationship in any respect, such relationship being expressly disclaimed by this Declaration.

## ARTICLE 4
## LITIGATION SETTLEMENT TRUST BOARD PROVIDED IN THE PLAN

4.1     Litigation Settlement Trust Board.     The Litigation Settlement Trust Board shall, if a Confirmed Plan occurs, be comprised of three Persons. The initial members of the Litigation Settlement Trust Board shall be appointed as described in and in accordance with the Confirmed Plan. Successor members of the Litigation Settlement Trust Board shall be appointed as described in Section 4.7 below. The Litigation Settlement Trust Board shall be in all respect advisory only and shall not have the power or authority to direct or instruct the Trustees, provided, however, Litigation Settlement Trust Board acting by a majority of members, shall have standing to bring actions only in the bankruptcy court to enforce the provisions of the Confirmed Plan, but not otherwise.

4.2     Authority of the Litigation Settlement Trust Board. The            Litigation Settlement Trust Board shall have the post-confirmation authority and responsibility to oversee, review, and guide and advise, but not direct or instruct, the activities and performance of the Litigation Settlement Trustees and shall have the authority to remove the Litigation Settlement Trustees in accordance with Section 2.3 "for cause" only. The Litigation Settlement Trustees shall reasonably consult with and provide information reasonably requested from to the Litigation Settlement Trust Board in accordance with and pursuant to the terms of the Confirmed Plan. At the sole expense of the Litigation Settlement Trust Board, it shall have the authority to select and engage such Persons, and select and engage such professional advisors, including, without limitation, any professional previously retained by the Debtors in accordance with the terms of the Confirmed Plan and this Declaration, as the Litigation Settlement Trust Board deems necessary and desirable to assist the Litigation Settlement Trust Board in fulfilling its obligations under the Confirmed Plan, and the Litigation Settlement Trustees may pay the reasonable fees of such Persons (including on an hourly, contingency, or modified contingency basis) and reimburse such Persons for their reasonable and documented out-of-pocket costs and expenses consistent with the terms of the Confirmed Plan if in the exclusive discretion of the Trustees such payment reimburses work in and for the actual benefit to the Litigation Trust Estate . All of the Litigation Settlement Trust Board's decisions with respect to the pursuit or settlement of the Litigation Settlement Trust Claims shall be taken in good faith and reflect their duties to use their best efforts to pursue only the legitimate issues and concerns of Trust performance.

4.3     Meetings of the Litigation Settlement Trust Board.

(a)     Regular meetings of the Litigation Settlement Trust Board are to be held with such frequency and at such place as the members of the Litigation Settlement Trust Board may determine in their reasonable discretion, but in no event shall such meetings be held less frequently than quarterly. The Litigation Settlement Trustees shall attend and participate in these regularly scheduled meetings. The Litigation Settlement Trust Board shall establish by resolution the time or times and place or places for the holding of such meetings. Notice of any such regular meetings of the Litigation Settlement Trust Board need not be given.

(b)     Special meetings of the Litigation Settlement Trust Board may be held whenever and wherever called by the Litigation Settlement Trustees or any two members of the Litigation Settlement Trust Board. The Litigation Settlement Trustees shall attend and participate in any special meeting called by the Litigation Settlement Trustees and any other special meeting as requested by at least one member of the Litigation Settlement Trust Board.

4.4     <u>Notice and Waiver of Notice for Litigation Settlement Trustees and Litigation Settlement Trust Board</u>.  Notice of the time and place (but not necessarily the purpose or all of the purposes) of any special meeting, or any change in time or place of a regular meeting, will be given to the Litigation Settlement Trustees and the members of the Litigation Settlement Trust Board in person or by telephone, or via mail, electronic mail, or facsimile transmission. Notice to the Litigation Settlement Trustees and the members of the Litigation Settlement Trust Board of any such special meeting or change in a regular meeting will be deemed given sufficiently in advance when (i) if given by electronic mail or facsimile transmission, the same is transmitted at least one business day prior to the convening of the meeting, or (ii) if personally delivered (including by overnight courier) or given by telephone, the same is handed, or the substance thereof is communicated over the telephone to the Litigation Settlement Trustees and the members of the Litigation Settlement Trust Board or to an adult member of his/her office staff or household, at least one business day prior to the convening of the meeting. Each of the Litigation Settlement Trustees and any member of the Litigation Settlement Trust Board may waive notice of any meeting and any adjournment thereof at any time before, during, or after it is held, as provided by law. Except as provided in the next sentence below, the waiver must be in writing, signed by the Litigation Settlement Trustees or the applicable member or members of the Litigation Settlement Trust Board entitled to the notice, and filed with the minutes or records of the Litigation Settlement Trust. The attendance of the Litigation Settlement Trustees or a member of the Litigation Settlement Trust Board at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

4.5     <u>Manner of Acting</u>.

(a)     A majority of the total number of members of the Litigation Settlement Trust Board then in office shall constitute a quorum for the transaction of business at any meeting of the Litigation Settlement Trust Board. The affirmative vote of a majority of the members of the Litigation Settlement Trust Board present and entitled to vote at a meeting at which a quorum is present shall be the act of the Litigation Settlement Trust Board, except as otherwise required by law or as provided in this Declaration.

(b)      Each of the Litigation Settlement Trustees and any or all of the members of the Litigation Settlement Trust Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Each of the Litigation Settlement Trustees and any member of the Litigation Settlement Trust Board participating in a meeting by this means is deemed to be present in person at the meeting. Voting may, if approved by the majority of the members at a meeting, be conducted by electronic mail or individual communications by the Litigation Settlement Trustees and each member of the Litigation Settlement Trust Board.

(c)      Any member of the Litigation Settlement Trust Board who is present and entitled to vote at a meeting of the Litigation Settlement Trust Board when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Litigation Settlement Trust Board, unless: (i) such member of the Litigation Settlement Trust Board objects at the beginning of the meeting (or promptly upon his/her arrival) to holding it or transacting business at the meeting; or (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Litigation Settlement Trust Board before its adjournment. The right of dissent or abstention is not available to any member of the Litigation Settlement Trust Board who votes in favor of the action taken.

(d)      Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each of the Litigation Settlement Trustees and each member of the Litigation Settlement Trust Board shall report to the Litigation Settlement Trust Board any conflict of interest such member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such member might have with respect to or in connection with such matter or issue, other than solely as, or as a representative of, a Litigation Settlement Trust Beneficiary). A Litigation Settlement Trust Board member who has or who may have a conflict of interest shall be deemed to be a "conflicted member" who shall not be entitled to vote or take part in any action with respect to such matter or issue (however such member shall be counted for purposes of determining the existence of a quorum); the vote or action with respect to such matter or issue shall be undertaken only by members of the Litigation Settlement Trust Board who are not "conflicted members."

4.6      Litigation Settlement Trust Board's Action Without a Meeting.      Any action required or permitted to be taken by the Litigation Settlement Trust Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Litigation Settlement Trust Board as evidenced by one or more written consents describing the action taken, signed by all members of the Litigation Settlement Trust Board and recorded in the minutes or other transcript of proceedings of the Litigation Settlement Trust Board.

4.7      Tenure, Removal, and Replacement of the Members of the Litigation Settlement Trust Board. The authority of the members of the Litigation Settlement Trust Board will be effective as of the Effective Date and will remain and continue in full force and effect

until the Litigation Settlement Trust is terminated in accordance with <u>Article 9</u>. The service of the members of the Litigation Settlement Trust Board will be subject to the following:

(a) the members of the Litigation Settlement Trust Board will serve until death or resignation pursuant to subsection (b) below, or removal pursuant to subsection (c) below.

(b) a member of the Litigation Settlement Trust Board may resign at any time by providing a written notice of resignation to the remaining members of the Litigation Settlement Trust Board. Such resignation will be effective upon the date received by the Litigation Settlement Trust Board or such later date specified in the written notice.

(c) members of the Litigation Settlement Trust Board may be removed as follows:

i. the member originally selected by the Debtors' Committee (the "<u>Committee Board Member</u>" or "Committee Representative") may be removed by the affirmative vote of the then-current Eligible Holders holding at least a majority of the Litigation Settlement Trust Interests;

ii. the Trustees or the Committee Representative may petition the Bankruptcy Court for removal, and the Bankruptcy Court may order such removal, of any member of the Litigation Settlement Trust Board for cause shown.

(d) In the event of a vacancy on the Litigation Settlement Trust Board (whether by removal, death, or resignation), new members may be appointed to fill such vacancy.

(e) For purposes of this Declaration, "<u>Eligible Holder</u>" means each Litigation Settlement Trust Beneficiary in the Litigation Settlement Trust.

(f) If there are no Eligible Holders of Litigation Settlement Trust Interests to select as a member of the Litigation Settlement Trust Board, the Litigation Settlement Trust Board shall proceed without a member selected by that class.

(g) Only persons who are nominated in accordance with the procedures set forth in this Litigation Settlement Trust Agreement shall be eligible to serve as a replacement as the case may be, of the Litigation Settlement Trust Board. Nominations of persons for election as a replacement member of the Litigation Settlement Trust Board may be made by any Eligible Holder of Litigation Settlement Trust Interests who (i) is an interest holder of record both as of the record date established by the Litigation Settlement Trustees for such purpose and at the time of giving of notice provided for in this Section 4.7(g), (ii) shall be entitled to vote for the election of a replacement member of the Litigation Settlement Trust Board and (iii) complies with the notice procedures set forth in this Section 4.7(f). Such nominations shall be made pursuant to timely notice in writing to the Litigation Settlement Trustees. To be timely, an interest holder's notice shall be delivered to or mailed and received by the Litigation Settlement Trustees at the address set forth herein not later than the close of business on the calendar day prior to the date established by the Litigation Settlement Trustees

for such purpose. Such interest holder's notice shall set forth (A) as to the person whom the interest holder proposes to nominate for election as a replacement member of the Litigation Settlement Trust Board detailed information relating to the qualifications of such person to serve as a member of the Litigation Settlement Trust Board, including such person's written consent to being named as a nominee and to serving as a member of the Litigation Settlement Trust Board if elected and being bound by the terms and conditions of this Declaration, and the number of Litigation Settlement Trust Interests owned beneficially and/or of record by such individual or any Person affiliated with such individual; and (B) as to the Litigation Settlement Trust Beneficiary giving the notice (i) the name and address, as they appear on the Litigation Settlement Trust Registrar, of such Litigation Settlement Trust Beneficiary and (ii) the number of Litigation Settlement Trust Interests owned beneficially and/or of record by such by such Litigation Settlement Trust Beneficiary. No person shall be eligible to serve as a Board Member of the Litigation Settlement Trust Board unless nominated in accordance with the procedures set forth in this Section 4.7(f).

(h)     Following the receipt of nominations for a replacement a Board Member, of the Litigation Settlement Trust Board in accordance with Section 4.7(f), the Litigation Settlement Trustees shall mail a ballot to all Litigation Settlement Trust Beneficiaries who are entitled to vote in the election of the replacement member of the Litigation Settlement Trust Board. With respect to the election of a replacement member of the Litigation Settlement Trust Board, each Litigation Settlement Trust Beneficiary shall be entitled to one vote for each outstanding Litigation Settlement Trust Interest held by such Litigation Settlement Trust Beneficiary and such Litigation Settlement Trust Beneficiary shall submit such vote in accordance with the procedures established from time to time by the Litigation Settlement Trustees.

(i)     Immediately upon the appointment of any successor member of the Litigation Settlement Trust Board, all rights, powers, duties, authority, and privileges of the predecessor member of the Litigation Settlement Trust Board hereunder will be vested in and undertaken by the successor member of the Litigation Settlement Trust Board without any further act; and the successor member of the Litigation Settlement Trust Board will not be liable personally for any act or omission of the predecessor member of the Litigation Settlement Trust Board.

4.8     Compensation of the Litigation Settlement Trust Board.     Each member of the Litigation Settlement Trust Board shall be paid the amount of $2,500.00 per quarter, plus $250.00 per meeting from proceeds of the Litigation Settlement Trust, when such member is required to attend a Litigation Settlement Trust Board meeting in person, as compensation for his or her services under this Agreement, and shall be reimbursed for all reasonable and documented expenses incurred by such member in connection with the performance of his or her services hereunder. The Litigation Settlement Trust shall have no further obligation for payment or reimbursement under this section to any member of Litigation Settlement Trust Board.

4.9     Standard of Care; Exculpation.     To the fullest extent permitted by law, none of the Litigation Settlement Trust Board, its members, designees or professionals, nor any of their duly designated agents or representatives, shall be liable, responsible, or accountable in damages or otherwise for any loss, damage, or claim incurred by reason of any act or omission

taken or omitted to be taken by any other member, agent or representative of the Litigation Settlement Trust Board, nor shall the Litigation Settlement Trust Board or any of its members be liable, responsible, or accountable in damages or otherwise for any loss, damage, or claim incurred by reason of any act or omission taken or omitted to be taken by the Litigation Settlement Trust Board in good faith using its best efforts, other than acts or omissions resulting from the Litigation Settlement Trust Board's bad faith, willful misconduct, gross negligence, or knowing violation of law. The Litigation Settlement Trust Board and each of its members may, in connection with the performance of their respective functions, and in each of their sole and absolute discretion, consult with its attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in good faith in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, neither the Litigation Settlement Trust Board nor any of its members shall be under any obligation to consult with their respective attorneys, accountants, financial advisors or agents, and its good faith determination not to do so shall not result in the imposition of liability on the Litigation Settlement Trust Board or, as applicable, its members or designees, unless such determination is based on bad faith, willful misconduct, gross negligence, or knowing violation of law.

## ARTICLE 5
## LITIGATION SETTLEMENT TRUST INTERESTS

5.1 <u>Issuance of Litigation Settlement Trust Interests</u>. The issuance of the Litigation Settlement Trust Interests, shall be accomplished as set forth in the Confirmed Plan, including, and in every event shall be based on the filing of a Proof of Claim in these respective Debtor's case (an "Interest").

5.2 <u>Interests Beneficial Only</u>.

(a) The ownership of a Litigation Settlement Trust Interest shall not entitle any Litigation Settlement Trust Beneficiary to any title in or to the assets of the Litigation Settlement Trust as such (which title shall be vested in the Litigation Settlement Trustees) or to any right to call for a partition or division of the assets of the Litigation Settlement Trust or to require an accounting.

(b) The Litigation Settlement Trust Beneficiaries have no rights with respect to, or interest in the Debtors (or any successor thereto).

(c) The Litigation Settlement Trust Beneficiaries have no rights to direct the Litigation Settlement Trustees, the Litigation Settlement Trustees, or the Litigation Settlement Trust Board, except as set forth in Section 5.8 herein.

(d) (i) The Litigation Settlement Trust Claims are solely assets of the Litigation Settlement Trust; (ii) the Litigation Settlement Trust Claims shall be conducted on behalf of the Litigation Settlement Trust Beneficiaries solely in accordance with the instructions of the Litigation Settlement Trustees pursuant to this Declaration; (iii) the Litigation Settlement Trustees shall have the sole and exclusive right (subject to consultation with the Litigation Settlement Trust Board as set forth herein), to take (or not take), actions relating to such

Litigation Settlement Trust Claims as contemplated by this Declaration and may, among other things, dismiss, settle, or cease prosecuting such Litigation Settlement Trust Claims at any time without obtaining any cash or other recovery, or upon obtaining such cash or other recovery as the Litigation Settlement Trustees may determine; (iv) the Litigation Settlement Trustees has the sole and exclusive right (subject to consultation with the Litigation Settlement Trust Board as set forth herein), to take or not take other actions contemplated by this Declaration on behalf of the Litigation Settlement Trust Beneficiaries relating to such Litigation Settlement Trust Claims (including, without limitation, any decision with respect to the incurrence of expenses); and (v) any liability of the Litigation Settlement Trustees, or any member of the Litigation Settlement Trust Board, is limited to the extent set forth in this Declaration.

5.3     Evidence of Beneficial Interests.  The Litigation Settlement Trustees shall have full power, authority and discretion to determine whether ownership of any Litigation Settlement Trust Interest shall be represented by physical certificates, by book entries in lieu of physical certificates, or in any other form or manner.  Regardless of such determination, the record holders of the Litigation Settlement Trust Interests shall be recorded and set forth in the Litigation Settlement Trust Register maintained by the Litigation Settlement Trust Registrar expressly for such purpose pursuant to Section 5.5.  All references in this Declaration to Litigation Settlement Trust Beneficiaries shall be read to mean holders of record as set forth in the official register maintained by the Litigation Settlement Trust Registrar and shall not mean any beneficial owner not recorded on such official register.  Unless expressly provided herein, the Litigation Settlement Trustees may establish a record date, which the Litigation Settlement Trustees deems practicable for determining the holders for a particular purpose.

(b)     In the event certificates are to be issued to evidence ownership of any Litigation Settlement Trust Interests, (i) the form and content of such certificates shall be determined by the Litigation Settlement Trustees subject to approval by the Litigation Settlement Trust Board, and (ii) the Litigation Settlement Trustees shall cause to be placed on such certificates such legends as it deems to be necessary or appropriate under tax laws or regulations, securities laws or regulations or otherwise. Any Litigation Settlement Trust Beneficiary to whom such a certificate is issued or transferred, by virtue of the acceptance thereof, shall assent to and be bound by the terms and conditions of this Declaration and the Confirmed Plan.

5.4     Securities Law Matters.

(a)     To the extent the Litigation Settlement Trust Interests are deemed to be "securities," the issuance of Litigation Settlement Trust Interests under the Confirmed Plan are exempt, pursuant to Section 1145 of the Bankruptcy Code, from registration under the Securities Act of 1933, as amended, and any applicable state and local laws requiring registration of securities.  If the Litigation Settlement Trustees determines, with the advice of counsel, that the Litigation Settlement Trust is required to comply with registration and reporting requirements of the Exchange Act, then the Litigation Settlement Trustees shall take any and all actions deemed necessary or appropriate by the Litigation Settlement Trustees to comply with such registration and reporting requirements, if any, and to file periodic reports with the Securities and Exchange Commission (the "SEC"). Notwithstanding the foregoing procedure, nothing in the Confirmed Plan shall be deemed to preclude the Litigation Settlement Trustees from amending this Declaration to make such changes as deemed necessary or appropriate by the Litigation

Settlement Trustees, with the advice of counsel, to ensure that the Litigation Settlement Trust is not subject to registration or reporting requirements of the Exchange Act, the Trust Indenture Act, or the Investment Company Act.

(b)     Exemptions may be sought from the SEC from all or some of the registration and reporting requirements that may be applicable to the Litigation Settlement Trust pursuant to the Exchange Act, the Trust Indenture Act, or the Investment Company Act, if it is determined that compliance with such requirements would be burdensome on the Litigation Settlement Trust.

(c)     The Litigation Settlement Trust is organized as a liquidating entity in the process of liquidation, and therefore should not be considered, and the Litigation Settlement Trust does not and will not hold itself out as, an "investment company" or any entity "controlled" by an "investment company," as such terms are defined in the Investment Company Act.

   5.5    <u>Transfer and Exchange</u>.

(a)     The Litigation Settlement Trustees shall appoint a Litigation Settlement Trust Registrar, which may be the Litigation Settlement Trustees, for the purpose of registering and transferring the Litigation Settlement Trust Interests as herein provided.  The Litigation Settlement Trust Registrar may be a duly qualified institution or the Litigation Settlement Trustees itself.  For its services hereunder, the Litigation Settlement Trust Registrar, unless it is the Litigation Settlement Trustees, shall be entitled to receive reasonable compensation from the Litigation Settlement Trust as an expense of the Litigation Settlement Trust.

(b)     The Litigation Settlement Trustees shall cause to be kept at the office of the Litigation Settlement Trust Registrar, or at such other place or places as shall be designated by it from time to time, the Litigation Settlement Trust Register.  The Litigation Settlement Trust Register shall contain the names, addresses for payment and notice, and number of Litigation Settlement Trust Interests of each of the Litigation Settlement Trust Beneficiaries and shall be maintained pursuant to such reasonable regulations as the Litigation Settlement Trustees and the Litigation Settlement Trust Registrar may prescribe.

(c)     Pursuant to such reasonable regulations as the Litigation Settlement Trustees and the Litigation Settlement Trust Registrar may prescribe, and subject to the Litigation Settlement Trustees' review and approval of any such proposed transaction in its sole and absolute discretion, the Litigation Settlement Trustees may permit to be transferred, assigned, pledged, hypothecated, or registered on the Litigation Settlement Trust Register any Litigation Settlement Trust Interests issued pursuant to this Declaration. Subject to the review and approval of any such proposed transaction by the Litigation Settlement Trustees and the other limitations set forth herein, any registered Litigation Settlement Trust Beneficiary may transfer, assign, pledge, or hypothecate, in whole or in part, Litigation Settlement Trust Interests upon presentation of a duly executed written instrument of transfer in the form approved by the Litigation Settlement Trustees and the Litigation Settlement Trust Registrar, which instrument must be executed by the transferor and the transferee and must clearly identify the Litigation

Settlement Trust Interests being transferred, assigned, pledged, or hypothecated, and such other documents as they may reasonably require. The transferor shall pay reasonable transfer charges established by the Litigation Settlement Trustees or the Litigation Settlement Trust Registrar for the purpose of reimbursing the Litigation Settlement Trust and the Litigation Settlement Trust Registrar for the expense's incident thereto, including any legal fees, taxes, or other governmental charges.

(d)     No Litigation Settlement Trust Beneficiary may transfer, assign, pledge, hypothecate, or otherwise dispose of any Litigation Settlement Trust Interests unless in compliance with the Securities Act and other state and federal securities laws. No transfer, assignment, pledge, hypothecation, or other disposition of a Litigation Settlement Trust Interest may be effected until (i) the Litigation Settlement Trustees has approved such proposed transaction in its sole and absolute discretion, and (ii) the Litigation Settlement Trustees and the Litigation Settlement Trust Board shall have received such legal or other information that they, in their sole discretion, deem necessary or appropriate to evidence such compliance.

(e)     In the event that the Litigation Settlement Trustees determines that the Litigation Settlement Trust Interests shall be represented by physical certificates, subject to the foregoing conditions of this Section 5.5, whenever any certificate shall be presented for transfer or exchange, the Litigation Settlement Trustees shall cause the Litigation Settlement Trust Registrar to issue, authenticate, and deliver in exchange therefor, the certificate for the Litigation Settlement Trust Interest(s) that the person(s) presenting such certificates shall be entitled to receive.

(f)     In the event that the Litigation Settlement Trustees determines that the Litigation Settlement Trust Interests shall be represented by physical certificates, if a Litigation Settlement Trust Beneficiary claims that his/her certificate (the "Original Certificate") has been mutilated, defaced, lost, stolen, or destroyed, the Litigation Settlement Trustees shall issue, and the Litigation Settlement Trust Registrar shall authenticate, a replacement certificate if such Litigation Settlement Trust Beneficiary submits a notarized affidavit certifying that (i) he/she is the true, lawful, present, and sole owner of the Original Certificate, (ii) he/she has diligently searched all of his/her financial and other records and the Original Certificate is nowhere to be found, (iii) the Original Certificate and any rights or interests therein were not endorsed, and have not been pledged, sold, delivered, transferred, or assigned under any agreement, hypothecated or pledged for any loan, or disposed of in any manner by the Litigation Settlement Trust Beneficiary or on his/her behalf, (iv) no other person or other entity has any right, title, claim, equity, or interest in, to, or respecting the Original Certificate, and (v) in the event of the recovery of the Original Certificate at any time after the issuance of a new certificate in exchange thereof, the Litigation Settlement Trust Beneficiary will cause the recovered Original Certificate to be returned to the Litigation Settlement Trust for cancellation. In addition, such Litigation Settlement Trust Beneficiary will indemnify, and if required by the Litigation Settlement Trustees or the Litigation Settlement Trust Registrar, provide a bond or other security sufficient in the reasonable judgment of the Litigation Settlement Trustees, the Litigation Settlement Trust Registrar or any authenticating agent, from any loss which any of them may suffer if the Original Certificate is replaced, including a loss resulting from the assertion by any entity or person of the right to payment under the Original Certificate. Such Litigation Settlement Trust Beneficiary shall pay reasonable charges established by the Litigation Settlement Trustees

and the Litigation Settlement Trust Registrar for the purpose of reimbursing the Litigation Settlement Trust and the Litigation Settlement Trust Registrar for the expenses incident thereto, including any tax or other governmental charges. The Litigation Settlement Trustees shall incur no liability to anyone by reason of anything done or omitted to be done by it in good faith under the provisions of this Section 5.5(f). All Litigation Settlement Trust Interests shall be held and owned upon the express condition that the provisions of this Section 5.5(f) are exclusive in respect of the replacement or payment of mutilated, defaced, lost, stolen, or destroyed certificates and shall, to the extent permitted by law, preclude any and all other rights or remedies respecting such replacement or the payment in respect thereto. Any duplicate certificate issued pursuant to this Section 5.5(f) shall constitute original interests in the Litigation Settlement Trust. The Litigation Settlement Trustees and the Litigation Settlement Trust Registrar shall not treat the Original Certificate as outstanding.

5.6     Access to the Litigation Settlement Trust Register by the Litigation Settlement Trust Beneficiaries.. Litigation Settlement Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Litigation Settlement Trust Registrar and the Litigation Settlement Trustees, and in accordance with the reasonable regulations prescribed by the Litigation Settlement Trust Registrar and the Litigation Settlement Trustees, to inspect and, at the sole expense of the Litigation Settlement Trust Beneficiary seeking the same, make copies of the Litigation Settlement Trust Register, in each case for a purpose reasonably related to such Litigation Settlement Trust Beneficiary's interest in the Litigation Settlement Trust.

5.7     Absolute Owners.  The Litigation Settlement Trustees may deem and treat the Litigation Settlement Trust Beneficiary of record in the Litigation Settlement Trust Register as the absolute owner of such Litigation Settlement Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever and the Litigation Settlement Trustees shall not be charged with having received notice of any claim or demand to such Litigation Settlement Trust Interests or the interest therein of any other Person.

5.8     Limitation on Suits by Litigation Settlement Trust Beneficiaries.  To the fullest extent permitted by law, no Litigation Settlement Trust Beneficiary shall have any right by virtue of or by availing itself of any provision of this Declaration to institute any action or proceeding (other than a suit by such Litigation Settlement Trust Beneficiary for nonpayment of amounts due and owing hereunder with respect to such Litigation Settlement Trust Beneficiary's Litigation Settlement Trust Interest) at law or in equity or in bankruptcy or otherwise upon or under or with respect to this Declaration, or for the appointment of any trustee, receiver, liquidator, custodian, or other similar official or for any other remedy hereunder, unless such Litigation Settlement Trust Beneficiary previously shall have given to the Litigation Settlement Trustees written notice of default, and unless such Litigation Settlement Trust Beneficiary shall also have made written request upon the Litigation Settlement Trustees to institute such action or proceeding in its own name as Litigation Settlement Trustees hereunder and shall have offered to the Litigation Settlement Trustees such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby and the Litigation Settlement Trustees for 60 days after its receipt of such notice, request and offer of indemnity shall have failed to institute any such action or proceeding; it being understood and intended, and being expressly

covenanted by every Litigation Settlement Trust Beneficiary with every other Litigation Settlement Trust Beneficiary and the Litigation Settlement Trustees, that no one or more Litigation Settlement Trust Beneficiaries shall have any right in any manner whatsoever by virtue or by availing itself or themselves of any provision of this Declaration to effect, disturb or prejudice the rights of any other such Litigation Settlement Trust Beneficiary, or to obtain or seek to obtain priority over or preference to any other such Litigation Settlement Trust Beneficiary or to enforce any right under this Declaration, except in the manner herein provided and for the ratable and common benefit of all Litigation Settlement Trust Beneficiaries. For the protection and enforcement of the provisions of this Section, each and every Litigation Settlement Trust Beneficiary and the Litigation Settlement Trustees shall be entitled to such relief as can be given either at law or in equity.

## ARTICLE 6
## DISTRIBUTIONS

6.1     <u>Use of Proceeds</u>.

(a)     Pursuant to the Confirmed Plan, all Litigation-Settlement Proceeds, any proceeds therefrom, and any other Cash of the Litigation Settlement Trust (other than the Litigation Settlement Trust Expense Fund) received by the Litigation Settlement Trustees shall be applied as follows:

i.     first, to (i) Litigation Trust Expenses (ii) satisfy other liabilities incurred or assumed by the Litigation Settlement Trust (or to which the assets are otherwise subject) in accordance with the Confirmed Plan or this Declaration, (iii) hold such amounts in reserve as the Litigation Settlement Trustees deems reasonably necessary to meet future expenses, contingent liabilities and to maintain the value of the assets of the Litigation Settlement Trust during liquidation (including the Litigation-Settlement Expense Fund) and (iv) pay the Trustees serving as the  Plan Administrators such amounts as the Trustees are authorized to receive from time to time for the purpose of paying, or indemnifying Reorganized Debtors for, any taxes incurred or expected to be incurred by Reorganized Debtors in connection with the Litigation Settlement Trust as a result of the allocation of tax items by the Litigation Settlement Trustees or the allowance or disallowance of Disputed Claims;

ii.     second, to pay any remaining amounts to the Litigation Settlement Trust Beneficiaries (including to the Plan Administrator for deposit into the Disputed Claims Reserve on account of the Claims of any Claimant that would be a Litigation Settlement Trust Beneficiary absent such objection) pro rata based on their Litigation Settlement Trust Interests. If the Plan Administrator holds proceeds of the Litigation Settlement Trust in the Disputed Claims Reserve on account of a Disputed Claim that is finally determined adversely to such Claimant, in whole or in part, the Plan Administrator shall return to the Litigation Settlement Trust the disallowed portion that the Plan Administrator received from the Litigation Settlement Trust on account of such Claim and shall pay any Allowed portion to such Claimant in accordance with the Confirmed Plan; and

(b)     Subject to clauses (i), and (ii) of Section 6.1(a), the Litigation Settlement Trustees shall distribute in accordance with Section 6.1(a) at least annually its net income and all net proceeds from the liquidation of the assets of the Litigation Settlement Trust (except to the extent any such failure to distribute is not inconsistent with the classification of the Litigation Settlement Trust as a liquidating trust under Section 301.7701-4(d) of the Treasury Regulations).

(c)     If, upon termination of the Litigation Settlement Trust, the Litigation Settlement Trust Expense Fund has funds remaining after the payment of all of the Litigation Settlement Trust's expenses, such remaining funds shall be paid to the Litigation Settlement Trust Beneficiaries holding a Litigation Settlement Trust Interests (including the Plan Administrator on behalf of the Disputed Claims Reserve) pro rata based on their Litigation Settlement Trust Interests.

(d)     Notwithstanding the foregoing clauses of this <u>Section 6.1</u>, the Litigation Settlement Trustees may withhold from amounts distributable to any Person any and all amounts, determined in the Litigation Settlement Trustees' reasonable sole discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement to be withheld.  Any amount so withheld from a distribution to a Litigation Settlement Trust Beneficiary (or its designee) shall be treated as having been paid to, and received by, such Litigation Settlement Trust Beneficiary for purposes of the Confirmed Plan and the Plan Documents consisting of all Exhibits, the Confirmation Order, and other schedules attached to either the Plan or the Confirmation Order.

6.2     <u>Manner of Payment of Distributable Proceeds</u>.

(a)     All distributions made by the Litigation Settlement Trustees to holders of Litigation Settlement Trust Interests shall be payable to the holders of Litigation Settlement Trust Interests of record as of the 20th day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such day shall be the following Business Day. The Litigation Settlement Trustees shall promptly notify the Litigation Settlement Trust Registrar in writing of any such dates and the Litigation Settlement Trust Registrar shall promptly notify the Litigation Settlement Trust Beneficiaries of the same.

(b)     If the distribution shall be in Cash, the Litigation Settlement Trustees shall distribute such Cash by wire, check, or such other method as the Litigation Settlement Trustees deems appropriate under the circumstances.

(c)     All distributions under this Declaration to any holder of Litigation Settlement Trust Interests shall be made at the address or to the account (as applicable) of such holder as set forth in the Litigation Settlement Trust Register or at such other address or in such other manner as such holder of Litigation Settlement Trust Interests shall have specified for payment purposes in a written notice to the Litigation Settlement Trustees and the Litigation Settlement Trust Registrar at least 20 days prior to such distribution date. In the event that any distribution to any holder is returned as undeliverable, the Litigation Settlement Trustees shall be entitled to rely on the most current information available from the Plan Administrator, as applicable, to determine the current address or account information of such holder, but no

distribution to such holder shall be made unless and until the Litigation Settlement Trustees has determined the then current address or account (as applicable) of such holder, at which time such distribution shall be made to such holder without interest; *provided, however*, that such undeliverable or unclaimed distributions shall be deemed unclaimed property at the expiration of one year from the date of distribution. The Litigation Settlement Trustees shall reallocate the undeliverable and unclaimed distributions for the benefit of all other Litigation Settlement Trust Beneficiaries.

        (d)      Notwithstanding anything herein to the contrary, the Litigation Settlement Trustees shall not be required to make distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under the Confirmed Plan or this Declaration would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or more being rounded up.

        (e)      The Litigation Trustees shall have the exclusive power and authority to deem any Litigation Settlement Trust Claim, or all Litigation Settlement Trust Claims, "Paid in Full" in compliance with this Declaration and the Confirmed Plan and recognize the Resulting Release of the Third-Party Funding Contributor(s). The Confirmed Plan shall include a provision for the reservation of jurisdiction to enter orders deeming the Payment in Full as determined by the Litigation Settlement Trust beneficiaries, upon notice and hearing.

## ARTICLE 7
## INDEMNIFICATION

7.1      <u>Indemnification of Litigation Settlement Trustees</u>

        (a)      To the fullest extent permitted by law, the Litigation Settlement Trust, to the extent of its assets legally available for that purpose, shall indemnify and hold harmless each present and former Litigation Settlement Trustees and each of their respective directors, members, shareholders, partners, officers, agents, employees, attorneys, and other professionals (collectively, the "<u>Indemnified Persons</u>") from and against any and all losses, costs, damages, reasonable and documented out-of-pocket expenses (including, without limitation, reasonable fees and expenses of attorneys and other advisors and any court costs incurred by any Indemnified Person) or liability arising out of or relating to the Litigation Settlement Trust, the Litigation Settlement Trust Interests, the assets of the Litigation Settlement Trust, the Litigation Settlement Trust Claims or any acts or omissions of the Litigation Settlement Trust or any Indemnified Person in its capacity as a Litigation Settlement Trustees or agent, employee, or representative thereof; *provided, however,* that such act or omission was reasonably believed by the applicable Indemnified Person to be within the scope of authority granted to such Person under this Declaration and did not constitute bad faith, gross negligence, fraud, willful misconduct, or knowing violation of law established by clear and convincing evidence.

        (b)      To the extent reasonable, the Litigation Settlement Trust may pay in advance or reimburse reasonable and documented out-of-pocket expenses (including advancing reasonable costs of defense) incurred by the Indemnified Person who is or is threatened to be named or made a defendant or a respondent in a proceeding concerning the business and affairs of the Litigation Settlement Trust. To the extent that any such expenses are

paid or reimbursed in advance of the final disposition of any such action, suit or proceeding, the Indemnified Person shall provide the Litigation Settlement Trust with an undertaking by or on behalf of such Indemnified Person to repay such amount if it shall ultimately be determined that such Person is not entitled to be indemnified by the Litigation Settlement Trust as authorized in this Article 7. Such expenses (including attorneys' fees) may be so paid upon such terms and conditions, if any, as the Litigation Settlement Trustees deems appropriate.

(c)     Any Indemnified Person may waive the benefits of indemnification under this Article 7, but only by an instrument in writing executed by such Indemnified Person.

(d)     The Litigation Settlement Trust shall have power to purchase and maintain insurance on behalf of any potentially Indemnified Person against any liability asserted against such Person and incurred by such Person in connection with such Person's obligations under this Declaration, whether or not the Litigation Settlement Trust would have the power to indemnify such Person against such liability under the provisions of this Article 7.

(e)     The rights to indemnification under this Article 7 are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including without limitation common law rights to indemnification or contribution. Nothing in this Article 7 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under this Declaration or any other agreement or instrument to which that Person is a party.

## ARTICLE 8
## REPORTS

8.1     <u>Financial, Tax, and Other Information.</u>

(a)     At such times as may be required by the Exchange Act, if applicable, or otherwise as soon as practicable

i.     after the end of each calendar year, and as soon as practicable upon termination of the Litigation Settlement Trust, the Litigation Settlement Trustees shall cause to be prepared, and shall submit to each Litigation Settlement Trust Beneficiary a written report including: (a) audited financial statements of the Litigation Settlement Trust at the end of the calendar year or period and the receipts and disbursements of the Litigation Settlement Trustees for the period; (b) a description of any action taken by the Litigation Settlement Trustees in the performance of the Litigation Settlement Trustees's duties which materially affects the Litigation Settlement Trust and of which notice has not previously been given to the Litigation Settlement Trust Beneficiaries; and (c) a description of any material judicial or arbitral decision with respect to, or any agreement to settle, the Litigation Settlement Trust Claims included in the assets of the Litigation Settlement Trust.

ii.     after the end of each calendar quarter, the Litigation Settlement Trustees shall cause to be prepared, and shall submit to each Litigation Settlement Trust Beneficiary a written report including: (a) unaudited financial statements of the Litigation Settlement Trust at the end of the calendar quarter, and the receipts and disbursements of

the Litigation Settlement Trustees for the quarter; and (b) a description of any action taken by the Litigation Settlement Trustees in the performance of the Litigation Settlement Trustees' duties which materially affects the Litigation Settlement Trust and of which notice has not previously been given to the Litigation Settlement Trust Beneficiaries.

iii.    promptly following the occurrence of a material event or change which effects either the Litigation Settlement Trust or the rights of the Litigation Settlement Trust Beneficiaries hereunder, the Litigation Settlement Trustees shall cause to be prepared and shall submit additional reports to the Litigation Settlement Trust Beneficiaries relating to such occurrences.

The information to be provided pursuant to this Section 8.1(a) shall satisfy any rights under the Delaware Statutory Trust Act, 12 Del. C. § 3801 et seq., or otherwise of the Litigation Settlement Trust Beneficiaries to access to information regarding the business and financial condition of the Litigation Settlement Trust.

(b)    As soon as practicable after the end of each calendar year, and as soon as practicable upon the termination of the Litigation Settlement Trust, the Litigation Settlement Trustees shall cause to be prepared and shall submit to current and former Trust Tax Owners, as applicable, a statement setting forth, for federal income tax purposes, their allocable portions of items of income, gain, loss, deduction and credit of the Litigation Settlement Trust for such calendar year (as determined pursuant to Section 1.4(d) hereof), and the fair market value of the assets deemed to have been transferred to such current or former Trust Tax Owner during such calendar year (as determined pursuant to Section 1.4(d) hereof).

(c)    The Litigation Settlement Trustees shall submit to Reorganized Debtors, as soon as practicable after the Effective Date (but no later than January 20th of the year following the Effective Date), a statement setting forth, for federal income tax purposes, the total fair market value (as of the Effective Date) of each asset transferred to the Litigation Settlement Trust (including, without limitation, the Litigation Settlement Trust Claims), and the portion of such fair market value allocated to each Trust Tax Owner. The Litigation Settlement Trustees shall submit to Reorganized Debtors, as soon as practicable after the end of each calendar year, a statement setting forth the fair market value (as of the applicable deemed transfer dates) of the portion of the Litigation Settlement Trust's assets that is treated for federal income tax purposes as having been transferred to Trust Tax Owners or other Persons by Reorganized Debtors as a result of the allowance or disallowance of Disputed Claims during such year and the portion of such fair market value allocated to each Trust Tax Owner.

(d)    The Litigation Settlement Trustees shall be responsible for filing all federal, state, and local tax returns for the Litigation Settlement Trust and paying any taxes imposed on the Litigation Settlement Trust. The Litigation Settlement Trustees shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Litigation Settlement Trustees of a private letter ruling if the Litigation Settlement Trustees so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by

the Litigation Settlement Trustees), the Litigation Settlement Trustees shall file tax returns (including all federal returns, and to the extent permitted under state and local law, state and local returns) for the Litigation Settlement Trust as a grantor trust of which the Trust Tax Owners are the deemed owners pursuant to Treasury Regulation Section 1.671-4(a) and any comparable provisions under applicable state and local law.

      8.2    <u>Other Required Reports</u>.    The Litigation Settlement Trustees shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Litigation Settlement Trust that are required by any governmental unit or regulatory agency.

      8.3    <u>Certain Non-Public Information</u>.    The Litigation Settlement Trustees may deliver certain non-public information to one or more Litigation Settlement Trust Beneficiaries and such delivery shall in no way entitle any other Litigation Settlement Trust Beneficiary to receive such information.  Notwithstanding anything in this Declaration to the contrary, the Litigation Settlement Trustees may, in its sole discretion, withhold information from any Litigation Settlement Trust Beneficiary if the Litigation Settlement Trustees believes in good faith that the delivery of such information to such Litigation Settlement Trust Beneficiary (i) is or would be prohibited by any agreement with a Third-Party or (ii) is not in the best interest of the Litigation Settlement Trust or in the purpose of maximizing the value of the assets of the Litigation Settlement Trust or could damage or prejudice the Litigation Settlement Trust, the assets of the Litigation Settlement Trust (including the Litigation Settlement Trust Claims and Privileges) or the business, operations, or purpose of the Litigation Settlement Trust.

      8.4    <u>Electronic Reporting</u>.  Notwithstanding anything herein to the contrary, the Litigation Settlement Trustees may post any report, notice, or other information required to be provided to the Litigation Settlement Trust Beneficiaries on a web site maintained by the Litigation Settlement Trustees in lieu of actual delivery of such report, notice, or other information to the Litigation Settlement Trust Beneficiaries, subject to providing notice that such a procedure is being (or will be) implemented.

**ARTICLE 9**
**TERM; TERMINATION OF THE LITIGATION SETTLEMENT TRUST**

      9.1    <u>Term; Termination of the Litigation Settlement Trust</u>.

          (a)    The Litigation Settlement Trust shall terminate on:

              (i)    Conversion or dismissal of the Debtors' Chapter 11 case;

              (ii)    On the failure to confirm a plan within 18 months of the date of this Declaration;

              (iii)    Upon Plan confirmation, the earlier of:  (1) 30 days after the distribution of all of the assets of the Litigation Settlement Trust in accordance with the terms of this Declaration and the Confirmed Plan to reach Payment in Full; or (2) the seventh anniversary of the Effective Date; *provided, however,* that, on or prior to a date less than six

months (but not less than three months) prior to such termination after Plan confirmation, the Bankruptcy Court, upon motion by a party in interest, may extend the term of this Litigation Settlement Trust for a finite period if, based on the facts and circumstances, the Bankruptcy Court finds that such extension is necessary to the liquidating purpose of the Litigation Settlement Trust to accomplish Payment in Full of Claims. The Bankruptcy Court may approve multiple extensions of the term of the Litigation Settlement Trust; provided that (x) any such extension is so approved on or prior to a date less than six months (but not less than three months) prior to termination of the immediately preceding extended term and (y) the Litigation Settlement Trustees receives an opinion of counsel or a favorable ruling from the IRS that any further extension would not adversely affect the status of the Litigation Settlement Trust as a grantor trust for federal income tax purposes.

(b)     The Litigation Settlement Trustees and any Committee shall endeavor not to unduly prolong the duration of the Litigation Settlement Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all of the Litigation Settlement Trust Claims and to effect the distribution of the assets of the Litigation Settlement Trust to the holders of the Litigation Settlement Trust Interests in accordance with the terms of the Confirmed Plan as soon as practicable.

9.2     <u>Continuance of Trust for Winding Up</u>.     After the termination of the Litigation Settlement Trust and for the purpose of liquidating and winding up the affairs of the Litigation Settlement Trust, the Litigation Settlement Trustees shall continue to act as such until its duties have been fully performed. Prior to the final distribution of all of the remaining assets of the Litigation Settlement Trust and upon approval of the Litigation Settlement Trust Board, the Litigation Settlement Trustees shall be entitled to reserve from such assets any and all amounts required to provide for its own costs and expenses, in accordance with Section 6.2 herein, until such time as the winding up of the Litigation Settlement Trust is completed. Upon termination of the Litigation Settlement Trust, the Litigation Settlement Trustees shall retain for a period of two years the books, records, Litigation Settlement Trust Beneficiary lists, the Litigation Settlement Trust Register, and certificates and other documents and files that have been delivered to or created by the Litigation Settlement Trustees. At the Litigation Settlement Trustees' discretion, all of such records and documents may, but need not, be destroyed at any time after two years from the completion and winding up of the affairs of the Litigation Settlement Trust. Except as otherwise specifically provided herein, upon the termination of the Litigation Settlement Trust, the Litigation Settlement Trustees shall have no further duties or obligations hereunder.

## ARTICLE 10
## AMENDMENT AND WAIVER

10.1    <u>Amendment and Waiver</u>.

(a)    The Litigation Settlement Trustees, with the consent of the Third-Party Funding Contributors, up to and including Confirmation of a Plan, may amend, supplement or waive any provision of, this Declaration, without notice to or the consent of any Litigation Settlement Trust Beneficiary or the approval of the Bankruptcy Court: (i) to cure any ambiguity, omission, defect, or inconsistency in this Declaration, provided that such amendments, supplements, or waivers shall not materially adversely affect the distributions to be made under this Declaration to any of the Litigation Settlement Trust Beneficiaries, or materially adversely affect the U.S. federal income tax status of the Litigation Settlement Trust as a "liquidating trust" that is a grantor trust; (ii) to comply with any requirements in connection with the U.S. Federal income tax status of the Litigation Settlement Trust as a "liquidating trust" that is a grantor trust; (iii) to comply with any requirements in connection with maintaining any exemptions from or exceptions to the registration or reporting requirements of the Exchange Act, the Trust Indenture Act, or the Investment Company Act as deemed necessary or appropriate from time to time by the Litigation Settlement Trustees, including, without limitation, subject to the Asbestos Trust's rights under the Put Option (which rights may not be infringed or otherwise affected by the Debtors or the Litigation Settlement Trustees), to cause the Litigation Settlement Trust Interests (other than those interests subject to the Put Option) to be non-transferable; (iv) to make the Litigation Settlement Trust a reporting entity and, in such event, to comply with any requirements in connection with satisfying the registration or reporting requirements of the Exchange Act, the Trust Indenture Act, or the Investment Company Act as deemed necessary or appropriate from time to time by the Litigation Settlement Trustees; (v) to cause the Litigation Settlement Trust Interests to be non-transferable to the extent the Litigation Settlement Trustees determines such restraint on transferability to be in the best interests of the Litigation Settlement Trust; and (vi) to evidence and provide for the acceptance of appointment hereunder by a successor trustee in accordance with the terms of this Declaration and the Confirmed Plan.

(b)    Except as provided in the foregoing subsection after Confirmation of a Confirmed Plan (a), any substantive provision of this Declaration may be amended or waived by the Litigation Settlement Trustees, subject to the prior approval of the Litigation Settlement Trust Board which shall not be unreasonably withheld, with the approval of the Bankruptcy Court upon notice and an opportunity for a hearing; *provided, however*, that no change may be made to this Declaration that would materially adversely affect the distributions to be made under this Declaration to any of the Litigation Settlement Trust Beneficiaries, or materially adversely affect the U.S. Federal income tax status of the Litigation Settlement Trust as a "liquidating trust" that is a grantor trust, nor increase the obligations of any Third-Party Funding Contributor to increase the obligations to accomplish Payment in Full and the Resulting Releases.  Notwithstanding this <u>Section 10.1</u>, any amendments to this Declaration shall not be inconsistent with the purpose and intention of the Litigation Settlement Trust to liquidate in an expeditious but orderly manner the Litigation Settlement Trust Claims in accordance with Treasury Regulation Section 301.7701-4(d).

(c)      For the purpose of this Declaration and any subsequent Confirmed Plan, the term "Payment in Full" means the amount of any Litigation Claim (i) settled by the Claimant and Interest Holder with the Trustees and the Third-Party Funding Contributors; (ii). resolved as to amount pursuant to the channeling injunction or other provisions of the Confirmed Plan for Claims resolution; or (iii). resolved by a trial in federal district court that preserves the Claimants right to a jury if timely and properly demanded; with such amount to be paid, including payments over time bearing interest at the federal judgment rate, to the settled Litigation Claim Claimant.  For the purpose of this Declaration and any subsequent Confirmed Plan, the term "Resulting Release" in regards a Third-Party Funding Contributor means the full and complete release from any and all possible liability on a Claim that is Paid in Full, which release shall be as a matter of law, and as a matter of the binding effects of the terms of the Confirmation Order and Confirmed Plan which shall provide for this Resulting Release.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1      <u>Intention of Parties to Establish the Litigation Settlement Trust</u>. This Declaration is intended to create a liquidating trust that is a grantor trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Declaration may be amended in accordance with <u>Section 10.1</u> to comply with such federal income tax laws, which amendments may apply retroactively.

11.2      <u>Reimbursement of Trust Litigation-Settlement Costs</u>. If the Litigation Settlement Trustees, the Litigation Settlement Trust Board, or the Litigation Settlement Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Declaration or the enforcement thereof, the Litigation Settlement Trustees, the Litigation Settlement Trust Board, or the Litigation Settlement Trust, as the case may be, shall be entitled to collect any and all costs, reasonable and documented out-of-pocket expenses, and fees, including attorneys' fees, from the non-prevailing party incurred by the Litigation Settlement Trustees, the Litigation Settlement Trust Board, or the Litigation Settlement Trust, as the case may be, in connection with such dispute or enforcement action.

11.3      <u>Laws as to Construction</u>. This Declaration shall be governed by and construed in accordance with the laws of the State of Delaware and U.S. bankruptcy laws, as applicable, without regard to whether any conflicts of law would require the application of the law of another jurisdiction.

11.4      <u>Jurisdiction.</u>. Without limiting any Person or entity's right to appeal any order of the Bankruptcy Court or to seek withdrawal of the reference with regard to any matter, and subject to the rights of the Litigation Settlement Trustees pursuant to 2.3(b) of this Declaration, (i) prior to the closure of the Bankruptcy Cases (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Declaration and to decide any claims or disputes which may arise or result from, or be connected with, this Declaration, any breach or default hereunder, or the transactions contemplated hereby, and (b) any and all actions related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and (ii) following the closure of the Bankruptcy Cases, (x) the Delaware Courts of Chancery shall retain exclusive

jurisdiction to enforce the terms of this Declaration and to decide any claims or disputes which may arise or result from, or be connected with, this Declaration, any breach or default hereunder, or the transactions contemplated hereby, and (y) any and all actions related to the foregoing shall be filed and maintained only in a Delaware Court of Chancery, and the parties, including the Litigation Settlement Trust Beneficiaries, and Holders of Claims and Equity Interests, hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and the Delaware Courts of Chancery, as applicable.

11.5 <u>Severability</u>. If any provision of this Declaration or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Declaration, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Declaration shall be valid and enforced to the fullest extent permitted by law.

11.6 <u>Notices</u>. All notices, requests, or other communications to the parties hereto shall be in writing and shall be sufficiently given only if (i) delivered in person; (ii) sent by electronic mail or facsimile communication (as evidenced by a confirmed fax transmission report); (iii) sent by registered or certified mail, return receipt requested; or (iv) sent by commercial delivery service or courier. Until a change of address is communicated, as provided below, all notices, requests, and other communications shall be sent to the parties at the following addresses or facsimile numbers:

**If to the Initial Trustee Robert Dew**:

Kyung S. Lee
Parkins Lee & Rubio LLP
Pennzoil Place-13th Floor
700 Milam
Houston, Texas 77002
klee@parkinslee.com


**If to the Litigation Settlement Trustees**:

To be named by Bankruptcy Court Order
With a copy to: To be named by LST Trustees


**If to Debtors and Reorganized Debtors**:

To: Marc Schwartz
Chief Restructuring Officer
of the Debtors
Schwartz & Associates
712 Main Street, Ste 1830
Houston, Texas 77002

With a copy to:

Kyung S. Lee
Parkins Lee & Rubio LLP
Pennzoil Place-13th Floor
700 Milam
Houston, Texas 77002
klee@parkinslee.com

**If to** Free Speech Systems, LLC
As a Third-Party Funding Contributor

To: Ray Battaglia
rbattaglialaw@outlook.com

**If to** Alex Jones
As a Third-Party Funding Contributor

To: Shelby A. Jordan
sjordan@jkhwclaw.com

All notices shall be effective and shall be deemed delivered (i) if by personal delivery, delivery service or courier, on the date of delivery; (ii) if by electronic mail or facsimile communication, on the date of receipt or confirmed transmission of the communication; and (iii) if by mail, on the date of receipt. Any party from time to time may change its address, facsimile number, or other information for the purpose of notices to that party by giving notice specifying such change to the other party hereto.

    11.7   <u>Fiscal Year</u>.   The fiscal year of the Litigation Settlement Trust will begin on the first day of January and end on the last day of December of each year.

    11.8   <u>Definitions</u>.   Each of the terms set forth below has the meaning set forth in the provision set forth opposite such term in the following table:

| Term | Provision |
| --- | --- |
| Act | Section 1.5(a) |
| Bankruptcy Court | Recitals |
| Chapter 11 Cases | Preamble |
| Covered Person | Section 11.11 |
| Declaration | Preamble |
| Litigation Settlement Trustees | Preamble |
| Eligible Holder | Section 4.7(e) |
| Information | Sections 2.2(a) and 11.11 |
| Indemnified Persons | Section 7.1(a) |
| Interim Trustee | Section 2.3(g) |

| Term | Provision |
|------|-----------|
| Initial Trustee | Preamble |
| Original Certificate | Section 5.5(f) |
| Payment in Full | Section 10.1(c) |
| Plan and Plan Documents | Section 6.1(d) |
| Litigation Settlement Trust | Preamble |
| Litigation-Settlement Proceeds | Section 2.1(c) |
| Litigation Settlement Trustees | Preamble |
| Confirmed Plan | Preamble |
| Reorganized Debtors | Preamble |
| Resulting Release | Section 10.1(c) |
| Treasury Regulations | Section 1.4(a) |
| Third-Party Funding Contributor(s) | Preamble, Section 2.2 |
| Trust Tax Owners | Section 1.4(a) |
| Trustee(s) | Section 2.3(a) |

11.9    Headings. The section headings contained in this Declaration are solely for convenience of reference and shall not affect the meaning or interpretation of this Declaration or of any term or provision hereof.

11.10    Counterparts. This Declaration may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

11.11    Confidentiality. The Litigation Settlement Trustees, the Litigation Settlement Trustees and each successor trustee and each member of the Litigation Settlement Trust Board and each successor member of the Litigation Settlement Trust Board (each a "Covered Person") including any member or counsel to either as well as any member of any Committee Representative having access to information defined below shall, during the period that they serve in such capacity under this Declaration and following either the termination of this Declaration or such individual's removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the assets of the Litigation Settlement Trust relates or of which it has become aware in its capacity (the "Information"), except to the extent disclosure is first obtained by a federal court and is shown to be required by applicable law, order, regulation, or legal process. In the event that any Covered Person is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand, or similar legal process) to disclose any Information, such Covered Person shall notify the Litigation Settlement Trust Board reasonably promptly (unless prohibited by law) so that the Litigation Settlement Trust Board may seek an appropriate protective order or other appropriate remedy or, in its discretion, waive compliance with the terms of this Section (and if the Litigation Settlement Trust Board seeks such an order, the relevant Covered Person will provide cooperation as the Litigation Settlement Trust Board shall reasonably request). In the event that no such protective order or other remedy is obtained, or that the Litigation Settlement Trust Board waives compliance with the terms of this Section and that any Covered Person is nonetheless legally compelled to disclose the Information, the Covered Person will furnish only

that portion of the Information, which the Covered Person, advised by counsel, is legally required and will give the Litigation Settlement Trust Board written notice (unless prohibited by law) of the Information to be disclosed as far in advance as practicable and exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information.

11.12  Entire Agreement.    This Declaration (including the Recitals) together with the later Confirmed Plan, and the Confirmation Order shall constitute, the entire agreement by and among the parties hereto and there are no representations, warranties, covenants or obligations except as set forth herein or therein. This Declaration, the Confirmed Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, in the Confirmed Plan or in the Confirmation Order, nothing in this Declaration is intended or shall be construed to confer upon or to give any person other than the named parties thereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Declaration.

11.13  Modification of this Declaration or the Litigation Settlement Trust Terms: The Trustees may make changes and modifications of this Declaration or the Litigation Settlement Trust Terms to clarify its terms, or as the Trustees deem necessary to remedy any conflict in terms or to further the accomplishment of the purpose of this Trust.  All such modifications shall require no approval of the bankruptcy court provided that within 20 days of the modification the Trustees cause a "Notice of Modification" is filed with the clerk of the Bankruptcy Court in the Chapter 11 Cases.

11.14  Jurisdiction and Venue:  All actions, disputes, performance, declarations or determinations of or claims of breach of performance, by any Party or by any Third-Party, including any action seeking to determine or establish the rights or obligations of any Party or any Litigation Settlement Trustee shall be governed by the laws of the United States, including Title 11 § 101, et. seq. and the applicable laws of the State of Texas, with exclusive and continuing jurisdiction and venue in the United States Bankruptcy Court or the United States District Court, as the case may be, for the Southern District of Texas, Victoria Division, (collectively the Federal Court).

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Declaration or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Effective Date:  April *14* 2022.

**INITIAL      LITIGATION      SETTLEMENT TRUSTEE**

By: _____
Name:   Robert Dew
Title:   Initial Trustee, and as sole officer and
         Director of each Debtor entity

**THIRD-PARTY FUNDING CONTRIBUTOR ALEX JONES**

By: _____
Name:

**THIRD-PARTY FUNDING CONTRIBUTOR FREE SPEECH SYSTEMS, LLC**

By: _____
Name:
Title:

**SIGNATURES LEFT BLANK PENDNG APPOINTMENT BY BANKRUPTCY COURT ORDER**

_____
Name:
Title: Litigation Settlement Trust Trustee and
Debtors' Independent Board Member

_____
Name:
Title: Litigation Settlement Trust Trustee and
Debtors' Independent Board Member

## EXHIBIT A

### GLOSSARY OF CERTAIN DEFINED TERMS

Applicable definitions contained in the Bankruptcy Code are incorporated into this Declaration except as modified in this Glossary of Defined Terms. The following definitions shall have the meanings as specified herein, and shall be designated, when such special definitions are applicable, with capital letters, and these definitions shall be enforceable as terms of the Declaration in conjunction with the respective matters to which they reference or define.

*"Allowed"* or *"Allowed Claim"* means a Litigation Settlement Trust Claims or Claim that is allowed: (i) in any stipulation executed by the Debtor (or the Litigation Settlement Trustees after the Confirmation Order becomes a Final Order), the Third Party Funding Contributors and the holder of the Litigation Settlement Trust Claim; (ii) in a Final Order; or (iii) pursuant to the terms of the Plan.

*"Bankruptcy Cases"* means collectively or individually the cases filed by the Debtors pursuant to 11 U.S.C. §1101, *et seq.*

*"Bankruptcy Code"* means title 11 of the United States Code.

*"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan(s) pursuant to section 1191 of the Bankruptcy Code.

*"Confirmed Plan"* means a Plan for which the Bankruptcy Court has entered a Confirmation Order which is a Final Order.

*"Debtor"* or *"Debtors"* shall refer individually and collectively to InfoW, LLC (XXXX), InfoHealth, LLC (XXXX), and Prison planet TV, LLC (XXXX), including any and all affiliated, predecessor, successors, assigns, agents, employees, partners, attorneys, representatives, administrators, investigators, consultants and other persons, acting or purporting to act on behalf of any of the above entities.

*"Definitive Documents"* means, with respect to the Plan(s), all material documents (including any related Bankruptcy Court orders, agreements, schedules, pleadings, motions, filings, or exhibits) that are contemplated by this Agreement and that are otherwise necessary or desirable to implement the Plan(s) and this Agreement, including (as applicable): (i) the Plan(s); (ii) Disclosure Statement(s) if ordered by the Bankruptcy Court; (iii) any other operative documents and/or agreements relating to the Plan(s) (including any documents necessary to implement the distributions contemplated thereunder); (iv) the Confirmation Order.

*"Effective Date"* means April 8, 2022.

*"Final Order"* means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a stay, new trial, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari or other

proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a stay, new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

*"Litigation"* means pending civil lawsuits, including but not limited to the following:

Marcel Fontaine vs. Alex E., Jones, Infowars, LLC, Free Speech Systems, LLC and Kit Daniels, Cause No. D-1-GN-18-001605 in the 459th Judicial District Court of Travis County, Texas;

Neil Heslin vs. Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC, Cause No. D-1-GN-18-001835 in the 261st Judicial District Court of Travis County, Texas;

Veronique de la Rosa and Leonard Pozner vs. Alex E. Jones, Inforwars, LLC, and Free Speech Systems, LLC, Cause No. D-1-GN-18-001842 in the 345th Judicial District Court of Travis County, Texas;

Scarlett Lewis vs. Alex E. Jones, Inforwars, LLC, Free Speech Systems, LLC and Owen Shroyer, Cause No. D-1-GN-18-006623 in the 98th Judicial District Court of Travis County, Texas;

Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc., Cause No. X06-UWY-CV-18-6046436-S in the Superior Court of Connecticut, Waterbury Division;

William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc., Cause No. X06-UWY-CV-18-6046437-S in the Superios Court of Connecticut, Waterbury Division;

William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc., Cause No. X06-UWY-CV-18-6046438-S in the Superios Court of Connecticut, Waterbury Division; and

Brennan M. Gilmore v. Alexander ("Alex") E. Jones, Infowars, LLC, Free Speech Systems, LLC, Lee Stanahan, Lee Ann McAdoo a/k/a Lee Ann Fleissner, Scott Creighton, James ("Jim") Hoft, Allen B. West, Derrick Wilburn, Michelle Hickford, and Words-n-Ideas, LLC, Cause No. 3:18-cv-00017-GEC in the United States Districrt Court for the Western District of Virginia, Charlottesville Division;

together with any other pending lawsuits against any of the Parties on the Effective Date of this Agreement (collectively, the "Litigation Claims").

***"Initial Trust Funding"*** means $725,000 in cash funded to the Litigation Settlement Trust by AJ from his Exempt property upon the Effective Date of this Agreement to pay the costs of administration of the Debtors' Bankruptcy Cases and the Litigation Settlement Trust, including retention of the Litigation Settlement Trustees and retention by the Trustees of all professionals deemed necessary to accomplish the purpose of this Trust and the commitment of the Third Party Funding Contributors to maintain for not less than 120 days after the Petition Date a balance of $200,000 after payment of all initial administrative expense retainers to newly appointed Litigation Settlement Trustees and as the only members of the Debtors acting as independent Members, together with the Debtors' professionals from time to time, to be paid directly, or thereafter maintained in the Litigation Settlement Trust for continued payment of the costs of Administration of the Litigation Settlement Trust and the Debtors' Bankruptcy Cases.

***"Litigation Settlement Trust"*** means the Litigation Settlement Trust dated April 14, 2022 for the benefit of the Debtors' as provided therein, including that Third-Party Funding Contributor[s] intended to facilitate and underwrite the "Payment in Full" Plan Class of Allowed Litigation Settlement Trust Claims and the Litigation Settlement Trust Beneficiaries Litigation Settlement Trust Claims, as may exist from time to time and as may be funded by the Third Party Funding Contributors for this purpose from time to time to achieve Payment in Full.(s).

***"Litigation Settlement Trustees"* or *"Trustees"*** means two individuals approved by the Bankruptcy Court to serve as Trustees of Litigation Settlement Trust who will replace the interim trustee serving in that capacity prior to the filing of the Bankruptcy Cases.

***"Litigation Settlement Trust Claims Bar Date"*** means the bar date for filing Claims or Litigation Claims in the Bankruptcy Cases established by Order of the Bankruptcy Court;

***"Litigation Settlement Trust Claims"*** means the Claims of any party arising out of or related to the Litigation Claims and evidenced by a proof of claim timely filed in the Debtors' Chapter 11 case(s).

"***Litigation Settlement Trust Claims Estimation***" means the estimation of the Litigation Settlement Trust Claims by the Bankruptcy Court in these Bankruptcy Cases pursuant to Sections 502(c) and 105 of the Bankruptcy Code and Rule 3018 of the Bankruptcy Rules of Procedure.

***"Litigation Settlement Trust Beneficiary"*** Means the holder of a Litigation Settlement Trust Claim.

*"Litigation Trust Expenses"* means all costs, expenses and professional fees incurred by the Litigation Settlement Trust and the Litigation Settlement Trustees during the Support Period, specifically including, but not limited to the allowed fees and expenses of the Debtors and their professionals incurred in connection with the prosecution of the Bankruptcy Cases and those incurred after the Plan Effective Date, approved by the Litigation Settlement Trustees.

*"Petition Date"* means the date upon which the earliest of the Debtors' Bankruptcy Cases was commenced as a voluntary bankruptcy case.

*"Plan(s)"* or *"Plan(s) of Reorganization"* means the chapter 11 plan(s) to be jointly proposed by the Debtors supported by the Third-Party Funding Contributors in each of the Bankruptcy Cases, that contains the same terms set forth in, and is otherwise materially consistent with this Agreement and that is an Approved Plan Document, as the same may be amended, supplemented, or otherwise modified as provided herein.

*"Plan Effective Date"* means the date on which the Plan, as confirmed, becomes effective, as defined therein.

*"Reorganized Debtor(s)"* means one or more of the Debtors after the Plan Effective Date, surviving after confirmation of the Plan.

*"Support Period"* means, with respect to any Party, the period commencing on the later of (a) the Agreement Effective Date and (b) the Petition Date and ending on the date on the earlier of (i) 120 days following the commencement date and (ii) termination of this Agreement, *provided* however that if a Confirmation Order is entered, the Support Period shall remain in effect for not less than 5 years from the Plan Effective Date.

# EXHIBIT "B"

| Date | Description | Amount | |
|------|-------------|--------|---|
| **Jones, Alex - Incoming Wire 4/6/22 - $715,000.00 to Fund 2022LST** | | | |
| 4/6/22 | J&O IOLTA Deposit | $715,000.00 | Exempt Proceeds from Homestead sale |
| | Parkins, Kyun, Rubio - Debtor Counsel Retainer | $175,000.00 | Debors' counsel |
| | Jordan & Ortiz Fees (Dec, Jan, Feb, March) | $98,150.00 | Alex Jones Counsel |
| | Battaglia Fees - Balance to Retainer | $40,000.00 | Free Speech Counsel |
| | Victoria Lease - 6 months - 2 suites | $6,000.00 | 2022 LST Office Space |
| | M. Schwartz CRO* | $25,000.00 | CRO retainer |
| | **BALANCE** | **$370,850.00** | |
| | Transfer to Litigation Settlement Trust | $370,000.00 | Balance of Exempt Proceeds from Homestead sale |
| | Proposed Judge Schmidt Trustee Retainer-Indpt Mgr | $50,000.00 | Chapter 11 Trustee's fees |
| | proposed Judge Nelms Trustee Retainer - Indpt Mgr | $50,000.00 | Chapter 11 Trustee's fees |
| | Proposed Trustees' counsel | $30,000.00 | Chapter 11 Trustees' counsel fees |
| | Conn. Local Bankruptcy Counsel | $20,000.00 | Special Conn. BR counsel retainer |
| | **Operating 2022 LST Balance\*\*** | **$220,000.00** | |

**Note: These balances may change based on authorized distributions of the Initial Trustee and additional contributions by the Third-Party Funding Contributors prior to the appointment of the two Trustees by the bankruptcy court.**

003491

# EXHIBIT B

## PLAN SUPPORT AGREEMENT

003492

# PLAN SUPPORT AGREEMENT

This PLAN SUPPORT AGREEMENT (as the same may be amended, modified or supplemented from time to time in accordance with the terms hereof, the "Agreement") is made and entered into as of April 14, 2022 by and among the following parties (each individually a "Party" and collectively referred to as the "Parties"):

(a)    Free Speech Systems, LLC, a Texas limited liability company ("FSS");

(b)    Alex E. Jones, an individual residing in Texas ("AJ");

(c)    InfoW, LLC,[1] a Texas limited liability company ("IW");

(d)    InfoHealth, LLC,[2] a Texas limited liability company ("IWH"); and

(e)    Prison Planet TV, LLC, a Texas limited liability company ("PTV").

## RECITALS

WHEREAS, IW, IWH and PTV (collectively the "Debtors" and each individually a "Debtor") intend to commence voluntary reorganization cases (the "Bankruptcy Cases") under subchapter V of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court") to affect the resolution and payment of certain claims and litigation claims through one or more chapter 11 plan(s) of reorganization;

WHEREAS, the Debtors have determined that it would be in their best interests and the interest of their creditors to implement a restructuring of their indebtedness and other obligations through the prosecution of the Bankruptcy Cases under the exclusive control of trustees to be approved by the Bankruptcy Court and funded by AJ and FSS (collectively the "Third-Party Funding Contributor[s]") as herein provided;

WHEREAS, the Parties have agreed on the terms of this Agreement and the elements of a proposed chapter 11 plan(s) for the Debtors, each as may be amended, modified, or supplemented from time to time, including any schedules and exhibits attached thereto, in each case, in accordance with the terms hereof (the "Plan");

WHEREAS, subject to the terms hereof and appropriate approvals of the Bankruptcy Court, as may be required, the following sets forth the agreement among the Parties concerning their respective obligations in connection with the Plan(s) and the Bankruptcy Cases.

---

[1]    Formerly known as InfoWars, LLC

[2]    Formerly known as InfoWars Health, LLC

003493

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound hereby, agree as follows:

## Section 1    CERTAIN DEFINITIONS

Applicable definitions contained in (i) the Bankruptcy Code; and (ii) the Litigation Settlement Trust (and associated documents) are incorporated into this Agreement except as modified in this Section 1 or except as conflicting with the defined the terms herein. The following definitions shall have the meanings as specified herein, and shall be designated, when such special definitions are applicable, with capital letters, and these definitions shall be enforceable as terms of the Agreement in conjunction with the respective matters to which they reference or define.

*"Allowed"* or *"Allowed Claim"* means a Litigation Settlement Trust Claims or Claim that is allowed: (i) in any stipulation executed by the Debtor (or the Litigation Settlement Trustees after the Confirmation Order becomes a Final Order), the Third-Party Funding Contributors and the holder of the Litigation Settlement Trust Claim; (ii) in a Final Order; or (iii) pursuant to the terms of the Plan.

*"Approved Plan Documents"* means those agreements and documents executed and or submitted in conjunction with the Plan or as a supplement to the Plan which have been approved by the Third-Party Funding Contributors.

*"Bankruptcy Cases"* means collectively or individually the cases filed by the Debtors pursuant to 11 U.S.C. §1101, *et seq*.

*"Bankruptcy Code"* means title 11 of the United States Code.

*"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan(s) pursuant to section 1191 of the Bankruptcy Code.

*"Debtor"* or *"Debtors"* shall refer individually and collectively to InfoW, LLC (XXXX), InfoHealth, LLC (XXXX), and Prison planet TV, LLC (XXXX), including any and all affiliated, predecessor, successors, assigns, agents, employees, partners, attorneys, representatives, administrators, investigators, consultants and other persons, acting or purporting to act on behalf of any of the above entities.

*"Definitive Documents"* means, with respect to the Plan(s), all material documents (including any related Bankruptcy Court orders, agreements, schedules, pleadings, motions, filings, or exhibits) that are contemplated by this Agreement and that are otherwise necessary or desirable to implement the Plan(s) and this Agreement, including (as applicable): (i) the Plan(s); (ii) Disclosure Statement(s) if ordered by the Bankruptcy Court; (iii) any other operative documents and/or agreements relating to the Plan(s) (including any documents necessary to implement the distributions contemplated thereunder); (iv) the Confirmation Order.

*"Effective Date"* means April 8, 2022.

003494

*"Final Order"* means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a stay, new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

*"Litigation"* means pending civil lawsuits, including but not limited to the following:

Marcel Fontaine vs. Alex E., Jones, Infowars, LLC, Free Speech Systems, LLC and Kit Daniels, Cause No. D-1-GN-18-001605 in the 459th Judicial District Court of Travis County, Texas;

Neil Heslin vs. Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC, Cause No. D-1-GN-18-001835 in the 261st Judicial District Court of Travis County, Texas;

Veronique de la Rosa and Leonard Pozner vs. Alex E. Jones, Inforwars, LLC, and Free Speech Systems, LLC, Cause No. D-1-GN-18-001842 in the 345th Judicial District Court of Travis County, Texas;

Scarlett Lewis vs. Alex E. Jones, Inforwars, LLC, Free Speech Systems, LLC and Owen Shroyer, Cause No. D-1-GN-18-006623 in the 98th Judicial District Court of Travis County, Texas;

Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc., Cause No. X06-UWY-CV-18-6046436-S in the Superior Court of Connecticut, Waterbury Division;

William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc., Cause No. X06-UWY-CV-18-6046437-S in the Superios Court of Connecticut, Waterbury Division;

003495

William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc., Cause No. X06-UWY-CV-18-6046438-S in the Superios Court of Connecticut, Waterbury Division; and

Brennan M. Gilmore v. Alexander ("Alex") E. Jones, Infowars, LLC, Free Speech Systems, LLC, Lee Stanahan, Lee Ann McAdoo a/k/a Lee Ann Fleissner, Scott Creighton, James ("Jim") Hoft, Allen B. West, Derrick Wilburn, Michelle Hickford, and Words-n-Ideas, LLC, Cause No. 3:18-cv-00017-GEC in the United States Districrt Court for the Western District of Virginia, Charlottesville Division;

together with any other pending lawsuits against any of the Parties on the Effective Date of this Agreement (collectively, the "Litigation Claims").

***"Initial Trust Funding"*** means $725,000 in cash funded to the Litigation Settlement Trust by AJ from his Exempt property upon the Effective Date of this Agreement to pay the costs of administration of the Debtors' Bankruptcy Cases and the Litigation Settlement Trust, including retention of the Litigation Settlement Trustees and retention by the Trustees of all professionals deemed necessary to accomplish the purpose of this Trust and the commitment of the Third-Party Funding Contributors to maintain for not less than 120 days after the Petition Date a balance of $200,000 after payment of all initial administrative expense retainers to newly appointed Litigation Settlement Trustees and as the only members of the Debtors acting as independent Members, together with the Debtors' professionals from time to time, to be paid directly, or thereafter maintained in the Litigation Settlement Trust for continued payment of the costs of Administration of the Litigation Settlement Trust and the Debtors' Bankruptcy Cases.

***"Litigation Settlement Trust"*** means the 2022 Litigation Settlement Trust dated effective April 1, 2022 for the benefit of the Debtors' as provided therein, including that Third-Party Funding Contributor[s] intended to facilitate and underwrite the "Payment in Full" Plan Class of Allowed Litigation Settlement Trust Claims and the Litigation Settlement Trust Beneficiaries Litigation Settlement Trust Claims, as may exist from time to time and as may be funded by the Third-Party Funding Contributors for this purpose from time to time to achieve Payment in Full.(s).

***"Litigation Settlement Trustees"*** means two individuals approved by the Bankruptcy Court to serve as Trustees of Litigation Settlement Trust who will replace the interim trustee serving in that capacity prior to the filing of the Bankruptcy Cases.

***"Litigation Settlement Trust Claims Bar Date"*** means the bar date for filing Claims or Litigation Claims in the Bankruptcy Cases established by Order of the Bankruptcy Court;

***"Litigation Settlement Trust Claims"*** means the Claims of any party arising out of or related to the Litigation Claims and evidenced by a proof of claim timely filed in the Debtors' Chapter 11 case(s).

003496

"**Litigation Settlement Trust Claims Estimation**" means the estimation of the Litigation Settlement Trust Claims by the Bankruptcy Court in these Bankruptcy Cases pursuant to Sections 502(c) and 105 of the Bankruptcy Code and Rule 3018 of the Bankruptcy Rules of Procedure.

"**Litigation Settlement Trust Beneficiary**" Means the holder of a Litigation Settlement Trust Claim.

"**Litigation Trust Expenses**" means all costs, expenses and professional fees incurred by the Litigation Settlement Trust and the Litigation Settlement Trustees during the Support Period, specifically including, but not limited to the allowed fees and expenses of the Debtors and their professionals incurred in connection with the prosecution of the Bankruptcy Cases and those incurred after the Plan Effective Date, approved by the Litigation Settlement Trustees.

"**Petition Date**" means the date upon which the earliest of the Debtors' Bankruptcy Cases was commenced as a voluntary bankruptcy case.

"**Plan(s)**" or "**Plan(s) of Reorganization**" means the chapter 11 plan(s) to be jointly proposed by the Debtors supported by the Third-Party Funding Contributors in each of the Bankruptcy Cases, that contains the same terms set forth in, and is otherwise materially consistent with this Agreement and that is an Approved Plan Document, as the same may be amended, supplemented, or otherwise modified as provided herein.

"**Plan Effective Date**" means the date on which the Plan, as confirmed, becomes effective, as defined therein.

"**Support Period**" means, with respect to any Party, the period commencing on the later of (a) the Agreement Effective Date and (b) the Petition Date and ending on the date on the earlier of (i) 180 days following the commencement date and (ii) termination of this Agreement, *provided however* that if a Confirmation Order is entered, then on and after the Effective Date the Support Period shall remain in effect for the earlier of not less than 5 years from the Plan Effective Date or until Payment in Full, or full liquidation of all available assets in the Litigation Settlement Trust, which ever first occurs.

**Section 2     The Plan(s) and the Litigation Settlement Trust Claims Estimation**

The Parties agree that as soon as practical after the Petition Date, and during the Support Period that they will

(i)     promptly file a Motion to set a Litigation Settlement Trust Claims Bar Date;

(ii)     promptly file a Motion to Estimate all Litigation Settlement Trust Claims pursuant to Section 502(c) to determine for all purposes, except, allowance of the amount of all Litigation Claims, and shall set an Estimation Protocol to initiate and conduct such estimations.

(iii)　　promptly initiate the protocol for settlement negotiations of the allowed amounts of all Litigation Settlement Trust Claims, the Plan treatment, and all related issues and matters toward a Plan Confirmation of a "Payment in Full" Plan; and

(iv)　　promptly initiate and negotiate the Definitive Documents in good faith, and such Definitive Documents will be materially consistent in all respects with this Agreement, and otherwise in form and substance reasonably acceptable to the Parties, and that, upon execution, the terms and conditions set forth in this Agreement are not subject to further negotiation or change. Notwithstanding anything to the contrary herein, in no event shall the Plan or the Definitive Documents (x) increase or decrease directly or indirectly the settlement consideration or otherwise require any amount to be payable, directly or indirectly, by the Third-Party Funding Contributors or (y) change the conditions precedent for funding by the Third-Party Funding Contributors. If the Plan and the Definitive Documents satisfy the criteria in this Section 2, they will be considered the "Approved Plan Documents." This provision, however, is not intended in any way to abrogate, abridge or affect in any way the fiduciary duties and obligations of the Debtors.

### Section 3　　Joint Agreements

During the Support Period, the Parties agree to the following:

(a)　　The Debtors and the Litigation Settlement Trust along with the Third-Party Funding Contributors shall jointly file and prosecute a motion to establish (x) a Litigation Settlement Trust Claims Bar Date, (y) a Litigation Settlement Trust Claims Estimation protocol, and (z) the Plan(s).

(b)　　Each Party agrees to (i) support and take all reasonable actions necessary to facilitate the confirmation, implementation and consummation of, the Plan and (ii) not take any action that is inconsistent with the implementation or consummation of this Agreement or the Plan.

(c)　　No Party shall:

(i) object to, delay, or take any other action to interfere, directly or indirectly, in any respect with acceptance or implementation of the Plan(s), nor encourage any person or entity to do any of the foregoing;

(ii) directly or indirectly seek, solicit, propose, file, support, encourage, or vote for any plan of reorganization other than the Plan;

(iii) take any other action, including but not limited to, initiating any legal proceeding, that is materially inconsistent with, or that would prevent or delay consummation of, the Plan; and

(iv) impede either in the Bankruptcy Court or any other court reasonable efforts to have the Plan confirmed by the Court as during the Support Period.

### Section 4　　Third-Party Funding Contributor Agreements

(a) During the Plan Support Period the Third-Party Funding Contributors shall:

(i)  fund the Initial Trust Funding to the Litigation Settlement Trust;

(ii) subject to execution of confidentiality agreements in a form acceptable to the Third-Party Funding Contributors, (A) deliver or cause to be delivered to the Litigation Settlement Trustees any and all documents (or copies thereof) relating to the Litigation Settlement Trust Claims, held by the Debtors, their employees, agents, advisors, attorneys, accountants, or any other professionals hired by the Debtors, and (B) provide reasonable access to the Litigation Settlement Trustees and their advisors to such employees of the Debtors, their agents, advisors, attorneys, accountants, or any other professionals hired by the Debtors with knowledge of matters relevant to the Litigation Settlement Trust Claims for the purpose of enabling the Litigation Settlement Trustees to fulfill their obligations under this Plan and the Litigation Settlement Trust, including the prosecution of the Litigation Settlement Trust Claims.

(iii) subject to execution of confidentiality agreements in a form acceptable to the Third-Party Funding Contributors or the Bankruptcy Court, upon request from the Litigation Settlement Trustees, the Third-Party Funding Contributors shall deliver current financial information, operating information, assets or account information ("Information") as reasonably needed to determine that each Third-Party Funding Contributor has the financial ability to pay Allowed Litigation Settlement Trust Claims in full, in accordance with the Plan. The Information shall be produced only under this provision, and if there is any disagreement on Information production requested, the Litigation Settlement Trustees may seek orders from any Federal Court.

(b)  After the Confirmation Order becomes a Final Order and continuing until the Third-Party Funding Contributors declare that they will not Pay in Full a settlement proffered by the Litigation Settlement Trustees:

(i)  From time to time thereafter, transfer to the Litigation Settlement Trust additional funds to the extent required by the Litigation Settlement Trust and the confirmed Plan to pay Litigation Trust Expenses during the Support Period.

(ii)  The Plan shall provide that the Litigation Settlement Trustees shall hold a perfected lien and security interest in and to all of FSS's and all non-exempt AJ assets to secure their obligations hereunder, subject to this Section 4(b) hereof. The Litigation Settlement Trustees and the Third-Party Funding Contributors shall determine from time to time an appropriate budget for FSS to be operated properly during the Support Period and an appropriate personal budget for AJ consistent with the anticipated needs of individual contributions during the Support Period and consistent with his usual and ordinary needs. No agreed budget term or provision will waive any right to an exemption in property otherwise available to AJ and his

003499

family. The Third-Party Funding Contributors covenant that they shall not divert, secret, hide or hinder assets subject to this agreement, other than those available to each under the agreed budgets during the Support Period prior to termination. In any Litigation relating to allegations of breach of this provision shall be brought exclusively in the bankruptcy court and shall entitle the Litigation Settlement Trustees to injunctive relief and costs.

(iii)    Subject to execution of confidentiality agreements in a form acceptable to the Third-Party Funding Contributors, upon request from the Litigation Settlement Trustees, the Third-Party Funding Contributors shall deliver the current financial information, operating information, assets or account information ("Information") as reasonably needed to determine that each Third-Party Funding Contributor is maintaining operations and business sufficient to not only maintain the minimum balance in the Litigation Settlement Trust, but also to pay Allowed Litigation Settlement Trust Claims in full, in accordance with the Plan. The Information shall be produced only under this provision, and to the extent that there is any disagreement on Information production requested, the Litigation Settlement Trustees may seek orders from any Federal Court.

(iv)    In accordance with the confirmed Plan, (i) transfer $2 million to the Litigation Settlement Trust, (ii) , contribute $250,000 per quarter for 20 consecutive quarters to the Litigation Settlement Trust, and contribute additional funds to the Litigation Settlement Trust as may be requested by the Litigation Settlement Trustees and agreed to by the Third-Party Funding Contributors in writing, or pursuant to an agreed budget, from time to time in accordance with the Plan to Pay in Full Allowed Litigation Settlement Trust Claims or Allowed Claims.

### Section 5      Duration of the Agreement.

The Agreement shall become effective on the date it is executed by all Parties, *provided*, however, that if the Agreement is not executed by the Debtors on or before 5:00 p.m. (Central Daylight Time) on April 15, 2022, or such later date as agreed by the Debtors and the Third-Party Funding Contributors (the "Expiration Date"), this Agreement shall no longer be available for acceptance by the Debtors. The Agreement will remain in effect and be irrevocable by the Parties during the Support Period. Upon implementation under the Plan, the Agreement shall remain in effect for not less than 5 years from the Plan Effective Date.

### Section 6      Representations and Warranties.

(a)    The Third-Party Funding Contributors jointly and severally represent and warrant that the following statements are true, correct and complete as of the date hereof:

(viii)    Organization and Good Standing. FSS is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas.

Plan Support Agreement                                  Page 8

(ix)     Authorization of Agreement.   Each of the Third-Party Funding Contributors has the requisite power and authority to execute this Agreement and to consummate the transactions contemplated hereby.   The execution and delivery of this Agreement by the Third-Party Funding Contributors and the consummation by the Plan of the transaction contemplated hereby has been duly authorized by FSS' managers and no other corporate proceedings on the part of the Third-Party Funding Contributors are necessary to authorize this Agreement or to consummate the transaction contemplated hereby.  This Agreement has been duly executed and delivered by the Third-Party Funding Contributors and, assuming due execution and delivery by the Debtors of this Agreement, this Agreement constitutes a valid and binding obligation of the Third-Party Funding Contributors, enforceable against the Third-Party Funding Contributors in accordance with its terms.   The Third-Party Funding Contributors are prepared to consummate this Agreement immediately upon its acceptance by the Debtors.

(x)     Due Diligence.   The Third-Party Funding Contributors have completed their due diligence, and this Agreement is not subject to a due diligence condition, *provided* that the Debtors shall continue to provide information regarding the Bankruptcy Cases and the process surrounding confirmation of the Plan(s).

(xi)     No Securities; No Third-Party Financing.  No securities are being issued and the obligation of the Third-Party Funding Contributors to perform under this Agreement is not conditioned on obtaining third-party financing.

(xii)     Financial Capability.  The Third-Party Funding Contributors have and will have upon Plan Effective Date, sufficient cash and/or cash flow available to consummate the transactions contemplated by this Agreement and the Plan.

(xiii)     No Violation; Consents.  The execution and delivery by the Third-Party Funding Contributors of this Agreement and the consummation of the transactions contemplated hereby do not and will not (1) violate any provision of the organizational documents of FSS, (2) violate any Order of any governmental authority to which the Third-Party Funding Contributors are bound or subject, (3) violate any applicable law, or (4) violate any legal agreements to which a Third-Party Funding Contributor is a party.

(xiv)     No Third-Party Approvals Required.  No regulatory or other third-party approvals, consents or filings are required to be obtained or made by the Third-Party Funding Contributors in order to consummate this Agreement, except for any such requirements, the failure of which to be obtained or made would not reasonably be expected to prevent, impede or materially delay or otherwise affect in any material respect the transactions contemplated by this Agreement.

(xv)     Bankruptcy.   There are no bankruptcy, reorganization or arrangement proceedings pending against, being contemplated by or, to the knowledge of the Third-Party Funding Contributors, threatened against the Third-Party Funding Contributors.

003501

(xvi)     Representation by Counsel.  The Third-Party Funding Contributors acknowledge that they have been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement.

(b)   The Debtors represent and warrant that the following statements are true, correct and complete as of the date it executes this Agreement:

(ii)     Organization and Good Standing.  The Debtors are limited liability companies duly formed, validly existing and in good standing under the laws of the State of Texas.

(iii)     Authorization of Agreement.  The Debtors have the requisite limited liability company power and authority to execute this Agreement and to consummate the transactions contemplated hereby.  The execution and delivery of this Agreement by the Debtors and the consummation by the Debtors of the transaction contemplated hereby have been duly authorized by the managers of the Debtors and no other limited liability company proceedings on the part of the Debtors are necessary to authorize this Agreement or to consummate the transaction contemplated hereby.  This Agreement has been duly executed and delivered by the Debtors and, assuming due execution and delivery by the Third-Party Funding Contributors, this Agreement constitutes a valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms.

(iv)     No Violation; Consents.  The execution and delivery by the Debtors of this Agreement and the consummation of the transactions contemplated hereby do not and will not (1) violate any provision of the organizational documents of the Debtors, (2) violate any Order of any governmental authority to which the Debtors are bound or subject, or (3) violate any applicable law.

(v)     No Third-Party Approvals Required.  Other than approval of the Bankruptcy Court, no order or permit issued by, or declaration or filing with, or notification to, or waiver from any governmental authority is required on the part of the Debtors in connection with the execution and delivery of this Agreement, or the compliance or performance by the Debtors with any provision contained in this Agreement, except for any such requirements, the failure of which to be obtained or made would not reasonably be expected to prevent, impede or materially delay or otherwise affect in any material respect the transactions contemplated by this Agreement.

(vi)     Representation by Counsel.  The Debtors acknowledge that they have been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement.

(vii)     Binding on Debtors in Possession and Reorganized Debtors. This Agreement shall become binding on the Debtors in Possession and the Reorganized Debtors upon the Bankruptcy Court approving the Agreement on a standalone basis or as the terms of the Agreement may be contained and incorporated into a Plan and a confirmation order approving this Agreement.

(viii)     The obligations and rights of the Third-Party Funding Contributors shall be as set out in the Litigation Settlement Trust and this Agreement and in the event of

Plan Support Agreement

a conflict among such terms of either agreements, the Litigation Settlement Trust shall control.

### Section 7      Covenants.

(a)      Access to Information.  The Debtors covenant and agree that prior to the Plan Effective Date and prior to termination of this Agreement pursuant to Section 8 hereof, the Debtors will permit the Third-Party Funding Contributors and their representatives to have reasonable access, during normal business hours and upon reasonable advance notice, to the books and records and senior management personnel of the Debtors pertaining to the Agreement.  The Parties shall cooperate to resolve issues where such disclosure would result in violation of applicable law or would jeopardize any privilege available to the Debtors or any of their affiliates relating to such information or would cause the Debtors or any of their affiliates to breach a confidentiality obligation to which they are bound.  In connection with such access, the Third-Party Funding Contributors' representatives shall cooperate with Debtors' representatives and shall use their best efforts to minimize any disruption of business.   The Third-Party Funding Contributors shall indemnify, defend and hold harmless the Debtors, the Debtors' officers, directors, employees and agents from and against all liabilities asserted against or suffered by them relating to, resulting from, or arising out of, examinations or inspections made by Third-Party Funding Contributors or its representatives pursuant to this Section 7(a).

(b)      Notice; Settlements.  The Debtors covenant and agree that prior to the Plan Effective Date and prior to termination of this Agreement, pursuant to Section 8 hereof, the Debtors shall (i) keep the Third-Party Funding Contributors apprised of any settlement discussions, negotiations or meetings related to Plan and the Litigation Settlement Trust Claims, and (ii) will be entitled to enter into a settlement of any Litigation Settlement Trust Claim against the Debtor(s) without the prior consent of the Third-Party Funding Contributors, but shall not be entitle to bind such Third-Party Funding Contributors except to the extent of their respective consent and agreement;  provided, further, the absence of any such consent shall not impair or effect the Trustees' binding settlement(s) reached nor shall it prohibit the respective Third-Party Funding Contributors from later consenting and causing the "Payment in Full" event to entitle the Third-Party Funding Contributor to their respective "Resulting Releases."

(c)      Conduct of Business Pending the Consummation of Plan.  The Debtors agree that prior to the Plan Effective Date and termination of this Agreement pursuant to Section 8 hereof, unless otherwise expressly permitted by this Agreement, the Debtors shall conduct their business in the ordinary course.

(d)      Cooperation; Consents and Filings.

(i)      From and after the date hereof and until prior to the Plan Effective Date and termination of this Agreement pursuant to Section 8 hereof, unless otherwise expressly permitted by this Agreement, the Parties shall cooperate with each other and use (and will cause their respective representatives to use) commercially reasonable efforts (1) to take, or to cause to be taken, all actions, and to do, or to cause to be done, all things reasonably necessary, proper or advisable on their part under this Agreement, applicable law or otherwise to consummate and make effective the transactions contemplated by this Agreement as promptly as practicable; (2) to obtain promptly from any person or

003503

governmental authority any consent, order or permit required to be obtained by the Parties or any of their respective affiliates in connection with the authorization, execution, delivery and performance of this Agreement, and the consummation of the transactions contemplated hereby and thereby; (3) to promptly make all necessary filings and thereafter make any other required submissions with respect to this Agreement and prompt consummation of the transactions contemplated hereby and thereby required under any applicable law, including, without limitation, the Disclosure Statement (if required), the Plan, all documents, instruments and pleadings necessary for the approval of the Disclosure Statement (if required) and confirmation of the Plan; and (4) to provide prompt notification to the other Party hereto of any actions pursuant to clauses (1) – (3) of this Section 7(d). In addition, no Party shall take any action after the date hereof (other than any action required to be taken under this Agreement or to which the other Parties shall have granted their consent) that could reasonably be expected to materially delay the obtaining of, or result in not obtaining, any consent, order, permit, qualification, exemption or waiver from any governmental authority or other person required to be obtained prior to the effective date of the Plan; including, without limitation, the Disclosure Statement (if required), the Plan, all documents, instruments and pleadings necessary for the approval of the Disclosure Statement (if required) and confirmation of the Plan.

(ii)     If permitted by applicable law and subject to any limitations on access to information provided for in Section 4(a), each party shall consult with the other parties with respect to, and provide any information reasonably requested by the other party in connection with, all material filings made with the Bankruptcy Court or any governmental authority in connection with this Agreement and the transactions contemplated hereby. If any party or any of its affiliates receives a request for information or documentary material from any governmental authority with respect to this Agreement or any of the transactions contemplated hereby, then such party shall endeavor in good faith to make, or cause to be made, as soon as reasonably practicable and, to the extent permitted by applicable law, after consultation with the other parties, an appropriate response in compliance with such request.

(g)     Bankruptcy Matters.  The Parties shall use commercially reasonable efforts to cooperate, negotiate, assist and consult with each other to secure the entry of an order confirming the Plan following the date hereof, and to consummate the transactions contemplated by this Agreement, including, without limitation, the Plan, all documents, instruments and pleadings necessary for the approval of a disclosure statement (if necessary) regarding the Plan and confirmation of the Plan.  In the event that any order of the Court relating to this Agreement shall be appealed by any person (or a petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to any such order), the Parties will cooperate in taking such steps to diligently defend against such appeal, petition or motion and the Parties shall use their commercially reasonable efforts to obtain an expedited resolution of any such appeal, petition or motion.  The Parties shall not, without the prior written consent of the other parties, file, join in, or otherwise support in any manner whatsoever any motion or other pleading relating to a sale or plan of reorganization, other than the Plan, unless the Debtors through the Litigation Settlement Trustees determine in their business judgment their fiduciary obligations require them to do so.

**Section 8    Termination.**  This Agreement shall terminate, and the obligations of the Parties shall thereupon terminate and be of no further force and effect, upon the occurrence of the earlier of the following events (each, a "Termination Event"):

(i)    Upon mutual written consent of the Debtors, on the one hand, and the Third-Party Funding Contributors, on the other hand;

(ii)    The Bankruptcy Cases are (a) dismissed, (b) converted to a case under chapter 7 of the Bankruptcy Code, or (c) converted into a case under Chapter 11 of Title 11 of the Bankruptcy Code other than under Subchapter V thereof;

(iii)    The Bankruptcy Court enters an order appointing a trustee or examiner under chapter 11 of the Bankruptcy Code;

(iv)    The Bankruptcy Court enters an order granting relief from the automatic stay imposed by §362 of the Bankruptcy Code to allow the continued litigation of a Litigation Settlement Trust Claim without the consent of the Third-Party Funding Contributors;

(v)    The Debtor or the Third-Party Funding Contributors shall (a) fail to comply with any of its obligations under this Agreement (it being understood that only the non-breaching party may invoke the Termination Event), or (b) has breached any representation, warranty, covenant or agreement contained in this Agreement;

(vi)    the Debtors shall withdraw (or move to withdraw) the Plan;

(vii)    The Third-Party Funding Contributors have terminated participation under the Agreement, including ¶ 4(b).

(viii)    The Bankruptcy Court enters an order denying confirmation of the Plan;

(ix)    The Bankruptcy Court does not enter an order approving the appointment of the Litigation Settlement Trustees on or before April 30, 2022;

(ix)    The Plan has not been filed with the Court on or before April 30, 2022;

(x)    The Plan has not been confirmed by the Court on or before the expiration of the Support Period;

(xi)    The order confirming the Plan fails to become a Final Order on or before 90 days after the expiration of the Support Period; *provided*, that the requirement for finality shall be waived as to any appeal as to which the appellant fails to obtain a stay pending appeal of the confirmation order; or

(xii)    Any court of competent jurisdiction or other competent governmental or regulatory authority shall have issued an order making illegal or otherwise

003505

restricting, preventing, or prohibiting the Plan in a way that cannot be reasonably remedied or otherwise grants relief to any party that is materially inconsistent with the Plan or this Agreement.

(xiii)   The relevant court remands the Litigation Claims and lifts the automatic stay to allow the State Court to proceed to Judgment.

**Section 9     Amendments.**  This Agreement may not be modified, amended, or supplemented, except in a writing signed by all Parties.

**Section 10     Governing Law; Jurisdiction.**  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas or the United States, without regard to the applicable principles of conflict of laws.

**Section 11     Notices.**   All demands, notices, requests, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered by courier service, messenger, telecopy, facsimile, or if duly deposited in the mails, by certified or registered mail, postage prepaid-return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, as follows:

*If to the Debtor, to:*

Marc Schwartz
Chief Restructuring Officer
of the Debtors
Schwartz & Associates
712 Main Street, Ste 1830
Houston, Texas 77002


With a copy to:

Kyung S. Lee
Parkins Lee & Rubio LLP
Pennzoil Place-13th Floor
700 Milam
Houston, Texas 77002
klee@parkinslee.com


*If to the Third-Party Funding Contributors:*

Free Speech Systems, LLC
To:
Law Offices of Ray Battaglia, PLLC
Attn: Ray Battaglia
66 Granburg Circle
San Antonio, Texas 78218

Plan Support Agreement                    Page 14

rbattaglialaw@outlook.com

Alex Jones
To:
Shelby A. Jordan
Jordan & Ortiz, P.C.
sjordan@jhwclaw.com

**Section 12      Reservation of Rights.**   This Agreement is part of a proposed settlement of all disputes among the Parties.  Except as expressly provided in this Agreement or the Plan, nothing therein is intended to, or does, in any manner waive, limit, impair, or restrict the ability of the Parties to protect and preserve their respective rights, remedies, and interests, including, without limitation, any claims against any other Party.  If the transactions contemplated herein or in the Plan are not consummated, or if this Agreement is terminated for any reason, the Parties fully reserve any and all of their respective rights and remedies.  Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this Agreement and all negotiations relating hereto, shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms.

**Section 13      Entire   Agreement.**      This  Agreement,  together  with  the Reorganization Plan, constitute the entire understanding and agreement among the Parties with regard to the subject matter hereof, and supersedes all prior agreements with respect thereto.

**Section 14      Headings.**   The headings of the paragraphs and subparagraphs of this Agreement are inserted for convenience only and shall not affect the interpretation hereof.

**Section 15      Successors and Assigns.**   This Agreement is intended to bind and inure to the benefit of the Parties and their respective permitted successors and assigns.

**Section 16      Specific   Performance.**      Each  Party  hereto  recognizes  and acknowledges that a breach by it of any covenant or agreement contained in this Agreement may cause the other Parties to sustain damages for which such Parties would not have an adequate remedy at law, and therefore each Party hereto agrees that in the event of any such breach the other Parties  shall  be  entitled  to  seek  the  remedy  of  specific  performance  of  such  covenant  and agreement and injunctive and other equitable relief in addition to any other remedy to which such Parties may be entitled, at law or in equity.

**Section 17      Remedies Cumulative.**   All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power or remedy by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

**Section 18      No Waiver.**   The failure of any Party to exercise any right, power, or remedy provided under this Agreement or otherwise available to it at law or in equity, or to

003507

insist upon compliance by any other Party with its obligations hereunder, and any custom or practice of the Parties at variance with the terms hereof, shall not constitute a waiver by such Party of its right to exercise any such or other right, power, or remedy or to demand such compliance.

**Section 19    Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same Agreement. Delivery of an executed signature page of this Agreement by telecopier or facsimile shall be as effective as delivery of a manually executed signature page of this Agreement.

**Section 20    Severability.** Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction. The provisions of this Agreement shall be interpreted in a reasonable manner to effect the intent of the Parties hereto.

**Section 21    No Third-Party Beneficiaries.** Unless expressly stated herein as to direct or indirect beneficiaries of the Litigation Settlement Trustor the Confirmed Plan, this Agreement shall be solely for the benefit of the Parties, and no other person or entity shall be a third-party beneficiary hereof.

**Section 22    Jurisdiction and Venue:** Notwithstanding any provision herein to the contrary no action or proceeding by any Party or any third-party may be brought to determine, enforce, prohibit, enjoin, or otherwise determine any rights or obligations of any Party to this Agreement except in the United States Bankruptcy Court or the United States District Court, as the case may be, for the Division and District in which the Bankruptcy Cases have been filed.

THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK

003508

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Declaration or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Effective Date: April __, 2022.

***INITIAL* LITIGATION SETTLEMENT TRUSTEE**

By: _____
Name:   Robert Dew
Title:    Initial Trustee, and as sole officer and
       Director of each Debtor entity
       InfoW, LLC, InfoHealth, LLC,
       Prison Planet TV, LLC

**THIRD-PARTY FUNDING CONTRIBUTOR ALEX JONES**

By: _____
Name:

**THIRD-PARTY FUNDING CONTRIBUTOR FREE SPEECH SYSTEMS, LLC**

By: _____
Name:
Title:

**SIGNATURES LEFT BLANK PENDNG APPOINTMENT BY BANKRUPTCY COURT ORDER**

_____
Name:
Title: Litigation Settlement Trust Trustee and
Debtors' Independent Board Members

_____
Name:
Title: Litigation Settlement Trust Trustee and
Debtors' Independent Board Members

Plan Support Agreement                  Page 17

003509

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Declaration or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Effective Date: April 15 2022.

**INITIAL LITIGATION SETTLEMENT TRUSTEE**

By:
Name: Robert Dew
Title: Initial Trustee, and as sole officer and
Director of each Debtor entity
InfoW, LLC, InfoHealth, LLC,
Prison Planet TV, LLC

**THIRD-PARTY FUNDING CONTRIBUTOR
ALEX JONES**

By:
Name:

**THIRD-PARTY FUNDING CONTRIBUTOR
FREE SPEECH SYSTEMS, LLC**

By:
Name:
Title:

**SIGNATURES LEFT BLANK PENDNG
APPOINTMENT BY BANKRUPTCY
COURT ORDER**

Name: _____
Title: Litigation Settlement Trust Trustee and
Debtors' Independent Board Members

Name: _____
Title: Litigation Settlement Trust Trustee and
Debtors' Independent Board Members

Plan Support Agreement           Page 17

003510

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| INFOW, LLC ) | Case No. 22 - __60020__ |
| ) | |
| Debtor. ) | Chapter 11 (Subchapter V) |
| In re: ) | |
| ) | |
| IWHEALTH, LLC ) | Case No. 22 - __60021__ |
| ) | |
| Debtor. ) | Chapter 11 (Subchapter V) |
| In re: ) | |
| ) | |
| PRISON PLANET TV, LLC ) | Case No. 22 - __60022__ |
| ) | |
| Debtor. ) | Chapter 11 (Subchapter V) |

## DEBTORS' EMERGENCY APPLICATION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING EMPLOYMENT OF W. MARC SCHWARTZ AS CHIEF RESTRUCTURING OFFICER, (B) AUTHORIZING EMPLOYMENT OF STAFF OF SCHWARTZ ASSOCIATES, LLC IN DISCHARGE OF DUTIES AS CHIEF RESTRUCTURING OFFICER, AND (C) GRANTING RELATED RELIEF

THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED AND IF THE COURT CONSIDERS THIS MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN TWENTY-ONE (21) DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF, OR IF YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

RELIEF IS REQUESTED ON OR BEFORE **APRIL 22, 2022**.

InfoW, LLC ("InfoW"), IWHealth, LLC ("IW Health"), and Prison Planet TV, LLC ("Prison Planet TV", and together with InfoW and IW Health, the "Debtors"), the debtors and debtors-in-possession in the above-captioned chapter 11 cases, hereby move for entry of an order substantially in the form attached hereto (the "Proposed Order") pursuant to sections 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the retention of W. Marc Schwartz (the "Proposed CRO") of Schwartz Associates, LLC ("SALLC") as their Chief Restructuring Officer (the "Application") pursuant to that certain engagement letter agreement by and between the Debtors and SALLC, a copy of which is attached hereto as Exhibit A (the "Engagement Agreement"). In support of the Application, the Debtors submit the Declaration of W. Marc Schwartz attached hereto as Exhibit B (the "Schwartz Declaration") and respectfully represent as follows:

2

## REQUEST FOR EMERGENCY HEARING

1.      The Debtors seek emergency consideration of this Application on or before **April 22, 2022**, or as soon after as the Court's schedule will allow. Appointment of a chief restructuring office to perform the services set forth in the Engagement Agreement is necessary for the Debtors to adequately perform their duties as debtors-in-possession, including preparation of schedules of assets and liabilities, compliance with reporting requirements, and preparation of financial information and testimony.

## JURISDICTION

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

3.      The bases for the relief requested herein are sections 105, 327, and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Rules for the Bankruptcy Court for the Southern District of Texas (the "Local Rules").

## BACKGROUND

### A.  Case Background

4.      On April 18, 2022 (the "Petition Date"), each of the Debtors commenced a case by filing a petition for relief under chapter 11, subchapter v, of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

5.      The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

003513

6.      As of the filing of this Application, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for Region 7 (the "U.S. Trustee").

**B.  The Debtors**

7.      The Debtors are holding companies for certain intellectual property assets. Debtor InfoW, owns copyrights and domain names related to "Infowars.com." Debtor IWHealth owns cash flow from royalties and/or an agreement with Youngevity. Debtor Prison Planet TV owns copyrights and domain names related to prisonplanet.tv.

8.      "Infowars"—a conspiracy-oriented website and media company—is operated by Free Speech Systems, LLC ("FSS"), which does business under a registered trademark for that name.  InfoW and Prison Planet TV license their intellectual property and domain names to FSS for use in its business but the Debtors do not produce or have any control over the content of Infowars. FSS maintains and operates the website https://www.infowars.com/.[1]

9.      Alex E. Jones ("Jones") owns one hundred percent (100%) of the equity in FSS. Prior to the Petition Date, Jones also owned one hundred percent (100%) of the equity in InfoW, IWHealth and Prison Planet TV. He assigned these equity interests to the 2022 Litigation Settlement Trust (the "Litigation Settlement Trust") before the Petition Date.

**C.  Pending Litigation Against the Debtors**

10.      The Debtors' financial distress stems primarily from statements of Jones and other employees of FSS in the wake of the December 14, 2012, mass shooting at Sandy Hook Elementary School in which 20 children and 6 educators were killed by Adam Lanza. Various parents of the deceased victims of the Sandy Hook shooting assert, among other things, that these statements were defamatory and inflicted emotional distress.

---

[1] The Debtors have been advised that all the assets of FSS serve as collateral to repay obligations to PQPR Holdings.

003514

11.     The relatives of the Sandy Hook victims and certain other parties (the "<u>Sandy Hook Plaintiffs</u>") assert, among other things, that Jones and other employees of FSS made defamatory statements and inflicted emotional distress. In 2018, the Sandy Hook Plaintiffs brought actions in Texas and Connecticut (collectively, the "<u>Sandy Hook Lawsuits</u>") against Jones, FSS, and certain of the Debtors. The crux of the allegations in the Sandy Hook Lawsuits is that Jones and FSS employees damaged the Sandy Hook Plaintiffs by saying or implying that the Sandy Hook shooting did not occur, and that the entire incident was a "false flag" hoax.

12.     The Debtors are also defendants in other pending litigation unrelated to the events at Sandy Hook Elementary School:[2]

- *Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Kit Daniels*, Cause No. D-1-GN-18-001605, pending before the 459th District Court for Travis County, Texas—This case involves an article authored by an FSS employee about the shooter at Marjory Stoneman Douglas High School in Parkland, Florida. Iterations of the article included a photograph of the plaintiff, even though the plaintiff was not involved with the shooting or even in Florida at the time.

- *Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, PQPR Holdings Limited LC, JLJR Holdings, LLC, PLJR Holdings, LLC, Carol Jones, David Jones, PQPR Holdings, LLC, JLJR Holdings Limited, LLC, AEJ Holdings, LLC, AEJ Trust 2018*, Cause No. D-1-GN-22-001610, pending before the 200th District Court for Travis County, Texas—This lawsuit was brought by the plaintiffs in the other Texas lawsuits under the Texas Uniform Fraudulent Transfer Act ("<u>TUFTA</u>"). The allegations are that Jones diverted his assets to companies owned by insiders like his parents, his children, and himself. The Plaintiffs seek judgment allowing them to take possession and execute on the assets.

- *Larry Klayman v Infowars, LLC, et al.*, Case No. 20-61912, before the U.S. District Court for the Southern District of Florida, Fort Lauderdale Division—The plaintiff in this case brought claims against InfoWars, LLC, Free Speech Systems, LLC, Alex Jones, David Jones, and Owen Shroyer for defamation, Florida Deceptive and Unfair Trade Practices Act, tortious interference, and violation of the Lanham Act for publishing disparaging statements about the plaintiff. On April 14, 2022, the District Court entered a take-nothing judgment in favor of the InfoW and the other defendants. The plaintiff has appealed to the Eleventh Circuit Court of Appeals.

---

[2] On April 11, 2022, the U.S. District Court for the Western District of Virginia entered a Stipulation and Order [Dkt. No. 504], resolving the defamation action in Brennan M. Gilmore v Alexander E. Jones, et. al., Case No. 3:18-cv-00017-NKM-JCH, resolving that litigation in exchange for a $50,000 settlement to the plaintiff.

003515

13.     Jones, FSS, and the Debtors have spent more than $10.0 million in legal fees and costs since commencement of the Sandy Hook Lawsuits. Despite the substantial amount spent, both the Texas and Connecticut courts have imposed multiple sanctions and ruled that Jones, FSS, and the Debtors failed to comply with discovery requirements such that judgment on *liability* has been entered against them by default.[3] No court has yet to quantify the amount of the damages.

14.     The pending litigation presents a classic "race to the courthouse." The Texas court is scheduled to be the first damages case to go to trial and is set to commence with jury selection on April 25, 2022. The damages trial in the Texas actions is scheduled for months before the damages will be determined in the actions pending in Connecticut.

15.     Given the limited cash on hand available to the Debtors, Jones, and FSS, there is a substantial likelihood that efforts to collect on a judgment of the Texas actions would result in leaving nothing left for the Connecticut Sandy Hook Plaintiffs or other creditors. Indeed, prior to even liquidating their claims, the Texas plaintiffs sought execution by initiating the TUFTA litigation.

**D.  2022 Litigation Settlement Trust**

16.     To address the Sandy Hook Lawsuits and other litigation, and preserve assets for equal distribution to all creditors, the Debtors, Jones, and FSS have created the 2022 Litigation Settlement Trust (the "Litigation Settlement Trust") to provide a mechanism for the payment in full of the litigation claims.

17.     The Litigation Settlement Trust removes control of the Debtors and settlement funds from Jones and ensures that any settlement of or judgment in the Sandy Hook Lawsuits and

---

[3] The applicable Debtors do not intend to challenge any determination of liability entered by the respective state courts unless the claimant elects to liquidate their claims through continuation of the litigation.

other litigation will be paid according to the terms of the Declaration of Trust and any plan of reorganization in these Chapter 11 Cases. The Litigation Trust has been initially funded pursuant to the funding agreement attached to the Declaration of Trust and the Plan Support Agreement, as may be amended (the "PSA"). The "Initial Trust Funding" of $725,000 for administration of these Chapter 11 Cases has been paid to the interim trustee or the Debtors' professionals from exempt personal assets of Jones. Upon confirmation of a plan, the Litigation Trust is expected to be funded with additional funds, including $2,000,000 in cash on the effective date.

18.     Contemporaneously with this Application, the Debtors have requested an order authorizing the appointment of former bankruptcy judges Russell F. Nelms and Richard S. Schmidt to serve as trustees of the Litigation Settlement Trust (the "Litigation Settlement Trustees").

### E.  Proposed Employment of Schwartz as Chief Restructuring Officer

     *i.  Scope of Employment*

19.     The Debtors seek to engage the Proposed CRO as chief restructuring officer to advise and lead the day-to-day restructuring efforts of the Debtors, pursuant to the Engagement Agreement. The Debtors contemplate that the Proposed CRO will perform some or all the following tasks:

    a.    Make business and debt restructuring decisions, including as it relates to business strategy(ies) and other key elements of the business;

    b.    Manage due diligence requests and other items requested by various constituents as part of the restructuring process;

    c.    Prepare cash flow forecasts and related financial and business models;

    d.    Identify and implement short and long-term liquidity initiatives;

    e.    Prepare Statements of Financial Affairs and Schedules, Monthly Operating Reports, and other similar regular Chapter 11 administrative, financial, and accounting reports required by the Court, as well as provide necessary testimony before the Court on matters within CRO's areas of expertise;

7

    f.    Review inventory marketability and provide monetization alternatives;

    g.    Make operational decisions with advice of appropriate governance body;

    h.    Implement cost containment measures;

    i.    Negotiate with creditors, prospective purchasers, equity holders, equity committees, official committee of unsecured creditors, and all other parties-in-interest and submit proposals for payment to Third Party Funding Contributors, trustees and the Court;

    j.    Maximize value of the Debtors;

    k.    Oversee all business decisions of Debtors, as necessary or required, utilizing CRO's business judgment.

    l.    Be authorized, during normal business hours, to (a) review and analyze the books of account, bank accounts, accounting source documents and financial statements of FSS and Jones including, but not limited to, QuickBooks accounts, bank statements and included documents, invoices, credit card processing reports, other documents reflecting cash receipts, invoices received and issued, and other accounting source documents, (b) have read-only access to bank accounts used by FSS Jones in the conduct of their businesses, and (c) have access to the personnel, managers, and/or financial professionals of FSS and Jones to interview and request additional documents or information.

    m.    Execute all documents and take all other acts necessary to effectuate the restructuring of the Debtors, including in any case before the Court, subject to approval of the trustees of the Litigation Settlement Trustees.

20.    The Proposed CRO will be subject to the oversight and direction of the Litigation Settlement Trustees, who will have full governance authority over the Debtors.

21.    Additionally, the Debtors seek authority for other staff of SALLC to perform services required to assist the Proposed CRO within the scope of this engagement.

    ii.    *Necessity of Employment*

22.    The Debtors believe that the retention and employment of the Proposed CRO is necessary and appropriate to administer these Chapter 11 Cases and ultimately prepare and obtain confirmation of a plan of reorganization. While the Litigation Settlement Trustees will have oversight of the Proposed CRO and direct the overall direction of these Chapter 11 Cases, the

003518

Debtors need a professional with financial expertise to serve as an officer of the Debtors to perform the services indicated in the Engagement Agreement.

23. The litigation between the Sandy Hook Plaintiffs and the defendants has been acrimonious, littered with sanctions, and rages on unabated year after year. For example, when Jones filed an offer of compromise pursuant to Connecticut procedure, the Connecticut plaintiffs responded that the "so-called offer is a transparent and desperate attempt by Alex Jones to escape a public reckoning under oath with his deceitful, profit-driven campaign against the plaintiffs and the memory of their loved ones lost at Sandy Hook." There is no reasonable prospect of a resolution which allows for a fair distribution of recoveries to all affected parties.

24. Some of the defendants have faced and been hit with "death penalty" discovery sanctions. Whether these problems were the result of bad faith or merely the lack of someone with the adequate experience and ability,[4] a qualified financial professional answering to independent fiduciaries to wit, the Litigation Settlement Trustees, is necessary for any negotiations that will result in a consensual plan that provides for payment in full to creditors.

### iii. *Reasons for Selection*

25. The Debtors believe that the Proposed CRO is well qualified to provide management services that will assist and enhance the Debtors' efforts to maximize value to their creditors.

26. Marc Schwartz is a licensed CPA with more than 40 years' experience providing expert witness and financial restructuring services. He frequently serves as a chief restructuring officer, and as a federal and state court appointed receiver, in bankruptcy and non-bankruptcy

---

[4] For the avoidance of doubt, the Debtors reserve their rights to contest the sanctions on appeal absent consensual resolution.

9

proceedings. Mr. Schwartz is one of approximately 200 full members of the National Association of Federal Equity Receivers. He understands how to be a fiduciary.

    *iv.*    <u>*Proposed Compensation & Reimbursement*</u>

27. The Debtor intends to file a motion to establish interim compensation procedures in this case. The CRO proposes to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including sections 330 and 331, the Bankruptcy Rules, the Bankruptcy Local Rules, and any interim compensation order entered in these Chapter 11 Cases.

28. Subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, the Debtors propose to pay on an hourly basis the Proposed CRO and SALLC from funds of the Litigation Settlement Trust, as set out in the Engagement Agreement and summarized in the following chart:

| BILLER | RATE |
|---|---|
| W. Marc Schwartz (Proposed CRO) | $690.00 per hour |
| M. Christian Schwartz | $470.00 per hour |
| Managers | $350.00 per hour |
| Associates | $280.00 per hour |
| Analysts | $210.00 per hour |
| Administrative Staff | $95.00 per hour |

29. Additionally, the Engagement Agreement provides that the Debtors shall be responsible for the reasonable and necessary documented out-of-pocket costs and expenses incurred by Proposed CRO and SALLC in connection with the engagement. SALLC will submit detailed documentation of all expenses incurred in connection with requests for reimbursement.

30. The Debtors believe that the agreed terms of reimbursement, compensation, and hourly rates are reasonable. The CRO will notify the Debtors of any change in the hourly rates charged for services rendered while the Chapter 11 Cases are pending.

003520

     *v.*    <u>*Retainer*</u>

31.    The Debtors engaged the Proposed CRO prior to the Petition Date. The CRO received a retainer of $50,000 (the "<u>Retainer</u>"). The Proposed CRO has worked against the Retainer, and, as of the Petition Date, the amount remaining in the Retainer is approximately $20,018.00.[5]

32.    Pursuant to the Engagement Agreement, the Debtors propose that SALLC will hold the Retainer to be applied to SALLC's final fees and expenses at the conclusion of the engagement. The Proposed Order modifies the Engagement Agreement such that the Proposed CRO and SALLC shall not draw on the Retainer except upon order of the Court awarding final compensation and reimbursement in the Chapter 11 Cases.

     *vi.*    <u>*Connections*</u>

33.    The Schwartz Declaration sets out the connections of the Proposed CRO and SALLC with the Debtors, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, and any person employed in the office of the United States Trustee. To the best of the Debtors' knowledge, neither the Proposed CRO nor SALLC hold any connections other than those disclosed in the Schwartz Declaration.

34.    The Debtors believe that neither the Proposed CRO nor SALLC holds or represents any disqualifying interest that is adverse to the estate and each is a "disinterested person." If any new relevant facts or relationships are discovered, the Proposed CRO and SALLC will supplement its disclosure to the Court and the U.S. Trustee.

---

[5] The CRO will furnish the exact number left in the Retainer at any hearing on this Application or in a supplement.

11

## RELIEF REQUESTED

35.     The Debtors request that the Court enter an order substantially in the form of the Proposed Order authorizing the Debtors to retain the Proposed CRO and SALLC, effective as of the Petition Date pursuant to the terms of the Engagement Agreement, as modified by the Proposed Order.

## BASIS FOR RELIEF

36.     Subject to bankruptcy court approval, Bankruptcy Code § 327(a) authorizes trustees—and debtors-in-possession—to "employ one or more attorney's accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties . . . ."  Bankruptcy Code § 327(c) says that "[i]n a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest."

37.     Bankruptcy Rule 2014 requires certain disclosures prior to the entry of an order approving the employment of a professional. According to Bankruptcy Rule 2014, the application must:

    a.  Be filed by the trustee or committee and served on the United States Trustee (except in cases under chapter 9 of the Bankruptcy Code);

    b.  State the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee; and

12

     c.    Be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

## A. The Proposed CRO and SALLC Meet the Requirements of Bankruptcy Code § 327(a)

38.    Based on the Schwartz Declaration, the Debtors submit that neither the Proposed CRO nor SALLC hold or represent any disqualifying adverse interest and is a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code.

39.    The Bankruptcy Code defines what it means to be a "disinterested person" Bankruptcy Code § 101(14):

> The term "disinterested person" means a person that— (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

40.    The Schwartz Declaration discloses no connections with the Debtors that would disqualify the Proposed CRO or SALLC as a "disinterested person" and the Debtors are aware of no connections in addition to those disclosed in the Schwartz Declaration.

## B. This Application and the Schwartz Declaration Meet the Requirements of Bankruptcy rule 2014.

41.    This Application and the Schwartz Declaration meet the requirements as set out in Bankruptcy Rule 2014. The Application is made by the Debtors and sets out the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, the proposed arrangement for compensation. The Schwartz Declaration is a verified statement pursuant to 28 U.S.C. § 1746 that sets out all connections that the Proposed CRO and SALLC has with the Debtors, creditors, any other party in interest, their respective

13

attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S.

Trustee. The Debtors are not aware of any other connections in addition to those disclosed in the

Schwartz Declaration.

[*Remainder of Page Intentionally Left Blank*]

003524

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form of the Proposed Order approving the employment of the Proposed CRO and SALLC effective as of the Petition Date, pursuant to the terms of the Engagement Agreement and grant any other appropriate relief.

Dated: April 18, 2022

**PARKINS LEE & RUBIO LLP**

*/s/R.J. Shannon*
Kyung S. Lee
TX Bar No. 12128400
R.J. Shannon
TX Bar No. 24108062
Pennzoil Place
700 Milam Street, Suite 1300
Houston, TX 77002
Email: klee@parkinslee.com
        rshannon@parkinslee.com
Phone: 713-715-1660
Fax:    713-715-1699

*Proposed Counsel to the Debtors and
Debtors-in-Possession*

## CERTIFICATE OF ACCURACY

I hereby certify that the foregoing statements are true and accurate to the best of my knowledge and belief. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

   */s/R.J. Shannon*
R.J. Shannon

15

### CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2022, a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service, (b) by U.S.P.S. first class mail on the parties indicated in the attached service list, and (c) the following parties by email:

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Norman A Pattis, Cameron L. Atkinson
Pattis & Smith, LLC
383 Orange Street
New Haven, CT 06511
npattis@pattisandsmith.com
catkinson@pattisandsmith.com

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Ray Battaglia
Law Office of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX
rbattaglialaw@outlook.com

Attn: Avi Moshenberg, Nick Lawson, Matthew
Caldwell
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com
nick.lawson@mhllp.com
matthew.caldwell@mhllp.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Richard S. Schmidt
615 Leopard, #635
Corpus Christi, TX 78401
rss@judgerss.com

Russell F. Nelms
115 Kay Lane
Westworth Village, TX 76114
rfargar@yahoo.com

Attn: W. Marc Schwartz
Schwartz Associates
712 Main Street, Ste. 1830
Houston, TX 77002
mschwartz@schwartzassociates.us

Attn: Matthew Okin
Okin Adams LLP
1113 Vine St., Ste. 240
Houston, TX 77002
mokin@okinadams.com

/s/ R. J. Shannon
R. J. Shannon

2

003527

Alex E. Jones
c/o Jordan & Ortiz, P.C.
Attn: Shelby Jordan
500 North Shoreline Blvd, STE 900
Corpus Christi, TX 78401


Brennan Gilmore
c/o Civil Rights Clinic
ATTN: Andrew Mendrala
600 New Jersey Avenue, NW
Washington, DC 20001


Carlee Soto-Parisi
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Carlos Soto
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive Ste. 301
Coral Springs, FL 33065


Dona Soto
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Erica Lafferty
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Francine Wheeler
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604

Free Speech Systems, LLC
c/o Law Office of Raymond W. Battaglia
66 Granburg Circle
San Antonio, TX 78218


Ian Hockley
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Jacqueline Barden
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Jennifer Hensel
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Jeremy Richman
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Jillian Soto
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Leonard Pozner
c/o Kaster Lynch Farrar & Ball LLP
1117 Herkimer
Houston, TX 77008


Marcel Fontaine
c/o Kaster, Lynch, Farrar & Ball LLP
1117 Herkimer
Houston, TX 77008


Mark Barden
c/o Koskoff Koskoff & Bieder

350 Fairfield Ave
Bridgeport, CT 06604


Neil Heslin
c/o Kaster Lynch Farrar & Ball LLP
1117 Herkimer
Houston, TX 77008


Nicole Hockley
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


PQPR Holdings Limited, LLC
c/o Eric Taub, Waller
100 Congress Ave STE 1800
Austin, TX 78701


Robert Parker
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


Scarlett Lewis
c/o Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008


Veronique De La Rosa
c/o Kaster Lynch Farrar & Ball LLP
1117 Herkimer
Houston, TX 77008


William Sherlach
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604


William Aldenberg
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604

Larry Klayman, Esq.
7050 W. Palmetto Park Rd
Boca Raton, FL, 33433

Randazza Legal Group
2764 Lake Sahara Dr STE 109
Las Vegas, NV 89117

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INFOW, LLC | ) | Case No. 22 - 60020 |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |
| In re: | ) | |
| | ) | |
| IWHEALTH, LLC | ) | Case No. 22 - 60021 |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |
| In re: | ) | |
| | ) | |
| PRISON PLANET TV, LLC | ) | Case No. 22 - 60022 |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |

**INTERIM ORDER (A) AUTHORIZING EMPLOYMENT OF W. MARC SCHWARTZ AS CHIEF RESTRUCTURING OFFICER, (B) AUTHORIZING EMPLOYMENT OF STAFF OF SCHWARTZ ASSOCIATES, LLC IN DISCHARGE OF DUTIES AS CHIEF RESTRUCTURING OFFICER, AND (C) GRANTING RELATED RELIEF**

Upon the *Debtors' Emergency Application for Interim and Final Orders (A) Authorizing Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing Employment of Staff of Schwartz Associates, LLC in Discharge of Duties as Chief Restructuring Officer, and (C) Granting Related Relief* (the "Application")[1] filed on April 18, 2022; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and the Court having determined that

---

[1] Capitalized terms used by not otherwise defined in this Order shall have the meanings ascribed to such terms in the Application.

003532

the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1.     Subject to a final hearing to be scheduled by the Court and any objections to the Application, the Application is granted on an interim basis, to the extent set forth herein. Any objections to the entry of a final order granting the Application must be filed with the Court and served according to Bankruptcy Local Rule 9013-1 on or before **May 9, 2022**.

2.     In accordance with Bankruptcy Code §§ 327(a) and 330 and Bankruptcy Local Rule 2014-1, the Debtor is authorized to employ and retain W. Marc Schwartz (the "CRO") effective as of the Petition Date, as chief restructuring officer, under the terms and conditions set forth in the Application and the Engagement Agreement attached to the Application as Exhibit A thereto, as modified herein.

3.     The CRO shall hold confidential any material, non-public information of or pertaining to FSS and/or Alexander E. Jones delivered to the CRO, except to the extent that such information and the person to whom such information is disclosed are subject to a protective order that is entered in these Chapter 11 Cases.

4.     The CRO is authorized to delegate appropriate tasks to Schwartz Associates, LLC ("SALLC"), pursuant to the terms of the Engagement Agreement.

5.     The CRO and SALLC shall be compensated for their services and reimbursed for actual expenses in accordance with the terms and conditions of the Engagement Agreement, as set forth in the Application and subject to §§ 330 and 331 of the Bankruptcy Code, and in accordance with applicable Federal Rules of Bankruptcy Procedure, Local Bankruptcy Rules, and any orders of this Court; *provided*, *however*, that the CRO and SALLC shall not seek reimbursement from

003533

the Debtors' estates for any fees incurred in defending any fee applications in these bankruptcy cases.

6. All compensation for services rendered and reimbursement for expenses incurred in connection with the above-captioned chapter 11 case shall be paid after further application to and order of this Court, in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Bankruptcy Local Rules, the Guidelines, and any orders of this Court.

7. Notwithstanding anything to the contrary in the Engagement Agreement, the CRO and SALLC shall hold the prepetition retainer pending a final order allowing compensation and reimbursement in these cases or order otherwise directing disposition of the retainer amounts.

8. Notwithstanding anything to the contrary in the Application, the Engagement Agreement, or the Declaration attached to the Application, the CRO and SALLC shall not be entitled to reimbursement or fees and expenses in connection with any objection to their fees, without further order of the Court.

9. The CRO and SALLC shall provide ten (10) business days' notice to the Debtors and the U.S. Trustee before any increases in the rates set forth in the Application or the Engagement Agreement are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in § 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to § 330 of the Bankruptcy Code.

10. The CRO and SALLC shall use reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

3

11.    The CRO and SALLC will review their files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, the CRO and SALLC will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Fed. R. Bankr. P. 2014(a).

12.    The Litigation Settlement Trustees may, at any time and in their sole discretion, terminate the employment of the CRO and SALLC without further order of the Court, *provided*, *however*, that such termination shall not affect the validity of the CRO or SALLC's employment under this Order or any Final Order prior to such termination.

13.    To the extent the Application, the Schwartz Declaration, or the Engagement Agreement is inconsistent with this Order, the terms of this Order shall govern.

14.    The Debtors, the CRO, and SALLC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

15.    This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated: _____      _____
                                            UNITED STATES BANKRUPTCY JUDGE

003535

**<u>EXHIBIT A</u>**

**Engagement Agreement**

003536



**Schwartz** Associates

712 Main Street, Suite 1830, Houston, TX 77002

April 7, 2022

**VIA EMAIL**

InfoWars, LLC
InfoWars Health, LLC
Prison Planet TV, LLC

VIA EMAIL: Shelby Jordan

**Re: Engagement of Chief Restructuring Officer**

Gentlemen:

This letter confirms that InfoW, LLC; InfoHealth, LLC; and, Prison Planet TV, LLC ("Clients") have engaged W. Marc Schwartz ("Consultant") of Schwartz Associates, LLC ("SALLC") to act as their Chief Restructuring Officer ("CRO"), effective as of March 31, 2022, to advise and lead its restructuring efforts involving the scope described herein, including a filing of the Clients under Subchapter V of the Bankruptcy Code.

SALLC understands that the purpose of the engagement is to continue stable operations while maximizing the values of Clients' assets, including negotiations with creditors of Clients and affiliates of the Clients to assure that creditors of the Clients have the best chance of recoveries on their claims. Consultant will work to maximize return and to assure a fair pro rata distribution to all unsecured creditors.

**I.      Scope of Engagement**

Subject to oversight by the Client's governing body, Consultant shall be in charge of Clients' restructuring process. It is agreed that Consultant's authority shall include, but not be limited to, the following:

1. Make business and debt restructuring decisions, including as it relates to business strategy and other key elements of the business;
2. Manage due diligence requests and other items requested by various constituents as part of the restructuring process;
3. Prepare cash flow forecast and related financial and business models;
4. Identify and implement short and long-term liquidity initiatives;
5. Prepare Statements of Financial Affairs and Schedules, Monthly Operating Reports, and other similar regular Chapter 11 administrative, financial, and accounting reports required by the United States Bankruptcy Court ("Bankruptcy Court") as well as provide necessary testimony before the Bankruptcy Court on matters within Consultant's areas of expertise;

1

003537



712 Main Street, Suite 1830, Houston, TX 77002

6. Review inventory marketability and provide monetization alternatives;

7. Make operational decisions with advice of appropriate governance body;

8. Implement cost containment measures;

9. Negotiate with creditors, prospective purchasers, equity holders, equity committees, official committee of unsecured creditors, and all other parties-in-interest and submit proposal for payment to Third Party Funding Contributors, trustees and the bankruptcy court;

10. Maximize value of Clients;

11. Be in charge of all business decisions of Clients, as necessary or required, utilizing Consultant's business judgment.

12. Be authorized, during normal business hours, to (a) review and analyze the books of account, bank accounts, accounting source documents and financial statements of Free Speech Systems, LLC ("FSS") including, but not limited to, QuickBooks accounts, bank statements and included documents, invoices, credit card processing reports, other documents reflecting cash receipts, invoices received and issued, and other accounting source documents (b) have read only access to all bank accounts used by FSS in the conduct of its business (c) have access to the personnel, managers, and /or financial professionals of FSS to interview and request additional documents or information.

13. Execute all documents and take all other acts necessary to effectuate restructuring of the Debtors, including in any case before the Bankruptcy Court, subject to approval of the trustees of the 2022 FSS Litigation Settlement Trusty (the "Litigation Settlement Trustees") or Boards of Directors or managers as applicable.

## II.    Indemnification

Clients agree to indemnify, defend, and hold harmless Consultant, individually, and SALLC, its subsidiaries or affiliates, the respective partners, directors, officers, agents, contractors, and employees of SALLC and each other person, if any, controlling SALLC or its affiliates (individually or collectively) from and against any and all losses, claims, damages, liabilities, or costs, as, and when incurred, to which such party may become subject to or which are asserted against any party, directly or indirectly, in any way related to party while acting for the Clients under this agreement including, without limitation, in connection with i) any act or omission by party related to engagement as as financial advisor ("FA") or CRO under the Agreement or ii) Party's acceptance, performance or non-performance of obligations under said Agreement.

Clients will advance to the party amounts paid by the party for reasonable and documented legal or other expenses incurred by them, as and when incurred, in connection with investigating, preparing or defending any such losses, claims, damages, or liabilities or any action in respect thereof, whether or not in connection with existing,

2



Schwartz Associates

712 Main Street, Suite 1830, Houston, TX 77002

pending or threatened litigation against the party; provided, however, that the Clients shall not be liable under the foregoing indemnity agreement in respect of any liability to the extent that such liability is found to have resulted from party's gross negligence, bad faith, willful misconduct, or a breach of this agreement and party shall no later than ten days after a determination of gross negligence, bad faith, willful misconduct, or breach of this agreement refund such amounts previously advanced by Clients. If, in the opinion of counsel, representing both parties in this matter covered by this indemnification creates a potential conflict of interest, the party may engage separate counsel to represent them at the Clients' expense. Such funds shall be made available to the Clients as part of the monies to be requested under the Plan Support Agreement during and after the bankruptcy case of the Debtors.

**III.      Materials Provided**

Clients agree to provide Consultant and SALLC with such financial and other available information as is reasonably required for SALLC to render the services performed or to be performed hereunder. Consultant and SALLC agree to review the information and identify any inaccuracies or omissions that are reasonably apparent on the face of the information provided.

**IV.      Work Product**

Consultant and SALLC shall not disclose any confidential or privileged information to any third party, subject to the following exceptions: i) to SALLC's affiliates, vendors, or agents who provide services in connection with this engagement; ii) with Client's written consent; iii) when legally required to do so; or iv) if such information is available from public sources.

All records of Clients obtained by SALLC will be promptly returned to the Clients at the conclusion of this engagement.

**V.      Disclosures**

Clients shall not disclose any work or analyses of SALLC or Consultant to any third party (other than any direct or indirect equity holder of the Clients) without prior written consent of Consultant, which shall not be unreasonably withheld. Neither SALLC nor Consultant shall disclose any information respecting the business, properties, books, and records of the Clients except to professionals hired by the Clients for purposes of this engagement, unless subpoenaed by a court of competent jurisdiction.

SALLC cannot assure that, following the completion of our internal conflict search, an engagement for or involving your creditors or other parties-in-interest or their respective attorneys and accountants will not be accepted by SALLC, its subsidiaries or affiliates. Should any potential conflict come to the attention of SALLC, we will endeavor to resolve such potential conflict and will determine what action needs to be taken. You

3



**Schwartz**Associates

712 Main Street, Suite 1830, Houston, TX 77002

agree that you will comprehensively inform us of the parties-in-interest to this matter of or additions to, or name changes for, those parties-in-interest whose names you provided.

SALLC may have provided, currently provide, or provided in the future, services to Clients' creditors, other parties-in-interest, and their respective attorneys and accountants in matters or engagements unrelated to this engagement. You agree that party shall not have responsibility to Clients relating to such professional services, nor any responsibility to use or disclose information SALLC possess by reason of such services, whether such information might, by itself or others, be considered material to Clients.

SALLC has performed an internal search for any such conflict of interest with respect to the Clients, its officers, directors, creditors, and other parties and has found no conflicts of interest.

### VI.    Term & Termination

This agreement shall remain in effect until the earlier of i) the completion of the Support Period of the Clients, ii) Execution of a comprehensive debt restructuring agreement, iii) Confirmation and completion of a plan of reorganization, iv) SALLC or Consultant's resignation, or v) Termination of the agreement by either party upon seven (7) calendar days' written notice.

SALLC may terminate this agreement without notice if Clients fail to make payments when due hereunder.

### VII.    Compensation

For services provided described herein, SALLC shall be compensated for the services of Consultant on an hourly fee bases of $690.00 per hour.

If, in consultant's sole judgment, it is determined that additional services are required to assist with the scope of this engagement as outlined by this Agreement, consultant may employ SALLC, which shall be compensated at the following hourly rates

| M. Christian Schwartz: | $470 per hour |
| Managers: | $350 per hour |
| Associates: | $280 per hour |
| Analysts: | $210 per hour |
| Administrative Staff | $95 per hour |

Clients shall be responsible for Consultant's and SALLC's reasonable and necessary documented out-of-pocket costs and expenses incurred in connect with this

4



**Schwartz** Associates

712 Main Street, Suite 1830, Houston, TX 77002

engagement. SALLC will provide to Clients detailed documentation of all expenses incurred.

SALLC acknowledges that, should Clients seek relief under Title 11 of the United States Code, and the Clients apply for authorization to retain and employ Consultant and SALLC, the Clients' payment of consultant's and SALLC's fees and expenses shall be subject to Bankruptcy Court approval. The provisions of this paragraph shall not limit nor restrict the indemnification and contribution provisions set forth in this Agreement.

**A. Retainer**

In order to commence the engagement, SALLC requires a retainer payment in the amount of $50,000 for the representation of Clients. The retainer will be held and applied to SALLC's final fees and expenses at the conclusion of the engagement. However, SALLC reserves the right to apply the retainer, at any time, to any outstanding fees and expenses owed to SALLC by Clients. SALLC must receive the retainer payment as well as the signed copy of this letter before the firm will take any action or be deemed to represent you. If this agreement is terminated prior to incurring fees and expenses in excess of retainer amount, the balance shall be refunded to Clients within thirty days.

**B. Invoicing**

Prior to filing bankruptcy invoices reflecting the services of SALLC, including the services of Consultant, shall be prepared and submitted monthly and paid no later than seven (7) business days thereafter through draws on the retainer. In the event the retainer balance is exhausted Client shall pay the invoice within seven (7) business days and deposit and replenish the retainer balance to $50,000.. In case of a disputed invoice, Client agrees to pay undisputed part of any fees. Expense charges shall be submitted to Clients no later than 30 days after expense was incurred or immediately upon approval of Bankruptcy Court. For any recurring monthly charges, payment is to be made on the first day of each month.  Upon filing bankruptcy, invoices shall be submitted and paid in accordance with the orders of the Bankruptcy Court.

**VIII.   Authorization**

The Clients represent that this Agreement outlines the engagement and has been approved by Clients' Boards of Directors or managers (as appropriate) and that the individual that signs this Agreement on behalf of the Clients has been duly authorized to do so, including express consent of the Litigation Settlement Trustees, Boards of Directors or Managers.

Further, it is acknowledged that future economic, operational performance or the confirmation success of a Chapter 11 plan of reorganization or liquidation cannot be guaranteed. The monthly fees and related expenses to be paid by Clients to Consultant and SALLC are not contingent upon the results of this engagement and neither consultant

5



**Schwartz** Associates

712 Main Street, Suite 1850, Houston, TX 77002

nor SALLC warrant or predict results or developments during the term of this engagement.

SALLC's maximum liability relating to services rendered under this letter (regardless of form of action, whether in contract, negligence, or otherwise) will be limited to the charges paid to SALLC for the portion of its services or work products giving rise to liability. In no event shall SALLC be liable for consequential, special, incidental, or punitive loss, damage or expense (including, without limitation, lost profits, opportunity costs, etc.) even if it has been advised of their possible existence.

Please acknowledge your agreement with the terms of this engagement letter and have your client do the same by signing and dating below. Once executed, a copy will be delivered to you via email. If you have any questions regarding this engagement letter, please call me at (832) 583-7021.

Very truly yours,

W. Marc Schwartz

**CONFIRMED AND AGREED**

InfoW, LLC

By: _____

Date: __4, 11, 22_____

InfoHealth, LLC

By: _____

Date: __4, 11, 22_____

Prison Planet TV, LLC

By: _____

Date: __4, 11, 22_____

Invoices should be sent to:

Name: _____

Email: _____

6

# EXHIBIT B

**Schwartz Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INFOW, LLC | ) | Case No. 22 - _____ |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |
| In re: | ) | |
| | ) | |
| IWHEALTH, LLC | ) | Case No. 22 - _____ |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |
| In re: | ) | |
| | ) | |
| PRISON PLANET TV, LLC | ) | Case No. 22 - _____ |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |

## <u>DECLARATION OF W. MARC SCHWARTZ</u>

I, W. Marc Schwartz, declare under penalty of perjury as follows:

1.      I am a CPA and a founder and chairman of Schwartz Associates, LLC ("<u>SALLC</u>"). On my behalf and SALLC, I am duly authorized to execute this declaration in support of the application filed by the debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>") seeking approval to retain me as the chief restructuring officer ("<u>CRO</u>") and SALLC to assist me in those duties.

2.      Except as otherwise noted, all facts set forth in this declaration are based upon my personal knowledge, upon the client and matter records of SALLC reviewed by me or SALLC staff under my supervision and direction or derived from information available to me that I believe to be true and correct.

## A. Application

3.      I have reviewed the Debtors' Emergency Application for Interim and Final Orders (A) Authorizing Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing Employment of Staff of Schwartz Associates, LLC in Discharge of Duties as Chief Restructuring Officer, and (C) Granting Related Relief (the "<u>Application</u>"). The Application accurately describes my proposed role as chief restructuring officer.

## B. Disclosure of Connections

4.      SALLC performed the following actions to determine whether it or any of its professionals has any disclosable connections to the Debtors, creditors, any other party in interest, their attorneys and accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any of the judges for the U.S. Bankruptcy Court for the Southern District of Texas:

   a.      First, SALLC staff sent emails to all email account holders within SALLC requesting the recipient respond to any representation known to be adverse or otherwise connected to the Debtors or their estates. Neither I nor my staff received any responses indicating that a conflict or connection exists.

   b.      Second, SALLC staff conducted a computerized search of all clients of SALLC using the list of parties in interest listed in <u>Schedule 1</u> hereto.

   c.      No connections or potential connections were identified.

5.      The search uncovered no connections other than (a) SALLC has worked with certain of the professionals on matters unrelated to the Debtors, and (b) SALLC has worked on matters before the U.S. Bankruptcy Court for the Southern District of Texas unrelated to the Debtors.

6.      I personally reviewed the list of parties in interest listed in Schedule 1 hereto. I do not have any connections with searched parties other than (a) I have worked with certain of the professionals on matters unrelated to the Debtors and (b) I have worked on matters before the U.S. Bankruptcy Court for the Southern District of Texas unrelated to the Debtors.

2

7.      The results of the foregoing connections search process confirm that neither I, SALLC, nor any of its employees or shareholders, to the best of my knowledge, have any disqualifying connections. Neither I nor SALLC (a) have any debt or equity securities in the Debtors, (b) are an insider of the Debtors, or (c) was a creditor of the Debtors on the Petition Date.

### C.  Affirmative Statement of Disinterestedness

8.      Based on the connections review conducted to date and described herein, to the best of my knowledge and insofar as I can ascertain, I and SALLC are "disinterested persons" within the meaning of Bankruptcy Code § 101(14), as modified by Bankruptcy Code § 1107(b), as required by Bankruptcy Code § 327(a).

9.      I am not a creditor, an equity security holder, or an insider of the Debtors; I am not and was not within 2 years before the Petition Date a director of the Debtors; and I do not have any interest materially adverse to the interests of the Debtors' bankruptcy estate or any class of creditors or equity security holders.

10.     SALLC is not a creditor, an equity security holder, or an insider of the Debtor; SALLC is not and was not within 2 years before the Petition Date an employee, officer, or director of the Debtors; and SALLC does not have any interest materially adverse to the interests of the Debtors' bankruptcy estates or any class of creditors or equity security holders.

11.     Notwithstanding the foregoing, SALLC and I were retained pursuant to the Engagement Letter prior to the Petition Date to prepare for the filing. My understanding is that Bankruptcy Code § 1107(b) provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."

003546

**D. Bankruptcy Rule 2016(b) Disclosures**

12.     Pursuant to Bankruptcy Code § 504 and Bankruptcy Rule 2016, neither I nor SALLC have shared or agreed to share (a) any of its compensation from the employment by the Debtor with any other persons or (b) any compensation any other persons have received, may have received, or will receive.

*[Remainder of Page Intentionally Left Blank]*

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 18, 2022,     By: _____

                                 W. Marc Schwartz

003548

## SCHEDULE 1 TO SCHWARTZ DECLARATION

### SEARCHED PARTIES

<u>Debtor & Professionals</u>

| | |
|---|---|
| InfoW, LLC | IWHealth, LLC |
| Prison Planet TV, LLC | Parkins Lee & Rubio LLP |

<u>Debtor's Equity & Trustees</u>

| | |
|---|---|
| Alexander E. Jones | Richard Schmidt |
| Robert Dew, Trustee | Russell Nelms |

<u>Creditors & Parties in Interest</u>

| | |
|---|---|
| Brennan Gilmore | Leonard Pozner |
| Carlee Soto-Parisi | Marcel Fontaine |
| Carlos Soto | Mark Barden |
| Christopher Sadowski | Neil Heslin |
| Dona Soto | Nicole Hockley |
| Erica Lafferty | PQPR Holdings Limited, LLC |
| Francine Wheeler | Robert Parker |
| Free Speech Systems, LLC | Scarlett Lewis |
| Ian Hockley | Veronique De La Rosa |
| Jacqueline Barden | William Sherlach |
| Jennifer Hensel | William Aledenberg |
| Jeremy Richman | Larry Klayman |
| Jillian Soto | Randazza Legal Group |

<u>Attorneys for Creditors and Parties in Interest</u>

| | |
|---|---|
| Kaster Lynch Farrar & Ball LLP | McDowell Heterhington LLP |
| Koskoff Koskoff & Bieder | The Akers Law Firm PLLC |
| Fertitta & Reynal LLP | Law Office of Ray Battaglia, PLLC |
| Pattis & Smith, LLC | Copycat Legal PLLC |
| Zeisler & Zeisler P.C. | Waller Lansden Dortch & Davis, |
| Jordan & Ortiz, P.C. | LLP |

<u>U.S. Bankruptcy Judges and Staff</u>

003549

Chief Judge David R. Jones          Tracey Conrad
Judge Marvin Isgur                  Jeannie Chavez
Judge Christopher M. Lopez          LinhThu Do
Judge Jeffrey P. Norman             Tyler Laws
Judge Eduardo V. Rodriguez          Kimberly Picota
Albert Alonzo                       Vriana Portillo
Ana Castro                          Mario Rios

U.S. Trustee Personnel

Alicia Barcomb                      Jayson B. Ruff
Jacqueline Boykin                   Millie Sall
Luci Johnson-Davis                  Patricia Schmidt
Hector Duran                        Christy Simmons
Barbra Griffin                      Gwen Smith
Brian Henault                       Stephen Statham
Linda Motton                        Christopher R. Travis
Ha Nguyen                           Clarissa Waxton
Glenn Otto                          Jana Whitworth
Yasmin Rivera

003550

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | |
|---|---|
| In re: | ) Case No. 22-60020 |
| | ) |
| INFOW, LLC, *et al.*, | ) Chapter 11 (Subchapter V) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

## NOTICE OF AMENDED AND RESTATED DECLARATION
## OF TRUST AND PLAN SUPPORT AGREEMENT

[Relating to ECF No. 6]

PLEASE TAKE NOTICE that on April 18, 2022, the above-captioned debtors and debtors-in-possession (the "Debtors") filed the *Debtors' Emergency Motion for Order Authorizing Appointment of Russell F. Nelms and Richard S. Schmidt as Trustees of the 2022 Litigation Settlement Trust and Granting Related Relief* [ECF No. 6] (the "Trustee Motion").[2]

PLEASE TAKE FURTHER NOTICE that after negotiations among the proposed Trustees, the Debtors, and the Third-Party Funding Contributors, the parties have agreed to amended and restated versions of the Declaration of Trust and Plan Support Agreement attached to the Trustee Motion (as amended and restated, the "Amended and Restated Plan Support Agreement" and "Amended and Restated Plan Support Agreement").

PLEASE TAKE FURTHER NOTICE that the Amended and Restated Declaration of Trust is attached hereto as **Exhibit A** hereto. The changes to the Declaration of Trust are reflected in **Exhibit B** hereto.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC, f/k/a Infowars, LLC (6916), IWHealth, LLC f/k/a Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005). The address for service to the Debtors is PO Box 1819, Houston, TX 77251-1819.

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Trustee Motion.

PLEASE TAKE FURTHER NOTICE that the Amended and Restated Plan Support Agreement is attached hereto as **Exhibit C** hereto. The changes to the Plan Support Agreement are reflected in **Exhibit D** hereto.

PLEASE TAKE FURTHER NOTICE that the proposed Trustees have agreed to enter into the Amended and Restated Plan Support Agreement and Amended and Restated Plan Support Agreement upon entry of an order authorizing their appointment pursuant to the Trustee Motion.

Dated: April 29, 2022                   **PARKINS LEE & RUBIO LLP**

_/s/ R.J. Shannon_
Kyung S. Lee
TX Bar No. 12128400
R.J. Shannon
TX Bar No. 24108062
Pennzoil Place
700 Milam Street, Suite 1300
Houston, TX 77002
Email: klee@parkinslee.com
      rshannon@parkinslee.com
Phone: 713-715-1660
Fax:    713-715-1699

_Proposed Counsel to the Debtors and_
_Debtors-in-Possession_

003552

## CERTIFICATE OF SERVICE

I hereby certify, a true and correct copy of the foregoing document was served (a) by the Court's CM/ECF system on all parties registered to receive such service and (b) on the following parties by email:

Kaster Lynch Farrar & Ball, LLP
Attn: Mark Bankson, William Ogden
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Koskoff Koskoff & Bieder
Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Fertitta & Reynal LLP
Attn: F. Andino Reynal
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Pattis & Smith, LLC
Attn: Norman A Pattis, Cameron L.
Atkinson
383 Orange Street
New Haven, CT 06511
npattis@pattisandsmith.com
catkinson@pattisandsmith.com

Zeisler & Zeisler P.C.
Attn: Eric Henzy
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Jordan & Ortiz, P.C.
Attn: Shelby Jordan
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Law Office of Ray Battaglia, PLLC
Attn: Ray Battaglia
66 Granburg Circle
San Antonio, TX
rbattaglialaw@outlook.com

McDowell Heterhington LLP
Attn: Avi Moshenberg, Nick Lawson,
Matthew Caldwell
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com
nick.lawson@mhllp.com
matthew.caldwell@mhllp.com

The Akers Law Firm PLLC
Attn: Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Copycat Legal PLLC
Attn: Daniel DeSouza
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Richard S. Schmidt
615 Leopard, #635
Corpus Christi, TX 78401
rss@judgerss.com

2

Russell F. Nelms
115 Kay Lane
Westworth Village, TX 76114
rfargar@yahoo.com

Attn: W. Marc Schwartz
Schwartz Associates
712 Main Street, Ste. 1830
Houston, TX 77002
MSchwartz@schwartzassociates.us

Matthew Okin
Okin Adams LLP
1113 Vine St., Ste. 240
Houston, TX 77002
mokin@okinadams.com

Office of the United States Trustee
Attn: Ha Minh Nguyen, Jayson Ruff
515 Rusk St
Ste 3516
Houston, TX 77002
ha.nguyen@usdoj.gov
jayson.b.ruff@usdoj.gov

Melissa Haselden
700 Milam, Suite 1300
Houston, TX 77002
mhaselden@haseldenfarrow.com

Cain & Skarnulis, PLLC
Attn: Ryan E. Chapple
303 Colorado St., Ste. 2850
Austin, TX 78701
rchapple@cstrial.com

Byman & Associates PLLC
Randy W. Williams
7924 Broadway, Suite 104
Pearland, TX 77581
rww@bymanlaw.com

J. Maxwell Beatty
The Beatty Law Firm PC
1127 Eldridge Pkwy, Ste. 300, #383
Houston, TX 77077
max@beattypc.com

Walston Bowlin Callendar, PLLC
Attn: Cliff Walston
San Felipe Street, Suite 300
Houston, TX 77027
cliff@wbctrial.com

*/s/ R. J. Shannon*
R. J. Shannon

3

# EXHIBIT A

**Amended and Restated Declaration of Trust**

# FIRST AMENDED AND RESTATED

# DECLARATION OF TRUST

# FOR THE

# 2022 Litigation Settlement Trust

---

BY AND AMONG

## DEBTORS:
## INFOW, L.L.C., IWHEALTH, L.L.C. AND
## PRISON PLANET TV, L.L.C.

AND

## THIRD-PARTY FUNDING CONTRIBUTORS

AND

## The 2022 LITIGATION SETTLEMENT TRUSTEES
## (AS NAMED HEREIN AND FROM
## TIME TOTIME)

Dated as of April 28, 2022

# DECLARATION OF TRUST

This First Amended and Restated Declaration of Trust (this "Amendment")[1] governing the 2022 Litigation Settlement Trust (the "Litigation Settlement Trust" or the "Trust")[2] dated as of April 28, 2022 (the "Amendment Date"), is entered into by and among the

   i.  Debtors InfoW, LLC (formerly known as Inforwars, Inc.), IWHealth, LLC (formerly known as Infowars Health, LLC) and Prison Planet TV, LLC ("PPTV") (IWI, IWHealth and PPTV collectively the "Debtors");

   ii.  Richard S. Schmidt and Russell F. Nelms, as successor trustees (the "Litigation Settlement Trustees"); and

   iii.  Alex Jones and Free Speech Systems, LLC (the "Third-Party Funding Contributor[s]").

## W I T N E S S E T H

WHEREAS the Litigation Settlement Trust was established and settled pursuant to that Declaration of Trust (the "Declaration," and, collectively with the Amendment, the "Agreement") dated April 14, 2022 (the "Trust Settlement Date"), executed by and among the Debtors, Robert Dew, as the initial trustee (the "Initial Trustee"), and the Third-Party Funding Contributor[s]; and

WHEREAS, on April 18, 2022 (the "Petition Date") each of the Debtors filed voluntary petitions for relief chapter 11, subchapter v, of title 11 of the United States Code (the "Bankruptcy Code"), commencing jointly administered cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court"); and

WHEREAS the Litigation Settlement Trust was established to facilitate the administration of the Chapter 11 Cases as directed by the Litigation Settlement Trustees and to pursue confirmation of a chapter 11 plan of reorganization in accordance with the terms of the PSA; and

WHEREAS the Debtors and the Third-Party Funding Contributor[s] desire the appointment of the Litigation Settlement Trustees as successors to the Initial Trustee[3];

---

[1] Capitalized terms used in this Agreement and not otherwise defined herein shall have the respective meanings ascribed to them in the Glossary of Defined Terms (attached hereto as Exhibit "A") or in that Plan Support Agreement, by and between the Debtors and the Third-Party Funding Contributor[s] (as may be amended from time to time, the "PSA").

[2] The Trust's federal tax ID # references the full name of the Trust as the "2022 FSS Litigation Settlement Trust" but is often referred to as the 2022 Litigation Settlement Trust, LST or simply "Trust" in various filings and related documents.

[3] Individually, each of the Litigation Settlement Trustees and the Initial Trustee may be referred to herein as a "Trustee" and collectively with any successor trustees may be referred to as the "Trustees."

WHEREAS the Litigation Settlement Trustees require certain amendments and revisions to the terms of the Declaration as set forth herein in this Amendment as a condition of their willingness to serve as trustees of the Litigation Settlement Trust; and

WHEREAS all other Parties to the Litigation Settlement Trust have approved the amendments;

NOW, THEREFORE, pursuant to Article 10.1(a) of the Declaration, the Debtors, the Third-Party Funding Contributor[s] (herein sometimes the "Settlors"), the Initial Trustee and the Litigation Settlement Trustees agree to this amended and restated declaration of trust as follows:

**ARTICLE 1**
**ESTABLISHMENT OF THE LITIGATION SETTLEMENT TRUST**

1.1     Declaration of Trust.  Pursuant to the Declaration, the Debtors and the Third-Party Funding Contributor[s] established the Litigation Settlement Trust, which shall be known as the "2022 Litigation Settlement Trust" on behalf of the Debtors' Estates[4] and the Estates' creditors the "Litigation Settlement Trust Beneficiaries" or "Beneficiaries") and the Litigation Settlement Trustees, as successors to the Initial Trustee, hereby accept such rights and properties assigned and transferred to them and the trust imposed upon them pursuant to this Agreement.

1.2     Litigation Settlement Trust Assets.

(a)     As of the Trust Settlement Date, the Third-Party Funding Contributor[s], in accordance with the Declaration, transferred, assigned, and delivered to the Initial Trustee, for the benefit of the Litigation Settlement Trust Beneficiaries, and the Initial Trustee has accepted the following assets (the "Assets"):

(i)     all of the ownership rights, title, and voting rights in and to the Debtors, provided that, subject to such assignment, Alex Jones, his affiliate Free Speech Systems, LLC, their agents, or anyone in any way related or affiliated to or related to them are barred and excluded from any active, direct or indirect control or participation in the management of any Debtor;

(ii)     the "Litigation-Settlement Expense Fund" of not less than an aggregate of $725,000.00 in cash, some of which has already been paid, designated to pay the costs of administration, including the Debtors' professionals, the Initial Trustee and the Litigation Settlement Trustees, and retention by the Trustees of all professionals deemed necessary to accomplish the purpose of this trust, including costs and expenses of the Chapter 11 Cases (as set forth on Exhibit B to the Declaration); and

---

[4] As used herein, "Estate(s)" shall refer to the estate created upon the commencement of the Chapter 11 Cases pursuant to and as defined in § 541 of the Bankruptcy Code.

(iii) the "<u>Funding Commitment</u>," pursuant to which, the Third-Party Funding Contributor[s] shall advance such funds as are necessary to fund the payment of the costs of administration of the Trust and the Chapter 11 Cases for a period of not less than 120 days, provided, however, that such Funding Commitment shall be subject to and limited by the terms and conditions set forth in the PSA.

(b)     Notwithstanding any provision of the Declaration to the contrary, all assets of the Debtors shall be deemed property of the Estates subject to entry of any final order of the Bankruptcy Court authorizing the sale, transfer, or other disposition of such assets, including but, not limited to, any order confirming a plan of reorganization providing for the vesting of such assets with the Litigation Settlement Trust or such other trust as may be established pursuant to such Plan.[5]  Further, the Litigation-Settlement Expense Fund and all the subsequent Funding Commitment shall be property of the Debtors' Estates to the extent such funds are budgeted by the Litigation Settlement Trustees in consultation with the Debtors' CRO for the costs of the administration of the Chapter 11 Cases including all professional fees incurred by the Debtors.

(c)     On or as promptly as practicable after entry of the Trustee Order (defined herein) the Debtors shall (i) deliver or cause to be delivered to the Litigation Settlement Trustees any and all documents (or copies thereof) to the extent relating to the Litigation Settlement Trust Claims held by the Debtors, their employees, agents, advisors, attorneys, accountants, or any other professionals hired by the Debtors and (ii) provide reasonable access to the Litigation Settlement Trustees and their advisors to such employees of the Debtors, their agents, advisors, attorneys, accountants, or any other professionals hired by the Debtors with knowledge of matters relevant to the Litigation Settlement Trust Claims for the purpose of enabling the Litigation Settlement Trustees to fulfill their obligations under this Agreement, including the liquidation of the Litigation Settlement Trust Claims.  The Debtors shall further facilitate access to the Litigation Settlement Trustees and their advisors to the employees, books and records of the Third-Party Funding Contributor[s] in connection with the obligations of the Litigation Settlement Trustees under this Agreement, including the settlement or defense and liquidation of the Litigation Settlement Trust Claims. All such information, disclosures, and documents shall be held in the utmost confidence, subject to a written confidentiality agreement approved by the bankruptcy court from time to time.

(d)     Upon execution of the Declaration, the Third-Party Funding Contributor[s] assigned to the Initial Trustee all governance rights as to each Debtor, which assignment of the governance excludes Alex Jones and his affiliate Free Speech Systems, LLC from any active, direct or indirect control or participation in the management of the Debtors.  As part of the assignment of governance, the Litigation Settlement Trustees, as successors to the Initial Trustee, shall be permitted to file any further Title 11 case the Litigation Settlement Trustees deem advisable or proper from time to time (other than any involuntary case against any Third-Party Funding Contributor) and to prosecute these Chapter 11 Cases as the sole and exclusive governing body of the Debtors.

---

[5] As used herein, the term "<u>Plan</u>" shall refer to any chapter 11 plan of reorganization or liquidation, as the case may be, proposed by the Debtors and confirmed in the Chapter 11 Cases by final order of the Bankruptcy Court.

(e)     At any time and from time to time on and after the Trust Settlement Date, the Debtors and the Third-Party Funding Contributor[s] agree (i) at the reasonable request of the Litigation Settlement Trustees to execute and/or deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed) and (ii) to take, or cause to be taken, all such further actions as the Litigation Settlement Trustees may reasonably request, in each case, in order to evidence or effectuate the transfer of the Assets to the Litigation Settlement Trustees and to otherwise carry out the intent of the Agreement.

(f)     All property, cash and rights described in this Section 1.2 as property of the Litigation Settlement Trust are collectively referred to herein as the "Assets." Upon the transfer of any cash assets to the Litigation Settlement Trust, the Third-Party Funding Contributors shall have no interest in or obligation with respect to such assets.  Notwithstanding any provision of this Agreement except Section 2.2 and Section 4.1(b), upon deposit and receipt of fund from the Third-Party Funding Contributors, in no event shall any such funds be returned to any Third-Party Funding Contributor(s).

1.3     Funding of the Litigation Settlement Trust.

(a)     All costs and expenses associated with administration of the Litigation Settlement Trust and all costs and expenses of administration of the Debtors' operations and the Chapter 11 Cases shall paid by the Litigation Settlement Trustees and the Debtors, respectively, from the Litigation-Settlement Expense Fund and subsequent Funding Commitment payments pursuant to a budget established by the Litigation Settlement Trustees in consultation with the Debtors' CRO.

(b)     In accordance with this Agreement and the Funding Commitment, and subject to the terms and conditions of the PSA, the Third-Party Funding Contributor[s] shall from time to time hereafter deliver additional Cash to the Litigation-Settlement Expense Fund to the extent requested by the Litigation Settlement Trustees.  Specifically, from the Petition Date until the earlier of (x) 120 days after the Petition Date, or (y) the effective date of any Plan, the Third-Party Funding Contributor[s] shall contribute such funding as is necessary to maintain a cash balance of $200,000.00 in the Litigation-Settlement Expense Fund.  Such additional funding shall be provided in Cash to the Litigation-Settlement Expense Fund by the Third-Party Funding Contributor[s] within five (5) business days of receipt of a written request by the Litigation Settlement Trustees.  To the extent that the Third-Party Funding Contributor[s] fail to make such Cash deposits within the applicable five-day period, the Litigation Settlement Trustees, in their sole discretion, may move to dismiss the Chapter 11 Cases or covert the same to cases under chapter 7 of the bankruptcy and the seeking of such relief shall not constitute a breach of any obligation under this Agreement or the PSA. In the sole discretion of the Litigation Settlement Trustees, the five-day period may be extended to accommodate funding reasonably anticipated from the Third-Party Funding Contributor[s].

(c)     The Litigation Settlement Trustees shall use the Litigation-Settlement Expense Fund consistent with the purposes of this Litigation Settlement Trust and subject to the terms and conditions of this Agreement and any the PSA.  Except as may be agreed and set forth under a Plan, none of the Debtors nor the Third-Party Funding

Contributor[s] shall have any further obligation to provide any funding with respect to the Litigation Settlement Trust other than as set forth herein and in the PSA.

## ARTICLE 2
## TRUSTEES

2.1 <u>Initial Trustee</u>. This Trust shall be initially administered by the Initial Trustee designated by the Third-Party Funding Contributor[s] upon the initial funding. The sole duty of the Initial Trustee shall be to preserve the Assets. The Initial Trustee shall serve until the earlier of (i) entry of the Trustee Order (defined herein), at which time the Initial Trustee shall resign and have no further rights or obligations under this Agreement, or (ii) termination of this Litigation Settlement Trust.

(a) The Initial Trustee shall have only the following rights and authority unless additional authority is expressly approved by all parties to the Agreement:

(i) To receive the Assets and all contributions of Cash, if banking privileges are obtained for such deposits;

(ii) To safeguard all Assets and Cash and open bank accounts or otherwise provide for the handling and accounting of all transactions prior to the approval and appointment of the Litigation Settlement Trustees;

(iii) To act on behalf of all of the Debtors as the sole officer and director of each respective Debtor, including the authority to authorize the filing of the Chapter 11 Cases for each or all of the Debtors;

(iv) To cause to be made, or authorize any funds-holder to make, distributions of cash only with respect to retention of counsel and other case professionals retained by the Debtors in connection with the filing of the Chapter 11 Cases, which shall be expressly authorized to include such related expenses and execute the retention agreement of such counsel;

(v) To turn-over, or cause to be turned over by any funds-holder, all such Assets to the Litigation Settlement Trustees upon their appointment and approval, at which time all duties, rights and responsibilities shall end, and provided, however, all indemnity, exculpations, releases and protections of the Trustees shall apply equally to the Initial Trustee, who shall have no liability whatsoever for service as the Initial Trustee except for willful fraud or theft.

(vi) The Third-Party Funding Contributor[s] shall be solely responsible for all compensation of the Initial Trustee who shall not be compensated by this Trust.

(b)     Upon entry of the Trustee Order, the Litigation Settlement Trustees shall collect and accept title to the Assets and any (i) income earned with respect to, derivative of, or attributable to the Assets; or (ii) proceeds or payments made on account of the Assets (collectively, "Litigation-Settlement Proceeds"), which shall thereupon be added to the Assets of the Litigation Settlement Trust and held as a part thereof (and which title shall be vested in the Litigation Settlement Trustees).

2.2     Litigation Settlement Trustees.   In accordance with this Agreement, Richard S. Schmidt and Russell F. Nelms, two individuals that are each citizens of the State of Texas, are hereby named and appointed as Litigation Settlement Trustees, which appointment shall become effective upon entry of an order of the Bankruptcy Court approving such appointment (the "Trustee Order") and the terms of this Amendment, which order shall be in form and substance agreeable to the Litigation Settlement Trustees.  In the event that the Trustee Order is not entered within 45 days following the Trust Settlement Date, this Litigation Settlement Trust shall terminate, and all funds remaining in the Litigation-Settlement Expense Fund shall be returned to the respective Third-Party Funding Contributor.  Upon entry of and subject to terms of the Trustee Order, the Litigation Settlement Trustees shall promptly commence service and have all the rights, powers, and duties set forth herein and as otherwise provided by law, which shall be broadly and liberally construed to accomplish the purpose of this Litigation Settlement Trust, including:

(a)     All of the powers and duties of managers of the Litigation Settlement Trust and of the Debtors for all purposes, including filing of any proceeding, case, suit, or other legal proceeding; provided, however, that such authority as managers of the Debtors may include appropriate delegation of authority to the Chief Restructuring Officer (the "CRO") as the principal officer of the Debtors, as Debtors-in-Possession, and shall not abridge the CRO's obligations as a fiduciary of the Debtors and their Estates, or any other obligations of the CRO as an Estate professional under section 327 of the Bankruptcy Code;

(b)     All of the powers referenced, granted, or provided herein or as may be required to perform the duties of a Trustee provided herein;

(c)     All of the powers and duties provided under the laws of the State of Texas; and

(d)     All other powers and duties set out in this Agreement, including those powers set out in §3.2 hereof.

Each of the Litigation Settlement Trustees is willing and does hereby accept the appointment to act and serve as Litigation Settlement Trustees of the Litigation Settlement Trust.

2.3     Tenure, Removal, and Replacement of the Litigation Settlement Trustees.

(a)     The Litigation Settlement Trustees (each, a "Trustee" and, together, the "Trustees") will each serve until resignation pursuant to subsection (b) below, removal pursuant to subsection (c) below, or death (if applicable).

(b)     A Trustee may resign by giving not less than ten (10) days' prior written notice to the Debtors.  Such resignation will become effective on the day specified in such notice.

(c)     A Trustee may be removed by order of the Bankruptcy Court.  Any motion to remove a Trustee shall be "for cause" shown by clear and convincing evidence, and all costs and fees for the successful defense of any such action for cause shall be the obligation of the Litigation Settlement Trust.

(d)     In the event of a vacancy in the position of a Trustee (whether by removal, resignation, or (if applicable) death), the vacancy will be filled by the appointment of a successor trustee by (i) the Third-Party Funding Contributor[s], and the acceptance by the successor trustee in accordance with Section 2.3(e) or (ii) an order of the Bankruptcy Court after an opportunity for a hearing; *provided, however*, that only the Debtors shall have standing to seek such an order.  If a successor trustee is appointed by resolution, as provided in clause (i) of the preceding sentence, and such appointment is accepted by the successor trustee, the Debtors shall file notice of such appointment and acceptance with the Bankruptcy Court, which notice will include the name, address, and telephone number of the successor trustee; provided that the filing of such notice shall not be a condition precedent to the vesting in the successor Trustee of all the estates, properties, rights, powers, trusts, and duties of its predecessor.

(e)     Any successor trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations of the predecessor Trustee hereunder and thereupon the successor trustee shall, without any further act, become vested with all the estates, properties, rights, powers, privileges, authorities, and duties of its predecessor in the Litigation Settlement Trust hereunder with like effect as if originally named herein and the successor trustee will not be liable personally for any act or omission of the predecessor Trustee.

(f)     Upon the appointment of a successor trustee, the predecessor Trustee (or the duly appointed legal representative of a deceased Trustee) shall, if applicable, when requested in writing by the successor trustee, execute and deliver an instrument or instruments conveying and transferring to such successor trustee upon the trust herein expressed, without recourse to the predecessor Trustee, all the estates, properties, rights, powers, and trusts of such predecessor Trustee, and shall duly assign, transfer, and deliver to such successor trustee all property and money held hereunder, and all other assets and documents relating to the Litigation Settlement Trust then in its possession and held hereunder.

(g)     The death, resignation, retirement, removal, bankruptcy, dissolution, liquidation, incompetence, or incapacity to perform the duties of a Trustee shall not operate to dissolve, terminate, or annul the Litigation Settlement Trust.

2.4     Compensation of the Trustees.

(a)     As compensation, the Litigation Settlement Trustees shall be entitled to receive initially an hourly rate set out below for all time involving Trustee services (or such other amount as agreed to from time to time by the Litigation Settlement Trustees and the

Debtors or as approved by the Bankruptcy Court, as the case may be), payable for the performance of services provided under and pursuant to this Agreement, and shall be reimbursed for all reasonable and documented expenses incurred in connection with the performance of its services hereunder.

(b)     The Litigation Settlement Trustees shall be entitled to receive compensation for services on an hourly rate and shall be reimbursed for all reasonable and documented expenses incurred in connection with the performance of their services hereunder, or as may be ordered by the Bankruptcy Court.  For notice purposes only, the Litigation Settlement Trustees shall file in the Bankruptcy Court a monthly fee statement not later than the 15th day of each month following the months such services were rendered and shall be entitled to receive payment from the Litigation-Settlement Expense Fund on the 20th day of said month.

2.5     No Bond. The Trustees shall serve without bond.

# ARTICLE 3
## DUTIES AND LIMITATIONS OF TRUSTEES

3.1     Role of the Litigation Settlement Trustees.  In furtherance of and consistent with the purpose of this Litigation Settlement Trust, the Litigation Settlement Trustees shall engage in acts that would constitute ordinary performance of the obligations of a trustee under a Texas law, make timely distributions of Cash and not unduly prolong the duration of the Litigation Settlement Trust.  In all circumstances, the Litigation Settlement Trustees shall act in a manner reasonably expected to maximize the value of the Assets for the Litigation Settlement Trust Beneficiaries and in furtherance of the purpose of the Litigation Settlement Trust.

3.2     Authority of Litigation Settlement Trustees.  Subject to any limitations contained herein, the Litigation Settlement Trustees shall have the full power, authority, and discretion to take any and all actions as are necessary or advisable to carry out their responsibilities hereunder and to effectuate the purposes of the Litigation Settlement Trust, including, without limitation:

(a)     full power, authority, and discretion to interpret, construe, and decide all questions and issues arising under any provision of this Agreement, and the decisions of the Litigation Settlement Trustees with respect to all such matters shall be final, conclusive, and binding on all parties who have an interest in the Litigation Settlement Trust;

(b)     receiving (and accepting), managing, supervising, and protecting the assets of the Litigation Settlement Trust on behalf of and for the benefit of the Litigation Settlement Trust Beneficiaries;

(c)     holding legal title to any and all rights of the Litigation Settlement Trust Beneficiaries in or arising from the Assets, and protecting and enforcing the rights to the Assets vested in the Litigation Settlement Trustees by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law, and general principles of equity;

(d)     commencing and/or pursuing any and all actions involving Assets

that could arise or be asserted at any time;

(e)  distributing to some or all of the Litigation Settlement Trust Beneficiaries (as deemed appropriate by the Litigation Settlement Trustees) information regarding the Litigation Settlement Trust Claims upon executing confidentiality agreements with such Litigation Settlement Trust Beneficiaries satisfactory to the Litigation Settlement Trustees in connection therewith, and the Litigation Settlement Trustees shall have the full power, authority, and discretion to withhold or restrict the delivery of any such information to any Litigation Settlement Trust Beneficiary if the Litigation Settlement Trustees determine in their reasonable discretion that such action is in the best interests of the Litigation Settlement Trust;

(f)  making all necessary filings in accordance with any applicable law, statute or regulation, and in consultation with counsel, seeking any advice or determination that may be necessary or appropriate under any such laws, statutes, or regulations;

(g)  filing of all required tax and information returns and paying of taxes and all other obligations of the Litigation Settlement Trust;

(h)  requesting any appropriate tax determination with respect to the Litigation Settlement Trust;

(i)  paying all expenses and making all other payments relating to any Assets of the Litigation Settlement Trust;

(j)  obtaining insurance coverage with respect to (i) the liabilities and obligations of the Trustees under this Agreement (in the form of an errors and omissions policy or otherwise) and (ii) real and personal property, which may become Assets, if any;

(k)  negotiating, receiving, or accepting of the assignment or transfer of claims, rights, suits, judgments, causes of action, recoveries and/or proceeds therefrom, from the holders thereof, to the extent that an assignment and/or transfer to the Litigation Settlement Trust is deemed to be in the best interests of maximizing the value of the Asset;

(l)  determining the amount of consideration to be provided for the assignment or transfer of claims, rights, suits, judgments, causes of action, recoveries, and/or proceeds therefrom;

(m)  compromising, adjusting, arbitrating, suing on or defending, abandoning, or otherwise dealing with and settling claims in favor of or against the Litigation Settlement Trust as the Litigation Settlement Trustees shall deem advisable;

(n)  determining and satisfying any and all liabilities created, incurred or assumed by the Litigation Settlement Trust;

(o)  retaining and paying such law firms, investment bankers, accounting firms, experts, advisors, consultants, investigators, appraisers, agents, employees, or other professionals and third parties as the Litigation Settlement Trustees may deem necessary or appropriate to assist the Litigation Settlement Trustees in carrying out the Litigation Settlement

Trustees' powers and duties under this Agreement. The Litigation Settlement Trustees may commit the Litigation Settlement Trust to and shall pay all persons or entities retained or employed by the Litigation Settlement Trust reasonable compensation for services rendered and reasonable expenses incurred;

(p)     investing any moneys held as part of the assets of the Litigation Settlement Trust in accordance with, and subject to the limitations of, the terms of <u>Section 3.7</u> and <u>3.8</u> hereof;

(q)     performing such other responsibilities as may be vested in the Litigation Settlement Trustees pursuant to this Agreement, orders of the Bankruptcy Court, or as may be necessary and proper to discharge the duties and obligations of a debtor-in-possession or estate fiduciary; and

(r)     conducting the affairs of the Litigation Settlement Trust and operating the Litigation Settlement Trust in a manner consistent with the terms of this Agreement.

3.3     <u>Payment of Litigation Settlement Trust Expenses</u>.

(a)     The Litigation Settlement Trustees shall maintain the Litigation-Settlement Expense Fund and expend the assets of the Litigation-Settlement Expense Fund as are reasonably necessary to meet contingent liabilities and to maintain the value of the Assets during these Chapter 11 Cases, and to pay reasonable administrative expenses (including but not limited to, (i) costs and expenses of the Litigation Settlement Trustees, (ii) reasonable fees, costs, and expenses of professionals retained by the Litigation Settlement Trustees, (iii) any taxes imposed on the Litigation Settlement Trust, (iv) fees and expenses in connection with, arising out of or related to the Litigation Settlement Trust Claims or the performance by the Litigation Settlement Trustees of their duties hereunder in accordance with this Agreement, and (v) to satisfy other liabilities incurred or assumed by the Litigation Settlement Trust (or to which the Assets are otherwise subject) in accordance with this Agreement (collectively the "<u>Litigation Trust Expenses</u>").

(b)     The Litigation Settlement Trustees may retain from the Litigation Settlement Trust Proceeds and add to the Litigation-Settlement Expense Fund, at any time and from time to time, such amounts as the Litigation Settlement Trustees deems reasonable and appropriate to ensure that the Litigation-Settlement Expense Fund will be adequate to meet the expenses and liabilities described in <u>Section 3.3(a)</u>.

(c)     Notwithstanding any other provision of this Agreement to the contrary, the Litigation Settlement Trustees shall not be required to take any action or enter into or maintain any claim, demand, action, or proceeding relating to the Litigation Settlement Trust unless it shall have sufficient funds in the Litigation-Settlement Expense Fund for that purpose.

3.4     <u>Books and Records</u>.

(a)     The Litigation Settlement Trustees shall maintain books and records relating to the assets and income of the Litigation Settlement Trust and the payment of

expenses of, liabilities of, or claims against or assumed by the Litigation Settlement Trust in such detail and for such period of time as may be necessary to enable the Litigation Settlement Trustees to make full and proper accounting in respect thereof in accordance with the provisions hereof and to comply with applicable provisions of law. Nothing in this Agreement requires the Litigation Settlement Trustees to file any accounting or seek approval of any court with respect to the administration of the Litigation Settlement Trust, or as a condition for any payment or distribution out of the assets of the Litigation Settlement Trust.

(b)     Upon distribution of all Litigation-Settlement Proceeds and all other Cash from the Litigation Settlement Trust or the termination of the Litigation Settlement Trust, the Litigation Settlement Trustees shall retain the books, records, and files which shall have been delivered to or created by the Litigation Settlement Trustees for a period of two (2) years.

3.5     <u>Compliance with Laws</u>.  Any and all distributions of Assets and proceeds of borrowings, if any, shall follow applicable laws, including, without limitation, applicable federal and state securities laws.

3.6     <u>Reliance by Litigation Settlement Trustees</u>.  Except as otherwise provided herein:

(a)     the Litigation Settlement Trustees may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Litigation Settlement Trustees to be genuine and to have been signed or presented by the proper party or parties;

(b)     persons dealing with the Litigation Settlement Trustees shall look only to the Assets to satisfy any liability incurred by the Litigation Settlement Trustees to such Person in carrying out the terms of this Agreement, and neither the Litigation Settlement Trustees nor any member of the Debtors shall have any personal obligation to satisfy any such liability; and

(c)     the Litigation Settlement Trustees shall have the right at any time to seek instructions concerning the administration of this Agreement from the Bankruptcy Court or, in the event that the Chapter 11 Cases are closed, any Texas court.

3.7     <u>Standard of Care; Exculpation</u>.  To the fullest extent permitted by law, neither the Litigation Settlement Trustees or persons acting under the direction of the Litigation Settlement Trustees, nor any of their respective members, designees or professionals, nor any of their duly designated agents or representatives, shall be liable, responsible, or accountable in damages or otherwise for any loss, damage, or claim incurred by reason of any act or omission taken or omitted to be taken by any other Trustee or such Trustee's agents or representatives, nor shall the Litigation Settlement Trustees be liable, responsible, or accountable in damages or otherwise for any loss, damage, or claim incurred by reason of any act or omission taken or omitted to be taken by the Litigation Settlement Trustees in good faith, provided, however, that such limitation of liability shall not apply to any acts or omissions that shall be shown by clear and convincing evidence to have resulted from each such Trustee's own bad faith, willful

misconduct, gross negligence, actual fraud, or knowing violation of law. Each of the Litigation Settlement Trustees may, in connection with the performance of their respective functions, and in each of their sole and absolute discretion, consult with their respective attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, neither Litigation Settlement Trustee shall be under any obligation to consult with their respective attorneys, accountants, financial advisors, or agents, and the good faith determination not to do so shall not result in the imposition of liability on either of the Litigation Settlement Trustees or, as applicable, their respective designees.

# ARTICLE 4
# DISTRIBUTIONS

4.1     Distributions Subject to Confirmation of Plan.

(a)     The Litigation Settlement Trustees shall distribute the Assets to the Litigation Settlement Trust Beneficiaries or to such other parties as the case may be at such times and in such manner and amounts as shall be provided in any Plan or other order of the Bankruptcy Court.

(b)     Except as otherwise ordered by the Bankruptcy Court, in the event that the Litigation Settlement Trust shall terminate prior to confirmation of a Plan, each respective Third-Party Funding Contributor shall be entitled to receive its pro-rata share of any residual Assets, if any, and provided, however, that all costs of administration of the Litigation Settlement Trust and the Chapter 11 Cases shall be chargeable against and paid from such Assets prior to any distribution.

(c)     Notwithstanding any other provision of this Agreement, the cost of administration of the Litigation Settlement Trust shall be charged against and shall be paid prior to any distributions from the Assets. Such costs shall include, but are not limited to:  (i) the Litigation Trust Expenses, and (ii) other liabilities incurred or assumed by the Litigation Settlement Trustees in their capacity as trustees (or to which the Assets are otherwise subject) in accordance with this Agreement. Further, the Litigation Settlement Trustees shall be entitled to hold such amounts in reserve as they deem reasonably necessary to meet future expenses, contingent liabilities and to maintain the value of the Assets during the term of the Litigation Settlement Trust.

# ARTICLE 5
# INDEMNIFICATION

5.1     Indemnification of Litigation Settlement Trustees

(a)     To the fullest extent permitted by law, the Litigation Settlement Trust, to the extent of its Assets, shall indemnify and hold harmless each present and former Trustee and each of their respective directors, members, shareholders, partners, officers, agents, employees, attorneys, and other professionals (collectively, the "Indemnified Persons") from and against any and all losses, costs, damages, reasonable and documented out-of-pocket expenses (including, without limitation, reasonable fees and expenses of attorneys and other advisors and

any court costs incurred by any Indemnified Person) or liability arising out of or relating to the Litigation Settlement Trust, the Litigation Settlement Trust Interests, the Assets, the Litigation Settlement Trust Claims, or any acts or omissions of any Indemnified Person in their capacity as a Litigation Settlement Trustee or agent, employee, or representative thereof; *provided, however,* that such act or omission was reasonably believed to be within the scope of authority granted to such Person under this Agreement and did not constitute bad faith, gross negligence, fraud, willful misconduct, or knowing violation of law established by clear and convincing evidence.

(b)     In their sole discretion, the Litigation Settlement Trustees may pay in advance or reimburse reasonable and documented out-of-pocket expenses (including reasonable costs of defense) incurred by an Indemnified Person who is or is threatened to be named or made a defendant or a respondent in a proceeding concerning the business and affairs of the Litigation Settlement Trust.  To the extent that any such expenses are paid or reimbursed in advance of the final disposition of any such action, suit or proceeding, the Indemnified Person shall provide the Litigation Settlement Trust with an undertaking by or on behalf of such Indemnified Person to repay such amount if it shall ultimately be determined that such Person is not entitled to be indemnified by the Litigation Settlement Trust as authorized in this Article 5. Such expenses (including attorneys' fees) may be so paid upon such terms and conditions, if any, as the Litigation Settlement Trustees deem appropriate.

(c)     Any Indemnified Person may waive the benefits of indemnification under this Article 5, but only by an instrument in writing executed by such Indemnified Person.

(d)     The Litigation Settlement Trustees shall have power to purchase and maintain insurance on behalf of any potentially Indemnified Person against any liability asserted against such Person and incurred by such Person in connection with such Person's obligations under this Agreement, whether or not such Person would be entitled to indemnification against such liability under the provisions of this Article 5.

(e)     The rights to indemnification under this Article 5 are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including without limitation common law rights to indemnification or contribution.  Nothing in this Article 5 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under this Agreement or any other agreement or instrument to which that Person is a party.

## ARTICLE 6
## REPORTS

### 6.1     Financial, Tax, and Other Information.

(a)     The Litigation Settlement Trustees shall be responsible for filing all federal, state, and local tax returns for the Litigation Settlement Trust and paying any taxes imposed on the Litigation Settlement Trust, which amounts shall be funded solely from Assets. The Litigation Settlement Trustees shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority.

6.2    <u>Other Required Reports</u>.

(a)    Promptly following the occurrence of a material event or change which effects either the Litigation Settlement Trust or the rights of the Litigation Settlement Trust Beneficiaries hereunder, the Litigation Settlement Trustees shall cause to be prepared and delivered to the Litigation Settlement Trust Beneficiaries notice of such occurrences.

(b)    The Litigation Settlement Trustees shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Litigation Settlement Trust that are required by any governmental unit or regulatory agency.

6.3    <u>Certain Non-Public Information</u>.  As provided in ¶ 1.2(c) the Litigation Settlement Trustees may deliver certain non-public information to one or more Litigation Settlement Trust Beneficiaries and such delivery shall in no way entitle any other Litigation Settlement Trust Beneficiary to receive such information.  Notwithstanding anything in this Agreement to the contrary, the Litigation Settlement Trustees may, in their sole discretion, withhold information from any Litigation Settlement Trust Beneficiary if the Litigation Settlement Trustees believes in good faith that the delivery of such information to such Litigation Settlement Trust Beneficiary (i) is or would be prohibited by any agreement with a Third-Party or (ii) is not in the best interest of the Litigation Settlement Trust or the purpose of maximizing the value of the assets of the Litigation Settlement Trust or (iii) could damage or prejudice the Litigation Settlement Trust, the Assets or the business, operations, or purpose of the Litigation Settlement Trust.

6.4    <u>Electronic Reporting.</u>  Notwithstanding anything herein to the contrary, the Litigation Settlement Trustees may post any report, notice, or other information required to be provided to the Litigation Settlement Trust Beneficiaries on a web site maintained by the Litigation Settlement Trustees in lieu of actual delivery of such report, notice, or other information to the Litigation Settlement Trust Beneficiaries, subject to providing notice that such a procedure is being (or will be) implemented.

## ARTICLE 7
## TERM; TERMINATION OF THE LITIGATION SETTLEMENT TRUST

7.1    <u>Term; Termination of the Litigation Settlement Trust</u>.The Litigation Settlement Trust shall continue for such time as is reasonably necessary to accomplish its purposes as set forth in this Agreement, provided, however, that, except as otherwise ordered by the Bankruptcy Court or as set forth in a Plan, the Litigation Settlement Trust shall be terminated upon the occurrence of the following:

(a)    Dismissal of the Chapter 11 Cases;

(b)    Conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; or

(c)    The effective date (the "<u>Effective Date</u>") of a Plan.

7.2 <u>Continuance of Trust for Winding Up</u>. Notwithstanding the termination of the Litigation Settlement Trust, the Litigation Settlement Trustees shall continue to act as Trustees and shall have such powers and be authorized to take such actions as are reasonably necessary to wind-down the affairs of the Litigation Settlement Trust, provided that such powers and actions shall not be inconsistent with the terms of this Agreement or applicable law. Prior to the final distribution of any of the residual Assets of the Litigation Settlement Trust, the Litigation Settlement Trustees shall be entitled to reserve from such Assets any and all amounts required to provide for their own costs and expenses, in accordance with section 4.1 herein, until such time as the winding-up of the Litigation Settlement Trust is completed. Upon termination of the Litigation Settlement Trust, the Litigation Settlement Trustees shall retain for a period of two (2) years the books, records, the Litigation Settlement Trust, and certificates and other documents and files that have been delivered to or created by the Litigation Settlement Trustees. At the Litigation Settlement Trustees' discretion, all of such records and documents may, but need not, be destroyed at any time after two years from the completion and winding-up of the affairs of the Litigation Settlement Trust. Except as otherwise specifically provided herein, upon the termination of the Litigation Settlement Trust, the Litigation Settlement Trustees shall have no further duties or obligations hereunder.

## ARTICLE 8
## AMENDMENT AND WAIVER

8.1 <u>Amendment and Waiver</u>. The Litigation Settlement Trustees, with the consent of the Third-Party Funding Contributors, up to and until entry of an order confirming a Plan in these Chapter 11 Cases, may amend, supplement or waive any provision of, this Agreement, without notice to or the consent of any Litigation Settlement Trust Beneficiary or the approval of the Bankruptcy Court: (i) to cure any ambiguity, omission, defect, or inconsistency in this Agreement, provided that such amendments, supplements, or waivers shall not materially modify the rights, duties, or obligations of the Litigation Settlement Trustees under this Agreement; (ii) to comply with any requirements in connection with maintaining any exemptions from or exceptions to the registration or reporting requirements of the Exchange Act, the Trust Indenture Act, or the Investment Company Act as deemed necessary or appropriate from time to time by the Litigation Settlement Trustees; and (iii) to evidence and provide for the acceptance of appointment hereunder by a successor trustee in accordance with the terms of this Agreement or a Plan.

## ARTICLE 9
## MISCELLANEOUS PROVISIONS

9.1 <u>Reimbursement of Trust Litigation-Settlement Costs</u>. If the Litigation Settlement Trustees, the Debtors, or the Litigation Settlement Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Agreement or the enforcement thereof, the Litigation Settlement Trustees, the Debtors, or the Litigation Settlement Trust, as the case may be, shall be entitled to collect any and all costs, reasonable and documented out-of-pocket expenses, and fees, including attorneys' fees, from the non-prevailing party incurred by the Litigation Settlement Trustees, the Debtors, or the Litigation Settlement Trust, as the case may be, in connection with such dispute or enforcement action.

9.2 <u>Laws as to Construction</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas and U.S. bankruptcy laws, as applicable, without regard to whether any conflicts of law would require the application of the law of another jurisdiction.

9.3 <u>Jurisdiction</u>. Without limiting any Person or entity's right to appeal any order of the Bankruptcy Court or to seek withdrawal of the reference with regard to any matter, and subject to the rights of the Litigation Settlement Trustees pursuant to Section 2.3(b) of this Agreement, (i) prior to the closure of the Chapter 11 Cases (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (b) any and all actions related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and (ii) following the closure of the Chapter 11 Cases, (x) the districts courts for Texas shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (y) any and all actions related to the foregoing shall be filed and maintained only in a Texas federal district court, and the parties, including the Litigation Settlement Trust Beneficiaries, hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and the federal district courts of Texas, as applicable.

9.4 <u>Severability</u>. If any provision of this Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement , or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

9.5 <u>Notices</u>. All notices, requests, or other communications to the parties hereto shall be in writing and shall be sufficiently given only if (i) delivered in person; (ii) sent by electronic mail or facsimile communication (as evidenced by a confirmed fax transmission report); (iii) sent by registered or certified mail, return receipt requested; or (iv) sent by commercial delivery service or courier. Until a change of address is communicated, as provided below, all notices, requests, and other communications shall be sent to the parties at the following addresses or facsimile numbers:

**If to the Initial Trustee Robert Dew**:

Kyung S. Lee
Parkins Lee & Rubio LLP
Pennzoil Place-13th Floor
700 Milam
Houston, Texas 77002
klee@parkinslee.com

**If to the Litigation Settlement Trustees**:

Matthew S. Okin
Okin Adams LLP
1113 Vine St. Suite 240
Houston, TX 77002
mokin@okinadams.com

**If to Debtors**:

To: Marc Schwartz
Chief Restructuring Officer
of the Debtors
Schwartz Associates LLC
712 Main Street, Ste 1830
Houston, Texas 77002

**With a copy to:**

Kyung S. Lee
Parkins Lee & Rubio LLP
Pennzoil Place-13[th] Floor
700 Milam
Houston, Texas 77002
klee@parkinslee.com

**If to Free Speech Systems, LLC**
**As a Third-Party Funding Contributor**

To: Ray Battaglia
rbattaglialaw@outlook.com

**If to Alex Jones**
**As a Third-Party Funding Contributor**

To: Shelby A. Jordan
sjordan@jkhwclaw.com

All notices shall be effective and shall be deemed delivered (i) if by personal delivery, delivery service or courier, on the date of delivery; (ii) if by electronic mail or facsimile communication, on the date of receipt or confirmed transmission of the communication; and (iii) if by mail, on the date of receipt. Any party from time to time may change its address, facsimile number, or other information for the purpose of notices to that party by giving notice specifying such change to the other party hereto.

9.6 _Fiscal Year_. The fiscal year of the Litigation Settlement Trust will begin on the first day of January and end on the last day of December of each year.

9.7     Headings.  The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

9.8     Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

9.9     Confidentiality.  The Litigation Settlement Trustees, and each successor trustee and each member of each Debtor and each successor member of each Debtor (each a "Covered Person") including any member or counsel to either as well as any member of any Committee Representative having access to information defined below shall, during the period that they serve in such capacity under this Agreement and following either the termination of this Agreement or such individual's removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the assets of the Litigation Settlement Trust relates or of which it has become aware in its capacity (the "Information"), except to the extent disclosure is first obtained by a federal court and is shown to be required by applicable law, order, regulation, or legal process. In the event that any Covered Person is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand, or similar legal process) to disclose any Information, such Covered Person shall notify the Debtors reasonably promptly (unless prohibited by law) so that the Debtors may seek an appropriate protective order or other appropriate remedy or, in its discretion, waive compliance with the terms of this Section (and if the Debtors seeks such an order, the relevant Covered Person will provide cooperation as the Debtors shall reasonably request).  In the event that no such protective order or other remedy is obtained, or that the Debtors waive compliance with the terms of this Section and that any Covered Person is nonetheless legally compelled to disclose the Information, the Covered Person will furnish only that portion of the Information, which the Covered Person, advised by counsel, is legally required and will give the Debtors written notice (unless prohibited by law) of the Information to be disclosed as far in advance as practicable and exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information.

9.10     Entire Agreement.     This Agreement (including the Recitals) and the PSA shall constitute, the entire agreement by and among the parties hereto and there are no representations, warranties, covenants or obligations except as set forth herein or therein. This Agreement and the PSA supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the named parties thereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Agreement.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Amendment or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Effective Date:  April 28, 2022.

***INITIAL*** **LITIGATION SETTLEMENT TRUSTEE**

By: _____
Name: Robert Dew
Title: Initial Trustee, and as sole member of each
  Debtor entity InfoW, LLC, InfoHealth,
  LLC, Prison Planet TV, LLC

**INFOW, LLC**

By: _____
Name: W. Marc Schwartz
Title: Chief Restructuring Officer

**IWHEALTH, LLC**

By: _____
Name: W. Marc Schwartz
Title: Chief Restructuring Officef

**PRISON PLANET TV, LLC**

By: _____
Name: W. Marc Schwartz
Title: Chief Restructuring Officer

**THIRD-PARTY FUNDING CONTRIBUTOR ALEX JONES**

By: _____
Name:

**THIRD-PARTY FUNDING CONTRIBUTOR
FREE SPEECH SYSTEMS, LLC**

By: _____

Name:

Title:

**SIGNATURES LEFT BLANK PENDNG
APPOINTMENT BY BANKRUPTCY
COURT ORDER**

_____

Name:  Russell F. Nelms

Title:   Litigation Settlement Trust Trustee
          and Debtors' Managing Member


_____

Name:  Richard S. Schmidt

Title:   Litigation Settlement Trust Trustee
          and Debtors' Managing Member

# <u>EXHIBIT B</u>

## Changes to Declaration of Trust

003577

# FIRST AMENDED AND RESTATED

# DECLARATION OF TRUST

# FOR THE

# 2022 Litigation Settlement Trust

BY AND AMONG

## DEBTORS:
## INFOW, L.L.C., IWHEALTH, L.L.C. AND
## PRISON PLANET TV, L.L.C.

AND

## THIRD-PARTY FUNDING CONTRIBUTORS

AND

## The 2022 LITIGATION SETTLEMENT TRUSTEES
## (AS NAMED HEREIN AND FROM
## TIME TOTIME)

Dated as of April ~~14~~28, 2022

# TABLE OF CONTENTS

**ARTICLE 1 ESTABLISHMENT OF THE LITIGATION SETTLEMENT TRUST** ............ 1
    1.1    Declaration of Trust. ............................................................................. 1
    1.2    2022 Litigation Settlement Trust Assets. .............................................. 2
    1.3    Funding of the Litigation Settlement Trust & Exhibit "B". ................. 3
    1.4    Tax Matters. ......................................................................................... 3
    1.5    Nature and Purpose of the Litigation Settlement Trust. ...................... 4
    1.6    Incorporation of a future Plan. ............................................................ 4
    1.7    Appointment as Representative. ........................................................... 4

**ARTICLE 2 TRUSTEES** ........................................................................................... 5
    2.1    Litigation Settlement Trustees. ............................................................ 5
    2.2    Third-Party Funding Contributors ....................................................... 5
    2.3    Tenure, Removal, and Replacement of the Litigation Settlement Trustees. ... 5
    2.4    Compensation of the Trustees. ............................................................. 6
    2.5    No Bond. ............................................................................................... 7
    2.6    Inquiries into Trustee's Authority. ....................................................... 7

**ARTICLE 3 DUTIES AND LIMITATIONS OF TRUSTEES** ................................... 7
    3.1    Role of the Litigation Settlement Trustees. .......................................... 7
    3.2    Authority of Litigation Settlement Trustees. ........................................ 7
    3.3    Payment of Litigation Settlement Trust Expenses. .............................. 10
    3.4    Books and Records. ............................................................................... 10
    3.5    Compliance with Laws. ........................................................................ 11
    3.6    Reliance by Litigation Settlement Trustees. ........................................ 11
    3.7    Investment and Safekeeping of Litigation Settlement Trust Assets. ... 11
    3.8    Limitation of Litigation Settlement Trustees's Authority. .................... 12
    3.9    Responsibilities of the Litigation Settlement Trustees. ....................... 12
    3.10   Standard of Care; Exculpation. ............................................................ 12

**ARTICLE 4 LITIGATION SETTLEMENT TRUST BOARD** ................................ 13
    4.1    Litigation Settlement Trust Board. ...................................................... 13
    4.2    Authority of the Litigation Settlement Trust Board. ............................ 13
    4.3    Meetings of the Litigation Settlement Trust Board. ............................ 13
    4.4    Notice and Waiver of Notice for Litigation Settlement Trustees and Litigation Settlement Trust Board. ...................................................... 14
    4.5    Manner of Acting. ................................................................................ 14
    4.6    Litigation Settlement Trust Board's Action Without a Meeting. ......... 15
    4.7    Tenure, Removal, and Replacement of the Members of the Litigation Settlement Trust Board. ....................................................................... 15
    4.8    Compensation of the Litigation Settlement Trust Board. .................... 18
    4.9    Standard of Care; Exculpation. ............................................................ 18

**ARTICLE 5 LITIGATION SETTLEMENT TRUST INTERESTS** ......................... 18
    5.1    Issuance of Litigation Settlement Trust Interests. ............................... 18
    5.2    Interests Beneficial Only. ..................................................................... 19

003579

5.3    Evidence of Beneficial Interests. ................................................................... 19
5.4    Securities Law Matters. ............................................................................... 20
5.5    Transfer and Exchange. ............................................................................... 20
5.6    Access to the Litigation Settlement Trust Register by the Litigation
       Settlement Trust Beneficiaries. ................................................................... 22
5.7    Absolute Owners. ........................................................................................ 22
5.8    Limitation on Suits by Litigation Settlement Trust Beneficiaries. ................. 22

**ARTICLE 6 DISTRIBUTIONS** ......................................................................... 23
6.1    Use of  Proceeds. ........................................................................................ 23
6.2    Manner of Payment of Distributable Proceeds. ............................................ 25

**ARTICLE 7 INDEMNIFICATION** ..................................................................... 26
7.1    Indemnification of Litigation Settlement Trustees. ....................................... 26

**ARTICLE 8 REPORTS** ..................................................................................... 27
8.1    Financial, Tax, and Other Information. ........................................................ 27
8.2    Other Required Reports. .............................................................................. 28
8.3    Certain Non-Public Information. .................................................................. 28
8.4    Electronic Reporting. .................................................................................. 29

**ARTICLE 9 TERM; TERMINATION OF THE LITIGATION SETTLEMENT TRUST** 29
9.1    Term; Termination of the Litigation Settlement Trust. .................................. 29
9.2    Continuance of Trust for Winding Up. ......................................................... 29

**ARTICLE 10 AMENDMENT AND WAIVER** ...................................................... 30
10.1   Amendment and Waiver. .............................................................................. 30

**ARTICLE 11 MISCELLANEOUS PROVISIONS** ............................................... 31
11.1   Intention of Parties to Establish the Litigation Settlement Trust. ................. 31
11.2   Reimbursement of Trust Litigation Settlement Costs. ................................... 31
11.3   Laws as to Construction. ............................................................................. 31
11.4   Jurisdiction. ................................................................................................ 31
11.5   Severability. ................................................................................................ 31
11.6   Notices. ....................................................................................................... 32
11.7   Fiscal Year. ................................................................................................. 33
11.8   Definitions. ................................................................................................. 33
11.9   Headings. .................................................................................................... 33
11.10  Counterparts. .............................................................................................. 33
11.11  Confidentiality. ........................................................................................... 33
11.12  Entire Agreement. ....................................................................................... 34
11.13  Modification of this Declaration or the Litigation Settlement Trust Terms. ..
11.14  Jurisdiction and Venue. ...............................................................................

003580

# DECLARATION OF TRUST

This ~~First Amended and Restated~~ Declaration of Trust (this "~~Declaration")~~ ~~establishing~~ Amendment")[1] governing the "2022 Litigation Settlement Trust~~"~~ (the "Litigation Settlement Trust~~)~~" or the "Trust")[2] dated as of April ~~14~~28, 2022~~,~~ (the "Amendment Date"), is entered into by and among the

      i.      Debtors InfoW, LLC (formerly known as Inforwars, Inc.), IWHealth, LLC (formerly known as Infowars Health, LLC) and Prison Planet TV, LLC ("PPTV") (IWI, IWHealth and PPTV collectively the "Debtors"~~and later the "Reorganized Debtors~~");

      ii.     ~~the initial Trustee Robert Dew ("Initial Trustee~~Richard S. Schmidt and Russell F. Nelms, as successor trustees (the "Litigation Settlement Trustees"); and

      iii.     ~~the two (2) Trustees named in any order entered by a Court of competent~~ ~~jurisdiction and approved by the~~ Alex Jones and Free Speech Systems, LLC (the "Third-Party Funding Contributor[s] ~~(the "Litigation Settlement Trustees" or~~ ~~"Trustees")~~~~,~~.

      ~~iv.~~   ~~the Third-Party Funding Contributor[s] that initially fully fund this 2022~~ ~~Litigation Settlement Trust (the "Litigation Settlement Trust" or "Declaration") as~~ ~~provided herein and that may, from time to time, fund this Trust to accomplish "Payment~~ ~~in Full" as provided herein; and~~

      ~~v.~~   ~~the Plan Support Agreement (the "PSA") and its parties ("PSA Parties")~~ ~~by which certain covenants and provided toward Payment in Full and by which the~~ ~~following assets are furnished by the Third-Party Funding Contributor[s], including cash~~ ~~and the transfer and assignment of ownership and voting rights of InfoW, LLC,~~ ~~IWHealth, LLC and PPTV, as provided herein~~

~~is executed in order to establish this Litigation Settlement Trust in connection with the proposal~~ ~~for "Payment in Full" of the "Litigation Settlement Trust Claims" (hereinafter defined) to~~ ~~ultimately be included in a confirmed plan of reorganization for the Debtors under Chapter 11 of~~ ~~the United States Bankruptcy Code, which filing shall be on or before April 17, 2022 (as it may~~ ~~be amended, modified, or supplemented, prior to confirmation the "Plan" and upon confirmation~~ ~~"Confirmed Plan") as may be authorized by the Initial Trustee. Capitalized terms used in this~~ ~~Declaration and not otherwise defined herein shall have the respective meanings ascribed to~~ ~~them in this Declaration, in the Glossary of Defined Terms (attached hereto as Exhibit "A"), or~~

---

[1] Capitalized terms used in this Agreement and not otherwise defined herein shall have the respective meanings ascribed to them in the Glossary of Defined Terms (attached hereto as Exhibit "A") or in that Plan Support Agreement, by and between the Debtors and the Third-Party Funding Contributor[s] (as may be amended from time to time, the "PSA").

[2] The Trust's federal tax ID # references the full name of the Trust as the "2022 FSS Litigation Settlement Trust" but is often referred to as the 2022 Litigation Settlement Trust, LST or simply "Trust" in various filings and related documents.

in the Plan Support Agreement; all other capitalized terms used herein are defined in Section 11.8 hereof.

## W I T N E S S E T H

WHEREAS, this the Litigation Settlement Trust, created for the benefit of the Debtors was established and settled pursuant to that Declaration of Trust (the "Declaration," and, collectively with the Amendment, the "Agreement") dated April 14, 2022 (the "Trust Settlement Date"), executed by and among the Debtors, Robert Dew, as the initial trustee (the "Initial Trustee"), and the Third-Party Funding Contributor[s], is intended to facilitate and underwrite the "Payment in Full" of the Litigation Settlement Trust Beneficiaries filed and allowed claims (the "Litigation Settlement Trust Claims"), as may exist from time to time and as may be funded for this purpose from time to time to achieve Payment in Full; and; and

WHEREAS, one or moreon April 18, 2022 (the "Petition Date") each of the Debtors referenced herein may file its respectivefiled voluntary petitions pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code withfor relief chapter 11, subchapter v, of title 11 of the United States Code (the "Bankruptcy Code"), commencing jointly administered cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court"), commencing a case and seeking to jointly administered the cases (the "Chapter 11 Cases") under the exclusive control of the Trustees named herein, as provided herein, and funded by Third-Party Funding Contributor[s] as herein provided; and; and

WHEREAS in order for the Litigation Settlement Trust to achieve the stated goal of Payment in Full of allwas established to facilitate the administration of the Chapter 11 Cases as directed by the Litigation Settlement Trust Claims, the Trust will be funded from time to time through funding committed by Trustees and to pursue confirmation of a chapter 11 plan of reorganization in accordance with the terms of the PSA; and

WHEREAS the Debtors and the Third-Party Funding Contributor[s], initially being Alex Jones and Free Speech Systems, LLC, agreeing to initially fund the obligations of this desire the appointment of the Litigation Settlement Trust with cash, assets and liens (as set out and limited herein) to support the goal of providing and assuring "Payment in Full" of all Litigation Settlement Trust Claims as provided herein and to receive the Resulting Releases as provided herein; andTrustees as successors to the Initial Trustee[3];

WHEREAS, the Litigation Settlement Trust is created pursuant to, and to effectuate, the confirmation of Confirmed Plan(s) and shall exist for such purpose only and shall administer, as the case may be, each and all of the claims of all of the Plaintiffs' arising out ofTrustees require certain amendments and revisions to the terms of the Declaration as set forth herein in this Amendment as a condition of their willingness to serve as trustees of the Litigation Settlement Trust Claims filed in and administered by the Trustees in the Chapter 11 Cases and

---

[3] Individually, each of the Litigation Settlement Trustees and the Initial Trustee may be referred to herein as a "Trustee" and collectively with any successor trustees may be referred to as the "Trustees."

liquidated as set out herein by settlements, channeling injunction and mediation, or jury trial or trial in the United States District Court; and

WHEREAS, in the Bankruptcy Court, through a Confirmed Plan, the Trustees shall seek an order that incorporates into any Confirmed Plan this pre-filing established and created Litigation Settlement Trust to (a) in an expeditious but orderly manner, prosecute, settle, or otherwise dispose of the Litigation Settlement Trust Claims by Payment in Full, as successor to and representative of the estates of the Debtors in accordance with Sections 1145(a)(1) and 1123(b)(3)(B) of the Bankruptcy Code and (b) make timely distributions to the Litigation Settlement Trust Beneficiaries in conformity with the Confirmed Plan to achieve Payment in Full;

WHEREAS all other Parties to the Litigation Settlement Trust have approved the amendments;

WHEREAS, in fulfilling its purpose, the Litigation Settlement Trust shall have both the objective and authority to continue or engage in the conduct of a trade or business to the extent reasonably necessary to, and consistent with, the purpose of the Litigation Settlement Trust; to conduct discovery under Rule 2004, of the Bankruptcy Rules of Procedure, compel production of documents as to any third party authorized under the Rule, and to protect the Debtors and the funding of the Debtors for the purposes of this Litigation Settlement Trust.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Confirmed Plan pursuant to Article 10.1(a) of the Declaration, the Debtors, the Third-Party Funding Contributor[s] (herein sometimes the "Settlors"), the Initial Trustee and the Litigation Settlement Trustees agree to this amended and restated declaration of trust as follows:

**ARTICLE 1**
**ESTABLISHMENT OF THE LITIGATION SETTLEMENT TRUST**

1.1     Declaration of Trust. The Pursuant to the Declaration, the Debtors and the Third-Party Funding Contributor[s] established the Litigation Settlement Trustees hereby establish the Litigation Settlement Trust, which shall be known as the "2022 Litigation Settlement Trust" on behalf of the Debtors' Estates[4] and the Estates' creditors the "Litigation Settlement Trust Beneficiaries" or "Beneficiaries") and the Litigation Settlement Trustees, as successors to the Initial Trustee, hereby accept such rights and properties assigned and transferred to them and the trust imposed upon them pursuant to this Declaration Agreement.

(b) The principal office of the Litigation Settlement Trust is Heritage Mark Building, 5606 N. Navarro, Suite 300-W and 302-C, Victoria, TX 77904 [**Mail Address: IwHealth, LLC, PO Box 1819 Houston, TX 77251-1819**] and all Trust affairs, assets, books and records, shall be in care of the Initial Trustee in Austin, Texas acting on behalf of the two Litigation Settlement Trustees at such offices or other offices as designated from time to time by the Litigation Settlement Trustees.

---

[4] As used herein, "Estate(s)" shall refer to the estate created upon the commencement of the Chapter 11 Cases pursuant to and as defined in § 541 of the Bankruptcy Code.

1.2    <u>Litigation Settlement Trust Assets</u>.

~~(a) In accordance with this Declaration and any future Confirmed Plan, as of the Effective Date, the Third-Party Funding Contributor[s], subject to the provisions of this Declaration and any subsequent Confirmation Order, hereby transfer, assign, and deliver to the Litigation Settlement Trustees for the benefit of the Litigation Settlement Trust Beneficiaries, and the Initial Trustee, on behalf of the two (2) Litigation Settlement Trustees hereby accepts on behalf of the Litigation Settlement Trust Beneficiaries:~~

(a)    <u>As of the Trust Settlement Date, the Third-Party Funding Contributor[s], in accordance with the Declaration, transferred, assigned, and delivered to the Initial Trustee, for the benefit of the Litigation Settlement Trust Beneficiaries, and the Initial Trustee has accepted the following assets (the "Assets"):</u>

(i)    all of the ownership rights, title, and voting rights in and to the Debtors ~~and all of the Debtors' rights, title and interest in all, each and every tangible and intangible asset which such assignment of the ownership and governance shall specially provide that~~, <u>provided that, subject to such assignment,</u> Alex Jones, his affiliate Free Speech Systems, LLC<u>,</u> their agents, or anyone in any way related or affiliated to or related to them are barred and excluded from any active, direct or indirect control or participation in the management of any ~~Chapter 11 Case~~ <u>Debtor</u>; ~~and~~

~~(ii)    all of the Debtors' respective rights, title, and interest in the Debtors' Privileges, defenses, counterclaims, and cross claims associated with the Litigation Settlement Trust Claims; and~~

(~~iii~~<u>ii</u>)    the "<u>Litigation-Settlement Expense Fund</u>" of not less than <u>an aggregate of</u> $725,000.00 in cash<u>, some of which has already been paid,</u> designated to pay the costs of administration, including the <u>Debtors' professionals, the</u> Initial Trustee and the Litigation Settlement Trustees ~~retention~~, and retention by the Trustees of all professionals deemed necessary to accomplish the purpose of this ~~Trust~~<u>trust</u>, including <u>costs and expenses of</u> the Chapter 11 ~~proceedings authorized by this~~<u>Cases (as set forth on Exhibit B to the</u> Declaration ~~and the Initial Trustee~~<u>)</u>; and ~~provided that~~

(iii)    the <u>"Funding Commitment," pursuant to which, the</u> Third-Party Funding Contributor[s] shall ~~maintain for not less than 120 days a balance after payment of all initial administrative expense retainers to Trustees and the Debtor's professionals, the minimum sum of $200,000.00 for continued~~<u>advance such funds as are necessary to fund the</u> payment of the costs of ~~Administration~~<u>administration</u> of the Trust and the Chapter 11 Cases <u>for a period of not less than 120 days, provided, however, that such Funding Commitment shall be subject to and limited by the terms and conditions set forth in the PSA.</u>

        (b)    Notwithstanding any provision of the Declaration to the contrary, all assets of the Debtors shall be deemed property of the Estates subject to entry of any final order of the Bankruptcy Court authorizing the sale, transfer, or other disposition of such assets, including but, not limited to, any order confirming a plan of reorganization providing for the vesting of such assets with the Litigation Settlement Trust or such other trust as may be established pursuant to such Plan.[5]  Further, the Litigation-Settlement Expense Fund and all the subsequent Funding Commitment shall be property of the Debtors' Estates to the extent such funds are budgeted by the Litigation Settlement Trustees in consultation with the Debtors' CRO for the costs of the administration of the Chapter 11 Cases including all professional fees incurred by the Debtors.

        (iv)    Upon the transfer of these cash assets to the Litigation Settlement Trust, the Debtors shall have no interest in or obligation with respect to such assets or, except as described in this Section 1.2, Section 1.3 or Section 1.4, the Litigation Settlement Trust.

        (v)    such other assets and interests provided by the Third-Party Funding Contributor[s] or as provided in the Plan Support Agreement or as may be required under the agreed terms of the Confirmed Plan to be contributed by Third Parties.

All property, cash and rights described in this Section 1.2 are collectively referred to as the "Assets")

        (b) The Initial Trustee shall only have only the following rights and authority unless additional authority is expressly approved by all parties to this Declaration:

        (i)    To receive Assets and all contributions of cash;

        (ii)    To safeguard all Assets and cash and open bank accounts or otherwise provide for the handling and accounting of all transactions prior to the approval and appointment of the two Trustees;

        (iii)    To act on behalf of all of the Debtors as the sole officer and director of each respective Debtor, including the authority to authorize the filing of Chapter 11 (11 U.S.C.§ 1101, et seq) cases for each or all of the Debtors;

        (iv)    To cause to be made distributions of cash only with respect to retention of counsel and other case professionals retained by the Debtors in connection with the filing of the Chapter 11Cases, which shall be expressly authorized to include such related expenses and execute the retention agreement of such counsel;

---

[5] As used herein, the term "Plan" shall refer to any chapter 11 plan of reorganization or liquidation, as the case may be, proposed by the Debtors and confirmed in the Chapter 11 Cases by final order of the Bankruptcy Court.

(v)    To turn over all such Assets to the two (2) Litigation Settlement Trustees upon their appointment and approval, at which time all duties, rights and responsibilities shall end, and provided, however, all indemnity, exculpations, releases and protections of the Trustees shall apply equally to the Initial Trustee, who shall have no liability whatsoever for service as the Initial Trustee except for willful fraud or theft.

(vi)    The Third-Party Funding Contributor[s] shall be solely responsible for all compensation of the Initial Trustee who shall not be compensated by this Trust.

(c) Upon approval and appointment, the Litigation Settlement Trustees shall collect all Assets and income earned with respect to, and all Litigation Settlement Proceeds being the aggregate of, and derivative of, or attributable to, all proceeds available for payments made on account of, the Assets of the Litigation Settlement Trust, and contributed from any source, including the Third Party Funding Contributors, which shall thereupon be added to the assets of the Litigation Settlement Trust and held as a part thereof (and which title shall be vested in the Litigation Settlement Trustees).

(c)    (d) On or as promptly as practicable after the Effective Date of any Confirmed Plan the Reorganized entry of the Trustee Order (defined herein) the Debtors shall (i) deliver or cause to be delivered to the Litigation Settlement Trustees any and all documents (or copies thereof) to the extent relating to the Litigation Settlement Trust Claims held by the Debtors, their employees, agents, advisors, attorneys, accountants, or any other professionals hired by the Debtors and (ii) provide reasonable access to the Litigation Settlement Trustees and its their advisors to such employees of the Debtors, their agents, advisors, attorneys, accountants, or any other professionals hired by the Debtors with knowledge of matters relevant to the Litigation Settlement Trust Claims for the purpose of enabling the Litigation Settlement Trustees to fulfill its their obligations under this Declaration Agreement, including the prosecution liquidation of the Litigation Settlement Trust Claims. Reorganized The Debtors shall, pursuant to and subject to the terms and conditions of the Confirmed Plan, further facilitate access to the Litigation Settlement Trustees and its their advisors to the employees and, books and records of the Plan Support Agreement Third-Party Funding Contributor[s] in connection with the obligations of the Litigation Settlement Trustees under this Declaration Agreement, including the settlement or defense and liquidation of the Litigation Settlement Trust Claims. Requests for such access shall be made through Reorganized Debtors or its representatives only and all All such information, disclosures, and documents shall be held in the utmost confidence, subject to a written confidentiality agreement approved by the bankruptcy court from time to time.

(e) At any time and from time to time on and after the Effective Date, the Trustees and Reorganized Debtors agree (i) at the reasonable request of the Litigation Settlement Trustees to execute and/or deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed) and (ii) to take, or cause to be taken, all such further actions as the Litigation Settlement Trustees may reasonably request, in each case, in order to evidence or effectuate the transfer of the Litigation

Settlement Trust Claims to the Litigation Settlement Trustees and to otherwise carry out the intent of the Confirmed Plan.

1.3 Funding of the Litigation Settlement Trust.

(a) In accordance with this Litigation Settlement Trust, and as may be later provided in the Plan Support Agreement and the Confirmed Plan, Debtors and Reorganized Debtors shall, on the Effective Date:

(i) transfer to the Litigation Settlement Trust the Initial Litigation Settlement Expense Fund and

(ii) from time to time thereafter may deliver additions to the Litigation Settlement Expense Fund to the extent required by this Trust, the Plan Support Agreement and the Confirmed Plan.

(d) (iii) The Upon execution of the Declaration, the Third-Party Funding Contributor[s] shall upon execution of this Declaration, assign to the Litigation Settlement Trust, all governance, in form satisfactory to the Trustees, of the respective Reorganized Debtors as may have filed from time to time a Chapter 11 Case, which such assigned to the Initial Trustee all governance rights as to each Debtor, which assignment of the governance shall exclude excludes Alex Jones and his affiliate Free Speech Systems, LLC from any active, direct or indirect control or participation in the management of any Chapter 11 Case Debtor the Debtors. As part of the assignment of governance, the Litigation Settlement Trustees, as successors to the Initial Trustee, shall be permitted to file any further Title 11 case the Litigation Settlement Trustees deem advisable or proper from time to time (other than any involuntary case against any Third-Party Funding Contributor) and to prosecute such these Chapter 11 Case Cases as the sole and exclusive governing body of such the Debtors upon approval of such governance by the respective Bankruptcy Court in which the Chapter 11 Case is filed.

(iv). Except pursuant to the terms of the Confirmed Plan, none of the Debtors and the Third-Party Funding Contributors shall have any further obligation to provide any funding with respect to the Litigation Settlement Trust; provided, however, to the extent that Payment in Full is not achieved as set out herein, none of the Third-Party Funding Contributor[s] shall be entitled to the Resulting Release provided herein. The Litigation Settlement Trustees shall use the Litigation Settlement Expense Fund consistent with the purposes of this Litigation Settlement Trust and subject to the terms and conditions of this Declaration, and any Confirmed Plan.

(b) All of the initial liquidity of the Litigation Settlement Trust shall be funded by the Third-Party Funding Contributor[s] in an amount estimated to provide for all costs and expenses associated with the administration of the Litigation Settlement Trust as such amounts are reasonably estimated, and thereafter, may be funded to accomplish, as the case may be, the "Payment in Full" of all Litigation Settlement Trust Claims, in exchange for a Resulting Release in favor of the Third-Party Funding Contributor(s) upon Payment in Full, but not prior Payment in Full. The initial funding shall be in amounts as agreed between the Third-Party

Funding Contributor[s] and the Initial Trustee, as set for on Exhibit "B" [the Initial Litigation Settlement Expense Fund] executed as a part and term of this Litigation Settlement Trust providing for future commitments to such funding for all purposes of this Litigation Settlement Trust; provided, however, nothing in this Litigation Trust obligates the Third-Party Funding Contributor(s) to fund any additional funds (whether by cash, cash equivalents, property or assets on liens on tangible and intangible property, after the payment of all initial funding set out on Exhibit "B").  It is the intention of the Third-Party Funding Contributor[s] to continue, prior to Plan Confirmation, to contribute sufficient liquidity to maintain a cash balance of $200,000.00 in the Litigation Settlement Trust, after the initial payment of Trustee and professional retainers, and thereafter for 120 days to be certain that all Administrative Expenses are paid, and thereafter as determined by the Third-Party Funding Contributors in each Third-Party's sole discretion.  Nothing in this Litigation Trust or Declaration creates a right or cause of action in any respect against any Third-Party Funding Contributor for any funding beyond the initial funding set out in Exhibit "B" and for the express purpose of clarity, no person or entity, claimant, creditor, Interest Holder may bring any action directly against any Third-Party Funding Contributor under this Litigation Settlement Trust or Declaration nor may any third party seize, attach, garnish or otherwise assert in any manner a lien or claim of any nature or origin to the Litigation Settlement Fund assets at any time.

(e)     At any time and from time to time on and after the Trust Settlement Date, the Debtors and the Third-Party Funding Contributor[s] agree (i) at the reasonable request of the Litigation Settlement Trustees to execute and/or deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed) and (ii) to take, or cause to be taken, all such further actions as the Litigation Settlement Trustees may reasonably request, in each case, in order to evidence or effectuate the transfer of the Assets to the Litigation Settlement Trustees and to otherwise carry out the intent of the Agreement.

(f)     All property, cash and rights described in this Section 1.2 as property of the Litigation Settlement Trust are collectively referred to herein as the "Assets." Upon the transfer of any cash assets to the Litigation Settlement Trust, the Third-Party Funding Contributors shall have no interest in or obligation with respect to such assets.  Notwithstanding any provision of this Agreement except Section 2.2 and Section 4.1(b), upon deposit and receipt of fund from the Third-Party Funding Contributors, in no event shall any such funds be returned to any Third-Party Funding Contributor(s).

1.3     Funding of the Litigation Settlement Trust.

(a)     (c)     All costs and expenses associated with the Administration administration of the Litigation Settlement Trust, or the and all costs and expenses of administration of the Debtors' operations and the Chapter 11 Cases shall be the responsibility of and paid by the Litigation Settlement Trust as approved and funded herein. Trustees and the Debtors, respectively, from the Litigation-Settlement Expense Fund and subsequent Funding Commitment payments pursuant to a budget established by the Litigation Settlement Trustees in consultation with the Debtors' CRO.

Tax Matters. In accordance with this Agreement and the Funding Commitment, and subject to the terms and conditions of the PSA, the Third-Party Funding Contributor[s] shall from time to time hereafter deliver additional Cash to the Litigation-Settlement Expense Fund to the extent requested by the Litigation Settlement Trustees. Specifically, from the Petition Date until the earlier of (x) 120 days after the Petition Date, or (y) the effective date of any Plan, the Third-Party Funding Contributor[s] shall contribute such funding as is necessary to maintain a cash balance of $200,000.00 in the Litigation-Settlement Expense Fund. Such additional funding shall be provided in Cash to the Litigation-Settlement Expense Fund by the Third-Party Funding Contributor[s] within five (5) business days of receipt of a written request by the Litigation Settlement Trustees. To the extent that the Third-Party Funding Contributor[s] fail to make such Cash deposits within the applicable five-day period, the Litigation Settlement Trustees, in their sole discretion, may move to dismiss the Chapter 11 Cases or covert the same to cases under chapter 7 of the bankruptcy and the seeking of such relief shall not constitute a breach of any obligation under this Agreement or the PSA. In the sole discretion of the Litigation Settlement Trustees, the five-day period may be extended to accommodate funding reasonably anticipated from the Third-Party Funding Contributor[s].

(a) Solely for tax purposes, the Litigation Settlement Trust Beneficiaries and Reorganized Debtors (to the extent of its retained interest in the Litigation Settlement Trust for federal income tax purposes) (collectively, the "Trust Tax Owners") are treated as grantors and owners of the Litigation Settlement Trust pursuant to Section 671 et seq. of the Internal Revenue Code and the Treasury Regulations promulgated thereunder (the "Treasury Regulations") and any similar provisions of state or local law. It is intended that the Litigation Settlement Trust be classified as a liquidating trust under Section 301.7701-4(d) of the Treasury Regulations.

(b) For all federal, state and local income tax purposes, all persons (including, without limitation, the Debtors, the Trustees, and the Trust Tax Owners) shall take the position, subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, that the transfer of assets to the Litigation Settlement Trust is a deemed transfer to the Trust Tax Owners (as of the Initial Distribution Date), followed by a deemed transfer by such Trust Tax Owners to the Litigation Settlement Trust.

(c) The fair market value of the portion of the Litigation Settlement Trust Assets that is treated as having been transferred to each Trust Tax Owner pursuant to Section 1.4(b) hereof, and the fair market value of the portion of the Litigation Settlement Trust Assets that is treated for federal income tax purposes as having been transferred to any Trust Tax Owner or other distributee as a result of the allowance or disallowance of a Disputed Claim, shall be determined by the Litigation Settlement Trustees, and all persons (including, without limitation, the Litigation Settlement Trustees, the Trust Tax Owners, and the transferors, for tax purposes, of any assets transferred to the Litigation Settlement Trust) shall utilize the fair market value determined by the Litigation Settlement Trustees for all federal income tax purposes.

(c) (d) The Litigation Settlement Trustees shall allocate any items of income, gain, loss, deduction, and credit of the use the Litigation-Settlement Expense Fund consistent with the purposes of this Litigation Settlement Trust and subject to the terms and conditions of this Agreement and any the PSA. Except as may be agreed and set forth under a

Plan, none of the Debtors nor the Third-Party Funding Contributor[s] shall have any further obligation to provide any funding with respect to the Litigation Settlement Trust for federal income tax purposes among current and/or former Trust Tax Owners, such allocation shall be binding on all current and former Trust Tax Owners for all federal, state, and local income tax purposes and the current and former Trust Tax Owners shall be responsible (on a current basis) for the payment of any federal, state, and local income tax due on the income and gain so allocated to them.other than as set forth herein and in the PSA.

## ARTICLE 2
## TRUSTEES

2.1   1.5  Nature and Purpose of the Litigation Settlement Trust and Initial Trustee.  Purpose.  Upon compliance with Section 3810 of the Delaware Statutory Trust Act, 12 Del. C., § 3801 et seq. (hereinafter the "Act"), the Litigation Settlement Trust shall be organized and established as a statutory trust pursuant to which the Litigation Settlement Trustees, subject to the terms and conditions contained herein and in a Confirmed Plan, is to (i) hold the assets of the Litigation Settlement Trust and dispose of the same in accordance with this Declaration and a Confirmed Plan in accordance with Treasury Regulation Section 301.7701-4(d) and (ii) oversee and direct the expeditious but orderly liquidation of the assets of the Litigation Settlement Trust received from time to time. Accordingly, the primary purpose of the Litigation Settlement Trust is to liquidate the Litigation Settlement Trust Claims and accomplish Payment in Full, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Settlement Trust.

(b) Relationship.  This Declaration is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust under Texas law.  The Litigation Settlement Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Litigation Settlement Trustees, or the Litigation Settlement Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Litigation Settlement Trust Beneficiaries to the Litigation Settlement Trustees and the Litigation Settlement Trust Board shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Declaration and as set forth in the Confirmed Plan.  In every event, the Trustees are not deemed in a fiduciary relationship to any Third Party or any Litigation Settlement Trust Beneficiaries and in every event shall only have liability for their actual fraud or gross misconduct established under clear and convincing evidence standards.

(c) Initial Trustee:  This Trust shall be initially administered by the Initial Trustee designated by the Third-Party Funding ContributorsContributor[s] upon the initial funding.  The sole duty of the Initial Trustee shall be to preserve all Trust Assets contributed by the Third-Party Funding Contributors, including cash, equity and control rights in not fewer than the four entities listed on Exhibit "C" including the new entity resulting from the Merger transaction between Free Speech Systems, LLC and the new entitythe Assets.  The Initial Trustee shall serve as the control person for each entity asset of the Litigation Settlement Trust until the replacement two (2)

Trustees are approved and commence service as Trustees under the provisions of this Trust until the earlier of (i) entry of the Trustee Order (defined herein), at which time the Initial Trustee shall resign and have no further rights or obligations under this Agreement, or (ii) termination of this Litigation Settlement Trust.

Incorporation of Confirmed Plan. Upon confirmation of a Plan, if any, pursuant to 11 U.S.C. § 1129, the Confirmed Plan and the Confirmation Order are each hereby incorporated into this Declaration and made a part hereof by this reference; *provided, however*, to the extent that there is conflict between the provisions of this Declaration, the provisions of the Confirmed Plan, and/or the Confirmation Order, each such document shall have controlling effect in the following rank order: (i) this Declaration [which may not be modified or expanded by any Plan or Order unless fully agreed and consented to by all parties to this Declaration]; (ii) the Confirmation Order; and (iii) the Confirmed Plan; provided, however, nothing in any Confirmed Plan shall create a liability or obligation of any Third-Party Funding Contributor not expressly and in writing assumed; that is, a Confirmed Plan shall not compel payments of contributions by the Third-Party Funding Contributor not required under the Plan Support Agreement, nor grant a release until Payment in Full is reached.

Appointment as Representative.. Pursuant to this Declaration, and thereafter pursuant to section 1123(b)(3) of the Bankruptcy Code, the Confirmed Plan appoints the then-serving Litigation Settlement Trustees (as the duly appointed representative of the Debtors' Estates) and, as such, the Litigation Settlement Trustees succeeds to all of the rights and powers of a trustee in bankruptcy with respect to prosecution, sale, transfer, or other disposition, as applicable, of the Litigation Settlement Trust Claims for the ratable benefit of the Litigation Settlement Trust Beneficiaries on all Litigation Trust Claims. To the extent that any Litigation Settlement Trust Claims cannot be transferred to the Litigation Settlement Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Settlement Trust Claims shall be deemed to have been retained by Reorganized Debtors, and the Litigation Settlement Trustees shall be deemed to have been designated as a representative of the Estates pursuant to section 1123 (b)(3)(B) of the Bankruptcy Code to enforce, pursue, sale, transfer, or otherwise dispose of, as applicable, such Litigation Settlement Trust Claims on behalf of the Estates.

## ARTICLE 2
## TRUSTEES

(a) The Initial Trustee shall have only the following rights and authority unless additional authority is expressly approved by all parties to the Agreement:

(i) To receive the Assets and all contributions of Cash, if banking privileges are obtained for such deposits;

(ii) To safeguard all Assets and Cash and open bank accounts or otherwise provide for the handling and accounting of all

transactions prior to the approval and appointment of the Litigation Settlement Trustees;

(iii)     To act on behalf of all of the Debtors as the sole officer and director of each respective Debtor, including the authority to authorize the filing of the Chapter 11 Cases for each or all of the Debtors;

(iv)     To cause to be made, or authorize any funds-holder to make, distributions of cash only with respect to retention of counsel and other case professionals retained by the Debtors in connection with the filing of the Chapter 11 Cases, which shall be expressly authorized to include such related expenses and execute the retention agreement of such counsel;

(v)     To turn-over, or cause to be turned over by any funds-holder, all such Assets to the Litigation Settlement Trustees upon their appointment and approval, at which time all duties, rights and responsibilities shall end, and provided, however, all indemnity, exculpations, releases and protections of the Trustees shall apply equally to the Initial Trustee, who shall have no liability whatsoever for service as the Initial Trustee except for willful fraud or theft.

(vi)     The Third-Party Funding Contributor[s] shall be solely responsible for all compensation of the Initial Trustee who shall not be compensated by this Trust.

(b)     Upon entry of the Trustee Order, the Litigation Settlement Trustees shall collect and accept title to the Assets and any (i) income earned with respect to, derivative of, or attributable to the Assets; or (ii) proceeds or payments made on account of the Assets (collectively, "Litigation-Settlement Proceeds"), which shall thereupon be added to the Assets of the Litigation Settlement Trust and held as a part thereof (and which title shall be vested in the Litigation Settlement Trustees).

2.2     2.1 Litigation Settlement Trustees.   In accordance with this ~~Litigation Settlement Trust, to be later incorporated in the Confirmed Plan and subject to the Confirmation Order~~Agreement, Richard S. Schmidt and Russell F. Nelms, two individuals ~~and~~that are each citizens of the State of Texas, are hereby named~~, constituted,~~ and appointed as Litigation Settlement Trustees ~~effective not later than 45 days after the date of funding and appointment of the Initial Trustee.  Absence of such appointed Trustees, this,~~ which appointment shall become effective upon entry of an order of the Bankruptcy Court approving such appointment (the "Trustee Order") and the terms of this Amendment, which order shall be in form and substance agreeable to the Litigation Settlement Trustees.  In the event that the Trustee Order is not entered within 45 days following the Trust Settlement Date, this Litigation Settlement Trust shall terminate, and all funds remaining in the Litigation-Settlement Expense Fund shall be returned to the respective Third-Party Funding Contributor.  Upon ~~the appointment of the two~~entry of and

subject to terms of the Trustee Order, the Litigation Settlement Trustees, each shall promptly commence service and have all the rights, powers, and duties set forth herein and as otherwise provided by law including, which shall be broadly and liberally construed to accomplish the purpose of this Litigation Settlement Trust, including:

(b) All of the powers and duties of managers of the Trust and of the Debtors for all purposes, including filing of any proceeding, case, suit, or other legal proceeding; operation of the Debtors as debtors, Debtors-in-Possession (with all rights and powers of a Trustee under 11 U.S.C. § 101, et. seq); and

(a) All of the powers and duties of managers of the Litigation Settlement Trust and of the Debtors for all purposes, including filing of any proceeding, case, suit, or other legal proceeding; provided, however, that such authority as managers of the Debtors may include appropriate delegation of authority to the Chief Restructuring Officer (the "CRO") as the principal officer of the Debtors, as Debtors-in-Possession, and shall not abridge the CRO's obligations as a fiduciary of the Debtors and their Estates, or any other obligations of the CRO as an Estate professional under section 327 of the Bankruptcy Code;

(b) (c) All of the powers referenced, granted, or provided herein or as may be requirerequired to perform the duties of a Trustee provided herein and or in any proceeding brought under Title 11 U.S.C. ¶ 101 et. seq; and

(c) (d) All of the powers and duties provided under the laws of the State of Texas; and

(e) All of the powers and duties provided in the Confirmed Plan.

(d) All other powers and duties set out in this Agreement, including those powers set out in §3.2 hereof.

Each of the Litigation Settlement Trustees is willing and does hereby accept the appointment to act and serve as Litigation Settlement Trustees of the Litigation Settlement Trust.

(f) All other powers and duties set out in this Declaration, including those powers set out in §3.2 hereof.

Third-Party Funding Contributor(s). In accordance with this Litigation Settlement Trust, to be incorporated in the Confirmed Plan and subject to the Confirmation Order, the Third-Party Funding Contributor(s) shall agree to contribute, from time to time for the purpose of the initial funding of the Litigation Settlement Trust and thereafter payment of all minimum balance of the Administrative Expenses (as that term is used in cases under 11 U.S.C.1101, et seq.) for the time provided herein, and thereafter, may agree to contribute, from time to time, sufficient funds to assure Payment in Full of all Litigation Settlement Trust Claims as may be provided in the Confirmed Plan, and until Termination as herein provided or until Payment in Full and recognition of the Resulting Releases to the Third Party Contributor(s).

(a) From time to time the Trustees may request of the Third-Party Funding Contributors current financial information, operating information, assets or account information

("Information") as reasonably needed to determine that each Third-Party Funding Contributor is maintaining operations and business sufficient to not only maintain the minimum balance in the Litigation Settlement Trust, but also to Pay in Full, on such terms as may be incorporated the Confirmed Plan, so as reasonably to allow the Trustees to have adequate assurances of future performance of any required Payment Stream to accomplish Payment in Full. The Information shall be produced only under this provision, and to the extent that there is any disagreement on Information production requested, the Trustees may seek orders from any Federal Court having jurisdiction over the Litigation Settlement Trust. In every event the Information shall be held absolutely confidential and held pursuant to the confidentiality term of this Litigation Settlement Trust and such other confidentiality terms reasonably requested by the any Third-Party Funding Contributor and shall be received and held by the Trustees as "Trustees and Trustees' Professionals Eyes Only."

(b) The Trustees shall not be subject to any subpoenas or efforts to pierce this confidentiality agreement other than the federal court having jurisdiction over the trust (this Trust being considered a Barton Doctrine Trust); provided, however, to the extent that the Litigation Claimants have formed a committee or a recognized *ad hoc* committee, and designated a representative of that committee (the "Committee Representative"), then in such event, the Trustees may, after disclosure to any Third-Party Funding Contributor with an opportunity to file any objections with any Federal Court having jurisdiction, allow such Committee Representative access to such Information upon execution of a sufficient confidentiality agreement to protect such Information for the purpose of Settlement, but not otherwise.

(c) Nothing in this confidentiality agreement terms or other term in the Litigation Trust shall create any separate liability of any Third-Party Funding Contributor for any sums other than the obligation to maintain the Settlement Trust balances for payment of Administrative Expenses, including any Chapter 11 Administrative Expenses, but not otherwise unless agreed to in writing by any such Third-Party Funding Contributor.

(d) Nothing in this § 2.2 replaces the terms and restriction on Information set out in Section 11.11.

2.3    Tenure, Removal, and Replacement of the Litigation Settlement and Litigation Settlement Trustees.

(a)    The Litigation Settlement Trustees (each, a "Trustee" and, together, the "Trustees") will each serve until resignation and the appointment of a successor pursuant to subsection (b) below, removal pursuant to subsection (c) below, or death (if applicable).

(b)    A Trustee may resign by giving not less than 60ten (10) days' prior written notice to the Debtors, or post confirmation, to the Litigation Settlement Trust Board. Such resignation will become effective on the later to occur of: (i) the day specified in such notice and (ii) the appointment of a successor trustee as provided herein and the acceptance by such successor trustee of such appointment. If a successor trustee is not appointed or does not accept its appointment within 60 days following delivery of notice of resignation, the Litigation

Settlement Trustee(s) may file a motion with the Bankruptcy Court or with the Delaware Court of Chancery (at the discretion of the Litigation Settlement Trustees and at the expense of the Litigation Settlement Trust), upon notice and hearing, for the appointment of a successor Trustee..

      (c)     A Trustee may be removed by order of the Bankruptcy Court on motion of a majority of the members of the Litigation Settlement Trust Board.  Any motion to remove a Trustee shall be "for cause" shown by clear and convincing evidence, and all costs and fees for the successful defense of any such action for cause shall be the obligation of the Litigation Settlement Trust.

      (d)     In the event of a vacancy in the position of a Trustee (whether by removal, resignation, or (if applicable) death), the vacancy will be filled by the appointment of a successor trustee by (i) majority vote and resolution of the Litigation Settlement Trust Boardthe Third-Party Funding Contributor[s], and the acceptance by the successor trustee in accordance with Section 2.3(e) or (ii) an order of the Bankruptcy Court after an opportunity for a hearing; *provided, however*, that only the Litigation Settlement Trust BoardDebtors shall have standing to seek such an order, except as provided in Section 2.3(b).  If a successor trustee is appointed by resolution, as provided in clause (i) of the preceding sentence, and such appointment is accepted by the successor trustee, the Litigation Settlement Trust BoardDebtors shall file notice of such appointment and acceptance with the Bankruptcy Court, which notice will include the name, address, and telephone number of the successor trustee; provided that the filing of such notice shall not be a condition precedent to the vesting in the successor Trustee of all the estates, properties, rights, powers, trusts, and duties of its predecessor.

      (e)     Any successor trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations of the predecessor Trustee hereunder and thereupon the successor trustee shall, without any further act, become vested with all the estates, properties, rights, powers, privileges, authorities, and duties of its predecessor in the Litigation Settlement Trust hereunder with like effect as if originally named herein and the successor trustee will not be liable personally for any act or omission of the predecessor Trustee.

      (f)     Upon the appointment of a successor trustee, the predecessor Trustee (or the duly appointed legal representative of a deceased Trustee) shall, if applicable, when requested in writing by the successor trustee, execute and deliver an instrument or instruments conveying and transferring to such successor trustee upon the trust herein expressed, without recourse to the predecessor Trustee, all the estates, properties, rights, powers, and trusts of such predecessor Trustee, and shall duly assign, transfer, and deliver to such successor trustee all property and money held hereunder, and all other assets and documents relating to the Litigation Settlement Trust, the Litigation Settlement Trust Claims, or the Litigation Settlement Trust Interests then in its possession and held hereunder.

      (g) During any period in which there is a vacancy in the position of a Trustee, the Litigation Settlement Trust Board may (to the extent permitted by the Act) appoint one of its members to serve as an interim Trustee, (the "Interim Trustee"). The Interim Trustee shall be subject to all the terms and conditions applicable to a Litigation Settlement Trustees

hereunder. Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a member of the Litigation Settlement Trust Board merely by its appointment as Interim Trustee.

(g) (h) The death, resignation, retirement, removal, bankruptcy, dissolution, liquidation, incompetence, or incapacity to perform the duties of a Trustee shall not operate to dissolve, terminate, or annul the Litigation Settlement Trust.

2.4    Compensation of the Trustees.

(a)    As compensation, the Litigation Settlement Trustees shall be entitled to receive initially an hourhourly rate set out below for all time involving Trustee services (or such other amount as agreed to from time to time by the Litigation Settlement Trustees and the Litigation Settlement Trust BoardDebtors or as approved by the Bankruptcy Court, as the case may be), payable for the performance of services provided under and pursuant to this DeclarationAgreement, and shall be reimbursed for all reasonable and documented expenses incurred in connection with the performance of its services hereunder.

(b)    The Litigation Settlement Trustees shall be entitled to receive compensation for services on an hourly rate, payable monthly on the 20th day of each month following the months such services were rendered, and shall be reimbursed for all reasonable and documented expenses incurred in connection with the performance of itstheir services hereunder, or as may be ordered by the Bankruptcy Court.  For notice purposes only, the Litigation Settlement Trustees shall file in the Bankruptcy Court a monthly fee statement not later than the 15th day of each month following the months such services were rendered and shall be entitled to receive payment from the Litigation-Settlement Expense Fund on the 20th day of said month.

2.5    No Bond. The Trustees shall serve without bond.

Inquiries into Trustee's Authority.    Except as otherwise set forth in the Litigation Settlement Trust or in the Confirmed Plan, no Person dealing with the Litigation Settlement Trust shall be obligated to inquire into the authority of the Litigation Settlement Trustees in connection with the prosecution, protection, conservation, sale, or other disposition, as applicable, of the Litigation Settlement Trust Claims.

# ARTICLE 3
## DUTIES AND LIMITATIONS OF TRUSTEES

3.1 <u>Role of the Litigation Settlement Trustees</u>. In furtherance of and consistent with the purpose of this Litigation Settlement Trust ~~from execution date and as the Confirmed Plan shall include~~, the Litigation Settlement Trustees~~, subject to the terms and conditions contained herein and later in the Confirmed Plan, shall, in an expeditious but orderly manner, liquidate and convert to Cash the assets of the Litigation Settlement Trust~~, <u>shall</u> engage in acts that would constitute ordinary performance of the obligations of a trustee under a ~~liquidating litigation trust~~<u>Texas law</u>, make timely distributions of ~~such~~ Cash and not unduly prolong the duration of the Litigation Settlement Trust. ~~The liquidation of the Litigation Settlement Trust Claims may be accomplished either through the prosecution, compromise and settlement, abandonment, dismissal, or other disposition of any or all claims, rights, or causes of action, or otherwise.~~ In all circumstances, the Litigation Settlement Trustees shall act in ~~the best interests of maximizing~~<u>a manner reasonably expected to maximize</u> the value of the ~~assets of the Litigation Settlement Trust~~<u>Assets</u> for the Litigation Settlement Trust Beneficiaries and in furtherance of the purpose of the Litigation Settlement Trust~~and shall, where required pursuant to the terms of this Declaration, consult with the Litigation Settlement Trust Board. All of the Litigation Settlement Trustees' decisions with respect to the pursuit or settlement of the Litigation Settlement Trust Claims shall be taken in good faith.~~.

3.2 <u>Authority of Litigation Settlement Trustees</u>. Subject to any limitations contained herein ~~(including, without limitation, Article 4 hereof) or in the Confirmed Plan~~, the Litigation Settlement Trustees shall have the full power, authority, and discretion to take any and all actions as are necessary or advisable to carry out ~~its~~<u>their</u> responsibilities hereunder and to effectuate the purposes of the Litigation Settlement Trust, including, without limitation:

(a) full power, authority, and discretion to interpret, construe, and decide all questions and issues arising under any provision of this ~~Declaration or of any agreement, notification, certificate, or document relating to or evidencing a Litigation Settlement Trust Interest (including, without limitation, the power, authority, and discretion to determine whether any particular holder or beneficial owner of a Litigation Settlement Trust Interest shall be entitled to exercise any right conferred hereunder or under any other relevant agreement, notification, certificate, document, or similar instrument),~~<u>Agreement,</u> and the decisions of the Litigation Settlement Trustees with respect to all such matters shall be final, conclusive, and binding on all parties who have an interest in the Litigation Settlement Trust ~~or any Litigation Settlement Trust Interest~~;

(b) receiving (and accepting), managing, supervising, and protecting the assets of the Litigation Settlement Trust on behalf of and for the benefit of the Litigation Settlement Trust Beneficiaries;

(c) holding legal title to any and all rights of the Litigation Settlement Trust Beneficiaries in or arising from the ~~assets of the Litigation Settlement Trust, and, in consultation with the Litigation Settlement Trust Board,~~<u>Assets, and</u> protecting and enforcing the rights to the ~~assets of the Litigation Settlement Trust~~<u>Assets</u> vested in the Litigation Settlement Trustees by this ~~Declaration~~<u>Agreement</u> by any method deemed appropriate, including, without

limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law, and general principles of equity;

(d) commencing and/or pursuing any and all actions involving Assets that could arise or be asserted at any time;

(d) in consultation with the Litigation Settlement Trust Board, filing, initiating, prosecuting, and if necessary and appropriate, selling, compromising and settling, abandoning, or dismissing the Litigation Settlement Trust Claims;

(e) in consultation with the Litigation Settlement Trust Board, commencing and/or pursuing any and all actions involving assets of the Litigation Settlement Trust that could arise or be asserted at any time, unless otherwise waived or relinquished in the Confirmed Plan;

(e) (f) distributing to some or all of the Litigation Settlement Trust Beneficiaries (as deemed appropriate by the Litigation Settlement Trustees) information regarding the Litigation Settlement Trust Claims and upon executing confidentiality agreements with such Litigation Settlement Trust Beneficiaries satisfactory to the Litigation Settlement Trustees in connection therewith, and the Litigation Settlement Trustees shall have the full power, authority, and discretion to withhold or restrict the delivery of any such information to any Litigation Settlement Trust Beneficiary if the Litigation Settlement Trustees determines in its determine in their reasonable discretion that such action is in the best interests of the Litigation Settlement Trust;

(f) (g) making all necessary filings in accordance with any applicable law, statute or regulation, and in consultation with counsel, seeking any advice or determination that may be necessary or appropriate under any such laws, statutes, or regulations;

(h) executing and filing one or more registration statements and prospectuses (including any amendments or supplements thereto) under the Securities Act (if applicable) relating to the Litigation Settlement Trust Beneficial Interests and the preparation and filing of all periodic and other reports, forms, and other filings required under the Exchange Act and any other applicable federal or state securities laws;

(i) taking of any action to cause the Litigation Settlement Trust to not be deemed an Investment Company under the Investment Act or subject to the Trust Indenture Act;

(j) calculating and implementing of all distributions to be made to the Litigation Settlement Trust Beneficiaries;

(g) (k) filing of all required tax and information returns and paying of taxes and all other obligations of the Litigation Settlement Trust;

(h) (l) requesting any appropriate tax determination with respect to the Litigation Settlement Trust;

(i)    (m) paying all expenses and making all other payments relating to any ~~assets~~Assets of the Litigation Settlement Trust;

(j)    (n) obtaining insurance coverage with respect to (i) the liabilities and obligations of the Trustees under this Agreement (in the form of an errors and omissions policy or otherwise) and (ii) real and personal property, which may become ~~assets of the Litigation Settlement Trust~~Assets, if any;

(k)    (o) in consultation with the Litigation Settlement Trust Board, negotiating, receiving, or accepting of the assignment or transfer of claims, rights, suits, judgments, causes of action, recoveries and/or proceeds therefrom, from the holders thereof, to the extent that an assignment and/or transfer to the Litigation Settlement Trust is deemed to be in the best interests of maximizing the value of the ~~assets of the Litigation Settlement Trust for the Litigation Settlement Trust Beneficiaries~~Asset;

(l)    (p) in consultation with the Litigation Settlement Trust Board, determining the amount of consideration to be provided for the assignment or transfer of claims, rights, suits, judgments, causes of action, recoveries, and/or proceeds therefrom;

(m)    (q) in consultation with the Litigation Settlement Trust Board, compromising, adjusting, arbitrating, suing on or defending, abandoning, or otherwise dealing with and settling claims in favor of or against the Litigation Settlement Trust as the Litigation Settlement Trustees shall deem advisable;

(n)    (r) determining and satisfying any and all liabilities created, incurred or assumed by the Litigation Settlement Trust;

(o)    (s) in consultation with the Litigation Settlement Trust Board, retaining and paying such law firms, investment bankers, accounting firms, experts, advisors, consultants, investigators, appraisers, agents, employees, or other professionals and third parties as the Litigation Settlement Trustees may deem necessary or appropriate to assist the Litigation Settlement Trustees in carrying out the Litigation Settlement ~~Trustees's~~Trustees' powers and duties under this ~~Declaration~~Agreement.  The Litigation Settlement Trustees may commit the Litigation Settlement Trust to and shall pay all persons or entities retained or employed by the Litigation Settlement Trust reasonable compensation for services rendered and reasonable expenses incurred;

(p)    (t) investing any moneys held as part of the assets of the Litigation Settlement Trust in accordance with, and subject to the limitations of, the terms of Section 3.7 and 3.8 hereof;

(q)    (u) performing such other responsibilities as may be vested in the Litigation Settlement Trustees pursuant to ~~the Confirmed Plan,~~ this ~~Declaration~~Agreement, orders of the Bankruptcy Court, or as may be necessary and proper to ~~carry out the provisions of the Confirmed Plan~~discharge the duties and obligations of a debtor-in-possession or estate fiduciary; and

(r) (v) conducting the affairs of the Litigation Settlement Trust and operating the Litigation Settlement Trust ~~so that the Litigation Settlement Trust will not fail to be classified as a liquidating trust within the meaning of Treasury Regulation 301.7701-4(d)~~in a manner consistent with the terms of this Agreement.

3.3    Payment of Litigation Settlement Trust Expenses.

(a)    The Litigation Settlement Trustees shall maintain the Litigation-Settlement Expense Fund and expend the assets of the Litigation-Settlement Expense Fund as are reasonably necessary to meet contingent liabilities and to maintain the value of the ~~assets of the Litigation Settlement Trust during liquidation~~Assets during these Chapter 11 Cases, and to pay reasonable administrative expenses (including but not limited to, (i) costs and expenses of the Litigation Settlement Trustees, (ii) reasonable fees, costs, and expenses of professionals retained by the Litigation Settlement Trustees, (iii) ~~the expenses of members of the Litigation Settlement Trust Board permitted under this Declaration, (iv)~~ any taxes imposed on the Litigation Settlement Trust, (~~iv~~iv) fees and expenses in connection with, arising out of or related to the Litigation Settlement Trust Claims or the performance by the Litigation Settlement Trustees of ~~his~~their duties hereunder in accordance with this ~~Declaration~~Agreement, and (~~vi~~v) to satisfy other liabilities incurred or assumed by the Litigation Settlement Trust (or to which the ~~assets~~Assets are otherwise subject) in accordance with ~~the Confirmed Plan or~~ this ~~Declaration~~Agreement (collectively the "Litigation Trust Expenses").

(b)    The Litigation Settlement Trustees may retain from the Litigation Settlement Trust Proceeds and add to the Litigation-Settlement Expense Fund, at any time and from time to time, such amounts as the Litigation Settlement Trustees deems reasonable and appropriate to ensure that the Litigation-Settlement Expense Fund will be adequate to meet the expenses and liabilities described in Section 3.3(a).

(c)    Notwithstanding any other provision of this ~~Declaration~~Agreement to the contrary, the Litigation Settlement Trustees shall not be required to take any action or enter into or maintain any claim, demand, action, or proceeding relating to the Litigation Settlement Trust unless it shall have sufficient funds in the Litigation-Settlement Expense Fund for that purpose.

3.4    Books and Records.

(a)    The Litigation Settlement Trustees shall maintain ~~in respect of the Litigation Settlement Trust and the Litigation Settlement Trust Beneficiaries,~~ books and records relating to the assets and income of the Litigation Settlement Trust and the payment of expenses of, ~~and~~ liabilities of, or claims against or assumed by~~,~~ the Litigation Settlement Trust in such detail and for such period of time as may be necessary to enable the Litigation Settlement Trustees to make full and proper accounting in respect thereof in accordance with the provisions hereof and to comply with applicable provisions of law.  Nothing in this ~~Declaration~~Agreement requires the Litigation Settlement Trustees to file any accounting or seek approval of any court with respect to the administration of the Litigation Settlement Trust, or as a condition for any payment or distribution out of the assets of the Litigation Settlement Trust.

(b)     Upon distribution of all Litigation-Settlement Proceeds and all other Cash from the Litigation Settlement Trust or the termination of the Litigation Settlement Trust, the Litigation Settlement Trustees shall retain the books, records, and files which shall have been delivered to or created by the Litigation Settlement Trustees for a period of two (2) years.

3.5     Compliance with Laws.  Any and all distributions of ~~assets of the Litigation Settlement Trust~~Assets and proceeds of borrowings, if any, shall ~~be in compliance with~~follow applicable laws, including, without limitation, applicable federal and state securities laws.

3.6     Reliance by Litigation Settlement Trustees.  Except as otherwise provided herein:

(a)     the Litigation Settlement Trustees may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Litigation Settlement Trustees to be genuine and to have been signed or presented by the proper party or parties;

(b)     persons dealing with the Litigation Settlement Trustees shall look only to the ~~assets of the Litigation Settlement Trust~~Assets to satisfy any liability incurred by the Litigation Settlement Trustees to such Person in carrying out the terms of this ~~Declaration~~Agreement, and neither the Litigation Settlement Trustees nor any member of the ~~Litigation Settlement Trust Board~~Debtors shall have any personal obligation to satisfy any such liability; and

(c)     the Litigation Settlement Trustees shall have the right at any time to seek instructions concerning the administration of this ~~Declaration~~Agreement from the Bankruptcy Court or, in the event that the ~~Bankruptcy~~Chapter 11 Cases are closed, any ~~Delaware Court of Chancery~~Texas court.

~~Investment and Safekeeping of Litigation Settlement Trust Assets.  The Litigation Settlement Trustees shall invest all assets transferred to the Litigation Settlement Trustees (other than Litigation Settlement Trust Claims), all Litigation Settlement Trust Proceeds, the Litigation Settlement Expense Fund and all income earned by the Litigation Settlement Trust (pending periodic distributions in accordance with the provisions of the Confirmed Plan) only in cash demand and time deposits, such as short term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills; provided, however, that (i) the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the guidelines of the IRS, whether set forth in IRS rulings, other IRS pronouncements or otherwise, (ii) under no circumstances, shall the Litigation Settlement Trustees segregate the assets of the Litigation Settlement Trust on the basis of classification of the holders of Litigation Settlement Trust Interests, other than in accordance with the provisions of the Confirmed Plan, and (iii) the~~

Litigation Settlement Trustees shall not "vary the investment" of the Litigation Settlement Trust Beneficiaries, within the meaning of Treasury Regulation Section 301.7701-4(c).

Limitation of Litigation Settlement Trustees's Authority. Notwithstanding anything herein to the contrary, the Litigation Settlement Trustees shall not (i) be authorized to engage in any trade or business, (ii) take such actions inconsistent with the prompt and orderly liquidation of the assets of the Litigation Settlement Trust as are required or contemplated by applicable law, the Confirmed Plan, and this Declaration, (iii) be authorized to engage in any activities inconsistent with the treatment of the Litigation Settlement Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684, or (iv) take any action to cause the Litigation Settlement Trust to be treated as a publicly traded partnership within the meaning of Section 7704 of the Internal Revenue Code, including, without limitation, any action to cause the Litigation Settlement Trust Interests, or any of them, to be traded on an established securities market or to be readily tradeable on a secondary market or the substantial equivalent thereof (if and only to the extent such limitation described in this clause (iv) is required to qualify and maintain the qualification of the Litigation Settlement Trust as a liquidating trust within the meaning of Treasury Regulation 301.7701-4(d)).

Responsibilities of the Litigation Settlement Trustees.

(a) The Litigation Settlement Trustees shall have no obligation or duty to manage the assets of the Litigation Settlement Trust or to take any other act except as expressly required hereunder. The Litigation Settlement Trustees's duties shall be limited to the following:

i. serve as registered agent for service of process for the Litigation Settlement Trust under Section 3804(b) of the Act;

ii. serve as the Delaware resident trustee under Section 3807(a) of the Act;

iii. maintain the registered office of the Litigation Settlement Trust and forward to the Litigation Settlement Trustees within a reasonable time any process served upon it; and

iv. perform all other requirements so that the Litigation Settlement Trust qualifies as a Delaware statutory trust under the Act.

(b) The Litigation Settlement Trustees shall not have any duty or obligation with respect to the Litigation Settlement Trust Claims or any other assets of the Litigation Settlement Trust or the Litigation Settlement Trust except as otherwise specifically provided in this Agreement, and the Litigation Settlement Trustees shall be a trustee of the Litigation Settlement Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Act. No implied duties or obligations shall be read into this Agreement against the Litigation Settlement Trustees. Notwithstanding the foregoing, the Litigation Settlement Trustees are authorized to take all actions which the Litigation Settlement Trustees deems necessary, convenient, or incidental to effect the purposes of the Litigation Settlement Trust, all as set forth in written instructions from the Litigation Settlement Trustees in

accordance with this Declaration.  The right of the Litigation Settlement Trustees to perform any act enumerated herein shall not be construed as a duty.

3.7 3.10 Standard of Care; Exculpation.  To the fullest extent permitted by law, neither the Litigation Settlement Trustees or persons acting under the direction of the Litigation Settlement Trustees, nor any of their respective members, designees or professionals, nor any of their duly designated agents or representatives, shall be liable, responsible, or accountable in damages or otherwise for any loss, damage, or claim incurred by reason of any act or omission taken or omitted to be taken by the any other Trustee or such Trustee's agents or representatives, nor shall the Litigation Settlement Trustees or the Litigation Settlement Trustees be liable, responsible, or accountable in damages or otherwise for any loss, damage, or claim incurred by reason of any act or omission taken or omitted to be taken by either such Trustee the Litigation Settlement Trustees in good faith other than, provided, however, that such limitation of liability shall not apply to any acts or omissions resulting that shall be shown by clear and convincing evidence to have resulted from each such Trustee's own bad faith, willful misconduct, gross negligence, actual fraud, or knowing violation of law determined by clear and convincing evidence.  Each of the Litigation Settlement Trustees and each of their respective members may, in connection with the performance of their respective functions, and in each of their sole and absolute discretion, consult with their respective attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons.  Notwithstanding such authority, neither the Litigation Settlement Trustees nor the Litigation Settlement Trustees nor any of their respective members Trustee shall be under any obligation to consult with their respective attorneys, accountants, financial advisors, or agents, and the good faith determination not to do so shall not result in the imposition of liability on either of the Litigation Settlement Trustees or, as applicable, their respective members or designees, unless such determination is based on bad faith, willful misconduct, gross negligence, or knowing violation of law.    As provided herein, the Litigation Settlement Trustees shall not be in a fiduciary relationship in any respect, such relationship being expressly disclaimed by this Declaration. designees.

## ARTICLE 4
## ~~LITIGATION SETTLEMENT TRUST BOARD PROVIDED IN THE PLAN~~DISTRIBUTIONS

4.1 ~~Litigation Settlement Trust Board~~Distributions Subject to Confirmation of Plan.

~~The Litigation Settlement Trust Board shall, if a Confirmed Plan occurs, be comprised of three Persons.  The initial members of the Litigation Settlement Trust Board shall be appointed as described in and in accordance with the Confirmed Plan.  Successor members of the Litigation Settlement Trust Board shall be appointed as described in Section 4.7 below.  The Litigation Settlement Trust Board shall be in all respect advisory only and shall not have the power or authority to direct or instruct the Trustees, provided, however, Litigation Settlement Trust Board acting by a majority of members, shall have standing to bring actions only in the bankruptcy court to enforce the provisions of the Confirmed Plan, but not otherwise.~~

Authority of the Litigation Settlement Trust Board. The Litigation Settlement Trust Board shall have the post-confirmation authority and responsibility to oversee, review, and guide and advise, but not direct or instruct, the activities and performance of the Litigation Settlement Trustees and shall have the authority to remove the Litigation Settlement Trustees in accordance with Section 2.3 "for cause" only. The Litigation Settlement Trustees shall reasonably consult with and provide information reasonably requested from to the Litigation Settlement Trust Board in accordance with and pursuant to the terms of the Confirmed Plan. At the sole expense of the Litigation Settlement Trust Board, it shall have the authority to select and engage such Persons, and select and engage such professional advisors, including, without limitation, any professional previously retained by the Debtors in accordance with the terms of the Confirmed Plan and this Declaration, as the Litigation Settlement Trust Board deems necessary and desirable to assist the Litigation Settlement Trust Board in fulfilling its obligations under the Confirmed Plan, and the Litigation Settlement Trustees may pay the reasonable fees of such Persons (including on an hourly, contingency, or modified contingency basis) and reimburse such Persons for their reasonable and documented out-of-pocket costs and expenses consistent with the terms of the Confirmed Plan if in the exclusive discretion of the Trustees such payment reimburses work in and for the actual benefit to the Litigation Trust Estate . All of the Litigation Settlement Trust Board's decisions with respect to the pursuit or settlement of the Litigation Settlement Trust Claims shall be taken in good faith and reflect their duties to use their best efforts to pursue only the legitimate issues and concerns of Trust performance.

Meetings of the Litigation Settlement Trust Board.Regular meetings of the Litigation Settlement Trust Board are to be held with such frequency and at such place as the members of the Litigation Settlement Trust Board may determine in their reasonable discretion, but in no event shall such meetings be held less frequently than quarterly. The Litigation Settlement Trustees shall attend and participate in these regularly scheduled meetings. The Litigation Settlement Trust Board shall establish by resolution the time or times and place or places for the holding of such meetings. Notice of any such regular meetings of the Litigation Settlement Trust Board need not be given.

(b) Special meetings of the Litigation Settlement Trust Board may be held whenever and wherever called by the Litigation Settlement Trustees or any two members of the Litigation Settlement Trust Board. The Litigation Settlement Trustees shall attend and participate in any special meeting called by the Litigation Settlement Trustees and any other special meeting as requested by at least one member of the Litigation Settlement Trust Board.

Notice and Waiver of Notice for Litigation Settlement Trustees and Litigation Settlement Trust Board. Notice of the time and place (but not necessarily the purpose or all of the purposes) of any special meeting, or any change in time or place of a regular meeting, will be given to the Litigation Settlement Trustees and the members of the Litigation Settlement Trust Board in person or by telephone, or via mail, electronic mail, or facsimile transmission. Notice to the Litigation Settlement Trustees and the members of the Litigation Settlement Trust Board of any such special meeting or change in a regular meeting will be deemed given sufficiently in advance when (i) if given by electronic mail or facsimile transmission, the same is transmitted at least one business day prior to the convening of the meeting, or (ii) if personally delivered (including by overnight courier) or given by telephone, the same is handed, or the substance thereof is communicated over the telephone to the Litigation Settlement Trustees and

the members of the Litigation Settlement Trust Board or to an adult member of his/her office staff or household, at least one business day prior to the convening of the meeting. Each of the Litigation Settlement Trustees and any member of the Litigation Settlement Trust Board may waive notice of any meeting and any adjournment thereof at any time before, during, or after it is held, as provided by law. Except as provided in the next sentence below, the waiver must be in writing, signed by the Litigation Settlement Trustees or the applicable member or members of the Litigation Settlement Trust Board entitled to the notice, and filed with the minutes or records of the Litigation Settlement Trust. The attendance of the Litigation Settlement Trustees or a member of the Litigation Settlement Trust Board at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

Manner of Acting.

(a) A majority of the total number of members of the Litigation Settlement Trust Board then in office shall constitute a quorum for the transaction of business at any meeting of the Litigation Settlement Trust Board. The affirmative vote of a majority of the members of the Litigation Settlement Trust Board present and entitled to vote at a meeting at which a quorum is present shall be the act of the Litigation Settlement Trust Board, except as otherwise required by law or as provided in this Declaration.

(b) Each of the Litigation Settlement Trustees and any or all of the members of the Litigation Settlement Trust Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Each of the Litigation Settlement Trustees and any member of the Litigation Settlement Trust Board participating in a meeting by this means is deemed to be present in person at the meeting. Voting may, if approved by the majority of the members at a meeting, be conducted by electronic mail or individual communications by the Litigation Settlement Trustees and each member of the Litigation Settlement Trust Board.

(c) Any member of the Litigation Settlement Trust Board who is present and entitled to vote at a meeting of the Litigation Settlement Trust Board when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Litigation Settlement Trust Board, unless: (i) such member of the Litigation Settlement Trust Board objects at the beginning of the meeting (or promptly upon his/her arrival) to holding it or transacting business at the meeting; or (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Litigation Settlement Trust Board before its adjournment. The right of dissent or abstention is not available to any member of the Litigation Settlement Trust Board who votes in favor of the action taken.

(d) Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each of the Litigation Settlement Trustees and each

member of the Litigation Settlement Trust Board shall report to the Litigation Settlement Trust Board any conflict of interest such member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such member might have with respect to or in connection with such matter or issue, other than solely as, or as a representative of, a Litigation Settlement Trust Beneficiary). A Litigation Settlement Trust Board member who has or who may have a conflict of interest shall be deemed to be a "conflicted member" who shall not be entitled to vote or take part in any action with respect to such matter or issue (however such member shall be counted for purposes of determining the existence of a quorum); the vote or action with respect to such matter or issue shall be undertaken only by members of the Litigation Settlement Trust Board who are not "conflicted members."

Litigation Settlement Trust Board's Action Without a Meeting.    Any    action required or permitted to be taken by the Litigation Settlement Trust Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Litigation Settlement Trust Board as evidenced by one or more written consents describing the action taken, signed by all members of the Litigation Settlement Trust Board and recorded in the minutes or other transcript of proceedings of the Litigation Settlement Trust Board.

Tenure, Removal, and Replacement of the Members of the Litigation Settlement Trust Board. The authority of the members of the Litigation Settlement Trust Board will be effective as of the Effective Date and will remain and continue in full force and effect until the Litigation Settlement Trust is terminated in accordance with Article 9. The service of the members of the Litigation Settlement Trust Board will be subject to the following:

(a) the members of the Litigation Settlement Trust Board will serve until death or resignation pursuant to subsection (b) below, or removal pursuant to subsection (c) below.

(b) a member of the Litigation Settlement Trust Board may resign at any time by providing a written notice of resignation to the remaining members of the Litigation Settlement Trust Board. Such resignation will be effective upon the date received by the Litigation Settlement Trust Board or such later date specified in the written notice.

(c) members of the Litigation Settlement Trust Board may be removed as follows:

i. the member originally selected by the Debtors' Committee (the "Committee Board Member" or "Committee Representative") may be removed by the affirmative vote of the then-current Eligible Holders holding at least a majority of the Litigation Settlement Trust Interests;

ii. the Trustees or the Committee Representative may petition the Bankruptcy Court for removal, and the Bankruptcy Court may order such removal, of any member of the Litigation Settlement Trust Board for cause shown.

(d) In the event of a vacancy on the Litigation Settlement Trust Board (whether by removal, death, or resignation), new members may be appointed to fill such vacancy.

(e) For purposes of this Declaration, "Eligible Holder" means each Litigation Settlement Trust Beneficiary in the Litigation Settlement Trust.

(f) If there are no Eligible Holders of Litigation Settlement Trust Interests to select as a member of the Litigation Settlement Trust Board, the Litigation Settlement Trust Board shall proceed without a member selected by that class.

(g) Only persons who are nominated in accordance with the procedures set forth in this Litigation Settlement Trust Agreement shall be eligible to serve as a replacement as the case may be, of the Litigation Settlement Trust Board. Nominations of persons for election as a replacement member of the Litigation Settlement Trust Board may be made by any Eligible Holder of Litigation Settlement Trust Interests who (i) is an interest holder of record both as of the record date established by the Litigation Settlement Trustees for such purpose and at the time of giving of notice provided for in this Section 4.7(g), (ii) shall be entitled to vote for the election of a replacement member of the Litigation Settlement Trust Board and (iii) complies with the notice procedures set forth in this Section 4.7(f). Such nominations shall be made pursuant to timely notice in writing to the Litigation Settlement Trustees. To be timely, an interest holder's notice shall be delivered to or mailed and received by the Litigation Settlement Trustees at the address set forth herein not later than the close of business on the calendar day prior to the date established by the Litigation Settlement Trustees for such purpose. Such interest holder's notice shall set forth (A) as to the person whom the interest holder proposes to nominate for election as a replacement member of the Litigation Settlement Trust Board detailed information relating to the qualifications of such person to serve as a member of the Litigation Settlement Trust Board, including such person's written consent to being named as a nominee and to serving as a member of the Litigation Settlement Trust Board if elected and being bound by the terms and conditions of this Declaration, and the number of Litigation Settlement Trust Interests owned beneficially and/or of record by such individual or any Person affiliated with such individual; and (B) as to the Litigation Settlement Trust Beneficiary giving the notice (i) the name and address, as they appear on the Litigation Settlement Trust Registrar, of such Litigation Settlement Trust Beneficiary and (ii) the number of Litigation Settlement Trust Interests owned beneficially and/or of record by such by such Litigation Settlement Trust Beneficiary. No person shall be eligible to serve as a Board Member of the Litigation Settlement Trust Board unless nominated in accordance with the procedures set forth in this Section 4.7(f).

(h) Following the receipt of nominations for a replacement a Board Member, of the Litigation Settlement Trust Board in accordance with Section 4.7(f), the Litigation Settlement Trustees shall mail a ballot to all Litigation Settlement Trust Beneficiaries who are entitled to vote in the election of the replacement member of the Litigation Settlement Trust Board. With respect to the election of a replacement member of the Litigation Settlement Trust Board, each Litigation Settlement Trust Beneficiary shall be entitled to one vote for each outstanding Litigation Settlement Trust Interest held by such Litigation Settlement Trust Beneficiary and such Litigation Settlement Trust Beneficiary shall submit such vote in

accordance with the procedures established from time to time by the Litigation Settlement Trustees.

(i) Immediately upon the appointment of any successor member of the Litigation Settlement Trust Board, all rights, powers, duties, authority, and privileges of the predecessor member of the Litigation Settlement Trust Board hereunder will be vested in and undertaken by the successor member of the Litigation Settlement Trust Board without any further act; and the successor member of the Litigation Settlement Trust Board will not be liable personally for any act or omission of the predecessor member of the Litigation Settlement Trust Board.

Compensation of the Litigation Settlement Trust Board.    Each member of the Litigation Settlement Trust Board shall be paid the amount of $2,500.00 per quarter, plus $250.00 per meeting from proceeds of the Litigation Settlement Trust, when such member is required to attend a Litigation Settlement Trust Board meeting in person, as compensation for his or her services under this Agreement, and shall be reimbursed for all reasonable and documented expenses incurred by such member in connection with the performance of his or her services hereunder.    The Litigation Settlement Trust shall have no further obligation for payment or reimbursement under this section to any member of Litigation Settlement Trust Board.

Standard of Care; Exculpation.    To the fullest extent permitted by law, none of the Litigation Settlement Trust Board, its members, designees or professionals, nor any of their duly designated agents or representatives, shall be liable, responsible, or accountable in damages or otherwise for any loss, damage, or claim incurred by reason of any act or omission taken or omitted to be taken by any other member, agent or representative of the Litigation Settlement Trust Board, nor shall the Litigation Settlement Trust Board or any of its members be liable, responsible, or accountable in damages or otherwise for any loss, damage, or claim incurred by reason of any act or omission taken or omitted to be taken by the Litigation Settlement Trust Board in good faith using its best efforts, other than acts or omissions resulting from the Litigation Settlement Trust Board's bad faith, willful misconduct, gross negligence, or knowing violation of law. The Litigation Settlement Trust Board and each of its members may, in connection with the performance of their respective functions, and in each of their sole and absolute discretion, consult with its attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in good faith in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, neither the Litigation Settlement Trust Board nor any of its members shall be under any obligation to consult with their respective attorneys, accountants, financial advisors or agents, and its good faith determination not to do so shall not result in the imposition of liability on the Litigation Settlement Trust Board or, as applicable, its members or designees, unless such determination is based on bad faith, willful misconduct, gross negligence, or knowing violation of law.

## ARTICLE 5
## LITIGATION SETTLEMENT TRUST INTERESTS

Issuance of Litigation Settlement Trust Interests.    The issuance of the Litigation Settlement Trust Interests, shall be accomplished as set forth in the Confirmed Plan, including,

and in every event shall be based on the filing of a Proof of Claim in these respective Debtor's case (an "Interest").

Interests Beneficial Only.

(a) The ownership of a Litigation Settlement Trust Interest shall not entitle any Litigation Settlement Trust Beneficiary to any title in or to the assets of the Litigation Settlement Trust as such (which title shall be vested in the Litigation Settlement Trustees) or to any right to call for a partition or division of the assets of the Litigation Settlement Trust or to require an accounting.

(b) The Litigation Settlement Trust Beneficiaries have no rights with respect to, or interest in the Debtors (or any successor thereto).

(a) (c) The Litigation Settlement Trust Beneficiaries have no rights to direct Trustees shall distribute the Assets to the Litigation Settlement Trustees, the Litigation Settlement Trustees, or the Litigation Settlement Trust Board, except as set forth in Section 5.8 herein. Trust Beneficiaries or to such other parties as the case may be at such times and in such manner and amounts as shall be provided in any Plan or other order of the Bankruptcy Court.

(d) (i) The Litigation Settlement Trust Claims are solely assets of the Litigation Settlement Trust; (ii) the Litigation Settlement Trust Claims shall be conducted on behalf of the Litigation Settlement Trust Beneficiaries solely in accordance with the instructions of the Litigation Settlement Trustees pursuant to this Declaration; (iii) the Litigation Settlement Trustees shall have the sole and exclusive right (subject to consultation with the Litigation Settlement Trust Board as set forth herein), to take (or not take), actions relating to such Litigation Settlement Trust Claims as contemplated by this Declaration and may, among other things, dismiss, settle, or cease prosecuting such Litigation Settlement Trust Claims at any time without obtaining any cash or other recovery, or upon obtaining such cash or other recovery as the Litigation Settlement Trustees may determine; (iv) the Litigation Settlement Trustees has the sole and exclusive right (subject to consultation with the Litigation Settlement Trust Board as set forth herein), to take or not take other actions contemplated by this Declaration on behalf of the Litigation Settlement Trust Beneficiaries relating to such Litigation Settlement Trust Claims (including, without limitation, any decision with respect to the incurrence of expenses); and (v) any liability of the Litigation Settlement Trustees, or any member of the Litigation Settlement Trust Board, is limited to the extent set forth in this Declaration.

Evidence of Beneficial Interests. The Litigation Settlement Trustees shall have full power, authority and discretion to determine whether ownership of any Litigation Settlement Trust Interest shall be represented by physical certificates, by book entries in lieu of physical certificates, or in any other form or manner. Regardless of such determination, the record holders of the Litigation Settlement Trust Interests shall be recorded and set forth in the Litigation Settlement Trust Register maintained by the Litigation Settlement Trust Registrar expressly for such purpose pursuant to Section 5.5. All references in this Declaration to Litigation Settlement Trust Beneficiaries shall be read to mean holders of record as set forth in the official register maintained by the Litigation Settlement Trust Registrar and shall not mean any beneficial owner not recorded on such official register. Unless expressly provided herein,

the Litigation Settlement Trustees may establish a record date, which the Litigation Settlement Trustees deems practicable for determining the holders for a particular purpose.

(b) In the event certificates are to be issued to evidence ownership of any Litigation Settlement Trust Interests, (i) the form and content of such certificates shall be determined by the Litigation Settlement Trustees subject to approval by the Litigation Settlement Trust Board, and (ii) the Litigation Settlement Trustees shall cause to be placed on such certificates such legends as it deems to be necessary or appropriate under tax laws or regulations, securities laws or regulations or otherwise. Any Litigation Settlement Trust Beneficiary to whom such a certificate is issued or transferred, by virtue of the acceptance thereof, shall assent to and be bound by the terms and conditions of this Declaration and the Confirmed Plan.

Securities Law Matters. To the extent the Litigation Settlement Trust Interests are deemed to be "securities," the issuance of Litigation Settlement Trust Interests under the Confirmed Plan are exempt, pursuant to Section 1145 of the Bankruptcy Code, from registration under the Securities Act of 1933, as amended, and any applicable state and local laws requiring registration of securities. If the Litigation Settlement Trustees determines, with the advice of counsel, that the Litigation Settlement Trust is required to comply with registration and reporting requirements of the Exchange Act, then the Litigation Settlement Trustees shall take any and all actions deemed necessary or appropriate by the Litigation Settlement Trustees to comply with such registration and reporting requirements, if any, and to file periodic reports with the Securities and Exchange Commission (the "SEC"). Notwithstanding the foregoing procedure, nothing in the Confirmed Plan shall be deemed to preclude the Litigation Settlement Trustees from amending this Declaration to make such changes as deemed necessary or appropriate by the Litigation Settlement Trustees, with the advice of counsel, to ensure that the Litigation Settlement Trust is not subject to registration or reporting requirements of the Exchange Act, the Trust Indenture Act, or the Investment Company Act.

(b) Exemptions may be sought from the SEC from all or some of the registration and reporting requirements that may be applicable to Except as otherwise ordered by the Bankruptcy Court, in the event that the Litigation Settlement Trust pursuant to the Exchange Act, the Trust Indenture Act, or the Investment Company Act, if it is determined that compliance with such requirements would be burdensome on shall terminate prior to confirmation of a Plan, each respective Third-Party Funding Contributor shall be entitled to receive its pro-rata share of any residual Assets, if any, and provided, however, that all costs of administration of the Litigation Settlement Trust and the Chapter 11 Cases shall be chargeable against and paid from such Assets prior to any distribution.

(c) The Litigation Settlement Trust is organized as a liquidating entity in the process of liquidation, and therefore should not be considered, and the Litigation Settlement Trust does not and will not hold itself out as, an "investment company" or any entity "controlled" by an "investment company," as such terms are defined in the Investment Company Act.

Transfer and Exchange.

(a) The Litigation Settlement Trustees shall appoint a Litigation Settlement Trust Registrar, which may be the Litigation Settlement Trustees, for the purpose of registering and transferring the Litigation Settlement Trust Interests as herein provided. The Litigation Settlement Trust Registrar may be a duly qualified institution or the Litigation Settlement Trustees itself. For its services hereunder, the Litigation Settlement Trust Registrar, unless it is the Litigation Settlement Trustees, shall be entitled to receive reasonable compensation from the Litigation Settlement Trust as an expense of the Litigation Settlement Trust.

(b) The Litigation Settlement Trustees shall cause to be kept at the office of the Litigation Settlement Trust Registrar, or at such other place or places as shall be designated by it from time to time, the Litigation Settlement Trust Register. The Litigation Settlement Trust Register shall contain the names, addresses for payment and notice, and number of Litigation Settlement Trust Interests of each of the Litigation Settlement Trust Beneficiaries and shall be maintained pursuant to such reasonable regulations as the Litigation Settlement Trustees and the Litigation Settlement Trust Registrar may prescribe.

(c) Pursuant to such reasonable regulations as the Litigation Settlement Trustees and the Litigation Settlement Trust Registrar may prescribe, and subject to the Litigation Settlement Trustees' review and approval of any such proposed transaction in its sole and absolute discretion, the Litigation Settlement Trustees may permit to be transferred, assigned, pledged, hypothecated, or registered on the Litigation Settlement Trust Register any Litigation Settlement Trust Interests issued pursuant to this Declaration. Subject to the review and approval of any such proposed transaction by the Litigation Settlement Trustees and the other limitations set forth herein, any registered Litigation Settlement Trust Beneficiary may transfer, assign, pledge, or hypothecate, in whole or in part, Litigation Settlement Trust Interests upon presentation of a duly executed written instrument of transfer in the form approved by the Litigation Settlement Trustees and the Litigation Settlement Trust Registrar, which instrument must be executed by the transferor and the transferee and must clearly identify the Litigation Settlement Trust Interests being transferred, assigned, pledged, or hypothecated, and such other documents as they may reasonably require. The transferor shall pay reasonable transfer charges established by the Litigation Settlement Trustees or the Litigation Settlement Trust Registrar for the purpose of reimbursing the Litigation Settlement Trust and the Litigation Settlement Trust Registrar for the expense's incident thereto, including any legal fees, taxes, or other governmental charges.

(d) No Litigation Settlement Trust Beneficiary may transfer, assign, pledge, hypothecate, or otherwise dispose of any Litigation Settlement Trust Interests unless in compliance with the Securities Act and other state and federal securities laws. No transfer, assignment, pledge, hypothecation, or other disposition of a Litigation Settlement Trust Interest may be effected until (i) the Litigation Settlement Trustees has approved such proposed transaction in its sole and absolute discretion, and (ii) the Litigation Settlement Trustees and the Litigation Settlement Trust Board shall have received such legal or other information that they, in their sole discretion, deem necessary or appropriate to evidence such compliance.

(e) In the event that the Litigation Settlement Trustees determines that the Litigation Settlement Trust Interests shall be represented by physical certificates, subject to the foregoing conditions of this Section 5.5, whenever any certificate shall be presented for transfer or exchange, the Litigation Settlement Trustees shall cause the Litigation Settlement Trust Registrar to issue, authenticate, and deliver in exchange therefor, the certificate for the Litigation Settlement Trust Interest(s) that the person(s) presenting such certificates shall be entitled to receive.

(f) In the event that the Litigation Settlement Trustees determines that the Litigation Settlement Trust Interests shall be represented by physical certificates, if a Litigation Settlement Trust Beneficiary claims that his/her certificate (the "Original Certificate") has been mutilated, defaced, lost, stolen, or destroyed, the Litigation Settlement Trustees shall issue, and the Litigation Settlement Trust Registrar shall authenticate, a replacement certificate if such Litigation Settlement Trust Beneficiary submits a notarized affidavit certifying that (i) he/she is the true, lawful, present, and sole owner of the Original Certificate, (ii) he/she has diligently searched all of his/her financial and other records and the Original Certificate is nowhere to be found, (iii) the Original Certificate and any rights or interests therein were not endorsed, and have not been pledged, sold, delivered, transferred, or assigned under any agreement, hypothecated or pledged for any loan, or disposed of in any manner by the Litigation Settlement Trust Beneficiary or on his/her behalf, (iv) no other person or other entity has any right, title, claim, equity, or interest in, to, or respecting the Original Certificate, and (v) in the event of the recovery of the Original Certificate at any time after the issuance of a new certificate in exchange thereof, the Litigation Settlement Trust Beneficiary will cause the recovered Original Certificate to be returned to the Litigation Settlement Trust for cancellation. In addition, such Litigation Settlement Trust Beneficiary will indemnify, and if required by the Litigation Settlement Trustees or the Litigation Settlement Trust Registrar, provide a bond or other security sufficient in the reasonable judgment of the Litigation Settlement Trustees, the Litigation Settlement Trust Registrar or any authenticating agent, from any loss which any of them may suffer if the Original Certificate is replaced, including a loss resulting from the assertion by any entity or person of the right to payment under the Original Certificate. Such Litigation Settlement Trust Beneficiary shall pay reasonable charges established by the Litigation Settlement Trustees and the Litigation Settlement Trust Registrar for the purpose of reimbursing the Litigation Settlement Trust and the Litigation Settlement Trust Registrar for the expenses incident thereto, including any tax or other governmental charges. The Litigation Settlement Trustees shall incur no liability to anyone by reason of anything done or omitted to be done by it in good faith under the provisions of this Section 5.5(f). All Litigation Settlement Trust Interests shall be held and owned upon the express condition that the provisions of this Section 5.5(f) are exclusive in respect of the replacement or payment of mutilated, defaced, lost, stolen, or destroyed certificates and shall, to the extent permitted by law, preclude any and all other rights or remedies respecting such replacement or the payment in respect thereto. Any duplicate certificate issued pursuant to this Section 5.5(f) shall constitute original interests in the Litigation Settlement Trust. The Litigation Settlement Trustees and the Litigation Settlement Trust Registrar shall not treat the Original Certificate as outstanding.

Access to the Litigation Settlement Trust Register by the Litigation Settlement Trust Beneficiaries.. Litigation Settlement Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Litigation

Settlement Trust Registrar and the Litigation Settlement Trustees, and in accordance with the reasonable regulations prescribed by the Litigation Settlement Trust Registrar and the Litigation Settlement Trustees, to inspect and, at the sole expense of the Litigation Settlement Trust Beneficiary seeking the same, make copies of the Litigation Settlement Trust Register, in each case for a purpose reasonably related to such Litigation Settlement Trust Beneficiary's interest in the Litigation Settlement Trust.

Absolute Owners. The Litigation Settlement Trustees may deem and treat the Litigation Settlement Trust Beneficiary of record in the Litigation Settlement Trust Register as the absolute owner of such Litigation Settlement Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever and the Litigation Settlement Trustees shall not be charged with having received notice of any claim or demand to such Litigation Settlement Trust Interests or the interest therein of any other Person.

Limitation on Suits by Litigation Settlement Trust Beneficiaries. To the fullest extent permitted by law, no Litigation Settlement Trust Beneficiary shall have any right by virtue of or by availing itself of any provision of this Declaration to institute any action or proceeding (other than a suit by such Litigation Settlement Trust Beneficiary for nonpayment of amounts due and owing hereunder with respect to such Litigation Settlement Trust Beneficiary's Litigation Settlement Trust Interest) at law or in equity or in bankruptcy or otherwise upon or under or with respect to this Declaration, or for the appointment of any trustee, receiver, liquidator, custodian, or other similar official or for any other remedy hereunder, unless such Litigation Settlement Trust Beneficiary previously shall have given to the Litigation Settlement Trustees written notice of default, and unless such Litigation Settlement Trust Beneficiary shall also have made written request upon the Litigation Settlement Trustees to institute such action or proceeding in its own name as Litigation Settlement Trustees hereunder and shall have offered to the Litigation Settlement Trustees such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby and the Litigation Settlement Trustees for 60 days after its receipt of such notice, request and offer of indemnity shall have failed to institute any such action or proceeding; it being understood and intended, and being expressly covenanted by every Litigation Settlement Trust Beneficiary with every other Litigation Settlement Trust Beneficiary and the Litigation Settlement Trustees, that no one or more Litigation Settlement Trust Beneficiaries shall have any right in any manner whatsoever by virtue or by availing itself or themselves of any provision of this Declaration to effect, disturb or prejudice the rights of any other such Litigation Settlement Trust Beneficiary, or to obtain or seek to obtain priority over or preference to any other such Litigation Settlement Trust Beneficiary or to enforce any right under this Declaration, except in the manner herein provided and for the ratable and common benefit of all Litigation Settlement Trust Beneficiaries. For the protection and enforcement of the provisions of this Section, each and every Litigation Settlement Trust Beneficiary and the Litigation Settlement Trustees shall be entitled to such relief as can be given either at law or in equity.

## ARTICLE 6
## DISTRIBUTIONS

Use of Proceeds.

(a) Pursuant to the Confirmed Plan, all Litigation Settlement Proceeds, any proceeds therefrom, and any other Cash of the Litigation Settlement Trust (other than the Litigation Settlement Trust Expense Fund) received by the Litigation Settlement Trustees shall be applied as follows:

i. first, to (i) Litigation Trust Expenses (ii) satisfy other liabilities incurred or assumed by the Litigation Settlement Trust (or to which the assets are otherwise subject) in accordance with the Confirmed Plan or this Declaration, (iii) hold such amounts in reserve as the Litigation Settlement Trustees deems reasonably necessary to meet future expenses, contingent liabilities and to maintain the value of the assets of the Litigation Settlement Trust during liquidation (including the Litigation Settlement Expense Fund) and (iv) pay the Trustees serving as the Plan Administrators such amounts as the Trustees are authorized to receive from time to time for the purpose of paying, or indemnifying Reorganized Debtors for, any taxes incurred or expected to be incurred by Reorganized Debtors in connection with the Litigation Settlement Trust as a result of the allocation of tax items by the Litigation Settlement Trustees or the allowance or disallowance of Disputed Claims;

ii. second, to pay any remaining amounts to the Litigation Settlement Trust Beneficiaries (including to the Plan Administrator for deposit into the Disputed Claims Reserve on account of the Claims of any Claimant that would be a Litigation Settlement Trust Beneficiary absent such objection) pro rata based on their Litigation Settlement Trust Interests. If the Plan Administrator holds proceeds of the Litigation Settlement Trust in the Disputed Claims Reserve on account of a Disputed Claim that is finally determined adversely to such Claimant, in whole or in part, the Plan Administrator shall return to the Litigation Settlement Trust the disallowed portion that the Plan Administrator received from the Litigation Settlement Trust on account of such Claim and shall pay any Allowed portion to such Claimant in accordance with the Confirmed Plan; and

(b) Subject to clauses (i), and (ii) of Section 6.1(a), the Litigation Settlement Trustees shall distribute in accordance with Section 6.1(a) at least annually its net income and all net proceeds from the liquidation of the assets of the Litigation Settlement Trust (except to the extent any such failure to distribute is not inconsistent with the classification of the Litigation Settlement Trust as a liquidating trust under Section 301.7701-4(d) of the Treasury Regulations).

(c) If, upon termination of the Litigation Settlement Trust, the Litigation Settlement Trust Expense Fund has funds remaining after the payment of all of the Litigation Settlement Trust's expenses, such remaining funds shall be paid to the Litigation Settlement Trust Beneficiaries holding a Litigation Settlement Trust Interests (including the Plan

Administrator on behalf of the Disputed Claims Reserve) pro rata based on their Litigation Settlement Trust Interests.

(d) Notwithstanding the foregoing clauses of this Section 6.1, the Litigation Settlement Trustees may withhold from amounts distributable to any Person any and all amounts, determined in the Litigation Settlement Trustees' reasonable sole discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement to be withheld. Any amount so withheld from a distribution to a Litigation Settlement Trust Beneficiary (or its designee) shall be treated as having been paid to, and received by, such Litigation Settlement Trust Beneficiary for purposes of the Confirmed Plan and the Plan Documents consisting of all Exhibits, the Confirmation Order, and other schedules attached to either the Plan or the Confirmation Order.

Manner of Payment of Distributable Proceeds. Notwithstanding any other provision of this Agreement, the cost of administration of the Litigation Settlement Trust shall be charged against and shall be paid prior to any distributions from the Assets. Such costs shall include, but are not limited to: (i) the Litigation Trust Expenses, and (ii) other liabilities incurred or assumed by the Litigation Settlement Trustees in their capacity as trustees (or to which the Assets are otherwise subject) in accordance with this Agreement. Further, the Litigation Settlement Trustees shall be entitled to hold such amounts in reserve as they deem reasonably necessary to meet future expenses, contingent liabilities and to maintain the value of the Assets during the term of the Litigation Settlement Trust.

(a) All distributions made by the Litigation Settlement Trustees to holders of Litigation Settlement Trust Interests shall be payable to the holders of Litigation Settlement Trust Interests of record as of the 20th day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such day shall be the following Business Day. The Litigation Settlement Trustees shall promptly notify the Litigation Settlement Trust Registrar in writing of any such dates and the Litigation Settlement Trust Registrar shall promptly notify the Litigation Settlement Trust Beneficiaries of the same.

(b) If the distribution shall be in Cash, the Litigation Settlement Trustees shall distribute such Cash by wire, check, or such other method as the Litigation Settlement Trustees deems appropriate under the circumstances.

(c) All distributions under this Declaration to any holder of Litigation Settlement Trust Interests shall be made at the address or to the account (as applicable) of such holder as set forth in the Litigation Settlement Trust Register or at such other address or in such other manner as such holder of Litigation Settlement Trust Interests shall have specified for payment purposes in a written notice to the Litigation Settlement Trustees and the Litigation Settlement Trust Registrar at least 20 days prior to such distribution date. In the event that any distribution to any holder is returned as undeliverable, the Litigation Settlement Trustees shall be entitled to rely on the most current information available from the Plan Administrator, as applicable, to determine the current address or account information of such holder, but no distribution to such holder shall be made unless and until the Litigation Settlement Trustees has determined the then current address or account (as applicable) of such holder, at which time such distribution shall be made to such holder without interest; *provided, however*, that such

~~undeliverable or unclaimed distributions shall be deemed unclaimed property at the expiration of one year from the date of distribution. The Litigation Settlement Trustees shall reallocate the undeliverable and unclaimed distributions for the benefit of all other Litigation Settlement Trust Beneficiaries.~~

~~(d) Notwithstanding anything herein to the contrary, the Litigation Settlement Trustees shall not be required to make distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under the Confirmed Plan or this Declaration would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or more being rounded up.~~

~~(e) The Litigation Trustees shall have the exclusive power and authority to deem any Litigation Settlement Trust Claim, or all Litigation Settlement Trust Claims, "Paid in Full" in compliance with this Declaration and the Confirmed Plan and recognize the Resulting Release of the Third-Party Funding Contributor(s). The Confirmed Plan shall include a provision for the reservation of jurisdiction to enter orders deeming the Payment in Full as determined by the Litigation Settlement Trust beneficiaries, upon notice and hearing.~~

## ARTICLE 5~~ARTICLE 7~~
## INDEMNIFICATION

### 5.1    ~~7.1~~ Indemnification of Litigation Settlement Trustees

(a)    To the fullest extent permitted by law, the Litigation Settlement Trust, to the extent of its ~~assets legally available for that purpose~~Assets, shall indemnify and hold harmless each present and former ~~Litigation Settlement Trustees or~~Trustee and each of their respective directors, members, shareholders, partners, officers, agents, employees, attorneys, and other professionals (collectively, the "Indemnified Persons") from and against any and all losses, costs, damages, reasonable and documented out-of-pocket expenses (including, without limitation, reasonable fees and expenses of attorneys and other advisors and any court costs incurred by any Indemnified Person) or liability arising out of or relating to the Litigation Settlement Trust, the Litigation Settlement Trust Interests, the ~~assets of the Litigation Settlement Trust~~Assets, the Litigation Settlement Trust Claims, or any acts or omissions of ~~the Litigation Settlement Trust or~~any Indemnified Person in ~~its~~their capacity as a Litigation Settlement ~~Trustees~~Trustee or agent, employee, or representative thereof; *provided, however,* that such act or omission was reasonably believed ~~by the applicable Indemnified Person~~ to be within the scope of authority granted to such Person under this ~~Declaration~~Agreement and did not constitute bad faith, gross negligence, fraud, willful misconduct, or knowing violation of law established by clear and convincing evidence.

(b)    ~~To the extent reasonable~~In their sole discretion, the Litigation Settlement ~~Trust~~Trustees may pay in advance or reimburse reasonable and documented out-of-pocket expenses (including ~~advancing~~ reasonable costs of defense) incurred by ~~the~~an Indemnified Person who is or is threatened to be named or made a defendant or a respondent in a proceeding concerning the business and affairs of the Litigation Settlement Trust. To the extent that any such expenses are paid or reimbursed in advance of the final disposition of any such action, suit or proceeding, the Indemnified Person shall provide the Litigation Settlement Trust

with an undertaking by or on behalf of such Indemnified Person to repay such amount if it shall ultimately be determined that such Person is not entitled to be indemnified by the Litigation Settlement Trust as authorized in this Article ~~7~~5. Such expenses (including attorneys' fees) may be so paid upon such terms and conditions, if any, as the Litigation Settlement Trustees ~~deems~~deem appropriate.

(c)     Any Indemnified Person may waive the benefits of indemnification under this Article ~~7~~5, but only by an instrument in writing executed by such Indemnified Person.

(d)     The Litigation Settlement ~~Trust~~Trustees shall have power to purchase and maintain insurance on behalf of any potentially Indemnified Person against any liability asserted against such Person and incurred by such Person in connection with such Person's obligations under this ~~Declaration~~Agreement, whether or not ~~the Litigation Settlement Trust would have the power to indemnify~~ such Person would be entitled to indemnification against such liability under the provisions of this Article ~~7~~5.

(e)     The rights to indemnification under this Article ~~7~~5 are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including without limitation common law rights to indemnification or contribution. Nothing in this Article ~~7~~5 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under this ~~Declaration~~Agreement or any other agreement or instrument to which that Person is a party.

## ARTICLE 6~~ARTICLE 8~~
### REPORTS

6.1     ~~8.1~~Financial, Tax, and Other Information.

~~(a) At such times as may be required by the Exchange Act, if applicable, or otherwise as soon as practicable~~

~~i. after the end of each calendar year, and as soon as practicable upon termination of the Litigation Settlement Trust, the Litigation Settlement Trustees shall cause to be prepared, and shall submit to each Litigation Settlement Trust Beneficiary a written report including: (a) audited financial statements of the Litigation Settlement Trust at the end of the calendar year or period and the receipts and disbursements of the Litigation Settlement Trustees for the period; (b) a description of any action taken by the Litigation Settlement Trustees in the performance of the Litigation Settlement Trustees's duties which materially affects the Litigation Settlement Trust and of which notice has not previously been given to the Litigation Settlement Trust Beneficiaries; and (c) a description of any material judicial or arbitral decision with respect to, or any agreement to settle, the Litigation Settlement Trust Claims included in the assets of the Litigation Settlement Trust.~~

~~ii. after the end of each calendar quarter, the Litigation Settlement Trustees shall cause to be prepared, and shall submit to each Litigation Settlement Trust Beneficiary a written report including: (a) unaudited financial statements of the Litigation~~

Settlement Trust at the end of the calendar quarter, and the receipts and disbursements of the Litigation Settlement Trustees for the quarter; and (b) a description of any action taken by the Litigation Settlement Trustees in the performance of the Litigation Settlement Trustees' duties which materially affects the Litigation Settlement Trust and of which notice has not previously been given to the Litigation Settlement Trust Beneficiaries.

iii. promptly following the occurrence of a material event or change which effects either the Litigation Settlement Trust or the rights of the Litigation Settlement Trust Beneficiaries hereunder, the Litigation Settlement Trustees shall cause to be prepared and shall submit additional reports to the Litigation Settlement Trust Beneficiaries relating to such occurrences.

The information to be provided pursuant to this Section 8.1(a) shall satisfy any rights under the Delaware Statutory Trust Act, 12 Del. C. § 3801 et seq., or otherwise of the Litigation Settlement Trust Beneficiaries to access to information regarding the business and financial condition of the Litigation Settlement Trust.

(b) As soon as practicable after the end of each calendar year, and as soon as practicable upon the termination of the Litigation Settlement Trust, the Litigation Settlement Trustees shall cause to be prepared and shall submit to current and former Trust Tax Owners, as applicable, a statement setting forth, for federal income tax purposes, their allocable portions of items of income, gain, loss, deduction and credit of the Litigation Settlement Trust for such calendar year (as determined pursuant to Section 1.4(d) hereof), and the fair market value of the assets deemed to have been transferred to such current or former Trust Tax Owner during such calendar year (as determined pursuant to Section 1.4(d) hereof).

(c) The Litigation Settlement Trustees shall submit to Reorganized Debtors, as soon as practicable after the Effective Date (but no later than January 20th of the year following the Effective Date), a statement setting forth, for federal income tax purposes, the total fair market value (as of the Effective Date) of each asset transferred to the Litigation Settlement Trust (including, without limitation, the Litigation Settlement Trust Claims), and the portion of such fair market value allocated to each Trust Tax Owner. The Litigation Settlement Trustees shall submit to Reorganized Debtors, as soon as practicable after the end of each calendar year, a statement setting forth the fair market value (as of the applicable deemed transfer dates) of the portion of the Litigation Settlement Trust's assets that is treated for federal income tax purposes as having been transferred to Trust Tax Owners or other Persons by Reorganized Debtors as a result of the allowance or disallowance of Disputed Claims during such year and the portion of such fair market value allocated to each Trust Tax Owner.

(a) (d) The Litigation Settlement Trustees shall be responsible for filing all federal, state, and local tax returns for the Litigation Settlement Trust and paying any taxes imposed on the Litigation Settlement Trust, which amounts shall be funded solely from Assets. The Litigation Settlement Trustees shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Litigation Settlement

Trustees of a private letter ruling if the Litigation Settlement Trustees so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Settlement Trustees), the Litigation Settlement Trustees shall file tax returns (including all federal returns, and to the extent permitted under state and local law, state and local returns) for the Litigation Settlement Trust as a grantor trust of which the Trust Tax Owners are the deemed owners pursuant to Treasury Regulation Section 1.671-4(a) and any comparable provisions under applicable state and local law.

6.2    8.2 Other Required Reports.

(a)    Promptly following the occurrence of a material event or change which effects either the Litigation Settlement Trust or the rights of the Litigation Settlement Trust Beneficiaries hereunder, the Litigation Settlement Trustees shall cause to be prepared and delivered to the Litigation Settlement Trust Beneficiaries notice of such occurrences.

(b)    The Litigation Settlement Trustees shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Litigation Settlement Trust that are required by any governmental unit or regulatory agency.

6.3    8.3 Certain Non-Public Information.    The As provided in ¶ 1.2(c) the Litigation Settlement Trustees may deliver certain non-public information to one or more Litigation Settlement Trust Beneficiaries and such delivery shall in no way entitle any other Litigation Settlement Trust Beneficiary to receive such information.  Notwithstanding anything in this Declaration Agreement to the contrary, the Litigation Settlement Trustees may, in its their sole discretion, withhold information from any Litigation Settlement Trust Beneficiary if the Litigation Settlement Trustees believes in good faith that the delivery of such information to such Litigation Settlement Trust Beneficiary (i) is or would be prohibited by any agreement with a Third-Party or (ii) is not in the best interest of the Litigation Settlement Trust or in the purpose of maximizing the value of the assets of the Litigation Settlement Trust or (iii) could damage or prejudice the Litigation Settlement Trust, the assets of the Litigation Settlement Trust (including the Litigation Settlement Trust Claims and Privileges) Assets or the business, operations, or purpose of the Litigation Settlement Trust.

6.4    8.4 Electronic Reporting.    Notwithstanding anything herein to the contrary, the Litigation Settlement Trustees may post any report, notice, or other information required to be provided to the Litigation Settlement Trust Beneficiaries on a web site maintained by the Litigation Settlement Trustees in lieu of actual delivery of such report, notice, or other information to the Litigation Settlement Trust Beneficiaries, subject to providing notice that such a procedure is being (or will be) implemented.

## ARTICLE 7 ARTICLE 9
## TERM; TERMINATION OF THE LITIGATION SETTLEMENT TRUST

7.1    9.1 Term; Termination of the Litigation Settlement Trust. The Litigation Settlement Trust shall terminate on: continue for such time as is reasonably necessary to accomplish its purposes as set forth in this Agreement, provided, however, that, except as

otherwise ordered by the Bankruptcy Court or as set forth in a Plan, the Litigation Settlement Trust shall be terminated upon the occurrence of the following:

(a) (i) Conversion or dismissal Dismissal of the Debtors' Chapter 11 case Cases;

(b) Conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; or

(c) The effective date (the "Effective Date") of a Plan.

(ii) On the failure to confirm a plan within 18 months of the date of this Declaration;

(iii) Upon Plan confirmation, the earlier of: (1) 30 days after the distribution of all of the assets of the Litigation Settlement Trust in accordance with the terms of this Declaration and the Confirmed Plan to reach Payment in Full; or (2) the seventh anniversary of the Effective Date; *provided, however,* that, on or prior to a date less than six months (but not less than three months) prior to such termination after Plan confirmation, the Bankruptcy Court, upon motion by a party in interest, may extend the term of this Litigation Settlement Trust for a finite period if, based on the facts and circumstances, the Bankruptcy Court finds that such extension is necessary to the liquidating purpose of the Litigation Settlement Trust to accomplish Payment in Full of Claims. The Bankruptcy Court may approve multiple extensions of the term of the Litigation Settlement Trust; provided that (x) any such extension is so approved on or prior to a date less than six months (but not less than three months) prior to termination of the immediately preceding extended term and (y) the Litigation Settlement Trustees receives an opinion of counsel or a favorable ruling from the IRS that any further extension would not adversely affect the status of the Litigation Settlement Trust as a grantor trust for federal income tax purposes.

(b) The Litigation Settlement Trustees and any Committee shall endeavor not to unduly prolong the duration of the Litigation Settlement Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all of the Litigation Settlement Trust Claims and to effect the distribution of the assets of the Litigation Settlement Trust to the holders of the Litigation Settlement Trust Interests in accordance with the terms of the Confirmed Plan as soon as practicable.

7.2 9.2 Continuance of Trust for Winding Up. After Notwithstanding the termination of the Litigation Settlement Trust and for the purpose of liquidating and winding up

the affairs of the Litigation Settlement Trust, the Litigation Settlement Trustees shall continue to act as such until its duties have been fully performedTrustees and shall have such powers and be authorized to take such actions as are reasonably necessary to wind-down the affairs of the Litigation Settlement Trust, provided that such powers and actions shall not be inconsistent with the terms of this Agreement or applicable law. Prior to the final distribution of allany of the remaining assetsresidual Assets of the Litigation Settlement Trust and upon approval of the Litigation Settlement Trust Board, the Litigation Settlement Trustees shall be entitled to reserve from such assetsAssets any and all amounts required to provide for itstheir own costs and expenses, in accordance with Section 6.2section 4.1 herein, until such time as the winding upwinding-up of the Litigation Settlement Trust is completed. Upon termination of the Litigation Settlement Trust, the Litigation Settlement Trustees shall retain for a period of two (2) years the books, records, Litigation Settlement Trust Beneficiary lists, the Litigation Settlement Trust Register, and certificates and other documents and files that have been delivered to or created by the Litigation Settlement Trustees. At the Litigation Settlement Trustees' discretion, all of such records and documents may, but need not, be destroyed at any time after two years from the completion and winding upwinding-up of the affairs of the Litigation Settlement Trust. Except as otherwise specifically provided herein, upon the termination of the Litigation Settlement Trust, the Litigation Settlement Trustees shall have no further duties or obligations hereunder.

## ARTICLE 8ARTICLE 10
## AMENDMENT AND WAIVER

8.1 10.1 Amendment and Waiver. The Litigation Settlement Trustees, with the consent of the Third-Party Funding Contributors, up to and including Confirmation of a Planuntil entry of an order confirming a Plan in these Chapter 11 Cases, may amend, supplement or waive any provision of, this DeclarationAgreement, without notice to or the consent of any Litigation Settlement Trust Beneficiary or the approval of the Bankruptcy Court: (i) to cure any ambiguity, omission, defect, or inconsistency in this DeclarationAgreement, provided that such amendments, supplements, or waivers shall not materially adversely affect the distributions to be made under this Declaration to anymodify the rights, duties, or obligations of the Litigation Settlement Trust Beneficiaries, or materially adversely affect the U.S. federal income tax status of the Litigation Settlement Trust as a "liquidating trust" that is a grantor trust; (ii) to comply with any requirements in connection with the U.S. Federal income tax status of the Litigation Settlement Trust as a "liquidating trust" that is a grantor trust; (iii)Trustees under this Agreement; (ii) to comply with any requirements in connection with maintaining any exemptions from or exceptions to the registration or reporting requirements of the Exchange Act, the Trust Indenture Act, or the Investment Company Act as deemed necessary or appropriate from time to time by the Litigation Settlement Trustees, including, without limitation, subject to the Asbestos Trust's rights under the Put Option (which rights may not be infringed or otherwise affected by the Debtors or the Litigation Settlement Trustees), to cause the Litigation Settlement Trust Interests (other than those interests subject to the Put Option) to be non-transferable; (iv) to make the Litigation Settlement Trust a reporting entity and, in such event, to comply with any requirements in connection with satisfying the registration or reporting requirements of the Exchange Act, the Trust Indenture Act, or the Investment Company Act as deemed necessary or appropriate from time to time by the Litigation Settlement Trustees; (v) to cause the Litigation Settlement Trust Interests to be non-transferable to the extent the Litigation Settlement Trustees

~~determines such restraint on transferability to be in the best interests of the Litigation Settlement Trust~~; and (~~v~~iiii) to evidence and provide for the acceptance of appointment hereunder by a successor trustee in accordance with the terms of this ~~Declaration and the Confirmed~~Agreement or a Plan.

~~(b) Except as provided in the foregoing subsection after Confirmation of a Confirmed Plan (a), any substantive provision of this Declaration may be amended or waived by the Litigation Settlement Trustees, subject to the prior approval of the Litigation Settlement Trust Board which shall not be unreasonably withheld, with the approval of the Bankruptcy Court upon notice and an opportunity for a hearing;~~ *provided, however,* ~~that no change may be made to this Declaration that would materially adversely affect the distributions to be made under this Declaration to any of the Litigation Settlement Trust Beneficiaries, or materially adversely affect the U.S. Federal income tax status of the Litigation Settlement Trust as a "liquidating trust" that is a grantor trust, nor increase the obligations of any Third-Party Funding Contributor to increase the obligations to accomplish Payment in Full and the Resulting Releases. Notwithstanding this Section 10.1, any amendments to this Declaration shall not be inconsistent with the purpose and intention of the Litigation Settlement Trust to liquidate in an expeditious but orderly manner the Litigation Settlement Trust Claims in accordance with Treasury Regulation Section 301.7701-4(d).~~

~~(c) For the purpose of this Declaration and any subsequent Confirmed Plan, the term "Payment in Full" means the amount of any Litigation Claim (i) settled by the Claimant and Interest Holder with the Trustees and the Third-Party Funding Contributors; (ii). resolved as to amount pursuant to the channeling injunction or other provisions of the Confirmed Plan for Claims resolution; or (iii). resolved by a trial in federal district court that preserves the Claimants right to a jury if timely and properly demanded; with such amount to be paid, including payments over time bearing interest at the federal judgment rate, to the settled Litigation Claim Claimant. For the purpose of this Declaration and any subsequent Confirmed Plan, the term "Resulting Release" in regards a Third-Party Funding Contributor means the full and complete release from any and all possible liability on a Claim that is Paid in Full, which release shall be as a matter of law, and as a matter of the binding effects of the terms of the Confirmation Order and Confirmed Plan which shall provide for this Resulting Release.~~

**ARTICLE 9**~~ARTICLE 11~~
**MISCELLANEOUS PROVISIONS**

~~Intention of Parties to Establish the Litigation Settlement Trust. This Declaration is intended to create a liquidating trust that is a grantor trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Declaration may be amended in accordance with Section 10.1 to comply with such federal income tax laws, which amendments may apply retroactively.~~

9.1 ~~11.2~~ Reimbursement of Trust Litigation-Settlement Costs. If the Litigation Settlement Trustees, the ~~Litigation Settlement Trust Board~~Debtors, or the Litigation Settlement Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this ~~Declaration~~Agreement or the enforcement thereof, the Litigation Settlement Trustees, the

~~Litigation Settlement Trust Board~~Debtors, or the Litigation Settlement Trust, as the case may be, shall be entitled to collect any and all costs, reasonable and documented out-of-pocket expenses, and fees, including attorneys' fees, from the non-prevailing party incurred by the Litigation Settlement Trustees, the ~~Litigation Settlement Trust Board~~Debtors, or the Litigation Settlement Trust, as the case may be, in connection with such dispute or enforcement action.

9.2 ~~11.3~~ Laws as to Construction. This ~~Declaration~~Agreement shall be governed by and construed in accordance with the laws of the State of ~~Delaware~~Texas and U.S. bankruptcy laws, as applicable, without regard to whether any conflicts of law would require the application of the law of another jurisdiction.

9.3 ~~11.4~~ Jurisdiction. Without limiting any Person or entity's right to appeal any order of the Bankruptcy Court or to seek withdrawal of the reference with regard to any matter, and subject to the rights of the Litigation Settlement Trustees pursuant to Section 2.3(b) of this ~~Declaration~~Agreement, (i) prior to the closure of the ~~Bankruptcy~~Chapter 11 Cases (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this ~~Declaration~~Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this ~~Declaration~~Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (b) any and all actions related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and (ii) following the closure of the ~~Bankruptcy~~Chapter 11 Cases, (x) the ~~Delaware Courts of Chancery~~districts courts for Texas shall retain exclusive jurisdiction to enforce the terms of this ~~Declaration~~Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this ~~Declaration~~Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (y) any and all actions related to the foregoing shall be filed and maintained only in a ~~Delaware Court of Chancery~~Texas federal district court, and the parties, including the Litigation Settlement Trust Beneficiaries, ~~and Holders of Claims and Equity Interests,~~ hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and the ~~Delaware Courts of Chancery~~federal district courts of Texas, as applicable.

9.4 ~~11.5~~ Severability. If any provision of this ~~Declaration~~Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this ~~Declaration~~Agreement , or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this ~~Declaration~~Agreement shall be valid and enforced to the fullest extent permitted by law.

9.5 ~~11.6~~ Notices. All notices, requests, or other communications to the parties hereto shall be in writing and shall be sufficiently given only if (i) delivered in person; (ii) sent by electronic mail or facsimile communication (as evidenced by a confirmed fax transmission report); (iii) sent by registered or certified mail, return receipt requested; or (iv) sent by commercial delivery service or courier. Until a change of address is communicated, as provided below, all notices, requests, and other communications shall be sent to the parties at the following addresses or facsimile numbers:

**If to the Initial Trustee Robert Dew**:

Kyung S. Lee
Parkins Lee & Rubio LLP
Pennzoil Place-13th Floor
700 Milam
Houston, Texas 77002
klee@parkinslee.com

**If to the Litigation Settlement Trustees**:

Matthew S. Okin
~~To be named by Bankruptcy Court Order~~
~~With a copy to:   To be named by LST Trustees~~
Okin Adams LLP
1113 Vine St. Suite 240
Houston, TX 77002
mokin@okinadams.com

**If to Debtors ~~and Reorganized Debtors~~**:

To:  Marc Schwartz
Chief Restructuring Officer
of the Debtors
Schwartz ~~&~~ Associates LLC
712 Main Street, Ste 1830
Houston, Texas 77002

**With a copy to:**

Kyung S. Lee
Parkins Lee & Rubio LLP
Pennzoil Place-13th Floor
700 Milam
Houston, Texas 77002
klee@parkinslee.com

**If to Free Speech Systems, LLC**
**As a Third-Party Funding Contributor**

To:  Ray Battaglia
rbattaglialaw@outlook.com

**If to Alex Jones**
**As a Third-Party Funding Contributor**

To:  Shelby A. Jordan

sjordan@jkhwclaw.com

All notices shall be effective and shall be deemed delivered (i) if by personal delivery, delivery service or courier, on the date of delivery; (ii) if by electronic mail or facsimile communication, on the date of receipt or confirmed transmission of the communication; and (iii) if by mail, on the date of receipt.  Any party from time to time may change its address, facsimile number, or other information for the purpose of notices to that party by giving notice specifying such change to the other party hereto.

9.6  ~~11.7~~ Fiscal Year.  The fiscal year of the Litigation Settlement Trust will begin on the first day of January and end on the last day of December of each year.

~~Definitions.   Each of the terms set forth below has the meaning set forth in the provision set forth opposite such term in the following table:~~

| ~~Term~~ | ~~Provision~~ |
|---|---|
| ~~Act~~ | ~~Section 1.5(a)~~ |
| ~~Bankruptcy Court~~ | ~~Recitals~~ |
| ~~Chapter 11 Cases~~ | ~~Preamble~~ |
| ~~Covered Person~~ | ~~Section 11.11~~ |
| ~~Declaration~~ | ~~Preamble~~ |
| ~~Litigation Settlement Trustees~~ | ~~Preamble~~ |
| ~~Eligible Holder~~ | ~~Section 4.7(e)~~ |
| ~~Information~~ | ~~Sections 2.2(a) and 11.11~~ |
| ~~Indemnified Persons~~ | ~~Section 7.1(a)~~ |
| ~~Interim Trustee~~ | ~~Section 2.3(g)~~ |
| ~~Initial Trustee~~ | ~~Preamble~~ |
| ~~Original Certificate~~ | ~~Section 5.5(f)~~ |
| ~~Payment in Full~~ | ~~Section 10.1(c)~~ |
| ~~Plan and Plan Documents~~ | ~~Section 6.1(d)~~ |
| ~~Litigation Settlement Trust~~ | ~~Preamble~~ |
| ~~Litigation Settlement Proceeds~~ | ~~Section 2.1(c)~~ |
| ~~Litigation Settlement Trustees~~ | ~~Preamble~~ |
| ~~Confirmed Plan~~ | ~~Preamble~~ |
| ~~Reorganized Debtors~~ | ~~Preamble~~ |
| ~~Resulting Release~~ | ~~Section 10.1(c)~~ |
| ~~Treasury Regulations~~ | ~~Section 1.4(a)~~ |
| ~~Third-Party Funding Contributor(s)~~ | ~~Preamble, Section 2.2~~ |
| ~~Trust Tax Owners~~ | ~~Section 1.4(a)~~ |
| ~~Trustee(s)~~ | ~~Section 2.3(a)~~ |

9.7 ~~11.9~~ Headings. The section headings contained in this ~~Declaration~~Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this ~~Declaration~~Agreement or of any term or provision hereof.

9.8 ~~11.10~~ Counterparts. This ~~Declaration~~Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

9.9 ~~11.11~~ Confidentiality. The Litigation Settlement Trustees, ~~the Litigation Settlement Trustees~~ and each successor trustee and each member of ~~the Litigation Settlement Trust Board~~each Debtor and each successor member of ~~the Litigation Settlement Trust Board~~each Debtor (each a "Covered Person") including any member or counsel to either as well as any member of any Committee Representative having access to information defined below shall, during the period that they serve in such capacity under this ~~Declaration~~Agreement and following either the termination of this ~~Declaration~~Agreement or such individual's removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the assets of the Litigation Settlement Trust relates or of which it has become aware in its capacity (the "Information"), except to the extent disclosure is first obtained by a federal court and is shown to be required by applicable law, order, regulation, or legal process. In the event that any Covered Person is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand, or similar legal process) to disclose any Information, such Covered Person shall notify the ~~Litigation Settlement Trust Board~~Debtors reasonably promptly (unless prohibited by law) so that the ~~Litigation Settlement Trust Board~~Debtors may seek an appropriate protective order or other appropriate remedy or, in its discretion, waive compliance with the terms of this Section (and if the ~~Litigation Settlement Trust Board~~Debtors seeks such an order, the relevant Covered Person will provide cooperation as the ~~Litigation Settlement Trust Board~~Debtors shall reasonably request). In the event that no such protective order or other remedy is obtained, or that the ~~Litigation Settlement Trust Board waives~~Debtors waive compliance with the terms of this Section and that any Covered Person is nonetheless legally compelled to disclose the Information, the Covered Person will furnish only that portion of the Information, which the Covered Person, advised by counsel, is legally required and will give the ~~Litigation Settlement Trust Board~~Debtors written notice (unless prohibited by law) of the Information to be disclosed as far in advance as practicable and exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information.

9.10 ~~11.12~~ Entire Agreement. This ~~Declaration~~Agreement (including the Recitals) ~~together with the later Confirmed Plan,~~ and the ~~Confirmation Order~~PSA shall constitute, the entire agreement by and among the parties hereto and there are no representations, warranties, covenants or obligations except as set forth herein or therein. This ~~Declaration, the Confirmed Plan and the Confirmation Order~~Agreement and the PSA supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise specifically provided herein, ~~in the Confirmed Plan or in the Confirmation Order,~~ nothing in this ~~Declaration~~Agreement is intended or shall be construed to confer upon or to give any person other than the named parties thereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this ~~Declaration~~Agreement.

~~11.13   Modification of this Declaration or the Litigation Settlement Trust Terms: The Trustees may make changes and modifications of this Declaration or the Litigation Settlement Trust Terms to clarify its terms, or as the Trustees deem necessary to remedy any conflict in terms or to further the accomplishment of the purpose of this Trust.  All such modifications shall require no approval of the bankruptcy court provided that within 20 days of the modification the Trustees cause a "Notice of Modification" is filed with the clerk of the Bankruptcy Court in the Chapter 11 Cases.~~

~~11.14   Jurisdiction and Venue:  All actions, disputes, performance, declarations or determinations of or claims of breach of performance, by any Party or by any Third Party, including any action seeking to determine or establish the rights or obligations of any Party or any Litigation Settlement Trustee shall be governed by the laws of the United States, including Title 11 § 101, et. seq. and the applicable laws of the State of Texas, with exclusive and continuing jurisdiction and venue in the United States Bankruptcy Court or the United States District Court, as the case may be, for the Southern District of Texas, Victoria Division, (collectively the Federal Court).~~

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this ~~Declaration~~Amendment or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Effective Date:  April ~~14~~28, 2022.

*INITIAL* LITIGATION SETTLEMENT TRUSTEE

By:  _____
Name:   Robert Dew
Title:   Initial Trustee, and as sole ~~officer and~~ member ~~Director~~ of each Debtor entity InfoW, LLC, InfoHealth, LLC, Prison Planet TV, LLC

**INFOW, LLC**

By: _____
Name:    W. Marc Schwartz
Title:      Chief Restructuring Officer

**IWHEALTH, LLC**

By: _____
Name:    W. Marc Schwartz
Title:      Chief Restructuring Officef

**PRISON PLANET TV, LLC**

By: _____
Name:    W. Marc Schwartz
Title:      Chief Restructuring Officer

**THIRD-PARTY FUNDING CONTRIBUTOR ALEX JONES**

By:  _____
Name:

**THIRD-PARTY FUNDING CONTRIBUTOR**
**FREE SPEECH SYSTEMS, LLC**

By: _____
Name:
Title:

**SIGNATURES LEFT BLANK PENDNG**
**APPOINTMENT BY BANKRUPTCY**
**COURT ORDER**

_____
Name:  Russell F. Nelms
Title:   Litigation Settlement Trust Trustee ~~and~~
and Debtors' ~~Independent Board~~Managing Member

_____
Name:  Richard S. Schmidt
Title:   Litigation Settlement Trust Trustee ~~and~~
and Debtors' ~~Independent Board~~Managing Member

## EXHIBIT A

### GLOSSARY OF CERTAIN DEFINED TERMS

~~Applicable definitions contained in the Bankruptcy Code are incorporated into this Declaration except as modified in this Glossary of Defined Terms. The following definitions shall have the meanings as specified herein, and shall be designated, when such special definitions are applicable, with capital letters, and these definitions shall be enforceable as terms of the Declaration in conjunction with the respective matters to which they reference or define.~~

~~**"Allowed"** or **"Allowed Claim"** means a Litigation Settlement Trust Claims or Claim that is allowed: (i) in any stipulation executed by the Debtor (or the Litigation Settlement Trustees after the Confirmation Order becomes a Final Order), the Third Party Funding Contributors and the holder of the Litigation Settlement Trust Claim; (ii) in a Final Order; or (iii) pursuant to the terms of the Plan.~~

~~**"Bankruptcy Cases"** means collectively or individually the cases filed by the Debtors pursuant to 11 U.S.C. §1101, *et seq.*~~

~~**"Bankruptcy Code"** means title 11 of the United States Code.~~

~~**"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan(s) pursuant to section 1191 of the Bankruptcy Code.~~

~~**"Confirmed Plan"** means a Plan for which the Bankruptcy Court has entered a Confirmation Order which is a Final Order.~~

"**_Debtor_**" or "**_Debtors_**" shall refer individually and collectively to InfoW, LLC (XXXX), InfoHealth, LLC (XXXX), and Prison planet TV, LLC (XXXX), including any and all affiliated, predecessor, successors, assigns, agents, employees, partners, attorneys, representatives, administrators, investigators, consultants and other persons, acting or purporting to act on behalf of any of the above entities.

"**_Definitive Documents_**" means, with respect to the Plan(s), all material documents (including any related Bankruptcy Court orders, agreements, schedules, pleadings, motions, filings, or exhibits) that are contemplated by this Agreement and that are otherwise necessary or desirable to implement the Plan(s) and this Agreement, including (as applicable): (i) the Plan(s); (ii) Disclosure Statement(s) if ordered by the Bankruptcy Court; (iii) any other operative documents and/or agreements relating to the Plan(s) (including any documents necessary to implement the distributions contemplated thereunder); (iv) the Confirmation Order.

"**_Effective Date_**" means April 8, 2022.

"**_Final Order_**" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a stay, new trial, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a stay, new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

"**_Litigation_**" means pending civil lawsuits, including but not limited to the following:

Marcel Fontaine vs. Alex E., Jones, Infowars, LLC, Free Speech Systems, LLC and Kit Daniels, Cause No. D-1-GN-18-001605 in the 459th Judicial District Court of Travis County, Texas;

Neil Heslin vs. Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC, Cause No. D-1-GN-18-001835 in the 261st Judicial District Court of Travis County, Texas;

Veronique de la Rosa and Leonard Pozner vs. Alex E. Jones, Inforwars, LLC, and Free Speech Systems, LLC, Cause No. D-1-GN-18-001842 in the 345th Judicial District Court of Travis County, Texas;

Scarlett Lewis vs. Alex E. Jones, Inforwars, LLC, Free Speech Systems, LLC and Owen Shroyer, Cause No. D-1-GN-18-006623 in the 98th Judicial District Court of Travis County, Texas;

Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc., Cause No. X06-UWY-CV-18-6046436-S in the Superior Court of Connecticut, Waterbury Division;

William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc., Cause No. X06-UWY-CV-18-6046437-S in the Superios Court of Connecticut, Waterbury Division; William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc., Cause No. X06-UWY-CV-18-6046438-S in the Superios Court of Connecticut, Waterbury Division; and

Brennan M. Gilmore v. Alexander ("Alex") E. Jones, Infowars, LLC, Free Speech Systems, LLC, Lee Stanahan, Lee Ann McAdoo a/k/a Lee Ann Fleissner, Scott Creighton, James ("Jim") Hoft, Allen B. West, Derrick Wilburn, Michelle Hickford, and Words-n Ideas, LLC, Cause No. 3:18-cv-00017-GEC in the United States Districrt Court for the Western District of Virginia, Charlottesville Division;

together with any other pending lawsuits against any of the Parties on the Effective Date of this Agreement (collectively, the "Litigation Claims").

*"Initial Trust Funding"* means $725,000 in cash funded to the Litigation Settlement Trust by AJ from his Exempt property upon the Effective Date of this Agreement to pay the costs of administration of the Debtors' Bankruptcy Cases and the Litigation Settlement Trust, including retention of the Litigation Settlement Trustees and retention by the Trustees of all professionals deemed necessary to accomplish the purpose of this Trust and the commitment of the Third Party Funding Contributors to maintain for not less than 120 days after the Petition Date a balance of $200,000 after payment of all initial administrative expense retainers to newly appointed Litigation Settlement Trustees and as the only members of the Debtors acting as independent Members, together with the Debtors' professionals from time to time, to be paid directly, or thereafter maintained in the Litigation Settlement Trust for continued payment of the costs of Administration of the Litigation Settlement Trust and the Debtors' Bankruptcy Cases.

*"Litigation Settlement Trust"* means the Litigation Settlement Trust dated April 14, 2022 for the benefit of the Debtors' as provided therein, including that Third Party Funding Contributor[s] intended to facilitate and underwrite the "Payment in Full" Plan Class of Allowed Litigation Settlement Trust Claims and the Litigation Settlement Trust Beneficiaries Litigation Settlement Trust Claims, as may exist from time to time and as may be funded by the Third Party Funding Contributors this purpose from time to time to achieve Payment in Full.(s).

*"Litigation Settlement Trustees"* or *"Trustees"* means two individuals approved by the Bankruptcy Court to serve as Trustees of Litigation Settlement Trust who will replace the interim trustee serving in that capacity prior to the filing of the Bankruptcy Cases.

*"Litigation Settlement Trust Claims Bar Date"* means the bar date for filing Claims or Litigation Claims in the Bankruptcy Cases established by Order of the Bankruptcy Court;

*"Litigation Settlement Trust Claims"* means the Claims of any party arising out of or related to the Litigation Claims and evidenced by a proof of claim timely filed in the Debtors' Chapter 11 case(s).

"*Litigation Settlement Trust Claims Estimation*" means the estimation of the Litigation Settlement Trust Claims by the Bankruptcy Court in these Bankruptcy Cases pursuant to Sections 502(c) and 105 of the Bankruptcy Code and Rule 3018 of the Bankruptcy Rules of

Procedure.

*"Litigation Settlement Trust Beneficiary"* Means the holder of a Litigation Settlement Trust Claim.

*"Litigation Trust Expenses"* means all costs, expenses and professional fees incurred by the Litigation Settlement Trust and the Litigation Settlement Trustees during the Support Period, specifically including, but not limited to the allowed fees and expenses of the Debtors and their professionals incurred in connection with the prosecution of the Bankruptcy Cases and those incurred after the Plan Effective Date, approved by the Litigation Settlement Trustees.

*"Petition Date"* means the date upon which the earliest of the Debtors' Bankruptcy Cases was commenced as a voluntary bankruptcy case.

*"Plan(s)"* or *"Plan(s) of Reorganization"* means the chapter 11 plan(s) to be jointly proposed by the Debtors supported by the Third-Party Funding Contributors in each of the Bankruptcy Cases, that contains the same terms set forth in, and is otherwise materially consistent with this Agreement and that is an Approved Plan Document, as the same may be amended, supplemented, or otherwise modified as provided herein.

*"Plan Effective Date"* means the date on which the Plan, as confirmed, becomes effective, as defined therein.

*"Reorganized Debtor(s)"* means one or more of the Debtors after the Plan Effective Date, surviving after confirmation of the Plan.

*"Support Period"* means, with respect to any Party, the period commencing on the later of (a) the Agreement Effective Date and (b) the Petition Date and ending on the date on the earlier of (i) 120 days following the commencement date and (ii) termination of this Agreement, *provided* however that if a Confirmation Order is entered, the Support Period shall remain in effect for not less than 5 years from the Plan Effective Date.

## EXHIBIT "B"

(Deleted graphics) Wire 4/6/22 - $715,000.00 to Fund 2022LST

| Date | Description | Amount | |
|---|---|---|---|
| 4/6/22 | J&O IOLTA Deposit | $715,000.00 | Exempt Proceeds from Homestead sale |
| | Parkins, Kyun, Rubio - Debtor Counsel Retainer | $175,000.00 | Debors' counsel |
| | Jordan & Ortiz Fees (Dec, Jan, Feb, March) | $98,150.00 | Alex Jones Counsel |
| | Battaglia Fees - Balance to Retainer | $40,000.00 | Free Speech Counsel |
| | Victoria Lease - 6 months - 2 suites | $6,000.00 | 2022 LST Office Space |
| | M. Schwartz CRO* | $25,000.00 | CRO retainer |
| | **BALANCE** | **$370,850.00** | |
| | Transfer to Litigation Settlement Trust | $370,000.00 | Balance of Exempt Proceeds from Homestead sale |
| | Proposed Judge Schmidt Trustee Retainer-Indpt Mgr | $50,000.00 | Chapter 11 Trustee's fees |
| | proposed Judge Nelms Trustee Retainer - Indpt Mgr | $50,000.00 | Chapter 11 Trustee's fees |
| | Proposed Trustees' counsel | $30,000.00 | Chapter 11 Trustees' counsel fees |
| | Conn. Local Bankruptcy Counsel | $20,000.00 | Special Conn. BR counsel retainer |
| | **Operating 2022 LST Balance**** | **$220,000.00** | |

**Note: These balances may change based on authorized distributions of the Initial Trustee and additional contributions by the Third-Party Funding Contributors prior to the appointment of the two Trustees by the bankruptcy court.**

| Summary report: Litera Compare for Word 11.0.0.61 Document comparison done on 4/29/2022 8:55:09 AM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 1.0 - IW - 4.14.2022 Declaration of Trust.doc | |
| **Modified filename:** 1.1 - IW - 4.28.2022 Amended and Restated Declaration of Trust.doc | |
| **Changes:** | |
| Add | 372 |
| Delete | 714 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 1 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 1 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 1088 |

003634

# EXHIBIT C

**Amended and Restated Plan Support Agreement**

003635

## AMENDED AND RESTATED PLAN SUPPORT AGREEMENT

This AMENDED AND RESTATED PLAN SUPPORT AGREEMENT (as the same may be amended, modified or supplemented from time to time in accordance with the terms hereof, the "Agreement") is made and entered into as of April 28, 2022 by and among the following parties (each individually a "Party" and collectively referred to as the "Parties"):

     (a)     Free Speech Systems, LLC, a Texas limited liability company ("FSS");

     (b)     Alex E. Jones, an individual residing in Texas ("AEJ," and, collectively with FSS, the "Third-Party Funding Contributor[s]");

     (c)     InfoW, LLC,[1] a Texas limited liability company ("IW");

     (d)     InfoHealth, LLC,[2] a Texas limited liability company ("IWH"); and

     (e)     Prison Planet TV, LLC, a Texas limited liability company ("PTV").

## RECITALS[3]

WHEREAS, the Debtors have determined that it would be in their best interests and the best interest of their creditors to implement a restructuring of their indebtedness and other obligations through the prosecution of the Chapter 11 Cases (defined herein) managed by a Chief Restructuring Officer, with the membership interest of the Debtors in a trust, under the exclusive governance and control of independent trustees to be approved by the Bankruptcy Court and funded by the Third-Party Funding Contributor[s] as herein provided;

WHEREAS, on April 18, 2022 (the "Petition Date"), IW, IWH and PTV (collectively the "Debtors" and each individually a "Debtor") filed voluntary petitions for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing jointly administered cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court");

WHEREAS, prior to the Petition Date, the Debtors, the Third-Party Funding Contributor[s], and the Initial Trustee (as defined therein) executed that Declaration of Trust (as may be amended or restated, the "Trust Agreement") establishing the 2022 Litigation Settlement Trust (the "Litigation Settlement Trust") to facilitate the independent administration of the Chapter 11 Cases and to pursue confirmation of a chapter 11 plan of reorganization in accordance with the terms of this Agreement;

---

[1]    Formerly known as InfoWars, LLC

[2]    Formerly known as InfoWars Health, LLC

[3]    Unless otherwise indicated, capitalized terms used in these Recitals shall have the meanings ascribed in the body of this Agreement.

WHEREAS, also prior to the Petition Date, the Parties entered into this Agreement and agreed upon certain material terms of a proposed chapter 11 plan(s) for the Debtors, as may be amended, modified, or supplemented from time to time, including any schedules and exhibits attached thereto, in each case, in accordance with the terms hereof (the "Proposed Plan");

WHEREAS, subject to the terms and limitations set forth herein, the Proposed Plan shall provide for Payment in Full of all Allowed Litigation Settlement Trust Claims, which payments shall be administered by the Litigation Settlement Trustees and funded by the Third-Party Funding Contributor[s] with cash, assets and liens (as set out and limited herein, the "Exit Funding Commitment");

WHEREAS, in consideration for the performance and fulfillment of the Funding Commitment (as defined in the Trust Agreement) and the Exit Funding Commitment, the Third-Party Funding Contributor[s] shall be entitled to receive the Resulting Releases subject to the terms of this Agreement and the Plan, provided, however, for the avoidance of doubt, that the granting of such Resulting Releases shall be expressly conditioned upon satisfaction in full of any and all joint and several liabilities of each or all of the Debtors and the Third-Party Funding Contributor[s] and arising from the Litigation Settlement Trust Claims;

WHEREAS the Debtors and the Third-Party Funding Contributor[s] desire the appointment of the Litigation Settlement Trustees as successors to the Initial Trustee of the Litigation Settlement Trust;

WHEREAS the Litigation Settlement Trustees require certain amendments and revisions to the terms of this Agreement as set forth herein as a condition of their willingness to serve as trustees of the Litigation Settlement Trust; and

WHEREAS, subject to the terms hereof and appropriate approvals of the Bankruptcy Court, as may be required, the following sets forth the amended and restated agreement among the Parties concerning their respective obligations in connection with the Plan(s) and the Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound hereby, agree as follows:

### Section 1    CERTAIN DEFINITIONS

Applicable definitions contained in (i) the Bankruptcy Code; and (ii) the Litigation Settlement Trust (and associated documents) are incorporated into this Agreement except as modified in this Section 1 or except as conflicting with the defined the terms herein. The following definitions shall have the meanings as specified herein, and shall be designated, when such special definitions are applicable, with capital letters, and these definitions shall be enforceable as terms of the Agreement in conjunction with the respective matters to which they reference or define.

***"Allowed"*** or ***"Allowed Claim"*** means, with respect to any Claim, except as otherwise provided

in the Proposed Plan, a Claim allowable under Bankruptcy Code section 502 that (i) has been allowed by a Final Order, including but not limited to any Final Order estimating claims for purposes of confirming this Plan, (ii) either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtors' schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed and liquidated Proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, (iii) is expressly allowed in a liquidated amount in the Plan; or (iv) has been allowed in any stipulation executed by the Debtor (or the Litigation Settlement Trustees), the Third-Party Funding Contributors and the holder of the Litigation Settlement Trust Claim.

"**Claim(s)**" means a "claim" against the Debtors, as defined in Section 101(5) of the Bankruptcy Code.

"**Confirmation Order**" means a final, non-appealable order of the Bankruptcy Court confirming the Proposed Plan pursuant to section 1191 of the Bankruptcy Code.

"**Definitive Documents**" means, with respect to the Plan(s), all material documents (including the Plan itself as well as any related Bankruptcy Court orders, agreements, schedules, pleadings, motions, filings, or exhibits) that are contemplated by this Agreement , in form and substance acceptable to the Litigation Settlement Trustees and the Third-Party Funding Contributor[s], and that are otherwise necessary or desirable to implement the Plan(s) and this Agreement, including (as applicable): (i) the Plan(s); (ii) Disclosure Statement(s) if ordered by the Bankruptcy Court; (iii) any other operative documents and/or agreements relating to the Plan(s) (including any documents necessary to implement the distributions contemplated thereunder); and (iv) the Confirmation Order.

"**Litigation**" means pending civil lawsuits against one or more of the Debtors, including but not limited to the following (as may be removed to federal court):

- *Marcel Fontaine vs. Alex E., Jones, Infowars, LLC, Free Speech Systems, LLC and Kit Daniels*, Cause No. D-1-GN-18-001605 in the 459th Judicial District Court of Travis County, Texas;

- *Neil Heslin vs. Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001835 in the 261st Judicial District Court of Travis County, Texas;

- *Veronique de la Rosa and Leonard Pozner vs. Alex E. Jones, Inforwars, LLC, and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001842 in the 345th Judicial District Court of Travis County, Texas;

- *Scarlett Lewis vs. Alex E. Jones, Inforwars, LLC, Free Speech Systems, LLC and Owen Shroyer*, Cause No. D-1-GN-18-006623 in the 98th Judicial District Court of Travis County, Texas;

- *Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046436-S in the Superior Court of Connecticut, Waterbury Division;

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046437-S in the Superios Court of Connecticut, Waterbury Division;

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046438-S in the Superios Court of Connecticut, Waterbury Division; and

- *Brennan M. Gilmore v. Alexander ("Alex") E. Jones, Infowars, LLC, Free Speech Systems, LLC, Lee Stanahan, Lee Ann McAdoo a/k/a Lee Ann Fleissner, Scott Creighton, James ("Jim") Hoft, Allen B. West, Derrick Wilburn, Michelle Hickford, and Words-n-Ideas, LLC*, Cause No. 3:18-cv-00017-GEC in the United States Districrt Court for the Western District of Virginia, Charlottesville Division;

- *Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique de la Rosa, Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, PQPR Holdings Limited LLC, JLJR Holdings Limited LLC, JLJR Holdings, LLC, PLJR Holdings, LLC, Carol Jones, David Jones, PQPR Holdings, LLC, JLJR Holdings Limited, LLC, AEJ Holdings, LLC, AEJ Trust 2018*, Cause No. D-1-GN-22-001610 in the District Court Travis County, Texas 200th District Court.

together with any other pending lawsuits against any of the Debtors on the Petition Date.

**"*Litigation Claims*"** means any and all Claims arising out of the Litigation against any of the Parties for which a Debtor is or has at any time been alleged to be jointly and severally liable under theory of law or equity.

**"*Litigation Settlement Trustees*"** means, subject to entry of the Trustee Order (as defined in the Trust Agreement), Richard S. Schmidt and Russell F. Nelms.

**"*Litigation Settlement Trust Claims*"** means the Claims of any party arising out of or related to the Litigation Claims and evidenced by a proof of claim timely filed in the Debtors' Chapter 11 case(s).

"*Litigation Settlement Trust Claims Bar Date*" means the bar date for filing Claims or Litigation Claims in the Chapter 11 Cases established by Order of the Bankruptcy Court;

"*Liquidated Litigation Settlement Trust Claim Amount*" shall have the meaning set forth in Section 2.2(a) of this Agreement.

"*Payment in Full*" shall have the meaning set forth in Section 2.2(d) of this Agreement.

"*Effective Date*" means the date on which the Proposed Plan, as confirmed, becomes effective, as defined therein.

"*Resulting Release*" shall have the meaning set forth in Section 2.2(d).

**Section 2     Prosecution of the Chapter 11 Cases.**

2.1     <u>Chapter 11 Case Administration</u>.  The Parties agree that as soon as practical after the Petition Date:

> a.     the Debtors shall file a Motion to establish a Litigation Settlement Trust Claims Bar Date;

> b.     after such diligence and deliberation as the Litigation Settlement Trustees shall in their sole discretion require, the Debtors shall initiate, including by seeking such approvals as may be required from the Bankruptcy Court, protocol(s) for the establishment of the Allowed Litigation Settlement Trust Claims subject to the terms of this Agreement, which protocols may, in the discretion of the Litigation Settlement Trustees, include, but shall not be limited to, liquidation of the Litigation Settlement Trust Claims through (i) subject to Section 6.2(b) herein, settlement by the holder of an Litigation Settlement Trust Claims with the Debtors and the Third-Party Funding Contributors; (ii) estimation pursuant to section 502(c) of the Bankruptcy Code; (iii) a consolidated trial in court of competent jurisdiction over all Litigation Settlement Trust Claims subject to the mandates of 28 U.S.C. § 157(b)(5) (as applicable); or (iv) such other process permitted under applicable law as is determined by the Litigation Settlement Trustees under the facts and circumstances then applicable to be most suitable to liquidating the Litigation Settlement Trust Claims such that the amount necessary to satisfy the Exit Funding Commitment may be reasonably determined; and

> c.     promptly initiate and negotiate the Definitive Documents in good faith, consistent in all respects with this Agreement, and otherwise in form and substance reasonably acceptable to the Parties.

2.2     <u>Material Terms of the Proposed Plan</u>.  Pursuant to the terms of this Agreement and subject to negotiation of the Definitive Documents, the Debtors shall file and seek confirmation of the Proposed Plan, which Proposed Plan shall include the following material terms:

> a.     <u>Conditions to Effectiveness</u>.  Occurrence of the Effective Date shall be conditioned upon (i) entry of a final, non-appealable Confirmation Order in form and substance agreeable to the Litigation Settlement Trustees and the Third-Party Funding

Contributor[s]; (ii) estimation of the Liquidated Litigation Settlement Trust Claim Amount, pursuant to section 502(c) of the Bankruptcy Code or such other method as may be reasonably acceptable to the Third-Party Funding Contributor[s], in an amount acceptable to the Third-Party Funding Contributor[s]; and (iii) such other reasonable conditions as the Parties may require.

   b. <u>Binding Liquidation of the Allowed Litigation Settlement Trust Claims</u>.  To the extent that any Allowed Litigation Settlement Trust Claim(s) remains unliquidated, the Proposed Plan shall authorize the Litigation Settlement Trustees, as representatives of the Debtors or reorganized Debtors, to engage in such proceedings reasonably required for the liquidation of such Claims, provided that any final ruling, order, or judgment in such proceedings as to the liquidated amount of the Allowed Litigation Settlement Trust Claims shall represent the aggregate liability on account of the Litigation Claims. Collectively with such liquidated amounts determined pursuant to Section 2.1(b) above, such aggregate liability shall be referred to herein as the Liquidated Litigation Settlement Trust Claim Amount.

   c. <u>Channeling Injunction and Tolling of Limitations</u>.  To the fullest extent permissible under applicable law, the Proposed Plan shall prohibit and enjoin the continuation of any Litigation against the Debtors or any Third-Party Funding Contributor for so long as neither the Debtors nor the Third-Party Funding Contributor[s] are in material default under the terms of this Agreement or the Proposed Plan (the "<u>Channeling Injunction</u>"), provided, however, that the Proposed Plan shall further provided that any and all statutes of limitation or repose, and all time-related legal doctrines, whether equitable or legal, including but not limited to the doctrines of estoppel or laches, that may apply or relate to any claim or cause action enjoined pursuant to the Channeling Injunction described herein shall be tolled for a period of not less than 120 days following the termination of such Channeling Injunction.

   d. <u>Payment Allowed Litigation Settlement Trust Claims</u>.  Upon a final, non-appealable determination (a "<u>Determination</u>") of the Liquidated Litigation Settlement Trust Claim Amount, the Proposed Plan shall provide for distributions, either through the Litigation Settlement Trust or such other mechanism as may be appropriate, to the holders of Allowed Litigation Settlement Trust Claims, in an amount equal to the Liquidated Litigation Settlement Trust Claim Amount plus accrued interest at the statutory judgment rate ("<u>Payment in Full</u>").  Such distributions shall be funded by the Third-Party Funding Contributor[s] pursuant to the Exit Funding Commitment.

   e. <u>The Resulting Releases</u>.  Only upon Payment in Full, and provided that there exists no uncured material default under this Agreement or the Proposed Plan, the Third-Party Funding Contributor[s] shall be entitled to receive the Resulting Releases, which may be memorialized in the form of a final order of the Bankruptcy Court or such other court of competent jurisdiction enjoining any party from asserting any claim, cause of action, or other right of recovery whatsoever, arising from or relating to the Litigation Claims against any Third-Party Funding Contributor.

  **Section 3**  **Third-Party Funding Contributor Agreements.**

3.1     Funding Commitment.  In accordance with the Trust Agreement, the Third-Party Funding Contributor[s] agree from time to time to deliver Cash to the Litigation Settlement Trust to fund all costs of administration to the extent requested by the Litigation Settlement Trustees as necessary to maintain a cash balance of $200,000.00 in the Litigation-Settlement Expense Fund (as defined in the Trust Agreement).  The Funding Commitment shall be subject to the following terms and conditions:

        a.     Term.  Commencing upon the Petition Date and continuing until the earlier of (x) 120 days after the Petition Date, or (y) the Effective Date, which date may be extended by agreement of Third-Party Funding Contributor[s] and the Trustees.

        b.     Timing.  Such additional funding shall be provided in Cash to the Litigation-Settlement Expense Fund by the Third-Party Funding Contributor[s] within five (5) business days of receipt of a written request by the Litigation Settlement Trustees, unless extended by written consent of the Litigation Settlement Trustees as set out in the Trust Agreement.

        c.     Failure to Fund.  To the extent that the Third-Party Funding Contributor[s] fail to make any Cash deposit requested pursuant to Section 3.1(b) above within the applicable three-day period, the Litigation Settlement Trustees, in their sole discretion, shall be entitled to seek dismissal of the Chapter 11 Cases or conversion of the same to cases under chapter 7 of the Bankruptcy Code.

3.2     Exit Funding Commitment.  Subject to the occurrence of the Effective Date, the Third-Party Funding Contributor[s] shall provide such funding as is necessary (i) to satisfy the continuing administrative expenses of the Litigation Settlement Trust and, to the extent no final decree has been entered, the Chapter 11 Cases; and (ii) to fund Payment in Full of the Liquidated Litigation Settlement Trust Claim Amount; provided, however, that in the event a Deficiency is determined pursuant to 3.2(c) of this Agreement, the Third-Party Funding Contributors, in their sole discretion, may agree whether to fund such Deficiency Payment to meet the Payment in Full of the Liquidated Litigation Settlement Trust Claim Amount(s) obligations pursuant to the Plan.  The Exit Funding shall be provided on the following terms:

        a.     Initial Exit Funding.  Upon the Effective Date, the Third-Party Funding Contributor[s] shall transfer **$2,000,000.00** (including any balance remaining in the Litigation Settlement Trust pursuant to ¶ 3.1 above) to the Litigation Settlement Trust (or such other entity provided in the Proposed Plan or Confirmation Order).

        b.     Quarterly Payments.  Not less than once per fiscal quarter, the Third-Party Funding Contributor[s] shall transfer and pay to the Litigation Settlement Trust, **$250,000.00** for a period of not less than twenty (20) consecutive quarters, and (v) and contribute additional funds to the Litigation Settlement Trust as may be requested by the Litigation Settlement Trustees and agreed to by the Third-Party Funding Contributors in writing, or pursuant to an agreed budget, from time to time in accordance with the Plan to Pay in Full Allowed Litigation Settlement Trust Claims or Allowed Claims.

c. <u>Deficiency Payments</u>. If at any time during the term of this Agreement, the Litigation Settlement Trustees shall determine that sum of the Initial Exit Funding and the Quarterly Payments shall be insufficient to satisfy the administrative costs of the Chapter 11 Cases, the Litigation Settlement Trust, and to fund Payment in Full of the Liquidated Litigation Settlement Trust Claim Amount, the Trustees shall notify the Third-Party Funding Contributor[s] in writing of such deficiency (a "<u>Deficiency Notice</u>"). Within thirty (30) days of receipt of any Deficiency Notice, the Third-Party Funding Contributor[s] shall either (i) transfer to the Litigation Settlement Trust assets sufficient to cure such deficiency; (ii) agree to amend the terms of the Exit Funding Commitment on terms acceptable to the Litigation Settlement Trustees to increase the amount or frequency of the Quarterly Payments in an amount sufficient to cure such deficiency; or (iii) terminate this Agreement and declare the Proposed Plan to have failed.

d. <u>Termination After Confirmation</u>. To the extent that this Agreement is terminated after the occurrence of both (i) the Effective Date and (ii) a Determination, then the Litigation Settlement Trustees shall be entitled to retain and distribute in accordance with the terms of the Proposed Plan any cash or other assets previously transferred to the Litigation Settlement Trust by either the Third-Party Funding Contributor[s], the Debtors, or their Estates (as defined in the Trust Agreement) as may be approved by the Bankruptcy Court. Further, subject to the tolling provisions set forth in Section 3.4 hereof, the Litigation Settlement Trustees shall be authorized to liquidate the assets of the Debtors and their Estates for the benefit of the Litigation Settlement Trust Beneficiaries.

e. <u>Security</u>. As security against the post confirmation funding obligations in this Agreement, the Proposed Plan and Confirmation Order shall provide that the Litigation Settlement Trustees shall hold a first in priority perfected lien and security interest in and to certain of the assets of each Third-Party Funding Contributor as may be provided in the Confirmed Plan. The Parties acknowledge that the assets may be subject to existing liens and agreement from 3rd parties may be required to grant the required liens. The Litigation Settlement Trustees will have discretion to determine the scope and priority of the liens to be granted to the Litigation Settlement Trust and may terminate this Agreement pursuant to Section 7 below if the required liens cannot be granted.

3.3 <u>Confidential Information</u>. Subject to execution of confidentiality agreements in a form acceptable to the Third-Party Funding Contributors, the Third-Party Funding Contributor[s] shall:

a. Deliver or cause to be delivered to the Litigation Settlement Trustees and the Debtors' Chief Restructuring Officer any and all documents and communications in whatever form (or copies thereof) requested by the Litigation Settlement Trustees for the purpose of enabling the Litigation Settlement Trustees, in their sole discretion, to fulfill their obligations under this Agreement or the Proposed Plan (the "<u>Information</u>"), held by the Third-Party Contributors and/or any company related to, affiliated, or under the control of the Third-Party Contributors, their employees, agents, advisors, attorneys, accountants, or any other professionals hired by the Third-Party Contributors and/or any company related to, affiliated, or under the control of the Third-Party Contributors;

b.      Provide reasonable access to the Litigation Settlement Trustees, the Debtors and their respective advisors to such employees of the Third-Party Contributors and/or any company related to, affiliated, or under the control of the Third-Party Contributors their agents, advisors, attorneys, accountants, or any other professionals hired by the Third-Party Contributors and/or any company related to, affiliated, or under the control of the Third-Party Contributors for the purpose of enabling the Litigation Settlement Trustees, in their sole discretion, to fulfill their obligations under this Agreement or the Proposed Plan;

c.      To the extent that there is any disagreement on Information production requested, the Third-Party Contributors or the Litigation Settlement Trustees or the Debtors may seek orders from any Court having jurisdiction over the Litigation Settlement Trust. In every event the Information shall be confidential and held pursuant to the confidentiality terms of the Litigation Settlement Trust Agreement and such other confidentiality terms reasonably requested by any Third-Party Funding Contributor.

3.4     <u>Tolling of Claims</u>.  Subject to the tolling provisions of this Section, the Third-Party Funding Contributor[s] and the Debtors agree and covenant not to sue or otherwise assert against the Third-Party Funding Contributor[s] any claims or causes of action for the avoidance and recovery of any transfers of an interest of the Debtors in property arising under the Bankruptcy Code, applicable state law, or otherwise (the "<u>Avoidance Claims</u>") during the term of this Agreement provided that:

a.      The Third-Party Funding Contributor[s] agree that any and all statutes of limitation or repose, including but not limited to the time limitations set forth in section 546 of the Bankruptcy Code, and all time-related legal doctrines, whether equitable or legal, including but not limited to the doctrines of estoppel or laches, that may apply or relate to any action, complaint, claim, counterclaim or third-party complaint that may hereafter be commenced by the Debtors or the Debtors' bankruptcy estates against the Third-Party Funding Contributor[s] or any company related to, affiliated, or under the control of the Third-Party Contributors with respect to the Avoidance Claims shall be tolled and suspended until the date that is the third anniversary of the date that this Agreement terminates (the "Tolling Period").  The Third-Party Funding Contributor[s] agree not to assert as an objection or defense to the Avoidance Claims, or otherwise, that it has been prejudiced in any manner by the passage of the time during the Tolling Period.  Upon termination of the Tolling Period, the Litigation Settlement Trustees shall have the right to assert Avoidance Claims.

b.      Except as expressly provided in this Agreement, nothing in this Section is or shall be deemed to constitute a waiver of any rights, claims or defenses of any party to this Agreement and the Parties expressly reserve all rights, claims, and defenses they may have against one another in connection with or related to the Avoidance Claims.

**Section 4      Duration of the Agreement.**

Section 4.1     The Amendment shall become effective upon entry of the Trustee Order and, subject to the provisions of Section 7 herein, this Agreement shall remain in effect for a period of not less than 120 days, and not more than 180 days following the Petition Date, provided, however,

that, upon the occurrence of the Effective Date, the term of this Agreement shall be extended for a period of not less than five (5) years from the Effective Date or as may otherwise be provided in the Confirmed Plan. This Agreement may be extended by the written agreement of all parties to this Agreement: (i) the Litigation Settlement Trustees, (ii) the Debtors or their Estates, and (iii) the Third-Party Funding Contributors.

**Section 5**      **Representations and Warranties.**

Section 5.1    <u>Third-Party Funding Contributor[s]</u>. The Third-Party Funding Contributors jointly and severally represent and warrant that the following statements are true, correct, and complete as of the date hereof:

       a.       <u>Organization and Good Standing</u>. FSS is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas.

       b.       <u>Authority to Contract</u>. Each of the Third-Party Funding Contributors has the requisite power and authority to execute this Agreement and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement by the Third-Party Funding Contributors and the consummation of the transactions contemplated hereby has been duly authorized by FSS' managers and no other corporate proceedings on the part of the Third-Party Funding Contributors are necessary to authorize this Agreement or to consummate the transaction contemplated hereby. This Agreement has been duly executed and delivered by the Third-Party Funding Contributors and, assuming due execution and delivery by the Debtors of this Agreement, this Agreement constitutes a valid and binding obligation of the Third-Party Funding Contributors, enforceable against the Third-Party Funding Contributors in accordance with its terms.

       c.       <u>Due Diligence</u>. The Third-Party Funding Contributors have completed their due diligence, and this Agreement is not subject to a due diligence condition, *provided* that the Debtors shall continue to provide information regarding the Chapter 11 Cases and the process surrounding confirmation of the Proposed Plan(s).

       d.       <u>No Securities; No Third-Party Financing</u>. No securities are being issued and the obligation of the Third-Party Funding Contributors to perform under this Agreement is not conditioned on obtaining third-party financing.

       e.       <u>Financial Capability</u>. The Third-Party Funding Contributors have and will have upon Effective Date, sufficient cash and/or cash flow available to consummate the transactions contemplated by this Agreement and the Proposed Plan.

       f.       <u>No Violation; Consents</u>. The execution and delivery by the Third-Party Funding Contributors of this Agreement and the consummation of the transactions contemplated hereby do not and will not (1) violate any provision of the organizational documents of FSS, (2) violate any order of any governmental authority to which the Third-Party Funding Contributors are bound or subject, (3) violate any applicable law, or (4) violate any legal agreements to which a Third-Party Funding Contributor is a party.

g.     <u>No Third-Party Approvals Required</u>.  No regulatory or other third-party approvals, consents or filings are required to be obtained or made by the Third-Party Funding Contributors in order to consummate this Agreement, except for any such requirements, the failure of which to be obtained or made would not reasonably be expected to prevent, impede or materially delay or otherwise affect in any material respect the transactions contemplated by this Agreement.

h.     <u>Bankruptcy</u>.  There are no bankruptcy, reorganization or arrangement proceedings pending against, being contemplated by or, to the knowledge of the Third-Party Funding Contributors, threatened against the Third-Party Funding Contributors.

i.     <u>Representation by Counsel</u>.  The Third-Party Funding Contributors acknowledge that they have been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement.

j.     <u>Negotiated in Good Faith and Arm's Length Transaction</u>.  The Third-Party Funding Contributors acknowledge that they have negotiated in good faith and this Agreement represents an arm's length transaction.

Section 5.2     <u>The Debtors</u>.  The Debtors represent and warrant that the following statements are true, correct, and complete as of the date hereof:

a.     <u>Organization and Good Standing</u>.  The Debtors are limited liability companies duly formed, validly existing and in good standing under the laws of the State of Texas.

b.     <u>Authority to Contract</u>.  Subject to entry of the Trustee Order, the Debtors have the requisite limited liability company power and authority to execute this Agreement and, subject to Bankruptcy Court approval, to consummate the transactions contemplated herein.  Subject to entry of the Trustee Order, the execution and delivery of this Agreement by the Debtors and the consummation by the Debtors of the transaction contemplated hereby have been duly authorized by the Litigation Settlement Trustees and no other limited liability company proceedings on the part of the Debtors are necessary to authorize this Agreement or to consummate the transactions contemplated herein.  This Agreement has been duly executed and delivered by the Debtors and, assuming due execution and delivery by the Third-Party Funding Contributors and subject to entry of the Trustee Order, shall constitute a valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms.

c.     <u>No Violation; Consents</u>.  The execution and delivery by the Debtors of this Agreement and the consummation of the transactions contemplated hereby do not and will not (1) violate any provision of the organizational documents of the Debtors, (2) violate any Order of any governmental authority to which the Debtors are bound or subject, or (3) violate any applicable law.

d.     <u>No Third-Party Approvals Required</u>.  Other than approval of the Bankruptcy Court, no order or permit issued by, or declaration or filing with, or notification to, or waiver from any governmental authority is required on the part of the Debtors in

connection with the execution and delivery of this Agreement, or the compliance or performance by the Debtors with any provision contained in this Agreement, except for any such requirements, the failure of which to be obtained or made would not reasonably be expected to prevent, impede or materially delay or otherwise affect in any material respect the transactions contemplated by this Agreement.

> e. <u>Representation by Counsel</u>. The Debtors acknowledge that they have been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement.

> f. <u>Negotiated in Good Faith and Arm's Length Transaction</u>. The Debtors acknowledge that they have negotiated in good faith and this Agreement represents an arm's length transaction.

### Section 6    Covenants.

Section 6.1    <u>Covenants of the Third-Party Funding Contributor[s]</u>. The Third-Party Funding Contributor[s] covenant and agree that subsequent to the date of this Amendment and prior to termination of this Agreement pursuant to Section 7 hereof:

> a. <u>Financial Condition</u>. The Litigation Settlement Trustees and the Third-Party Funding Contributors shall determine from time to time an appropriate budget for FSS to be operated properly during the term of this Agreement and an appropriate compensation for AEJ, excluding exempt assets and wages for his personal services, consistent with the anticipated needs of individual contributions during the term of this Agreement and consistent with his usual and ordinary needs. The Third-Party Contributor[s] shall not initiate or make any transfers in excess of 5% of the approved budgets unless specifically authorized by the Litigation Settlement Trustees.

> b. <u>No Material Transfers</u>. The Third-Party Funding Contributors covenant and agree that they shall not divert, secret, hide or hinder assets subject to this Agreement, Proposed Plan, or Definitive Document, including but not limited to initiation or making any transfer outside of the ordinary course of business, as determined by the Litigation Settlement Trustees. Any litigation relating to allegations of any breach of this provision shall be brought exclusively in the Bankruptcy Court and shall entitle the Litigation Settlement Trustees to injunctive relief, costs and attorneys' fees.

> c. <u>Timely Payment of Royalties and Fees</u>. During the term of this Agreement the Third-Party Funding Contributor[s] covenant and agree not to divert or cause to be diverted (i) any royalty owed to the Debtors arising from the sales of products sold by any Third-Party Contributor; or (ii) any licensing fees generated by the Third-Party Contributor[s]' use of any intellectual property, copyrights, and trademarks owned by the Debtors, and shall cause such amounts to be paid to the Debtors or to the Litigation Settlement Trust, as may be provided in a Proposed Plan.

Section 6.2    <u>Covenants of the Debtors</u>. The Debtors covenant and agree that prior to the Effective Date and prior to termination of this Agreement pursuant to Section 7 hereof, the Debtors will:

a.  _Access to Information_.  Permit the Third-Party Funding Contributors and their representatives to have reasonable access, during normal business hours and upon reasonable advance notice, to the books and records and senior management personnel of the Debtors pertaining to the Agreement.  The Parties shall cooperate to resolve issues where such disclosure would result in violation of applicable law or would jeopardize any privilege available to the Debtors or any of their affiliates relating to such information or would cause the Debtors or any of their affiliates to breach a confidentiality obligation to which they are bound.  In connection with such access, the Third-Party Funding Contributors' representatives shall cooperate with Debtors' representatives and shall use their best efforts to minimize any disruption of business.  The Third-Party Funding Contributors shall indemnify, defend and hold harmless the Debtors, the Debtors' officers, directors, employees and agents, including the Chief Restructuring Officer, from and against all liabilities asserted against or suffered by them relating to, resulting from, or arising out of, examinations or inspections made by Third-Party Funding Contributors or its representatives pursuant to this Section 6.2(a).

b.  _Notice; Settlements_.  Keep the Third-Party Funding Contributor[s] apprised of any settlement discussions, negotiations or meetings related to the Proposed Plan and the Litigation Settlement Trust Claims, provided, however, that the Litigation Settlement Trustees shall be entitled to enter into a settlement of any Litigation Settlement Trust Claim against the Debtor(s) without the prior consent of the Third-Party Funding Contributors.

c.  _Conduct of Business Pending the Consummation of Plan_.  Unless otherwise expressly permitted by this Agreement, the Debtors shall conduct their business in the ordinary course.

6.3  _Mutual Covenants_.

a.  _Consents and Filings_.  From and after the date hereof and until prior to the termination of this Agreement pursuant to Section 7 hereof, unless otherwise expressly permitted by this Agreement, the Parties shall cooperate with each other and use (and will cause their respective representatives to use) commercially reasonable efforts (1) to take, or to cause to be taken, all actions, and to do, or to cause to be done, all things reasonably necessary, proper or advisable on their part under this Agreement, applicable law or otherwise to consummate and make effective the transactions contemplated by this Agreement as promptly as practicable; (2) to obtain promptly from any person or governmental authority any consent, order or permit required to be obtained by the Parties or any of their respective affiliates in connection with the authorization, execution, delivery and performance of this Agreement, and the consummation of the transactions contemplated hereby and thereby; (3) to promptly make all necessary filings and thereafter make any other required submissions with respect to this Agreement and prompt consummation of the transactions contemplated hereby and thereby required under any applicable law; and (4) to provide prompt notification to the other Party hereto of any actions pursuant to clauses (1) – (3) of this Section 6.3(a).

b.  _Cooperation._  In addition, no Party shall take any action after the date hereof (other than any action required to be taken under this Agreement or to which the other

Parties shall have granted their consent) that could reasonably be expected to materially delay the obtaining of, or result in not obtaining, any consent, order, permit, qualification, exemption or waiver from any governmental authority or other person required to be obtained prior to the effective date of the Plan; including, without limitation, the Disclosure Statement (if required), the Plan, all documents, instruments and pleadings necessary for the approval of the Disclosure Statement (if required) and confirmation of the Plan.

        c.    <u>Joint Prosecution</u>. If permitted by applicable law and subject to any limitations on access to information provided for in Section 3.3, each party shall consult with the other parties with respect to, and provide any information reasonably requested by the other party in connection with, all material filings made with the Bankruptcy Court or any governmental authority in connection with this Agreement and the transactions contemplated hereby. If any party or any of its affiliates receives a request for information or documentary material from any governmental authority with respect to this Agreement or any of the transactions contemplated hereby, then such party shall endeavor in good faith to make, or cause to be made, as soon as reasonably practicable and, to the extent permitted by applicable law, after consultation with the other parties, an appropriate response in compliance with such request.

        d.    <u>Bankruptcy Matters</u>. The Parties shall use commercially reasonable efforts to cooperate, negotiate, assist and consult with each other to secure the entry of an order confirming the Proposed Plan following the date hereof, and to consummate the transactions contemplated by this Agreement, including, without limitation, the Plan, all documents, instruments and pleadings necessary for the approval of a disclosure statement (if necessary) regarding the Plan and confirmation of the Plan. In the event that any order of the Court relating to this Agreement shall be appealed by any person (or a petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to any such order), the Parties will cooperate in taking such steps to diligently defend against such appeal, petition or motion and the Parties shall use their commercially reasonable efforts to obtain an expedited resolution of any such appeal, petition or motion. The Parties shall not, without the prior written consent of the other parties, file, join in, or otherwise support in any manner whatsoever any motion or other pleading relating to a sale or plan of reorganization, other than the Proposed Plan, unless the Debtors through the Litigation Settlement Trustees determine in their business judgment their fiduciary obligations require them to do so.

        **Section 7**    **Termination.** This Agreement shall terminate upon the election of any party with the right to declare a termination set out below, and the obligations of the Parties shall thereupon terminate and be of no further force and effect, upon the occurrence of the earlier of the following events (each, a "<u>Termination Event</u>"):

        (i)    Upon mutual written consent of the Debtors, on the one hand, and the Third-Party Funding Contributors, on the other hand.

        (ii)    The Chapter 11 Cases are (a) dismissed, or (b) converted to a case under chapter 7 of the Bankruptcy Code; the Bankruptcy Court enters an order appointing a trustee or examiner under chapter 11 of the Bankruptcy Code.

(iii)     The Bankruptcy Court enters an order granting relief from the automatic stay imposed by §362 of the Bankruptcy Code to allow the continued litigation of a Litigation Settlement Trust Claim without the consent of the Third-Party Funding Contributor[s] in any court other than as provided in 28 U.S.C. 157(b)(5) (to the extent applicable).

(iv)     The Debtor or the Third-Party Funding Contributors shall (a) fail to comply with any of its obligations under this Agreement (it being understood that only the non-breaching party may invoke the Termination Event); (b) has breached any representation, warranty, covenant or agreement contained in this Agreement; or (c)  notwithstanding ¶ 7(iv)(a) above, a settlement is proposed or agreed to, or a claim allowed by the Bankruptcy Court or by any other Court properly authorized to liquidate a claim or claims that is in an amount the Third-Party Funding Contributors determine, in their sole discretion, to be impractical or impossible to timely pay in full as contemplated by the Plan.

(v)     Any court of competent jurisdiction or other competent governmental or regulatory authority shall have issued an order making illegal or otherwise restricting, preventing, or prohibiting the Plan in a way that cannot be reasonably remedied or otherwise grants relief to any party that is materially inconsistent with the Plan or this Agreement.

(vi)     The relevant court remands the Litigation Claims and lifts the automatic stay to allow the State Court to proceed to Judgment without the consent of the Third-Party Funding Contributor[s].

(vii)     Upon termination, the Third-Party Funding Contributor[s] shall have no rights in any funds remaining in the Litigation Settlement Trust or otherwise deposited to pay claims and the Third-Party Funding Contributor[s] shall have no further liability under the Litigation Settlement Trust or under this Agreement.

**Section 8     Amendments.**  This Agreement may not be modified, amended, or supplemented, except in a writing signed by all Parties.

**Section 9     Governing Law; Jurisdiction.**  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas or the United States, without regard to the applicable principles of conflict of laws.

**Section 10     Notices.**     All demands, notices, requests, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered by courier service, messenger, telecopy, facsimile, or if duly deposited in the mails, by certified or registered mail, postage prepaid-return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, as follows:

*If to the Debtor, to:*

Marc Schwartz
Chief Restructuring Officer
of the Debtors
Schwartz Associates LLC
712 Main Street, Ste 1830

Houston, Texas 77002

With a copy to:

Kyung S. Lee
Parkins Lee & Rubio LLP
Pennzoil Place-13th Floor
700 Milam
Houston, Texas 77002
klee@parkinslee.com

**_If to the Third-Party Funding Contributors:_**

Free Speech Systems, LLC
To: Law Offices of Ray Battaglia, PLLC
Attn: Ray Battaglia
66 Granburg Circle
San Antonio, Texas 78218
rbattaglialaw@outlook.com

Alex Jones
To: Shelby A. Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Dr., Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com


**Section 11    Litigation Settlement Trustees' Fiduciary Obligations**. Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement, the Proposed Plan, or anything included in any Definitive Document shall require the Litigation Settlement Trustee(s), after consulting with counsel, to take any action or to refrain from taking any action with respect to this Agreement, the Plan, or Definitive Document to the extent taking or failing to take such action would be inconsistent with applicable law or each of the Litigation Settlement Trustee's fiduciary obligations under applicable law, and any such action or inaction pursuant to such exercise of fiduciary duties shall not be deemed to constitute a breach of this Agreement, the Plan, or any Definitive Document; provided that the Litigation Settlement Trustees shall give prompt written notice to counsel to the Third-Party Funding Contributor(s) (electronic mail among counsel being sufficient) of any such determination by the Litigation Settlement Trustees, in their sole discretion, that any such action or refrainment from taking such action with respect to this Agreement, the Plan, or and Definitive Document would be inconsistent with applicable law or each of the Litigation Settlement Trustee's fiduciary obligations under applicable law. For the avoidance of doubt, notwithstanding anything to the contrary in this Section 11, the Debtors' failure to comply with the terms of this Agreement may constitute a Termination Event under Section 7, above.

**Section 12     Entire Agreement.**     This Agreement constitutes the entire understanding and agreement among the Parties with regard to the subject matter hereof, and supersedes all prior agreements with respect thereto.

**Section 13     Headings.**     The headings of the paragraphs and subparagraphs of this Agreement are inserted for convenience only and shall not affect the interpretation hereof.

**Section 14     Successors and Assigns.**     This Agreement is intended to bind and inure to the benefit of the Parties and their respective permitted successors and assigns.

**Section 15     Specific Performance.**     Each Party hereto recognizes and acknowledges that a breach by it of any covenant or agreement contained in this Agreement may cause the other Parties to sustain damages for which such Parties would not have an adequate remedy at law, and therefore each Party hereto agrees that in the event of any such breach the other Parties shall be entitled to seek the remedy of specific performance of such covenant and agreement and injunctive and other equitable relief in addition to any other remedy to which such Parties may be entitled, at law or in equity.

**Section 16     Remedies Cumulative.**     All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power or remedy by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

**Section 17     No Waiver.**     The failure of any Party to exercise any right, power, or remedy provided under this Agreement or otherwise available to it at law or in equity, or to insist upon compliance by any other Party with its obligations hereunder, and any custom or practice of the Parties at variance with the terms hereof, shall not constitute a waiver by such Party of its right to exercise any such or other right, power, or remedy or to demand such compliance.

**Section 18     Counterparts.**     This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same Agreement.  Delivery of an executed signature page of this Agreement by telecopier or facsimile shall be as effective as delivery of a manually executed signature page of this Agreement.

**Section 19     Severability.**     Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.  The provisions of this Agreement shall be interpreted in a reasonable manner to effect the intent of the Parties hereto.

**Section 20     No Third-Party Beneficiaries.**     Unless expressly stated herein, this Agreement shall be solely for the benefit of the Parties, and no other person or entity shall be a third-party beneficiary hereof.

**Section 21     Jurisdiction and Venue:**     Notwithstanding any provision herein to the contrary no action or proceeding by any Party or any third-party may be brought to determine, enforce, prohibit, enjoin, or otherwise determine any rights or obligations of any Party to this

Agreement except in the United States Bankruptcy Court or the United States District Court, as the case may be, for the Division and District in which the Chapter 11 Cases are pending.

THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Declaration or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Effective Date:  April 28, 2022.

**INITIAL LITIGATION SETTLEMENT TRUSTEE**

By: _____
Name:   Robert Dew
Title:    Initial Trustee, and as sole officer and
          Director of each Debtor entity
          InfoW, LLC, InfoHealth, LLC,
          Prison Planet TV, LLC

**INFOW, LLC**

By: _____
Name:   W. Marc Schwartz
Title:    Chief Restructuring Officer

**IWHEALTH, LLC**

By: _____
Name:   W. Marc Schwartz
Title:    Chief Restructuring Officer

**PRISON PLANET TV, LLC**

By: _____
Name:   W. Marc Schwartz
Title:    Chief Restructuring Officer

**THIRD-PARTY FUNDING CONTRIBUTOR ALEX JONES**

By: _____
Name:

**THIRD-PARTY FUNDING CONTRIBUTOR FREE SPEECH SYSTEMS, LLC**

By: _____
Name:
Title:

**SIGNATURES LEFT BLANK PENDNG**
**APPOINTMENT BY BANKRUPTCY**
**COURT ORDER**


_____
Name:
Title: Litigation Settlement Trustee and
Debtors' Managing Member


_____
Name:
Title: Litigation Settlement Trustee and
Debtors' Managing Member

**<u>EXHIBIT D</u>**

**Changes to Plan Support Agreement**

*[Different first page setting changed from off in original to on in modified.].*

## AMENDED AND RESTATED PLAN SUPPORT AGREEMENT

This AMENDED AND RESTATED PLAN SUPPORT AGREEMENT (as the same may be amended, modified or supplemented from time to time in accordance with the terms hereof, the "Agreement") is made and entered into as of April ~~14~~28, 2022 by and among the following parties (each individually a "Party" and collectively referred to as the "Parties"):

(a)     Free Speech Systems, LLC, a Texas limited liability company ("FSS");

(b)     Alex E. Jones, an individual residing in Texas ("~~AJ~~AEJ," and, collectively with FSS, the "Third-Party Funding Contributor[s]");

(c)     InfoW, LLC,[1] a Texas limited liability company ("IW");

(d)     InfoHealth, LLC,[2] a Texas limited liability company ("IWH"); and

(e)     Prison Planet TV, LLC, a Texas limited liability company ("PTV").

## RECITALS[3]

~~WHEREAS, IW, IWH and PTV (collectively the "Debtors" and each individually a "Debtor") intend to commence voluntary reorganization cases (the "Bankruptcy Cases") under subchapter V of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court") to affect the resolution and payment of certain claims and litigation claims through one or more chapter 11 plan(s) of reorganization;~~

WHEREAS, the Debtors have determined that it would be in their best interests and the best interest of their creditors to implement a restructuring of their indebtedness and other obligations through the prosecution of the ~~Bankruptcy Cases~~Chapter 11 Cases (defined herein) managed by a Chief Restructuring Officer, with the membership interest of the Debtors in a trust, under the exclusive governance and control of independent trustees to be approved by the Bankruptcy Court and funded by ~~AJ and FSS (collectively the "~~the Third-Party Funding Contributor[s]~~")~~ as herein provided;

WHEREAS, on April 18, 2022 (the "Petition Date"), IW, IWH and PTV (collectively the "Debtors" and each individually a "Debtor") filed voluntary petitions for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing jointly administered cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court");

---

[1]     Formerly known as InfoWars, LLC

[2]     Formerly known as InfoWars Health, LLC

[3]     Unless otherwise indicated, capitalized terms used in these Recitals shall have the meanings ascribed in the body of this Agreement.

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

WHEREAS, prior to the Petition Date, the Debtors, the Third-Party Funding Contributor[s], and the Initial Trustee (as defined therein) executed that Declaration of Trust (as may be amended or restated, the "Trust Agreement") establishing the 2022 Litigation Settlement Trust (the "Litigation Settlement Trust") to facilitate the independent administration of the Chapter 11 Cases and to pursue confirmation of a chapter 11 plan of reorganization in accordance with the terms of this Agreement;

WHEREAS, also prior to the Petition Date, the Parties ~~have agreed on the terms of~~entered into this Agreement and ~~the elements~~agreed upon certain material terms of a proposed chapter 11 plan(s) for the Debtors, ~~each~~ as may be amended, modified, or supplemented from time to time, including any schedules and exhibits attached thereto, in each case, in accordance with the terms hereof (the "Proposed Plan");

WHEREAS, subject to the terms and limitations set forth herein, the Proposed Plan shall provide for Payment in Full of all Allowed Litigation Settlement Trust Claims, which payments shall be administered by the Litigation Settlement Trustees and funded by the Third-Party Funding Contributor[s] with cash, assets and liens (as set out and limited herein, the "Exit Funding Commitment");

WHEREAS, in consideration for the performance and fulfillment of the Funding Commitment (as defined in the Trust Agreement) and the Exit Funding Commitment, the Third-Party Funding Contributor[s] shall be entitled to receive the Resulting Releases subject to the terms of this Agreement and the Plan, provided, however, for the avoidance of doubt, that the granting of such Resulting Releases shall be expressly conditioned upon satisfaction in full of any and all joint and several liabilities of each or all of the Debtors and the Third-Party Funding Contributor[s] and arising from the Litigation Settlement Trust Claims;

WHEREAS the Debtors and the Third-Party Funding Contributor[s] desire the appointment of the Litigation Settlement Trustees as successors to the Initial Trustee of the Litigation Settlement Trust;

WHEREAS the Litigation Settlement Trustees require certain amendments and revisions to the terms of this Agreement as set forth herein as a condition of their willingness to serve as trustees of the Litigation Settlement Trust; and

WHEREAS, subject to the terms hereof and appropriate approvals of the Bankruptcy Court, as may be required, the following sets forth the amended and restated agreement among the Parties concerning their respective obligations in connection with the Plan(s) and the ~~Bankruptcy~~Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound hereby, agree as follows:

## Section 1      CERTAIN DEFINITIONS

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

Applicable definitions contained in (i) the Bankruptcy Code; and (ii) the Litigation Settlement Trust (and associated documents) are incorporated into this Agreement except as modified in this Section 1 or except as conflicting with the defined the terms herein. The following definitions shall have the meanings as specified herein, and shall be designated, when such special definitions are applicable, with capital letters, and these definitions shall be enforceable as terms of the Agreement in conjunction with the respective matters to which they reference or define.

*"Allowed"* or *"Allowed Claim"* means ~~a Litigation Settlement Trust Claims or Claim that is allowed: (i)~~, with respect to any Claim, except as otherwise provided in the Proposed Plan, a Claim allowable under Bankruptcy Code section 502 that (i) has been allowed by a Final Order, including but not limited to any Final Order estimating claims for purposes of confirming this Plan, (ii) either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtors' schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed and liquidated Proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, (iii) is expressly allowed in a liquidated amount in the Plan; or (iv) has been allowed in any stipulation executed by the Debtor (or the Litigation Settlement Trustees ~~after the Confirmation Order becomes a Final Order~~), the Third-Party Funding Contributors and the holder of the Litigation Settlement Trust Claim~~; (ii) in a Final Order; or (iii) pursuant to the terms of the Plan~~.

*"Claim(s)"* means a "claim" against the Debtors, as defined in Section 101(5) of the Bankruptcy Code.

~~*"Approved Plan Documents"* means those agreements and documents executed and or submitted in conjunction with the Plan or as a supplement to the Plan which have been approved by the Third-Party Funding Contributors.~~
~~*"Bankruptcy Cases"* means collectively or individually the cases filed by the Debtors pursuant to 11 U.S.C. §1101, *et seq*.~~
~~*"Bankruptcy Code"* means title 11 of the United States Code.~~
*"Confirmation Order"* means ~~the~~a final, non-appealable order of the Bankruptcy Court confirming the Proposed Plan~~(s)~~ pursuant to section 1191 of the Bankruptcy Code.

~~"*Debtor*" or "*Debtors*" shall refer individually and collectively to InfoW, LLC (XXXX), InfoHealth, LLC (XXXX), and Prison planet TV, LLC (XXXX), including any and all affiliated, predecessor, successors, assigns, agents, employees, partners, attorneys, representatives, administrators, investigators, consultants and other persons, acting or purporting to act on behalf of any of the above entities.~~
*"Definitive Documents"* means, with respect to the Plan(s), all material documents (including the Plan itself as well as any related Bankruptcy Court orders, agreements, schedules, pleadings, motions, filings, or exhibits) that are contemplated by this Agreement , in form and substance acceptable to the Litigation Settlement Trustees and the Third-Party Funding Contributor[s], and

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

that are otherwise necessary or desirable to implement the Plan(s) and this Agreement, including (as applicable): (i) the Plan(s); (ii) Disclosure Statement(s) if ordered by the Bankruptcy Court; (iii) any other operative documents and/or agreements relating to the Plan(s) (including any documents necessary to implement the distributions contemplated thereunder); <u>and</u> (iv) the Confirmation Order.

~~*"Effective Date"* means April 8, 2022.~~

~~*"Final Order"* means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a stay, new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.~~

*"Litigation"* means pending civil lawsuits <u>against one or more of the Debtors</u>, including but not limited to the following <u>(as may be removed to federal court)</u>:

- *Marcel Fontaine vs. Alex E., Jones, Infowars, LLC, Free Speech Systems, LLC and Kit Daniels*, Cause No. D-1-GN-18-001605 in the 459th Judicial District Court of Travis County, Texas;

- *Neil Heslin vs. Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001835 in the 261st Judicial District Court of Travis County, Texas;

- *Veronique de la Rosa and Leonard Pozner vs. Alex E. Jones, Inforwars, LLC, and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001842 in the 345th Judicial District Court of Travis County, Texas;

- *Scarlett Lewis vs. Alex E. Jones, Inforwars, LLC, Free Speech Systems, LLC and Owen Shroyer*, Cause No. D-1-GN-18-006623 in the 98th Judicial District Court of Travis County, Texas;

- *Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and*

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

> *Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046436-S in the Superior Court of Connecticut, Waterbury Division;

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046437-S in the Superios Court of Connecticut, Waterbury Division;

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046438-S in the Superios Court of Connecticut, Waterbury Division; and

- *Brennan M. Gilmore v. Alexander ("Alex") E. Jones, Infowars, LLC, Free Speech Systems, LLC, Lee Stanahan, Lee Ann McAdoo a/k/a Lee Ann Fleissner, Scott Creighton, James ("Jim") Hoft, Allen B. West, Derrick Wilburn, Michelle Hickford, and Words-n-Ideas, LLC*, Cause No. 3:18-cv-00017-GEC in the United States Districrt Court for the Western District of Virginia, Charlottesville Division;

- *Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique de la Rosa, Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, PQPR Holdings Limited LLC, JLJR Holdings Limited LLC, JLJR Holdings, LLC, PLJR Holdings, LLC, Carol Jones, David Jones, PQPR Holdings, LLC, JLJR Holdings Limited, LLC, AEJ Holdings, LLC, AEJ Trust 2018*, Cause No. D-1-GN-22-001610 in the District Court Travis County, Texas 200th District Court.

together with any other pending lawsuits against any of the ~~Parties on the Effective Date of this Agreement (collectively, the "Litigation Claims")~~Debtors on the Petition Date.

**"Litigation Claims"** means any and all Claims arising out of the Litigation against any of the Parties for which a Debtor is or has at any time been alleged to be jointly and severally liable under theory of law or equity.

~~**"Initial Trust Funding"** means $725,000 in cash funded to the Litigation Settlement Trust by AJ from his Exempt property upon the Effective Date of this Agreement to pay the costs of administration of the Debtors' Bankruptcy Cases and the Litigation Settlement Trust, including retention of the Litigation Settlement Trustees and retention by the Trustees of all professionals deemed necessary to accomplish the purpose of this Trust and the commitment of the Third-Party Funding Contributors to maintain for not less than 120 days after the Petition Date a balance of $200,000 after payment of all initial administrative expense retainers to newly appointed Litigation Settlement Trustees and as the only members of the Debtors acting as independent Members, together with the Debtors' professionals from time to time, to be paid directly, or thereafter maintained in the Litigation Settlement Trust for continued payment of the costs of Administration of the Litigation Settlement Trust and the Debtors' Bankruptcy Cases.~~

~~**"Litigation Settlement Trust"** means the 2022 Litigation Settlement Trust dated effective April 1, 2022 for the benefit of the Debtors' as provided therein, including that Third-Party Funding~~

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

~~Contributor[s] intended to facilitate and underwrite the "Payment in Full" Plan Class of Allowed Litigation Settlement Trust Claims and the Litigation Settlement Trust Beneficiaries Litigation Settlement Trust Claims, as may exist from time to time and as may be funded by the Third Party Funding Contributors for this purpose from time to time to achieve Payment in Full.(s).~~ ***Trustees"*** means, subject to entry of the Trustee Order (as defined in the Trust Agreement), Richard S. Schmidt and Russell F. Nelms.

~~***"Litigation Settlement Trustees"*** means two individuals approved by the Bankruptcy Court to serve as Trustees of Litigation Settlement Trust who will replace the interim trustee serving in that capacity prior to the filing of the Bankruptcy Cases.~~

~~***"Litigation Settlement Trust Claims Bar Date"*** means the bar date for filing Claims or Litigation Claims in the Bankruptcy Cases established by Order of the Bankruptcy Court;~~

***"Litigation Settlement Trust Claims"*** means the Claims of any party arising out of or related to the Litigation Claims and evidenced by a proof of claim timely filed in the Debtors' Chapter 11 case(s).

***"Litigation Settlement Trust Claims*** ~~***Estimation"*** means the estimation of the Litigation Settlement Trust Claims by~~ ***Bar Date"*** means the bar date for filing Claims or Litigation Claims in the Chapter 11 Cases established by Order of the Bankruptcy Court ~~in these Bankruptcy Cases pursuant to Sections 502(c) and 105 of the Bankruptcy Code and Rule 3018 of the Bankruptcy Rules of Procedure.~~ ;

**"** ***Liquidated*** **Litigation Settlement Trust** ~~***Beneficiary"*** Means the holder of a Litigation Settlement Trust Claim~~ ***Claim Amount"*** shall have the meaning set forth in Section 2.2(a) of this Agreement.

~~***"Litigation Trust Expenses"*** means all costs, expenses and professional fees incurred by the Litigation Settlement Trust and the Litigation Settlement Trustees during the Support Period, specifically including, but not limited to the allowed fees and expenses of the Debtors and their professionals incurred in connection with the prosecution of the Bankruptcy Cases and those incurred after the Plan Effective Date, approved by the Litigation Settlement Trustees.~~

~~***"Petition Date"*** means the date upon which the earliest of the Debtors' Bankruptcy Cases was commenced as a voluntary bankruptcy case.~~

"***Payment in Full***" shall have the meaning set forth in Section 2.2(d) of this Agreement.

~~***"Plan(s)"*** or ***"Plan(s) of Reorganization"*** means the chapter 11 plan(s) to be jointly proposed by the Debtors supported by the Third-Party Funding Contributors in each of the Bankruptcy Cases, that contains the same terms set forth in, and is otherwise materially consistent with this Agreement and that is an Approved Plan Document, as the same may be amended, supplemented, or otherwise modified as provided herein.~~

**"** ~~***Plan***~~ **Effective Date"** means the date on which the Proposed Plan, as confirmed, becomes effective, as defined therein.

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

~~**"Support Period"** means, with respect to any Party, the period commencing on the later of (a) the Agreement Effective Date and (b) the Petition Date and ending on the date on the earlier of (i) 180 days following the commencement date and (ii) termination of this Agreement, *provided* however that if a Confirmation Order is entered, then on and after the Effective Date the Support Period shall remain in effect for the earlier of not less than 5 years from the Plan Effective Date or until Payment in Full, or full liquidation of all available assets in the Litigation Settlement Trust, which ever first occurs.~~

"**_Resulting Release_**" shall have the meaning set forth in Section 2.2(d).

**Section 2** ~~**The Plan(s) and the Litigation Settlement Trust Claims Estimation**~~**Prosecution of the Chapter 11 Cases.**

2.1     Chapter 11 Case Administration.   The Parties agree that as soon as practical after the Petition Date~~, and during the Support Period that they will~~:

a.                                 ~~(i)~~     ~~promptly~~the Debtors shall file a Motion to ~~set~~establish a Litigation Settlement Trust Claims Bar Date;

b.     after such diligence and deliberation as the Litigation Settlement Trustees shall in their sole discretion require, the Debtors shall initiate, including by seeking such approvals as may be required from the Bankruptcy Court, protocol(s) for the establishment of the Allowed Litigation Settlement Trust Claims subject to the terms of this Agreement, which protocols may, in the discretion of the Litigation Settlement Trustees, include, but shall not be limited to, liquidation of the Litigation Settlement Trust Claims through (i) subject to Section 6.2(b) herein, settlement by the holder of an Litigation Settlement Trust Claims with the Debtors and the Third-Party Funding Contributors; (ii) estimation pursuant to section 502(c) of the Bankruptcy Code; (iii) a consolidated trial in court of competent jurisdiction over all Litigation Settlement Trust Claims subject to the mandates of 28 U.S.C. § 157(b)(5) (as applicable); or (iv) such other process permitted under applicable law as is determined by the Litigation Settlement Trustees under the facts and circumstances then applicable to be most suitable to liquidating the Litigation Settlement Trust Claims such that the amount necessary to satisfy the Exit Funding Commitment may be reasonably determined; and

c.     promptly initiate and negotiate the Definitive Documents in good faith, consistent in all respects with this Agreement, and otherwise in form and substance reasonably acceptable to the Parties.

2.2     Material Terms of the Proposed Plan.  Pursuant to the terms of this Agreement and subject to negotiation of the Definitive Documents, the Debtors shall file and seek confirmation of the Proposed Plan, which Proposed Plan shall include the following material terms:

a.     Conditions to Effectiveness.  Occurrence of the Effective Date shall be conditioned upon (i) entry of a final, non-appealable Confirmation Order in form and substance agreeable to the Litigation Settlement Trustees and the Third-Party Funding Contributor[s]; (ii) estimation of the Liquidated Litigation Settlement Trust Claim Amount, pursuant to section 502(c) of the Bankruptcy Code or such other method as may

*[Different first page setting changed from off in original to on in modified.].*

be reasonably acceptable to the Third-Party Funding Contributor[s], in an amount acceptable to the Third-Party Funding Contributor[s]; and (iii) such other reasonable conditions as the Parties may require.

b.     Binding Liquidation of the Allowed Litigation Settlement Trust Claims. To the extent that any Allowed Litigation Settlement Trust Claim(s) remains unliquidated, the Proposed Plan shall authorize the Litigation Settlement Trustees, as representatives of the Debtors or reorganized Debtors, to engage in such proceedings reasonably required for the liquidation of such Claims, provided that any final ruling, order, or judgment in such proceedings as to the liquidated amount of the Allowed Litigation Settlement Trust Claims shall represent the aggregate liability on account of the Litigation Claims. Collectively with such liquidated amounts determined pursuant to Section 2.1(b) above, such aggregate liability shall be referred to herein as the Liquidated Litigation Settlement Trust Claim Amount.

c.     Channeling Injunction and Tolling of Limitations. To the fullest extent permissible under applicable law, the Proposed Plan shall prohibit and enjoin the continuation of any Litigation against the Debtors or any Third-Party Funding Contributor for so long as neither the Debtors nor the Third-Party Funding Contributor[s] are in material default under the terms of this Agreement or the Proposed Plan (the "Channeling Injunction"), provided, however, that the Proposed Plan shall further provided that any and all statutes of limitation or repose, and all time-related legal doctrines, whether equitable or legal, including but not limited to the doctrines of estoppel or laches, that may apply or relate to any claim or cause action enjoined pursuant to the Channeling Injunction described herein shall be tolled for a period of not less than 120 days following the termination of such Channeling Injunction.

d.     Payment Allowed Litigation Settlement Trust Claims. Upon a final, non-appealable determination (a "Determination") of the Liquidated Litigation Settlement Trust Claim Amount, the Proposed Plan shall provide for distributions, either through the Litigation Settlement Trust or such other mechanism as may be appropriate, to the holders of Allowed Litigation Settlement Trust Claims, in an amount equal to the Liquidated Litigation Settlement Trust Claim Amount plus accrued interest at the statutory judgment rate ("Payment in Full"). Such distributions shall be funded by the Third-Party Funding Contributor[s] pursuant to the Exit Funding Commitment.

e.     The Resulting Releases. Only upon Payment in Full, and provided that there exists no uncured material default under this Agreement or the Proposed Plan, the Third-Party Funding Contributor[s] shall be entitled to receive the Resulting Releases, which may be memorialized in the form of a final order of the Bankruptcy Court or such other court of competent jurisdiction enjoining any party from asserting any claim, cause of action, or other right of recovery whatsoever, arising from or relating to the Litigation Claims against any Third-Party Funding Contributor.

*[Different first page setting changed from off in original to on in modified.].*

(ii) ~~promptly file a Motion to Estimate all Litigation Settlement Trust Claims pursuant to Section 502(c) to determine for all purposes, except, allowance of the amount of all Litigation Claims, and shall set an Estimation Protocol to initiate and conduct such estimations.~~

(iii) ~~promptly initiate the protocol for settlement negotiations of the allowed amounts of all Litigation Settlement Trust Claims, the Plan treatment, and all related issues and matters toward a Plan Confirmation of a "Payment in Full" Plan; and~~

(iv) ~~promptly initiate and negotiate the Definitive Documents in good faith, and such Definitive Documents will be materially consistent in all respects with this Agreement, and otherwise in form and substance reasonably acceptable to the Parties, and that, upon execution, the terms and conditions set forth in this Agreement are not subject to further negotiation or change. Notwithstanding anything to the contrary herein, in no event shall the Plan or the Definitive Documents (x) increase or decrease directly or indirectly the settlement consideration or otherwise require any amount to be payable, directly or indirectly, by the Third-Party Funding Contributors or (y) change the conditions precedent for funding by the Third-Party Funding Contributors. If the Plan and the Definitive Documents satisfy the criteria in this Section 2, they will be considered the "Approved Plan Documents." This provision, however, is not intended in any way to abrogate, abridge or affect in any way the fiduciary duties and obligations of the Debtors.~~

~~**Section 3 Joint Agreements**~~

~~During the Support Period, the Parties agree to the following:~~

(a) ~~The Debtors and the Litigation Settlement Trust along with the Third-Party Funding Contributors shall jointly file and prosecute a motion to establish (x) a Litigation Settlement Trust Claims Bar Date, (y) a Litigation Settlement Trust Claims Estimation protocol, and (z) the Plan(s).~~

(b) ~~Each Party agrees to (i) support and take all reasonable actions necessary to facilitate the confirmation, implementation and consummation of, the Plan and (ii) not take any action that is inconsistent with the implementation or consummation of this Agreement or the Plan.~~

(c) ~~No Party shall:~~

(i) ~~object to, delay, or take any other action to interfere, directly or indirectly, in any respect with acceptance or implementation of the Plan(s), nor encourage any person or entity to do any of the foregoing;~~

(ii) ~~directly or indirectly seek, solicit, propose, file, support, encourage, or vote for any plan of reorganization other than the Plan;~~

(iii) ~~take any other action, including but not limited to, initiating any legal proceeding, that is materially inconsistent with, or that would prevent or delay consummation of, the Plan; and~~

*[Different first page setting changed from off in original to on in modified.].*

(iv) impede either in the Bankruptcy Court or any other court reasonable efforts to have the Plan confirmed by the Court as during the Support Period.

**Section 3** ~~Section 4~~ **Third-Party Funding Contributor Agreements.**

(a) During the Plan Support Period the Third-Party Funding Contributors shall:

(i) fund the Initial Trust Funding to the Litigation Settlement Trust;

(ii) subject to execution of confidentiality agreements in a form acceptable to the Third-Party Funding Contributors, (A) deliver or cause to be delivered to the Litigation Settlement Trustees any and all documents (or copies thereof) relating to the Litigation Settlement Trust Claims, held by the Debtors, their employees, agents, advisors, attorneys, accountants, or any other professionals hired by the Debtors, and (B) provide reasonable access to the Litigation Settlement Trustees and their advisors to such employees of the Debtors, their agents, advisors, attorneys, accountants, or any other professionals hired by the Debtors with knowledge of matters relevant to the Litigation Settlement Trust Claims for the purpose of enabling the Litigation Settlement Trustees to fulfill their obligations under this Plan and the Litigation Settlement Trust, including the prosecution of the Litigation Settlement Trust Claims.

(iii) subject to execution of confidentiality agreements in a form acceptable to the Third-Party Funding Contributors or the Bankruptcy Court, upon request from the Litigation Settlement Trustees, the Third-Party Funding Contributors shall deliver current financial information, operating information, assets or account information ("Information") as reasonably needed to determine that each Third-Party Funding Contributor has the financial ability to pay Allowed Litigation Settlement Trust Claims in full, in accordance with the Plan. The Information shall be produced only under this provision, and if there is any disagreement on Information production requested, the Litigation Settlement Trustees may seek orders from any Federal Court.

(b) After the Confirmation Order becomes a Final Order and continuing until the Third-Party Funding Contributors declare that they will not Pay-in-Full a settlement proffered by the Litigation Settlement Trustees:

(i) From time to time thereafter, transfer to the Litigation Settlement Trust additional funds to the extent required by the Litigation Settlement Trust and the confirmed Plan to pay Litigation Trust Expenses during the Support Period.

(ii) The Plan shall provide that the Litigation Settlement Trustees shall hold a perfected lien and security interest in and to all of FSS's and all

*[Different first page setting changed from off in original to on in modified.].*

~~non-exempt AJ assets to secure their obligations hereunder, subject to this Section 4(b) hereof. The Litigation Settlement Trustees and the Third-Party Funding Contributors shall determine from time to time an appropriate budget for FSS to be operated properly during the Support Period and an appropriate personal budget for AJ consistent with the anticipated needs of individual contributions during the Support Period and consistent with his usual and ordinary needs. No agreed budget term or provision will waive any right to an exemption in property otherwise available to AJ and his family. The Third-Party Funding Contributors covenant that they shall not divert, secret, hide or hinder assets subject to this agreement, other than those available to each under the agreed budgets during the Support Period prior to termination. In any Litigation relating to allegations of breach of this provision shall be brought exclusively in the bankruptcy court and shall entitle the Litigation Settlement Trustees to injunctive relief and costs.~~

3.1     Funding Commitment. In accordance with the Trust Agreement, the Third-Party Funding Contributor[s] agree from time to time to deliver Cash to the Litigation Settlement Trust to fund all costs of administration to the extent requested by the Litigation Settlement Trustees as necessary to maintain a cash balance of $200,000.00 in the Litigation-Settlement Expense Fund (as defined in the Trust Agreement). The Funding Commitment shall be subject to the following terms and conditions:

     a.     Term. Commencing upon the Petition Date and continuing until the earlier of (x) 120 days after the Petition Date, or (y) the Effective Date, which date may be extended by agreement of Third-Party Funding Contributor[s] and the Trustees.

     b.     Timing. Such additional funding shall be provided in Cash to the Litigation-Settlement Expense Fund by the Third-Party Funding Contributor[s] within five (5) business days of receipt of a written request by the Litigation Settlement Trustees, unless extended by written consent of the Litigation Settlement Trustees as set out in the Trust Agreement.

     c.     Failure to Fund. To the extent that the Third-Party Funding Contributor[s] fail to make any Cash deposit requested pursuant to Section 3.1(b) above within the applicable three-day period, the Litigation Settlement Trustees, in their sole discretion, shall be entitled to seek dismissal of the Chapter 11 Cases or conversion of the same to cases under chapter 7 of the Bankruptcy Code.

3.2     Exit Funding Commitment. Subject to the occurrence of the Effective Date, the Third-Party Funding Contributor[s] shall provide such funding as is necessary (i) to satisfy the continuing administrative expenses of the Litigation Settlement Trust and, to the extent no final decree has been entered, the Chapter 11 Cases; and (ii) to fund Payment in Full of the Liquidated Litigation Settlement Trust Claim Amount; provided, however, that in the event a Deficiency is determined pursuant to 3.2(c) of this Agreement, the Third-Party Funding Contributors, in their sole discretion, may agree whether to fund such Deficiency Payment to meet the Payment in Full

*[Different first page setting changed from off in original to on in modified.].*

of the Liquidated Litigation Settlement Trust Claim Amount(s) obligations pursuant to the Plan. The Exit Funding shall be provided on the following terms:

    a.    Initial Exit Funding. Upon the Effective Date, the Third-Party Funding Contributor[s] shall transfer **$2,000,000.00** (including any balance remaining in the Litigation Settlement Trust pursuant to ¶ 3.1 above) to the Litigation Settlement Trust (or such other entity provided in the Proposed Plan or Confirmation Order).

    b.    Quarterly Payments. Not less than once per fiscal quarter, the Third-Party Contributor[s] shall transfer and pay to the Litigation Settlement Trust, **$250,000.00** for a period of not less than twenty (20) consecutive quarters, and (v) and contribute additional funds to the Litigation Settlement Trust as may be requested by the Litigation Settlement Trustees and agreed to by the Third-Party Funding Contributors in writing, or pursuant to an agreed budget, from time to time in accordance with the Plan to Pay in Full Allowed Litigation Settlement Trust Claims or Allowed Claims.

    c.    Deficiency Payments. If at any time during the term of this Agreement, the Litigation Settlement Trustees shall determine that sum of the Initial Exit Funding and the Quarterly Payments shall be insufficient to satisfy the administrative costs of the Chapter 11 Cases, the Litigation Settlement Trust, and to fund Payment in Full of the Liquidated Litigation Settlement Trust Claim Amount, the Trustees shall notify the Third-Party Funding Contributor[s] in writing of such deficiency (a "Deficiency Notice"). Within thirty (30) days of receipt of any Deficiency Notice, the Third-Party Funding Contributor[s] shall either (i) transfer to the Litigation Settlement Trust assets sufficient to cure such deficiency; (ii) agree to amend the terms of the Exit Funding Commitment on terms acceptable to the Litigation Settlement Trustees to increase the amount or frequency of the Quarterly Payments in an amount sufficient to cure such deficiency; or (iii) terminate this Agreement and declare the Proposed Plan to have failed.

    d.    Termination After Confirmation. To the extent that this Agreement is terminated after the occurrence of both (i) the Effective Date and (ii) a Determination, then the Litigation Settlement Trustees shall be entitled to retain and distribute in accordance with the terms of the Proposed Plan any cash or other assets previously transferred to the Litigation Settlement Trust by either the Third-Party Funding Contributor[s], the Debtors, or their Estates (as defined in the Trust Agreement) as may be approved by the Bankruptcy Court. Further, subject to the tolling provisions set forth in Section 3.4 hereof, the Litigation Settlement Trustees shall be authorized to liquidate the assets of the Debtors and their Estates for the benefit of the Litigation Settlement Trust Beneficiaries.

    e.    Security. As security against the post confirmation funding obligations in this Agreement, the Proposed Plan and Confirmation Order shall provide that the Litigation Settlement Trustees shall hold a first in priority perfected lien and security interest in and to certain of the assets of each Third-Party Funding Contributor as may be provided in the Confirmed Plan. The Parties acknowledge that the assets may be subject to existing liens and agreement from 3rd parties may be required to grant the required

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

liens.  The Litigation Settlement Trustees will have discretion to determine the scope and priority of the liens to be granted to the Litigation Settlement Trust and may terminate this Agreement pursuant to Section 7 below if the required liens cannot be granted.

(iii) 3.3    Confidential Information.  Subject to execution of confidentiality agreements in a form acceptable to the Third-Party Funding Contributors, ~~upon request from the Litigation Settlement Trustees, the Third-Party Funding Contributors shall deliver the current financial information, operating information, assets or account information ("Information") as reasonably needed to determine that each~~the Third-Party Funding Contributor ~~is maintaining operations and business sufficient to not only maintain the minimum balance in the Litigation Settlement Trust, but also to pay Allowed Litigation Settlement Trust Claims in full, in accordance with the Plan~~[s] shall:

a.    Deliver or cause to be delivered to the Litigation Settlement Trustees  and the Debtors' Chief Restructuring Officer any and all documents and communications in whatever form (or copies thereof) requested by the Litigation Settlement Trustees for the purpose of enabling the Litigation Settlement Trustees, in their sole discretion, to fulfill their obligations under this Agreement or the Proposed Plan (the "Information"), held by the Third-Party Contributors and/or any company related to, affiliated, or under the control of the Third-Party Contributors, their employees, agents, advisors, attorneys, accountants, or any other professionals hired by the Third-Party Contributors and/or any company related to, affiliated, or under the control of the Third-Party Contributors;

b.    Provide reasonable access to the Litigation Settlement Trustees, the Debtors and their respective advisors to such employees of the Third-Party Contributors and/or any company related to, affiliated, or under the control of the Third-Party Contributors their agents, advisors, attorneys, accountants, or any other professionals hired by the Third-Party Contributors and/or any company related to, affiliated, or under the control of the Third-Party Contributors for the purpose of enabling the Litigation Settlement Trustees, in their sole discretion, to fulfill their obligations under this Agreement or the Proposed Plan;

c.    ~~. The Information shall be produced only under this provision, and to~~To the extent that there is any disagreement on Information production requested, the Third-Party Contributors or the Litigation Settlement Trustees or the Debtors may seek orders from any ~~Federal~~ Court having jurisdiction over the Litigation Settlement Trust. In every event the Information shall be confidential and held pursuant to the confidentiality terms of the Litigation Settlement Trust Agreement and such other confidentiality terms reasonably requested by any Third-Party Funding Contributor.

~~(iv)    In accordance with the confirmed Plan, (i) transfer $2 million to the Litigation Settlement Trust, (ii) , contribute $250,000 per quarter for 20 consecutive quarters to the Litigation Settlement Trust, and contribute additional funds to the Litigation Settlement Trust as may be requested by the Litigation Settlement Trustees and agreed to by the Third-Party Funding Contributors in writing, or pursuant to an agreed budget, from~~

*[Different first page setting changed from off in original to on in modified.].*

~~time to time in accordance with the Plan to Pay in Full Allowed Litigation Settlement Trust Claims or Allowed Claims.~~

~~**Section 5 Duration of the Agreement.**~~

3.4     Tolling of Claims.   Subject to the tolling provisions of this Section, the Third-Party Funding Contributor[s] and the Debtors agree and covenant not to sue or otherwise assert against the Third-Party Funding Contributor[s] any claims or causes of action for the avoidance and recovery of any transfers of an interest of the Debtors in property arising under the Bankruptcy Code, applicable state law, or otherwise (the "Avoidance Claims") during the term of this Agreement provided that:

a.     The ~~Agreement shall become effective on the date it is executed by all Parties, *provided*, however, that if the Agreement is not executed by the Debtors on or before 5:00 p.m. (Central Daylight Time) on April 15, 2022, or such later date as agreed by~~Third-Party Funding Contributor[s] agree that any and all statutes of limitation or repose, including but not limited to the time limitations set forth in section 546 of the Bankruptcy Code, and all time-related legal doctrines, whether equitable or legal, including but not limited to the doctrines of estoppel or laches, that may apply or relate to any action, complaint, claim, counterclaim or third-party complaint that may hereafter be commenced by the Debtors or the Debtors ~~and~~' bankruptcy estates against the Third-Party Funding ~~Contributors (the "Expiration Date"), this Agreement shall no longer be available for acceptance by the Debtors.  The Agreement will remain in effect and be irrevocable by the Parties during the Support Period.  Upon implementation under the Plan, the Agreement shall remain in effect for not less than 5 years from the Plan Effective Date.~~Contributor[s] or any company related to, affiliated, or under the control of the Third-Party Contributors with respect to the Avoidance Claims shall be tolled and suspended until the date that is the third anniversary of the date that this Agreement terminates (the "Tolling Period").  The Third-Party Funding Contributor[s] agree not to assert as an objection or defense to the Avoidance Claims, or otherwise, that it has been prejudiced in any manner by the passage of the time during the Tolling Period.  Upon termination of the Tolling Period, the Litigation Settlement Trustees shall have the right to assert Avoidance Claims.

b.     Except as expressly provided in this Agreement, nothing in this Section is or shall be deemed to constitute a waiver of any rights, claims or defenses of any party to this Agreement and the Parties expressly reserve all rights, claims, and defenses they may have against one another in connection with or related to the Avoidance Claims.

**Section 4        Duration of the Agreement.**

Section 4.1     The Amendment shall become effective upon entry of the Trustee Order and, subject to the provisions of Section 7 herein, this Agreement shall remain in effect for a period of not less than 120 days, and not more than 180 days following the Petition Date, provided, however, that, upon the occurrence of the Effective Date, the term of this Agreement shall be extended for a period of not less than five (5) years from the Effective Date or as may otherwise be provided in the Confirmed Plan.  This Agreement may be extended by the written agreement

*[Different first page setting changed from off in original to on in modified.].*

of all parties to this Agreement: (i) the Litigation Settlement Trustees, (ii) the Debtors or their Estates, and (iii) the Third-Party Funding Contributors.

## Section 5 ~~Section 6~~ Representations and Warranties.

~~(a)~~Section 5.1 Third-Party Funding Contributor[s].  The Third-Party Funding Contributors jointly and severally represent and warrant that the following statements are true, correct, and complete as of the date hereof:

a.  ~~(viii)~~ Organization and Good Standing.  FSS is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas.

b.  ~~(ix)~~  ~~Authorization of Agreement~~Authority to Contract.  Each of the Third-Party Funding Contributors has the requisite power and authority to execute this Agreement and to consummate the transactions contemplated hereby.  The execution and delivery of this Agreement by the Third-Party Funding Contributors and the consummation ~~by the Plan of the transaction~~of the transactions contemplated hereby has been duly authorized by FSS' managers and no other corporate proceedings on the part of the Third-Party Funding Contributors are necessary to authorize this Agreement or to consummate the transaction contemplated hereby.  This Agreement has been duly executed and delivered by the Third-Party Funding Contributors and, assuming due execution and delivery by the Debtors of this Agreement, this Agreement constitutes a valid and binding obligation of the Third-Party Funding Contributors, enforceable against the Third-Party Funding Contributors in accordance with its terms.  ~~The Third-Party Funding Contributors are prepared to consummate this Agreement immediately upon its acceptance by the Debtors.~~

c.  ~~(x)~~ Due Diligence.  The Third-Party Funding Contributors have completed their due diligence, and this Agreement is not subject to a due diligence condition, *provided* that the Debtors shall continue to provide information regarding the ~~Bankruptcy~~Chapter 11 Cases and the process surrounding confirmation of the Proposed Plan(s).

d.  ~~(xi)~~ No Securities; No Third-Party Financing.  No securities are being issued and the obligation of the Third-Party Funding Contributors to perform under this Agreement is not conditioned on obtaining third-party financing.

e.  ~~(xii)~~ Financial Capability.  The Third-Party Funding Contributors have and will have upon ~~Plan~~ Effective Date, sufficient cash and/or cash flow available to consummate the transactions contemplated by this Agreement and the Proposed Plan.

f.  ~~(xiii)~~ No Violation; Consents.  The execution and delivery by the Third-Party Funding Contributors of this Agreement and the consummation of the transactions contemplated hereby do not and will not (1) violate any provision of the organizational documents of FSS, (2) violate any ~~Order~~order of any governmental authority to which the Third-Party Funding Contributors are bound or subject, (3) violate

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

any applicable law, or (4) violate any legal agreements to which a Third-Party Funding Contributor is a party.

> g. (xiv) No Third-Party Approvals Required. No regulatory or other third-party approvals, consents or filings are required to be obtained or made by the Third-Party Funding Contributors in order to consummate this Agreement, except for any such requirements, the failure of which to be obtained or made would not reasonably be expected to prevent, impede or materially delay or otherwise affect in any material respect the transactions contemplated by this Agreement.

> h. (xv) Bankruptcy. There are no bankruptcy, reorganization or arrangement proceedings pending against, being contemplated by or, to the knowledge of the Third-Party Funding Contributors, threatened against the Third-Party Funding Contributors.

> i. (xvi) Representation by Counsel. The Third-Party Funding Contributors acknowledge that they have been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement.

> j. Negotiated in Good Faith and Arm's Length Transaction. The Third-Party Funding Contributors acknowledge that they have negotiated in good faith and this Agreement represents an arm's length transaction.

(b) Section 5.2 The Debtors. The Debtors represent and warrant that the following statements are true, correct, and complete as of the date it executes this Agreement hereof:

> a. (ii) Organization and Good Standing. The Debtors are limited liability companies duly formed, validly existing and in good standing under the laws of the State of Texas.

> b. (iii) Authorization of Agreement. The Authority to Contract. Subject to entry of the Trustee Order, the Debtors have the requisite limited liability company power and authority to execute this Agreement and, subject to Bankruptcy Court approval, to consummate the transactions contemplated hereby. The herein. Subject to entry of the Trustee Order, the execution and delivery of this Agreement by the Debtors and the consummation by the Debtors of the transaction contemplated hereby have been duly authorized by the managers of the Debtors Litigation Settlement Trustees and no other limited liability company proceedings on the part of the Debtors are necessary to authorize this Agreement or to consummate the transaction transactions contemplated hereby herein. This Agreement has been duly executed and delivered by the Debtors and, assuming due execution and delivery by the Third-Party Funding Contributors, this Agreement constitutes and subject to entry of the Trustee Order, shall constitute a valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms.

> c. (iv) No Violation; Consents. The execution and delivery by the Debtors of this Agreement and the consummation of the transactions contemplated hereby do not and will not (1) violate any provision of the organizational documents of the Debtors,

*[Different first page setting changed from off in original to on in modified.].*

4858-9477-4556, v. 18

*[Different first page setting changed from off in original to on in modified.].*

(2) violate any Order of any governmental authority to which the Debtors are bound or subject, or (3) violate any applicable law.

     **d.** ~~(v)~~ No Third-Party Approvals Required. Other than approval of the Bankruptcy Court, no order or permit issued by, or declaration or filing with, or notification to, or waiver from any governmental authority is required on the part of the Debtors in connection with the execution and delivery of this Agreement, or the compliance or performance by the Debtors with any provision contained in this Agreement, except for any such requirements, the failure of which to be obtained or made would not reasonably be expected to prevent, impede or materially delay or otherwise affect in any material respect the transactions contemplated by this Agreement.

     **e.** ~~(vi)~~ Representation by Counsel. The Debtors acknowledge that they have been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement.

     **f.** Negotiated in Good Faith and Arm's Length Transaction. The Debtors acknowledge that they have negotiated in good faith and this Agreement represents an arm's length transaction.

     ~~(vii) Binding on Debtors in Possession and Reorganized Debtors. This Agreement shall become binding on the Debtors in Possession and the Reorganized Debtors upon the Bankruptcy Court approving the Agreement on a standalone basis or as the terms of the Agreement may be contained and incorporated into a Plan and a confirmation order approving this Agreement.~~

     ~~(viii) The obligations and rights of the Third-Party Funding Contributors shall be as set out in the Litigation Settlement Trust and this Agreement and in the event of a conflict among such terms of either agreements, the Litigation Settlement Trust shall control.~~

**Section 6** ~~Section 7~~ **Covenants.**

**Section 6.1** Covenants of the Third-Party Funding Contributor[s]. The Third-Party Funding Contributor[s] covenant and agree that subsequent to the date of this Amendment and prior to termination of this Agreement pursuant to Section 7 hereof:

     **a.** Financial Condition. The Litigation Settlement Trustees and the Third-Party Funding Contributors shall determine from time to time an appropriate budget for FSS to be operated properly during the term of this Agreement and an appropriate compensation for AEJ, excluding exempt assets and wages for his personal services, consistent with the anticipated needs of individual contributions during the term of this Agreement and consistent with his usual and ordinary needs. The Third-Party Contributor[s] shall not initiate or make any transfers in excess of 5% of the approved budgets unless specifically authorized by the Litigation Settlement Trustees.

     **b.** No Material Transfers. The Third-Party Funding Contributors covenant and agree that they shall not divert, secret, hide or hinder assets subject to this

*[Different first page setting changed from off in original to on in modified.].*

Agreement, Proposed Plan, or Definitive Document, including but not limited to initiation or making any transfer outside of the ordinary course of business, as determined by the Litigation Settlement Trustees. Any litigation relating to allegations of any breach of this provision shall be brought exclusively in the Bankruptcy Court and shall entitle the Litigation Settlement Trustees to injunctive relief, costs and attorneys' fees.

c.     Timely Payment of Royalties and Fees.  During the term of this Agreement the Third-Party Funding Contributor[s] covenant and agree not to divert or cause to be diverted (i) any royalty owed to the Debtors arising from the sales of products sold by any Third-Party Contributor; or (ii) any licensing fees generated by the Third-Party Contributor[s]' use of any intellectual property, copyrights, and trademarks owned by the Debtors, and shall cause such amounts to be paid to the Debtors or to the Litigation Settlement Trust, as may be provided in a Proposed Plan.

(a)     ~~Access to Information~~Section 6.2     Covenants of the Debtors.  The Debtors covenant and agree that prior to the ~~Plan~~Effective Date and prior to termination of this Agreement pursuant to Section 8~~7~~ hereof, the Debtors will~~permit~~ :

a.     Access to Information.  Permit the Third-Party Funding Contributors and their representatives to have reasonable access, during normal business hours and upon reasonable advance notice, to the books and records and senior management personnel of the Debtors pertaining to the Agreement.  The Parties shall cooperate to resolve issues where such disclosure would result in violation of applicable law or would jeopardize any privilege available to the Debtors or any of their affiliates relating to such information or would cause the Debtors or any of their affiliates to breach a confidentiality obligation to which they are bound.  In connection with such access, the Third-Party Funding Contributors' representatives shall cooperate with Debtors' representatives and shall use their best efforts to minimize any disruption of business. The Third-Party Funding Contributors shall indemnify, defend and hold harmless the Debtors, the Debtors' officers, directors, employees and agents, including the Chief Restructuring Officer, from and against all liabilities asserted against or suffered by them relating to, resulting from, or arising out of, examinations or inspections made by Third-Party Funding Contributors or its representatives pursuant to this Section 6.2~~7~~(a).

b.     ~~(b)~~     Notice; Settlements.  ~~The Debtors covenant and agree that prior to the Plan Effective Date and prior to termination of this Agreement, pursuant to Section 8 hereof, the Debtors shall (i) keep~~Keep the Third-Party Funding ~~Contributors~~Contributor[s] apprised of any settlement discussions, negotiations or meetings related to the Proposed Plan and the Litigation Settlement Trust Claims, ~~and (ii) will~~provided, however, that the Litigation Settlement Trustees shall be entitled to enter into a settlement of any Litigation Settlement Trust Claim against the Debtor(s) without the prior consent of the Third-Party Funding Contributors, ~~but shall not be entitle to bind such Third Party Funding Contributors except to the extent of their respective consent and agreement; provided, further, the absence of any such consent shall not impair or effect the Trustees' binding settlement(s) reached nor shall it prohibit the respective Third-Party Funding Contributors from later consenting and causing the "Payment in~~

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

Full" event to entitle the Third-Party Funding Contributor to their respective "Resulting Releases.".

c. (e) Conduct of Business Pending the Consummation of Plan. The Debtors agree that prior to the Plan Effective Date and termination of this Agreement pursuant to Section 8 hereof, unlessUnless otherwise expressly permitted by this Agreement, the Debtors shall conduct their business in the ordinary course.

6.3 (d) Cooperation; Consents and FilingsMutual Covenants.

a. (i)Consents and Filings. From and after the date hereof and until prior to the Plan Effective Date and termination of this Agreement pursuant to Section 87 hereof, unless otherwise expressly permitted by this Agreement, the Parties shall cooperate with each other and use (and will cause their respective representatives to use) commercially reasonable efforts (1) to take, or to cause to be taken, all actions, and to do, or to cause to be done, all things reasonably necessary, proper or advisable on their part under this Agreement, applicable law or otherwise to consummate and make effective the transactions contemplated by this Agreement as promptly as practicable; (2) to obtain promptly from any person or governmental authority any consent, order or permit required to be obtained by the Parties or any of their respective affiliates in connection with the authorization, execution, delivery and performance of this Agreement, and the consummation of the transactions contemplated hereby and thereby; (3) to promptly make all necessary filings and thereafter make any other required submissions with respect to this Agreement and prompt consummation of the transactions contemplated hereby and thereby required under any applicable law, including, without limitation, the Disclosure Statement (if required), the Plan, all documents, instruments and pleadings necessary for the approval of the Disclosure Statement (if required) and confirmation of the Plan; and (4) to provide prompt notification to the other Party hereto of any actions pursuant to clauses (1) – (3) of this Section 76.3(da).

b. Cooperation. In addition, no Party shall take any action after the date hereof (other than any action required to be taken under this Agreement or to which the other Parties shall have granted their consent) that could reasonably be expected to materially delay the obtaining of, or result in not obtaining, any consent, order, permit, qualification, exemption or waiver from any governmental authority or other person required to be obtained prior to the effective date of the Plan; including, without limitation, the Disclosure Statement (if required), the Plan, all documents, instruments and pleadings necessary for the approval of the Disclosure Statement (if required) and confirmation of the Plan.

c. (ii) Joint Prosecution. If permitted by applicable law and subject to any limitations on access to information provided for in Section 4(a)3.3, each party shall consult with the other parties with respect to, and provide any information reasonably requested by the other party in connection with, all material filings made with the Bankruptcy Court or any governmental authority in connection with this Agreement and the transactions contemplated hereby. If any party or any of its affiliates receives a request for information or documentary material from any governmental authority with

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

respect to this Agreement or any of the transactions contemplated hereby, then such party shall endeavor in good faith to make, or cause to be made, as soon as reasonably practicable and, to the extent permitted by applicable law, after consultation with the other parties, an appropriate response in compliance with such request.

d.     (g)     Bankruptcy Matters.     The Parties shall use commercially reasonable efforts to cooperate, negotiate, assist and consult with each other to secure the entry of an order confirming the Proposed Plan following the date hereof, and to consummate the transactions contemplated by this Agreement, including, without limitation, the Plan, all documents, instruments and pleadings necessary for the approval of a disclosure statement (if necessary) regarding the Plan and confirmation of the Plan. In the event that any order of the Court relating to this Agreement shall be appealed by any person (or a petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to any such order), the Parties will cooperate in taking such steps to diligently defend against such appeal, petition or motion and the Parties shall use their commercially reasonable efforts to obtain an expedited resolution of any such appeal, petition or motion. The Parties shall not, without the prior written consent of the other parties, file, join in, or otherwise support in any manner whatsoever any motion or other pleading relating to a sale or plan of reorganization, other than the Proposed Plan, unless the Debtors through the Litigation Settlement Trustees determine in their business judgment their fiduciary obligations require them to do so.

**Section 7** ~~Section 8~~**Termination.** This Agreement shall terminate upon the election of any party with the right to declare a termination set out below, and the obligations of the Parties shall thereupon terminate and be of no further force and effect, upon the occurrence of the earlier of the following events (each, a "Termination Event"):

(i)     Upon mutual written consent of the Debtors, on the one hand, and the Third-Party Funding Contributors, on the other hand;.

(ii)     The ~~Bankruptcy~~Chapter 11 Cases are (a) dismissed, or (b) converted to a case under chapter 7 of the Bankruptcy Code~~, or (c) converted into a case under Chapter 11 of Title 11 of the Bankruptcy Code other than under Subchapter V thereof;~~

(iii) ~~; the~~ ~~The~~ Bankruptcy Court enters an order appointing a trustee or examiner under chapter 11 of the Bankruptcy Code;.

(iii)     ~~(iv)~~ The Bankruptcy Court enters an order granting relief from the automatic stay imposed by §362 of the Bankruptcy Code to allow the continued litigation of a Litigation Settlement Trust Claim without the consent of the Third-Party Funding ~~Contributors;~~Contributor[s] in any court other than as provided in 28 U.S.C. 157(b)(5) (to the extent applicable).

(iv)     ~~(v)~~ The Debtor or the Third-Party Funding Contributors shall (a) fail to comply with any of its obligations under this Agreement (it being understood that only the non-breaching party may invoke the Termination Event)~~, or;~~ (b) has breached any

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

representation, warranty, covenant or agreement contained in this Agreement; or (c) notwithstanding ¶ 7(iv)(a) above, a settlement is proposed or agreed to, or a claim allowed by the Bankruptcy Court or by any other Court properly authorized to liquidate a claim or claims that is in an amount the Third-Party Funding Contributors determine, in their sole discretion, to be impractical or impossible to timely pay in full as contemplated by the Plan.

(vi) the Debtors shall withdraw (or move to withdraw) the Plan;

(vii) The Third-Party Funding Contributors have terminated participation under the Agreement, including ¶ 4(b).

(viii) The Bankruptcy Court enters an order denying confirmation of the Plan;

(ix) The Bankruptcy Court does not enter an order approving the appointment of the Litigation Settlement Trustees on or before April 30, 2022;

(ix) The Plan has not been filed with the Court on or before April 30, 2022;

(x) The Plan has not been confirmed by the Court on or before the expiration of the Support Period;

(xi) The order confirming the Plan fails to become a Final Order on or before 90 days after the expiration of the Support Period; *provided*, that the requirement for finality shall be waived as to any appeal as to which the appellant fails to obtain a stay pending appeal of the confirmation order; or

(v) (xii) Any court of competent jurisdiction or other competent governmental or regulatory authority shall have issued an order making illegal or otherwise restricting, preventing, or prohibiting the Plan in a way that cannot be reasonably remedied or otherwise grants relief to any party that is materially inconsistent with the Plan or this Agreement.

(vi) (xiii) The relevant court remands the Litigation Claims and lifts the automatic stay to allow the State Court to proceed to Judgment without the consent of the Third-Party Funding Contributor[s].

(vii) Upon termination, the Third-Party Funding Contributor[s] shall have no rights in any funds remaining in the Litigation Settlement Trust or otherwise deposited to pay claims and the Third-Party Funding Contributor[s] shall have no further liability under the Litigation Settlement Trust or under this Agreement.

**Section 8** ~~Section 9~~ **Amendments.** This Agreement may not be modified, amended, or supplemented, except in a writing signed by all Parties.

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

**Section 9** ~~Section 10~~ **Governing Law; Jurisdiction.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas or the United States, without regard to the applicable principles of conflict of laws.

**Section 10** ~~Section 11~~ **Notices.** All demands, notices, requests, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered by courier service, messenger, telecopy, facsimile, or if duly deposited in the mails, by certified or registered mail, postage prepaid-return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, as follows:

*If to the Debtor, to:*

Marc Schwartz
Chief Restructuring Officer
of the Debtors
Schwartz ~~&~~ Associates LLC
712 Main Street, Ste 1830
Houston, Texas 77002


With a copy to:

Kyung S. Lee
Parkins Lee & Rubio LLP
Pennzoil Place-13th Floor
700 Milam
Houston, Texas 77002
klee@parkinslee.com

*If to the Third-Party Funding Contributors:*

Free Speech Systems, LLC
~~To:~~
To: Law Offices of Ray Battaglia, PLLC
Attn: Ray Battaglia
66 Granburg Circle
San Antonio, Texas 78218
rbattaglialaw@outlook.com

Alex Jones
To: Shelby A. Jordan
~~Shelby A. Jordan~~
Jordan & Ortiz, P.C.
500 N. Shoreline Dr., Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

~~**Section 12 Reservation of Rights.** This Agreement is part of a proposed settlement of all disputes among the Parties. Except as expressly provided in this Agreement or the Plan, nothing therein is intended to, or does, in any manner waive, limit, impair, or restrict the ability of the Parties to protect and preserve their respective rights, remedies, and interests, including, without limitation, any claims against any other Party. If the transactions contemplated herein or in the Plan are not consummated, or if this Agreement is terminated for any reason, the Parties fully reserve any and all of their respective rights and remedies. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this Agreement and all negotiations relating hereto, shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms.~~

**Section 11     Litigation Settlement Trustees' Fiduciary Obligations.** Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement, the Proposed Plan, or anything included in any Definitive Document shall require the Litigation Settlement Trustee(s), after consulting with counsel, to take any action or to refrain from taking any action with respect to this Agreement, the Plan, or Definitive Document to the extent taking or failing to take such action would be inconsistent with applicable law or each of the Litigation Settlement Trustee's fiduciary obligations under applicable law, and any such action or inaction pursuant to such exercise of fiduciary duties shall not be deemed to constitute a breach of this Agreement, the Plan, or any Definitive Document; provided that the Litigation Settlement Trustees shall give prompt written notice to counsel to the Third-Party Funding Contributor(s) (electronic mail among counsel being sufficient) of any such determination by the Litigation Settlement Trustees, in their sole discretion, that any such action or refrainment from taking such action with respect to this Agreement, the Plan, or and Definitive Document would be inconsistent with applicable law or each of the Litigation Settlement Trustee's fiduciary obligations under applicable law. For the avoidance of doubt, notwithstanding anything to the contrary in this Section 11, the Debtors' failure to comply with the terms of this Agreement may constitute a Termination Event under Section 7, above.

**Section 12** ~~**Section 13**~~ **Entire Agreement.** This Agreement, ~~together with the Reorganization Plan, constitute~~ constitutes the entire understanding and agreement among the Parties with regard to the subject matter hereof, and supersedes all prior agreements with respect thereto.

**Section 13** ~~**Section 14**~~ **Headings.** The headings of the paragraphs and subparagraphs of this Agreement are inserted for convenience only and shall not affect the interpretation hereof.

**Section 14** ~~**Section 15**~~ **Successors and Assigns.** This Agreement is intended to bind and inure to the benefit of the Parties and their respective permitted successors and assigns.

**Section 15** ~~**Section 16**~~ **Specific Performance.** Each Party hereto recognizes and acknowledges that a breach by it of any covenant or agreement contained in this Agreement may cause the other Parties to sustain damages for which such Parties would not have an

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

adequate remedy at law, and therefore each Party hereto agrees that in the event of any such breach the other Parties shall be entitled to seek the remedy of specific performance of such covenant and agreement and injunctive and other equitable relief in addition to any other remedy to which such Parties may be entitled, at law or in equity.

**Section 16** ~~Section 17~~ **Remedies Cumulative.** All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power or remedy by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

**Section 17** ~~Section 18~~ **No Waiver.** The failure of any Party to exercise any right, power, or remedy provided under this Agreement or otherwise available to it at law or in equity, or to insist upon compliance by any other Party with its obligations hereunder, and any custom or practice of the Parties at variance with the terms hereof, shall not constitute a waiver by such Party of its right to exercise any such or other right, power, or remedy or to demand such compliance.

**Section 18** ~~Section 19~~ **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same Agreement. Delivery of an executed signature page of this Agreement by telecopier or facsimile shall be as effective as delivery of a manually executed signature page of this Agreement.

**Section 19** ~~Section 20~~ **Severability.** Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction. The provisions of this Agreement shall be interpreted in a reasonable manner to effect the intent of the Parties hereto.

**Section 20** ~~Section 21~~ **No Third-Party Beneficiaries.** Unless expressly stated herein ~~as to direct or indirect beneficiaries of the Litigation Settlement Trustor the Confirmed Plan~~, this Agreement shall be solely for the benefit of the Parties, and no other person or entity shall be a third-party beneficiary hereof.

**Section 21** ~~Section 22~~ **Jurisdiction and Venue:** Notwithstanding any provision herein to the contrary no action or proceeding by any Party or any third-party may be brought to determine, enforce, prohibit, enjoin, or otherwise determine any rights or obligations of any Party to this Agreement except in the United States Bankruptcy Court or the United States District Court, as the case may be, for the Division and District in which the ~~Bankruptcy~~Chapter 11 Cases ~~have been filed~~are pending.

THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK

*[Different first page setting changed from off in original to on in modified.].*

 

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Declaration or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Effective Date:  April —28, 2022.

***INITIAL* LITIGATION SETTLEMENT TRUSTEE**

By:     _____
Name:   Robert Dew
Title:  Initial Trustee, and as sole officer and
        Director of each Debtor entity
        InfoW, LLC, InfoHealth, LLC,
        Prison Planet TV, LLC

**INFOW, LLC**

By:     _____
Name:   W. Marc Schwartz
Title:  Chief Restructuring Officer

**IWHEALTH, LLC**

By:     _____
Name:   W. Marc Schwartz
Title:  Chief Restructuring Officer

**PRISON PLANET TV, LLC**

By:     _____
Name:   W. Marc Schwartz
Title:  Chief Restructuring Officer

**THIRD-PARTY FUNDING CONTRIBUTOR ALEX JONES**

By:     _____
Name:

**THIRD-PARTY FUNDING CONTRIBUTOR FREE SPEECH SYSTEMS, LLC**

By:     _____
Name:

*[Different first page setting changed from off in original to on in modified.].*

003681

*[Different first page setting changed from off in original to on in modified.].*

Title:

**SIGNATURES LEFT BLANK PENDNG**
**APPOINTMENT BY BANKRUPTCY**
**COURT ORDER**

_____
Name:
Title: Litigation Settlement ~~Trust~~ Trustee and
Debtors' ~~Independent Board Members~~ Managing Member

_____
Name:
Title: Litigation Settlement ~~Trust~~ Trustee and
Debtors' ~~Independent Board Members~~ Managing Member

| Summary report: Litera Compare for Word 11.0.0.61 Document comparison done on 4/29/2022 8:57:09 AM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 2.0 - 4.14.2022 Plan Support Agreement.docx | |
| **Modified filename:** 2.1 - 4.28.2022 Amended and Restated Plan Support Agreement.docx | |
| **Changes:** | |
| Add | 250 |
| Delete | 197 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 447 |

003683

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | |
|---|---|
| In re: | Case No. 22-60020 |
| INFOW, LLC, *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

**AGENDA OF MATTERS THAT MAY BE DISCUSSED AT**
**THE APRIL 29, 2022 STATUS CONFERENCE**

The above-referenced debtors and debtors in possession (collectively, the "Debtors") file

this Agenda of Matters That May Be Discussed at the Status Conference on **April 29, 2022, at**

**3:00 P.M. (prevailing Central Time)** (the "Status Conference") before the Honorable Christopher

M. Lopez, United States Bankruptcy Judge, 515 Rusk, 4th Floor, Courtroom 401, Houston, Texas

77002.

**I.      CURRENT STATUS OF PENDING MOTIONS**

     a.     Debtors' Emergency Motion for Order Authorizing Appointment of Russell F. Nelms and Richard S. Schmidt as Trustees of the 2022 Litigation Settlement Trust and Granting Related Relief [**ECF No. 6**] – filed April 18, 2022

          i.     Objection of the United States Trustee to Debtors' Emergency Motion for Order Authorizing Appointment of Russell F. Nelms and Richard S. Schmidt as Trustees of the 2022 Litigation Settlement Trust and Granting Related Relief [**ECF No. 18**]

          **ii.     STATUS: Hearing Date Needed**

     b.     Debtors' Emergency Application for Interim and Final Orders (A) Authorizing Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing Employment of Staff of Schwartz Associates, LLC in Discharge of Duties as Chief Restructuring Officer, and (C) Granting Related Relief [**ECF No. 7**] – filed April 18, 2022

          **i.     STATUS: Hearing Date Needed**

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC, f/k/a Infowars, LLC (6916), IWHealth, LLC f/k/a Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005). The address for service to the Debtors is PO Box 1819, Houston, TX 77251-1819.

c. Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Filing Proofs of Claims, (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claims, (IV) Approving Notice of Bar Dates, and (V) Granting Related Relief [**ECF No. 35**]

    i.     **STATUS: Hearing Date Needed**

d. Connecticut Plaintiffs' Emergency Motion to Dismiss Chapter 11 Cases and Objection to Debtors' Designation as Subchapter V Small Vendors [**ECF No. 36**] – filed April 26, 2022

    i.   Debtor's Preliminary Objection to Connecticut Plaintiff's Emergency Motion to Dismiss Chapter 11 Cases and Objection to Debtors' Designation as Subchapter V Small Vendors [**ECF No. 40**] – filed April 27, 2022

    ii.     **STATUS: Hearing Date Needed**

e. The Texas Litigation Plaintiffs' Supplemental Motion to Dismiss Petition [**ECF No. 42**] – filed April 27, 2022

    i.   **STATUS: Hearing Date Needed**

## II.   REMOVAL, REMAND, TRANSFER VENUE AND WITHDRAWAL OF REFERENCE

a. Texas Plaintiffs

    i.   <u>Removed Suit</u>: Neil Heslin and Scarlett Lewis v. Alex Jones, Infowars, LLC, Free Speech Systems, LLC and Owen Shroyer, Adv. Proc. No. 22-01023-hcm pending in the United States Bankruptcy Court for the Western District of Texas, Austin Division – Commenced on April 18, 2022

        1. Plaintiffs' Motion for Abstention and Remand [**ECF No. 7**] filed April 26, 2022

            a. InfoW, LLC's Response to Plaintiffs' Motion for Abstention and Remand [**ECF No. 9**] – filed April 28, 2022

        2. Defendant InfoW, LLC's Motion to Transfer Venue [**ECF No. 10**] – filed April 28, 2022

    ii.   <u>Removed Suit</u>: Leonard Pozner and Veronique De La Rosa v. Alex Jones, Infowars, LLC, and Free Speech Systems, LLC, Adv. Proc. No. 22-01021-hcm pending in the United States Bankruptcy Court for the Western District of Texas, Austin Division – Commenced on April 18, 2022

        1. Defendant InfoW, LLC's Motion to Transfer Venue [**ECF No. 2**] – filed April 28, 2022

    iii.   <u>Removed Suit</u>: Michael Fontaine v. Alex Jones, Infowars, LLC, Free Speech Systems, LLC and Kit Daniels, Adv. Proc. No. 22-01022-hcm

2

pending in the United States Bankruptcy Court for the Western District of Texas, Austin Division – Commenced on April 18, 2022

    1.   Defendant InfoW, LLC's Motion to Transfer Venue [**ECF No. 7**] – filed April 28, 2022

  b.  Connecticut Plaintiffs

    i.  <u>Removed Suit</u>: Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, InfoWars, LLC; Free Speech Systems, LLC; InfoWars Health, LLC; Prison Planet TV, LLC; Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc., Adv. Pro. No. 22-05004 pending in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division – Commenced on April 18, 2022

      1.   Motion for Remand [**ECF No. 5**] – filed April 21, 2022

    ii.  <u>Removed Suit</u>: William Sherlach v. Alex Emric Jones, InfoW, LLC; IW Health, LLC; Prison Planet TV, LLC; and Genesis Communications Network, Inc., Adv. Pro. No. 22-05005 pending in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division – Commenced on April 18, 2022

      1.   Motion for Remand [**ECF No. 5**] – filed April 21, 2022

    iii.  <u>Removed Suit</u>: William Sherlach and Robert Parker v. Alex Emric Jones, InfoWars, LLC; Free Speech Systems, LLC; InfoWars Health, LLC; Prison Planet TV, LLC; Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc., Adv. Pro. No. 22-05006 pending in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division – Commenced on April 18, 2022

      1.   Motion for Remand [**ECF No. 5**] – filed April 21, 2022

**III.**    <u>**RECENT KEY AGREEMENTS FILED**</u>

  a.  Amended and Restated Declaration of Trust [**ECF No. 48-1**]

  b.  Amended and Restated Plan Support Agreement [**ECF No. 48-3**]

**IV.**    <u>**MOTIONS TO BE FILED NEXT WEEK BY DEBTORS**</u>

  a.  Motion for (A) Order Authorizing the Estimation of Litigation Claims, for Distribution Purposes, Establishing Claim Estimation Procedures, and Granting Related Relief, and (B) Order Estimating Litigation Claims Pursuant to 11 U.S.C. Section 502(c)

  b.  Debtors' Motion for Entry of an Order Compelling Mediation of Plan and Confirmation Related Disputes

3

      i.   Request mediation in month of June 2022

     ii.   Request confirmation hearing in late July and early August 2022

Dated: April 29, 2022.                 Respectfully submitted,

                                            */s/Kyung S. Lee*
                                            PARKINS LEE & RUBIO LLP
                                          Kyung S. Lee PLLC
                                          TX Bar No. 12128400
                                          R.J. Shannon
                                          TX Bar No. 24108062
                                          Pennzoil Place
                                          700 Milam Street, Suite 1300
                                          Houston, Texas 77002
                                          Email: klee@parkinslee.com
                                                      rshannon@parkinslee.com
                                          Phone: 713-715-1660

                                          *Proposed Counsel to the Debtors*

4

003687

## CERTIFICATE OF SERVICE

I hereby certify, a true and correct copy of the foregoing document was served (a) by the Court's CM/ECF system on all parties registered to receive such service and (b) on the following parties by email:

Kaster Lynch Farrar & Ball, LLP
Attn: Mark Bankson, William Ogden
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Koskoff & Bieder
Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Fertitta & Reynal LLP
Attn: F. Andino Reynal
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Pattis & Smith, LLC
Attn: Cameron L. Atkinson
383 Orange Street
New Haven, CT 06511
npattis@pattisandsmith.com
catkinson@pattisandsmith.com

Zeisler & Zeisler P.C.
Attn: Eric Henzy
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Jordan & Ortiz, P.C.
Attn: Shelby Jordan
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Law Office of Ray Battaglia, PLLC
Attn: Ray Battaglia
66 Granburg Circle
San Antonio, TX
rbattaglialaw@outlook.com

McDowell Heterhington LLP
Attn: Avi Moshenberg, Nick Lawson,
Matthew Caldwell
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com
nick.lawson@mhllp.com
matthew.caldwell@mhllp.com

The Akers Law Firm PLLC
Attn: Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Copycat Legal PLLC
Attn: Daniel DeSouza
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Richard S. Schmidt
615 Leopard, #635
Corpus Christi, TX 78401
rss@judgerss.com

Russell F. Nelms
115 Kay Lane
Westworth Village, TX 76114
rfargar@yahoo.com

5

Attn: W. Marc Schwartz
Schwartz Associates
712 Main Street, Ste. 1830
Houston, TX 77002
MSchwartz@schwartzassociates.us

Matthew Okin
Okin Adams LLP
1113 Vine St., Ste. 240
Houston, TX 77002
mokin@okinadams.com

Office of the United States Trustee
Attn: Ha Minh Nguyen, Jayson Ruff
515 Rusk St
Ste 3516
Houston, TX 77002
ha.nguyen@usdoj.gov
jayson.b.ruff@usdoj.gov

Melissa Haselden
700 Milam, Suite 1300
Houston, TX 77002
mhaselden@haseldenfarrow.com

Cain & Skarnulis, PLLC
Attn: Ryan E. Chapple
303 Colorado St., Ste. 2850
Austin, TX 78701
rchapple@cstrial.com

Byman & Associates PLLC
Randy W. Williams
7924 Broadway, Suite 104
Pearland, TX 77581
rww@bymanlaw.com

J. Maxwell Beatty
The Beatty Law Firm PC
1127 Eldridge Pkwy, Ste. 300, #383
Houston, TX 77077
max@beattypc.com

Walston Bowlin Callendar, PLLC
Attn: Cliff Walston
San Felipe Street, Suite 300
Houston, TX 77027
cliff@wbctrial.com

*/s/ R. J. Shannon*
R. J. Shannon

003689

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60020 |
| | § | |
| INFOW, LLC, *et al.*, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtors¹ | § | Jointly Administered |

## EXPEDITED REQUEST FOR STATUS CONFERENCE

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**

**Relief is requested on or before May 11, 2022.**

David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker

---

¹ The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC f/k/a Infowars, LLC (6916), IWHealth, LLC f/k/a Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005). The address for service to the Debtors is PO Box 1819, Houston, TX 77251-1819.

003690

(collectively, Movants or Connecticut Plaintiffs) file this Expedited Request for Status Conference and provide the Court with the following information and update:

## REQUEST FOR EMERGENCY CONSIDERATION

The Connecticut Plaintiffs dismissed their claims against the Debtors, are no longer creditors of the Debtors, and no longer wish to participate in these bankruptcy cases. But the Debtors, against their own interest, objected to being dismissed and want to continue to prosecute the bankruptcy cases for the benefit of Alex Jones and Free Speech. Such conduct is clear evidence that these cases are not about these Debtors and their interests and are nothing more than a ruse to protect parties who have not sought relief under title 11, specifically Alex Jones and Free Speech. The Connecticut Plaintiffs request an expedited status conference to bring these issues before the Court.

Because the Connecticut Plaintiffs are no longer creditors of the Debtors, the Connecticut Plaintiffs intended to file a notice of their withdrawal of their Motion to Dismiss and cease their participation in these cases. The withdrawal of their Motion to Dismiss would sharply narrow the dispute(s) before the Court in these cases. However, while working on the withdrawals, counsel was served with the Debtors' Objections to Dismissal, attached hereto. With the Connecticut Plaintiffs' claims against the Debtors having been dismissed, there should be no further reason to jeopardize the Connecticut Plaintiffs' August 2022 trial date and force them to incur additional expenses litigating in a forum where they are not creditors. The Connecticut Plaintiffs respectfully request a status conference at the Court's earliest convenience.

003691

**RELEVANT BACKGROUND**

1.      The Connecticut Plaintiffs filed multiple lawsuits against the Debtors and others in the Judicial District of Fairfield at Bridgeport, Connecticut in 2018.   On March 8, 2019, this litigation was ordered to the Complex Litigation Docket of Waterbury under Case Nos. UWY-CV18-6046436S, UWY-CV18-6046437S, and UWY-CV18-6046438S, respectively, and was consolidated (globally, the Connecticut Litigation).

2.      On April 17, 2022, Debtor InfoW, LLC (fka InfoWars, LLC) filed a voluntary petition for relief under chapter 11, subchapter V, of the Bankruptcy Code.   On April 18, 2022, IWHealth, LLC and Prison Planet TV, LLC filed their petitions for relief under the Bankruptcy Code.  The Debtors' chapter 11 cases are being jointly administered pursuant to the Court's Order for Joint Administration [Dkt. 8].

3.      The Connecticut Plaintiffs filed an Emergency Motion to Dismiss Chapter 11 Cases and Objection to Debtors' Designation as Subchapter V Small Vendors on April 26, 2022 [Dkt. 36] (Motion to Dismiss).  During a status conference on April 29, 2022, the Court set the Connecticut Plaintiffs' Motion to Dismiss, along with two others, for hearing on May 27, 2022 at 9:00 a.m.

4.      After careful consideration of the Debtors' filings and the comments and questions of this Court, on May 2, 2022, the Connecticut Plaintiffs filed Notices of Dismissal of Claims against Removing Defendants InfoW, LLC (fka InfoWars, LLC), Infowars Health, LLC (aka IWHealth, LLC) and Prison Planet TV, LLC in the Connecticut Litigation (the Dismissals of Connecticut Claims).  The Dismissals of Connecticut Claims were filed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) and Fed. R. Bankr. P. 7041.  True and correct copies of the Dismissals of Connecticut Claims are attached as **Exhibit A**.  Like a notice of non-suit filed under the Texas Rules of Civil

003692

Procedure, a Rule 41(a)(1)(A)(i) dismissal operates automatically when filed; no court action is required for the dismissal to be effective. *See, e.g.*, *Thorp v. Scarne*, 599 F.2d 1169, 1171 n.1 (2d Cir. 1979) ("The law is settled that the filing of a notice of dismissal under Rule 41(a)(1)(i) automatically terminates the lawsuit. No action by the court is necessary to effectuate the dismissal.").

5.      Instead of accepting and welcoming the Dismissals of Connecticut Claims as providing the relief from litigation they claimed to be seeking, on May 3, 2022, the Debtors filed Objections and Notices of Intent to File More Particular Responses to the Notices of Voluntary Dismissal filed by the Plaintiffs (the Debtor Objections to Dismissals). True and correct copies of the Debtor Objections to Dismissal are attached as **Exhibit B**.[2]

6.      As stated above, the Connecticut Plaintiffs dismissed these Debtors because participating in these bankruptcy cases will divert vast resources and frustrate their true purpose, which is to proceed to try their cases against Alex Jones and Free Speech Systems, LLC. Significant resources would need to be devoted by the Connecticut Plaintiffs to prosecute their Motion to Dismiss currently set for hearing on May 27, 2022. However, they cannot cease participation in these cases because, against their own interest, the Debtors contest the Dismissals of the Connecticut Claims. Preparation for the May 27 hearings on the Motion to Dismiss will be time consuming and costly. The Connecticut Plaintiffs respectfully request a status conference as soon as possible in the hopes of not incurring additional expenses related to hearing preparation.

---

[2] The filing of the Debtor Objections to Dismissal is against the interest of the Debtors, showing once again that this bankruptcy is being used for the ulterior purposes of third parties.

003693

7.     The Connecticut Plaintiffs believe expedited consideration is warranted given the Debtors' highly unusual response to no longer being a party to litigation in Connecticut.

**PRAYER**

For these reasons, the Connecticut Plaintiffs respectfully ask the Court to schedule a status conference in these cases at its earliest convenience.

Respectfully submitted this 6th day of May 2022.

*/s/ Ryan E. Chapple*
_____

Ryan E. Chapple
State Bar No. 24036354
Email:rchapple@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile

and

Randy W. Williams
State Bar No. 21566850
Email: rww@bymanlaw.com
**BYMAN & ASSOCIATES PLLC**
7924 Broadway, Suite 104
Pearland, Texas 77581
281-884-9262
**ATTORNEYS FOR
CONNECTICUT PLAINTIFFS**

**CERTIFICATE OF ACCURACY**

I hereby certify that the foregoing statements are true and accurate to the best of my knowledge and belief.  This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Ryan E. Chapple*
_____

Ryan E. Chapple

## CERTIFICATE OF CONFERENCE

I hereby certify, as counsel for Movants, my firm has attempted to confer with Debtors' counsel, and Debtors' counsel has not responded to the conference request.

_/s/ Ryan E. Chapple_

Ryan E. Chapple

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Request for Status Conference has been served on counsel for Debtors, Debtors, and all parties receiving or entitled to notice through CM/ECF on this 6th day of May 2022.

_/s/ Ryan E. Chapple_

Ryan E. Chapple

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60020 |
| | § | |
| INFOW, LLC, *et al.*, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtors[1] | § | Jointly Administered |

# EXHIBIT A

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC f/k/a Infowars, LLC (6916), IWHealth, LLC f/k/a Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005).  The address for service to the Debtors is PO Box 1819, Houston, TX 77251-1819.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; AND WILLIAM ALDENBERG; RICHARD M. COAN, TRUSTEE OF THE BANKRUPTCY ESTATE OF ERICA L. GARBATINI F/K/A ERICA LAFFERTY <br><br> Plaintiffs, <br><br> v. <br><br> ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., <br><br> Defendants. | Adv. Pro. No. 22-05004 (JAM) |

## NOTICE OF DISMISSAL OF CLAIMS AGAINST REMOVING DEFENDANTS INFOWARS LLC (aka INFOW, LLC), INFOWARS HEALTH, LLC (aka IWHealth, LLC) AND PRISON PLANET TV, LLC[1]

---

[1] There are three consolidated cases in the Connecticut Superior Court: *Lafferty v. Jones* (UWY- CV18-6046436-S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWY- CV18-6046438-S). These cases were abusively removed to this Court under names and docket numbers *Lafferty v. Jones* (22-05004), *Sherlach v. Jones* (22-05005), and *Sherlach v. Jones* (22-05006). This identical Notice of Dismissal is being filed in all three bankruptcy cases: 22-05004, 22-05005, and 22-05006.

1

003697

Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) and Fed. R. Bankr. P. 7041, all of the plaintiffs in these three removed actions hereby voluntarily dismiss their claims against Infowars, LLC (aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC.[2]

Stated with more specificity, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, Jillian Soto, William Aldenberg, William Sherlach, Robert Parker, Erica L. Garbatini f/k/a Erica Lafferty, and Richard M. Coan as Chapter 7 Trustee of the bankruptcy estate of Erica L. Garbatini[3] (hereafter "the plaintiffs") voluntarily dismiss their claims against Infowars, LLC (aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC in these three removed cases (Connecticut Superior Court title and docket numbers *Lafferty v. Jones* (UWY- CV18-6046436-S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWY- CV18-6046438-S), now docketed in this Court as *Lafferty v. Jones* (22-05004), *Sherlach v. Jones* (22-05005), and *Sherlach v. Jones* (22-05006)).

---

[2] *See Williams v. MESA Underwriters Specialty Ins. Co.*, 538 F. Supp. 3d 234, 236 n.2 (D. Conn. 2021) (Dooley, J.) (appropriate to use Rule 41 to dismiss all claims against a particular defendant); *LeFevre v. Fishers Island Ferry Dist.*, 2018 WL 3025039, at *3 (D. Conn. June 18, 2018) (Bolden, J.) (same); *Juliano v. Grand Hyatt New York, Inc.*, 2018 WL 1069578, at *2-3 (D. Conn. Feb. 27, 2018) (Bolden, J.) (same); *Morron v. City of Middletown*, 2006 WL 1455607, at *1 (D. Conn. May 23, 2006) (Hall, J.) (same); *Alston v. Pafumi*, 2011 WL 1885676, at *1 (D. Conn. May 18, 2011) (Haight, J.) (same); *Grace v. Plank*, 2007 WL 4224221, at *5 (D. Conn. Nov. 27, 2007) (Underhill, J.) (same); *Guigliano v. Danbury Hosp.*, 396 F. Supp. 2d 220, 224-25 (D. Conn. 2005) (Chatigny, J.) (same).

[3] Ms. Lafferty-Garbatini was at one time a party plaintiff to the consolidated actions, and Mr. Coan was then substituted for her as party plaintiff. The removing defendants incorrectly named Ms. Lafferty (and not Mr. Coan) as a plaintiff in the notice of removal, and Ms. Lafferty's inclusion on this dismissal is unnecessary and superfluous. Nonetheless, to ensure that it is crystal clear that this dismissal is fully effective as to the Lafferty claims, this dismissal is made on behalf of both Ms. Lafferty-Garbatini and Mr. Coan.

003698

This dismissal is as to the plaintiffs' claims against Infowars, LLC (aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC only. The plaintiffs maintain each and all of their claims against the other defendants in these actions: Alex Emric Jones; Free Speech Systems, LLC; and Genesis Communications Network, Inc.

This dismissal is made unilaterally by the plaintiffs, is not the result of any agreement between the plaintiffs and the defendants in this action, and is made without consideration of any kind from the defendants in this action. This dismissal is without prejudice and without costs.

3

Dated: Bridgeport, Connecticut
     May 2, 2022

By: */s/ Alinor C. Sterling*
    Alinor C. Sterling (Fed. Bar No. ct17207)
    Christopher M. Mattei (Fed. Bar No. ct27500)
    Koskoff, Koskoff & Bieder P.C.
    350 Fairfield Ave.
    Bridgeport, CT 06604
    Telephone: (203) 336-4421
    Facsimile: (203) 368-3244
    Email: asterling@koskoff.com
           cmattei@koskoff.com
    *Counsel for the Plaintiffs*[4]

By: */s/ Eric Goldstein*
    Eric Goldstein (Fed. Bar No. ct27195)
    Jessica M. Signor (Fed. Bar No. ct30066)
    Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT 06013
    Telephone: (860) 251-5000
    Facsimile: (860) 251-5218
    Email: egoldstein@goodwin.com
           jsignor@goodwin.com
    *Counsel for the Individual Plaintiffs*[5]

---

[4]Koskoff, Koskoff & Bieder represents all of the plaintiffs, including Richard M. Coan solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Erica L. Garbatini.

[5]In connection with this proceeding, Shipman & Goodwin LLP represents Erica L. Garbatini f/k/a Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto-Parisi, Carlos Mathew Soto, Jillian Soto, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "Individual Plaintiffs").

003700

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2022, a copy of the foregoing Notice of Dismissal of Claims Against Removing Defendants InfoWars LLC (aka InfoW, LLC), InfoWars Health, LLC (IWHealth, LLC) and Prison Planet TV, LLC was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by First Class mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

I further certify that on May 2, 2022, a copy of the foregoing Notice of Dismissal of Claims Against Removing Defendants InfoWars LLC (aka InfoW, LLC), InfoWars Health, LLC (IWHealth, LLC) and Prison Planet TV, LLC was also served via U.S. First Class prepaid postage on the following parties listed below:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776

Cory T. Sklanka
515 Gracey Avenue
Meriden, CT 06451

Genesis Communications Network, Inc.
Attn. Officer, Managing Agent or Agent for Service
190 Cobblestone Lane
Burnsville, MN 55337

Midas Resources, Inc.
Attn. Officer, Managing Agent or Agent for Service
190 Cobblestone Lane
Burnsville, MN 55337

Norman A. Pattis
Pattis & Smith, LLC
383 Orange Street
1st Floor
New Haven, CT 06511

James H. Fetzer, PH.D.
800 Violet Lane
Oregon, WI 53575

5

003701

/s/ *Alinor C. Sterling*
ALINOR C. STERLING
CHRISTOPHER M. MATTEI

/s/ *Eric Goldstein*
ERIC GOLDSTEIN
JESSICA M. SIGNOR

6

003702

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| WILLIAM SHERLACH, | ) |
| | ) |
| Plaintiff, | )     Adv. Pro. No. 22-05005 (JAM) |
| | ) |
| v. | ) |
| | ) |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE | ) |
| SPEECH SYSTEMS, LLC; INFOWARS HEALTH, | ) |
| LLC; PRISON PLANET TV, LLC; WOLFGANG | ) |
| HALBIG; CORY T. SKLANKA; GENESIS | ) |
| COMMUNICATIONS NETWORK, INC.; and | ) |
| MIDAS RESOURCES, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>NOTICE OF DISMISSAL OF CLAIMS AGAINST REMOVING DEFENDANTS INFOWARS LLC (aka INFOW, LLC), INFOWARS HEALTH, LLC (aka IWHealth, LLC) AND PRISON PLANET TV, LLC[1]</u>

Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) and Fed. R. Bankr. P. 7041, all of the plaintiffs

in these three removed actions hereby voluntarily dismiss their claims against Infowars, LLC

(aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC.[2]

---

[1] There are three consolidated cases in the Connecticut Superior Court: *Lafferty v. Jones* (UWY- CV18-6046436-S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWY- CV18-6046438-S). These cases were abusively removed to this Court under names and docket numbers *Lafferty v. Jones* (22-05004), *Sherlach v. Jones* (22-05005), and *Sherlach v. Jones* (22-05006). This identical Notice of Dismissal is being filed in all three bankruptcy cases: 22-05004, 22-05005, and 22-05006.

[2] *See Williams v. MESA Underwriters Specialty Ins. Co.*, 538 F. Supp. 3d 234, 236 n.2 (D. Conn. 2021) (Dooley, J.) (appropriate to use Rule 41 to dismiss all claims against a particular defendant); *LeFevre v. Fishers Island Ferry Dist.*, 2018 WL 3025039, at *3 (D. Conn. June 18, 2018) (Bolden, J.) (same); *Juliano v. Grand Hyatt New York, Inc.*, 2018 WL 1069578, at *2-3 (D. Conn. Feb. 27, 2018) (Bolden, J.) (same); *Morron v. City of Middletown*, 2006 WL 1455607, at *1 (D. Conn. May 23, 2006) (Hall, J.) (same); *Alston v. Pafumi*, 2011 WL 1885676, at *1 (D. Conn. May 18, 2011) (Haight, J.) (same); *Grace v. Plank*, 2007 WL 4224221, at *5 (D. Conn. Nov. 27, 2007) (Underhill, J.) (same); *Guigliano v. Danbury Hosp.*, 396 F. Supp. 2d 220, 224-25 (D. Conn. 2005) (Chatigny, J.) (same).

1

003703

Stated with more specificity, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, Jillian Soto, William Aldenberg, William Sherlach, Robert Parker, Erica L. Garbatini f/k/a Erica Lafferty, and Richard M. Coan as Chapter 7 Trustee of the bankruptcy estate of Erica L. Garbatini[3] (hereafter "the plaintiffs") voluntarily dismiss their claims against Infowars, LLC (aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC in these three removed cases (Connecticut Superior Court title and docket numbers *Lafferty v. Jones* (UWY- CV18-6046436-S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWY- CV18-6046438-S), now docketed in this Court as *Lafferty v. Jones* (22-05004), *Sherlach v. Jones* (22-05005), and *Sherlach v. Jones* (22-05006)).

This dismissal is as to the plaintiffs' claims against Infowars, LLC (aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC only. The plaintiffs maintain each and all of their claims against the other defendants in these actions: Alex Emric Jones; Free Speech Systems, LLC; and Genesis Communications Network, Inc.

This dismissal is made unilaterally by the plaintiffs, is not the result of any agreement between the plaintiffs and the defendants in this action, and is made without consideration of any kind from the defendants in this action. This dismissal is without prejudice and without costs.

---

[3] Ms. Lafferty-Garbatini was at one time a party plaintiff to the consolidated actions, and Mr. Coan was then substituted for her as party plaintiff. The removing defendants incorrectly named Ms. Lafferty (and not Mr. Coan) as a plaintiff in the notice of removal, and Ms. Lafferty's inclusion on this dismissal is unnecessary and superfluous. Nonetheless, to ensure that it is crystal clear that this dismissal is fully effective as to the Lafferty claims, this dismissal is made on behalf of both Ms. Lafferty-Garbatini and Mr. Coan.

003704

Dated: Bridgeport, Connecticut
      May 2, 2022

By: */s/ Alinor C. Sterling*
    Alinor C. Sterling (Fed. Bar No. ct17207)
    Christopher M. Mattei (Fed. Bar No. ct27500)
    Koskoff, Koskoff & Bieder P.C.
    350 Fairfield Ave.
    Bridgeport, CT 06604
    Telephone: (203) 336-4421
    Facsimile: (203) 368-3244
    Email: asterling@koskoff.com
           cmattei@koskoff.com
    *Counsel for the Plaintiffs*[4]

By: */s/ Eric Goldstein*
    Eric Goldstein (Fed. Bar No. ct27195)
    Jessica M. Signor (Fed. Bar No. ct30066)
    Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT 06013
    Telephone: (860) 251-5000
    Facsimile: (860) 251-5218
    Email: egoldstein@goodwin.com
           jsignor@goodwin.com
    *Counsel for the Individual Plaintiffs*[5]

---

[4]Koskoff, Koskoff & Bieder represents all of the plaintiffs, including Richard M. Coan solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Erica L. Garbatini.

[5]In connection with this proceeding, Shipman & Goodwin LLP represents Erica L. Garbatini f/k/a Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto-Parisi, Carlos Mathew Soto, Jillian Soto, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "Individual Plaintiffs").

003705

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2022, a copy of the foregoing Notice of Dismissal of Claims Against Removing Defendants InfoWars LLC (aka InfoW, LLC), InfoWars Health, LLC (IWHealth, LLC) and Prison Planet TV, LLC was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by First Class mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

I further certify that on May 2, 2022, a copy of the foregoing Notice of Dismissal of Claims Against Removing Defendants InfoWars LLC (aka InfoW, LLC), InfoWars Health, LLC (IWHealth, LLC) and Prison Planet TV, LLC was also served via U.S. First Class prepaid postage on the following parties listed below:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776

Cory T. Sklanka
515 Gracey Avenue
Meriden, CT 06451

Genesis Communications Network, Inc.
Attn. Officer, Managing Agent or Agent for
Service
190 Cobblestone Lane
Burnsville, MN 55337

Midas Resources, Inc.
Attn. Officer, Managing Agent or Agent for
Service
190 Cobblestone Lane
Burnsville, MN 55337

Norman A. Pattis
Pattis & Smith, LLC
383 Orange Street
1st Floor
New Haven, CT 06511

James H. Fetzer, PH.D.
800 Violet Lane
Oregon, WI 53575

4

/s/ *Alinor C. Sterling*
ALINOR C. STERLING
CHRISTOPHER M. MATTEI

/s/ *Eric Goldstein*
ERIC GOLDSTEIN
JESSICA M. SIGNOR

5

003707

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| WILLIAM SHERLACH & ROBERT PARKER, | ) |
| | ) |
| Plaintiffs, | ) Adv. Pro. No. 22-05006 (JAM) |
| | ) |
| v. | ) |
| | ) |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE | ) |
| SPEECH SYSTEMS, LLC; INFOWARS HEALTH, | ) |
| LLC; PRISON PLANET TV, LLC; WOLFGANG | ) |
| HALBIG; CORY T. SKLANKA; GENESIS | ) |
| COMMUNICATIONS NETWORK, INC.; and | ) |
| MIDAS RESOURCES, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## NOTICE OF DISMISSAL OF CLAIMS AGAINST REMOVING DEFENDANTS INFOWARS LLC (aka INFOW, LLC), INFOWARS HEALTH, LLC (aka IWHealth, LLC) AND PRISON PLANET TV, LLC[1]

Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) and Fed. R. Bankr. P. 7041, all of the plaintiffs

in these three removed actions hereby voluntarily dismiss their claims against Infowars, LLC

(aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC.[2]

---

[1] There are three consolidated cases in the Connecticut Superior Court: *Lafferty v. Jones* (UWY- CV18-6046436-S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWY- CV18-6046438-S). These cases were abusively removed to this Court under names and docket numbers *Lafferty v. Jones* (22-05004), *Sherlach v. Jones* (22-05005), and *Sherlach v. Jones* (22-05006). This identical Notice of Dismissal is being filed in all three bankruptcy cases: 22-05004, 22-05005, and 22-05006.

[2] *See Williams v. MESA Underwriters Specialty Ins. Co.*, 538 F. Supp. 3d 234, 236 n.2 (D. Conn. 2021) (Dooley, J.) (appropriate to use Rule 41 to dismiss all claims against a particular defendant); *LeFevre v. Fishers Island Ferry Dist.*, 2018 WL 3025039, at *3 (D. Conn. June 18, 2018) (Bolden, J.) (same); *Juliano v. Grand Hyatt New York, Inc.*, 2018 WL 1069578, at *2-3 (D. Conn. Feb. 27, 2018) (Bolden, J.) (same); *Morron v. City of Middletown*, 2006 WL 1455607, at *1 (D. Conn. May 23, 2006) (Hall, J.) (same); *Alston v. Pafumi*, 2011 WL 1885676, at *1 (D. Conn. May 18, 2011) (Haight, J.) (same); *Grace v. Plank*, 2007 WL 4224221, at *5 (D. Conn. Nov. 27, 2007) (Underhill, J.) (same); *Guigliano v. Danbury Hosp.*, 396 F. Supp. 2d 220, 224-25 (D. Conn. 2005) (Chatigny, J.) (same).

1

003708

Stated with more specificity, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, Jillian Soto, William Aldenberg, William Sherlach, Robert Parker, Erica L. Garbatini f/k/a Erica Lafferty, and Richard M. Coan as Chapter 7 Trustee of the bankruptcy estate of Erica L. Garbatini[3] (hereafter "the plaintiffs") voluntarily dismiss their claims against Infowars, LLC (aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC in these three removed cases (Connecticut Superior Court title and docket numbers *Lafferty v. Jones* (UWY- CV18-6046436-S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWY- CV18-6046438-S), now docketed in this Court as *Lafferty v. Jones* (22-05004), *Sherlach v. Jones* (22-05005), and *Sherlach v. Jones* (22-05006)).

This dismissal is as to the plaintiffs' claims against Infowars, LLC (aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC only. The plaintiffs maintain each and all of their claims against the other defendants in these actions: Alex Emric Jones; Free Speech Systems, LLC; and Genesis Communications Network, Inc.

This dismissal is made unilaterally by the plaintiffs, is not the result of any agreement between the plaintiffs and the defendants in this action, and is made without consideration of any kind from the defendants in this action. This dismissal is without prejudice and without costs.

---

[3] Ms. Lafferty-Garbatini was at one time a party plaintiff to the consolidated actions, and Mr. Coan was then substituted for her as party plaintiff. The removing defendants incorrectly named Ms. Lafferty (and not Mr. Coan) as a plaintiff in the notice of removal, and Ms. Lafferty's inclusion on this dismissal is unnecessary and superfluous. Nonetheless, to ensure that it is crystal clear that this dismissal is fully effective as to the Lafferty claims, this dismissal is made on behalf of both Ms. Lafferty-Garbatini and Mr. Coan.

003709

Dated: Bridgeport, Connecticut
      May 2, 2022

By: */s/ Alinor C. Sterling*
    Alinor C. Sterling (Fed. Bar No. ct17207)
    Christopher M. Mattei (Fed. Bar No. ct27500)
    Koskoff, Koskoff & Bieder P.C.
    350 Fairfield Ave.
    Bridgeport, CT 06604
    Telephone: (203) 336-4421
    Facsimile: (203) 368-3244
    Email: asterling@koskoff.com
            cmattei@koskoff.com
    *Counsel for the Plaintiffs*[4]

By: */s/ Eric Goldstein*
    Eric Goldstein (Fed. Bar No. ct27195)
    Jessica M. Signor (Fed. Bar No. ct30066)
    Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT 06013
    Telephone: (860) 251-5000
    Facsimile: (860) 251-5218
    Email: egoldstein@goodwin.com
            jsignor@goodwin.com
    *Counsel for the Individual Plaintiffs*[5]

---

[4] Koskoff, Koskoff & Bieder represents all of the plaintiffs, including Richard M. Coan solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Erica L. Garbatini.

[5] In connection with this proceeding, Shipman & Goodwin LLP represents Erica L. Garbatini f/k/a Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto-Parisi, Carlos Mathew Soto, Jillian Soto, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "Individual Plaintiffs").

3

003710

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2022, a copy of the foregoing Notice of Dismissal of Claims Against Removing Defendants InfoWars LLC (aka InfoW, LLC), InfoWars Health, LLC (IWHealth, LLC) and Prison Planet TV, LLC was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by First Class mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

I further certify that on May 2, 2022, a copy of the foregoing Notice of Dismissal of Claims Against Removing Defendants InfoWars LLC (aka InfoW, LLC), InfoWars Health, LLC (IWHealth, LLC) and Prison Planet TV, LLC was also served via U.S. First Class prepaid postage on the following parties listed below:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776

Cory T. Sklanka
515 Gracey Avenue
Meriden, CT 06451

Genesis Communications Network, Inc.
Attn. Officer, Managing Agent or Agent for Service
190 Cobblestone Lane
Burnsville, MN 55337

Midas Resources, Inc.
Attn. Officer, Managing Agent or Agent for Service
190 Cobblestone Lane
Burnsville, MN 55337

Norman A. Pattis
Pattis & Smith, LLC
383 Orange Street
1st Floor
New Haven, CT 06511

James H. Fetzer, PH.D.
800 Violet Lane
Oregon, WI 53575

4

003711

/s/ *Alinor C. Sterling*
ALINOR C. STERLING
CHRISTOPHER M. MATTEI

/s/ *Eric Goldstein*
ERIC GOLDSTEIN
JESSICA M. SIGNOR

5

003712

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60020 |
| | § | |
| INFOW, LLC, *et al.*, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtors[1] | § | Jointly Administered |

# EXHIBIT B

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC f/k/a Infowars, LLC (6916), IWHealth, LLC f/k/a Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005). The address for service to the Debtors is PO Box 1819, Houston, TX 77251-1819.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; AND WILLIAM ALDENBERG, | ADV. PROC. NO. 22-05004 |
| Plaintiffs, | May 3, 2022 |
| v. | |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | |
| Defendants. | |

## OBJECTION AND NOTICE OF INTENTION TO FILE A MORE PARTICULAR RESPONSE TO THE NOTICE OF VOLUNTARY DISMISSAL BY THE PLAINTIFFS

Defendants InfoW, LLC (f/k/a Infowars, LLC), IWHealth, LLC (f/k/a Infowars Health, LLC), and Prison Planet TV, LLC (the "Debtors"), hereby file this Notice of Objection and Notice of Intention To File A More Particular Response to the Plaintiffs' notice of voluntary dismissal, as follows:

1. Debtors, as Defendants in this Adversary Proceeding, deny that a dismissal pursuant to Rule 9041 is proper and is not an automatic dismissal binding on this Court.

1

003714

2. Debtors, as Defendants in this Adversary Proceeding, intend to file a more particular response containing the factual and legal bases for this objection promperly and request an opportunity, on notice to all parties, to present this objection to the Court for consideration.

3. Significant and unnecessary costs and expenses will be incurred, as well as significant confusion regarding the Court's otherwise unquestionable jurisdiction over these Debtors as Defendants in the removed Adversary Proceding if the Plaintiffs, without this Court's order or guidance, attempt to invoke the jursidction of the state court notwithstanding all of the pending matters before the Court and those pending in the "home" Court in Texas.

Thus, the Debtors respectfully request the above relief and an opportunity to be heard on the Plaintiffs' pleadings, and for such other and further relief to which the Debtors may be justly entitled at law and in equity.

Date: May 3, 2022                           Respectfully Submitted,

                                            **DEFENDANTS AND DEBTORS, INFOW, LLC
                                            IWHEALTH, LLC PRISON PLANET, LLC**

                                            By: /s/ Cameron L. Atkinson /s/
                                            Cameron L. Atkinson (ct31219)
                                            PATTIS & SMITH, LLC
                                            383 Orange Street
                                            New Haven, CT 06511
                                            V: 203-393-3017
                                            F: 203-393-9745
                                            catkinson@pattisandsmith.com

2

003715

## CERTIFICATE OF SERVICE

I hereby certify that on the date of filing, a true and correct copy of the foregoing document was served by U.S.P.S. and, where indicated, email on the following parties:

Attn: Eric Goldstein, Jessica M. Signor
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06013
egoldstein@goodwin.com
jsignor@goodwin.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: Kyung Lee, R. J. Shannon
Parkins Lee & Rubio LLP
700 Milam Street STE 1300
klee@parkinslee.com
rjshannon@parkinslee.com

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Mario Kenneth Cerame
Brignole & Bush LLC
73 Wasworth Street
Hartford, CT 06106
mcerame@brignole.com

Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Ray Bataglia
Law Office of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX
rbattaglialaw@outlook.com

Genesis Communications Network, Inc.
Attn. Officer, Managing Agent or Agent
for Service
190 Cobblestone Lane
Burnsville, MN 55337

*/s/Cameron L. Atkinson*

Cameron L. Atkinson

3

003716

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| WILLIAM SHERLACH, | ) |
| | ) |
| Plaintiffs, | ) ADV. PROC. NO. 22-05005 |
| | ) |
| v. | ) |
| | ) May 3, 2022 |
| ALEX EMRIC JONES; INFOWARS, LLC; | ) |
| FREE SPEECH SYSTEMS, LLC; | ) |
| INFOWARS HEALTH, LLC; PRISON | ) |
| PLANET TV, LLC; WOLFGANG | ) |
| HALBIG; CORY T. SKLANKA; GENESIS | ) |
| COMMUNICATIONS NETWORK, INC.; | ) |
| and MIDAS RESOURCES, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## OBJECTION AND NOTICE OF INTENTION TO FILE A MORE PARTICULAR RESPONSE TO THE NOTICE OF VOLUNTARY DISMISSAL BY THE PLAINTIFFS

Defendants InfoW, LLC (f/k/a Infowars, LLC), IWHealth, LLC (f/k/a Infowars Health, LLC), and Prison Planet TV, LLC (the "Debtors"), hereby file this Notice of Objection and Notice of Intention To File A More Particular Response to the Plaintiffs' notice of voluntary dismissal, as follows:

1. Debtors, as Defendants in this Adversary Proceeding, deny that a dismissal pursuant to Rule 9041 is proper and is not an automatic dismissal binding on this Court.

1

003717

2. Debtors, as Defendants in this Adversary Proceeding, intend to file a more particular response containing the factual and legal bases for this objection promperly and request an opportunity, on notice to all parties, to present this objection to the Court for consideration.

3. Significant and unnecessary costs and expenses will be incurred, as well as significant confusion regarding the Court's otherwise unquestionable jurisdiction over these Debtors as Defendants in the removed Adversary Proceding if the Plaintiffs, without this Court's order or guidance, attempt to invoke the jursidction of the state court notwithstanding all of the pending matters before the Court and those pending in the "home" Court in Texas.

Thus, the Debtors respectfully request the above relief and an opportunity to be heard on the Plaintiffs' pleadings, and for such other and further relief to which the Debtors may be justly entitled at law and in equity.

Date: May 3, 2022                    Respectfully Submitted,

**DEFENDANTS AND DEBTORS, INFOW, LLC IWHEALTH, LLC PRISON PLANET, LLC**

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson (ct31219)
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
V: 203-393-3017
F: 203-393-9745
catkinson@pattisandsmith.com

003718

## CERTIFICATE OF SERVICE

I hereby certify that on the date of filing, a true and correct copy of the foregoing document was served by U.S.P.S. and, where indicated, email on the following parties:

Attn: Eric Goldstein, Jessica M. Signor
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06013
egoldstein@goodwin.com
jsignor@goodwin.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: Kyung Lee, R. J. Shannon
Parkins Lee & Rubio LLP
700 Milam Street STE 1300
klee@parkinslee.com
rjshannon@parkinslee.com

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Mario Kenneth Cerame
Brignole & Bush LLC
73 Wasworth Street
Hartford, CT 06106
mcerame@brignole.com

Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Ray Bataglia
Law Office of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX
rbattaglialaw@outlook.com

Genesis Communications Network, Inc.
Attn. Officer, Managing Agent or Agent
for Service
190 Cobblestone Lane
Burnsville, MN 55337

*/s/Cameron L. Atkinson*

Cameron L. Atkinson

3

003719

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

|  |  |
|---|---|
| WILLIAM SHERLACH & ROBERT PARKER, | ) |
| Plaintiffs, | ) ADV. PROC. NO. 22-05006 |
| v. | ) |
|  | ) May 3, 2022 |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | ) |
| Defendants. | ) |

## OBJECTION AND NOTICE OF INTENTION TO FILE A MORE PARTICULAR RESPONSE TO THE NOTICE OF VOLUNTARY DISMISSAL BY THE PLAINTIFFS

Defendants InfoW, LLC (f/k/a Infowars, LLC), IWHealth, LLC (f/k/a Infowars Health, LLC), and Prison Planet TV, LLC (the "Debtors"), hereby file this Notice of Objection and Notice of Intention To File A More Particular Response to the Plaintiffs' notice of voluntary dismissal, as follows:

1. Debtors, as Defendants in this Adversary Proceeding, deny that a dismissal pursuant to Rule 9041 is proper and is not an automatic dismissal binding on this Court.

1

003720

2. Debtors, as Defendants in this Adversary Proceeding, intend to file a more particular response containing the factual and legal bases for this objection promptly and request an opportunity, on notice to all parties, to present this objection to the Court for consideration.

3. Significant and unnecessary costs and expenses will be incurred, as well as significant confusion regarding the Court's otherwise unquestionable jurisdiction over these Debtors as Defendants in the removed Adversary Proceding if the Plaintiffs, without this Court's order or guidance, attempt to invoke the jursidction of the state court notwithstanding all of the pending matters before the Court and those pending in the "home" Court in Texas.

Thus, the Debtors respectfully request the above relief and an opportunity to be heard on the Plaintiffs' pleadings, and for such other and further relief to which the Debtors may be justly entitled at law and in equity.

Date: May 3, 2022                    Respectfully Submitted,

**DEFENDANTS AND DEBTORS, INFOW, LLC IWHEALTH, LLC PRISON PLANET, LLC**

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson (ct31219)
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
V: 203-393-3017
F: 203-393-9745
catkinson@pattisandsmith.com

2

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date of filing, a true and correct copy of the foregoing document was served by U.S.P.S. and, where indicated, email on the following parties:

Attn: Eric Goldstein, Jessica M. Signor
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06013
egoldstein@goodwin.com
jsignor@goodwin.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: Kyung Lee, R. J. Shannon
Parkins Lee & Rubio LLP
700 Milam Street STE 1300
klee@parkinslee.com
rjshannon@parkinslee.com

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Mario Kenneth Cerame
Brignole & Bush LLC
73 Wasworth Street
Hartford, CT 06106
mcerame@brignole.com

Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Ray Bataglia
Law Office of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX
rbattaglialaw@outlook.com

Genesis Communications Network, Inc.
Attn. Officer, Managing Agent or Agent
for Service
190 Cobblestone Lane
Burnsville, MN 55337

*/s/Cameron L. Atkinson*

Cameron L. Atkinson

3

003722

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60020 |
| | § | |
| INFOW, LLC, *et al.*, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtors¹ | § | Jointly Administered |

### ORDER SETTING STATUS CONFERENCE

Upon the request (Request) of David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, Richard M. Coan, Trustee of the Bankruptcy Estate of Erica Lafferty, William Sherlach, and Robert Parker (collectively, Movants) for entry of an order (this Order) to set a status conference; and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that the relief requested is in the best interests of the Debtors' estates, its creditors, and other parties in interest; and appropriate notice having been provided under the circumstances of the Request, and that no other or further notice is required; and the Court having determined that the legal and factual bases set forth in the Request establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      The Request is GRANTED as set forth herein

---

¹ The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC f/k/a Infowars, LLC (6916). IWHealth, LLC f/k/a Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005). The address for service to the Debtors is PO Box 1819, Houston, TX 77251-1819.

2.      A status conference is set for May ____, 2022 at __:__ a.m./p.m.


Dated: _____, 2022


_____
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 22-60020 |
| | § | |
| INFOW, LLC, *et al.,* | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |

---

### THE TEXAS PLAINTIFFS' JOINDER
### IN THE EXPEDITED REQUEST FOR STATUS CONFERENCE

---

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**

**Relief is requested on or before May 11, 2022.**

Neil Heslin, Scarlett Lewis, Leanoard Pozner, Veronique De La Rosa, and Marcel Fontaine

("Texas Plaintiffs") join the Expedited Request for Status Conference for the following reasons:

### Request for Emergency Consideration

The Texas Plaintiffs request an expedited status conference to alert the Court about issues

affecting the upcoming hearing on the dismissal motions and the course of the bankruptcy. As the

Court knows, the Debtors petitioned for bankruptcy under Subchapter V to push through a

bankruptcy plan that forces the supposed payment in full of all Plaintiffs' claims in a dubious claims-estimation process. The Texas Plaintiffs, the Connecticut Plaintiffs, and the United States Trustee all saw this supposed plan for what it was and moved to dismiss the bankruptcy for bad faith. The dismissal hearing is set for May 27th. Naturally, the swarm of lawyers for the Texas Plaintiffs, the Connecticut Plaintiffs, the U.S. Trustee's office, the Debtors, and even the non-debtors will be preparing for this pivotal hearing at great effort and expense. Recent events that have transpired, however, make this dismissal hearing and even this bankruptcy unnecessary.

Like the Connecticut Plaintiffs, the Sandy Hook Plaintiffs in Texas have chosen to drop their lawsuits against the only Debtor they sued, InfoW. As the Court knows, certain Sandy Hook Plaintiffs in Texas previously nonsuited their claims the day that InfoW petitioned for bankruptcy. And earlier this week, the remaining Sandy Hook Plaintiffs in Texas and Connecticut dismissed their claims against the Debtors. In other words, the Sandy Hook Plaintiffs are no longer creditors.

The filing of the latest dismissals eradicates the need for this bankruptcy. After all, the Debtors' proposed chief restructuring officer explained that the point of the bankruptcy was to settle these claims. But the Debtors can no longer do so because they are no longer defendants in the Sandy Hook defamation cases. No grounds justify keeping this bankruptcy alive—let alone forcing the Texas Plaintiffs to participate in it at their own expense. The Texas Plaintiffs therefore request a status conference to address these latest developments.

### Relevant Background

1.      The Texas Plaintiffs filed multiple defamation lawsuits against the Debtor, InfoW, LLC, as well as nondebtors like Alex Jones and his company Free Speech Systems, LLC. In the course of the various cases, the Texas Plaintiffs discovered that InfoW, LLC has no assets, no

revenue, no employees, and no money—and that Alex Jones and Free Speech are the primary targets at trial. (The Debtors' bankruptcy petitions only confirmed this. ECF Nos. 1, at 10–11.)

2. A week before the trial of the first of these defamation cases, however, InfoW petitioned for bankruptcy under Subchapter V. Trying to save their trial date, the Texas Plaintiffs immediately nonsuited InfoW. *See* Ex. 1; *see also Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 100 (Tex. 2006) (explaining that a nonsuite extinguishes a case or controversy from the moment it's filed). But the trial date was postponed because InfoW removed the case to federal court *after* it had already been nonsuited.

3. Four days later, the Court held its first hearing. At the hearing, the Debtors admitted that the purpose of the bankruptcy was to settle the Sandy Hook claims.[1] Ex. 3, at 61. At the same hearing, the Sandy Hook Plaintiffs flagged that the bankruptcy was filed in bad faith and that the Debtors were not *debtors* within meaning of Subchapter V. Ex. 3, at 19–23, 61–63. They then assured the Court that they would seek dismissal of the bankruptcy on these grounds. And days later, they did. So did the United States Trustee.

4. The Court set an evidentiary hearing on the dismissal motions for May 27th.

5. Just days after setting the hearing, the Connecticut Plaintiffs dismissed their claims against the Debtors. The remaining Sandy Hook Plaintiffs in Texas likewise dismissed their claims against InfoW. Ex. 2.

6. Because the Sandy Hook Plaintiffs are no longer creditors, the Debtors cannot fulfill the purpose of this bankruptcy. Under the circumstances, all sides should want to avoid

---

[1] Ex. 3: Transcript from April 22, 2022 Hearings, 50:13-20:

**The Court**: . . . What do you believe the purpose of these Chapter 11 cases is?

**Mr. Schwartz**: The purpose? The purpose is to arrange to pay all of the plaintiffs the amount of their—let's say in a bankruptcy sense, their allowed claim in full. That's the purpose.

having the lawyers prepare for a mini-trial on an already-doomed bankruptcy. For this reason, the Texas Plaintiffs join in the Connecticut Plaintiffs' expedited request for a status conference.

**Conclusion**

For these reasons, the Texas Plaintiffs respectfully ask that the Court schedule a status conference as soon as possible.

Dated: May 6, 2022

Respectfully submitted,

**The Beatty Law Firm PC**

By: /s/*J. Maxwell Beatty*
J. Maxwell Beatty
State Bar No. 24051740
max@beattypc.com
1127 Eldridge Pkwy
Suite 300, #383
Houston, Texas 77077
Tel. 832-529-3381
Fax. 832-852-1266

**-AND-**

**MCDOWELL HETHERINGTON LLP**

By: /s/*Avi Moshenberg*
Avi Moshenberg
State Bar No. 24083532
avi.moshenberg@mhllp.com
1001 Fannin Street, Suite 2700
Houston, Texas 77002
Tel. 713-337-5580
Fax. 713-337-8850

*Counsel for the Texas Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Request for Status Conference has been served on counsel for Debtors, Debtors, and all parties receiving or entitled to notice through CM/ECF on this 6th day of May 2022.

*/s/ Avi Moshenberg*
Avi Moshenberg

# EXHIBIT 1

003730

D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN and | § | IN DISTRICT COURT OF |
| SCARLETT LEWIS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 261st DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER | § | |

## PLAINTIFFS' NOTICE OF NONSUIT AS TO INFOWARS, LLC

Plaintiffs Neil Heslin and Scarlett Lewis hereby give notice to the Court and all parties that Plaintiffs no longer desire to prosecute their claims against Defendant InfoWars, LLC. As such, Plaintiff hereby nonsuits all claims asserted against Defendant InfoWars, LLC.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on April 18, 2022, the forgoing document was served upon all counsel of record via electronic service.

_____

MARK D. BANKSTON

# EXHIBIT 2

003733

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE : | § | CASE NO. 22-60020 (SDTX) |
| INFOW, LLC, *et al.,* | § | |
| | § | CHAPTER 11 |
| Debtors. | § | |
| | § | JOINTLY ADMINISTERED |
| _____ | § | |
| | § | |
| LEONARD POZNER AND | § | |
| VERONIQUE DE LA ROSA, | § | |
| | § | ADV. PROC. NO. 22-01021-HCM |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC | § | |
| | | |
| Defendants. | | |

---

**PLAINTIFFS LEONARD POZNER AND VERONIQUE DE LA ROSA'S NOTICE OF
DISMISSAL OF CLAIMS AGAINST DEFENDANT INFOW, LLC**

---

Plaintiffs Leonard Pozner and Veronique De La Rosa file this Notice of Dismissal pursuant to Fed. R. Civ. P. 41(a)(1) and Fed. R. Bankr. P. 7041, notifying the Court of their voluntary dismissal of all claims against Infowars, LLC (aka InfoW, LLC). This dismissal is as to the Plaintiffs' claims against this defendant only. The Plaintiffs maintain each and all of their claims against the other defendants in this action, Alex Emric Jones and Free Speech Systems, LLC. This dismissal is without prejudice and without costs.

Dated: May 2, 2022

Respectfully submitted,

**THE BEATTY LAW FIRM PC**

By: */s/ Max Beatty*
    Jon Maxwell 'Max' Beatty
    State Bar No. 24051740
    1127 Eldridge Parkway, Suite 300 #338
    Houston, TX 77077
    (832) 529-3381 Telephone
    (832) 852-1266 Fax
    Email: max@beattypc.com

**MCDOWELL HETHERINGTON LLP**

By: */s/ Avi Moshenberg*
    Avi Moshenberg
    Texas Bar No. 24083532
    Nick Lawson
    State Bar No. 24083367
    Matthew Caldwell
    State Bar No. 24107722
    1001 Fannin Street, Suite 2700
    Houston, TX 77002
    Phone: (713) 337-5580
    Fax: (713) 337-8850
    Email: avi.moshenberg@mhllp.com
    Email: nick.lawson@mhllp.com
    Email: matthew.caldwell@mhllp.com

**THE AKERS FIRM PLLC**

By: */s/ Cordt Akers*
    Cordt Akers
    State Bar No. 24080122
    3401 Allen Parkway, Suite 101
    Houston, TX 77019
    Phone: (713) 877-2500
    Fax: (713) 583-8662
    Email: cca@akersfirm.com

**KASTER LYNCH FARRAR & BALL, LLP**

By: */s/ Mark D. Bankston*
    Mark D. Bankston
    State Bar No. 24071066
    William R. Ogden
    State Bar No. 24073531
    1117 Herkimer
    Houston, Texas 77008
    (713) 221-8300 Telephone
    (713) 221-8301 Fax
    Email: mark@fbtrial.com
    Email: bill@fbtrial.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2022, a true and correct copy of the foregoing document was served by the Court's CM/ECF system on all parties registered to receive such service.

*/s/ Avi Moshenberg*
Avi Moshenberg

# EXHIBIT 3

003737

```
 1              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF TEXAS
 2                   VICTORIA DIVISION

 3                              )  CASE NO: 22-60020-CML
                                )
 4   INFOW, LLC,                )  Victoria, Texas
                                )
 5           Debtor.            )  Friday, April 22, 2022
                                )
 6   ---------------------------)  9:00 a.m. - 10:49 a.m.
                                )
 7                              )  CASE NO: 22-60021-CML
                                )
 8   IWHEALTH, LLC,             )
                                )
 9           Debtor.            )
                                )
10   ---------------------------)

11                            TRIAL

12      BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
               UNITED STATES BANKRUPTCY JUDGE
13

14   APPEARANCES:

15   For the Debtors:          KYUNG SHIK LEE
                               R.J. SHANNON
16                             Parkins Lee & Rubio LLP
                               Pennzoil Place
17                             700 Milam Street
                               Suite 1300
18                             Houston, TX 77002

19   For the U.S. Trustee:     JAYSON B. RUFF
                               HA MINH NGUYEN
20                             Office of the United States Trustee
                               515 Rusk Street
21                             Suite 3516
                               Houston, TX 77002
22
     For Proposed Litigation   MATTHEW OKIN
23   Settlement Trustees:      DAVID CURRY
                               Okin Adams
24                             1113 Vine Street
                               Suite 240
25                             Houston, TX 77002
```

```
 1    For Neil Heslin et al:    JON MAXWELL BEATTY
                                The Beatty Law Firm PC
 2                              935 Bayou Parkway
                                Houston, TX 77077
 3
                                CLIFFORD HUGH WALSTON
 4                              Walston Bowlin, LLP
                                4299 San Felipe Street
 5                              Suite 300
                                Houston, TX 77027
 6
      Sub Chapter V Trustee:    MELISSA A. HASELDEN
 7                              Haselden Farrow PLLC
                                Pennzoil Place
 8                              700 Milam
                                Suite 1300
 9                              Houston, TX 77002

10    For David Wheeler et al: RYAN E. CHAPPLE
                                Cain & Skarnulis PLLC
11                              303 Colorado Street
                                Suite 2850
12                              Austin, TX 78701

13                              RANDY W. WILLIAMS
                                Byman & Associates PLLC
14                              7924 Broadway
                                Suite 104
15                              Pearland, TX 77581

16                              ALINOR STERLING
                                CHRISTOPHER M. MATTEI
17                              Koskoff Koskoff & Bieder
                                350 Fairfield Avenue
18                              Suite 501
                                Bridgeport, CT 06604
19
      For the Trustee:          RAYMOND WILLIAM BATTAGLIA
20                              Law Offices of Ray Battaglia, PLLC
                                66 Granburg Circle
21                              San Antonio, TX 78218

22    Interested Party:         Shelby A Jordan
                                Jordan & Ortiz, PC
23                              500 N Shoreline
                                Suite 900 N
24                              Corpus Christi, TX 78401

25
```

003739

```
 1   Also Present:              MARC SCHWARTZ, CRO
                                RICHARD SCHMIDT
 2
     Court Reporter/Deputy:     Kimberly Picota
 3
     Transcribed by:            Veritext Legal Solutions
 4                              330 Old Country Road, Suite 300
                                Mineola, NY 11501
 5                              Tel: 800-727-6396

 6

 7
     Proceedings recorded by electronic sound recording;
 8   Transcript produced by transcription service.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1

 2            VICTORIA, TEXAS; FRIDAY, APRIL 22, 2022 9:00 AM

 3                       (Call to Order)

 4            THE COURT:  Good morning, everyone.  This is Judge

 5   Lopez.  Today is April 22nd.  I'm going to call the nine

 6   a.m. case, which is essentially first-day hearings in InfoW

 7   LLC, IWL -- it should be IWHealth LLC, and Prison Planet TV

 8   LLC.

 9            There are a number of folks on the line, and I'm

10   going to try to keep the line unmuted, just see how that

11   goes.  We have a feature where I can mute the entire line,

12   and I'm going to try to avoid that.  But if I end up doing

13   it, I will give everyone plenty of notice and you will have

14   to hit five-star if you wish to be heard.

15            I'm going to just ask everyone to please put your

16   phone on mute right now until your case is called.  And I

17   hear a lot of back noise.  I'm just going to turn the

18   feature on.  So I'm asking everyone just please take a look

19   at your phone and please keep it on mute.  When it is time

20   to speak, I will call on you and you are able to speak.

21   Let's see how this goes.

22            Let me start off by taking appearances.  And why

23   don't I start in the courtroom.  Who is here on behalf of

24   the Debtors?

25            MR. LEE:  Good morning, Your Honor.  Kyung Lee, K-
```

1    y-u-n-g, L-e-e, on behalf of the three debtors.  And I would

2    like to introduce some of the players on my side that are

3    helping me with this project, the first one being RJ

4    Shannon.

5              Can you stand up, RJ?

6              MR. SHANNON:  Good morning.

7              THE COURT:  Good morning.

8              MR. LEE:  That's my very bright, smart associate.

9    Younger than I am, so he is able to work a lot harder than I

10   am.

11             The second party that's also helping me is Adam

12   Rodriguez, who is my paralegal, who has been working on this

13   case.  As you all know, he (indiscernible) get done by one

14   person (indiscernible) who made a team that worked with me.

15   So those two would be an integral part of the team.

16             And the third party I'd like to introduce today is

17   Mr. Marc Schwartz,.  He's sitting with me at counsel's

18   table.  He is chief restructuring officer of the three

19   debtors, Your Honor.

20             MR. SCHWARTZ:  Good morning.

21             THE COURT:  Okay.  Who wants to go next?

22             MR. RUFF:  Good morning, Your Honor.  Jason Ruff

23   for the U.S. Trustee's office.  And today with me is Ha

24   Nguyen.

25             THE COURT:  Good morning to both of you.  And I

```
 1   think it's the first time I've actually seen you in person
 2   as opposed to on the screen.  Good morning.
 3              MR. OKIN:  Good morning, Your Honor.  Matthew
 4   Okin, O-k-i-n, and David Curry.  We are here on behalf of
 5   the proposed litigation settlement trustees, Russell Nelms
 6   and Richard Schmidt.  I believe that Mr. Schmidt and Mr.
 7   Nelms are on the call.
 8              THE COURT:  I see them on video.  And good morning
 9   to you, sir.  Good morning to you, Mr. Schmidt and Mr.
10   Nelms.
11              MR. BEATTY:  Yes, Your Honor.  Max Beatty and
12   Cliff Walston.  We are here on behalf of creditors, Heslin,
13   Lewis, De La Rosa, Fontaine, and Pozner.
14              THE COURT:  Good morning.
15              MR. BEATTY:  Good morning.
16              MS. HASELDEN:  Good morning, Your Honor.  Melissa
17   Haselden, Subchapter V Trustee.
18              THE COURT:  Good morning.
19              MR. CHAPPLE:  Good morning, Your Honor.  Ryan
20   Chapple and my colleague, Randy Williams, are here on behalf
21   of what we'll probably refer to as the Connecticut
22   plaintiffs, Mr. David Wheeler, Francine Wheeler, Jacqueline
23   Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer
24   Hensel, Donna Soto, Carly Soto-Parisi, Carlos Soto, Jillian
25   Soto-Marino, William Aldenberg, Richard Cohn, Trustee of the
```

```
 1    bankruptcy estate of Erica Lafferty, William Sherlock, and

 2    Robert Parker.

 3              And, Your Honor, I also have the Connecticut

 4    Plaintiff's counsel on Zoom.  I would like to introduce them

 5    as well.

 6              THE COURT:  Sure.

 7              MR. CHAPPLE:  Ms. Alinor Sterling and Chris

 8    Mattei.  And they will be filing motions of pro hac.  They

 9    just...

10              THE COURT:  Okay.  Good morning to both of you.

11    And, Ms. Sterling, if you wish to speak today, if anyone

12    wishes to speak today who has not filed a pro hac, you are

13    free to do so (indiscernible) of today.  Not a problem at

14    all.

15              MS. STERLING:  Thank you for that courtesy, Your

16    Honor.

17              THE COURT:  Okay.  Does anyone else wish to make

18    an appearance in the courtroom?  Okay.  I am hearing some

19    background noise.  So I am going to mute the line.  I have

20    about 70 folks on the line, and it got a little tricky.  So

21    I'm going to -- if you wish to speak, just hit five-star if

22    you wish to make an appearance.  Let me see if there's

23    anyone who wishes to make an appearance.  If you wish to

24    make an appearance, just hit five-star.

25              Okay.  There's an area code 207-650 number.  Do
```

1    you wish to make an appearance?

2              UNIDENTIFIED SPEAKER:  Good morning, Your Honor.

3    Peter (indiscernible) from (indiscernible) Group.  Thank

4    you, sir.

5              THE COURT:  Good morning.  Does anyone else wish

6    to make an appearance?

7              I've got one more.  I've got an area code 210-601

8    number.  Area code 210-601, do you wish to make an

9    appearance?

10             MR. BATTAGLIA:  Sorry, Your Honor.  I had it on

11   mute.  Too many buttons to push.  Ray Battaglia for Free

12   Speech Systems.

13             THE COURT:  Good morning, Mr. Battaglia.

14             Okay, I think I have an area code 512-710.  Does

15   someone wish to make an appearance from an area code 512-710

16   number?

17             MR. JORDAN:  Your Honor, Shelby Jordan.  I am

18   making appearance on behalf of Alex Jones.

19             THE COURT:  Okay.  Good morning, Mr. Jordan.

20             MR. JORDAN:  Good morning.

21             THE COURT:  Okay.  Mr. Lee -- for the folks who

22   have made an appearance, I have left your line unmuted.  I'm

23   going to ask that you just keep your phone on mute just

24   during this time.  And if you with to make -- wish to speak,

25   just let me know.  Okay, I believe I have covered everyone

1    who wishes to make an appearance.  So, Mr. Lee, let me turn

2    things over to you, sir.

3           MR. LEE:  May it please the Court, Your Honor.

4    Kyung Lee, for the record, for the three debtors.  I want to

5    take out some administrative matters before we head to the

6    substantive matters for the Court.

7           THE COURT:  Okay.

8           MR. LEE:  Number one, Docket 8 had a joint

9    administration motion that was set for today, and I believe

10   Your Honor has already signed that order.  So that is going

11   to be moot for today's hearing.

12          THE COURT:  Yes, I did sign it.

13          MR. LEE:  Thank you, Your Honor.

14          Number two, I believe in the Subchapter 5 cases,

15   that it would be your desire to sign these Subchapter 5

16   deadlines order today.  And we have a form of order which

17   sets the status conference for an 1188 conference as well as

18   the status report under 1188(c) and a deadline to file a

19   Chapter 11 plan under 1188.  So we have a form of order for

20   that if you want to consider that at the end of the hearing,

21   or whenever you think --

22          THE COURT:  I think -- I don't know who can answer

23   that question.  But if we pick a date, I need to know

24   whether we're going to have a case or not.  But I'm not sure

25   that you can answer that question.

```
 1              MR. LEE:  That would be a question for --
 2              (Break in audio)
 3              THE COURT:  Yeah.  It's really a question for the
 4     third party contributors because they are the ones who have
 5     the right to terminate it.  But one of the concerns that I
 6     have -- and maybe this is just something -- again, all I
 7     know is we're not going to write on the papers.  Right?  So
 8     I'm just raising some concern to something that maybe
 9     somebody can answer very quickly for me, is the third-party
10     contributors essentially fund these Chapter 11 cases.  I
11     don't see any sources of revenue.  As I read the trust
12     agreement, the Debtors are not actually allowed to engage in
13     any business activity, so they can't generate funds.  So if
14     the third party contributors decide to pull the plug and not
15     fund this at any point, you know, maybe a ruling that I make
16     or just decide they don't want to go forward with it any
17     more, you know, the lifeblood of these Chapter 11 cases goes
18     away.  And I think I need to understand whether we have
19     cases or not.  Because, you know, sometimes the judge rules
20     in favor of one way, sometimes the judge rules in another
21     way.  And I need to know kind of whether they are really
22     committed to these cases.  You know, any (indiscernible)
23     Subchapter IV trustee doing her work and doing her --
24     fulfilling her statutory duties in a Subchapter V case.
25              And I'm not indicating one way or the other that I
```

003747

```
 1   believe that the third-party contributors are not serious

 2   about funding these cases.  Obviously they took the time and

 3   did it.  I'm just raising -- parties really want to go

 4   forward with a Chapter 11 case, right?  There has to be some

 5   stream of guaranteed source of funds, and it can't be tied

 6   to dates that I haven't approved or decisions that I have

 7   not yet to even consider based on motions that have yet to

 8   be filed.  You know, it's just not -- it's a hypothetical

 9   world.  But I just need to understand that.

10          But maybe all that could be answered.  We're not

11   really going forward today.  I'm just -- it's one of the

12   things that makes me think about the trust.  And as I think

13   about the trustees -- if you're here, Mr. Okin.

14          Mr. Nelms and Mr. Schmidt, this is -- they're

15   certainly qualified.  Put that aside.  The question is who

16   is working on behalf of -- I'm just thinking at the 10,000-

17   foot level.  Right?  Who works for the estate, right?  If

18   the settlement trust fees are bound by the settlement trust

19   and must only work within the confines of the trust -- and I

20   know that the trust is still yet to be negotiated.  But

21   whatever it lands on, then who does the work of the estate,

22   right?  If they're trustees of a trust, then by approving

23   the trustees and then approving them to do the work

24   according to the trust.  So it's almost like an implied

25   approval of the work done under the trust.  But then who
```

 1    represents the estate?  That's the question that ultimately

 2    somebody is going to have to answer.  Who does the work of

 3    the estate?  Who is acting on behalf of solely the interest

 4    of the estate?  I get it, Mr. Schwartz is operating as a

 5    327, but the proposed order that was -- someone was going to

 6    ask me to sign today was going to say that Mr. Schmidt and

 7    Mr. Nelms could fire them without my approval.  Maybe

 8    somebody should think about that as they think about the

 9    10,000-foot level.  There has to be a 327.  327 means that

10    they are fiduciaries of the estate, which means that the

11    court would have some supervision or they would answer on

12    behalf of the estate or be fiduciaries of the estate.  I

13    just want to make sure that there is someone who is going to

14    take a position, and sometimes they're hard positions, on

15    behalf of the estate.

16         And I'm not saying these questions can't be

17    answered, I'm just -- again, (indiscernible) order on

18    papers, and they raised questions.  And I didn't want to

19    blindside anyone with any of these questions that I had.  So

20    I don't want to start making comments on a trust agreement

21    that you're telling me is going to get negotiated.  We'll

22    have to wait and see what's finally there.

23         MR. OKIN:  We are certainly happy to have your

24    comments in advance so we can address them.  But we will --

25    these are issues we are wrestling with, including not making

003749

1    sure the funding is available --

2         THE COURT:  Because the money comes in, but the

3    money is not -- the way the trust is set up, the third party

4    contributors contribute to the trust, but it doesn't become

5    property of the estate because it stays within the trust,

6    and then the trustees fund in accordance with --

7         MR. LEE:  The plan.

8         THE COURT:  Right?  So that becomes interesting.

9    And so if -- yeah, let's just say a payment in full --

10   payment in full is defined under 10.1(c).  Maybe that number

11   is different than what other people may have expected.  Is

12   it property -- it's not property of the estate.  And so I

13   would be allowing a claim that would never be paid.  It's

14   the things that I think about.

15        And again, this has zero to do with Mr. Schmidt or

16   Mr. Nelms.  That's not -- I just think about on behalf of

17   the estate and the Debtors that have to get administered

18   here.  I should probably stay quiet and just allow Mr.

19   Schwartz to just answer.  But I'm saying this for the

20   benefit of Mr. Lee, who is going to put Mr. Schwartz on.

21   Today is a day for information as I understand it.  And so I

22   think I want to kind of express some of the thoughts that I

23   had as I read the papers and give everyone an opportunity to

24   react to it.  Because I'm going to ask Mr. Schwartz these

25   questions.  And so I suspect -- I don't want to surprise Mr.

003750

```
 1   Schwartz by the way I'm reading and understanding the trust
 2   agreement.  Because if I've got something wrong, I want
 3   somebody to tell me.
 4         MR. OKIN:  Your Honor, I don't think you do on the
 5   current documents.  And that's part of what we are working
 6   on.  I did just want to leave the Court with -- both Mr.
 7   Schmidt and Mr. Nelms have raised a lot of these same
 8   issues.  They think they can be a help to this process.
 9   They come at this completely neutral.  They think that if
10   people give them a chance and give this process a chance.
11         They've spent their whole lives, their
12   professional careers at least, in the bankruptcy system.
13   They believe in it.  They think that more often than not, it
14   is a fair and equitable process for dividing up scarce
15   resources and that if given an opportunity, they can
16   actually give some people some peace and an opportunity to
17   resolve these issues.  And they think that given enough time
18   and the opportunity to do it, that they can help bring that
19   about.
20         THE COURT:  Okay.  Thank you very much.
21         MR. RUFF:  Good morning, Your Honor.
22         THE COURT:  Good morning.
23         MR. RUFF:  Jason Ruff for the U.S. Trustee's
24   Office.
25         Your Honor raises a number of great questions.
```

1    And quite frankly, this case begs those questions as it has

2    been set forth before the Court.

3         I would like to just say at the outset too, our

4    opposition has nothing to do with the individuals that are

5    proposed to be the trustees, Your Honor.  Our position is

6    threefold.  And first of all, there's no emergency, so

7    that's off today.  I think everybody recognizes there is no

8    emergency.  But to Your Honor's questions that Your Honor

9    was just asking and what has been proposed here today, this

10   form with this litigation settlement trust, it's called a

11   litigation settlement trust.  It seems to operate more than

12   that, thought.  It seems to operate more like an LLC

13   operating agreement and that the trustees, as was proposed,

14   were to be managers of the LLC, have management authority of

15   the LLC, and with Mr. Schwartz reporting to them

16   essentially, that his duties would run to them.  And there

17   is an inherent conflict there.

18        But Your Honor, 105, which is the authority that

19   they cite for seeking that, your Court blessed that, doesn't

20   extend that far.  The bankruptcy code is clear about when a

21   court can enter orders appointing individuals, examiners and

22   trustees under 1104.  And were Congress is provided a power

23   in one place but not another, Section 105 cannot be used to

24   give the court more powers.

25        And one other thing, Your Honor, is that we found

003752

```
 1    very problematic and was set forth of course in our
 2    pleading.  But the motion asks for the Court to bless
 3    certain liability protections that are wholly unnecessary
 4    for the Court to do.  The trust stands on its own.  It's an
 5    agreement that the trustees are being asked to sign that was
 6    orchestrated and put into place by Alex Jones and Free
 7    Speech Systems.  And, Your Honor, it can determine what
 8    their -- if they're going to agree to that, they can agree
 9    to that.  They don't need the Court to do that.  The
10    agreement was entered before it ever even -- these cases
11    were filed, Your Honor, before they ever came to court.
12             So it is our position that not only does the Court
13    not have authority to do it, but under the Code at least
14    Your Honor -- it is not necessary, either.
15             THE COURT:  Mr. Ruff, in terms of the timing
16    question if we don't go forward on the CRO motion and on the
17    trustee motion, do you have a sense of timing?
18             MR. RUFF:  Your Honor, I think we can use at least
19    21 days from the date that they were originally proposed.  I
20    don't see what emergency there is.  Mr. Schwartz has already
21    exercised authority on behalf of the Debtors by signing
22    these petitions.
23             THE COURT:  The only question that came to my mind
24    on -- you know, and maybe Mr. Schwartz will answer the
25    question -- is somebody needs to work on schedules and, you
```

```
 1    know, the bread and butter bankruptcy materials and start to

 2    answer questions, and Ms. Haselden has questions or the

 3    trustee has basic questions.  I doubt that there's any bank

 4    accounts or any -- your know, or anything.  I just want to

 5    make sure that there's -- but I guess Mr. Lee has given me

 6    some comfort that they're there.  It's the only one that

 7    makes me think, you know, should we have someone -- but

 8    maybe Mr. Schwartz is going to tell me that he can do that

 9    work.  And if he can do that work, then I'm okay with the

10    timing on that.

11         MR. RUFF:  Your Honor, my response to that, to

12    your question would be simply this.  Your Honor, these

13    individuals were put into place.  Take a step back.  These

14    companies were -- these entities were 100 percent wholly

15    owned and controlled by Alex Jones prior to the trust being

16    put into place.  And they were given authority pursuant to

17    those documents, pursuant to things that were done in

18    advance of the bankruptcy case.

19         Your Honor, the court wasn't necessary for them to

20    have authority at that point.  I don't see that it's

21    necessary for them to have authority now as a 327

22    professional if that's what they're going to seek for the

23    CRO's employment under.  That has more to do with their

24    ability to be -- not only to act on behalf of the Debtors,

25    but also to be compensated and the duties that they're going
```

1   to run under the Code.

2           But every professional that comes in prior to a

3   bankruptcy case still has duties and still has an obligation

4   to act.  If it all blows up, Your Honor, if there is no case

5   here, if Mr. Jones decides that he doesn't want to fund,

6   then that's really on Mr. Jones.  These companies don't

7   operate, they don't have employees.  This is not a situation

8   where if, for lack of a better word, these cases crater,

9   that we are going to see employees of these companies suffer

10  and be without a job and without a source of income.

11  There's not trade creditors out there or other parties who

12  are not going to receive goods and services.

13          Your Honor, the only person here who might be

14  harmed is Alex Jones.  And because these cases appear to be

15  -- at least it's questionable to why we're even here.  But

16  they appear to be orchestrated by him to limit his liability

17  and the liability of Free Speech Systems.  So I don't even

18  know that it really even matters.  It's to his benefit.  He

19  wants these cases to go, then he can decide to fund these

20  cases.  If he doesn't want them to go, to try and do

21  whatever it is that he's trying to do, then he can pull the

22  purse strings and back off and these cases can be dismissed,

23  which perhaps they should.

24          THE COURT:  Thank you.

25          MR. BEATTY:  Your Honor, if I may.  I represent a

 1    group of creditors who I am going refer to as the Texas

 2    Claimants.

 3                THE COURT:  Okay.

 4                MR. BEATTY:  And these are the cases that

 5    ultimately -- one of which was scheduled to start on Monday.

 6    This bankruptcy halted that process and slowed down

 7    ultimately the liquidation of damages not only against the

 8    Debtors -- I think that's relatively minor.  We can see

 9    within the context of what's already been filed that these

10    Debtors don't really operate a business.  The bankruptcy

11    itself was filed to protect Alex Jones and to protect Free

12    Speech from having to face trial on Monday.

13                And I think Your Honor has looked at and seen some

14    of the issues that we identified initially.  But I think

15    there's a lot more than that.  And I think that we have

16    gateway and threshold issues that have to be answered before

17    anyone should go forward in deciding who is a trustee of a

18    trust that apparently has holes in the documents and will

19    need to be changed and who is going to be appointed to run

20    these, and so on and so forth.

21                So just as a preliminary issue, I have some

22    problem with saying that we're going to hear that in 20 more

23    days.  Because I think this Court is going to need to decide

24    the propriety of this bankruptcy well in advance of that.

25    There are a lot of attorneys in this room right now.

1    There's a lot of billing that's going on that to me may be

2    wholly unnecessary.  And all it's doing is causing delay.

3         And, Your Honor, I think one of the things we have

4    to decide right off the bat, is this case subject to

5    dismissal, is it subject to conversion, should it be a

6    Subchapter V even?  Those questions have to be answered

7    before we spend that extra money.  And what we've already

8    seen in the PSA, that plan support agreement, is if you did

9    any of those things, that plan support agreement is dead.

10   If this isn't a Subchapter V, dead.  Dismissed, dead.

11   Converted to a seven, dead.  There is no intent on funding

12   unless they can effectively force third-party releases into

13   a bankruptcy plan.  That's not permitted in the Fifth

14   Circuit.  This is a near (indiscernible) opportunity for

15   them.  They are trying to get a release for Alex Jones and

16   for Free Speech.  And they are attempting to do it without

17   the transparency that's inherent to a bankruptcy process.

18   Because when you look at those agreements, certainly the

19   trustees have some opportunity to look at budgets for Free

20   Speech, for Mr. Jones.  But when you look at the agreement,

21   at best, there's a weak, toothless oversight board who

22   doesn't necessarily have any right to look at any of these

23   confidential documents.  So I think the threshold question

24   for this Court before we move forward, before we do anything

25   else, is whether or not this case should be dismissed.

```
 1          The Fifth Circuit says that good faith implies an
 2    honest intent and genuine desire on the part of the
 3    petitioner to use the statutory process to effect a plan of
 4    reorganization and not merely as a device to serve some
 5    sinister or unworthy purpose.
 6          And let me tell you, I think we've got a sinister
 7    and unworthy purpose here.  I don't think -- and even if I
 8    am wrong on that, we don't have an actual intent to
 9    reorganize here.  And I say that because you can look at the
10    Schwartz declaration which was filed with every single one
11    of the petitions.
12          And I want to read a paragraph.  It's Paragraph 8.
13    "I have learned that the Debtors have no purpose other than
14    to hold assets which may be used by other entities.  They
15    undertake no business activities.  They do not sell, rent,
16    or lease to others anything.  Their assets do not generate
17    any income for them.  They have no bank accounts and cannot
18    pay money to anyone for any reason.  They have no debt other
19    than liabilities, other than those related to pending or
20    potential litigation.  For these reasons, they have no
21    financial statements or books of account, and they do not
22    file income tax returns."
23          I don't know what we are trying to reorganize
24    here.  We're not setting up a business to contain them in
25    the future, we're channeling settlements and forcing it down
```

003758

1    Plaintiff's throats.  They want to use a claim estimation
2    procedure, and it's transparent why that needs to occur to
3    them, because they want to face the state court.  We can all
4    say we have disagreements about what the value of those
5    claims are worth.  I am certain if you ask the Defense
6    attorneys from the state court litigations, they would tell
7    you none of the claims are worth much.

8         But even without ever talking to any of the
9    plaintiffs, you see an agreement that suggests there is
10   going to be $2 million put in and a stream of income worth
11   another five.  So at a minimum before we can even negotiate
12   with them, they're telling this Court $7 million in
13   liability.  And the claims estimation procedure, I don't
14   think that -- that's not a process where we have a lot of
15   different claims that will take forever to decide.

16        Again, two of my clients' claims would have been
17   decided.  The dollar amount would have been done.  The other
18   claims are all set for trial in state court.  But there's
19   just a series of poison pills in the trust agreement and the
20   PSA.  If you lift a stay, that -- no more payments.  No more
21   payments from Jones.  If there is a remand, no payments.  On
22   and on and on.  Conversion, dismissal, anything.  It's all
23   dead.

24        This is a situation where the first question for
25   this Court is is this proper.  And I don't want to see all

```
 1    the parties here continuing to spend money on what I think

 2    is tertiary before that actual question gest answered.

 3            And, Your Honor, the simple issue is that you can

 4    look at it and see that it will fail just based on the

 5    question of whether or not they are a Sub V debtor.  You

 6    know?  To be a Sub V debtor, you have to be a person engaged

 7    in commercial or business activities.  Mr. Schwartz has

 8    already told us neither of those items are true.  They don't

 9    accept money, they don't get paid.  They don't pay anything.

10    They don't operate.

11            So if Sub V is inappropriate, the PSA is down.

12    There is no money.  These are the things we need to look at

13    first, Your Honor.  I don't think we need to make any other

14    decisions.

15            MR. WILLIAMS:  Thank you.  Your Honor, Randy

16    Williams for David Wheeler --

17            THE COURT:  Good morning.  Just get to a mic.  I

18    just want to make sure they can hear you on the...

19            MR. WILLIAMS:  Sorry, Your Honor.

20            THE COURT:  No worries.  Good morning.

21            MR. WILLIAMS:  David Wheeler and the other

22    Connecticut plaintiffs.

23            I think Mr. Beatty has very eloquently and

24    concisely laid out the similar concerns that our clients

25    have and that the fundamental issue here is in light of Mr.
```

```
 1    Schwartz's declaration, what are we doing here?  And, Your
 2    Honor, I will for the record object to Mr. Schwartz giving
 3    any further testimony beyond what he has already declared in
 4    that declaration today.  Because what have we learned so far
 5    today?  That we want to get trustees approved for a trust
 6    that the trustees don't even agree to what it's going to
 7    look like or say.  And we don't know when we're going to get
 8    it or when we're going to have it.  And we're talking about
 9    setting hearings and how long we can go, but we don't know
10    when they're going to get a trust agreement that they're
11    happy with or when we're going to be able to see it.
12          And no clock should start ticking and no deadline
13    should run on us until they come forward and give notice of
14    what it is that they want to do.  You've got a PSA we've
15    talked about.  It's not a PSA, Your Honor.  It was
16    negotiated between Alex Jones and himself.  Who stood up on
17    the other side for anybody?  Because again, look at Mr.
18    Schwartz's declaration to these petitions.  These entities
19    don't qualify for Subchapter V.  They don't even qualify to
20    be in the Chapter 11.  This has all been done for the
21    benefit of Alex Jones and Free Speech.
22          And let's talk about that for a minute.  Your
23    Honor, these cases that were being litigated in Texas and
24    Connecticut have been going on for years.  And in the course
25    of those cases, these Debtors, Mr. Jones and Free Speech,
```

1  have all suffered death penalty sanctions because of their

2  conduct before those courts.  They removed the Connecticut

3  cases, they removed the Texas cases back to (indiscernible)

4  court.  That's not the first time that's happened.  In

5  Connecticut I know it's happened at least twice, and twice

6  they've been sent back.  We've already filed an emergency

7  motion in Connecticut to remand that case, and the

8  Connecticut judge has said that the trial date as to Mr.

9  Jones and Free Speech in September of this year that's

10  already been set and was already pending, as soon as she

11  gets the case back is going to stick.  And again, if they

12  wanted to estimate these claims and know what the real

13  liability was and they've really spent $10 million in legal

14  fees that ended up in them having their pleadings struck and

15  death penalty sanctions, then why didn't they go to court on

16  Monday and see what happened in that case?  Because that

17  would have laid a groundwork that would have then led to

18  something in the way of putting together a plan.

19          Your Honor, being on the bench, you have a lot of

20  experience with Chapter 11 cases I know in your practice.

21  And you know that if there's a real desire to put together a

22  plan and bring people together and forge a settlement

23  between Claimants and Debtors, that there's some negotiation

24  that goes on with someone pre-petition.  And here, it's

25  nonexistent.  They came up with all of this on their own.

```
 1              Actually, Mr. Jones did it.  And he's put $750,000
 2    into the trust that's already -- you ask about Mr. Schwartz.
 3    And based on what I read, Your Honor, Mr. Schwartz has
 4    already exhausted over $30,000 of his $50,000 retainer that
 5    he got.  He filed these cases.  And if his declaration,
 6    which I accept as true, then Your Honor, filing schedules
 7    and statements in these cases with no bank accounts, no tax
 8    returns, no income, no expenses, has got to be a pretty easy
 9    process.
10              But mostly I want to get back to we've got to get
11    to the fundamental issue here.  We've had somebody who,
12    because of his behavior and the behavior of the entities
13    that he owned and controlled and ongoing litigations in
14    multiple courts in Texas and Connecticut face death penalty
15    sanctions.  And Connecticut, those death penalty sanctions
16    were appealed and he lost.  And they were upheld.  That's
17    how bad the conduct has been.  And now we're in another
18    court here trying to do a Subchapter V where you don't get a
19    Committee and have a say.  Only the Debtor can file a plan.
20    Your Honor, this just isn't right.
21              One of the colleagues from Connecticut in our
22    initial meeting with us said this process is illegitimate.
23    And at the time, I was thinking that's a really strong word.
24    And then I slept on it.  And I told Mr. Chapple, I said,
25    well, I've got to apologize to her because she's absolutely
```

003763

1   right.  This is illegitimate.  And before this Court begins

2   taking steps to move things forward or treat things as

3   first-day hearings, the Court needs to look at whether or

4   not this is proper and appropriate, and we need to be taking

5   all those other steps.

6          Again, we don't even have a trust agreement.

7   That's the first thing we get told today is when -- and I

8   didn't hear Mr. Lee say it.  He said he didn't want to go

9   forward with it.  But it was counsel for these proposed

10   trustees, said, well, we don't have a trust agreement.  So

11   what are we going to have?  And why are we talking about

12   what it might be when -- why aren't we looking at the issue

13   again of why we're here?

14          And another thing, Your Honor, that's troubling to

15   my clients -- and with all due respect to the Court, why are

16   we in Victoria?  We've pulled the records on these three

17   entities from the Secretary of State up through November of

18   last year.  Every information report that's been filed,

19   every document that's been filed on these entities says that

20   they're domiciled, their assets and their principal place of

21   business was a PO box in Austin, Texas.  So why do these

22   cases get filed in Victoria?  And if Mr. Schwartz's

23   declaration is true, then how do we get to Victoria if we

24   don't have any employees, if we don't have any business

25   until the last umpteen years that these companies have been

003764

```
 1   in business with always saying we were in Austin -- or not

 2   in business, that they were in existence.  I apologize, Your

 3   Honor.

 4        So again, we do intend to file an emergency motion

 5   to dismiss because we want dismissal considered before we

 6   move forward with any of this first-day issues or having

 7   anyone talk about -- I don't know what information Mr.

 8   Schwartz can give us beyond his declaration.  And again, I

 9   don't -- we are very concerned that to the extent the Court

10   comments on and takes testimony in this case, it begins to

11   legitimize the process.  But again, I agree with my

12   Connecticut counsel, I will --

13        THE COURT:  Let me just tell you though, today was

14   the first day and there were two motions set.  And I read

15   objections that were filed to them, and no one is going

16   forward today on anything.

17        I'm giving comments based upon things that I

18   thought about when I read the overall case, read the

19   documents.  I don't think anyone should read anything other

20   than that.  I had two m options in front of me, and I found

21   out they're not going forward today.  If someone files

22   another motion, I'll take that up and consider it.

23        So if people want me to consider something, then

24   they'll file something and I will consider it.  And it

25   sounds like you are.  And when that's filed, I'll consider
```

```
 1    it.  But right now, I have two motions and I'm trying to

 2    find out -- the Debtor has filed two motions and then asked

 3    for consideration of them.  I've got a duty to think about

 4    the timing of those questions, and I'm raising other

 5    questions.  And if somebody files something, then we'll take

 6    that up.  But somebody has to file something for me to

 7    consider it.

 8            MR. WILLIAMS:  Both of those motions are premised

 9    on a trust document that you've now been told the two

10    trustees that you were asked to appoint, don't approve of

11    them.  So again --

12            THE COURT:  That's why I'm asking the question.

13    I'm telling you --

14            MR. WILLIAMS:  But we don't have notice of what

15    it's going to be or what we're going to do.  (indiscernible)

16    set something --

17            THE COURT:  I agree with you.

18            MR. WILLIAMS:  We don't know what it's going to

19    be.

20            THE COURT:  That's why I'm asking questions about

21    timing and what that looks like.  I don't know.  But I think

22    Mr. Lee is going to have to give me an answer to that

23    question.  And I agree with you.  We can't set a hearing

24    until there's a document that everyone can look at.  Not

25    just me, but other parties and have an opportunity to review
```

1   and observe, and Subchapter V trustee, your client.  I don't

2   know what that timing looks like.

3          So I don't know whether 20 days, 60 days makes

4   sense.  I think they're going to have to tell us when that

5   document stops moving, and then we can set a date.  And if

6   there are other motions that are filed before then, then

7   I'll consider those motions as well.

8          We just have to run a transparent -- and a process

9   that's based upon -- and I'm not saying you're saying

10  anything different.  But you need to run a process where

11  there's transparency and there's due process afforded to all

12  parties.  And I'm not going to jam anyone on an emergency

13  motion based on a document that someone has seen 24 hours in

14  advance.  I'm not doing that.  So let's just -- I think Mr.

15  Lee is going to have to -- and maybe with the input of Mr.

16  Okin.  And maybe that's not today.  But I don't think -- and

17  maybe it's just continued to a date to be determined.  But I

18  think on the CRO motion, they need to -- someone needs to

19  tell me when they want to come back.  And on the trust

20  document, I think we're going to have to find out.  And if

21  there's another motion or something else that gets filed,

22  we'll take that up in due course.

23         And I don't think I'm -- I'm not disagreeing with

24  anything of what you're saying.  I'm just highlighting for

25  the parties in the room and for those who may be listening

1   that, you know, we're going to run a process based on the

2   federal rules of bankruptcy procedure.  We're going to

3   follow the Bankruptcy Code, and we're going to follow due

4   process to all parties in interest.

5        So I don't -- you know, I'm commenting on

6   documents that were in a motion that was before me.  That's

7   it.  I don't think anybody should read one way -- I'm not

8   legitimizing or delegitimatizing anything.  I think I've

9   probably asked more questions than Mr. Lee probably wanted

10  me to ask.

11       I'm just kidding.  I'm just kidding, Mr. Lee.

12       MR. WILLIAMS:  Respectfully, Your Honor, with

13  regard to asking Mr. Lee or Mr. Okin, it's Mr. Battaglia or

14  Mr. Jordan, whom I'm glad announced today whom they were

15  representing, since when they filed their notices of

16  appearance, they chose not to identify their clients in

17  those documents.  I did see in the attachment to the trust

18  document for the budget that they had gotten retainers to

19  represent Mr. Jones.

20       It's interesting that a trust that's supposed to

21  be for the benefit of injured parties -- and again,

22  liability has already been established.  That's not an issue

23  here.  The only issue is the dollar amount of that.  And

24  again, if you really wanted to have that decided, you could

25  have good clues starting next Monday, but Mr. Jones chose

003768

```
 1    not to do that.  He created this bizarre system that we see
 2    here, which we still don't know what it is.  But it's not
 3    the Debtor or the trustees, who are not actually trustees,
 4    who can answer your questions.  It's Mr. Jones and Free
 5    Speech.  Because as Your Honor has pointed out, they're the
 6    ones who are using their money, and they want releases for
 7    that, as Mr. Beatty has pointed out.  But they don't want to
 8    come into this Court.  They don't even want to have their
 9    lawyers file notice of appearance that identify who they are
10    appearing on behalf of.  They want the benefit of bankruptcy
11    without being in bankruptcy.  We'd be having a whole other
12    discussion at be at a whole other position today, Mr. Beatty
13    and I, and Mr. Jones and Free Speech for part of it.  But
14    the truth is, they're not.  They're staying outside of it.
15    And that's not right.  They shouldn't be -- they're getting
16    the advantage of the stay of these debtors to keep that case
17    from going forward on Monday, and they paid $750,000 of all
18    these professionals, plus some folks on the screen there, to
19    get them to make that happen.  And our folks are just
20    waiting to liquidate their claims, claims that need to be
21    liquidated in state court that shouldn't be liquidated as
22    part of a bankruptcy because the Court's jurisdiction, if it
23    did have jurisdiction, would be tenuous at best.
24            But again, Your Honor, I don't have anything else
25    to add at this time.  I appreciate that we are not going
```

```
 1    forward today.  We had only filed an emergency motion to
 2    continue.  We do intend to object -- well, we intended to
 3    object to the motions as filed.  Since they're going to
 4    change, we don't know what we're going to do to those.  But
 5    we will be filing an emergency motion to dismiss these cases
 6    on the grounds that Mr. Beatty has raised and I echoed
 7    today.
 8              THE COURT:  Okay.  Thank you.
 9              MR. BATTAGLIA:  Your Honor, may I briefly be
10    heard?  This is Ray Battaglia.
11              THE COURT:  Yes.  You've identified yourself.
12    There's a lot of boxes, so I appreciate you saying that.
13              MR. BATTAGLIA:  I'm not going to address all of
14    the things that are before the Court, but there are a couple
15    questions that were raised, and much has been said about, I
16    don't know, maybe some (indiscernible) responsive how my
17    appearance was entered and how this trust agreement is not a
18    final document.
19              And I think the Court should appreciate that the
20    trust agreement was negotiated somewhat in the blind.
21    That's not to suggest that Mr. Lee did not act on behalf of
22    his clients in reviewing it.  But at the end of the day,
23    parties who need the most input are the trustees.  And the
24    interim trustee has literally no power under this document,
25    as appropriate.  So the appointment of the trustees is a
```

```
 1    very important step in getting that document to final.
 2              I don't think Mr. Okin -- and he can comment on
 3    this.  I don't think we're talking about a wholesale rewrite
 4    of this document.  I think there are issues that he brought
 5    up this week to us that we were expecting, a first turn of
 6    the document.  And of course the third-party funders are
 7    amenable to reasonable modifications to that document.  But
 8    I think that the suggestion that somehow there is something
 9    nefarious about this being less than a complete document is
10    absurd.  We negotiated as best we could a document that
11    serves the purpose of trying to pay allowed claims in full.
12    And the other thing I think that's missing here is that
13    should the case have gone to trial in Austin, there's a
14    significant likelihood that there would be no money for
15    anybody.  And that's the intent here, is to try to preserve
16    a means to pay allowed claims.  And that's what this system
17    is set up to do.  I could dispute a lot of other things, but
18    I think those are the most important thing.
19              I think, Judge, your comment about April 30th, of
20    course we're not going to hold an  April 30th deadline, but
21    we do need this to move forward with some speed so that we
22    know that we've got people we can talk to on the other side
23    to get these documents into final shape.
24              THE COURT:  Okay, thank you.  Anyone else wish to
25    address the Court at this time?  Is there anyone on the line
```

003771

```
 1   who wishes to address the Court?  Hit five-star.  Okay.
 2         MR. LEE:  Good morning, Your Honor.  For the
 3   record, Kyung Lee.  I want to apologize.  My bladder is not
 4   as strong as it used to be when I was younger, and that's
 5   the reason I took a little break.
 6         I just want to say one thing if you allow me to
 7   put Mr. Schwartz on without any objection from this
 8   audience.  I just need to tell you, the parties have been
 9   working here very hard, in good faith to create a proposal
10   to, one, pay creditors, and two, to pay them in an equal
11   fashion.  I think those are really pretty legitimate
12   purposes of the Bankruptcy Code which I feel very good about
13   saying to you and to this entire group here, that I feel
14   very proud of being able to bring to this Court a process to
15   do that.
16         Yes, it may have some warts on it.  And yes, it's
17   not perfect.  But it's a proper purpose of this Court and to
18   this process in my view, for the 40 years I've been doing
19   this, to bring to this Court a structure that allows for
20   resolution of the bickering that's been going on for the
21   last ten years in which Mr. Schwartz and I have brought to
22   the table on Day 1 of a bankruptcy case $10 million to be
23   made available and for equal sharing of that money among
24   creditors, and yet I hear nothing, nothing but complaining
25   by those who actually want the money or who are entitled to
```

1    the money.

2          And so I say to you, Your Honor, there must be

3    something else going on for people to complain about that

4    when for ten years they've had nothing to be able to collect

5    on any of their judgments.  And I find that quite upsetting

6    on my part to have worked this hard to bring to the table

7    this kind of a structure and hear nothing but complaints

8    when the effort has been done solely to bring to the table a

9    structure that has fiduciaries watching over this process

10   for the next five years and bringing $10 million to the

11   table as a first offer on the table with the parties that

12   they believe caused all this injury.

13         And so with that said, Your Honor, if I may, I'd

14   like to be able to show this Court what we've done, why

15   we're here, and what we're trying to do.  And again, in a

16   non-adversarial fashion to try to present to you --

17         THE COURT:  I don't know if that's possible today,

18   Mr. Lee.

19         MR. LEE:  Again, I'm going to tone down my

20   rhetoric in my presentation.  But I didn't have a

21   presentation for you --

22         THE COURT:  Yeah.  If it's in the form of a

23   presentation, I have no problem with it.  If we're going to

24   -- the declaration isn't admitted into the record.  So

25   there's no evidence and there's no motion to go forward.  So

003773

1    I don't need to take evidence about anything.  There's

2    nothing going forward today and there's nothing that Mr.

3    Schwartz -- I want to make sure he's clear about this --

4    that will be used in connection with support of any motion

5    that may or may not go forward today.  We don't have dates

6    on anything.  So if what Mr. Schwartz wants to do is provide

7    what typically happens in a Chapter 11 case, someone

8    provides background information about why we're here and

9    what you intend to accomplish, I've got no problem with

10   that.  I just want to make sure that everybody is really

11   clear, this is not going to serve as evidentiary in support

12   for any motion because there is no motion before the Court

13   today.

14        I will also tell everyone there is clearly -- and

15   I understand it -- a lot of emotion on both sides.  It's

16   completely justifiable, and I understand it.  My job is to

17   not focus on that.

18        MR. LEE:  Yes, Your Honor.

19        THE COURT:  My job is to rule on matters that are

20   before me, the legal issues that are before me.  There are

21   parties who are being referenced who are not here, but who

22   are certainly parties in interest.  They are party

23   contributors.  And I've got to consider that.  There are due

24   process issues that are being raised, there are motions that

25   sound like they're going to get filed.  And when we take

1    them up, I may rule on them based on the evidence that is

2    before me.

3           I think some of the concerns, Mr. Lee, are legit.

4           MR. WILLIAMS:  And I understand, Your Honor.

5           THE COURT:  And there are legitimate concerns

6    about how we're here based on the papers.  Mr. Schwartz

7    wants to talk today.  Give him an opportunity to talk.

8           MR. RUFF:  Your Honor, I would actually object to

9    -- I don't know -- what is he going to inform the Court

10   about?

11          THE COURT:  Look, what I am anticipating -- and

12   Mr. Lee will have to (indiscernible) -- is kind of a generic

13   Chapter 11 presentation.  I have questions about these --

14          MR. RUFF:  Well, I have a lot of questions too,

15   Your Honor.  I think everybody in this room has a lot of

16   questions. But Mr. Schwartz is being put up as the chief

17   restructuring officer.

18          THE COURT:  No, he's not being put up for that

19   reason.  If he's going to stand -- if Mr. Schwartz wants, he

20   can stand here and tell me about background information

21   about the case.  This is not going to be used as testimony

22   in any way.  Because if that's the case, then Mr. Schwartz

23   better be ready for a lot of folks cross-examining him

24   today.  If this --

25          MR. RUFF:  Will there be an opportunity to ask

```
 1    questions of Mr. Schwartz?

 2            THE COURT:  If Mr. Schwartz is going to speak.

 3    Mr. Schwartz can answer questions.

 4            MR. LEE:  I have no problems with that, Your

 5    Honor.  Mr. Schwartz is --

 6            THE COURT:  That's what I'm saying.  If Mr.

 7    Schwartz is going to -- just like every Chapter 11 case, if

 8    there are questions of the person who stands up and provides

 9    a presentation, folks get to ask questions.

10            MR. LEE:  We intend to run a transparent process,

11    Your Honor.

12            THE COURT:  I'm just saying this is not going to

13    be where Mr. Schwartz makes a statement and no one gets to

14    ask questions.  If Mr. Schwartz wants to make a statement,

15    people get to ask questions.

16            MR. RUFF:  I guess --

17            THE COURT:  I have questions.  And I'm going to

18    get my questions answered is what I'm saying.  And you may

19    like the questions I ask.

20            MR. RUFF:  I liked the questions that you asked

21    already, Your Honor, as I said at the outset.  And again,

22    this case begs many questions.  I just -- again, you are

23    here today for a specific purpose.

24            THE COURT:  I agree.

25            MR. RUFF:  We don't even know what these cases are
```

```
 1    about now.  The Debtors admittedly, Mr. Oaken --

 2              THE COURT: That's what I'm trying to find out.

 3              MR. RUFF:  Well, okay, very well.  But whatever he

 4    says today might be without any merit, because it might all

 5    change is what I think we heard today.

 6              THE COURT:  I guess that's what I'm saying.  Isn't

 7    that something you would want to know?

 8              MR. WILLIAMS:  No, Your Honor.  Until we have a

 9    document that we know is --

10              THE COURT:  I'm not talking about the trust

11    agreement.  I'm talking about general background information

12    about who does IW help.  That's the question I have.  What

13    do they do?  Are they still conducting business activities?

14    He says no, but I'd like to hear it from him.  Are they

15    conducting commercial activities?  I'd like to know the

16    answer to that question.  Folks, I get to ask questions.  I

17    get it, you get a check, but I get to ask questions.

18              MR. WILLIAMS:  I have no problem with you asking

19    questions, Your Honor.  But with respect to the declaration

20    -- and I know it was offered as an exhibit -- it is part of

21    the record in all three of these cases, at least one

22    administered cases.  I would ask that the Court take

23    judicial notice of that declaration and make it part of any

24    record about what he is going to talk about.  Because I

25    think all your questions are actually answered in that
```

```
1    declaration.  And if he is going to say something different
2    today than what's in --
3              THE COURT:  You don't know that, because you don't
4    know the questions I'm going to ask, Mr. Williams.
5              MR. WILLIAMS:  Well, he talks about bank accounts
6    and --
7              THE COURT:  You don't know what I'm going to ask,
8    Mr. Williams.
9              MR. WILLIAMS:  Yes, Your Honor.  I object to there
10   being any testimony today.
11             THE COURT:  There's no testimony.  Mr. Williams,
12   you've been part of a million Chapter 11 cases.  People get
13   to present information at the beginning, at the outset of a
14   case.  That's all -- and if Mr. Lee goes too far, I'm going
15   to shut it down.  It's really simple what's happening here.
16   In every Chapter 11 case, someone gets to make a
17   presentation and the Court gets to ask basic questions about
18   the Debtor.  Why are you here?  How did you get here?  Who
19   are these three entities?  What are they doing?  Why are we
20   in Victoria?  I get to ask a bunch of questions.  It sounds
21   like you would want to know some of the answers to some of
22   these questions.  Maybe there are questions you don't want
23   to know the answer to, but you get to ask questions.
24             MR. WILLIAMS:  Again, Your Honor, respectfully, I
25   have no problem with you asking any questions that you have
```

1    about anything related to this.  I do have a problem with

2    Mr. Schwartz making any presentation because this is not a

3    typical case.  These folks are victims, not creditors.  The

4    liability has been established.  The only issue is how much.

5    Mr. Lee wants to take credit for a document --

6             THE COURT:  I'm not doing any of that.

7             MR. WILLIAMS:  -- that's been (indiscernible) that

8    doesn't exist.

9             THE COURT:  Mr. Williams, I understand.  But you

10   have to -- you said you have no problem with me asking

11   questions.

12            MR. WILLIAMS:  No, Your Honor.

13            THE COURT:  Okay.  So, Mr. Schwartz, can I ask you

14   a few questions?

15            MR. SCHWARTZ:  Yes, Your Honor.  (indiscernible)

16   please?

17            THE COURT:  You can stand right there.  You can

18   take that microphone right there.

19            It sounds like you have a short presentation you'd

20   like to make.  What would you like to tell the Court?

21            MR. SCHWARTZ:  Well, (indiscernible).

22            THE COURT:  If you can just get the microphone a

23   little bit closer to you.

24            MR. SCHWARTZ:  What we're trying to do -- and I

25   got involved (indiscernible) in this process that

003779

1    (indiscernible) the strategic plan, which (indiscernible).

2    But I was involved after that in a lot of the other matters.

3    But essentially to set up in a single location, a single

4    venue the claims -- the claims determination process, the

5    damage determinization process in a manner independent of

6    any influence by Mr. Jones or any of his associates and to

7    negotiate with Mr. Jones, which is what we did, creating the

8    fund, the initial fund is $9.8 million, to pay the claims

9    over a period of five years under the supervision of the

10   trust.  That's my legal description of what we're trying to

11   do.  The goal was to pay off other claims.

12         Mr. Jones also, as everyone has heard, put up

13   $725,000, and we'll continue dialogue with him.  I would

14   call it a negation (indiscernible) more serious money than

15   that, we need to put up $2 million.  And then I discovered a

16   royalty that was being paid to Mr. Jones that will have

17   documentation to support this.  The (indiscernible) that was

18   given to me was at some point in time IWHealth was the party

19   that generated or created that royalty and that Mr. Jones

20   for some reason at some point in time (indiscernible) paid

21   the royalty directly to Mr. Jones.  They got to have that

22   royalty back.  And he agreed to give us that.  And then also

23   we negotiated that $250,000 a quarter over five years to get

24   our total fund up to $9.8 million.

25         This was a negotiated process.  It was not Mr.

003780

```
 1    Jones telling us what he was going to do and us saying okay,
 2    fine, we'll take that.  I had no idea who Mr. Jones was.  I
 3    didn't even know until April 4th.  And Mr. Lee approached me
 4    and I had to go find out who is this guy.  I had never heard
 5    of him.  I hadn't heard of Infowars.  I was not very
 6    interested in conspiracy theories.  (indiscernible) landing
 7    on the moon, and I don't pay much attention to it.  So that
 8    was the -- just of how we got here.
 9            A little bit about the structure.  There are two
10    entities in the Jones business enterprise, two legal
11    entities that are responsible for all of the money
12    generation.  FSS, which is the marketing arm that reaches
13    out to his audience and sells everything from t-shirts to
14    vitamins and mineral supplements and emergency food
15    supplies, (indiscernible) that you could use.  Everything
16    you would expect, from books and whatever else.  That --
17    most of that inventory is supplied to FSS by a company
18    called PQPR.  And they are --
19            MR. LEE:  Let me interject.  There's an Exhibit 6,
20    if I may approach, Your Honor, that's already in the
21    binders.  It's corporate diagram that might help the
22    audience as well as the Court.
23            THE COURT:  Just refer to a docket.
24            MR. LEE:  It's Exhibit 6 in the witness's binder
25    book, Your Honor.
```

```
 1              THE COURT:  Okay, thank you.

 2         MR. SCHWARTZ:  And if you look at the PQPR

 3    (indiscernible) supplies most of the product, not all of it.

 4    Third-party vendors also supply the product, too.  But

 5    that's where the money comes from.

 6              As you know, or they know, Jones and his companies

 7    have been severely -- the word is they were cast out

 8    (indiscernible) or they have had problems (indiscernible)

 9    banks.  But any kind of service.  So they are very careful,

10    conscious, of trying to maintain their current vendors.

11              One of the concerns that came up, and we're

12    looking at this, was the question of filing the bankruptcy

13    is that that would probably push FSS over the top and it

14    would lose all of its or most of its vendor connections and

15    it could no longer survive.  In 2018 and 2019 -- I'm working

16    off memory here.  I'm 71 years old, so it doesn't always

17    work.  But there was something like -- FSS generally did

18    something like 76 to 79, almost $80 million of revenues in

19    those two years.  That's a significant amount of money.

20         MR. WILLIAMS:  Your Honor, if I could respectfully

21    -- we are hearing about entities that he is not CRO for and

22    that aren't debtors in this case.  And if we're going to

23    have a presentation about the debtors in this case, I don't

24    need to know what their strategy was about why Mr. Jones

25    elected not to file another --
```

003782

1          THE COURT:  I have a question, Mr. Williams.

2    Thank you.  Please continue.

3          MR. SCHWARTZ:  Continue?  Okay, 76, 78 million

4    dollars of revenue from those two entities.  The -- if you

5    look at the impact of the litigation in 2021, I would

6    estimate (indiscernible) books be closed for 2021.  But

7    based on the merchant receipts from the credit card

8    operations, the revenue 2021 is approximately $56 million.

9    $20 million less than it had been in the past.

10         THE COURT:  So at some point over the last --

11   let's just call it -- you said you (indiscernible) around

12   April 4th.  So let's say sometime early this month.

13         MR. SCHWARTZ:  Yes.

14         THE COURT:  (indiscernible) with respect to the

15   three entities that are in bankruptcy today.

16         MR. SCHWARTZ:  Yes.

17         THE COURT:  So let's talk a little bit about that.

18   Can you just tell me a little bit about each -- your

19   understanding as to each entity that's in bankruptcy.  So

20   I'll start with the first one.  Infowars LLC.  It's InfoW

21   LLC, which was formerly known as Infowars.

22         MR. SCHWARTZ:  Correct.

23         THE COURT:  When did it change its name?

24         MR. SCHWARTZ:  It was changed in April.

25         THE COURT:  In April?  Do you remember when?

1          MR. SCHWARTZ:  No, I don't.

2          THE COURT:  Sometime before the filing?

3          MR. SCHWARTZ:  Oh, before the filing.  It was

4    shortly before the filing as I recall.

5          THE COURT:  Okay.  And --

6          MR. LEE:  And, Your Honor, if I may interject

7    here.  Part of the reason the name was changed --

8          THE COURT:  I don't want to get into the part of

9    the reason the name was -- I just want to understand.

10   Because at this point -- what does InfoW LLC do?

11         MR. SCHWARTZ:  InfoW LLC owns the trade name

12   Infowars.  Infowars is the name that FSS uses to market its

13   products, and that is the name that Alex's podcasts go out

14   under.  So it is the trademark.  It's the Coca-Cola for the

15   (indiscernible).

16         THE COURT:  I won't hold you to these numbers, but

17   just help me understand.  So let's just say within the 40

18   days before the filing, how much cash did -- or maybe on the

19   petition date, how much cash do you think InfoW holds?

20         MR. SCHWARTZ:  InfoW has no cash.  Up until the

21   time it was transferred to the trust, it was owned by Alex

22   as just part of his business operation.  I don't know why.

23         THE COURT:  What sources of revenues in the last

24   90 days?

25         MR. SCHWARTZ:  InfoW (indiscernible) he annualized

```
 1   his revenue (indiscernible) for use of the trade name that
 2   it owns.
 3              THE COURT:  Okay.  Okay.  so let's turn to
 4   IWHealth LLC.  Okay.  Let's just -- what does IWHealth LLC
 5   do?
 6              MR. SCHWARTZ:  IWHealth holds a royalty interest.
 7   And it's referred to a royalty.  And what it is, it's a
 8   commission that is paid by Youngevity to the Jones
 9   enterprise for the sale of Youngevity products on the FSS.
10   But that royalty started in April, generally before the
11   filing.  It is now paid to IWHealth.  That was the amount I
12   said we discovered and I said has to come back here to --
13              THE COURT:  Do you know how much that amount was?
14              MR. SCHWARTZ:  About $38,000 a month.
15              THE COURT:  $38,000?
16              MR. SCHWARTZ:  A month.
17              THE COURT:  A month?
18              MR. SCHWARTZ:  Yes, sir.
19              THE COURT:  Is it currently receiving?
20              MR. SCHWARTZ:  Yes.
21              THE COURT:  And so I think you mentioned that FSS
22   sells in markets.  It's a non-debtor.  Does IWHealth sell
23   and market anything or does it just receive that royalty?
24              MR. SCHWARTZ:  It just receives that royalty.
25              THE COURT:  Okay, thank you.  Was it receiving any
```

1    royalty interest before?  Like let's just say with in the 90

2    days before the filing?

3              MR. SCHWARTZ:  Well...

4              THE COURT:  Go ahead.  I'll tell you why I'm

5    asking.  I don't want you to be confused by my question.

6    You mentioned that there was a direct pay at some point, and

7    then you stopped.  Or you stepped in and said no, it's got

8    to go directly to IW health, the royalty payment.  What was

9    the pre-bankruptcy arrangement before you...

10             MR. SCHWARTZ:  Pre-bankruptcy, the royalty was

11   sent to Alex Jones directly, his personal bank account.

12             THE COURT:  Okay, thank you.

13             MR. SCHWARTZ:  And I discovered that

14   (indiscernible) that was a Monday.  Because that's when I

15   went to Austin.  So prior to that date, it was not receiving

16   any royalty..

17             THE COURT:  Okay.  And then there's one more.

18   Prison Planet TV LLC.

19             MR. SCHWARTZ:  Prison Planet owns a number of

20   videos that were produced and developed by Alex Jones'

21   enterprise.  I think eight, 10, 12 or something like that.

22   There's a list of them.

23             THE COURT:  Aside from own them, what does it do?

24   It just owns them?

25             MR. SCHWARTZ:  It's similar to...

```
1                THE COURT:  InfoW?

2                MR. SCHWARTZ:  InfoW.  It just owns them.

3                THE COURT:  How much cash do you think it held on

4    the petition date?

5                MR. SCHWARTZ:  It held zero.

6                THE COURT:  It held zero.  Within the 90-day

7    period before the petition date, was it generating any

8    income?

9                MR. SCHWARTZ:  The 90 days before -- so just like

10   InfoW, owned by Alex Jones a hundred percent.  And half of

11   its assets were used (indiscernible) FSS.  It was not

12   anything for that use.

13               THE COURT:  Okay.  Okay.  I guess I can ask you

14   and I can ask Mr. Lee.  And I think Mr. Lee has already

15   asked the question.  What do you believe the purpose of

16   these Chapter 11 cases is?

17               MR. SCHWARTZ:  The purpose?  The purpose is to

18   arrange to pay all of the plaintiffs the amount of their --

19   let's say in a bankruptcy sense, their allowed claim in

20   full.  That's the purpose.

21               THE COURT:  So when the pleadings talk about

22   paying it in full, you are referring to a defined term in

23   the trust agreement that basically says whatever the court -

24   - whatever is allowed in the bankruptcy case, the amount of

25   that claim.
```

```
 1              MR. SCHWARTZ:  Yes.

 2              THE COURT:  Okay.  Does that contemplate payments

 3    -- does the settlement then contemplate just the Debtors or

 4    will it include a global settlement including the non-

 5    debtors that you've described earlier?

 6              MR. SCHWARTZ:  It includes the -- specially Alex

 7    Jones and FSS.

 8              THE COURT:  Okay.

 9              MR. SCHWARTZ:  Because they are the source of the

10    funds to make the payment.

11              THE COURT:  Okay.  Mr. Schwartz, I will tell you,

12    there was a motion set for you for today.  It sounds like

13    it's not going forward.  I think those are all the questions

14    that I have for you.  I think that is what is customary on a

15    first day I think to just ask, get a general understanding.

16    Are you aware of anything else in connection with the

17    bankruptcy case itself that you think I should know at this

18    time in terms of what may be coming?

19              Typically -- and I'm just saying this for folks

20    who are listening.  It's very typical for a bankruptcy judge

21    to ask at the beginning of a case what might I expect in the

22    short-term future.  I've been told by some folks they are

23    going to file a motion, and I'll take them up.  And maybe

24    this is a question for Mr. Lee.  What may I expect in the

25    short near-term.
```

```
1              MR. SCHWARTZ:  Well, Your Honor, I'm not a lawyer,
2    as you know.
3              THE COURT:  No, no, no.  You're not.
4              MR. SCHWARTZ:  Mr. Lee (indiscernible) remand.
5    And that's coming I guess But I don't know -- I don't think
6    I'm qualified to talk about it.
7              THE COURT:  No, no, no.  I don't want you using
8    those words.  That's completely fine.  Thank you very much,
9    Mr. Schwartz.
10             MR. SCHWARTZ:  Thank you, Your Honor.
11             MR. RUFF:  Your Honor, could I just ask a couple
12   questions?
13             THE COURT:  Yeah, go ahead.  Just stand on the
14   other side.
15             MR. RUFF:  Yeah, I'll just (indiscernible) the
16   microphone is -- there we go.
17             Mr. Schwartz, I just have a question.  And it
18   relates to why we are here in Victoria.  And on the
19   petitions, there was an address listed for the Debtors where
20   they were located, 5606 North Navarro, Victoria, Texas.  Are
21   you familiar with that location?
22             MR. SCHWARTZ:  Yes, I am.
23             MR. RUFF:  Okay.  And do the Debtors have a lease
24   of that space?  Is that what your understanding is?
25             MR. SCHWARTZ:  Well, it's executive suites.  We
```

003789

1    have two offices there.  I guess that's some form of a

2    lease.

3              MR. RUFF:  Okay.  So who sits in those office?

4              MR. SCHWARTZ:  There's one desk and one chair and

5    one desk and one chair.  So that's...

6              MR. RUFF:  Do you know when those leases were

7    entered into?

8              MR. SCHWARTZ:  Early April I think.

9              MR. RUFF:  So prior to that, prior to early April,

10   they weren't located there?

11             MR. SCHWARTZ:  No.

12             MR. RUFF:  Okay.  Now, the petition that was

13   signed under penalty of perjury I believe says that for the

14   greater part of 180 days, the debtors were located at that –

15   –

16             MR. LEE:  Objection, Your Honor.  This is asking

17   for a legal answer.  And if you want to talk about that, we

18   can talk about that.

19             THE COURT:  Yeah.  I think that's probably --

20   well, it's a question.  I think the trustee -- I think maybe

21   Mr. Schwartz probably -- you know, like with the remand,

22   maybe someone else can answer --

23             MR. RUFF:  I won't ask for a legal conclusion,

24   Your Honor.  I just want to make sure it's clear though that

25   it wasn't the greater part of 180 days that the Debtors were

1    located there.

2         MR. LEE:  That's not an accurate question, Your

3    Honor.  (indiscernible) Dallas, Judge Hale, these Debtors

4    had domicile in every location in the state of Texas for 180

5    days.  So we can have an argument about that --

6         THE COURT:  But we're not going to have it today.

7    What we're going to have is argument (indiscernible) motion

8    in front of the Court that the Court will then consider.

9    Today we're just going to ask very --

10        MR. RUFF:  Your Honor, I was just asking the

11   question to figure out -- to get an idea of why we are here

12   in Victoria.

13        THE COURT:  You can ask questions and people can

14   answer or not.

15        MR. RUFF:  Do you have any idea -- so you had

16   mentioned that Mr. Jones is the one who is going to be

17   filing -- excuse me, funding this process.

18        MR. SCHWARTZ:  Mr. Jones and FSS.  Most of the

19   money come from -- of the $9.8, most of it will come from

20   FSS.

21        MR. RUFF:  Okay.  Ans is it your understanding

22   that both of those entities are also liable for the same

23   body of claims that we are here to try and deal with?

24        MR. SCHWARTZ:  Well, I must admit, I've not looked

25   at the petitions and complaints in the underlying cases.  I

1    would be shocked if they were not.  That's where the money

2    is at.

3            MR. RUFF:  Okay.  Any idea -- and again, only if

4    you actually know or whatever.  But any idea or any

5    discussions as to why Mr. Jones didn't file for bankruptcy?

6            MR. SCHWARTZ:  Yes.

7            MR. RUFF:  Okay.  Do you know why?  What was

8    discussed as to why he didn't file for bankruptcy?

9            MR. SCHWARTZ:  I know the discussions because I

10   was involved in some of them.  The discussions was, you

11   know, Infowars is a prominent trademark in the conspiracy

12   theories community, if you will.  Alex Jones' name is

13   equally as prominent.  And so the concern was

14   (indiscernible) FSS, FSS were concerned about losing

15   lenders.  In Alex Jones' case, that it would somehow ruin --

16   harm this trademark, his name and his ability to generate

17   funds, sell merchandise to these people.

18           MR. RUFF:  So that's what was expressed to you at

19   least?

20           MR. SCHWARTZ:  That was what we discussed.

21           MR. RUFF:  And does that make sense to you, that

22   that would -- I mean, he is funding this.  the claims are

23   against him.  Does it make sense that somehow him being part

24   of a bankruptcy process that is open and transparent -- how

25   does that harm him?

1          MR. SCHWARTZ:  Being put into bankruptcy is what

2    we were concerned about.  By putting him in bankruptcy would

3    harm his trademark value, his value to us and generally

4    cashflow.  That was the reason as I understood it.  And that

5    was the reason I was involved in discussing it.

6          MR. RUFF:  Well, why didn't it harm the debtors

7    that actually filed then?  They own intellectual property,

8    don't they?

9          MR. SCHWARTZ:  They own intellectual property, but

10   they are not in the public eye at all.  I don't think anyone

11   knew who InfoW was or Infowars LLC was.  I would assume, and

12   I think a lot of people did, that that was a significant

13   entity other than the ownership of the trade name, which is

14   significant.  That was all the significance to the business

15   operation (indiscernible).

16         MR. RUFF:  Now, you had mentioned that when you

17   were negotiating -- for example, you had mentioned that you

18   said that when you discovered about those royalties, hey,

19   those have to become and be paid directly to -- I forget who

20   it was.  I think IWHealth?

21         MR. SCHWARTZ:  Yes.

22         MR. RUFF:  Okay.  And when were those negotiations

23   taking place approximately?

24         MR. SCHWARTZ:  Well, they started on the first

25   Monday I was in Austin, right after the April 4th meeting

1    with Mr. Lee.  They probably, you know, went for four or

2    five days (indiscernible) for transferring the

3    (indiscernible) sending money to the trust, we've got to get

4    bank account (indiscernible) for the trust.

5            MR. RUFF:  Okay.

6            MR. SCHWARTZ:  Because the trust was going to own

7    InfoHealth.  That's what -- the decision was made to put it

8    (indiscernible).

9            MR. RUFF:  Okay.  And were you engaged as the

10   chief restructuring officer at that point?

11           MR. SCHWARTZ:  I don't think so.  I think I was

12   engaged on the 8th or 9th of April.  I could have been.  It

13   was very close to that date.

14           MR. RUFF:  Okay.  So the agreement, the trust

15   agreement that you said that you were negotiating, you were

16   not really negotiating on behalf of nay party, were you?

17           MR. SCHWARTZ:  No.  Each party had a lawyer there.

18   I guess the trust didn't.  But I was the CRO.  I guess I was

19   negotiating for the Debtors, because that's who my

20   responsibility was to.

21           MR. RUFF:  Is it more accurate to say you were the

22   proposed CRO at that point?

23           MR. SCHWARTZ:  Correct.  I was proposed CRO.

24           MR. RUFF:  Okay.  So do you think maybe perhaps it

25   was more accurate to say that you were giving advice as to

003794

1   how it would be better set up optically?

2          MR. SCHWARTZ:  No.  I was not giving advice on

3   (indiscernible).  They wanted me to be CRO.  I've got a

4   reputation -- I've been in this business for over 40 years.

5   And I've done all kinds of stuff.  I worked as a

6   (indiscernible) receiver.  I've been special

7   (indiscernible).  I've got a reputation.  They came to me

8   and they wanted my reputation.  You want my reputation.

9   That's one of the things (indiscernible) everything to be

10  clear.  If this money does not belong to Alex, shouldn't be

11  going to Alex, (indiscernible) over here.  So I didn't put

12  it in those words, and I didn't have to.

13         MR. RUFF:  Sure.  So it's accurate to say that if

14  you were going to be a part of this, this is how you wanted

15  it to be done.

16         MR. SCHWARTZ:  I wanted it to be clear, clean, as

17  see-through, and I wanted it to be right.  I wanted as much

18  money getting into the pot.  I'm not think that this was

19  being negotiated.  I'm thinking this is going to be hard to

20  do with $725,000 and $40,000 a month royalty.

21         MR. RUFF:  Right.  So I guess my question then is

22  your negotiation was more on behalf of yourself and, hey, if

23  I'm going to be invested in this, this is how I want it to

24  be.

25         MR. SCHWARTZ:  No.  At that point in time, my

003795

```
 1   objective was to get as much money on the table you can get
 2   for the benefit of claimants, the claimants.  That was our
 3   job.  Okay?  If they wanted me here, then they had let me do
 4   my job.  And that would continue to be the case.  You know,
 5   can we get more money on the table is the question I have.
 6        MR. RUFF:  Okay.  But again, that was your job
 7   that you were looking perhaps to do.  At that point you had
 8   not been engaged, correct?
 9        MR. SCHWARTZ:  Correct.  I had not been engaged.
10        MR. RUFF:  Okay.  So Mr. Jones and presumably some
11   of his professionals were looking to have you engaged in
12   this process at this time.  Is that correct?
13        MR. SCHWARTZ:  Well, and they were definitely
14   considering engaging me because I went to their office and
15   they held nothing back from me that I asked f
16        MR. RUFF:  And at that time, they were propping to
17   you this structure.  Is that acute?
18        MR. SCHWARTZ:  Yes.  They were working on the
19   structure.  But the framework was...
20        MR. RUFF:  Did they have a draft of trust
21   agreement, for example, for you to look at?
22        MR. SCHWARTZ:  I don't recall when I first saw
23   that.
24        MR. RUFF:  was it discussed do you believe?
25        MR. SCHWARTZ:  In general, the trust agreement.
```

```
 1              MR. RUFF:  Okay.

 2              MR. SCHWARTZ:  I knew there was on coming.  I knew

 3      who the proposed trustees were.

 4              MR. RUFF:  If -- and that a big if -- if these

 5      cases are to go forward, do you think the Debtor or you as

 6      the chief restructuring officer of the Debtors would have

 7      any opposition to a committee being appointed in these

 8      cases?

 9              MR. SCHWARTZ:  I mean, whatever the Court wants.

10      I want this thing -- my goal when I walk off this thing five

11      years from now that nobody can question what I did.  And if

12      someone wants to have a committee, they'll have a committee.

13      I mean, that's not for me to say.  But I don't have a

14      problem with it.

15              MR. RUFF:  All right.  Thank you, Mr. Schwartz.

16              THE COURT:  Thank you.

17              Mr. Lee, let me just ask you.  We're not going

18      forward today.  Thank you very much, Mr. Schwartz.

19              MR. LEE:  That's correct.

20              THE COURT:  So you agree with Mr. Williams that I

21      think it's premature to set a date on a timing for the

22      motion, call it the trustee motion, until there is some --

23      until the document stops moving.  And then somebody can

24      refile the --

25              MR. LEE:  I disagree -- I apologize.
```

```
 1           THE COURT:  No, I get it.  But I'm just telling

 2     you.  Because you're asking for this (indiscernible) relief,

 3     right?  And this is different than -- maybe you refile

 4     something and maybe the date gets set.  But as of right now,

 5     I don't know what version of that document is going to look

 6     like based upon the statements that Mr. Okin made.  So this

 7     isn't a DIP that's going to get tweaked or a disclosure

 8     statement where additional sentences are going to get added

 9     based upon objections and you kind of negotiate it up.  This

10     is a trust agreement that, I don't know, could materially

11     change.  Mr. Battaglia tells me it won't or he doesn't

12     anticipate it, but I don't know.  Maybe we set a status

13     conference in a week and then we'll know more.

14           MR. LEE:  Your Honor, I fully support that.  And

15     let me just add to this that --

16           THE COURT:  Let me get this additional thought

17     out.

18           MR. LEE:  Yes, sir.

19           THE COURT:  At that status conference, you're

20     going to have to help me understand why at a minimum InfoW

21     and Prison Planet are Subchapter V debtors.  We haven't

22     taken any evidence today.  But based upon what I've heard --

23     so I'm not ruling on it.  You're going to have to help  me

24     understand.

25           MR. LEE:  Yes, Your Honor.
```

```
 1              THE COURT:  And I want to make sure that everybody
 2    understands why I'm asking these questions.  And it's based
 3    entirely on the statutory provisions.  Section 1182 of the
 4    Bankruptcy Code defines a Debtor as a person that engaged in
 5    commercial or business activity.  Person is defined in
 6    Section 101(41) of the Bankruptcy Code and includes
 7    individuals, partnerships, or corporations.  So person
 8    directly is satisfied, but commercial or business activity,
 9    I don't hear any.  (indiscernible) comes to those two.  And
10    today is not the day to take it up.  I just want everybody
11    to give it some thought based on what I heard.  I think
12    IWHealth -- and again, I didn't take any evidence.  But I
13    did hear Mr. Schwartz say that at least there is a royalty
14    of some amount coming in every month, which I think puts
15    that entity in a different bucket than the other two that I
16    heard.  And again, this is just preliminary discussions that
17    I've heard.  And I'm putting this in the what kind of case
18    do we have as I ask the questions about third-party funding,
19    you know, the ability for them to cut off the lifeline of a
20    case at any point, the role of the trustees and who they
21    would serve, the role of a CRO, whether a true fiduciary of
22    the estate or working for a trust that has not -- that may
23    not have the best interest of the estate.  And it may or may
24    not, but I think at a minimum I need to understand from a
25    foundational standpoint what chapter these cases should be
```

003799

1    in.

2           It sounds like other motions are going to get

3    filed, and I'm not here to prejudice or encourage one way or

4    the other what people are going to file.  People will file

5    whatever they file, and we take them up in due course.  But

6    based upon what I heard, I think we've got -- I've got to

7    answer that question pretty quickly, and I think it can be

8    done in short order I suspect.

9           Mr. Lee?

10          MR. LEE:  Yes, Your Honor.

11          THE COURT:  Now I'm going to stay quiet.

12          MR. LEE:  Number one, with respect to the question

13   that you've asked about the two other entities, I can give

14   you the answer today, but I am prepared to answer at the

15   status conference, and we'll present whatever you want that

16   we think satisfies the business rule that you are asking

17   about insofar as these two Debtor entities, and we are happy

18   to do that.

19          THE COURT:  Okay.

20          MR. LEE:  Number two, whatever they want to file,

21   please file.  Number three, in our way of thinking about

22   this issue, Your Honor, there's only so much a Debtor can do

23   pre-petition to negotiate with third parties.  Like in a

24   DIP, as you all know.  We've brought what is best -- what we

25   could do with third parties.  We are asking now for the

003800

1   creditors, the U.S. Trustee, and for you to help us finish

2   those negotiations.  Because we don't have the balance of

3   the leverage of negotiations with FSS and Alex Jones.  And

4   that's why we are here.  And so if the parties want to do

5   that, they should do that.  And we encourage that.  We've

6   told everybody that.  But for people to just nick pick at

7   this thing and to say it's not appropriate, et cetera,

8   they're fine.  They can do that.  But I want the Court and

9   everyone to know that there is a good faith effort being

10  made here to try to do something constructive with the

11  bankruptcy process.  And you're right, it's not perfect.

12  It's not the panacea of all things.  But it is a construct

13  devised to bring together the parties to a resolution of a

14  very sad and complex situation.  And just like the Boy

15  Scouts, just like the Catholic Diocese, just like any other

16  situation where litigation is at hand, the Bankruptcy Code

17  and the courts are the appropriate vehicles to do this.  And

18  we've picked one because we think it's a resolution process

19  that makes sense here.  And because, unlike the Boy Scouts,

20  unlike Catholic Diocese, there are not millions of dollars

21  available here.  There are limited funds, and we are trying

22  to maximize it so that it goes to the Claimants.  And that's

23  part of the reason why we chose Subchapter V, because not

24  only are we qualified to do that, but it's the right vehicle

25  under the Bankruptcy Code to do this.  And that's why we are

003801

1    here.

2          And again, these are arguments, nothing more than

3    arguments.  And we'll come to you at the appropriate time to

4    make these as actual fact and proof.  But we'll be here on

5    the status conference when you want us to.  I'm going to

6    push the parties to get this trust document done.  And I

7    will tell you, I disagree with Mr. Williams and I disagree

8    with the other parties wanting to delay this thing.  Because

9    we only have 120 days to get this case done in my view.  The

10   trust document is what it is.  It will get fixed to the

11   point where I think you will get comfortable with it.  The

12   two jurists aren't going to sit on something were either

13   they have been misled or not appropriate.

14         And for people to suggest that you're going to be

15   snookered by something like this I think is inappropriate.

16   The parties are going to act right on this side of the

17   table, and we're going to do our very best to make sure the

18   process is correct, that it's upright, and that it's in good

19   faith.  And I will be here to present all of that to you

20   next Friday, and I'm going to push the parties to get the

21   trust document done and to fix the PSA as you pointed out

22   and the things that you've said so far.  And we'll proceed

23   as --

24         THE COURT:  Wait a minute.  I'm not approving the

25   PSA.  So (indiscernible).

```
 1          MR. LEE:  I'm a little overly-ambitious today,
 2   Your Honor.  And I apologize for that.  But we will be here
 3   Friday to take care of whatever you --
 4          THE COURT:  I want -- there's a lot of folks here
 5   I courtroom and a lot of folks on the phone saying they are
 6   going to file things.  And once they're filed, we'll take a
 7   look at them and we'll take them up.  I am making no ruling
 8   today on the two matters that were set, the CRO motion and
 9   the trustee motion.  I very much appreciate all the comments
10   made by the parties.  I very much appreciate the statements
11   made by Mr. Schwartz.  I know more than I did before I got
12   on.  And if parties file things, then we'll take them up.
13   Everybody knows here in Southern District, reach out to my
14   case manager and just let me know something got filed.  You
15   know, I'll set a hearing on it.
16          Why don't we set a status conference?  And status
17   conference, again, I don't know if it's going to be an
18   evidentiary hearing.  It might just -- but everybody is
19   going to get plenty of notice before any witness is filed.
20   I can carry any witness and exhibit list that got filed.  If
21   parties want to supplement it based upon something they may
22   or may not see, they certainly have the right to do so.  But
23   I'm not going to -- you know, if you filed something today
24   and you feel like it's good, it will carry whenever
25   something gets heard, probably should take comfort in that.
```

003803

1          You know, would Friday the 29th, do you think we

2    could hold it -- would 3:00 work for the parties?

3          MR. LEE:  For the Debtors it does, Your Honor.

4          THE COURT:  Okay.

5          MR. LEE:  I'm sorry, Your Honor.  Did you say the

6    29th?

7          THE COURT:  Yes.  That's next Friday I believe.

8    Yeah.

9          MR. OKIN:  Your Honor, if the goal was to have the

10   trust document done and available to parties with time to

11   read it, could I suggest we push it to Monday?

12         THE COURT:  Well, the reason I am not pushing it

13   until that following Monday is I would like to stop and just

14   see where things are.  And maybe at that point -- I don't --

15   there's going to be a lot of moving pieces over the next

16   week, and I want to just stop there, even if it's just to

17   check in.  It could be a ten-minute hearing.  It could be

18   more.  But I want to check in at that point and I want to

19   put the pressure on the parties, which means that some young

20   associate is going to be working all weekend.  And all I can

21   say is I've been there.

22         MR. LEE:  Your Honor, if I may ask, are there any

23   specific issues you would like for us to be in a position to

24   address for you at that status conference next Friday?

25         THE COURT:  The only things that are before me are

003804

```
 1    the two motions.  And I've got to check in to see where that
 2    is and when the parties wish to go forward on that.  And if
 3    something else gets filed, then we can talk scheduling on
 4    that.  But at least it's a good place, we don't lose much
 5    time on this.
 6              Does anyone else have anything they wish to say at
 7    this time?
 8              MR. WALSTON:  Your Honor, Cliff Walston on behalf
 9    of the Texas plaintiffs.
10              THE COURT:  Yes, sir.
11              MR. WALSTON:  The only other data point I would
12    like to add is I do believe as to what is coming, the Texas
13    plaintiffs intend to immediately file a motion to lift the
14    stay before Your Honor and a motion to remand the trial
15    court proceedings back to the state court.  In particular,
16    the trial that was supposed to start on Monday.  And I think
17    that it's important to --
18              THE COURT:  But can you just -- something -- I
19    don't know -- I heard the word remand.  I have not heard the
20    word removed.
21              MR. WALSTON:  Yes, Your Honor.
22              THE COURT:  I don't know what the status of that
23    litigation is and where it is.  Maybe you can help me with
24    that.
25              MR. WALSTON:  Sure.  I'll help you.  I'd love to
```

1    fill you in on the details of that.

2            As we all know, Mr. Lee filed this plan in the wee

3    hours of Monday morning.  At 9:30 Monday morning of this

4    week, the plaintiffs in that lawsuit non-suited Infowars

5    LLC.

6            THE COURT:  Okay.

7            MR. WALSTON:  Infowars LLC was the only debtor

8    that was a defendant in that case.  The other two debtors

9    are not parties to that case.  Then after at 3:30 p.m., even

10   though by operation of law, Infowars LLC was no longer a

11   party to that litigation because the notice of non-suit had

12   been filed and under state law becomes effective upon

13   filing, Infowars nevertheless removed that case to the

14   Western District in Austin because that case was set to

15   proceed in Austin.  And they had a pretrial hearing on

16   Wednesday of this week previously scheduled to handle all

17   pretrial matters in addition.  The court there had requested

18   an especially large jury pool of extra jurors to show up on

19   Monday.

20           And so ultimately after a contested hearing on

21   Wednesday about whether that removal was proper, even though

22   at the time of removal Infowars was not a party to that

23   case, the court ultimately decided there in the trial court

24   that the plaintiffs needed to go to the court of -- to the

25   Austin bankruptcy court, Western District Bankruptcy Court,

003806

1   seek remand of that trial court back to her.  And she

2   informed all of the parties that the very first possible day

3   after that case hits back and she is able to get a hundred

4   jurors in that courtroom, that they were going to start

5   trial.

6            THE COURT:  So that's the question.  You kind of

7   got to it. So it's not before me.

8            MR. WALSTON:  It is not before you.  The motion to

9   lift --

10           THE COURT:  (indiscernible).

11           MR. WALSTON:  You said what is going to be filed.

12           THE COURT:  No, I appreciate it.

13           MR. WALSTON:  None of the cases -- so there were

14   three cases for the Texas plaintiffs set back to back to

15   back.  The first was supposed to start on Monday.  The

16   second one was June, I believe.  And the third one is set

17   for August, I believe.  So all three of those cases were

18   removed to the Western District as a part of this filing.

19           What is before you though is in the second and

20   third of those cases, Infowars LLC is still a defendant in

21   those cases.  So we will be seeking to lift the stay as to

22   those two, to then go to the Western District to seek remand

23   of those two cases, what I'm going to call the June and

24   August trials.

25           THE COURT:  Got it.

```
 1              MR. WALSTON:  But the reason why I raise these
 2    issues is because those trials aren't just about liquidating
 3    the damages, liquidating these claims.  And I actually
 4    applaud Mr. Lee for trying to come up with a creative
 5    structure to put some money on the table for the Claimants.
 6    But those trials will actually determine the nature of those
 7    claims and likelihood.  And here's why.
 8              The Austin court had already entered a liability
 9    finding against Mr. Jones with three key issues.  The first
10    was that he was liable for defamation.  The second was that
11    he did that with actual malice, which includes an intent to
12    harm element.  And the third was a finding that all of Mr.
13    Jones' entities, including Infowars, Free Speech Systems,
14    and Mr. Jones himself, were all alter egos of each other.
15              And so had that case gone to trial and there had
16    been the liability finding had become final and that claim
17    had been liquidated in terms of an actual dollar amount,
18    there is a very high likelihood that as to Alex Jones
19    individually, that would not have been a dischargeable debt
20    under 523 because it was a damage award against him for an
21    intentional tort in harming these families.
22              THE COURT:  But I guess --
23              MR. WALSTON:  And so it's the nature of the claim
24    as well, not just the amount.
25              THE COURT:  No, I understand that.  I guess but
```

003808

1    procedurally what's coming our way is a motion to lift stay

2    to --

3              MR. WALSTON:  Two of the three.

4              THE COURT:  Two of the three to allow you to seek

5    remand.

6              MR. WALSTON:  Correct.

7              THE COURT:  In the Western District.

8              MR. WALSTON:  We don't believe we need to seek

9    your lifting the stay as to the one case in which

10   (indiscernible).  Correct.

11             THE COURT:  Okay.  I just want to make sure

12   procedurally I understood why you were using the word

13   remand.

14             MR. WALSTON:  Yes.

15             THE COURT:  You weren't asking me to remand

16   anything.  It's in the Western District.  I just wanted to

17   understand where they were.

18             MR. WALSTON:  Correct.

19             THE COURT:  Okay, thank you.

20             MR. WALSTON:  And the other aspect of this too,

21   Your Honor, as we learned from Mr. Schwartz as to the type

22   of money that was generated by Alex Jones and his entities.

23   You know, each year we heard $80 million, we heard it's down

24   to $50 million.  So the practical reality for these

25   creditors isn't just a dollar amount.  Mr. Jones, since 2012

003809

1    when this tragedy happened, has apparently generated in

2    excess of half a billion dollars of revenue with his

3    bullhorn.  That's how he makes his money.  He sells these

4    products because he has an audience of millions and millions

5    of people and he has a very, very loud bullhorn with which

6    to do it.

7                These individual families don't have that kind of

8    platform.  They do in the courtroom.  And these cases are

9    every bit as much about having a determination finally made

10   for them, them having their day in court in which Mr. Jones

11   is held accountable for his conduct.  So it's not just about

12   a liquidating claims procedure, it is very emotional.  And

13   that's why there are so many people in this courtroom and

14   stuff.

15               THE COURT:  Yeah.

16               MR. WALSTON:  So those cases are very important to

17   go forward, not just from a claims perspective and what that

18   claim really is, and is that claim even dischargeable, but

19   it's also about them having their day in court and the

20   emotional aspect that comes with that and their right as a

21   plaintiff to have their claims heard by a jury of their

22   peers.

23               THE COURT:  If you file the motion, we'll consider

24   it.

25               MR. WALSTON:  Thank you.

003810

1           THE COURT:  Thank you.

2           MR. LEE:  Your Honor, just one observation to show

3     the power of the bankruptcy system.  As soon as we filed,

4     they non-suited us.  So it was (indiscernible) Infowars.  I

5     just want you to know that.

6           THE COURT:  Is there anything else procedurally I

7     should know about before we -- is there anyone on the line

8     who wishes to address the court?  Hit five-star.  I didn't

9     mean to neglect anyone who wishes to address the Court.

10    Okay.  All right.

11          I thank everyone today for their participation.  I

12    would let everyone know for those of you who are

13    participating by video and by phone, as you can tell, my

14    dial-in number and the GoToMeeting link is on there.  It is

15    available at any time for me.  So if there is another

16    hearing set, it sounds like Next Friday at 3:00 p.m., it's

17    going to be the same dial-in and the same GoToMeeting link

18    for all cases that are before me.  So it's just not -- it's

19    a feature that I'm very proud of that we have here in the

20    Southern District of Texas.  Feel free to participate, free

21    to listen in.  And I thank you very much for your time and

22    your participation.  I thank each of the parties for their

23    time, and I will see everyone next Friday at 3:00 p.m.

24    Thank you.

25          (Proceedings adjourned at 10:49 a.m.)

```
1                              CERTIFICATION
2
3     I certify that the foregoing is a correct transcript from
4     the electronic sound recording of the proceedings in the
5     above-entitled matter.
6
7
8
9
10    Sonya Ledanski Hyde
11
12
13
14
15
16
17
18
19
20    Veritext Legal Solutions
21    330 Old Country Road
22    Suite 300
23    Mineola, NY 11501
24
25    Date:  April 27, 2022
```

003812

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 22-60020 |
| | § | |
| INFOW, LLC, *et al.*, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |

## ORDER SETTING STATUS CONFERENCE

Upon the request of Texas Plaintiffs' for an order to set a status conference; and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that the relief requested is in the best interests of the Debtors' estates, its creditors, and other parties in interest; and appropriate notice having been provided under the circumstances of the Request, and that no other or further notice is required; and the Court having determined that the legal and factual bases set forth in the Request establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED

THAT:

      1. The Request is GRANTED as set forth herein

      2. A status conference is set for May ___, 2022 at __:__ a.m./p.m.

Dated: _____, 2022

                            _____
                            UNITED STATES BANKRUPTCY JUDGE

| | |
|---|---|
| **Subject:** | InfoW |
| **Date:** | Tuesday, May 17, 2022 at 8:34:29 AM Central Daylight Time |
| **From:** | Ruff, Jayson B. (USTP) |
| **To:** | kslee50@gmail.com |

**Attachments:** image001.png

\*\*\*Settlement Communication Subject to FRE 408\*\*\*
Kyung,

Following on our conversation yesterday, please let me know when you have had a chance to discuss these matters with Marc.  As I mentioned yesterday, the UST still believes that the best option is for these cases to be dismissed and we intend to push forward with our motion.  That will include getting discovery from your client.  I have been holding off on doing that at your request, but time is running very short so we will need to resolve these matters very soon or you will need to give me a date early next week for a deposition of Marc.  As set forth in our pleadings, these cases have the badges of a bad faith filing.  Even with all of the Sandy Hook Plaintiffs "leaving the party" so to speak, that does not change how these cases arrived.  I understand that there are a few creditors that remain, but each of those can be paid following dismissal and payment agreements could be made outside of bankruptcy.

A few things to consider:

- I would note that according to the schedules filed by these Debtors, Mr. Jones and FSS (the "Jones Parties") are co-liable for all of the Debtors' remaining debts.  Given that the Jones Parties are also the primary source of funding for these Debtors' cases, they can agree to fund payment of these claims outside of bankruptcy as well.
- Inside of bankruptcy, it would appear that because Mr. Jones was taking royalty payments that belonged to IWHealth prepetition, that Debtors' estates would have claims against Mr. Jones for the return of those funds anyway.  Another reason for the Jones Parties to agree to pay the Debtors' remaining creditors outside of bankruptcy.  I am sure the royalty payments he received exceeds the amount of the Debtors' remaining debts.
- The Jones Parties are the primary funding sources for Debtors inside of and outside of bankruptcy.  They have already committed $725k toward resolving the claims of these Debtors.  Is there any reason why those funds could not be used to pay the remaining creditors of the Debtor following dismissal?  Seems like that amount may be more than enough.  Continuing in the bankruptcy will likely require significantly more funding.
- Based on the declarations filed with the petitions and statements made in court, it appears these Debtors are simply holding companies with no operations to speak of.  What is there to even reorganize?  Seems that dismissal or possibly conversion even are the better options for these Debtors.  Although, I understand that conversion would mean that the Jones Parties ability to use the IP held by the Debtors may then be at risk.  Another reason for them to agree to pay those creditors outside of bankruptcy.
- Dismissal is the more efficient and cheaper option for these Debtors as it will save from administrative and litigation costs and will still allow Debtors options to resolve their claims.

More can be said, but I believe the foregoing is enough.  I am hopeful that we can come to an agreement soon.  Please let me know when you believe you will be in a position to discuss these matters further.

Kinds regards,

*Jayson B. Ruff*

Trial Attorney
Office of the United States Trustee
515 Rusk St., Suite 3516
Houston, Texas 77002
713-718-4650 Ext 252 (office)
202-573-6960 (mobile)
jayson.b.ruff@usdoj.gov



PLEASE DO NOT read, copy or disseminate this Internet E-mail if you are not the intended addressee. This E-mail may contain privileged information intended only for the addressee. If you have received this E-mail in error, please call us immediately at (713) 718-4650 and ask to speak to the sender of the communication.  Also, please notify the sender immediately, by E-mail, that you have received this E-mail in error and have deleted it.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

|  |  |
|---|---|
| In re: | ) Case No. 22 - 60020 |
|  | ) |
| INFOW, LLC, *et al.*, | ) Chapter 11 (Subchapter V) |
|  | ) |
| Debtors.[1] | ) Jointly Administered |
|  | ) |

## DEBTORS' APPLICATION TO EMPLOY KYUNG S. LEE PLLC AS BANKRUPTCY COUNSEL EFFECTIVE AS OF MAY 16, 2022

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE CHRISTOPHER LOPEZ,
UNITED STATES BANKRUPTCY JUDGE:

InfoW, LLC ("InfoW"), IWHealth, LLC ("IW Health"), and Prison Planet TV, LLC ("Prison Planet TV", and together with InfoW and IW Health, the "Debtors"), the debtors in the above-captioned bankruptcy cases (the "Chapter 11 Cases"), hereby file this application (the "Application") to employ Kyung S. Lee PLLC ("KSLPLLC") as bankruptcy counsel, effective as of May 16, 2022. As discussed in detail below, Mr. Kyung S. Lee, the partner at Parkins Lee & Rubio LLP ("PLR") exclusively handling the representation of the Debtors, withdrew as a partner

---

[1] The Debtors in these Chapter 11 Cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC, f/k/a Infowars, LLC (6916), IWHealth, LLC f/k/a Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005). The address for service to the Debtors is PO Box 1819, Houston, TX 77251-1819.

from PLR as of May 15, 2022 and went back to practice under Kyung S. Lee PLLC starting on May 16, 2022. Subject to approval by the Bankruptcy Court, the Chief Restructuring Officer, Marc Schwartz, the Chief Restructuring Officer of the Debtors has engaged KSLPLLC to represent the Debtors commencing as of May 16, 2022, pursuant to an Engagement Agreement, attached hereto as Exhibit B. In support of the Application, the Debtors submit the Declaration of Kyung S. Lee (the "Lee Declaration"), attached as Exhibit A hereto, and respectfully states as follows:

## JURISDICTION

1.      This Court has jurisdiction over this application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief sought are sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014, 2016, and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules for the U.S. Bankruptcy Court for the Southern District of Texas (the "Local Rules").

## BACKGROUND

### A.      The Debtors

4.      On April 18, 2022 (the "Petition Date"), each of the Debtors commenced the Chapter 11 Cases by filing a petition for relief under chapter 11, subchapter v, of the Bankruptcy Code.

5.      Marc Schwartz is the Chief Restructuring Officer of the Debtors. No request for the removal of the Debtors as debtors-in-possession has been made in these Chapter 11 Cases.

6.      Additional background information on the Debtors can be found in the Debtors' *Emergency Motion For Order Authorizing Appointment of Russell F. Nelms and Richard S.*

*Schmidt As Trustees of the 2022 Litigation Settlement Trust and Granting Related Relief* [Dkt No. 6].

### B. Proposed Employment of Kyung S. Lee PLLC

#### i. Scope of Employment

7. Subject to the Court's approval, KSLPLLC will serve as general bankruptcy counsel in connection with the Debtors' Chapter 11 Cases, commencing on May 16, 2022.

#### ii. Necessity of Employment

8. The Debtors believe that the assistance of counsel specializing in bankruptcy is necessary and appropriate to administer these Chapter 11 Cases. The Debtors cannot proceed in chapter 11 without counsel and would face extreme difficulty complying with the provisions of the Bankruptcy Code and successfully reorganizing their financial affairs for the benefit of their creditors without attorneys who focus their practice on corporate bankruptcy.

#### iii. Reasons for Selection

9. The Debtors are retaining KSLPLLC because of the extensive experience of Mr. Lee, in all aspects of corporate bankruptcy and representing chapter 11 debtors in this district and because of his familiarity with the Debtors and the Chapter 11 Cases, having been the primary partner in charge of the cases while he was at PLR.

10. Mr. Lee is familiar with the Debtors' financial condition in connection with the preparation of the Debtors' Petitions, Schedules, and SOFAs. The Debtors expended substantial efforts prior to the Petition Date to developing a structure for a global resolution of litigation claims against the Debtors and affiliated co-defendants. Mr. Lee was intimately involved in that process.

11. Since the Petition Date, Mr. Lee has been involved in all aspects of the Debtors' Chapter 11 Cases, ranging from reporting to the Court at Status Conferences to negotiating with

counsel for the Texas and Connecticut Plaintiffs regarding their withdrawal of claims and dismissals of suits with prejudice.

12. Any other firm would need to spend significant time and effort to become familiar with the Debtors, the Plan Support Agreement, the Debtors' liabilities, and related agreements that would delay administering the subchapter v bankruptcy cases.

13. The Debtors therefore believe that KSLPLLC, and especially Mr. Lee, is well-qualified and uniquely able to represent the Debtors in these Chapter 11 Cases in an efficient and timely manner.

  *iv. Proposed Compensation & Reimbursement*

14. KSLPLLC intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including §§ 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the guidelines (the "Guidelines") established by the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), and any orders of this Court in these Chapter 11 Cases (the "Orders"), for all services performed and expenses incurred during its representation of the Debtors.

15. Subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and the Orders, the Debtors propose to pay KSLPLLC as set out in the Engagement Agreement attached hereto as Exhibit B and as summarized in the following chart:

| BILLER | RATE |
|---|---|
| Kyung S. Lee | $850 |
| Other Associate Attorneys | $300 - $650 |
| Paralegals | $150 - $250 |
| Legal Assistants | $50-$100 |

16.     The Debtors believe that KSLPLLC's agreed terms of reimbursement, compensation, and hourly rates are reasonable. KSLPLLC will notify the Debtors of any change in the hourly rates charged for services rendered while the Chapter 11 Cases are pending.

     *v.*    *Retainer*

17.     The Debtors did not engage KSLPLLC prior to the Petition Date. Although KSLPLLC has requested a retainer, KSLPLLC has not received a retainer to secure the payment of KSLPLLC's fees in connection with the representation as of the time of filing the Application. KSLPLLC shall report to the Court if circumstances change, and a retainer is provided to the firm.

     *vi.*    *Connections*

18.     The Lee Declaration sets out KSLPLLC's connections with the Debtors, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, and any person employed in the office of the United States Trustee. To the best of the Debtors' knowledge, KSLPLLC does not hold any connections other than those disclosed in the Lee Declaration.

19.     The Debtors believe that KSLPLLC neither holds nor represents a disqualifying interest that is adverse to the estate and is a "disinterested person." If any new relevant facts or relationships are discovered, KSLPLLC will supplement its disclosure to the Court.

## RELIEF REQUESTED

20.     The Debtors request that the Court enter an order substantially in the form of the proposed order attached hereto (the "Proposed Order") authorizing the Debtors to retain KSLPLLC as general bankruptcy counsel, pursuant to the terms of the Engagement Agreement, commencing on May 16, 2022.

## **BASIS FOR RELIEF**

21.     Subject to bankruptcy court approval, Bankruptcy Code § 327(a) authorizes trustees—and debtors-in-possession—to "employ one or more attorney's accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties . . . ." Bankruptcy Code § 327(c) provides that "[i]n a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest."

22.     Bankruptcy Rule 2014 requires certain disclosures prior to the entry of an order approving the employment of a professional. According to Bankruptcy Rule 2014, the application must:

(a)     Be filed by the trustee or committee and served on the United States Trustee (except in cases under chapter 9 of the Bankruptcy Code);

(b)     State the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee; and

(c)     Be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

### A. KSLPLLC Meets the Requirements of Bankruptcy Code § 327(a)

23. Based on the Lee Declaration, the Debtors submit that KSLPLLC neither holds nor represents a disqualifying adverse interest and is a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code.

24. The term "disinterested person" is defined by the Bankruptcy Code. According to Bankruptcy Code § 101(14):

> The term "disinterested person" means a person that— (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

25. The Lee Declaration discloses no connections with the Debtors that would disqualify KSLPLLC as a "disinterested person" and the Debtors are aware of no connections in addition to those disclosed in the Lee Declaration.

### B. This Application and the Lee Declaration Meet the Requirements of Bankruptcy Rule 2014

26. This Application and the Lee Declaration meet the requirements as set out in Bankruptcy Rule 2014. This Application is made by the Debtors and sets out the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, the proposed arrangement for compensation. The Lee Declaration is a verified statement pursuant to 28 U.S.C § 1746 that sets out all connections that KSLPLLC has with the Debtors, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee. The Debtors are not aware of any other connections in addition to those disclosed in the Lee Declaration.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an order substantially in the form of the Proposed Order approving the employment of KSLPLLC commencing on May 16, 2022 and grant any other relief that is just and proper.

Dated: May 19, 2022

Respectfully submitted,

W. Marc Schwartz
Chief Restructuring Officer and Authorized
Representative of InfoW, LC, IW Health,
LLC and Prison Planet TV, LLC

# CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2022, a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service, (b) by U.S.P.S. first class mail on the parties indicated in the attached service list, and (c) the following parties by email:

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Norman A Pattis, Cameron L. Atkinson
Pattis & Smith, LLC
383 Orange Street
New Haven, CT 06511
npattis@pattisandsmith.com
catkinson@pattisandsmith.com

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Ray Battaglia
Law Office of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX
rbattaglialaw@outlook.com

Attn: Avi Moshenberg, Nick Lawson, Matthew
Caldwell
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com
nick.lawson@mhllp.com
matthew.caldwell@mhllp.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Richard S. Schmidt
615 Leopard, #635
Corpus Christi, TX 78401
rss@judgerss.com

Russell F. Nelms
115 Kay Lane
Westworth Village, TX 76114
rfargar@yahoo.com

Attn: W. Marc Schwartz
Schwartz Associates
712 Main Street, Ste. 1830
Houston, TX 77002
mschwartz@schwartzassociates.us

003824

Attn: Matthew Okin
Okin Adams LLP
1113 Vine St., Ste. 240
Houston, TX 77002
mokin@okinadams.com

*/s/ Kyung S. Lee*
Kyung S. Lee

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| INFOW, LLC, *et al.*, | ) Case No. 22 - 60020 |
| | ) |
| Debtors.[2] | ) Chapter 11 (Subchapter V) |
| | ) |
| | ) Jointly Administered |

## DECLARATION OF KYUNG S. LEE IN SUPPORT OF
## THE DEBTORS' APPLICATION TO EMPLOY
## KYUNG S. LEE PLLC AS BANKRUPTCY COUNSEL

I, Kyung S. Lee, declare under penalty of perjury as follows:

1.      I am an attorney at law duly admitted and in good standing to practice in the State of Texas and New York, the United States District Court for the Southern District of Texas, the Fifth Circuit Court of Appeals and the United State Supreme Court. As of May 16, 2022, I am a sole member of the law firm Kyung S. Lee PLLC ("KSLPLLC"), located at 700 Milam Street, Suite 1300, Houston, Texas 77002. My email address is klee@kslpllc.com.

2.      I am making this Declaration in support of the Debtors' Application to Employ Kyung S. Lee PLLC as Bankruptcy Counsel, Commencing As of May 16, 2022 (the "Application"). Unless otherwise indicated, capitalized terms used but not defined herein have the meanings ascribed in the Application.

3.      Except as otherwise noted, all facts set forth in this Declaration are based upon my personal knowledge, upon the client and matter records of KSLPLLC reviewed by me or derived from information available to me that I believe to be true and correct.

---

[2]      The Debtors in these Chapter 11 Cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC, f/k/a Infowars, LLC (6916), IWHealth, LLC f/k/a Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005). The address for service to the Debtors is PO Box 1819, Houston, TX 77251-1819.

**A.    Scope of Services**

4.    Pursuant to the Engagement Agreement, the Application, and the Proposed Order attached thereto, KSLPLLC will serve as bankruptcy counsel to the Debtors in connection with the Chapter 11 Cases for the period commencing on May 16, 2022.  In connection with this representation, KSLPLLC will take all necessary and appropriate actions to administer the Debtors' Chapter 11 Cases.

**B.    Proposed Compensation**

5.    KSLPLLC will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including §§ 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, Guidelines, and Orders for all services performed and expenses incurred during its representation of the Debtors.

6.    Subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and the Orders, KSLPLLC intends to request the allowance of its compensation as set out in the Engagement Agreement and as summarized in the following chart:

| BILLER | RATE |
|---|---|
| Kyung S. Lee | $850 |
| Other Associate Attorneys | $ 300 - $600 |
| Paralegals | $150 - $250 |
| Legal Assistants | $ 50-$100 |

7.    These rates reflect the rates that KSLPLLC ordinarily charges clients in bankruptcy and non-bankruptcy matters and are less than or equal to the rates of similarly skilled and experienced attorneys who practice in this district on similar chapter 11 bankruptcy cases. KSLPLLC submits that these agreed terms of reimbursement, compensation, and hourly rates are

2

reasonable. KSLPLLC will notify the Debtors of any change in the hourly rates charged for services rendered.

### C. Retainer & Prepetition Payments

8. The Debtors did not engage KSLPLLC to advise the Debtors regarding filing bankruptcy prior to the Petition Date.

9. KSLPLLC has requested a retainer, but as of the filing of the Application, a retainer has not been provided to the firm. If circumstances change, KSLPLLC shall notify the Court of receipt of any retainers and its disposition by KSLPLLC.

### D. Disclosure of Connections

10. KSLPLLC performed the following actions to determine whether it or any of its attorneys has any disclosable connections, to the Debtors, creditors, any other party in interest, their respect attorneys and accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any of the judges for the U.S. Bankruptcy Court for the Southern District of Texas. I conducted a search of KSLPLLC files to determine using the list of parties listed in Schedule 1 hereto whether the firm had any connections to or represented any of the parties listed on Schedule 1. The search revealed that the firm had not and did not presently represent any of the parties listed on Schedule 1.

11. The results of the foregoing connections search process confirm that neither I, KSLPLLC, nor any of its employees or shareholders, to the best of my knowledge, have any disqualifying connections. KSLPLLC does not hold any debt or equity securities in the Debtors, is not an insider of the Debtors, and was not a creditor of the Debtors on the Petition Date.

12. The only connection to any of the parties on Schedule 1 is by virtue of having represented the three Debtors while a partner at PLR.

3

13.     As to Marc Schwartz, the Chief Restructuring Officer, I, as a partner in a previous firm, represented a party adverse to Mr. Schwartz, in a bankruptcy case where Mr. Schwartz acted as the chapter 7 trustee. That cases conclude over 10 years ago.

14.     More recently, I have acted as special fee counsel for Mr. Schwartz when he served as a state court receiver. My representation of Mr. Schwartz as a receiver on that matter concluded in 2021.

15.     I have also worked with Mr. Schwartz as the Chief Restructuring Officer of Consolidated Wealth Management, a debtor before Judge Jones. I have not worked with him in that capacity since my departure from PLR on May 15, 2022.

16.     I may have represented in the last 40 years of my practice a party or parties related to a creditor in the Chapter 11 Cases. If such connections exist, they would be on matters wholly unrelated to the service for which the Debtors seeks to engage KSLPLLC.

**E.     Affirmative Statement of Disinterestedness**

17.     Based on the connections review conducted to date and described herein, to the best of my knowledge and insofar as I am able to ascertain, KSLPLLC is a "disinterested person" within the meaning of Bankruptcy Code § 101(14). KSLPLLC is not a creditor, an equity security holder, or an insider of the Debtors; KSLPLLC is not and was not within 2 years before the Petition Date a director, officer, or employee of the Debtors; and KSLPLLC does not have any interest materially adverse to the interests of the Debtors' bankruptcy estates or any class of creditors or equity security holders.

**F.     Bankruptcy Rule 2016(b) Disclosures**

18.     Pursuant to Bankruptcy Code § 504 and Bankruptcy Rule 2016, KSLPLLC has not shared or agreed to share (a) any of its compensation from the representation of the Debtors with

4

any other persons or (b) any compensation any other persons have received, may have received, or will receive.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 19, 2022.          By: /s/*Kyung S. Lee*
                                      Kyung S. Lee

003830

## SCHEDULE 1 TO LEE DECLARATION

### SEARCHED PARTIES

Debtors & Professionals

       InfoWars, LLC
       InfoWars Health, LLC
       Prison Planet TV, LLC
       Free Speech Systems LLC
       Russell Nelms
       Richard Schmidt

Debtors' Equity

       Alex Jones

Creditors & Parties in Interest

       Leonard Pozner
       Veronique De La Roase
       Erica Lafferty
       Neil Heslin
       Scarlet Lewis

003831



Kyung S. Lee
Attorney at Law

Pennzoil Place
700 Milam St.
Suite 1300
Houston, TX 77002

# Kyung S. Lee PLLC

klee@KSLPLLC.com | Direct: 713-301-4751

May 16, 2022

## PRIVILEGED AND CONFIDENTIAL

*Via email mschwartz@schwartzassociates.us*

W. Marc Schwartz
Chief Restructuring Officer of
InfoW, LLC
c/o SchwartzAssociates
712 Main Street-Suite 1830
Houston, Texas 77002

W. Marc Schwartz
Chief Restructuring Officer of
IWHealth, LLC
c/o SchwartzAssociates
712 Main Street-Suite 1830
Houston, Texas 77002

W. Marc Schwartz
Chief Restructuring Officer of
Prison Planet TV, LLC
c/o SchwartzAssociates
712 Main Street-Suite 1830
Houston, Texas 77002

Re: Attorney Engagement Letter by InfoW, LLC, Debtor ("Infowars") IWHealth LLC,
Debtor ("Health") and Prison Planet TV, LLC, Debtor ("Planet")(collectively "you" or
"Clients")

Dear Mr. Schwartz:

Thank you for selecting Kyung S. Lee PLLC ("KSLPLLC" or the "Firm") as legal counsel for
the above referenced entities. We appreciate the trust and confidence that your decision places in us
and we look forward to building a close and mutually rewarding relationship.

The purpose of this letter and the attached Terms of Retention (together, the "Engagement
Letter") is to set forth the terms of legal representation of the above referenced Clients.

W. Marc Schwartz
May 16, 2022
Page 2 of 11

*Scope of Engagement.* Subject to Bankruptcy Court approval, KSLPLLC shall serve as attorney and legal counsel for the Clients in connection with the following (the "Matter"): Serve as general bankruptcy counsel for the Debtors, effective as of May 16, 2022.

*Legal Fees and Expenses.* For the work performed by KSLPLLC for the Clients, KSLPLLC shall be entitled to a fee in the amount equal to the time expended by each attorney, paralegal and other staff member multiplied by the hourly rates set forth in the attached Hourly Billing Rate Schedule. The Clients are responsible for reimbursing the Firm for expenses incurred on behalf of the Clients pursuant to the attached Client Expense Policy.

*Retainer.* The Firm has not requested a retainer from the Client in connection with this Matter. The Firm reserves the right to request a retainer and to have the retainer replenished by the Client if the Firm anticipates that there is a risk in collecting future attorney's fees and/or reimbursement of costs.

*Invoices/Fee Statements.* The Firm's invoices will be issued to you during the month, if not more often, following the month that services are provided. The invoice will include a fee statement providing the details of the legal services performed, and the expenses incurred, for the Clients. The invoices shall be informational only and shall be paid upon allowance by a Bankruptcy Court order.

*Conflicts.* The Firm has conducted an initial conflicts search based on information you provided. The Firm did not identify any connection that would prevent the Firm from representing you in this Matter. KSLPLLC may conduct additional conflicts searches following the commencement of this engagement. If the Firm identifies any conflict, then the Firm shall immediately notify the Clients and the Firm and the Clients shall take further actions as may reasonably be required to satisfy the Firm's ethical obligations and duties to the Clients, all as more particularly described in the Terms of Retention.

*General Prospective Waiver and Informed Consent.* The Firm represents many other companies and individuals. It is possible that during the time that we are representing you, some of our present or future clients will have disputes or transactions with you. You agree that we may continue to represent or may undertake in the future to represent existing or new clients in any business or transactional matter that is not substantially related to our work for you, even if the interests of such clients in those other matters are directly adverse to you. We are not aware of any such matters at the present time. We agree, however, that your prospective consent to conflicting representations contained in the preceding sentence shall not apply in any instance where, as a result of our representation of you, we have obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in any such other matter by such client to your material disadvantage. *You are not giving the Firm a prospective waiver as to conflicting representation related to a litigation matter against you.* We encourage you to seek independent counsel regarding the import of the potential conflicts and prospective waiver discussed and this acknowledgment, waiver and informed consent. We emphasize that you remain completely free to seek independent counsel at any time even if you decide to sign this Engagement Letter agreeing to its terms and the Terms of Retention.

W. Marc Schwartz
May 16, 2022
Page 3 of 11

Please call me with any questions you have after you complete your review of this Engagement Letter including the Terms of Retention. If the Engagement Letter is acceptable to you in this form, please indicate so by signing, dating, and returning it to me and funding the Retainer.

Very truly yours,

*Kyung S. Lee*

Kyung S. Lee
Kyung S. Lee PLLC


ACCEPTED AND AGREED:

InfoW, LLC
*W. Marc Schwartz*
_____
Chief Restructuring Officer of InfoW, LLC
*May 18, 2022*
_____
Dated


IWHealth, LLC
*W. Marc Schwartz*
_____
Chief Restructuring Officer of IWHealth, LLC
*May 18, 2022*
_____
Dated


Prison Planet TV, LLC
*W. Marc Schwartz*
_____
Chief Restructuring Officer of Prison Planet TV, LLC
*May 18, 2022*
_____
Dated

W. Marc Schwartz
May 16, 2022
Page 4 of 11

## ADDENDUM TO ENGAGEMENT LETTER

The appropriate Client point of contact to address payment status:

Name:
Title:
Phone:
Work Email:

Invoices are to be delivered as follows:

☐ By email: _____

      Email: _____

☐ By regular mail:

Address: _____

              _____

              _____

003835

## TERMS OF RETENTION

These Terms of Retention are part of the KSLPLLC Engagement Letter. Because they are an integral part of our agreement to provide legal services, we ask that you review this document carefully. If you have any questions after reading it, please contact us promptly.

*Who Will Provide Legal Services?* In most cases, one attorney will be your principal contact. From time to time, that attorney may delegate parts of your work to other attorneys or to legal assistants or non-legal professionals in the Firm. We do this to involve those with special knowledge or experience in an area and to provide services to you in a timely, efficient, and cost-effective manner. I will be the primary attorney from our Firm who will be representing the Clients.

*Scope of the Representation.* As a Firm, we undertake to provide representation and advice on the legal matters for which we are engaged, and it is important that we both have a clear understanding of the legal services that the Firm has agreed to provide. In our Engagement Letter with you, we specify the matter in which we will provide representation and the scope of the services we will provide. Please note that we do not provide legal advice regarding any tax issues or effects nor are we responsible for notifying any insurance carrier of any lawsuit. If there are any questions about the terms of engagement, including the scope of the representation that we are to provide in the matter, please raise those questions promptly with your principal contact at the Firm.

*Identity of Clients.* It is our policy to represent only the person or entity identified in our Engagement Letter and not any affiliates. For example, unless otherwise specifically stated in our Engagement Letter, if you are a business organization (corporation, partnership, LLC, etc.), our representation does not include any parents, subsidiaries, employees, officers, owners, or affiliates (including commonly owned companies); if you are an individual, our representation does not include your employer, partners, spouse, siblings, or other family members.

*Your Cooperation.* To enable us to provide effective representation, you agree to: (1) disclose to us, fully and accurately and on a timely basis, all facts and documents that are or might be material or that we may request, (2) keep us apprised on a timely basis of all developments relating to the representation that are or might be material, (3) attend meetings, conferences, and other proceedings when it is reasonable to do so, and (4) otherwise cooperate fully with us.

*Outcomes.* We cannot and do not guarantee the outcome of any matter. Any expression of our professional judgment regarding your matter or the potential outcome is, of course, limited by our knowledge of the facts and based on the law at the time of expression. It is also subject to any unknown or uncertain factors or conditions beyond our control. Any expressions on our part concerning the outcome of the representation, or any other legal matters, are based on our professional judgment and are not guarantees.

*Conflicts of Interest.* We attempt to identify actual and potential conflicts at the outset of any engagement. In some instances, the applicable rules of professional conduct may limit our ability to represent clients with conflicting or potentially conflicting interests. Those rules of conduct often allow us to exercise our independent judgment in determining whether our relationship with one client prevents us from representing another. In other situations, we may be permitted to represent a client only if both or all

W. Marc Schwartz
May 16, 2022
Page 6 of 11

clients consent to that representation. If a controversy unrelated to the subject matter of the representation develops between you and any other client of the Firm, we will follow the applicable rules of professional responsibility to determine whether we may represent either you or the other client in the unrelated matter. Unfortunately, sometimes conflicts arise or become apparent after work begins on an engagement. If this happens, we will do our best to address and resolve the situation in the manner that best serves the interests of all of our affected clients. Rules concerning conflicts of interest vary with the jurisdiction. In order to avoid any uncertainty, the Texas Disciplinary Rules of Professional Conduct will be applicable to the representation.

Texas law requires that we inform clients of the existence of a grievance process. The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with a lawyer involves professional misconduct, the State Bar's Office of Chief Disciplinary Counsel will provide you with information about how to file a complaint. Please call 1-800-932-1900 for more information. Also, the Supreme Court of Texas has promulgated The Texas Lawyer's Creed - A Mandate for Professionalism, which states that an attorney should inform a client of the creed's contents when undertaking a representation. We will send you a copy of the creed upon request. It is also available online at https://www.texasbar.com.

*Fees.* The basis for determining our fee for legal services is set forth in the Engagement Letter itself. If you are unclear about the basis for determining your fee, please contact the attorney responsible for your representation. Clients frequently ask us to estimate the fees and other charges they are likely to incur in connection with a particular matter. We are pleased to respond to such requests, whenever possible, with an estimate based upon our professional judgment. This estimate always carries the understanding that, unless we agree otherwise in writing, it does not represent a maximum, minimum, or fixed-fee quotation.

*Expenses.* Our Firm may incur and pay a variety of charges on your behalf in connection with the engagement. Whenever we incur such charges on your behalf, we will bill them to you as part of your invoice in accordance with the attached Client Expense Policy.

*Delinquent Account and Withdrawal of Engagement.* We will bill you on a periodic basis, for fees and other charges, as described in the Engagement Letter. Should your account become delinquent and satisfactory payment terms are not arranged, as permitted under the rules regulating our profession, we will be required to withdraw from the representation. In most cases, and except as prohibited by ethical considerations, if your account becomes more than 30 days delinquent, we will cease representation until we can arrive at a mutually satisfactory arrangement for payment of the delinquent account and the resumption of services. At such time we may charge interest on the outstanding amount due of one and a half percent per month or the maximum amount allowed under applicable law, whichever is less.

*Additional Retainer.* If the representation will require a concentrated period of activity, such as a trial, arbitration, or hearing, we reserve the right to require the payment of all amounts then owing to us and the payment to us of an additional retainer for the fees and expenses we estimate will be incurred in preparing for and completing the trial, arbitration, or hearing, as well as arbitration fees likely to be assessed. If you fail to timely pay any    retainer deposit requested, we will have the right to cease performing further work for you and withdraw from the representation.

W. Marc Schwartz
May 16, 2022
Page 7 of 11

*Obligation to Pay Fees and Expenses.* Unless your Engagement Letter expressly provides that a third-party is agreeing to pay your attorney's fees and such third-party has agreed in writing, regardless of whether you are insured to cover the particular risk or you are pursuing parties for recovery of attorneys' fees and other charges, it remains your obligation to pay all amounts due to us within the time periods reflected in the Engagement Letter.

*Retention of Complementary Counsel.* From time to time in the course of our engagement it may become prudent to engage additional counsel to work with and complement our representation of you. That complementary representation will only be done with your prior written consent and on terms and conditions which you approve. The engagement of complementary counsel may be done directly with you or through our firm, depending on the nature and extent of the representation involved.

*Conclusion of Engagement.* Because our Firm has been engaged to provide legal services in connection with the representation in the matter as specifically defined in our Engagement Letter, the attorney-client relationship terminates upon our completion of our services related to the representation in the matter. After completion of the representation, upon written notification by the Firm that the matter is terminated, changes may occur in the applicable laws or regulations that could affect your future rights and liabilities in regard to the matter. Unless we are actually engaged after the completion of the representation to provide additional legal services, the Firm has no continuing obligation to give advice with respect to any future legal developments that may relate to the matter. If you later retain us to perform further or additional services, our attorney-client relationship will be subject to the terms of engagement agreed to at that time; in the absence of any specific agreement, these Additional Terms of Engagement shall apply to the further or additional representation.

*Termination.* We look forward to the opportunity to complete our representation of you on the specified matter. You may, however, terminate our representation at any time, with or without cause, by notifying us in writing. We will return your papers and other property to you promptly upon receipt of your request for those materials unless they are appropriately subject to a lien. You agree that we will own and retain our own files pertaining to the matter or case, including, for example, Firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal attorney's work product such as drafts, notes, internal memoranda, and legal and factual research including investigative reports, prepared by or for the internal use of attorneys. Your termination of our services will not affect your responsibility for payment of legal services rendered and other charges incurred before termination and in connection with an orderly transition of the matter.

*Document Retention.* You acknowledge and agree that the Firm may maintain all documents related to your matter digitally. The Firm is not required to maintain physical copies of any documents. At the conclusion of our representation of you, it is our firm's policy to return to you any physical documents to you. We will provide you with copies of any other documents you specifically request (such as copies of depositions, court documents, etc.), and you agree to pay for the associated copying costs and any professional time incurred in identifying any such documents you request. You agree that our Firm may elect to keep at its own expense, copies of any documents related to this matter or otherwise returned to you. Anytime following seven (7) years after the conclusion of our representation of you, the Firm may destroy or delete any files related to your engagement.

W. Marc Schwartz
May 16, 2022
Page 8 of 11

*Dispute Resolution.* The Engagement Letter is being entered and is to be performed within the State of Texas. The Engagement Letter shall be interpreted in accordance with Texas law (without application of choice of law principles). All parties to the Engagement Letter agree that Houston, Harris County, Texas is the only permitted location (the venue) for the resolution of all disputes that arise under or relate in any way to the Engagement Letter or to any of the services provided by our Firm.

*Binding Arbitration.* Any dispute arising out of or relating to this agreement, our interactions leading to it, or our performance of the agreement or of the representation of you shall be resolved through binding arbitration in Harris County, Texas. First, sixty (60) days before filing any arbitration proceeding, the party requesting relief must demand and attend mandatory mediation before a mutually acceptable mediator to attempt to resolve any dispute. In the event the parties are unable to resolve such dispute, the affected party shall initiate an arbitration proceeding utilizing the rules of (but not employing) the American Arbitration Association ("AAA") for the arbitration of complex commercial cases. In any dispute of less than $250,000, the parties shall jointly appoint a single arbitrator. In any dispute of a greater amount, each party shall appoint his/her or its own party arbitrator, and these two-party arbitrators shall in turn appoint a third, neutral arbitrator. All party arbitrators' conduct and tests for eligibility shall be governed by AAA rules of disinterest. The time limits hereunder shall not apply in the event emergency injunctive relief is required, but only to the extent of such emergency injunctive relief itself. The decision by the arbitration panel will be final and binding.

You should know that for your agreement to arbitrate to be effective under Texas law, you as the client must receive sufficient information about the differences between litigation and arbitration to permit you to make an informed decision about whether to agree to binding arbitration. Under the Texas Rules of Disciplinary Procedure, we can explain the significant advantages and disadvantages of binding arbitration to the extent we reasonably believe is necessary for an informed decision by you. The scope of the explanation will depend on the sophistication, education and experience of the client.

In the case of a highly sophisticated client such as a large business entity that frequently employs outside lawyers, no explanation at all may be necessary. In situations involving clients who are individuals or small businesses, we normally advise the client of the following possible advantages and disadvantages of arbitration as compared to a judicial resolution of disputes: (1) the cost and time savings frequently found in arbitration, (2) the waiver of significant rights, such as the right to a jury trial, (3) the possible reduced level of discovery, (4) the relaxed application of the rules of evidence, and (5) the loss of the right to a judicial appeal because arbitration decisions can be challenged only on very limited grounds.

Additional factors you as the client should consider are: (1) the privacy of the arbitration process compared to a public trial; (2) the method for selecting arbitrators; and (3) the obligation, if any, of the client to pay some or all of the fees and costs of arbitration, if those expenses could be substantial. Although the disclosure can vary from client to client, depending on the circumstances, the overriding concern is that we should provide information necessary for the client to make an informed decision.

W. Marc Schwartz
May 16, 2022
Page 9 of 11

*By returning the executed Engagement Letter, you acknowledge that you have been provided ample opportunity to have counsel explain to you the advantages and disadvantages of binding arbitration to make an informed decision about agreeing to the provision.*

*Modifications.* The Engagement Letter and these Additional Terms of Engagement reflect our entire agreement on the terms of this engagement. These written terms of engagement are not subject to any oral agreements or understandings, and any change in those terms can only be made in writing signed by you and the Firm.

*Joint Representation Agreement and Waiver.* The Clients have requested that KSLPLLC represent the Clients jointly for both strategic and cost reasons. Because joint representations involve unique issues of conflicts of interest and confidentiality, we wanted to clarify the terms of our joint representation as set forth herein. The Firm is willing to undertake this joint representation in the Matter so long as the following terms and conditions are understood and agreed to by each Client. Each Client waives any objection to, or any possible conflict in, our joint representation of each other Client in the Matter, and each consent to our joint representation of each other Client in the Matter. Each Client acknowledges and agree that communications between the Firm and any or all of you concerning the Matter will be treated by us as confidential and not disclosed to anyone other than the Clients without your consent or as otherwise provided by law. The Clients further acknowledge and agree that whatever communications or information the Firm receives from any one or more of you concerning the Matter will be shared with each of you as we deem appropriate. If we receive material information about any one of you from one of the others that we believe any other Client should have to make decisions regarding your interests, we will give you that information. The Clients acknowledge and agree that there exists the possibility that a conflict of interest may arise during the multiple representation by the Firm.

The Clients acknowledge and agree that in the event a conflict of interest arises regarding the joint representation by the Firm, then we may withdraw from the representation of the Client who has created the conflict (the "conflicted Client") and may continue to represent the other Client(s). In such event, the conflicted Client understands that he/she/it would be responsible for obtaining his/her/its own legal representation and for the cost of that representation. The Clients acknowledge and agree that if the Firm withdraws as one or more of their attorneys, we may continue to represent the other remaining Clients, even if such representation is contrary to the interests of the conflicted Client. Moreover, in the unlikely event that you commence litigation against one another regarding the subject of the joint representation, you each understand that our advice to you and our prior communications with each of you during the joint representation may not be shielded from disclosure in such litigation. Finally, in the event a conflict of interest arises regarding the multiple representations by the Firm, a court may nevertheless disqualify us from continuing our representation of any of the Clients, notwithstanding the terms of this Engagement Letter. KSLPLLC is advising you of these possibilities solely to comply with our ethical requirements and are not suggesting that you may have claims against one another.

W. Marc Schwartz
May 16, 2022
Page 10 of 11

### Hourly Billing Rate Schedule

| BILLER | RATE |
|---|---|
| Kyung S. Lee | $850 |
| Associate Attorneys | $300 - $600 |
| Paralegals | $150 - $250 |
| Legal Assistants | $50 - $100 |

W. Marc Schwartz
May 16, 2022
Page 11 of 11

Client Expense Policy

In connection with the representation of a client, the Firm may incur expenses. Unless the Engagement Letter expressly provides to the contrary, the Firm's and the Client's rights and responsibilities related to such expenses are as follows:

*Legal Research and Related Services.* The Firm subscribes to certain online research services. These subscription-based services are part of the Firm's overhead and not charged to the Client. Certain services are charged on a per-transaction including, without limitation, the following examples: UCC searches, lien searches, title searches and other record searches. The Client is responsible for these pre-transaction charges. The Firm will advance the costs for all such services and submit bills to you for reimbursement. The Firm may seek prior approval from you if the anticipated aggregate monthly expense for such services exceeds $500.00. The Firm reserves the right to have the Client pay these expenses directly.

*Document Management and eDiscovery Services.* The Firm subscribes to advanced document management software systems. These subscription-based systems are part of the Firm's overhead and not charged to the Client. The Client is responsible for eDiscovery services. eDiscovery service providers typically charge per gigabyte of information stored. Additional services from the outside vendor may be required other than storage of the information and typically these are separately charged. If the Firm uses an eDiscovery service during the representation, then the Firm will seek the Client's prior approval before incurring expenses for such services. Rather than billing these expenses through the Firm, the Firm reserves the right to have the Client contract directly with the outside vendor to pay for these expenses. For the avoidance of doubt, the Client is responsible to the Firm for the payment of all fees and expenses incident to the firm's review and processing of discovery materials that are not handled by an outside vendor.

*Printing, Shipping, Postage and Related Expenses.* For all printing, shipping, postage, and related services the Firm may handle them in house or use an outside vendor. The Client is responsible for all such printing, shipping, postage, and related services at costs or the prevailing market rate if handled in house. The Firm may seek prior approval from the Client if the anticipated aggregate monthly expense for printing, shipping, postage, and related services exceeds $500.00. The Firm reserves the right to have the Client pay these expenses directly.

*Travel Expenses.* The Client will reimburse the Firm for expenses incurred in connection with out-of-town travel, but only for coach class travel and, where appropriate, the cost of a rental car. All related travel expenses, i.e., lodging and meals, must be reasonable under the circumstances. The Firm will advance all such travel expenses and submit bills to you for reimbursement which will be included in the regular invoices to the Client. The attorney handling your matter will confer with you prior to traveling for your matter. Consistent with local bankruptcy rules, the Firm bills travel at ½ billable hourly rate when the lawyer is not working on the Client matter while travelling. The Firm will endeavor to locate a substitute service agent.

*Court Costs.* If requested by the Firm, the Client will advance court filing fees and all similar expenses prior to the Firm incurring such expenses. Any such expenses incurred by the Firm, will be included in the Firm's invoices to the Client for payment.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| INFOW, LLC, *et al.*, | )    Case No. 22 - 60020 |
| | ) |
| Debtors.[1] | )    Chapter 11 (Subchapter V) |
| | ) |
| | )    Jointly Administered |
| | ) |

**ORDER APPROVING DEBTORS' APPLICATION
TO EMPLOY KYUNG S. LEE PLLC AS BANKRUPTCY
COUNSEL COMMNECING ON MAY 16, 2022
[RELATES TO DKT. NO. ___]**

Upon the application (the "Application")[2] filed by the Debtors to employ Kyung S. Lee

PLLC ("KSLPLLC") as bankruptcy counsel commencing on May 16, 2022, pursuant to

Bankruptcy Code §§ 327(a) and 330 and Bankruptcy Local Rule 2014-1, as more fully set forth in

the Application and all exhibits and attachments to the Application; and upon the Court's finding

that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; (ii) this is a core

proceeding pursuant to 28 U.S.C. § 157(b); (iii) venue is proper in this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; (iv) the Application and the Lee Declaration are in full compliance with all

applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and

Orders and procedures of this Court; (v) KSLPLLC does not represent an interest adverse to the

Debtors' estates with respect to the matters upon which it is to be engaged and is a "disinterested

person" within the meaning of that term under § 101(14) of the Bankruptcy Code; (vi) KSLPLLC

---

[1]    The Debtors in these Chapter 11 Cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC, f/k/a Infowars, LLC (6916), IWHealth, LLC f/k/a Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005). The address for service to the Debtors is PO Box 1819, Houston, TX 77251-1819.

[2]    Capitalized terms not defined herein have the meaning set forth in the Application.

is qualified to represent the Debtors' estates under § 327 of the Bankruptcy Code; (vii) the terms of KSLPLLC's employment have been disclosed and are reasonable under the circumstances; (viii) proper and adequate notice of the Application, the deadline to file any objections to the Application, and the hearing thereon was given, and no other or further notice is necessary; (ix) the legal and factual bases set forth in the Application establish just cause for the relief granted herein; (x) the relief sought in the Application is in the best interests of the Debtors' estates; (xi) any timely objection to the Application having been withdrawn or overruled for the reasons stated on the record at any hearing on the Application; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1. In accordance with Bankruptcy Code §§ 327(a) and 330 and Bankruptcy Local Rule 2014-1, the Debtors are authorized to employ and retain KSLPLLC commencing on May 16, 2022, as bankruptcy counsel, under the terms and conditions set forth in the Application and the Engagement Letter attached to the Application as Exhibit B.

2. KSLPLLC is authorized to perform any and all legal services for the Debtors that are necessary or appropriate in connection with the Chapter 11 Cases.

3. KSLPLLC shall be compensated for its services and reimbursed for related expenses in accordance with the terms and conditions of the Engagement Agreement, as set forth in the Application and subject to the procedures Bankruptcy Code §§ 330 and 331 of the Bankruptcy Code, and in accordance with applicable Federal Rules of Bankruptcy Procedure, Local Rules, and any orders of this Court.

4. All compensation for services rendered and reimbursement for expenses incurred in connection with the above-captioned Chapter 11 Cases shall be paid after further application to

2

and order of this Court, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and any orders of this Court.

5.      This order shall be immediately effective and enforceable upon entry.

6.      This order, and all acts taken in furtherance or reliance thereon, shall be effective notwithstanding any objection until further order of this Court.

7.      The Debtors and KSLPLLC are authorized to take all actions necessary to effectuate the relief granted pursuant to this order in accordance with the Application.

8.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this order.

Dated: _____, 2022

                                  **UNITED STATES BANKRUPTCY JUDGE**

3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60020 |
| | § | |
| INFOW, LLC, *et al.*, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtors¹ | § | Jointly Administered |

### NOTICE OF FILING OF
### UNOPPOSED MOTION TO DISMISS PLAINTIFFS' CLAIMS AGAINST
### REMOVING DEFENDANTS INFOWARS LLC (aka INFOW, LLC),
### INFOWARS HEALTH, LLC (aka IWHEALTH, LLC) AND
### PRISON PLANET TV, LLC WITH PREJUDICE AND JUNE 24, 2022 STATUS
### CONFERENCE IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### DISTRICT OF CONNECTICUT, BRIDGEPORT DIVISION

PLEASE TAKE NOTICE that David Wheeler, Francine Wheeler, Jacqueline

Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee

Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach,

and Robert Parker (collectively, Connecticut Plaintiffs) filed, on May 13, 2022, in

Adv. Pro. No. 22-05004 (JAM) in the United States Bankruptcy Court for the District of

Connecticut, Bridgeport Division (the Connecticut Adversary Proceeding), the *Notice of

Dismissal with Prejudice of Claims Against Removing Defendants Infowars, LLC

(aka InfoW, LLC), Infowars Health, LLC (aka IWHealth, LLC) and Prison Planet

TV, LLC* [Dkt. 23] (the Notice of Dismissal with Prejudice) and the *Unopposed Motion to

Dismiss Plaintiffs' Claims Against Removing Defendants Infowars, LLC

(aka InfoW, LLC), Infowars Health, LLC (aka IWHealth, LLC) and Prison Planet

TV, LLC with Prejudice* [Dkt. 24] (the Unopposed Motion). The Notice of Dismissal with

---

¹ The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax
identification number are as follows: InfoW, LLC f/k/a Infowars, LLC (6916), IWHealth, LLC f/k/a
Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005). The address for service to the Debtors is
PO Box 1819, Houston, TX 77251-1819.

003846

Prejudice and the Unopposed Motion are attached hereto as **Exhibit A** and **Exhibit B**, respectively. The Unopposed Motion provides that "(p)laintiffs' counsel have sought and obtained the following position from the Debtors' counsel: <u>The Debtors do not oppose the granting of this Motion and represent that they will withdraw their opposition to remand upon granting of this Motion.</u>" *See* **Exhibit B** at ¶ 6.

PLEASE TAKE FURTHER NOTICE that the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division entered the *Order Scheduling Status Conference and Requiring Appearance of Parties* [Dkt. 25] (the Order Scheduling Status Conference) on May 17, 2022. The Order Scheduling Status Conference is attached hereto as **Exhibit C**. The Order Scheduling Status Conference states that, "(o)n May 24, 2022 at 2:00 p.m., a Status Conference will be held to discuss the Unopposed Motion."

The Connecticut Plaintiffs file this Notice to: (i) provide the Court with courtesy copies of the Notice of Dismissal with Prejudice, the Unopposed Motion, and the Order Scheduling Status Conference; and (ii) respectfully inform the Court that they will, during the May 24, 2022 status conference in the Connecticut Adversary Proceeding, request entry of the Unopposed Motion thereby dismissing the claims asserted against the Debtors with prejudice and remand of the Connecticut Adversary Proceeding.

Respectfully submitted this 19th day of May 2022.

        */s/ Ryan E. Chapple*
Ryan E. Chapple
State Bar No. 24036354
Email:rchapple@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile

and

Randy W. Williams
State Bar No. 21566850
Email: rww@bymanlaw.com
**BYMAN & ASSOCIATES PLLC**
7924 Broadway, Suite 104
Pearland, Texas 77581
281-884-9262
**ATTORNEYS FOR
CONNECTICUT PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Filing has been served on counsel for Debtors, Debtors, and all parties receiving or entitled to notice through CM/ECF on this 19th day of May 2022.

        */s/ Ryan E. Chapple*
Ryan E. Chapple

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60020 |
| | § | |
| INFOW, LLC, *et al.*, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtors | § | Jointly Administered |
| | § | |

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; AND WILLIAM ALDENBERG; RICHARD M. COAN, TRUSTEE OF THE BANKRUPTCY ESTATE OF ERICA L. GARBATINI F/K/A ERICA LAFFERTY | ) ) ) ) ) ) ) ) ) ) ) ) ) Adv. Pro. No. 22-05004 (JAM) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | ) ) ) ) ) ) ) ) ) |
| Defendants. | |

## NOTICE OF DISMISSAL WITH PREJUDICE OF CLAIMS AGAINST REMOVING DEFENDANTS INFOWARS LLC (aka INFOW, LLC), INFOWARS HEALTH, LLC (aka IWHealth, LLC) AND PRISON PLANET TV, LLC[1]

---

[1] There are three consolidated cases in the Connecticut Superior Court: *Lafferty v. Jones* (UWY- CV18-6046436-S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWY- CV18-6046438-S). These cases were abusively removed to this Court under names and docket numbers *Lafferty v. Jones* (22-05004), *Sherlach v. Jones* (22-05005), and *Sherlach v. Jones* (22-05006). This identical Notice of Dismissal is being filed in all three bankruptcy cases: 22-05004, 22-05005, and 22-05006.

1

Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) and Fed. R. Bankr. P. 7041, all of the plaintiffs in these three removed actions hereby voluntarily dismiss their claims against Infowars, LLC (aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC.[2]

Stated with more specificity, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, Jillian Soto, William Aldenberg, William Sherlach, Robert Parker, Erica L. Garbatini f/k/a Erica Lafferty, and Richard M. Coan as Chapter 7 Trustee of the bankruptcy estate of Erica L. Garbatini[3] (hereafter "the plaintiffs") voluntarily dismiss their claims against Infowars, LLC (aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC in these three removed cases (Connecticut Superior Court title and docket numbers *Lafferty v. Jones* (UWY- CV18-6046436-S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWY- CV18-6046438-S), now docketed in this Court as *Lafferty v. Jones* (22-05004), *Sherlach v. Jones* (22-05005), and *Sherlach v. Jones* (22-05006)).

This dismissal is as to the plaintiffs' claims against Infowars, LLC (aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC only. The plaintiffs maintain each and all of their claims against the other defendants in these actions: Alex Emric

---

[2] *See Williams v. MESA Underwriters Specialty Ins. Co.*, 538 F. Supp. 3d 234, 236 n.2 (D. Conn. 2021) (Dooley, J.) (appropriate to use Rule 41 to dismiss all claims against a particular defendant); *LeFevre v. Fishers Island Ferry Dist.*, 2018 WL 3025039, at *3 (D. Conn. June 18, 2018) (Bolden, J.) (same); *Juliano v. Grand Hyatt New York, Inc.*, 2018 WL 1069578, at *2-3 (D. Conn. Feb. 27, 2018) (Bolden, J.) (same); *Morron v. City of Middletown*, 2006 WL 1455607, at *1 (D. Conn. May 23, 2006) (Hall, J.) (same); *Alston v. Pafumi*, 2011 WL 1885676, at *1 (D. Conn. May 18, 2011) (Haight, J.) (same); *Grace v. Plank*, 2007 WL 4224221, at *5 (D. Conn. Nov. 27, 2007) (Underhill, J.) (same); *Guigliano v. Danbury Hosp.*, 396 F. Supp. 2d 220, 224-25 (D. Conn. 2005) (Chatigny, J.) (same).

[3] Ms. Lafferty-Garbatini was at one time a party plaintiff to the consolidated actions, and Mr. Coan was then substituted for her as party plaintiff. The removing defendants incorrectly named Ms. Lafferty (and not Mr. Coan) as a plaintiff in the notice of removal, and Ms. Lafferty's inclusion on this dismissal is unnecessary and superfluous. Nonetheless, to ensure that it is crystal clear that this dismissal is fully effective as to the Lafferty claims, this dismissal is made on behalf of both Ms. Lafferty-Garbatini and Mr. Coan.

003851

Jones; Free Speech Systems, LLC; and Genesis Communications Network, Inc.

This dismissal is made unilaterally by the plaintiffs, is not the result of any agreement between the plaintiffs and the defendants in these actions, and is made without consideration of any kind from the defendants in these actions. This dismissal is <u>with prejudice</u> and without costs.

3

Dated: Bridgeport, Connecticut       By: /s/ *Alinor C. Sterling*
      May 13, 2022

                                              Alinor C. Sterling (Fed. Bar No. ct17207)
                                              Christopher M. Mattei (Fed. Bar No. ct27500)
                                              Koskoff, Koskoff & Bieder P.C.
   350 Fairfield Ave.
   Bridgeport, CT 06604
   Telephone: (203) 336-4421
   Facsimile: (203) 368-3244
   Email: asterling@koskoff.com
           cmattei@koskoff.com
   *Counsel for the Plaintiffs*[4]

   By: /s/ *Eric Goldstein*
   Eric Goldstein (Fed. Bar No. ct27195)
   Jessica M. Signor (Fed. Bar No. ct30066)
   Shipman & Goodwin LLP
   One Constitution Plaza
   Hartford, CT 06013
   Telephone: (860) 251-5000
   Facsimile: (860) 251-5218
   Email: egoldstein@goodwin.com
           jsignor@goodwin.com
   *Counsel for the Individual Plaintiffs*[5]

---

[4] Koskoff, Koskoff & Bieder represents all of the plaintiffs, including Richard M. Coan solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Erica L. Garbatini.

[5] In connection with this proceeding, Shipman & Goodwin LLP represents Erica L. Garbatini f/k/a Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto-Parisi, Carlos Mathew Soto, Jillian Soto, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "Individual Plaintiffs").

4

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2022, a copy of the foregoing Notice of Dismissal with Prejudice of Claims Against Removing Defendants InfoWars LLC (aka InfoW, LLC), InfoWars Health, LLC (IWHealth, LLC) and Prison Planet TV, LLC was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by First Class mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

I further certify that on May 13, 2022, a copy of the foregoing Notice of Dismissal with Prejudice of Claims Against Removing Defendants InfoWars LLC (aka InfoW, LLC), InfoWars Health, LLC (IWHealth, LLC) and Prison Planet TV, LLC was also served via U.S. First Class prepaid postage on the following parties listed below:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776

Cory T. Sklanka
515 Gracey Avenue
Meriden, CT 06451

Genesis Communications Network, Inc.
Attn. Officer, Managing Agent or Agent for Service
190 Cobblestone Lane
Burnsville, MN 55337

Midas Resources, Inc.
Attn. Officer, Managing Agent or Agent for Service
190 Cobblestone Lane
Burnsville, MN 55337

Norman A. Pattis
Pattis & Smith, LLC
383 Orange Street
1st Floor
New Haven, CT 06511

James H. Fetzer, PH.D.
800 Violet Lane
Oregon, WI 53575

003854

/s/ *Alinor C. Sterling*
ALINOR C. STERLING
CHRISTOPHER M. MATTEI

/s/ *Eric Goldstein*
ERIC GOLDSTEIN
JESSICA M. SIGNOR

6

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60020 |
| | § | |
| INFOW, LLC, *et al.*, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtors | § | Jointly Administered |
| | § | |

# EXHIBIT B

003856

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; AND WILLIAM ALDENBERG; RICHARD M. COAN, TRUSTEE OF THE BANKRUPTCY ESTATE OF ERICA L. GARBATINI F/K/A ERICA LAFFERTY<br><br>Plaintiffs,<br><br>v.<br><br>ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC.,<br><br>Defendants. | Adv. Pro. No. 22-05004 (JAM) |

## UNOPPOSED MOTION TO DISMISS PLAINTIFFS' CLAIMS AGAINST REMOVING DEFENDANTS INFOWARS LLC (aka INFOW, LLC), INFOWARS HEALTH, LLC (aka IWHealth, LLC) AND PRISON PLANET TV, LLC[1] WITH PREJUDICE

Pursuant to Fed. R. Civ. P. 41(a)(2) and Fed. R. Bankr. P. 7041, Plaintiffs David Wheeler,

Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer

---

[1] There are three consolidated cases in the Connecticut Superior Court: *Lafferty v. Jones* (UWY- CV18-6046436-S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWY- CV18-6046438-S). These cases were abusively removed to this Court under names and docket numbers *Lafferty v. Jones* (22-05004), *Sherlach v. Jones* (22-05005), and *Sherlach v. Jones* (22-05006). This identical Motion to Dismiss is being filed in all three bankruptcy cases: 22-05004, 22-05005, and 22-05006.

1

003857

Hensel, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, Jillian Soto, William Aldenberg, William Sherlach, Robert Parker, Erica L. Garbatini f/k/a Erica Lafferty, and Richard M. Coan as Chapter 7 Trustee of the bankruptcy estate of Erica L. Garbatini[2] (hereafter "the plaintiffs") move to voluntarily dismiss their claims against Infowars, LLC (aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC in these three removed cases (Connecticut Superior Court title and docket numbers *Lafferty v. Jones* (UWY- CV18-6046436-S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWY- CV18-6046438-S), now docketed in this Court as *Lafferty v. Jones* (22-05004), *Sherlach v. Jones* (22-05005), and *Sherlach v. Jones* (22-05006)). The dismissal sought is with prejudice.

In support of their Motion, the Plaintiffs state as follows:

1.     Fed. R. Civ. P. 41(a) provides:

**(a) Voluntary Dismissal.**
**(1) *By the Plaintiff.***
**(A)** *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
**(i)** a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
**(ii)** a stipulation of dismissal signed by all parties who have appeared.
**(B)** *Effect.* Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.
**(2) *By Court Order; Effect.*** Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states

---

[2] Ms. Lafferty-Garbatini was at one time a party plaintiff to the consolidated actions, and Mr. Coan was then substituted for her as party plaintiff. The removing defendants incorrectly named Ms. Lafferty (and not Mr. Coan) as a plaintiff in the notice of removal, and Ms. Lafferty's inclusion on this motion is unnecessary and superfluous. Nonetheless, to ensure that it is crystal clear that this Motion to Dismiss is fully effective as to the Lafferty claims, this Motion to Dismiss is made on behalf of both Ms. Lafferty-Garbatini and Mr. Coan.

003858

otherwise, a dismissal under this paragraph (2) is without prejudice. Fed. R. Civ. P. 41(a).

2.      It is the Plaintiffs' position that dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) is available, and all of the Plaintiffs in these three removed actions voluntarily dismissed their claims against Infowars, LLC (aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC by filings dated May 2, 2022.

3.      The Debtors objected to the dismissals[3] and have now opposed remand asserting that

> The Debtors would not oppose the Motion for Remand if an order—either from this Court or the Home Court—appropriately reflected that the Plaintiffs' claims against the Debtors are released or dismissed with prejudice.

*E.g.*, Resp. to Mtn. to Remand, ECF No. 22 at 4.

4.      It is and has been the Plaintiffs' intent to completely terminate their actions against the Debtors in order to completely terminate the Plaintiffs' involvement in the Debtors' illegitimate use of the bankruptcy process.[4] To clarify that original intent, the Plaintiffs have now filed Rule 41(a)(1)(A)(i) Notices of Dismissal with Prejudice.

5.      In order to ensure a perfectly clear record, the Plaintiffs now also move for a Rule 41(a)(2) dismissal with prejudice and without costs.[5]

---

[3] *See* ECF No. 19 on Docket No. 22-05004, ECF No. 16 on Docket No. 22-05005, ECF No. 15 on Docket No. 22-05006.

[4] It is not just the Plaintiffs who see the Texas bankruptcy for the sham that it is. The United States Trustee also moved to dismiss the Texas bankruptcy, calling it a "bad faith" abuse of the bankruptcy process. Ex. A, 4/29/22 Mot. of U.S. Trustee to Dismiss, Bankr. Ct. SD TX Doc. No. 22-60020, ECF No. 50.

[5] Typically in a Rule 41(a)(2) motion, the question is whether to permit the plaintiff to dismiss without prejudice. Here, the dismissal sought is with prejudice, relieving the Court of the need to perform that analysis.

6. Plaintiffs' counsel have sought and obtained the following position from the Debtors' counsel: <u>The Debtors do not oppose the granting of this Motion, and represent that they will withdraw their opposition to remand upon granting of this Motion.</u>

7. The dismissal sought is as to the Plaintiffs' claims against Infowars, LLC (aka InfoW, LLC); Infowars Health, LLC (aka IWHealth, LLC); and Prison Planet TV, LLC only. The plaintiffs maintain each and all of their claims against the other defendants in these actions – Alex Emric Jones; Free Speech Systems, LLC; and Genesis Communications Network, Inc. – and this Motion does not in any respect concern or affect those claims.

8. This Motion to Dismiss is made unilaterally by the Plaintiffs, is not the result of any agreement between the Plaintiffs and any of the defendants in these actions, and is made without consideration of any kind from the defendants in these actions.

9. The dismissal sought is with prejudice and without costs.

10. Should the Debtors seek the imposition of any other terms on this dismissal, or should any other terms be imposed by the Court, this Motion is withdrawn.

003860

Dated: Bridgeport, Connecticut  
        May 13, 2022

By: /s/ *Alinor C. Sterling*  
    Alinor C. Sterling (Fed. Bar No. ct17207)  
    Christopher M. Mattei (Fed. Bar No. ct27500)  
    Koskoff, Koskoff & Bieder P.C.  
    350 Fairfield Ave.  
    Bridgeport, CT 06604  
    Telephone: (203) 336-4421  
    Facsimile: (203) 368-3244  
    Email: asterling@koskoff.com  
           cmattei@koskoff.com  
    *Counsel for the Plaintiffs*[6]

By: /s/ *Eric Goldstein*  
    Eric Goldstein (Fed. Bar No. ct27195)  
    Jessica M. Signor (Fed. Bar No. ct30066)  
    Shipman & Goodwin LLP  
    One Constitution Plaza  
    Hartford, CT 06013  
    Telephone: (860) 251-5000  
    Facsimile: (860) 251-5218  
    Email: egoldstein@goodwin.com  
           jsignor@goodwin.com  
    *Counsel for the Individual Plaintiffs*[7]

---

[6]Koskoff, Koskoff & Bieder represents all of the plaintiffs, including Richard M. Coan solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Erica L. Garbatini.

[7]In connection with this proceeding, Shipman & Goodwin LLP represents Erica L. Garbatini f/k/a Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto-Parisi, Carlos Mathew Soto, Jillian Soto, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "Individual Plaintiffs").

5

003861

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2022, a copy of the foregoing Unopposed Motion to Dismiss Plaintiffs' Claims Against Removing Defendants InfoWars LLC (aka InfoW, LLC), InfoWars Health, LLC (IWHealth, LLC) and Prison Planet TV, LLC with Prejudice was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by First Class mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

I further certify that on May 13, 2022, a copy of the foregoing Unopposed Motion to Dismiss Plaintiffs' Claims Against Removing Defendants InfoWars LLC (aka InfoW, LLC), InfoWars Health, LLC (IWHealth, LLC) and Prison Planet TV, LLC with Prejudice was also served via U.S. First Class prepaid postage on the following parties listed below:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776

Cory T. Sklanka
515 Gracey Avenue
Meriden, CT 06451

Genesis Communications Network, Inc.
Attn. Officer, Managing Agent or Agent for Service
190 Cobblestone Lane
Burnsville, MN 55337

Midas Resources, Inc.
Attn. Officer, Managing Agent or Agent for Service
190 Cobblestone Lane
Burnsville, MN 55337

Norman A. Pattis
Pattis & Smith, LLC
383 Orange Street
1st Floor
New Haven, CT 06511

James H. Fetzer, PH.D.
800 Violet Lane
Oregon, WI 53575

6

003862

/s/ *Alinor C. Sterling*
ALINOR C. STERLING
CHRISTOPHER M. MATTEI

/s/ *Eric Goldstein*
ERIC GOLDSTEIN
JESSICA M. SIGNOR

003863

**UNITED STATES DEPARTMENT OF JUSTICE**
**OFFICE OF THE UNITED STATES TRUSTEE**
**KEVIN M. EPSTEIN, UNITED STATES TRUSTEE**
**REGION 7, SOUTHERN and WESTERN DISTRICTS OF TEXAS**
**JAYSON B. RUFF, TRIAL ATTORNEY**
**HA M. NGUYEN, TRIAL ATTORNEY**
**515 Rusk, Suite 3516**
**Houston, TX 77002**
**Telephone: (713) 718-4650 Ext 252**
**Fax: (713) 718-4680**
**E-Mail:** jayson.b.ruff@usdoj.gov
**E-Mail:** Ha.Nguyen@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **INFOW, LLC** *et al.* | § | **CASE NO. 22-60020** |
| | § | |
| | § | **CHAPTER 11 (Subchapter V)** |
| | § | **Jointly Administered** |
| **DEBTORS.[1]** | § | |

**MOTION OF THE UNITED STATES TRUSTEE**
**TO DISMISS DEBTORS' CHAPTER 11 CASES**

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

  Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"),

respectfully moves to dismiss the Debtors' chapter 11 cases for cause pursuant to section 1112(b)

of the Bankruptcy Code (the "Motion"), and represents as follows:

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC, f/k/a Infowars, LLC (6916) ("InfoW"), IWHealth, LLC f/k/a Infowars Health, LLC (no EIN) ("IWHealth"), Prison Planet TV, LLC (0005) ("Prison Planet"). The address for service to the Debtors is PO Box 1819, Houston, TX 77251-1819.

<u>**PRELIMINARY STATEMENT**</u>[2]

Debtors' cases should be dismissed for cause under section 1112(b)(1) because these are

classic bad faith filings for two primary reasons: these cases serve no valid bankruptcy purpose

and were filed to gain a tactical advantage in the Sandy Hook Lawsuits. The strategy employed

here—filing bankruptcy for three non-operating members of a larger enterprise to channel and

cap liability against the other, revenue-generating members of that enterprise and its owner using

a bankruptcy subchapter designed to aid small, struggling businesses—is a novel and dangerous

tactic that is abusive and undermines the integrity of the bankruptcy system. Bankruptcy,

however, is intended to protect honest but unfortunate debtors who subject themselves and their

assets to the supervision of the Court.

The Debtors' cases arise out of a series of lawsuits in Texas and Connecticut brought

primarily by relatives of the 2012 Sandy Hook shooting victims (the "Sandy Hook Plaintiffs")

seeking redress for harms arising out of statements made by Alex Jones and other employees of

FSS asserting that the Sandy Hook shooting was a "false flag" hoax. According to the Debtors,

they filed these cases to resolve the Sandy Hook Lawsuits (in which liability has already been

established and all that remains are trials establishing damages) and other litigation claims and to

pay such claims "in full."[3] But despite that these lawsuits arise from Alex Jones's and FSS's

allegedly tortious, intentional conduct, neither filed for bankruptcy. Instead, three days before

---

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms below or as set forth in *Debtors' Emergency Motion for Order Authorizing Appointment of Russell F. Nelms and Richard S. Schmidt as Trustees of the 2022 Litigation Settlement Trust and Granting Related Relief*, Dkt. No. 6.

[3]     Unfortunately, "payment in full" is inaccurate. Rather, after removing to federal court the cases that were imminently set for damages trials, Debtors intend to force a claims *estimation* proceeding to value the claims of the Sandy Hook Plaintiffs and cap the distribution they will receive on those claims. Thus, in an Orwellian use of language, when Debtors say "payment in full," what they actually mean is "payment of estimated damages." *See* LST ¶ 10(c).

2

003865

filing these cases, and eight days before jury selection was to begin in Texas, Alex Jones transferred his ownership interests in the Debtor entities into a settlement trust and, without any input from creditors, he entered into a plan support agreement that provides the roadmap for resolution of the Debtors' cases—cases that will be funded solely by Alex Jones and FSS because the Debtors have no ability to do so.

Debtors did not file these cases to reorganize their businesses or to preserve or maximize the value of their assets for the benefit of their creditors. As their proposed CRO has admitted, these Debtors have *no* businesses and *no* assets from which they earn any income.[4] Nor were these cases filed to avoid a "race to the courthouse," yet another self-serving pretextual justification offered by Debtors. Indeed, the Sandy Hook Plaintiffs in both the Texas and Connecticut lawsuits have sought to dismiss these cases. Instead, this bankruptcy is designed to misuse the subchapter V cases of three non-operating companies to shield the assets of Alex Jones, FSS, and other entities owned or controlled by Alex Jones or Alex Jones's insiders (the "Alex Jones Enterprise") from their primary—and maybe only—creditors, the Sandy Hook Plaintiffs, with "Resulting Releases" for both Jones and FSS as the ultimate end game.[5] *See, e.g.*, Plan Support Agreement ("PSA"), § 7(b); Litigation Settlement Trust ("LST"), p. 2 (Recitals); ¶¶ 2.2 and 10.1(b). Although the Debtors have not yet filed a plan, the PSA and LST

---

[4]     Based on statements elicited from Mr. Schwartz at the first hearing in these cases, it appears that he has recently discovered that one debtor, IWHealth, has rights to a royalty payment from which it may begin to earn $38,000 a month. Tr. April 22, 2022 at 43, 48-9.

[5]     Moreover, this would allow Alex Jones and FSS to retain their assets that they could not otherwise retain had they themselves filed for bankruptcy. If Alex Jones were a debtor, he would not be able to discharge the claims of the Sandy Hook Plaintiffs because section 523(a)(6) excepts from discharge debts arising from willful and malicious injury. And both Alex Jones and FSS as debtors would be subject to section 1129(a)(7)'s best interest of creditors' test for plan confirmation, requiring full disclosure of the value of their assets and a showing that impaired, dissenting creditors are receiving at least as much as they would in a chapter 7 liquidation.

003866

have set the table for these cases in a very particular way—and it is already apparent what type

of meal we're going to get.[6]  Dismissal is in the best interests of all creditors and the estates, and

these cases should therefore be dismissed.

## JURISDICTION, VENUE & CONSTITUTIONAL AUTHORITY TO ENTER A FINAL ORDER

1.      The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334.  This is

a core proceeding under 28 U.S.C. § 157(b)(2).  Debtors assert that venue is proper in this

district under 28 U.S.C. § 1408.

2.      This Court has constitutional authority to enter a final order in this matter.  If it is

determined that the bankruptcy judge does not have the constitutional authority to enter a final

order or judgment in this matter, the U.S. Trustee consents to the entry of a final order or

judgment by this Court in this matter.

3.      Kevin M. Epstein is the duly appointed U.S. Trustee for Region 7.  The U.S.

Trustee has standing to raise, appear and be heard on any issue in a case or proceeding under the

Bankruptcy Code.  11 U.S.C. § 307.

4.      The U.S. Trustee has a statutory duty to monitor the administration of cases

commenced under the Bankruptcy Code, including seeking relief under section 1112(b) of the

Bankruptcy Code.  28 U.S.C. § 586(a).

5.      No committee has been appointed.  Unless the Court determines there is cause for

the appointment of a creditors' committee and orders the appointment of one, the U.S. Trustee is

---

[6]      All references to the provisions of the LST and PSA herein are to the original versions of those documents as filed as exhibits to Dkt. No. 6.  The U.S. Trustee understands that Debtors have filed revised versions of the PSA and LST.  Nevertheless, it is the initial versions that evidence the Debtors' purpose in filing these cases.  While the U.S. Trustee has not had a chance to digest these latest versions, it appears that these versions simply attempt to obfuscate what the earlier versions made clear—that the Debtors are using these cases to benefit Alex Jones and FSS, not the Sandy Hook Plaintiffs.  The U.S. Trustee reserves his rights to supplement this Motion.

003867

prohibited from soliciting and appointing a committee of unsecured creditors in subchapter V

cases such as these.  11 U.S.C. § 1102(a)(3).

## FACTUAL BACKGROUND

**General Information**

6.      On April 17, 2022 (the "Petition Date") and April 18, 2022,[7] the Debtors filed

chapter 11 voluntary petitions and elected to proceed under Subchapter V of chapter 11 on their

respective Petitions.

7.      On April 18, 2022, the Court entered the Order directing joint administration of

the chapter 11 cases solely for procedural purposes.  *See* Dkt. No. 8.

8.      On April 18, 2022, the U.S. Trustee appointed Melissa Haselden as the Debtors'

Subchapter V Trustee.  *See* Dkt. Nos. 9 and 12.

**The Debtors**

9.      The Debtors are holding companies for certain intellectual property assets.  *See*

Dkt. No. 6 at ¶ 7.  Specifically, as their proposed Chief Restructuring Officer ("CRO") attests:

> Debtor's [sic] have no purpose other than to hold assets which may be used by
> other entities.  They undertake no business activities, they do not sell, rent or lease
> to others anything.  Their assets do not generate any income for them.  They have
> no bank accounts and do not pay money to anyone for any reason.  They have no
> debt or other liabilities other than those related to pending or potential litigation.
> For these reasons, they have no financial statements or books of account and they
> do not file income tax returns.

Dkt. No. 1 pp. 10-11 at ¶ 8.  Based on information elicited from the proposed CRO, W. Marc

Schwartz, IWHealth is also entitled to a royalty payment from Youngevity that for many years

---

[7]      InfoW, LLC filed just before midnight on April 17, 2022, while IWHealth, LLC and Prison Planet TV, LLC's petitions were docketed shortly after midnight on April 18, 2022.

5

003868

was paid directly to Alex Jones's personal bank account rather than IWHealth. Tr. April 22, 2022, 48-9.[8]

10.     Each of the Debtors was previously located in Austin, Texas, prior to obtaining leases in Victoria, Texas, in April 2022.  Tr. April 22, 2022, at 52-3.

11.     Prior to April 14, 2022, Alex Jones was the 100% holder of the equity interests in the Debtors.  Dkt. No. 6 at ¶ 9.  The equity in each of the Debtors is now, as of three days before the Petition Date, wholly owned by a recently established Litigation Settlement Trust ("LST").  *Id.* at ¶¶ 9, 16-17.  Alex Jones established the Trust on April 14, 2022, and funded the Trust with his equity interests in the Debtors and an initial funding amount from his "exempt personal assets."  *Id.* at 16-17, Exhibit A (*Declaration of Trust*).

12.     Alex Jones remains the 100% equity holder of FSS, through which Mr. Jones and others operate the so-called InfoWars website and related enterprises.  *Id.*  All the assets of FSS allegedly serve as collateral to repay obligations to PQPR Holdings, LLC ("PQPR"), a vendor to FSS.  *Id.* at ¶ 8, n.1.  PQPR is owned by Alex Jones's insiders.[9]  Dkt. No. 17-6.

---

[8]     Transcript for April 22, 2022, Hearing is attached hereto as Exhibit A.

[9]     In a lawsuit filed in Texas state court on April 6 asserting fraudulent conveyance claims against Jones, FSS, and PQPR, among others, plaintiffs alleged that PQPR filed a UCC Financing Statement claiming a security interest in essentially everything FSS owns only after the Sandy Hook Lawsuits had considerably advanced.  *Heslin v. Jones*, No. D-1-GN-22-001610 (200th Dist. Tex.) Petition, ¶ 33 (filed April 6, 2022). According to plaintiffs, "[t]he [$54 million] supposed debt began accruing years earlier as part of an arrangement where Free Speech Systems sells PQPR's products on the InfoWars website. Under this alleged arrangement, PQPR was to be reimbursed for the costs of the products and receive 70% of the sales revenue while Free Speech Systems retained the other 30%.  In practice, however, Free Speech Systems supposedly kept 100% of the revenue for about seven years and didn't pay for the goods PQPR provided—to the point where a $54 million debt had accumulated.  All the while, PQPR not only supplied Free Speech Systems with more products to sell but also paid Free Speech Systems millions of dollars a year to advertise on the InfoWars website.  PQPR still supplies the Alex Jones Enterprise with products to sell and pays for advertising on the website."  *Id.*  Plaintiffs further allege that within weeks of the default judgments, as part of a scheme to render Jones and FSS "judgment proof," FSS began transferring to PQPR "between $11,000 per day and $11,000 per week plus 60–80% of Free Speech Systems' sales revenue—supposedly just to pay the interest on the alleged $54 million debt."  *Id.* at ¶ 36.

6

13.     Neither Jones, FSS, nor PQPR have filed bankruptcy petitions.

14.     The list of creditors attached to each of the Debtors' petitions contain the names of the relatives of some of the 20 children and six educators killed in the 2012 Sandy Hook school shooting. *See, e.g.,* Dkt. No. 1 at pp. 6-7. Their claims are classified as "disputed" and "unliquidated." *Id.* No other creditors are listed. *See Id.*

**The Pending Litigation**

15.     In 2018, the Sandy Hook Plaintiffs filed suits in Texas and Connecticut (collectively, the "Sandy Hook Lawsuits") against Jones, FSS, and certain of the Debtors.[10] Dkt. No. 6 at ¶ 10-11. As the Debtors admit in their pleadings, "both the Texas and Connecticut courts have imposed multiple sanctions and ruled that Jones, FSS, and the Debtors failed to comply with discovery requirements such that judgment on *liability* has been entered against them by default." *Id.* at ¶ 13 (emphasis in original). The first trial on damages, in Texas, was scheduled to begin jury selection on April 25, 2022. *Id.* at ¶ 14. In the Connecticut litigation, several weeks before the bankruptcy filings, the court again sanctioned Alex Jones for failing to attend his deposition and advised that trial in that case would nevertheless go forward in August 2022. Super Ct. DN 788, 3/30/22 Hearing at 25:4-9.

16.     Additionally, prior to filing these chapter 11 cases, the defendants in the Sandy Hook Lawsuits tried multiple times, all unsuccessfully, to remove the litigation to federal courts. *See, e.g.,* No.: 3:18-CV-1156 (JCH), DN 58, 11/5/18 Ruling Re: Mot. for Remand; No. 3:20-cv-1723 (JCH), DN 44, 3/5/21 Ruling Re: Mot. for Remand. After the first remand in Connecticut failed, the defendants attempted to have the presiding Judge removed for "appearance of judicial

---

[10]     Specifically, the Connecticut cases appear to name all three Debtors, but the Texas cases name only one Debtor, InfoW (which the Sandy Hook Plaintiffs have since nonsuited in the imminent damages trial). *See* Dkt. No. 6 at ¶ 12.

7

impropriety," which also failed.  *See* Dkt No. UWYCV186046438S, Order 421277 (Conn. Sup. Ct. November 4, 2021).

17.     Immediately after these filings, the defendants again sought to remove the Sandy Hook Lawsuits.  *See, e.g.,* Dkt. No. 1, Case No. 22-01022 (Bankr. W.D. Tex. April 18, 2022); Dkt. No. 1, Case No. 22-05004 (Bankr. D. Conn. April 18, 2022).  The Sandy Hook Plaintiffs have filed motions seeking a remand of the lawsuits back to the state courts.  *See, e.g.,* Dkt. No. 5 (Motion for Remand), Case No. 22-05004 (Bankr. Conn. April 21, 2022); Dkt. No. 7 (Motion for Abstention and Remand), Case No. 22-01023 (Bankr. W.D. Tex. April 26, 2022).  Debtor InfoW has also filed a motion seeking to transfer the Texas cases out of the bankruptcy court for the Western District of Texas to the bankruptcy court for the Southern District of Texas.  Dkt. No. 7, Case No. 22-01022 (Bankr. W.D. Tex. April 28, 2022).

18.     Certain of the Debtors are also defendants in other pending litigation, some of which was the result of the Sandy Hook Lawsuits.  Dkt. No. 6 at ¶ 12.  As with the Sandy Hook Lawsuits, while only certain of the Debtors are defendants in such litigation, both Alex Jones and FSS are defendants in *every* case.  *Id.*  In one case, plaintiffs sued under the Texas Uniform Fraudulent Transfer Act alleging that Alex Jones diverted his assets to companies owned by insiders such as his parents and children.  *Id.*

**The Litigation Settlement Trust and "Plan Support Agreement"**

19.     As stated above, only three days before the Petition Date, the Debtors, Alex Jones, and FSS entered into the LST.  *Id.* at ¶¶ 9, 16-17 (the LST is annexed to Dkt. No. 6 as Exhibit A).  Although Alex Jones transferred his equity interests in the Debtors into the LST,

003871

Alex Jones and FSS remain in charge of the income-producing entities of the Alex Jones Enterprise. *See id.* Moreover, the funding in the LST will come from Alex Jones and FSS, who initially funded $725,000 into the trust to pay the administrative expenses of these cases and who propose to limit funding to $10 million. *Id.* at ¶ 17; LST at § 1.3(b), (c); Dkt. No. 35 at ¶ 11. The LST prohibits the LST Trustees from causing the Debtors to file an involuntary petition against either Alex Jones or FSS. LST at § 1.3(a)(iii).

20. Simultaneously with the creation of the LST, the Debtors also entered into a PSA with Alex Jones and FSS that dictates the roadmap for the Debtors' cases. *Id.* at ¶ 17, Exhibit B (*Plan Support Agreement*), p. 1. Under the PSA, the parties agree to take various steps in the bankruptcy cases, including establishing a bar date for claims and a protocol for claims estimation and incorporating the settlement of the claims by the LST Trustee(s) in a subchapter V plan of reorganization. PSA at pp. 5-8. Under the PSA, any plan of reorganization in the Debtors' cases and all related documents must be approved by Alex Jones and FSS. *Id.* at p. 2 (definition of Approved Plan Documents).

21. The LST appears to contemplate that the Debtors' plan of reorganization will include a channeling injunction and releases for Alex Jones and FSS. *See* LST at § 10.1(c). If approved, such a channeling injunction would force the Sandy Hook Plaintiffs to seek payment from the LST for their claims rather than pursue them directly against Alex Jones and FSS, and such a release would bar the claimants from ever pursuing Alex Jones and FSS in the future.

22. Both the LST and PSA include secrecy provisions designed to limit the information that anyone, including the LST Trustees, can elicit from Alex Jones and FSS, including requirements for parties to agree to confidentiality agreements acceptable to Alex Jones and FSS before obtaining any information. *See* PSA at §§ 4(a)(iii), (b)(3); *see also* LST at

9

§§ 1.2(d), 2.2(a).  The PSA further limits the financial information Alex Jones or FSS must provide to only that "reasonably needed to determine that [Alex Jones and FSS have] the ability to pay Allowed Litigation Settlement Trust Claims in full, in accordance with the Plan."  PSA at §§4 (a)(iii).

23.     Unlike plan support agreements in other chapter 11 cases, no creditor participated in the drafting or negotiation of the LST or PSA in these cases.  Instead, these are agreements among insiders.

**Subchapter V**

24.     Debtors elected treatment under subchapter V, established by the Small Business Reorganization Act of 2019, Pub. L. No. 116-54 ("SBRA"), which establishes rules and procedures to lower the cost of and simplify the path through chapter 11 for certain small business enterprises.  Subchapter V is wholly elective and its "provisions . . . effectively hybridized chapters 11 and 13. The beneficiaries are the truly 'small' debtors: individuals or mom-and-pop/small businesses."  Robert C. Meyer, *Small Business Reorganization Act Arrives This Month*, XXXIX ABI Journal 2, 8-9, 48-49, at 9, February 2020.

25.     Eligibility for relief under subchapter V is governed by 11 U.S.C. § 1182(1).  Under section 1182(1)(A), a debtor is currently eligible for subchapter V if (a) the debtor is engaged in *commercial* or *business* activities; (b) the debtor has aggregate noncontingent liquidated secured and unsecured debts of not more than $3,024,725 (excluding debts owed to insiders or affiliates); and (c) at least 50% of the qualifying indebtedness arose from the commercial or business activities of the debtor.

## **LEGAL STANDARD**

10

26.     Section 1112(b)(1) of the Bankruptcy Code requires a court to dismiss a chapter 11 case upon finding that "cause" exists for such dismissal, unless the court instead determines that the appointment of a trustee or examiner is in the best interests of creditors.  11 U.S.C. § 1112(b)(1).[11]  Section 1112(b)(1) provides in full:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).  Although section 1112(b)(4) of the Code contains a non-exclusive list of what constitutes "cause" for dismissal, the Fifth Circuit Court of Appeals has joined other circuits in holding that "cause" can include a showing that a debtor has not filed its bankruptcy case in good faith.  *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072-73 (5th Cir. 1986); *see also In re Humble Place Joint Venture*, 936 F.2d 814, 816-17 (5th Cir. 1991).  As the Fifth Circuit has stated, this good faith requirement "protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons . . . available only to those debtors and creditors with clean hands." *Little*

---

[11]     A debtor may also avoid dismissal if it proves unusual circumstances satisfying the criteria set forth in section 1112(b)(2).  Section 1112(b)(2) provides, in full,

> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than paragraph (4)(A)—
> (i) for which there exists a reasonable justification for the act or omission; and
> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

11

*Creek,* 779 F.2d at 1072. It "prohibits a debtor's misuse of the process where the overriding motive is to delay creditors without any possible benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws." *Elmwood Dev Co. v. Gen. Elec. Pension Tr. (In re Elmwood Dev. Co.)*, 964 F.2d 508, 510 (5th Cir. 1992). And in *Humble Place*, 936 F.2d at 818, the Fifth Circuit affirmed dismissal where, among other things, the bankruptcy court found that the principal purpose of the chapter 11 filing was to "cleanse the partners of their liability," reasoning that "[o]f course, the partners are not the Chapter 11 debtor, and their fate is irrelevant to the propriety of Humble Place's filing. The court was correct to determine that this impermissible purpose cast doubt on the venture's objective good faith."

27. In *Little Creek*, the Fifth Circuit addressed how a reviewing court should approach the good faith inquiry—using an "on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. . . .predicated on certain recurring but non-exclusive patterns, and [ ] based on a conglomerate of factors rather than on any single datum." 779 F.2d 1068 at 1072.[12] This is often referred to as a "totality of the circumstances" approach, and a similar approach is followed by most other circuits. *See In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 618, n.7 (3d Cir. 2009) (collecting cases); *see also In re Nat'l Rifle Ass'n of Amer.*, 628 B.R. 262, 280 (Bankr. N.D. Tex. 2021) (citation omitted).

28. The Third Circuit Court of Appeals has highlighted two inquiries that are particularly relevant to the question of good faith when considering the totality of circumstances

---

[12] In *Little Creek*, the court also described various factors that tend to be present in a bad faith filing, including that the debtor has one asset that is encumbered by a secured creditor's liens, no employees, little or no cash flow or sources of income to fund a plan, few unsecured creditors, and is subject to a foreclosure action or a state-court litigation that has proceeded to a stand-still, and that there are allegations of wrongdoing by the debtor or its principals. *Id.* at 1072-73. Several of these factors are present in the Debtors' cases. They have minimal assets, no employees, no cash flow, little or no income with which to fund a plan, few unsecured creditors beyond the litigation plaintiffs, are involved in a state court litigation in which they have already been found liable, and there are allegations of wrongdoing by their former 100% controlling interest holder.

12

of a debtor's filing: (1) whether the petition serves a valid bankruptcy purpose and (2) whether the petition is filed merely to obtain a tactical litigation advantage. *Off. Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 165 (3d Cir. 1999). Other courts, including those within the Fifth Circuit, have adopted a similar inquiry when considering whether to dismiss a case as a bad faith filing. *See, e.g., Antelope Techs., Inc. v. Janis Lowe (In re Antelope Techs., Inc.)*, 431 Fed. Appx. 272, 275 (5th Cir. 2011) (affirming dismissal of a case for bad faith where the lower court concluded the debtors filed to gain an advantage in shareholder litigation); *Nat'l Rifle Ass'n*, 628 B.R. at 264, 270, 279-80 (finding cause to dismiss case for bad faith "because it was filed to gain an unfair litigation advantage and because it was filed to avoid a state regulatory scheme"); *In re Leslie*, No. 98-35386-H3-11, 1999 Bankr. LEXIS 2113, at *5 (Bankr. S.D. Tex. Feb. 11, 1999) (finding, in the totality of circumstances, that case was commenced for the primary purpose of gaining an unfair advantage in a litigation).

29.  In the Fifth Circuit, the party seeking dismissal is required to make a *prima facie* showing that the debtor lacked good faith in filing its case, after which the burden shifts to the debtor to demonstrate good faith. *In re Mirant Corp.*, 2005 Bankr. LEXIS 1686, *27 n.20 (Bankr. N.D. Tex. Jan. 26, 2005); *In re Sherwood Enters., Inc.*, 112 B.R. 165, 170-71 (Bankr. S.D. Tex. 1989), *judgment entered*, (Bankr. S.D. Tex. Jan. 27, 1989). The moving party need only prove that the filing was objectively in bad faith, rather than showing that a debtor intended to misuse its bankruptcy filing. *See Elmwood Dev.*, 964 F.2d at 512 ("Because the good faith standard is an objective one, the court was not constrained to entertain and give dispositive weight to the subjective state of mind of Elmwood's manager.").

## <u>ARGUMENT</u>

**I.     These Bankruptcy Cases Must be Dismissed for Cause.**

13

30.     The totality of facts and circumstances establishes cause for this Court to dismiss the Debtors' cases as a bad faith filing for at least two reasons: (1) the Debtors' cases do not serve a valid bankruptcy purpose; and (2) the Debtors filed these cases to gain a tactical litigation advantage.

31.     Although the facts and indicia of bad faith supporting each of these grounds for cause have already been established in the public filings before this Court, the U.S. Trustee is also prepared to propound discovery, if necessary, to further adduce evidence supporting each ground.

**A.  These Cases Do Not Serve a Valid Bankruptcy Purpose.**

32.     The purpose of bankruptcy is to give "to the honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Loc. Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934); *see* Report of the Committee on the Judiciary, House of Representatives to Accompany H.R. 8200, H.R. Rep. No. 595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6179 ("The purpose of a business reorganization case, unlike a liquidation case, is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders.").  Chapter 11 furthers this purpose in two complementary ways: (1) "preserving going concerns" and (2) "maximizing property available to satisfy creditors." *Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 452 (1999).[13]

---

[13]     Other objectives of the Bankruptcy Code include "avoidance of the consequences of economic dismemberment and liquidation, and the preservation of ongoing values in a manner which does equity and is fair to rights and interests of the parties affected." *SGL Carbon*, 200 F.3d at 161 (citing *In re Victory Constr. Co., Inc.*, 9 B.R. 549, 558 (Bankr. C.D. Cal. 1981), *order stayed, Hadley v. Victory Constr. Co., Inc. (In re Victory Constr. Co., Inc.)*, 9 B.R. 570 (Bankr. C.D. Cal. 1981), *order vacated*, 37 B.R. 222 (1984)).

003877

33.     In furthering these objectives, chapter 11 vests a debtor with considerable

protections—among them the automatic stay and the discharge of debts.  Subchapter V adds

additional debtor protections—no creditors' committee unless the Court orders one for cause, no

requirement for a disclosure statement, the debtor's exclusive right to file a plan of

reorganization, and the debtor's ability to "cram down" confirmation of a plan without an

impaired accepting creditor class—that "can impose significant hardship on creditors."  *See SGL*

*Carbon,* 200 F.3d at 165.  Under appropriate circumstances, "the exercise of those powers is

justified.  "But this is not so when a petitioner's aims lie outside those of the Bankruptcy Code."

*Id.* at 166 (emphasis added).  As the Fifth Circuit (affirmed by the Supreme Court) advised in

*Timbers of Inwood Forest*, "when there is no reasonable likelihood that the statutory objective of

reorganization can be realized . . . then the automatic stay and other statutory provisions designed

to accomplish the reorganization objective become destructive of the legitimate rights and

interests of creditors, the intended beneficiaries."  *United Savs. Assoc. of Texas v. Timbers of*

*Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 373

(5th Cir. 1987) (en banc), *aff'd*, 484 U.S. 365 (1988).

### i.     *The Debtors have no Reorganizational Purpose.*

34.     These cases are demonstrably not about reorganizing, rehabilitating, or granting a

fresh start to an honest, unfortunate debtor.  The Debtors' bankruptcy filings do not serve any

recognized objective of the Bankruptcy Code.  These Debtors have no businesses and no purpose

to reorganize.

35.     As the Debtors' proposed CRO attests, these Debtors have "no purpose other than

to hold assets which may be used by other entities," but these assets "do not generate any income

003878

for them."[14] Dkt. No. 1 at 10-11, ¶ 8. The Debtors do not have bank accounts, financial statements, books of account, or income tax returns. *Id.* There is no debt to restructure, no liens being primed, no cash collateral required, and no post-petition financing being granted because these Debtors "undertake no business activities, they do not sell, rent or lease to others anything." *Id.* But these Debtors were, until three days before the filings, members of a larger enterprise controlled by Alex Jones.[15] Dkt. No. 6 at ¶¶ 8-9. Based on the extremely limited information disclosed about the rest of the Alex Jones Enterprise to date, all the assets and businesses of that enterprise are with Alex Jones, FSS, and other, non-debtor companies, whose finances are not transparent in these cases. *Id.*; *see also* Tr. April 22, 2022 at 55.

36. On the contrary, these filings are an attempt to subvert the purpose of the Bankruptcy Code and the subchapter V provisions designed to assist struggling small businesses to reorganize. Alex Jones and FSS hand-picked these three holding companies for bankruptcy as part of a scheme engineered solely to limit their own legal liability, to deny parties in interest a full accounting of their assets, and to deny individuals their day in court and imminent recovery for established liability. Neither the Debtors nor their creditors benefit from these bankruptcy cases. The only ones benefiting are Alex Jones and FSS, who seek to reap the benefits of chapter 11 without any of its burdens.

---

[14] One debtor, IWHealth, apparently has rights to a royalty payment of $38,000 previously diverted to Alex Jones. The newly hired CRO discovered this debtor asset after some due diligence before this bankruptcy filing and requested that the royalty be paid to the rightful entity. *See* Tr. April 22, 2022 at 43, 48-9.

[15] Equitable principles relating to insider transactions support dismissal of these cases given Alex Jones's control of all parties and engineering of the LST and PSA prior to the filing of these cases. *See Pepper v. Litton*, 308 U.S. 295, 306-07 (1939) ("The essence of the test [for good faith of an insider transaction] is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside.").

16

ii.     *The Insider-Negotiated PSA and LST Evidence that Debtors Are Attempting to Abuse the Bankruptcy Code to Shield Non-Debtors from Disclosure and Legal Liability and to Minimize Recovery to Creditors.*

37.     Although the Debtors claim they filed these cases because they were concerned that "efforts to collect on a judgment of the Texas actions would result in leaving nothing for the Connecticut Sandy Hook Plaintiffs or other creditors" and further claim they intend to pay all litigation claims "in full," all evidence suggests that these filings were *not* a benevolent effort by the Debtors to ensure a fair distribution to all creditors.  *See* Dkt. No. 6 at ¶¶ 15, 16.  Because the members of the Alex Jones Enterprise who hold the assets and are themselves defendants and liable to the Sandy Hook Plaintiffs—Alex Jones and FSS—did not file for relief, there is no transparency into their assets or any statutory mechanism for distributing those assets.  Instead, we start this case with the LST and PSA—entered into prior to bankruptcy between affiliated entities, without any creditor support—which cloak Alex Jones's and FSS's books and records in secrecy by imposing confidentiality restrictions on those seeking access and further provide that parties can only obtain access to information reasonably needed to determine whether Alex Jones and FSS can pay estimated, not actual, claim amounts.[16]  *See* PSA at §§4(a)(iii), (b)(3); *see also* LST at §§1.2(d), 2.2(a).

38.     But the PSA sets a course for the Debtors whereby claims will not be paid in full by any ordinary understanding of that term.  Instead, under the PSA, the Debtors must quickly seek approval for a litigation claims bar date and then a claims estimation process, which allows them to cap what can be paid to creditors from whatever assets Alex Jones and FSS choose to

---

[16]     Given this structure, no party in interest can determine whether Alex Jones and FSS actually have the funds to satisfy all of the claims against them (in which case, they have no reason to be concerned about favoring certain creditors over others) or whether they do not have sufficient funds (in which case, it is unclear why they would care how these assets are divided).

003880

contribute in a subchapter V plan of reorganization. *See* PSA at 5-8. Based on the information provided to date, even were Debtors to succeed in having the claims estimated, it is not clear how any plan for the Debtors could be feasibly confirmed because the Debtors have no assets to contribute to a plan, and the PSA provides only that Alex Jones and FSS will contribute money until they decide not to. *See* PSA at §4(b).

39.     Moreover, section 502(c) of the Bankruptcy Code only requires a bankruptcy court to estimate a contingent or unliquidated claim where failure to do so "would unduly delay the administration of the case." *See* 11 U.S.C. § 502(c); *O'Neill v. Continental Airlines, Inc.* (*In re Continental Airlines, Inc.*), 981 F.2d 1450, 1461 (5th Cir.1993) ("In order for the estimation process of § 502(c) to apply, . . . fixing the claim must entail undue delay in the administration of justice."); *In re Dow Corning Corp.*, 211 B.R. 545, 563 (Bankr. E.D. Mich. 1997) ("[E]stimation does not become mandatory merely because liquidation may take longer and thereby delay administration of the case. . . .bankruptcy law's general rule is to liquidate, not to estimate. For estimation to be mandatory, then, the delay associated with liquidation must be 'undue.'"). To determine whether liquidating a claim would unduly delay the case and should instead be estimated, a court should "perform a kind of cost-benefit analysis by considering the time, costs and benefits associated with both estimation and liquidation." *Id.* at 563.

40.     Here, the Debtors have attempted to manufacture exigency by electing subchapter V treatment despite not having any operations or assets. Thus, they cannot establish that any delay caused by full liquidation of the claims would be "undue." *See Id.* at 563, 566-67 (denying request for estimation where court determined that the strategy behind the request was ultimately to limit the amount the debtor would have to pay and the time delay was "highly speculative" and there was no guarantee estimation would be faster.). Estimation is a "second-best"

18

procedure in any circumstance, and it is hard to see how there is any benefit to estimating the

Sandy Hook Plaintiffs' claims rather than allowing the imminent trials to proceed to full, actual

judgment. *See, e.g., Apex Oil Co. v. Stinnes Interoil, Inc. (In re Apex Oil Co)*, 107 B.R. 189, 193

(Bankr. E.D. Mo. 1989) (finding no undue delay where trial in was "imminent"); *see also In re*

*N. Am. Health Care, Inc.,* 544 B.R. 684, 689 (Bankr. C.D. Cal. 2016) (limiting the claims to be

estimated and stating "[b]ecause estimation is a second-best method . . . . a bankruptcy court

ought not to expand the estimation's scope beyond this limited extent absent compelling reasons

to do so.").[17]

41.     Further, the handwriting is on the wall that Alex Jones and FSS will seek orders

of this Court staying further actions against them in the Sandy Hook Lawsuits (which they have

already sought to remove based on these cases) and that they and the Debtors will ultimately

seek involuntary non-consensual releases, or their functional equivalent, of the plaintiffs' tort

claims against Jones, FSS, and other related, non-debtor parties.  The LST itself suggests that the

Debtors' forthcoming plan of reorganization will involve a channeling injunction and, ultimately,

some type of release for Alex Jones and FSS.  *See* LST at 2; § 10.1(c).  The liabilities facing

Alex Jones arise out of allegations of his intentional tortious conduct that could likely not be

discharged in his own bankruptcy under section 523 of the Code.  11 U.S.C. § 523(a)(6).  Thus,

---

[17]     Moreover, the claims in the Sandy Hook Lawsuits are personal injury claims and thus a trial on the claims
is not a core proceeding in the Debtors' cases and cannot be adjudicated by this Court.  *See* 28 U.S.C. § 157(b)(2)(B)
and (b)(5).  In addition, bankruptcy courts are constitutionally prohibited from holding jury trials on non-core claims
and may not hold jury trials on core claims without the consent of both parties.  *See* 28 U.S.C. § 157(e); *Orion*
*Pictures Corp. v. Showtime Networks Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1101 (2nd Cir. 1993).  Finally,
the Debtors' proposal to impose on the plaintiffs an expedited bar date, an estimation process, and a capped
distribution via a settlement trust through an artificially staged and orchestrated bankruptcy may also raise concerns
about whether they are receiving the due process owed to them under the Constitution.

003882

any such outcome would give him more from the bankruptcy of three non-operating entities in his enterprise than he could obtain in his own personal bankruptcy case.

42.     Finally, the creditors themselves are plainly not asking for this relief.  No creditor was involved in negotiating the LST or the PSA prior to the filings.  And the main creditors in these cases, the Sandy Hook Plaintiffs, have rejected this structure.

### iii.     *The Lawsuits that Allegedly Precipitated these Filings Primarily Concern Non-Debtors.*

43.     To add to the Debtors' lack of an ongoing concern or valuable property that this case might seek to preserve or to maximize, the proposed CRO also admits that the Debtors "have no debt or other liabilities other than those related to pending or potential litigation."  Dkt. No. 1 at 10-11, ¶ 8.  This pending litigation, which the Debtors claim caused a "classic 'race to the courthouse'" precipitating this filing, appears to comprise fewer than ten lawsuits, some of which have been ongoing for many years.  Dkt. No. 6 at ¶¶ 12, 14.  The true catalysts that prompted the filing of these cases are the Sandy Hook Lawsuits pending in Texas and Connecticut, each of which were scheduled for a jury trial on damages before the filings (the first beginning April 25, 2022).[18]  *Id.;* Dkt. No. 5, Case No. 22-05004 (Bankr. D. Conn. April 18, 2022).

44.     But these lawsuits do not arise from Debtors' conduct.  Rather, the lawsuits arise from the allegedly tortious, intentional conduct of Alex Jones and FSS (through its employees),

---

[18]     Counsel for plaintiffs has advised that the other Sandy Hook Lawsuits in Texas are scheduled for trial in June and August 2022.  Tr. April 22, 2022 at 70.  The Connecticut Sandy Hook Lawsuit is scheduled for trial in August 2022.  Dkt. No. 1, Case No. 22-05004 (Bankr. D. Conn. April 18, 2022).

003883

who did not file for bankruptcy in this or any other court. In fact, the Debtors are not co-defendants in every lawsuit involving the Alex Jones Enterprise.[19]

45.     This all begs the same question—the obvious question since the day these cases were filed—why are these three Debtors in bankruptcy when Alex Jones and FSS are not? At the first hearing in these cases, the Debtors' CRO suggested that Alex Jones was concerned about reputational damage to himself and the possible loss of vendors to FSS if they filed for bankruptcy. *See* Tr. April 22, 2022 at 45, 55. But the main vendor to the Alex Jones Enterprise, PQPR Holdings, is simply another member of that enterprise, controlled by Alex Jones insiders. Dkt. No. 17-6. Surely Alex Jones wasn't concerned he would refuse to deal with himself. In any event, it is clear that by not seeking bankruptcy relief themselves, Alex Jones and FSS do not have to disclose their finances.

### iv.     *The Debtors Are Attempting to Manipulate the Provisions of Subchapter V.*

46.     The Debtors assert that they are precisely the types of enterprises that Congress had in mind when it passed SBRA, enacting subchapter V of chapter 11. Nothing in the language of subchapter V or in its legislative history validates this position. The Debtors, who are incapable of funding a plan themselves, attempt to subvert a statutory scheme that was designed to aid well-intentioned small businesses in their efforts to reorganize their financial

---

[19]     While all three debtors appear to be co-defendants in the Connecticut Sandy Hook Lawsuit, only one debtor, InfoW, is a co-defendant in the Texas Sandy Hook Lawsuit that was scheduled for jury selection April 25, 2022. Nevertheless, when the plaintiffs in one such case filed to nonsuit that debtor and proceed against Alex Jones and FSS, defendants continued their efforts to remove the case to federal court based on the bankruptcy of the non-suited defendant.  *See* Chuck Lindell, *Judge Reluctantly Delays Alex Jones Trial in Sandy Hook Case, Criticizes His Lawyers,* Austin American Stateman (April 20, 2022, updated April 21, 2022, 8:21AM), https://www.statesman.com/story/news/2022/04/20/austin-tx-judge-delays-alex-jones-sandy-hook-trial/7382689001/.

21

003884

affairs into an obvious scheme to protect Alex Jones and FSS from liability in the Sandy Hook Lawsuits. The bankruptcy process should not be used to further this abusive scheme.

47. The elements of this scheme are not difficult to see. The three non-operating Debtors filed in an attempt to satisfy eligibility for subchapter V to benefit all of the non-debtor defendants.

48. Even though courts in Texas and Connecticut had entered default judgments against Debtors in favor of Sandy Hook Plaintiffs due to Jones's pattern of misconduct in those cases, the Debtors assert that their indebtedness is all "unliquidated." Why? Because unliquidated debts are not counted toward establishing if a debtor and its affiliated debtors have too much debt in the aggregate to avail themselves of subchapter V. 11 U.S.C. § 1182(1). How? The Debtors—some of which aren't defendants in every action against Alex Jones and FSS— filed to stay the damages phases of the Sandy Hook Lawsuits that would establish the amounts that the Debtors, Alex Jones, and FSS owe the plaintiffs for their tortious conduct. Although the Debtors claim that they are trying to avoid a "race to the courthouse," the only race that has occurred here is the Debtors' race to this courthouse, seeking the protection of this Court to avoid the scheduled state court trials on damages. Little doubt exists that the total damage award against the Debtors, Alex Jones, FSS, and other non-debtor solvent entities of the Alex Jones Enterprise would exceed the debt limit currently in place for subchapter V.

49. It is also not difficult to see what led the Debtors to choose subchapter V for this scheme. Subchapter V has features that, when manipulated in the manner proposed by the Debtors, can transform it from a tool to be used by earnest small operating entities to rehabilitate their business and financial affairs to a weapon used against innocent creditors. For example, a subchapter V debtor must file a plan not later than 90 days after the date of the order for relief.

22

Although at first blush this requirement might seem burdensome to a debtor, in these cases, it appears the Debtors intend to rely on the 90-day plan deadline to argue that the Court must quickly estimate the Sandy Hook Plaintiffs' claims to avoid "undue delay" in the administration of these cases. *See* 11 U.S.C. § 502(c)(1); *see supra, ¶¶ 38-9.*

50.     As another example, in a subchapter V case, no committee is appointed unless the Court determines there is cause for the appointment of a creditors' committee and orders the appointment of one.  11 U.S.C. § 1102(a)(3).  Relatedly, confirmation of a non-consensual subchapter V plan under section 1191 of the Code does not require that any class of impaired non-insider claims affirmatively vote to accept the plan.  Instead, subchapter V enables a court to confirm a plan over the dissenting votes of unsecured creditor classes so long as the plan provides that three to five years of the debtor's projected disposable income will be paid under the plan.  11 U.S.C. § 1191(c)(2).  Thus, the Debtors can seek to "cram down" their plan without regard to whether a single Sandy Hook Plaintiff votes in favor of that plan.  And because the Debtors have little or no income, this would not be much of a burden for Debtors nor much of a benefit for creditors.  Although Alex Jones and FSS have agreed to advance some amount to the Debtors for plan payments, there is no transparency to how those amounts were determined— and they were not determined by negotiation with creditors.  Further, because Alex Jones and FSS are not themselves debtors, this Court will not have authority to require them to satisfy the best interests of creditors test—showing that the plan yields more value for creditors than a chapter 7 liquidation—or require that all of Alex Jones's and FSS's projected disposable income for three to five years will be paid to Debtors for distribution to their joint creditors.

23

51.     These cases thus represent an imaginative attempt to misuse subchapter V of chapter 11 to protect non-debtors whose conduct hardly shows them to be the honest but unfortunate debtors entitled to bankruptcy relief even had they themselves filed.

**v.      *For the Reasons Set Forth in Subsections i through iv, The Debtors' Bankruptcy Cases Must be Dismissed.***

52.     Given the totality of circumstances supporting the Debtors' petitions, as set forth in subsections *i* through *iv* above, these Debtors do not belong in bankruptcy and their cases must be dismissed.  "According to the Fifth Circuit, '[g]ood faith implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose.'"  *In re Cedar Short Resort, Inc.*, 235 F.3d 375, 379 (8th Cir. 2000) (quoting *In re Metro. Realty Corp.*, 433 F.2d 676, 678 (5th Cir. 1970)).  "Congress has never intended that bankruptcy be a refuge for the irresponsible, unscrupulous or cunning individual." *In re Rognstad*, 121 B.R. 45, 50 (Bankr. D. Haw. 1990).  And courts should apply particular scrutiny to cases involving "asset-culled entities where 'debtors have elected not to submit the actual entities in interest to the jurisdiction of the court, thereby isolating the entities in interest from the scrutiny and control of the court during proceedings.'"  *In re Eden Assocs.,* 13 B.R. 578, 584-85 (Bankr. S.D.N.Y. 1981) (dismissing case where court determined, among other things, "that this debtor was formed, if at all, and the property purportedly conveyed to it, to shield the assets of Cook's more affluent companies from the jurisdiction of the Bankruptcy Court") (*quoting In re Dutch Flat Inv.,* 6 B.R. 470, 471 (Bankr. N.D. Cal. 1980)) (emphasis added).

53.     Alex Jones and FSS should not be permitted to use chapter 11 as a means to shield their assets from the plaintiffs.  "Chapter 11 was not designed for the purpose of protecting assets and interests of non-debtor parties under the guise of a legitimate plan of

24

reorganization." *In re Davis Heritage GP Holdings, LLC*, 443 B.R. 448, 462 (Bankr. N.D. Fla. 2011). Because these cases were not filed for a valid bankruptcy purpose, they must be dismissed.

### B. The Debtors Filed these Cases to Gain a Litigation Advantage for Non-Debtors Alex Jones and FSS.

54. The timing of these filings—only eight days before the commencement of a jury trial against the defendants in one of the Texas Sandy Hook Lawsuits—together with the pattern of behavior exhibited by the defendants before the courts overseeing the Sandy Hook Lawsuits, reveals that the Debtors' bankruptcy petitions were filed as a litigation tactic to obstruct and delay an imminent trial establishing damages against defendants, including non-debtors Alex Jones and FSS, in state court litigation.

55. "[B]ecause filing a Chapter 11 petition merely to obtain tactical litigation advantage is not within the legitimate scope of bankruptcy laws, . . . courts have typically dismissed chapter 11 petitions under these circumstances. . . ." *SGL Carbon*, 200 F.3d at 165 (citations omitted); *see also Antelope Techs.*, 431 Fed. Appx. at 275 (affirming dismissal of a case for bad faith where the lower court concluded the debtors filed to gain an advantage in shareholder litigation); *Leslie*, 1999 Bankr. LEXIS 2113, at *5 (finding, in the totality of circumstances, that case was commenced for the primary purpose of gaining an unfair advantage in a litigation). Further, "[w]here the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being in good faith." *15375 Memorial Corp.*, 589 F.3d at 625-26 (citing *SGL Carbon*, 200 F.3d at 165). For example, in *15375 Memorial Corp.*, the Third Circuit found that given a mix of facts and "the Debtors' sudden decision to file for bankruptcy

25

despite their [sic] having been dormant and without employees or offices for several years," the Court "[could not] escape the conclusion that the filings were a litigation tactic." *Id.* at 625-26. And in *Cedar Shore,* the Eighth Circuit affirmed dismissal of a case where there existed "strong evidence to support the finding that [the debtor] did not file bankruptcy to effectuate a valid reorganization, but rather to prevent the [the plaintiffs] from pursuing their claims in state court." 235 F.3d at 380–81.

56.     Here, the Debtors have all but admitted that they filed these petitions solely to stop the Sandy Hook Lawsuits from proceeding in state court and to resolve them in the way the Alex Jones Enterprise—but not the Sandy Hook Plaintiffs—sees fit. *See* Dkt. No. 6 at ¶¶ 15, 16; PSA at 5-8.   Based on the information disclosed thus far, the Debtors have no or virtually no creditors beyond the litigation plaintiffs. *See, e.g.,* Dkt. No. 1 at ps. 6-7.   As discussed above, the main lawsuits the Debtors identify as precipitating these filings are the Sandy Hook Lawsuits pending in Texas and Connecticut. *See* Dkt. No. 6 at ¶¶ 12, 15.   Although the Sandy Hook Lawsuits are in different venues, they share many similarities, and these cases thus bear the hallmarks of a classic two-party dispute best left to resolution in the state court. *See Little Creek* at 1072-73; *Sherwood Enters.,* 112 B.R. at 170.   And the history of these lawsuits evidences a pattern of behavior—of repeated obstruction and delay tactics—that is simply being repeated and moved to a different forum by these bankruptcy filings.

57.     As the Debtors admit in their pleadings, the defendants' sanctionable behavior over a period of at least four years led the courts in both Texas and Connecticut to enter default judgments against them. *See* Dkt. No. 6 at ¶ 13; *see also Lafferty v. Jones,* 336 Conn. 332, 374, (2020)*, cert. denied,* 141 S. Ct. 2467 (2021) (Connecticut Superior Court quoting the trial court stating that "the discovery in this case has been marked with obfuscation and delay on the part of

26

the defendants").  When the defendants appealed one such sanction, the Connecticut Supreme

Court affirmed that the defendants had "willfully disregarded the court's discovery orders."

*Lafferty,* 336 Conn. at 377, 79 (noting trial court's consideration of this willfulness "along with

the defendants' harassing and intimidating speech toward the plaintiffs' counsel, which together

created a whole spectrum of bad faith litigation misconduct.").  Defendants have also tried

multiple times to remove the Sandy Hook Lawsuits to federal court—even after the first gambit

had been rejected and the suit remanded.  *See, e.g.,* No.: 3:18-CV-1156 (JCH), DN 58, 11/5/18

Ruling Re: Mot. for Remand; No. 3:20-cv-1723 (JCH), DN 44, 3/5/21 Ruling Re: Mot. for

Remand.  Unsurprisingly, immediately upon the Debtors' bankruptcy filing, the defendants again

sought to remove the lawsuits.  *See, e.g.,* Dkt. No. 1, Case No. 22-01022 (Bankr. W.D. Tex.

April 18, 2022); Dkt. No. 1, Case No. 22-05004 (Bankr. D. Conn. April 18, 2022). These

bankruptcy filings are merely the latest in a long line of efforts by Alex Jones and FSS to

obstruct and hinder the courts' ability to liquidate damages in Texas and Connecticut.

58.     In addition, the *timing* of these filings also unquestionably supports a finding that

their purpose was as a litigation tactic against the Sandy Hook Plaintiffs.  After all the

defendants' delay and obstruction, the first trial on damages was scheduled to begin with jury

selection on April 25, 2022.  *Id.* at 14.  These cases were filed *only eight days before*.  The cases

were also filed only weeks after Alex Jones repeatedly refused to attend his scheduled deposition

in Connecticut, after which the court again sanctioned him and advised that the trial in that case

would nevertheless go forward in August 2022.  20  Super Ct. DN 788, 3/30/22 Hearing at 25:4-

9.  And while only one debtor, InfoW, is a co-defendant in Texas, when the Sandy Hook

Plaintiffs filed to nonsuit InfoW and proceed solely against Alex Jones and FSS, InfoW

---

[20]     After the imposition of escalating sanctions, Jones ultimately appeared for his deposition.

003890

nonetheless continued its efforts to remove the cases to a federal court and has now sought to transfer venue of those cases. *See* Dkt. No. 1, Case No. 22-01022 (Bankr. W.D. Tex. April 18, 2022); Dkt. No. 7, Case No. 22-01022 (Bankr. W.D. Tex. April 28, 2022); Chuck Lindell, *Judge Reluctantly Delays Alex Jones Trial in Sandy Hook Case, Criticizes His Lawyers,* Austin American Stateman (April 20, 2022, updated April 21, 2022, 8:21AM),

https://www.statesman.com/story/news/2022/04/20/austin-tx-judge-delays-alex-jones-sandy-hook-trial/7382689001/.

59.     Perhaps the best evidence that this filing is for a litigation advantage comes from Mr. Jones's lawyer himself as reported by the Wall Street Journal:

> Mr. Jones's lawyer, Norm Pattis, said Wednesday that they have tried to settle the case "on reasonable terms" and that Sandy Hook families "persist in trying to destroy Alex and his companies."
> **"We're turning to the bankruptcy courts to compel the plaintiffs to estimate the value of their claims in open court by discernible evidentiary standards,"** Mr. Pattis said. "The plaintiffs have turned this litigation into a macabre morality play and have refused to negotiate in good faith. We hope they will show respect to the federal courts."

*Infowars Bankruptcy Delays Upcoming Sandy Hook Trial,* Wall Street Journal (April 20, 2022) (emphasis added) available at https://www.wsj.com/articles/infowars-bankruptcy-delays-upcoming-sandy-hook-trial-11650494400?mode=list

60.     All the evidence suggests that Alex Jones and FSS intended and still intend to use this bankruptcy to accomplish their long-sought goal of having some other court besides those in Texas and Connecticut resolve the Sandy Hook Lawsuits.[21]  But they don't want just any court.

---

[21]     Immediately prior to the filing. the Debtors obtained leases for the Debtor entities in Victoria, Texas, despite their being previously located at all times in Austin, Texas (the site of the rest of the Alex Jones Enterprise as well as the Texas Sandy Hook Lawsuits).  Tr. April 22, 2022 at 52-3.  For purposes of venue under 28 U.S.C. § 1408, at least one bankruptcy court has held that the "domicile" of an entity is its state of incorporation, and venue in any district in the state is proper for that entity.  *See In re ERG Intermediate Holdings, LLC,* No. 15-31858-

003891

They now seek to abuse the bankruptcy system not only to resolve these lawsuits against all of the defendants—Debtors and non-debtors alike—but also to minimize the possible recovery the plaintiffs can receive.  *See supra*, ¶¶ 34-51.  Because the Debtors' bankruptcy petitions were filed as a litigation tactic to thwart the Sandy Hook Plaintiffs from pursuing their claims in state court, these cases must be dismissed.

### II.  Dismissal is in the Best Interests of Creditors and the Estates.

61.    Once cause is established, "a bankruptcy court *shall*"—must—convert[22] or dismiss the case unless the court determines that appointing a section 1104(a) trustee or examiner is in the best interests of the creditors and the estate'" or the debtor establishes unusual circumstances to avoid dismissal.  11 U.S.C. § 1112(b)(1), (2) (emphasis added).[23]

62.    Here, dismissal is in the best interests of the Debtors' creditors, all or almost all of whom are plaintiffs in lawsuits against the Alex Jones Enterprise.[24]  These lawsuits are already

---

HDH11, 2015 WL 6521607, at *4 (Bankr. N.D. Tex. Oct. 27, 2015) ("[A]n entity that is formed under the laws of a given state is domiciled in the entire state for purposes of section 1408(1) and may file a case under the Bankruptcy Code in any District in that state).  Nevertheless, the timing of the effort to obtain these leases and obtaining the leases themselves—suggesting that Debtors were seeking a bankruptcy forum outside of Austin, Texas, the site of the Texas Sandy Hook Lawsuits—is evidence of Jones's intention to manipulate every aspect of this case for his benefit and further indicia of the bad faith of the Debtors leading up to these cases.  As the CRO testified at the First Day hearing, the Victoria office is empty and unused by Debtors.

[22]    While the U.S. Trustee seeks dismissal as the appropriate remedy in these cases, the Court may also choose to convert these cases to chapter 7.  If converted, a chapter 7 trustee may be able to find and monetize assets (as the CRO has in discovering the royalty payment) and initiate actions to avoid fraudulent transfers, among other things.

[23]    The Debtors have the burden to prove unusual circumstances.  The U.S. Trustee is not aware of any facts that would support such a finding here but reserves his right to oppose any such showing at an appropriate time.

[24]    Because the Debtors are the only members of the Alex Jones Enterprise who filed for bankruptcy, there is no benefit to be obtained by the appointment of an examiner that would not be better served by dismissing the case. Moreover, given that these cases can only survive by the funding of Alex Jones and FSS and the pattern of behavior

29

003892

being administered in state court, the presiding courts have already found the defendants liable, and all that remains is a trial on damages. As of the filings, jury selection in one Texas case was only days away, and jury selection in Connecticut will follow in August. Dismissal would ensure not only that the families can see these proceedings through in the venue they chose before a jury of their peers, but also that any claimant who secures a judgment against any member of the Alex Jones Enterprise can enforce that judgment on assets held by those companies without being subject to the roadblocks and limitations the Debtors, Alex Jones, and FSS have attempted to place before them with the PSA, LST, and these filings. And as evidenced by their own pending motions, the Sandy Hook Plaintiffs—as creditors in these cases—believe their interests would be best served by dismissal of these cases.

## RESERVATION OF RIGHTS

63.     The U.S. Trustee reserves his rights to supplement this motion further should it become appropriate at any time in the future.

## CONCLUSION

WHEREFORE the U.S. Trustee respectfully requests that this Court grant this Motion and grant such other and further relief as it may deem just and proper.


Dated:  April 29, 2022                          Respectfully Submitted,

                                                KEVIN M. EPSTEIN
                                                UNITED STATES TRUSTEE

---

they have displayed in the state court litigations in Texas and Connecticut, it seems unlikely they would agree to continue such funding were an examiner appointed.

      Section 1104, which governs the appointment of a trustee in a typical chapter 11 case, does not apply in subchapter V cases.

003893

By: /s/Jayson B. Ruff
Jayson B. Ruff
Trial Attorney
United States Department of Justice
Office of the United States Trustee
Michigan Bar No. P69893
Houston, TX  77002
Telephone:  (713)718-4650 ext. 252
Facsimile:  (713)718-4670

/s/ Ha M Nguyen
Ha Nguyen
Trial Attorney
CA Bar #305411 | FED ID NO. 3623593
United States Department of Justice
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, Texas 77002
E-mail: Ha.Nguyen@usdoj.gov
Cell: 202-590-7962

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission to all Pacer System participants in these bankruptcy cases, on the 29th day of April, 2022.

/s/ Jayson B. Ruff
Jayson B. Ruff

31

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60020 |
| | § | |
| INFOW, LLC, *et al.*, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtors | § | Jointly Administered |
| | § | |

# EXHIBIT C

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

_____
ERICA LAFFERTY, DAVID WHEELER,  )
FRANCINE WHEELER, JACQUELINE  )
BARDEN, MARK BARDEN, NICOLE  )
HOCKLEY, IAN HOCKLEY, JENNIFER  )
HENSEL, JEREMY RICHMAN, DONNA  )
SOTO, CARLEE SOTO-PARISI, CARLOS )
M. SOTO, JILLIAN SOTO, AND  )
WILLIAM ALDENBERG,  )
    Plaintiffs,  )
  )
vs.  )
  )  ADV. PRO. NO.    22-05004 (JAM)
ALEX EMRIC JONES, INFOWARS, LLC, )
FREE SPEECH SYSTEMS, LLC,  )
INFOWARS HEALTH, LLC, PRISON  )
PLANET TV LLC, WOLFGANG HALBIG,)
CORY T. SKLANKA, GENESIS  )
COMMUNICATIONS NETWORK, INC., )
AND MIDAS RESOURCES, INC.  )
    Defendants.  )  ECF No. 24
  )
_____)

## ORDER SCHEDULING STATUS CONFERENCE
## AND REQUIRING APPEARANCE OF PARTIES

**ORDERED:**  On May 24, 2022 at 2:00 p.m., a Status Conference will be held to discuss

the Unopposed Motion to Dismiss Plaintiffs' Claims Against Removing Defendants Infowars,

LLC (aka InfoW, LLC), Infowars Health, LLC (aka IWHealth, LLC) and Prison Planet TV, LLC

With Prejudice (ECF No. 24); and it is further

**ORDERED:**  The Chapter 7 Trustee for the Estate of Erica L. Garbatini (fka Erica L.

Lafferty), Counsel for the Plaintiffs, and Counsel for Infowars LLC (aka InfoW, LLC), Infowars

Health, LLC (aka IWHealth, LLC), and Prison Planet TV, LLC shall appear before this Court at

the Status Conference; and it is further

**ORDERED:** If you are the debtor, CM/ECF Filer, or CM/ECF User and will be participating in the above scheduled hearing, at least THREE business days before the scheduled hearing, you must contact the Clerk's Office for instructions to connect to the ZoomGov remote hearing by sending an email to the following court email address:

**CalendarConnect_BPT@ctb.uscourts.gov**. If you do not have an email address, you may call the Clerk's Office at (203) 579−5808 for the instructions.

Dated at Bridgeport, Connecticut this 17th day of May, 2022.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut

2

# Notice Recipients

District/Off: 0205–5     User: admin                    Date Created: 5/17/2022
Case: 22–05004          Form ID: pdfdoc2               Total: 39

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**
pla     Erica Lafferty
pla     David Wheeler
pla     Jacqueline Barden
pla     Mark Barden
pla     Nicole Hockley
pla     Ian Hockley
pla     Jennifer Hensel
pla     Jeremy Richman
pla     Donna Soto
pla     Carlee Soto–Parisi
pla     Carlos Soto
pla     Jillian Soto
pla     William Aldenberg
dft     Alex Emric Jones
dft     Free Speech Systems, LLC
dft     Infowars, LLC
dft     Infowars Health, LLC
dft     Prison Planet TV, LLC
dft     Wolfgang Halbig
dft     Cory T. Sklanka
dft     Genesis Communications Network, Inc.
dft     Midas Resources, Inc.
pla     Richard M. Coan

                                                                    TOTAL: 23

**Recipients of Notice of Electronic Filing:**
aty     Alinor C. Sterling          asterling@koskoff.com
aty     Cameron Lee Atkinson        catkinson@pattisandsmith.com
aty     Christopher Mattei          cmattei@koskoff.com
aty     Eric S. Goldstein           egoldstein@goodwin.com
aty     Jessica Signor              jsignor@goodwin.com

                                                                    TOTAL: 5

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
pla     Francine M. Wheeler     c/o Shipman & Goodwin LLP        One Constitution Plaza        Hartford, CT 06103
inv     James H. Fetzer , PH.D.      800 Violet Lane        Oregon, WI 53575
aty     Norman A. Pattis        Pattis & Smith, LLC        383 Orange Street        1st Floor        New Haven, CT 06511 UNITED STATES
ust     U. S. Trustee        Office of the U.S. Trustee        Giaimo Federal Building        150 Court Street, Room 302        New Haven, CT 06510 United States
ust     U. S. Trustee Region 1        Office of The United States Trustee        446 Main Street, 14th Floor        Worcester, MA 01608
        Wolfgang Halbig        25526 Hawks Run Lane        Sorrento, FL 32776
        Cory T. Sklanka        515 Gracey Avenue        Meriden, CT 06451
        Genesis Communications Network, Inc.        Attn: Officer, Managing Agent        or Agent for Service        190 Cobblestone Lane        Burnsville, MN 55337
        Midas Resources, Inc.        Attn: Officer, Managing Agent or        Agent for Service        190 Cobblestone Lane        Burnsville, MN 55337
        Norman A. Pattis        Pattis & Smith, LLC        383 Orange Street        1st Floor        New Haven, CT 06511
        James H. Fitzer, PH.D.        800 Violet Lane        Oregon, WI 53575

                                                                    TOTAL: 11

003898

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

May 19, 2022

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | |
|---|---|
| In re: | Case No. 22-60020 |
| INFOW, LLC, *et al.*, | Chapter 11 (Subchapter V) |
| Debtors.[1] | Jointly Administered |

### STIPULATION AND ORDER

The above-captioned debtors and debtors in possession (collectively, the "Debtors") and Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (collectively, the "Texas Plaintiffs" and together with the Debtors, the "Parties") hereby enter into this stipulation (the "Stipulation") and agree as follows:

WHEREAS, on April 18, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under subchapter v of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court");

WHEREAS, prior to the Petition Date, the Texas Plaintiffs commenced state-court actions against one or more of the Debtors styled as: ***(a)*** *Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Owen Shroyer*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas; ***(b)*** *Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas; ***(c)*** *Leonard Pozner and Veronique De La Rosa v. Alex E. Jones, Infowars, LLC, Free Speech*

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC, f/k/a Infowars, LLC (6916), IWHealth, LLC f/k/a Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005). The address for service to the Debtors is PO Box 1819, Houston, TX 77251-1819.

*Systems, LLC*, Cause No. D-1-GN-18-001842, in the 345th District Court of Travis County, Texas; **_(d)_** *Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Kit Daniels*, Cause No. D-1-GN-18-001605 in the 459th District Court for Travis County, Texas; and **_(e)_** *Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, PQPR Holdings Limited LLC, JLJR Holdings, LLC, PLJR Holdings, LLC, Carol Jones, David Jones, PQPR Holdings, LLC, JLJR Holdings Limited, LLC, AEJ Holdings, LLC, AEJ Trust 2018*, Cause No. D-1-GN-22-001610, in the 200th District Court for Travis County (collectively, as may have been consolidated, the "State Court Litigation");

WHEREAS, one or more of the Debtors removed or attempted to remove the lawsuits comprising the State Court Litigation to the U.S. Bankruptcy Court for the Western District of Texas (the "Removal Court");

WHEREAS, the Texas Plaintiffs filed *The Texas Litigation Plaintiffs' Supplemental Motion to Dismiss Petition* [ECF No. 42] (the "Motion to Dismiss") with the U.S. Bankruptcy Court for the Southern District of Texas on April 27, 2022 (the "Motion to Dismiss");

WHEREAS, the Debtors filed their respective Schedules of Assets and Liabilities on May 2, 2022 [ECF Nos. 59 through 78] (collectively, the "Schedules") indicating that the Debtors have the following assets (a) domain names, trademarks, copyrights, and intellectual property rights associated with websites; (b) royalty payments related to Youngevity; (c) causes of action for malpractice for their prepetition attorneys; and (d) rights to payments from Alex Jones ("AEJ") and Free Speech Systems, LLC ("FSS") for administrative expenses and satisfaction of claims under the Plan Support Agreement [ECF Nos. 6-3 and 48-2] (the "PSA") and Declaration of Trust for the 2022 Litigation Settlement Trust [ECF Nos. 6-2 and 48-1] (the "Declaration of Trust");

003900

WHEREAS, after investigation by the Debtors' Chief Restructuring Officer and professionals, the Debtors do not have any assets other than those reflected in the Schedules, PSA, and/or Declaration of Trust;

WHEREAS, relying on the veracity of the Schedules and disclosure of the PSA and Declaration of Trust, the Texas Plaintiffs no longer wish to be creditors of the Debtors, to assert or hold claims, as that term is defined in Bankruptcy Code § 101(5) against the Debtors or to otherwise participate in the Debtors' bankruptcy cases;

**NOW, THEREFORE, IT IS STIPULATED BY THE PARTIES AND, UPON APPROVAL BY THE BANKRUPTCY COURT, ORDERED THAT:**

1. *Dismissal of Claims Against the Debtors.* Subject to Paragraph 2 of this Stipulation, each of the Texas Plaintiffs hereby agree to dismiss their claims solely against the Debtors in the State Court Litigation with prejudice. For the avoidance of doubt, the Texas Plaintiffs each dismiss with prejudice any and all claims or rights to payment for sanctions solely against the Debtors or their bankruptcy estates to the fullest extent allowable under applicable nonbankruptcy law and shall not seek the imposition or collection of any sanctions awarded against the Debtors or their bankruptcy estates for acts occurring prior to the date of approval of the Stipulation by the Bankruptcy Court. The dismissal of such claims and rights to payment by the Texas Plaintiffs in no way precludes the Texas Plaintiffs from asserting claims against any of the Debtors based on any causes of action that arise *after* the date the Bankruptcy Court approves this Stipulation. The Texas Plaintiffs and the Debtors shall cooperate to provide for the dismissal with prejudice of the Debtors from each of the actions comprising the State Court Litigation, including the filing of the signed Stipulation or any reasonably necessary documentation with the Removal Court. The approved Stipulation may be filed with the Removal Court and shall have the effect of a stipulation

of voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Upon approval of the Stipulation by the Bankruptcy Court, the Texas Plaintiffs shall not hold any claims against the Debtors and shall not be creditors of the Debtors.

2.      *Limitations on Dismissal*. The dismissal of the claims against the Debtors by the Texas Plaintiffs contained in this Stipulation shall not be effective to the extent that the Debtors hold undisclosed assets, which are the property of the Debtors' bankruptcy estates under 11 U.S.C. §§ 541 or 1115, on the date that the Bankruptcy Court approves this Stipulation. For purposes of this Stipulation, the Debtors' disclosed assets comprise: (a) those assets reflected in the Schedules and (b) funds stated to be paid under the PSA or Declaration of Trust— irrespective of whether the PSA or Declaration of Trust contemplated such funds to be paid to the Debtors, their estates, or the 2022 Litigation Settlement Trust, if the Debtors, among other things, satisfy the conditions set out in the PSA, Declaration of Trust or the confirmed a plan of reorganization in the Debtors' bankruptcy cases. To the extent that the Texas Plaintiffs assert that the Debtors or their estates owned undisclosed assets on the date of approval of this Stipulation and seek to assert claims against the Debtors that would otherwise be dismissed, the Texas Plaintiffs shall first file a motion with the Bankruptcy Court seeking an order determining that the dismissals contemplated by this Stipulation have no force and effect.  In the event the Bankruptcy Court finds that the dismissals have no force and effect by a final order, the Texas Plaintiffs shall thereafter have the right to file any claims, suits, complaints, actions, or proceedings in any court of appropriate jurisdiction.

3.      *Withdrawal of the Motion to Dismiss*. Upon approval of the Stipulation by the Bankruptcy Court, the Texas Plaintiffs' Motion to Dismiss shall be deemed withdrawn with prejudice. The dismissal with prejudice of the Texas Plaintiffs Motion to Dismiss shall not impair

003902

the right of the Texas Plaintiffs to bring by way of motion claims by them that the Debtors or their estates owned undisclosed assets on the date of the approval of the Stipulation.

4. *Withdrawal of Opposition to Remand*. Upon approval of this Stipulation, the Texas Plaintiffs may file a pleading or other document, to be approved by the Debtors, which approval shall not be unreasonably withheld, with the Removal Court notifying the Removal Court of this Stipulation and that the Debtors do not oppose remand, without in any manner admitting any assertion of fact or conclusion of law set out in any of the Texas Plaintiffs pleadings in this Bankruptcy Court or in the State Court. At the Texas Plaintiffs' request, the Debtors shall join in the Texas' Plaintiffs filing or take other reasonable steps to inform the Removal Court that the Debtors do not oppose remand.

5. *Non-Applicability of Automatic Stay and/or Dismissals to Non-Debtor Parties*. For the avoidance of doubt, (a) the automatic stay pursuant to section 362 of the Bankruptcy Code shall not prohibit the continuation of the State Court Litigation against any person other than the Debtors; and (b) the dismissal of claims against the Debtors by the Texas Plaintiffs in this Stipulation shall not release, dismiss, or otherwise affect any claims, causes of actions, or other rights against any person other than the Debtors, including but not limited to AEJ and FSS and the other defendants named in the State Court Litigation.

6. *Subject to Bankruptcy Court Approval*. This Stipulation shall be binding on the Parties and subject to the approval of the Bankruptcy Court. To the extent that the Bankruptcy Court denies approval of this Stipulation, the Stipulation, all the agreements and the dismissals contemplated, and mutual obligations contained herein shall be of no further force and effect.

7. *Retention of Jurisdiction*. The Court shall have and retain (a) with respect to any dispute among only the Parties, sole and exclusive jurisdiction over the enforcement and/or

5

implementation of the terms of this Stipulation, and (b) with respect to any dispute involving any other person, including any of the Parties and AEJ and/or FSS, non-exclusive jurisdiction over the enforcement and/or implementation of the terms of this Stipulation. The Parties hereby consent to such jurisdiction to resolve any disputes or controversies arising from or related to this Stipulation. Any motion or application brought before the Court to resolve a dispute arising from or related to this Stipulation shall be brought on notice as provided by and in accordance with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of Texas.

8. *Modification of Stipulation*. This Stipulation shall not be modified, altered, amended, or vacated without written consent of all Parties hereto.

Signed: May 19, 2022

_____
Christopher Lopez
United States Bankruptcy Judge

STIPULATED AND AGREED ON MAY 18, 2022 BY AND AMONG:

**NEIL HESLIN, SCARLETT LEWIS,
LEONARD POZNER, VERONIQUE
DE LA ROSA, and MARCEL FONTAINE**

| | |
|---|---|
| /s/ J. Maxwell Beatty | /s/ Avi Moshenberg |
| | |
| THE BEATTY LAW FIRM PC | MCDOWELL HETHERINGTON LLP |
| J. Maxwell Beaty | Avi Moshenberg |
| State Bar No. 24051740 | State Bar No. 24083532 |
| max@beattypc.com | avi.moshenberg@mhllp.com |
| 1127 Eldridge Pkwy | 1001 Fannin Street, Suite 77002 |
| Suite 300, #383 | Houston, Texas 77002 |
| Houston, Texas 77077 | Tel. 713-337-5580 |
| Tel. 832-529-3381 | |

*Counsel to the Texas Plaintiffs*

-and-

003904

**INFOW, LLC (F/K/A INFOWARS, LLC),**
**IWHEALTH, LLC (F/K/A INFOWARS**
**HEALTH, LLC), AND PRISON PLANET TV, LLC**

*/s/ Kyung S. Lee*

KYUNG S. LEE PLLC
Kyung S. Lee
State Bar No. 12128400
klee@kslpllc.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. 713-301-4751
*Proposed Counsel to the Debtors*

7

```
1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF TEXAS
2                          HOUSTON DIVISION

3                              )  CASE NO: 22-60020-cml
                               )
4    INFOW, LLC. and IWHealth,  )  Houston, Texas
     LLC.,                      )
5                              )  Thursday, May 19, 2022
            Debtors.          )
6                              )  2:01 p.m. - 2:28 p.m.
                               )
7    -----------------------------)

8                                 MOTION

9         BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                 UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:

12   For U.S. Trustee:        JASON RUFF
                              HA NGUYEN
13                            MELISSA HAZELTON
                              U.S. Trustee
14                            950 Pennsylvania Avenue NW
                              Washington, D.C. 20530
15
     For Debtor:             KYUNG S. LEE
16                            MARK SCHWARTZ
                              Kyung S. Lee, PLLC
17                            700 Milan Street, Suite 1300
                              Houston, TX 77002
18
     For Connecticut Plaintiff:
19                            RANDY WILLIAMS
                              Byman & Associates, PLLC
20                            7924 Broadway, Suite 104
                              Pearland, TX 77581
21
                              RYAN CHAPPLE
22                            Cain & Skarnulis, PLLC
                              303 Colorado Street, Suite 2850
23                            Austin, TX 78701

24

25
```

003906

```
 1    For Texas Plaintiff:     MAX BEATTY
                               The Beatty Law Firm
 2                             1127 Eldridge Parkway, Suite 300
                               Houston, TX 77077
 3                             AVI MOSHENBERG
                               McDowell Hetherington
 4                             First City Tower
                               1001 Fannin Street, #2700
 5                             Houston, TX 77002

 6    For Free Speech Systems: RAY BATTAGLIA
                               Law Offices of Ray Battaglia, PLLC
 7                             66 Granburg Circle
                               San Antonio, TX 78218

 8

 9    Court Reporter:          KIMBERLY PICOTA

10    Courtroom Deputy:        KIMBERLY PICOTA

11    Transcribed by:          Veritext Legal Solutions
                               330 Old Country Road, Suite 300
12                             Mineola, NY 11501
                               Tel: 800-727-6396
13

14

15    Proceedings recorded by electronic sound recording;
      Transcript produced by transcription service.
16

17

18

19

20

21

22

23

24

25
```

003907

```
 1              HOUSTON, TEXAS; THURSDAY, MAY 19, 2022; 2:01 P.M.

 2              THE COURT:  Okay.  Okay.  Good afternoon,

 3    everyone.  This is Judge Lopez here on an emergency request

 4    for a continuance in Infowars.  Why don't we take

 5    appearances.  Why don't I begin with appearances in the

 6    courtroom.

 7              Mr. Lee?

 8              MR. LEE:  Good afternoon, Your Honor.  Kyung Lee

 9    with the law firm of Kyung S. Lee PLLC for the three

10    debtors.  I am here in the courtroom with Mr. Mark Schwartz,

11    the chief restructuring officer of the three debtors.

12              THE COURT:  Okay.  Good afternoon, sir.

13              MR. SCHWARTZ:  Thank you, Your Honor.

14              THE COURT:  Mr. Ruff, good afternoon.

15              MR. RUFF:  Yes.  Good afternoon, Your Honor.  With

16    me today -- Jayson Ruff on behalf of the U.S. Trustee's

17    Office.  And Ha Nguyen with me today.

18              THE COURT:  Okay.  Good afternoon.

19              MR. WILLIAMS:  Good afternoon, Your Honor.  Randy

20    Williams for the Connecticut plaintiffs.  Ryan Chapple and

21    Connecticut counsel are all on the Zoom.

22              THE COURT:  Okay.  Good afternoon.

23              MR. BEATTY:  Your Honor, Max Beatty on behalf of

24    the Texas plaintiffs.  I also have Mr. Avi Moshenberg with

25    me here today.
```

1            THE COURT:  Good afternoon.  Good afternoon to

2    both of you.

3            Okay.  Anyone else in the courtroom wish to make

4    an appearance?  Okay.

5            Ms. Hazelton, I see you there, the Subchapter V

6    trustee.  Good afternoon.  I think -- oh, I muted you,

7    didn't I?  I've got everyone muted.  So if anyone wishes to

8    make an appearance, you can hit five-start.  Ms. Hazelton,

9    just hit it just so I know that -- and I'll keep your line

10   unmuted.  All right.  There is a 210-601 number.

11           MR. BATTAGLIA:  Yes, Your Honor.  This is Ray

12   Battaglia on behalf of Free Speech Systems.  I don't know

13   that I will be participating today, but I will make an

14   appearance.

15           THE COURT:  Okay.  And I'll keep your line

16   unmuted, Mr. Battaglia, just in case.  Good afternoon, sir.

17           MR. BATTAGLIA:  Thank you, Judge.

18           THE COURT:  Okay.  Ms. Hazelton, can you hit five-

19   star?  I want to make sure I've got your line unmuted as

20   well.  There's a 281-846 number.

21           MS. HAZELTON:  Your Honor, Melissa Hazelton,

22   Subchapter V Trustee.

23           THE COURT:  Okay.  Good afternoon.  Does anyone

24   else wish to make an appearance on the phone?  Just hit

25   five-star and I will recognize you.  Okay.

```
 1              Mr. Lee, why don't I turn it over to you, sir.

 2              MR. LEE:  Good afternoon, Your Honor.  May it

 3    please the Court.  Before I hit emergency motion Docket 95

 4    requesting the continuances of the hearing for next week as

 5    well as the various answer dates, I would like to address

 6    the Court with respect to some of the procedural issues that

 7    are taking place --

 8              THE COURT:  Okay.

 9              MR. LEE:  -- and update you on those.  Number one,

10    the initial debtor interview is taking place tomorrow

11    afternoon.  And Mr. Schwartz and I will be handling that

12    with the U.S. Trustee's Office.  The data has been provided

13    to them yesterday, and we will handle that hearing or the

14    call tomorrow.

15              Number two, Mr. Beatty and I concluded

16    negotiations and finalization of the dismissals with

17    prejudice of the Texas plaintiff's lawsuits yesterday, and

18    Mr. Beatty will probably want to speak to you about those

19    issues today.  But that is done.

20              THE COURT:  Okay.

21              MR. LEE:  And so wanted you to know that.  And I

22    believe the stipulation, the general one has been filed.

23    There are subsidiary stipulations which you also agreed to,

24    and he can speak to those issues if you'd like to have him

25    discuss those.
```

003910

1          THE COURT:  Okay.

2          MR. LEE:  Number Three.  The Connecticut

3    plaintiffs have decided to move by way of motion to dismiss

4    their lawsuits in Connecticut against the three debtors.

5    And there is a status conference that Judge Manning has set

6    for next Tuesday at 2:00 p.m. Eastern Standard time, and

7    there is going to be a conference call on that matter for

8    that time.

9          THE COURT:  Okay.

10          MR. LEE:  So I can tell you a little bit more

11    about that after it's occurred, but I just wanted to let you

12    know the timing on that.

13          THE COURT:  Thank you.

14          MR. LEE:  Number four.  The 341 meeting of

15    creditors will take place next Thursday, on May 26th.  And

16    Mr. Ruff and I have talked about what we need to get ready

17    to do that.

18          Number five.  I just got a notice during lunch

19    today that the Western District of Texas has set a hearing

20    on June 21-22 in connection with the removal and abstention

21    and remand hearing on the "TUFTA" lawsuit that some of the

22    plaintiffs filed against the debtors and other parties.  And

23    again, I think that can be handled administratively, but I

24    just wanted you to know that matter is out there for setting

25    at that time.

1          THE COURT:  Thank you.

2          MR. LEE:  Now, addressing Docket 95.  And I don't

3    think I need to go into it in any substantive detail.  But I

4    just wanted to let you know that what we moved to do was to

5    extend the answer date from May 20th to June 17th, the

6    exhibit designation date from May 25th to June 22nd, and we

7    requested a hearing date from May 27th through June 24th and

8    to have discovery be available to especially Mr. Ruff, who

9    has been working with -- on behalf of the U.S. Trustee's

10   Office so that he could have discovery pending.

11         It is contemplated that after this week, there

12   should be only one motion to dismiss or on file that should

13   be active, hopefully.  But again, the implementation of the

14   dismissals with prejudice has taken a little longer time

15   than I expected.  And again, I built in when I filed my

16   emergency motion time to be able to carefully implement all

17   of those.  And again, that's the reason for the time that

18   I've requested so that I don't have to prepare for the

19   motions to dismiss as well as trying to get all those things

20   correctly done.

21         I'm happy to work and do both if I'm forced to do

22   that.  But as I set out in my motion, I think it's not a

23   good use of judicial or financial resources of this estate

24   to do that.  And that's why I've asked for some time.

25         Mr. Ruff has indicated that he wants a shorter

```
 1    time.  And I've tried to discuss that with him this morning.
 2    And it's all been very friendly.  And so again, I am
 3    amenable to another deadline, a shorter deadline if they
 4    wish.  But again, the reasons for the requests I've made for
 5    my deadlines is because I anticipate having to implement all
 6    the dismissals.  And I want to make sure I have done it
 7    correctly and that I've given the other courts other than
 8    the home court here time to get those things done.  And
 9    that's the basis for my asking for the specific dates I
10    have.
11            Again, I am also amenable to the idea of having a
12    shorter period but having -- an intermediate status
13    conference would be like every Friday where we can check in
14    and say, Your Honor, we need more time or we're good with
15    the time schedule that we have.  So we are very flexible on
16    that.  And again, Mr. Schwartz and I are going to evaluate
17    whether after the dismissals would prejudice the Texas and
18    Connecticut plaintiffs, whether these debtors need to
19    proceed with trying to confirm a plan with an amended plan
20    support agreement or whether we are able to handle these
21    creditors, the remaining creditors, outside of bankruptcy.
22            THE COURT:  Okay.
23            MR. LEE:  So that's an evaluation we are going to
24    make.  And we hope to do that very quickly.
25            THE COURT:  Thank you.  Actually, sir, is it okay
```

1    if I hear from Mr. Beatty first?

2         MR. RUFF:  That would be just fine, Your Honor.

3    It's your court.

4         THE COURT:  No, no, no.  I'm just -- I saw the

5    stipulation.  I just wanted to hear from you, Mr. Beatty,

6    just confirmation.  Does the stip that is on file cover what

7    we would call the Texas litigation?

8         MR. BEATTY:  Yes, Your Honor, it does.  And Mr.

9    Lee referred to some other stipulations that I would call

10   them supporting stipulations.  They're just simplified to

11   make it easy for the Court in each of the Western District

12   cases.  So we do have this larger stipulation that we filed

13   with the Bankruptcy Court, but Mr. Lee and I have already

14   passed back and forth, agreed, and actually put on file the

15   Rule 41 stipulations of dismissal with the court for the

16   Western District of Texas.  One of the cases.  The TUFTA

17   case is a little bit different in the following sense.

18   There's a couple of procedural differences there dealing

19   with whether or not the parties were served and whether or

20   not the removal was done correctly.  There we have actually,

21   due to concurrent jurisdiction with both the Western

22   District of Texas as well as the underlying state court, we

23   have filed a non-suit in the state court with prejudice

24   there.  So we think we've implemented the initial steps on

25   whatever we have to do for those to get everything

 1    dismissed.  It's really the remand that Mr. Lee referred to

 2    it as taking some amount of time there.  We did file

 3    yesterday additional motions for remand noting our

 4    agreement.  Hopefully those things can be resolved rather

 5    quickly.

 6              THE COURT:  Okay.  I guys the question is are you

 7    -- maybe I -- Mr. Ruff, Ms. Hazelton, is there any issue

 8    with me signing this right now?

 9              MR. RUFF:  Your Honor, the stipulation that was

10    filed?

11              THE COURT:  Mm-hmm.

12              MR. RUFF:  No issue from the U.S. Trustee's Office

13    perspective.

14              THE COURT:  Ms. Hazelton?

15              MS. HAZELTON:  No issues here, Your Honor.

16              THE COURT:  Anyone in the room?  Anyone have any

17    issues?  Okay.  I'm going to sign it now.

18              MR. BEATTY:  Thank you, Your Honor.

19              THE COURT:  The parties are in agreement with

20    that.  I told everybody I wasn't going to stand in the way

21    of an agreement.  I have read it.  It's the parties'

22    agreement.  I'll sign it.  I'll sign it right now.  It at

23    least allows the parties the clarity I think that they need,

24    and I think it will certainly -- something you can present

25    to the courts in the Western District of Texas.  And I think

1    it at least clears a little bit of the road that Mr. Lee was

2    referring to in terms of what may be coming for him at a

3    future point in time.

4           MR. BEATTY:  And that was the intent, Your Honor.

5    And what we had hoped to do is I was actually going to ask

6    you to sign it today because our intent is to in addition to

7    the stipulation that we filed already, to take this

8    stipulation with the Court's signature, file it in the

9    Western District of Texas so that there the court can be

10   comfortable that you had the opportunity to look at it as

11   the home court and that you're also comfortable with what we

12   are doing.

13          THE COURT:  Okay.  I have signed it.  It is off to

14   docketing and it will hit the docket in the next ten, 15

15   minutes, Mr. Beatty.

16          MR. BEATTY:  Thank you, Your Honor.  Mr. Beatty, I

17   don't know what that means for your participating going

18   forward, but I would say in a few minutes you'll have

19   greater clarity on that as well.

20          MR. BEATTY:  Well, I think the answer is that

21   means you won't get to see my smiling face here anymore.

22   But yes, thank you very much, Your Honor.

23          THE COURT:  Okay.  Thank you.  Mr. Ruff, I just

24   wanted to -- actually, go ahead.  Go ahead.  Let me hear

25   from the Connecticut plaintiffs.

1          Let me just say I was able to read the pleadings

2    that were filed.  I very much appreciate the notice.  Was

3    very helpful for me to just kind of keep track of what's

4    going on.  So I thought the updates were very helpful, and I

5    very much appreciate it.  I'm not going to comment obviously

6    on what's going to happen in Connecticut.  But I just would

7    ask if Judge Manning issues any rulings or anything

8    substantive happens, if someone can just provide an update

9    just like you did, I think it would be very helpful for me

10   if she enters something.  I don't need any commentary or

11   anything.  I just need more of a docket entry just to

12   understand if anything happened or if there is any further

13   hearing schedule.  It just helps me kind of keep track of

14   stuff.

15         MR. WILLIAMS:  Yes, Your Honor.  I just wanted to

16   make the announcement on behalf of the Connecticut

17   plaintiffs that as to the Debtor's emergency motion to

18   continue, we really believe those issues are now between

19   them and the U.S. Trustee as far as timing because we had

20   filed the motions to dismiss with prejudice.  That was put

21   in the notice.

22         THE COURT:  Got it.

23         MR. WILLIAMS:  The Court has now set that for

24   status conference on Tuesday.  We're going to ask the Court

25   since there is no opposition to that, to enter the

1    dismissal.  And then once it's dismissed, the Debtors have

2    agreed they will no longer have objection to remand and that

3    the Court then pick that up and remand the cases.  So

4    hopefully by next Tuesday we will -- after that's concluded

5    and if that happened, then we would be filing our notice of

6    withdrawal of our motion to dismiss.  But until we hear from

7    the Connecticut court, we're not able to do that.  But we

8    will -- to the extent we are still in it, because we are

9    waiting on that, whatever the Court decides between the

10   Debtors and the U.S. Trustee as far as timing, we are not

11   going to impose on that.  We'll follow the Court's guidance

12   with what their argument are and timing.

13            THE COURT:  Okay.  Thank you very much.

14            MR. RUFF:  Again, Your Honor.  Thank you.  You

15   know what, the U.S. Trustee's Office, we appreciate and are

16   supportive of the Plaintiffs being able to resolve their

17   issues with these debtors and the way that they're doing

18   that.  And we certainly are agreeable to pushing out the

19   hearing on our motion so that those issues can be resolved

20   definitively.  That's fine.

21            But, Your Honor, I still don't think that we

22   really need more than a couple-week extension.  And that

23   would be our preference.  You know, we are happy to move

24   forward as soon as possible.  It seems, based on

25   representations that have been made by both Plaintiff's

1   counsel that Texas plaintiffs are out.  They're withdrawn

2   now as of today.  And it sounds like Connecticut, as soon as

3   they get their answer and the court up in Connecticut there,

4   that they will agree to withdraw as well, too.  So if they

5   do that, then Mr. Lee no longer has to focus on their

6   motions to dismiss and he no longer has to worry about

7   those.  It will just be ours.  And we would like to move

8   forward with it as expeditiously as possible. After that.

9        The only other comment I would say is to the

10   extent that the Court does push that out, assuming these

11   cases are dismissed, then we don't think that any of the

12   other pending motions applications should be heard until

13   that same date after that time.  We have already provided

14   comments as far as the CRO motion assuming that these case

15   are going to go forward.  So we've already started that

16   process.  We're not just waiting until the very last moment

17   on that.  To the extent that there are any substantive

18   issues, we can work those out and resolve those.

19        But, for example, it's a little unclear, and I

20   think Mr. Lee has to -- is working out with his client as

21   far as the -- there is no longer a litigation settlement

22   trust and there's no longer that mechanism of management by

23   the trustees I don't think, or the service managers for the

24   equity of these debtors that the CRO would report to.  So I

25   think things like that need to be cleaned up if these cases

```
 1    are to continue.  If these cases aren't to continue, then
 2    none of that is really necessary.  The cases can get
 3    dismissed.  You know, the debtors can go ahead and pay their
 4    creditors, including their professionals however they want
 5    to.  The only thing we probably would want to have some
 6    treatment for in the dismissal order, again, assuming that's
 7    the route that we end up toing, is to allow for Ms. Hazelton
 8    to apply for her fees and make sure that this Court retains
 9    jurisdiction for the payment of her fees.
10            THE COURT:  So Mr. Ruff, are you agreeing to a
11    continuance or not?
12            MR. RUFF:  Yes.  We are not opposed to a
13    continuance, Your Honor.
14            THE COURT:  And how long?
15            MR. RUFF:  Two weeks.  That's what we think would
16    be -- somewhere around June 10th is what we had proposed.
17            THE COURT:  Okay.  Okay.  Mr. Beatty, your stip
18    has hit the docket.
19            MR. BEATTY:  Thank you, Your Honor.
20            THE COURT:  I'm not kicking you out.  I'm just
21    telling you.
22            MR. BEATTY:  As much as you'd like to.
23            THE COURT:  Okay.  Mr. Lee, why do you need more
24    time than the 10th?
25            MR. LEE:  Your Honor, things tend to take a longer
```

1    time than we initially planned.  I think it was four weeks

2    ago everybody declared that they did not want to be

3    creditors of this estate.  And it started off with

4    dismissals without prejudice and having to negotiate all of

5    those to get it right.  And it's not because we didn't want

6    to get it right or do it the right way, but it just takes

7    some time in light of the fact that the parties have been

8    litigating these issues and there's a lot of distrust.  And

9    we've had to build that.

10          With respect to the implementation of the

11   dismissals, I don't think it's as simple as Mr. Ruff

12   describes it.  It's not just a matter of dismissals that

13   takes place and then we're done.  There is implementation

14   that has to take place both in Connecticut and in Texas.

15   And the Debtors are going to have to be involved in that

16   process and implementing that.  So I need some time to do

17   that.

18          And secondly, there are claims that need to be

19   addressed in connection with the remaining estate that our

20   creditors have nothing to do with the Sandy Hook issues.

21          And then number three, Your Honor, the other part

22   that I have to do is renegotiate a plan support agreement if

23   the debtors intend to move forward with respect to a smaller

24   subchapter V plan to see if we can get something confirmed.

25          So I've built in some time to be able to do all of

1    that without having the -- sort of Damocles sword over me

2    every two weeks in saying I've got to go and try a motion to

3    dismiss.  But if the Court thinks that that sword should be

4    over me, I'm fine with that, too.

5         THE COURT:  I don't want to say it's a sword,

6    because I don't think it is.  I think the Debtor filed a

7    case and people have filed motions, and they get a chance

8    for a hearing.  And the Debtor has to respond to it.  I'm

9    assuming the Debtor was prepared to go on the 27th.  So if

10    we push it out for June the 10th, that feels right to me.

11    And I'm going to tell you why.

12         I certainly understand the dynamics of change.

13         MR. LEE:  Yes, Your Honor.

14         THE COURT:  And I still don't how much -- look, I

15    know according to the schedules and the statements, the

16    Debtor has no cash.  I don't know where cash is coming from.

17    The Debtor doesn't generate income.  I don't know who the --

18    if there's a trust, I don't know how administrative expenses

19    are going to get paid.  And this is still a Subchapter V

20    case.  We are about 30 days in.  I think everybody is going

21    to have to put their cards on the table and figure out

22    what's there.  And I think you and Mr. Schwartz are going to

23    have to figure out -- it sounds like Connecticut plaintiffs

24    are out, signed the order for the Texas plaintiffs.  I think

25    you all have got to figure out now that that's gone,

1    assuming that everything goes through -- and again, I don't

2    want to wish -- I don't want to speak for any other court

3    and the work that they have to do.  But assuming that they

4    go, Mr. Lee, I think you're going to have to ask yourself

5    what's left and what kind of case and what chapter it should

6    proceed in.  And I think the trustee gets a right to know

7    what your plans are.  To me, that's where I see the

8    extension for.  I think they've got to kind of figure out

9    what's left and how do you proceed.  Is it still under

10   Subchapter V?  Is it something else?  And so I think you've

11   got to figure all that out.  But I don't know -- pushing it

12   out a month without knowing where there's any source of

13   revenue coming from and what the third-party contributors

14   are or are not doing, I think we've got to know some answers

15   before then to see what kind of case -- if we have a case at

16   all.  And I'm not saying we don't.  I just don't know what's

17   out there.

18           MR. LEE:  Your Honor, let me allay your concerns.

19           THE COURT:  I'm not sure you're going to be able

20   to do it today.

21           MR. LEE:  I'm going to do it today for you, Your

22   Honor, by saying --

23           THE COURT:  That would be impressive.

24           MR. LEE:  You're actually right.  I'm not going to

25   argue with trying to get any more time.  They've set it for

1    June 10th.  We'll be ready.  We'll work like dogs to get

2    there.  And if we don't, we'll come back to you and ask for

3    more time if we run into a jam.  But I hear all the concerns

4    that you're saying.  I think they are very legitimate as

5    Debtor's counsel and as you pronounced it.  And let's get it

6    on.  Let's do it on June 10th.  And let's just get it done.

7              THE COURT:  Okay.

8              MR. LEE:  I agree with you.

9              THE COURT:  Mr. Lee, I've got one question for

10   you.  Just since -- and this has nothing to do with what we

11   were just describing.  It's just trying to understand -- I

12   understand kind of procedurally where the Texas Plaintiffs

13   are and the Connecticut plaintiffs.

14             MR. LEE:  Sure.

15             THE COURT:  The trust.  Is the initial trustee

16   still involved, Mr. Du?

17             MR. LEE:  Yes.

18             THE COURT:  And who represents Mr. Du?

19             MR. LEE:  I don't know right now.  I just know

20   that Mr. Du is the trustee of the trust that was given the

21   obligation to put the company into bankruptcy.

22             THE COURT:  Okay.  Okay.  I know Mr. Du had

23   noticed parties in the trustee agreement, but I didn't know

24   if those remained the noticed parties for the trust or

25   whether Mr. Du was still involved.  So Mr. Schmidt and Mr.

1   (indiscernible) are at this point not -- they're still

2   waiting?

3           MR. LEE:  Yes, Your Honor.  That's correct.  That

4   is correct.  And I think by virtue of the Texas and

5   Connecticut plaintiff having withdrawn, I think the bigger

6   concept of trying to go global resolution, that's probably

7   become moot at this point in time.

8           THE COURT:  Okay.

9           MR. LEE:  So yes, Your Honor.  And you have made

10  all the issues that you've identified.  We are on it.

11          THE COURT:  I know.  I know I'm not raising -- I'm

12  just trying to -- we are all here.  I might as well just try

13  to understand kind of procedurally where we are and kind of

14  where the case is.  I think I -- look, I like where we are

15  going.  The Trustee is not opposed to a two-week extension.

16  Let's do a two-week extension.  And without prejudice,

17  obviously, to the ability to come back to ask for more time.

18          MR. LEE:  Absolutely.

19          THE COURT:  But I'm going to tell you though, if

20  we go further out, I'm going to need all parties to agree to

21  it.  If not, we'll just have to take them up and see where

22  we go.  I don't want to take up any other motions before

23  then because I don't know what kind of case we have and

24  what's going on.  And I want to give you an opportunity to

25  get it done.  So we'll push this out for a couple of weeks.

1    And I'm sure -- and I would ask you as well, Mr. Beatty, if

2    there's any updates, if you will.  I know that with respect

3    to what happens in the Texas courts, just -- I think just

4    providing for informational purposes.  I mean it.  I want no

5    spin on any of it.  I mean, as boring as it comes, I am at

6    docket entry and I don't need whereas clauses, and I know I

7    have jurisdiction.  I mean, where we are, just plain docket

8    entries.  And I would ask the Connecticut plaintiffs to do

9    as well.  Just the notice.  Just so everybody knows what's

10   going on and everybody can just see and we all have

11   transparency in the process.

12          MR. WILLIAMS:  More than happy to do so.

13          THE COURT:  Okay.  Thank you.  So that would push

14   out the hearing to Friday, June 10th at -- what time are we

15   -- we were going to start at 9:00 a.m.  Why don't we start

16   at 9:00 a.m. on Friday, June 10th.  And the witness and

17   exhibit list would then get pushed out to Wednesday, June

18   8th.

19          MR. LEE:  Yes.

20          THE COURT:  Okay.  And the objection deadline,

21   what are we going to do about -- what are you all agreeing

22   on that?

23          MR. LEE:  We had talked about objection deadline

24   of being a week before whenever the hearing is.

25          THE COURT:  So maybe June 3rd?

1          MR. LEE:  So June 3rd.

2          THE COURT:  Okay.

3          MR. LEE:  And then a reply deadline be the same

4    day as the witness and exhibit on the 8th.

5          THE COURT:  Okay.  So I would ask June 8th at noon

6    exhibits, June 3rd, just any time on June 3rd for your

7    response, Mr. Lee.

8          MR. LEE:  That's perfectly fine with the Debtor's,

9    Your Honor.

10          THE COURT:  I don't care what time you get it on

11    file there.

12          Mr. Ruff, your response is fine with me.  I don't

13    care when you --

14          MR. RUFF:  We'll get it on file before close of

15    business, Your Honor.  It won't be a midnight filling.

16          THE COURT:  Okay.

17          MR. RUFF:  We'll give Your Honor some time to read

18    it.

19          THE COURT:  No, no.  Old habits die hard.  So I'm

20    up early and stay up late.  So don't worry about me.

21          I think we had a hearing scheduled for June 3rd.

22    It probably makes sense to push that out, don't you think?

23          MR. LEE:  Could we move it all to the June 10th?

24          THE COURT:  Yeah.

25          MR. RUFF:  We agree with that, Your Honor.

1          THE COURT:  What did we have on June --

2          MR. LEE:  Both the trustee motion, and I think the

3    CRO motion has been on a 21-day notice as well as the bar

4    date motion, Your Honor.

5          THE COURT:  Oh yeah.  I don't want to touch those

6    until we know what -- yeah.  But I agree.  We'll take them

7    up -- original plan.  Take them up after we know on the

8    motion to dismiss.

9          MR. RUFF:  We'll be ready to go, Your Honor.

10          THE COURT:  Okay.

11          MR. LEE:  Your Honor?

12          THE COURT:  Yes.

13          MR. LEE:  I do want you to know that Mr. Schwartz

14    in his fiduciary capacity is evaluating all alternatives.

15          THE COURT:  Oh, I'm sure he is.

16          MR. LEE:  I just want you to know that.

17          THE COURT:  No doubt.  I've got no doubt.  And I'm

18    sure -- I've got no doubt about that.  I know Mr. Schwartz

19    is professional.  He's doing his job.  I've got no doubt

20    about it.

21          MR. LEE:  Thank you, Your Honor.

22          THE COURT:  Okay.  Anyone in the courtroom,

23    anything else anyone wishes to say at this time?  Anyone on

24    the phone, if you wish to hit five-star.

25          Okay.  All right, folks.  It sounds like we will

1    not see each other on the 27th.  It looks like we will see

2    each other potentially on June 10th.  Thanks, everyone.

3    Have a good day.

4              (Whereupon these proceedings were concluded at

5    2:28 PM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      CERTIFICATION

 2

 3   I certify that the foregoing is a correct transcript from

 4   the electronic sound recording of the proceedings in the

 5   above-entitled matter.

 6

 7

 8

 9

10   Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  May 23, 2022
```

**Subject:** Tuesday 5.24.22

**Date:**    Thursday, May 19, 2022 at 5:24:12 PM Central Daylight Time

**From:**    Kyung S. Lee <klee@kslpllc.com>

**To:**      Marc Schwartz <mschwartz@schwartzassociates.us>

I told Ray we can be there by 11:30 and see if he can set up meeting to start then, we can do Conn Status Hearing at 1PM, and continue with FSS meeting thereafter in Austin.

**Kyung S. Lee**
**Kyung S. Lee PLLC**
**Pennzoil Place**
**700 Milam-Suite 1300**
**Houston, Texas 77002**
Email: klee@kslpllc.com
**Cell: (713) 301-4751**
**Alternate Email: kslee50@gmail.com**

Confidentiality Notice: The information contained in this communication is strictly limited to the recipient intended by the sender of this communication. This email, and any attachments, may contain confidential attorney-client privileged information and attorney work product. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments. ***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**Subject:** InfoW et. al. \Determination of Decision to Dismiss 3 Debtors

**Date:** Saturday, May 21, 2022 at 10:52:39 AM Central Daylight Time

**From:** Kyung S. Lee <klee@kslpllc.com>

**To:** Marc Schwartz <mschwartz@schwartzassociates.us>, Harold Lee <hlee@schwartzassociates.us>, Christian Schwartz <cschwartz@schwartzassociates.us>

Marc, I have been carefully evaluating the facts about the 3 debtors you and I work for ever since Thursday's Status Conference with Judge Lopez. I thought we had needed the time in our Emergency Motion to Continue to 1) implement the dismissals with prejudice the suits filed by the Texas Plaintiffs and have them remanded to state court, 2) implement next week the dismissals of the suits filed by the Connecticut Plaintiffs and those suits remanded to state courts in Connecticut, 3) handle any evaluations and actions to be taken with the non-suited actions by Heslin and Lewis (not already captured in 1 and the unserved TUFTA lawsuit, and 4) evaluate what to do with the remaining claims against the Debtors, and handle issues relating to negotiations over an amended Plan Support Agreement.

I have continued to evaluate those issues, and, am reaching the conclusion that a) the cost to prosecute the subchapter v bankruptcies for the 3 debtors to confirmation (especially with opposition from the US Trustee, b) the fact that the remaining claims are obligations also jointly liable by Free Speech Systems, LLC and Alex Jones, c) the Debtors should have sufficient funds (outside of bankruptcy) to pay in full the administrative expenses of the chapter 11 cases (CRO, SchwartzAssociates, PLR, and Kyung S. Lee PLLC) and that a reserve can be made to pay the budgeted fees of the subchapter v trustee ($25,000), the most efficient and effective way to administer these debtors is to file as soon as possible a Motion to Dismiss the Bankruptcy Cases ("Motion to Dismiss"). The Motion to Dismiss will be on 21 days notice to creditors.

I think it would behoove all of us to all agree that this is the right conclusion, such that we are moving to implementation of the dismissal as the goal.

I would ask that your team evaluate the Schedules, the SOFA and any other materials, and, have come to this conclusion by the end of Monday. I will be drafting the Motion to Dismiss this weekend and will have a draft to each of you by then so it will tie in with the work of your team.

If you believe there are facts that would suggest there is a good faith basis to continue these cases, we should talk about them Sunday. I think it would be ideal if we finished up making a sound judgment about the direction of these debtors and have a firm conclusion before we embark on anything new. Regards, Kyung

**Kyung S. Lee**
Kyung S. Lee PLLC
**Pennzoil Place**
**700 Milam-Suite 1300**
**Houston, Texas 77002**
Email: klee@kslpllc.com
**Cell: (713) 301-4751**
**Alternate Email: kslee50@gmail.com**

Confidentiality Notice: The information contained in this communication is strictly limited to the recipient

003932

intended by the sender of this communication. This email, and any attachments, may contain confidential attorney-client privileged information and attorney work product. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments. ***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

003933

| | |
|---|---|
| **Subject:** | InfoW\Motion to Dismiss Chapter 11 Cases |
| **Date:** | Monday, May 23, 2022 at 8:25:59 PM Central Daylight Time |
| **From:** | Kyung S. Lee <klee@kslpllc.com> |
| **To:** | Marc Schwartz <mschwartz@schwartzassociates.us>, Christian Schwartz <cschwartz@schwartzassociates.us>, Harold Lee <hlee@schwartzassociates.us> |

**Attachments:** InfoW_MotiontoDismissChapter11Cases_5_23_22_8PM.docx

Everyone: Here is a first draft of the Motion to Dismiss the Chapter 11 Cases. Please review and provide me your comments. I would like to at least have in my mind know that we have done what we were supposed to have done as fiduciaries for the 3 debtors and have concluded with the CRO that dismissal is the route to go and is in the best interest of the Debtors, their estates and creditors.

I would like to file this Motion to Dismiss by Wednesday and skip the 341 Meeting of Creditors on Thursday, which will be more waste of fees and expenses of these 3 debtors for the CRO and his professionals.

**Kyung S. Lee**
Kyung S. Lee PLLC
**Pennzoil Place**
**700 Milam-Suite 1300**
**Houston, Texas 77002**
Email: klee@kslpllc.com
**Cell: (713) 301-4751**
Alternate Email: kslee50@gmail.com

Confidentiality Notice: The information contained in this communication is strictly limited to the recipient intended by the sender of this communication. This email, and any attachments, may contain confidential attorney-client privileged information and attorney work product. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments. ***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**Subject:** RE: InfoW\Update

**Date:** Wednesday, June 1, 2022 at 10:28:55 AM Central Daylight Time

**From:** Ruff, Jayson B. (USTP)

**To:** Kyung S. Lee, Nguyen, Ha (USTP), Melissa Haselden

**CC:** Marc Schwartz, Christian Schwartz, Harold Lee

**Attachments:** image001.png, image002.png, image003.png, UST Revisions to InfoWars_KSLDraftNo.1_Proposed Stipulated Order for Dismissal 5.31.22@3PM.docx

Kyung,

Attached is a markup of your proposed stipulation showing our comments.  So long as Melissa is ok with the changes you have made concerning payment of her fees, then we are too.  I have left those sections unchanged and will let Melissa indicated if she has any comments.

I removed the references to the CT and TX Plaintiffs' Motions to Dismiss from the related to reference near the top.  We cannot stipulate concerning relief sought by other parties (i.e. the TX and CT Plaintiffs).  If you want the references to their motions and dismissals in recitations in for context, that is ok, but this order is not a resolution of their motions to dismiss. Their motions may be moot already and will certainly be moot once the court actually dismisses these cases.

In paragraph 1, I did not understand the references to 105 and 305, so I removed them.  We are agreeing that there is cause to dismiss pursuant to 1112 and not any of the other sections of the code.

Also, given the retention of jurisdiction in the last paragraph of the order I removed the reference at the end of paragraph 1 as it seemed duplicative.

Finally, we cannot and will not stipulate to exculpation.  So that has been removed as well.

Please review these revisions with your client and advise if acceptable.  If so, then we can file with the court and email chambers advising that the stipulation has been filed and that the hearing on June 10, 2022 won't be necessary.  We can also offer to make ourselves available for a status conference should the court have any questions concerning the proposed stipulation.  Otherwise I think we would be all set.

I am hoping we can get this resolved today.  I will be in a hearing for the bulk of the afternoon, but will make myself available as soon as possible thereafter to address any open issues on this.  Assuming we can get this on file today, then I intend to continue the 341 again to a date beyond June 10, 2022.  However, if this is still ongoing then we will need to go forward with the 341 tomorrow.

Kind regards,

*Jayson B. Ruff*
Trial Attorney
Office of the United States Trustee
515 Rusk St., Suite 3516
Houston, Texas 77002
713-718-4650 Ext 252 (office)
202-573-6960 (mobile)
jayson.b.ruff@usdoj.gov



PLEASE DO NOT read, copy or disseminate this Internet E-mail if you are not the intended addressee. This E-mail may contain privileged information intended only for the addressee. If you have received this E-mail in error, please call us immediately at (713) 718-4650 and ask to speak to the sender of the communication.  Also, please notify the sender immediately, by E-mail, that you have received this E-mail in error and have deleted it.

**From:** Kyung S. Lee <klee@kslpllc.com>
**Sent:** Tuesday, May 31, 2022 4:41 PM
**To:** Ruff, Jayson B. (USTP) <Jayson.B.Ruff@usdoj.gov>; Nguyen, Ha (USTP) <Ha.Nguyen@usdoj.gov>; Melissa Haselden <mhaselden@haseldenfarrow.com>
**Cc:** Marc Schwartz <mschwartz@schwartzassociates.us>; Christian Schwartz <cschwartz@schwartzassociates.us>; Harold Lee <hlee@schwartzassociates.us>
**Subject:** [EXTERNAL] Re: InfoW\Update

Jayson, Ha and Melissa, please see the form of Stipulation and Order for Dismissal of the Chapter 11 Cases. Please review and see if we can finalize. We can then go together to Judge Lopez and ask him to approve at a Status Conference before Thursday or on Thursday. I think with the Texas and Connecticut Plaintiffs having dismissed the three debtors and no longer holding claims against the Debtors, we should be good to go and minimize administrative expenses.

**Kyung S. Lee**
**Kyung S. Lee PLLC**
Cell: 713-301-4751
klee@kslpllc.com

**From:** Ruff, Jayson B. (USTP) <Jayson.B.Ruff@usdoj.gov>
**Date:** Friday, May 27, 2022 at 3:16 PM
**To:** Kyung S. Lee <klee@kslpllc.com>, Nguyen, Ha (USTP) <Ha.Nguyen@usdoj.gov>, Melissa Haselden <mhaselden@haseldenfarrow.com>
**Cc:** Marc Schwartz <mschwartz@schwartzassociates.us>, Christian Schwartz <cschwartz@schwartzassociates.us>, Harold Lee <hlee@schwartzassociates.us>, Cameron Atkinson <catkinson@pattisandsmith.com>
**Subject:** RE: InfoWUpdate

Kyung,

Attached is a proposed stipulated dismissal.  Please review with your client and let me know if this is acceptable.

Kind regards,

*Jayson B. Ruff*
Trial Attorney
Office of the United States Trustee

515 Rusk St., Suite 3516
Houston, Texas 77002
713-718-4650 Ext 252 (office)
202-573-6960 (mobile)
jayson.b.ruff@usdoj.gov



PLEASE DO NOT read, copy or disseminate this Internet E-mail if you are not the intended addressee. This E-mail may contain privileged information intended only for the addressee. If you have received this E-mail in error, please call us immediately at (713) 718-4650 and ask to speak to the sender of the communication.  Also, please notify the sender immediately, by E-mail, that you have received this E-mail in error and have deleted it.

**From:** Kyung S. Lee <klee@kslpllc.com>
**Sent:** Wednesday, May 25, 2022 2:06 PM
**To:** Ruff, Jayson B. (USTP) <Jayson.B.Ruff@usdoj.gov>; Nguyen, Ha (USTP) <Ha.Nguyen@usdoj.gov>; Melissa Haselden <mhaselden@haseldenfarrow.com>
**Cc:** Marc Schwartz <mschwartz@schwartzassociates.us>; Christian Schwartz <cschwartz@schwartzassociates.us>; Harold Lee <hlee@schwartzassociates.us>; Cameron Atkinson <catkinson@pattisandsmith.com>
**Subject:** [EXTERNAL] Re: InfoW\Update

1. Yes, I can get on if you would give me a dial in number and time. I have it at 10AM.
2. We can stipulate to a dismissal and so you know the basis of why Marc is dismissing, we no longer have a need for chapter 11 because we have no creditors to resolve except for the few that will be handled by the Debtors outside of bankruptcy and the balance of the administrative expense claimants will also be handled outside of bankruptcy, which has always been your suggestions.
3. Provisions are being made to escrow $25,000 for Melissa, again subject to fee application and allowance of her fees.
4. I am giving you answers as counsel, and, I need to make sure Marc has had a chance to review and approve, which I will ask him to do.

**Kyung S. Lee**
**Kyung S. Lee PLLC**
Cell: 713-301-4751
klee@kslpllc.com

**From:** Ruff, Jayson B. (USTP) <Jayson.B.Ruff@usdoj.gov>
**Date:** Wednesday, May 25, 2022 at 1:36 PM
**To:** Kyung S. Lee <klee@kslpllc.com>, Nguyen, Ha (USTP) <Ha.Nguyen@usdoj.gov>, Melissa Haselden <mhaselden@haseldenfarrow.com>
**Cc:** Marc Schwartz <mschwartz@schwartzassociates.us>, Christian Schwartz <cschwartz@schwartzassociates.us>, Harold Lee <hlee@schwartzassociates.us>, Cameron Atkinson <catkinson@pattisandsmith.com>
**Subject:** RE: InfoWUpdate

Kyung,

Appreciate the report.  Couple of questions.  First, I do intend to open the line up tomorrow in case any creditors call in.  Is it possible that you can get on the line briefly to provide this update on behalf of the debtors?  Second, since we already have a pending motion to dismiss, is there any reason we can't just stipulate to dismissal?  That would save some time and the necessity of Debtors having to have a motion drafted.  It could be just be a simple stipulation that dismisses the cases and allows some time for Melissa to file for and be paid her fees.  Let me know your thoughts and I can discuss dismissing via stipulation with my client as well.

*Jayson B. Ruff*
Trial Attorney
Office of the United States Trustee
515 Rusk St., Suite 3516
Houston, Texas 77002
713-718-4650 Ext 252 (office)
202-573-6960 (mobile)
jayson.b.ruff@usdoj.gov



PLEASE DO NOT read, copy or disseminate this Internet E-mail if you are not the intended addressee. This E-mail may contain privileged information intended only for the addressee. If you have received this E-mail in error, please call us immediately at (713) 718-4650 and ask to speak to the sender of the communication.  Also, please notify the sender immediately, by E-mail, that you have received this E-mail in error and have deleted it.

**From:** Kyung S. Lee <klee@kslpllc.com>
**Sent:** Wednesday, May 25, 2022 12:29 PM
**To:** Ruff, Jayson B. (USTP) <Jayson.B.Ruff@usdoj.gov>; Nguyen, Ha (USTP) <Ha.Nguyen@usdoj.gov>; Melissa Haselden <mhaselden@haseldenfarrow.com>
**Cc:** Marc Schwartz <mschwartz@schwartzassociates.us>; Christian Schwartz <cschwartz@schwartzassociates.us>; Harold Lee <hlee@schwartzassociates.us>; Cameron Atkinson <catkinson@pattisandsmith.com>
**Subject:** [EXTERNAL] InfoW\Update

Marc Schwartz and I wanted to report to the group as follows:

1. The Texas Plaintiffs and Debtors agreed on Stipulations of Dismissals last week. Judge Lopez approved them last Thursday. Judge Mott signed orders remanding cases earlier this week. The Texas Plaintiffs are no longer creditors or hold claims against the Debtors.
2. The removal Connecticut Bankruptcy Court held a status conference yesterday. Connecticut Plaintiffs are to submit orders of dismissal by Thursday 5.26.22. Judge Manning said she would sign them Friday 5.27.22. Debtors are to submit dismissals of motions to remove by Monday

5.30.22.

3. Marc has instructed me to file Motions to Dismiss the Chapter 11 Cases on Tuesday 5.31.22 and eliminate any continuing administrative expenses.

4. We have a conflict as to the 341 Meeting of Creditors for tomorrow and the Debtors will not have a representative attend.

Thanks.

**Kyung S. Lee**
**Kyung S. Lee PLLC**
Cell: 713-301-4751
klee@kslpllc.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **INFOW, LLC** *et al.* | § | **CASE NO. 22-60020** |
| | § | |
| **DEBTORS.** | § | **CHAPTER 11 (Subchapter V)** |
| | § | **Jointly Administered** |
| | § | |

STIPULATION AND AGREED ORDER
DISMISSING DEBTORS' CHAPTER 11 CASES
[Related to ECF. No. 50]

This *Stipulation and Agreed Order Dismissing Debtors' Chapter 11 Cases* is entered into by and among the above-captioned debtors (the "Debtors"), Melissa Haselden as the duly appointed Subchapter V Trustee (the "Sub V Trustee") and the United States Trustee ("UST" and together with the Debtors and the Sub V Trustee, the "Parties").

WHEREAS, on April 17, 2022 and April 18, 2022, the Debtors filed their bankruptcy cases which are jointly administered under Case No. 22-60020 (collectively, the "Chapter 11 Cases").

WHEREAS, the Connecticut Plaintiffs filed their *Connecticut Plaintiffs' Emergency Motion to Dismiss Chapter 11 Cases and Objection to Designation as Subchapter V Small Business Vendors* (sic) [ECF No. 36] on April 26, 2022 (the "Connecticut Plaintiffs MTD").

WHEREAS, the Texas Plaintiffs filed *The Texas Litigation Plaintiffs' Supplemental Motion to Dismiss Petition* [ECF No. 42] on April 27, 2022 (the "Texas Plaintiffs MTD").

WHEREAS, on April 29, 2022, the UST filed its *Motion to Dismiss Debtors' Chapter 11 Cases* [ECF No. 50] (the "UST MTD").

WHEREAS, the Texas and Connecticut Plaintiffs have dismissed the Debtors with prejudice from the state court litigation and stipulated that they are no longer creditors and claim holders against the Debtors.

003940

WHEREAS, Marc Schwartz, the Chief Restructuring Officer of the Debtors, has determined that it is in the best interest of the Debtors' estates and their creditors not to continue the Chapter 11 Cases in light of the dismissal with prejudice of the Debtors from the lawsuits against them by the Texas and Connecticut Plaintiffs.

WHEREAS, Debtors and the UST wish to stipulate to the disposition of the Chapter 11 Cases.

**Accordingly, it is hereby AGREED and, upon approval of the Court, ORDERED that:**

1.  The Chapter 11 Cases are hereby dismissed pursuant to 11 U.S.C. § 1112(b) upon entry of this Order.

2.  The Sub V Trustee is hereby discharged from her duties upon entry of this Order.

3.  Within three (3) business days from the entry of this Order, the Debtors shall advance $25,000 to the Sub V Trustee to hold in her IOLTA trust account for application against any fees and expenses approved for payment by this Court.

4.  Within ten (10) days from the entry of this Order, the Sub V Trustee shall file a final application seeking approval of her fees and expenses related to these Chapter 11 Cases. All parties shall have the right to object to and contest the allowance of all fees and expenses sought by the Sub V Trustee.

5.  Upon the order approving the Sub V Trustee's fees and expenses becoming a final order, the Sub V Trustee shall take into income the allowed fees and expenses from the IOLTA trust fund account. Any amount remaining after taking the allowed amount into income by the Sub V Trustee shall be returned to the Debtors.

003941

6.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation and Agreed Order.


Dated: June ___, 2022
          Houston, Texas

_____
THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

**AGREED TO AND ENTRY REQUESTED:**

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE

By: /s/Jayson B. Ruff
Jayson B. Ruff
Trial Attorney
Michigan Bar No. P69893
515 Rusk, Ste. 3516
Houston, TX  77002
Telephone:  (713)718-4650 ext. 252
Facsimile:  (713)718-4670

– and –

INFOW, LLC (F/K/A INFOWARS, LLC),
IWHEALTH, LLC (F/K/A INFOWARS
HEALTH, LLC), AND PRISON PLANET TV, LLC

/s/ Kyung S. Lee
KYUNG S. LEE PLLC
Kyung S. Lee
State Bar No. 12128400
klee@kslpllc.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. 713-301-4751

Proposed Counsel to the Debtors


– and –

003942

SUBCHAPTER  V TRUSTEE

By: /s/Mellissa Haselden
Melissa Haselden
700 Milam, Suite 1300
Houston, TX 77002
Tel. 832-819-1149

003943

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22--60043** |
| | § | |
| **DEBTOR.** | § | **(Subchapter V Debtor)** |
| | § | **Chapter 11** |

## APPLICATION OF DEBTOR FOR AN ORDER (A) AUTHORIZING EMPLOYMENT OF W. MARC SCHWARTZ AS CHIEF RESTRUCTURING OFFICER, (B) AUTHORIZING EMPLOYMENT OF STAFF OF SCHWARTZ ASSOCIATES, LLC IN DISCHARGE OF DUTIES AS CHIEF RESTRUCTURING OFFICER, AND (C) <u>GRANTING RELATED RELIEF</u>

THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Free Speech Systems, LLC (the "<u>Debtor</u>" or "<u>FSS</u>"), the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "<u>Chapter 11 Case</u>"), hereby moves for entry of an order substantially in the form attached hereto (the "<u>Proposed Order</u>") pursuant to sections 105(a) and 327 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") authorizing the retention of W. Marc Schwartz (the "<u>CRO</u>" or "<u>Schwartz</u>") of Schwartz Associates, LLC ("<u>SALLC</u>") as the Chief Restructuring Officer (the "<u>Application</u>") pursuant to that certain engagement letter agreement by

and between the Debtor and SALLC, a copy of which is attached hereto as <u>Exhibit A</u> (the "<u>Engagement Agreement</u>").[1] In support of the Application, the Debtor submits the Declaration of W. Marc Schwartz attached hereto as <u>Exhibit B</u> (the "<u>Schwartz Declaration</u>") and respectfully represents as follows:

## **REQUESTED RELIEF**

1. Entry of the Proposed Order (a) approving the appointment and employment of Schwartz and to perform the services set forth in the Engagement Agreement as the CRO for FSS is necessary for the Debtor to adequately perform its duties as a debtor-in-possession, including overseeing daily business affairs and operations of FSS, interfacing with Alex Jones ("<u>Alex Jones</u>" or "<u>Jones</u>"), PQPR Holdings Limited, LLC ("<u>PQPR</u>") and vendors on selection of Supplements and Non-Supplements to stock, preparation of schedules of assets and liabilities, compliance with reporting requirements and various orders of this Court, preparation of financial information and testimony and formulation of bankruptcy strategy and plan of reorganization for FSS and (b) approving the employment of SALLC in connection with the CRO's duties.

2. Especially for a subchapter v debtor, this Court's approval of the retention of the CRO and SALLC by the Debtor is critical and indispensable to assuring that the chapter 11 process begins smoothly, and, that the Debtor has the optimal managers to help formulate a sound business and reorganization plan quickly. Without the CRO and SALLC, the Debtor cannot survive in chapter 11.

## **JURISDICTION**

3. The United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core

---

[1] The Engagement Agreement references paragraph 8.01 of the Debtor's company agreement. A copy of the Company agreement is attached hereto as <u>Exhibit C</u>.

2

proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

4.     The bases for the relief requested herein are sections 105, 327, and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules for the Bankruptcy Court for the Southern District of Texas (the "Local Rules").

## BACKGROUND

### A.  Case Background

5.     On July 29, 2022 (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11, subchapter v, of the Bankruptcy Code with the Court.

6.     The Debtor continue to operate its businesses and manage its properties as a Debtor and a Debtor-in-Possession pursuant to Bankruptcy Code § 1182(2).

7.     As of the filing of this Application, no creditors' committee has been appointed in the Chapter 11 Case by the Office of the United States Trustee for Region 7 (the "U.S. Trustee").

### B.  The Debtor

8.     Alex E. Jones ("Jones") owns one hundred percent (100%) of the equity in FSS.

9.     FSS is presently engaged in the business of producing and syndicating Jones' and other radio and video talk shows and selling products targeted to Jones' audience via the Internet. Today, FSS produces Alex Jones' syndicated news/talk show (The Alex Jones Show) and other programs from Austin, Texas, which airs via the Genesis Communications Network on over 100 radio stations across the United States and via the internet through websites including Infowars.com.

10.     On its InfowarsStore.com website, FSS makes available to customers dietary supplements, including Bodease, Vitamin Mineral Fusion, Vitamin D3 Gummies, Ultimate

3

Immune Support Pack, Pollen Block, Tea Tree Shampoo, and other health products (collectively, "Supplements"). The website also has available books, videos, t-shirts and other products (collectively, "Non-Supplements") Jones advertises during his radio talk show. The vast majority of FSS revenues comes from sales of Supplements which have traditionally been supplied by or through PQPR, an affiliated entity.

11.     As of July 1, 2022, FSS employed a workforce of 58 individuals, the majority of whom had direct reporting relationship to Alex Jones. In one building in Austin, Texas, FSS has four studios. This is the building where Jones produces his shows, including The Alex Jones Show. An adjacent building contains administrative offices and customer support. In a separate location in Austin, Texas, FSS has a building where warehousing and product sales fulfillment takes place. All of the studios and offices are in leased space.

12.     FSS licenses the Inforwars.com domain and trademark for InfoWars from InfoW, LLC.

13.     FSS has a unique audience that is highly loyal to Alex Jones and purchases products based on Alex Jones' credibility. Product sales from InfowarsStore.com stores are a significant source of revenue for FSS. Approximately 80% of FSS' revenue is derived from product sales. Of the remainder, 11% is historically from advertising and the balance from a variety of sources.

14.     Due to the content of Alex Jones' shows, Jones and FSS have faced an all-out ban of Infowars from mainstream online spaces. Shunning from financial institutions and banning Jones and FSS from major tech companies began in 2018. Today, Facebook, Twitter, YouTube, Spotify, PayPal, and Apple have banned Infowars and Jones.

15.     PQPR formulates supplements for FSS to market on its shows. Ultimately, FSS relied on PQPR to supply the Supplements as other vendors would not supply FSS. PQPR ordered

003947

and paid for Supplements, which it marked up, and then sold to FSS. Jones would publicize the Supplements on his show and FSS and/or PQPR fulfilled the orders to ship to its customers.

16.     As to Non-Supplements, FSS purchased the products, sold them, and fulfilled the sale through its own employees from its warehouse in Austin. Depending on whether a Supplement or Non-Supplement was sold, FSS and PQPR split the cost of the sale on an agreed to formula.

17.     Since 2018, FSS has had difficulty finding third parties willing and able to fulfill product sales. In the past, both FSS and PQPR attempted to provide fulfillment services for product sales.

18.     Recently, FSS retained a fulfillment company to take over this function. All former FSS employees responsible for fulfillment have been hired by this company. The fulfillment company charges FSS a flat fee per order regardless of size.

## C.  Pending Litigation Against the Debtor

19.     The Debtor's financial distress stems primarily from statements of Jones and other employees of FSS in the wake of the December 14, 2012, mass shooting at Sandy Hook Elementary School in which 20 children and 6 educators were killed by Adam Lanza. Various parents of the deceased victims of the Sandy Hook shooting assert, among other things, that these statements were defamatory and inflicted emotional distress.

20.     The relatives of the Sandy Hook victims and certain other parties (the "<u>Sandy Hook Plaintiffs</u>") assert, among other things, that Jones and other employees of FSS made defamatory statements and inflicted emotional distress. In 2018, the Sandy Hook Plaintiffs brought actions in Texas and Connecticut (collectively, the "<u>Sandy Hook Lawsuits</u>") against Jones, FSS and certain affiliates of the Debtor. The crux of the allegations in the Sandy Hook Lawsuits is that Jones and

FSS employees damaged the Sandy Hook Plaintiffs by saying or implying that the Sandy Hook shooting did not occur, and that the entire incident was a "false flag" hoax.

21.     Jones, FSS, and the Debtor have spent more than $15.0 million in legal fees and costs since commencement of the Sandy Hook Lawsuits. Despite the substantial amount spent, both the Texas and Connecticut courts have ruled that Jones and the Debtor failed to comply with discovery requirements such that judgment on *liability* has been entered against them by default.

22.     The jury in the Heslin\Lewis State Court Action returned jury verdicts against FSS and Jones ordering them to pay $45,200,000 in punitive damages on top of $4,100,000 in compensatory damages on Thursday and Friday August 4 and 5, 2022. The Debtor requires the services of the CRO to assist it in managing the business of FSS while it reviews the next steps in the Sandy Hook Lawsuits.

**D.  The Debtor Needs a CRO and SALLC**

23.     Since inception, FSS has been a "single talent business", *to wit*, without Alex Jones and his show, there would neither be an InfoWars nor any internet sales. Despite the rapid growth in the diversity of operations and revenue, FSS remained a family run business and did not retain professional management or install professional management systems. FSS failed to bring on board the necessary management skills to manage what was once a small family business but had become a $70 to $80 million a year enterprise. The Debtor and its employees continued to run the business with an inverted T structure, as though it was still a family business.

24.     In 2022, Alex Jones retained professionals to evaluate FSS. Since May 2022, FSS has retained Schwartz as its CRO with broad powers to review the company's past financial performance, analyze the condition of FSS's books and records and evaluate whether FSS is a business that can be reorganized. Schwartz retained his firm Schwartz Associates to perform various accounting and forensic work associated with his mandate.

6

25. Throughout the review conducted by the CRO and his team, they have been given complete access to FSS employees, books and records.

26. Among the preliminary conclusions reached in Schwartz' analysis of FSS are: (a) Although the company had a controller and two bookkeepers (none of which appear to have any formal accounting background), the 2021 general ledger had not been completed and the books for that period were not closed; (b) Few transactions had been recorded in the 2022 general ledger; (c) No financial statements were produced for the company for the 18 months preceding Schwartz' engagement; (d) The bank accounts had not been reconciled in 2021 or 2022; and (e) Internal accounting controls were completely inadequate, including lack of segregation of duties, absence of written monthly, quarterly and annual closing schedules, lack of supervisory review of key accounting functions, including vendor set up, bank reconciliations, inventory reconciliations, or intercompany billings; (f) Payments to vendors were debited to an expense account, but not to the specific vendor account; and (g) Credit card transactions were not recorded to specific expense accounts.

27. Since their engagement, Schwartz and his team have closed the books for 2021 and made significant progress fixing past bookkeeping omissions and oversights. As a result of these actions, the CRO has a vastly improved understanding of FSS's financial standing and its ability to operate profitably going forward. Schwartz has also renegotiated business terms with PQPR on the allocation of proceeds from product sales to be more favorable to FSS.

**E. Proposed Employment of Schwartz as the CRO**

   *i.   Scope of Employment*

28. The Debtor seeks to engage Schwartz as the CRO to advise and lead the day-to-day restructuring efforts of the Debtor, pursuant to the Engagement Agreement. The Debtor contemplates that the CRO will perform some or all the following tasks:

003950

a. Make business and debt restructuring decisions, including as it relates to business strategy(ies) and other key elements of the business;

b. Manage due diligence requests and other items requested by various constituents as part of the restructuring process;

c. Prepare cash flow forecasts and related financial and business models;

d. Identify and implement short and long-term liquidity initiatives;

e. Prepare Statement of Financial Affairs and Schedules, Monthly Operating Reports, and other similar regular Chapter 11 administrative, financial, and accounting reports required by the Court, as well as provide necessary testimony before the Court on matters within CRO's areas of expertise;

f. Review inventory marketability and provide monetization alternatives;

g. Make operating decisions;

h. Implement cost containment measures;

i. Negotiate with creditors, prospective purchasers, equity holders, equity committees, official committee of unsecured creditors, and other parties-in-interest and submit proposals to the Court;

j. Work to maximize the value of the Debtor;

k. Oversee all business decisions of Debtor, as necessary or required, utilizing CRO's business judgment;

l. Execute all documents and take all other acts necessary to effectuate the restructuring of the Debtor; and

m. The Debtor also seeks authority for other staff of SALLC to perform services required to assist the CRO within the scope of this engagement.

ii. *Necessity of Employment*

29. The Debtor believes that the retention and employment of the CRO is necessary and appropriate to operate the Debtor's business properly and administer the Chapter 11 Case and ultimately prepare and obtain confirmation of a plan of reorganization. While Alex Jones produces his show and markets products on his show, the Debtor needs a professional with financial

8

expertise to serve as an officer of the Debtor to perform the services indicated in the Engagement Agreement.

### iii. _Reasons for Selection_

30. The Debtor believes that the CRO is well qualified to provide management services that will assist and enhance the Debtor's efforts to maximize value to their creditors.

31. Schwartz is a licensed CPA with more than 40 years' experience providing expert witness and financial restructuring services. He frequently serves as a chief restructuring officer, and as a federal and state court appointed receiver, in bankruptcy and non-bankruptcy proceedings. Mr. Schwartz is one of approximately 200 full members of the National Association of Federal Equity Receivers. He understands how to be a fiduciary.

### iv. _Proposed Compensation & Reimbursement_

32. The Debtor intends to file a motion to establish interim compensation procedures in this case. Schwartz and SALLC intend to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including sections 330 and 331, the Bankruptcy Rules, the Bankruptcy Local Rules, and any interim compensation order entered in these Chapter 11 Case.

33. Subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, the Debtor proposes to pay on an hourly basis the CRO and SALLC, as set out in the Engagement Agreement and summarized in the following chart:

| BILLER | RATE |
|---|---|
| W. Marc Schwartz (CRO) | $690.00 per hour |
| M. Christian Schwartz | $470.00 per hour |
| Managers | $350.00 per hour |
| Associates | $280.00 per hour |
| Analysts | $210.00 per hour |
| Administrative Staff | $95.00 per hour |

003952

34. Additionally, the Engagement Agreement provides that the Debtor shall be responsible for the reasonable and necessary documented out-of-pocket costs and expenses incurred by CRO and SALLC in connection with the engagement. SALLC will submit detailed documentation of all expenses incurred in connection with requests for reimbursement.

35. The Debtor believes that the agreed terms of reimbursement, compensation, and hourly rates are reasonable. The CRO will notify the Debtor of any change in the hourly rates charged for services rendered while the Chapter 11 Case is pending.

     *v.*   *Retainer*

36. The Debtor engaged the CRO prior to the Petition Date. The CRO and SALLC received a retainer of $75,000.00 and a total payment of $78,811.39 for pre-petition work performed for FSS. The source of the retainer and the payment of the invoices is FSS.

37. Pursuant to the Engagement Agreement, the Debtor proposes that SALLC will hold the Retainer to be applied to SALLC's final fees and expenses at the conclusion of the engagement. The Proposed Order modifies the Engagement Agreement such that the CRO and SALLC shall not draw on the Retainer except upon order of the Court awarding final compensation and reimbursement in the Chapter 11 Case.

     *vi.*   *Disinterested*

38. Neither Schwartz nor SALLC is a creditor, equity security holder or an insider of FSS. Under Bankruptcy Code § 101(31)(B), the "corporation" is the closest entity similar to an LLC, which FSS is. An "insider" if the debtor is a corporation, includes " (i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor. 11 U.S.C. § 101(31)(B).

10

39.   Schwartz and SALLC do not qualify as an insider under (i), (iv), (v) and (vi).

40.   Schwartz served since May 19, 2022, as the CRO of the Debtor, and therefore may qualify under (ii). SALLC does not.

41.   Schwartz and SALLC do not qualify as a "person in control" of the debtor, as Schwartz had delegated to it managerial duties of the LLC, but those duties under Texas law cannot be supplanted by the rights of the owners of the LLC. Schwartz and SALLC do not qualify as an insider under (iii).

42.   Neither Schwartz nor SALLC have been within 2 years before the date of filing of the petition, a director, officer, or employee of the debtor. Again, Schwartz served as the CRO of FSS prior to the Petition Date.

43.   Neither Schwartz nor SALLC have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. Prior to entry into the Engagement Agreement, Schwartz and SALLC did not have a materially adverse interest to FSS.

44.    Their acting in a similar role at InfoWDebtors did not create an "interest materially adverse" to the interest of FSS's creditors or equity security holders. First, there was no dispute between FSS and InfoW over the licensing agreement over the name and the tradename. Second, the CRO and SALLC's mandate to "lead InfoW's management and personnel through the restructuring process" had for all practical purposes concluded by May 19, and for sure by June 6. May 19 is when the Texas and Connecticut Plaintiffs dismissed all of their claims against the InfoWDebtors via stipulations or motions. June 6 is when the Bankruptcy Court signed the Stipulation for Dismissal of the Chapter 11 Cases of the InfoWDebtors.

*vii.*  <u>Connections</u>

45.     The Schwartz Declaration sets out the connections of the CRO and SALLC with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, and any person employed in the office of the United States Trustee. To the best of the Debtor's knowledge, neither the CRO nor SALLC hold any connections other than those disclosed in the Schwartz Declaration.

46.     Schwartz has familiarity with the players involved in FSS as he served as the CRO of InfoWDebtors. As described in the Schwartz Declaration, Schwartz continues to serve as the CRO for the three (3) companies, InfoW, LLC, IWHealth, LLC and Prison Planet, tv Ltd. The bankruptcy cases of those three companies have been dismissed and Schwartz has not been asked to undertake any new assignments for these three companies.  At the present time, Schwartz's only duties with respect to the InfoWDebtors is to receive and deposit the return of the excess of the funds paid to the subchapter v Trustee in that case and the amount allowed in her final fee application.

47.     At the time Schwartz was engaged  on June 6, 2022 as CRO by FSS, he was the CRO of the InfoWDebtors. By that time,  the InfoWDebtors' bankruptcy cases were substantially over in that the CRO had negotiated the release with prejudice of the InfoWDebtors from the Texas and Connecticut litigation and had reached an agreement with the United States Trustee to move for dismissal of the subject bankruptcy cases.

48.     The Debtor believes that neither the CRO nor SALLC holds or represents any disqualifying interest that is adverse to the estate, and each is a "disinterested person." If any new relevant facts or relationships are discovered, the CRO and SALLC will supplement its disclosure to the Court and the U.S. Trustee.

12

**BASIS FOR RELIEF**

49. Subject to Court approval, Bankruptcy Code § 327(a) authorizes trustees—and Debtor-in-Possession—to "employ one or more attorney's accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties . . . ." Bankruptcy Code § 327(c) says that "[i]n a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest."

50. Bankruptcy Rule 2014 requires certain disclosures prior to the entry of an order approving the employment of a professional. According to Bankruptcy Rule 2014, the application must:

    a. Be filed by the trustee or committee and served on the United States Trustee (except in cases under chapter 9 of the Bankruptcy Code);

    b. State the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee; and

    c. Be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

**A. The CRO and SALLC Meet the Requirements of Bankruptcy Code § 327(a)**

003956

51.     Based on the Schwartz Declaration, the Debtor submits that neither the CRO nor SALLC hold or represent any disqualifying adverse interest and is a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code.

52.     The Bankruptcy Code defines what it means to be a "disinterested person" Bankruptcy Code § 101(14):

> The term "disinterested person" means a person that— (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

The Schwartz Declaration discloses no connections with the Debtor that would disqualify the CRO or SALLC as a "disinterested person" and the Debtor is not aware of any connections in addition to those disclosed in the Schwartz Declaration.

**B. This Application and the Schwartz Declaration Meet the Requirements of Bankruptcy Rule 2014.**

53.     This Application and the Schwartz Declaration meet the requirements as set out in Bankruptcy Rule 2014. The Application is made by the Debtor and sets out the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, and the proposed arrangement for compensation. The Schwartz Declaration is a verified statement pursuant to 28 U.S.C. § 1746 that sets out all connections that the CRO and SALLC has with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee. The Debtor is not aware of any other connections in addition to those disclosed in the Schwartz Declaration.

14

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter an order substantially in the form of the Proposed Order approving the employment of the CRO and SALLC effective as of the Petition Date, pursuant to the terms of the Engagement Agreement and grant any other appropriate relief.

Dated: August 20, 2022        **LAW OFFICES OF RAY BATTAGLIA, PLLC**

/s/*Raymond W. Battaglia*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Counsel to the Debtor and Debtor-In-Possession*

-and-

**SHANNON & LEE LLP**

/s/*R. J. Shannon*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

003958

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service on the date of filing, (b) by U.S.P.S. first class mail on all parties indicated in the attached service list within 1 business day of the filing, and (c) the following parties by email on the date of filing:

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Attn: Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Attn: Randy W. Williams
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581
rww@bymanlaw.com

Attn: Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002
jarrod.martin@chamberlinlaw.com

Attn: Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division

PO Box 12548
Austin, TX 78711-2548
christopher.dylla@oag.texas.gov

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002
mhaselden@haseldenfarro.com

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of U.S. Trustee
515 Rusk, Suite 3516
Houston, TX 77002
ha.nguyen@usdoj.gov
jayson.b.ruff@usdoj.gov

/s/R. J. Shannon

17

**USPS Service List**

**Twenty Largest Unsecured Creditors**

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

Commerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

18

003961

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479


AT&T                                    Justin Lair
PO Box 5001                             1313 Lookout Ave
Carol Stream, IL 60197-5001             Klamath Falls, OR 97601


## Parties Claiming Interest or Lien Affected

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

## Parties Filing Notice of Appearance

Ryan E. Chapple                         Jarrod B. Martin
Cain & Skarnulis PLLC                   Chamberlain Hrdlicka
303 Colorado Street, Suite 2850         1200 Smith Street, Suite 1400
Austin, Texas 78701                     Houston, TX 77002

Randy W. Williams                       Christopher J. Dylla
Byman & Associates PLLC                 Assistant Attorney General
7924 Broadway, Suite 104                Bankruptcy & Collections Division
Pearland, TX 77581                      PO Box 12548
                                        Austin, TX 78711-2548
Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

## Subchapter V Trustee

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002

## U.S. Trustee

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

19

003962

## Additional Notice Parties

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterling, Christopher
Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

003963

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22--60043** |
| | § | |
| **DEBTOR.** | § | **(Subchapter V Debtor)** |
| | § | **Chapter 11** |

## ORDER (A) AUTHORIZING EMPLOYMENT OF W. MARC SCHWARTZ AS CHIEF RESTRUCTURING OFFICER, (B) AUTHORIZING EMPLOYMENT OF STAFF OF SCHWARTZ ASSOCIATES, LLC IN DISCHARGE OF DUTIES AS CHIEF RESTRUCTURING OFFICER, AND (C) GRANTING RELATED RELIEF

Upon the *Debtor's Application for Order (A) Authorizing Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing Employment of Staff of Schwartz Associates, LLC in Discharge of Duties as Chief Restructuring Officer, and (C) Granting Related Relief* (the "Application")[1]; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1.     The Application is granted, to the extent set forth herein.

---

[1] Capitalized terms used by not otherwise defined in this Order shall have the meanings ascribed to such terms in the Application.

2.      In accordance with Bankruptcy Code §§ 327(a) and 330 and Bankruptcy Local Rule 2014-1, the Debtor is authorized to employ and retain W. Marc Schwartz, effective as of the Petition Date, as its chief restructuring officer (the "CRO"), under the terms and conditions set forth in the Application and the Engagement Agreement attached to the Application as Exhibit A thereto, as modified herein.

3.      The CRO shall hold confidential any material, non-public information of or pertaining to FSS and/or Alexander E. Jones delivered to the CRO, except to the extent that such information and the person to whom such information is disclosed are subject to a protective order that is entered in these Chapter 11 Case.

4.      The CRO is authorized to delegate appropriate tasks to Schwartz Associates, LLC ("SALLC"), pursuant to the terms of the Engagement Agreement.

5.      The CRO and SALLC shall be compensated for their services and reimbursed for actual expenses in accordance with the terms and conditions of the Engagement Agreement, as set forth in the Application and subject to §§ 330 and 331 of the Bankruptcy Code, and in accordance with applicable Federal Rules of Bankruptcy Procedure, Local Bankruptcy Rules, and any orders of this Court; *provided*, *however*, that the CRO and SALLC shall not seek reimbursement from the Debtor's estate for any fees incurred in defending any fee applications in this Chapter 11 Case.

6.      All compensation for services rendered and reimbursement for expenses incurred in connection with the above-captioned Chapter 11 Case shall be paid after further application to and order of this Court, in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Bankruptcy Local Rules, the Guidelines, and any orders of this Court.

2

7.      Notwithstanding anything to the contrary in the Engagement Agreement, the CRO and SALLC shall hold any prepetition retainer, pending a final order allowing compensation and reimbursement in these cases or order otherwise directing disposition of the retainer amounts.

8.      Notwithstanding anything to the contrary in the Application, the Engagement Agreement, or the Declaration attached to the Application, the CRO and SALLC shall not be entitled to reimbursement or fees and expenses in connection with any objection to their fees, without further order of the Court.

9.      The CRO and SALLC shall provide ten (10) business days' notice to the Debtor and the U.S. Trustee before any increases in the rates set forth in the Application or the Engagement Agreement are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in § 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to § 330 of the Bankruptcy Code.

10.     The CRO and SALLC shall use reasonable efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals in this Chapter 11 Case.

11.     The CRO and SALLC will review their files periodically during the pendency of the Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, the CRO and SALLC will use reasonable efforts to identify such further developments and will promptly file a supplemental Declaration, as required by Fed. R. Bankr. P. 2014(a).

12.     To the extent the Application, the Schwartz Declaration, or the Engagement Agreement is inconsistent with this Order, the terms of this Order shall govern.

003966

13.     The Debtor, the CRO, and SALLC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

14.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated this ___ day of August, 2022.

_____
UNITED STATES BANKRUPTCY JUDGE

003967

# EXHIBIT A

**Engagement Agreement**

003968



**Schwartz** Associates

May 19, 2022

**VIA EMAIL**

Free Speech Systems, LLC
VIA EMAIL: rbattaglialaw@outlook.com

**Re: Engagement of Chief Restructuring Officer**

Gentlemen:

    This letter confirms that Alex E. Jones has delegated to W. Marc Schwartz of Schwartz Associates, LLC ("SALLC") those managerial duties under ¶ 8.01 of the Free Speech System, LLC's ("FSS") Company Agreement to act as its Chief Restructuring Officer (the "CRO"), as defined in this letter to advise and lead its restructuring efforts involving the scope described herein, potentially including a filing under the United States Bankruptcy Code (the "Bankrutpcy Code"). This letter also confirms that FSS shall retain SALLC as its financial advisor ("FA") in connection with the restructuring efforts.

    SALLC understands that the purpose of the engagement is to continue stable operations while maximizing the values of FSS' assets, including negotiations with creditors of FSS and affiliates of FSS to assure that creditors of FSS have the best chance of recoveries on their claims. CRO will work to maximize returns and to assure a fair pro rata distribution to all unsecured creditors.

### I.    Scope of Engagement

    CRO will lead FSS' management and personnel through the restructuring process. It is agreed that CRO's authority may include, but not be limited to, the following:

1. Provide business and debt restructuring advice, including as it relates to business strategy and other key elements of the business;
2. Assist FSS with managing due diligence requests and other items that may be requested by its various constituents as part of the restructuring process;
3. Prepare cash flow forecasts and related financial and business models;
4. Identify and implement short and long-term liquidity initiatives;
5. Prepare Statements of Financial Affairs and Schedules, Monthly Operating Reports, and other similar regular Chapter 11 administrative, financial, and accounting reports required by the United States Bankruptcy Court ("Bankruptcy Court") as well as providing necessary testimony before the Bankruptcy Court on matters within CRO's areas of expertise;
6. Review inventory marketability and provide monetization alternatives as deemed appropriate;

1

EXHIBIT
4



**Schwartz**Associates

7. Make operational decisions, with advice of current ownership, directed to maximizing the value of FSS;

8. Implement cost containment measures;

9. Negotiate with creditors, prospective purchasers, equity holders, equity committees, official committee of unsecured creditors, and all other parties-in-interest;

10. Be in charge of all business decisions on behalf of FSS as necessary or required, utilizing CRO's business judgment in aid of the restructuring.

11. Execute all documents and take all other actions necessary to effectuate restructuring of FSS, including in any case before the Bankruptcy Court, subject to review and oversight by current ownership.

## II.    Indemnification

FSS agrees to indemnify, defend, and hold harmless CRO, individually, and SALLC, its subsidiaries or affiliates, the respective partners, directors, officers, agents, contractors, and employees of SALLC and each other person, if any, controlling SALLC or its affiliates (individually or collectively) from and against any and all losses, claims, damages, liabilities, or costs, as and when incurred, to which such party may become subject to or which are asserted against any party, directly or indirectly, in any way related to party while acting for FSS under this agreement including, without limitation, in connection with i) any act or omission by party related to engagement as FA or CRO under the Agreement or ii) Party's acceptance, performance or non-performance of obligations under said Agreement.

FSS will advance to the party amounts paid by the party for reasonable and documented legal or other expenses incurred by them, as and when incurred, in connection with investigating, preparing or defending any such losses, claims, damages, or liabilities or any action in respect thereof, whether or not in connection with existing, pending or threatened litigation against the party; provided, however, that FSS shall not be liable under the foregoing indemnity agreement in respect of any liability to the extent that such liability is found to have resulted from party's gross negligence, bad faith, willful misconduct, or a breach of this agreement and party shall no later than ten days after a determination of gross negligence, bad faith, willful misconduct, or breach of this agreement refund such amounts previously advanced by FSS. If, in the opinion of counsel, representing both parties in this matter covered by this indemnification creates a potential conflict of interest, the party may engage separate counsel to represent them at FSS' expense.

2



### III.   Materials Provided

FSS agrees to provide SALLC with such financial and other available information as is reasonably required for SALLC to render the services performed or to be performed hereunder. SALLC agrees to review the information and identify any inaccuracies or omissions that are reasonably apparent on the face of the information provided.

### IV.   Work Product

SALLC shall not disclose any confidential or privileged information to any third party, subject to the following exceptions: (a) to SALLC's affiliates, vendors, or agents who provide services in connection with this engagement; (b) with Client's written consent; (c) when legally required to do so; or (d) if such information is available from public sources.

Any and all records of FSS obtained by SALLC will be promptly returned to FSS at the end of this Engagement.

### V.   Disclosures

FSS shall not disclose any work or analyses of SALLC or CRO to any third party (other than any direct or indirect equity holder of FSS) without prior written consent of CRO, which shall not be unreasonably withheld. Neither SALLC nor CRO shall disclose any information respecting the business, properties, books, and records of FSS except to professionals hired by FSS for purposes of this Engagement, unless subpoenaed by a court of competent jurisdiction.

SALLC cannot assure that, following the completion of our internal conflict search, an engagement for or involving your creditors or other parties-in-interest or their respective attorneys and accountants will not be accepted by SALLS, its subsidiaries or affiliates. Should any potential conflict come to the attention of SALLC, we will endeavor to resolve such potential conflict and will determine what action needs to be taken. You agree that you will comprehensively inform us of the parties-in-interest to this matter of or additions to, or name changes for, those parties-in-interest whose names you provided.

SALLC may have provided, currently provide, or provided in the future, services to FSS' creditors, other parties-in-interest, and their respective attorneys and accountants in matters or engagements unrelated to this Engagement. You agree that party shall not have responsibility to FSS relating to such professional services, nor any responsibility to use or disclose information SALLC possess by reason of such services, whether such information might, by itself or others, be considered material to FSS.

SALLC has performed an internal search for any such conflict of interest with respect to FSS, its officers, directors, creditors, and other parties and has found no conflicts of interest.

3



**Schwartz** Associates

### VI.   Term & Termination

This agreement shall remain in effect until the earlier of i. The completion of the winddown of FSS, ii. Execution of a comprehensive debt restructuring agreement, iii. Confirmation and completion of a liquidating Chapter 11 plan of reorganization, iv. SALLC or CRO's resignation, or vi. Termination of the agreement by either party upon seven (7) calendar days' written notice.

SALLC may terminate this agreement without notice if FSS fails to make payments when due hereunder.

### VII.   Compensation

For services provided described herein, SALLC shall be compensated for the services of CRO on an hourly fee basis of $690.00 per hour.

If, in CRO's sole judgment, it is determined that additional services are required to assist with the scope of this engagements as outlined by this Agreement, CRO may employ SALLC, which shall be compensated at the following hourly rates

| | |
|---|---|
| M. Christian Schwartz: | $470 per hour |
| Managers: | $350 per hour |
| Associates: | $280 per hour |
| Analysts: | $210 per hour |
| Administrative Staff | $95 per hour |

FSS shall be responsible for CRO's and SALLC's reasonable and necessary documented out-of-pocket costs and expenses incurred in connection with this engagement. SALLC will provide to FSS detailed documentation of all expenses incurred.

SALLC acknowledges that, should FSS seek relief under the Bankruptcy Code, and FSS apply for authorization to retain and employ CRO and SALLC, FSS' payment of CRO's and SALLC's fees and expenses shall be subject to Bankruptcy Court approval. The provisions of this paragraph shall not limit nor restrict the indemnification and contribution provisions set forth in this Agreement.

### A.  Retainer

In order to commence the engagement, SALLC requires a retainer payment in the amount of $75,000.00 for the representation of FSS. SALLC must receive the retainer payment as well as the signed copy of this letter before the firm will take any action or be deemed to represent you. In the event that this agreement is terminated prior to incurring fees and expenses in excess of retainer amount, the balance shall be refunded to FSS within thirty days.

003972



**Schwartz** Associates

### B. Invoicing

Prior to filing bankruptcy, invoices reflecting the services of SALLC, including the services of CRO, shall be prepared and submitted monthly and paid no later than seven (7) business days thereafter. In the event that any portion of the retainer is used prior to the filing of bankruptcy, FSS shall replenish the retainer prior to filing bankruptcy. In case of a disputed invoice, Client agrees to pay undisputed portion of fees. Expense charges shall be submitted to FSS no later than 30 days after expense was incurred or immediately upon approval of Bankruptcy Court. For any recurring monthly charges, payment is to be made on the first day of each month. Upon filing bankruptcy, invoices shall be submitted and paid in accordance with the orders of the Bankruptcy Court.

### VIII.   CRO's Counsel

Prior to commencing this engagement, FSS will fund a $20,000 retainer to be paid to SALLC so that SALLC can engage Michael Ridulfo of Kane, Russell Coleman Logan PC to serve as legal counsel to the CRO.

### IX.    Authorization

FSS represents that this Agreement outlines the engagement and has been approved by its Board of Directors or managers (as appropriate) and that the individual that signs this Agreement on behalf of FSS has been duly authorized to do so, including express consent of the Board of Directors or Managers.

Further, it is acknowledged that future economic, operational performance or the confirmation success of a Chapter 11 plan of reorganization or Chapter 7 liquidation plan cannot be guaranteed. The monthly fees and related expenses to be paid by FSS to CRO and SALLC are not contingent upon the results of this engagement and neither CRO nor SALLC warrant or predict results or developments during the term of this engagement.

SALLC's maximum liability relating to services rendered under this letter (regardless of form of action, whether in contract, negligence, or otherwise) will be limited to the charges paid to SALLC for the portion of its services or work products giving rise to liability. In no event shall SALLC be liable for consequential, special, incidental, or punitive loss, damage or expense (including, without limitation, lost profits, opportunity costs, etc.) even if it has been advised of their possible existence.

Please acknowledge your agreement with the terms of this engagement letter and by signing and dating below. Once executed and the retainer is funded, a copy will be delivered to you via email. If you have any questions regarding this engagements letter, please call me at (832) 583-7021.

5

003973



**Schwartz** Associates

Very truly yours,

W. Marc Schwartz

**CONFIRMED AND AGREED**

Free Speech Systems, LLC

By: _____

Date: _____

Invoices should be sent to:

Name: _____

Email: _____

6

# EXHIBIT B

**Schwartz Declaration**

003975

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22--60043** |
| | § | |
| **DEBTOR.** | § | **(Subchapter V Debtor)** |
| | § | **Chapter 11** |

## DECLARATION OF W. MARC SCHWARTZ

I, W. Marc Schwartz, declare under penalty of perjury as follows:

1.      I am a CPA and a founder and chairman of Schwartz Associates, LLC ("SALLC"). On my behalf and SALLC's, I am duly authorized to execute this Declaration in support of the Application filed by Free Speech Systems, LLC  (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Chapter 11 Case") seeking approval to retain me as the chief restructuring officer ("CRO") and SALLC to assist me in those duties.

2.      Except as otherwise noted, all facts set forth in this Declaration are based upon my personal knowledge, upon the client and matter records of SALLC reviewed by me or SALLC staff under my supervision and direction or derived from information available to me that I believe to be true and correct or my opinion based upon experience, knowledge and information concerning the restructuring of debtor-creditor relationships, workouts, chapter 11 process and the Debtor.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

**A. Application to Employ CRO**

3.  I have reviewed the Application of Debtor for an Order (A) Authorizing Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing Employment of Staff of Schwartz Associates, LLC in Discharge of Duties as Chief Restructuring Officer, and (C) Granting Related Relief (the "<u>Application</u>"). The Application accurately describes my proposed role as the CRO.

**B. Disclosure of Connections**

4.  SALLC performed the following actions to determine whether it or any of its professionals has any disclosable connections to the Debtor, creditors, any other party in interest, their attorneys or accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any of the judges for the U.S. Bankruptcy Court for the Southern District of Texas:

  a.  First, SALLC staff sent emails to all email account holders within SALLC requesting the recipient respond to any representation known to be adverse or otherwise connected to the Debtor or its estate. Neither I nor my staff received any responses indicating that a conflict or connection exists.

  b.  Second, SALLC staff conducted a computerized search of all clients of SALLC using the list of parties in interest listed in <u>Schedule 1</u> hereto.

  c.  No connections or potential connections were identified.

  d.  Analyzed with FSS bankruptcy counsel whether having previously served as the CRO of InfoW, LLC, IWHealth LLC and Prison Planet TV LLC created a disqualifying connection or constituted a connection requiring disclosure in the Rule 2014 Statement.

5.  The email and computerized search uncovered no connections other than I and SALLC have worked with many of the same parties and creditors in connection with serving as the CRO and SALLC serving as my staff in the InfoWDebtors bankruptcy cases. The equity in and to the InfoWDebtors had been transferred by Alex Jones to a separate trust, so that Mr. Jones

had no ownership interest or control over the equity of those entities. On the other hand, Alex Jones is the sole owner and managing member of FSS.

6.      The Creditors and Parties in Interest and Attorneys for Creditors and Parties in Interest in Schedule 1 is similar to the creditors and parties in interest in the InfoWDebtors bankruptcy cases. As a result of their decision to withdraw their claims against the InfoWDebtors, these same parties are no longer creditors and parties in interest against InfoWDebtors.

7.      The Creditors and Parties in Interest here are adverse to FSS, similar to the position they were against InfoWDebtors. Applicant submits that previously serving as CRO for InfoWDebtors does not create an actual or potential conflict of interest as against the Creditors and Parties in Interest.

8.      Out of an abundance of caution, Applicant sets forth below the chronology of his involvement with InfoWDebtors, and, FSS, to establish that he did not start serving as the CRO for FSS until his mandate under the InfoWDebtors Engagement Agreement had terminated.

9.      *"Connection" to the InfoWDebtors.*  InfoW, LLC, f/k/a Infowars, LLC, IW Health, LLC f/k/a Infowars Health, LLC, Prison Planet TV, LLC (the "InfoWDebtors") were not financially healthy companies with no need to reorganize. Each of the Plaintiffs brought and continued lawsuits against one or more of the InfoWDebtors for over four (4) years. Both the Texas and Connecticut Plaintiffs had obtained judgments with respect to liability. Absent restructuring, the InfoWDebtors did not have the ability to pay any significant judgment or even the already-imposed sanctions. Chapter 11 relief was necessary for the InfoWDebtors.

10.     On April 17 and 18, 2022 (the "Petition Date"), each of the InfoWDebtors commenced a bankruptcy case by filing a petition for relief under chapter 11, subchapter v, of the

Bankruptcy Code with the United States Bankruptcy Court, Southern District of Texas, Victoria Division.

11.     In the InfoWDebtors' bankruptcy cases, Alex Jones and FSS agreed to pay into a trust pursuant to a Plan Support Agreement ("PSA") to be distributed according to a confirmed plan of reorganization (a) $725,000 initial funding plus any additional costs of the reorganization, (b) $2.0 million in cash on the effective date of a plan of reorganization, and (c) $250,000 per quarter for 60 quarters.

12.     Immediately after the Petition Date, the Texas Plaintiffs, the Connecticut Plaintiffs and the U.S. Trustee all filed emergency motions to dismiss the bankruptcy cases of the InfoWDebtors. The Texas and Connecticut Plaintiffs did not want to engage in negotiations over the proposed plan treatment with the Debtors, FSS or Alex Jones.

13.     While the InfoWDebtors had filed a series of emergency pleadings to have the former Bankruptcy Judges Nelms and Schmidt to Serve as Trustees of the 2022 Litigation Settlement Trust [ECF No. 6](the "Trustee Motion") and Marc Schwartz serve as the CRO for InfoWDebtors approved [ECF No. 7]("CRO Application"), the Texas Plaintiffs, Connecticut Plaintiffs and the U.S. Trustee all opposed hearings on those emergency motions and requested the Court to consider their emergency motions to dismiss the Chapter 11 Cases first. By the time of dismissal of the InfoWDebtors' bankruptcy cases in June, 2022, the Court had not ruled on the Trustee Motion and the CRO Application.

14.     By May 6, 2022, *only 18 days after the Petition Date*, counsel for both the Texas and Connecticut Plaintiffs announced that they were dismissing their claims against the InfoWDebtors from their respective lawsuits. I directed my bankruptcy counsel to work with Plaintiffs' counsel to make sure that their claims were withdrawn with prejudice against the

003979

InfoWDebtors.  The Connecticut Plaintiffs filed motions to dismiss their claims against the InfoWDebtors with prejudice on or about May 13, 2022. The InfoWDebtors finalized, submitted and had the Bankruptcy Court approve the Stipulations of Dismissal of the Texas Plaintiffs Claims with Prejudice by May 19, 2022.

15.     Upon dismissal of the Plaintiffs' claims against the InfoWDebtors, the purpose for the PSA no longer existed and it terminated by its own terms.  While counsel for FSS and Alex Jones advised the Court that the parties would extend the PSA deadlines beyond April, the Amended PSA was negotiated but never executed and the Litigation Trustee's never approved the amendment.

16.     I then conferred with my bankruptcy counsel to determine whether continuation of the subchapter v bankruptcy cases was in the best interest of the estates. First, the InfoWDebtors still had to litigate with the U.S. Trustee as to whether the InfoWDebtors were proper subchapter v debtors. Second, the *raison d'etre* for the bankruptcy (to have the Plaintiffs participate as claimants under the plan of reorganization) no longer existed. Third, I had limited access to funds to administer the estates, in light of breaches under the PSA. Fourth, the dismissals of both Texas and Connecticut Plaintiffs' claims with prejudice left the estate with only four (4) remaining creditors.

17.     I had to decide whether I needed the cost and expense of a chapter 11 to handle the four (4) remaining claims against the InfoWDebtors. I concluded I did not. I then immediately directed my bankruptcy counsel to work with the U.S. Trustee's office in order to have the InfoWDebtors' bankruptcy cases dismissed.

003980

18.     On June 1, 2022, the U.S. Trustee and the Debtors filed a Stipulation and Agreed Order Dismissing Debtors' Chapter 11 Cases. On June 6, 2022, the Bankruptcy Court approved the Stipulation and Agreed Order Dismissing Debtors' Chapter 11 Cases.

19.     Neither I nor SALLC was contacted about serving as a CRO for Free Speech Systems, LLC until May 19, 2022, when my assignment in the InfoWDebtors bankruptcy case had reached a favorable outcome for those debtors. For all practical purposes, my mandate to reorganize the InfoWDebtors had concluded because the bankruptcy cases no longer had the necessary participants to implement the global settlement. I had nothing to restructure or reorganize of InfoWDebtors at that point. The balance of the work I was performing was ministerial.

20.     As of May 19, 2022 and continuing through today, there is no adversity between any of the dismissed InfoWDebtors and FSS. No default exists under the license agreement between InfoW and FSS. To the best of my knowledge, there are no claims that exist between FSS and the InfoWDebtors. Furthermore, my mandate under the InfoW Engagement Agreement to be "in charge of the Client's restructuring process" terminated by its own terms. InfoW Engagement Agreement, P1. InfoWDebtors no longer needed anyone in charge of the restructuring process because the major claims against them had been withdrawn with prejudice.

21.     Out of an abundance of caution and to assure that the Court and the FSS parties that the CRO does not have biases, I submitted a written resignation of my position as CRO and the resignation of SALLC as my staff to InfoWDebtors to the Trustee of the InfoWDebtors prior to my filing this Declaration.

22.     The results of the foregoing connections search process and Declaration confirm that neither I, SALLC, nor any of its employees or shareholders, to the best of my knowledge, have

6

003981

any disqualifying connections. Neither I nor SALLC (a) have any debt or equity securities in the Debtor, (b) are an insider of the Debtor, or (c) was a creditor of the Debtor on the Petition Date.

### C. Affirmative Statement of Disinterestedness

23. Based on the connections review conducted to date and described herein, to the best of my knowledge and insofar as I can ascertain, I and SALLC are "disinterested persons" within the meaning of Bankruptcy Code § 101(14), as modified by Bankruptcy Code § 1107(b), as required by Bankruptcy Code § 327(a).

24. I am not a creditor, an equity security holder, or an insider of the Debtor; I am not and was not within 2 years before the Petition Date a director of the Debtor; and I do not have any interest materially adverse to the interests of the Debtor's bankruptcy estate or any class of creditors or equity security holders.

25. SALLC is not a creditor, an equity security holder, or an insider of the Debtor; SALLC is not and was not within 2 years before the Petition Date an employee, officer, or director of the Debtor; and SALLC does not have any interest materially adverse to the interests of the Debtor' bankruptcy estates or any class of creditors or equity security holders.

26. My having previously served as the CRO of InfoWDebtors and the connections to the same parties from that case will not in the slightest degree color my independent and impartial attitude required by the Code. In fact, I believe my previous experience with the parties involved will allow me to negotiate in good faith, foster communication among the constituents and often allow parties to achieve negotiated results rather than litigation.

27. My previous service as the CRO of InfoWDebtors demonstrates that I faithfully will execute my fiduciary duties. Concerns were expressed at the inception of the InfoWDebtors bankruptcy case whether I would be serving Alex Jones or the creditors of InfoWDebtors. While it would have been beneficial to Alex Jones to contest the withdrawal of claims against the Debtors

7

and prolong those bankruptcy cases, I directed counsel to assure only one thing in those negotiations: Assure that the InfoWDebtors had no more claims that could be asserted against it by the Texas and Connecticut Plaintiffs. Once that was accomplished, I quickly assessed that the best course for those debtors was to solve the remaining debtor-creditor issues outside of chapter 11.

28.     I do not possess or have any economic interest that would tend to lessen the value of the FSS bankruptcy estate. Nor one that would create either an actual or potential dispute in the which the two estates are rival claimants. Even if such a dispute were to arise, I would be representing FSS at this time, as I have resigned from being a CRO at InfoWDebtors. Furthermore, I would most likely have to recuse myself if it involved a matter on which I had done work for InfoWDebtors prior to my being engaged by FSS.

29.     I do not possess a pre-disposition under the circumstances that render such a bias against the estate. I can serve as an effective disinterested fiduciary at FSS.

30.     Finally, SALLC and I were retained pursuant to the Engagement Letter prior to the Petition Date to prepare for the filing. My understanding is that Bankruptcy Code § 1107(b) provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."

### D. Bankruptcy Rule 2016(b) Disclosures

31.     Pursuant to Bankruptcy Code § 504 and Bankruptcy Rule 2016, neither I nor SALLC have shared or agreed to share (a) any of its compensation from the employment by the Debtor with any other persons or (b) any compensation any other persons have received, may have received, or will receive.

8

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 20, 2022,

By: _W. Marc Schwartz_
W. Marc Schwartz

9

003984

**SCHEDULE 1**

**TO SCHWARTZ DECLARATION**

**SEARCHED PARTIES**

Debtor & Professionals

     Law Office of Ray Battaglia            Shannon  & Lee, PLLC


Debtor's Equity

     Alexander E. Jones

Creditors & Parties in Interest

| | |
|---|---|
| Brennan Gilmore | Leonard Pozner |
| Carlee Soto-Parisi | Marcel Fontaine |
| Carlos Soto | Mark Barden |
| Christopher Sadowski | Neil Heslin |
| Dona Soto | Nicole Hockley |
| Erica Lafferty | PQPR Holdings Limited, LLC |
| Francine Wheeler | Robert Parker |
| Free Speech Systems, LLC | Scarlett Lewis |
| Ian Hockley | Veronique De La Rosa |
| Jacqueline Barden | William Sherlach |
| Jennifer Hensel | William Aledenberg |
| Jeremy Richman | Larry Klayman |
| Jillian Soto | Randazza Legal Group |

Attorneys for Creditors and Parties in Interest

| | |
|---|---|
| Kaster Lynch Farrar & Ball LLP | McDowell Heterhington LLP |
| Koskoff Koskoff & Bieder | The Akers Law Firm PLLC |
| Fertitta & Reynal LLP | Copycat Legal PLLC |
| Pattis & Smith, LLC | Waller Lansden Dortch & Davis, |
| Zeisler & Zeisler P.C. | LLP |
| Jordan & Ortiz, P.C. | |

U.S. Bankruptcy Judges and Staff

003985

Chief Judge David R. Jones
Judge Marvin Isgur
Judge Christopher M. Lopez
Judge Jeffrey P. Norman
Judge Eduardo V. Rodriguez
Albert Alonzo
Ana Castro

Tracey Conrad
Jeannie Chavez
LinhThu Do
Tyler Laws
Kimberly Picota
Vriana Portillo
Mario Rios

U.S. Trustee Personnel

Alicia Barcomb
Jacqueline Boykin
Luci Johnson-Davis
Hector Duran
Barbra Griffin
Brian Henault
Linda Motton
Ha Nguyen
Glenn Otto
Yasmin Rivera

Jayson B. Ruff
Millie Sall
Patricia Schmidt
Christy Simmons
Gwen Smith
Stephen Statham
Christopher R. Travis
Clarissa Waxton
Jana Whitworth

**EXHIBIT C**

**FSS Company Agreement**

003987

**COMPANY AGREEMENT OF**
**FREE SPEECH SYSTEMS, LLC**

THIS COMPANY AGREEMENT OF FREE SPEECH SYSTEMS, LLC, a Texas limited liability company (this "Agreement"), is dated effective November 16, 2007 (the "Effective Date"), by the undersigned initial Members (defined herein) and Managers (defined herein) of the Company.

1.    **Formation of the Company.**

**1.01    Filing of Certificate of Formation.** The Certificate of Formation for the Company was filed with, and a certificate evidencing filing was issued by, the Secretary of State of the State of Texas on the Effective Date.

**1.02    Initial and Additional Members.** The names and addresses of the initial Members of the Company are as set forth on Schedule A of this Agreement. At the date hereof, there are no other Members of the Company and no other Person has any right to take part in the ownership or management of the Company. Additional Members of the Company shall be admitted only upon the approval of a Required Interest.

**1.03    Term of the Company.** The Company shall exist for the duration specified in the Certificate of Formation (which may be perpetual), unless sooner terminated in accordance with this Agreement. No provision of this Agreement (including, without limitation, the provisions of Section 10) shall be deemed or construed to constitute the Company a partnership (including, without limitation, a limited partnership) or joint venture, or any Member a partner or joint venturer of any other member or Manager, for any purposes other than federal and state tax purposes.

2.    **Organization of the Company.**

**2.01    Name of the Company.** The name of the Company is "Free Speech Systems, LLC." The Managers may cause the Company to do business under one or more assumed names.

**2.02    Registered Office.** The registered office of the Company required by the TBOC to be maintained in the State of Texas shall be the initial registered office named in the Certificate of Formation or such other office (which need not be a place of business of the Company) as the Managers may designate from time to time in the manner provided by law. The registered agent of the Company in the State of Texas shall be the initial registered agent named in the Certificate of Formation or such other Person or Persons as the Managers may designate from time to time in the manner provided by law.

**2.03    Principal Office.** The principal office of the Company in the United States shall be at such place as the Managers may designate from time to time, which need not be in the State of Texas, and the Company shall maintain records there as required by Section 101.501 of the TBOC. The Company may have such other offices as the Managers may designate from time to time.

2.04 **Purpose.** The sole purpose of the Company shall be to operate such businesses as the Members choose from time to time and shall have all the specified rights, powers, and duties set forth in the TBOC.

3. **Definitions.**

3.01 **Certain Defined Terms.** The capitalized terms used in this Agreement shall, unless the context otherwise requires, have the meanings specified in this Section 3.01.

"**Adjusted Capital Account Deficit**" means, with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant taxable year, after giving effect to the following adjustments: (i) credit to such Capital Account any amounts which such Member is obligated to restore pursuant to any provision of this Agreement or is deemed to be obligated to restore pursuant to the penultimate sentences of Sections 1.704-2(g)(1) and 1.704-2(i)(5) of the Treasury Regulations; and (ii) debit to such Capital Account the items described in Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), and 1.704-1(b)(2)(ii)(d)(6) of the Treasury Regulations. The foregoing definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Section 1.704-1(b)(2)(ii)(d) of the Treasury Regulations and shall be interpreted consistently therewith.

"**Agreement**" means this Agreement, including Schedule A, as originally executed and as subsequently amended from time to time.

"**Capital Account**" means the Capital Account maintained for each Member pursuant to Section 4.04 of this Agreement.

"**Capital Contribution**" means, as to any Member, the sum of the following: (i) the Member's Initial Capital Contribution; plus (ii) the Member's Additional Capital Contributions, if any. "Initial Capital Contributions" means, as to any Member, the contributions described in Section 4.01. "Additional Capital Contributions" means, as to any Member, the contributions described in Section 4.02.

"**Certificate of Formation**" means the Certificate of Formation of the Company described in Section 1 of this Agreement, as may be amended from time to time by appropriate filing with the Secretary of State of Texas.

"**Code**" means to the Internal Revenue Code of 1986, as it has been and may be amended.

"**Company**" means Free Speech Systems, LLC, a Texas limited liability company, as such limited liability company may from time to time be constituted.

"**Company Minimum Gain**" shall have the meaning of "partnership minimum gain" set forth in Sections 1.704-2(b)(2) and 1.704-2(d) of the Treasury Regulations.

"**Company Property**" or "**Company Properties**" means all interests, properties and rights of any type owned by the Company, whether owned by the Company at the date of its formation or thereafter acquired.

- 2 -

"**Default Interest Rate**" means the rate per annum equal to the lesser of (i) the most recent prime rate as quoted in the Wall Street Journal, and (ii) the maximum rate permitted by applicable law.

"**Managers**" means, as of any date, the Person or Persons who are then managing the business of the Company in accordance with Section 8 of this Agreement.

"**Member Nonrecourse Debt**" has the meaning set forth in Section 1.704-2(b)(4) of the Treasury Regulations.

"**Member Nonrecourse Debt Minimum Gain**" means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if such Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Section 1.704-2(i)(3) of the Treasury Regulations.

"**Member Nonrecourse Deductions**" has the meaning set forth in Sections 1.704-2(i)(1) and 1.704-2(i)(2) of the Treasury Regulations.

"**Members**" means, as of any date, to the Persons who then own Percentage Interests in the Company. The current Members are listed on Schedule A.

"**Membership Interest**" means, as of any date, a Member's share of the Company's income, gain, loss, deduction and credits and the right to receive distributions from the Company expressed by such Member's Percentage Interest, but does not include (i) the right of the holder thereof to participate in the management of the business or affairs of the Company, (ii) the right of the holder thereof to consent, approve, reject or disapprove any act of the Company, or (iii) the right of the holder thereof to be a Member.

"**Net Cash From Operations**" means the gross cash proceeds from the operations of the Company less the portion thereof used to pay or establish reserves for all expenses, debt payments, capital improvements, replacements, and contingencies of the Company, all as determined by the Managers. "Net Cash From Operations" shall not be reduced by depreciation, but shall be increased by any reductions of reserves previously established pursuant to the first sentence of this definition and the definition of "Net Cash from Sales or Refinancings."

"**Net Cash from Sales or Refinancings**" means the net cash proceeds of the Company from all sales and other dispositions of Company Property other than in the ordinary course of business (such as the sale or condemnation of all or a portion of the Property, a refinancing of all or a portion of the Property pursuant to a refinancing transaction or the receipt of casualty, litigation proceeds, or accelerated lease payments), less any portion thereof used to pay or establish reserves for all expenses, debt payments, capital improvements, replacements, and contingencies of the Company, all as determined by the Managers, and shall include all principal and interest payments with respect to any note or other obligation received by the Company in connection with such a capital transaction.

"**Nonrecourse Deductions**" has the meaning set forth in Section 1.704-2(b)(1) of the Treasury Regulations.

- 3 -

003990

**"Nonrecourse Liability"** has the meaning set forth in Section 1.704-2(b)(3) of the Treasury Regulations.

**"Percentage Interest"** means the interest of each Member in the Company as set forth opposite the Member's name on the attached Schedule A, as may be adjusted from time to time in accordance with the provisions of this Agreement.

"**Permitted Transferee**" means any of the following:

(1)     Alex Jones, Kelly Jones, and any of their descendants;

(2)     Any corporation, partnership, limited liability company, or other entity 100% of the beneficial ownership of which is owned by Permitted Transferees;

(3)     Any charitable foundation established by an individual referenced in (1) above; or

(4)     Any trust set up for the primary benefit of one or more of the individuals referenced in (1) above or for the benefit of a charitable foundation referenced in (3) above.

**"Person"** means any natural person, limited liability company, general partnership, limited partnership, corporation, joint venture, business trust, real estate investment trust, cooperative, association, trust, estate or other entity or organization.

**"Profits"** and **"Losses"** means the net book income or net book loss, as the case may be, of the Company determined in accordance with the principles for computing "book" income and "book" loss under Section 1.704-1(b)(2)(iv) of the Treasury Regulations; provided, however, that items of income, gain, loss, deduction and credit specially allocated pursuant to the provisions of Section 5.03 shall be excluded from the computation of Profits and Losses.

**"Required Interest"** means Members holding in aggregate fifty-one percent (51.00%) or more of the Percentage Interests then held by all Members.

**"Standard Rate"** means a per annum rate of interest equal to ten percent (10%), compounded annually.

**"Tax Distribution"** with respect to any Member for any taxable year of the Company, means an amount of cash equal to the product of (i) the Profit and items of income and gain (reduced by Losses plus any items of loss and deduction) allocated to such Member for such taxable year pursuant to Section 5 and (ii) the highest marginal effective federal income tax rate applicable to an individual in effect from time to time during such taxable year.

**"TBOC"** means the Texas Business Organizations Code, as it may be amended from time to time.

003991

"**Treasury Regulations**" means those regulations promulgated under the Code.

"**Unrecovered Capital Contribution**" means, as of any day, a Member's Capital Contribution adjusted as follows: (i) increased by the amount of any Company liabilities which, in connection with distributions pursuant to Sections 6.02(b) and 10.04(b), are assumed by such Member or are secured by any Company Property distributed to such Member; and (ii) reduced by the amount of cash and the fair market value (as determined by the Managers) of any Company Property distributed to such Member pursuant to Sections 6.02(b) and 10.04(b) and the amount of any liabilities of such Member assumed by the Company or which are secured by any Company Property contributed by such Member to the Company. In the event any Person transfers all or any portion of his Membership Interest, the transferee shall succeed to the Unrecovered Capital Contribution of the transferor to the extent it relates to the transferred Membership Interest.

**3.02    Other Defined Terms.**  Other capitalized terms not defined in Section 3.01 shall have the meanings specified in the other sections of this Agreement.

**4.    Capital of the Company.**

**4.01    Initial Capital Contributions.**  Each Member shall contribute to the capital of the Company the amount set forth as such Member's "Initial Capital Contribution" on Schedule A.

**4.02    Additional Capital Contributions.**  The Managers may from time to time call upon the Members to make additional contributions to the capital of the Company pursuant to such terms and conditions as are specified by the Managers. The Members may (but shall not be required to) make Additional Capital Contributions to the Company. All Additional Capital Contributions shall be made within thirty (30) days after the Members have received notice thereof from the Managers.  For purposes of this Agreement, "Additional Capital Contribution" means, as to any Member, such Member's pro rata share, based upon such Member's Percentage Interest, of the additional sums determined by the Managers to be required for the operation of the Company.

**4.03    Failure to Make Additional Capital Contributions.**  If any Member fails to pay all or any portion of an additional assessment after due notice, then the Managers may recoup any deficiency by arranging for additional advances to be made by those Members that are willing to fund some portion of the deficiency, in such proportions as the Managers and the participating Members agree. In any event, if any funds are advanced hereunder on other than a pro rata basis, all such advances made by any Member hereunder (including each Member's pro rata advance) shall be considered loans to the Company and shall accrue interest at a per annum rate equal to the Standard Rate.

**4.04    Capital Accounts.**  A Capital Account shall be established and maintained for each Member.  It is the intention of the Members that the Capital Accounts be maintained in accordance with Section 1.704-1(b) of the Regulations.  In that regard, each Member's Capital Account shall be:

(a)    Increased by:

- 5 -

003992

(i)     The amount of money contributed by that Member to the Company;

(ii)     The fair market value of property or services contributed by that Member to the Company (net of liabilities secured by the contributed property that the Company is considered to assume or take subject to within the meaning of Section 752 of the Code); and

(iii)     Allocations to that Member of Company income and gain (or items thereof), including income and gain exempt from tax, and

(b)     Decreased by:

(i)     The amount of money distributed to that Member by the Company;

(ii)     The fair market value of property distributed to that Member by the Company (net of liabilities secured by the distributed property that the Member is considered to assume or take subject to within the meaning of Section 752 of the Code);

(iii)     Allocations to that Member of expenditures of the Company described in Section 705(a)(2)(B) of the Code; and

(iv)     Allocations of Company loss and deduction (or items thereof).

A Member's Capital Account also shall be adjusted as provided in Treas. Reg. § 1.704-1(b)(2)(iv)(e) to reflect the distribution of property to a Member, and otherwise adjusted as required by Treas. Reg. § 1.704-1(b)(2)(iv) or 1.704-1(b)(4). On the transfer of a Membership Interest, the Capital Account of the transferor that is attributable to the transferred Membership Interest shall carry over to the transferee Member in accordance with the provisions of Treas. Reg. §1.704-1(b)(2)(iv)(l).

**4.05**    **Return of Capital Contributions; Company Property.** Except as otherwise provided herein or in the TBOC, no Member shall have the right to withdraw, or receive any return of, his Capital Contribution. No interest shall be paid by the Company on Capital Contributions or on balances in Members' Capital Accounts. Company Property shall be deemed to be owned by the Company as an entity, and no Member, individually or collectively, shall have any ownership interest in such Company Property or any portion thereof. Title to any or all Company Property may be held in the name of the Company or one or more nominees, as the Managers may determine. All Company Property shall be recorded as the property of the Company on its books and records, irrespective of the name in which legal title to such Company Property is held.

**5.**    **Allocations.**

**5.01**    **Allocation of Profits.** After giving effect to the special allocations set forth in Section 5.03, Profits for each taxable year shall be allocated in the following order and priority:

- 6 -

(a) First, to the Members in an amount equal to the excess, if any, of (i) the cumulative Losses allocated pursuant to Section 5.02(a)(ii) for all prior taxable years, over (ii) the cumulative Profits allocated pursuant to this Section 5.01(a) for all prior taxable years; and

(b) Then, the balance, if any, to the Members in accordance with their respective Percentage Interests.

**5.02** **Allocation of Losses.** After giving effect to the special allocations set forth in Section 5.03, Losses for any taxable year shall be allocated as set forth in Section 5.02(a), subject to the limitations in Section 5.02(b).

(a) Losses for any taxable year shall be allocated in the following order and priority;

(i) First, to the Members in accordance with their respective Percentage Interests in an amount equal to the excess, if any, of (A) the cumulative Profits allocated pursuant to Section 5.01(b) for all prior taxable years, over (B) the cumulative Losses allocated pursuant to this Section 5.02(a)(i) for all prior taxable years; and

(ii) Then, the balance, if any, to the Members in accordance with their respective Percentage Interests.

(b) The Losses allocated pursuant to Section 5.02(a) shall not exceed the maximum amount of Losses that can be so allocated without causing any Member to have an Adjusted Capital Account Deficit at the end of any taxable year. In the event some but not all of the Members would have an Adjusted Capital Account Deficit as a consequence of an allocation of Losses pursuant to Section 5.02(a), the limitation set forth in this Section 5.02(b) shall be applied on a Member by Member basis so as to allocate the maximum permissible Losses to each Member under Section 1.704-1(b)(2)(ii)(d) of the Treasury Regulations.

**5.03** **Special Allocations.** The following special allocations shall be made in the following order:

(a) Minimum Gain Chargeback. Except as otherwise provided in Section 1.704-2(f) of the Treasury Regulations, notwithstanding any other provision of this Section 5, if there is a net decrease in Company Minimum Gain during any taxable year, each Member shall be specially allocated items of Company income and gain for such taxable year (and, if necessary, subsequent taxable years) in an amount equal to such Member's share of the net decrease in Company Minimum Gain, determined in accordance with Section 1.704-2(g) of the Treasury Regulations. Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto. The items to be so allocated shall be determined in accordance with Sections 1.704-2(f)(6) and 1.704-2(j)(2) of the Treasury Regulations. This Section 5.03(a) is intended to comply with the minimum gain chargeback requirement in Section 1.704-2(f) of the Treasury Regulations and shall be interpreted consistently therewith.

(b) Member Minimum Gain Chargeback. Except as otherwise provided in Section 1.704-2(i)(4) of the Treasury Regulations, notwithstanding any other provision of this Section 5, if there is a net decrease in Member Nonrecourse Debt Minimum Gain attributable to a Member Nonrecourse Debt during any Company taxable year, each

- 7 -

003994

Person who has a share of the Member Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt, determined in accordance with Section 1.704-2(i)(5) of the Treasury Regulations, shall be specially allocated items of Company income and gain for such taxable year (and, if necessary, subsequent taxable years) in an amount equal to such Person's share of the net decrease in Company Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt, determined in accordance with Section 1.704-2(i)(4) of the Treasury Regulations. Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto. The items to be so allocated shall be determined in accordance with Sections 1.704-2(i)(4) and 1.704-2(j)(2) of the Treasury Regulations. This Section 5.03(b) is intended to comply with the minimum gain chargeback requirement in Section 1.704-2(i)(4) of the Treasury Regulations and shall be interpreted consistently therewith.

(c)     Qualified Income Offset. In the event any Member unexpectedly receives any adjustments, allocations, or distributions described in Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), or 1.704-1(b)(2)(ii)(d)(6) of the Treasury Regulations, items of Company income and gain shall be specially allocated to such Member in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the Adjusted Capital Account Deficit of such Member as quickly as possible; provided that an allocation pursuant to this Section 5.03(c) shall be made only if and to the extent that such Member would have an Adjusted Capital Account Deficit after all other allocations provided for in this Section 5 have been tentatively made as if this Section 5.03(c) were not in this Agreement.

(d)     Gross Income Allocation. In the event any Member has a deficit Capital Account at the end of any taxable year that is in excess of the sum of (i) the amount such Member is obligated to restore pursuant to any provision of this Agreement, and (ii) the amount such Member is deemed to be obligated to restore pursuant to the penultimate sentences of Sections 1.704-2(g)(1) and 1.704-2(i)(5) of the Treasury Regulations, such Member shall be specially allocated items of Company income and gain in the amount of such excess as quickly as possible; provided that an allocation pursuant to this Section 5.03(d) shall be made only if and to the extent that such Member would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Section 5 have been tentatively made as if Section 5.03(c) and this Section 5.03(d) were not in this Agreement.

(e)     Nonrecourse Deductions. All Nonrecourse Deductions for any taxable year shall be specially allocated among the Members in proportion to their Percentage Interests.

(f)     Member Nonrecourse Deductions. Any Member Nonrecourse Deductions for any taxable year shall be specially allocated to the Member who bears the economic risk of loss with respect to the Member Nonrecourse Debt to which such Member Nonrecourse Deductions are attributable in accordance with Section 1.704-2(i)(1) of the Treasury Regulations.

(g)     Section 754 Adjustments. To the extent an adjustment to the adjusted tax basis of any Company asset pursuant to Code Section 734(b) or Code Section 743(b) is required, pursuant to Section 1.704-1(b)(2)(iv)(m)(2) or Section 1.704-1(b)(2)(iv)(m)(4) of the Treasury Regulations, to be taken into account in determining Capital Accounts as the result of a distribution to a Member in complete liquidation of his Membership Interest, the

- 8 -

amount of such adjustment to Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Members in accordance with their respective Percentage Interests in the event that Section 1.704-1(b)(2)(iv)(m)(2) of the Treasury Regulations applies, or to the Member to whom such distribution was made in the event that Section 1.704-1(b)(2)(iv)(m)(4) of the Treasury Regulations applies.

**5.04     Curative Allocations.** The allocations required by Section 5.03 and this Section 5.04 (the "Regulatory Allocations") are intended to comply with certain requirements of the Treasury Regulations.  It is the intent of the Members that, to the extent possible, all Regulatory Allocations will be offset either with other Regulatory Allocations or with special allocations of other items of Company income gain, loss, or deduction pursuant to this Section 5.04.   Therefore, notwithstanding any other provision of this Section 5 (other than the Regulatory Allocations), the Managers shall make such offsetting special allocations in whatever manner it determines appropriate so that, after such offsetting allocations are made, each Member's Capital Account balance is, to the extent possible, equal to the Capital Account balance such Member would have had if the Regulatory Allocations were not part of this Agreement and all Company items were allocated pursuant to Section 5.01.

**5.05     Section 704(c) Allocations.** In accordance with Section 704(c) of the Code, income, gain, loss and deduction concerning any property contributed to the Company shall, solely for tax purposes, be allocated among the Members to take account of any variation between the adjusted tax basis of such property and the agreed fair market value of such property upon contribution. If the agreed fair market value of any Company asset is adjusted pursuant to this Agreement, subsequent allocations of income, gain, loss and deduction with respect to such asset shall take account of any variation between the adjusted tax basis of such asset for federal income tax purposes and its adjusted fair market value in the same manner as under Section 704(c) of the Code. Allocations under this Section 5.05 are solely for purposes of federal income taxes and shall not affect or be taken into account in computing any Member's Capital Account.

**5.06     Other Allocation Rules.** In the event Members are admitted to the Company on different dates, the Profits or Losses allocated to the Members for each such taxable year during which Members are so admitted shall be allocated among the Members in proportion to the number and class of Interests each holds from time to time during such taxable year in accordance with Section 706 of the Code, using any convention permitted by law and selected by the Managers. Solely for purposes of determining a Member's proportionate share of the Company's "excess nonrecourse liabilities" within the meaning of Section 1.752-3(a)(3) of the Treasury Regulations, and solely for such purpose, the Member's Percentage Interest is specified to be his applicable Interest. Except as otherwise provided in this Agreement, all items of Company income, gain, loss, deduction and any other allocations not otherwise provided for shall be divided among the Members in the same proportions as they share Profits or Losses, as the case may be, for the year.

**5.07     Allocations on Transfer.** Income, gain, loss, deduction or credit attributable to any Company interest which has been transferred shall be allocated between the assignor and the assignee as follows:

> (a)     For the months prior to the transfer, to the assignor;

> (b)     For the months subsequent to the transfer, to the assignee; and

003996

(c)     For the month of the transfer, to the assignee if the transfer occurs on or before the 15th day of such month and to the assignor if occurring thereafter.

For purposes of the above allocation, income, gains, losses, deductions and credits shall be allocated equally among the months of the taxable year without regard to Company operations during such months.

### 6.     Distributions.

**6.01     Distributions of Net Cash from Operations.** Except as otherwise provided in Section 10, Net Cash from Operations, if any, shall be distributed to the Members within thirty (30) days after the end of each taxable year, in the following order and priority:

(a)     First, to each Member in accordance with such Member's Tax Distribution with respect to such taxable year; provided, however, that (i) amounts of Net Cash from Operations distributed to a Member under this Section 6.01(a) shall be treated as an advance of any distributions to which such Member would otherwise be entitled under Sections 6.01(b) and 6.02(c) of this Agreement and the amounts otherwise distributable to a Member under Sections 6.01(b) and 6.02(c) of this Agreement shall be reduced by the amount distributed pursuant to this Section 6.01(a), and (ii) no such distribution of Net Cash from Operations shall be made pursuant to this Section 6.01(a) should the Managers determine, in their discretion, that such distribution would adversely affect the Company or its business; and

(b)     Then, the balance, to the Members in accordance with their respective Percentage Interests.

**6.02     Distributions of Net Cash from Sales or Refinancings.** Except as otherwise provided in Section 10, Net Cash from Sales or Refinancings shall be distributed, within thirty (30) days following the receipt thereof, in the following order and priority:

(a)     First, to each Member in accordance with such Member's Tax Distribution with respect to such taxable year; provided, however, that (i) amounts of Net Cash from Sales or Refinancings distributed to a Member under this Section 6.02(a) shall be treated as an advance of any distributions to which such Member would otherwise be entitled under Sections 6.01(b) and 6.02(c)of this Agreement and the amounts otherwise distributable to a Member under Sections 6.01(b) and 6.02(c) of this Agreement shall be reduced by the amount distributed pursuant to this Section 6.02(a), and (ii) no such distribution of Net Cash from Sales or Refinancings shall be made pursuant to this Section 6.02(a) should the Managers determine, in their discretion, that such distribution would adversely affect the Company or its business;

(b)     Then, to the Members in an amount equal to their Unrecovered Capital Contributions, payable in proportion to the unpaid amounts thereof; and

(c)     Then, the balance, to the Members in accordance with their respective Percentage Interests.

**6.03     Amounts Withheld.** All amounts withheld or required to be withheld pursuant to the Code or any provision of any state, local or foreign tax law with respect to any payment, distribution or allocation to the Company, the Members and treated by the Code (whether or not withheld pursuant to the Code) or any such tax law as amounts payable by or in

- 10 -

003997

respect of any Member or any Person owning an interest, directly or indirectly, in such Member shall be treated as amounts distributed to the Member with respect to which such amount was withheld pursuant to this Section 6.03 for all purposes under this Agreement. The Managers are authorized to withhold from distributions, or with respect to allocations, to the Members and to pay over to any federal, state, local or foreign government any amounts required to be so withheld pursuant to the Code or any provisions of any other federal, state, local or foreign law and shall allocate any such amounts to the Members with respect to which such amount was withheld.

## 7. Fiscal Matters; Books and Records.

**7.01 Bank Accounts; Investments.** Capital Contributions, revenues and any other Company funds shall be deposited by the Managers in a bank account established in the name of the Company, or shall be invested by the Managers in furtherance of the purpose of the Company. No other funds shall be deposited into Company bank accounts or commingled with Company investments. Funds deposited in the Company's bank accounts may be withdrawn only to be invested in furtherance of the Company purpose, to pay Company debts or obligations or to be distributed to the Members pursuant to this Agreement.

**7.02 Records Required by TBOC; Right of Inspection.** During the term of the Company and for a period of four (4) years thereafter, the Managers, at the expense of the Company, shall maintain in the Company's principal office in the United States specified in Section 2 all records required to be kept pursuant to the TBOC. On written request stating the purpose, a Member or an assignee of a Member's Percentage Interest may examine and copy in person or by such Person's representative, at any reasonable time, for any proper purpose, and at such Person's expense, records required to be maintained under the TBOC.

**7.03 Books and Records of Account.** The Managers, at the expense of the Company, shall maintain for the Company adequate books and records of account that shall be maintained on the method of accounting selected by the Managers and on a basis consistent with appropriate provisions of the Code, containing, among other entries, a Capital Account for each Member.

**7.04 Tax Returns and Information.** The Members intend for the Company to be treated as a partnership for tax purposes. The Managers shall prepare or cause to be prepared all federal, state and local income and other tax returns that the Company is required to file. Within the shorter of: (a) such period as may be required by applicable law or regulation; or (b) seventy-five (75) days after the end of each calendar year, the Managers shall send or deliver to each Person who was a Member at any time during such year such tax information as shall be reasonably necessary for the preparation by such Person of his federal income tax return and state income and other tax returns.

**7.05 Tax Elections.** The Company shall be treated as a partnership for federal income tax purposes and neither the Company nor any Manager or Member may make an election for the Company to be excluded from the application of the provisions of Subchapter K of Chapter 1 of Subtitle A of the Code or any similar provisions of applicable state law.

**7.06 "Tax Matters Member."** The Managers designate Alex Jones as the "tax matters partner" of the Company pursuant to Section 6231(a)(7) of the Code. The tax matters partner shall inform each other Member of all significant matters that may come to his attention in his capacity as "tax matters partner" by giving notice thereof on or before the fifth day after

- 11 -

003998

becoming aware thereof and, within that time, shall forward to each other Member copies of all significant written communications he may receive in that capacity.

## 8. Management of the Company.

**8.01 Management.** The powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of the Managers. The Managers shall have authority to cause the Company to do business in jurisdictions other than the State of Texas. Pursuant to the TBOC, the existence of the Company began upon the effective date of the Certificate of Formation. The initial Manager of the Company shall be Alex Jones, and he shall serve in such capacity until such time as his successor or successors have been duly elected by the approval of a Required Interest.

**8.02 Powers of Managers/Delegation of Authority.** The Managers shall have no power to cause the Company to do any act outside the purpose of the Company as set forth in Section 2.04. Subject to the foregoing limitation and all other limitations in this Agreement, the Managers, shall have full, complete and exclusive power to manage and control the Company, and shall have the authority to take any action they deem to be necessary, convenient or advisable in connection with the management of the Company.

**8.03 Action by Managers.** Unless otherwise expressly provided in this Agreement, at any meeting of the Managers, a majority (by number) of the Managers shall constitute a quorum for the transaction of business, and an act of a majority (by number) of the Managers who are present at such a meeting at which a quorum is present shall be the act of the Managers. A meeting of the Managers shall be held at the principal office of the Company upon five (5) days' notice. Any action that may be taken at a meeting of the Managers or any committee of the Managers may be taken without a meeting if a consent in writing, setting forth the action to be taken, shall be signed by all of those Persons entitled to vote at that meeting on the particular action, and such consent shall have the same force and effect as a unanimous vote of the Managers or such committee or designated group of Managers at a meeting duly called and held. No notice shall be required in connection with the use of a written consent pursuant to this Section 8.

## 9. Membership in the Company.

**9.01 Rights, Powers and Obligations of Members.** No Member (other than a Manager or an officer) has the authority or power to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditures on behalf of the Company. No Member (including any Member who is a Manager or officer) shall be liable for the debts, obligations or liabilities of the Company, including under a judgment decree or order of a court.

**9.02 Action by Members.** Commencing with the calendar year next following the calendar year in which the Company was organized, annual meetings of the Members shall be held on the first Thursday of January at 10:00 a.m., local time. Special meetings of the Members may be called by resolution of a Required Interest upon five (5) days' notice, for the purpose of addressing any matter upon which the Members may vote under this Agreement. A Required Interest shall constitute (i) a quorum for the transaction of business, and (ii) the act of the Members. All meetings of Members shall be held at the principal office of the Company as provided in Section 2. Any action that may be taken at a meeting of the Members may be taken without a meeting if a consent in writing, setting forth the action to be taken, shall be signed by

- 12 -

003999

a Required Interest or Members holding in aggregate the Percentage Interests required to approve such action under the TBOC, the Certificate of Formation or this Agreement.

## 10. Restrictions Upon Membership Interests.

**10.01 Generally.** The ownership and transferability of Interests in the Company are substantially restricted. Neither record title nor beneficial ownership of all or any part of a Member's Membership Interest may be transferred or encumbered except as otherwise set forth in this Agreement. Capital is material to the business and investment objectives of the Company and its federal tax status. An unauthorized transfer of a Member's Membership Interest could create a substantial hardship to the Company, jeopardize its capital base, and adversely affect its tax structure. These restrictions upon ownership and transfer are not intended as a penalty, but as a method to protect and preserve existing relationships based upon trust and the Company's capital and its financial ability to continue its business. Except as provided in this Agreement, neither record title nor beneficial ownership of all or any part of a Member's Membership Interest may be transferred without the prior written approval of a Required Interest.

**10.02 Authorized Transfers at Death.** An individual Member may transfer all or any part of his Membership Interest at his death to a Permitted Transferee without obtaining the approval of a Required Interest. In addition, a trust with an individual beneficiary who has a limited or unlimited testamentary power of appointment may transfer all or any part of its Membership Interest at the death of such individual to a Permitted Transferee without obtaining the approval of a Required Interest. A Permitted Transferee, upon receiving a transfer of all or any part of a Membership Interest under the terms of this Section 10.02, shall become a Substituted Member without the approval of a Required Interest.

The transfer may be accomplished pursuant to (1) the terms of the properly probated last will and testament of a Member; (2) the exercise of a limited or unlimited testamentary power of appointment; (3) the terms of any trust set up for the primary benefit of one or more Permitted Transferees; or (4) pursuant to an acknowledged assignment instrument, effective as of the date of the Member's death, delivered to and signed by the Manager prior to the death of the Member.

If there has been no pre-arranged transfer as provided above, the executor, administrator, guardian, conservator, or legal representative of a deceased or incompetent Member may exercise all the deceased or incompetent Member's rights and powers necessary to settle the Member's estate or administer the Member's property. However, the estate of a deceased or incompetent Member shall not have the right to become a Substituted Member without the approval of a Required Interest.

**10.03 Authorized Estate Planning Transfers.** An individual Member may make transfers of all or any part of his Membership Interest, with or without consideration, to a Permitted Transferee without obtaining the approval of a Required Interest. In addition, a trust with an individual beneficiary who has a limited or unlimited right to make a disposition of all or any part of his interest in the trust during his lifetime may transfer all or any part of its Membership Interest to a Permitted Transferee with or without consideration, without obtaining the approval of a Required Interest. A Permitted Transferee, upon receiving a transfer of all or any part of a Membership Interest under the terms of this Section 10.03, shall become a Substituted Member without the approval of a Required Interest.

- 13 -

**10.04 Nonrecognition of an Unauthorized Transfer.** The Company will not be required to recognize the interest of any transferee or assignee who has obtained a purported Membership Interest as the result of a transfer or assignment that is not authorized by this Agreement (an "Unauthorized Transfer"). If there is doubt as to who owns a Membership Interest or who is entitled to distributions or to the proceeds upon liquidation of the Company, the Manager may accumulate such distributions or liquidation proceeds until the issue is resolved.

**10.05 Effect of Unauthorized Transfers.** If a Member makes an Unauthorized Transfer of all or any part of a Membership Interest, the Company will have the unilateral option to acquire the interest of the transferee or assignee, or any fraction or part thereof (referred to in this Section 10.05 as the "Unauthorized Interest"), upon the following terms and conditions.

(a) The Company will have the option to acquire the Unauthorized Interest by giving written notice to the transferee or assignee of its intent to purchase the Unauthorized Interest within ninety (90) days from the date it is finally determined that the Company is required to recognize the transfer or assignment of the Unauthorized Interest.

(b) The valuation date for the determination of the purchase price of the Unauthorized Interest will be the first day of the month following the month in which such written notice is delivered.

(c) Unless the Company and the transferee or assignee agree otherwise, the purchase price for the Unauthorized Interest shall be its fair market value as determined in the manner provided in Schedule B.

(d) Closing of the sale will occur at the principal office of the Company at 10 o'clock a.m. on the first Tuesday of the month following the month in which the fair market value was finally determined in accordance with the provisions of Schedule B.

(e) In order to reduce the burden upon the resources of the Company, the Company will have the option, to be exercised in writing delivered at closing, to pay its purchase money obligation in fifteen (15) equal annual installments (or in annual installments for the remaining term of the Company if less than fifteen (15) years) with interest at the Default Interest Rate. The first installment of principal, with interest, will be due and payable on the first day of the calendar year following closing, and subsequent annual installments, with accrued interest, will be due and payable on the first day of each succeeding calendar year until the entire amount of the obligation is paid. The Company will have the right to prepay all or any part of the purchase money obligation at any time without penalty.

(f) Upon the approval of a Required Interest, other than the Member whose interest is to be acquired, the Manager may assign the Company's option to purchase to one or more of the remaining Members and when done, any rights or obligations imposed upon the Company will instead become, by substitution, the rights and obligations of such Members.

(g) Neither the transferee or assignee of an Unauthorized Interest or the Member causing the transfer or assignment, will have the right to vote on Company matters during the prescribed option period.

**10.06 Deemed Unauthorized Transfers.** In the event that any of the following events occur with respect to a Member, such Member will be deemed to have made an

- 14 -

Unauthorized Transfer of his Membership Interest, and the provisions of Section 10.05 will apply:

(a)    the assignment of all or any part of a Member's Membership Interest for the benefit of creditors;

(b)    the Bankruptcy of a Member;

(c)    the appointment of a receiver for all or substantially all of the assets of a Member;

(d)    the levy of an attachment, sequestration, garnishment, or charging order against all or any part of a Member's Membership Interest; or

(e)    a purported transfer or encumbrance by operation of law or otherwise of all or any part of a Member's Membership Interest, except as expressly permitted under this Agreement.

### 10.07  Admission of Substituted Members.

(a)    Except as otherwise provided in Sections 10.02 and 10.03 of this Agreement, no assignee of all or any part of a Membership Interest shall have the right to become a Substituted Member except with the approval of a Required Interest, the granting or denying of which consent shall be in the sole discretion of those constituting the approval of a Required Interest, and, if granted, may be granted subject to whatever conditions, if any, those constituting the approval of a Required Interest may require.  Notwithstanding any other provision of this Agreement, in no event may an assignor of all or any part of a Membership Interest make or enter into an agreement, oral or written, with an assignee or potential assignee of such interest under which the assignor agrees to exercise its residual rights in the Company at the discretion or instruction of any assignee of such interest, and any such purported agreement shall be null and void.

(b)    Notwithstanding any granting of the approval of a Required Interest under paragraph (a) of this Section 10.07, and notwithstanding the provisions of Sections 10.02 and 10.03, the admission of an assignee as a Substituted Member shall be further conditioned as follows:

(i)    the assignment instrument and such other instruments as the Managers may deem necessary or desirable to effect the admission of the assignee as a Substituted Member being in form and substance satisfactory to the Managers;

(ii)    the assignor and assignee executing such other instrument or instruments as the Managers may deem necessary or desirable to effectuate such admission;

(iii)    the assignee and the assignee's spouse (if any) accepting and adopting in writing all the terms and provisions of this Agreement, as the same may have been amended;

- 15 -

004002

(iv)    the assignee and/or the assignor paying or obligating themselves to pay all reasonable expenses connected with such admission (as determined by the Managers, but which the Managers shall have the right to waive), including, but not limited to, the cost of the preparation, filing, and publishing of any appropriate documents; and

(v)    such other conditions as the Managers may reasonably impose.

(c)    In the event that an assignee seeking to become a Substituted Member under this Section 10.07 is an assignee of all or any part of a Membership Interest of a Manager, then all decisions in this Section 10.07 are to be made by the other Manager(s), if any, or if there is no other Manager, then by a Unanimity of Interest of the Members.

**10.08 Status of a Substituted Member.** A "Substituted Member" is an assignee of all or any part of a Membership Interest admitted to all the rights and subject to all of the obligations of a Member in the Company. Any such Substituted Member shall be treated as a Member. In the event an assignee becomes a Substituted Member, such Substituted Member shall be deemed to have received its interest in the Company from the Member who assigned such interest, and will have the same rights to receive distributions and to be allocated tax items as the Member with respect to which such assignee is becoming a Substituted Member.

**10.09 Assignee of a Membership Interest.** Any person or entity who acquires all or any part of a Membership Interest and who has not been admitted as a Substituted Member shall be entitled to receive Company distributions attributable to such Interest, but shall have no voting or managerial rights.

**10.10 Membership Interest Pledge or Encumbrance.** No Member may grant a security interest in or otherwise pledge, hypothecate, or encumber all or any part of his Membership Interest or such Member's distributions without obtaining the approval of a Required Interest. It is understood that the Members are under no obligation to give consent nor are they subject to liability for withholding consent.

## 11. Dissolution and Winding Up.

**11.01 Events Causing Dissolution.** The Company shall be dissolved upon the first of the following events to occur: (a) the expiration of the term of duration of the Company, if any, set forth in the Certificate of Formation; (b) the written consent of a Required Interest at any time to dissolve and wind up the affairs of the Company; or (c) the occurrence of any other event that causes the dissolution of a limited liability company under the TBOC.

**11.02 Winding Up.** If the Company is dissolved pursuant to Section 11.01, the Company's affairs shall be wound up as soon as reasonably practicable in the manner set forth below.

(a)    Appointment of Liquidator. The winding up of the Company's affairs shall be supervised by a Liquidator. The Liquidator shall be the Managers or, if the Members prefer, a liquidator or liquidating committee selected by a Required Interest.

(b)    Powers of Liquidator. In winding up the affairs of the Company, the Liquidator shall have full right and unlimited discretion, for and on behalf of the Company: (i)

- 16 -

to prosecute and defend civil, criminal or administrative suits; (ii) to collect Company assets, including obligations owed to the Company; (iii) to settle and close the Company's business; (iv) to dispose of and convey all Company Property for cash, and in connection therewith to determine the time, manner and terms of any sale or sales of Company Property, having due regard for the activity and condition of the relevant market and general financial and economic conditions; (v) to pay all reasonable selling costs and other expenses incurred in connection with the winding up out of the proceeds of the disposition of Company Property; (vi) to discharge the Company's known liabilities and, if necessary, to set up, for a period not to exceed five (5) years after the date of dissolution, such cash reserves as the Liquidator may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company; (vii) to distribute any remaining proceeds from the sale of Company Property to the Members; (viii) to prepare, execute, acknowledge and file articles of dissolution under the TBOC and any other certificates, tax returns or instruments necessary or advisable under any applicable law to effect the winding up and termination of the Company; and (ix) to exercise, without further authorization or consent of any of the parties hereto or their legal representatives or successors in interest, all of the powers conferred upon the Managers under the terms of this Agreement to the extent necessary or desirable in the good faith judgment of the Liquidator to perform its duties and functions. The Liquidator (if not the Managers) shall not be liable as a Manager to the Members and shall, while acting in such capacity on behalf of the Company, be entitled to the indemnification rights set forth in the Certificate of Formation.

**11.03 Compensation of Liquidator.** The Liquidator appointed as provided herein shall be entitled to receive such reasonable compensation for its services as shall be agreed upon by the Liquidator and a Required Interest.

**11.04 Liquidation.** Upon completion of all desired sales of Company Property, and after payment of all selling costs and expenses, the Liquidator shall distribute the proceeds of such sales, and any Company Property that is to be distributed in kind, to the following groups in the following order of priority:

(a)     First, to the extent permitted by law, to satisfy Company liabilities to creditors, including Members who are creditors (other than for past due Company distributions), of the Company, whether by payment or establishment of reserves; and

(b)     Then, to the Members, in accordance with, and in the ratio of, the positive balances in their respective Capital Accounts.

The claims of each priority group specified above shall be satisfied in full before satisfying any claims of a lower priority group. If the assets available for disposition are insufficient to dispose of all of the claims of a priority group, the available assets shall be distributed in proportion to the amounts owed to each creditor or the respective Capital Account balances or Percentage Interests of each Member in such group.

**11.05 Final Report.** Within a reasonable time following the completion of the liquidation, the Liquidator shall supply to each of the Members a statement which shall set forth the assets and the liabilities of the Company as of the date of complete liquidation and each Member's pro rata portion of distributions pursuant to Section 11.04.

**11.06 Deficit Capital Accounts.** Notwithstanding anything to the contrary contained in this Agreement, and notwithstanding any custom or rule of law to the contrary, and notwithstanding that the deficit, if any, in the Capital Account of any Member results from or is

- 17 -

004004

attributable to deductions and losses of the Company (including non-cash items such as depreciation), or distributions of money pursuant to this Agreement, upon dissolution of the Company such deficit shall not be an asset of the Company and such Member shall not be obligated to contribute such amount to the Company to bring the balance of such Member's Capital Account to zero.

## 12. Miscellaneous.

**12.01 Notices.** All notices given pursuant to this Agreement shall be in writing and shall either be (i) mailed by first class mail, postage prepaid, registered or certified with return receipt requested, or (ii) hand delivered to the intended addressee. Notice so mailed shall be effective upon the expiration of three (3) days after its deposit and notice given by hand delivery shall be effective upon actual receipt by the addressee. For purposes of notice, the addresses of the Members shall be as set forth under their respective names on the attached Schedule A; provided, however, that each Member shall have the right to change his address for purposes of notice hereunder to any other physical address by the giving of thirty (30) days' notice to the other Members in the manner set forth above.

**12.02 Governing Law.** This Agreement shall be governed by and construed in accordance with the local, internal laws of the State of Texas. In particular, this Agreement is intended to comply with the requirements of the TBOC and the Certificate of Formation. In the event of a direct conflict between the provisions of this Agreement and the mandatory provisions of the TBOC or any provision of the Certificate of Formation, the TBOC and the Certificate of Formation, in that order of priority, will control.

**12.03 Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Members and their respective heirs, legal representatives, successors and assigns.

**12.04 Amendment.** Except as expressly provided herein, this Agreement may be amended only by action of a Required Interest.

**12.05 Construction; Headings.** The Article and Section headings appearing in this Agreement are for convenience of reference only and are not intended, to any extent or for any purpose, to limit or define the text of any Article or Section. Whenever required by the context, as used in this Agreement, the singular number shall include the plural, and vice versa, and the gender of all words used shall include the masculine, feminine and the neuter. Unless expressly stated herein, all references to Articles and Sections refer to articles and sections of this Agreement, and all references to Schedules are to schedules attached hereto, each of which is made a part hereof for all purposes.

**12.06 Creditors Not Benefited.** Nothing in this Agreement is intended to benefit any creditor of the Company or a Member. No creditor of the Company or a Member will be entitled to require the Managers to solicit or accept any loan or additional capital contribution for the Company or to enforce any right which the Company or any Member may have against a Member, whether arising under this Agreement or otherwise.

**12.07 Arbitration.** Any controversy, claim or dispute arising out of or relating to this Agreement or any other agreements referred to herein, shall be settled by binding arbitration in Austin, Travis County, Texas. Such arbitration shall be conducted in accordance with the then prevailing commercial arbitration rules of the American Arbitration Association

- 18 -

("AAA"), with the following exceptions if in conflict: (a) one arbitrator shall be chosen by AAA; (b) each party to the arbitration will pay its pro rata share of the expenses and fees of the arbitrator, together with other expenses of the arbitration incurred or approved by the arbitrator; and (c) arbitration may proceed in the absence of any party if written notice (pursuant to the AAA's rules and regulations) of the proceedings has been given to such party. The parties agree to abide by all decisions and awards rendered in such proceedings. Such decisions and awards rendered by the arbitrator shall be final and conclusive and may be entered in any court having jurisdiction thereof as a basis of judgment and of the issuance of execution for its collection. All such controversies, claims or disputes shall be settled in this manner in lieu of any action at law or equity; provided, however, that nothing in this subsection shall be construed as precluding the bringing an action for injunctive relief or other equitable relief. The arbitrator shall not have the right to award punitive damages or speculative damages to either party and shall not have the power to amend this Agreement. The arbitrator shall be required to follow applicable law. IF FOR ANY REASON THIS ARBITRATION CLAUSE BECOMES NOT APPLICABLE, THEN EACH PARTY, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY AS TO ANY ISSUE RELATING HERETO IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER MATTER INVOLVING THE PARTIES HERETO.

**12.08  Entire Agreement.** This Agreement (including the heading on the first page hereof), the schedules and exhibits attached hereto and specifically referenced herein, collectively contain the entire agreement among the Members relating to the subject matter hereof and all prior agreements relative hereto which are not contained herein are terminated.

This Agreement may be executed in one or more counterparts, each of which shall be an original, but all of which taken together shall constitute a single document.

**[Signature Page Follows]**

004006

EXECUTED to be effective as of the Effective Date.

**Members:**

_____
Kelly Jones

_____
Alex Jones

**Managers:**

_____
Alex Jones

SIGNATURE PAGE

## SCHEDULE A

### Names, Addresses, Initial Capital Contributions and Percentage Interests

| Members: | Initial Capital Contributions: | Percentage Interest: |
|---|---|---|
| Kelly Jones<br>6601 Dogwood Creek Drive<br>Austin, Texas  78746 | $51.00 | 51% |
| Alex Jones<br>6601 Dogwood Creek Drive<br>Austin, Texas  78746 | $49.00 | 49% |
| Totals: | $100.00 | 100.00% |

SCHEDULE A

004008

## SCHEDULE B

### DETERMINATION OF FAIR MARKET VALUE
### OF MEMBERSHIP INTEREST

In the event a determination of the fair market value of all or any part of a Membership Interest is required pursuant to the terms of this Agreement, the following provisions shall apply.

A. The fair market value of all or any part of a Membership Interest shall be the price at which the interest would change hands between a willing seller and a willing buyer, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts, including, but not limited to, all facts relevant for determining under Sections 2031 and 2512 of the Code the fair market value of closely held entity interests which may not be withdrawn before the end of the term of the Company.

B. Purchaser and Seller shall first attempt to determine the fair market value of the affected Membership Interest or any part thereof (the "Affected Interest") by agreement. If Seller and Membership are unable to agree on the fair market value of the Affected Interest within fifteen (15) days after Purchaser has notified Seller of its intent to purchase the Affected Interest, each of Seller and Purchaser shall, within the period of an additional fifteen (15) days, name a qualified appraiser and supply the name of such appraiser to the other party. If either Seller or Purchaser fails to appoint an appraiser, the determination of the fair market value of the Affected Interest shall be made by the sole appraiser appointed. Within the period of thirty (30) days after the appointment of the second appraiser, the two appraisers shall separately determine the fair market value of the Affected Interest and shall provide copies of their written reports to each of Seller and Purchaser. If the difference between the two appraisal reports is ten percent (10%) or less (the higher report being less than the lower report multiplied by 1.01) the average of the appraisals shall conclusively determine the fair market value of the Affected Interest. If the difference between the two appraisal reports is greater than ten percent (10%), the two appraisers shall appoint a third appraiser who shall select between the two appraisal reports as to the fair market value of the Affected Interest, and the opinion of the third appraiser shall be conclusive of the fair market value of the Affected Interest.

C. For purposes hereof, an appraiser shall be "qualified" if he would be considered an expert for purposes of giving testimony as to the fair market value per Interest in the Company in a judicial or similar proceeding. The costs and expenses of the appraiser selected by Seller or Purchaser shall be borne by the party selecting the appraiser. The costs and expenses of a common appraiser shall be borne equally by the Seller and Purchaser.

D. During the period of time that a determination of the fair market value of the Affected Interest is being conducted pursuant to the procedures set forth in this Schedule B, all time periods for notice or exercise of any rights related to the purchase shall be suspended. Upon the final determination of fair market value, all time limits shall automatically commence.

SCHEDULE B

004009

# Detailed time report                              Schwartz Associates, LLC

| | | | | | |
|---|---|---|---|---|---|
| Timeframe | **05/01/2022 – 06/10/2022** | | 1 Client | **Free Speech Systems** | |
| Total | **33.08 Hours** | | Projects | **All projects** | |
| | **0.00 Uninvoiced billable hours** | | Tasks | **All tasks** | |
| | | | 1 Team | **Marc Schwartz** | |

| Client | Project | Task | Roles | Person | Hours |
|---|---|---|---|---|---|
| 05/24/2022 | | | | | 7.25 |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 5.00 |
| | Meeting with counsel in Austin | | | | |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 2.25 |
| | RT Travel to Austin for meeting with counsel, 4.5 hours, billed 2.25 | | | | |
| 05/25/2022 | | | | | 1.00 |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 0.10 |
| | Read Bankston email on proposed sanctions against Reynal and Taube | | | | |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 0.90 |
| | Call with Axos on DIP accounts and merchant services | | | | |
| 06/01/2022 | | | | | 0.30 |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 0.30 |
| | Meet with K Lee and discuss status, email to legal group plus Rao and C Schwartz to request meeting of group. | | | | |
| 06/02/2022 | | | | | 0.90 |
| | | | | **Total** | **33.08** |

004010

| Client | Project | Task | Roles | Person | Hours |
|--------|---------|------|-------|--------|-------|
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 0.90 |
| call with counsel | | | | | |
| 06/03/2022 | | | | | 4.10 |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 3.00 |
| Reviewing documents produced, email to B Roe on Axos information request and obtaining Merchant Service reports, Emails with K Lee and R Shannon on documents produced, read B&V valuation of PQPR Holdings | | | | | |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 0.60 |
| Call with K Lee, RJ Shannon, C Schwartz on current results of FSS document review. Start analysis of PQPR sales and estimated cost of sales. | | | | | |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 0.50 |
| Work on analysis of impact of agreement on EBITDA | | | | | |
| 06/04/2022 | | | | | 1.53 |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 0.50 |
| Complete analysis of impact of agreement on FSS EBITDA | | | | | |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 0.18 |
| Research RMA comparable data for FSS | | | | | |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 0.85 |
| Read David Jones deposition | | | | | |
| 06/05/2022 | | | | | 1.60 |
| | | | | **Total** | **33.08** |

004011

| Client | Project | Task | Roles | Person | Hours |
|--------|---------|------|-------|--------|-------|
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 0.30 |
| | Review additional documents sent by K Lee for review | | | | |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 1.30 |
| | prepare for and meet via Zoom with proposed debtor counsel | | | | |
| 06/06/2022 | | | | | 8.30 |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 6.00 |
| | meeting with B Roe and then Roe, Battaglia, Lee, Shannon, C Schwartz, S Lemmon, A Jones, S Jordan | | | | |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 2.30 |
| | travel time to and from Austin for meeting, 4.5 hours, billed at 50% | | | | |
| 06/07/2022 | | | | | 2.00 |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 0.50 |
| | Meeting with C Schwartz, T Hogge, H Lee to go over initial planning | | | | |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 0.50 |
| | Call with K Lee and S Lemmon | | | | |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 1.00 |
| | Attend to email traffic, calls with B Roe on setting up call with D Jones, Anthony. Review followup from Monday meeting | | | | |
| 06/08/2022 | | | | | 6.10 |
| | | | | **Total** | **33.08** |

| Client | Project | Task | Roles | Person | Hours |
|--------|---------|------|-------|--------|-------|
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 2.30 |
| | Rt travel to FSS for meetings, 1/2 time billed to reach 50% of rates | | | | |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 0.50 |
| | Meet with B Roe and C Schwartz | | | | |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 1.30 |
| | Meet with D Jones and Anthony | | | | |
| Free Speech Systems | [2211013] FSS | Billable Time | Expert, Manager | Marc Schwartz | 2.00 |
| | Work with B Roe and C Schwartz on GL accounting issues and brief C Schwartz on results of meeting with D Jones and Anthony | | | | |
| | | | | **Total** | **33.08** |

004013

# Detailed time report

## Schwartz Associates, LLC

| | |
|---|---|
| Timeframe | **05/01/2022 – 06/10/2022** |
| Total | **38.87 Hours** |
| | **0.00 Uninvoiced billable hours** |

| | |
|---|---|
| Clients | **All clients** |
| 1 Project | **InfoWars Prebankruptcy** |
| Tasks | **All tasks** |
| 1 Team | **Marc Schwartz** |

| Client | Project | Task | Roles | Person | Hours |
|---|---|---|---|---|---|
| 05/01/2022 | | | | | 2.84 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.80 |
| | Read transcript of 4/29/22 status conference | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.40 |
| | Read K Lee, R Shannon, and S Rodgers emails on Friday hearing and open tasks to complete | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.24 |
| | LST Section 2.2, questioned by Judge Lopez | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.20 |
| | prison planet websites | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 1.00 |
| | IW Zoom Meeting with counsel | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.10 |
| | EmIl Prison Planet websites' screen shots to counsel | | | | |

**Total    38.87**

004014

| Client | Project | Task | Roles | Person | Hours |
|---|---|---|---|---|---|
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.10 |
| | Email to Suzy Ginsburg to set up call. | | | | |
| 05/02/2022 | | | | | 4.08 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.80 |
| | Call with S Ginsberg concerning public relations assistance | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.20 |
| | email to attorney group on my discussions with S Ginsberg | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.60 |
| | Review InfoW and Prison Planet license agreements with FSS and email to attorneys | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.98 |
| | Comparing provisions of LST and PSA | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 1.50 |
| | Call with K Lee, R J Shannon, H Lee to discuss impact of Conn. case non-suit on debtors | | | | |
| 05/03/2022 | | | | | 0.80 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.40 |
| | Call with M Ridulfo and reading and forwarding emails relating to Conn. dismissal | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.40 |

|  | | | | **Total** | **38.87** |

004015

| Client | Project | Task | Roles | Person | Hours |
|--------|---------|------|-------|--------|-------|
| | Call with K Lee, JR Shannon and M Ridulfo on Connecticut dismissal | | | | |
| 05/04/2022 | | | | | 2.51 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 1.00 |
| | call with K Lee, RJ Shannon and S Rodgers | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.40 |
| | Call and email to M Boyd concerning bank accounts | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.30 |
| | Call with M Boyd about setting up DIP bank accounts | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.81 |
| | Reading emails from counsel relating to dismissals and May 27 hearing. | | | | |
| 05/05/2022 | | | | | 3.14 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 1.30 |
| | Reviewing SOFAs | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.20 |
| | Refiew IDI report for InfoW and send to Harold to fix others before I review | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.40 |
| | Revieiwing, editing and signing IDI Reports | | | | |
| | | | | **Total** | **38.87** |

004016

| Client | Project | Task | Roles | Person | Hours |
|---|---|---|---|---|---|
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>Review Motions to Dismiss | Billable Time | Expert, Manager | Marc Schwartz | 0.25 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>Zoom conference call with counsel | Billable Time | Expert, Manager | Marc Schwartz | 0.99 |
| 05/06/2022 | | | | | 3.60 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>Call with M Ridulfo on status | Billable Time | Expert, Manager | Marc Schwartz | 0.15 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>Gong thru Docu Sign to open bank account for Info Health | Billable Time | Expert, Manager | Marc Schwartz | 0.29 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>PLR Application to employ | Billable Time | Expert, Manager | Marc Schwartz | 0.34 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>Call with Bob Roe on Budgets for Debtors | Billable Time | Expert, Manager | Marc Schwartz | 0.50 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>email to C Schwartz, H Lee and Bob Roe detailing elements of proposed Debtors five year budgets needed | Billable Time | Expert, Manager | Marc Schwartz | 0.52 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>Reading UST comments on Motion to employ WMS including cross referencing to proposed order | Billable Time | Expert, Manager | Marc Schwartz | 0.30 |

**Total**   **38.87**

004017

| Client | Project | Task | Roles | Person | Hours |
|---|---|---|---|---|---|
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.50 |
| | Zoom Meeting with K Lee and M Ridulfo on addressing change in counsel and needed resources. | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.60 |
| | Call with Ridulfo to discuss PLR pending withdrawal. | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.20 |
| | ReadPLR motion to withdraw, read emails from K Lee and L Parkins concerning possible solution to representation issues raised by withdrawal. | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.20 |
| | Call to K Lee to discuss using PLR personnel as a solution to resource issues raised by PLR withdrawal. | | | | |
| 05/07/2022 | | | | | 0.35 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.35 |
| | Docusign for Axos bank account for IWHealth and InfoW | | | | |
| 05/08/2022 | | | | | 0.90 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.70 |
| | IW Zoom Meeting with R Battaglia, RJ Shannon, K Lee, M Ridulfo and H Lee | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.20 |
| | Call with M Ridulfo | | | | |
| 05/09/2022 | | | | | 0.80 |
| | | | | **Total** | **38.87** |

| Client | Project | Task | Roles | Person | Hours |
|--------|---------|------|-------|--------|-------|
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>Review and file new account documents | Billable Time | Expert, Manager | Marc Schwartz | 0.20 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>ReadingChris Sadiwski demand | Billable Time | Expert, Manager | Marc Schwartz | 0.10 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>getting bank account documents in and done, preparing and sending new W-9s | Billable Time | Expert, Manager | Marc Schwartz | 0.50 |
| 05/10/2022 | | | | | 1.21 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>Email with Axos over IHealth alternative to Operating Agreement, commence completing form and send to S Rodgers for signature | Billable Time | Expert, Manager | Marc Schwartz | 0.28 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>Attention to emails from counsel related to upcoming status conference and banking | Billable Time | Expert, Manager | Marc Schwartz | 0.40 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>Working on proposed five year financial plan for debtors | Billable Time | Expert, Manager | Marc Schwartz | 0.53 |
| 05/11/2022 | | | | | 1.86 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy<br><br>Read draft stipulation | Billable Time | Expert, Manager | Marc Schwartz | 0.30 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.20 |
| | | | | **Total** | **38.87** |

004019

| Client | Project | Task | Roles | Person | Hours |
|--------|---------|------|-------|--------|-------|
| | Attention to emails concerning outstanding claims, resolution of Fontaine claim, scheduling a meeting. | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 1.00 |
| | Conference call with counsel., Bob Roe and FA | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.36 |
| | Reading new draft of Stipulation | | | | |
| 05/13/2022 | | | | | 2.30 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.50 |
| | review PLR application to employ | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.20 |
| | Review KSLPLLC engagement letter | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.30 |
| | Review of final PLR application to employ and sign | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.80 |
| | Attend status conference in Judge Lopez' court room | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.50 |
| | Review with counsel expected items to be discussed at status conference | | | | |
| 05/14/2022 | | | | | 0.50 |
| | | | | **Total** | **38.87** |

004020

| Client | Project | Task | Roles | Person | Hours |
|--------|---------|------|-------|--------|-------|
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.50 |
| | Log onto Youngevity account 100921162, attempted to log onto 1942701 without success, read statements of account activity sent by RJ Shannon. Requested log in info for account 1942701 | | | | |
| 05/17/2022 | | | | | 3.88 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 1.40 |
| | call with counsel to discuss preparation for upcoming hearings | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.50 |
| | Prepare funding request for Debtors and transmit to B Roe | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.20 |
| | Working on opening Prison Planet bank account and activating IWHealth account | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.40 |
| | Axos document request on Prison Planet | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.20 |
| | Call with R Battaglia | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.30 |
| | Review current draft of Texas Stipulation | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.24 |
| | Application to employ KSLLLP | | | | |
| | | | | **Total** | **38.87** |

004021

| Client | Project | Task | Roles | Person | Hours |
|--------|---------|------|-------|--------|-------|
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.64 |
| | Reading draft motion to dismiss response | | | | |
| 05/18/2022 | | | | | 2.74 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.30 |
| | Discuss with K Lee alternative solutions to Debtors bankruptcies | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.40 |
| | Read proposed changes from M Beatty adn provide comment to K Lee | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.30 |
| | Meeting with C Schwartz and H Lee to discuss events in case including motion for extension on Motion to Dismiss hearing | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.17 |
| | Read latest draft of Motion to Extend | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.25 |
| | Reading drafts of stipulations as of 3pm today | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.56 |
| | Review and sign IDI reports | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.34 |
| | Review long form stipulations for Texas Plaintiffs | | | | |
| | | | | **Total** | **38.87** |

004022

| Client | Project | Task | Roles | Person | Hours |
|--------|---------|------|-------|--------|-------|
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.42 |
| | Read revised stipulation from M Beatty | | | | |
| 05/19/2022 | | | | | 2.20 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.20 |
| | Final review and sign application to employ KSLPLLC | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 1.00 |
| | Status call with attorneys | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 1.00 |
| | Hearing on motion for continuation on Motion to Dismiss | | | | |
| 05/20/2022 | | | | | 3.07 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 1.40 |
| | Status call to introduce Howard Magaliff to case and to discuss developments | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.15 |
| | Review IDR in preparation for initial debtor meeting | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 1.30 |
| | ID Meeting | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.22 |
| | | | | **Total** | **38.87** |

004023

| Client | Project | Task | Roles | Person | Hours |
|--------|---------|------|-------|--------|-------|
| | Ridulfo engagement documents | | | | |
| **05/31/2022** | | | | | 1.03 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.40 |
| | Review of RJ Shannon and K Lee drafts of Motion to Dismiss case | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.30 |
| | Review revised Stipulation and Agreed Order Dismissing Cases | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.33 |
| | Respond to B Roe email on amounts owed. | | | | |
| **06/01/2022** | | | | | 0.10 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.10 |
| | Review and edit motion to dismiss | | | | |
| **06/07/2022** | | | | | 0.60 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.20 |
| | Review mors | | | | |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.40 |
| | Work up final funding request | | | | |
| **06/09/2022** | | | | | 0.36 |
| Litigation Settlement Trust | [2211008] InfoWars Prebankruptcy | Billable Time | Expert, Manager | Marc Schwartz | 0.36 |
| | | | | **Total** | **38.87** |

004024

| Client | Project | Task | Roles | Person | Hours |
|--------|---------|------|-------|--------|-------|
|  | Call with RJ on hearing tomorrow on motion to dismiss |  |  |  |  |

|  |  |  |  | **Total** | **38.87** |

004025

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

### SANDY HOOK FAMILIES'
### WITNESS AND EXHIBIT LIST

| Judge | Hon. Christopher M. Lopez |
|---|---|
| Hearing Date | Tuesday, September 20, 2022 |
| Hearing Time | 1:00 p.m. (CST) |
| Party's Name | Sandy Hook Families |
| Attorney's Names | Ryan Chapple, Randy Williams (Connecticut Plaintiffs) <br> Avi Moshenberg, Jarrod Martin (Texas Plaintiffs) |
| Attorney's Phone | 512-477-5000 (Ryan Chapple and Randy Williams) <br> 713-337-5580 (Avi Moshenberg) <br> 713-356-1280 (Jarrod Martin) |
| Nature of Proceeding | Schwartz Employment Application [Dkt. 83] <br> Shannon & Lee Employment Application [Dkt. 85] |

Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (collectively, the "Texas Plaintiffs") and David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "Connecticut Plaintiffs" and together, the "Sandy Hook Families") hereby submit this Witness and Exhibit List in connection with the hearing on the *Application of Debtor for an Order (A) Authorizing Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing Employment of Staff of Schwartz Associates, LLC in Discharge of Duties as Chief Restructuring Officer, and (C) Granting Related Relief* (the "Schwartz Application") [Dkt. 83] and the *Application*

*of Debtor for an Order (A) Authorizing Employment of Shannon & Lee LLP as Bankruptcy Co-Counsel for the Debtor, and (B) Granting Related Relief* (the "S&L Application") [Dkt. 85] to be held on Tuesday, September 20, 2022 at 1:00 p.m. (Central Standard Time):

The Sandy Hook Families reserve the right to supplement, amend, or revise this Witness and Exhibit List at any time prior to the hearing.  The Sandy Hook Families reserve the right to supplement the Witness and Exhibit List with new witnesses and additional exhibits.  Further, the Sandy Hook Families reserve the right to use any exhibits presented by any other party and to ask the Court to take judicial notice of any document.  The Sandy Hook Families further reserve the right to introduce exhibits previously admitted.

## WITNESS LIST

The Sandy Hook Families may call the following witnesses at the hearing:

1. W. Marc Schwartz, proposed Chief Restructuring Officer of Debtor;
2. Kyung S. Lee, proposed bankruptcy co-counsel of Debtor;
3. Any witness necessary to rebut the testimony of any witness called or designated by any other parties;
4. Any witness listed or called by any other party.

## EXHIBIT LIST

The Sandy Hook Families may offer for admission into evidence any of the following exhibits at the hearing:

| No. | Description | Offered | Objection | Admitted/ Not Admitted | Disposition |
|-----|-------------|---------|-----------|------------------------|-------------|
|     | Any document or pleading filed in the above-captioned case |  |  |  |  |
|     | Any exhibits identified or offered by any other party |  |  |  |  |

| Any exhibits necessary for impeachment and/or rebuttal purposes | | | | |
|---|---|---|---|---|

Respectfully submitted this 16th day of September 2022.

MCDOWELL HETHERINGTON LLP

Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, Texas 77002
D: 713-337-5580
F: 713-337-8850
E: Avi.Moshenberg@mhllp.com

*Counsel for the Texas Plaintiffs*

and

CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, PC

By: */s/Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

*Bankruptcy Counsel for the Texas Plaintiffs*

By: */s/ Ryan Chapple*
Ryan E. Chapple
State Bar No. 24036354
Email: rchapple@cstrial.com
CAIN & SKARNULIS PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile

and

004028

Randy W. Williams
State Bar No. 21566850
Email: rww@bymanlaw.com
**BYMAN & ASSOCIATES PLLC**
7924 Broadway, Suite 104
Pearland, Texas 77581
281-884-9262

***Bankruptcy Counsel for Connecticut Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Witness and Exhibit List has been served on counsel for Debtor, Debtor, and all parties receiving or entitled to notice through CM/ECF on this 16th day of September 2022.

*/s/ Ryan E. Chapple*
Ryan E. Chapple

004029