## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 22-60043 |
| FREE SPEECH SYSTEMS, LLC, | § | |
| | § | Chapter 11 (Subchapter V) |
| Debtor | § | |

### SANDY HOOK FAMILIES'
### WITNESS AND EXHIBIT LIST

| Judge | Hon. Christopher M. Lopez |
|---|---|
| Hearing Date | Monday, November 21, 2022 |
| Hearing Time | 2:00 p.m. (CST) |
| Party's Name | Sandy Hook Families |
| Attorney's Names | Ryan Chapple (Connecticut Plaintiffs) <br> Avi Moshenberg, Jarrod Martin (Texas Plaintiffs) |
| Attorney's Phone | 512-477-5000 (Ryan Chapple) <br> 713-337-5580 (Avi Moshenberg) <br> 713-356-1280 (Jarrod Martin) |
| Nature of Proceeding | Cash Collateral Motion [Dkt. 6] |

Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (collectively, the "Texas Plaintiffs") and David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "Connecticut Plaintiffs" and together, the "Sandy Hook Families") hereby submit this Witness and Exhibit List in connection with the hearing on (i) *Debtor's Emergency Motion for an Interim and Final Orders (I) Authorizing the Use of Cash Collateral Pursuant to Sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(B) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Cash Collateral Motion")

006046

[Dkt. 6]; to be held on Monday, November 21, 2022 at 2:00 p.m. (Central Standard Time):

The Sandy Hook Families reserve the right to supplement, amend, or revise this Witness and Exhibit List at any time prior to the hearing.  The Sandy Hook Families reserve the right to supplement the Witness and Exhibit List with new witnesses and additional exhibits.  Further, the Sandy Hook Families reserve the right to use any exhibits presented by any other party and to ask the Court to take judicial notice of any document.  The Sandy Hook Families further reserve the right to introduce exhibits previously admitted.

### WITNESS LIST

The Sandy Hook Families may call the following witnesses at the hearing:

1. Patrick Magill, Chief Restructuring Officer of Debtor;
2. W. Marc Schwartz, former proposed Chief Restructuring Officer of Debtor;
3. Any witness necessary to rebut the testimony of any witness called or designated by any other parties;
4. Any witness listed or called by any other party.

### EXHIBIT LIST

The Sandy Hook Families may offer for admission into evidence any of the following exhibits at the hearing:

| No. | Description | Offered | Objection | Admitted/ Not Admitted | Disposition |
|-----|-------------|---------|-----------|------------------------|-------------|
| 1. | Debtor's Emergency Motion for an Interim and Final Orders (I) Authorizing the Use of Cash Collateral Pursuant to Sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre- | | | | |

006047

| | | | | | |
|---|---|---|---|---|---|
| | Petition Secured Lender [Dkt. 6] | | | | |
| 2. | Declaration of W. Marc Schwartz in Support of Voluntary Petition and First Day Motions [Dkt. 10] | | | | |
| 3. | Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [Dkt. 41] | | | | |
| 4. | Order Modifying Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [Dkt. 64] | | | | |
| 5. | Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [Dkt. 98] | | | | |
| 6. | Third Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [Dkt. 151] | | | | |
| 7. | Fourth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [Dkt. 238] | | | | |
| 8. | Fifth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [Dkt. 258] | | | | |
| | Any document or pleading filed in the above-captioned case | | | | |
| | Any exhibits identified or offered by any other party | | | | |
| | Any exhibits necessary for impeachment and/or rebuttal purposes | | | | |

006048

Respectfully submitted this 17th day of November 2022.

McDowell Hetherington LLP

Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, Texas 77002
D: 713-337-5580
F: 713-337-8850
E: Avi.Moshenberg@mhllp.com

*Counsel for the Texas Plaintiffs*

and

Chamberlain, Hrdlicka, White,
Williams & Aughtry, PC

By: */s/Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

*Bankruptcy Counsel for the Texas Plaintiffs*

By: */s/ Ryan Chapple*
Ryan E. Chapple
State Bar No. 24036354
Email: rchapple@cstrial.com
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile

*Bankruptcy Counsel for Connecticut Plaintiffs*

006049

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Witness and Exhibit List has been served on counsel for Debtor, Debtor, and all parties receiving or entitled to notice through CM/ECF on this 17th day of November 2022.

                                        */s/ Ryan E. Chapple*
                                        Ryan E. Chapple

006050

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

IN RE:                              §              Case No. 22-60043
                                    §
FREE SPEECH SYSTEMS, LLC,           §              Chapter 11 (Subchapter V)
                                    §
        Debtor                      §

# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 22- 60043 |
| | ) | |
| FREE SPEECH SYSTEMS, LLC, | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED, IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 14 DAYS TO ANSWER, IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

RELIEF IS REQUESTED NOT LATER THAN AUGUST 3, 2022.

The above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS"), in the above-referenced chapter 11 case, hereby files this emergency motion (the "Motion") seeking an order from the Court (i) authorizing the use of cash collateral pursuant to Sections 105, 361, and 363

of the Bankruptcy Code and Bankruptcy Rule 4001(b); and (ii) granting adequate protection to the Debtor's pre-petition secured lenders. In support of the Motion, the Debtor submits and incorporates by reference the *Declaration of Marc Schwartz in Support of First Day Motions* (the "First Day Declaration"), filed concurrently herewith. In further support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1. On July 29, 2022 (the "Petition Date"), the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of Title 11 of the United States Code §§ 101, *et seq.* (the "Bankruptcy Code").

2. The Debtor continues in the possession of its property and is operating and managing its businesses as debtor and debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code.

3. No request for a trustee or examiner has been made. No statutory committee of creditors has been appointed.

4. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory bases for the relief sought in this Motion are 11 U.S.C. §§ 105, 361, and 363 and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure.

## FSS' BACKGROUND[1]

6. Alex Jones began his career in the broadcasting industry fresh out of high school. Austin Public Access provided the forum for Alex's first broadcast. In 1996 he transitioned to talk

---

[1] Additional factual background and information regarding the Debtor and its operations is set forth in the *Declaration of W. Marc Schwartz in Support of Voluntary Petition and First Day Motions*

006053

radio. After leaving talk radio in 1999, he started broadcasting over the internet with a handful of employees. Revenue was largely generated from advertising and the sale of books, T-shirts, and videos.

7.    What began as a family business continued to expand and in 2007 FSS was formed. The business continued to grow, adding a full blown studio, and employing over 60 people. By 2013, FSS started selling dietary supplements to its growing listener base.

8.    Despite the rapid growth in the scale, diversity of operations and revenue, FSS remained a family run business and did not retain professional management or install professional management systems.

9.    FSS is presently engaged in the business of producing and syndicating Jones' radio and video talk shows and selling products targeted to Jones' loyal fan base via the Internet. Today, FSS produces Alex Jones' syndicated news/talk show (The Alex Jones Show) from Austin, Texas, which airs via the Genesis Communications Network on over 100 radio stations across the United States and via the internet through websites including Infowars.com.

10.    On its Infowars.com[2] website today, FSS makes available to customers dietary supplements, ranging from Vitamin D3 Gummies, Ultimate Immune Support Pack, Pollen Block, and other health products, including Tea Tree Shampoo. The website also has available books, t-shirts and other products Jones advertises during his radio talk show. The vast majority of FSS revenues comes from sales of dietary supplements which have traditionally been supplied by PQPR Holdings Limited, LLC ("PQPR"), an affiliated entity.

11.    As of July 1, 2022, FSS employed a workforce of 58 individuals, the majority of whom had direct reporting relationship to Alex Jones. In one building in Austin, Texas, FSS has four studios.

---

[2] FSS licenses the Inforwars.com domain and trademark for InfoWars from InfoW, LLC.

006054

This is the building where Jones produces his shows, including The Alex Jones Show. An adjacent building contains administrative offices and customer support. In a separate location in Austin, Texas, FSS has a building where warehousing and product sales fulfillment takes place. All of the studios and offices are in leased space.

12.     FSS has a unique audience that is highly loyal to Alex Jones and purchases products based on Alex Jones' credibility. Product sales from Infowars.com stores are a significant source of revenue for FSS. Approximately 80% of FSS' revenue is derived from product sales. Of the remainder, 11% is historically from advertising and the balance from a variety of sources.

13.     Through its online sales channel, FSS currently sells (i) dietary supplements purchased by PQPR, (ii) dietary supplements purchased by FSS, and (i) books, DVD's, t-shirts, and other merchandise purchased by FSS.  The allocation of proceeds from the sale of products after credit card processing charges varies depending upon which of the above categories the product falls under, PQPR receives a fee for of ten percent of the net proceeds (the proceeds from the sale of the products less processing charges, as a royalty for introducing the supplement and vitamin market to FSS.

14.     Due to the content of Alex Jones' shows, Jones and FSS have faced an all-out ban of Infowars from mainstream online spaces. Shunning from financial institutions and banning Jones and FSS from major tech companies began in 2018. Today, Facebook, Twitter, YouTube, Spotify, PayPal, and Apple have banned Infowars and Jones. Since being deplatformed by most mainstream commercial entities in 2018, FSS has had to operate in a harsh and unfriendly commercial environment.

15.     FSS purchased to sell on its website two categories of products: (a) dietary supplements ("Supplements"), and (b) books, DVDs, t-shirts, and other merchandise ("Non-Supplements"). FSS relied on PQPR as no other vendor would supply the Supplements for Jones to

006055

advertise on his shows. PQPR ordered and paid for Supplements, which it marked up, and then sold to FSS. Jones would publicize the Supplements on his show and FSS and/or PQPR fulfilled the orders to ship to its customers.

16.     As to Non-Supplements, FSS purchased the products, sold them, and fulfilled the sale through its own employees from its warehouse in Austin. Depending on whether a Supplement or Non-Supplement was sold, FSS and PQPR split the cost of the sale on an agreed to formula.

17.     Since 2018 FSS has had difficulty finding third parties willing and able to fulfill product sales.  In the past, both FSS and PQPR attempted to provide fulfillment services for product sales.  Recently, FSS employed a fulfillment company to take over this function. All former FSS employees responsible for fulfillment have been hired by this company.  The fulfillment company charges FSS a flat fee per order regardless of size.  Historically, fulfillment has cost an average of ten percent of sales, without considering payroll, the new agreement is estimated to cost sixteen percent of sales.

## PQPR INDEBTEDNESS

18.     As discussed above, PQPR ordered and paid for Supplements which it marked up and then sold to FSS. As a result of FSS's inability to pay PQPR in full for the PQPR merchandise over several years, FSS became indebted to PQPR in a significant amount by 2020. The parties memorialized the indebtedness between the parties in 2020.

19.     The indebtedness to PQPR had accrued over a period of years from the sale of PQPR products through the Debtor's internet platform, generated by the Debtor and Alex Jones' sponsorship of those products.  The PQPR Note balance represents the unpaid share of the proceeds from product sales by PQPR to FSS over a four year period for which the Debtor did not fully remit the proceeds to PQPR.

006056

20.     On or about August 13, 2020, the Debtor executed that certain Promissory Note in favor of PQPR in the original principal amount of $29,588,000.00 (the "PQPR Note"). A security agreement of the same date granted PQPR a security interest in all of the Debtor's personal property assets, including but not limited to the Debtor's tangible and intangible property, accounts, and proceeds derived from those assets (the "PQPR Security Agreement"). PQPR filed a UCC-1 financing statement with the Texas Secretary of State that on November 18, 2020.

21.     The PQPR Security Agreement secures the obligations under the PQPR Note and any future advances owing by the Debtor to PQPR.  Specifically, "Obligations" is defined in the PQPR Security Agreement to include "any and all other obligations of Debtor to [PQPR] of any kind or character, now owed or hereafter arising."

22.     Subsequent to the date of the PQPR Note, the Debtor accrued additional indebtedness to PQPR representing a portion of PQPR's share of the proceeds from product sales from the date of the PQPR Note through November 10, 2021, for which the Debtor did not fully remit the required proceeds to PQPR.  The Debtor executed a second promissory note ("Second PQPR Note" and together with the PQPR Note, collectively the "PQPR Notes") in the amount of $25,300,000.  The Second PQPR Note is also secured by the PQPR Security Agreement.

23.     As of the Petition Date, $53,655,082.29 of principal and $11,794,19 of interest are due and owing under the PQPR Notes.

## **RELIEF REQUESTED**

24.     Cash collateral is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of

6

rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title." [6] 11 U.S.C. § 363(a).

25.    11 U.S.C. § 363(c)(2) states as follows:

> The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>
> (A)    each entity that has an interest in such cash collateral consents; or
> (B)    the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

26.    The Debtor is in possession of certain funds which are not proceeds of PQPR's collateral. Accordingly, the Debtor does not concede that those funds constitute cash collateral of PQPR. Nevertheless, net proceeds received by the Debtor from online merchandise sales including PQPR products are PQPR's cash collateral.

27.    The Debtor requires the use of cash collateral to pay reasonable and necessary operating expenses, including, but not limited to, employee payroll, rent, utilities, inventory purchases, lease payments, marketing, taxes, and insurance. Those uses required in the next fourteen (14) days from the date of the emergency hearing are set forth on the budgets attached hereto as **Exhibit A** and incorporated herein by reference. The Debtor's proposed emergency use of cash collateral is necessary to preserve the value of the Debtor's estate for the benefit of all creditors, including the PQPR, and any other secured creditors purporting to hold an interest in the Debtor's cash collateral during the first fourteen (14) days of the Chapter 11 Cases (the "Interim Period"). The Debtor also requests that continued use of cash collateral is equally necessary to preserve the value of the Debtor's assets and rights of all of the constituencies with claims or interests in this Chapter 11 Case.

7

28.     Section 363 of the Bankruptcy Code authorizes a debtor to use cash collateral if those parties having an interest in such cash collateral consent or the court authorizes the use. *See* 11 U.S.C. § 363(c)(2). The use of cash collateral, however, may be prohibited or conditioned, upon proper request, as necessary to adequately protect any interest in cash collateral. *See* 11 U.S.C. §363(e).

29.     A court may authorize the use of cash collateral upon showing that those with an interest in the cash collateral are adequately protected. *In re Las Torres Dev., L.L.C.*, 413 B.R. 687, (Bankr. S.D. Tex. 2009) ("in order for this Court to authorize the use of cash collateral, the Lender must be adequately protected); *In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) (A debtor requesting court approval to use cash collateral has the burden of proof as to the issue of "adequate protection".) Adequate protection requires examination of the creditor(s)' aggregate collateral position, not simply protection of its lien on cash. Adequate protection may be provided by granting replacement or additional liens "to the extent [that the use of cash collateral] results in a decrease in the value of [an] entity's interest in property." *See* 11 U.S.C. § 361(2). Authorizing a debtor to use cash collateral on an interim basis is appropriate where, as here, continuing the business as a going concern will cause the generation of future revenues upon which the secured lender is granted replacement liens. *See, e.g., In re Neise, Inc.,* 16 B.R. 600 (Bankr. D. Fla. 1981); *In re Certified Corp.*, 51 B.R. 768 (Bankr. D. Haw. 1985); *In re Post- Tron Systems, Inc.*, 106 B.R. 345 (Bankr. D.R.I. 1989).

30.     By authorizing the Debtor to use cash collateral, the Court will place the Debtor in a position to fund its operating expenses and to operate as a going concern for the immediate future. The Debtor needs to use cash collateral in order to, *inter alia*, pay its employees, suppliers, and meet other on-going business obligations. Without the authority to use cash collateral, the Debtor will be unable to fund its business operations in a manner that will allow the Debtor to continue to operate, to the detriment of *all* of the Debtor's creditors, including the lenders referred to herein and the pool

006059

of unsecured creditors. Furthermore, without the ability to fund continuing operations, the Debtor and its estate will suffer immediate and irreparable harm. For example, employees will not continue to provide services if they are not paid the wages for which they have already worked, and vendors will not continue to provide necessary services or supplies if they are not paid. Therefore, the Debtor seeks the emergency relief requested herein.

31.     Attached to this Motion is a proposed form of the Interim Cash Collateral Order (the "Interim Cash Collateral Order") that authorizes the Debtor's use of cash collateral.

32.     The proposed offer of adequate protection on an interim basis is set forth in the attached proposed Interim Cash Collateral Order and incorporated by reference herein for the purpose of setting forth the proposed offer of adequate protection for lenders. It includes replacement liens solely to the extent of any validly perfected, unavoidable security interest as of the Petition Date, and a priority administrative claim to the extent of the diminution of value of each lender's collateral, if any, and failure of other forms of adequate protection provided by the Debtor. As described further in the proposed Interim Cash Collateral Order, the proposed replacement liens and priority administrative claim shall be subject to a carve-out for unpaid fees owed to the clerk of this Court or the United States Trustee, and court-approved administrative expense claims of estate professionals.

33.     The Debtor believes that the terms of the proposed Interim Cash Collateral Order as set forth above are fair and reasonable under the circumstances. The Debtor asserts that the value of PQPR's cash collateral will not diminish as a result of the use of cash in this case. The value of PQPR's interest in cash may fluctuate, but such value should not diminish, other than minimally, over the next fourteen (14) days, the period of interim relief requested.

34.     The Debtor believes that PQPR is entitled to the protections set forth in the proposed Interim Cash Collateral Order. The adequate protection provisions have been drafted to provide

protection without taking undue or inappropriate value from the estate or its unsecured creditors. Given that the interests of the lenders will be adequately protected, it is in the best interest of the Debtor, its estate, and all of their creditors to be able to continue operations during the Interim Period and for the Debtor to be authorized to use cash collateral as requested herein.

35.     Therefore, the Debtor respectfully requests that it be authorized to use cash collateral as proposed herein for the purposes of paying necessary business expenses as allowed by Section 363 of the Bankruptcy Code, and that the Court grant PQPR a replacement lien on post-petition assets, as allowed by Sections 361, and/or 363 of the Bankruptcy Code, consistent with the terms and provisions contained in this Motion. The Debtor requests that this relief be granted on both an interim and final basis.

## RESERVATION OF RIGHTS

36.     The Debtor reserves any and all rights in connection with the Heslin\Lewis Suit. Nothing contained herein shall operate as a waiver of any of the Debtor's claims, rights or remedies.

## NO PRIOR REQUEST

37.     No previous request for the relief sought herein has been made to this Bankruptcy Court or any other court.

[*Remainder of Page Intentionally Left Blank*]

10

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests the Court (i) authorize the use of cash collateral pursuant to Sections 105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b); (ii) grant adequate protection to the pre-petition secured lenders; and (iii) grant such other and further relief as the Court may deem proper.

Respectfully submitted this 29th day of July, 2022.

<div align="right">

**LAW OFFICES OF RAY BATTAGLIA, PLLC**

/s/*Raymond W. Battaglia*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Counsel to the Debtor and Debtor-In-Possession*

-and-

**SHANNON & LEE LLP**

/s/*Kyung S. Lee*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

</div>

<div align="center">

**CERTIFICATE OF ACCURACY**

</div>

I hereby certify that the forgoing statements are true and accurate to the best of my knowledge and belief. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

<div align="right">

/s/ Raymond W. Battaglia

</div>

006062

## CERTIFICATE OF SERVICE

I hereby certify that on the date of filing, a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service, (b) by U.S.P.S. first class mail on all parties indicated in the attached service list, and (c) the following parties by email:

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Cliff Walson
Walsont Bowlin Callendar, PLLC
4199 San Filipe Street, STE 300
Houston, TX 77027
cliff@wbctrial.com

Jon Maxwell Beatty
The Beatty Law Firm PC
1127 Eldridge Pkwy, Suite 300, #383
Houston, TX 77077
max@beattypc.com

/s/ Raymond W. Battaglia

## USPS Service List

Twenty Largest Unsecured Creditors

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

eCommerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

006064

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

Parties Claiming Interest or Lien Affected

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

Parties Filing Notice of Appearance

N/A

Subchapter V Trustee

N/A (Not Yet Appointed)

U.S. Trustee

Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

Additional Notice Parties

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

006065

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | |
|---|---|
| In re: | ) Case No. 22- __60043__ |
| | ) |
| FREE SPEECH SYSTEMS, LLC, | ) Chapter 11 (Subchapter V) |
| | ) |
| Debtor. | ) |
| | ) |

## INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of this interim order (this "Order") pursuant to Sections 105, 361, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court, having considered the Motion, and having held an interim hearing on the Motion on August ___, 2022 (the "Interim Hearing"), and having considered the evidence presented or proffered and the statements and representations of the parties on the record at the Interim Hearing; and all objections, if any, to the entry of this Interim Order having been resolved or overruled; and after due deliberation and consideration and sufficient cause appearing therefor;

1. The Chapter 11 Case. On July 29, 2022 (the "Petition Date") the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11

of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas (this "Court").

2. <u>Debtor-in-Possession</u>. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code. To date, no trustee or examiner has been appointed in this Case. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

3. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and the Local Rules of this Court (the "Local Rules").

4. <u>Committee Formation</u>.      To date, no official committee (a "Committee") of unsecured creditors, equity interest holders, or other parties in interest has been appointed in the Case.

5. <u>Notice</u>. On July 29, 2022, the Debtor served copies of the Motion and notice of the Interim Hearing to all creditors and parties in interest entitled to such notice in compliance with Bankruptcy Rules 2002, 4001, 9014, and the Local Rules, including: (i) the Office of the United States Trustee for this District, (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtor's estate, (iii) PQPR Holdings Limited, LLC Trust ("PQPR"), and (vi) any other secured parties of record. Under the circumstances, such notice of the Interim Hearing and the emergency relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rule

2

4001 and the Local Rules, and no other or further notice of the Interim Hearing or the relief granted in this Interim Order is necessary or required.

6.   <u>Immediate Need for Use of Cash Collateral</u>.  The Debtor asserts that an immediate and critical need exists for the Debtor to use Cash Collateral in order to continue the operation of its business. Without such use of Cash Collateral, the Debtor asserts that it will not be able to pay post-petition direct operating expenses and obtain goods and services needed to carry on its business in a manner that will avoid irreparable harm to the Debtor's estate. The Debtor further asserts that its ability to use Cash Collateral is necessary to preserve and maintain the going concern value of the Debtor's estate.

7.   <u>Conditional Consent to Use of Cash Collateral</u>. The Debtor seeks authorization to use Cash Collateral to pay the Debtor's ordinary and necessary operating expenses set forth in the budget attached to the Motion as Exhibit A (the "<u>Budget</u>") for the period (the "<u>Interim Period</u>") from the Petition Date through and including August 15, 2022 (the "<u>Termination Date</u>").

8.   <u>Good Cause/Fair and Reasonable Terms</u>. Good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the business and operations of the Debtor and permit the Debtor to maintain the going concern value of its business. The use of Cash Collateral authorized hereunder is necessary, essential, and appropriate and is in the best interest of, and will benefit, the Debtor, its creditors, and the Debtor's bankruptcy estate as it will, among other things, provide the Debtor with the necessary liquidity to (i) avoid immediate and irreparable harm to the Debtor and its bankruptcy estate; and (ii) preserve and maximize the value of the Debtor's business and assets. The terms and conditions of the use of Cash Collateral and the

006068

security interests, liens, rights, and priorities granted to the lenders hereunder are fair and appropriate under the circumstances.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.    <u>Motion Granted</u>. The Motion is hereby granted on an interim basis as set forth herein. Any objections to the entry of this Order that have not been previously resolved or withdrawn are hereby overruled on their merits.

2.    <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.    <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>").  All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.    <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral to pay the items set forth in the Budget, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the

4

006069

overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.      <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

6.      <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

7.      <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

8.      <u>Adequate Protection – Replacement Liens</u>.       As adequate protection for any diminution in value of each of the Pre-Petition Lender's interest in the Debtor's collateral, if any, including Cash Collateral, resulting from the imposition of the automatic stay with respect to the Collateral and/or the Debtor's use, sale or lease of the Collateral during the Case (the "<u>Diminution in Value</u>"), the Pre-Petition Lender is hereby granted, effective  as of the Petition Date, valid, binding, enforceable, and automatically perfected liens (the "<u>Replacement Liens</u>") in  all  currently owned or hereafter acquired property and assets of the Debtor, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising (excluding

5

avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code), and all proceeds and products of the foregoing (collectively, the "Adequate Protection Collateral"). The Replacement Liens granted pursuant to this Order shall have the same priority as each of the Pre-Petition Lender's properly perfected unavoidable pre-petition liens but shall be subject to the Carve Out.

9.    Adequate Protection – Priority Administrative Claim.  As additional partial adequate protection for the Debtor's use of Cash Collateral, to the extent of any Diminution in Value and a failure of the other adequate protection provided by this Order the pre-petition lenders shall have an allowed priority administrative expense claim in this Case and any successor case as provided in and to the fullest extent allowed by Sections 503(b) and 507(b) of the Bankruptcy Code and otherwise (the "Adequate Protection Priority Claim").

10.    Carve Out. The Replacement Liens and Adequate Protection  Priority Claim granted herein shall be subject to (a) unpaid fees payable to the Clerk of the Bankruptcy Court or the United States Trustee; (b) subject to the Budget, court-approved administrative expense claims of estate professionals, employed pursuant to order of this Court (collectively, "Estate Professionals"),  for incurred but unpaid fees, expenses and other costs (all such carve-out amounts referenced above, collectively, the "Carve Out").

11.    Subsequent Modification of Order. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

006071

12.    <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on August _____ 2022, at __:___.m. Central time.  Objections to the entry of a final order approving the Motion shall be filed and served on counsel for the Debtor and pre- petition lenders not later than 4:00 p.m. Central time on August _____ 2022.

Dated: August ___, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

7

**EXHIBIT A**

**13-Week  Budget**

**Free Speech Systems LLC**

## Forecasted 13 Week Cash Flow Budget

Between July 30, 2022 and October 28, 2022

| | 1 07/30/2022–08/05/2022 | 2 08/06/2022–08/12/2022 | 3 08/13/2022–08/19/2022 | 4 08/20/2022–08/26/2022 | 5 08/27/2022–09/02/2022 | 6 09/03/2022–09/09/2022 | 7 09/10/2022–09/16/2022 | 8 09/17/2022–09/23/2022 | 9 09/24/2022–09/30/2022 | 10 10/01/2022–10/07/2022 | 11 10/08/2022–10/14/2022 | 12 10/15/2022–10/21/2022 | 13 10/22/2022–10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | |
| Product Sales | $595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | $7,741,357.16 |
| Advertising | | | | 480,166.46 | | | | 480,166.46 | | | | | 480,166.46 | 1,440,499.38 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 40,836.21 |
| **Total Income** | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 9,222,690.75 |
| **Selling & Product Costs** | | | | | | | | | | | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (990,017.27) |
| Repay PQPR Inventory | | (250,000.00) | | (500,000.00) | | | | | | | | | | (750,000.00) |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (348,361.07) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (102,853.59) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (1,238,617.15) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (309,654.29) |
| eCommerce Store Maintenance | (27,270.00) | | | | (27,270.00) | | | | (27,270.00) | | | | | (81,810.00) |
| Texas Sales Tax | (5,337.87) | | | | (5,337.87) | | | | (5,337.87) | | | | | (16,013.61) |
| **Total Cost of Goods Sold** | (262,569.67) | (479,961.80) | (229,961.80) | (729,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (229,961.80) | (3,837,326.97) |
| **Operating Expenses** | | | | | | | | | | | | | | |
| **Advertising & Promotion** | | | | | | | | | | | | | | |
| Advertising & Promotion | (3,041.98) | | | | (3,041.98) | | | | (3,041.98) | | | | | (9,125.93) |
| Print Media | (3,000.00) | | | | (3,000.00) | | | | (3,000.00) | | | | | (9,000.00) |
| Radio Show Advertising | (11,500.00) | | | | (11,500.00) | | | | (11,500.00) | | | | | (34,500.00) |
| **Total Advertising & Promotion** | (17,541.98) | | | | (17,541.98) | | | | (17,541.98) | | | | | (52,625.93) |
| **Computer/IT/IP Expense** | | | | | | | | | | | | | | |
| Internet & TV services | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | | (11,073.89) |
| Software License Fees | (140.80) | | | | (140.80) | | | | (140.80) | | | | | (422.40) |
| Server Hosting Service | (28,595.13) | | | | (28,595.13) | | | | (28,595.13) | | | | | (85,785.40) |
| CDN Video Cloud Storage | (55,728.00) | | | | (55,728.00) | | | | (55,728.00) | | | | | (167,184.00) |
| Satellite Service | (137,282.93) | | | | (137,282.93) | | | | (137,282.93) | | | | | (411,848.78) |
| Imaging License Fee | (9,201.25) | | | | (9,201.25) | | | | (9,201.25) | | | | | (27,603.75) |
| Software & Apps | (5,000.00) | | | | (5,000.00) | | | | (5,000.00) | | | | | (15,000.00) |
| Website Hosting | | | (266.50) | | | | (266.50) | | | | (266.50) | | | (799.50) |
| **Total Computer/IT/IP Expense** | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | | (719,717.72) |
| Insurance | (2,166.50) | | | | (2,166.50) | | | | (2,166.50) | | | | | (6,499.50) |
| **Office & Administrative Expense** | | | | | | | | | | | | | | |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (596.74) |
| Equipment Rental | (1,989.90) | | | | (1,989.90) | | | | (1,989.90) | | | | | (5,969.70) |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (27.31) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (3,645.97) |
| **Total Office & Administrative Expense** | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (328.46) | (10,239.71) |
| Outsourced Services | (45,980.00) | | | | (45,980.00) | | | | (45,980.00) | | | | | (137,940.00) |
| Consulting Services | (22,670.00) | | (12,000.00) | | (22,670.00) | | (12,000.00) | | (22,670.00) | | (12,000.00) | | | (104,010.00) |
| **Utilities** | | | | | | | | | | | | | | |
| Electricity | | | (5,107.63) | | | | (5,107.63) | | | | (5,107.63) | | | (15,322.89) |
| HVAC | (256.19) | | | | (256.19) | | | | (256.19) | | | | | (768.58) |
| CAM Charges | (20,364.16) | | | | (20,364.16) | | | | (20,364.16) | | | | | (61,092.48) |
| Water & Sewer | (1,708.55) | | | | (1,708.55) | | | | (1,708.55) | | | | | (5,125.66) |
| Gas Service | (132.09) | | | | (132.09) | | | | (132.09) | | | | | (396.28) |
| Pest Control | (244.65) | | | | (244.65) | | | | (244.65) | | | | | (733.95) |
| Waste Management | (351.81) | | | | (351.81) | | | | (351.81) | | | | | (1,055.43) |
| **Total Utilities** | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | | (84,495.27) |
| **Occupancy** | | | | | | | | | | | | | | |
| Rent | (33,408.51) | | | | (33,408.51) | | | | (33,408.51) | | | | | (100,225.53) |
| Security | (31,111.90) | | | | (31,111.90) | | | | (31,111.90) | | | | | (93,335.69) |
| Repair & Maintenance - Building | (1,777.19) | | | | (1,777.19) | | | | (1,777.19) | | | | | (5,331.56) |
| Janitorial | (5,983.33) | | | | (5,983.33) | | | | (5,983.33) | | | | | (17,950.00) |
| **Total Occupancy** | (72,280.93) | | | | (72,280.93) | | | | (72,280.93) | | | | | (216,842.78) |
| Supplies | (1,258.02) | | | | (1,258.02) | | | | (1,258.02) | | | | | (3,774.07) |

006074

**Free Speech Systems LLC**
**Forecasted 13 Week Cash Flow Budget**
Between July 30, 2022 and October 28, 2022

| Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 | 08/27/2022-09/02/2022 | 09/03/2022-09/09/2022 | 09/10/2022-09/16/2022 | 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | 10/15/2022-10/21/2022 | 10/22/2022-10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Telephone | (18,337.88) | | | | (18,337.88) | | | | (18,337.88) | | | | | (55,013.65) |
| **Personnel Expenses** | | | | | | | | | | | | | | |
| Salaries & Wages - Base | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | (1,179,272.08) |
| Payroll Tax | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | (97,797.65) |
| Alex Jones Salary | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | (379,166.67) |
| **Total Personnel Expenses** | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | (1,656,236.39) |
| **Travel** | | | | | | | | | | | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (1,295.98) |
| Vehicle Leases | | (1,470.56) | | | | (1,470.56) | | | | (1,470.56) | | | | (4,411.68) |
| **Total Travel Expenses** | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (5,707.66) |
| **Total Operating Expenses** | (680,347.03) | (1,898.71) | (256,015.88) | (428.15) | (680,347.03) | (1,898.71) | (256,015.88) | (428.15) | (680,347.03) | (428.15) | (238,503.91) | (19,410.68) | (237,033.35) | (3,053,102.68) |
| *Non-Operating Expenses* | | | | | | | | | | | | | | |
| Payment on PQPR Note | (12,500.00) | (15,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (523,000.00) |
| AMEX Payment | (172,390.28) | | (172,390.28) | | (172,390.28) | | (172,390.28) | | (172,390.28) | | (172,390.28) | | | (1,034,341.69) |
| **Total Other Expenses** | (184,890.28) | (15,500.00) | (199,890.28) | (27,500.00) | (199,890.28) | (27,500.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (55,000.00) | (1,557,341.69) |
| **Professional Fees** | | | | | | | | | | | | | | |
| CRO Fees | | | | | | | (52,992.00) | | (35,328.00) | | | | | (88,320.00) |
| Financial Advisor Fee | | | | | | | (57,876.00) | | (40,352.00) | | | | | (98,228.00) |
| Shannon & Lee LLP | | | | | | | (40,000.00) | | (60,000.00) | | | | | (100,000.00) |
| Ray Battaglia | | | | | | | (24,000.00) | | (24,000.00) | | | | | (48,000.00) |
| **Total Professional Fees** | | | | | | | (174,868.00) | | (159,680.00) | | | | | (334,548.00) |
| **Total Cash Flow** | $ (529,176.72) | $ 101,269.75 | $ (87,237.70) | $ 320,906.27 | $ (544,176.72) | $ 339,269.75 | $ (289,605.70) | $ 793,406.77 | $ (731,356.72) | $ 313,240.31 | $ (97,225.73) | $ 774,424.24 | $ 76,635.11 | $ 440,373.41 |

006075

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 2

006076

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | |
|---|---|
| In re:<br><br>FREE SPEECH SYSTEMS, LLC,<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 22-__60043____

Chapter 11 (Subchapter V)

### DECLARATION OF W. MARC SCHWARTZ IN SUPPORT OF
### VOLUNTARY PETITION AND FIRST DAY MOTIONS

I, W. Marc Schwartz, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

1.      My name is W. Marc Schwartz ("Schwartz").

2.      I submit this Declaration based on personal knowledge in support of the voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed by Free Speech Systems, LLC (the "Debtor" or "FSS") on the date hereof (the "Petition Date"). I further submit this Declaration to assist this Court and parties-in-interest in understanding the circumstances that compelled the commencement of the Debtor's chapter 11 case (the "Chapter 11 Case").

3.      The relief sought in the First Day Motions should enable the Debtor to administer its estate effectively. I have reviewed the First Day Motions, and I believe the requested relief is necessary to ensure the success of the Chapter 11 Case.

4.      Except as otherwise indicated, all facts as set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtor. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

1

5.      I am a founder of Schwartz & Associates, LLC ("SALLC"). SALLC has its principal offices at 712 Main Street, Suite 1830, Houston, Texas. SALLC has been engaged in business since 2019. The primary business of SALLC is bankruptcy and financial restructuring consulting, serving as financial/economic experts in civil litigation matters and, serving as court appointed receivers in federal and state court matters.   The firm is also licensed as an Investigations Company by the Texas Department of Public Safety.

6.      SALLC's services include financial forensics, supervising business operations as a trustee, examiner with expanded powers or receiver, valuing business assets and income tax related services    My firm represents individuals, companies and courts in a variety of assignments,  including serving as a Chief Restructuring Officer, financial adviser, trustee or examiner in bankruptcy matters; working as a testifying or consulting expert on damages and economic issues for parties involved in litigation and as a special master for courts where litigation matters are pending; serving as a court appointed receiver in state and federal courts.

7.      I earned a Bachelor of Arts degree from Princeton University and a Master's in Business Administration degree from the University of Chicago Booth School of Business. I am licensed in Texas as a Certified Public Accountant, Certified in Financial Forensics by the American Institute of Certified Public Accountants, a Certified Fraud Examiner, and a Licensed Private Investigator.

8.      I have extensive experience serving as a fiduciary in bankruptcy cases as either a Chapter 11 Trustee, a Chief Restructuring Officer, or an Examiner with expanded powers. I have also acted as a receiver over several individuals and entities under state and federal law.

9.      On June 7, 2022, the Debtor confirmed my retention as the Debtor's Chief Restructuring Officer (the "CRO") and SALLC as its financial advisors as of May 19, 2022.

006078

10.     On the Petition Date, FSS filed its petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court, Southern District of Texas, Victoria Division (the "Bankruptcy Court"). FSS properly qualified to file as a Subchapter V Debtor under Chapter 11 of the Bankruptcy Code.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A.  Background to Creation of Free Speech Systems, LLC

11.     Born in 1974, Alex Jones ("Alex Jones" or "Jones") is the son of Carol Jones, a homemaker, and David Jones, a prominent dentist. Jones moved from Dallas to Austin as a teenager.

12.     In the early 1990s, Austin was a dirt-cheap home to artists, musicians, and zine makers[1]. According to Shannon Burke, a local talk-radio host, "the perfect incubator for [Alex Jones]. It's that libertarian and weirdness blend that wouldn't have worked had he been born in Milwaukee." *Buzzfeed*, May 6, 2017 (Charlie Warzel) (hereafter "*Buzzfeed*").

13.     Austin Public Access ("ACTV"), the TV station where Jones got his first big break showcased that weirdness. In the 1990s, ACTV "was wild and unmoderated — like the YouTube of its time," Brian Blake, the station's longtime producer and IT director, explained. For Jones, then just out of high school, it was a huge opportunity — a chance to spend an hour in front of a camera saying pretty much anything he wanted to Austin's night owls. *Buzzfeed*.

14.     From his first broadcast, Jones targeted the threat of the New World Order, which he had first encountered in the book *None Dare Call It Conspiracy*, discovered on his father's bookshelf. His earliest monologues were stark and raw; Jones would deliver his monologues

---

[1] Wikipedia defines it as "a small circulation self-published work of original or appropriated texts and images usually reproduced via photocopier" - although the term is often used to describe any magazine aimed at a niche audience.

006079

from a bare table, surrounded by stacks of newspaper and often fumbling his words. But the message and the intensity were indistinguishable from the Jones on the air in 2017. *Buzzfeed*. Jones was a modest public-access success.

15.     Alex and his father then found an opportunity in 1996 for Alex to do a talk show on the Austin talk radio station KJFK-FM. He started hosting a show called "The Final Edition". To secure Jones a spot on the station, Jones' father became his son's first on-air advertiser. The show lasted for three years. "Alex Jones" *Southern Poverty Law Center ("SPLC")*.

16.     Alex Jones was a natural.

17.     The "Final Edition" lasted until 1999, when he was fired because his views made it difficult to attract commercial sponsors despite high ratings and winning the best Austin talk radio host show awards. *SPLC*.

18.     Upon being terminated, Alex Jones immediately set up an ISDN line in his house and began independently broadcasting via Infowars.com and national syndication by Genesis Communications to AM, FM, and shortwave stations. *SPLC*.

19.     When Jones started broadcasting on the radio in the late 1990s, he closely followed the talk radio playbook, he built a large and devoted audience of far-right conspiracy-theory believers. He sold radio advertising, videos, books, and T-shirts. From there, he expanded by establishing a website, making, and selling his own conspiracy-oriented documentary films, and, then launching PrisonPlanet.tv, a subscription-only streaming-video service that offered instant access to the films. *Intelligencer*, May 2017. Alex's syndication soon reached almost 100 stations. *SPLC*.

20.     The predecessor operation of FSS in 2004 was an operation with just a handful of employees.  Alex Jones had a tiny office in the far south of Austin. He had two employees at

006080

that time. One of the two employees tended to the warehouse operations. It was also not clear where Alex Jones broadcast at that time. *Jacobson Deposition*, P30.[2]

21.     As his business grew, Alex formed FSS in November 2007 to support his various family business opportunities. Getting into broadcasting had been a family idea, and running a business associated with his radio broadcasting continued to be a family business.

22.     By 2010, Jones had a full-size facility. He had over 60 people on his staff and a full-blown studio. *Jacobson Deposition*, P30. FSS's operation in 2010 were dramatically different in "every way, shape and form", *Jacobson Deposition*, PP30-31, from his 1990 operations.

23.     While Alex's broadcasting technology significantly improved, he did not retain professional managers to run his burgeoning business. It continued to be run by members of his family, friends, and employees whom he had known in high school.

24.     After 2013, Alex Jones' media formula changed from website and films to a website and radio. *Jacobson Deposition*, PP30-31. While his media formula changed, Alex still did not employ professionally trained and experienced business managers at FSS.

25.     The post 2013 business model of FSS recognized that it was a "single talent business" *to wit*, Alex Jones, singularly drove sales on his Infowars.com website. FSS began to make available dietary supplements: products such as InfoWarsLife Silver Bullet Colloidal Silver; Infowars Life Brain Force Plus; InfoWars Life Super Male Vitality; Infowars Life Liver Shield. Supplements "completely transformed" Infowars. Most of FSS' revenue to this day comes from sales of dietary supplements.

---

[2] Oral and Videotaped Deposition of Robert Jacobson, March 20, 2019, Scarlett Lewis v. Alex. E. Jones (Texas).

006081

26.     Alex Jones' show is syndicated by the Genesis Communications Network ("GCN"). Instead of charging syndication fees to radio stations, GCN uses what is called the barter model. GCN offers the content for no cost, and, in exchange, GCN reserves the right to sell national advertising against the programs, generally four minutes per hour.

**B.  Present Business of Free Speech Systems, LLC**

27.     FSS is presently engaged in the business of producing and syndicating Jones' radio and video talk shows and selling products targeted to Jones' loyal fan base via the Internet. Today, FSS produces Alex Jones' syndicated news/talk show (The Alex Jones Show) from Austin, Texas, airs via GCN on over 100 radio stations across the United States and via the internet through the website Infowars.com.

28.     On its Infowars.com website today, FSS makes available to customers dietary supplements ("Supplements"), including Bodease, Krill Oil, Ultimate Fish Oil, DNA Force Plus, Vitamin D3 Gummies, Ultimate Immune Support Pack, Pollen Block, and other health products, including Tea Tree Shampoo. The website also has available books, t-shirts, and other products ("Non-Supplements") Jones advertises during his radio talk show.

29.     The vast majority of FSS revenues comes from the sale of Supplements, which have traditionally been supplied by or contracted for by PQPR, an affiliated entity, described below.

30.     As of July 15, 2022, FSS employs a workforce of 58 individuals, the majority of whom have a direct reporting relationship to Alex Jones. In one building in Austin, Texas, FSS has four studios where online and traditional broadcast production is provided.  The Alex Jones Show and other shows are produced in these studios. An adjacent building contains administrative offices and customer support. In a separate location in Austin, Texas, FSS has a

6

building where warehousing and product sales fulfillment takes place. *David Jones Deposition*, P13.[3] All the buildings and offices are leased.

31.     FSS has a unique audience that is highly loyal to Alex Jones and purchases products based on Alex Jones' credibility. Product sales from Infowars.com stores are a significant source of revenue for FSS. Historically, approximately 80% of FSS' revenue is derived from product sales, of the remainder, 11% is historically from advertising and the balance from a variety of sources. *David Jones Deposition*, P47.

### C. The Relationship Between Alex Jones and FSS

32.     FSS, as employer, and Alex Jones, as employee, are parties to an Employment Agreement and Accompanying Employee Annuity and Life Insurance Plan, dated April 14, 2022 (the "Jones Employment Agreement").

33.     Under the Jones Employment Agreement, Jones agrees to promote products and services agreed to by the Employer, and permits Alex to use FSS's trademarks, tradenames, intellectual property and web site, including the Infowars website. Jones Employment Agreement, ¶¶ 3, 4.

34.     All of FSS' wages to him are subject to the Employee Annuity And Life Insurance Plan (Employee Annuity Plan), attached to the Jones Employment Agreement. Jones Employment Agreement. Under the Employee Annuity Plan, the employee may designate a portion or all his/her salary to purchase an annuity and life insurance, in amounts determined by the employee, from an insurance company to be selected.  Employees with more than two years of full-time consecutive service with FSS are eligible to participate in the Employee Annuity Plan.

---

[3] Oral and Videotaped Deposition of David R. Jones, May 16, 2019, Eric Lafferty, et. al. v. Alex Emeric Jones, et. al. (Connecticut).

006083

35.     The CRO is continuing to evaluate whether the estate has causes of action to claw back any payments or distributions to Alex Jones.

### D.  The Debtor' Owners and Management

36.     At its formation, Alex Jones and Kelly Jones owned 49% and 51% of the membership interests in FSS.

37.     Alex and Kelly Jones divorced in 2015. Upon their divorce, Jones became the sole owner of FSS.

38.      Since then, Alex Jones has been the Managing Member of FSS.

39.     Since inception, Alex Jones has been a "single talent business", _to wit_, without him and his show, there would neither be any InfoWars nor internet sales. Unfortunately, Jones failed to bring on board the necessary management skills to manage what was once a small family business but had become a $70 to $80 million a year enterprise. Jones and his employees continued to run the business with an inverted T structure, where essentially everyone reported to Alex, as though it was still a family business.

40.     Since May 19, 2022, FSS has retained Schwartz as its Chief Restructuring Officer ("CRO"), with broad powers to review the company's past financial performance, analyze the condition of FSS's books and records and evaluate whether FSS is a business that can be reorganized. SALLC was retained to perform various accounting and forensic work associated with his mandate.

41.     In addition, FSS retained Jeffery Shulse ("Shulse") as FSS' Business Manager. Shulse has been parachuted into FSS's offices in Austin to take over FSS' accounting and financial functions and work with Schwartz and SALLC to (a) implement viable accounting and

006084

financial management functions; (b) implement sorely needed internal accounting controls, and (c) establish uniform accounting expense and personnel policies.  With a BBA in accounting from the University of Houston and a J.D. from the University of Houston Law Center, Shulse has over twenty years' experience in providing business, operational and financial consulting to businesses and as a CFO and CEO of businesses in the oil and gas production and construction industries.

42.     The preliminary conclusions reached by me about FSS are:

(a) Although FSS had a controller and two bookkeepers, the 2021 general ledger had not been completed and the books have not been closed, and almost no transactions have been recorded in the 2022 general ledger.  As a result, no financial statements were produced for FSS for the 18 months preceding my engagement. SALLC found no bank reconciliations for 2021 or 2022;

(b)  FSS personnel expressed no criticism of not receiving any financial reports to assist them in managing their functional responsibilities and, in fact, appear to be unaware of the management information available to them from timely prepared and detailed financial statements and analyses;

(c) Internal accounting controls were inadequate, including lack of segregation of duties, written monthly, quarterly, and annual closing schedules, lack of supervisory review of key accounting functions including vendor set up, bank reconciliations, inventory reconciliations, or billings to PQPR Holdings Limited, LLC ("PQPR");

(d) Invoices from PQPR for payment for product it had acquired and sold to FSS were not paid or not paid in full, resulting in a liability to PQPR in excess of $50 million.

9

### E. The Relationship of FSS and PQPR

*Background Information About PQPR*

43.     PQPR was founded in 2013. The business began operations in September 2013.

44.     PQPR is engaged in the online sale and marketing of primarily nutritional supplements which it sells under its own label as well as acquiring nutritional supplements for FSS which it markets under its InfoWars label. PQPR also advertises its products exclusively through FSS/The Alex Jones Show for which it receives a bulk discount. PQPR also sells outside the FSS/Alex Jones show channels.

45.     PQPR is managed by David Jones. Alex Jones is not a manager of PQPR.

46.     The current owners and their ownership interests in PQPR are as follows:

|  | % Owned |
|---|---|
| PLJR Holdings | 80.00% |
| JLJR Holdings, LLC | 20.00% |
| Total | 100.00% |

47.     Through AEJ Austin Holdings, LLC, Jones has an effective 72% membership interest in PLJR Holdings, LLC ("PLJR").   Mrs. Carol Jones owns an 80.00% interest in, and Dr. David Jones holds the remaining 20.00% membership interest in JLJR Holdings, LLC ("JLJR").

48.     Alex Jones is not a manager of either PLJR or JLJR.

*Commercial Relationship Between FSS and PQPR*

49.     As discussed previously, FSS sells two groups of products on its Infowarsstore.com website: Supplements and Non-Supplements. The selection of nutritional supplements to be sold is determined by Alex Jones, David Jones, and staff of FSS. Currently, FSS places orders for Supplements with PQPR which then places the order with the original manufacturer.  FSS pays PQPR, as its agent, funds required to purchase product, which then pays

10

006086

the manufacturer and manages the delivery and certification of the products. Pricing of the Supplements is done by FSS.

50.     Non-Supplements consist of "Infowars" merchandise, ranging from T-shirts to silver coins. This group of merchandise is handled solely by FSS employees, starting from the selection of the merchandise, placing of the merchandise on the Infowars website, ordering of and paying for the product.

51.     Alex Jones promotes both the Supplements and Non-Supplements during his daily broadcast and is the principal driving factor promoting the sale of products to his audience.

52.     In the past, PQPR ordered and paid for Supplements which it marked up and then sold to FSS for distribution. As a result of FSS's inability to pay PQPR in full for the PQPR merchandise over several years, FSS became indebted to PQPR in a significant amount by 2020. The parties memorialized the indebtedness between the parties in 2020.

### *The Entry into the Secured Notes*

53.     On or about August 13, 2020, FSS and PQPR executed a Promissory Note in the principal amount of $29,588,000.00 made payable to PQPR, which memorialized the accrued obligations of FSS to PQPR through December 31, 2018 (the "2020 Secured Note"). The 2020 Secured Note matures on August 1, 2050, interest is due and payable annually. The 2020 Secured Note bears interest at 1.75%.

54.     The 2020 Secured Note is secured by a Security Agreement entered into as of August 13, 2020, between FSS and PQPR (the "2020 Security Agreement"). The 2020 Security Agreement provides in paragraph II that the "Collateral" securing the repayment of the 2020 Secured Note consists of all personal property owned by FSS.

55.     On November 18, 2020, PQPR filed a UCC-1 Financing Statement with the Texas Secretary of State ("November 18 UCC Financing Statement").

11

56.     On or about November 10, 2021, FSS and PQPR entered into a second Promissory Note in the principal amount of $25,300,000.00 made payable to PQPR, which memorialized the accrued obligations of FSS to PQPR from January 1, 2019 to December 31, 2020 (the "2021 Secured Note"). Principal and interest of $1,939,644.81 is due on each anniversary of the 2021 Secured Note. The 2021 Secured Note bears interest at 1.8% and matures on November 10, 2036.

57.     The 2021 Secured Note is secured by the 2020 Security Agreement and the November 18 UCC Financing Statement.

58.     As of the Petition Date, $53,646,6876.82 of principal and $11,787.16 of interest are owed under the two Secured Notes.

59.     PQPR has been the primary source of Supplements for the Infowars website and has contributed to most of the revenue attributable to FSS. Maintaining access to the Supplement supply, along with Alex Jones being on the air, is critical to the reorganization of FSS.

### F. FSS Needs a Credit Card Processor

60.     An essential component of FSS's Infowarsstore.com business with which it could not survive is a credit card processor. Without the ability to process credit card transaction, FSS's business could not operate.  Processing a credit card transaction is a complex process. The process was made more difficult when financial institutions and media sites deplatformed FSS starting in 2018.

61.     Credit card processing refers to a multi-step process necessary to successfully complete payments made with a credit card. Credit card processing involves numerous entities. This includes the consumer, merchant, payment gateway, credit card processor, card network, issuing bank, and acquiring bank.

006088

62.     The key players in credit card processing are:

- **Customer –** the person making a purchase.
- **Merchant –** the person or organization selling a product or service to the customer making a purchase.
- **Payment gateway –** this refers to the technology that connects a merchant to a payment processor. This process involves integrating with card-present (i.e., in-store purchases) and card-not-present (i.e., online purchases) payment environments, obtaining the payment information of customers' transactions, sending these details to a payment processor or merchant bank, and then sending an "approved" or "declined" message to the merchant.
- **Credit card processor –** (or payment processor) this is the organization that helps the merchant, credit card network, and the cardholder's bank communicate. Credit card processors and merchants must comply with the Payment Card Industry Data Security Standard (PCI DSS).
- **Card network –** (also called credit card network or credit card brand) this is the customers' credit card brand, such as Discover, Mastercard, or Visa. These networks must set assessment and interchange fees.
- **Issuing bank –** (also known as the cardholder's bank or consumer bank) this refers to the bank providing customers with their credit card. The issuing bank will determine whether the cardholder's account has the funds to fulfill a transaction. If the account meets these requirements, the issuing bank will release those funds for settlement.
- **Acquiring bank –** (or merchant bank) this is the merchant's bank, which is used for storing its business funds and receiving money from transactions. This type of bank can provide card readers and equipment to merchants, allowing merchants to accept card payments. Acquiring banks can also serve as credit card processors.

63.     In April 2018, FSS had accounts on YouTube, Facebook, Twitter, Periscope, Pinterest, Instagram. *Michael Zimmerman Deposition*[4], P35. FSS also had the ability to access banks and credit card processors without any problems prior to April 2018.

---

[4] Videotaped Oral Deposition of Michael Zimmerman, November 26, 2019, Neil Heslin v. Alex E. Jones (Texas).

64. After the commencement of the Sandy Hook Litigation by the Texas and Connecticut Plaintiffs, FSS and Infowars.com were de-platformed from many important internet, social media, and other financial transaction accounts.

65. Customers utilize credit or debit cards to purchase merchandise on the Infowarsstore.com website. FSS had to locate a credit card processor and a bank that would do business with it, after FSS was shunned by financial institutions and deplatformed on media sites starting in 2018.

66. FSS entered into an agreement with a company as of October 1, 2021, to provide credit card processing for FSS. A third-party processor receives payments from the credit card companies. The company receives credit card receipt proceeds and based on information provided by FSS and PQPR, including which entity owns the inventory that was sold, allocates funds between FSS and PQPR and transfers the amounts allocated to FSS and PQPR's respective banks. This process occurs every federally recognized business day.

67. FSS pays the company a fee of 4% of the total amount of all credit card charges processed under the agreement and reimbursement of all costs incurred, including all credit card processing charges incurred in processing FSS' credit card charges.

68. In addition to the fee, the agreement provided that the company withhold from FSS' net receipts $11,000.00 per business day and remit that amount to PQPR to pay principal and interest on the promissory notes executed by FSS in favor of PQPR.

69. In a forbearance agreement entered into prior to the Petition Date, the parties agreed to reduce the amount being withheld from FSS' net receipts to $2,500.00 per business day for the thirty days following July 12, 2022, when the payment increases to $5,500.00 per business day for an additional thirty days, at which time the payment increases to $11,000.00 per day.

006090

70.     The forbearance agreement also provides that FSS will receive 20% of the proceeds of all sales of products purchased by PQPR (with PQPR receiving 80%) of such proceeds.  In turn, PQPR will receive 10% of the proceeds of all sales of products purchased by FSS (with FSS receiving 90%).  This split was to reimburse the respective parties for setting up supply chains, obtaining required governmental certifications, negotiating with vendors, procuring and paying for product, and overhead.

**G. Sandy Hook and Litigation Resulting Therefrom**

71.     The Debtors' financial distress stems from statements made by Alex Jones and other employees of FSS in the wake of the December 14, 2012, mass shooting at Sandy Hook Elementary School in which 20 children and 6 educators were killed by Adam Lanza. Certain parents of the deceased victims of the Sandy Hook shooting assert, among other things, that these statements were defamatory and inflicted emotional distress.

72.     The crux of the allegations in these lawsuits are that Alex Jones and FSS employees said or implied that the Sandy Hook massacre did not happen and that the parents were participants in a conspiracy against the public.

73.     In 2018, certain aggrieved parties (the "Texas Plaintiffs") commenced state-court actions against one or more of the Debtors styled as: ***(a)*** *Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Owen Shroyer*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas; ***(b)*** *Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas; ***(c)*** *Leonard Pozner and Veronique De La Rosa v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-18-001842, in the 345th District Court of Travis County, Texas; ***(d)*** *Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC,*

15

*and Kit Daniels*, Cause No. D-1-GN-18-001605 in the 459th District Court for Travis County,

Texas; and *(e)* *Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, Marcel*

*Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, PQPR Holdings Limited*

*LLC, JLJR Holdings, LLC, PLJR Holdings, LLC, Carol Jones, David Jones, PQPR Holdings,*

*LLC, JLJR Holdings Limited, LLC, AEJ Holdings, LLC, AEJ Trust 2018*, Cause No. D-1-GN-

22-001610, in the 200th District Court for Travis County (collectively, as may have been

consolidated, the "Texas State Court Litigation").

74.    These two actions: *(a)* *Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech*

*Systems, LLC, and Owen Shroyer*, Cause No. D-1-GN-18-001835, in the 261st District Court of

Travis County, Texas; *(b)* *Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems,*

*LLC*, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas (the

"Heslin/Lewis Suit") have been consolidated. Judge Maya Gamble is presently conducting a trial

of the Heslin/Lewis Suit.

75.    As a result of the filing of FSS' bankruptcy, the Texas State Court Litigation has

been stayed by the automatic stay provision of the Bankruptcy Code.

76.    In 2018, certain other parties (the "Connecticut Plaintiffs") brought actions in

Connecticut styled:

- *Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046436-S in the Superior Court of Connecticut, Waterbury Division;

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046437-S in the Superior Court of Connecticut, Waterbury Division;

006092

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046438-S in the Superior Court of Connecticut, Waterbury Division (collectively, the "<u>Connecticut State Court Litigation</u>" together with the Texas State Court Litigation are hereinafter referred to as the "<u>Sandy Hook Lawsuits</u>").

77. As a result of the filing of FSS' bankruptcy, the Connecticut State Court Litigation has been stayed by the automatic stay provision of the Bankruptcy Code.

78. Jones, FSS, and the Debtors have spent more than $15.0 million in legal fees and costs since commencement of the Sandy Hook Lawsuits.

79. Despite the substantial amount spent, both the Texas and Connecticut courts have imposed multiple sanctions and ruled that Jones and FSS have failed to comply with discovery requirements such that judgment on liability has been entered against them by default.

80. InfoW, LLC f/k/a Infowars, LLC ("<u>InfoW</u>" and together with its affiliate debtors IWHealth, LLC and Prison Planet tv, Ltd., the "<u>InfoWDebtors</u>"), filed a voluntary petition for chapter 11 bankruptcy relief in the U.S. Bankruptcy Court for the Southern District of Texas, Victoria Division (the "<u>Bankruptcy Court</u>"), on April 18, 2022 (the "<u>Petition Date</u>"), initiating Case No. 22-60020 in that court (the "<u>Bankruptcy Case</u>").

81. The purpose of the Bankruptcy Case was to provide a mechanism to efficiently determine and pay *all* claims against the InfoWDebtors and joint tortfeasors in full. To support this, the equity of the InfoWDebtors was assigned to the Liquidation Settlement Trust (for the benefit of the Plaintiffs[5] and others) prior to the Petition Date, and the InfoWDebtors, with separate counsel and financial advisors, negotiated the Plan Support Agreement

17

006093

82.     Among other things, the Plan Support Agreement obligated Jones and FSS (together with Jones, the "<u>Third-Party Funding Contributors</u>") to fund $10.0 million to pay litigation claimants. The total consideration would have been more than $500,000 per litigation claimant. Additional consideration may have been negotiated over the course of the InfoWDebtors' Bankruptcy Case

83.     Prior to the Petition Date of the InfoWDebtors' bankruptcy cases, the InfoWDebtors' and the Third-Party Funding Contributors incurred and paid more than $15.0 million in legal costs. The savings from liquidating the claims in a central forum were essential to the administration of the InfoWDebtors' bankruptcy estates and ultimately paying creditors in full. Absent centralized administration—which may include determination by a jury—the funds available would have been  cannibalized in successive trials over a five-month period.

84.     Rather than negotiate with the InfoWDebtors and the Third-Party Funding Contributors, the Plaintiffs first sought to dismiss the InfoWDebtors' Bankruptcy Case, and, then abruptly, even though Plaintiffs had sued InfoW four years ago, dismissed with prejudice InfoW and, where relevant, the other two debtors within 2 months of the Petition Date.

85.      The primary goal of InfoWDebtors in the Bankruptcy Case was to engage the Plaintiffs in a global settlement. While unable to achieve that goal, the Bankruptcy Case resulted in the dismissal with prejudice of all claims against InfoW, IW Health and Prison Planet from any and all claims held by the Plaintiffs.

### H.  Current Financial Condition of Debtor

86.     Attached hereto as **<u>Exhibit "A"</u>** is a comparative Profit and Loss Statement for FSS for the period January 1, 2022, through May 31, 2022 and the year ended December 31, 2021.

006094

87.     Attached hereto as **Exhibit "B"** is a comparative Balance Sheet of FSS as of May 31, 2022 and December 31, 2021.

88.     Attached hereto as **Exhibit "C"** is a comparative Cash Flow Statement for FSS for the period January 1, 2022, through May 31, 2022 and the year ended December 31, 2021.

## I.     Critical Motions to Commence the Chapter 11 Case

### First Day Motions

89.     Contemporaneously herewith, the Debtor has filed a number of First Day Motions seeking orders granting various forms of relief intended to stabilize the Debtor's business operations and facilitate the efficient administration of the Chapter 11 Case. The First Day Motions include the following:

- **Schedules and Statements Extension Motion**. *Debtor's Motion Seeking Entry of an Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs, and (II) Granting Related Relief.*

- **Cash Collateral Motion**. *Debtor's Emergency Motion For An Interim And Final Order (I) Authorizing The Use Of Cash Collateral Pursuant To Sections 105, 361, and 363 of The Bankruptcy Code and Federal Rule Of Bankruptcy Procedure 4001(B), And (II) Granting Adequate Protection To The Pre-Petition Secured Lender.*

19

- **Critical Vendors Motion**. *Debtor's Motion for an Order (A) Authorizing The Debtor To Pay Prepetition Obligations Of Certain Critical Vendors, And (B) Granting Related Relief.*

- **Utilities Motion**. *Debtor's Emergency Motion For Entry Of An Order: (I) Approving Debtor's Proposed Form Of Adequate Assurance Of Payment For Future Utility Services; (II) Approving Adequate Assurance Procedures; Prohibiting Utility Providers From Altering, Refusing Or Discontinuing Service; And (Iv) Granting Related Relief.*

- **Relief from Stay Motion**. *Debtor's Emergency Motion For An Order Modifying The Automatic Stay To Allow The Heslin/Lewis State Court Suit To Continue To Judgement.*

90.     The First Day Motions seek authority to, among other things, obtain authority to use cash collateral of PQPR to operate the business of FSS in the ordinary course, including maintaining the studios for Jones to produce his shows, purchase critically needed Supplements and operate the sale business of merchandise sales from the InfowarsStore.com website, pay claims of certain vendors and suppliers to ensure that the Debtor's business operations are not disrupted by the Chapter 11 Case, provide payments and protection to various utilities to assure that they provide essential services to the Debtor, and grant the Texas Plaintiffs relief from the automatic stay provision of 11 U.S.C § 362(a) so as to permit the Heslin\Lewis Suit to continue to judgment uninterrupted by the automatic stay.

91.     The Debtor has tailored its requests for immediate relief to those circumstances where the failure to receive such relief would cause immediate and irreparable harm to the Debtor and its estate. An immediate and orderly transition into chapter 11 is critical to the viability of the Debtor's operations and any delay in grating the relief described in the First Day Motions

20

could hinder the Debtor's operations and cause irreparable harm. The failure to receive the requested relief during the first twenty-one (21) days of the Chapter 11 Case would severely disrupt the Debtor's operations at this important juncture.

92.     I am familiar with the content and substance contained in each First Day Motion and believe that the relief sought in each motion (a) is necessary to enable the Debtor to operate in chapter 11 with minimal disruption or loss of productivity and value, (b) constitutes a critical element of the Debtor's successful reorganization, and (c) best serves the Debtor's estate. I have reviewed each of the First Day Motions. If asked to testify as to the facts supporting each of the First Day Motions, I would testify to the facts as set forth in such motions, as further described below.

### Procedural Motion

93.     **Schedules and Statements Extension Motion**. The Debtor seeks entry of an order (a) extending the deadline by which the Debtor must file its schedule of assets and liabilities, schedules of current income and expenditures, schedule of executory contracts and unexpired leases and statement of financial affairs by an additional 14 days for a total of 29 days from the Petition Date, without prejudice to the Debtor's ability to request additional extensions.

94.     Schwartz, Shulse and SALLC have literally been drinking from a firehose since their retention. While they have accomplished much, the company continues to face issues on a daily basis that requires emergency, urgent and immediate attention from this group. Furthermore, locating accurate financial records is a tedious task at FSS, as the record keeping for orders, invoices, expense reports, American Express charge reports are not well-organized. All other records on the computer system also require additional time to retrieve.

95.     Given the complexity of the Debtor's business and financial affairs, and the critical matters that the Debtor's management and professionals were required to address prior

006097

to Petition Date, the Debtor was not able to complete the Schedules and Statements as of the Petition Date.

96.    I believe that the relief requested in the Schedules and Statements Extension Moton is in the best interest of the Debtor's estate, its creditors, and all other parties in interest and will facilitate the Debtor's ability to operate its business in chapter 11 without disruption.

### Operational Motions

97.    **Cash Collateral Motion**[6]. The Debtor must have access to and use of cash collateral to operate its business. Prior to the Petition Date, FSS and PQPR engaged in extensive and difficult negotiations over the use of cash collateral. The negotiations were complicated by PQPR's significant and important commercial role with FSS. PQPR acts as a lender, provides Supplements and handles essential accounting and revenue division functions for FSS' business.

98.    The Debtor requires the use of cash collateral to purchase Supplements and Non-Supplements to sell on its Infowarsstore.com website, pay reasonable and necessary operating expenses, including, but not limited to, employee payroll, rent, utilities, lease payments, marketing, taxes, and insurance. Without use of cash collateral, FSS could not operate its business, pay its employees and operate the studios where Alex Jones produces his shows.

99.    Working with Alex Jones, PQPR, FSS employees, Shulse and SALLC, I have developed a 13-Week Cash Flow Forecast showing the Sources and Uses of Cash for FSS commencing as of July 30, 2022. A true and correct copy of the 13-Week Cash Flow Forecast is attached hereto as **Exhibit "D"**. Based on the assumptions made in the forecast, I project that FSS will operate with a positive ending cash balance at the conclusion of the 13-week period.

---

[6] The Debtor is in possession of certain funds which are not proceeds of PQPR's collateral. Accordingly, the Debtor does not concede that those funds constitute cash collateral of PQPR. Nevertheless, net proceeds received by the Debtor from online merchandise sales including PQPR products are PQPR's cash collateral.

006098

100.     The use of cash collateral required in the next fourteen (14) days from the Petition Date is also set forth on the budgets attached hereto as **Exhibit D**. The Debtor's proposed emergency use of cash collateral is necessary to preserve the value of the Debtor's estate for the benefit of all creditors, including the PQPR, during the first fourteen (14) days of the Chapter 11 Case (the "Interim Period").

101.     The Debtor's proposed offer of adequate protection on an interim basis is set forth in the proposed Interim Cash Collateral Order. It includes replacement liens solely to the extent of any validly perfected, unavoidable security interest as of the Petition Date, and a priority administrative claim to the extent of the diminution of value of PQPR's collateral, if any. As described further in the proposed Interim Cash Collateral Order, the proposed replacement liens and priority administrative claim shall be subject to a carve-out for unpaid fees owed to the clerk of this Court or the United States Trustee, if any, and court-approved administrative expense claims of estate professionals.

102.     PQPR and FSS have engaged in extensive negotiations over a protracted duration to arrive at the interim agreement, which the parties will further negotiate into a final agreement. Due to FSS's affiliation with Alex Jones, the CRO made a decision that time was best spent negotiating the most favorable use of cash collateral agreement with PQPR rather than seeking any alternative third-party lender or source of capital to operate FSS.

103.     Without access to the use of cash collateral of PQPR, FSS could not retain the employees to produce The Alex Jones Show, purchase critically needed inventory to sell on the Infowarsstore.com website and to operate its fulfillment business once a customer makes a purchase.

104.     **Critical Vendors Motion.** The Debtor seeks entry of interim and final orders authorizing, but not directing, the Debtor to pay, in the ordinary course of business, prepetition

23

amounts owing on account of claims of critical vendors identified on Schedule "1" to the Critical Vendors Motion (collectively, the "Critical Vendors") in an amount not to exceed $359,544.62. In addition, the Debtor requests that the Court schedule a final hearing in approximately twenty-one (21) days after the entry of an interim order, or as soon thereafter as is convenient for the Court, to consider approval of the Critical Vendors Motion on a final basis.

105.    After an extensive review and analysis of the Debtor's vendors, the Debtor and its professionals identified the vendors that supply products and services vital to the Debtor's continued operation. The Debtor relies on products and services from its Critical Vendors to operate its business, and, depend on the timely provision of specialized services to provide top-quality content and services to its customer base.

106.    The Critical Vendors procure and provide key services to producing and transmitting The Alex Jones Show. The Critical Vendors are instrumental in the timely fulfillment of Supplement or Non-Supplements to the customer base. If they fail to provide their mission-critical goods and services, the business of FSS would grind to a halt.

107.    I understand that the Debtor's trade relationship with its Critical Vendors is not governed by long-term contracts, and the Debtor believes those trade relationships will deteriorate, causing disruption to the Debtor's operations if the Debtor is unable to pay Critical Vendors. Accordingly, payment of the Critical Vendors is essential to avoid costly interruption and disturbances to the Debtor's business during the Chapter 11 Case.

108.    Subject to Court's approval, I understand the Debtor intends to pay Critical Vendors only to the extent necessary to preserve its business. The Debtor's CRO will review, assess, and make payment on account of these claims. In return for paying these claims, the Debtor will use commercially reasonable efforts to condition payment of Critical Vendors upon each claimant's agreement to continue supplying goods and services to the Debtor in accordance

006100

with trade terms (including credit limits, discounts, pricing, timing of payments, availability, and other terms) consistent with the parties' ordinary course practice or as otherwise agreed by the Debtor in its reasonable business judgement.

109.    I believe that the relief requested in the Critical Vendors Motion is in the best interest of the Debtor's estate, its creditors and all other parties in interest and will facilitate the Debtor's ability to operate its business in chapter 11 without disruption.

110.    **Utilities Motion**. The Debtors seeks entry of an order (a) approving the Debtor's proposed adequate assurance of payment for future utility services under section 366 of the Bankruptcy Code, (b) prohibiting the utility providers from altering, refusing, or discontinuing services, (c) approving the Debtor's propose adequate assurance procedures, and, (d) granting related relief.

111.    In connection with the operation of its business, the Debtor obtains electricity, telecommunications and other similar services from a number of utility providers or brokers. Uninterrupted utility services are essential to the Debtor's ongoing business operations and the overall success of the Chapter 11 Case. The utility services are essential for the Debtor to maintain its business and to operate its corporate offices and essential for daily operations. The studios and warehouse in Austin, Texas require electricity, telecommunications, internet, and other utility services to operate. Should any utility provider refuse or discontinue service, even for a brief period, the Debtor's business operations would be needlessly disrupted.

112.    To the best of Debtor's knowledge, there are no defaults or arrearages with respect to the undisputed invoices for prepetition utility services.

**Proposed Adequate Assurance**

113.    The Debtor intends to pay post-petition obligations owed to the Utility Providers in a timely manner. Cash held by the Debtor and cash generated in the ordinary course of

006101

business will provide sufficient liquidity to pay the Debtor's Utility Service obligations in accordance with its prepetition practice.

114.    The Debtor submits that the Debtor's ability to pay for future utility services with cash on hand in accordance with its prepetition practices (the "Proposed Adequate Assurance") constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of Bankruptcy Code section 366.

### *Adequate Assurance Procedures*

115.    Any Utility Provider that is not satisfied with the Proposed Adequate Assurance may make a request for additional or different adequate assurance of future payment (each an "Additional Assurance Request") pursuant to the adequate assurance procedures set forth in the proposed Order (the "Adequate Assurance Procedures").

116.    The proposed Adequate Assurance Procedures are as follows:

Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments or otherwise must serve an Additional Assurance Request on the Notice Parties (as defined in the Order). An Additional Assurance Request may be made at any time.

Any Additional Assurance Request must: (i) be in writing; (ii) identify the location for which the Utility Services are provided; (iii) summarize the Debtor's payment history relevant to the affected account(s), including any security deposits; and (iv) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

Upon the Debtor's receipt of any Additional Assurance Request, the Debtor shall promptly negotiate with such Utility Provider to resolve such Utility Provider's Additional Assurance Request.

The Debtor may, without further order from the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and the Debtor may, in connection with any such agreement, provide such Utility Provider with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments or other forms of security if the Debtor believes that such adequate assurance is reasonable in its business judgment, subject to the terms of any cash collateral or other financing order entered by the Court; provided, however, that the Debtor shall maintain a summary

006102

record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in this chapter 11 case and the U.S. Trustee upon request.

If the Debtor and the Utility Provider are not able to reach an alternative resolution within 14 days of receipt of the Additional Assurance Request, the Debtor will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing"), pursuant to Bankruptcy Code section 366(c)(3). Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing, or discontinuing Utility Services to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

In addition, if an amount relating to Utility Services provided post-petition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request additional adequate assurance pursuant to the Adequate Assurance Procedures.

The Adequate Assurance Procedures sets forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtor to continue its business operations uninterrupted. More specifically, the Adequate Assurance Procedures permits a Utility Provider to object to the Proposed Adequate Assurance by filing and serving an Additional Assurance Request upon certain notice parties. The Debtor, in its discretion, may then resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court. If the Additional Assurance Request cannot be resolved by mutual agreement, the Debtor may seek Court resolution of the Additional Assurance Request. Unless and until a Utility Provider files an objection or serves an Additional Assurance Request, such Utility Provider shall be: (i) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with Bankruptcy Code section 366; and (ii) forbidden to discontinue, alter or refuse services to, or discriminate against, the Debtor on account of any unpaid prepetition

006103

charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

117.    I believe that the relief requested in the Utilities Motion is in the best interest of the Debtor's estate, its creditors, and all other parties in interest and will facilitate the Debtor's ability to operate its businesses in chapter 11 without disruption.

118.    **Heslin/Lewis Relief from Stay Motion.** Plaintiffs in Texas and Connecticut have commenced suits against Alex Jones and FSS relating to certain statement made by Jones regarding the Sandy Hook shooting. Two of the Texas State Court Suits—*Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Owen Shroyer*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas and *Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas—have been consolidated as the Heslin/Lewis Suit.  Judge Maya Guerra Gamble, 459th Civil District Court, Travis County (the "Texas State Court") is presiding over the Heslin/Lewis Suit.

119.    The trial of the Heslin/Lewis Suit was ongoing as of the Petition Date. On July 25, 2022, the Texas State Court held *voir dire* of jurors and a jury was empaneled. The Texas State Court began taking evidence in the Heslin/Lewis Suit on July 26, 2022. As the result of the filing of the Debtor's petition for chapter 11 relief, the Heslin/Lewis Suit is stayed by Bankruptcy Code section 362.

120.    The Debtor believes that it is in the best interests of its estate and creditors for the Heslin/Lewis Suit to continue to judgement notwithstanding the commencement of this Chapter 11 Case. Substantial resources of the Debtor and Plaintiffs Heslin and Lewis have already been expended in the Heslin/Lewis Suit to empanel a jury and present evidence to that jury. Based on representations made by counsel for Heslin and Lewis in the Bankruptcy Case of InfoW, LLC

006104

previously before this Court, the Debtor believes that Heslin and Lewis desire a final judgment from the Texas State Court and would seek relief from the automatic stay absent this request by the Debtor.[7]

121.    The Debtor seeks emergency consideration of this Motion on or before 8:30 a.m. on August 1, 2022, or as soon thereafter as the Court's schedule will allow. A jury has been empaneled and trial is underway in the Heslin/Lewis Suit, scheduled to continue at 9:00 a.m. on Monday, August 1, 2022. Emergency relief is necessary to prevent delay in the Heslin/Lewis Suit to the detriment of the Debtor, Plaintiffs Heslin and Lewis, and the members of the jury serving in the Heslin/Lewis Suit.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of July,  2022.

W. Marc Schwartz, as Chief Restructuring
Officer of Free Speech Systems, LLC

---

[7] In the InfoW, LLC chapter 11 case, counsel for the Texas Plaintiffs indicated at the April 22, 2022, hearing that the Texas Plaintiffs would be seeking relief from the automatic stay to continue litigation. According to counsel for the Texas Plaintiffs, the "cases are every bit as much about having a determination final made for them, them having their day in court in which Mr.Jones is held accountable for his conduct. So it's not just about a liquidating claims procedure, it is very emotional." *In re InfoW, LLC*, Case No. 22-60020 (Bankr. S.D. Tex.) [ECF No. 39] at 73:8-12.

006105

Exhibit "A"


Comparative Profit and Loss Statement for FSS for the period January 1, 2022, through May 31, 2022 and the year ended December 31, 202.

**Exhibit A**

| Free Speech Systems LLC |
| :---: |
| Comparative Profit and Loss Statement |
| For the Year Ended December 31, 2021 and the Five Months Ended May 31, 2021 |

|  | 2021 | 2022 |
| --- | ---: | ---: |
| **Income** | | |
| Product Sales | $ 52,661,022.49 | $ 10,969,769.29 |
| Advertising Income | 5,761,997.51 | - |
| Donations | 710,154.12 | 2,876,213.86 |
| Fulfillment Services | 3,533,223.00 | - |
| Administrative Services | 1,903,898.95 | - |
| Media Production Sales | - | 475,000.00 |
| Infowars Health | 38,123.60 | - |
| Prison Planet | 4,877.62 | - |
| Uncategorized Income | 357,344.56 | - |
| *Total Income* | *64,970,641.85* | *14,320,983.15* |
| Cost of Goods Sold | 51,878,333.73 | 4,936,453.79 |
| *Gross Profit* | *$ 13,092,308.12* | *$ 9,384,529.36* |
| **Expenses** | | |
| Advertising & Promotion | 364,387.73 | 107,994.01 |
| Computer/IT/IP Expense | 5,036,717.02 | 1,307,339.15 |
| Insurance Expense | 54,558.40 | 31,898.90 |
| Office & Administrative Expense | 277,863.76 | 26,373.93 |
| Contract Services | 1,591,039.49 | 359,592.69 |
| Professional Fees | 4,126,906.48 | 1,623,771.42 |
| Occupancy | 1,624,864.40 | 345,602.34 |
| Utilities | 115,461.34 | 127,855.13 |
| Taxes Paid | 50,281.71 | 4,409.71 |
| Telephone Expense | 304,776.62 | 85,341.24 |
| Personnel & Payroll Expenses | 6,879,811.39 | 2,157,298.60 |
| Travel | 975,711.28 | 64,900.23 |
| Equipment Purchase | 123,696.05 | - |
| Production | 393,712.54 | - |
| Radio Show | 145,177.77 | - |
| Royalties | 1,197,472.71 | - |
| Equipment Rental | 27,322.86 | - |
| Meals and Entertainment | 97,486.31 | - |
| Uncategorized Expense | - | 103,815.00 |
| *Total Expenses* | *23,387,247.86* | *6,346,192.35* |
| *Net Operating Income* | *$ (10,294,939.74)* | *$ 3,038,337.01* |
| **Other Income** | **507,168.04** | **1,019,713.81** |
| **Other Expenses** | 18,963.30 | 206.15 |
| Interest Expense | 857,498.17 | 397,669.19 |
| Donation | 10,000.00 | - |
| Amortization Expense | 35,361.28 | 5,937.50 |
| Depreciation Expense | 209,888.00 | 98,750.20 |
| AMEX Charges | - | 1,653,383.31 |
| *Total Other Expenses* | *1,131,710.75* | *2,155,946.35* |
| *Net Other Income* | *(624,542.71)* | *(1,136,232.54)* |
| *Net Income* | *$ (10,919,482.45)* | *$ 1,902,104.47* |

Exhibit "B"


Comparative Balance Sheet of FSS as of May 31, 2022 and December 31, 2021.

**Exhibit B**

| Free Speech Systems LLC |
| Comparative Balance Sheet |
| As of December 31, 2021 and May 31, 2022 |

|  | 2021 | 2022 |
|---|---|---|
| **Assets** | | |
| **Current Assets** | | |
| Cash | $ 1,508,720.21 | $ 1,159,247.90 |
| Accounts Receivable | 10,187,121.95 | 10,013,413.22 |
| **Other Current Assets** | | |
| Invenotry | 1,732,603.13 | 910,116.84 |
| Prepaid Expenses | 446,475.64 | 114,136.99 |
| Due from PQPR | (500.00) | - |
| Advance To Elevated Solutions | 27,870.00 | - |
| *Total Other Current Assets* | *2,206,448.77* | *1,024,253.83* |
| *Total Current Assets* | *13,902,290.93* | *12,196,914.95* |
| **Fixed Assets** | 1,679,438.66 | 1,580,779.46 |
| **Other Assets** | | |
| Intangible Assets | 21,270.83 | 15,333.33 |
| Security Deposits | 534,560.00 | 534,560.00 |
| *Total Other Assets* | *555,830.83* | *549,893.33* |
| *Total Assets* | *$ 16,137,560.42* | *$ 14,327,587.74* |
| **Liabilities and Equity** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| Accounts Payable | $ 4,732,966.89 | $ 1,217,685.58 |
| Credit Cards | 152,367.42 | 207,984.04 |
| **Other Current Liabilities** | | |
| David Jones Advance | 150,000.00 | 150,000.00 |
| Advances from PQPR | - | 571,920.57 |
| Due to PQPR | 23,058,367.00 | 23,058,367.00 |
| *Total Other Current Liabilities* | *23,208,367.00* | *23,780,287.57* |
| *Total Current Liabilities* | *28,093,701.31* | *25,205,957.19* |
| **Long Term Liabilities** | | |
| Note Due to PQPR | 54,580,405.22 | 53,845,074.41 |
| Note Payable - Winnebago | 93,505.62 | 82,524.37 |
| *Total Long Term Liabilities* | *54,673,910.84* | *53,927,598.78* |
| *Total Liabilities* | *$ 82,767,612.15* | *$ 79,133,555.97* |
| **Equity** | | |
| Member's Equity | (774,291.44) | - |
| Member Draws | (61,937,862.26) | (254,014.00) |
| Member Contributions | 4,305,810.14 | 311,350.00 |
| Opening Balance Equity | - | (66,765,408.70) |
| Retained Earnings | 2,695,774.28 | |
| Net Income | (10,919,482.45) | 1,902,104.47 |
| *Total Equity* | *$ (66,630,051.73)* | *$ (64,805,968.23)* |
| *Total Liabilities and Equity* | *$ 16,137,560.42* | *$ 14,327,587.74* |

Exhibit "C"

Comparative Cash Flow Statement for FSS for the period January 1, 2022, through May 31, 2022 and the year ended December 31, 2021.

**Exhibit C**

---

**Free Speech Systems, LLC**
**Statement of Cash Flows**

**For the Year Ended December 31, 2021  and the Five Months Ended May 31, 2022**

---

|  | 2021 | 2022 |
|---|---|---|
| **Operating Activities** | | |
| *Net Income* | **($10,919,482.45)** | **$1,902,104.47** |
| <u>*Adjustments to reconcile Net Income to Net Cash provided by operations:*</u> | - | - |
| 11000 Accounts Receivable | (10,187,121.95) | 173,708.73 |
| 12000 Inventory | (94,344.61) | 822,486.29 |
| 13000 Prepaid Expenses:13010 Prepaid Insurance | - | - |
| 13000 Prepaid Expenses:13020 Prepaid Software Licenses | - | - |
| Pre-paid Vendor Deposits | - | - |
| 13000 Prepaid Expenses:13040 Prepaid Legal | - | - |
| 13000 Prepaid Expenses:13070 Other Prepaid Expenses | - | - |
| Advance To Elevated Solutions | - | - |
| Prepaid Expenses | (403,821.24) | 65,286.20 |
| Accumulated Depreciation | 209,887.99 | 98,750.20 |
| Accumulated Amortization | 35,361.29 | 2,708.35 |
| 20000 Accounts Payable | 3,005,707.55 | (3,410,484.85) |
| 22000 Credit Card Payable | (236,394.79) | 207,984.04 |
| Advances from PQPR | - | 571,920.57 |
| David Jones Advance | 150,000.00 | - |
| Due to PQPR | (2,229,789.04) | - |
| Interest Payable - PQPR | (200,022.99) | - |
| ***Net cash provided by operating activities*** | **($20,870,020.24)** | **$434,464.00** |
| **Investing Activities** | - | - |
| 15000 Property and Equipment | (522,121.65) | (91.00) |
| 17100 Security Deposits | (500,000.00) | - |
| 17300 Intangible Assets | (5,500.00) | 3,229.15 |
| ***Net cash provided by investing activities*** | **($1,027,621.65)** | **$3,138.15** |
| **Financing Activities** | | |
| 27000 Note Due to PQPR:2021/11/10 $25,300,000 Note | 24,992,405.22 | (735,330.81) |
| Note Payable - Winnebago | (18,832.81) | (10,981.25) |
| 31000 Opening Balance Equity | - | - |
| Member's Equity | (23,193.36) | (98,098.40) |
| 33000 Distributions to Member:33100 Member Draws | - | - |
| 33000 Distributions to Member:Owner investments | - | - |
| Net Member Distributions | (2,100,362.40) | 57,336.00 |
| ***Net cash provided by financing activities*** | **22,850,016.65** | **(787,074.46)** |
| ***Net cash increase for period*** | **$952,374.76** | **($349,472.31)** |

006111

Exhibit "D"


13-Week Cash Flow Forecast for FSS

006112

# Exhibit D

**Free Speech Systems LLC**
**Forecasted 13 Week Cash Flow Budget**
Between July 30, 2022 and October 28, 2022

| Period / Week Number | 07/30/2022-08/05/2022 (1) | 08/06/2022-08/12/2022 (2) | 08/13/2022-08/19/2022 (3) | 08/20/2022-08/26/2022 (4) | 08/27/2022-09/02/2022 (5) | 09/03/2022-09/09/2022 (6) | 09/10/2022-09/16/2022 (7) | 09/17/2022-09/23/2022 (8) | 09/24/2022-09/30/2022 (9) | 10/01/2022-10/07/2022 (10) | 10/08/2022-10/14/2022 (11) | 10/15/2022-10/21/2022 (12) | 10/22/2022-10/28/2022 (13) | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | |
| Product Sales | $ 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | $ 7,741,357.16 |
| Advertising | | | | 480,166.46 | | | | 480,166.46 | | | | | 480,166.46 | 1,440,499.38 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 40,836.21 |
| **Total Income** | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 9,222,692.75 |
| **Selling & Product Costs** | | | | | | | | | | | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (990,017.27) |
| Repay PQPR Inventory | | (250,000.00) | | (500,000.00) | | | | | | | | | | (750,000.00) |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (348,361.07) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (102,853.59) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (1,238,617.15) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (309,654.29) |
| eCommerce Store Maintenance | (27,270.00) | | | | (27,270.00) | | | | (27,270.00) | | | | | (81,810.00) |
| Texas Sales Tax | (5,337.87) | | | | (5,337.87) | | | | (5,337.87) | | | | | (16,013.61) |
| **Total Cost of Goods Sold** | (262,569.67) | (479,961.80) | (229,961.80) | (729,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (229,961.80) | (3,837,326.97) |
| **Operating Expenses** | | | | | | | | | | | | | | |
| **Advertising & Promotion** | | | | | | | | | | | | | | |
| Advertising & Promotion | (3,041.98) | | | | (3,041.98) | | | | (3,041.98) | | | | | (9,125.93) |
| Print Media | (3,000.00) | | | | (3,000.00) | | | | (3,000.00) | | | | | (9,000.00) |
| Radio Show Advertising | (11,500.00) | | | | (11,500.00) | | | | (11,500.00) | | | | | (34,500.00) |
| **Total Advertising & Promotion** | (17,541.98) | | | | (17,541.98) | | | | (17,541.98) | | | | | (52,625.93) |
| **Computer/IT/IP Expense** | | | | | | | | | | | | | | |
| Internet & TV services | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | | (11,073.89) |
| Software License Fees | (140.80) | | | | (140.80) | | | | (140.80) | | | | | (422.40) |
| Software Hosting Service | (28,595.13) | | | | (28,595.13) | | | | (28,595.13) | | | | | (85,785.40) |
| CDN Video Cloud Storage | (55,728.00) | | | | (55,728.00) | | | | (55,728.00) | | | | | (167,184.00) |
| Satellite Service | (137,282.93) | | | | (137,282.93) | | | | (137,282.93) | | | | | (411,848.78) |
| Imaging License Fee | (9,201.25) | | | | (9,201.25) | | | | (9,201.25) | | | | | (27,603.75) |
| Software & Apps | (5,000.00) | | | | (5,000.00) | | | | (5,000.00) | | | | | (15,000.00) |
| Website Hosting | | | (266.50) | | | | (266.50) | | | | (266.50) | | | (799.50) |
| **Total Computer/IT/IP Expense** | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | | (719,717.72) |
| **Office & Administrative Expense** | | | | | | | | | | | | | | |
| Insurance | (2,166.50) | | | | (2,166.50) | | | | (2,166.50) | | | | | (6,499.50) |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (596.74) |
| Equipment Rental | (1,989.90) | | | | (1,989.90) | | | | (1,989.90) | | | | | (5,969.69) |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (27.31) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (3,645.97) |
| **Total Office & Administrative Expense** | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (328.46) | (10,239.71) |
| Outsourced Services | (45,980.00) | | | | (45,980.00) | | | | (45,980.00) | | | | | (137,940.00) |
| Consulting Services | (22,670.00) | | (12,000.00) | | (22,670.00) | | (12,000.00) | | (22,670.00) | | | (12,000.00) | | (104,010.00) |
| **Utilities** | | | | | | | | | | | | | | |
| Electricity | | | (5,107.63) | | | | (5,107.63) | | | | (5,107.63) | | | (15,322.89) |
| HVAC | (256.19) | | | | (256.19) | | | | (256.19) | | | | | (768.58) |
| CAM Charges | (20,364.16) | | | | (20,364.16) | | | | (20,364.16) | | | | | (61,092.48) |
| Water & Sewer | (1,708.55) | | | | (1,708.55) | | | | (1,708.55) | | | | | (5,125.66) |
| Gas Service | (132.09) | | | | (132.09) | | | | (132.09) | | | | | (396.28) |
| Pest Control | (244.65) | | | | (244.65) | | | | (244.65) | | | | | (733.95) |
| Waste Management | (351.81) | | | | (351.81) | | | | (351.81) | | | | | (1,055.43) |
| **Total Utilities** | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | | (84,495.27) |
| **Occupancy** | | | | | | | | | | | | | | |
| Rent | (33,408.51) | | | | (33,408.51) | | | | (33,408.51) | | | | | (100,225.53) |
| Security | (31,111.90) | | | | (31,111.90) | | | | (31,111.90) | | | | | (93,335.69) |
| Repair & Maintenance - Building | (1,777.19) | | | | (1,777.19) | | | | (1,777.19) | | | | | (5,331.56) |
| Janitorial | (5,983.33) | | | | (5,983.33) | | | | (5,983.33) | | | | | (17,950.00) |
| **Total Occupancy** | (72,280.93) | | | | (72,280.93) | | | | (72,280.93) | | | | | (216,842.78) |
| Supplies | (1,258.02) | | | | (1,258.02) | | | | (1,258.02) | | | | | (3,774.07) |

006

**Free Speech Systems LLC**
**Forecasted 13 Week Cash Flow Budget**
Between July 30, 2022 and October 28, 2022

| Period | 07/30/2022- 08/05/2022 | 08/06/2022- 08/12/2022 | 08/13/2022- 08/19/2022 | 08/20/2022- 08/26/2022 | 08/27/2022- 09/02/2022 | 09/03/2022- 09/09/2022 | 09/10/2022- 09/16/2022 | 09/17/2022- 09/23/2022 | 09/24/2022- 09/30/2022 | 10/01/2022- 10/07/2022 | 10/08/2022- 10/14/2022 | 10/15/2022- 10/21/2022 | 10/22/2022- 10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Telephone | (18,337.88) | | | | (18,337.88) | | | | (18,337.88) | | | | | (55,013.65) |
| **Personnel Expenses** | | | | | | | | | | | | | | |
| Salaries & Wages - Base | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | (1,179,272.08) |
| Payroll Tax | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | (97,797.65) |
| Alex Jones Salary | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | (379,166.67) |
| **Total Personnel Expenses** | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | (1,656,236.39) |
| **Travel** | | | | | | | | | | | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (1,255.98) |
| Vehicle Leases | (1,470.56) | | | | (1,470.56) | | | | (1,470.56) | | | | | (4,411.68) |
| **Total Travel Expenses** | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (99.69) | (5,707.66) |
| **Total Operating Expenses** | (680,347.03) | (428.15) | (256,015.88) | (428.15) | (680,347.03) | (256,015.88) | (256,015.88) | (428.15) | (680,347.03) | (428.15) | (238,503.91) | (19,410.68) | (237,033.35) | (3,053,102.68) |
| **Non-Operating Expenses** | | | | | | | | | | | | | | |
| Payment on PQPR Note | (12,500.00) | (15,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (523,000.00) |
| AMEX Payment | (172,390.28) | | (172,390.28) | | (172,390.28) | | (172,390.28) | | (172,390.28) | | (172,390.28) | | | (1,034,341.69) |
| **Total Other Expenses** | (184,890.28) | (15,500.00) | (199,890.28) | (27,500.00) | (199,890.28) | (55,000.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (55,000.00) | (1,557,341.69) |
| **Professional Fees** | | | | | | | | | | | | | | |
| CRO Fees | | | | | | | (52,992.00) | | (35,328.00) | | | | | (88,320.00) |
| Financial Advisor Fee | | | | | | | (57,876.00) | | (40,352.00) | | | | | (98,228.00) |
| Shannon & Lee LLP | | | | | | | (40,000.00) | | (60,000.00) | | | | | (100,000.00) |
| Ray Battaglia | | | | | | | (24,000.00) | | (24,000.00) | | | | | (48,000.00) |
| **Total Professional Fees** | | | | | | | (174,868.00) | | (159,680.00) | | | | | (334,548.00) |
| **Total Cash Flow** | $ (529,176.72) | $ 101,269.75 | $ (87,237.70) | $ 320,906.77 | $ (544,176.72) | $ 339,269.75 | $ (289,605.70) | $ 793,406.77 | $ (731,356.72) | $ 313,240.31 | $ (97,225.73) | $ 774,424.24 | $ 76,635.11 | $ 440,373.41 |

006114

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 3

006115

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 05, 2022
Nathan Ochsner, Clerk

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of this interim order (this "Order") pursuant to Sections 105, 361, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court, having considered the Motion, and having held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing"), and having considered the evidence presented or proffered and the statements and representations of the parties on the record at the Interim Hearing; and all objections, if any, to the entry of this Interim Order having been resolved by agreement or order of the Court or overruled; and after due deliberation and consideration and sufficient cause appearing therefor;

1. The Chapter 11 Case. On July 29, 2022 (the "Petition Date") the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the ~~Western~~ Southern District of Texas (this "Court").

2. Debtor-in-Possession. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code. To date, no trustee or examiner

has been appointed in this Case. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

3. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and the Local Rules of this Court (the "<u>Local Rules</u>").

4. <u>Committee Formation</u>. To date, no official committee (a "<u>Committee</u>") of unsecured creditors, equity interest holders, or other parties in interest has been appointed in the Case.

5. <u>Notice</u>. On July 29, 2022, the Debtor served copies of the Motion and notice of the Interim Hearing to all creditors and parties in interest entitled to such notice in compliance with Bankruptcy Rules 2002, 4001, 9014, and the Local Rules, including: (i) the Office of the United States Trustee for this District, (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtor's estate, (iii) PQPR Holdings Limited, LLC Trust ("<u>PQPR</u>"), and (vi) any other secured parties of record. Under the circumstances, such notice of the Interim Hearing and the emergency relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rule 4001 and the Local Rules, and no other or further notice of the Interim Hearing or the relief granted in this Interim Order is necessary or required.

6. <u>Immediate Need for Use of Cash Collateral</u>. The Debtor asserts that an immediate and critical need exists for the Debtor to use the alleged cash collateral[1] of PQPR as set forth in the budget defined below (the "<u>Cash Collateral</u>") in order to continue the operation of its business. Without such use of Cash Collateral, the Debtor asserts that it will not be able to pay post-petition direct operating expenses and obtain goods and services needed to carry on its business in a manner that will avoid irreparable harm to the Debtor's estate. The Debtor further asserts that its ability to use Cash Collateral is necessary to preserve and maintain the going concern value of the Debtor's estate.

---

[1] As defined at 11 U.S.C. § 363(a).

7.  <u>Conditional Consent to Use of Cash Collateral</u>. The Debtor seeks authorization to use Cash Collateral to pay the Debtor's ordinary and necessary operating expenses set forth in the budget attached to this Order as Exhibit A (the "<u>Budget</u>") for the period (the "<u>Interim Period</u>") from the Petition Date through and including August 26, 2022 (the "<u>Termination Date</u>"). The lender has agreed to the Debtor's use of Cash Collateral during the Interim Period exclusively in accordance with the terms, conditions, and limitations set forth in this Order and the Budget.

8.  <u>Good Cause/Fair and Reasonable Terms</u>. The Debtor asserts that good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the business and operations of the Debtor and permit the Debtor to maintain the going concern value of its business. The use of Cash Collateral authorized hereunder is necessary, essential, and appropriate and is in the best interest of, and will benefit, the Debtor, its creditors, and the Debtor's bankruptcy estate as it will, among other things, provide the Debtor with the necessary liquidity to (i) avoid immediate and irreparable harm to the Debtor and its bankruptcy estate; and (ii) preserve and maximize the value of the Debtor's business and assets. The terms and conditions of the use of Cash Collateral and the security interests, liens, rights, and priorities granted to the lenders hereunder are fair and appropriate under the circumstances.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.  <u>Motion Granted</u>. The Motion is hereby granted on an interim basis as set forth herein.

2.  <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.  <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor

shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4. <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral to pay the items set forth in the Budget, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5. <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  Payments to any insider during the Interim Period shall not exceed $20,000 in the aggregate.

6. <u>Payment to PQPR for Inventory Purchase</u>. Notwithstanding the limitation on payments to insiders set forth in the preceding paragraph, the Debtor is authorized to use Cash Collateral to pay PQPR $250,000 as provided in the Budget for "Repay PQPR Inventory" (the "<u>PQPR Payment</u>").  The PQPR Payment shall not be used to pay down the PQPR Notes (as defined in the Motion).  Creditors and parties in interest shall have thirty (30) days from the date a notice is filed on the docket that the PQPR Payment has been issued to object to the appropriateness of that payment and file pleadings with the Court seeking to clawback the PQPR Payment.

7. <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8. <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall

remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.    <u>Adequate Protection – Replacement Liens</u>.        As adequate protection for any diminution in value of each of the Pre-Petition Lender's interest in the Debtor's collateral, if any, including Cash Collateral, resulting from the imposition of the automatic stay with respect to the Collateral and/or the Debtor's use, sale or lease of the Collateral during the Case (the "<u>Diminution in Value</u>"), the Pre-Petition Lender is hereby granted, effective  as of the Petition Date, valid, binding, enforceable, and automatically perfected liens (the "<u>Replacement Liens</u>") in  all  currently owned or hereafter acquired property and assets of the Debtor, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising (excluding avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code), and all proceeds and products of the foregoing (collectively, the "<u>Adequate Protection Collateral</u>") to the same extent as existed on the Petition Date. The Replacement Liens granted pursuant to this Order shall be subject to the Carve Out.

10.    <u>Carve Out</u>. The Replacement Liens and Adequate Protection  Priority Claim granted herein shall be subject to (a) unpaid fees payable to the Clerk of the Bankruptcy Court or the United States Trustee; (b) subject to the Budget, court-approved administrative expense claims of estate professionals, employed pursuant to order of this Court (collectively, "<u>Estate Professionals</u>"), for incurred but unpaid fees, expenses and  other  costs; fees and expenses of the appointed Subchapter V Trustee  (all  such  carve-out amounts referenced above, collectively, the "<u>Carve Out</u>").

11.    <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

12. <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, the Subchapter V Trustee, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

13. <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on August 24, 2022, at 10:00 a.m. Central time.

Signed: August 05, 2022

Christopher Lopez
United States Bankruptcy Judge

006121

# Forecasted Interim Cash Collateral Budget
**Between July 29, 2022 and August 26, 2022**

| Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 |
|---|---|---|---|---|
| Week Number | 1 | 2 | 3 | 4 |
| **Income** | | | | |
| Product Sales | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 |
| Advertising | - | - | - | 480,166.46 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 |
| **Total Income** | **598,630.26** | **598,630.26** | **598,630.26** | **1,078,796.72** |
| **Selling & Product Costs** | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) |
| Repay PQPR Inventory | - | (250,000.00) | - | - |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) |
| eCommerce Store Maintenance | (27,270.00) | - | - | - |
| Texas Sales Tax | (5,337.87) | - | - | - |
| **Total Cost of Goods Sold** | **(262,569.67)** | **(479,961.80)** | **(229,961.80)** | **(229,961.80)** |
| **Operating Expenses** | | | | |
| **Advertising & Promotion** | | | | |
| Advertising & Promotion | (3,041.98) | - | - | - |
| Print Media | (3,000.00) | - | - | - |
| Radio Show Advertising | (11,500.00) | - | - | - |
| **Total Advertising & Promotion** | **(17,541.98)** | **-** | **-** | **-** |
| **Computer/IT/IP Expense** | | | | |
| Internet & TV services | (2,082.90) | - | (1,608.39) | - |
| Software License Fees | (140.80) | - | - | - |
| Server Hosting Service | (28,595.13) | - | - | - |
| CDN Video Cloud Storage | (55,728.00) | - | - | - |
| Satellite Service | (137,282.93) | - | - | - |
| Imaging License Fee | (9,201.25) | - | - | - |
| Software & Apps | (5,000.00) | - | - | - |
| Website Hosting | - | - | (266.50) | - |
| **Total Computer/IT/IP Expense** | **(238,031.01)** | **-** | **(1,874.89)** | **-** |
| Insurance | (2,166.50) | | | |
| **Office & Administrative Expense** | | | | |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) |
| Equipment Rental | (1,989.90) | - | - | - |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) |
| **Total Office & Administrative Expense** | **(2,318.36)** | **(328.46)** | **(328.46)** | **(328.46)** |
| | | | | |
| Outsourced Services | - | - | - | - |
| Consulting Services | - | - | - | - |
| **Utilities** | | | | |
| Utility Deposit | (10,000.00) | | | |
| Electricity | - | - | (5,107.63) | - |
| HVAC | (256.19) | - | - | - |
| CAM Charges | (20,364.16) | - | - | - |
| Water & Sewer | (1,708.55) | - | - | - |
| Gas Service | (132.09) | - | - | - |
| Pest Control | (244.65) | - | - | - |
| Waste Management | (351.81) | - | - | - |
| **Total Utilities** | **(33,057.46)** | **-** | **(5,107.63)** | **-** |
| **Occupancy** | | | | |
| Rent | (33,408.51) | - | - | - |
| Office Security | (31,111.90) | - | - | - |
| Repair & Maintenance - Building | (1,777.19) | - | - | - |
| Janitorial | (5,983.33) | - | - | - |



EXHIBIT

006112

A

| Period+A5:E83 | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 |
|---|---|---|---|---|
| **Total Occupancy** | **(72,280.93)** | - | - | - |
| Supplies | (1,258.02) | | - | |
| Telephone | (18,337.88) | - | - | |
| **Personnel Expenses** | | | | |
| Salaries & Wages - Base | (168,467.44) | - | (168,467.44) | - |
| Payroll Tax | (13,087.76) | - | (13,087.76) | - |
| Alex Jones Salary | (10,000.00) | - | (10,000.00) | - |
| **Total Personnel Expenses** | **(191,555.20)** | **-** | **(191,555.20)** | **-** |
| **Travel** | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) |
| Vehicle Leases | - | (1,470.56) | - | - |
| **Total Travel Expenses** | **(99.69)** | **(1,570.25)** | **(99.69)** | **(99.69)** |
| **Total Operating Expenses** | **(576,647.03)** | **(1,898.71)** | **(198,965.88)** | **(428.15)** |
| ***Non-Operating Expenses*** | | | | |
| Payment on PQPR Note | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) |
| AMEX Payment | - | - | - | - |
| **Total Other Expenses** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** |
| **Professional Fees** | | | | |
| CRO Fees | - | - | - | - |
| Financial Adviosr Fee | - | - | - | - |
| Shannon & Lee LLP | - | - | - | - |
| Ray Battaglia | - | - | - | - |
| **Total Professional Fees** | **-** | **-** | **-** | **-** |
| **Total Cash Flow** | **$ (245,586.44)** | **$ 111,769.75** | **$ 164,702.59** | **$ 843,406.77** |

006123

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 4

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 12, 2022

Nathan Ochsner, Clerk

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## ORDER MODIFYING INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On August 11, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral* after due deliberation and consideration and sufficient cause appearing therefor;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1. <u>Motion Granted</u>. The Motion is hereby granted on an interim basis as set forth herein.

2. <u>Interim Order</u>. The Interim Order shall be modified as follows:

The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the Motion, from the daily settlement contemporaneously with the distributions to FSS and PQPR

3. <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales. A copy of the report shall be forwarded to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Connecticut and Texas plaintiffs.

4. The remaining terms, findings and provisions of the Interim Order are not amended or modified and remain in effect.

Signed: August 12, 2022

_____
Christopher Lopez
United States Bankruptcy Judge

006125

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 5

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 24, 2022

Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## SECOND INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). This order is the second interim order ("Second Interim Order"), negotiated between the Debtor and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral. The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.     Interim Use. The Court approves the interim use of cash collateral as set forth herein.

2. <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3. <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4. <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Second Interim Order (the "<u>Interim Period</u>") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5. <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $20,000.

6. <u>Payment to PQPR for Inventory Purchase</u>. Notwithstanding the limitation on payments to insiders set forth in the preceding paragraph, the Debtor is authorized to use Cash Collateral to pay PQPR up to $750,000 as provided in the Budget for "Repay PQPR Inventory" (each payment comprising a portion of the $750,000, a "<u>PQPR Payment</u>"). Creditors and parties in interest shall have thirty (30) days from the date

they receive notice that a PQPR Payment was issued to object to the appropriateness of that payment and file pleadings with the Court seeking to clawback the PQPR Payment. The Debtor shall provide notice of a PQPR Payment to creditors and parties in interest on the same day the payment is issued.

7.      Further Authorization.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.      Taxes.  Nothing in this Order shall be construed to grant PQPR (the "Pre-Petition Lender") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.      Adequate Protection – Replacement Liens.      The adequate protection and related carve outset forth in the First Interim Order are incorporated in the Second Interim Order.

10.     Subsequent Modification of Order. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.     Credit Card Processing. The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.

12.     Reporting. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the

U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13. <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14. <u>Discovery</u>. The Tort Plaintiffs issued written discovery to the Debtor and PQPR relating to the use of cash collateral on a final basis. PQPR and the Debtor will provide written discovery responses and produce responsive documents to the Tort Plaintiffs no later than August 30. If PQPR and the Debtor have objections to discovery, it will be their obligation file written objections to discovery before August 30, 2022. PQPR and the Debtor will make a good faith effort to begin producing responsive documents on a rolling basis as soon as possible, but not later than August 29th, 2022. The Tort Plaintiffs will provide deposition topics no later than August 22, which may be subject to amendment once document production is reviewed. The Debtor shall present a corporate representative for deposition on September 6, 2022. PQPR shall present a corporate representative for deposition on September 8. PQPR, the Debtor, and the Tort Plaintiffs agree that any discovery dispute may be heard on an emergency basis.

15. <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on September 13, 2022, at 1:00 p.m. Central time.

Signed: August 24, 2022

Christopher Lopez
United States Bankruptcy Judge

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 4 - Week 7)**

**Between August 20, 2022 and September 16, 2022**

| | Period | 08/20/2022-08/26/2022 | 08/27/2022-09/02/2022 | 09/03/2022-09/09/2022 | 09/10/2022-09/16/2022 | Total |
|---|---|---|---|---|---|---|
| | Week Number | 4 | 5 | 6 | 7 | |
| **Income** | | | | | | |
| Product Sales | | $ 900,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 3,900,000.00 |
| Advertising | | $ 480,166.46 | $ - | $ - | $ - | $ 480,166.46 |
| Donations | | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 12,564.99 |
| **Total Income** | | $ 1,383,307.71 | $ 1,003,141.25 | $ 1,003,141.25 | $ 1,003,141.25 | $ 4,392,731.45 |
| **Selling & Product Costs** | | | | | | |
| Inventory Purchase | | $ (76,155.17) | $ (76,155.17) | $ (225,294.19) | $ (225,294.19) | $ (602,898.72) |
| Repay PQPR Inventory | | $ (250,000.00) | | $ (500,000.00) | | $ (750,000.00) |
| Merchant Account Fees | | $ (44,100.00) | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (191,100.00) |
| Shipping cost for drop ship orders | | $ (11,957.62) | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (51,816.36) |
| Fulfillment Services | | $ (219,512.20) | $ (243,902.44) | $ (243,902.44) | $ (243,902.44) | $ (951,219.51) |
| Processor Fees | | $ (36,000.00) | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (156,000.00) |
| eCommerce Store Maintenance | | $ - | $ (27,270.00) | $ - | $ - | $ (27,270.00) |
| Texas Sales Tax | | $ - | $ (5,337.87) | $ - | $ - | $ (5,337.87) |
| **Total Cost of Goods Sold** | | $ (637,724.99) | $ (454,951.73) | $(1,071,482.87) | $ (571,482.87) | $ (2,735,642.47) |
| **Operating Expenses** | | | | | | |
| **Advertising & Promotion** | | | | | | |
| Advertising & Promotion | | $ - | $ (3,041.98) | $ - | $ - | $ (3,041.98) |
| Print Media | | $ - | $ (3,000.00) | $ - | $ - | $ (3,000.00) |
| Radio Show Advertising | | $ - | $ (11,500.00) | $ - | $ - | $ (11,500.00) |
| **Total Advertising & Promotion** | | $ - | $ (17,541.98) | $ - | $ - | $ (17,541.98) |
| **Computer/IT/IP Expense** | | | | | | |
| Internet & TV services | | $ - | $ (2,082.90) | $ - | $ (1,608.39) | $ (3,691.30) |
| Software License Fees | | $ - | $ (140.80) | $ - | $ - | $ (140.80) |
| Server Hosting Service | | $ - | $ (28,595.13) | $ - | $ - | $ (28,595.13) |
| CDN Video Cloud Storage | | $ - | $ (55,728.00) | $ - | $ - | $ (55,728.00) |
| Satellite Service | | $ - | $ (137,282.93) | $ - | $ - | $ (137,282.93) |
| Imaging License Fee | | $ - | $ (9,201.25) | $ - | $ - | $ (9,201.25) |
| Software & Apps | | $ - | $ (5,000.00) | $ - | $ - | $ (5,000.00) |
| Website Hosting | | $ - | $ - | $ - | $ (266.50) | $ (266.50) |
| **Total Computer/IT/IP Expense** | | $ - | $ (238,031.01) | $ - | $ (1,874.89) | $ (239,905.91) |
| Insurance | | $ - | $ (2,166.50) | $ - | $ - | $ (2,166.50) |
| **Office & Administrative Expense** | | | | | | $ - |
| Bank Fees & Service Charges | | $ (69.38) | $ (77.08) | $ (77.08) | $ (77.08) | $ (300.63) |
| Equipment Rental | | $ - | $ (1,989.90) | $ - | $ - | $ (1,989.90) |
| Office Supplies/Printing/Copy | | $ (3.17) | $ (3.53) | $ (3.53) | $ (3.53) | $ (13.76) |
| Business Meals | | $ (423.88) | $ (470.97) | $ (470.97) | $ (470.97) | $ (1,836.79) |
| **Total Office & Administrative Expense** | | $ (496.43) | $ (2,541.48) | $ (551.58) | $ (551.58) | $ (4,141.08) |
| Outsourced Services | | $ - | $ - | $ - | $ - | |
| Consulting Services | | $ - | $ - | $ - | $ - | |
| **Utilities** | | | | | | |
| Electricity | | $ - | $ - | $ - | $ (5,107.63) | $ (5,107.63) |
| HVAC | | $ - | $ (256.19) | $ - | $ - | $ (256.19) |
| CAM Charges | | $ - | $ (20,364.16) | $ - | $ - | $ (20,364.16) |
| Water & Sewer | | $ - | $ (1,708.55) | $ - | $ - | $ (1,708.55) |
| Gas Service | | $ - | $ (132.09) | $ - | $ - | $ (132.09) |
| Pest Control | | $ - | $ (244.65) | $ - | $ - | $ (244.65) |
| Waste Management | | $ - | $ (351.81) | $ - | $ - | $ (351.81) |
| **Total Utilities** | | $ - | $ (23,057.46) | $ - | $ (5,107.63) | $ (28,165.09) |
| **Occupancy** | | | | | | |
| Rent | | $ - | $ (33,408.51) | $ - | $ - | $ (33,408.51) |
| Office Security | | $ - | $ (31,111.90) | $ - | $ - | $ (31,111.90) |
| Repair & Maintenance - Building | | $ - | $ (1,777.19) | $ - | $ - | $ (1,777.19) |
| Janitorial | | $ - | $ (5,983.33) | $ - | $ - | $ (5,983.33) |
| **Total Occupancy** | | $ - | $ (72,280.93) | $ - | $ - | $ (72,280.93) |
| Supplies | | $ - | $ (1,258.02) | | | $ (1,258.02) |
| Telephone | | | $ (18,337.88) | | | $ (18,337.88) |
| **Personnel Expenses** | | | | | | $ - |
| Salaries & Wages - Base | | $ - | $ (168,467.44) | $ - | $ (168,467.44) | $ (336,934.88) |
| Payroll Tax | | $ - | $ (13,287.76) | $ - | $ (13,287.76) | $ (26,575.52) |
| Alex Jones Salary | | $ - | $ (20,000.00) | $ - | $ (20,000.00) | $ (40,000.00) |

EXHIBIT

A

006131

Case 22-60043 Document 98 Filed in TXSB on 08/24/22 Page 6 of 6

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 4 - Week 7)**

**Between August 20, 2022 and September 16, 2022**

| | Period | 08/20/2022-08/26/2022 | 08/27/2022-09/02/2022 | 09/03/2022-09/09/2022 | 09/10/2022-09/16/2022 | Total |
|---|---|---|---|---|---|---|
| **Total Personnel Expenses** | | $ - | $ (201,755.20) | $ - | $ (201,755.20) | $ (403,510.40) |
| **Travel** | | | | | | $ - |
| Mileage/Parking/Tolls | | $ (150.67) | $ (167.41) | $ (167.41) | $ (167.41) | $ (652.90) |
| Vehicle Leases | | $ - | $ - | $ (1,470.56) | $ - | $ (1,470.56) |
| **Total Travel Expenses** | | $ (150.67) | $ (167.41) | $ (1,637.97) | $ (167.41) | $ (2,123.46) |
| **Total Operating Expenses** | | $ (647.10) | $ (577,137.87) | $ (2,189.56) | $ (209,456.72) | $ (789,431.24) |
| ***Non-Operating Expenses*** | | | | | | $ - |
| Payment on PQPR Note | | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| AMEX Payment | | $ - | $ - | $ - | $ - | $ - |
| **Total Other Expenses** | | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| **Professional Fees** | | | | | | |
| Subchapter v Trustee retainer | | | | | $ (25,000.00) | $ (25,000.00) |
| Fulfillment Expert | | $ (12,500.00) | $ - | $ - | $ - | $ (12,500.00) |
| Witness expenses and cost | | | | | | |
| Pattis & Smith | | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| Reynal Law Firm, PC | | $ - | $ - | $ (50,000.00) | $ - | $ (50,000.00) |
| SALLC Fees | | $ - | $ - | $ - | | $ - |
| Shannon & Lee LLP | | $ - | $ - | $ - | | $ - |
| Ray Battaglia | | $ - | $ - | $ - | | $ - |
| **Total Professional Fees** | | $ (12,500.00) | $ - | $ (150,000.00) | $ (25,000.00) | $ (187,500.00) |
| **Total Cash Flow** | | $ 727,435.62 | $ (33,948.36) | $ (225,531.18) | $ 192,201.66 | $ 660,157.73 |

006132

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

IN RE:                                    §               Case No. 22-60043
                                          §
FREE SPEECH SYSTEMS, LLC,                 §               Chapter 11 (Subchapter V)
                                          §
     Debtor                          §

# EXHIBIT 6

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
September 13, 2022
Nathan Ochsner, Clerk

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## THIRD INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). On August 24, 2022, the Court entered a *Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Second Interim Order") [Dkt. No. 98]. This order is the third interim order ("Third Interim Order"), negotiated between the Debtor and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral. The findings contained in the First Interim Order are incorporated by reference.

### NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. Interim Use. The Court approves the interim use of cash collateral as set forth herein.

2.    <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.    <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>").  All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.    <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Third Interim Order (the "<u>Interim Period</u>") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.    <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, either directly or indirectly, as that term is defined in section 101(31) of the Bankruptcy Code.  Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $20,000.

6.    <u>Payment to PQPR for Inventory Purchase</u>. The (i) rights of Creditors and parties in interest to object to the appropriateness of post-petition payments to PQPR for Inventory Purchases and file pleadings with the Court seeking to clawback the PQPR Payment and (ii) the obligation of the Debtor to provide notice

of a PQPR Payment to creditors and parties in interest as set forth in the First and Second Interim Cash Collateral Orders are fully preserved by this Order.

7.      <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.      <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.      <u>Adequate Protection – Replacement Liens</u>.  The adequate protection and related carve out set forth in the First and Second Interim Orders are incorporated in the Third Interim Order.

10.     <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.     <u>Credit Card Processing</u>. The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.

12.     <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13.     <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14.     <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on October 12, 2022, at 10:00 a.m. Central time.


Signed:  September 13, 2022

_____
Christopher Lopez
United States Bankruptcy Judge

006137

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 8- Week 11)**

**Between September 17, 2022 and October 14, 2022**

| | Period | 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | Total |
|---|---|---|---|---|---|---|
| | Week Number | 8 | 9 | 10 | 11 | |
| **Income** | | | | | | |
| Product Sales | | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 4,000,000.00 |
| Advertising | | $ 100,000.00 | $ 100,000.00 | $ 100,000.00 | $ 100,000.00 | $ 400,000.00 |
| Donations | | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 12,564.99 |
| **Total Income** | | $ 1,103,141.25 | $ 1,103,141.25 | $ 1,103,141.25 | $ 1,103,141.25 | $ 4,412,564.99 |
| **Selling & Product Costs** | | | | | | |
| Inventory Purchase | | $ (225,294.19) | $ (225,294.19) | $ (225,294.19) | $ (225,294.19) | $ (901,176.75) |
| Repay PQPR Inventory | | $ - | $ - | $ - | $ - | $ - |
| Merchant Account Fees | | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (196,000.00) |
| Shipping cost for drop ship orders | | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (53,144.99) |
| Fulfillment Services | | $ (293,902.44) | $ (293,902.44) | $ (293,902.44) | $ (293,902.44) | $ (1,175,609.76) |
| Processor Fees | | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (160,000.00) |
| eCommerce Store Maintenance | | $ - | $ (27,270.00) | $ - | $ - | $ (27,270.00) |
| Texas Sales Tax | | $ - | $ (5,337.87) | $ - | $ - | $ (5,337.87) |
| **Total Cost of Goods Sold** | | $ (621,482.87) | $ (654,090.74) | $ (621,482.87) | $ (621,482.87) | $ (2,518,539.36) |
| **Operating Expenses** | | | | | | |
| **Advertising & Promotion** | | | | | | |
| Advertising & Promotion | | $ - | $ (3,041.98) | $ - | $ - | $ (3,041.98) |
| Print Media | | $ - | $ (3,000.00) | $ - | $ - | $ (3,000.00) |
| Radio Show Advertising | | $ - | $ (11,500.00) | $ - | $ - | $ (11,500.00) |
| **Total Advertising & Promotion** | | $ - | $ (17,541.98) | $ - | $ - | $ (17,541.98) |
| **Computer/IT/IP Expense** | | | | | | |
| Internet & TV services | | $ - | $ (2,082.90) | $ - | $ (1,608.39) | $ (3,691.30) |
| Software License Fees | | $ - | $ (140.80) | $ - | $ - | $ (140.80) |
| Server Hosting Service | | $ - | $ (28,595.13) | $ - | $ - | $ (28,595.13) |
| CDN Video Cloud Storage | | $ - | $ (55,728.00) | $ - | $ - | $ (55,728.00) |
| Satellite Service | | $ - | $ (137,282.93) | $ - | $ - | $ (137,282.93) |
| Imaging License Fee | | $ - | $ (9,201.25) | $ - | $ - | $ (9,201.25) |
| Software & Apps | | $ - | $ (5,000.00) | $ - | $ - | $ (5,000.00) |
| 62410 Contract Broadcase Services | | $ (11,200.00) | | | | $ (11,200.00) |
| 62420 Contract Radio Show Production | | $ (25,000.00) | | | | $ (25,000.00) |
| 62430 Contract Video Production | | $ (10,000.00) | | | | $ (10,000.00) |
| 62470 Free Lance Contributors | | $ (3,500.00) | | | | $ (3,500.00) |
| Website Hosting | | $ - | $ - | $ - | $ - | |
| **Total Computer/IT/IP Expense** | | $ (49,700.00) | $ (238,031.01) | $ - | $ (1,608.39) | $ (289,339.41) |
| Insurance | | $ - | $ (2,166.50) | $ - | | $ (2,166.50) |
| **Office & Administrative Expense** | | | | | | |
| Bank Fees & Service Charges | | $ (77.08) | $ (77.08) | $ (77.08) | $ (77.08) | $ (308.34) |
| Equipment Rental | | $ - | $ (1,989.90) | $ - | $ - | $ (1,989.90) |
| Office Supplies/Printing/Copy | | $ (3.53) | $ (3.53) | $ (3.53) | $ (3.53) | $ (14.11) |
| Business Meals | | $ (470.97) | $ (470.97) | $ (470.97) | $ (470.97) | $ (1,883.89) |
| **Total Office & Administrative Expense** | | $ (551.58) | $ (2,541.48) | $ (551.58) | $ (551.58) | $ (4,196.24) |
| **Utilities** | | | | | | |
| Electricity | | $ - | $ - | $ - | $ (5,107.63) | $ (5,107.63) |
| HVAC | | $ - | $ (256.19) | $ - | $ - | $ (256.19) |
| CAM Charges | | $ - | $ (20,364.16) | $ - | $ - | $ (20,364.16) |
| Water & Sewer | | $ - | $ (1,708.55) | $ - | $ - | $ (1,708.55) |

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 8- Week 11)**

**Between September 17, 2022 and October 14, 2022**

| | Period | 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | Total |
|---|---|---|---|---|---|---|
| Gas Service | | $ - | $ (132.09) | $ - | $ - | $ (132.09) |
| Pest Control | | $ - | $ (244.65) | $ - | $ - | $ (244.65) |
| Waste Management | | $ - | $ (351.81) | $ - | $ - | $ (351.81) |
| **Total Utilities** | | **$ -** | **$ (23,057.46)** | **$ -** | **$ (5,107.63)** | **$ (28,165.09)** |
| **Occupancy** | | | | | | |
| Rent | | $ - | $ (33,408.51) | $ - | $ - | $ (33,408.51) |
| Office Security | | $ - | $ (31,111.90) | $ - | $ - | $ (31,111.90) |
| Repair & Maintenance - Building | | $ - | $ (1,777.19) | $ - | $ - | $ (1,777.19) |
| Janitorial | | $ - | $ (5,983.33) | $ - | $ - | $ (5,983.33) |
| **Total Occupancy** | | **$ -** | **$ (72,280.93)** | **$ -** | **$ -** | **$ (72,280.93)** |
| Supplies | | $ - | $ (1,258.02) | $ - | $ - | $ (1,258.02) |
| Telephone | | $ - | $ (18,337.88) | $ - | $ - | $ (18,337.88) |
| **Personnel Expenses** | | | | | | $ - |
| Salaries & Wages - Base | | $ - | $ (168,467.44) | $ - | $ (168,467.44) | $ (336,934.88) |
| Payroll Tax | | $ - | $ (13,287.76) | $ - | $ (13,287.76) | $ (26,575.52) |
| Alex Jones Salary | | $ - | $ (20,000.00) | $ - | $ (20,000.00) | $ (40,000.00) |
| **Total Personnel Expenses** | | **$ -** | **$ (201,755.20)** | **$ -** | **$ (201,755.20)** | **$ (403,510.40)** |
| **Travel** | | | | | | |
| Mileage/Parking/Tolls | | $ (167.41) | $ (167.41) | $ (167.41) | $ (167.41) | $ (669.64) |
| Vehicle Leases | | $ - | $ - | $ - | $ (1,470.56) | $ (1,470.56) |
| **Total Travel Expenses** | | **$ (167.41)** | **$ (167.41)** | **$ (167.41)** | **$ (1,637.97)** | **$ (2,140.20)** |
| **Total Operating Expenses** | | **$ (50,419.00)** | **$ (577,137.87)** | **$ (719.00)** | **$ (210,660.78)** | **$ (838,936.64)** |
| **Non-Operating Expenses** | | | | | | |
| Payment on PQPR Note | | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| AMEX Payment | | $ - | $ - | $ - | $ - | |
| **Total Other Expenses** | | **$ (5,000.00)** | **$ (5,000.00)** | **$ (5,000.00)** | **$ (5,000.00)** | **$ (20,000.00)** |
| **Professional Fees** | | | | | | |
| Subchapter v Trustee retainer | | | | | | |
| Fulfillment Expert | | $ (22,487.56) | $ - | $ - | $ - | $ (22,487.56) |
| Economic Loss Expert | | | | | | $ - |
| Alex Jones at Trial Cost | | $ (80,920.00) | | | | $ (80,920.00) |
| Witness expenses and trial costs | | $ (34,048.00) | | | | $ (34,048.00) |
| Brittany Paz | | | | | | $ - |
| Pattis & Smith | | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| Reynal Law Firm, PC | | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| SALLC Fees | | | $ - | $ - | $ (188,018.31) | $ (188,018.31) |
| Shannon & Lee LLP | | | $ - | $ - | $ (207,348.36) | $ (207,348.36) |
| Ray Battaglia | | | $ - | $ - | $ (47,316.80) | $ (47,316.80) |
| **Total Professional Fees** | | **$ (137,455.56)** | **$ -** | **$ (200,000.00)** | **$ (442,683.47)** | **$ (780,139.03)** |
| **Total Cash Flow** | | **$ 288,783.82** | **$ (133,087.37)** | **$ 275,939.38** | **$ (176,685.88)** | **$ 254,949.95** |



EXHIBIT

A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 7

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 13, 2022

Nathan Ochsner, Clerk

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## FOURTH INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion").   In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein.  The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). On August 24, 2022, the Court entered a *Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Second Interim Order") [Dkt. No. 98].  On September 13, 2022, the Court entered a *Third Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Third Interim Order") [Dkt. No. 151].  This order is the fourth interim order ("Fourth Interim Order"), negotiated between the Debtor, PQPR and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral.  The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1. <u>Interim Use</u>. The Court approves the interim use of cash collateral as set forth herein.

2. <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3. <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4. <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Fourth Interim Order (the "<u>Interim Period</u>") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5. <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $10,000.

6. <u>Payment to PQPR for Inventory Purchase</u>. The (i) rights of Creditors and parties in interest to object to the appropriateness of post-petition payments to PQPR for Inventory Purchases and file pleadings with the Court seeking to clawback the PQPR Payment and (ii) the obligation of the Debtor to provide notice

of a PQPR Payment to creditors and parties in interest as set forth in the First and Second Interim Cash Collateral Orders are fully preserved by this Order.

7. <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8. <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9. <u>Adequate Protection – Replacement Liens</u>.  The adequate protection and related carve out set forth in the First Second and Third Interim Orders are incorporated in the Fourth Interim Order.

10. <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11. <u>Credit Card Processing</u>. The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.

12. <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13.    <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14.    <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on October 26, 2022, at 1:00 p.m. Central time.


Signed:  October 13, 2022

_____
Christopher Lopez
United States Bankruptcy Judge

**NEW 2 WEEK BUDGET**

| | 10/15/2022-<br>10/21/2022<br>12 | 10/22/2022-<br>10/28/2022<br>13 | *Total* |
|---|---|---|---|
| **Week Number** | | | |
| **Income** | | | |
| Product Sales | $ 595,489.01 | $ 595,489.01 | $ 1,190,978.03 |
| Advertising | - | - | - |
| Donations | 3,141.25 | 25,000.00 | 28,141.25 |
| **Total Income** | **598,630.26** | **620,489.01** | **1,219,119.27** |
| | | | |
| **Selling & Product Costs** | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (152,310.35) |
| Repay PQPR Inventory | - | - | - |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (53,594.01) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (15,823.63) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (190,556.48) |
| Processor Fees | (23,819.56) | (23,819.56) | (47,639.12) |
| eCommerce Store Maintenance | (25,000.00) | - | (25,000.00) |
| Texas Sales Tax | - | - | - |
| **Total Cost of Goods Sold** | **(254,961.80)** | **(229,961.80)** | **(484,923.59)** |
| | | | |
| **Operating Expenses** | | | |
| **Advertising & Promotion** | | | |
| Advertising & Promotion | - | - | - |
| Print Media | - | - | - |
| Radio Show Advertising | - | - | - |
| **Total Advertising & Promotion** | **-** | **-** | **-** |
| | | | |
| **Computer/IT/IP Expense** | | | |
| Internet & TV services | (1,608.39) | - | (1,608.39) |
| Software License Fees | - | - | - |
| Server Hosting Service | - | - | - |
| CDN Video Cloud Storage | - | - | - |
| Satellite Service | - | - | - |
| Imaging License Fee | - | - | - |
| Software & Apps | - | - | - |
| Website Hosting | (266.50) | - | (266.50) |
| **Total Computer/IT/IP Expense** | **(1,874.89)** | **-** | **(1,874.89)** |
| | | | |
| **Office & Administrative Expense** | | | |
| Bank Fees & Service Charges | (45.90) | (45.90) | (91.81) |
| Insurance | - | (5,000.00) | (5,000.00) |
| Equipment Rental | - | | |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (4.20) |
| Business Meals | (400.00) | (400.00) | (800.00) |
| **Total Office & Administrative Expense** | **(448.00)** | **(5,448.00)** | **(5,896.01)** |
| | | | |
| **Utilities** | | | |
| Utility Deposit | | | |
| Electricity | (5,107.63) | - | (5,107.63) |
| HVAC | - | - | - |
| CAM Charges | - | - | - |
| Water & Sewer | - | - | - |
| Gas Service | - | - | - |
| Pest Control | - | - | - |
| Waste Management | - | - | - |
| **Total Utilities** | **(5,107.63)** | **-** | **(5,107.63)** |
| | | | |
| **Occupancy** | | | |
| Rent | - | - | |
| Office Security | (3,975.00) | (3,975.00) | (7,950.00) |
| Repair & Maintenance - Building | - | (2,500.00) | (2,500.00) |
| Supplies | (5,000.00) | (2,500.00) | (7,500.00) |
| Telephone | | | |

EXHIBIT

A

006145

| | | | |
|---|---:|---:|---:|
| Janitorial | - | - | - |
| **Total Occupancy** | **(8,975.00)** | **(8,975.00)** | **(17,950.00)** |
| | | | |
| **Personnel Expenses** | | | |
| Salaries & Wages - Base | (140,000.00) | - | (140,000.00) |
| Payroll Tax | (11,200.00) | - | (11,200.00) |
| 62410 Contract Broadcase Services | | (11,200.00) | (11,200.00) |
| 62420 Contract Radio Show Production | | (25,000.00) | (25,000.00) |
| 62430 Contract Video Production | | (10,000.00) | (10,000.00) |
| 62470 Free Lance Contributors | (3,500.00) | | (3,500.00) |
| Free Lance Contributors | - | - | - |
| Alex Jones Salary | (20,000.00) | - | (20,000.00) |
| **Total Personnel Expenses** | **(174,700.00)** | **(46,200.00)** | **(220,900.00)** |
| | | | |
| **Travel** | | | |
| Mileage/Parking/Tolls | (100.00) | (100.00) | (200.00) |
| Vehicle Leases | - | - | - |
| **Total Travel Expenses** | **(100.00)** | **(100.00)** | **(200.00)** |
| | | | |
| **Total Operating Expenses** | **(191,205.53)** | **(60,723.00)** | **(251,928.53)** |
| | | | |
| | | | |
| ***Non-Operating Expenses*** | | | |
| Payment on PQPR Note | (5,000.00) | (5,000.00) | (10,000.00) |
| **Total Other Expenses** | **(55,000.00)** | **(55,000.00)** | **(110,000.00)** |
| | | | |
| **Professional Fees** | | | |
| CRO Fees | - | (50,000.00) | (50,000.00) |
| Financial Adviosr Fee | - | - | - |
| Shannon & Lee LLP | - | - | - |
| Ray Battaglia | - | (30,000.00) | (30,000.00) |
| **Total Professional Fees** | **-** | **(80,000.00)** | **(80,000.00)** |
| | | | |
| **Total Cash Flow** | **97,462.94** | **194,804.21** | **292,267.15** |

006146

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 8

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 26, 2022

Nathan Ochsner, Clerk

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

### FIFTH INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). On August 24, 2022, the Court entered a *Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Second Interim Order") [Dkt. No. 98]. On September 13, 2022, the Court entered a *Third Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Third Interim Order") [Dkt. No. 151]. On October 13, 2022, the Court entered a *Fourth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Third Interim Order") [Dkt. No. 238]. This order is the Fifth interim order ("Fifth Interim Order"), negotiated between the Debtor, PQPR and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final

hearing on the use of cash collateral. The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      Interim Use. The Court approves the interim use of cash collateral as set forth herein.

2.      Interim Order. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.      DIP Account. The Debtor shall maintain debtor in possession ("DIP") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "DIP Account"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.      Terms of Cash Collateral Use. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Fifth Interim Order (the "Interim Period") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.      No Payments to Insiders. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $10,000.

6.     <u>Payment to PQPR for Inventory Purchase</u>. The (i) rights of Creditors and parties in interest to object to the appropriateness of post-petition payments to PQPR for Inventory Purchases and file pleadings with the Court seeking to clawback the PQPR Payment as set forth in the First and Second Interim Cash Collateral Orders are fully preserved by this Order and (ii) the Debtor shall provide notice to creditors and parties in interest upon the upon payment in full of the $500,000 inventory purchase payment to PQPR originally scheduled to be paid in the Second Interim Cash Collateral Order and the time for objections to that payment shall expire 30 days following the date the notice of final payment is filed with the Court.

7.     <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.     <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.     <u>Adequate Protection – Replacement Liens</u>.  The adequate protection and related carve out set forth in the First Second Third and Fourth Interim Orders are incorporated in the Fifth Interim Order.

10.     <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.     <u>Credit Card Processing</u>. The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order*

*Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.

12.     <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13.     <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14.     <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on November 21, 2022, at 2:00 p.m. Central time.


Signed:  October 26, 2022

_____
Christopher Lopez
United States Bankruptcy Judge

| | CURRENT 4 WEEK BUDGET | | | | | |
|---|---|---|---|---|---|---|
| Week Number | 10/29/2022-11/04/2022 **14** | 11/05/2022-11/11/2022 **15** | 11/12/2022-11/18/2022 **16** | 11/19/2022-11/25/2022 **17** | **Total** | *NOTES* |
| **Income** | | | | | | |
| Product Sales *(Net of 4.5% Merchant Fee)* | $ 575,000.00 | $ 575,000.00 | $ 600,000.00 | $ 750,000.00 | $ 2,500,000.00 | *Net of 4.5% CC Merchant fees. Includes Shipping Fees and Sales Tax but excludes any PQPR related sales* |
| Advertising | - | - | - | - | - | |
| Refund of Chargeback Reserve | 618,000.00 | | - | - | 618,000.00 | |
| Donations | 50,000.00 | 10,000.00 | 20,000.00 | 15,000.00 | 95,000.00 | |
| **Total Income** | **1,243,000.00** | **585,000.00** | **620,000.00** | **765,000.00** | **3,213,000.00** | |
| **Selling & Product Costs** | | | | | | |
| Inventory Cost | (89,125.00) | (89,125.00) | (93,000.00) | (116,250.00) | (387,500.00) | |
| PQPR Inventory Purchase | (50,000.00) | (50,000.00) | (50,000.00) | (50,000.00) | (200,000.00) | *Per 2nd interim cash collateral order ECF 98* |
| Fulfillment Services | (115,000.00) | (115,000.00) | (111,000.00) | (138,750.00) | (479,750.00) | |
| Processor Fees | - | - | - | - | - | *Auriam contract was cancelled 10/20, expect there to be a reduced fee in the future* |
| eCommerce Store Maintenance | - | - | (12,500.00) | - | (12,500.00) | *Final ECDN Audit bills* |
| Texas Sales Tax (20% of Sales @ 6.25%) | (7,187.50) | (7,187.50) | (7,500.00) | (9,375.00) | (31,250.00) | |
| **Total Cost of Goods Sold** | **(261,312.50)** | **(261,312.50)** | **(274,000.00)** | **(314,375.00)** | **(1,111,000.00)** | |
| **Operating Expenses** | | | | | | |
| **Advertising & Promotion** | | | | | | |
| Print Media | - | - | (3,000.00) | - | (3,000.00) | |
| Radio Show Advertising | (14,760.00) | - | - | - | (14,760.00) | |
| **Total Advertising & Promotion** | **(14,760.00)** | **-** | **(3,000.00)** | **-** | **(17,760.00)** | |
| **Computer/IT/IP Expense** | | | | | | |
| Internet & TV services | (2,500.00) | - | (1,750.00) | - | (4,250.00) | |
| Server Hosting / Cloud Service / Ecomm | (90,000.00) | - | (15,000.00) | - | (105,000.00) | |
| Satellite Service | (140,000.00) | - | - | - | (140,000.00) | |
| Telecommunications | (18,500.00) | - | (2,000.00) | - | (20,500.00) | |
| Image License, Software & Other | - | - | (10,000.00) | - | (10,000.00) | |
| **Total Computer/IT/IP Expense** | **(251,000.00)** | **-** | **(28,750.00)** | **-** | **(279,750.00)** | |
| **Office & Administrative Expense** | | | | | | |
| Bank Fees & Service Charges | (200.00) | (200.00) | (200.00) | (200.00) | (800.00) | |
| Insurance | - | - | - | (5,000.00) | (5,000.00) | *Liability and property, we don't have current Workers Comp policy* |
| Rent | (34,858.32) | | - | - | (34,858.32) | |
| Utilites | (3,100.00) | - | (6,000.00) | - | (9,100.00) | |
| Janitorial | (3,000.00) | - | (2,000.00) | - | (5,000.00) | |
| Office Security | (9,000.00) | (4,000.00) | (4,000.00) | (4,000.00) | (21,000.00) | |
| Repair & Maintenance | - | - | - | (2,500.00) | (2,500.00) | *Includes Konica Minolta copier lease* |
| Supplies/Printing/Copy | (2,000.00) | (1,000.00) | (5,000.00) | (1,000.00) | (9,000.00) | |
| Business Meals | (400.00) | (400.00) | (400.00) | (400.00) | (1,600.00) | |
| **Total Office & Administrative Expense** | **(52,558.32)** | **(5,600.00)** | **(17,600.00)** | **(13,100.00)** | **(88,858.32)** | |
| **Personnel Expenses** | | | | | | |
| Salaries & Wages & Benefits | (110,000.00) | - | (110,000.00) | - | (220,000.00) | |
| Payroll Tax | (10,400.00) | - | (10,400.00) | 0.09 | (20,799.91) | |
| Contract Employees | (49,450.00) | (4,450.00) | (4,450.00) | (4,450.00) | (62,800.00) | |
| Consulting Services | (2,400.00) | (1,500.00) | (2,000.00) | (1,500.00) | (7,400.00) | *HR and Bookeeping Fees* |
| Alex Jones Salary | (20,000.00) | - | (20,000.00) | - | (40,000.00) | |
| **Total Personnel Expenses** | **(192,250.00)** | **(5,950.00)** | **(146,850.00)** | **(5,949.91)** | **(350,999.91)** | |
| **Travel** | | | | | | |
| Mileage/Parking/Tolls | (500.00) | (100.00) | (100.00) | (100.00) | (800.00) | |
| Vehicle Leases | - | - | - | (550.00) | (550.00) | |
| **Total Travel Expenses** | **(500.00)** | **(100.00)** | **(100.00)** | **(650.00)** | **(1,350.00)** | |
| **Total Operating Expenses** | **(511,068.32)** | **(11,650.00)** | **(196,300.00)** | **(19,699.91)** | **(738,718.23)** | |
| ***Non-Operating Expenses*** | | | | | | |
| Payment on PQPR Note | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) | (20,000.00) | |
| **Total Other Expenses** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(20,000.00)** | |
| **Professional Fees** | | | | | | |
| CRO Fees | - | (50,000.00) | - | (50,000.00) | (100,000.00) | |
| Trustee Fees | (15,000.00) | (15,000.00) | (15,000.00) | (15,000.00) | (60,000.00) | |
| Trustee Counsel | (15,000.00) | (15,000.00) | (15,000.00) | (15,000.00) | (60,000.00) | |
| Ray Battaglia | - | - | - | (50,000.00) | (50,000.00) | |
| **Total Professional Fees** | **(30,000.00)** | **(80,000.00)** | **(30,000.00)** | **(130,000.00)** | **(270,000.00)** | |
| **Total Cash Flow** | **435,619.18** | **227,037.50** | **114,700.00** | **295,925.09** | **1,073,281.77** | |



EXHIBIT

A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| **Debtor.** | § | **Chapter 11 (Subchapter V)** |

---

### NOTICE OF APPEARANCE AND REQUEST FOR NOTICE

---

PLEASE TAKE NOTICE that, BRADLEY J. REEVES, appears on behalf of Reeves Law, PLLC, a creditor and interested party, in the above Bankruptcy and pursuant to Rules 2002, 3017, and 9010, requests that all notices be given, or required to be given in this case, and all papers served, or required to be served in this case, be given to and served upon the underigned at the office, address, and telephone number set forth below:

Bradley J. Reeves
State Bar No. 24068266
REEVES LAW, PLLC
702 Rio Grande St., Suite 203
Austin, Texas 78701
Telephone: (512) 827-2246
Facsimile: (512) 318-2484
Email: brad@brtx.law

PLEASE TAKE FURTHER NOTICE that, pursuant to Bankruptcy Rule 2002 and 9007, and all applicable local rules of the Bankruptcy Court, the foregoing request includes, without limitation, all notices of order, applications, complaints, demands, objections, hearings, motions, petitions, orders, pleadings, or requests, and any other documents brought before the Bankruptcy Court in this case, whether formal or informal, written or oral, and whether transmitted or conveyed by mail, electronic delivery, telephone, facsimile, or otherwise.

Dated: November 17, 2022.

Respectfully submitted,

**REEVES LAW, PLLC**

By: */s/ Bradley J. Reeves*
Bradley J. Reeves
State Bar No. 24068266
brad@brtx.law
702 Rio Grande St., Suite 306
Austin, TX 78701
Telephone:     (512) 827-2246
Facsimile:      (512) 318-2484

***Attorney for Creditor and Interested Party,***
***Reeves Law, PLLC***

006154

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that notice of the filing of this document has been served on the parties through the Court's CM/ECF system on November 17, 2022.


 */s/ Bradley J. Reeves*
Bradley J. Reeves

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| FREE SPEECH SYSTEMS, LLC | ) | Case No. 22-60043 |
| | ) | |
| Debtor. | ) | |

**SUBCHAPTER TRUSTEE'S MOTION FOR ENTRY OF AN ORDER
AUTHORIZING RETENTION OF M3 ADVISORY PARTNERS, LP
AS FINANCIAL ADVISOR TO THE SUBCHAPTER V TRUSTEE**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

Melissa Haselden, ("Trustee") respectfully states the following in support of this motion (the "Motion"):

**Summary of Relief Requested**

1.      The Trustee seeks entry of an order (the "Order"), authorizing the Trustee to retain and employ M3 Advisory Partners, LP ("M3") as her financial advisor effective as of October 20, 2022 in accordance to the terms and conditions of the engagement letter between the Trustee and M3, dated October 19, 2022, attached as **Exhibit B** (the "Engagement Letter").  In support of this Motion, the Trustee submits the declaration of Brian Griffith (the "Griffith Declaration"), a Managing Director of M3, attached as **Exhibit A**.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Subchapter V Trustee confirms her consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are §§ 105 and 363 of the Bankruptcy Code, Bankruptcy Rule 2002(a)(2), and Rules 2002-1(a)(2) and 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**APPLICATION**

5.      The Trustee is the duly qualified and acting Subchapter V Trustee for the estate of the Free Speech Systems, LLC ("Debtor"). The Debtor initiated the bankruptcy case on July 29, 2022 (the "Petition Date") via the filing of a voluntary chapter 11 petition.

6.      On September 20, 2022, the Court entered the *Order Expanding the Subchapter V Trustee's Duties Pursuant to 11 U.S.C. § 1183(b)(2) of the Bankruptcy Code* [Docket No. 183].

7.      In recognition of the unique complexities involved in this matter, the Trustee seeks approval to retain M3 as her financial advisor. The Trustee identified the need for M3 as her advisor to assist with general matters related to the investigation mandated by the Court as well as the fulfillment of her duties in this unique case.

8.      To accomplish these goals, the Trustee hereby files this Application pursuant to §§ 327(a), 328, and 704 of the Bankruptcy Code. The Trustee requests authority to retain M3, as counsel pursuant to the terms of the attached proposed engagement agreement (the "Engagement

Letter"), attached as Exhibit B.  The Trustee requests that the employment be effective as of October 20, 2022.

8. The Trustee selected M3 to render professional services to her in her role as subchapter V Trustee, which include, but are not limited to, the following responsibilities:

    a)  Assisting in the investigation required by the Court;

    b)  Assisting the Trustee in analyzing claims owned by the estate against third parties arising under chapter 5 of the Bankruptcy Code and other applicable law;

    c)  Supporting the Trustee in the bankruptcy case, any adversary proceedings, and other proceedings before the Bankruptcy Court, and in any other judicial or administrative proceeding;

    d)  Performing any other financial advisory services that may be appropriate in connection with the foregoing.

10. The Trustee selected M3 because its professionals have extensive experience in matters relating to the retail and other relevant industries, bankruptcy matters, investigations, and efforts to maximize value.  This case presents unique issues.  M3 has the expertise and capacity to address the needs of the estate.  The Trustee believes that M3 can provide the estate with the required financial advisory expertise to allow the Trustee to administer the estate and discharge her fiduciary duties under the circumstances effectively and prudently.  Because of the anticipated complexity investigating the matters ordered by the Court and facilitating development of a confirmable plan in this complicated case, the Trustee believes retention of M3 is necessary due to its array of expertise.

## M3's Qualifications

11.     M3 is an independent corporate turnaround and advisory firm providing operational, strategic, and financial advice for clients.  On a combined basis, M3's principals have worked on more than 200 restructurings throughout their careers, including on numerous retail industry engagements and other industries relevant to the business of the Debtor.  *See In re Tailored Brands, Inc.*, 20-33900 (MI) (Bankr.S.D.TX. October 6, 2020) [Docket No. 799], *In re Neiman Marcus Group LTD LLC*, (DRJ) (Bankr.S.DTX. July 16, 2020) [Docket No. 1225], *In re Barneys New York, Inc*., No. 19-36300 (CMG) (Bankr. S.D.N.Y. Sept. 20, 2019) [Docket No. 274], and *In re Sears Holdings Corp*., No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 19, 2018) [Docket No. 814].

12.     Brian Griffith has more than 20 years of experience as a restructuring professional, and has developed an expertise in providing restructuring advisory and consulting services across a wide range of industries throughout his career.  Brian Griffith will be responsible for the overall design and delivery of the services to be provided by M3 pursuant to this engagement as set forth in the Engagement Letter and the Motion.  Brian Griffith's prior experience encompasses a broad range of restructuring related services including: (i) investigations; (ii) stabilizing business operations; (iii) negotiations with creditors, and (iv) improving and managing liquidity.

## Scope of Services

13.     Consistent with the terms of the Engagement Letter, M3 will, among other things, provide the following services to the Trustee:

> (a)   provide support to the Client in its evaluation of the expenditures of the Debtor;

> (b)   review transfers made by the Debtor; including payments, distributions or withdrawals to insiders;

> (c)   provide support to the Client in its evaluation of the PQPR claim;

(d)   assist the Client in its investigation of potential claims and causes of action ordered by the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") on September 20, 2022;

(e)   provide support to the Client, as requested by it, in evaluating the business operations and financial prospects of the Debtor;

(f)   advise and assist the Client and its counsel with on-going assessment of the Debtor's financial performance and its ability to repay its outstanding obligations; and

(g)   provide such other services as M3 and the Client shall otherwise agree in writing.

### **Professional Compensation**

14.     M3 was not engaged prior to the bankruptcy filing.  It is not owed any amounts with respect to prepetition fees and expenses. M3 intends to apply to the Court for allowance of compensation and reimbursement of expenses for advisory support services in accordance with the terms and conditions set forth in the Engagement Letter (the "Fee and Expense Structure") as well as the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and orders of the Court.

15.     The Trustee negotiated a compensation agreement designed to fit the particular needs and possibilities of this case.  M3 is sensitive to the equities and unusual circumstances of this case and therefore agreed to a reduction in compensation below its standard rates.  M3's standard hourly rates as of October 2022, with a 30% discount, will apply.  M3 agrees to not raise its rates with regards to the matters for which it is being retained without seeking further order of this Court.

16.     The standard hourly rates charged by M3 professionals anticipated to be assigned to this case are as follows:

| Title | Per Hour (USD) |
|---|---|
| Managing Partner | $1,285 |
| Senior Managing Directors | $1,155 |
| Managing Directors | $970-1,100 |
| Directors | $790-$895 |
| Vice President | $710 |
| Senior Associate | $605 |
| Associate | $520 |
| Analyst | $415 |

17.     The compensation terms in the Engagement Letter are more favorable than M3's normal and customary compensation for comparable cases, both in- and out-of-court, involving the services to be provided.  In addition, these terms are reasonable and at the low end of the range of fees typically charged by firms of similar caliber for comparable services.

18.     In addition to the fees outlined above, M3 will bill for reasonable direct expenses incurred on the Trustee's behalf during its engagement.  Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement, such as certain telephone, overnight mail, messenger, travel, meals, accommodations, and other expenses specifically related to the engagement.

## No Duplication of Services

19.     M3 will use reasonable best efforts to ensure that the services provided will complement, and not duplicate, the activities of the Debtor's workforce or the services to be rendered by other professionals for the Trustee retained in this chapter 11 case.

## M3's Disinterestedness

20.     To the best of the Trustee's knowledge, and except to the extent disclosed herein and in the Griffith Declaration: M3 (a) has no connection with the Debtor, its creditors, or other parties in interest, or the attorneys or accountants of the foregoing, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee and (b) does not hold or represent any interest

adverse to the Debtor's estate.  The Griffith Declaration shows that M3 is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

21.     To the extent that any new relevant facts or relationships bearing on the connections described herein during the period of M3's retention are discovered or arise, M3 will use reasonable efforts to file promptly a supplemental declaration.

## CONCLUSION

22.     Section 327(a) authorizes the retention of M3 as financial advisor for the Trustee to be compensated in accordance with § 328 as set forth herein and in the Engagement Agreement. The Trustee has not given any compensation or promised any compensation to M3, except as set forth in the Engagement Agreement.  In addition, the Trustee has not sought or obtained leave to employ any other professional to represent the Trustee on the same matters as she proposes M3 represent her.

23.     In reaching her decision, the Trustee has evaluated the estate's available resources, the complexity of the case, the investigation and associated risks.  Under the circumstances, the Trustee believes that the terms of the proposed compensation arrangement are both reasonable and prudent and provide her the necessary assistance for the case.

WHEREFORE, the Trustee respectfully requests that an order be entered (a) approving this Application and authorizing the Trustee to employ and retain M3 to represent the Trustee as her financial advisor consistent with the terms set forth herein and in the Engagement Agreement; and (b) granting the Trustee any other relief that is just and proper.

Dated: November 19, 2022

/s/ Elizabeth C. Freeman

**JACKSON WALKER LLP**
Elizabeth C. Freeman (TX Bar No. 24009222)
Sean Gallagher (TX Bar No. 24101781)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:    (713) 752-4200
Facsimile:    (713) 752-4221
Email: efreeman@jw.com
Email: sgallagher@jw.com

*Counsel to for Melissa Haselden Subchapter V Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 19, 2022, a copy of the foregoing was served via the Court's ECF system upon all parties receiving notice through same.

*/s/ Elizabeth C. Freeman*
Elizabeth C. Freeman

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FREE SPEECH SYSTEMS LLC, | ) | Case No. 22-60043 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DECLARATION OF BRIAN GRIFFITH IN SUPPORT OF
THE APPLICATION TO RETAIN JACKSON WALKER LLP
AS COUNSEL FOR THE SUBCHAPTER V TRUSTEE**

The undersigned proposed attorney for the above-captioned debtor and debtor-in-possession submits this verified statement of disinterestedness pursuant to Bankruptcy Rule 2014(a).

1.     My name is Brian Griffith.  I am over the age of 18 years, I am competent to make this declaration, and I have personal knowledge of the facts stated herein.  Each and every statement contained herein is true and correct.

2.     I am a Managing Director at M3 Advisory Partners, LP ("M3").  M3 maintains its offices at 1700 Broadway, 19th Floor, New York, NY, 10019.  M3's main telephone number is 212-202-2200.

3.     In conjunction with the Trustee's retention of M3, I directed a search of M3's conflict system for each of the Debtor, the Debtor's creditors, affiliates, and insiders, and the principal of the Debtor (the "Potential Parties in Interest").

4.     M-III may represent other affiliates whose identities and affiliation did not show up on the conflicts system.  It is possible that there are creditors whom the Debtor did not identify in their records that are clients of M3.  The following summarizes the findings gleaned from my

006166

review of the information available on the M3's conflicts system divided into current clients of M3 that are also creditors of the Debtor, former clients, and affiliates of current clients of M3 that are also creditors of the Debtor, and my and M3's connections with the Debtor and its current and former officers, directors, and professionals.

**A.     M3's Relationship to the Debtor**

1.     M3 is not a creditor of the Debtor (including by reason of unpaid fees for prepetition services) or an equity security holder of the Debtor; is not and has not been, within two (2) years before the date of the filing of the petition, a director, officer or an employee of the Debtor; and does not have any interest materially adverse to the interests of the Debtor's estate, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

**B.     M3's Relationship to the Trustee**

6.     M3 and the Trustee entered into the engagement on October 19, 2022.  M3 has had no other representation of or relationship with the Trustee.

**C.     No Clients of M3 are Creditors of the Debtor**

7.     No creditors of the Debtor are or have been clients of M-III.

**D.     M3's Connections with the Trustee's Professionals**

8.     M3 has been employed in matters in which Jackson Walker LLP is employed by the Debtor.  More often than not, M3 has been retained by an official committee of unsecured creditors appointed in the case or a creditor in those cases in which Jackson Walker LLP represents or represented the Debtor.  M-III is not currently employed in any matter by the same estate or party in which Jackson Walker LLP is employed.

9.     Except as set forth herein, neither I nor M3 have had any connection with the Debtor, insiders or affiliates of the Debtor, the Debtor's creditors, the Trustee, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any other person

employed in the Office of the United States Trustee, and are disinterested persons within the meaning of 11 U.S.C. § 101(14), to the best of my knowledge.

**E.**     **Statement Regarding United States Trustee Guidelines**

10.     M3 shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtor's chapter 11 case in compliance with sections 330 and 331 of the Bankruptcy Code, and applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any other applicable procedures and orders of the Court.  M3 also intends to make a reasonable effort to comply with the United States Trustee's requests for information and additional disclosures as set forth in the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013 (the "U.S. Trustee Fee Guidelines"), both in connection with this Application as well as any interim and final fee applications that may be filed by M3 in connection with this case.

11.     M3 will periodically review both the changes in identifiable parties in interest of the Debtor and clients of M3 as such information becomes available or relevant, and will update this disclosure as appropriate.

12.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed November 18, 2022

/s/ *Brian Griffith*
Brian Griffith

# **Exhibit B**

006169



October 19, 2022

Melissa Haselden
Sub Chapter V Trustee Free Speech System LLC
Haselden Farrow PLLC
Pennzoil Place
700 Milam, Suite 1300
Houston, TX 77002

Attention:    Retention of Financial Advisor

Engagement Letter

Dear Ms. Haselden:

This letter agreement (this "***Agreement***") sets forth the terms and conditions of the engagement (the "***Engagement***") of M3 Advisory Partners, LP ("***M3***") to provide the Services (as defined below) to you as the subchapter V trustee (the "**Client**") for Free Speech Systems, LLC (the "***Debtor***").  M3 and the Client are collectively referred to in this Agreement as the "***Parties***."

    1.   Services:  The Client hereby retains M3 to provide, and M3 hereby agrees to provide, the following services (the "***Services***") upon the terms and subject to the conditions set forth in this Agreement:

        (a)   provide support to the Client in its evaluation of the expenditures of the Debtor;

        (b)   review transfers made by the Debtor; including payments, distributions or withdrawals to insiders;

        (c)   provide support to the Client in its evaluation of the PQPR claim;

        (d)   assist the Client in its investigation of potential claims and causes of action ordered by the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") on September 20, 2022;

        (e)   provide support to the Client, as requested by it, in evaluating the business operations and financial prospects of the Debtor;

        (f)   advise and assist the Client and its counsel with on-going assessment of the Debtor's financial performance and its ability to repay its outstanding obligations; and

        (g)   provide such other services as M3 and the Client shall otherwise agree in writing.

M3 ADVISORY PARTNERS, LP   •   1700 BROADWAY, 19TH FLOOR, NEW YORK, NY 10019
T: (212) 202-2200   •   F: (212) 531-4532   •   WWW.M3-PARTNERS.COM

006170

2.   Engagement Term.  The Engagement shall commence on the date of acceptance of this Agreement and may be terminated by either Party at any time upon ten business days' written notice.  Following any such termination, neither Party shall have further liability to the other, except with respect to fees and expenses earned and incurred through the date of termination and any provisions of this Agreement which are expressly stated to survive its termination or expiration.

3.   Staffing.  M3 will staff a team that it believes to be appropriate to provide the Services in accordance with the terms of this Agreement.  The individual members of the team are subject to change by M3 from time to time in its sole discretion.  M3 also may provide Services through independent contractors and, unless the context shall otherwise indicate, references in this Agreement to M3 and its employees or staff shall be deemed to include any such independent contractors and their respective employees.

4.   Compensation for Services.  (a)  M3's compensation for services rendered under this Agreement shall be paid by the Debtor by wire transfer of immediately available funds in accordance with instructions provided from time to time by M3 to the Client and will consist of the following:

(i)   Service Fees:  As compensation for providing the Services hereunder, M3 shall be entitled to non-refundable professional fees based on the actual hours incurred by M3 personnel on matters pertinent to the Engagement (the "*Service Fees*").  The Service Fees shall be based upon M3's standard hourly rates as follows:

| Professional | Standard Rate |
|---|---|
| Managing Partner | $1,285 |
| Senior Managing Director | $1,155 |
| Managing Director | $970 - $1,100 |
| Director | $790 - $895 |
| Vice President | $710 |
| Senior Associate | $605 |
| Associate | $520 |
| Analyst | $415 |

In an effort to be sensitive to the equities of this case and in recognition of the Trustee's efforts to negotiate a compensation agreement designed to fit the particular needs and possibilities of this case, M3 is willing to provide a 30% discount to the standard rates shown above.  M3 shall deliver to the Client an invoice for the Service Fees (as reduced by such discount) on a monthly basis and the Debtor shall pay to M3 the amount invoiced for the relevant period in accordance with the provisions of Section 4(b) below.  From time to time in the normal course of business M-3 may adjust its billing rates upon notice to the Client and subject to approval of the Court.



(ii)    Expenses:  In addition to any compensation for providing the Services, the Debtor shall reimburse M3 for all reasonable and documented out-of-pocket expenses incurred in the performance of the Services (including, without limitation, reasonable travel costs).  Any request for reimbursement of an out-of-pocket expense in excess of $100 shall be accompanied by reasonable back-up for each expense and as otherwise required by applicable law.

(b)  All amounts owing hereunder shall, subject to approval of the Court, be due and payable by wire transfer of immediately available funds in accordance with instructions from time to time provided by M3 within 15 days following receipt of the invoice therefor, except that the Deferred Fees shall be payable from available funds without any requirement of further invoice promptly upon approval of the Court following the successful conclusion of the Debtor's bankruptcy proceeding. In the event that M3 does not receive payment of amounts payable hereunder within 15 days following receipt of such invoice, M3 shall have the right (subject to approval of the Court) to suspend further Services until payment is received on past due invoices and/or the Retainer is restored.  In the event that M3 so suspends the Services, M3 shall not be responsible or liable for any resulting loss, damage or expense due to such suspension.

(c)  Unless expressly stated otherwise in the relevant invoice, none of the amounts invoiced by M3 from time to time with respect to the Engagement shall be contingent upon, or in any way tied to the delivery of, any reports or other work product in the future, nor upon the outcome of any case or matters.  All fees payable to M3 are exclusive of taxes or similar charges, which shall be the sole obligation of the Debtor (other than any taxes which may be payable on account of M3's income generally, which shall be the obligation of M3).

(d)  The provisions of this Section shall survive the termination or expiration of this Agreement.

5.  Cooperation from Client.  In order to properly perform the Services and fulfill its responsibilities on a timely basis, M3 will rely on the timely cooperation of the Client and, where applicable, the Debtor and their respective professional advisors, including, without limitation, making available to M3 relevant data, information and personnel, performing any tasks or responsibilities assigned to the Client and notifying M3 of any issues or concerns that the Client may have relating to the Services.  The Client understands and acknowledges that M3's proper delivery of the Services is dependent upon timely decisions and approvals by the Client and access to all relevant materials. M3 shall have no responsibility or liability for any delays, additional costs or other deficiencies caused by the Client failing to properly fulfill its responsibilities under this Agreement.

6.  Deliverables.  (a) In connection with the Engagement, M3 may furnish the Client with information, advice, reports, analyses, presentations or other materials (the "**Deliverables**"). The Deliverables may contain factual data, the interpretation of which may change over the project term as more information or better understanding becomes available.  The Client acknowledges



that M3 will have no obligation to update the Deliverables as part of the Services in the event of such a change.

(b)  Any materials prepared by M3 are solely for the confidential use of the Client and will not be distributed, reproduced, summarized, referred to, disclosed publicly or given to any other person without the prior written consent of M3, *provided* that such permission shall not be required if the materials are required to be disclosed by applicable law or by order or act of any court or governmental or regulatory authority or body.

(c)  The provisions of this Section shall survive the termination or expiration of this Agreement.

7.  <u>Limitations on Services</u>.  (a)  The Services are limited to those specifically noted in this Agreement.

(b) M3 does not provide accounting or tax-related assistance and no Deliverable or other information or advice provided to the Client shall be deemed to be accounting or tax-related assistance.  The Client shall be solely responsible for determining the accounting and tax-related implications of the Deliverables and other information and advice provided to it by M3.  M3 shall not express any professional opinions on financial statements or perform attest procedures with respect to other information in conjunction with the Engagement.  The Services are not designed, nor should they be relied upon, to disclose weaknesses in internal controls, financial statement errors, irregularities or illegal acts.  M3 shall assume the accuracy and completeness of all information submitted by or on behalf of the Client to M3 for analysis and which will form the basis of M3's conclusions, without any obligation of M3 to verify the accuracy or completeness of such information, and M3 shall not be responsible for any analysis, advice or other Services to the extent based on inaccurate or incomplete information provided or accepted by or on behalf of the Client.

(c)  The Services shall not include preparing, auditing or otherwise attesting in any way (including without limitation, with respect to the accuracy, achievability, reliability, relevance, usefulness or other appropriateness) to the Client's financial projections, and the Client has not engaged M3 for that purpose.  The Services are provided based upon the understanding that the Client has sole responsibility for its financial projections (including preparation thereof), developing underlying assumptions and providing any disclosure related thereto.  To the extent that, during the performance of Services hereunder, M3 is required to consider the Client's financial projections, the Client understands that M3's procedures with respect to such projections do not constitute an examination in accordance with procedures established by the American Institute of Certified Public Accountants and do not and are not intended to provide any assurance on any aspect of such projections, including, without limitation, the reasonableness of the assumptions underlying such projections, nor do they provide assurance that M3 might not become aware of significant matters affecting the reasonableness of the projections that might be disclosed by more extensive procedures.  There will usually be differences between projected and actual



results, and those differences may be material.  The Client understands and agrees that M3 will have no responsibility or liability relating to any such differences.

(d)  M3 does not provide investment advice and the Services shall not include the provision of investment advice.  The Client shall have sole responsibility for all investment decisions made by it.  Similarly, M3 is providing advisory and consulting services only and will not make management decisions for the Client.  Although M3 may from time to time suggest or recommend options that may be available to the Client, the ultimate decision with respect to such options rests with the Client and the Client shall be solely responsible for such decision and its outcome.  M3 makes no representation, promise or guarantee with respect to the outcome of any matter affecting the Client.

(e)  To the extent that the performance of the Services requires that M3 form conclusions or reach opinions, M3 shall do so without regard to or consideration of the impact that such conclusions or opinions may have on the initiation or outcome of any litigation to which the Client is or may become a party.

(f)  The Client shall be solely responsible for the work and fees of any third parties engaged by the Client to provide services in connection with the Engagement, regardless of whether such third party was recommended to the Client by M3 or M3 is involved with the services provided by it.  M3 shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.

(g)  The provisions of this Section shall survive the termination or expiration of this Agreement.

8.  <u>Confidentiality</u>.  (a)  Each Party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other Party in the scope of the Engagement (the "***Confidential Information***"), and neither Party will disclose any Confidential Information of the other Party to any other person or entity.  For the avoidance of doubt, the term "Confidential Information" shall include (i) the terms of this Agreement, (ii) all non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, and models and (iii) any work product relating to the business of either Party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants. Notwithstanding the foregoing, the term "Confidential Information" shall not include information that (a) is or becomes publicly available other than as a result of disclosure by the receiving Party in violation of this Agreement, (b) was already known to the receiving Party or (c) was independently acquired or developed by the receiving Party from a source not known by it to be bound by a confidentiality requirement with respect to such information.  In performing the Services, M3 will use and rely primarily on the Confidential Information and on information available from public sources without having independently verified any of such information.



(b)  The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, M3 from making such disclosures of Confidential Information that M3 reasonably believes are required by law or any regulatory requirement or authority, or to clear client conflicts.  M3 also may disclose Confidential Information to its partners, directors, officers, employees, independent contractors, agents and advisors who have a need to know the Confidential Information for the proper performance of the Services or otherwise in connection with the Engagement.  M3 may make reasonable disclosures of Confidential Information to third parties to the extent that M3 reasonably believes that such disclosure is consistent with its performance of the Services.  In addition, M3 will have the right to disclose to any person that it provided services to the Client or its affiliates and a general description of such services, but such disclosure shall not provide any other Confidential Information about M3's involvement with the Client.

(c) The provisions of this Section shall survive for a period of two years following the termination or expiration of this Agreement and shall supersede any separate confidentiality or analogous agreement between M3 and the Client.

9.   Intellectual Property.  Upon payment in full of all amounts owing to M3 hereunder (but subject to the provisions of Section 7 and 8 of this Agreement), the Client will own all Deliverables furnished by M3 to the Client in connection with the Services, *provided* that M3 will retain ownership of (a) all concepts, analyses, know-how, tools, frameworks, models and industry perspectives used and/or developed by M3 in connection with the Services and (b) all other intellectual property not containing Confidential Information which has been developed by M3 outside of the provision of the Services (the "***M3 Tools***"), it being understood that M3 will have no ownership right to, and will maintain in accordance with the provisions of this Agreement the confidentiality of, any Confidential Information contained in the M3 Tools.  To the extent that the Deliverables include any M3 Tools, M3 hereby grants the Client a non-exclusive, non-transferable, non-sublicensable worldwide, royalty-free license to use and copy the M3 Tools solely as part of the Deliverables and subject to the confidentiality provisions contained in this Agreement.  The Client acknowledges and agrees that the M3 Tools are provided to the Client on an "as is" basis and without any warranty or condition of any kind (whether express, implied or otherwise), and including without limitation any implied warranty of merchantability or fitness for a particular purpose. The provisions of this Section shall survive the termination or expiration of this Agreement.

10.  Limitation on Damages.  In no event shall M3 or any of its affiliates, equity holders, partners, directors, employees, agents, representatives and contractors, including past, present or future partners, principals and personnel of each (collectively hereinafter called the "***M3 Representatives***") be liable to the Client or its affiliates, successors, or any person claiming on behalf of or in the right of the Client (including the Client's owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors) for (i) any amount which, when taken together with all losses for which M3 and the M3 Representatives are liable in connection with this Agreement or the Engagement, would exceed the amount of fees for the Services actually received by M3 from the Client in connection with the Engagement during the immediately preceding 12 months or (ii) any special, consequential, incidental or exemplary damages or loss (or any lost profits, savings or business opportunity) (collectively, the "***Liability Cap***").  This



paragraph shall apply regardless of the nature of any claim(s) (including claims based on contract, statute, negligence, tort, strict liability or otherwise), regardless of any failure of the essential purpose of any remedy and whether or not M3 or any M3 Representative was advised of the possibility of the damage or loss asserted, but shall not apply to the extent finally determined by final and non-appealable judgment of a court of competent jurisdiction to be prohibited by applicable law.  For the avoidance of doubt, the Parties hereby irrevocably agree that the Liability Cap is intended to be the total limit of liability for M3 and all other M3 Representatives in the aggregate for any and all claims or demands by anyone in connection with this Agreement, the Services and the Engagement, including without limitation any liability to the Client and to any others making claims relating to the Services and the Engagement.  Any such claimants shall allocate among themselves any amounts payable by M3, but the failure of the claimants to reach such an agreement shall not affect the enforceability of the Liability Cap.  Under no circumstances shall the collective liability of M3 and the other M3 Representatives in connection with this Agreement exceed the Liability Cap.  The provisions of this Section shall survive the termination or expiration of this Agreement.

11.  Client Acknowledgement.  The Client hereby acknowledges and agrees that M3 may, in the ordinary course of its business, serve clients who are competitive with, or have conflicting interests with, the Client.  Consistent with its confidentiality obligations hereunder and its confidentiality obligations to its other clients, M3 will not advise or consult to the Client with respect to any aspect of M3's engagement or potential engagement with any other client, potential client or former client.  Similarly, M3 will not advise or consult to any other client, potential client or former client with respect to any aspect of the Engagement.  M3 will maintain the confidentiality of the Confidential Information in accordance with the terms of this Agreement and, similarly, will not share confidential information of any client, potential client or former client of M3 with the Client.  The provisions of this Section shall survive the termination or expiration of this Agreement.

12.  Miscellaneous.  (a)  This Agreement (i) constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements (both written and oral) among the parties with respect to the subject matter hereof, and (ii) may be modified, amended or supplemented only by prior written agreement of each of the Parties.

(b)  The invalidity, illegality, or unenforceability of any provision in or obligation under this Agreement in any jurisdiction shall not affect or impair the validity, legality, or enforceability of the remaining provisions or obligations under this Agreement or of such provision or obligation in any other jurisdiction.  If feasible, any such offending provision shall be deemed modified to be within the limits of enforceability or validity; *provided* that, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.



(c)  M3's services hereunder are personal in nature and may not be assigned without the written consent of the Client.  The obligations of M3 hereunder are owing only to the Client and there shall be no third-party beneficiaries of the obligations of M3 hereunder.

(d)  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart.

(e)  This Agreement and all controversies arising from or related to performance hereunder shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts to be executed and performed within such state.  The Parties hereby submit to the exclusive jurisdiction of and venue in the federal and state courts located in the State of New York and waive any right to trial by jury in connection with any dispute related to this Agreement; provided that the exclusive jurisdiction and venue shall be the Court for so long as it maintains jurisdiction over the Debtor's bankruptcy proceeding.  The provisions of this paragraph shall survive the termination or expiration of this Agreement.

*[Remainder of Page Intentionally Left Blank]*



This Agreement shall be binding upon the Parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

M3 ADVISORY PARTNERS, LP

By _____
 Name: Mohsin Y. Meghji
 Title: Managing Member

ACCEPTED AND AGREED
as of the date first set forth above:

Melissa Haselden, in her capacity as subchapter V trustee

By: __/s/ Melissa Haselden_____
 Name: Melissa Haselden
 Title: Subchapter V Trustee



006178

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 (Subchapter V) |
| FREE SPEECH SYSTEMS, LLC | ) |
| | ) Case No. 22-60043 |
| Debtor. | ) |
| | ) |

**ORDER GRANTING SUBCHAPTER TRUSTEE'S MOTION**
**FOR ENTRY OF AN ORDER AUTHORIZING RETENTION OF M3 ADVISORY PARTNERS,**
**LP AS FINANCIAL ADVISOR TO THE SUBCHAPTER V TRUSTEE**

CAME ON FOR CONSIDERATION the Motion of the Subchapter V Trustee for Entry of an Order Authorizing Retention of M3 Advisory Partners, LP as Financial Advisor ("Motion"). The Court, having considered same, and any response(s) thereto, and found that notice of the Motion was proper is of the opinion that the Motion should be GRANTED; it is therefore ORDERED

1.      The Trustee is authorized to employ and retain M3 Advisory Partners, LP as Financial Advisors effective as of the October 20, 2022 on the terms set forth in the Motion and Engagement Letter.

2.      M3 shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this chapter 11 case\ in compliance with §§ 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, applicable provisions of the Bankruptcy Local Rules, and any other applicable orders of the Court.

3.      M3 is entitled to reimbursement of actual and necessary expenses related to the Motion.

4.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

5.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

6.      The Trustee is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:

_____
CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

### SIXTH INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). On August 24, 2022, the Court entered a *Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Second Interim Order") [Dkt. No. 98]. On September 13, 2022, the Court entered a *Third Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Third Interim Order") [Dkt. No. 151]. On October 13, 2022, the Court entered a *Fourth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Fourth Interim Order") [Dkt. No. 238]. On October 26, 2022, the Court entered a *Fifth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Fifth Interim Order") [Dkt. No. 258]. This order is the Sixth interim order ("Sixth Interim Order"), negotiated between the Debtor, PQPR and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort

Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral.  The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.    <u>Interim Use</u>. The Court approves the interim use of cash collateral as set forth herein.

2.    <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.    <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("DIP") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>").  All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.    <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Sixth Interim Order (the "<u>Interim Period</u>") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.    <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $10,000.

6.      <u>Payment to PQPR for Inventory Purchase</u>. The (i) rights of Creditors and parties in interest to object to the appropriateness of post-petition payments to PQPR for Inventory Purchases and file pleadings with the Court seeking to clawback the PQPR Payment as set forth in the First and Second Interim Cash Collateral Orders are fully preserved by this Order and (ii) the Debtor shall provide notice to creditors and parties in interest upon the upon payment in full of the $500,000 inventory purchase payment to PQPR originally scheduled to be paid in the Second Interim Cash Collateral Order and the time for objections to that payment shall expire 30 days following the date the notice of final payment is filed with the Court.

7.      <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.      <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.      <u>Adequate Protection – Replacement Liens</u>.  The adequate protection and related carve out set forth in the First Second Third and Fourth Interim Orders are incorporated in the Sixth Interim Order.

10.     <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.     <u>Credit Card Processing</u>. The Debtor is authorized to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.  Proceeds

received by FSS for sales of PQPR inventory shall be held by FSS in trust pending distribution to PQPR by FSS.

12.     <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13.     <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14.     <u>Final Cash Collateral Hearing</u>: A further interim hearing on the Motion shall be held before this Court on December ___, 2022, at _____ a.m. Central time.

Houston, Texas
Dated: November ___, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

**CURRENT 4 WEEK BUDGET**

| Week Number | 11/26/2022-12/02/2022 18 | 12/03/2022-12/09/2022 19 | 12/10/2022-12/16/2022 20 | 12/17/2022-12/23/2022 21 | Total | NOTES |
|---|---|---|---|---|---|---|
| **Income** | | | | | | |
| Product Sales *(Net of 6.0% Merchant Fee)* | $ 950,000.00 | $ 800,000.00 | $ 725,000.00 | $ 475,000.00 | $ 2,950,000.00 | *Net of 6.0% CC Merchant fees.  Includes Shipping Fees and Sales Tax but excludes any PQPR related sales* |
| Point of Sales Revenue | | | 191,970.00 | 115,182.00 | 307,152.00 | ▮ Product Sales |
| Advertising | - | - | - | - | - | |
| Refund of Chargeback Reserve | - | - | - | - | - | |
| Donations | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 40,000.00 | |
| **Total Income** | **960,000.00** | **810,000.00** | **926,970.00** | **600,182.00** | **3,297,152.00** | |
| | | | | | | |
| **Selling & Product Costs** | | | | | | |
| Inventory Cost | (117,000.00) | (117,000.00) | (117,000.00) | (117,000.00) | (468,000.00) | *NutriScience Inventory* |
| Inventory Purchases | (250,000.00) | (250,000.00) | (250,000.00) | (250,000.00) | (1,000,000.00) | *Hi-Tec Inventory purchase per payment plan agreement* |
| PQPR Inventory Purchase | (50,000.00) | (50,000.00) | (50,000.00) | (50,000.00) | (200,000.00) | *Per 2nd interim cash collateral order ECF 98* |
| Point of Sale Product Cost | - | - | (93,850.00) | (56,310.00) | (150,160.00) | ▮ *product costs* |
| Fulfillment Services | (190,000.00) | (160,000.00) | (134,125.00) | (87,875.00) | (572,000.00) | *Assumes we do not transition to ▮ before 12/24/22* |
| Processor Fees | - | - | - | - | - | *Arium contract was cancelled 10/20  expect there to be a reduced fee in the future* |
| eCommerce Store Maintenance | - | - | (12,500.00) | - | (12,500.00) | *Final ECDN Audit bills* |
| Texas Sales Tax (20% of Sales @ 6.25%) | (11,875.00) | (10,000.00) | (9,062.50) | (5,937.50) | (36,875.00) | |
| **Total Cost of Goods Sold** | **(618,875.00)** | **(587,000.00)** | **(666,537.50)** | **(567,122.50)** | **(2,439,535.00)** | |
| | | | | | | |
| **Operating Expenses** | | | | | | |
| **Advertising & Promotion** | | | | | | |
| Print Media | - | - | (3,000.00) | - | (3,000.00) | |
| Radio Show Advertising | (14,760.00) | - | - | - | (14,760.00) | |
| **Total Advertising & Promotion** | **(14,760.00)** | **-** | **(3,000.00)** | **-** | **(17,760.00)** | |
| | | | | | | |
| **Computer/IT/IP Expense** | | | | | | |
| Internet & TV services | (2,500.00) | - | (1,750.00) | - | (4,250.00) | |
| Server Hosting / Cloud Service / Ecomm | (90,000.00) | - | (15,000.00) | - | (105,000.00) | |
| Satellite Service | (140,000.00) | - | - | - | (140,000.00) | |
| Telecommunications | (18,500.00) | - | (2,000.00) | - | (20,500.00) | |
| Image License, Software & Other | - | - | (10,000.00) | - | (10,000.00) | |
| **Total Computer/IT/IP Expense** | **(251,000.00)** | **-** | **(28,750.00)** | **-** | **(279,750.00)** | |
| | | | | | | |
| **Office & Administrative Expense** | | | | | | |
| Bank Fees & Service Charges | (200.00) | (200.00) | (200.00) | (200.00) | (800.00) | |
| Insurance | (34,858.32) | - | - | (5,000.00) | (34,858.32) | *Liability and property  we don't have current Workers Comp policy* |
| Rent | - | - | - | - | (34,858.32) | |
| Utilites | (3,100.00) | - | (6,000.00) | - | (9,100.00) | |
| Janitorial | (3,000.00) | - | (2,000.00) | - | (5,000.00) | |
| Office Security | (9,000.00) | (4,000.00) | (4,000.00) | (4,000.00) | (21,000.00) | |
| Repair & Maintenance | - | - | - | (2,500.00) | (2,500.00) | *Includes Konica Minolta copier lease* |
| Supplies/Printing/Copy | (2,000.00) | (1,000.00) | (1,000.00) | (1,000.00) | (9,000.00) | |
| Business Meals | (400.00) | (400.00) | (400.00) | (400.00) | (1,600.00) | |
| **Total Office & Administrative Expense** | **(52,558.32)** | **(5,600.00)** | **(17,600.00)** | **(13,100.00)** | **(88,858.32)** | |
| | | | | | | |
| **Personnel Expenses** | | | | | | |
| Salaries & Wages & Benefits | (110,000.00) | - | (110,000.00) | - | (220,000.00) | |
| Payroll Tax | (10,400.00) | - | (10,400.00) | 0.09 | (20,799.91) | |
| Contract Employees | (49,450.00) | (4,450.00) | (4,450.00) | (4,450.00) | (62,800.00) | |
| Consulting Services | (2,400.00) | (1,500.00) | (2,000.00) | (1,500.00) | (7,400.00) | *HR and Bookeeping Fees* |
| Alex Jones Salary | (20,000.00) | - | (20,000.00) | - | (40,000.00) | |
| **Total Personnel Expenses** | **(192,250.00)** | **(5,950.00)** | **(146,850.00)** | **(5,949.91)** | **(350,999.91)** | |
| | | | | | | |
| **Travel** | | | | | | |
| Mileage/Parking/Tolls | (500.00) | (100.00) | (100.00) | (100.00) | (800.00) | |
| Vehicle Leases | - | - | - | (550.00) | (550.00) | |
| **Total Travel Expenses** | **(500.00)** | **(100.00)** | **(100.00)** | **(650.00)** | **(1,350.00)** | |
| | | | | | | |
| **Total Operating Expenses** | **(511,068.32)** | **(11,650.00)** | **(196,300.00)** | **(19,699.91)** | **(738,718.23)** | |
| | | | | | | |
| **Non-Operating Expenses** | | | | | | |
| Payment on PQPR Note | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) | (20,000.00) | |
| **Total Other Expenses** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(20,000.00)** | |
| | | | | | | |
| **Professional Fees** | | | | | | |
| CRO Fees | - | (50,000.00) | - | (50,000.00) | (100,000.00) | |
| Trustee Fees | (15,000.00) | (15,000.00) | (15,000.00) | (15,000.00) | (60,000.00) | |
| Trustee Counsel | (15,000.00) | (15,000.00) | (15,000.00) | (15,000.00) | (60,000.00) | |
| Legal Fees - Reynal | (42,000.00) | - | - | (18,000.00) | (60,000.00) | |
| Ray Battaglia | - | - | - | (50,000.00) | (50,000.00) | |
| **Total Professional Fees** | **(72,000.00)** | **(80,000.00)** | **(30,000.00)** | **(148,000.00)** | **(330,000.00)** | |
| | | | | | | |
| **Total Cash Flow** | **(246,943.32)** | **126,350.00** | **29,132.50** | **(139,640.41)** | **(231,101.23)** | |
| | | | | | | |
| **Ending Cash** | **253,056.68** | **379,406.68** | **408,539.18** | **268,898.77** | | |

EXHIBIT

A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re**: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | |
| | § | **Case No. 22-60043-11** |
| **Debtor** | § | **(Subchapter V)** |

## SUBCHAPTER V TRUSTEE'S SECOND INTERIM STATUS REPORT

TO THE HONORABLE CHRISTOPHER M. LOPEZ,  U.S. BANKRUPTCY JUDGE:

NOW COMES, MELISSA A. HASELDEN, Subchapter V Trustee ("Trustee") in the above-referenced bankruptcy proceeding, and files this Subchapter V Trustee's Second Interim Status Report, and would respectfully show the Court as follows:

## I.
### BACKGROUND

1.     Debtor commenced this bankruptcy case by filing a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and electing to proceed under subchapter V of chapter 11 on July 29, 2022 (the "Petition Date").

2.     On August 2, 2022, the Office of the United States Trustee for Region 7 appointed Melissa A. Haselden as the Trustee in this case [Dkt. No. 22].

3.     On September 20, 2022, the Court entered its Order Expanding Subchapter V Trustee's Duties under 11 U.S.C. §1183(b)(2) and requiring Trustee to file a report pursuant to 11 U.S.C. §1106(a)(3) & (4) ("Trustee Order") [Docket #183].

## II.

### STATUS UPDATE

4.      Since the entry of the Trustee Order, Trustee begun certain investigatory steps required by the Court which are preliminarily outlined in Trustee First Interim Status Report (Doc. No. 227) and worked with the Debtor to effectuate the following:

   a. Received approval to engage counsel for Trustee to assist with Trustee's duties (Doc. No. 265).

   b. Collaborate with counsel for the Debtor to engage CRO, whose employment was approved by the Court on October 13, 2022 (Doc. No. 239).

   c. Finalize engagement of financial adviser to Trustee and seek approval of employment of the same (Doc. No. 282).,

   d. Trustee and her counsel met with:
      i.     FSS owner, Alex Jones and his counsel,
      ii.    Mark Schwartz and counsel and previously proposed counsel for the Debtor;
      iii.   Dr. David Jones, a principal of PQPR and its counsel and accountant,
      iv.    FSS' CRO,
      v.     Patrick Riley, principal of Blue Ascension;
      vi.    Anthony Gucciardi, principal of the terminated credit card processor;
      vii.   Certain parties selling items through the FSS website;
      viii.  the principal of the new proposed processor and fulfillment consultant and his counsel; and
      ix.    and various employees of FSS to continue to identify cost savings measures and correct operational issues.

   e. Work with CRO and Debtor's counsel to finalize new inventory and fulfillment agreement with non-related, third-party provider which is anticipated to provide significant cost savings to the Debtor.

   f. Work with CRO and Debtor's counsel to finalize a new credit card processing agreement with a non-related third-party provider which will result in significant cost savings for credit card transactions.

2

006187

g.  Trustee, through counsel, has negotiated with the Debtor and primary constituents in this case to facilitate a mediation of disputes in this case and obtained Court approval to proceed with a mediation with Judge Marvin Isgur (Doc. No. 233).

h.  Trustee's counsel worked with Judge Isgur and the parties to the mediation to begin initial pre-mediation steps.

i.  Trustee has begun reviewing financial information from the Debtor with the assistance of M3.  Evaluation of Bitcoin donations and utilization of the funds are included in that investigation.

j.  Trustee, through counsel, propounded discovery on various parties.  The Trustee has received information from the following parties:

  i.  FSS;
  ii.  PQPR;
  iii.  Alex Jones;
  iv.  Auriam; and
  v.  Blue Ascension.

Additional documents are anticipated from several of these parties.  The Trustee reserves the ability to seek to compel production by seeking relief with from Court.

k.  Trustee continues to work with CRO to address operational issues, including fulfillment and staffing.  Further, the Debtor through the CRO is continuing to provide information to M3 to assist in the investigation as well as operational improvements.

l.  The Trustee has identified a number of potential claims and causes of actions.  Certain of these are expected to be the subject of the mediation.  The Trustee has not become aware of any ongoing activity which would give rise to new claims of the Debtor.

3

006188

Respectfully Submitted,

**HASELDEN FARROW PLLC**

*/s/ Melissa A. Haselden*
Melissa A. Haselden
State Bar No. 00794778
700 Milam, Suite 1300
Pennzoil Place
Houston, Texas 77002
Telephone: (832) 819-1149
Facsimile: (866) 405-6038
Email: mhaselden@haseldenfarrow.com

**SUBCHAPTER V TRUSTEE**

4

34580318v.1

006189

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Subchapter V First Interim Status Report was served on the following parties in interest via ECF November 21, 2022:

<u>*/s/ Melissa A. Haselden*</u>
Melissa A. Haselden

5

34580318v.1

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 21, 2022

Nathan Ochsner, Clerk

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
|    Debtor. | § | |

### ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR TO ENTER INTO FULFILLMENT AGREEMENT

On November 15, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for Entry of Order Authorizing Debtor to Enter into Fulfillment Agreement* ("Motion") after due deliberation and consideration and sufficient cause appearing therefor;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

The Motion is hereby granted and the Debtor is authorized to enter into the Fulfillment Agreement with                           . attached to the Motion as Exhibit A.

Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a), and the Bankruptcy Local Rules are satisfied by such notice.

Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon entry. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Signed:  November 21, 2022

_____
Christopher Lopez
United States Bankruptcy Judge

006191

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 21, 2022

Nathan Ochsner, Clerk

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## SIXTH INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). On August 24, 2022, the Court entered a *Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Second Interim Order") [Dkt. No. 98]. On September 13, 2022, the Court entered a *Third Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Third Interim Order") [Dkt. No. 151]. On October 13, 2022, the Court entered a *Fourth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Fourth Interim Order") [Dkt. No. 238]. On October 26, 2022, the Court entered a *Fifth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Fifth Interim Order") [Dkt. No. 258]. This order is the Sixth interim order ("Sixth Interim Order"), negotiated between the Debtor, PQPR and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort

Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral.  The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1. Interim Use. The Court approves the interim use of cash collateral as set forth herein.

2. Interim Order. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3. DIP Account. The Debtor shall maintain debtor in possession ("DIP") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "DIP Account").  All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4. Terms of Cash Collateral Use. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Sixth Interim Order (the "Interim Period") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5. No Payments to Insiders. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $10,000.

6.     <u>Payment to PQPR for Inventory Purchase</u>. The (i) rights of Creditors and parties in interest to object to the appropriateness of post-petition payments to PQPR for Inventory Purchases and file pleadings with the Court seeking to clawback the PQPR Payment as set forth in the First and Second Interim Cash Collateral Orders are fully preserved by this Order and (ii) the Debtor shall provide notice to creditors and parties in interest upon the upon payment in full of the $500,000 inventory purchase payment to PQPR originally scheduled to be paid in the Second Interim Cash Collateral Order and the time for objections to that payment shall expire 30 days following the date the notice of final payment is filed with the Court.

7.     <u>Further Authorization</u>. The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.     <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.     <u>Adequate Protection – Replacement Liens</u>.  The adequate protection and related carve out set forth in the First Second Third and Fourth Interim Orders are incorporated in the Sixth Interim Order.

10.     <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.     <u>Credit Card Processing</u>. The Debtor is authorized to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.  Proceeds

received by FSS for sales of PQPR inventory shall be held by FSS in trust pending distribution to PQPR by FSS.

12.    <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13.    <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14.    <u>Final Cash Collateral Hearing</u>: A further interim hearing on the Motion shall be held before this Court on December 19, 2022, at 3:00 p.m. Central time.

Signed:  November 21, 2022

Christopher Lopez
United States Bankruptcy Judge

006195

| | | | CURRENT 4 WEEK BUDGET | | | |
|---|---|---|---|---|---|---|
| Week Number | 11/26/2022-12/02/2022 18 | 12/03/2022-12/09/2022 19 | 12/10/2022-12/16/2022 20 | 12/17/2022-12/23/2022 21 | Total | NOTES |
| **Income** | | | | | | |
| Product Sales (Net of 6.0% Merchant Fee) | $ 950,000.00 | $ 800,000.00 | $ 725,000.00 | $ 475,000.00 | $ 2,950,000.00 | Net of 6.0% CC Merchant fees.  Includes Shipping Fees and Sales Tax but excludes any PQPR related sales |
| Point of Sales Revenue | | | 191,970.00 | 115,182.00 | 307,152.00 | ▮▮▮ Product Sales |
| Advertising | - | - | - | - | - | |
| Refund of Chargeback Reserve | - | - | - | - | - | |
| Donations | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 40,000.00 | |
| **Total Income** | **960,000.00** | **810,000.00** | **926,970.00** | **600,182.00** | **3,297,152.00** | |
| | | | | | | |
| **Selling & Product Costs** | | | | | | |
| Inventory Cost | (117,000.00) | (117,000.00) | (117,000.00) | (117,000.00) | (468,000.00) | NutriScience Inventory |
| Inventory Purchases | (250,000.00) | (250,000.00) | (250,000.00) | (250,000.00) | (1,000,000.00) | Hi-Tec Inventory purchase per payment plan agreement |
| PQPR Inventory Purchase | (50,000.00) | (50,000.00) | (50,000.00) | (50,000.00) | (200,000.00) | Per 2nd interim cash collateral order ECF 98 |
| Point of Sale Product Cost | - | - | (93,850.00) | (56,310.00) | (150,160.00) | ▮▮▮ product costs |
| Fulfillment Services | (190,000.00) | (160,000.00) | (134,125.00) | (87,875.00) | (572,000.00) | Assumes we do not transition to ▮▮▮ before 12/24/22 |
| Processor Fees | - | - | - | - | - | Arium contract was cancelled 10/20  expect there to be a reduced fee in the future |
| eCommerce Store Maintenance | - | - | (12,500.00) | - | (12,500.00) | Final ECDN Audit bills |
| Texas Sales Tax (20% of Sales @ 6.25%) | (11,875.00) | (10,000.00) | (9,062.50) | (5,937.50) | (36,875.00) | |
| **Total Cost of Goods Sold** | **(618,875.00)** | **(587,000.00)** | **(666,537.50)** | **(567,122.50)** | **(2,439,535.00)** | |
| | | | | | | |
| | | | | | | |
| **Operating Expenses** | | | | | | |
| **Advertising & Promotion** | | | | | | |
| Print Media | - | - | (3,000.00) | - | (3,000.00) | |
| Radio Show Advertising | (14,760.00) | - | - | - | (14,760.00) | |
| **Total Advertising & Promotion** | **(14,760.00)** | **-** | **(3,000.00)** | **-** | **(17,760.00)** | |
| | | | | | | |
| **Computer/IT/IP Expense** | | | | | | |
| Internet & TV services | (2,500.00) | - | (1,750.00) | - | (4,250.00) | |
| Server Hosting / Cloud Service / Ecomm | (90,000.00) | - | (15,000.00) | - | (105,000.00) | |
| Satellite Service | (140,000.00) | - | - | - | (140,000.00) | |
| Telecommunications | (18,500.00) | - | (2,000.00) | - | (20,500.00) | |
| Image License, Software & Other | - | - | (10,000.00) | - | (10,000.00) | |
| **Total Computer/IT/IP Expense** | **(251,000.00)** | **-** | **(28,750.00)** | **-** | **(279,750.00)** | |
| | | | | | | |
| **Office & Administrative Expense** | | | | | | |
| Bank Fees & Service Charges | (200.00) | (200.00) | (200.00) | (200.00) | (800.00) | |
| Insurance | - | - | - | (5,000.00) | (5,000.00) | Liability and property  we don't have current Workers Comp policy |
| Rent | (34,858.32) | - | - | - | (34,858.32) | |
| Utilites | (3,100.00) | - | (6,000.00) | - | (9,100.00) | |
| Janitorial | (3,000.00) | - | (2,000.00) | - | (5,000.00) | |
| Office Security | (9,000.00) | (4,000.00) | (4,000.00) | (4,000.00) | (21,000.00) | |
| Repair & Maintenance | - | - | - | (2,500.00) | (2,500.00) | Includes Konica Minolta copier lease |
| Supplies/Printing/Copy | (2,000.00) | (1,000.00) | (5,000.00) | (1,000.00) | (9,000.00) | |
| Business Meals | (400.00) | (400.00) | (400.00) | (400.00) | (1,600.00) | |
| **Total Office & Administrative Expense** | **(52,558.32)** | **(5,600.00)** | **(17,600.00)** | **(13,100.00)** | **(88,858.32)** | |
| | | | | | | |
| **Personnel Expenses** | | | | | | |
| Salaries & Wages & Benefits | (110,000.00) | - | (110,000.00) | - | (220,000.00) | |
| Payroll Tax | (10,400.00) | - | (10,400.00) | 0.09 | (20,799.91) | |
| Contract Employees | (49,450.00) | (4,450.00) | (4,450.00) | (4,450.00) | (62,800.00) | |
| Consulting Services | (2,400.00) | (1,500.00) | (2,000.00) | (1,500.00) | (7,400.00) | HR and Bookeeping Fees |
| Alex Jones Salary | (20,000.00) | - | (20,000.00) | - | (40,000.00) | |
| **Total Personnel Expenses** | **(192,250.00)** | **(5,950.00)** | **(146,850.00)** | **(5,949.91)** | **(350,999.91)** | |
| | | | | | | |
| **Travel** | | | | | | |
| Mileage/Parking/Tolls | (500.00) | (100.00) | (100.00) | (100.00) | (800.00) | |
| Vehicle Leases | - | - | - | (550.00) | (550.00) | |
| **Total Travel Expenses** | **(500.00)** | **(100.00)** | **(100.00)** | **(650.00)** | **(1,350.00)** | |
| | | | | | | |
| **Total Operating Expenses** | **(511,068.32)** | **(11,650.00)** | **(196,300.00)** | **(19,699.91)** | **(738,718.23)** | |
| | | | | | | |
| **Non-Operating Expenses** | | | | | | |
| Payment on PQPR Note | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) | (20,000.00) | |
| **Total Other Expenses** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(20,000.00)** | |
| | | | | | | |
| **Professional Fees** | | | | | | |
| CRO Fees | - | (50,000.00) | - | (50,000.00) | (100,000.00) | |
| Trustee Fees | (15,000.00) | (15,000.00) | (15,000.00) | (15,000.00) | (60,000.00) | |
| Trustee Counsel | (15,000.00) | (15,000.00) | (15,000.00) | (15,000.00) | (60,000.00) | |
| Legal Fees - Reynal | (42,000.00) | - | - | (18,000.00) | (60,000.00) | |
| Ray Battaglia | - | - | - | (50,000.00) | (50,000.00) | |
| **Total Professional Fees** | **(72,000.00)** | **(80,000.00)** | **(30,000.00)** | **(148,000.00)** | **(330,000.00)** | |
| | | | | | | |
| **Total Cash Flow** | **(246,943.32)** | **126,350.00** | **29,132.50** | **(139,640.41)** | **(231,101.23)** | |
| | | | | | | |
| **Ending Cash** | **253,056.68** | **379,406.68** | **408,539.18** | **268,898.77** | | |

EXHIBIT

A

006196

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 21, 2022

Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

**ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR ENTRY OF ORDER**
**AUTHORIZING DEBTOR TO ENTER INTO FINANCIAL SERVICES AGREEMENT**

On November 14, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for Entry of Order Authorizing Debtor to Enter into Financial Services Agreement* ("Motion") after due deliberation and consideration and sufficient cause appearing therefor;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

The Motion is hereby granted and the Debtor is authorized to enter into the Financial Services Agreement with ██████████████████. attached to the Motion.

Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a), and the Bankruptcy Local Rules are satisfied by such notice.

Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon entry. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Signed:  November 21, 2022

_____
Christopher Lopez
United States Bankruptcy Judge

006197

**SmBus, PlnDue, DsclsDue, ReqSepNtc, Subchapter_V, APPEAL, APPEAL_NAT**

# U.S. Bankruptcy Court
## Southern District of Texas (Houston)
## Bankruptcy Petition #: 22-60043

| | |
|---|---|
| *Date filed:* | 07/29/2022 |
| *Date of Intradistrict transfer:* | 08/04/2022 |
| *341 meeting:* | 09/07/2022 |
| *Deadline for filing claims:* | 10/07/2022 |
| *Deadline for filing claims (govt.):* | 02/07/2023 |
| *Deadline for objecting to discharge:* | 03/10/2023 |

*Assigned to:* Bankruptcy Judge Christopher M. Lopez
Chapter 11
Voluntary
Asset

*Debtor*
**Free Speech Systems LLC**
3019 Alvin Devane Blvd. STE 300
Austin, TX 78741
TRAVIS-TX
SSN / ITIN: xxx-xx-0005

represented by **Raymond William Battaglia**
Law Offices of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX 78218
2106019405
Email: rbattaglialaw@outlook.com

**Kyung Shik Lee**
Kyung S. Lee PLLC
4723 Oakshire Drive
Apt. B
Houston, TX 77027
713-301-4751
Email: kslee50@gmail.com

**R. J. Shannon**
Shannon & Lee LLP
700 Milam St., STE 1300
Houston, TX 77002
713-714-5770
Email: rshannon@shannonpllc.com

**Christina Walton Stephenson**
Crowe & Dunlevy
2525 McKinnon St.
Ste 425
Dallas, TX 75201
214-420-2163
Email: Crissie.Stephenson@crowedunlevy.com

*Trustee*
**Melissa A Haselden**
Haselden Farrow PLLC
Pennzoil Place
700 Milam
Suite 1300
Houston, TX 77002
832.819.1149

represented by **Elizabeth Carol Freeman**
The Law Office of Liz Freeman
PO Box 61209
Houston, TX 77208-1209
832-779-3580
Email: liz@lizfreemanlaw.com

**Melissa Anne Haselden**
Haselden Farrow PLLC

Pennzoil Place
700 Milam
Suite 1300
Houston, TX 77002
832.819.1149
Fax : 866.405.6038
Email: mhaselden@haseldenfarrow.com

*U.S. Trustee*
**US Trustee**
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002
713-718-4650

represented by **Ha Minh Nguyen**
Office of the United States Trustee
515 Rusk St
Ste 3516
Houston, TX 77002
202-590-7962
Email: ha.nguyen@usdoj.gov

**Jayson B. Ruff**
Office of the United States Trustee
515 Rusk St.
Ste. 3516
Houston, TX 77002
713-718-4650
Fax : 713-718-4670
Email: jayson.b.ruff@usdoj.gov

*Creditor Committee*
**Official Committee of Unsecured Creditors**
**of Alexander E. Jones**
c/o Marty L. Brimmage, Jr.
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
214-969-2800

represented by **Marty L Brimmage**
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street
Suite 1800
Dallas, TX 75201
214-969-2885
Fax : 214-969-4343
Email: mbrimmage@akingump.com

| Filing Date | # | Docket Text |
|---|---|---|
| 11/21/2022 | ⬤289 | Courtroom Minutes. Time Hearing Held: 2:00 PM. Appearances: Ray Battaglia, Steve Lemmon, Jarrod Martin, Melissa Haselden, Ryan Chapple, Patrick Magill. (Related documents:6 Emergency Sealed Motion for Cash Collateral, 272 Sealed Motion, 273 Emergency Motion, 274 Sealed Motion, 276 Emergency Motion). Hearing Held. The Sixth Interim Order for Cash Collateral is Approved. The Emergency Motion to Enter into a Fulfillment Agreement is Granted. Order Signed. **A Further Hearing on (Related docs: 6 Cash Collateral, 155 Application Authorizing Employment, and 282 Application to Employ] is scheduled for 12/19/2022 at 03:00 PM.** (ZildeMartinez) (Entered: 11/21/2022) |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      A hearing (the "Hearing") is set for December 19, 2022, at 3:00 p.m. (prevailing Central Time) before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of Texas, Courtroom 401, 515 Rusk, Houston, TX  77002 (the "Court"), to consider the following matters:

**DEBTOR'S EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED LENDER [ECF #6]**

**SUBCHAPTER TRUSTEE'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING RETENTION OF M3 ADVISORY PARTNERS, LP AS FINANCIAL ADVISOR TO THE SUBCHAPTER V TRUSTEE [ECF #282]**

**APPLICATION OF DEBTOR FOR AN ORDER (A) AUHTORIZING EMPLOYMENT OF MARTIN, DISIERE, JEFFERSON & WISDOM L.L.P. UNDER 11 U.S.C. § 327(e), AS SPECIAL COUNSEL, EFFECTIVE AS OF AUGUST 30, 2022, AND (B) GRANTING RELATED RELIEF [ECF #155]**

2.      Parties may attend the Hearing in person or electronically. Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GOTOMEETING platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JUDGELOPEZ". Click the settings icon in the upper right corner and enter your name under the personal information setting.

3.      Parties are encouraged to review the Court's procedures for telephonic appearances located on the Court's website at: https://www.txs.uscourts.gov/content/united-states-bankruptcy-judge-christopher m lopez

4.      The Court has invoked the protocol outlined in General Order 2020-4, as invoked by General Orders 2010 and 2020-10a and extended by General Order 2020-11. These orders may be found at: https://www.txs.uscourts.gov/bankruptcy/genord  Therefore, all persons may appear

electronically via audio and video at the Hearing using the Court's electronic conference systems.

5.      Any exhibit offered by the Debtor will be filed on the Court's docket. Additionally, the Debtor may have demonstrative exhibits to aid in its presentation to the Court, copies of which may be obtained by any party by sending a request to the undersigned counsel to the Debtor at the email addresses listed below.

6.      If any party wishes to offer exhibits, these exhibits should be filed with the Clerk of the Court using the Court's CM/ECF system. Each exhibit should be filed as a separate attachment to an Exhibit List in compliance with Bankruptcy Local Rule 9013 and General Order 2020-04.

7.      Witnesses presented by the Debtor may appear in person or via audio and video connection. Any person wishing to examine the witness will be permitted to do so during the hearing via audio and/or video, subject to approval of the Court.

Respectfully submitted this November 22, 2022.

THE LAW OFFICES OF RAY BATTAGLIA, PLLC.
66 Granburg Circle
San Antonio, Texas 78218
Telephone (210) 601-9405
Email: rbattaglialaw@outlook.com


By:  */s/ Raymond W. Battaglia*            
        Raymond W. Battaglia
        Texas Bar No. 01918055

**ATTORNEYS FOR THE DEBTOR IN POSSESSION**


## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, as set forth below. I further certify that it has been transmitted by first class mail on November 22, 2022, to the parties on the attached service list

*/s/ Raymond W. Battaglia*          
Raymond W. Battaglia

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
|      **Debtor.** | § | |

## <u>CERTIFICATE OF NO OBJECTION</u>

Pursuant to the Local Bankruptcy Rules for the Southern District of Texas, the undersigned counsel for the above-captioned debtor and debtor in possession (the "Debtor") certifies as follows:

1.       On November 3, 2022, the Debtor filed the Motion to Reject Lease or Executory Contract with Auriam Services, LLC [Docket No. 264] (the "Motion").

2.       The deadline for parties to file objections and responses to the Motion was November 25, 2022 (the "Objection Deadline"). No objections or responses to the Motion were filed on the docket on or before the Objection Deadline. Counsel to the Debtor did not receive any other informal responses on or before the Objection Deadline.

3.       The Debtor requests that the Court enter the attached proposed order at the earliest convenience of the Court.

Respectfully submitted this November 29, 2022.

THE LAW OFFICES OF RAY BATTAGLIA, PLLC.
66 Granburg Circle
San Antonio, Texas 78218
Telephone (210) 601-9405
Email: rbattaglialaw@outlook.com

By: _/s/ Raymond W. Battaglia_
       Raymond W. Battaglia
       Texas Bar No. 01918055

**ATTORNEYS FOR THE DEBTOR IN POSSESSION**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system on November 29, 2022.

_/s/ Raymond W. Battaglia_
Raymond W. Battaglia

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| **Debtor.** | § | |

**ORDER APPROVING REJECTION OF AURIAM SERVICES LLC AGREEMENT**
**AND GRANTING RELATED RELIEF**

Upon consideration of the *Motion for Entry Order Approving Rejection of Auriam Services LLC Agreement and Granting Related Relief* (the "Motion") [1] filed by Free Speech Systems, LLC ("FSS" or the "Debtor"), the debtor and debtor-in-possession in the above captioned case (the "Motion"); and it appearing that the Court has jurisdiction over this matter; and it appearing that due notice of the Motion has been provided, and that no other or further notice need be provided; and it further appearing that the relief requested in the Motion is fair and reasonable, was proposed in good faith, is in the best interests of the Debtor and its estate and creditors and is within the business judgment of the Debtor; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Financial Services Agreement (the "Agreement") between the Debtor and Auriam Services, LLC ("Auriam") dated October 1, 2021, as amended from time to time, shall be and hereby is rejected effective as of the Petition Date; and it is further

ORDERED that the Debtor and the Auriam are relieved of any future performance obligations under the Agreement, including, but not limited to any rights to specific performance; and it is further

---

[1] All capitalized terms not defined in this Order shall be defined as set forth in the Motion.

ORDERED that any claims arising out of the rejected Agreement must be filed on or before thirty (30) days following the entry of this Order; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Houston, Texas
Dated: November ___, 2022

_____
CHRISTOPER LOPEZ, UNITED STATES
BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**

**Southern District of Texas**

PDF FILE WITH AUDIO FILE ATTACHMENT

2022-60043

Free Speech Systems LLC

Hearing on Doc. No. 6 and 272

| | |
|---|---|
| Case Type : | bk |
| Case Number : | 2022-60043 |
| Case Title : | Free Speech Systems LLC |
| Audio Date\Time : | 11/21/2022 2:00:11 PM |
| Audio File Name : | 4bk2022-60043_20221121-140011.mp3 |
| Audio File Size : | 13321 KB |
| Audio Run Time : | [00:27:45] (hh:mm:ss) |

**Help using this file:**

An audio file is embedded as an attachment in this PDF document. To listen to the file, click the Attachments tab or the Paper Clip icon.  Select the Audio File and click Open.

**MPEG Layer-3 audio coding technology from Fraunhofer IIS and Thomson.**

**This digital recording is a copy of a court proceeding and is provided as a convenience to the public.  In accordance with 28 U.S.C. § 753 (b) "[n]o transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record."**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| Debtor. | § | |
| --------------------------------------------------- | § | |
| **In re:** | § | |
| | § | |
| **ALEXANDER E. JONES,** | § | **Case No. 22-33553** |
| | § | |
| Debtor. | § | |

**DEBTORS' JOINT MOTION FOR ENTRY OF ORDER AUTHORIZING**
**JOINT ADMINISTRATION OF CHAPTER 11 CASES PURSUANT TO**
**RULE 1015(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Free Speech Systems, LLC ("FSS") and Alexander E. Jones ("Jones") (collectively, the "Debtors"), as debtors and debtors in possession in the above-captioned Chapter 11 cases, file this *Debtors' Joint Motion for Entry of an Order Authorizing Joint Administration of Chapter 11 Cases Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure* (the "Motion") and in support thereof, respectfully state as follows:

**MOTION FOR ENTRY OF ORDER DIRECTING JOINT ADMINISTRATION OF CHAPTER 11 CASES**
**PURSUANT TO RULE 1015(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE - Page 1**

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.      BACKGROUND

2.      On July 29, 2022, FSS filed its voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Jones, an employee of FSS, filed his voluntary petition for relief under chapter 11 of the Bankruptcy Code on December 2, 2022.

3.      FSS continues to manage and operate its business as debtor-in-possession pursuant to Bankruptcy Code § 1182(2). Jones continues in possession of his holdings and is managing same as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

4.      Melissa A. Haselden has been appointed as the Chapter 11 Subchapter V Trustee in FSS's chapter 11 case. No committee of unsecured creditors has been appointed in either Debtor's chapter 11 case. No trustee or examiner has been requested or appointed in Jones's Chapter 11 case.

5.      FSS as an entity is engaged in producing and syndicating radio and video talk shows hosted by Jones. FSS additionally offers dietary supplement products, books, t-shirts, and other products, which are advertised by Jones during his radio and video talk shows, for online sale to customers. Jones owns 100% of the outstanding membership interests in FSS.

## III.      RELIEF REQUESTED

6.      Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1015-1 of the Bankruptcy Local Rules for the Southern District of

**MOTION FOR ENTRY OF ORDER DIRECTING JOINT ADMINISTRATION OF CHAPTER 11 CASES PURSUANT TO RULE 1015(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE - Page 2**

006208

Texas (the "<u>Bankruptcy Local Rules</u>"), the Debtors request authorization to jointly administer their Chapter 11 cases for procedural purposes only.

7.      Bankruptcy Rule 1015(b) provides, in relevant part, that "[i]f . . . two or more petitions are pending in the same court by or against . . . a debtor and an affiliate, the court may order a joint administration of the estates." Fed. R. Bankr. P. 1015(b). An "affiliate" is an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor." Jones owns 100% of the outstanding voting securities of FSS. Accordingly, the Bankruptcy Code and Bankruptcy Rules authorize the Court to grant the relief requested herein. Bankruptcy Local Rule 1015-1 further provides for the joint administration of related chapter 11 cases.

8.      Joint administration will save time and money and will avoid duplicative and potentially confusing filings by permitting counsel for all parties in interest to (a) use a single caption on the numerous documents that will be served and filed herein and (b) file papers in one case rather than in multiple cases. Joint administration will also protect parties in interest by ensuring that parties in each Debtor's chapter 11 case will be apprised of all filings and matters before the Court relating to the respective chapter 11 cases. Finally, joint administration will ease the burden on the office of the United States Trustee in supervising these bankruptcy cases.

9.      Joint administration will not adversely affect creditors' rights because this Motion requests only the administrative consolidation of the estates. This Motion does not seek substantive consolidation. As such, each creditor may still file its claim against a particular estate. FSS and

**MOTION FOR ENTRY OF ORDER DIRECTING JOINT ADMINISTRATION OF CHAPTER 11 CASES PURSUANT TO RULE 1015(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE - Page 3**

006209

Jones will file separate operating reports, and will not file a joint Chapter 11 Plan as long as FSS

seeks relief under subchapter V.[1]

      10.      Accordingly, the Debtors respectfully request that the caption of their cases be

modified as follows:

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

</div>

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11 (Subchapter V)[2]** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC, *et al.*,[1]** | § | **Case No. 22-60043** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number (where applicable), are set forth in the Order Directing Joint Administration of Chapter 11 Cases [Docket No. ____].

[2] Only Debtor Free Speech Systems, LLC is seeking relief under subchapter V.

      11.      The Debtors also seek the Court's direction that a notation substantially similar to

the following notation be entered on the docket in each of the Debtors' Chapter 11 Cases to reflect

the joint administration of these cases:

> An order has been entered in this case directing the procedural consolidation
> and joint administration of the Chapter 11 Cases of Free Speech Systems,
> LLC, and Alexander E. Jones. The docket in Case No. 22-60043 should be
> consulted for all matters affecting this case.

      12.      Based on the foregoing, the Debtors submit that the relief requested is necessary

and appropriate, is in the best interests of their estates and creditors and should be granted in all

respects.

---

[1] FSS intends to continue to proceed under subchapter V and this Motion is not a waiver of its rights to proceed under subchapter V nor does it constitute consent to substantive consolidation or conversion to a case under any other section of the Bankruptcy Code.

**MOTION FOR ENTRY OF ORDER DIRECTING JOINT ADMINISTRATION OF CHAPTER 11 CASES PURSUANT TO RULE 1015(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE - Page 4**

006210

13.     An order of joint administration is related to the routine administration of a case and may be entered by the Court in its sole discretion. Moreover, the *ex parte* entry of joint administration orders in related cases such as these is common and generally noncontroversial in this District and others.

## IV.    <u>NOTICE</u>

14.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Debtors' secured creditors; (iii) any party whose interests are directly affected by this specific pleading; (iv) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for any official committees appointed by this Court; (vi) the 20 largest unsecured creditors of each of the Debtors; and (vii) all governmental agencies having a regulatory or statutory interest in these cases. No other or further notice need be provided.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: December 2, 2022.

**CROWE & DUNLEVY, P.C.**

By: */s/ Christina W. Stephenson*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

**LAW OFFICES OF RAY BATTAGLIA, PLLC**

*/s/Raymond W. Battaglia*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Telephone: (210) 601-9405

**COUNSEL TO THE DEBTOR AND DEBTOR-IN-POSSESSION, FREE SPEECH SOCIETY, LLC**

**MOTION FOR ENTRY OF ORDER DIRECTING JOINT ADMINISTRATION OF CHAPTER 11 CASES PURSUANT TO RULE 1015(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE - Page 5**

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
          aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**PROPOSED  ATTORNEYS  FOR  DEBTOR
ALEXANDER E. JONES**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon the parties listed below via e-mail, U.S. Mail, and/or electronic transmission via the Court's ECF noticing system on this 2nd day of December, 2022.

(a) The Office of the United States Trustee for the Southern District of Texas;

(b) The 20 largest unsecured creditors for the Debtor regarding which the pleading impacts, unless and until such time as an official committee of unsecured creditors is appointed, if any;

(c) Counsel to any official committee established in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, if any;

(d) The Office of the Attorney General of the State of Texas;

(e) The United States Attorney's Office for the Southern District of Texas;

(f) The Internal Revenue Service; and

(g) All parties who have filed a notice of appearance and request for notice or service of all pleadings pursuant to Bankruptcy Rule 2002.

*/s/Vickie L. Driver*
Vickie L. Driver

**MOTION FOR ENTRY OF ORDER DIRECTING JOINT ADMINISTRATION OF CHAPTER 11 CASES
PURSUANT TO RULE 1015(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE - Page 6**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11 (Subchapter V)** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | **Case No. 22-60043** |
| | § | |
| Debtor. | § | |
| ------------------------------------------------- | § | |
| In re: | § | |
| | § | |
| **ALEXANDER E. JONES,** | § | **Case No. 22-33553** |
| | § | |
| Debtor. | § | |

**ORDER FOR JOINT ADMINISTRATION
AND/OR TRANSFER OF CASES (Docket #296)**

On the motion for joint administration of these cases under Bankruptcy Rule 1015, the Court orders that the above referenced cases are jointly administered. Additionally, the following checked items are ordered:

1. _____ One disclosure statement and plan of reorganization may be filed for both cases by any plan proponent.

2. _____ Case No. 22-33553 shall be transferred to Judge Christopher M. Lopez, who has the lower numbered case.

3. _____ Parties may request joint hearings on matters pending in any of the jointly administered cases.

4. _____ Other: _____
   _____
   _____
   _____

Only the lines checked are ordered.

Dated: _____     _____
                                            United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

**MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF WAREHOUSE**
**LEASE AGREEMENT WITH EXPO GLO, LLC AND GRANTING RELATED RELIEF**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

> **Represented parties should act through their attorney.**

TO THE HONORABLE CHRISTOPHER LOPEZ, UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Free Speech Systems, LLC ("FSS" or the "Debtor"), the debtor and debtor-in-possession in the above captioned case (the "Case"), and files this *Motion for Entry Order Approving Rejection of Warehouse Lease Agreement with Expo GLO, LLC and Granting Related Relief* (the "Motion"). In support of the Motion, the Debtor respectfully represents as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105(a), 365, and 502 of the Bankruptcy Code ("Bankruptcy Code"), and Rules 6006 of the Federal Rules of

---

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"). Such relief requested is also consistent with the Local Rules of Bankruptcy Procedure for the Southern District of Texas (the "<u>Local Rules</u>").

## **BACKGROUND**

3.     On July 29, 2022 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor has continued to operate its businesses and manage its affairs as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.     On November 30, 2017, the Debtor and Expo GLO, LLC ("Expo") entered into a Lease Agreement (the "<u>Agreement</u>").  Under the Agreement, Expo leased approximately 136,000 square feet of warehouse space located at 6231 E. Stassney Lane, Austin, Texas (the "<u>Leased "Premises</u>").

5.     The Leased Premises was originally occupied by FSS to receive and store merchandise for resale through FSS' sales channels to retail customers.  FSS's employees fulfilled and shipped orders from the Leased Premises.

6.     In mid-2022, the Debtor altered its business plan in an effort to exit the fulfillment business.  The fulfillment operations were taken over by Blue Ascension, LLC ("<u>BA</u>").  BA undertook payment of the rent obligations under the Lease Agreement.

7.     Recently the Debtor sought and obtained Court approval to enter into a new product acquisition and sales fulfillment agreement [ECF # 286] through a third party logistics provider ("<u>3PL</u>").  Under the "Fulfillment Agreement" the 3PL will source inventory, pick, pull and ship merchandise sold through FSS' sales channel.  The change in operations will eliminate the need for the Leased Premises.

8.     On information and belief, the Agreement terminates in March of 2023 and the monthly rent is $28,800, plus monthly CAM charges.

## LAW AND AUTHORITIES

9.      Rejection of an executory contract is governed by section 365(a) of the Bankruptcy Code, which permits a debtor-in-possession to assume or reject an executory contract.  A debtor's decision to reject an executory contract must be based on the debtor's business judgment. *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.),* 872 F.2d 36, 39-40 (3d Cir. 1989).

10.      The business judgment test is not a strict standard and merely requires a showing that either assumption or rejection of a contract will benefit the debtors' estate. *In re Orion Pictures Corp.,* 4 F.3d 1095, 1099 (2d Cir. 1993); *see Lubrizol Enter., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.),* 756 F.2d 1043, 1047 (4th Cir. 1985) ("Transposed to  the bankruptcy context [from corporate  litigation], the [business judgment] rule . . . requires that the decision be accepted by courts unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained  business discretion.").

11.      The Debtor no longer requires the Leased Premises for its operations and intends to remove all of its personal property from the Leased Premises by mid December 2022.

12.      The Debtor submits that rejection of the Agreement is in the best interests of the Debtor's estate and falls squarely within the business discretion of the Debtor.

WHEREFORE, the Debtor respectfully request that the Court grant the relief requested herein by entering an order, in the form annexed hereto as Exhibit A, (i) approving the rejection of the Agreement; (ii) relieving the estate from future performance obligations under the Agreement; (iii) establishing a bar date for Expo to file a proof of claim(s) for damages they allege to have resulted from the rejection of Agreement; and granting  such further relief to which the Debtor may be entitled.

---

MOTION TO REJECT LEASE AGREEMENT

Respectfully submitted, December 6, 2022

THE LAW OFFICES OF RAY BATTAGLIA, PLLC.
66 Granburg Circle
San Antonio, Texas 78218
Telephone (210) 601-9405
Email: rbattaglialaw@outlook.com

By:  /s/  Raymond W. Battaglia
Raymond W. Battaglia
Texas Bar No. 01918055

**ATTORNEYS FOR FREE SPEECH SYSTEMS, LLC.**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system. I further certify that it has been transmitted by first class mail to the parties on the attached service list and those listed below.

Expo Glo, LLC
Attention: Alejandro Cuadros
c/o Clarion Partners
1717 McKinney Ave., Suite 1900
Dallas, Texas 75202-1236

/s/ Raymond W. Battaglia
Raymond W. Battaglia

MOTION TO REJECT LEASE AGREEMENT

4

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

**ORDER APPROVING REJECTION OF OF WAREHOUSE LEASE AGREEMENT
WITH EXPO GLO, LLC  AND GRANTING RELATED RELIEF**

Upon consideration of the *Motion for Entry Order Approving Rejection of Warehouse Lease Agreement with Expo GLO, LLC and Granting Related Relief* (the "Motion") [1] filed by Free Speech Systems, LLC ("FSS" or the "Debtor"), the debtor and debtor-in-possession in the above captioned case (the "Motion"); and it appearing that the Court has jurisdiction over this matter; and it appearing that due notice of the Motion has been provided, and that no other or further notice need be provided; and it further appearing that the relief requested in the Motion is fair and reasonable, was proposed in good faith, is in the best interests of the Debtor and its estate and creditors and is within the business judgment of the Debtor; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the November 30, 2017, Lease Agreement (the "Agreement") between the Debtor and Expo GLO, LLC ("Expo") for the lease of approximately 136,000 square feet of warehouse space located at 6231 E. Stassney Lane, Austin, Texas (the "Leased "Premises"), shall be and hereby is rejected effective as of the Petition Date; and it is further

---

[1] All capitalized terms not defined in this Order shall be defined as set forth in the Motion.

ORDERED that the Debtor and the Expo GLO, LLC are relieved of any future performance obligations under the Agreement, including, but not limited to any rights to specific performance; and it is further

ORDERED that any claims arising out of the rejected Agreement must be filed on or before thirty (30) days following the entry of this Order; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Houston, Texas
Dated: December ____, 2022

_____
CHRISTOPER LOPEZ, UNITED STATES
BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

**MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF AUTOMOBILE LEASE AGREEMENT WITH ALLY BANK AND GRANTING RELATED RELIEF**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

TO THE HONORABLE CHRISTOPHER LOPEZ, UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Free Speech Systems, LLC ("FSS" or the "Debtor"), the debtor and debtor-in-possession in the above captioned case (the "Case"), and files this *Motion for Entry Order Approving Rejection of Automobile Lease Agreement with Ally Bank and Granting Related Relief* (the "Motion"). In support of the Motion, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105(a), 365, and 502 of the Bankruptcy Code ("Bankruptcy Code"), and Rules 6006 of the Federal Rules of

---

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"). Such relief requested is also consistent with the Local Rules of Bankruptcy Procedure for the Southern District of Texas (the "<u>Local Rules</u>").

## **BACKGROUND**

3.     On July 29, 2022 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor has continued to operate its businesses and manage its affairs as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.     On June 8, 2020, the Debtor and Ally Bank ("Ally") entered into a Lease Agreement (the "<u>Agreement</u>").  Under the Agreement, Ally leased the Debtor a 2020 Chevrolet Tahoe (the "<u>Leased Vehicle</u>").  The Agreement was for a term of 48 months.

## **LAW AND AUTHORITIES**

5.     Rejection of an executory contract is governed by section 365(a) of the Bankruptcy Code, which permits a debtor-in-possession to assume or reject an executory contract.  A debtor's decision to reject an executory contract must be based on the debtor's business judgment. *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.),* 872 F.2d 36, 39-40 (3d Cir. 1989).

6.     The business judgment test is not a strict standard and merely requires a showing that either assumption or rejection of a contract will benefit the debtors' estate. *In re Orion Pictures Corp.,* 4 F.3d 1095, 1099 (2d Cir. 1993); *see Lubrizol Enter., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.),* 756 F.2d 1043, 1047 (4th Cir. 1985) ("Transposed to  the bankruptcy context [from corporate  litigation], the [business judgment] rule . . . requires that the decision be accepted by courts unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained  business discretion.").

7.     The Leased Vehicle is no longer suitable for the Debtor's needs due to mechanical issues.  The Debtor has determined that the cost of repair is not economical in comparison with its

residual value.

8.     The Debtor submits that rejection of the Agreement is in the best interests of the Debtor's estate and falls squarely within the business discretion of the Debtor.

     WHEREFORE, the Debtor respectfully request that the Court grant the relief requested herein by entering an order, in the form annexed hereto as Exhibit A, (i) approving the rejection of the Agreement; (ii) relieving the estate from future performance obligations under the Agreement; (iii) establishing a bar date for Ally to file a proof of claim(s) for damages they allege to have resulted from the rejection of Agreement; and granting  such further relief to which the Debtor may be entitled.

     Respectfully submitted, December 6, 2022

                                        THE LAW OFFICES OF RAY BATTAGLIA, PLLC.
                                        66 Granburg Circle
                                        San Antonio, Texas 78218
                                        Telephone (210) 601-9405
                                        Email: rbattaglialaw@outlook.com

                                        By:  /s/  Raymond W. Battaglia
                                             Raymond W. Battaglia
                                             Texas Bar No. 01918055

                                        **ATTORNEYS FOR FREE SPEECH SYSTEMS, LLC.**

                        **CERTIFICATE OF SERVICE**

     A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system. I further certify that it has been transmitted by first class mail to the parties on the attached service list and those listed below.

Ally Bank
c/o AIS Portfolio Services, LLC
Arvind Nath Rawal
4515 N Santa Fe Ave., Dept. APS
Oklahoma City, OK 73118

                                        /s/ Raymond W. Battaglia
                                        Raymond W. Battaglia

_____
MOTION TO REJECT VEHICLE LEASE AGREEMENT

3

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

**ORDER APPROVING REJECTION OF OF VEHICLE LEASE AGREEMENT WITH
ALLY BANK AND GRANTING RELATED RELIEF**

Upon consideration of the *Motion for Entry Order Approving Rejection of Vehicle Lease Agreement with Ally Bank and Granting Related Relief* (the "Motion") [1] filed by Free Speech Systems, LLC ("FSS" or the "Debtor"), the debtor and debtor-in-possession in the above captioned case (the "Motion"); and it appearing that the Court has jurisdiction over this matter; and it appearing that due notice of the Motion has been provided, and that no other or further notice need be provided; and it further appearing that the relief requested in the Motion is fair and reasonable, was proposed in good faith, is in the best interests of the Debtor and its estate and creditors and is within the business judgment of the Debtor; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the June 8, 2020, Lease Agreement (the "Agreement") between the Debtor and Ally Bank ("Ally") for the lease of a 2020 Chevrolet Tahoe (the "Leased Vehicle"), shall be and hereby is rejected effective as of the Petition Date; and it is further

---

[1] All capitalized terms not defined in this Order shall be defined as set forth in the Motion.

ORDERED that the Debtor and Ally Bank are relieved of any future performance obligations under the Agreement, including, but not limited to any rights to specific performance; and it is further

ORDERED that any claims arising out of the rejected Agreement must be filed on or before thirty (30) days following the entry of this Order; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Houston, Texas
Dated: December ____, 2022

_____
CHRISTOPER LOPEZ, UNITED STATES
BANKRUPTCY JUDGE

006224

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22--60043** |
| | § | |
| **DEBTOR.** | § | **(Subchapter V Debtor)** |
| | § | **Chapter 11** |

## DEBTOR'S SECOND EMERGENCY MOTION FOR
## EXTENSION OF TIME TO FILE A PLAN OF REORGANIZATION

> **Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**
>
> **A hearing may be conducted on this matter on December 16, 2022, at 2:00 p.m.**
>
> **Participation in the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "judgelopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "electronic appearance" link on Judge Lopez's home page. Select the case name, complete the required fields, and click "submit" to complete your appearance.**

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Free Speech Systems, LLC (the "Debtor" or "FSS"), the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), respectfully files this *Second Motion for Extension of Time to File a Plan of Reorganization* ("Motion") requesting entry of an order substantially in the form attached hereto (the "Proposed Order") In support of the Application, the Debtor respectfully represents as follows:

1

## JURISDICTION

1.      The United States Bankruptcy Court for the Western District of Texas has jurisdiction over this matter under 28 U.S.C. § 1334. The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      The statutory bases for relief requested herein are pursuant to 11 U.S.C. §§ 105(a) and 1189 of the Bankruptcy Code, Rule 3016 of the Federal Rules of Bankruptcy Procedure, and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas ("L. Rule").

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4.      On July 29, 2022 (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11, subchapter v, of the Bankruptcy Code with the Court.

5.      The Debtor continues to operate its businesses and manage its assets as a Debtor and a Debtor-in-Possession pursuant to Bankruptcy Code § 1182(2).

6.      As of the filing of this Application, no creditors' committee has been appointed in the Chapter 11 Case by the Office of the United States Trustee for Region 7 (the "U.S. Trustee").

7.      On October 12, 2022 the Court entered the *Stipulation and Agreed Order* [ECF # 233] ordering the Debtor, the "Sandy Hook Families" and PQPR, among others to mediation before the Honorable Marvin Isgur.  The mediation is ongoing and, unless Judge Isgur declares an impasse, likely to continue for months as the parties explore the possibility of settlement.

8.      The filing and prosecution of a plan by the Debtor would not be productive at this time and indeed, it might be detrimental to the mediation.

9.      On October 25, 2022, the Court entered its *Order Granting Motion for Extension of Time To File a Plan of Reorganization* [ECF # 254] extending the time to file a plan until December 16, 2022.

2

## RELIEF REQUESTED

10.     By this Motion, the Debtor seeks entry of an order extending the deadline in which a Subchapter V Plan may be filed for a period of not less than 60 days.

11.     The Debtor requests an emergency hearing on this Motion as the deadline for the Debtor to file a plan is December 16, 2022.

## BASES FOR RELIEF REQUESTED

12.     Pursuant to 11 U.S.C. § 1189(b), the Debtor is required to file its Plan of Reorganization within 90 days of the Petition Date, except that the Court may extend the period if the need for the extension is attributable to circumstances for which the Debtor should not justly be held accountable.

13.     The original deadline for the Debtor to file a plan of reorganization was October 27, 2022, which was extended by Court Order until December 16, 2022.

14.     The agreement to proceed to mediation as a means of potentially arriving at a resolution of a highly contentious case are circumstances for which the Debtor should not justly be held accountable.

006227

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order substantially in the form of the Proposed Order and grant any other appropriate relief.

Dated: December 6, 2022

**FREE SPEECH SYSTEMS, LLC**


*/s/ Ray Battaglia*
Law Office of Raymond W. Battaglia
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218

**COUNSEL TO FREE SPEECH SYSTEMS, LLC, DEBTOR AND DEBTOR-IN-POSSESSION**


## CERTIFICATE OF ACCURACY

I hereby certify that the foregoing statements are true and accurate to the best of my knowledge and belief. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).


*/s/ Raymond W. Battaglia*
Raymond W. Battaglia


## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, as set forth below. I further certify that it has been transmitted by first class mail to the parties on the attached service list and those listed below.

4

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22--60043** |
| | § | |
| **DEBTOR.** | § | **(Subchapter V Debtor)** |
| | § | **Chapter 11** |

**ORDER GRANTING SECOND MOTION FOR EXTENSION OF TIME TO**
**FILE A PLAN OF REORGANIZATION**

Upon the Debtor's Second Motion for Extension of Time to File a Plan of Reorganization

("Motion")[1]; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided, and it appearing that no other or further notice need be provided; and the Court having

determined that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefore, **IT IS**

**HEREBY ORDERED THAT**:

1.      Pursuant to 11 U.S.C. § 1189(b), the time to file a plan of reorganization is hereby

extended until February ____, 2023. This extension is without prejudice to requests for additional

extensions.

2.      The Court retains exclusive jurisdiction with respect to all matters arising or related

to the implementation, interpretation, and enforcement of this Order.

---

[1] Capitalized terms used by not otherwise defined in this Order shall have the meanings ascribed to such terms in the Motion.

Dated this ___ day of December 2022.

_____
UNITED STATES BANKRUPTCY JUDGE

006230

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604


Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065


Attn: Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701

Attn: Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002

Attn: Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of U.S. Trustee
515 Rusk, Suite 3516
Houston, TX 77002

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609


Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

Commerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive

Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002
Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548

Richard A. Cochrane
Akin Gump Strauss Hauer & Feld
2300 N. Field Street
Suite 1800
Dallas, TX 75201

Elizabeth Carol Freeman
The Law Office of Liz Freeman
PO Box 61209
Houston, TX 77208-1209

John D Malone
Attorney at Law
5400 Bosque Blvd., Ste. 650
Waco, TX 76710

Bradley J. Reeves
Pillsbury Winthrop Shaw Pittman
909 Fannin St
Ste 2000
Houston, TX 77010

Michael P Ridulfo
Kane Russell Coleman Logan
5151 San Felipe, Suite 800
Houston, TX 77056

Stephen A Roberts
Stephen A Roberts, P.C.
1400 Marshall Ln
Austin, TX 78703

Jason Starks
Travis County Attorney's Office
P.O. Box 1748
Austin, TX 78767


Christina Walton Stephenson
Crowe & Dunlevy
2525 McKinnon St.
Ste 425
Dallas, TX 75201

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | **(Chapter 11) Subchapter V** |
| | § | |
| **Debtor.** | § | **JUDGE CHRISTOPHER M. LOPEZ** |
| | § | |

## <u>JONES'S EMERGENCY MOTION TO MODIFY STAY ORDERS</u>

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**EMERGENCY RELIEF IS REQUESTED NOT LATER THAN DECEMBER 15, 2022.**

TO THE HONORABLE CHRISTOPHER M. LOPEZ,
UNITED STATES BANKRUPTCY JUDGE:

Alexander E. Jones (the "<u>Jones</u>"), a creditor and party in interest in this case, files this

*Emergency Motion to Modify Stay Orders* (the "<u>Motion</u>") and in support thereof, respectfully

represents as follows:

## I.     JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.     BACKGROUND

2.      On or about July 29, 2022, Free Speech Systems, LLC ("FSS" or the "Debtor") filed a voluntary petition for relief under subchapter v of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

## III.     RELIEF REQUESTED

3.      Jones hosts a syndicated radio and video talk show in Austin, Texas.   FSS is a single member LLC, 100% owned by Jones, that produces and syndicates much of the show.  On December 2, 2022, Jones filed his voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

4.      On the day it filed its bankruptcy petition, FSS also filed an *Emergency Motion for an Order Modifying the Automatic Stay to Allow the Heslin/Lewis State Court Suit to Continue to Judgment* [Docket No. 2], for the purpose of allowing the consolidated state court action styled *Neil Heslin and Scarlett Lewis v. Alex E. Jones and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas (the "Heslin/Lewis Suit") to proceed to judgment, but no further. On August 1, 2022, the Court entered an *Order Modifying Automatic Stay to Allow Heslin/Lewis Trial to Continue to Final Judgment* [Docket No. 16] (the "Texas Stay Order") granting such relief. The stay remained intact as to any collection or enforcement of such judgment against FSS or its estate.

5.      On or about July 31, 2022, a group of Connecticut Plaintiffs from the state court

cases styled *Lafferty v. Jones* (UWYCV18- 6046436- S), *Sherlach v. Jones* (UWY-CV18-6046437-S), and *Sherlach v. Jones* (UWYCV18- 6046438-S) which have been consolidated under *Lafferty v. Jones* (UWYCV18- 6046436-S) (collectively, the "<u>Connecticut State Court Litigation</u>") filed an *Emergency Motion for Relief from the Automatic Stay* [Docket No. 15] seeking relief in the FSS case.  An *Agreed Order Modifying the Automatic Stay to Allow the Connecticut Litigation to Continue to Final Judgment* [Docket No. 117] (the "<u>Connecticut Stay Order</u>") was entered on August 29, 2022, wherein the parties agreed to modify the automatic stay in the FSS case solely to allow the Connecticut State Court Litigation to proceed to judgment. The stay in the FSS case would continue to enjoin all parties, including the Connecticut parties from exercising any remedies against FSS to collect or enforce any assets of FSS or its estate, and nothing within waived the rights of any party to the litigation to a stay of all actions on any judgment pending appeal.  Jones signed the agreed order indicating agreement only as to paragraph 2 (the paragraph delineating continued injunction against collection or enforcement and non-waiver of rights).

6.     The Texas Stay Order and the Connecticut Stay Order (collectively, the "<u>Stay Orders</u>") indicate that FSS agreed for the underlying litigation to proceed to judgment.  Jones has not and does not agree to this relief in his individual capacity or as against himself individually. Since the filing of his bankruptcy petition, Jones is entitled to relief pursuant to Section 362(a) of the Bankruptcy Code.  Section 362(a)(1) protects Jones from "the commencement or *continuation*, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title" 11 U.S.C. §362(a)(1) (emphasis added). Section 362(a)(2) further protects Jones from "the enforcement, against the debtor or against property of

the estate, of a judgment obtained before the commencement of the case under this title" 11 U.S.C. §362(a)(2).

7.      Jones requests that the Stay Orders be modified to prevent the entry of a judgment in either the Heslin/Lewis Lawsuit or the Connecticut State Court Lawsuit pending further order of this Court.  In the event judgment is entered in either action, appellate deadlines will begin to run.  In the event judgment is entered as to FSS but not as to Jones, appellate deadlines will be staggered, creating confusion and increased costs.  Further, a mediation is expected in this Debtor's case, with Jones's participation.  In the event this is successful, the fees and expenses associated with appeals would be for naught, and further deplete the limited resources available to fund such a settlement.

8.      In addition, Jones seeks relief pursuant to Sections 105 and 362 of the Bankruptcy Code to modify the Texas Stay Order and the Connecticut Stay Order to ensure that there is no ambiguity or ability for the state courts directed by those Stay Orders to misinterpret those Stay Orders as applying to Jones individually, or as modifying the automatic stay as to Jones.

9.      Jones has sought emergency relief on this matter, because, upon information and belief, the courts for the Heslin/Lewis Suit and the Connecticut State Court Litigation could  soon enter judgments that would impact FSS, and as 100% owner of FSS, Jones individually and thus violate the automatic stay in his Chapter 11 Case.

FOR THE ABOVE REASONS, Jones respectfully requests that the Court enter an order (i) granting the Motion and (ii) granting such other and further relief as is just and proper.

RESPECTFULLY SUBMITTED this 6th day of December 2022.

**JONES'S EMERGENCY MOTION TO MODIFY STAY ORDERS - Page 4**

**CROWE & DUNLEVY, P.C.**

By: */s/ Christina W. Stephenson*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
           aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**PROPOSED ATTORNEYS FOR ALEXANDER E. JONES**

<u>**CERTIFICATE OF CONFERENCE**</u>

I hereby certify that I conferred with counsel for the Debtor, Ray Battaglia, on December 5, 2022, and the Debtor is not opposed to the relief requested in this Motion.  I further certify that I conferred with counsel for the Subchapter V Trustee for this case, Elizabeth Freeman, on December 5, 2022 and Ms. Freeman indicated that the Subchapter V Trustee is not opposed to the relief requested in concept.  I further certify that I attempted to confer with counsel for the Plaintiffs in the underlying litigation in this case on December 5, 2022 and as of the time of filing of this Motion, I had not yet received a response.

*/s/ Vickie L. Driver*
Vickie L. Driver

**JONES'S EMERGENCY MOTION TO MODIFY STAY ORDERS - Page 5**

## CERTIFICATE OF ACCURACY

I hereby certify that the forgoing statements are true and accurate to the best of my knowledge and belief. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Vickie L. Driver*
Vickie L. Driver

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon the parties listed below via e-mail, U.S. Mail, and/or electronic transmission via the Court's ECF noticing system on this 6th day of December 2022.

(a) The Debtor;

(b) The Office of the United States Trustee for the Southern District of Texas;

(c) The 20 largest unsecured creditors for the Debtor regarding which the pleading impacts, if any;

(d) Sub V Trustee for the Debtor;

(e) The Office of the Attorney General of the State of Texas;

(f) The United States Attorney's Office for the Southern District of Texas;

(g) The Internal Revenue Service; and

(h) All parties who have filed a notice of appearance and request for notice or service of all pleadings pursuant to Bankruptcy Rule 2002 in this case.

*/s/ Christina W. Stephenson*
Christina W. Stephenson

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC | § | (Chapter 11) |
| | § | |
| Debtor. | § | JUDGE CHRISTOPHER M. LOPEZ |
| | § | |

**ORDER GRANTING EMERGENCY MOTION TO MODIFY STAY**

On December 6th, 2022, Alexander E. Jones (the "Jones"), a creditor and party in interest in this case, filed his *Emergency Motion to Modify Stay Orders* (the "Motion"). The Court finds that: (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Motion is in the best interests of the Debtor, its estate, and its creditors; (iv) proper and adequate notice of the Motion has been given and no other or further notice is necessary; and (v) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

Therefore,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The *Order Modifying Automatic Stay to Allow Heslin/Lewis Trial to Continue to Final Judgment* [Docket No. 16] (the "Texas Stay Order") and the *Agreed Order Modifying the Automatic Stay to Allow the Connecticut Litigation to Continue to Final Judgment* [Docket No. 117] (the "Connecticut Stay Order" and collectively, the "Stay Orders") are hereby modified to add that the limited stay relief granted therein is expressly not applicable Jones individually and that the automatic stay applicable to him individually pursuant to 11 U.S.C. §362 is in place and

**ORDER GRANTING EMERGENCY MOTION TO MODIFY STAY ORDERS – Page 1**

has not been modified by the Stay Orders. Entering a judgment against Jones individually without seeking and obtaining further relief from the stay would violate the automatic stay pursuant to Section 362.

3.    The Stay Orders are hereby modified to prevent the entry of a judgment in either the Heslin/Lewis Lawsuit or the Connecticut State Court Lawsuit pending further order of this Court.

4.    The Court shall retain jurisdiction to hear and consider all disputes arising out of the interpretation or implementation of this Order.

### # # #  END OF ORDER  # # #

**Submitted by:**

*/s/ Christina W. Stephenson*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
**CROWE & DUNLEVY, P.C.**
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737-218-6187
Email: eservicedallas@crowedunlevy.com

**PROPOSED COUNSEL FOR THE DEBTOR**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | **(Subchapter V)** |
| **Free Speech Systems, LLC,** | § | |
| | § | |
| Debtor. | § | **Case No. 22–60043 (CML)** |

---

## VERIFIED STATEMENT PURSUANT TO RULE 2019 OF
## THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

---

Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the undersigned counsel submits this verified statement (the "**Verified Statement**"), and in support thereof respectfully states as follows:

1.       Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C. ("**CHWWA**"), McDowell Hetherington LLP ("**MH**"), and Kaster Lynch Farrar & Ball, LLP ("**KLFB**," and together with CHWWA and MH, the "**Texas Plaintiffs' Counsel**")[1] represent the following parties (collectively, the "**Texas Plaintiffs**")[2] in the above-captioned matter:

    A.     Neil Heslin
    B.     Scarlett Lewis
    C.     Leonard Pozner
    D.     Veronique De La Rosa
    E.     The Estate of Marcel Fontaine

2.       In accordance with Bankruptcy Rule 2019, the address for each of the Texas Plaintiffs is shown on **Exhibit A** attached hereto.

---

[1]  Akin, Gump, Strauss, Hauer, & Feld, LLP has provided advice to both the Texas Plaintiffs and the Connecticut Plaintiffs in connection with this chapter 11 case strictly on a pro bono basis and will continue to do so.

[2]  The Texas Plaintiffs and their counsel have worked closely with the Connecticut Plaintiffs and their counsel and will continue to do so.

3.      The Texas Plaintiffs are each a creditor, and the nature and principal amount of each of their claims is described on **Exhibit A** attached hereto.  In accordance with Bankruptcy Rule 2019, **Exhibit A** provides all disclosable economic interests held by each Texas Plaintiff in relation to Free Speech Systems, LLC (the "**Debtor**").

4.      The Debtor operates as a media company under the brand name "InfoWars," and is owned by Alexander E. Jones ("**Jones**").

5.      The Debtor and Jones are defendants in lawsuits brought by the Texas Plaintiffs.

6.      The Texas Plaintiffs are monitoring the Debtor's case.  Neither CHWWA, MH, nor KLFB hold any interest in the Debtor or its estate.  None of the Texas Plaintiffs' disclosable economic interests have been assigned subsequent to the commencement of the Debtor's case and have not been solicited for purchase by CHWWA, MH, or KLFB.

7.      Nothing contained in this Verified Statement (or **Exhibit A** hereto) should be construed as a limitation upon, or waiver of any Texas Plaintiff's right to assert, file, and/or amend its claim(s) in accordance with applicable law and any orders entered in this case establishing procedures for filing proofs of claim.

8.      The Texas Plaintiffs' Counsel reserve the right to amend or supplement this Verified Statement in accordance with the requirements set forth in Bankruptcy Rule 2019.

*[Remainder of page intentionally left blank]*

Dated: December 7, 2022

Respectfully submitted,

**MCDOWELL HETHERINGTON LLP**

By: */s/ Avi Moshenberg*
Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, Texas 77002
D: 713-337-5580
F: 713-337-8850
E: Avi.Moshenberg@mhllp.com

&

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, PC**

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
Tyler W. Greenwood
Texas Bar No. 24123219
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com
E: tyler.greenwood@chamberlainlaw.com

&

**KASTER LYNCH FARRAR & BALL, LLP**

By: */s/ Mark D. Bankston*
Mark D. Bankston
Texas Bar No. 24071066
1117 Herkimer
Houston, Texas 77008
D: 713.221.8300
F: 713.221.8301
E: mark@fbtrial.com

*Attorneys for the Texas Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on December 7, 2022, a true and correct copy of the foregoing Verified Statement was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

<div align="center">

*/s/ Jarrod B. Martin*       
Jarrod B. Martin

</div>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11, Subchapter V** |
| | § | |
| **Free Speech Systems, LLC** | § | **Case No. 22–60043 (CML)** |
| | § | |
| **Debtor** | § | |

---

### DECLARATION OF AVI MOSHENBERG

---

I, Avi Moshenberg, declare that the following is true to the best of my knowledge, information, and belief:

I am one of the attorneys of record for Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and the Estate of Marcel Fontaine.  I have read the *Verified Statement Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure* and know the contents to be true and correct to the best of my knowledge and belief.


Dated: December 7, 2022


_____
Avi Moshenberg

## EXHIBIT A

| Name & Address | Nature of Claim Against the Debtor | Principal Amount of Claim[3] |
|---|---|---|
| Scarlett Lewis<br>c/o McDowell Hetherington<br>1001 Fannin Street<br>Suite 2700<br>Houston, Texas 77002 | Plaintiff in cases alleging defamation, intentional infliction of emotional distress, and TUFTA | At least $22,847,962.90 |
| Neil Heslin<br>c/o McDowell Hetherington<br>1001 Fannin Street<br>Suite 2700<br>Houston, Texas 77002 | Plaintiff in cases alleging defamation, intentional infliction of emotional distress, and TUFTA | At least $27,197,249.90 |
| Leonard Pozner<br>c/o McDowell Hetherington<br>1001 Fannin Street<br>Suite 2700<br>Houston, Texas 77002 | Plaintiff in cases alleging defamation, intentional infliction of emotional distress, and TUFTA | Unliquidated |
| Veronique De La Rose<br>c/o McDowell Hetherington<br>1001 Fannin Street<br>Suite 2700<br>Houston, Texas 77002 | Plaintiff in cases alleging defamation, intentional infliction of emotional distress, and TUFTA | Unliquidated |
| The Estate of Marcel Fontaine<br>c/o McDowell Hetherington<br>1001 Fannin Street<br>Suite 2700<br>Houston, Texas 77002 | Plaintiff in cases alleging defamation and TUFTA | Unliquidated |

[3] This statement is not intended as consent pursuant to 28 U.S.C. § 157(c)(2), waiver of the right to liquidation or estimation of unliquidated claims for purposes of distribution outside of the bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), or waiver of the right to trial by jury pursuant to 28 U.S.C. § 1411.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | **(Subchapter V)** |
| **Free Speech Systems, LLC,** | § | |
| | § | |
| Debtor. | § | **Case No. 22–60043 (CML)** |
| | § | |

---

**VERIFIED STATEMENT PURSUANT TO RULE 2019 OF**
**THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

---

Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the undersigned counsel submits this verified statement (the "**Verified Statement**"), and in support thereof respectfully states as follows:

1.     Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C. ("**CHWWA**"), McDowell Hetherington LLP ("**MH**"), and Kaster Lynch Farrar & Ball, LLP ("**KLFB**," and together with CHWWA and MH, the "**Texas Plaintiffs' Counsel**")[1] represent the following parties (collectively, the "**Texas Plaintiffs**")[2] in the above-captioned matter:

    A.     Neil Heslin
    B.     Scarlett Lewis
    C.     Leonard Pozner
    D.     Veronique De La Rosa
    E.     The Estate of Marcel Fontaine

2.     In accordance with Bankruptcy Rule 2019, the address for each of the Texas Plaintiffs is shown on **Exhibit A** attached hereto.

---

[1]  Akin, Gump, Strauss, Hauer, & Feld, LLP has provided advice to both the Texas Plaintiffs and the Connecticut Plaintiffs in connection with this chapter 11 case strictly on a pro bono basis and will continue to do so.
[2]  The Texas Plaintiffs and their counsel have worked closely with the Connecticut Plaintiffs and their counsel and will continue to do so.

3.      The Texas Plaintiffs are each a creditor, and the nature and principal amount of each of their claims is described on **Exhibit A** attached hereto.  In accordance with Bankruptcy Rule 2019, **Exhibit A** provides all disclosable economic interests held by each Texas Plaintiff in relation to Free Speech Systems, LLC (the "**Debtor**").

4.      The Debtor operates as a media company under the brand name "InfoWars," and is owned by Alexander E. Jones ("**Jones**").

5.      The Debtor and Jones are defendants in lawsuits brought by the Texas Plaintiffs.

6.      The Texas Plaintiffs are monitoring the Debtor's case.  Neither CHWWA, MH, nor KLFB hold any interest in the Debtor or its estate.  None of the Texas Plaintiffs' disclosable economic interests have been assigned subsequent to the commencement of the Debtor's case and have not been solicited for purchase by CHWWA, MH, or KLFB.

7.      Nothing contained in this Verified Statement (or **Exhibit A** hereto) should be construed as a limitation upon, or waiver of any Texas Plaintiff's right to assert, file, and/or amend its claim(s) in accordance with applicable law and any orders entered in this case establishing procedures for filing proofs of claim.

8.      The Texas Plaintiffs' Counsel reserve the right to amend or supplement this Verified Statement in accordance with the requirements set forth in Bankruptcy Rule 2019.


*[Remainder of page intentionally left blank]*

Dated: December 7, 2022

Respectfully submitted,

**MCDOWELL HETHERINGTON LLP**

By: */s/ Avi Moshenberg*
Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, Texas 77002
D: 713-337-5580
F: 713-337-8850
E: Avi.Moshenberg@mhllp.com

&

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, PC**

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
Tyler W. Greenwood
Texas Bar No. 24123219
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com
E: tyler.greenwood@chamberlainlaw.com

&

**KASTER LYNCH FARRAR & BALL, LLP**

By: */s/ Mark D. Bankston*
Mark D. Bankston
Texas Bar No. 24071066
1117 Herkimer
Houston, Texas 77008
D: 713.221.8300
F: 713.221.8301
E: mark@fbtrial.com

*Attorneys for the Texas Plaintiffs*

---

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on December 7, 2022, a true and correct copy of the foregoing Verified Statement was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.


*/s/ Jarrod B. Martin*
Jarrod B. Martin

DocuSign Envelope ID: CD7B15AE-EC2C-4C56-B3F1-6B7F3E11442A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11, Subchapter V |
| | § | |
| **Free Speech Systems, LLC** | § | **Case No. 22–60043 (CML)** |
| | § | |
| Debtor | § | |

## DECLARATION OF AVI MOSHENBERG

I, Avi Moshenberg, declare that the following is true to the best of my knowledge, information, and belief:

I am one of the attorneys of record for Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and the Estate of Marcel Fontaine. I have read the *Verified Statement Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure* and know the contents to be true and correct to the best of my knowledge and belief.

Dated: December 7, 2022

DocuSigned by:

*Avi Moshenberg*

91D45E2A168E4C5...

Avi Moshenberg

## EXHIBIT A

| Name & Address | Nature of Claim Against the Debtor | Principal Amount of Claim[3] |
|---|---|---|
| Scarlett Lewis<br>c/o McDowell Hetherington<br>1001 Fannin Street<br>Suite 2700<br>Houston, Texas 77002 | Plaintiff in cases alleging defamation, intentional infliction of emotional distress, and TUFTA | At least $22,847,962.90 |
| Neil Heslin<br>c/o McDowell Hetherington<br>1001 Fannin Street<br>Suite 2700<br>Houston, Texas 77002 | Plaintiff in cases alleging defamation, intentional infliction of emotional distress, and TUFTA | At least $27,197,249.90 |
| Leonard Pozner<br>c/o McDowell Hetherington<br>1001 Fannin Street<br>Suite 2700<br>Houston, Texas 77002 | Plaintiff in cases alleging defamation, intentional infliction of emotional distress, and TUFTA | Unliquidated |
| Veronique De La Rose<br>c/o McDowell Hetherington<br>1001 Fannin Street<br>Suite 2700<br>Houston, Texas 77002 | Plaintiff in cases alleging defamation, intentional infliction of emotional distress, and TUFTA | Unliquidated |
| The Estate of Marcel Fontaine<br>c/o McDowell Hetherington<br>1001 Fannin Street<br>Suite 2700<br>Houston, Texas 77002 | Plaintiff in cases alleging defamation and TUFTA | Unliquidated |

---

[3] This statement is not intended as consent pursuant to 28 U.S.C. § 157(c)(2), waiver of the right to liquidation or estimation of unliquidated claims for purposes of distribution outside of the bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), or waiver of the right to trial by jury pursuant to 28 U.S.C. § 1411.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:

FREE SPEECH SYSTEMS, LLC

CASE NO: 22-60043

**DECLARATION OF MAILING
CERTIFICATE OF SERVICE**

Chapter: 11
ECF Docket Reference No. 297

On 12/7/2022, I did cause a copy of the following documents, described below,

Motion to Reject Warehouse Lease ECF Docket Reference No. 297

Motion to Rejection Vehicle Lease 298

Second Emergency Motion for Extension of Time to File Plan of Reorganization 299

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice. com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R.Bankr.P. 9001(9) and 2002(g)(4). A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

Parties who are participants in the Courts Electronic Noticing System ("NEF"), if any, were denoted as having been served electronically with the documents described herein per the ECF/PACER system.

DATED: 12/7/2022

/s/ Ray Battaglia
Ray Battaglia  01918055
Attorney for Debtor
Law Offices of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX  78218
210 601 9405
rbattaglialaw@outlook.com

006257

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:

FREE SPEECH SYSTEMS, LLC

CASE NO: 22-60043

**CERTIFICATE OF SERVICE
DECLARATION OF MAILING**

Chapter: 11
ECF Docket Reference No. 297

On 12/7/2022, a copy of the following documents, described below,

Motion to Reject Warehouse Lease ECF Docket Reference No. 297

Motion to Rejection Vehicle Lease 298

Second Emergency Motion for Extension of Time to File Plan of Reorganization 299

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 12/7/2022



Jay S. Jump
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Ray Battaglia
Law Offices of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX  78218

006258

PARTIES DESIGNATED AS "CM/ECF E-SERVICE" WERE SERVED ELECTRONICALLY BY THE MAILING OF A NOTICE OF ELECTRONIC FILING. PARTIES WITH A '+' AND DESIGNATED AS "CM/ECF E-SERVICE" RECEIVED ELECTRONIC NOTICE THROUGH THE CM/ECF SYSTEM

ATTN: MARK BANKSON, WILLIAM OGDEN
KASTER LYNCH FARRAR & BALL, LLP
1117 HERKIMER STREET
HOUSTON, TX 77008

ATTN: ALINOR C. STERLIN, CHRISTOPHER
MATTEI,
MATTHEW BLUMENTHAL
KOSKOFF KOSKOFF & BIEDER
350 FAIRFIELD AVENUE
BRIDGEPORT, CT 06604

ATTN: F. ANDINO REYNAL
FERTITTA & REYNAL LLP
917 FRANKLIN ST., SUITE 600
HOUSTON, TX 77002

ATTN: ERIC HENZY
ZEISLER & ZEISLER P.C.
10 MIDDLE STREET, 15TH FLOOR
BRIDGEPORT, CT 06604

ATTN: SHELBY JORDAN
JORDAN & ORTIZ, P.C.
500 N. SHORELINE BLVD. SUITE 900
CORPUS CHRISTI, TEXAS 78401

ATTN: AVI MOSHENBERG
MCDOWELL HETHERINGTON LLP
1001 FANNIN STREET, SUITE 2700
HOUSTON, TX 77002

ATTN: CORDT AKERS
THE AKERS LAW FIRM PLLC
CORDT AKERS
3401 ALLEN PARKWAY, SUITE 101
HOUSTON, TX 77019

ATTN: DANIEL DESOUZA
COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301
CORAL SPRINGS, FL 33065

ATTN: RYAN E. CHAPPLE
CAIN & SKARNULIS PLLC
303 COLORADO STREET, SUITE 2850
AUSTIN, TEXAS 78701

ATTN: JARROD B. MARTIN
CHAMBERLAIN HRDLICKA
1200 SMITH STREET, SUITE 1400
HOUSTON, TX 77002

ATTN: CHRISTOPHER J. DYLLA
ASSISTANT ATTORNEY GENERAL
BANKRUPTCY & COLLECTIONS DIVISION
PO BOX 12548
AUSTIN, TX 78711-2548

MELISSA HASELDEN
SUBCHAPTER V TRUSTEE
700 MILAM, SUITE 1300
HOUSTON, TX 77002

ATTN: HA M. NGUYEN, JAYSON B. RUFF
OFFICE OF U.S. TRUSTEE
515 RUSK, SUITE 3516
HOUSTON, TX 77002

ELEVATED SOLUTIONS GROUP
28 MAPLEWOOD DRIVE
COS COB, CT 06870

CHRISTOPHER SADOWSKI
C/O COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE STE 301
CORAL SPRINGS, FL 33065

ATOMIAL LLC
1920 E. RIVERSIDE DR.
SUITE A-120 #124
AUSTIN, TX 78741

CLOUDFLARE, INC
DEPT LA 24609
PASADENA, CA 91185-4609

JACQUELYN BLOTT
200 UNIVERSITY BLVD
SUITE 225 #251
ROUND ROCK, TX 78665

JOEL SKOUSEN
PO BOX 565
SPRING CITY, UT 84662

COMMERCE CDN, LLC
221 E 63RD STREET
SAVANNAH, GA 31405

INTERNATIONAL
PAUL WATSON
9 RIVERDALE ROAD
RANMOOR SHEFFIELD
SOUTH YORKSHIRE S10 3FA
UNITED KINGDOM

BRENNAN GILMORE
C/O CIVIL RIGHTS CLINIC
600 NEW JERSEY AVENUE, NW
WASHINGTON, DC 20001

GREENAIR, INC
23569 CENTER RIDGE RD
WESTLAKE, OH 44145

EDGECAST, INC
DEPT CH 18120
PALATINE, IL 60055

READY ALLIANCE GROUP, INC
PO BOX 1709
SANDPOINT, ID 83864

GETTY IMAGES, INC
PO BOX 953604
ST. LOUIS, MO 63195-3604

RATSMEDICAL.COM
C/O RAPID MEDICAL
120 N REDWOOD RD
NORTH SALT LAKE, UT 84054

PARTIES DESIGNATED AS "CM/ECF E-SERVICE" MUST BE SERVED THROUGH THE CM/ECF SYSTEM. PARTIES
PARTIES WITH A '+' AND DESIGNATED AS "CM/ECF E-SERVICE" RECEIVED ELECTRONIC NOTICE THROUGH THE CM/ECF SYSTEM

INTERNATIONAL

DAVID ICKE BOOKS LIMITED
C/O ICKONIC ENTERPRISES LIMITED
ST. HELEN'S HOUSE KING STREET
DERBY DE1 3EE
UNITED KINGDOM

WWCR
1300 WWCR AVE
NASHVILLE, TN 37218-3800

JW JIB PRODUCTIONS, LLC
2921 CARVELLE DRIVE
RIVIERA BEACH, FL 33404

CUSTOMTATTONOW.COM
16107 KENSINGTON DR. #172
SUGAR LAND, TX 77479

AT&T
PO BOX 5001
CAROL STREAM, IL 60197-5001

JUSTIN LAIR
1313 LOOKOUT AVE
KLAMATH FALLS, OR 97601

PQPR HOLDINGS LIMITED, LLC
C/O STEPHEN LEMMON
1801 S. MOPAC EXPRESSWAY
SUITE 320
AUSTIN, TX 78746

RYAN E. CHAPPLE
CAIN & SKARNULIS PLLC
303 COLORADO STREET, SUITE 2850
AUSTIN, TEXAS 78701

ATTN: SHELBY JORDAN
JORDAN & ORTIZ, P.C.
500 N. SHORELINE BLVD. SUITE 900
CORPUS CHRISTI, TEXAS 78401

JARROD B. MARTIN
CHAMBERLAIN HRDLICKA
1200 SMITH STREET, SUITE 1400
HOUSTON, TX 77002

CHRISTOPHER J. DYLLA
ASSISTANT ATTORNEY GENERAL
BANKRUPTCY & COLLECTIONS DIVISION
PO BOX 12548
AUSTIN, TX 78711-2548

RICHARD A. COCHRANE
AKIN GUMP STRAUSS HAUER & FELD
2300 N. FIELD STREET
SUITE 1800
DALLAS, TX 75201

ELIZABETH CAROL FREEMAN
THE LAW OFFICE OF LIZ FREEMAN
PO BOX 61209
HOUSTON, TX 77208-1209

JOHN D MALONE
ATTORNEY AT LAW
5400 BOSQUE BLVD., STE. 650
WACO, TX 76710

BRADLEY J. REEVES
PILLSBURY WINTHROP SHAW PITTMAN
909 FANNIN ST
STE 2000
HOUSTON, TX 77010

MICHAEL P RIDULFO
KANE RUSSELL COLEMAN LOGAN
5151 SAN FELIPE, SUITE 800
HOUSTON, TX 77056

STEPHEN A ROBERTS
STEPHEN A ROBERTS, P.C.
1400 MARSHALL LN
AUSTIN, TX 78703

JASON STARKS
TRAVIS COUNTY ATTORNEY'S OFFICE
P.O. BOX 1748
AUSTIN, TX 78767

CHRISTINA WALTON STEPHENSON
CROWE & DUNLEVY
2525 MCKINNON ST.
STE 425
DALLAS, TX 75201

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

<u>**NOTICE OF HEARING**</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.     A hearing (the "Hearing") is set for December 16, 2022, at 1:00 p.m. (prevailing Central Time) before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of Texas, Courtroom 401, 515 Rusk, Houston, TX 77002 (the "Court"), to consider the following matters:

### DEBTOR'S SECOND EMERGENCY MOTION FOR EXTENSION OF TIME TO FILE A PLAN OF REORGANIZATION

2.     Parties may attend the Hearing in person or electronically. Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GOTOMEETING platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JUDGELOPEZ". Click the settings icon in the upper right corner and enter your name under the personal information setting.

3.     Parties are encouraged to review the Court's procedures for telephonic appearances located on the Court's website at: https://www.txs.uscourts.gov/content/united-states-bankruptcy-judge-christopher m lopez

4. The Court has invoked the protocol outlined in General Order 2020-4, as invoked by General Orders 2010 and 2020-10a and extended by General Order 2020-11. These orders may be found at: https://www.txs.uscourts.gov/bankruptcy/genord   Therefore, all persons may appear electronically via audio and video at the Hearing using the Court's electronic conference systems.

5. Any exhibit offered by the Debtor will be filed on the Court's docket. Additionally, the Debtor may have demonstrative exhibits to aid in its presentation to the Court, copies of which may be obtained by any party by sending a request to the undersigned counsel to the Debtor at the email addresses listed below.

6. If any party wishes to offer exhibits, these exhibits should be filed with the Clerk of the Court using the Court's CM/ECF system. Each exhibit should be filed as a separate attachment to an Exhibit List in compliance with Bankruptcy Local Rule 9013 and General Order 2020-04.

7. Witnesses presented by the Debtor may appear in person or via audio and video connection. Any person wishing to examine the witness will be permitted to do so during the hearing via audio and/or video, subject to approval of the Court.

Respectfully submitted this December 7, 2022.

THE LAW OFFICES OF RAY BATTAGLIA, PLLC.
66 Granburg Circle
San Antonio, Texas 78218
Telephone (210) 601-9405
Email: rbattaglialaw@outlook.com


By:   */s/ Raymond W. Battaglia*

Raymond W. Battaglia
Texas Bar No. 01918055

**ATTORNEYS FOR THE DEBTOR IN POSSESSION**


## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system. I further certify that it has been transmitted by first class mail on December 7, 2022, to the parties on the attached service list

*/s/ Raymond W. Battaglia*
Raymond W. Battaglia

```
Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604


Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065


Attn: Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
```

Attn: Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002

Attn: Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548

Melissa Haselden
Subchapter V Trustee
700 Milam, Suite 1300
Houston, TX 77002

Attn: Ha M. Nguyen, Jayson B. Ruff
Office of U.S. Trustee
515 Rusk, Suite 3516
Houston, TX 77002

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

Commerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive

Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401

Jarrod B. Martin
Chamberlain Hrdlicka
1200 Smith Street, Suite 1400
Houston, TX 77002
Christopher J. Dylla
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548

Richard A. Cochrane
Akin Gump Strauss Hauer & Feld
2300 N. Field Street
Suite 1800
Dallas, TX 75201

Elizabeth Carol Freeman
The Law Office of Liz Freeman
PO Box 61209
Houston, TX 77208-1209

John D Malone
Attorney at Law
5400 Bosque Blvd., Ste. 650
Waco, TX 76710

Bradley J. Reeves
Pillsbury Winthrop Shaw Pittman
909 Fannin St
Ste 2000
Houston, TX 77010

Michael P Ridulfo
Kane Russell Coleman Logan
5151 San Felipe, Suite 800
Houston, TX 77056

Stephen A Roberts
Stephen A Roberts, P.C.
1400 Marshall Ln
Austin, TX 78703

Jason Starks
Travis County Attorney's Office
P.O. Box 1748
Austin, TX 78767

Christina Walton Stephenson
Crowe & Dunlevy
2525 McKinnon St.
Ste 425
Dallas, TX 75201

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Chapter 11** |
| **Free Speech Systems LLC,** | § | |
| | § | **Case No. 22-60043 (CML)** |
| **Debtor.** | § | |

**PQPR HOLDINGS LIMITED, LLC'S LIMITED OBJECTION TO SUBCHAPTER**
**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING**
**RETENTION OF M3 ADVISORY PARTNERS, LP AS FINANCIAL**
**ADVISOR TO THE SUBCHAPTER V TRUSTEE**

PQPR LIMITED, LLC ("PQPR") respectfully submits this Objection to Subchapter V Trustee's Motion for Entry of an Order Authorizing Retention of M3 Advisory Partners, LP as Financial Advisor to the Subchapter V Trustee (the "M3 Application") [Docket No. 282] as follows:

1.      PQPR is a creditor secured by a perfected lien on virtually all assets of the Debtor, together with proceeds.

2.      The Debtor filed this Subchapter V bankruptcy case on July 29, 2022 (the "Petition Date").  On September 20, 2022, the Court entered an Order Expanding the Subchapter V Trustee's Duties Pursuant to 11 U.S.C. § 1183(b)(2) of the Bankruptcy Code [Docket No. 183] and, at PQPR's urging, directed the Subchapter V Trustee to investigate the Debtor and file a report pursuant to 11 U.S.C. §§ 1106(a)(3) & (4) as soon as practicable.

3.      Two months later, on November 19, 2022, the Subchapter V Trustee (the "Trustee") requested that the Court authorize, effective as of October 20, 2022, the retention of M3 Advisory Partners LP ("M3") as financial advisor for the Trustee to be compensated in accordance with §328. The M3 Application contains insufficient information for the Court to approve retention and

compensation of M3 under 11 U.S.C. § 328. Specifically, the professional services to be provided by M3, as proposed by the Trustee, are extremely broad and open-ended ("provide such other services as M3 and the [Trustee] shall otherwise agree in writing"). This is especially concerning given the fact that there is no proposed budget for M3's fees and the fees are not capped. M3's ability to recover its direct expenses is also seemingly unlimited, which is problematic given the potential costs associated with travel from its office in New York to the Debtor's business in Austin and the Court in Houston.

4.     Furthermore, although the Trustee informs the Court that M3 has agreed to reduce its hourly rates by 30%, this discount is considerably less than was originally negotiated between the Trustee and M3. When the Trustee first proposed hiring M3, the undersigned counsel was told that M3 would reduce its hourly rate by 50%. The Debtor's funds are not limitless, and this case simply cannot afford to write a blank check to M3 for ill-defined services that are not restrained by a budget.

5.     Finally, PQPR notes that it has fully cooperated with the Trustee by providing unfettered access to its books and records for the purpose of facilitating and expediting the investigation. This access was also subject to an agreement that such information would not be disseminated to any other parties absent a Court order. PQPR has requested assurance that M3 would similarly treat any information that PQPR previously provided to the Trustee or subsequently provides to M3 but has received no such assurances.

6.     Therefore, PQPR makes this limited objection to the M3 Application subject to an agreed-upon or Court-approved budget and cap on the fees to be charged.

006269

Dated:  December 9, 2022         Respectfully submitted,

By: */s/ Stephen W. Lemmon*
    Stephen W. Lemmon
    Texas Bar. No. 12194500
    STREUSAND, LANDON, OZBURN &
    LEMMON, LLP
    1801 S. MoPac Expressway, Suite 320
    Austin, Texas 78746
    Telephone: (512) 236-9900
    Facsimile: (512) 236-9904
    lemmon@slollp.com

ATTORNEYS FOR
PQPR HOLDINGS LIMITED, LLC

006270

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2022, a true and correct copy of the foregoing instrument was served via this Court's ECF notification system upon all parties registered to receive electronic notice of filings in this case.

_/s/ Stephen W. Lemmon_
Stephen W. Lemmon

4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

### VERIFIED RULE 2019 STATEMENT OF MULTIPLE REPRESENTATION

Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the undersigned counsel submits this verified statement (the "**Verified Statement**") and in support thereof respectfully states as follows:

1.      Cain & Skarnulis PLLC ("**C&S**") and Koskoff Koskoff & Bieder PC ("**Koskoff**" and together with C&S, the "**Connecticut Plaintiffs' Counsel**")[1] represent the following parties in the above-captioned matter (collectively, the "**Connecticut Plaintiffs**"[2]):

        a.      David Wheeler;
        b.      Francine Wheeler;
        c.      Jacqueline Barden;
        d.      Mark Barden;
        e.      Nicole Hockley;
        f.      Ian Hockley;
        g.      Jennifer Hensel;
        h.      Donna Soto;
        i.      Carlee Soto Parisi;
        j.      Carlos M. Soto;
        k.      Jillian Soto-Marino;
        l.      William Aldenberg;
        m.      William Sherlach; and
        n.      Robert Parker.

---

[1] Akin, Gump, Strauss, Hauer, & Feld, LLP has provided advice to both the Connecticut Plaintiffs and the Texas Plaintiffs in connection with this chapter 11 case on a strictly pro bono basis and will continue to do so.

[2] The Connecticut Plaintiffs and their counsel have worked closely with the Texas Plaintiffs and their counsel and will continue to do so.

006272

2.      In accordance with Bankruptcy Rule 2019, the address for each of the Connecticut Plaintiffs is shown on **Exhibit A** attached hereto.

3.      The Connecticut Plaintiffs are each a creditor, and the nature and principal amount of each of their claims is described on **Exhibit A** attached hereto.  In accordance with Bankruptcy Rule 2019, **Exhibit A** provides all disclosable economic interests held by each Connecticut Plaintiff in relation to Free Speech Systems, LLC (the "**Debtor**").[3]

4.      The Debtor operates as a media company under the brand name "InfoWars," and is owned by Alexander E. Jones **("Jones")**.

5.      The Debtor and Jones are defendants in three consolidated lawsuits brought by the Connecticut Plaintiffs.[4]

6.      The Connecticut Plaintiffs are monitoring the Debtor's case.  Neither C&S nor Koskoff hold any interest in the Debtor or its estate.  None of the Connecticut Plaintiffs' disclosable economic interests have been assigned subsequent to the commencement of the Debtor's case and have not been solicited for purchase by C&S nor Koskoff.

7.      Nothing contained in this Verified Statement (or **Exhibit A** hereto) should be construed as a limitation upon, or waiver of any Connecticut Plaintiff's rights to assert, file, and/or amend its claim(s) in accordance with applicable law and any orders entered in this case establishing procedures for filing proofs of claim.

---

[3] An additional Connecticut plaintiff, Richard Coan, Trustee of the Bankruptcy Estate of Erica Lafferty is a creditor. Ms. Lafferty has also filed a proof of claim. Mr. Coan and Ms. Lafferty have not appeared in this proceeding, except to file proofs of claim.

[4] These three consolidated lawsuits are on the Complex Litigation Docket of Waterbury, Connecticut and are named as follows: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlachv. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046438-S.

VERIFIED RULE 2019 STATEMENT OF MULTIPLE REPRESENTATION—PAGE 2

8.      Connecticut Plaintiffs' Counsel reserve the right to amend or supplement this Verified Statement in accordance with the requirements set forth in Bankruptcy Rule 2019.

Respectfully submitted this 9th day of December 2022.

/s/ Ryan E. Chapple
Ryan E. Chapple
State Bar No. 24036354
Email: rchapple@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile
**ATTORNEY FOR THE CONNECTICUT PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Verified Statement has been served on counsel for Debtor, Debtor, the U.S. Trustee, as well as all parties receiving or entitled to notice through CM/ECF and in accordance with the Rules on this 9th day of December 2022.

/s/ Ryan E. Chapple
Ryan E. Chapple

006274

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

### VERIFICATION

THE STATE OF CONNECTICUT §

COUNTY OF FAIRFIELD §

BEFORE ME, personally appeared Alinor Sterling, who after being duly sworn, did

state:

"I am one of the attorneys of record for David Wheeler, Francine Wheeler,

Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna

Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William

Sherlach, and Robert Parker.  I have read the Verified Rule 2019 Statement of Multiple

Representation and know the contents to be true and correct to the best of my knowledge

and belief."

Alinor Sterling, Affiant

SWORN TO and subscribed before me this 9th day of December 2022.

Notary Public, State of Connecticut
Commission Expires: 7/31/25

CHERYL EDELMANN
Notary Public, State of Connecticut
My Commission Expires Jul 31, 2025

## EXHIBIT A

| Name & Address | Nature of Claim Against the Debtors | Principal Amount of Claim[5] |
|---|---|---|
| David Wheeler c/o Koskoff Koskoff & Bieder PC 350 Fairfield Avenue Bridgeport, Connecticut 06604 | Plaintiff in a case alleging invasion of privacy by false light; defamation and defamation per se; intentional infliction of emotional distress; and violation of the Connecticut Unfair Trade Practices Act | Verdict for plaintiff and against Free Speech Systems, LLC and Jones in the amount of $55,000,000.00 in compensatory damages and $28,429,303.73 in punitive damages; post-verdict motions filed by Free Speech Systems, LLC and Jones pending; these claims are asserted in three consolidated cases on the Complex Litigation Docket of Waterbury, Connecticut: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlach v. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046438-S. There are also TUFTA claims pending against Free Speech Systems, LLC, in Adv. No. 22-03331, now pending in this Court. |
| Francine Wheeler c/o Koskoff Koskoff & Bieder PC 350 Fairfield Avenue Bridgeport, Connecticut 06604 | Plaintiff in a case alleging invasion of privacy by false light; defamation and defamation per se; intentional infliction of emotional distress; and violation of the Connecticut Unfair Trade Practices Act | Verdict for plaintiff and against Free Speech Systems, LLC and Jones in the amount of $54,000,000.00 in compensatory damages and $28,099,303.73 in punitive damages; post-verdict motions filed by Free Speech Systems, LLC and Jones pending; these claims are asserted in three consolidated cases on the Complex Litigation Docket of Waterbury, Connecticut: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlach v. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046438-S. There are also TUFTA claims pending against Free Speech Systems, LLC, in Adv. No. 22-03331, now pending in this Court. |
| Jacqueline Barden c/o Koskoff Koskoff & Bieder PC 350 Fairfield Avenue Bridgeport, Connecticut 06604 | Plaintiff in a case alleging invasion of privacy by false light; defamation and defamation per se; intentional infliction of emotional distress; and | Verdict for plaintiff and against Free Speech Systems, LLC and Jones in the amount of $28,800,000.00 in compensatory damages and $19,699,303.73 in punitive damages; post-verdict motions filed by Free |

---

[5] This statement is not intended as consent pursuant to 28 U.S.C. § 157(c)(2) or waiver of the right to liquidation or estimation of unliquidated claims for purposes of distribution outside of the bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) or waiver of the right to trial by jury pursuant to 28 U.S.C. § 1411.

006276

| Name & Address | Nature of Claim Against the Debtors | Principal Amount of Claim[5] |
|---|---|---|
| | violation of the Connecticut Unfair Trade Practices Act | Speech Systems, LLC and Jones pending; these claims are asserted in three consolidated cases on the Complex Litigation Docket of Waterbury, Connecticut: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlach v. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046438-S. There are also TUFTA claims pending against Free Speech Systems, LLC, in Adv. No. 22-03331, now pending in this Court. |
| Mark Barden c/o Koskoff Koskoff & Bieder PC 350 Fairfield Avenue Bridgeport, Connecticut 06604 | Plaintiff in a case alleging invasion of privacy by false light; defamation and defamation per se; intentional infliction of emotional distress; and violation of the Connecticut Unfair Trade Practices Act | Verdict for plaintiff and against Free Speech Systems, LLC and Jones in the amount of $57,600,000.00 in compensatory damages and $29,299,303.73 in punitive damages; post-verdict motions filed by Free Speech Systems, LLC and Jones pending; these claims are asserted in three consolidated cases on the Complex Litigation Docket of Waterbury, Connecticut: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlach v. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046438-S. There are also TUFTA claims pending against Free Speech Systems, LLC, in Adv. No. 22-03331, now pending in this Court. |
| Nicole Hockley c/o Koskoff Koskoff & Bieder PC 350 Fairfield Avenue Bridgeport, Connecticut 06604 | Plaintiff in a case alleging invasion of privacy by false light; defamation and defamation per se; intentional infliction of emotional distress; and violation of the Connecticut Unfair Trade Practices Act | Verdict for plaintiff and against Free Speech Systems, LLC  and Jones in the amount of $73,600,000.00 in compensatory damages and $34,629,303.73 in punitive damages; post-verdict motions filed by Free Speech Systems, LLC and Jones pending; these claims are asserted in three consolidated cases on the Complex Litigation Docket of Waterbury, Connecticut: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlach v. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046438-S. There are also TUFTA claims pending against Free Speech Systems, LLC, in Adv. No. 22-03331, now pending in this Court. |

| Name & Address | Nature of Claim Against the Debtors | Principal Amount of Claim[5] |
|---|---|---|
| Ian Hockley<br>c/o Koskoff Koskoff & Bieder PC<br>350 Fairfield Avenue<br>Bridgeport, Connecticut 06604 | Plaintiff in a case alleging invasion of privacy by false light; defamation and defamation per se; intentional infliction of emotional distress; and violation of the Connecticut Unfair Trade Practices Act | Verdict for plaintiff and against Free Speech Systems, LLC and Jones in the amount of $81,600,000.00 in compensatory damages and $37,299,303.73 in punitive damages; post-verdict motions filed by Free Speech Systems, LLC and Jones pending; these claims are asserted in three consolidated cases on the Complex Litigation Docket of Waterbury, Connecticut: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlachv. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046438-S. There are also TUFTA claims pending against Free Speech Systems, LLC, in Adv. No. 22-03331, now pending in this Court. |
| Jennifer Hensel<br>c/o Koskoff Koskoff & Bieder PC<br>350 Fairfield Avenue<br>Bridgeport, Connecticut 06604 | Plaintiff in a case alleging invasion of privacy by false light; defamation and defamation per se; intentional infliction of emotional distress; and violation of the Connecticut Unfair Trade Practices Act | Verdict for plaintiff and against Free Speech Systems, LLC and Jones in the amount of $52,000,000.00 in compensatory damages and $27,429,303.73 in punitive damages; post-verdict motions filed by Free Speech Systems, LLC and Jones pending; these claims are asserted in three consolidated cases on the Complex Litigation Docket of Waterbury, Connecticut: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlach v. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046438-S. There are also TUFTA claims pending against Free Speech Systems, LLC, in Adv. No. 22-03331, now pending in this Court. |
| Donna Soto<br>c/o Koskoff Koskoff & Bieder PC<br>350 Fairfield Avenue<br>Bridgeport, Connecticut 06604 | Plaintiff in a case alleging invasion of privacy by false light; defamation and defamation per se; intentional infliction of emotional distress; and violation of the Connecticut Unfair Trade Practices Act | Verdict for plaintiff and against Free Speech Systems, LLC and Jones in the amount of $48,000,000.00 in compensatory damages and $26,099,303.73 in punitive damages; post-verdict motions filed by Free Speech Systems, LLC and Jones pending; these claims are asserted in three consolidated cases on the Complex Litigation Docket of Waterbury, Connecticut: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlach v. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v.* |

006278

| Name & Address | Nature of Claim Against the Debtors | Principal Amount of Claim[5] |
|---|---|---|
| | | *Jones, et al.*, No. X06-UWY-CV18-6046438-S. There are also TUFTA claims pending against Free Speech Systems, LLC, in Adv. No. 22-03331, now pending in this Court. |
| Carlee Soto Parisi<br>c/o Koskoff Koskoff & Bieder PC<br>350 Fairfield Avenue<br>Bridgeport, Connecticut 06604 | Plaintiff in a case alleging invasion of privacy by false light; defamation and defamation per se; intentional infliction of emotional distress; and violation of the Connecticut Unfair Trade Practices Act | Verdict for plaintiff and against Free Speech Systems, LLC and Jones in the amount of $66,000,000.00 in compensatory damages and $32,099,303.73 in punitive damages; post-verdict motions filed by Free Speech Systems, LLC and Jones pending; these claims are asserted in three consolidated cases on the Complex Litigation Docket of Waterbury, Connecticut: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlach v. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046438-S. There are also TUFTA claims pending against Free Speech Systems, LLC, in Adv. No. 22-03331, now pending in this Court. |
| Carlos M. Soto<br>c/o Koskoff Koskoff & Bieder PC<br>350 Fairfield Avenue<br>Bridgeport, Connecticut 06604 | Plaintiff in a case alleging invasion of privacy by false light; defamation and defamation per se; intentional infliction of emotional distress; and violation of the Connecticut Unfair Trade Practices Act | Verdict for plaintiff and against Free Speech Systems, LLC and Jones in the amount of $57,600,000.00 in compensatory damages and $29,299,303.73 in punitive damages; post-verdict motions filed by Free Speech Systems, LLC and Jones pending; these claims are asserted in.three consolidated cases on the Complex Litigation Docket of Waterbury, Connecticut: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlach v. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046438-S. There are also TUFTA claims pending against Free Speech Systems, LLC, in Adv. No. 22-03331, now pending in this Court. |
| Jillian Soto-Marino<br>c/o Koskoff Koskoff & Bieder PC<br>350 Fairfield Avenue<br>Bridgeport, Connecticut 06604 | Plaintiff in a case alleging invasion of privacy by false light; defamation and defamation per se; intentional infliction of emotional distress; and violation of the Connecticut Unfair Trade Practices Act | Verdict for plaintiff and against Free Speech Systems, LLC and Jones in the amount of $68,800,000.00 in compensatory damages and $33,029,303.73 in punitive damages; post-verdict motions filed by Free Speech Systems, LLC and Jones pending; these claims are asserted in three consolidated cases on the Complex |

| Name & Address | Nature of Claim Against the Debtors | Principal Amount of Claim[5] |
|---|---|---|
| | | Litigation Docket of Waterbury, Connecticut: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlachv. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046438-S. There are also TUFTA claims pending against Free Speech Systems, LLC, in Adv. No. 22-03331, now pending in this Court. |
| William Aldenberg c/o Koskoff Koskoff & Bieder PC 350 Fairfield Avenue Bridgeport, Connecticut 06604 | Plaintiff in a case alleging invasion of privacy by false light; defamation and defamation per se; intentional infliction of emotional distress; and violation of the Connecticut Unfair Trade Practices Act | Verdict for plaintiff and against Free Speech Systems, LLC and Jones in the amount of $90,000,000.00 in compensatory damages and $40,099,303.73 in punitive damages; post-verdict motions filed by Free Speech Systems, LLC and Jones pending; these claims are asserted in three consolidated cases on the Complex Litigation Docket of Waterbury, Connecticut: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlach v. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046438-S. There are also TUFTA claims pending against Free Speech Systems, LLC, in Adv. No. 22-03331, now pending in this Court. |
| William Sherlach c/o Koskoff Koskoff & Bieder PC 350 Fairfield Avenue Bridgeport, Connecticut 06604 | Plaintiff in a case alleging invasion of privacy by false light; defamation and defamation per se; intentional infliction of emotional distress; and violation of the Connecticut Unfair Trade Practices Act | Verdict for plaintiff and against Free Speech Systems, LLC and Jones in the amount of $36,000,000.00 in compensatory damages and $22,099,303.73 in punitive damages; post-verdict motions filed by Free Speech Systems, LLC and Jones pending; these claims are asserted in three consolidated cases on the Complex Litigation Docket of Waterbury, Connecticut: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlach v. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046438-S. There are also TUFTA claims pending against Free Speech Systems, LLC, in Adv. No. 22-03331, now pending in this Court. |

006280

| Name & Address | Nature of Claim Against the Debtors | Principal Amount of Claim[5] |
|---|---|---|
| Robert Parker<br>c/o Koskoff Koskoff & Bieder PC<br>350 Fairfield Avenue<br>Bridgeport, Connecticut 06604 | Plaintiff in a case alleging invasion of privacy by false light; defamation and defamation per se; intentional infliction of emotional distress; and violation of the Connecticut Unfair Trade Practices Act | Verdict for plaintiff and against Free Speech Systems, LLC and Jones in the amount of $120,000,000.00 in compensatory damages and $50,099,303.73 in punitive damages; post-verdict motions filed by Free Speech Systems, LLC and Jones pending; these claims are asserted in three consolidated cases on the Complex Litigation Docket of Waterbury, Connecticut: *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S, *Sherlach v. Jones, et al.*, No. X06-UWY-CV18-6046437-S and *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046438-S. There are also TUFTA claims pending against Free Speech Systems, LLC, in Adv. No. 22-03331, now pending in this Court. |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| Debtor. | § | |
| ------------------------------------------------- | § | |
| **In re:** | § | |
| | § | |
| **ALEXANDER E. JONES,** | § | **Case No. 22-33553** |
| | § | |
| Debtor. | § | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that on December 2, 2022, Alexander E. Jones and Free Speech Systems, LLC filed a Joint Motion for Entry of Order Authorizing Joint Administration of Chapter 11 Cases Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure [Docket Nos. 6 and 296].

**PLEASE TAKE FURTHER NOTICE** that a hearing has been set for December 16, 2022, at 1:00 p.m. (prevailing Central Time) in the United States Bankruptcy Court for the Southern District of Texas before the Honorable Christopher M. Lopez, Courtroom 401, 515 Rusk, Houston, TX 77002.

**PLEASE TAKE FURTHER NOTICE** that you may participate in the hearing either in person or audio and video connection. Audio communication will be by the use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the person information setting.

**PLEASE TAKE FURTHER NOTICE** parties are encouraged to review the Court's procedures for telephonic appearances located on the Court's website at: COURT PROCEDURES (uscourts.gov).

**PLEASE TAKE FURTHER NOTICE** that hearing appearances must be made electronically in advance of the hearing. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name. complete the required fields and click "Submit" to complete your appearance.

**NOTICE OF HEARING – Page 1**

RESPECTFULLY SUBMITTED this 9th day of December, 2022.


**CROWE & DUNLEVY, P.C.**

By: */s/ Christina W. Stephenson*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
         aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**PROPOSED ATTORNEYS FOR ALEXANDER E. JONES**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing pleading was served upon the parties listed below via e-mail, U.S. Mail, and/or electronic transmission via the Court's ECF noticing system on this 9th day of December, 2022.

(a) The Office of the United States Trustee for the Southern District of Texas;

(b) The 20 largest unsecured creditors for the Debtor regarding which the pleading impacts, unless and until such time as an official committee of unsecured creditors is appointed, if any;

(c) Counsel for FSS's Subchapter V Trustee;

(d) The Office of the Attorney General of the State of Texas;

(e) The United States Attorney's Office for the Southern District of Texas; and

(f) All parties who have filed a notice of appearance and request for notice or service of all pleadings pursuant to Bankruptcy Rule 2002.

*/s/ Christina W. Stephenson*
Christina W. Stephenson

**NOTICE OF HEARING – Page 3**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Case No. 22-60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | **(Chapter 11) Subchapter V** |
| | § | |
| Debtor. | § | **JUDGE CHRISTOPHER M. LOPEZ** |
| | § | |

**NOTICE OF HEARING**

      **PLEASE TAKE NOTICE** that on December 6, 2022, Alexander E. Jones filed his Emergency Motion to Modify Stay Orders [Docket No. 300].

      PLEASE TAKE FURTHER NOTICE that a hearing has been set for December 16, 2022, at 1:00 p.m. (prevailing Central Time) in the United States Bankruptcy Court for the Southern District of Texas before the Honorable Christopher M. Lopez, Courtroom 401, 515 Rusk, Houston, TX 77002.

      PLEASE TAKE FURTHER NOTICE that you may participate in the hearing either in person or audio and video connection. Audio communication will be by the use of the Court's dial-in facility.  You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the person information setting.

      PLEASE TAKE FURTHER NOTICE parties are encouraged to review the Court's procedures for telephonic appearances located on the Court's website at: COURT PROCEDURES (uscourts.gov).

      PLEASE TAKE FURTHER NOTICE that hearing appearances must be made electronically in advance of the hearing. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage.  Select the case name. complete the required fields and click "Submit" to complete your appearance.

[*Remainder of Page Intentionally Left Blank*]

**NOTICE OF HEARING – Page 1**

RESPECTFULLY SUBMITTED this 9th day of December, 2022.


**CROWE & DUNLEVY, P.C.**

By: */s/ Christina W. Stephenson*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone:  (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
        aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**PROPOSED ATTORNEYS FOR ALEXANDER E. JONES**

**NOTICE OF HEARING – Page 2**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing pleading was served upon the parties listed below via e-mail, U.S. Mail, and/or electronic transmission via the Court's ECF noticing system on this 9th day of December, 2022.

(a) The Office of the United States Trustee for the Southern District of Texas;

(b) The 20 largest unsecured creditors for the Debtor regarding which the pleading impacts, unless and until such time as an official committee of unsecured creditors is appointed, if any;

(c) Counsel for the Subchapter V Trustee;

(d) The Office of the Attorney General of the State of Texas;

(e) The United States Attorney's Office for the Southern District of Texas; and

(f) All parties who have filed a notice of appearance and request for notice or service of all pleadings pursuant to Bankruptcy Rule 2002.

*/s/ Christina W. Stephenson*
Christina W. Stephenson

**NOTICE OF HEARING – Page 3**

006287

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 22-60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **CHAPTER 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 22-33553** |
| | § | |
| **ALEXANDER E. JONES,** | § | **CHAPTER 11** |
| | § | |
| Debtor. | § | |

### UNITED STATES TRUSTEE'S OBJECTION TO
### DEBTORS' JOINT MOTION FOR ENTRY OF ORDER AUTHORIZING JOINT
### ADMINISTRATION OF CHAPTER 11 CASES PURSUANT TO RULE 1015(b) OF
### THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), by and through his undersigned counsel, hereby submits his objection (the "Objection") to *Debtors' Joint Motion for Entry of Order Authorizing Joint Administration of Chapter 11 Cases Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure* (Dkt. No. 6 in Case No. 22-33553 and Dkt. No. 296 in Case No. 22-60043) (the "Motion").

### INTRODUCTION[1]

Although joint administration is typically requested to promote efficiency and convenience in the bankruptcy cases of related debtors, joint administration of the cases of Alexander E. Jones's ("Mr. Jones") and Free Speech Systems, LLC's ("FSS" and collectively with Mr. Jones,

---

[1] Capitalized terms not defined withing the Introduction shall have the meanings ascribed to them below.

1

"Debtors") would instead cause confusion to creditors and other parties in interest and provide little, if any, added value. The Debtors may be related, but the nature of their respective cases weighs against jointly administering the cases. Mr. Jones's bankruptcy case is newly filed and will proceed under subchapters I-III of chapter 11. FSS's bankruptcy case has been pending for almost five months and is proceeding under subchapter V of chapter 11. As a result, the cases are subject to different provisions of the Bankruptcy Code, including different plan confirmation standards, different fiduciary parties, and different deadlines, that will necessitate a variety of significant pleadings filed on the docket that are applicable to only one or the other debtor.

Jointly administering these cases would thus produce a docket with jumbled entries, some applying to the Jones case and some applying to the FSS case, which may create confusion to creditors and other parties in interest with no particular benefit or cost-savings to either the Debtors or the Court. Most notably, such a docket presents the risk that creditors and other parties in interest may be less likely to understand both the rights and responsibilities of each Debtor as well as how the rights and remedies available to the creditor or party in interest differ in each case. To the extent issues arise among the Debtors that would benefit from a joint approach, the Court has the discretion to set hearings in the two cases at the same time. The Court does not need joint administration for that purpose. Accordingly, the Court should exercise its discretion and deny the Motion.

## **PROCEDURAL HISTORY**

1.      On July 29, 2022, FSS filed a voluntary chapter 11 petition and elected to proceed under subchapter V of chapter 11. FSS continues to manage and operate its business as debtor-in-possession pursuant to Bankruptcy Code § 1182(2). Melissa A. Haselden ("Ms. Haselden") has been appointed as the Chapter 11 Subchapter V Trustee in FSS's subchapter V chapter 11 case.

006289

Because subchapter V chapter 11 cases do not have committees of unsecured creditors unless the Court orders otherwise for cause, no committee of unsecured creditors has been appointed in FSS's case. 11 U.S.C. § 1181(b). There is a pending motion requesting a committee in the FSS case, which is not currently being prosecuted while the mediation proceeds. Dkt No. 102, Case No. 22-60043.

2.      On December 2, 2022, Mr. Jones filed his voluntary chapter 11 petition. The United States Trustee appointed an official Committee of Unsecured Creditors on December 13, 2022 (the "Committee"). No trustee or examiner has been requested or appointed in Mr. Jones's chapter 11 case.

3.      FSS as an entity is engaged in producing and syndicating radio and video talk shows hosted by Mr. Jones. FSS additionally offers dietary supplement products, books, t-shirts, and other products, which are advertised by Mr. Jones during his radio and video talk shows, for online sale to customers. Mr. Jones owns 100% of the outstanding membership interests in FSS. The day-to-day operations of FSS are managed by its Chief Restructuring Officer, Patrick McGill (the "FSS CRO").

## **LEGAL STANDARD**

4.      The decision to authorize joint administration of the cases of affiliated debtors is within the discretion of the Court pursuant to Fed. R. Bankr. P. 1015(b). Joint administration is typically authorized to promote procedural convenience and cost efficiencies without effecting the substantive rights of the creditors of the estates of affiliated debtors. *In re Las Torres Dev.*, L.L.C., 413 B.R. 687, 693 (Bankr. S.D. Tex. 2009) (citing *In re McKenzie Energy Corp.*, 228 B.R. 854 874 (Bankr. S.D. Tex. 1998)).

006290

5.      Fed. R. Bankr. P. 1015(b) provides in part that "[p]rior to entering an order the court shall give consideration to protecting creditors of different estates against potential conflicts of interest." Fed. R. Bank. P. 1015(b).

## ARGUMENT

6.      The Motion should be denied because joint administration of the Debtors' cases will not promote procedural convenience, judicial economy, or cost efficiencies but instead will likely cause confusion to creditors and other interested parties. The FSS and Jones bankruptcy cases are proceeding under different subchapters of chapter 11 and thus are subject to different provisions of the Bankruptcy Code, including different plan confirmation standards, different fiduciary parties, and different deadlines.

7.      As a threshold matter, these cases may not run on the same timeline, and it is questionable whether joint administration would offer any convenience in those circumstances. FSS has been in bankruptcy for almost five months, while Mr. Jones just filed his case. FSS has already filed its schedules and statement of financial affairs and held its meeting of creditors, while Mr. Jones has not. And subchapter V cases are meant to move quickly with a 90-day deadline to file a plan, which can only be extended "if attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1189(b).[2] But counsel for Mr. Jones has already announced that he intends to request an extension of time to file his schedules and statement of financial affairs, and it is not clear how quickly his case can progress, particularly given how important complete and accurate disclosure of his assets will be to any potential settlement with the main creditors in his

---

[2] FSS's deadline has been extended once, and there is a pending request for an additional extension. Dkt. No. 299, Case No. 22-60043.

006291

case.

8.      But even if the cases could run on similar timelines, joint administration is still more likely to cause confusion than to create efficiencies. Unlike most jointly administered cases, because of the differing subchapters of chapter 11 each Debtor has elected to file under, the dockets in these cases will have multiple motions and applications that apply only to one case or the other that involve highly significant issues. A jointly administered docket presents the risk that creditors and other parties in interest may be less likely to understand both the rights and responsibilities of each Debtor as well as how the rights and remedies available to the creditor or party in interest differ in each case. For example, the U.S. Trustee was required to appoint the Committee in the Jones case but is not permitted to do so currently in the FSS case.[3] *Cf.* 11 U.S.C. § 1102 and 1181(b). Thus, the appointment of the Committee only applies to Mr. Jones's case, and any pleadings filed by the Committee will only be in reference to Mr. Jones's case. Moreover, Ms. Haselden is the Subchapter V Trustee for FSS but has no duties with respect to Mr. Jones' case. Thus, any pleading she files will generally only concern the FSS case, but her presence on the docket may confuse creditors or parties in interest who may not understand the difference between a subchapter V trustee and a chapter 11 trustee. And subchapter V provides FSS with the exclusive right to file a plan, while in Mr. Jones's case, absent an extension, he will lose the exclusive right to file a plan after 120 days (unless such time is shortened by Court order). *Cf.* 11 U.S.C. § 1189 and 11 U.S.C. § 1121.

9.      Beyond the confusion it would create, jointly administering the Debtors' cases appears to

---

[3] There is a pending motion to appoint a committee in the FSS case, which is not currently being prosecuted while the mediation proceeds. Dkt No. 102, Case No. 22-60043.

006292

provide little if any value and will not promote judicial economy. The Court may always schedule hearings for both cases at the same time when appropriate. Alternatively, administering the cases separately could produce other efficiencies. For example, if the cases are not jointly administered, FSS's counsel will not need to appear at a hearing on employment or utilities in Mr. Jones's case, thereby keeping costs down. Further, there is no evidence that there would be any significant cost-savings through joint administration here. And there is no evidence that joint administration will lead to an expeditious resolution of this case, which would provide further cost-savings.

10.     Finally, even if each Debtor ultimately reached a multi-party settlement to deal with the debts of both Debtors, any plans reflecting that settlement would need to be balloted separately because of the different confirmation standards of each subchapter.[4] As such, there would be no judicial economy from joint administration because the Court will have to consider confirmation of each plan separately given the different confirmation standards. *Compare* 11 U.S.C. § 1141(d)(5) (individual in chapter 11 must complete plan payments before receiving discharge) *with* 11 U.S.C. § 1192 (Subchapter V debtors may receive discharge after three years of making plan payments); *see also* 11 U.S.C. § 1129 (a)(15) (confirmation requirement for individual chapter 11 debtor that imports similar requirement to the "means test"). Filing a plan on the docket in each case would thus not add any significant additional cost to either Debtor's estate and will instead better allow the Court and parties in interest to understand and track the confirmation of each plan.

---

[4] Among other things, subchapter V allows a debtor to confirm a plan non-consensually even if none of the impaired classes of creditors votes in favor of the plan, but Mr. Jones must obtain the vote of one class of non-insider impaired creditors in favor of the plan before he can cram down others. *Cf.* 11 U.S.C. § 1191 and 11 U.S.C. § 1129.

The Debtors have stated that they do not intend to file a joint plan while FSS is in subchapter V, *see* Motion at ¶9.

006293

## CONCLUSION

11.     While the Debtors may be affiliated, it is likely that many, if not most, motions and other proceedings in the cases will only apply to one debtor or the other. Administering both cases on the same docket will likely cause more confusion than less for anyone looking at the docket and trying to understand what has occurred in one case versus the other.  Jointly administering the cases thus would provide little if any benefit. Maintaining two separate dockets will allow the Court, Debtors, creditors, and other parties interest to keep straight the various motions and applications and accompanying orders and to better understand their rights, responsibilities, and remedies in each case.

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court deny the Motion and grant such other relief as is just and proper.

RESPECTFULLY SUBMITTED:
KEVIN M. EPSTEIN
UNITED STATES TRUSTEE

DATED: December 14, 2022

*/s/ Jayson B. Ruff*
Jayson B. Ruff, Trial Attorney
MI Bar #P69893
United States Department of Justice
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, Texas 77002
E-mail: jayson.b.ruff@usdoj.gov
Cell: 202-573-6960

006294

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission to all Pacer System participants in these bankruptcy cases, on the 14th day of December, 2022.

/s/ *Jayson B. Ruff*
Jayson B. Ruff, Trial Attorney

8

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 22-60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **CHAPTER 11 (Subchapter V)** |
| | § | |
| **Debtor.** | § | |

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 22-33553** |
| | § | |
| **ALEXANDER E. JONES,** | § | **CHAPTER 11** |
| | § | |
| **Debtor.** | § | |

**ORDER SUSTAINING UNITED STATES TRUSTEE'S OBJECTION TO
DEBTORS' JOINT MOTION FOR ENTRY OF ORDER AUTHORIZING JOINT
ADMINISTRATION OF CHAPTER 11 CASES PURSUANT TO RULE 1015(b) OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**[Related Dkt. No. ___]**

CAME ON for consideration by *The United States Trustee's Objection to Debtors' Joint Motion for Entry of Order Authorizing Joint Administration of Chapter 11 Cases Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure* (the "Objection"). For the reasons set forth on the record, it is hereby

**ORDERED** that the Objection is **SUSTAINED**; it is

**FURTHER ORDERED** that the *Debtors' Joint Motion for Entry of Order Authorizing Joint Administration of Chapter 11 Cases Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure* [Dkt. No. 6 in Case No. 22-33553 and Dkt. No. 296 in Case No. 22-60043] (the "Motion") is denied.

ZZZZZZ

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11 (Subchapter V)** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| Debtor. | § | |
| ------------------------------------------------- | § | |
| In re: | § | |
| | § | |
| **ALEXANDER E. JONES,** | § | **Case No. 22-33553** |
| | § | |
| Debtor. | § | |

**NOTICE OF RESET HEARING**

**PLEASE TAKE NOTICE** that on December 2, 2022, the Debtor, Alexander E. Jones ("Jones"), filed a *Joint Motion for Entry of Order Authorizing Joint Administration of Chapter 11 Cases Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure* with Free Speech Systems, LLC ("FSS") in the FSS Chapter 11 Case and Jones's Chapter 11 Case [Docket Nos. 296 and 6, respectively].

**PLEASE TAKE FURTHER NOTICE** that the hearing on this matter previously set for December 16, 2022, at 1:00 p.m., has been reset to December 19, 2022 at 3:00 PM (prevailing Central Time) in the United States Bankruptcy Court for the Southern District of Texas before the Honorable Christopher M. Lopez, Courtroom 401, 515 Rusk, Houston, TX 77002.

**PLEASE TAKE FURTHER NOTICE** that you may participate in the hearing either in person or audio and video connection. Audio communication will be by the use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the person information setting.

**PLEASE TAKE FURTHER NOTICE** parties are encouraged to review the Court's procedures for telephonic appearances located on the Court's website at: COURT PROCEDURES (uscourts.gov).

**PLEASE TAKE FURTHER NOTICE** that hearing appearances must be made electronically in advance of the hearing. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.

**NOTICE OF RESET HEARING – Page 1**

RESPECTFULLY SUBMITTED this 14th day of December, 2022.


**CROWE & DUNLEVY, P.C.**

By: */s/ Christina W. Stephenson*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
        aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**PROPOSED ATTORNEYS FOR DEBTOR ALEXANDER E. JONES**

006298

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing pleading was served upon the parties listed below via the Court's ECF noticing system on this 14th day of December, 2022.

(a)  The Office of the United States Trustee for the Southern District of Texas;

(b)  The 20 largest unsecured creditors for the Debtor regarding which the pleading impacts, unless and until such time as an official committee of unsecured creditors is appointed, if any;

(c)  Counsel to any official committee established in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, if any;

(d)  Counsel for the FSS Sub V Trustee;

(e)  The Office of the Attorney General of the State of Texas;

(f)  The United States Attorney's Office for the Southern District of Texas; and

(g)  All parties who have filed a notice of appearance and request for notice or service of all pleadings pursuant to Bankruptcy Rule 2002.

*/s/ Christina W. Stephenson*
Christina W. Stephenson

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 22-60043 |
| | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | (Chapter 11) Subchapter V |
| | § | |
| Debtor. | § | **JUDGE CHRISTOPHER M. LOPEZ** |
| | § | |

<u>**NOTICE OF RESET HEARING**</u>

**PLEASE TAKE NOTICE** that on December 6, 2022, Alexander E. Jones ("<u>Jones</u>") filed his *Emergency Motion to Modify Stay Orders* [Docket No. 300].

PLEASE TAKE FURTHER NOTICE that the hearing on this matter previously set for December 16, 2022, at 1:00 p.m., has been reset to <u>December 19, 2022 at 3:00 PM</u> (prevailing Central Time) in the United States Bankruptcy Court for the Southern District of Texas before the Honorable Christopher M. Lopez, Courtroom 401, 515 Rusk, Houston, TX 77002.

PLEASE TAKE FURTHER NOTICE that you may participate in the hearing either in person or audio and video connection. Audio communication will be by the use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the person information setting.

PLEASE TAKE FURTHER NOTICE parties are encouraged to review the Court's procedures for telephonic appearances located on the Court's website at: <u>COURT PROCEDURES (uscourts.gov)</u>.

PLEASE TAKE FURTHER NOTICE that hearing appearances must be made electronically in advance of the hearing. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.

[*Remainder of Page Intentionally Left Blank*]

**NOTICE OF RESET HEARING – Page 1**

RESPECTFULLY SUBMITTED this 14th day of December, 2022.


**CROWE & DUNLEVY, P.C.**

By: */s/ Christina W. Stephenson*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
          aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**PROPOSED ATTORNEYS FOR ALEXANDER E. JONES**

**NOTICE OF RESET HEARING – Page 2**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing pleading was served upon the parties listed below via the Court's ECF noticing system on this 14th day of December, 2022.

(a)  The Office of the United States Trustee for the Southern District of Texas;

(b)  The 20 largest unsecured creditors for the Debtor regarding which the pleading impacts, unless and until such time as an official committee of unsecured creditors is appointed, if any;

(c)  Counsel to any official committee established in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, if any;

(d)  Counsel for the FSS Sub V Trustee;

(e)  The Office of the Attorney General of the State of Texas;

(f)  The United States Attorney's Office for the Southern District of Texas; and

(g)  All parties who have filed a notice of appearance and request for notice or service of all pleadings pursuant to Bankruptcy Rule 2002.

*/s/ Christina W. Stephenson*
Christina W. Stephenson

**NOTICE OF RESET HEARING – Page 3**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 (Subchapter V) |
| FREE SPEECH SYSTEMS LLC, | § | |
|  | § | Case No. 22-60043 (CML) |
|  | § | |
| Debtor. | § | |
|  | § | |
|  | § | |
| In re: | § | |
| ALEXANDER E. JONES, | § | Chapter 11 |
|  | § | |
|  | § | Case No. 22-33553 (CML) |
| Debtor. | § | |
|  | § | |

**SUBCHAPTER V TRUSTEE'S JOINDER TO UNITED
STATES TRUSTEE'S OBJECTION TO THE DEBTORS'
JOINT MOTION FOR ENTRY OF ORDER AUTHORIZING
JOINT ADMINISTRATION OF CHAPTER 11 CASES PURSUANT TO
RULE 1015(B) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Melissa Haselden ("Subchapter V Trustee"), files this joinder ("Joinder") to the *United States Trustee's Objection to the Debtors' Joint Motion for Entry of Order Authorizing Joint Administration of Chapter 11 Cases Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure* [Docket No. 309, Case No. 26-60043; Docket No. 44, Case No. 22-33553] (the "Objection"), filed in response to *Debtors' Joint Motion for Entry of Order Authorizing Joint Administration of Chapter 11 Cases Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure* [Docket No. 296, Case No. 22-60043; Docket No. 6, Case No. 22-33553] (the "Motion").  In support of this Joinder, the Subchapter V Trustee states as follows:

1.      The Subchapter V Trustee joins in, and hereby incorporates by reference, the arguments made by the United States Trustee in the Objection.

2.      The Debtors filed the Motion on December 2, 2022.

3.      The United States Trustee filed the Objection on December 14, 2022.

4.      The Subchapter V Trustee appreciates the goals of maximizing efficiencies and providing notice to all parties in the cases that are unquestionably related.  However, on balance, the Subchapter V Trustee believes the potential confusion or possible conflicts of interest outweighs the benefit of joint administration.

5.      For the reasons stated in the Objection and this Joinder, the Subchapter V Trustee respectfully requests that the Court deny the Motion and grant such other and further relief as it may deem just and proper.

006304

Dated: December 14, 2022

/s/ *Elizabeth Freeman*

**LAW OFFICE OF LIZ FREEMAN**
Elizabeth C. Freeman (TX Bar No. 2400922)
PO Box 61209
Houston, TX 77208-1209
Telephone: (832) 779-3580
Email: liz@lizfreemanlaw.com

**JACKSON WALKER LLP**
Sean Gallagher (TX Bar No. 24101781)
100 Congress Avenue, Suite 1100
Austin, TX 78701
Telephone: 512-236-2000
Email: sgallagher@jw.com

*Counsel for Melissa Haselden,*
*Subchapter V Trustee*

*Counsel for Melissa Haselden,*
*Subchapter V Trustee*

006305

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 14, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Elizabeth Freeman*
Elizabeth Freeman

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 (Subchapter V) |
| FREE SPEECH SYSTEMS LLC, | § | |
| . | § | Case No. 22-60043 (CML) |
| | § | |
| Debtor. | § | Jointly Administered |

**WITNESS AND EXHIBIT LIST FOR HEARING**
**SCHEDULED FOR DECEMBER 19, 2022 AT 3:00 P.M. (PREVAILING CENTRAL TIME)**

The Subchapter V Trustee (the "Subchapter V Trustee") file this Witness and Exhibit List for the hearing to be held on December 19, 2022, at 3:00 p.m. (prevailing Central Time) (the "Hearing") as follows:

**WITNESSES**

The Subchapter V Trustee may call the following witnesses at the Hearing:

1.  Melissa Haselden, Subchapter V Trustee;

2.  Brian Griffith, Managing Director at M3 Advisory Partners, LP;

3.  Any witness listed by any other party;

4.  Rebuttal witnesses as necessary; and

5.  The Subchapter V Trustee reserve the right to cross-examine any witness called by any other party.

## EXHIBITS

| EXHIBIT | DESCRIPTION | MARK | OFFER | OBJECT | ADMIT | W/D | DISPOSITION AFTER TRIAL | Docket No. |
|---------|-------------|------|-------|--------|-------|-----|-------------------------|------------|
| **1.** | Engagement Letter, Exhibit B from the Subchapter Trustee's Motion for Entry of an Order Authorizing Retention of M3 Advisory Partners, LP as Financial Advisor to the Subchapter V Trustee [Docket No. 282] | | | | | | | |
| | Any document or pleading filed in the above-captioned main cases | | | | | | | |
| | Any exhibit necessary for impeachment and/or rebuttal purposes | | | | | | | |
| | Any exhibit identified or offered by any other party | | | | | | | |

## RESERVATION OF RIGHTS

The Subchapter V Trustee reserves the right to call or to introduce one or more, or none, of the witnesses and exhibits listed above, and further reserve the right to supplement this list prior to the Hearing.

2

Houston, Texas
December 15, 2022

/s/ Elizabeth C. Freeman
**LAW OFFICE OF LIZ FREEMAN**
Elizabeth C. Freeman (TX Bar No. 2400922)
PO Box 61209
Houston, TX 77208-1209
Telephone: (832) 779-3580
Email: liz@lizfreemanlaw.com

*Counsel for Melissa Haselden,*
*Subchapter V Trustee*

**JACKSON WALKER LLP**
Sean Gallagher (TX Bar No. 24101781)
Emily Meraia (TX Bar No. 24129307)
100 Congress Avenue, Suite 1100
Austin, TX 78701
Telephone: 512-236-2000
Email: sgallagher@jw.com
Email: emeraia@jw.com

*Counsel for Melissa Haselden,*
*Subchapter V Trustee*

3

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 15, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

<u>/s/ *Elizabeth Freeman*         </u>
Elizabeth Freeman

# **Exhibit 1**

006311



October 19, 2022

Melissa Haselden
Sub Chapter V Trustee Free Speech System LLC
Haselden Farrow PLLC
Pennzoil Place
700 Milam, Suite 1300
Houston, TX 77002

Attention:    Retention of Financial Advisor

Engagement Letter

Dear Ms. Haselden:

This letter agreement (this "***Agreement***") sets forth the terms and conditions of the engagement (the "***Engagement***") of M3 Advisory Partners, LP ("***M3***") to provide the Services (as defined below) to you as the subchapter V trustee (the "**Client**") for Free Speech Systems, LLC (the "***Debtor***").  M3 and the Client are collectively referred to in this Agreement as the "***Parties***."

    1.  Services:  The Client hereby retains M3 to provide, and M3 hereby agrees to provide, the following services (the "***Services***") upon the terms and subject to the conditions set forth in this Agreement:

        (a)  provide support to the Client in its evaluation of the expenditures of the Debtor;

        (b)  review transfers made by the Debtor; including payments, distributions or withdrawals to insiders;

        (c)  provide support to the Client in its evaluation of the PQPR claim;

        (d)  assist the Client in its investigation of potential claims and causes of action ordered by the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") on September 20, 2022;

        (e)  provide support to the Client, as requested by it, in evaluating the business operations and financial prospects of the Debtor;

        (f)  advise and assist the Client and its counsel with on-going assessment of the Debtor's financial performance and its ability to repay its outstanding obligations; and

        (g)  provide such other services as M3 and the Client shall otherwise agree in writing.

M3 ADVISORY PARTNERS, LP   •   1700 BROADWAY, 19TH FLOOR, NEW YORK, NY 10019
T: (212) 202-2200   •   F: (212) 531-4532   •   WWW.M3-PARTNERS.COM

006312

2. <u>Engagement Term</u>.  The Engagement shall commence on the date of acceptance of this Agreement and may be terminated by either Party at any time upon ten business days' written notice.  Following any such termination, neither Party shall have further liability to the other, except with respect to fees and expenses earned and incurred through the date of termination and any provisions of this Agreement which are expressly stated to survive its termination or expiration.

3. <u>Staffing</u>.  M3 will staff a team that it believes to be appropriate to provide the Services in accordance with the terms of this Agreement.  The individual members of the team are subject to change by M3 from time to time in its sole discretion.  M3 also may provide Services through independent contractors and, unless the context shall otherwise indicate, references in this Agreement to M3 and its employees or staff shall be deemed to include any such independent contractors and their respective employees.

4. <u>Compensation for Services</u>.  (a)  M3's compensation for services rendered under this Agreement shall be paid by the Debtor by wire transfer of immediately available funds in accordance with instructions provided from time to time by M3 to the Client and will consist of the following:

(i) <u>Service Fees</u>:  As compensation for providing the Services hereunder, M3 shall be entitled to non-refundable professional fees based on the actual hours incurred by M3 personnel on matters pertinent to the Engagement (the "**Service Fees**").  The Service Fees shall be based upon M3's standard hourly rates as follows:

| Professional | Standard Rate |
|---|---|
| Managing Partner | $1,285 |
| Senior Managing Director | $1,155 |
| Managing Director | $970 - $1,100 |
| Director | $790 - $895 |
| Vice President | $710 |
| Senior Associate | $605 |
| Associate | $520 |
| Analyst | $415 |

In an effort to be sensitive to the equities of this case and in recognition of the Trustee's efforts to negotiate a compensation agreement designed to fit the particular needs and possibilities of this case, M3 is willing to provide a 30% discount to the standard rates shown above.  M3 shall deliver to the Client an invoice for the Service Fees (as reduced by such discount) on a monthly basis and the Debtor shall pay to M3 the amount invoiced for the relevant period in accordance with the provisions of Section 4(b) below.  From time to time in the normal course of business M-3 may adjust its billing rates upon notice to the Client and subject to approval of the Court.



    (ii)    Expenses:  In addition to any compensation for providing the Services, the Debtor shall reimburse M3 for all reasonable and documented out-of-pocket expenses incurred in the performance of the Services (including, without limitation, reasonable travel costs).  Any request for reimbursement of an out-of-pocket expense in excess of $100 shall be accompanied by reasonable back-up for each expense and as otherwise required by applicable law.

    (b)  All amounts owing hereunder shall, subject to approval of the Court, be due and payable by wire transfer of immediately available funds in accordance with instructions from time to time provided by M3 within 15 days following receipt of the invoice therefor, except that the Deferred Fees shall be payable from available funds without any requirement of further invoice promptly upon approval of the Court following the successful conclusion of the Debtor's bankruptcy proceeding. In the event that M3 does not receive payment of amounts payable hereunder within 15 days following receipt of such invoice, M3 shall have the right (subject to approval of the Court) to suspend further Services until payment is received on past due invoices and/or the Retainer is restored.  In the event that M3 so suspends the Services, M3 shall not be responsible or liable for any resulting loss, damage or expense due to such suspension.

    (c)  Unless expressly stated otherwise in the relevant invoice, none of the amounts invoiced by M3 from time to time with respect to the Engagement shall be contingent upon, or in any way tied to the delivery of, any reports or other work product in the future, nor upon the outcome of any case or matters.  All fees payable to M3 are exclusive of taxes or similar charges, which shall be the sole obligation of the Debtor (other than any taxes which may be payable on account of M3's income generally, which shall be the obligation of M3).

    (d)  The provisions of this Section shall survive the termination or expiration of this Agreement.

    5.  Cooperation from Client.  In order to properly perform the Services and fulfill its responsibilities on a timely basis, M3 will rely on the timely cooperation of the Client and, where applicable, the Debtor and their respective professional advisors, including, without limitation, making available to M3 relevant data, information and personnel, performing any tasks or responsibilities assigned to the Client and notifying M3 of any issues or concerns that the Client may have relating to the Services.  The Client understands and acknowledges that M3's proper delivery of the Services is dependent upon timely decisions and approvals by the Client and access to all relevant materials. M3 shall have no responsibility or liability for any delays, additional costs or other deficiencies caused by the Client failing to properly fulfill its responsibilities under this Agreement.

    6.  Deliverables.  (a) In connection with the Engagement, M3 may furnish the Client with information, advice, reports, analyses, presentations or other materials (the "***Deliverables***").  The Deliverables may contain factual data, the interpretation of which may change over the project term as more information or better understanding becomes available.  The Client acknowledges



that M3 will have no obligation to update the Deliverables as part of the Services in the event of such a change.

(b)  Any materials prepared by M3 are solely for the confidential use of the Client and will not be distributed, reproduced, summarized, referred to, disclosed publicly or given to any other person without the prior written consent of M3, *provided* that such permission shall not be required if the materials are required to be disclosed by applicable law or by order or act of any court or governmental or regulatory authority or body.

(c)  The provisions of this Section shall survive the termination or expiration of this Agreement.

7.  <u>Limitations on Services</u>.  (a)  The Services are limited to those specifically noted in this Agreement.

(b) M3 does not provide accounting or tax-related assistance and no Deliverable or other information or advice provided to the Client shall be deemed to be accounting or tax-related assistance.  The Client shall be solely responsible for determining the accounting and tax-related implications of the Deliverables and other information and advice provided to it by M3.  M3 shall not express any professional opinions on financial statements or perform attest procedures with respect to other information in conjunction with the Engagement.  The Services are not designed, nor should they be relied upon, to disclose weaknesses in internal controls, financial statement errors, irregularities or illegal acts.  M3 shall assume the accuracy and completeness of all information submitted by or on behalf of the Client to M3 for analysis and which will form the basis of M3's conclusions, without any obligation of M3 to verify the accuracy or completeness of such information, and M3 shall not be responsible for any analysis, advice or other Services to the extent based on inaccurate or incomplete information provided or accepted by or on behalf of the Client.

(c)  The Services shall not include preparing, auditing or otherwise attesting in any way (including without limitation, with respect to the accuracy, achievability, reliability, relevance, usefulness or other appropriateness) to the Client's financial projections, and the Client has not engaged M3 for that purpose.  The Services are provided based upon the understanding that the Client has sole responsibility for its financial projections (including preparation thereof), developing underlying assumptions and providing any disclosure related thereto.  To the extent that, during the performance of Services hereunder, M3 is required to consider the Client's financial projections, the Client understands that M3's procedures with respect to such projections do not constitute an examination in accordance with procedures established by the American Institute of Certified Public Accountants and do not and are not intended to provide any assurance on any aspect of such projections, including, without limitation, the reasonableness of the assumptions underlying such projections, nor do they provide assurance that M3 might not become aware of significant matters affecting the reasonableness of the projections that might be disclosed by more extensive procedures.  There will usually be differences between projected and actual



results, and those differences may be material. The Client understands and agrees that M3 will have no responsibility or liability relating to any such differences.

(d) M3 does not provide investment advice and the Services shall not include the provision of investment advice. The Client shall have sole responsibility for all investment decisions made by it. Similarly, M3 is providing advisory and consulting services only and will not make management decisions for the Client. Although M3 may from time to time suggest or recommend options that may be available to the Client, the ultimate decision with respect to such options rests with the Client and the Client shall be solely responsible for such decision and its outcome. M3 makes no representation, promise or guarantee with respect to the outcome of any matter affecting the Client.

(e) To the extent that the performance of the Services requires that M3 form conclusions or reach opinions, M3 shall do so without regard to or consideration of the impact that such conclusions or opinions may have on the initiation or outcome of any litigation to which the Client is or may become a party.

(f) The Client shall be solely responsible for the work and fees of any third parties engaged by the Client to provide services in connection with the Engagement, regardless of whether such third party was recommended to the Client by M3 or M3 is involved with the services provided by it. M3 shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.

(g) The provisions of this Section shall survive the termination or expiration of this Agreement.

8. <u>Confidentiality</u>. (a) Each Party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other Party in the scope of the Engagement (the "***Confidential Information***"), and neither Party will disclose any Confidential Information of the other Party to any other person or entity. For the avoidance of doubt, the term "Confidential Information" shall include (i) the terms of this Agreement, (ii) all non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, and models and (iii) any work product relating to the business of either Party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants. Notwithstanding the foregoing, the term "Confidential Information" shall not include information that (a) is or becomes publicly available other than as a result of disclosure by the receiving Party in violation of this Agreement, (b) was already known to the receiving Party or (c) was independently acquired or developed by the receiving Party from a source not known by it to be bound by a confidentiality requirement with respect to such information. In performing the Services, M3 will use and rely primarily on the Confidential Information and on information available from public sources without having independently verified any of such information.



(b)  The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, M3 from making such disclosures of Confidential Information that M3 reasonably believes are required by law or any regulatory requirement or authority, or to clear client conflicts.  M3 also may disclose Confidential Information to its partners, directors, officers, employees, independent contractors, agents and advisors who have a need to know the Confidential Information for the proper performance of the Services or otherwise in connection with the Engagement.  M3 may make reasonable disclosures of Confidential Information to third parties to the extent that M3 reasonably believes that such disclosure is consistent with its performance of the Services.  In addition, M3 will have the right to disclose to any person that it provided services to the Client or its affiliates and a general description of such services, but such disclosure shall not provide any other Confidential Information about M3's involvement with the Client.

(c) The provisions of this Section shall survive for a period of two years following the termination or expiration of this Agreement and shall supersede any separate confidentiality or analogous agreement between M3 and the Client.

9.  <u>Intellectual Property</u>.  Upon payment in full of all amounts owing to M3 hereunder (but subject to the provisions of Section 7 and 8 of this Agreement), the Client will own all Deliverables furnished by M3 to the Client in connection with the Services, *provided* that M3 will retain ownership of (a) all concepts, analyses, know-how, tools, frameworks, models and industry perspectives used and/or developed by M3 in connection with the Services and (b) all other intellectual property not containing Confidential Information which has been developed by M3 outside of the provision of the Services (the "***M3 Tools***"), it being understood that M3 will have no ownership right to, and will maintain in accordance with the provisions of this Agreement the confidentiality of, any Confidential Information contained in the M3 Tools.  To the extent that the Deliverables include any M3 Tools, M3 hereby grants the Client a non-exclusive, non-transferable, non-sublicensable worldwide, royalty-free license to use and copy the M3 Tools solely as part of the Deliverables and subject to the confidentiality provisions contained in this Agreement.  The Client acknowledges and agrees that the M3 Tools are provided to the Client on an "as is" basis and without any warranty or condition of any kind (whether express, implied or otherwise), and including without limitation any implied warranty of merchantability or fitness for a particular purpose. The provisions of this Section shall survive the termination or expiration of this Agreement.

10.  <u>Limitation on Damages</u>.  In no event shall M3 or any of its affiliates, equity holders, partners, directors, employees, agents, representatives and contractors, including past, present or future partners, principals and personnel of each (collectively hereinafter called the "***M3 Representatives***") be liable to the Client or its affiliates, successors, or any person claiming on behalf of or in the right of the Client (including the Client's owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors) for (i) any amount which, when taken together with all losses for which M3 and the M3 Representatives are liable in connection with this Agreement or the Engagement, would exceed the amount of fees for the Services actually received by M3 from the Client in connection with the Engagement during the immediately preceding 12 months or (ii) any special, consequential, incidental or exemplary damages or loss (or any lost profits, savings or business opportunity) (collectively, the "***Liability Cap***").  This



paragraph shall apply regardless of the nature of any claim(s) (including claims based on contract, statute, negligence, tort, strict liability or otherwise), regardless of any failure of the essential purpose of any remedy and whether or not M3 or any M3 Representative was advised of the possibility of the damage or loss asserted, but shall not apply to the extent finally determined by final and non-appealable judgment of a court of competent jurisdiction to be prohibited by applicable law. For the avoidance of doubt, the Parties hereby irrevocably agree that the Liability Cap is intended to be the total limit of liability for M3 and all other M3 Representatives in the aggregate for any and all claims or demands by anyone in connection with this Agreement, the Services and the Engagement, including without limitation any liability to the Client and to any others making claims relating to the Services and the Engagement. Any such claimants shall allocate among themselves any amounts payable by M3, but the failure of the claimants to reach such an agreement shall not affect the enforceability of the Liability Cap. Under no circumstances shall the collective liability of M3 and the other M3 Representatives in connection with this Agreement exceed the Liability Cap. The provisions of this Section shall survive the termination or expiration of this Agreement.

11. <u>Client Acknowledgement</u>. The Client hereby acknowledges and agrees that M3 may, in the ordinary course of its business, serve clients who are competitive with, or have conflicting interests with, the Client. Consistent with its confidentiality obligations hereunder and its confidentiality obligations to its other clients, M3 will not advise or consult to the Client with respect to any aspect of M3's engagement or potential engagement with any other client, potential client or former client. Similarly, M3 will not advise or consult to any other client, potential client or former client with respect to any aspect of the Engagement. M3 will maintain the confidentiality of the Confidential Information in accordance with the terms of this Agreement and, similarly, will not share confidential information of any client, potential client or former client of M3 with the Client. The provisions of this Section shall survive the termination or expiration of this Agreement.

12. <u>Miscellaneous</u>. (a) This Agreement (i) constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements (both written and oral) among the parties with respect to the subject matter hereof, and (ii) may be modified, amended or supplemented only by prior written agreement of each of the Parties.

(b) The invalidity, illegality, or unenforceability of any provision in or obligation under this Agreement in any jurisdiction shall not affect or impair the validity, legality, or enforceability of the remaining provisions or obligations under this Agreement or of such provision or obligation in any other jurisdiction. If feasible, any such offending provision shall be deemed modified to be within the limits of enforceability or validity; *provided* that, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.



(c)  M3's services hereunder are personal in nature and may not be assigned without the written consent of the Client.  The obligations of M3 hereunder are owing only to the Client and there shall be no third-party beneficiaries of the obligations of M3 hereunder.

(d)  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart.

(e)  This Agreement and all controversies arising from or related to performance hereunder shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts to be executed and performed within such state.  The Parties hereby submit to the exclusive jurisdiction of and venue in the federal and state courts located in the State of New York and waive any right to trial by jury in connection with any dispute related to this Agreement; provided that the exclusive jurisdiction and venue shall be the Court for so long as it maintains jurisdiction over the Debtor's bankruptcy proceeding.  The provisions of this paragraph shall survive the termination or expiration of this Agreement.

*[Remainder of Page Intentionally Left Blank]*



This Agreement shall be binding upon the Parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

M3 ADVISORY PARTNERS, LP

By _____
    Name:  Mohsin Y. Meghji
    Title:  Managing Member

ACCEPTED AND AGREED
as of the date first set forth above:

Melissa Haselden, in her capacity as
subchapter V trustee

By: _/s/ Melissa Haselden_____
    Name:  Melissa Haselden
    Title:  Subchapter V Trustee



## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 22-60043 |
| FREE SPEECH SYSTEMS, LLC, | § | |
| | § | Chapter 11 (Subchapter V) |
| Debtor | § | |

## SANDY HOOK FAMILIES'
## WITNESS AND EXHIBIT LIST

| Judge | Hon. Christopher M. Lopez |
|---|---|
| Hearing Date | Monday, December 19, 2022 |
| Hearing Time | 3:00 p.m. (CST) |
| Party's Name | Sandy Hook Families |
| Attorney's Names | Ryan Chapple (Connecticut Plaintiffs) <br> Avi Moshenberg, Jarrod Martin (Texas Plaintiffs) |
| Attorney's Phone | 512-477-5000 (Ryan Chapple) <br> 713-337-5580 (Avi Moshenberg) <br> 713-356-1280 (Jarrod Martin) |
| Nature of Proceeding | Cash Collateral Motion [Dkt. 6] |

Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (collectively, the "Texas Plaintiffs") and David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "Connecticut Plaintiffs" and together, the "Sandy Hook Families") hereby submit this Witness and Exhibit List in connection with the hearing on *Debtor's Emergency Motion for an Interim and Final Orders (I) Authorizing the Use of Cash Collateral Pursuant to Sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(B) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Cash Collateral Motion") [Dkt. 6]; to be held on Monday, December 19, 2022 at 3:00 p.m. (Central Standard Time):

006321

The Sandy Hook Families reserve the right to supplement, amend, or revise this Witness and Exhibit List at any time prior to the hearing.  The Sandy Hook Families reserve the right to supplement the Witness and Exhibit List with new witnesses and additional exhibits.  Further, the Sandy Hook Families reserve the right to use any exhibits presented by any other party and to ask the Court to take judicial notice of any document.  The Sandy Hook Families further reserve the right to introduce exhibits previously admitted.

## WITNESS LIST

The Sandy Hook Families may call the following witnesses at the hearing:

1. Patrick Magill, Chief Restructuring Officer of Debtor;
2. W. Marc Schwartz, former proposed Chief Restructuring Officer of Debtor;
3. Any witness necessary to rebut the testimony of any witness called or designated by any other parties;
4. Any witness listed or called by any other party.

## EXHIBIT LIST

The Sandy Hook Families may offer for admission into evidence any of the following exhibits at the hearing:

| No. | Description | Offered | Objection | Admitted/ Not Admitted | Disposition |
|-----|-------------|---------|-----------|------------------------|-------------|
| 1. | Debtor's Emergency Motion for an Interim and Final Orders (I) Authorizing the Use of Cash Collateral Pursuant to Sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender [Dkt. 6] | | | | |
| 2. | Declaration of W. Marc Schwartz in Support of | | | | |

| | | | | | |
|---|---|---|---|---|---|
| | Voluntary Petition and First Day Motions [Dkt. 10] | | | | |
| 3. | Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [Dkt. 41] | | | | |
| 4. | Order Modifying Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [Dkt. 64] | | | | |
| 5. | Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [Dkt. 98] | | | | |
| 6. | Third Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [Dkt. 151] | | | | |
| 7. | Fourth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [Dkt. 238] | | | | |
| 8. | Fifth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [Dkt. 258] | | | | |
| 9. | Sixth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection [Dkt. 287] | | | | |
| | Any document or pleading filed in the above-captioned case | | | | |
| | Any exhibits identified or offered by any other party | | | | |
| | Any exhibits necessary for impeachment and/or rebuttal purposes | | | | |

Respectfully submitted this 15th day of December 2022.

McDowell Hetherington LLP

Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, Texas 77002
D: 713-337-5580
F: 713-337-8850
E: Avi.Moshenberg@mhllp.com

*Counsel for the Texas Plaintiffs*

and

Chamberlain, Hrdlicka, White,
    Williams & Aughtry, PC

By: */s/Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

*Bankruptcy Counsel for the Texas
Plaintiffs*

By: */s/ Ryan Chapple*
Ryan E. Chapple
State Bar No. 24036354
Email:rchapple@cstrial.com
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile

*Bankruptcy Counsel for Connecticut
Plaintiffs*

006324

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Witness and Exhibit List has been served on counsel for Debtor, Debtor, and all parties receiving or entitled to notice through CM/ECF on this 15th day of December 2022.

*/s/ Ryan E. Chapple*
Ryan E. Chapple

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | |
|---|---|
| In re: | ) |
| | )    Case No. 22-_60043_ |
| FREE SPEECH SYSTEMS, LLC, | ) |
| | )    Chapter 11 (Subchapter V) |
| Debtor. | ) |
| | ) |

## DEBTOR'S EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED, IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 14 DAYS TO ANSWER, IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

RELIEF IS REQUESTED NOT LATER THAN AUGUST 3, 2022.

The above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS"), in the above-referenced chapter 11 case, hereby files this emergency motion (the "Motion") seeking an order from the Court (i) authorizing the use of cash collateral pursuant to Sections 105, 361, and 363

of the Bankruptcy Code and Bankruptcy Rule 4001(b); and (ii) granting adequate protection to the Debtor's pre-petition secured lenders. In support of the Motion, the Debtor submits and incorporates by reference the *Declaration of Marc Schwartz in Support of First Day Motions* (the "First Day Declaration"), filed concurrently herewith. In further support of the Motion, the Debtor respectfully represents as follows:

### JURISDICTION AND VENUE

1.       On July 29, 2022 (the "Petition Date"), the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of Title 11 of the United States Code §§ 101, *et seq.* (the "Bankruptcy Code").

2.       The Debtor continues in the possession of its property and is operating and managing its businesses as debtor and debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code.

3.       No request for a trustee or examiner has been made. No statutory committee of creditors has been appointed.

4.       This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.       The statutory bases for the relief sought in this Motion are 11 U.S.C. §§ 105, 361, and 363 and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure.

### FSS' BACKGROUND[1]

6.       Alex Jones began his career in the broadcasting industry fresh out of high school. Austin Public Access provided the forum for Alex's first broadcast.  In 1996 he transitioned to talk

---

[1] Additional factual background and information regarding the Debtor and its operations is set forth in the *Declaration of W. Marc Schwartz in Support of Voluntary Petition and First Day Motions*

006328

radio. After leaving talk radio in 1999, he started broadcasting over the internet with a handful of employees. Revenue was largely generated from advertising and the sale of books, T-shirts, and videos.

7.     What began as a family business continued to expand and in 2007 FSS was formed. The business continued to grow, adding a full blown studio, and employing over 60 people. By 2013, FSS started selling dietary supplements to its growing listener base.

8.     Despite the rapid growth in the scale, diversity of operations and revenue, FSS remained a family run business and did not retain professional management or install professional management systems.

9.     FSS is presently engaged in the business of producing and syndicating Jones' radio and video talk shows and selling products targeted to Jones' loyal fan base via the Internet. Today, FSS produces Alex Jones' syndicated news/talk show (The Alex Jones Show) from Austin, Texas, which airs via the Genesis Communications Network on over 100 radio stations across the United States and via the internet through websites including Infowars.com.

10.     On its Infowars.com[2] website today, FSS makes available to customers dietary supplements, ranging from Vitamin D3 Gummies, Ultimate Immune Support Pack, Pollen Block, and other health products, including Tea Tree Shampoo. The website also has available books, t-shirts and other products Jones advertises during his radio talk show. The vast majority of FSS revenues comes from sales of dietary supplements which have traditionally been supplied by PQPR Holdings Limited, LLC ("PQPR"), an affiliated entity.

11.     As of July 1, 2022, FSS employed a workforce of 58 individuals, the majority of whom had direct reporting relationship to Alex Jones. In one building in Austin, Texas, FSS has four studios.

---

[2] FSS licenses the Inforwars.com domain and trademark for InfoWars from InfoW, LLC.

3

This is the building where Jones produces his shows, including The Alex Jones Show. An adjacent building contains administrative offices and customer support. In a separate location in Austin, Texas, FSS has a building where warehousing and product sales fulfillment takes place. All of the studios and offices are in leased space.

12.     FSS has a unique audience that is highly loyal to Alex Jones and purchases products based on Alex Jones' credibility. Product sales from Infowars.com stores are a significant source of revenue for FSS. Approximately 80% of FSS' revenue is derived from product sales. Of the remainder, 11% is historically from advertising and the balance from a variety of sources.

13.     Through its online sales channel, FSS currently sells (i) dietary supplements purchased by PQPR, (ii) dietary supplements purchased by FSS, and (i) books, DVD's, t-shirts, and other merchandise purchased by FSS.  The allocation of proceeds from the sale of products after credit card processing charges varies depending upon which of the above categories the product falls under, PQPR receives a fee for of ten percent of the net proceeds (the proceeds from the sale of the products less processing charges, as a royalty for introducing the supplement and vitamin market to FSS.

14.     Due to the content of Alex Jones' shows, Jones and FSS have faced an all-out ban of Infowars from mainstream online spaces. Shunning from financial institutions and banning Jones and FSS from major tech companies began in 2018. Today, Facebook, Twitter, YouTube, Spotify, PayPal, and Apple have banned Infowars and Jones. Since being deplatformed by most mainstream commercial entities in 2018, FSS has had to operate in a harsh and unfriendly commercial environment.

15.     FSS purchased to sell on its website two categories of products: (a) dietary supplements ("Supplements"), and (b) books, DVDs, t-shirts, and other merchandise ("Non-Supplements"). FSS relied on PQPR as no other vendor would supply the Supplements for Jones to

4

advertise on his shows. PQPR ordered and paid for Supplements, which it marked up, and then sold to FSS. Jones would publicize the Supplements on his show and FSS and/or PQPR fulfilled the orders to ship to its customers.

16.     As to Non-Supplements, FSS purchased the products, sold them, and fulfilled the sale through its own employees from its warehouse in Austin. Depending on whether a Supplement or Non-Supplement was sold, FSS and PQPR split the cost of the sale on an agreed to formula.

17.     Since 2018 FSS has had difficulty finding third parties willing and able to fulfill product sales. In the past, both FSS and PQPR attempted to provide fulfillment services for product sales. Recently, FSS employed a fulfillment company to take over this function. All former FSS employees responsible for fulfillment have been hired by this company. The fulfillment company charges FSS a flat fee per order regardless of size. Historically, fulfillment has cost an average of ten percent of sales, without considering payroll, the new agreement is estimated to cost sixteen percent of sales.

## PQPR INDEBTEDNESS

18.     As discussed above, PQPR ordered and paid for Supplements which it marked up and then sold to FSS. As a result of FSS's inability to pay PQPR in full for the PQPR merchandise over several years, FSS became indebted to PQPR in a significant amount by 2020. The parties memorialized the indebtedness between the parties in 2020.

19.     The indebtedness to PQPR had accrued over a period of years from the sale of PQPR products through the Debtor's internet platform, generated by the Debtor and Alex Jones' sponsorship of those products. The PQPR Note balance represents the unpaid share of the proceeds from product sales by PQPR to FSS over a four year period for which the Debtor did not fully remit the proceeds to PQPR.

<div align="center">5</div>

20.     On or about August 13, 2020, the Debtor executed that certain Promissory Note in favor of PQPR in the original principal amount of $29,588,000.00 (the "PQPR Note"). A security agreement of the same date granted PQPR a security interest in all of the Debtor's personal property assets, including but not limited to the Debtor's tangible and intangible property, accounts, and proceeds derived from those assets (the "PQPR Security Agreement"). PQPR filed a UCC-1 financing statement with the Texas Secretary of State that on November 18, 2020.

21.     The PQPR Security Agreement secures the obligations under the PQPR Note and any future advances owing by the Debtor to PQPR.  Specifically, "Obligations" is defined in the PQPR Security Agreement to include "any and all other obligations of Debtor to [PQPR] of any kind or character, now owed or hereafter arising."

22.     Subsequent to the date of the PQPR Note, the Debtor accrued additional indebtedness to PQPR representing a portion of PQPR's share of the proceeds from product sales from the date of the PQPR Note through November 10, 2021, for which the Debtor did not fully remit the required proceeds to PQPR.  The Debtor executed a second promissory note ("Second PQPR Note" and together with the PQPR Note, collectively the "PQPR Notes") in the amount of $25,300,000.  The Second PQPR Note is also secured by the PQPR Security Agreement.

23.     As of the Petition Date, $53,655,082.29 of principal and $11,794,19 of interest are due and owing under the PQPR Notes.

## **RELIEF REQUESTED**

24.     Cash collateral is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of

6

rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title." [6] 11 U.S.C. § 363(a).

25.    11 U.S.C. § 363(c)(2) states as follows:

> The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>
> > (A)    each entity that has an interest in such cash collateral consents; or
> > (B)    the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

26.    The Debtor is in possession of certain funds which are not proceeds of PQPR's collateral. Accordingly, the Debtor does not concede that those funds constitute cash collateral of PQPR. Nevertheless, net proceeds received by the Debtor from online merchandise sales including PQPR products are PQPR's cash collateral.

27.    The Debtor requires the use of cash collateral to pay reasonable and necessary operating expenses, including, but not limited to, employee payroll, rent, utilities, inventory purchases, lease payments, marketing, taxes, and insurance. Those uses required in the next fourteen (14) days from the date of the emergency hearing are set forth on the budgets attached hereto as **Exhibit A** and incorporated herein by reference. The Debtor's proposed emergency use of cash collateral is necessary to preserve the value of the Debtor's estate for the benefit of all creditors, including the PQPR, and any other secured creditors purporting to hold an interest in the Debtor's cash collateral during the first fourteen (14) days of the Chapter 11 Cases (the "Interim Period"). The Debtor also requests that continued use of cash collateral is equally necessary to preserve the value of the Debtor's assets and rights of all of the constituencies with claims or interests in this Chapter 11 Case.

7

28.     Section 363 of the Bankruptcy Code authorizes a debtor to use cash collateral if those parties having an interest in such cash collateral consent or the court authorizes the use.  *See* 11 U.S.C. § 363(c)(2). The use of cash collateral, however, may be prohibited or conditioned, upon proper request, as necessary to adequately protect any interest in cash collateral. *See* 11 U.S.C. §363(e).

29.     A court may authorize the use of cash collateral upon showing that those with an interest in the cash collateral are adequately protected. *In re Las Torres Dev., L.L.C.*, 413 B.R. 687, (Bankr. S.D. Tex. 2009) ("in order for this Court to authorize the use of cash collateral, the Lender must be adequately protected); *In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) (A debtor requesting court approval to use cash collateral has the burden of proof as to the issue of "adequate protection".) Adequate protection requires examination of the creditor(s)' aggregate collateral position, not simply protection of its lien on cash. Adequate protection may be provided by granting replacement or additional liens "to the extent [that the use of cash collateral] results in a decrease in the value of [an] entity's interest in property." *See* 11 U.S.C. § 361(2). Authorizing a debtor to use cash collateral on an interim basis is appropriate where, as here, continuing the business as a going concern will cause the generation of future revenues upon which the secured lender is granted replacement liens. *See, e.g., In re Neise, Inc.,* 16 B.R. 600 (Bankr. D. Fla. 1981); *In re Certified Corp.*, 51 B.R. 768 (Bankr. D. Haw. 1985); *In re Post- Tron Systems, Inc.*, 106 B.R. 345 (Bankr. D.R.I. 1989).

30.     By authorizing the Debtor to use cash collateral, the Court will place the Debtor in a position to fund its operating expenses and to operate as a going concern for the immediate future. The Debtor needs to use cash collateral in order to, *inter alia*, pay its employees, suppliers, and meet other on-going business obligations. Without the authority to use cash collateral, the Debtor will be unable to fund its business operations in a manner that will allow the Debtor to continue to operate, to the detriment of *all* of the Debtor's creditors, including the lenders referred to herein and the pool

8

of unsecured creditors. Furthermore, without the ability to fund continuing operations, the Debtor and its estate will suffer immediate and irreparable harm. For example, employees will not continue to provide services if they are not paid the wages for which they have already worked, and vendors will not continue to provide necessary services or supplies if they are not paid. Therefore, the Debtor seeks the emergency relief requested herein.

31.     Attached to this Motion is a proposed form of the Interim Cash Collateral Order (the "Interim Cash Collateral Order") that authorizes the Debtor's use of cash collateral.

32.     The proposed offer of adequate protection on an interim basis is set forth in the attached proposed Interim Cash Collateral Order and incorporated by reference herein for the purpose of setting forth the proposed offer of adequate protection for lenders. It includes replacement liens solely to the extent of any validly perfected, unavoidable security interest as of the Petition Date, and a priority administrative claim to the extent of the diminution of value of each lender's collateral, if any, and failure of other forms of adequate protection provided by the Debtor. As described further in the proposed Interim Cash Collateral Order, the proposed replacement liens and priority administrative claim shall be subject to a carve-out for unpaid fees owed to the clerk of this Court or the United States Trustee, and court-approved administrative expense claims of estate professionals.

33.     The Debtor believes that the terms of the proposed Interim Cash Collateral Order as set forth above are fair and reasonable under the circumstances. The Debtor asserts that the value of PQPR's cash collateral will not diminish as a result of the use of cash in this case. The value of PQPR's interest in cash may fluctuate, but such value should not diminish, other than minimally, over the next fourteen (14) days, the period of interim relief requested.

34.     The Debtor believes that PQPR is entitled to the protections set forth in the proposed Interim Cash Collateral Order. The adequate protection provisions have been drafted to provide

9

protection without taking undue or inappropriate value from the estate or its unsecured creditors. Given that the interests of the lenders will be adequately protected, it is in the best interest of the Debtor, its estate, and all of their creditors to be able to continue operations during the Interim Period and for the Debtor to be authorized to use cash collateral as requested herein.

35.     Therefore, the Debtor respectfully requests that it be authorized to use cash collateral as proposed herein for the purposes of paying necessary business expenses as allowed by Section 363 of the Bankruptcy Code, and that the Court grant PQPR a replacement lien on post-petition assets, as allowed by Sections 361, and/or 363 of the Bankruptcy Code, consistent with the terms and provisions contained in this Motion. The Debtor requests that this relief be granted on both an interim and final basis.

## RESERVATION OF RIGHTS

36.     The Debtor reserves any and all rights in connection with the Heslin\Lewis Suit. Nothing contained herein shall operate as a waiver of any of the Debtor's claims, rights or remedies.

## NO PRIOR REQUEST

37.     No previous request for the relief sought herein has been made to this Bankruptcy Court or any other court.

[*Remainder of Page Intentionally Left Blank*]

006336

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests the Court (i) authorize the use of cash collateral pursuant to Sections 105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b); (ii) grant adequate protection to the pre-petition secured lenders; and (iii) grant such other and further relief as the Court may deem proper.

Respectfully submitted this 29th day of July, 2022.

**LAW OFFICES OF RAY BATTAGLIA, PLLC**

/s/*Raymond W. Battaglia*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Proposed Counsel to the Debtor and Debtor-In-Possession*

-and-

**SHANNON & LEE LLP**

/s/*Kyung S. Lee*
Kyung S. Lee
State Bar No. 12128400
klee@shannonleellp.com
R. J. Shannon
State Bar No. 24108062
rshannon@shannonleellp.com
700 Milam Street, STE 1300
Houston, Texas 77002
Tel. (713) 714-5770

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

## CERTIFICATE OF ACCURACY

I hereby certify that the forgoing statements are true and accurate to the best of my knowledge and belief. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

/s/ *Raymond W. Battaglia*

11

## CERTIFICATE OF SERVICE

I hereby certify that on the date of filing, a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service, (b) by U.S.P.S. first class mail on all parties indicated in the attached service list, and (c) the following parties by email:

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Attn: Eric Henzy
Zeisler & Zeisler P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Avi Moshenberg
McDowell Heterhington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com

Attn: Cordt Akers
The Akers Law Firm PLLC
Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: Daniel DeSouza
Copycat Legal PLLC
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Ryan E. Chapple
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
rchapple@cstrial.com

Cliff Walson
Walsont Bowlin Callendar, PLLC
4199 San Filipe Street, STE 300
Houston, TX 77027
cliff@wbctrial.com

Jon Maxwell Beatty
The Beatty Law Firm PC
1127 Eldridge Pkwy, Suite 300, #383
Houston, TX 77077
max@beattypc.com

_/s/ Raymond W. Battaglia_

## USPS Service List

Twenty Largest Unsecured Creditors

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06870

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive STE 301
Coral Springs, FL 33065

Atomial LLC
1920 E. Riverside Dr.
Suite A-120 #124
Austin, TX 78741

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Jacquelyn Blott
200 University Blvd
Suite 225 #251
Round Rock, TX 78665

Joel Skousen
PO Box 565
Spring City, UT 84662

eCommerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405

Paul Watson
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Brennan Gilmore
c/o Civil rights Clinic
600 New Jersey Avenue, NW
Washington, DC 20001

Greenair, Inc
23569 Center Ridge Rd
Westlake, OH 44145

Edgecast, Inc
Dept CH 18120
Palatine, IL 60055

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864

Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

WWCR
1300 WWCR Ave
Nashville, TN 37218-3800

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404

CustomTattoNow.com
16107 Kensington Dr. #172
Sugar Land, TX 77479

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

006339

Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601

Parties Claiming Interest or Lien Affected

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746

Parties Filing Notice of Appearance

N/A

Subchapter V Trustee

N/A (Not Yet Appointed)

U.S. Trustee

Office of the U.S. Trustee
515 Rusk Ave STE 3516
Houston, TX 77002

Additional Notice Parties

Attn: Mark Bankson, William Ogden
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008

Attn: Alinor C. Sterlin, Christopher Mattei,
Matthew Blumenthal
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

006340

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | |
|---|---|
| In re: | Case No. 22- 60043 |
| FREE SPEECH SYSTEMS, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | |

## INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of this interim order (this "Order") pursuant to Sections 105, 361, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court, having considered the Motion, and having held an interim hearing on the Motion on August ___, 2022 (the "Interim Hearing"), and having considered the evidence presented or proffered and the statements and representations of the parties on the record at the Interim Hearing; and all objections, if any, to the entry of this Interim Order having been resolved or overruled; and after due deliberation and consideration and sufficient cause appearing therefor;

1. The Chapter 11 Case. On July 29, 2022 (the "Petition Date") the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11

006341

of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas (this "Court").

2.    <u>Debtor-in-Possession</u>. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code. To date, no trustee or examiner has been appointed in this Case. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

3.    <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and the Local Rules of this Court (the "<u>Local Rules</u>").

4.    <u>Committee Formation</u>.    To date, no official committee (a "<u>Committee</u>") of unsecured creditors, equity interest holders, or other parties in interest has been appointed in the Case.

5.    <u>Notice</u>. On July 29, 2022, the Debtor served copies of the Motion and notice of the Interim Hearing to all creditors and parties in interest entitled to such notice in compliance with Bankruptcy Rules 2002, 4001, 9014, and the Local Rules, including: (i) the Office of the United States Trustee for this District, (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtor's estate, (iii) PQPR Holdings Limited, LLC Trust ("<u>PQPR</u>"), and (vi) any other secured parties of record. Under the circumstances, such notice of the Interim Hearing and the emergency relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rule

2

4001 and the Local Rules, and no other or further notice of the Interim Hearing or the relief granted in this Interim Order is necessary or required.

6.      <u>Immediate Need for Use of Cash Collateral</u>.  The Debtor asserts that an immediate and critical need exists for the Debtor to use Cash Collateral in order to continue the operation of its business. Without such use of Cash Collateral, the Debtor asserts that it will not be able to pay post-petition direct operating expenses and obtain goods and services needed to carry on its business in a manner that will avoid irreparable harm to the Debtor's estate. The Debtor further asserts that its ability to use Cash Collateral is necessary to preserve and maintain the going concern value of the Debtor's estate.

7.      <u>Conditional Consent to Use of Cash Collateral</u>. The Debtor seeks authorization to use Cash Collateral to pay the Debtor's ordinary and necessary operating expenses set forth in the budget attached to the Motion as Exhibit A (the "<u>Budget</u>") for the period (the "<u>Interim Period</u>") from the Petition Date through and including August 15, 2022 (the "<u>Termination Date</u>").

8.      <u>Good Cause/Fair and Reasonable Terms</u>. Good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the business and operations of the Debtor and permit the Debtor to maintain the going concern value of its business. The use of Cash Collateral authorized hereunder is necessary, essential, and appropriate and is in the best interest of, and will benefit, the Debtor, its creditors, and the Debtor's bankruptcy estate as it will, among other things, provide the Debtor with the necessary liquidity to (i) avoid immediate and irreparable harm to the Debtor and its bankruptcy estate; and (ii) preserve and maximize the value of the Debtor's business and assets. The terms and conditions of the use of Cash Collateral and the

006343

security interests, liens, rights, and priorities granted to the lenders hereunder are fair and appropriate under the circumstances.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1. <u>Motion Granted</u>. The Motion is hereby granted on an interim basis as set forth herein. Any objections to the entry of this Order that have not been previously resolved or withdrawn are hereby overruled on their merits.

2. <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3. <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4. <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral to pay the items set forth in the Budget, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the

4

overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.       <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

6.       <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

7.       <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

8.       <u>Adequate Protection – Replacement Liens</u>.      As adequate protection for any diminution in value of each of the Pre-Petition Lender's interest in the Debtor's collateral, if any, including Cash Collateral, resulting from the imposition of the automatic stay with respect to the Collateral and/or the Debtor's use, sale or lease of the Collateral during the Case (the "<u>Diminution in Value</u>"), the Pre-Petition Lender is hereby granted, effective  as of the Petition Date, valid, binding, enforceable, and automatically perfected liens (the "<u>Replacement Liens</u>") in  all  currently owned or hereafter acquired property and assets of the Debtor, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising (excluding

5

avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code), and all proceeds and products of the foregoing (collectively, the "Adequate Protection Collateral"). The Replacement Liens granted pursuant to this Order shall have the same priority as each of the Pre-Petition Lender's properly perfected unavoidable pre-petition liens but shall be subject to the Carve Out.

9. Adequate Protection – Priority Administrative Claim. As additional partial adequate protection for the Debtor's use of Cash Collateral, to the extent of any Diminution in Value and a failure of the other adequate protection provided by this Order the pre-petition lenders shall have an allowed priority administrative expense claim in this Case and any successor case as provided in and to the fullest extent allowed by Sections 503(b) and 507(b) of the Bankruptcy Code and otherwise (the "Adequate Protection Priority Claim").

10. Carve Out. The Replacement Liens and Adequate Protection Priority Claim granted herein shall be subject to (a) unpaid fees payable to the Clerk of the Bankruptcy Court or the United States Trustee; (b) subject to the Budget, court-approved administrative expense claims of estate professionals, employed pursuant to order of this Court (collectively, "Estate Professionals"), for incurred but unpaid fees, expenses and other costs (all such carve-out amounts referenced above, collectively, the "Carve Out").

11. Subsequent Modification of Order. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

6

12.   <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on August _____ 2022, at __:___.m. Central time.  Objections to the entry of a final order approving the Motion shall be filed and served on counsel for the Debtor and pre- petition lenders not later than 4:00 p.m. Central time on August _____ 2022.

Dated: August ___, 2022

_____
UNITED STATES BANKRUPTCY JUDGE

006347

**EXHIBIT A**

**13-Week  Budget**

006348

**Free Speech Systems LLC**
**Forecasted 13 Week Cash Flow Budget**
Between July 30, 2022 and October 28, 2022

Week Number / Period mapping:
- 1: 07/30/2022–08/05/2022
- 2: 08/06/2022–08/12/2022
- 3: 08/13/2022–08/19/2022
- 4: 08/20/2022–08/26/2022
- 5: 08/27/2022–09/02/2022
- 6: 09/03/2022–09/09/2022
- 7: 09/10/2022–09/16/2022
- 8: 09/17/2022–09/23/2022
- 9: 09/24/2022–09/30/2022
- 10: 10/01/2022–10/07/2022
- 11: 10/08/2022–10/14/2022
- 12: 10/15/2022–10/21/2022
- 13: 10/22/2022–10/28/2022

| Line item | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | |
| Product Sales | $595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | $7,741,357.16 |
| Advertising | | | | 480,166.46 | | | | 480,166.46 | | | | | 480,166.46 | 1,440,499.38 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 40,836.21 |
| **Total Income** | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 9,222,690.75 |
| **Selling & Product Costs** | | | | | | | | | | | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (990,017.27) |
| Repay PQPR Inventory | | (250,000.00) | | (500,000.00) | | | | | | | | | | (750,000.00) |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (348,361.07) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (102,853.59) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (1,238,617.15) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (309,654.29) |
| eCommerce Store Maintenance | (27,270.00) | | | | (27,270.00) | | | | (27,270.00) | | | | | (81,810.00) |
| Texas Sales Tax | (5,337.87) | | | | (5,337.87) | | | | (5,337.87) | | | | | (16,013.61) |
| **Total Cost of Goods Sold** | (262,569.67) | (479,961.80) | (229,961.80) | (729,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (229,961.80) | (3,837,326.97) |
| **Operating Expenses** | | | | | | | | | | | | | | |
| **Advertising & Promotion** | | | | | | | | | | | | | | |
| Advertising & Promotion | (3,041.98) | | | | (3,041.98) | | | | (3,041.98) | | | | | (9,125.93) |
| Print Media | (3,000.00) | | | | (3,000.00) | | | | (3,000.00) | | | | | (9,000.00) |
| Radio Show Advertising | (11,500.00) | | | | (11,500.00) | | | | (11,500.00) | | | | | (34,500.00) |
| **Total Advertising & Promotion** | (17,541.98) | | | | (17,541.98) | | | | (17,541.98) | | | | | (52,625.93) |
| **Computer/IT/IP Expense** | | | | | | | | | | | | | | |
| Internet & TV services | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | (2,082.90) | | | (1,608.39) | | (11,073.89) |
| Merchant Account Fees | (140.80) | | | | (140.80) | | | | (140.80) | | | | | (422.40) |
| Software License Fees | (28,595.13) | | | | (28,595.13) | | | | (28,595.13) | | | | | (85,785.40) |
| Server Hosting Service | (55,728.00) | | | | (55,728.00) | | | | (55,728.00) | | | | | (167,184.00) |
| CDN Video Cloud Storage | (137,282.93) | | | | (137,282.93) | | | | (137,282.93) | | | | | (411,848.78) |
| Satellite Service | (9,201.25) | | | | (9,201.25) | | | | (9,201.25) | | | | | (27,603.75) |
| Imaging License Fee | (5,000.00) | | | | (5,000.00) | | | | (5,000.00) | | | | | (15,000.00) |
| Software & Apps | | | (266.50) | | | | (266.50) | | | | | (266.50) | | (799.50) |
| Website Hosting | | | | | | | | | | | | | | |
| **Total Computer/IT/IP Expense** | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | (238,031.01) | | | (1,874.89) | | (719,717.72) |
| Insurance | (2,166.50) | | | | (2,166.50) | | | | (2,166.50) | | | | | (6,499.50) |
| **Office & Administrative Expense** | | | | | | | | | | | | | | |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (596.74) |
| Equipment Rental | (1,989.90) | | | | (1,989.90) | | | | (1,989.90) | | | | | (5,969.50) |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (27.31) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (3,645.97) |
| **Total Office & Administrative Expense** | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (328.46) | (10,239.71) |
| Outsourced Services | (45,980.00) | | | | (45,980.00) | | | | (45,980.00) | | | | | (137,940.00) |
| Consulting Services | (22,670.00) | | (12,000.00) | | (22,670.00) | | (12,000.00) | | (22,670.00) | | | (12,000.00) | | (104,010.00) |
| **Utilities** | | | | | | | | | | | | | | |
| Electricity | (256.19) | | | | (256.19) | | | | (256.19) | | | | | (768.58) |
| HVAC | (20,364.16) | | | | (20,364.16) | | | | (20,364.16) | | | | | (61,092.48) |
| CAM Charges | (1,708.55) | | | | (1,708.55) | | | | (1,708.55) | | | | | (5,125.66) |
| Water & Sewer | (132.09) | | | | (132.09) | | | | (132.09) | | | | | (396.28) |
| Gas Service | (244.65) | | | | (244.65) | | | | (244.65) | | | | | (733.95) |
| Pest Control | (351.81) | | | | (351.81) | | | | (351.81) | | | | | (1,055.43) |
| Waste Management | | | (5,107.63) | | | | (5,107.63) | | | | | (5,107.63) | | (15,322.89) |
| **Total Utilities** | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | (23,057.46) | | | (5,107.63) | | (84,495.27) |
| **Occupancy** | | | | | | | | | | | | | | |
| Rent | (33,408.51) | | | | (33,408.51) | | | | (33,408.51) | | | | | (100,225.53) |
| Office Security | (31,111.90) | | | | (31,111.90) | | | | (31,111.90) | | | | | (93,335.69) |
| Repair & Maintenance - Building | (1,777.19) | | | | (1,777.19) | | | | (1,777.19) | | | | | (5,331.56) |
| Janitorial | (5,983.33) | | | | (5,983.33) | | | | (5,983.33) | | | | | (17,950.00) |
| **Total Occupancy** | (72,280.93) | | | | (72,280.93) | | | | (72,280.93) | | | | | (216,842.78) |
| Supplies | (1,258.02) | | | | (1,258.02) | | | | (1,258.02) | | | | | (3,774.07) |

006349

Free Speech Systems LLC

# Forecasted 13 Week Cash Flow Budget

Between July 30, 2022 and October 28, 2022

| Period | 07/30/2022- 08/05/2022 | 08/06/2022- 08/12/2022 | 08/13/2022- 08/19/2022 | 08/20/2022- 08/26/2022 | 08/27/2022- 09/02/2022 | 09/03/2022- 09/09/2022 | 09/10/2022- 09/16/2022 | 09/17/2022- 09/23/2022 | 09/24/2022- 09/30/2022 | 10/01/2022- 10/07/2022 | 10/08/2022- 10/14/2022 | 10/15/2022- 10/21/2022 | 10/22/2022- 10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Telephone | (18,337.88) | | | | (18,337.88) | | | | (18,337.88) | | | | | (55,013.65) |
| **Personnel Expenses** | | | | | | | | | | | | | | |
| Salaries & Wages – Base | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | | (168,467.44) | (1,179,272.08) |
| Payroll Tax | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | | (13,971.09) | (97,797.65) |
| Alex Jones Salary | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | | (54,166.67) | (379,166.67) |
| Total Personnel Expenses | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | | (236,605.20) | (1,656,236.39) |
| **Travel** | | | | | | | | | | | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (1,295.98) |
| Vehicle Leases | | (1,470.56) | | | | (1,470.56) | | | | | (1,470.56) | | | (4,411.68) |
| Total Travel Expenses | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (5,707.66) |
| Total Operating Expenses | (680,347.03) | (1,898.71) | (256,015.88) | (428.15) | (680,347.03) | (1,898.71) | (256,015.88) | (428.15) | (680,347.03) | (428.15) | (238,503.91) | (19,410.68) | (237,033.35) | (3,053,102.68) |
| *Non-Operating Expenses* | | | | | | | | | | | | | | |
| Payment on PQPR Note | (12,500.00) | (15,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (523,000.00) |
| AMEX Payment | (172,390.28) | | (172,390.28) | | (172,390.28) | | (172,390.28) | | (172,390.28) | | (172,390.28) | | | (1,034,341.69) |
| Total Other Expenses | (184,890.28) | (15,500.00) | (199,890.28) | (27,500.00) | (199,890.28) | (27,500.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (55,000.00) | (1,557,341.69) |
| **Professional Fees** | | | | | | | | | | | | | | |
| CRO Fees | | | | | | | (35,328.00) | | (52,992.00) | | | | | (88,320.00) |
| Financial Advisor Fee | | | | | | | (40,352.00) | | (57,876.00) | | | | | (98,228.00) |
| Shannon & Lee LLP | | | | | | | (60,000.00) | | (40,000.00) | | | | | (100,000.00) |
| Ray Battaglia | | | | | | | (24,000.00) | | (24,000.00) | | | | | (48,000.00) |
| Total Professional Fees | | | | | | | (159,680.00) | | (174,868.00) | | | | | (334,548.00) |
| Total Cash Flow | $ (529,176.72) | $ 101,269.75 | $ (87,237.70) | $ 320,906.77 | $ (544,176.72) | $ 339,269.75 | $ (289,605.70) | $ 793,406.77 | $ (731,356.72) | $ 313,240.31 | $ (97,225.73) | $ 774,424.24 | $ 76,635.11 | $ 440,373.41 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | |
|---|---|
| In re: | ) Case No. 22-_60043_____ |
| | ) |
| FREE SPEECH SYSTEMS, LLC, | ) Chapter 11 (Subchapter V) |
| | ) |
| Debtor. | ) |
| | ) |

## DECLARATION OF W. MARC SCHWARTZ IN SUPPORT OF
## <u>VOLUNTARY PETITION AND FIRST DAY MOTIONS</u>

I, W. Marc Schwartz, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

1.     My name is W. Marc Schwartz ("<u>Schwartz</u>").

2.     I submit this Declaration based on personal knowledge in support of the voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") filed by Free Speech Systems, LLC (the "<u>Debtor</u>" or "<u>FSS</u>") on the date hereof (the "<u>Petition Date</u>"). I further submit this Declaration to assist this Court and parties-in-interest in understanding the circumstances that compelled the commencement of the Debtor's chapter 11 case (the "<u>Chapter 11 Case</u>").

3.     The relief sought in the First Day Motions should enable the Debtor to administer its estate effectively. I have reviewed the First Day Motions, and I believe the requested relief is necessary to ensure the success of the Chapter 11 Case.

4.     Except as otherwise indicated, all facts as set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtor. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

1

006352

5.      I am a founder of Schwartz & Associates, LLC ("SALLC"). SALLC has its principal offices at 712 Main Street, Suite 1830, Houston, Texas. SALLC has been engaged in business since 2019. The primary business of SALLC is bankruptcy and financial restructuring consulting, serving as financial/economic experts in civil litigation matters and, serving as court appointed receivers in federal and state court matters.   The firm is also licensed as an Investigations Company by the Texas Department of Public Safety.

6.      SALLC's services include financial forensics, supervising business operations as a trustee, examiner with expanded powers or receiver, valuing business assets and income tax related services    My firm represents individuals, companies and courts in a variety of assignments,  including serving as a Chief Restructuring Officer, financial adviser, trustee or examiner in bankruptcy matters; working as a testifying or consulting expert on damages and economic issues for parties involved in litigation and as a special master for courts where litigation matters are pending; serving as a court appointed receiver in state and federal courts.

7.      I earned a Bachelor of Arts degree from Princeton University and a Master's in Business Administration degree from the University of Chicago Booth School of Business. I am licensed in Texas as a Certified Public Accountant, Certified in Financial Forensics by the American Institute of Certified Public Accountants, a Certified Fraud Examiner, and a Licensed Private Investigator.

8.      I have extensive experience serving as a fiduciary in bankruptcy cases as either a Chapter 11 Trustee, a Chief Restructuring Officer, or an Examiner with expanded powers. I have also acted as a receiver over several individuals and entities under state and federal law.

9.      On June 7, 2022, the Debtor confirmed my retention as the Debtor's Chief Restructuring Officer (the "CRO") and SALLC as its financial advisors as of May 19, 2022.

006353

10.     On the Petition Date, FSS filed its petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court, Southern District of Texas, Victoria Division (the "Bankruptcy Court"). FSS properly qualified to file as a Subchapter V Debtor under Chapter 11 of the Bankruptcy Code.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A.  Background to Creation of Free Speech Systems, LLC

11.     Born in 1974, Alex Jones ("Alex Jones" or "Jones") is the son of Carol Jones, a homemaker, and David Jones, a prominent dentist. Jones moved from Dallas to Austin as a teenager.

12.     In the early 1990s, Austin was a dirt-cheap home to artists, musicians, and zine makers[1]. According to Shannon Burke, a local talk-radio host, "the perfect incubator for [Alex Jones]. It's that libertarian and weirdness blend that wouldn't have worked had he been born in Milwaukee." *Buzzfeed*, May 6, 2017 (Charlie Warzel) (hereafter "*Buzzfeed*").

13.     Austin Public Access ("ACTV"), the TV station where Jones got his first big break showcased that weirdness. In the 1990s, ACTV "was wild and unmoderated — like the YouTube of its time," Brian Blake, the station's longtime producer and IT director, explained. For Jones, then just out of high school, it was a huge opportunity — a chance to spend an hour in front of a camera saying pretty much anything he wanted to Austin's night owls. *Buzzfeed*.

14.     From his first broadcast, Jones targeted the threat of the New World Order, which he had first encountered in the book *None Dare Call It Conspiracy*, discovered on his father's bookshelf. His earliest monologues were stark and raw; Jones would deliver his monologues

---

[1] Wikipedia defines it as "a small circulation self-published work of original or appropriated texts and images usually reproduced via photocopier" - although the term is often used to describe any magazine aimed at a niche audience.

006354

from a bare table, surrounded by stacks of newspaper and often fumbling his words. But the message and the intensity were indistinguishable from the Jones on the air in 2017. *Buzzfeed*. Jones was a modest public-access success.

15.     Alex and his father then found an opportunity in 1996 for Alex to do a talk show on the Austin talk radio station KJFK-FM. He started hosting a show called "The Final Edition". To secure Jones a spot on the station, Jones' father became his son's first on-air advertiser. The show lasted for three years. "Alex Jones" *Southern Poverty Law Center ("SPLC")*.

16.     Alex Jones was a natural.

17.     The "Final Edition" lasted until 1999, when he was fired because his views made it difficult to attract commercial sponsors despite high ratings and winning the best Austin talk radio host show awards. *SPLC*.

18.     Upon being terminated, Alex Jones immediately set up an ISDN line in his house and began independently broadcasting via Infowars.com and national syndication by Genesis Communications to AM, FM, and shortwave stations. *SPLC*.

19.     When Jones started broadcasting on the radio in the late 1990s, he closely followed the talk radio playbook, he built a large and devoted audience of far-right conspiracy-theory believers. He sold radio advertising, videos, books, and T-shirts. From there, he expanded by establishing a website, making, and selling his own conspiracy-oriented documentary films, and, then launching PrisonPlanet.tv, a subscription-only streaming-video service that offered instant access to the films. *Intelligencer*, May 2017. Alex's syndication soon reached almost 100 stations. *SPLC*.

20.     The predecessor operation of FSS in 2004 was an operation with just a handful of employees.  Alex Jones had a tiny office in the far south of Austin. He had two employees at

006355

that time. One of the two employees tended to the warehouse operations. It was also not clear where Alex Jones broadcast at that time. *Jacobson Deposition*, P30.[2]

21.     As his business grew, Alex formed FSS in November 2007 to support his various family business opportunities. Getting into broadcasting had been a family idea, and running a business associated with his radio broadcasting continued to be a family business.

22.     By 2010, Jones had a full-size facility. He had over 60 people on his staff and a full-blown studio. *Jacobson Deposition*, P30. FSS's operation in 2010 were dramatically different in "every way, shape and form", *Jacobson Deposition*, PP30-31, from his 1990 operations.

23.     While Alex's broadcasting technology significantly improved, he did not retain professional managers to run his burgeoning business. It continued to be run by members of his family, friends, and employees whom he had known in high school.

24.     After 2013, Alex Jones' media formula changed from website and films to a website and radio. *Jacobson Deposition*, PP30-31. While his media formula changed, Alex still did not employ professionally trained and experienced business managers at FSS.

25.     The post 2013 business model of FSS recognized that it was a "single talent business" *to wit*, Alex Jones, singularly drove sales on his Infowars.com website. FSS began to make available dietary supplements: products such as InfoWarsLife Silver Bullet Colloidal Silver; Infowars Life Brain Force Plus; InfoWars Life Super Male Vitality; Infowars Life Liver Shield. Supplements "completely transformed" Infowars. Most of FSS' revenue to this day comes from sales of dietary supplements.

---

[2] Oral and Videotaped Deposition of Robert Jacobson, March 20, 2019, Scarlett Lewis v. Alex. E. Jones (Texas).

006356

26. Alex Jones' show is syndicated by the Genesis Communications Network ("GCN"). Instead of charging syndication fees to radio stations, GCN uses what is called the barter model. GCN offers the content for no cost, and, in exchange, GCN reserves the right to sell national advertising against the programs, generally four minutes per hour.

**B. Present Business of Free Speech Systems, LLC**

27. FSS is presently engaged in the business of producing and syndicating Jones' radio and video talk shows and selling products targeted to Jones' loyal fan base via the Internet. Today, FSS produces Alex Jones' syndicated news/talk show (The Alex Jones Show) from Austin, Texas, airs via GCN on over 100 radio stations across the United States and via the internet through the website Infowars.com.

28. On its Infowars.com website today, FSS makes available to customers dietary supplements ("Supplements"), including Bodease, Krill Oil, Ultimate Fish Oil, DNA Force Plus, Vitamin D3 Gummies, Ultimate Immune Support Pack, Pollen Block, and other health products, including Tea Tree Shampoo. The website also has available books, t-shirts, and other products ("Non-Supplements") Jones advertises during his radio talk show.

29. The vast majority of FSS revenues comes from the sale of Supplements, which have traditionally been supplied by or contracted for by PQPR, an affiliated entity, described below.

30. As of July 15, 2022, FSS employs a workforce of 58 individuals, the majority of whom have a direct reporting relationship to Alex Jones. In one building in Austin, Texas, FSS has four studios where online and traditional broadcast production is provided. The Alex Jones Show and other shows are produced in these studios. An adjacent building contains administrative offices and customer support. In a separate location in Austin, Texas, FSS has a

6

building where warehousing and product sales fulfillment takes place. *David Jones Deposition*, P13.[3] All the buildings and offices are leased.

31.     FSS has a unique audience that is highly loyal to Alex Jones and purchases products based on Alex Jones' credibility. Product sales from Infowars.com stores are a significant source of revenue for FSS. Historically, approximately 80% of FSS' revenue is derived from product sales, of the remainder, 11% is historically from advertising and the balance from a variety of sources. *David Jones Deposition*, P47.

### C.  The Relationship Between Alex Jones and FSS

32.     FSS, as employer, and Alex Jones, as employee, are parties to an Employment Agreement and Accompanying Employee Annuity and Life Insurance Plan, dated April 14, 2022 (the "Jones Employment Agreement").

33.     Under the Jones Employment Agreement, Jones agrees to promote products and services agreed to by the Employer, and permits Alex to use FSS's trademarks, tradenames, intellectual property and web site, including the Infowars website. Jones Employment Agreement, ¶¶ 3, 4.

34.     All of FSS' wages to him are subject to the Employee Annuity And Life Insurance Plan (Employee Annuity Plan), attached to the Jones Employment Agreement. Jones Employment Agreement. Under the Employee Annuity Plan, the employee may designate a portion or all his/her salary to purchase an annuity and life insurance, in amounts determined by the employee, from an insurance company to be selected.  Employees with more than two years of full-time consecutive service with FSS are eligible to participate in the Employee Annuity Plan.

---

[3] Oral and Videotaped Deposition of David R. Jones, May 16, 2019, Eric Lafferty, et. al. v. Alex Emeric Jones, et. al. (Connecticut).

7

35. The CRO is continuing to evaluate whether the estate has causes of action to claw back any payments or distributions to Alex Jones.

### D. The Debtor' Owners and Management

36. At its formation, Alex Jones and Kelly Jones owned 49% and 51% of the membership interests in FSS.

37. Alex and Kelly Jones divorced in 2015. Upon their divorce, Jones became the sole owner of FSS.

38. Since then, Alex Jones has been the Managing Member of FSS.

39. Since inception, Alex Jones has been a "single talent business", *to wit*, without him and his show, there would neither be any InfoWars nor internet sales. Unfortunately, Jones failed to bring on board the necessary management skills to manage what was once a small family business but had become a $70 to $80 million a year enterprise. Jones and his employees continued to run the business with an inverted T structure, where essentially everyone reported to Alex, as though it was still a family business.

40. Since May 19, 2022, FSS has retained Schwartz as its Chief Restructuring Officer ("CRO"), with broad powers to review the company's past financial performance, analyze the condition of FSS's books and records and evaluate whether FSS is a business that can be reorganized. SALLC was retained to perform various accounting and forensic work associated with his mandate.

41. In addition, FSS retained Jeffery Shulse ("Shulse") as FSS' Business Manager. Shulse has been parachuted into FSS's offices in Austin to take over FSS' accounting and financial functions and work with Schwartz and SALLC to (a) implement viable accounting and

006359

financial management functions; (b) implement sorely needed internal accounting controls, and (c) establish uniform accounting expense and personnel policies. With a BBA in accounting from the University of Houston and a J.D. from the University of Houston Law Center, Shulse has over twenty years' experience in providing business, operational and financial consulting to businesses and as a CFO and CEO of businesses in the oil and gas production and construction industries.

42.     The preliminary conclusions reached by me about FSS are:

(a) Although FSS had a controller and two bookkeepers, the 2021 general ledger had not been completed and the books have not been closed, and almost no transactions have been recorded in the 2022 general ledger. As a result, no financial statements were produced for FSS for the 18 months preceding my engagement. SALLC found no bank reconciliations for 2021 or 2022;

(b) FSS personnel expressed no criticism of not receiving any financial reports to assist them in managing their functional responsibilities and, in fact, appear to be unaware of the management information available to them from timely prepared and detailed financial statements and analyses;

(c) Internal accounting controls were inadequate, including lack of segregation of duties, written monthly, quarterly, and annual closing schedules, lack of supervisory review of key accounting functions including vendor set up, bank reconciliations, inventory reconciliations, or billings to PQPR Holdings Limited, LLC ("PQPR");

(d) Invoices from PQPR for payment for product it had acquired and sold to FSS were not paid or not paid in full, resulting in a liability to PQPR in excess of $50 million.

### E. The Relationship of FSS and PQPR

*Background Information About PQPR*

43.     PQPR was founded in 2013. The business began operations in September 2013.

44.     PQPR is engaged in the online sale and marketing of primarily nutritional supplements which it sells under its own label as well as acquiring nutritional supplements for FSS which it markets under its InfoWars label. PQPR also advertises its products exclusively through FSS/The Alex Jones Show for which it receives a bulk discount. PQPR also sells outside the FSS/Alex Jones show channels.

45.     PQPR is managed by David Jones. Alex Jones is not a manager of PQPR.

46.     The current owners and their ownership interests in PQPR are as follows:

|  | % Owned |
|---|---|
| PLJR Holdings | 80.00% |
| JLJR Holdings, LLC | 20.00% |
| Total | 100.00% |

47.     Through AEJ Austin Holdings, LLC, Jones has an effective 72% membership interest in PLJR Holdings, LLC ("PLJR").   Mrs. Carol Jones owns an 80.00% interest in, and Dr. David Jones holds the remaining 20.00% membership interest in JLJR Holdings, LLC ("JLJR").

48.     Alex Jones is not a manager of either PLJR or JLJR.

*Commercial Relationship Between FSS and PQPR*

49.     As discussed previously, FSS sells two groups of products on its Infowarsstore.com website: Supplements and Non-Supplements. The selection of nutritional supplements to be sold is determined by Alex Jones, David Jones, and staff of FSS. Currently, FSS places orders for Supplements with PQPR which then places the order with the original manufacturer.  FSS pays PQPR, as its agent, funds required to purchase product, which then pays

10

the manufacturer and manages the delivery and certification of the products. Pricing of the Supplements is done by FSS.

50.　　Non-Supplements consist of "Infowars" merchandise, ranging from T-shirts to silver coins. This group of merchandise is handled solely by FSS employees, starting from the selection of the merchandise, placing of the merchandise on the Infowars website, ordering of and paying for the product.

51.　　Alex Jones promotes both the Supplements and Non-Supplements during his daily broadcast and is the principal driving factor promoting the sale of products to his audience.

52.　　In the past, PQPR ordered and paid for Supplements which it marked up and then sold to FSS for distribution. As a result of FSS's inability to pay PQPR in full for the PQPR merchandise over several years, FSS became indebted to PQPR in a significant amount by 2020. The parties memorialized the indebtedness between the parties in 2020.

### *The Entry into the Secured Notes*

53.　　On or about August 13, 2020, FSS and PQPR executed a Promissory Note in the principal amount of $29,588,000.00 made payable to PQPR, which memorialized the accrued obligations of FSS to PQPR through December 31, 2018 (the "2020 Secured Note"). The 2020 Secured Note matures on August 1, 2050, interest is due and payable annually. The 2020 Secured Note bears interest at 1.75%.

54.　　The 2020 Secured Note is secured by a Security Agreement entered into as of August 13, 2020, between FSS and PQPR (the "2020 Security Agreement"). The 2020 Security Agreement provides in paragraph II that the "Collateral" securing the repayment of the 2020 Secured Note consists of all personal property owned by FSS.

55.　　On November 18, 2020, PQPR filed a UCC-1 Financing Statement with the Texas Secretary of State ("November 18 UCC Financing Statement").

11

56.     On or about November 10, 2021, FSS and PQPR entered into a second Promissory Note in the principal amount of $25,300,000.00 made payable to PQPR, which memorialized the accrued obligations of FSS to PQPR from January 1, 2019 to December 31, 2020 (the "2021 Secured Note"). Principal and interest of $1,939,644.81 is due on each anniversary of the 2021 Secured Note. The 2021 Secured Note bears interest at 1.8% and matures on November 10, 2036.

57.     The 2021 Secured Note is secured by the 2020 Security Agreement and the November 18 UCC Financing Statement.

58.     As of the Petition Date, $53,646,6876.82 of principal and $11,787.16 of interest are owed under the two Secured Notes.

59.     PQPR has been the primary source of Supplements for the Infowars website and has contributed to most of the revenue attributable to FSS. Maintaining access to the Supplement supply, along with Alex Jones being on the air, is critical to the reorganization of FSS.

**F.  FSS Needs a Credit Card Processor**

60.     An essential component of FSS's Infowarsstore.com business with which it could not survive is a credit card processor. Without the ability to process credit card transaction, FSS's business could not operate.  Processing a credit card transaction is a complex process. The process was made more difficult when financial institutions and media sites deplatformed FSS starting in 2018.

61.     Credit card processing refers to a multi-step process necessary to successfully complete payments made with a credit card. Credit card processing involves numerous entities. This includes the consumer, merchant, payment gateway, credit card processor, card network, issuing bank, and acquiring bank.

006363

62.     The key players in credit card processing are:

- **Customer** – the person making a purchase.
- **Merchant** – the person or organization selling a product or service to the customer making a purchase.
- **Payment gateway –** this refers to the technology that connects a merchant to a payment processor. This process involves integrating with card-present (i.e., in-store purchases) and card-not-present (i.e., online purchases) payment environments, obtaining the payment information of customers' transactions, sending these details to a payment processor or merchant bank, and then sending an "approved" or "declined" message to the merchant.
- **Credit card processor –** (or payment processor) this is the organization that helps the merchant, credit card network, and the cardholder's bank communicate. Credit card processors and merchants must comply with the Payment Card Industry Data Security Standard (PCI DSS).
- **Card network –** (also called credit card network or credit card brand) this is the customers' credit card brand, such as Discover, Mastercard, or Visa. These networks must set assessment and interchange fees.
- **Issuing bank –** (also known as the cardholder's bank or consumer bank) this refers to the bank providing customers with their credit card. The issuing bank will determine whether the cardholder's account has the funds to fulfill a transaction. If the account meets these requirements, the issuing bank will release those funds for settlement.
- **Acquiring bank –** (or merchant bank) this is the merchant's bank, which is used for storing its business funds and receiving money from transactions. This type of bank can provide card readers and equipment to merchants, allowing merchants to accept card payments. Acquiring banks can also serve as credit card processors.

63.     In April 2018, FSS had accounts on YouTube, Facebook, Twitter, Periscope, Pinterest, Instagram. *Michael Zimmerman Deposition*[4], P35. FSS also had the ability to access banks and credit card processors without any problems prior to April 2018.

---

[4] Videotaped Oral Deposition of Michael Zimmerman, November 26, 2019, Neil Heslin v. Alex E. Jones (Texas).

006364

64.     After the commencement of the Sandy Hook Litigation by the Texas and Connecticut Plaintiffs, FSS and Infowars.com were de-platformed from many important internet, social media, and other financial transaction accounts.

65.     Customers utilize credit or debit cards to purchase merchandise on the Infowarsstore.com website. FSS had to locate a credit card processor and a bank that would do business with it, after FSS was shunned by financial institutions and deplatformed on media sites starting in 2018.

66.     FSS entered into an agreement with a company as of October 1, 2021, to provide credit card processing for FSS.  A third-party processor receives payments from the credit card companies. The company receives credit card receipt proceeds and based on information provided by FSS and PQPR, including which entity owns the inventory that was sold, allocates funds between FSS and PQPR and transfers the amounts allocated to FSS and PQPR's respective banks. This process occurs every federally recognized business day.

67.     FSS pays the company a fee of 4% of the total amount of all credit card charges processed under the agreement and reimbursement of all costs incurred, including all credit card processing charges incurred in processing FSS' credit card charges.

68.     In addition to the fee, the agreement provided that the company withhold from FSS' net receipts $11,000.00 per business day and remit that amount to PQPR to pay principal and interest on the promissory notes executed by FSS in favor of PQPR.

69.     In a forbearance agreement entered into prior to the Petition Date, the parties agreed to reduce the amount being withheld from FSS' net receipts to $2,500.00 per business day for the thirty days following July 12, 2022, when the payment increases to $5,500.00 per business day for an additional thirty days, at which time the payment increases to $11,000.00 per day.

006365

70.     The forbearance agreement also provides that FSS will receive 20% of the proceeds of all sales of products purchased by PQPR (with PQPR receiving 80%) of such proceeds.  In turn, PQPR will receive 10% of the proceeds of all sales of products purchased by FSS (with FSS receiving 90%).  This split was to reimburse the respective parties for setting up supply chains, obtaining required governmental certifications, negotiating with vendors, procuring and paying for product, and overhead.

### G.  Sandy Hook and Litigation Resulting Therefrom

71.     The Debtors' financial distress stems from statements made by Alex Jones and other employees of FSS in the wake of the December 14, 2012, mass shooting at Sandy Hook Elementary School in which 20 children and 6 educators were killed by Adam Lanza. Certain parents of the deceased victims of the Sandy Hook shooting assert, among other things, that these statements were defamatory and inflicted emotional distress.

72.     The crux of the allegations in these lawsuits are that Alex Jones and FSS employees said or implied that the Sandy Hook massacre did not happen and that the parents were participants in a conspiracy against the public.

73.     In 2018, certain aggrieved parties (the "Texas Plaintiffs") commenced state-court actions against one or more of the Debtors styled as: ***(a)*** *Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Owen Shroyer*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas; ***(b)*** *Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas; ***(c)*** *Leonard Pozner and Veronique De La Rosa v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-18-001842, in the 345th District Court of Travis County, Texas; ***(d)*** *Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC,*

006366

*and Kit Daniels*, Cause No. D-1-GN-18-001605 in the 459th District Court for Travis County,

Texas; and **_(e)_** *Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, Marcel*

*Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, PQPR Holdings Limited*

*LLC,  JLJR Holdings, LLC, PLJR Holdings, LLC, Carol Jones, David Jones, PQPR Holdings,*

*LLC, JLJR Holdings Limited, LLC, AEJ Holdings, LLC, AEJ Trust 2018*, Cause No. D-1-GN-

22-001610, in the 200th District Court for Travis County (collectively, as may have been

consolidated, the "Texas State Court Litigation").

74.     These two actions: **_(a)_** *Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech*

*Systems, LLC, and Owen Shroyer*, Cause No. D-1-GN-18-001835, in the 261st District Court of

Travis County, Texas; **_(b)_** *Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems,*

*LLC*, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas (the

"Heslin/Lewis Suit") have been consolidated. Judge Maya Gamble is presently conducting a trial

of the Heslin/Lewis Suit.

75.     As a result of the filing of FSS' bankruptcy, the Texas State Court Litigation has

been stayed by the automatic stay provision of the Bankruptcy Code.

76.     In 2018, certain other parties (the "Connecticut Plaintiffs") brought actions in

Connecticut styled:

- *Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046436-S in the Superior Court of Connecticut, Waterbury Division;

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046437-S in the Superior Court of Connecticut, Waterbury Division;

16

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046438-S in the Superior Court of Connecticut, Waterbury Division (collectively, the "<u>Connecticut State Court Litigation</u>" together with the Texas State Court Litigation are hereinafter referred to as the "<u>Sandy Hook Lawsuits</u>").

77.     As a result of the filing of FSS' bankruptcy, the Connecticut State Court Litigation has been stayed by the automatic stay provision of the Bankruptcy Code.

78.     Jones, FSS, and the Debtors have spent more than $15.0 million in legal fees and costs since commencement of the Sandy Hook Lawsuits.

79.     Despite the substantial amount spent, both the Texas and Connecticut courts have imposed multiple sanctions and ruled that Jones and FSS have failed to comply with discovery requirements such that judgment on liability has been entered against them by default.

80.     InfoW, LLC f/k/a Infowars, LLC ("<u>InfoW</u>" and together with its affiliate debtors IWHealth, LLC and Prison Planet tv, Ltd., the "<u>InfoWDebtors</u>"), filed a voluntary petition for chapter 11 bankruptcy relief in the U.S. Bankruptcy Court for the Southern District of Texas, Victoria Division (the "<u>Bankruptcy Court</u>"), on April 18, 2022 (the "<u>Petition Date</u>"), initiating Case No. 22-60020 in that court (the "<u>Bankruptcy Case</u>").

81.     The purpose of the Bankruptcy Case was to provide a mechanism to efficiently determine and pay *all* claims against the InfoWDebtors and joint tortfeasors in full. To support this, the equity of the InfoWDebtors was assigned to the Liquidation Settlement Trust (for the benefit of the Plaintiffs[5] and others) prior to the Petition Date, and the InfoWDebtors, with separate counsel and financial advisors, negotiated the Plan Support Agreement

17

82.     Among other things, the Plan Support Agreement obligated Jones and FSS (together with Jones, the "Third-Party Funding Contributors") to fund $10.0 million to pay litigation claimants. The total consideration would have been more than $500,000 per litigation claimant. Additional consideration may have been negotiated over the course of the InfoWDebtors' Bankruptcy Case

83.     Prior to the Petition Date of the InfoWDebtors' bankruptcy cases, the InfoWDebtors' and the Third-Party Funding Contributors incurred and paid more than $15.0 million in legal costs. The savings from liquidating the claims in a central forum were essential to the administration of the InfoWDebtors' bankruptcy estates and ultimately paying creditors in full. Absent centralized administration—which may include determination by a jury—the funds available would have been  cannibalized in successive trials over a five-month period.

84.     Rather than negotiate with the InfoWDebtors and the Third-Party Funding Contributors, the Plaintiffs first sought to dismiss the InfoWDebtors' Bankruptcy Case, and, then abruptly, even though Plaintiffs had sued InfoW four years ago, dismissed with prejudice InfoW and, where relevant, the other two debtors within 2 months of the Petition Date.

85.      The primary goal of InfoWDebtors in the Bankruptcy Case was to engage the Plaintiffs in a global settlement. While unable to achieve that goal, the Bankruptcy Case resulted in the dismissal with prejudice of all claims against InfoW, IW Health and Prison Planet from any and all claims held by the Plaintiffs.

**H.  Current Financial Condition of Debtor**

86.     Attached hereto as **Exhibit "A"** is a comparative Profit and Loss Statement for FSS for the period January 1, 2022, through May 31, 2022, and the year ended December 31, 2021.

87.     Attached hereto as **Exhibit "B"** is a comparative Balance Sheet of FSS as of May 31, 2022 and December 31, 2021.

88.     Attached hereto as **Exhibit "C"** is a comparative Cash Flow Statement for FSS for the period January 1, 2022, through May 31, 2022 and the year ended December 31, 2021.

## I.     Critical Motions to Commence the Chapter 11 Case

### First Day Motions

89.     Contemporaneously herewith, the Debtor has filed a number of First Day Motions seeking orders granting various forms of relief intended to stabilize the Debtor's business operations and facilitate the efficient administration of the Chapter 11 Case. The First Day Motions include the following:

- **Schedules and Statements Extension Motion**. *Debtor's Motion Seeking Entry of an Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs, and (II) Granting Related Relief.*

- **Cash Collateral Motion**. *Debtor's Emergency Motion For An Interim And Final Order (I) Authorizing The Use Of Cash Collateral Pursuant To Sections 105, 361, and 363 of The Bankruptcy Code and Federal Rule Of Bankruptcy Procedure 4001(B), And (II) Granting Adequate Protection To The Pre-Petition Secured Lender.*

006370

- **Critical Vendors Motion**. *Debtor's Motion for an Order (A) Authorizing The Debtor To Pay Prepetition Obligations Of Certain Critical Vendors, And (B) Granting Related Relief.*

- **Utilities Motion**. *Debtor's Emergency Motion For Entry Of An Order: (I) Approving Debtor's Proposed Form Of Adequate Assurance Of Payment For Future Utility Services; (II) Approving Adequate Assurance Procedures; Prohibiting Utility Providers From Altering, Refusing Or Discontinuing Service; And (Iv) Granting Related Relief.*

- **Relief from Stay Motion**. *Debtor's Emergency Motion For An Order Modifying The Automatic Stay To Allow The Heslin/Lewis State Court Suit To Continue To Judgement.*

90. The First Day Motions seek authority to, among other things, obtain authority to use cash collateral of PQPR to operate the business of FSS in the ordinary course, including maintaining the studios for Jones to produce his shows, purchase critically needed Supplements and operate the sale business of merchandise sales from the InfowarsStore.com website, pay claims of certain vendors and suppliers to ensure that the Debtor's business operations are not disrupted by the Chapter 11 Case, provide payments and protection to various utilities to assure that they provide essential services to the Debtor, and grant the Texas Plaintiffs relief from the automatic stay provision of 11 U.S.C § 362(a) so as to permit the Heslin\Lewis Suit to continue to judgment uninterrupted by the automatic stay.

91. The Debtor has tailored its requests for immediate relief to those circumstances where the failure to receive such relief would cause immediate and irreparable harm to the Debtor and its estate. An immediate and orderly transition into chapter 11 is critical to the viability of the Debtor's operations and any delay in grating the relief described in the First Day Motions

20

could hinder the Debtor's operations and cause irreparable harm. The failure to receive the requested relief during the first twenty-one (21) days of the Chapter 11 Case would severely disrupt the Debtor's operations at this important juncture.

92.     I am familiar with the content and substance contained in each First Day Motion and believe that the relief sought in each motion (a) is necessary to enable the Debtor to operate in chapter 11 with minimal disruption or loss of productivity and value, (b) constitutes a critical element of the Debtor's successful reorganization, and (c) best serves the Debtor's estate. I have reviewed each of the First Day Motions. If asked to testify as to the facts supporting each of the First Day Motions, I would testify to the facts as set forth in such motions, as further described below.

### Procedural Motion

93.     **Schedules and Statements Extension Motion**. The Debtor seeks entry of an order (a) extending the deadline by which the Debtor must file its schedule of assets and liabilities, schedules of current income and expenditures, schedule of executory contracts and unexpired leases and statement of financial affairs by an additional 14 days for a total of 29 days from the Petition Date, without prejudice to the Debtor's ability to request additional extensions.

94.     Schwartz, Shulse and SALLC have literally been drinking from a firehose since their retention. While they have accomplished much, the company continues to face issues on a daily basis that requires emergency, urgent and immediate attention from this group. Furthermore, locating accurate financial records is a tedious task at FSS, as the record keeping for orders, invoices, expense reports, American Express charge reports are not well-organized. All other records on the computer system also require additional time to retrieve.

95.     Given the complexity of the Debtor's business and financial affairs, and the critical matters that the Debtor's management and professionals were required to address prior

to Petition Date, the Debtor was not able to complete the Schedules and Statements as of the Petition Date.

96.     I believe that the relief requested in the Schedules and Statements Extension Moton is in the best interest of the Debtor's estate, its creditors, and all other parties in interest and will facilitate the Debtor's ability to operate its business in chapter 11 without disruption.

### Operational Motions

97.     **Cash Collateral Motion**[6]. The Debtor must have access to and use of cash collateral to operate its business. Prior to the Petition Date, FSS and PQPR engaged in extensive and difficult negotiations over the use of cash collateral. The negotiations were complicated by PQPR's significant and important commercial role with FSS. PQPR acts as a lender, provides Supplements and handles essential accounting and revenue division functions for FSS' business.

98.     The Debtor requires the use of cash collateral to purchase Supplements and Non-Supplements to sell on its Infowarsstore.com website, pay reasonable and necessary operating expenses, including, but not limited to, employee payroll, rent, utilities, lease payments, marketing, taxes, and insurance. Without use of cash collateral, FSS could not operate its business, pay its employees and operate the studios where Alex Jones produces his shows.

99.     Working with Alex Jones, PQPR, FSS employees, Shulse and SALLC, I have developed a 13-Week Cash Flow Forecast showing the Sources and Uses of Cash for FSS commencing as of July 30, 2022. A true and correct copy of the 13-Week Cash Flow Forecast is attached hereto as **Exhibit "D"**. Based on the assumptions made in the forecast, I project that FSS will operate with a positive ending cash balance at the conclusion of the 13-week period.

---

[6] The Debtor is in possession of certain funds which are not proceeds of PQPR's collateral. Accordingly, the Debtor does not concede that those funds constitute cash collateral of PQPR. Nevertheless, net proceeds received by the Debtor from online merchandise sales including PQPR products are PQPR's cash collateral.

100.     The use of cash collateral required in the next fourteen (14) days from the Petition Date is also set forth on the budgets attached hereto as **Exhibit D**. The Debtor's proposed emergency use of cash collateral is necessary to preserve the value of the Debtor's estate for the benefit of all creditors, including the PQPR, during the first fourteen (14) days of the Chapter 11 Case (the "Interim Period").

101.     The Debtor's proposed offer of adequate protection on an interim basis is set forth in the proposed Interim Cash Collateral Order. It includes replacement liens solely to the extent of any validly perfected, unavoidable security interest as of the Petition Date, and a priority administrative claim to the extent of the diminution of value of PQPR's collateral, if any. As described further in the proposed Interim Cash Collateral Order, the proposed replacement liens and priority administrative claim shall be subject to a carve-out for unpaid fees owed to the clerk of this Court or the United States Trustee, if any, and court-approved administrative expense claims of estate professionals.

102.     PQPR and FSS have engaged in extensive negotiations over a protracted duration to arrive at the interim agreement, which the parties will further negotiate into a final agreement. Due to FSS's affiliation with Alex Jones, the CRO made a decision that time was best spent negotiating the most favorable use of cash collateral agreement with PQPR rather than seeking any alternative third-party lender or source of capital to operate FSS.

103.     Without access to the use of cash collateral of PQPR, FSS could not retain the employees to produce The Alex Jones Show, purchase critically needed inventory to sell on the Infowarsstore.com website and to operate its fulfillment business once a customer makes a purchase.

104.     **Critical Vendors Motion.** The Debtor seeks entry of interim and final orders authorizing, but not directing, the Debtor to pay, in the ordinary course of business, prepetition

23

amounts owing on account of claims of critical vendors identified on Schedule "1" to the Critical Vendors Motion (collectively, the "Critical Vendors") in an amount not to exceed $359,544.62. In addition, the Debtor requests that the Court schedule a final hearing in approximately twenty-one (21) days after the entry of an interim order, or as soon thereafter as is convenient for the Court, to consider approval of the Critical Vendors Motion on a final basis.

105.    After an extensive review and analysis of the Debtor's vendors, the Debtor and its professionals identified the vendors that supply products and services vital to the Debtor's continued operation. The Debtor relies on products and services from its Critical Vendors to operate its business, and, depend on the timely provision of specialized services to provide top-quality content and services to its customer base.

106.    The Critical Vendors procure and provide key services to producing and transmitting The Alex Jones Show. The Critical Vendors are instrumental in the timely fulfillment of Supplement or Non-Supplements to the customer base. If they fail to provide their mission-critical goods and services, the business of FSS would grind to a halt.

107.    I understand that the Debtor's trade relationship with its Critical Vendors is not governed by long-term contracts, and the Debtor believes those trade relationships will deteriorate, causing disruption to the Debtor's operations if the Debtor is unable to pay Critical Vendors. Accordingly, payment of the Critical Vendors is essential to avoid costly interruption and disturbances to the Debtor's business during the Chapter 11 Case.

108.    Subject to Court's approval, I understand the Debtor intends to pay Critical Vendors only to the extent necessary to preserve its business. The Debtor's CRO will review, assess, and make payment on account of these claims. In return for paying these claims, the Debtor will use commercially reasonable efforts to condition payment of Critical Vendors upon each claimant's agreement to continue supplying goods and services to the Debtor in accordance

006375

with trade terms (including credit limits, discounts, pricing, timing of payments, availability, and other terms) consistent with the parties' ordinary course practice or as otherwise agreed by the Debtor in its reasonable business judgement.

109.    I believe that the relief requested in the Critical Vendors Motion is in the best interest of the Debtor's estate, its creditors and all other parties in interest and will facilitate the Debtor's ability to operate its business in chapter 11 without disruption.

110.    **Utilities Motion**. The Debtors seeks entry of an order (a) approving the Debtor's proposed adequate assurance of payment for future utility services under section 366 of the Bankruptcy Code, (b) prohibiting the utility providers from altering, refusing, or discontinuing services, (c) approving the Debtor's propose adequate assurance procedures, and, (d) granting related relief.

111.    In connection with the operation of its business, the Debtor obtains electricity, telecommunications and other similar services from a number of utility providers or brokers. Uninterrupted utility services are essential to the Debtor's ongoing business operations and the overall success of the Chapter 11 Case. The utility services are essential for the Debtor to maintain its business and to operate its corporate offices and essential for daily operations. The studios and warehouse in Austin, Texas require electricity, telecommunications, internet, and other utility services to operate. Should any utility provider refuse or discontinue service, even for a brief period, the Debtor's business operations would be needlessly disrupted.

112.    To the best of Debtor's knowledge, there are no defaults or arrearages with respect to the undisputed invoices for prepetition utility services.

**Proposed Adequate Assurance**

113.    The Debtor intends to pay post-petition obligations owed to the Utility Providers in a timely manner. Cash held by the Debtor and cash generated in the ordinary course of

006376

business will provide sufficient liquidity to pay the Debtor's Utility Service obligations in accordance with its prepetition practice.

114. The Debtor submits that the Debtor's ability to pay for future utility services with cash on hand in accordance with its prepetition practices (the "Proposed Adequate Assurance") constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of Bankruptcy Code section 366.

### *Adequate Assurance Procedures*

115. Any Utility Provider that is not satisfied with the Proposed Adequate Assurance may make a request for additional or different adequate assurance of future payment (each an "Additional Assurance Request") pursuant to the adequate assurance procedures set forth in the proposed Order (the "Adequate Assurance Procedures").

116. The proposed Adequate Assurance Procedures are as follows:

Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments or otherwise must serve an Additional Assurance Request on the Notice Parties (as defined in the Order). An Additional Assurance Request may be made at any time.

Any Additional Assurance Request must: (i) be in writing; (ii) identify the location for which the Utility Services are provided; (iii) summarize the Debtor's payment history relevant to the affected account(s), including any security deposits; and (iv) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

Upon the Debtor's receipt of any Additional Assurance Request, the Debtor shall promptly negotiate with such Utility Provider to resolve such Utility Provider's Additional Assurance Request.

The Debtor may, without further order from the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and the Debtor may, in connection with any such agreement, provide such Utility Provider with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments or other forms of security if the Debtor believes that such adequate assurance is reasonable in its business judgment, subject to the terms of any cash collateral or other financing order entered by the Court; provided, however, that the Debtor shall maintain a summary

record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in this chapter 11 case and the U.S. Trustee upon request.

If the Debtor and the Utility Provider are not able to reach an alternative resolution within 14 days of receipt of the Additional Assurance Request, the Debtor will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing"), pursuant to Bankruptcy Code section 366(c)(3). Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing, or discontinuing Utility Services to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

In addition, if an amount relating to Utility Services provided post-petition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request additional adequate assurance pursuant to the Adequate Assurance Procedures.

The Adequate Assurance Procedures sets forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtor to continue its business operations uninterrupted. More specifically, the Adequate Assurance Procedures permits a Utility Provider to object to the Proposed Adequate Assurance by filing and serving an Additional Assurance Request upon certain notice parties. The Debtor, in its discretion, may then resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court. If the Additional Assurance Request cannot be resolved by mutual agreement, the Debtor may seek Court resolution of the Additional Assurance Request. Unless and until a Utility Provider files an objection or serves an Additional Assurance Request, such Utility Provider shall be: (i) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with Bankruptcy Code section 366; and (ii) forbidden to discontinue, alter or refuse services to, or discriminate against, the Debtor on account of any unpaid prepetition

006378

charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

117.    I believe that the relief requested in the Utilities Motion is in the best interest of the Debtor's estate, its creditors, and all other parties in interest and will facilitate the Debtor's ability to operate its businesses in chapter 11 without disruption.

118.    **Heslin/Lewis Relief from Stay Motion.** Plaintiffs in Texas and Connecticut have commenced suits against Alex Jones and FSS relating to certain statement made by Jones regarding the Sandy Hook shooting. Two of the Texas State Court Suits—*Neil Heslin v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Owen Shroyer*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas and *Scarlett Lewis v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-18-006623, in the 53rd District Court for Travis County, Texas—have been consolidated as the Heslin/Lewis Suit.  Judge Maya Guerra Gamble, 459th Civil District Court, Travis County (the "Texas State Court") is presiding over the Heslin/Lewis Suit.

119.    The trial of the Heslin/Lewis Suit was ongoing as of the Petition Date. On July 25, 2022, the Texas State Court held *voir dire* of jurors and a jury was empaneled. The Texas State Court began taking evidence in the Heslin/Lewis Suit on July 26, 2022. As the result of the filing of the Debtor's petition for chapter 11 relief, the Heslin/Lewis Suit is stayed by Bankruptcy Code section 362.

120.    The Debtor believes that it is in the best interests of its estate and creditors for the Heslin/Lewis Suit to continue to judgement notwithstanding the commencement of this Chapter 11 Case. Substantial resources of the Debtor and Plaintiffs Heslin and Lewis have already been expended in the Heslin/Lewis Suit to empanel a jury and present evidence to that jury. Based on representations made by counsel for Heslin and Lewis in the Bankruptcy Case of InfoW, LLC

previously before this Court, the Debtor believes that Heslin and Lewis desire a final judgment from the Texas State Court and would seek relief from the automatic stay absent this request by the Debtor.[7]

121.     The Debtor seeks emergency consideration of this Motion on or before 8:30 a.m. on August 1, 2022, or as soon thereafter as the Court's schedule will allow. A jury has been empaneled and trial is underway in the Heslin/Lewis Suit, scheduled to continue at 9:00 a.m. on Monday, August 1, 2022. Emergency relief is necessary to prevent delay in the Heslin/Lewis Suit to the detriment of the Debtor, Plaintiffs Heslin and Lewis, and the members of the jury serving in the Heslin/Lewis Suit.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of July,  2022.

W. Marc Schwartz, as Chief Restructuring
Officer of Free Speech Systems, LLC

---

[7] In the InfoW, LLC chapter 11 case, counsel for the Texas Plaintiffs indicated at the April 22, 2022, hearing that the Texas Plaintiffs would be seeking relief from the automatic stay to continue litigation. According to counsel for the Texas Plaintiffs, the "cases are every bit as much about having a determination final made for them, them having their day in court in which Mr.Jones is held accountable for his conduct. So it's not just about a liquidating claims procedure, it is very emotional." *In re InfoW, LLC*, Case No. 22-60020 (Bankr. S.D. Tex.) [ECF No. 39] at 73:8-12.

006380

Exhibit "A"

Comparative Profit and Loss Statement for FSS for the period January 1, 2022, through May 31, 2022 and the year ended December 31, 202.

**Exhibit A**

| Free Speech Systems LLC<br>Comparative Profit and Loss Statement<br>For the Year Ended December 31, 2021 and the Five Months<br>Ended May 31, 2021 |
|---|

|  | 2021 |  | 2022 |
|---|---|---|---|
| **Income** |  |  |  |
| Product Sales | $ 52,661,022.49 | $ | 10,969,769.29 |
| Advertising Income | 5,761,997.51 | | - |
| Donations | 710,154.12 | | 2,876,213.86 |
| Fulfillment Services | 3,533,223.00 | | - |
| Administrative Services | 1,903,898.95 | | - |
| Media Production Sales | - | | 475,000.00 |
| Infowars Health | 38,123.60 | | - |
| Prison Planet | 4,877.62 | | - |
| Uncategorized Income | 357,344.56 | | - |
| *Total Income* | *64,970,641.85* | | *14,320,983.15* |
| Cost of Goods Sold | 51,878,333.73 | | 4,936,453.79 |
| *Gross Profit* | *$ 13,092,308.12* | *$* | *9,384,529.36* |
| **Expenses** |  |  |  |
| Advertising & Promotion | 364,387.73 | | 107,994.01 |
| Computer/IT/IP Expense | 5,036,717.02 | | 1,307,339.15 |
| Insurance Expense | 54,558.40 | | 31,898.90 |
| Office & Administrative Expense | 277,863.76 | | 26,373.93 |
| Contract Services | 1,591,039.49 | | 359,592.69 |
| Professional Fees | 4,126,906.48 | | 1,623,771.42 |
| Occupancy | 1,624,864.40 | | 345,602.34 |
| Utilities | 115,461.34 | | 127,855.13 |
| Taxes Paid | 50,281.71 | | 4,409.71 |
| Telephone Expense | 304,776.62 | | 85,341.24 |
| Personnel & Payroll Expenses | 6,879,811.39 | | 2,157,298.60 |
| Travel | 975,711.28 | | 64,900.23 |
| Equipment Purchase | 123,696.05 | | - |
| Production | 393,712.54 | | - |
| Radio Show | 145,177.77 | | - |
| Royalties | 1,197,472.71 | | - |
| Equipment Rental | 27,322.86 | | - |
| Meals and Entertainment | 97,486.31 | | - |
| Uncategorized Expense | - | | 103,815.00 |
| *Total Expenses* | *23,387,247.86* | | *6,346,192.35* |
| *Net Operating Income* | *$ (10,294,939.74)* | *$* | *3,038,337.01* |
| **Other Income** | **507,168.04** | | **1,019,713.81** |
| **Other Expenses** | 18,963.30 | | 206.15 |
| Interest Expense | 857,498.17 | | 397,669.19 |
| Donation | 10,000.00 | | - |
| Amortization Expense | 35,361.28 | | 5,937.50 |
| Depreciation Expense | 209,888.00 | | 98,750.20 |
| AMEX Charges | - | | 1,653,383.31 |
| *Total Other Expenses* | *1,131,710.75* | | *2,155,946.35* |
| *Net Other Income* | *(624,542.71)* | | *(1,136,232.54)* |
| **Net Income** | **$ (10,919,482.45)** | **$** | **1,902,104.47** |

Exhibit "B"

Comparative Balance Sheet of FSS as of May 31, 2022 and December 31, 2021.

**Exhibit B**

| | | | | |
|---|---|---|---|---|
| | **Free Speech Systems LLC** | | | |
| | **Comparative Balance Sheet** | | | |
| | **As of December 31, 2021 and May 31, 2022** | | | |

| | | **2021** | | **2022** |
|---|---|---|---|---|
| **Assets** | | | | |
| **Current Assets** | | | | |
| Cash | $ | 1,508,720.21 | $ | 1,159,247.90 |
| Accounts Receivable | | 10,187,121.95 | | 10,013,413.22 |
| **Other Current Assets** | | | | |
| Invenotry | | 1,732,603.13 | | 910,116.84 |
| Prepaid Expenses | | 446,475.64 | | 114,136.99 |
| Due from PQPR | | (500.00) | | - |
| Advance To Elevated Solutions | | 27,870.00 | | - |
| *Total Other Current Assets* | | *2,206,448.77* | | *1,024,253.83* |
| *Total Current Assets* | | *13,902,290.93* | | *12,196,914.95* |
| **Fixed Assets** | | 1,679,438.66 | | 1,580,779.46 |
| **Other Assets** | | | | |
| Intangible Assets | | 21,270.83 | | 15,333.33 |
| Security Deposits | | 534,560.00 | | 534,560.00 |
| *Total Other Assets* | | *555,830.83* | | *549,893.33* |
| *Total Assets* | $ | *16,137,560.42* | $ | *14,327,587.74* |
| **Liabilities and Equity** | | | | |
| **Liabilities** | | | | |
| **Current Liabilities** | | | | |
| Accounts Payable | $ | 4,732,966.89 | $ | 1,217,685.58 |
| Credit Cards | | 152,367.42 | | 207,984.04 |
| **Other Current Liabilities** | | | | |
| David Jones Advance | | 150,000.00 | | 150,000.00 |
| Advances from PQPR | | - | | 571,920.57 |
| Due to PQPR | | 23,058,367.00 | | 23,058,367.00 |
| *Total Other Current Liabilities* | | *23,208,367.00* | | *23,780,287.57* |
| *Total Current Liabilities* | | *28,093,701.31* | | *25,205,957.19* |
| **Long Term Liabilities** | | | | |
| Note Due to PQPR | | 54,580,405.22 | | 53,845,074.41 |
| Note Payable - Winnebago | | 93,505.62 | | 82,524.37 |
| *Total Long Term Liabilities* | | *54,673,910.84* | | *53,927,598.78* |
| *Total Liabilities* | $ | *82,767,612.15* | $ | *79,133,555.97* |
| **Equity** | | | | |
| Member's Equity | | (774,291.44) | | - |
| Member Draws | | (61,937,862.26) | | (254,014.00) |
| Member Contributions | | 4,305,810.14 | | 311,350.00 |
| Opening Balance Equity | | - | | (66,765,408.70) |
| Retained Earnings | | 2,695,774.28 | | |
| Net Income | | (10,919,482.45) | | 1,902,104.47 |
| *Total Equity* | $ | *(66,630,051.73)* | $ | *(64,805,968.23)* |
| *Total Liabilities and Equity* | $ | *16,137,560.42* | $ | *14,327,587.74* |

Exhibit "C"

Comparative Cash Flow Statement for FSS for the period January 1, 2022, through May 31, 2022 and the year ended December 31, 2021.

**Exhibit C**

<div style="border:1px solid black">

**Free Speech Systems, LLC**
**Statement of Cash Flows**

**For the Year Ended December 31, 2021 and the Five Months Ended May 31, 2022**

</div>

| | 2021 | 2022 |
|---|---|---|
| **Operating Activities** | | |
| *Net Income* | **($10,919,482.45)** | **$1,902,104.47** |
| *Adjustments to reconcile Net Income to Net Cash provided by operations:* | - | - |
| 11000 Accounts Receivable | (10,187,121.95) | 173,708.73 |
| 12000 Inventory | (94,344.61) | 822,486.29 |
| 13000 Prepaid Expenses:13010 Prepaid Insurance | - | - |
| 13000 Prepaid Expenses:13020 Prepaid Software Licenses | - | - |
| Pre-paid Vendor Deposits | - | - |
| 13000 Prepaid Expenses:13040 Prepaid Legal | - | - |
| 13000 Prepaid Expenses:13070 Other Prepaid Expenses | - | - |
| Advance To Elevated Solutions | - | - |
| Prepaid Expenses | (403,821.24) | 65,286.20 |
| Accumulated Depreciation | 209,887.99 | 98,750.20 |
| Accumulated Amortization | 35,361.29 | 2,708.35 |
| 20000 Accounts Payable | 3,005,707.55 | (3,410,484.85) |
| 22000 Credit Card Payable | (236,394.79) | 207,984.04 |
| Advances from PQPR | - | 571,920.57 |
| David Jones Advance | 150,000.00 | - |
| Due to PQPR | (2,229,789.04) | - |
| Interest Payable - PQPR | (200,022.99) | - |
| *Net cash provided by operating activities* | **($20,870,020.24)** | **$434,464.00** |
| **Investing Activities** | - | - |
| 15000 Property and Equipment | (522,121.65) | (91.00) |
| 17100 Security Deposits | (500,000.00) | - |
| 17300 Intangible Assets | (5,500.00) | 3,229.15 |
| *Net cash provided by investing activities* | **($1,027,621.65)** | **$3,138.15** |
| **Financing Activities** | | |
| 27000 Note Due to PQPR:2021/11/10 $25,300,000 Note | 24,992,405.22 | (735,330.81) |
| Note Payable - Winnebago | (18,832.81) | (10,981.25) |
| 31000 Opening Balance Equity | - | - |
| Member's Equity | (23,193.36) | (98,098.40) |
| 33000 Distributions to Member:33100 Member Draws | - | - |
| 33000 Distributions to Member:Owner investments | - | - |
| Net Member Distributions | (2,100,362.40) | 57,336.00 |
| *Net cash provided by financing activities* | **22,850,016.65** | **(787,074.46)** |
| *Net cash increase for period* | **$952,374.76** | **($349,472.31)** |

Exhibit "D"

13-Week Cash Flow Forecast for FSS

# Exhibit D

**Free Speech Systems LLC**
**Forecasted 13 Week Cash Flow Budget**
Between July 30, 2022 and October 28, 2022

| | 1 07/30/2022–08/05/2022 | 2 08/06/2022–08/12/2022 | 3 08/13/2022–08/19/2022 | 4 08/20/2022–08/26/2022 | 5 08/27/2022–09/02/2022 | 6 09/03/2022–09/09/2022 | 7 09/10/2022–09/16/2022 | 8 09/17/2022–09/23/2022 | 9 09/24/2022–09/30/2022 | 10 10/01/2022–10/07/2022 | 11 10/08/2022–10/14/2022 | 12 10/15/2022–10/21/2022 | 13 10/22/2022–10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | |
| Product Sales | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 595,489.01 | 7,741,357.16 |
| Advertising | | | | 480,166.46 | | | | 480,166.46 | | | | 480,166.46 | | 1,440,499.38 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 40,836.21 |
| **Total Income** | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 9,222,692.75 |
| **Selling & Product Costs** | | | | | | | | | | | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (990,017.27) |
| Repay PQHR Inventory | | (250,000.00) | | (500,000.00) | | | | | | | | | | (750,000.00) |
| Merchant & Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (348,361.07) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (102,853.59) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (1,238,617.15) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (309,654.29) |
| eCommerce Store Maintenance | (27,270.00) | | | | (27,270.00) | | | | (27,270.00) | | | | | (81,810.00) |
| Texas Sales Tax | (5,337.87) | | | | (5,337.87) | | | | (5,337.87) | | | | | (16,013.61) |
| **Total Cost of Goods Sold** | (262,569.67) | (479,961.80) | (229,961.80) | (729,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (229,961.80) | (3,837,326.97) |
| **Operating Expenses** | | | | | | | | | | | | | | |
| **Advertising & Promotion** | | | | | | | | | | | | | | |
| Advertising & Promotion | (3,041.98) | | | | (3,041.98) | | | | (3,041.98) | | | | | (9,125.93) |
| Print Media | (3,000.00) | | | | (3,000.00) | | | | (3,000.00) | | | | | (9,000.00) |
| Radio Show Advertising | (11,500.00) | | | | (11,500.00) | | | | (11,500.00) | | | | | (34,500.00) |
| **Total Advertising & Promotion** | (17,541.98) | | | | (17,541.98) | | | | (17,541.98) | | | | | (52,625.93) |
| **Computer/IT/IP Expense** | | | | | | | | | | | | | | |
| Internet & TV services | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | (2,082.90) | | (1,608.39) | | | (11,073.89) |
| Software License Fees | (140.80) | | | | (140.80) | | | | (140.80) | | | | | (422.40) |
| Server Hosting Service | (28,595.13) | | | | (28,595.13) | | | | (28,595.13) | | | | | (85,785.40) |
| CDN Video Cloud Storage | (55,728.00) | | | | (55,728.00) | | | | (55,728.00) | | | | | (167,184.00) |
| Satellite Service | (137,282.93) | | | | (137,282.93) | | | | (137,282.93) | | | | | (411,848.78) |
| Imaging License Fee | (9,201.25) | | | | (9,201.25) | | | | (9,201.25) | | | | | (27,603.75) |
| Software & Apps | (5,000.00) | | | | (5,000.00) | | | | (5,000.00) | | | | | (15,000.00) |
| Website Hosting | | | (266.50) | | | | (266.50) | | | | (266.50) | | | (799.50) |
| **Total Computer/IT/IP Expense** | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | (238,031.01) | | (1,874.89) | | | (719,717.72) |
| Insurance | (2,166.50) | | | | (2,166.50) | | | | (2,166.50) | | | | | (6,499.50) |
| **Office & Administrative Expense** | | | | | | | | | | | | | | |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (596.74) |
| Equipment Rental | (1,989.50) | | | | (1,989.50) | | | | (1,989.50) | | | | | (5,968.50) |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (27.31) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (280.46) | (3,645.97) |
| **Total Office & Administrative Expense** | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (328.46) | (10,239.71) |
| Outsourced Services | (45,980.00) | | | | (45,980.00) | | | | (45,980.00) | | | | | (137,940.00) |
| Consulting Services | (22,670.00) | | (12,000.00) | | (22,670.00) | | (12,000.00) | | (22,670.00) | | (12,000.00) | | | (104,010.00) |
| **Utilities** | | | | | | | | | | | | | | |
| Electricity | | | (5,107.63) | | | | (5,107.63) | | | | (5,107.63) | | | (15,322.89) |
| HVAC | (256.19) | | | | (256.19) | | | | (256.19) | | | | | (768.58) |
| CAM Charges | (20,364.16) | | | | (20,364.16) | | | | (20,364.16) | | | | | (61,092.48) |
| Water & Sewer | (1,708.55) | | | | (1,708.55) | | | | (1,708.55) | | | | | (5,125.66) |
| Gas Service | (132.09) | | | | (132.09) | | | | (132.09) | | | | | (396.28) |
| Pest Control | (244.65) | | | | (244.65) | | | | (244.65) | | | | | (733.95) |
| Waste Management | (351.81) | | | | (351.81) | | | | (351.81) | | | | | (1,055.43) |
| **Total Utilities** | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | | (84,495.27) |
| **Occupancy** | | | | | | | | | | | | | | |
| Rent | (33,408.51) | | | | (33,408.51) | | | | (33,408.51) | | | | | (100,225.53) |
| Off-Site Security | (31,111.90) | | | | (31,111.90) | | | | (31,111.90) | | | | | (93,335.69) |
| Repair & Maintenance - Building | (1,777.19) | | | | (1,777.19) | | | | (1,777.19) | | | | | (5,331.56) |
| Janitorial | (5,983.33) | | | | (5,983.33) | | | | (5,983.33) | | | | | (17,950.00) |
| **Total Occupancy** | (72,280.93) | | | | (72,280.93) | | | | (72,280.93) | | | | | (216,842.78) |
| Supplies | (1,258.02) | | | | (1,258.02) | | | | (1,258.02) | | | | | (3,774.07) |

006308

**Free Speech Systems LLC**
**Forecasted 13 Week Cash Flow Budget**
Between July 30, 2022 and October 28, 2022

| Period | 07/30/2022- 08/05/2022 | 08/06/2022- 08/12/2022 | 08/13/2022- 08/19/2022 | 08/20/2022- 08/26/2022 | 08/27/2022- 09/02/2022 | 09/03/2022- 09/09/2022 | 09/10/2022- 09/16/2022 | 09/17/2022- 09/23/2022 | 09/24/2022- 09/30/2022 | 10/01/2022- 10/07/2022 | 10/08/2022- 10/14/2022 | 10/15/2022- 10/21/2022 | 10/22/2022- 10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Telephone | (18,337.88) | - | - | - | (18,337.88) | - | - | - | (18,337.88) | - | - | - | - | (55,013.65) |
| **Personnel Expenses** | | | | | | | | | | | | | | |
| Salaries & Wages - Base | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | (1,179,272.08) |
| Payroll Tax | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | (97,797.65) |
| Alex Jones Salary | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | (379,166.67) |
| **Total Personnel Expenses** | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | (1,656,236.39) |
| **Travel** | | | | | | | | | | | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (1,295.98) |
| Vehicle Leases | - | (1,470.56) | - | - | - | (1,470.56) | - | - | - | - | (1,470.56) | - | - | (4,411.68) |
| **Total Travel Expenses** | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (5,707.66) |
| **Total Operating Expenses** | (680,347.03) | (1,898.71) | (256,015.88) | (428.15) | (680,347.03) | (1,898.71) | (256,015.88) | (428.15) | (680,347.03) | (428.15) | (238,503.91) | (19,410.68) | (237,033.35) | (3,053,102.68) |
| **Non-Operating Expenses** | | | | | | | | | | | | | | |
| Payment on PQPR Note | (12,500.00) | (15,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (523,000.00) |
| AMEX Payment | (172,390.28) | - | (172,390.28) | - | (172,390.28) | - | (172,390.28) | - | (172,390.28) | - | (172,390.28) | - | - | (1,034,341.69) |
| **Total Other Expenses** | (184,890.28) | (15,500.00) | (199,890.28) | (27,500.00) | (199,890.28) | (27,500.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (55,000.00) | (1,557,341.69) |
| **Professional Fees** | | | | | | | | | | | | | | |
| CRO Fees | - | - | - | - | - | - | (52,992.00) | - | (35,328.00) | - | - | - | - | (88,320.00) |
| Financial Advisor Fee | - | - | - | - | - | - | (57,876.00) | - | (40,352.00) | - | - | - | - | (98,228.00) |
| Shannon & Lee LLP | - | - | - | - | - | - | (40,000.00) | - | (60,000.00) | - | - | - | - | (100,000.00) |
| Ray Battaglia | - | - | - | - | - | - | (24,000.00) | - | (24,000.00) | - | - | - | - | (48,000.00) |
| **Total Professional Fees** | - | - | - | - | - | - | (174,868.00) | - | (159,680.00) | - | - | - | - | (334,548.00) |
| **Total Cash Flow** | $ (529,176.72) | $ 101,269.75 | $ (87,237.70) | $ 320,906.27 | $ (544,176.72) | $ 339,269.75 | $ (289,605.70) | $ 793,406.77 | $ (731,356.72) | $ 313,240.31 | $ (97,225.73) | $ 774,424.24 | $ 76,635.11 | $ 440,373.41 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 3

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of this interim order (this "Order") pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court, having considered the Motion, and having held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing"), and having considered the evidence presented or proffered and the statements and representations of the parties on the record at the Interim Hearing; and all objections, if any, to the entry of this Interim Order having been resolved by agreement or order of the Court or overruled; and after due deliberation and consideration and sufficient cause appearing therefor;

1.  The Chapter 11 Case. On July 29, 2022 (the "Petition Date") the Debtor commenced the above captioned case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (this "Court").

2.  Debtor-in-Possession. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to Section 1182(2) of the Bankruptcy Code. To date, no trustee or examiner

has been appointed in this Case. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

3. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and the Local Rules of this Court (the "<u>Local Rules</u>").

4. <u>Committee Formation</u>. To date, no official committee (a "<u>Committee</u>") of unsecured creditors, equity interest holders, or other parties in interest has been appointed in the Case.

5. <u>Notice</u>. On July 29, 2022, the Debtor served copies of the Motion and notice of the Interim Hearing to all creditors and parties in interest entitled to such notice in compliance with Bankruptcy Rules 2002, 4001, 9014, and the Local Rules, including: (i) the Office of the United States Trustee for this District, (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtor's estate, (iii) PQPR Holdings Limited, LLC Trust ("<u>PQPR</u>"), and (vi) any other secured parties of record. Under the circumstances, such notice of the Interim Hearing and the emergency relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rule 4001 and the Local Rules, and no other or further notice of the Interim Hearing or the relief granted in this Interim Order is necessary or required.

6. <u>Immediate Need for Use of Cash Collateral</u>. The Debtor asserts that an immediate and critical need exists for the Debtor to use the alleged cash collateral[1] of PQPR as set forth in the budget defined below (the "<u>Cash Collateral</u>") in order to continue the operation of its business. Without such use of Cash Collateral, the Debtor asserts that it will not be able to pay post-petition direct operating expenses and obtain goods and services needed to carry on its business in a manner that will avoid irreparable harm to the Debtor's estate. The Debtor further asserts that its ability to use Cash Collateral is necessary to preserve and maintain the going concern value of the Debtor's estate.

---

[1] As defined at 11 U.S.C. § 363(a).

7.    Conditional Consent to Use of Cash Collateral. The Debtor seeks authorization to use Cash Collateral to pay the Debtor's ordinary and necessary operating expenses set forth in the budget attached to this Order as Exhibit A (the "Budget") for the period (the "Interim Period") from the Petition Date through and including August 26, 2022 (the "Termination Date"). The lender has agreed to the Debtor's use of Cash Collateral during the Interim Period exclusively in accordance with the terms, conditions, and limitations set forth in this Order and the Budget.

8.    Good Cause/Fair and Reasonable Terms. The Debtor asserts that good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the business and operations of the Debtor and permit the Debtor to maintain the going concern value of its business. The use of Cash Collateral authorized hereunder is necessary, essential, and appropriate and is in the best interest of, and will benefit, the Debtor, its creditors, and the Debtor's bankruptcy estate as it will, among other things, provide the Debtor with the necessary liquidity to (i) avoid immediate and irreparable harm to the Debtor and its bankruptcy estate; and (ii) preserve and maximize the value of the Debtor's business and assets. The terms and conditions of the use of Cash Collateral and the security interests, liens, rights, and priorities granted to the lenders hereunder are fair and appropriate under the circumstances.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.    Motion Granted. The Motion is hereby granted on an interim basis as set forth herein.

2.    Interim Order. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.    DIP Account. The Debtor shall maintain debtor in possession ("DIP") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "DIP Account"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor

shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.  <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral to pay the items set forth in the Budget, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.  <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. Payments to any insider during the Interim Period shall not exceed $20,000 in the aggregate.

6.  <u>Payment to PQPR for Inventory Purchase</u>. Notwithstanding the limitation on payments to insiders set forth in the preceding paragraph, the Debtor is authorized to use Cash Collateral to pay PQPR $250,000 as provided in the Budget for "Repay PQPR Inventory" (the "<u>PQPR Payment</u>"). The PQPR Payment shall not be used to pay down the PQPR Notes (as defined in the Motion). Creditors and parties in interest shall have thirty (30) days from the date a notice is filed on the docket that the PQPR Payment has been issued to object to the appropriateness of that payment and file pleadings with the Court seeking to clawback the PQPR Payment.

7.  <u>Further Authorization</u>. The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.  <u>Taxes</u>. Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall

remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9. <u>Adequate Protection – Replacement Liens</u>.      As adequate protection for any diminution in value of each of the Pre-Petition Lender's interest in the Debtor's collateral, if any, including Cash Collateral, resulting from the imposition of the automatic stay with respect to the Collateral and/or the Debtor's use, sale or lease of the Collateral during the Case (the "<u>Diminution in Value</u>"), the Pre-Petition Lender is hereby granted, effective as of the Petition Date, valid, binding, enforceable, and automatically perfected liens (the "<u>Replacement Liens</u>") in all currently owned or hereafter acquired property and assets of the Debtor, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising (excluding avoidance or other causes of action arising under chapter 5 of the Bankruptcy Code), and all proceeds and products of the foregoing (collectively, the "<u>Adequate Protection Collateral</u>") to the same extent as existed on the Petition Date. The Replacement Liens granted pursuant to this Order shall be subject to the Carve Out.

10. <u>Carve Out</u>. The Replacement Liens and Adequate Protection Priority Claim granted herein shall be subject to (a) unpaid fees payable to the Clerk of the Bankruptcy Court or the United States Trustee; (b) subject to the Budget, court-approved administrative expense claims of estate professionals, employed pursuant to order of this Court (collectively, "<u>Estate Professionals</u>"), for incurred but unpaid fees, expenses and other costs; fees and expenses of the appointed Subchapter V Trustee (all such carve-out amounts referenced above, collectively, the "<u>Carve Out</u>").

11. <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

12. <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, the Subchapter V Trustee, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

13. <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on August 24, 2022, at 10:00 a.m. Central time.

Signed: August 05, 2022

Christopher Lopez
United States Bankruptcy Judge

# Forecasted Interim Cash Collateral Budget
### Between July 29, 2022 and August 26, 2022

| Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 | 08/20/2022-08/26/2022 |
|---|---|---|---|---|
| Week Number | 1 | 2 | 3 | 4 |

## Income
| | | | | |
|---|---|---|---|---|
| Product Sales | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 |
| Advertising | - | - | - | 480,166.46 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 |
| **Total Income** | **598,630.26** | **598,630.26** | **598,630.26** | **1,078,796.72** |

## Selling & Product Costs
| | | | | |
|---|---|---|---|---|
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) |
| Repay PQPR Inventory | - | (250,000.00) | - | - |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) |
| eCommerce Store Maintenance | (27,270.00) | - | - | - |
| Texas Sales Tax | (5,337.87) | - | - | - |
| **Total Cost of Goods Sold** | **(262,569.67)** | **(479,961.80)** | **(229,961.80)** | **(229,961.80)** |

## Operating Expenses
### Advertising & Promotion
| | | | | |
|---|---|---|---|---|
| Advertising & Promotion | (3,041.98) | - | - | - |
| Print Media | (3,000.00) | - | - | - |
| Radio Show Advertising | (11,500.00) | - | - | - |
| **Total Advertising & Promotion** | **(17,541.98)** | **-** | **-** | **-** |

### Computer/IT/IP Expense
| | | | | |
|---|---|---|---|---|
| Internet & TV services | (2,082.90) | - | (1,608.39) | - |
| Software License Fees | (140.80) | - | - | - |
| Server Hosting Service | (28,595.13) | - | - | - |
| CDN Video Cloud Storage | (55,728.00) | - | - | - |
| Satellite Service | (137,282.93) | - | - | - |
| Imaging License Fee | (9,201.25) | - | - | - |
| Software & Apps | (5,000.00) | - | - | - |
| Website Hosting | - | - | (266.50) | - |
| **Total Computer/IT/IP Expense** | **(238,031.01)** | **-** | **(1,874.89)** | **-** |
| Insurance | (2,166.50) | - | - | - |

### Office & Administrative Expense
| | | | | |
|---|---|---|---|---|
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) |
| Equipment Rental | (1,989.90) | - | - | - |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) |
| Business Meals | (280.46) | (280.46) | (280.46) | (280.46) |
| **Total Office & Administrative Expense** | **(2,318.36)** | **(328.46)** | **(328.46)** | **(328.46)** |
| | | | | |
| Outsourced Services | - | - | - | - |
| Consulting Services | - | - | - | - |

### Utilities
| | | | | |
|---|---|---|---|---|
| Utility Deposit | (10,000.00) | - | - | - |
| Electricity | - | - | (5,107.63) | - |
| HVAC | (256.19) | - | - | - |
| CAM Charges | (20,364.16) | - | - | - |
| Water & Sewer | (1,708.55) | - | - | - |
| Gas Service | (132.09) | - | - | - |
| Pest Control | (244.65) | - | - | - |
| Waste Management | (351.81) | - | - | - |
| **Total Utilities** | **(33,057.46)** | **-** | **(5,107.63)** | **-** |

### Occupancy
| | | | | |
|---|---|---|---|---|
| Rent | (33,408.51) | - | - | - |
| Office Security | (31,111.90) | - | - | - |
| Repair & Maintenance - Building | (1,777.19) | - | - | - |
| Janitorial | (5,983.33) | - | - | - |



EXHIBIT

006397

A

| | Period+A5:E83 07/30/2022-<br>08/05/2022 | 08/06/2022-<br>08/12/2022 | 08/13/2022-<br>08/19/2022 | 08/20/2022-<br>08/26/2022 |
|---|---|---|---|---|
| **Total Occupancy** | **(72,280.93)** | - | - | - |
| Supplies | (1,258.02) | - | - | - |
| Telephone | (18,337.88) | - | - | |
| **Personnel Expenses** | | | | |
| Salaries & Wages - Base | (168,467.44) | - | (168,467.44) | - |
| Payroll Tax | (13,087.76) | - | (13,087.76) | - |
| Alex Jones Salary | (10,000.00) | - | (10,000.00) | - |
| **Total Personnel Expenses** | **(191,555.20)** | **-** | **(191,555.20)** | **-** |
| **Travel** | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) |
| Vehicle Leases | - | (1,470.56) | - | - |
| **Total Travel Expenses** | **(99.69)** | **(1,570.25)** | **(99.69)** | **(99.69)** |
| **Total Operating Expenses** | **(576,647.03)** | **(1,898.71)** | **(198,965.88)** | **(428.15)** |
| ***Non-Operating Expenses*** | | | | |
| Payment on PQPR Note | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) |
| AMEX Payment | - | - | - | - |
| **Total Other Expenses** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** |
| **Professional Fees** | | | | |
| CRO Fees | - | - | - | - |
| Financial Adviosr Fee | - | - | - | - |
| Shannon & Lee LLP | - | - | - | - |
| Ray Battaglia | - | - | - | - |
| **Total Professional Fees** | **-** | **-** | **-** | **-** |
| **Total Cash Flow** | **$ (245,586.44)** | **$ 111,769.75** | **$ 164,702.59** | **$ 843,406.77** |

006398

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 4

United States Bankruptcy Court
Southern District of Texas

**ENTERED**
August 12, 2022
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

___

<u>**ORDER MODIFYING INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH**</u>
<u>**COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION**</u>

On August 11, 2022, the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>" or "<u>FSS</u>") in the above-captioned chapter 11 case (the "<u>Case</u>"), filed its *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral* after due deliberation and consideration and sufficient cause appearing therefor;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.  <u>Motion Granted</u>. The Motion is hereby granted on an interim basis as set forth herein.

2.  <u>Interim Order</u>. The Interim Order shall be modified as follows:

The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the Motion, from the daily settlement contemporaneously with the distributions to FSS and PQPR

3.  <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales. A copy of the report shall be forwarded to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Connecticut and Texas plaintiffs.

4.  The remaining terms, findings and provisions of the Interim Order are not amended or modified and remain in effect.

Signed: August 12, 2022

Christopher Lopez
United States Bankruptcy Judge

006400

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 5

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## SECOND INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). This order is the second interim order ("Second Interim Order"), negotiated between the Debtor and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral. The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.     Interim Use. The Court approves the interim use of cash collateral as set forth herein.

006402

2. <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3. <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4. <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Second Interim Order (the "<u>Interim Period</u>") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5. <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $20,000.

6. <u>Payment to PQPR for Inventory Purchase</u>. Notwithstanding the limitation on payments to insiders set forth in the preceding paragraph, the Debtor is authorized to use Cash Collateral to pay PQPR up to $750,000 as provided in the Budget for "Repay PQPR Inventory" (each payment comprising a portion of the $750,000, a "<u>PQPR Payment</u>"). Creditors and parties in interest shall have thirty (30) days from the date

they receive notice that a PQPR Payment was issued to object to the appropriateness of that payment and file pleadings with the Court seeking to clawback the PQPR Payment. The Debtor shall provide notice of a PQPR Payment to creditors and parties in interest on the same day the payment is issued.

7.    <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.    <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.    <u>Adequate Protection – Replacement Liens</u>.    The adequate protection and related carve outset forth in the First Interim Order are incorporated in the Second Interim Order.

10.    <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.    <u>Credit Card Processing</u>. The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.

12.    <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the

U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13.    Reservation of Rights. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14.    Discovery. The Tort Plaintiffs issued written discovery to the Debtor and PQPR relating to the use of cash collateral on a final basis. PQPR and the Debtor will provide written discovery responses and produce responsive documents to the Tort Plaintiffs no later than August 30. If PQPR and the Debtor have objections to discovery, it will be their obligation file written objections to discovery before August 30, 2022. PQPR and the Debtor will make a good faith effort to begin producing responsive documents on a rolling basis as soon as possible, but not later than August 29th, 2022. The Tort Plaintiffs will provide deposition topics no later than August 22, which may be subject to amendment once document production is reviewed. The Debtor shall present a corporate representative for deposition on September 6, 2022. PQPR shall present a corporate representative for deposition on September 8. PQPR, the Debtor, and the Tort Plaintiffs agree that any discovery dispute may be heard on an emergency basis.

15.    Final Cash Collateral Hearing: A final hearing on the Motion shall be held before this Court on September 13, 2022, at 1:00 p.m. Central time.

Signed:  August 24, 2022

Christopher Lopez
United States Bankruptcy Judge

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 4 - Week 7)**

**Between August 20, 2022 and September 16, 2022**

| | Period 08/20/2022-08/26/2022 | 08/27/2022-09/02/2022 | 09/03/2022-09/09/2022 | 09/10/2022-09/16/2022 | Total |
|---|---|---|---|---|---|
| Week Number | 4 | 5 | 6 | 7 | |
| **Income** | | | | | |
| Product Sales | $ 900,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 3,900,000.00 |
| Advertising | $ 480,166.46 | $ - | $ - | $ - | $ 480,166.46 |
| Donations | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 12,564.99 |
| **Total Income** | $ 1,383,307.71 | $ 1,003,141.25 | $ 1,003,141.25 | $ 1,003,141.25 | $ 4,392,731.45 |
| **Selling & Product Costs** | | | | | |
| Inventory Purchase | $ (76,155.17) | $ (76,155.17) | $ (225,294.19) | $ (225,294.19) | $ (602,898.72) |
| Repay PQPR Inventory | $ (250,000.00) | | $ (500,000.00) | | $ (750,000.00) |
| Merchant Account Fees | $ (44,100.00) | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (191,100.00) |
| Shipping cost for drop ship orders | $ (11,957.62) | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (51,816.36) |
| Fulfillment Services | $ (219,512.20) | $ (243,902.44) | $ (243,902.44) | $ (243,902.44) | $ (951,219.51) |
| Processor Fees | $ (36,000.00) | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (156,000.00) |
| eCommerce Store Maintenance | $ - | $ (27,270.00) | $ - | $ - | $ (27,270.00) |
| Texas Sales Tax | $ - | $ (5,337.87) | $ - | $ - | $ (5,337.87) |
| **Total Cost of Goods Sold** | $ (637,724.99) | $ (454,951.73) | $ (1,071,482.87) | $ (571,482.87) | $ (2,735,642.47) |
| **Operating Expenses** | | | | | |
| **Advertising & Promotion** | | | | | |
| Advertising & Promotion | $ - | $ (3,041.98) | $ - | $ - | $ (3,041.98) |
| Print Media | $ - | $ (3,000.00) | $ - | $ - | $ (3,000.00) |
| Radio Show Advertising | $ - | $ (11,500.00) | $ - | $ - | $ (11,500.00) |
| **Total Advertising & Promotion** | $ - | $ (17,541.98) | $ - | $ - | $ (17,541.98) |
| **Computer/IT/IP Expense** | | | | | |
| Internet & TV services | $ - | $ (2,082.90) | $ - | $ (1,608.39) | $ (3,691.30) |
| Software License Fees | $ - | $ (140.80) | $ - | $ - | $ (140.80) |
| Server Hosting Service | $ - | $ (28,595.13) | $ - | $ - | $ (28,595.13) |
| CDN Video Cloud Storage | $ - | $ (55,728.00) | $ - | $ - | $ (55,728.00) |
| Satellite Service | $ - | $ (137,282.93) | $ - | $ - | $ (137,282.93) |
| Imaging License Fee | $ - | $ (9,201.25) | $ - | $ - | $ (9,201.25) |
| Software & Apps | $ - | $ (5,000.00) | $ - | $ - | $ (5,000.00) |
| Website Hosting | $ - | $ - | $ - | $ (266.50) | $ (266.50) |
| **Total Computer/IT/IP Expense** | $ - | $ (238,031.01) | $ - | $ (1,874.89) | $ (239,905.91) |
| Insurance | $ - | $ (2,166.50) | $ - | $ - | $ (2,166.50) |
| **Office & Administrative Expense** | | | | | $ - |
| Bank Fees & Service Charges | $ (69.38) | $ (77.08) | $ (77.08) | $ (77.08) | $ (300.63) |
| Equipment Rental | $ - | $ (1,989.90) | $ - | $ - | $ (1,989.90) |
| Office Supplies/Printing/Copy | $ (3.17) | $ (3.53) | $ (3.53) | $ (3.53) | $ (13.76) |
| Business Meals | $ (423.88) | $ (470.97) | $ (470.97) | $ (470.97) | $ (1,836.79) |
| **Total Office & Administrative Expense** | $ (496.43) | $ (2,541.48) | $ (551.58) | $ (551.58) | $ (4,141.08) |
| Outsourced Services | $ - | $ - | $ - | $ - | |
| Consulting Services | $ - | $ - | $ - | $ - | |
| **Utilities** | | | | | |
| Electricity | $ - | $ - | $ - | $ (5,107.63) | $ (5,107.63) |
| HVAC | $ - | $ (256.19) | $ - | $ - | $ (256.19) |
| CAM Charges | $ - | $ (20,364.16) | $ - | $ - | $ (20,364.16) |
| Water & Sewer | $ - | $ (1,708.55) | $ - | $ - | $ (1,708.55) |
| Gas Service | $ - | $ (132.09) | $ - | $ - | $ (132.09) |
| Pest Control | $ - | $ (244.65) | $ - | $ - | $ (244.65) |
| Waste Management | $ - | $ (351.81) | $ - | $ - | $ (351.81) |
| **Total Utilities** | $ - | $ (23,057.46) | $ - | $ (5,107.63) | $ (28,165.09) |
| **Occupancy** | | | | | |
| Rent | $ - | $ (33,408.51) | $ - | $ - | $ (33,408.51) |
| Office Security | $ - | $ (31,111.90) | $ - | $ - | $ (31,111.90) |
| Repair & Maintenance - Building | $ - | $ (1,777.19) | $ - | $ - | $ (1,777.19) |
| Janitorial | $ - | $ (5,983.33) | $ - | $ - | $ (5,983.33) |
| **Total Occupancy** | $ - | $ (72,280.93) | $ - | $ - | $ (72,280.93) |
| Supplies | $ - | $ (1,258.02) | $ - | $ - | $ (1,258.02) |
| Telephone | | $ (18,337.88) | $ - | $ - | $ (18,337.88) |
| **Personnel Expenses** | | | | | $ - |
| Salaries & Wages - Base | $ - | $ (168,467.44) | $ - | $ (168,467.44) | $ (336,934.88) |
| Payroll Tax | $ - | $ (13,287.76) | $ - | $ (13,287.76) | $ (26,575.52) |
| Alex Jones Salary | $ - | $ (20,000.00) | $ - | $ (20,000.00) | $ (40,000.00) |

EXHIBIT

A

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 4 - Week 7)**

**Between August 20, 2022 and September 16, 2022**

| Period | 08/20/2022-08/26/2022 | 08/27/2022-09/02/2022 | 09/03/2022-09/09/2022 | 09/10/2022-09/16/2022 | Total |
|---|---|---|---|---|---|
| **Total Personnel Expenses** | $ - | $ (201,755.20) | $ - | $ (201,755.20) | $ (403,510.40) |
| **Travel** | | | | | $ - |
| Mileage/Parking/Tolls | $ (150.67) | $ (167.41) | $ (167.41) | $ (167.41) | $ (652.90) |
| Vehicle Leases | $ - | $ - | $ (1,470.56) | $ - | $ (1,470.56) |
| **Total Travel Expenses** | $ (150.67) | $ (167.41) | $ (1,637.97) | $ (167.41) | $ (2,123.46) |
| **Total Operating Expenses** | $ (647.10) | $ (577,137.87) | $ (2,189.56) | $ (209,456.72) | $ (789,431.24) |
| ***Non-Operating Expenses*** | | | | | $ - |
| Payment on PQPR Note | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| AMEX Payment | $ - | $ - | $ - | $ - | $ - |
| **Total Other Expenses** | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| **Professional Fees** | | | | | |
| Subchapter v Trustee retainer | | | | $ (25,000.00) | $ (25,000.00) |
| Fulfillment Expert | $ (12,500.00) | $ - | $ - | $ - | $ (12,500.00) |
| Witness expenses and cost | | | | | |
| Pattis & Smith | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| Reynal Law Firm, PC | $ - | $ - | $ (50,000.00) | $ - | $ (50,000.00) |
| SALLC Fees | $ - | $ - | $ - | | $ - |
| Shannon & Lee LLP | $ - | $ - | $ - | | $ - |
| Ray Battaglia | $ - | $ - | $ - | | $ - |
| **Total Professional Fees** | $ (12,500.00) | $ - | $ (150,000.00) | $ (25,000.00) | $ (187,500.00) |
| **Total Cash Flow** | $ 727,435.62 | $ (33,948.36) | $ (225,531.18) | $ 192,201.66 | $ 660,157.73 |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

IN RE:                                  §                    Case No. 22-60043
                                        §
FREE SPEECH SYSTEMS, LLC,               §                    Chapter 11 (Subchapter V)
                                        §
          Debtor                        §

# EXHIBIT 6

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 13, 2022

Nathan Ochsner, Clerk

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## THIRD INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). On August 24, 2022, the Court entered a *Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Second Interim Order") [Dkt. No. 98]. This order is the third interim order ("Third Interim Order"), negotiated between the Debtor and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral. The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.     Interim Use. The Court approves the interim use of cash collateral as set forth herein.

2.     <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.     <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>").  All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.     <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Third Interim Order (the "<u>Interim Period</u>") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.     <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, either directly or indirectly, as that term is defined in section 101(31) of the Bankruptcy Code.  Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $20,000.

6.     <u>Payment to PQPR for Inventory Purchase</u>. The (i) rights of Creditors and parties in interest to object to the appropriateness of post-petition payments to PQPR for Inventory Purchases and file pleadings with the Court seeking to clawback the PQPR Payment and (ii) the obligation of the Debtor to provide notice

of a PQPR Payment to creditors and parties in interest as set forth in the First and Second Interim Cash Collateral Orders are fully preserved by this Order.

7.  <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.  <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.  <u>Adequate Protection – Replacement Liens</u>.  The adequate protection and related carve out set forth in the First and Second Interim Orders are incorporated in the Third Interim Order.

10.  <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.  <u>Credit Card Processing</u>. The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.

12.  <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13.     <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14.     <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on October 12, 2022, at 10:00 a.m. Central time.

Signed:  September 13, 2022

Christopher Lopez
United States Bankruptcy Judge

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 8- Week 11)**

**Between September 17, 2022 and October 14, 2022**

| | Period | 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | Total |
|---|---|---|---|---|---|---|
| | Week Number | 8 | 9 | 10 | 11 | |
| **Income** | | | | | | |
| Product Sales | | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 4,000,000.00 |
| Advertising | | $ 100,000.00 | $ 100,000.00 | $ 100,000.00 | $ 100,000.00 | $ 400,000.00 |
| Donations | | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 12,564.99 |
| **Total Income** | | $ 1,103,141.25 | $ 1,103,141.25 | $ 1,103,141.25 | $ 1,103,141.25 | $ 4,412,564.99 |
| **Selling & Product Costs** | | | | | | |
| Inventory Purchase | | $ (225,294.19) | $ (225,294.19) | $ (225,294.19) | $ (225,294.19) | $ (901,176.75) |
| Repay PQPR Inventory | | $ - | $ - | $ - | $ - | $ - |
| Merchant Account Fees | | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (196,000.00) |
| Shipping cost for drop ship orders | | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (53,144.99) |
| Fulfillment Services | | $ (293,902.44) | $ (293,902.44) | $ (293,902.44) | $ (293,902.44) | $ (1,175,609.76) |
| Processor Fees | | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (160,000.00) |
| eCommerce Store Maintenance | | $ - | $ (27,270.00) | $ - | $ - | $ (27,270.00) |
| Texas Sales Tax | | $ - | $ (5,337.87) | $ - | $ - | $ (5,337.87) |
| **Total Cost of Goods Sold** | | $ (621,482.87) | $ (654,090.74) | $ (621,482.87) | $ (621,482.87) | $ (2,518,539.36) |
| **Operating Expenses** | | | | | | |
| **Advertising & Promotion** | | | | | | |
| Advertising & Promotion | | $ - | $ (3,041.98) | $ - | $ - | $ (3,041.98) |
| Print Media | | $ - | $ (3,000.00) | $ - | $ - | $ (3,000.00) |
| Radio Show Advertising | | $ - | $ (11,500.00) | $ - | $ - | $ (11,500.00) |
| **Total Advertising & Promotion** | | $ - | $ (17,541.98) | $ - | $ - | $ (17,541.98) |
| **Computer/IT/IP Expense** | | | | | | |
| Internet & TV services | | $ - | $ (2,082.90) | $ - | $ (1,608.39) | $ (3,691.30) |
| Software License Fees | | $ - | $ (140.80) | $ - | $ - | $ (140.80) |
| Server Hosting Service | | $ - | $ (28,595.13) | $ - | $ - | $ (28,595.13) |
| CDN Video Cloud Storage | | $ - | $ (55,728.00) | $ - | $ - | $ (55,728.00) |
| Satellite Service | | $ - | $ (137,282.93) | $ - | $ - | $ (137,282.93) |
| Imaging License Fee | | $ - | $ (9,201.25) | $ - | $ - | $ (9,201.25) |
| Software & Apps | | $ - | $ (5,000.00) | $ - | $ - | $ (5,000.00) |
| 62410 Contract Broadcase Services | | $ (11,200.00) | | | | $ (11,200.00) |
| 62420 Contract Radio Show Production | | $ (25,000.00) | | | | $ (25,000.00) |
| 62430 Contract Video Production | | $ (10,000.00) | | | | $ (10,000.00) |
| 62470 Free Lance Contributors | | $ (3,500.00) | | | | $ (3,500.00) |
| Website Hosting | | $ - | $ - | $ - | $ - | |
| **Total Computer/IT/IP Expense** | | $ (49,700.00) | $ (238,031.01) | $ - | $ (1,608.39) | $ (289,339.41) |
| Insurance | | $ - | $ (2,166.50) | $ - | | $ (2,166.50) |
| **Office & Administrative Expense** | | | | | | |
| Bank Fees & Service Charges | | $ (77.08) | $ (77.08) | $ (77.08) | $ (77.08) | $ (308.34) |
| Equipment Rental | | $ - | $ (1,989.90) | $ - | $ - | $ (1,989.90) |
| Office Supplies/Printing/Copy | | $ (3.53) | $ (3.53) | $ (3.53) | $ (3.53) | $ (14.11) |
| Business Meals | | $ (470.97) | $ (470.97) | $ (470.97) | $ (470.97) | $ (1,883.89) |
| **Total Office & Administrative Expense** | | $ (551.58) | $ (2,541.48) | $ (551.58) | $ (551.58) | $ (4,196.24) |
| **Utilities** | | | | | | |
| Electricity | | $ - | $ - | $ - | $ (5,107.63) | $ (5,107.63) |
| HVAC | | $ - | $ (256.19) | $ - | $ - | $ (256.19) |
| CAM Charges | | $ - | $ (20,364.16) | $ - | $ - | $ (20,364.16) |
| Water & Sewer | | $ - | $ (1,708.55) | $ - | $ - | $ (1,708.55) |

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 8- Week 11)**

**Between September 17, 2022 and October 14, 2022**

| | Period | 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | Total |
|---|---|---|---|---|---|---|
| Gas Service | | $ - | $ (132.09) | $ - | $ - | $ (132.09) |
| Pest Control | | $ - | $ (244.65) | $ - | $ - | $ (244.65) |
| Waste Management | | $ - | $ (351.81) | $ - | $ - | $ (351.81) |
| **Total Utilities** | | **$ -** | **$ (23,057.46)** | **$ -** | **$ (5,107.63)** | **$ (28,165.09)** |
| **Occupancy** | | | | | | |
| Rent | | $ - | $ (33,408.51) | $ - | $ - | $ (33,408.51) |
| Office Security | | $ - | $ (31,111.90) | $ - | $ - | $ (31,111.90) |
| Repair & Maintenance - Building | | $ - | $ (1,777.19) | $ - | $ - | $ (1,777.19) |
| Janitorial | | $ - | $ (5,983.33) | $ - | $ - | $ (5,983.33) |
| **Total Occupancy** | | **$ -** | **$ (72,280.93)** | **$ -** | **$ -** | **$ (72,280.93)** |
| Supplies | | $ - | $ (1,258.02) | $ - | $ - | $ (1,258.02) |
| Telephone | | $ - | $ (18,337.88) | $ - | $ - | $ (18,337.88) |
| **Personnel Expenses** | | | | | $ | - |
| Salaries & Wages - Base | | $ - | $ (168,467.44) | $ - | $ (168,467.44) | $ (336,934.88) |
| Payroll Tax | | $ - | $ (13,287.76) | $ - | $ (13,287.76) | $ (26,575.52) |
| Alex Jones Salary | | $ - | $ (20,000.00) | $ - | $ (20,000.00) | $ (40,000.00) |
| **Total Personnel Expenses** | | **$ -** | **$ (201,755.20)** | **$ -** | **$ (201,755.20)** | **$ (403,510.40)** |
| **Travel** | | | | | | |
| Mileage/Parking/Tolls | | $ (167.41) | $ (167.41) | $ (167.41) | $ (167.41) | $ (669.64) |
| Vehicle Leases | | $ - | $ - | $ - | $ (1,470.56) | $ (1,470.56) |
| **Total Travel Expenses** | | **$ (167.41)** | **$ (167.41)** | **$ (167.41)** | **$ (1,637.97)** | **$ (2,140.20)** |
| **Total Operating Expenses** | | **$ (50,419.00)** | **$ (577,137.87)** | **$ (719.00)** | **$ (210,660.78)** | **$ (838,936.64)** |
| **Non-Operating Expenses** | | | | | | |
| Payment on PQPR Note | | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| AMEX Payment | | $ - | $ - | $ - | $ - | |
| **Total Other Expenses** | | **$ (5,000.00)** | **$ (5,000.00)** | **$ (5,000.00)** | **$ (5,000.00)** | **$ (20,000.00)** |
| **Professional Fees** | | | | | | |
| Subchapter v Trustee retainer | | | | | | |
| Fulfillment Expert | | $ (22,487.56) | $ - | $ - | $ - | $ (22,487.56) |
| Economic Loss Expert | | | | | | $ - |
| Alex Jones at Trial Cost | | $ (80,920.00) | | | | $ (80,920.00) |
| Witness expenses and trial costs | | $ (34,048.00) | | | | $ (34,048.00) |
| Brittany Paz | | | | | | $ - |
| Pattis & Smith | | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| Reynal Law Firm, PC | | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| SALLC Fees | | | $ - | $ - | $ (188,018.31) | $ (188,018.31) |
| Shannon & Lee LLP | | | $ - | $ - | $ (207,348.36) | $ (207,348.36) |
| Ray Battaglia | | | $ - | $ - | $ (47,316.80) | $ (47,316.80) |
| **Total Professional Fees** | | **$ (137,455.56)** | **$ -** | **$ (200,000.00)** | **$ (442,683.47)** | **$ (780,139.03)** |
| **Total Cash Flow** | | **$ 288,783.82** | **$ (133,087.37)** | **$ 275,939.38** | **$ (176,685.88)** | **$ 254,949.95** |



EXHIBIT

A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 7

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## FOURTH INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). On August 24, 2022, the Court entered a *Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Second Interim Order") [Dkt. No. 98]. On September 13, 2022, the Court entered a *Third Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Third Interim Order") [Dkt. No. 151]. This order is the fourth interim order ("Fourth Interim Order"), negotiated between the Debtor, PQPR and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral. The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

006416

1. <u>Interim Use</u>. The Court approves the interim use of cash collateral as set forth herein.

2. <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3. <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("DIP") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4. <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Fourth Interim Order (the "<u>Interim Period</u>") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5. <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $10,000.

6. <u>Payment to PQPR for Inventory Purchase</u>. The (i) rights of Creditors and parties in interest to object to the appropriateness of post-petition payments to PQPR for Inventory Purchases and file pleadings with the Court seeking to clawback the PQPR Payment and (ii) the obligation of the Debtor to provide notice

of a PQPR Payment to creditors and parties in interest as set forth in the First and Second Interim Cash Collateral Orders are fully preserved by this Order.

7.     <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.     <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.     <u>Adequate Protection – Replacement Liens</u>.  The adequate protection and related carve out set forth in the First Second and Third Interim Orders are incorporated in the Fourth Interim Order.

10.     <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.     <u>Credit Card Processing</u>. The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.

12.     <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13. _Reservation of Rights_. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14. _Final Cash Collateral Hearing_: A final hearing on the Motion shall be held before this Court on October 26, 2022, at 1:00 p.m. Central time.

Signed: October 13, 2022

Christopher Lopez
United States Bankruptcy Judge

| | **NEW 2 WEEK BUDGET** | | |
| | 10/15/2022-<br>10/21/2022 | 10/22/2022-<br>10/28/2022 | |
| Week Number | 12 | 13 | *Total* |
| **Income** | | | |
| Product Sales | $ 595,489.01 | $ 595,489.01 | $ 1,190,978.03 |
| Advertising | - | - | - |
| Donations | 3,141.25 | 25,000.00 | 28,141.25 |
| **Total Income** | **598,630.26** | **620,489.01** | **1,219,119.27** |
| | | | |
| **Selling & Product Costs** | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (152,310.35) |
| Repay PQPR Inventory | - | - | - |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (53,594.01) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (15,823.63) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (190,556.48) |
| Processor Fees | (23,819.56) | (23,819.56) | (47,639.12) |
| eCommerce Store Maintenance | (25,000.00) | - | (25,000.00) |
| Texas Sales Tax | - | - | - |
| **Total Cost of Goods Sold** | **(254,961.80)** | **(229,961.80)** | **(484,923.59)** |
| | | | |
| **Operating Expenses** | | | |
| **Advertising & Promotion** | | | |
| Advertising & Promotion | - | - | - |
| Print Media | - | - | - |
| Radio Show Advertising | - | - | - |
| **Total Advertising & Promotion** | **-** | **-** | **-** |
| | | | |
| **Computer/IT/IP Expense** | | | |
| Internet & TV services | (1,608.39) | - | (1,608.39) |
| Software License Fees | - | - | - |
| Server Hosting Service | - | - | - |
| CDN Video Cloud Storage | - | - | - |
| Satellite Service | - | - | - |
| Imaging License Fee | - | - | - |
| Software & Apps | - | - | - |
| Website Hosting | (266.50) | - | (266.50) |
| **Total Computer/IT/IP Expense** | **(1,874.89)** | **-** | **(1,874.89)** |
| | | | |
| **Office & Administrative Expense** | | | |
| Bank Fees & Service Charges | (45.90) | (45.90) | (91.81) |
| Insurance | - | (5,000.00) | (5,000.00) |
| Equipment Rental | - | | |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (4.20) |
| Business Meals | (400.00) | (400.00) | (800.00) |
| **Total Office & Administrative Expense** | **(448.00)** | **(5,448.00)** | **(5,896.01)** |
| | | | |
| **Utilities** | | | |
| Utility Deposit | | | |
| Electricity | (5,107.63) | - | (5,107.63) |
| HVAC | - | - | - |
| CAM Charges | - | - | - |
| Water & Sewer | - | - | - |
| Gas Service | - | - | - |
| Pest Control | - | - | - |
| Waste Management | - | - | - |
| **Total Utilities** | **(5,107.63)** | **-** | **(5,107.63)** |
| | | | |
| **Occupancy** | | | |
| Rent | - | - | |
| Office Security | (3,975.00) | (3,975.00) | (7,950.00) |
| Repair & Maintenance - Building | - | (2,500.00) | (2,500.00) |
| Supplies | (5,000.00) | (2,500.00) | (7,500.00) |
| Telephone | | | |

EXHIBIT

A

006420

| | | | |
|---|---:|---:|---:|
| Janitorial | - | - | - |
| **Total Occupancy** | **(8,975.00)** | **(8,975.00)** | **(17,950.00)** |
| | | | |
| **Personnel Expenses** | | | |
| Salaries & Wages - Base | (140,000.00) | - | (140,000.00) |
| Payroll Tax | (11,200.00) | - | (11,200.00) |
| 62410 Contract Broadcase Services | | (11,200.00) | (11,200.00) |
| 62420 Contract Radio Show Production | | (25,000.00) | (25,000.00) |
| 62430 Contract Video Production | | (10,000.00) | (10,000.00) |
| 62470 Free Lance Contributors | (3,500.00) | | (3,500.00) |
| Free Lance Contributors | - | - | - |
| Alex Jones Salary | (20,000.00) | - | (20,000.00) |
| **Total Personnel Expenses** | **(174,700.00)** | **(46,200.00)** | **(220,900.00)** |
| | | | |
| **Travel** | | | |
| Mileage/Parking/Tolls | (100.00) | (100.00) | (200.00) |
| Vehicle Leases | - | - | - |
| **Total Travel Expenses** | **(100.00)** | **(100.00)** | **(200.00)** |
| | | | |
| **Total Operating Expenses** | **(191,205.53)** | **(60,723.00)** | **(251,928.53)** |
| | | | |
| ***Non-Operating Expenses*** | | | |
| Payment on PQPR Note | (5,000.00) | (5,000.00) | (10,000.00) |
| **Total Other Expenses** | **(55,000.00)** | **(55,000.00)** | **(110,000.00)** |
| | | | |
| **Professional Fees** | | | |
| CRO Fees | - | (50,000.00) | (50,000.00) |
| Financial Adviosr Fee | - | - | - |
| Shannon & Lee LLP | - | - | - |
| Ray Battaglia | - | (30,000.00) | (30,000.00) |
| **Total Professional Fees** | **-** | **(80,000.00)** | **(80,000.00)** |
| | | | |
| **Total Cash Flow** | **97,462.94** | **194,804.21** | **292,267.15** |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor | § | |

# EXHIBIT 8

006422

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 26, 2022

Nathan Ochsner, Clerk

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
|     **Debtor.** | § | |

## FIFTH INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>" or "<u>FSS</u>") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "<u>Motion</u>"). In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "<u>Bankruptcy Code</u>"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "<u>First Interim Order</u>"). On August 24, 2022, the Court entered a *Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("<u>Second Interim Order</u>") [Dkt. No. 98]. On September 13, 2022, the Court entered a *Third Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("<u>Third Interim Order</u>") [Dkt. No. 151]. On October 13, 2022, the Court entered a *Fourth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("<u>Third Interim Order</u>") [Dkt. No. 238]. This order is the Fifth interim order ("<u>Fifth Interim Order</u>"), negotiated between the Debtor, PQPR and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "<u>Tort Plaintiffs</u>"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final

hearing on the use of cash collateral. The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      Interim Use. The Court approves the interim use of cash collateral as set forth herein.

2.      Interim Order. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.      DIP Account. The Debtor shall maintain debtor in possession ("DIP") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "DIP Account"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.      Terms of Cash Collateral Use. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Fifth Interim Order (the "Interim Period") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.      No Payments to Insiders. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $10,000.

6.      <u>Payment to PQPR for Inventory Purchase</u>. The (i) rights of Creditors and parties in interest to object to the appropriateness of post-petition payments to PQPR for Inventory Purchases and file pleadings with the Court seeking to clawback the PQPR Payment as set forth in the First and Second Interim Cash Collateral Orders are fully preserved by this Order and (ii) the Debtor shall provide notice to creditors and parties in interest upon the upon payment in full of the $500,000 inventory purchase payment to PQPR originally scheduled to be paid in the Second Interim Cash Collateral Order and the time for objections to that payment shall expire 30 days following the date the notice of final payment is filed with the Court.

7.      <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.      <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.      <u>Adequate Protection – Replacement Liens</u>.  The adequate protection and related carve out set forth in the First Second Third and Fourth Interim Orders are incorporated in the Fifth Interim Order.

10.     <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.     <u>Credit Card Processing</u>. The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order*

*Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.

12. <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales. A copy of the report shall be forwarded to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13. <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14. <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on November 21, 2022, at 2:00 p.m. Central time.

Signed: October 26, 2022

Christopher Lopez
United States Bankruptcy Judge

006426

| | 10/29/2022-11/04/2022 | 11/05/2022-11/11/2022 | 11/12/2022-11/18/2022 | 11/19/2022-11/25/2022 | | NOTES |
|---|---|---|---|---|---|---|
| **CURRENT 4 WEEK BUDGET** | | | | | | |
| Week Number | 14 | 15 | 16 | 17 | Total | |
| **Income** | | | | | | |
| Product Sales (Net of 4.5% Merchant Fee) | $ 575,000.00 | $ 575,000.00 | $ 600,000.00 | $ 750,000.00 | $ 2,500,000.00 | Net of 4.5% CC Merchant fees. Includes Shipping Fees and Sales Tax but excludes any PQPR related sales |
| Advertising | - | - | - | - | - | |
| Refund of Chargeback Reserve | 618,000.00 | - | - | - | 618,000.00 | |
| Donations | 50,000.00 | 10,000.00 | 20,000.00 | 15,000.00 | 95,000.00 | |
| **Total Income** | **1,243,000.00** | **585,000.00** | **620,000.00** | **765,000.00** | **3,213,000.00** | |
| **Selling & Product Costs** | | | | | | |
| Inventory Cost | (89,125.00) | (89,125.00) | (93,000.00) | (116,250.00) | (387,500.00) | |
| PQPR Inventory Purchase | (50,000.00) | (50,000.00) | (50,000.00) | (50,000.00) | (200,000.00) | Per 2nd interim cash collateral order ECF 98 |
| Fulfillment Services | (115,000.00) | (115,000.00) | (111,000.00) | (138,750.00) | (479,750.00) | |
| Processor Fees | - | - | - | - | - | Auriam contract was cancelled 10/20, expect there to be a reduced fee in the future |
| eCommerce Store Maintenance | - | - | (12,500.00) | - | (12,500.00) | Final ECDN Audit bills |
| Texas Sales Tax (20% of Sales @ 6.25% | (7,187.50) | (7,187.50) | (7,500.00) | (9,375.00) | (31,250.00) | |
| **Total Cost of Goods Sold** | **(261,312.50)** | **(261,312.50)** | **(274,000.00)** | **(314,375.00)** | **(1,111,000.00)** | |
| **Operating Expenses** | | | | | | |
| **Advertising & Promotion** | | | | | | |
| Print Media | - | - | (3,000.00) | - | (3,000.00) | |
| Radio Show Advertising | (14,760.00) | - | - | - | (14,760.00) | |
| **Total Advertising & Promotion** | **(14,760.00)** | **-** | **(3,000.00)** | **-** | **(17,760.00)** | |
| **Computer/IT/IP Expense** | | | | | | |
| Internet & TV services | (2,500.00) | - | (1,750.00) | - | (4,250.00) | |
| Server Hosting / Cloud Service / Ecomm | (90,000.00) | - | (15,000.00) | - | (105,000.00) | |
| Satellite Service | (140,000.00) | - | - | - | (140,000.00) | |
| Telecommunications | (18,500.00) | - | (2,000.00) | - | (20,500.00) | |
| Image License, Software & Othe | - | - | (10,000.00) | - | (10,000.00) | |
| **Total Computer/IT/IP Expense** | **(251,000.00)** | **-** | **(28,750.00)** | **-** | **(279,750.00)** | |
| **Office & Administrative Expense** | | | | | | |
| Bank Fees & Service Charges | (200.00) | (200.00) | (200.00) | (200.00) | (800.00) | |
| Insurance | - | - | - | (5,000.00) | (5,000.00) | Liability and property, we don't have current Workers Comp policy |
| Rent | (34,858.32) | - | - | - | (34,858.32) | |
| Utilites | (3,100.00) | - | (6,000.00) | - | (9,100.00) | |
| Janitorial | (3,000.00) | - | (2,000.00) | - | (5,000.00) | |
| Office Security | (9,000.00) | (4,000.00) | (4,000.00) | (4,000.00) | (21,000.00) | |
| Repair & Maintenance | - | - | - | (2,500.00) | (2,500.00) | Includes Konica Minolta copier lease |
| Supplies/Printing/Copy | (2,000.00) | (1,000.00) | (5,000.00) | (1,000.00) | (9,000.00) | |
| Business Meals | (400.00) | (400.00) | (400.00) | (400.00) | (1,600.00) | |
| **Total Office & Administrative Expense** | **(52,558.32)** | **(5,600.00)** | **(17,600.00)** | **(13,100.00)** | **(88,858.32)** | |
| **Personnel Expenses** | | | | | | |
| Salaries & Wages & Benefits | (110,000.00) | - | (110,000.00) | - | (220,000.00) | |
| Payroll Tax | (10,400.00) | - | (10,400.00) | 0.09 | (20,799.91) | |
| Contract Employees | (49,450.00) | (4,450.00) | (4,450.00) | (4,450.00) | (62,800.00) | |
| Consulting Services | (2,400.00) | (1,500.00) | (2,000.00) | (1,500.00) | (7,400.00) | HR and Bookeeping Fees |
| Alex Jones Salary | (20,000.00) | - | (20,000.00) | - | (40,000.00) | |
| **Total Personnel Expenses** | **(192,250.00)** | **(5,950.00)** | **(146,850.00)** | **(5,949.91)** | **(350,999.91)** | |
| **Travel** | | | | | | |
| Mileage/Parking/Tolls | (500.00) | (100.00) | (100.00) | (100.00) | (800.00) | |
| Vehicle Leases | - | - | - | (550.00) | (550.00) | |
| **Total Travel Expenses** | **(500.00)** | **(100.00)** | **(100.00)** | **(650.00)** | **(1,350.00)** | |
| **Total Operating Expenses** | **(511,068.32)** | **(11,650.00)** | **(196,300.00)** | **(19,699.91)** | **(738,718.23)** | |
| **Non-Operating Expenses** | | | | | | |
| Payment on PQPR Note | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) | (20,000.00) | |
| **Total Other Expenses** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(20,000.00)** | |
| **Professional Fees** | | | | | | |
| CRO Fees | - | (50,000.00) | - | (50,000.00) | (100,000.00) | |
| Trustee Fees | (15,000.00) | (15,000.00) | (15,000.00) | (15,000.00) | (60,000.00) | |
| Trustee Counsel | (15,000.00) | (15,000.00) | (15,000.00) | (15,000.00) | (60,000.00) | |
| Ray Battaglia | - | - | - | (50,000.00) | (50,000.00) | |
| **Total Professional Fees** | **(30,000.00)** | **(80,000.00)** | **(30,000.00)** | **(130,000.00)** | **(270,000.00)** | |
| **Total Cash Flow** | **435,619.18** | **227,037.50** | **114,700.00** | **295,925.09** | **1,073,281.77** | |



EXHIBIT

A

exhibitsticker.com

006427

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

IN RE:                                        §                    Case No. 22-60043
                                              §
FREE SPEECH SYSTEMS, LLC,                     §                    Chapter 11 (Subchapter V)
                                              §
        Debtor                                §


# EXHIBIT 9

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| ___Debtor.___ | § | |

## SIXTH INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). On August 24, 2022, the Court entered a *Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Second Interim Order") [Dkt. No. 98]. On September 13, 2022, the Court entered a *Third Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Third Interim Order") [Dkt. No. 151]. On October 13, 2022, the Court entered a *Fourth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Fourth Interim Order") [Dkt. No. 238]. On October 26, 2022, the Court entered a *Fifth Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Fifth Interim Order") [Dkt. No. 258]. This order is the Sixth interim order ("Sixth Interim Order"), negotiated between the Debtor, PQPR and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort

006429

Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral. The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      <u>Interim Use</u>. The Court approves the interim use of cash collateral as set forth herein.

2.      <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.      <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.      <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Sixth Interim Order (the "<u>Interim Period</u>") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.      <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $10,000.

6.     <u>Payment to PQPR for Inventory Purchase</u>. The (i) rights of Creditors and parties in interest to object to the appropriateness of post-petition payments to PQPR for Inventory Purchases and file pleadings with the Court seeking to clawback the PQPR Payment as set forth in the First and Second Interim Cash Collateral Orders are fully preserved by this Order and (ii) the Debtor shall provide notice to creditors and parties in interest upon the upon payment in full of the $500,000 inventory purchase payment to PQPR originally scheduled to be paid in the Second Interim Cash Collateral Order and the time for objections to that payment shall expire 30 days following the date the notice of final payment is filed with the Court.

7.     <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.     <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.     <u>Adequate Protection – Replacement Liens</u>.  The adequate protection and related carve out set forth in the First Second Third and Fourth Interim Orders are incorporated in the Sixth Interim Order.

10.    <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.    <u>Credit Card Processing</u>. The Debtor is authorized to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.  Proceeds

received by FSS for sales of PQPR inventory shall be held by FSS in trust pending distribution to PQPR by FSS.

12. <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales. A copy of the report shall be forwarded to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13. <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14. <u>Final Cash Collateral Hearing</u>: A further interim hearing on the Motion shall be held before this Court on December 19, 2022, at 3:00 p.m. Central time.

Signed: November 21, 2022

Christopher Lopez
United States Bankruptcy Judge

006432

Case 22-60043   Document 287   Filed in TXSB on 11/21/22   Page

| | CURRENT 4 WEEK BUDGET | | | | | |
|---|---|---|---|---|---|---|
| Week Number | 11/26/2022-12/02/2022 18 | 12/03/2022-12/09/2022 19 | 12/10/2022-12/16/2022 20 | 12/17/2022-12/23/2022 21 | Total | NOTES |
| **Income** | | | | | | |
| Product Sales (Net of 6.0% Merchant Fee) | $ 950,000.00 | $ 800,000.00 | $ 725,000.00 | $ 475,000.00 | $ 2,950,000.00 | Net of 6.0% CC Merchant fees.  Includes Shipping Fees and Sales Tax but excludes any PQPR related sales |
| Point of Sales Revenue | | | 191,970.00 | 115,182.00 | 307,152.00 |          Product Sales |
| Advertising | - | - | - | - | - | |
| Refund of Chargeback Reserve | - | - | - | - | - | |
| Donations | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 40,000.00 | |
| **Total Income** | **960,000.00** | **810,000.00** | **926,970.00** | **600,182.00** | **3,297,152.00** | |
| | | | | | | |
| **Selling & Product Costs** | | | | | | |
| Inventory Cost | (117,000.00) | (117,000.00) | (117,000.00) | (117,000.00) | (468,000.00) | NutriScience Inventory |
| Inventory Purchases | (250,000.00) | (250,000.00) | (250,000.00) | (250,000.00) | (1,000,000.00) | Hi-Tec Inventory purchase per payment plan agreement |
| PQPR Inventory Purchase | (50,000.00) | (50,000.00) | (50,000.00) | (50,000.00) | (200,000.00) | Per 2nd interim cash collateral order ECF 98 |
| Point of Sale Product Cost | | | (93,850.00) | (56,310.00) | (150,160.00) |          product costs |
| Fulfillment Services | (190,000.00) | (160,000.00) | (134,125.00) | (87,875.00) | (572,000.00) | Assumes we do not transition to          before 12/24/22 |
| Processor Fees | - | - | - | - | - | Arium contract was cancelled 10/20  expect there to be a reduced fee in the future |
| eCommerce Store Maintenance | - | - | (12,500.00) | - | (12,500.00) | Final ECDN Audit bills |
| Texas Sales Tax (20% of Sales @ 6.25%) | (11,875.00) | (10,000.00) | (9,062.50) | (5,937.50) | (36,875.00) | |
| **Total Cost of Goods Sold** | **(618,875.00)** | **(587,000.00)** | **(666,537.50)** | **(567,122.50)** | **(2,439,535.00)** | |
| | | | | | | |
| **Operating Expenses** | | | | | | |
| **Advertising & Promotion** | | | | | | |
| Print Media | - | - | (3,000.00) | - | (3,000.00) | |
| Radio Show Advertising | (14,760.00) | - | - | - | (14,760.00) | |
| **Total Advertising & Promotion** | **(14,760.00)** | **-** | **(3,000.00)** | **-** | **(17,760.00)** | |
| | | | | | | |
| **Computer/IT/IP Expense** | | | | | | |
| Internet & TV services | (2,500.00) | - | (1,750.00) | - | (4,250.00) | |
| Server Hosting  / Cloud Service / Ecomm | (90,000.00) | - | (15,000.00) | - | (105,000.00) | |
| Satellite Service | (140,000.00) | - | - | - | (140,000.00) | |
| Telecommunications | (18,500.00) | - | (2,000.00) | - | (20,500.00) | |
| Image License, Software & Other | - | - | (10,000.00) | - | (10,000.00) | |
| **Total Computer/IT/IP Expense** | **(251,000.00)** | **-** | **(28,750.00)** | **-** | **(279,750.00)** | |
| | | | | | | |
| **Office & Administrative Expense** | | | | | | |
| Bank Fees & Service Charges | (200.00) | (200.00) | (200.00) | (200.00) | (800.00) | |
| Insurance | - | - | - | (5,000.00) | (5,000.00) | Liability and property  we don't have current Workers Comp policy |
| Rent | (34,858.32) | - | - | - | (34,858.32) | |
| Utilites | (3,100.00) | - | (6,000.00) | - | (9,100.00) | |
| Janitorial | (3,000.00) | - | (2,000.00) | - | (5,000.00) | |
| Office Security | (9,000.00) | (4,000.00) | (4,000.00) | (4,000.00) | (21,000.00) | |
| Repair & Maintenance | - | - | - | (2,500.00) | (2,500.00) | Includes Konica Minolta copier lease |
| Supplies/Printing/Copy | (2,000.00) | (1,000.00) | (5,000.00) | (1,000.00) | (9,000.00) | |
| Business Meals | (400.00) | (400.00) | (400.00) | (400.00) | (1,600.00) | |
| **Total Office & Administrative Expense** | **(52,558.32)** | **(5,600.00)** | **(17,600.00)** | **(13,100.00)** | **(88,858.32)** | |
| | | | | | | |
| **Personnel Expenses** | | | | | | |
| Salaries & Wages & Benefits | (110,000.00) | - | (110,000.00) | - | (220,000.00) | |
| Payroll Tax | (10,400.00) | - | (10,400.00) | 0.09 | (20,799.91) | |
| Contract Employees | (49,450.00) | (4,450.00) | (4,450.00) | (4,450.00) | (62,800.00) | |
| Consulting Services | (2,400.00) | (1,500.00) | (2,000.00) | (1,500.00) | (7,400.00) | HR and Bookeeping Fees |
| Alex Jones Salary | (20,000.00) | - | (20,000.00) | - | (40,000.00) | |
| **Total Personnel Expenses** | **(192,250.00)** | **(5,950.00)** | **(146,850.00)** | **(5,949.91)** | **(350,999.91)** | |
| | | | | | | |
| **Travel** | | | | | | |
| Mileage/Parking/Tolls | (500.00) | (100.00) | (100.00) | (100.00) | (800.00) | |
| Vehicle Leases | - | - | - | (550.00) | (550.00) | |
| **Total Travel Expenses** | **(500.00)** | **(100.00)** | **(100.00)** | **(650.00)** | **(1,350.00)** | |
| | | | | | | |
| **Total Operating Expenses** | **(511,068.32)** | **(11,650.00)** | **(196,300.00)** | **(19,699.91)** | **(738,718.23)** | |
| | | | | | | |
| **Non-Operating Expenses** | | | | | | |
| Payment on PQPR Note | (5,000.00) | (5,000.00) | (5,000.00) | (5,000.00) | (20,000.00) | |
| **Total Other Expenses** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(5,000.00)** | **(20,000.00)** | |
| | | | | | | |
| **Professional Fees** | | | | | | |
| CRO Fees | - | (50,000.00) | - | (50,000.00) | (100,000.00) | |
| Trustee Fees | (15,000.00) | (15,000.00) | (15,000.00) | (15,000.00) | (60,000.00) | |
| Trustee Counsel | (15,000.00) | (15,000.00) | (15,000.00) | (15,000.00) | (60,000.00) | |
| Legal Fees - Reynal | (42,000.00) | - | - | (18,000.00) | (60,000.00) | |
| Ray Battaglia | - | - | - | (50,000.00) | (50,000.00) | |
| **Total Professional Fees** | **(72,000.00)** | **(80,000.00)** | **(30,000.00)** | **(148,000.00)** | **(330,000.00)** | |
| | | | | | | |
| **Total Cash Flow** | **(246,943.32)** | **126,350.00** | **29,132.50** | **(139,640.41)** | **(231,101.23)** | |
| | | | | | | |
| **Ending Cash** | **253,056.68** | **379,406.68** | **408,539.18** | **268,898.77** | | |

EXHIBIT

A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **Free Speech Systems LLC,** | § | |
| | § | **Case No. 22-60043 (CML)** |
| Debtor. | § | |

**PQPR HOLDINGS LIMITED, LLC'S WITNESS AND EXHIBIT LIST FOR
DECEMBER 19, 2022 HEARING**

PQPR Holdings Limited, LLC ("PQPR"), the secured creditor of the Debtor and a party-in-interest, respectfully submits this Witness and Exhibit List for the hearing scheduled for December 19, 2022:

### WITNESS LIST

1.  Robert Roe
2.  David Jones
3.  Melissa Haselden, Subchapter V Trustee
4.  Any witness identified by any other party

### EXHIBIT LIST

| Exhibit No. | Description |
|---|---|
| PQPR-1 | PQPR August 13, 2020 Note, Exh 4 to Dkt. No. 26 |
| PQPR-2 | Security Agreement, Exh 5 to Dkt. No. 26 |
| PQPR-3 | PQPR November 10, 2021 Note, Exh 6 to Dkt. No. 26 |
| PQPR-4 | PQPR UCC-1 Financing Statement, Exh 7 to Dkt. No. 26 |
| PQPR-5 | PQPR Forbearance Term Sheet, Exh 8 to Dkt. No. 26 |
| PQPR-6 | 13 Week Budget, Exh 9 to Dkt. No. 26 |
| PQPR-7 | Interim Cash Collateral Budget, Exh 10 to Dkt. No. 26 |
| PQPR-8 | 2nd Interim Cash Collateral Order and Budget, Dkt. No. 98 |
| PQPR-9 | 3rd Interim Cash Collateral Order and Budget, Dkt. No. 151 |
| PQPR-10 | PQPR Proof of Claim, Claim No. 11 |
| PQPR-11 | Sub V Trustee's Motion to Retain M3 Advisory Partners, LP, Dkt. No. 282 |
| | Any exhibits offered by any other party |

Dated: December 15, 2022

Respectfully submitted,

STREUSAND, LANDON & OZBURN, LLP

By: ___/s/Stephen W. Lemmon___
     Stephen W. Lemmon
     Texas Bar. No. 12194500

STREUSAND, LANDON, OZBURN &
LEMMON, LLP
1801 S. MoPac Expressway, Suite 320
Austin, Texas 78746
Telephone: (512) 236-9900
Facsimile: (512) 236-9904
lemmon@slollp.com
**ATTORNEYS FOR**
**PQPR HOLDINGS LIMITED, LLC**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on counsel for Debtor, Debtor, and all parties receiving or entitled to notice through CM/ECF on this 15th day of December, 2022.


*/s/ Stephen W. Lemmon*
Stephen W. Lemmon

2

006435

# PROMISSORY NOTE

$29,588,000.00                    Austin, Texas                    August /3 , 2020

THIS PROMISSORY NOTE (the **"Note"**) is made as of the date first written above by and between Free Speech Systems, LLC, a Texas Limited Liability Company, 3005 South Lamar Blvd., Suite D109-317, Austin, TX 78704 (**"Maker"**) and PQPR Holdings Limited LLC a Nevada Limited Liability Company, 100 Congress Ave., 18th Floor, Austin, TX 78701, (**"Payee"**).

Pursuant to the terms set forth herein, Maker, for value received, promises and agrees to pay, as herein provided, to the order of Payee or to such bank account as Payee may direct, in lawful money of the United States of America, the principal sum of Twenty Nine Million Five Hundred Eighty-Eight Thousand and 00/100 Dollars ($29,588,000.00). This Note memorializes the accrued and current obligations owed by Maker to Payee and provides for the payment of such obligations as provided hereinbelow.

1.    **Payment of Principal and Interest.**

    **(a)**    Interest, as provided below, is due and payable annually on each anniversary of the Note at the address listed above (unless otherwise directed in writing by Payee) until August 1, 2050 (the **"Maturity Date"**), when the entire amount of unpaid principal and accrued, unpaid interest will be payable in full. Pre-payments, if any, will be applied first to accrued interest, then to any costs or expenses due under the Note, and the remainder to reduction of the principal. Notwithstanding the foregoing, if the date on which payment is due is not a day on which banks are open for business in the State of Texas (a **"Business Day"**), then such payment shall be due on the Business Day next succeeding the payment date.

    **(b)**    The principal balance outstanding from time to time under this Note (after giving effect to all adjustments thereto made pursuant to the terms of this Note) shall bear interest on amounts advanced under this Note at the lesser of (i) **[one and 75/100 percent (1.75%)]** per annum (**"Contract Rate"**); (ii) or the maximum rate of nonusurious interest allowed from time to time by applicable law. Interest shall be calculated at a daily rate based on a year of 365 or 366 days, as the case may be, with the daily rate so determined being applied for the actual number of days elapsed. All past due principal and accrued interest on this Note shall bear interest from maturity until paid at the lesser of (i) **five percent (5%),** or (ii) the highest rate for which Maker may legally contract under applicable law.

2.    **Maximum Interest Rate.** It is the intention of Maker and Payee to conform strictly to applicable usury laws. Accordingly, if the interest payable on this Note would be usurious under applicable law, in that event, notwithstanding anything to the contrary herein, it is agreed that the aggregate of all consideration that constitutes interest under applicable law that is taken, reserved, contracted for, charged or received under this Note shall under no circumstances exceed the maximum amount of interest allowed by applicable law, and any excess shall be canceled automatically and, if theretofore paid, shall be credited on this Note by Payee (or, to the extent that this Note shall have been or would thereby be paid in full, refunded to Maker). All sums paid or agreed to be paid to Payee for the use, forbearance or detention of sums included in

PQPR-1

EXHIBIT

4

exhibitsticker.com

006436

the amounts owing to Payee by Maker shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of this Note until payment in full so that the rate or amount of interest on account of indebtedness does not exceed the applicable usury ceiling, if any. As used in this Note, the term "applicable law" shall mean the law of the State of Texas.

   3.   **Prepayment.** Borrower reserves the right to prepay, prior to maturity, all or any part of the principal of this Note without penalty. Any prepayments will be solely at Borrower's option and will be applied first to accrued interest, then to fees and expenses due under this Note, and then to principal. Borrower will provide written notice to the holder of this Note of any such prepayment of all or any part of the principal at the time thereof. All payments and prepayments of principal or interest on this Note will be made in lawful money of the United States of America in immediately available funds, at the address of Lender indicated above, or such other place as the holder of this Note may designate in writing to Borrower.

   4.   **Waiver.** Maker expressly waives demand and presentment for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, notice of intent to accelerate the maturity hereof, notice of the acceleration of the maturity hereof, bringing of suit and diligence in taking any action to collect amounts called for hereunder and in the handling of securities at any time existing in connection herewith. Maker also waives any obligation that Payee pursue or exhaust its rights against any security for the Note prior to taking actions to collect the Note.

   5.   **Amendments.** Any term or provision of this Note and any obligation of Maker hereunder or with respect hereto, may be changed or modified, partially or completely, or noncompliance may be consented to or authorized, by written agreement between Maker and Payee.

   6.   **Events of Default.** The occurrence and continuance of any of the following events shall be considered an **"Event of Default"** for purposes of this Note: (a) default is made in the payment of principal or interest when due (b) any involuntary case or other proceeding shall be commenced against Maker that seeks liquidation, reorganization or other relief with respect to it or its debts or other liabilities under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator or custodian unless dismissed or stayed within 90 days after the institution thereof (provided that upon ineffectiveness of any stays, an Event of Default shall exist); (c) Maker shall commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts or other liabilities under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official with respect to Maker, or shall consent to any such relief or to the appointment of, or taking possession by, any such official in an involuntary case or other proceeding commenced against it, or shall make a general assignment for the benefit of creditors or shall fail generally or shall admit in writing its inability to pay its debts generally as they become due or shall take any corporate action to authorize or effect any of the foregoing; (d) a judgment in excess of $100,000 is entered

006437

against Maker which is not superseded within ten (10) of the date that it is entered; Maker shall cease business operations.

     **7.**     **Remedy.** Upon the occurrence of payment default as provided paragraph 6 (a) and the expiration of ten (10) days' notice and opportunity to cure, and upon the occurrence of any other Event of Default as provided in paragraph 6(b) -(d) and the expiration of thirty (30) days' notice and opportunity to cure, the entire principal amount and accrued interest of the Note then outstanding shall become immediately due and payable.

     **8.**     **Governing Law and Venue .** This Note and the rights and obligations hereunder shall be governed by and construed in accordance with the laws of the State of Texas without regard to its principles concerning conflicts of law. Venue for any action brought to collect this Note shall be in Travis County, Texas.

     **9.**     **Attorneys' Fees and Expenses** In the event Payee institutes an action to collect this Note, then in addition to all other amounts due and owing hereunder, Maker shall be liable for and pay to Payee, reasonable fees and costs, including attorneys' fees and expenses of colletion.

     EXECUTED to be effective as of the date first above written.

MAKER:

_____
Alexander E. Jones
Managing Member
Free Speech Systems, LLC

# SECURITY AGREEMENT

THIS SECURITY AGREEMENT (the **"Security Agreement"**) is entered into effective as of August 2, 2020 (the **"Effective Date"**) by and between PQPR Holdings Limited LLC a Nevada Limited Liability Company, 100 Congress Ave., 18th Floor, Austin, TX 78701, (the **"Secured Party"**) and Free Speech Systems, LLC, a Texas Limited Liability Company, 3005 South Lamar Blvd., Suite D109-317, Austin, TX 78704 (the **"Debtor"** or the **"Company"**).

Section I.     CREATION OF SECURITY INTEREST

The Debtor hereby grants to the Secured Party a security interest in the Collateral described in Section II of this Security Agreement to secure performance and payment that certain promissory note of even date herewith in the original principal amount of Twenty Nine Million Five Hundred Eighty Eight Thousand Dollars executed by Debtor in favor of Secured Party as it may be amended or modified (the "**Note**") and any and all other obligations of Debtor to Secured Party of any kind or character, now owed or hereafter arising (collectively, the **"Obligations"**). Any capitalized term herein not specifically defined will have the meaning as defined in the limited liability company agreement of the Secured Party.

Section II.     COLLATERAL

In order to secure the payment when due of any and all Obligations, the Debtor hereby pledges to the Secured Party and grants to the Secured Party a security interest in the following collectively, (the **"Collateral"**):

(1) all fixtures and personal property of every kind and nature, including all accounts, goods (including inventory and equipment), documents (including, if applicable, electronic documents), instruments, promissory notes, chattel paper (whether tangible or electronic), letters of credit, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including all payment intangibles), intellectual property, domain names, trademarks (including but not limited to the nutritional supplement marks Living Cleanse, Honor Roll, ExtendaWise, Happease, Gut Fusion, Vasobeet, Ultimate Female Force, The Real Red Pill, Bodease, Icuren, Flora Life, Immune Wall, Pollen Block, Alpha Power, DNA Force, Survival Shield, and Survival Shield X-2, and the brand Infowars Life), trade names, money, deposit accounts, and any other contract rights or rights to the payment of money; and

(2) all gross revenues, receivables and proceeds and products of each of the foregoing in subparagraph (1), all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing.

The Secured Party is hereby granted a first priority lien and security interest in the Collateral to secure the Obligations. Debtor authorizes Secured Party to file a financing statement describing the Collateral in each and every jurisdiction necessary to perfect the

PRPR-2

EXHIBIT

5

security interest and lien granted herein.

Section III.   PAYMENT OBLIGATIONS OF THE DEBTOR

1.   Debtor is not authorized to sell, convey, dispose of encumber or dispose of the Collateral without Secured Party's agreement or until the Obligations are paid in full. The Debtor will account fully and faithfully to the Secured Party for proceeds from disposition of the collateral in any manner and will pay or turn over promptly in cash, negotiable instruments, drafts, assigned accounts or chattel paper, all the proceeds from each sale to be applied to the Debtor's Obligations to the Secured Party, subject if other than cash, to final payment or collection. Application of such proceeds to Obligations of the Debtor will be in the sole discretion of the Secured Party, provided such application of proceeds is made by the Secured Party in a reasonable manner.

2.   The Debtor will pay to the Secured Party on demand all expenses and expenditures, including reasonable attorney's fees and other legal expenses incurred or paid by the Secured Party in exercising or protecting its interests, rights and remedies under this Security Agreement.

3.   The Debtor will pay immediately, without notice, the entire unpaid Obligations of the Debtor to the Secured Party whether created or incurred pursuant to this Security Agreement or otherwise, upon the Debtor's default under Section V of this Security Agreement.

4.   Delivery of the Collateral.

(a)   All certificates and instruments evidencing or representing the Collateral (if any) will be delivered to the Secured Party upon the execution and delivery of this Security Agreement. All other certificates and instruments constituting, evidencing or representing the Collateral from time to time will be delivered to the Secured Party promptly upon the receipt thereof by and/or on behalf of the Debtor. All such certificates and instruments will be held by or on behalf of the Secured Party pursuant hereto, and will be delivered to the Secured Party in suitable form for transfer by delivery or will be accompanied by duly executed instruments of transfer or assignment in blank, all in form and substance satisfactory to the Secured Party.

(b)   If the Debtor receives, by virtue of its being or having been an owner of any Collateral, any (i) certificate, promissory note or instrument, (ii) option or right, whether as an addition to, substitution for, or in exchange for the Collateral, or (iii) distributions on dissolution, in total liquidation or from capital, capital surplus or paid-in surplus, the Debtor will receive such certificate, promissory note, instrument, payment or distribution in trust for the benefit of the Secured Party, will segregate it from the Debtor's other assets and will deliver it forthwith to the Secured Party in the exact form received, with any necessary endorsement and assignment duly executed in blank, to be held by the Secured Party as Collateral and as additional collateral security for the Obligations.

Section IV.   DEBTOR'S REPRESENTATION, WARRANTIES AND AGREEMENTS

2

PRPR-2

The Debtor makes the following representations, warranties and agreements:

1.    The pledge of the Collateral creates a valid and perfected first priority security interest in the pledged Collateral securing payment of the Obligations.

2.    The Debtor will, at its own expense,, do, make, procure, execute and deliver all acts, things, writings and assurances as the Secured Party may at any time request to protect, assure or enforce its interests, rights and remedies created by, provided in or emanating from this Security Agreement.

3.    The Debtor will sign and execute alone or with the Secured Party a Financing Statement and any and all other documents requested by Secured Party for perfection of the lien on the Collateral.

Section V.    EVENTS OF DEFAULT

The Debtor will be in default under this Security Agreement upon the happening of any condition or event set forth below (herein called an **"Event of Default"**):

1.    The Debtor's failure to pay when due any Obligations secured by this Security Agreement;

2.    Default by the Debtor in punctual performance of any of the obligations, covenants, terms or provisions contained or referred to in this Security Agreement or the Note;

3.    Any warranty, representation or statement contained in this Security Agreement or made or furnished to the Secured Party by or on behalf of the Debtor in connection with this Security Agreement or to induce the Secured Party to make a loan to Debtor proves to have been false in any respect when made or furnished;

4.    Loss, theft, sale (except as authorized in this Security Agreement) or encumbrance to or of any of the Collateral, or the making of any levy, seizure or attachment thereof or thereon; or

5.    The Debtor's dissolution, termination of existence, insolvency or business failure; the appointment of a receiver of all or any part of the property of the Debtor; an assignment for the benefit of creditors by the Debtor; the calling of a meeting of creditors of the Debtor; or the commencement of any proceeding under any bankruptcy or insolvency laws by or against the Debtor.

6.    The Debtor shall have entered against it any judgment, arbitration award, fine or penalty for an amount in excess of $500,000, and such judgment, arbitration award, fine or penalty is not stayed or superseded within 30 days of entry.

Section VI.    SECURED PARTY'S RIGHTS AND REMEDIES

A.    Rights Exclusive of Default.

1.    This Security Agreement, the Secured Party's rights hereunder or the Obligations

3

PRPR-2

hereby secured may be assigned by Secured Party, and in any such case, the assignee will be entitled to all of the rights, privileges and remedies granted in this Security Agreement to the Secured Party.

2.      Upon the request of the Secured Party at any time, the Debtor will execute, sign, endorse, transfer or deliver in the name of the Debtor any other documents, necessary to perfect the security interest and obligations created by this Security Agreement.

3.      At its option, the Secured Party may discharge taxes, liens or security interests or other encumbrances at any time levied or placed on the Collateral. The Debtor agrees to reimburse the Secured Party on demand for any payment made, or expense incurred by the Secured Party pursuant to the foregoing authorization.

4.      Debtor will permit Secured Party, by its representatives and agents (a) to inspect the Collateral, (b) to examine and make copies of the records of Debtor relating to the Collateral, and (c) to discuss the Collateral and the related records of Debtor with, and to be advised as to the same by, Debtor's officers, employees, and accountants, all at such reasonable times and intervals as Secured Party may determine, and all at such Debtor's expense.

5.      Debtor will maintain true, complete, and accurate books and records with respect to the Collateral, and furnish to Secured Party such reasonable reports relating to the Collateral at such intervals as Secured Party shall from time to time request.  Debtor will give prompt notice in writing to Secured Party of the occurrence of any Default or Event of Default and of any other development, financial or otherwise, which might materially and adversely affect the Collateral in the aggregate amount of $100,000.00 or more per calendar year.

B.      <u>Rights in Event of Default</u>

1.      Upon the occurrence of an Event of Default, Secured Party, in its sole discretion, may demand that all payments and distributions made to Debtor upon or with respect to the Collateral shall be paid and delivered to Secured Party, and Debtor agrees to take all such action as Secured Party may deem necessary or appropriate to cause all such payments and distributions to be made to Secured Party.  Secured Party shall have the right, at any time after the occurrence of any Event of Default, to notify and direct any issuer to thereafter make all payments, dividends, and any other distributions payable in respect thereof directly to Secured Party.  Such issuer shall be fully protected in relying on the written statement of Secured Party that it then holds a security interest which entitles it to receive such payments and distributions.  Any and all money and other property paid over to or received by Secured Party hereunder shall be retained by Secured Party as additional collateral hereunder and may be applied by Secured Party to payment of the Obligations in such manner and order as Secured Party may elect in its sole discretion.

2.      In addition, Secured Party is entitled to exercise any and all contractual rights provided in this Security Agreement or any other loan document between Debtor and Secured Party, and any and all legal rights and remedies available to a secured party (whether or not the UCC applies to the affected Collateral) or under any other applicable law when a debtor is in default under a security agreement.

3.      Secured Party is also entitled to, without notice, sell, lease, assign, grant an option

4

or options to purchase or otherwise dispose of the Collateral or any part thereof in one or more parcels at public or private sale, for cash, credit or for future delivery, and upon such terms as Secured Party may deem commercially reasonable. Neither Secured Party's compliance with any applicable state or federal law in the conduct of such sale, nor its disclaimer of any warranties relating to the Collateral, shall be considered to affect the commercial reasonableness of such sale. Debtor hereby waives notice of the time and place of any public sale or the time after which any private sale or other disposition of all or any part of the Collateral may be made. To the extent such notice may not be waived under applicable law, any notice made shall be deemed reasonable if sent to Debtor at least ten (10) days prior to (i) the date of any such public sale or (ii) the time after which any such private sale or other disposition may be made. Secured Party shall not be obligated to make any sale or other disposition of the Collateral regardless of notice having been given. Subject to the provisions of applicable law, Secured Party may postpone or cause the postponement of the sale of all or any portion of the Collateral by announcement at the time and place of such sale, and such sale may, without further notice, to the extent permitted by law, be made at the time and place to which the sale was postponed, or Secured Party may further postpone such sale by announcement made at such time and place.

4.      Debtor waives (to the extent permitted by law) all rights of redemption, stay, and/ or appraisal which it now has or may have at any time in the future under any rule of law or statute now existing or hereinafter enacted.

5.      Further, Secured Party may at any time after the occurrence of an Event of Default require, in its sole discretion and with notice to Debtor, that any receivables, as described in Section II above, be paid directly to Secured Party. In such event, Debtor shall, and shall permit Secured Party to, promptly notify the parties that owe the receivables to Debtor of Secured Party's interest therein and direct such parties to make payment of all amounts then or thereafter due directly to Secured Party. Upon receipt of any such notice from Secured Party, Debtor shall thereafter hold in trust for Secured Party, all amounts and proceeds (as such term is defined in *Section 9.102(a)(65)* of the UCC) received by it with respect to the receivables and immediately and at all times thereafter deliver to Secured Party all such amounts and proceeds in the same form as so received, whether by cash, check, draft or otherwise, with any necessary endorsements. Secured Party shall hold and apply funds so in such manner and order as Secured Party may elect in its sole discretion. If after the occurrence of an Event of Default, any party owing receivables fails or refuses to make payment on any Collateral when due, Secured Party is authorized, in its sole discretion, either in its own name or in the name of Debtor, to take such action as Secured Party shall deem appropriate for the collection of any amounts owed with respect to Collateral or upon which a delinquency exists. Debtor agrees that Secured Party may at any time and from time to time, if an Event of Default has occurred, compromise with the obligor on any receivable, accept in full payment of any receivable such amount as Secured Party in its sole discretion shall determine or abandon any receivable, and any such action by Secured Party shall be commercially reasonable so long as Secured Party acts in good faith based on information known to it at the time it takes any such action. Regardless of any other provision hereof, however, Secured Party shall never be liable for its failure to collect, or for its failure to exercise diligence in the collection of, any amounts owed with respect to Collateral, nor shall it be under any duty whatsoever to anyone except Debtor to account for funds that it shall actually receive hereunder.

6.      Debtor will reimburse Secured Party for all reasonable expenses incurred by Secured Party in taking ownership of the Collateral, including payment of Secured Party's

<div align="center">5</div>

reasonable attorney's fees and legal expenses.

7. The Secured Party may remedy any default and may waive any default without waiving any other prior or subsequent default.

8. Upon request of Secured Party after an Event of Default, Debtor shall execute and deliver to Secured Party irrevocable lockbox agreements in the form provided by or otherwise acceptable to Secured Party, which agreements shall be accompanied by an acknowledgment by the bank where the lockbox is located of the lien of Secured Party granted hereunder and of irrevocable instructions to wire all amounts collected therein to a special collateral account at Secured Party.

9. The remedies of the Secured Party hereunder are cumulative, and the exercise of any one or more of the remedies provided for herein will not be construed as a waiver of any of the other remedies of the Secured Party.

Section VII.   ADDITIONAL AGREEMENTS

1. **"Secured Party" and "Debtor,"** as used in this instrument, include the heirs, executors or administrators, successors, representatives, receivers, trustees and assigns of those parties.

   **2.** No delay or omission of Secured Party to exercise any right or remedy granted under this Security Agreement shall impair such right or remedy or be construed to be a waiver of any Event of Default, or an acquiescence therein, and any single or partial exercise of any such right or remedy shall not preclude any other or further exercise thereof or the exercise of any other right or remedy. No waiver, amendment or other variation of the terms, conditions or provisions of this Security Agreement whatsoever shall be valid unless in writing signed by Secured Party and then only to the extent in such writing specifically set forth. All rights and remedies contained in this Security Agreement or by law afforded shall be cumulative and all shall be available to Secured Party until the Secured Obligations have been paid in full.

   **3.** Should any Collateral come into the possession of Secured Party, Secured Party may use or operate such Collateral for the purpose of preserving it or its value, pursuant to the order of a court of appropriate jurisdiction or in accordance with any other rights held by Secured Party in respect of such Collateral. Debtor covenants to promptly reimburse and pay to Secured Party, at Secured Party's request, the amount of all expenses (including the cost of any insurance and payment of taxes or other charges) incurred by Secured Party in connection with its custody and preservation of the Collateral, and all such expenses, costs, taxes, and other charges shall bear interest at the Contract Rate (as defined in the Note) until repaid and, together with such interest, shall be payable by Debtor to Secured Party upon demand and shall become part of the secured Obligations. However, the risk of accidental loss or damage to, or diminution in value of, the Collateral is on Debtor, and Secured Party shall have no liability whatever for failure to obtain or maintain insurance, nor to determine whether any insurance ever in force is adequate as to amount or as to the risks insured. With respect to the Collateral that is in the possession of Secured Party, Secured Party shall have no duty to fix or preserve rights against prior parties to such Collateral and shall never be liable for any failure to use diligence to collect any amount payable in respect of such Collateral, but shall be liable only to account to Debtor for what it may actually collect or receive thereon. The provisions of this subparagraph are applicable whether or not an Event of Default has occurred.

6

PRPR-2

4.      Except to the extent expressly otherwise provided herein and to the fullest extent permitted by applicable law, Debtor waives (a) any right to require Secured Party to proceed against any other Person, to exhaust its rights in Collateral, or to pursue any other right which Secured Party may have; (b) with respect to any Collateral that is comprised of obligations, presentment and demand for payment, protest, notice of protest and nonpayment, notice of intent to accelerate, and notice of acceleration; and (c) all rights of marshaling in respect of any and all of the Collateral.

5.      Notwithstanding any contrary provision, Debtor agrees that, if, but for the application of this paragraph, granting a security interest in the Collateral would constitute a fraudulent conveyance under 11 U.S.C. § 548 or a fraudulent conveyance or transfer under any state fraudulent conveyance, fraudulent transfer, or similar law in effect from time to time (each a "fraudulent conveyance"), then the security interest remains enforceable to the maximum extent possible without causing such security interest to be a fraudulent conveyance, and this Security Agreement is automatically amended to carry out the intent of this sentence.

6.      Debtor Remains Liable.   Notwithstanding anything to the contrary contained herein, (a) Debtor shall remain liable under the contracts and agreements included in the Collateral to the extent set forth therein to perform all of its respective duties and Obligations thereunder to the same extent as if this Security Agreement had not been executed, (b) the exercise by Secured Party of any of its rights hereunder shall not release Debtor from any of its duties or obligations under the contracts and agreements included in the Collateral, and (c) Secured Party shall not have any obligation or liability under any of the contracts and agreements included in the Collateral by reason of this Security Agreement, nor shall Secured Party be obligated to perform any of the obligations or duties of Debtor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.

7.      NO RELEASE OF DEBTOR.   THE OBLIGATIONS OF DEBTOR UNDER THIS SECURITY AGREEMENT SHALL NOT BE REDUCED, LIMITED OR TERMINATED, NOR SHALL DEBTOR BE DISCHARGED FROM ANY OBLIGATION HEREUNDER, FOR ANY REASON WHATSOEVER (until the Obligations have been indefeasibly paid in full), including:

(a)      (i) any increase in the principal amount of, or interest rate applicable to, (ii) any extension of the time of payment, observance or performance of, (iii) any other amendment or modification of any of the other terms and provisions of, (iv) any release, composition or settlement (whether by way of acceptance of a plan of reorganization or otherwise) of, (v) any subordination (whether present or future or contractual or otherwise) of, or (vi) any discharge, disallowance, invalidity, illegality, voidness or other unenforceability of, the Obligations;

(b)      (i) any failure to obtain, (ii) any release, composition or settlement of, (iii) any amendment or modification of any of the terms and provisions of, (iv) any subordination of, or (v) any discharge, disallowance, invalidity, illegality, voidness or other unenforceability of, the Note or other loan documents between Debtor and Secured Party;

(c)      (i) any failure to obtain or any release of, any failure to protect or preserve, (ii) any

7

PRPR-2

006445

release, compromise, settlement or extension of the time of payment of any Obligations constituting, (iii) any failure to perfect or maintain the perfection or priority of any lien upon, (iv) any subordination of any lien upon, or (v) any discharge, disallowance, invalidity, illegality, voidness or other unenforceability of any lien or intended lien upon, any collateral now or hereafter securing, the Secured Obligations or any other guaranties thereof;

**(d)** any termination of or change in any relationship between Debtor and Secured Party;

**(e)** any exercise of, or any failure or election not to exercise, delay in the exercise of, waiver of, or forbearance of or other indulgence with respect to, any right, remedy or power available to Secured Party, including (i) any election not to or failure to exercise any right of setoff, recoupment or counterclaim, (ii) any election of remedies effected by Secured Party, including the foreclosure upon any real estate constituting collateral, whether or not such election affects the right to obtain a deficiency judgment, and (iii) any election by Secured Party in any proceeding under the Bankruptcy Code of the application of Section 1111(b)(2) of the Bankruptcy Code; and

**(f)** ANY OTHER ACT OR FAILURE TO ACT OR ANY OTHER EVENT OR CIRCUMSTANCE THAT (i) VARIES THE RISK OF DEBTOR UNDER THIS SECURITY AGREEMENT OR (ii) BUT FOR THE PROVISIONS HEREOF, WOULD, AS A MATTER OF STATUTE OR RULE OF LAW OR EQUITY, OPERATE TO REDUCE, LIMIT OR TERMINATE THE OBLIGATIONS OF DEBTOR HEREUNDER OR DISCHARGE DEBTOR FROM ANY OBLIGATION HEREUNDER.

**8.** Notwithstanding any contrary provision, Debtor agrees that, if, but for the application of this paragraph, granting a security interest in the Collateral would constitute a fraudulent conveyance under 11 U.S.C. § 548 or a fraudulent conveyance or transfer under any state fraudulent conveyance, fraudulent transfer, or similar law in effect from time to time (each a "fraudulent conveyance"), then the security interest remains enforceable to the maximum extent possible without causing such security interest to be a fraudulent conveyance, and this Security Agreement is automatically amended to carry out the intent of this sentence.

**9.** Further, notwithstanding anything to the contrary contained herein, (a) Debtor shall remain liable under the contracts and agreements included in the Collateral to the extent set forth therein to perform all of its respective duties and obligations thereunder to the same extent as if this Security Agreement had not been executed, (b) the exercise by Secured Party of any of its rights hereunder shall not release Debtor from any of its duties or obligations under the contracts and agreements included in the Collateral, and (c) Secured Party shall not have any obligation or liability under any of the contracts and agreements included in the Collateral by reason of this Security Agreement, nor shall Secured Party be obligated to perform any of the Obligations or duties of any Debtor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.

**10.** The section headings appearing in this instrument have been inserted for convenience only and will be given no substantive meaning or significance whatever in

8

006446

construing the terms and provisions of this instrument. Terms used in this instrument which are defined in the Texas Uniform Commercial Code are used with the meanings as therein defined.

11. The law governing this secured transaction will be that of the State of Texas in force at the date of this instrument. Venue for any dispute arising out of this Security Agreement will be in the state or federal courts located in Travis County, Texas.

12. Debtor will not create, incur, or suffer to exist any lien on the Collateral except (i) the security interest created by this Security Agreement, and (ii) other liens permitted in writing by the Secured Party.

13. The unenforceability of any provision of this Security Agreement will not affect the enforceability or validity of any other provision.

14. This Security Agreement may be executed in any number of counterparts and any party hereto may execute any such counterpart, each of which when executed and delivered will be deemed to be an original and all of which counterparts taken together will constitute but one and the same instrument.

15. THIS AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

EXECUTED as of the Effective Date.

**DEBTOR:**

Free Speech Systems, LLC

Alexander E. Jones, Managing Member

**SECURED PARTY:**

PQPR Holdings Limited, LLC

David R. Jones, Manager

9

006447

# PROMISSORY NOTE

$25,300,000.00                                   Austin, Texas                                   November 10, 2021

**THIS PROMISSORY NOTE** (the **"Note"**) is made as of the date first written above by and between Free Speech Systems, LLC, a Texas Limited Liability Company, 3005 South Lamar Blvd., Suite D109-317, Austin, TX 78704 (**"Maker"**) and PQPR Holdings Limited, LLC a Nevada Limited Liability Company, 100 Congress Ave., 18th Floor, Austin, TX 78701 (**"Payee"**).

Pursuant to the terms set forth herein, Maker, for value received, promises and agrees to pay, as herein provided, to the order of Payee or to such bank account as Payee may direct, in lawful money of the United States of America, the principal sum of Twenty-Five Million Three Hundred Thousand and 00/100 Dollars ($25,300,000.00). This Note memorializes the accrued and current obligations owed by Maker to Payee and provides for the payment of such obligations as provided herein below.

### 1. Payment of Principal and Interest; Security

**(a)**    Principal and Interest (as provided below), are due and payable in annual installments of $1,939,644.81 on each anniversary of the Note at the address listed above (unless otherwise directed in writing by Payee) with the final payment being due and payable on November 10, 2036 (the **"Maturity Date"),** when the remaining balance of unpaid principal and accrued, unpaid interest will be payable in full. Pre-payments, if any, will be applied first to accrued interest, then to any costs or expenses due under the Note, and the remainder to reduction of the principal. Notwithstanding the foregoing, if the date on which payment is due is not a day on which banks are open for business in the State of Texas (a **"Business Day"),** then such payment shall be due on the Business Day next succeeding the payment date.

**(b)**    The principal balance outstanding from time to time under this Note (after giving effect to all adjustments thereto made pursuant to the terms of this Note) shall bear interest at the lesser of (i) [**one and 80/100 percent (1.80%)**] per annum (**"Contract Rate");** (ii) or the maximum rate of nonusurious interest allowed from time to time by applicable law. Interest shall be calculated at a daily rate based on a year of 365 or 366 days, as the case may be, with the daily rate so determined being applied for the actual number of days elapsed. All past due principal and accrued interest on this Note shall bear interest from maturity until paid at the lesser of (i) **five percent (5%),** or (ii) the highest rate for which Maker may legally contract under applicable law.

**(c)**    This Note is secured by a Security Agreement executed by Maker dated August 13, 2020 and evidenced by a UCC-1 recorded with the State of Texas on November 18, 2020.

2. **Maximum Interest Rate -** It is the intention of Maker and Payee to conform strictly to applicable usury laws. Accordingly, if the interest payable on this Note would be usurious under applicable law, in that event, notwithstanding anything to the contrary herein, it is agreed that the aggregate of all consideration that constitutes interest under applicable law that is taken, reserved, contracted for, charged or received under this Note shall under no circumstances exceed the maximum amount of interest allowed by applicable law, and any excess shall be canceled automatically and, if theretofore paid, shall be credited on this Note by Payee (or, to the extent that this Note shall have been or would thereby be

EXHIBIT

6

PQPR-3

006448

paid in full, refunded to Maker). All sums paid or agreed to be paid to Payee for the use, forbearance or detention of sums included in the amounts owing to Payee by Maker shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of this Note until paid in full so that the rate or amount of interest on account of indebtedness does not exceed the applicable usury ceiling, if any. As used in this Note, the term "applicable law" shall mean the law of the State of Texas.

**3. Prepayment** – Borrower reserves the right to prepay, prior to maturity, all or any part of the principal of this Note without penalty. Any prepayments will be solely at Borrower's option and will be applied first to accrued interest, then to fees and expenses due under this Note, and then to principal. Borrower will provide written notice to the holder of this Note of any such prepayment of all or any part of the principal at the time thereof. All payments and prepayments of principal or interest on this Note will be made in lawful money of the United States of America in immediately available funds, at the address of Lender indicated above, or such other place as the holder of this Note may designate in writing to Borrower.

**4. Waiver** - Maker expressly waives demand and presentment for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, notice of intent to accelerate the maturity hereof, notice of the acceleration of the maturity hereof, bringing of suit and diligence in taking any action to collect amounts called for hereunder and in the handling of securities at any time existing in connection herewith. Maker also waives any obligation that Payee pursue or exhaust its rights against any security for the Note prior to taking actions to collect the Note.

**5. Amendments** - Any term or provision of this Note and any obligation of Maker hereunder or with respect hereto, may be changed or modified, partially or completely, or noncompliance may be consented to or authorized, by written agreement between Maker and Payee.

**6. Events of Default** - The occurrence and continuance of any of the following events shall be considered an **"Event of Default"** for purposes of this Note: (a) default is made in the payment of principal or interest when due (b) any involuntary case or other proceeding shall be commenced against Maker that seeks liquidation, reorganization or other relief with respect to it or its debts or other liabilities under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator or custodian unless dismissed or stayed within 90 days after the institution thereof (provided that upon ineffectiveness of any stays, an Event of Default shall exist); (c) Maker shall commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts or other liabilities under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official with respect to Maker, or shall consent to any such relief or to the appointment of, or taking possession by, any such official in an involuntary case or other proceeding commenced against it, or shall make a general assignment for the benefit of creditors or shall fail generally or shall admit in writing its inability to pay its debts generally as they become due or shall take any corporate action to authorize or effect any of the foregoing; (d) a judgment in excess of $100,000 is entered against Maker which is not superseded within ten (10) of the date that it is entered; Maker shall cease business operations.

**7. Remedy** - Upon the occurrence of payment default as provided paragraph 6 (a) and the expiration of ten (10) days' notice and opportunity to cure, and upon the occurrence of any other Event of Default as provided in paragraph 6(b) -(d) and the expiration of thirty (30) days' notice and opportunity to cure, the entire principal amount and accrued interest of the Note then outstanding shall become immediately due and payable.

PQPR-3

006449

**8. Governing Law and Venue** – This Note and the rights and obligations hereunder shall be governed by and construed in accordance with the laws of the State of Texas without regard to its principles concerning conflicts of law. Venue for any action brought to collect this Note shall be in Travis County, Texas.

**9. Attorneys' Fees and Expenses** - In the event Payee institutes an action to collect this Note, then in addition to all other amounts due and owing hereunder, Maker shall be liable for and pay to Payee reasonable fees and costs, including attorneys' fees and expenses, of collection.

EXECUTED to be effective as of the date first above written.

**MAKER:**

Free Speech Systems, LLC

By _____

Alexander E. Jones, Manager

**ACKNOWLEDGEMENT BY PAYEE:**

PQPR Holdings Limited, LLC

By _____

David R. Jones, Manager

PQPR-3

**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Acuity CxO LLC 5122929690

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Acuity CxO LLC
219 Black Wolf Run
Austin, TX 78738
USA

**FILING NUMBER:** 20-0058072731
**FILING DATE:** 11/18/2020    02:06 PM
**DOCUMENT NUMBER:** 1008390830002
**FILED: Texas Secretary of State**
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S NAME** - Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR **Free Speech Systems LLC** | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **3005 South Lamar Blvd, Suite D109-317** | **Austin** | **TX** | **78704** | **USA** |

**2. DEBTOR'S NAME** - Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR **PQPR Holdings Limited LLC** | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **100 Congress Avenue, 18th Floor** | **Austin** | **TX** | **78701** | **USA** |

**4. COLLATERAL:** This financing statement covers the following collateral:
(1) all fixtures and personal property of every kind and nature, including all accounts, goods (including inventory and equipment), documents (including, if applicable, electronic documents), instruments, promissory notes, chattel paper (whether tangible or electronic), letters of credit, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including all payment intangibles), intellectual property, domain names, trademarks (including but not limited to the nutritional supplement marks Living Cleanse, Honor Roll, ExtendaWise, Happease, Gut Fusion, Vasobeet, Ultimate Female Force, The Real Red Pill, Bodease, Icuren, Flora Life, Immune Wall, Pollen Block, Alpha Power, DNA Force, Survival Shield, and Survival Shield X-2, and the brand Infowars Life), trade names, money, deposit accounts, and any other contract rights or rights to the payment of money; and
(2) all gross revenues, receivables and proceeds and products of each of the foregoing in subparagraph (1), all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing.

**5.** Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check <u>only</u> if applicable and check <u>only</u> one box.
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

**FILING OFFICE COPY**

PQPR-4

EXHIBIT

7

exhibitsticker.com

006451

**Forbearance Agreement**
**Summary of Indicative Terms and Conditions**
**Free Speech Systems, LLC.**
**July 10, 2022**

*Free Speech Systems, LLC ("FSS") has discovered certain problems with its record keeping and inventory. These problems, along with litigation expenses, have created a cash flow difficulty, which FSS believes to be temporary. FSS has requested, and PQPR Holdings Limited, LLC ("PQPR"), a secured creditor and provider of product to FSS, has agreed, to a temporary forbearance of certain terms for a period of 60 days, as follows:*

**Credit Card Processing Fee:** The "fixed fee" provided for in the Financial Services Agreement between FSS and _____ LLC and the MOU shall be reduced from ten percent (10%) to two percent (2%) of gross sales proceeds net of credit card processing fees.

4.' (Four percent) WMS

**Allocation of Net Sales Proceeds:**

**FSS Inventory** FSS Inventory means inventory which PQPR has ordered from vendors on FSS' behalf and for which FSS has pre-paid (prior to product delivery) all or part of the cost of the product.

FSS shall receive 90% of the Net Sales Proceeds and PQPR shall receive 10% of the Net Sales Proceeds. Such sums will be distributed to FSS and PQPR by

FSS shall pay one third any amount advanced by PQPR for FSS Inventory within 30 days following execution of final documents memorializing this agreement, with the balance of PQPR's advances for FSS Inventory due 15 days thereafter.

**PQPR Inventory** PQPR Inventory means inventory which PQPR has ordered from vendors on PQPR's behalf and for which PQPR has paid the cost of the product.

PQPR Net Sales Proceeds generated from the sale of PQPR Inventory through FSS sales channels shall be paid 20% to FSS and 80% to PQPR.

PQPR Net Sales Proceeds generated from the sale of PQPR Inventory through non FSS sales channels shall be paid 10% to FSS and 90% to PQPR.

All payments will be distributed to FSS and PQPR by

PQPR-5

Aurium.

| | |
|---|---|
| **Warehouse and Fulfillment Related Expenses** | FSS will pay one hundred percent (100%) of the employee, lease and shipping expenses associated with the warehouse and fulfillment operations in connection with the sale of PQPR and FSS Inventory. |
| **PQPR Debt** | FSS owes PQPR as represented by the notes dated August 13, 2020, and November 10, 2021 in the total original amount of $54,888,000. Currently, FSS is paying PQPR $11,000 per business day. As a temporary accommodation to FSS, PQPR agrees to reduce the amount FSS will pay to PQPR to $2,500 per business day to be applied to interest on the PQPR Notes for thirty (30) days following the effective date of this agreement, increasing to $5,500 per business day thereafter through the term of this forbearance agreement. |
| | FSS will acknowledge the validity and priority of the PQPR debt and liens and will agree to a replacement lien of equal scope and priority to PQPR's existing liens. |
| **Term:** | 60 Days |
| **Reservation:** | Subject to revision after implementation based on actual operational results. |

Executed this 12 day of July 2022.


Free Speech Systems, LLC


By: _____

Marc Schwartz, Its Chief Restructuring Officer



PQPR Holdings Limited, LLC


By: _____

David Jones, Its Manager

LLC

By: _____ Its Manager

PQPR-5

**EXHIBIT A**

**13-Week  Budget**

006455

Free Speech Systems LLC

## Forecasted 13 Week Cash Flow Budget
### Between July 30, 2022 and October 28, 2022

| | Period 07/30/2022- 08/05/2022 | 08/06/2022- 08/12/2022 | 08/13/2022- 08/19/2022 | 08/20/2022- 08/26/2022 | 08/27/2022- 09/02/2022 | 09/03/2022- 09/09/2022 | 09/10/2022- 09/16/2022 | 09/17/2022- 09/23/2022 | 09/24/2022- 09/30/2022 | 10/01/2022- 10/07/2022 | 10/08/2022- 10/14/2022 | 10/15/2022- 10/21/2022 | 10/22/2022- 10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| **Income** | | | | | | | | | | | | | | |
| Product Sales | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 | $ 7,741,357.16 |
| Advertising | | | | | | | | | | | | | | 1,440,499.38 |
| Donations | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 3,141.25 | 480,166.46 | 480,166.46 | 40,836.21 |
| **Total Income** | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 598,630.26 | 598,630.26 | 1,078,796.72 | 598,630.26 | 9,222,692.75 |
| **Selling & Product Costs** | | | | | | | | | | | | | | |
| Inventory Purchase | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (76,155.17) | (990,017.27) |
| Repay PQPR Inventory | | (250,000.00) | | (500,000.00) | | | | | | | | | | (750,000.00) |
| Merchant Account Fees | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (26,797.01) | (348,346.07) |
| Shipping cost for drop ship orders | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (7,911.81) | (102,853.59) |
| Fulfillment Services | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (95,278.24) | (1,238,617.15) |
| Processor Fees | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (23,819.56) | (309,654.29) |
| eCommerce Store Maintenance | (27,270.00) | | | | | | | | (27,270.00) | | | | | (81,810.00) |
| Total Sales Tax | (5,337.87) | | | | (5,337.87) | | | | (5,337.87) | | | | | (16,013.61) |
| **Total Cost of Goods Sold** | (262,569.67) | (479,961.80) | (229,961.80) | (729,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (262,569.67) | (229,961.80) | (229,961.80) | (229,961.80) | (229,961.80) | (3,837,326.97) |
| **Operating Expenses** | | | | | | | | | | | | | | |
| **Advertising & Promotion** | | | | | | | | | | | | | | |
| Advertising & Promotion | (3,041.98) | | | | (3,041.98) | | | | (3,041.98) | | | | | (9,125.93) |
| Print Media | (3,000.00) | | | | (3,000.00) | | | | (3,000.00) | | | | | (9,000.00) |
| Radio Show Advertising | (11,500.00) | | | | (11,500.00) | | | | (11,500.00) | | | | | (34,500.00) |
| **Total Advertising & Promotion** | (17,541.98) | | | | (17,541.98) | | | | (17,541.98) | | | | | (52,625.93) |
| **Computer/IT/IP Expense** | | | | | | | | | | | | | | |
| Internet & TV services | (2,082.90) | (1,608.39) | | | (2,082.90) | (1,608.39) | | | (2,082.90) | | (1,608.39) | | | (11,073.89) |
| Software License Fees | (140.80) | | | | (140.80) | | | | (140.80) | | | | | (422.40) |
| Server Hosting Service | (28,595.13) | | | | (28,595.13) | | | | (28,595.13) | | | | | (85,785.40) |
| CDN Video Cloud Storage | (55,728.00) | | | | (55,728.00) | | | | (55,728.00) | | | | | (167,184.00) |
| Satellite Service | (137,282.93) | | | | (137,282.93) | | | | (137,282.93) | | | | | (411,848.78) |
| Imaging License Fee | (9,201.25) | | | | (9,201.25) | | | | (9,201.25) | | | | | (27,603.75) |
| Software & Apps | (5,000.00) | | | | (5,000.00) | | | | (5,000.00) | | | | | (15,000.00) |
| Website Hosting | | | (266.50) | | | | (266.50) | | | | | (266.50) | | (799.50) |
| **Total Computer/IT/IP Expense** | (238,031.01) | (1,874.89) | | | (238,031.01) | | (1,874.89) | | (238,031.01) | | | (1,874.89) | | (719,717.72) |
| Insurance | (2,166.50) | | | | (2,166.50) | | | | (2,166.50) | | | | | (6,499.50) |
| **Office & Administrative Expense** | | | | | | | | | | | | | | |
| Bank Fees & Service Charges | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (45.90) | (596.74) |
| Equipment Rental | (1,989.96) | | | | (1,989.96) | | | | (1,989.96) | | | | | (5,969.69) |
| Office Supplies/Printing/Copy | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (2.10) | (27.31) |
| Business Meals | (280.46) | (328.46) | (280.46) | (328.46) | (280.46) | (328.46) | (280.46) | (328.46) | (280.46) | (328.46) | (280.46) | (328.46) | (328.46) | (3,645.97) |
| **Total Office & Administrative Expense** | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (2,318.36) | (328.46) | (328.46) | (328.46) | (328.46) | (10,239.71) |
| Outsourced Services | (45,980.00) | | | | (45,980.00) | | | | (45,980.00) | | | | | (137,940.00) |
| Consulting Services | (22,670.00) | (12,000.00) | | (12,000.00) | (22,670.00) | | (12,000.00) | | (22,670.00) | | | (12,000.00) | | (104,010.00) |
| **Utilities** | | | | | | | | | | | | | | |
| Electricity | (256.19) | | (5,107.63) | | (256.19) | | (5,107.63) | | (256.19) | | | (5,107.63) | | (15,322.89) |
| HVAC | (20,364.16) | | | | (20,364.16) | | | | (20,364.16) | | | | | (61,092.48) |
| CAM Charges | (1,708.55) | | | | (1,708.55) | | | | (1,708.55) | | | | | (5,125.66) |
| Water & Sewer | (132.09) | | | | (132.09) | | | | (132.09) | | | | | (396.28) |
| Gas Service | (244.65) | | | | (244.65) | | | | (244.65) | | | | | (733.95) |
| Pest Control | | | | | | | | | | | | | | |
| Waste Management | (351.81) | | | | (351.81) | | | | (351.81) | | | | | (1,055.43) |
| **Total Utilities** | (23,057.46) | | (5,107.63) | | (23,057.46) | | (5,107.63) | | (23,057.46) | | | (5,107.63) | | (84,495.27) |
| **Occupancy** | | | | | | | | | | | | | | |
| Rent | (33,408.51) | | | | (33,408.51) | | | | (33,408.51) | | | | | (100,225.53) |
| Off-Site Security | (31,111.90) | | | | (31,111.90) | | | | (31,111.90) | | | | | (93,335.69) |
| Repairs & Maintenance - Building | (1,777.19) | | | | (1,777.19) | | | | (1,777.19) | | | | | (5,331.56) |
| Janitorial | (5,983.33) | | | | (5,983.33) | | | | (5,983.33) | | | | | (17,950.00) |
| **Total Occupancy** | (72,280.93) | | | | (72,280.93) | | | | (72,280.93) | | | | | (216,842.78) |
| Supplies | (1,258.02) | | | | (1,258.02) | | | | (1,258.02) | | | | | (3,774.07) |

PQPR-6

**Free Speech Systems LLC**
**Forecasted 13 Week Cash Flow Budget**
Between July 30, 2022 and October 28, 2022

| Period | 07/30/2022- 08/05/2022 | 08/06/2022- 08/12/2022 | 08/13/2022- 08/19/2022 | 08/20/2022- 08/26/2022 | 08/27/2022- 09/02/2022 | 09/03/2022- 09/09/2022 | 09/10/2022- 09/16/2022 | 09/17/2022- 09/23/2022 | 09/24/2022- 09/30/2022 | 10/01/2022- 10/07/2022 | 10/08/2022- 10/14/2022 | 10/15/2022- 10/21/2022 | 10/22/2022- 10/28/2022 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Telephone | (18,337.88) | - | - | - | (18,337.88) | - | - | - | (18,337.88) | - | - | - | - | (55,013.65) |
| **Personnel Expenses** | | | | | | | | | | | | | | |
| Salaries & Wages - Base | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | - | (168,467.44) | (1,179,272.08) |
| Payroll Tax | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | - | (13,971.09) | (97,797.65) |
| Alex Jones Salary | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | - | (54,166.67) | (379,166.67) |
| **Total Personnel Expenses** | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | - | (236,605.20) | (1,656,236.39) |
| **Travel** | | | | | | | | | | | | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (1,295.98) |
| Vehicle Leases | - | (1,470.56) | - | - | - | (1,470.56) | - | - | - | - | - | (1,470.56) | - | (4,411.68) |
| **Total Travel Expenses** | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (99.69) | (99.69) | (99.69) | (99.69) | (1,570.25) | (99.69) | (5,707.66) |
| **Total Operating Expenses** | (680,347.03) | (1,898.71) | (256,015.88) | (428.15) | (680,347.03) | (1,898.71) | (256,015.88) | (428.15) | (680,347.03) | (428.15) | (238,503.91) | (19,410.68) | (237,033.35) | (3,053,102.68) |
| **Non-Operating Expenses** | | | | | | | | | | | | | | |
| Payment on PQPR Note | (12,500.00) | (15,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (27,500.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (55,000.00) | (523,000.00) |
| AMEX Payment | (172,390.28) | - | - | - | (172,390.28) | - | (172,390.28) | - | (172,390.28) | - | (172,390.28) | - | (172,390.28) | (1,034,341.69) |
| **Total Other Expenses** | (184,890.28) | (15,500.00) | (27,500.00) | (27,500.00) | (199,890.28) | (27,500.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (227,390.28) | (55,000.00) | (227,390.28) | (1,557,341.69) |
| **Professional Fees** | | | | | | | | | | | | | | |
| CRO Fees | - | - | - | - | - | - | (52,992.00) | - | (35,328.00) | - | - | - | - | (88,320.00) |
| Financial Advisor Fee | - | - | - | - | - | - | (57,876.00) | - | (40,352.00) | - | - | - | - | (98,228.00) |
| Shannon & Lee LLP | - | - | - | - | - | - | (40,000.00) | - | (60,000.00) | - | - | - | - | (100,000.00) |
| Ray Battaglia | - | - | - | - | - | - | (24,000.00) | - | (24,000.00) | - | - | - | - | (48,000.00) |
| **Total Professional Fees** | - | - | - | - | - | - | (174,868.00) | - | (159,680.00) | - | - | - | - | (334,548.00) |
| **Total Cash Flow** | $ (529,176.72) | $ 101,269.75 | $ (87,237.70) | $ 320,906.27 | $ (544,176.72) | $ 339,269.75 | $ (289,605.70) | $ 793,406.77 | $ (731,356.72) | $ 313,240.31 | $ (97,225.73) | $ 774,424.24 | $ 76,635.11 | $ 440,373.41 |

PQPR-6

# Forecasted 3 Week Cash Flow Budget
## Between July 30, 2022 and August 19, 2022

| | Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 |
|---|---|---|---|---|
| | Week Number | 1 | 2 | 3 |
| **Income** | | | | |
| Product Sales | | $ 595,489.01 | $ 595,489.01 | $ 595,489.01 |
| Advertising | | - | - | - |
| Donations | | 3,141.25 | 3,141.25 | 3,141.25 |
| **Total Income** | | **598,630.26** | **598,630.26** | **598,630.26** |
| **Selling & Product Costs** | | | | |
| Inventory Purchase | | (76,155.17) | (76,155.17) | (76,155.17) |
| Repay PQPR Inventory | | - | (250,000.00) | - |
| Merchant Account Fees | | (26,797.01) | (26,797.01) | (26,797.01) |
| Shipping cost for drop ship orders | | (7,911.81) | (7,911.81) | (7,911.81) |
| Fulfillment Services | | (95,278.24) | (95,278.24) | (95,278.24) |
| Processor Fees | | (23,819.56) | (23,819.56) | (23,819.56) |
| eCommerce Store Maintenance | | (27,270.00) | - | - |
| Texas Sales Tax | | (5,337.87) | - | - |
| **Total Cost of Goods Sold** | | **(262,569.67)** | **(479,961.80)** | **(229,961.80)** |
| **Operating Expenses** | | | | |
| **Advertising & Promotion** | | | | |
| Advertising & Promotion | | (3,041.98) | - | - |
| Print Media | | (3,000.00) | - | - |
| Radio Show Advertising | | (11,500.00) | - | - |
| **Total Advertising & Promotion** | | **(17,541.98)** | **-** | **-** |
| **Computer/IT/IP Expense** | | | | |
| Internet & TV services | | (2,082.90) | - | (1,608.39) |
| Software License Fees | | (140.80) | - | - |
| Server Hosting Service | | (28,595.13) | - | - |
| CDN Video Cloud Storage | | (55,728.00) | - | - |
| Satellite Service | | (137,282.93) | - | - |
| Imaging License Fee | | (9,201.25) | - | - |
| Software & Apps | | (5,000.00) | - | - |
| Website Hosting | | - | - | (266.50) |
| **Total Computer/IT/IP Expense** | | **(238,031.01)** | **-** | **(1,874.89)** |
| Insurance | | (2,166.50) | - | - |
| **Office & Administrative Expense** | | | | |
| Bank Fees & Service Charges | | (45.90) | (45.90) | (45.90) |
| Equipment Rental | | (1,989.90) | - | - |
| Office Supplies/Printing/Copy | | (2.10) | (2.10) | (2.10) |
| Business Meals | | (280.46) | (280.46) | (280.46) |
| **Total Office & Administrative Expense** | | **(2,318.36)** | **(328.46)** | **(328.46)** |
| | | | | |
| Outsourced Services | | (45,980.00) | - | - |
| Consulting Services | | (22,670.00) | - | (12,000.00) |
| **Utilities** | | | | |
| Electricity | | - | - | (5,107.63) |
| HVAC | | (256.19) | - | - |

PQPR-7



EXHIBIT

10

006458

exhibitsticker.com

| Period | 07/30/2022-08/05/2022 | 08/06/2022-08/12/2022 | 08/13/2022-08/19/2022 |
|---|---|---|---|
| CAM Charges | (20,364.16) | - | - |
| Water & Sewer | (1,708.55) | - | - |
| Gas Service | (132.09) | - | - |
| Pest Control | (244.65) | - | - |
| Waste Management | (351.81) | - | - |
| **Total Utilities** | **(23,057.46)** | **-** | **(5,107.63)** |
| **Occupancy** | | | |
| Rent | (33,408.51) | - | - |
| Office Security | (31,111.90) | - | - |
| Repair & Maintenance - Building | (1,777.19) | - | - |
| Janitorial | (5,983.33) | - | - |
| **Total Occupancy** | **(72,280.93)** | **-** | **-** |
| Supplies | (1,258.02) | - | - |
| Telephone | (18,337.88) | - | - |
| **Personnel Expenses** | | | |
| Salaries & Wages - Base | (168,467.44) | - | (168,467.44) |
| Payroll Tax | (13,971.09) | - | (13,971.09) |
| Alex Jones Salary | (54,166.67) | - | (54,166.67) |
| **Total Personnel Expenses** | **(236,605.20)** | **-** | **(236,605.20)** |
| **Travel** | | | |
| Mileage/Parking/Tolls | (99.69) | (99.69) | (99.69) |
| Vehicle Leases | - | (1,470.56) | - |
| **Total Travel Expenses** | **(99.69)** | **(1,570.25)** | **(99.69)** |
| **Total Operating Expenses** | **(680,347.03)** | **(1,898.71)** | **(256,015.88)** |
| ***Non-Operating Expenses*** | | | |
| Payment on PQPR Note | (12,500.00) | (15,500.00) | (27,500.00) |
| AMEX Payment | (172,390.28) | - | (172,390.28) |
| **Total Other Expenses** | **(184,890.28)** | **(15,500.00)** | **(199,890.28)** |
| **Professional Fees** | | | |
| CRO Fees | - | - | - |
| Financial Adviosr Fee | - | - | - |
| Shannon & Lee LLP | - | - | - |
| Ray Battaglia | - | - | - |
| **Total Professional Fees** | **-** | **-** | **-** |
| **Total Cash Flow** | **$ (529,176.72)** | **$ 101,269.75** | **$ (87,237.70)** |

**PQPR-7**

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 24, 2022

Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## SECOND INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). This order is the second interim order ("Second Interim Order"), negotiated between the Debtor and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral. The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      Interim Use. The Court approves the interim use of cash collateral as set forth herein.

006460

2.     Interim Order. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.     DIP Account. The Debtor shall maintain debtor in possession ("DIP") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "DIP Account").  All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.     Terms of Cash Collateral Use. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Second Interim Order (the "Interim Period") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.     No Payments to Insiders. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $20,000.

6.     Payment to PQPR for Inventory Purchase. Notwithstanding the limitation on payments to insiders set forth in the preceding paragraph, the Debtor is authorized to use Cash Collateral to pay PQPR up to $750,000 as provided in the Budget for "Repay PQPR Inventory" (each payment comprising a portion of the $750,000, a "PQPR Payment").  Creditors and parties in interest shall have thirty (30) days from the date

they receive notice that a PQPR Payment was issued to object to the appropriateness of that payment and file pleadings with the Court seeking to clawback the PQPR Payment. The Debtor shall provide notice of a PQPR Payment to creditors and parties in interest on the same day the payment is issued.

7.      Further Authorization.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.      Taxes.  Nothing in this Order shall be construed to grant PQPR (the "Pre-Petition Lender") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.      Adequate Protection – Replacement Liens.      The adequate protection and related carve outset forth in the First Interim Order are incorporated in the Second Interim Order.

10.     Subsequent Modification of Order. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.     Credit Card Processing. The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.

12.     Reporting. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the

006462

U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

13.     <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14.     <u>Discovery</u>. The Tort Plaintiffs issued written discovery to the Debtor and PQPR relating to the use of cash collateral on a final basis. PQPR and the Debtor will provide written discovery responses and produce responsive documents to the Tort Plaintiffs no later than August 30. If PQPR and the Debtor have objections to discovery, it will be their obligation file written objections to discovery before August 30, 2022. PQPR and the Debtor will make a good faith effort to begin producing responsive documents on a rolling basis as soon as possible, but not later than August 29th, 2022. The Tort Plaintiffs will provide deposition topics no later than August 22, which may be subject to amendment once document production is reviewed. The Debtor shall present a corporate representative for deposition on September 6, 2022. PQPR shall present a corporate representative for deposition on September 8. PQPR, the Debtor, and the Tort Plaintiffs agree that any discovery dispute may be heard on an emergency basis.

15.     <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on September 13, 2022, at 1:00 p.m. Central time.

Signed:  August 24, 2022

Christopher Lopez
United States Bankruptcy Judge

006463

**Free Speech Systems LLC**
**Forecasted Interim Cash Flow Budget (Week 4 - Week 7)**
**Between August 20, 2022 and September 16, 2022**

| | Period | 08/20/2022-<br>08/26/2022 | 08/27/2022-<br>09/02/2022 | 09/03/2022-<br>09/09/2022 | 09/10/2022-<br>09/16/2022 | Total |
|---|---|---|---|---|---|---|
| | Week Number | 4 | 5 | 6 | 7 | |
| **Income** | | | | | | |
| Product Sales | | $ 900,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 3,900,000.00 |
| Advertising | | $ 480,166.46 | $ - | $ - | $ - | $ 480,166.46 |
| Donations | | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 12,564.99 |
| **Total Income** | | $ 1,383,307.71 | $ 1,003,141.25 | $ 1,003,141.25 | $ 1,003,141.25 | $ 4,392,731.45 |
| **Selling & Product Costs** | | | | | | |
| Inventory Purchase | | $ (76,155.17) | $ (76,155.17) | $ (225,294.19) | $ (225,294.19) | $ (602,898.72) |
| Repay PQPR Inventory | | $ (250,000.00) | | $ (500,000.00) | | $ (750,000.00) |
| Merchant Account Fees | | $ (44,100.00) | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (191,100.00) |
| Shipping cost for drop ship orders | | $ (11,957.62) | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (51,816.36) |
| Fulfillment Services | | $ (219,512.20) | $ (243,902.44) | $ (243,902.44) | $ (243,902.44) | $ (951,219.51) |
| Processor Fees | | $ (36,000.00) | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (156,000.00) |
| eCommerce Store Maintenance | | $ - | $ (27,270.00) | $ - | $ - | $ (27,270.00) |
| Texas Sales Tax | | $ - | $ (5,337.87) | $ - | $ - | $ (5,337.87) |
| **Total Cost of Goods Sold** | | $ (637,724.99) | $ (454,951.73) | $ (1,071,482.87) | $ (571,482.87) | $ (2,735,642.47) |
| **Operating Expenses** | | | | | | |
| **Advertising & Promotion** | | | | | | |
| Advertising & Promotion | | $ - | $ (3,041.98) | $ - | $ - | $ (3,041.98) |
| Print Media | | $ - | $ (3,000.00) | $ - | $ - | $ (3,000.00) |
| Radio Show Advertising | | $ - | $ (11,500.00) | $ - | $ - | $ (11,500.00) |
| **Total Advertising & Promotion** | | $ - | $ (17,541.98) | $ - | $ - | $ (17,541.98) |
| **Computer/IT/IP Expense** | | | | | | |
| Internet & TV services | | $ - | $ (2,082.90) | $ - | $ (1,608.39) | $ (3,691.30) |
| Software License Fees | | $ - | $ (140.80) | $ - | $ - | $ (140.80) |
| Server Hosting Service | | $ - | $ (28,595.13) | $ - | $ - | $ (28,595.13) |
| CDN Video Cloud Storage | | $ - | $ (55,728.00) | $ - | $ - | $ (55,728.00) |
| Satellite Service | | $ - | $ (137,282.93) | $ - | $ - | $ (137,282.93) |
| Imaging License Fee | | $ - | $ (9,201.25) | $ - | $ - | $ (9,201.25) |
| Software & Apps | | $ - | $ (5,000.00) | $ - | $ - | $ (5,000.00) |
| Website Hosting | | $ - | $ - | $ - | $ (266.50) | $ (266.50) |
| **Total Computer/IT/IP Expense** | | $ - | $ (238,031.01) | $ - | $ (1,874.89) | $ (239,905.91) |
| Insurance | | $ - | $ (2,166.50) | $ - | $ - | $ (2,166.50) |
| **Office & Administrative Expense** | | | | | | $ - |
| Bank Fees & Service Charges | | $ (69.38) | $ (77.08) | $ (77.08) | $ (77.08) | $ (300.63) |
| Equipment Rental | | $ - | $ (1,989.90) | $ - | $ - | $ (1,989.90) |
| Office Supplies/Printing/Copy | | $ (3.17) | $ (3.53) | $ (3.53) | $ (3.53) | $ (13.76) |
| Business Meals | | $ (423.88) | $ (470.97) | $ (470.97) | $ (470.97) | $ (1,836.79) |
| **Total Office & Administrative Expense** | | $ (496.43) | $ (2,541.48) | $ (551.58) | $ (551.58) | $ (4,141.08) |
| Outsourced Services | | $ - | $ - | $ - | $ - | |
| Consulting Services | | $ - | $ - | $ - | $ - | |
| **Utilities** | | | | | | |
| Electricity | | $ - | $ - | $ - | $ (5,107.63) | $ (5,107.63) |
| HVAC | | $ - | $ (256.19) | $ - | $ - | $ (256.19) |
| CAM Charges | | $ - | $ (20,364.16) | $ - | $ - | $ (20,364.16) |
| Water & Sewer | | $ - | $ (1,708.55) | $ - | $ - | $ (1,708.55) |
| Gas Service | | $ - | $ (132.09) | $ - | $ - | $ (132.09) |
| Pest Control | | $ - | $ (244.65) | $ - | $ - | $ (244.65) |
| Waste Management | | $ - | $ (351.81) | $ - | $ - | $ (351.81) |
| **Total Utilities** | | $ - | $ (23,057.46) | $ - | $ (5,107.63) | $ (28,165.09) |
| **Occupancy** | | | | | | |
| Rent | | $ - | $ (33,408.51) | $ - | $ - | $ (33,408.51) |
| Office Security | | $ - | $ (31,111.90) | $ - | $ - | $ (31,111.90) |
| Repair & Maintenance - Building | | $ - | $ (1,777.19) | $ - | $ - | $ (1,777.19) |
| Janitorial | | $ - | $ (5,983.33) | $ - | $ - | $ (5,983.33) |
| **Total Occupancy** | | $ - | $ (72,280.93) | $ - | $ - | $ (72,280.93) |
| Supplies | | $ - | $ (1,258.02) | $ - | $ - | $ (1,258.02) |
| Telephone | | | $ (18,337.88) | $ - | $ - | $ (18,337.88) |
| **Personnel Expenses** | | | | | | $ - |
| Salaries & Wages - Base | | $ - | $ (168,467.44) | $ - | $ (168,467.44) | $ (336,934.88) |
| Payroll Tax | | $ - | $ (13,287.76) | $ - | $ (13,287.76) | $ (26,575.52) |
| Alex Jones Salary | | $ - | $ (20,000.00) | $ - | $ (20,000.00) | $ (40,000.00) |



EXHIBIT

PQPR-8

006464

**Free Speech Systems LLC**
**Forecasted Interim Cash Flow Budget (Week 4 - Week 7)**

**Between August 20, 2022 and September 16, 2022**

| Period | 08/20/2022-08/26/2022 | 08/27/2022-09/02/2022 | 09/03/2022-09/09/2022 | 09/10/2022-09/16/2022 | Total |
|---|---|---|---|---|---|
| Total Personnel Expenses | $ - | $ (201,755.20) | $ - | $ (201,755.20) | $ (403,510.40) |
| **Travel** | | | | | $ - |
| Mileage/Parking/Tolls | $ (150.67) | $ (167.41) | $ (167.41) | $ (167.41) | $ (652.90) |
| Vehicle Leases | $ - | $ - | $ (1,470.56) | $ - | $ (1,470.56) |
| **Total Travel Expenses** | $ (150.67) | $ (167.41) | $ (1,637.97) | $ (167.41) | $ (2,123.46) |
| **Total Operating Expenses** | $ (647.10) | $ (577,137.87) | $ (2,189.56) | $ (209,456.72) | $ (789,431.24) |
| ***Non-Operating Expenses*** | | | | | $ - |
| Payment on PQPR Note | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| AMEX Payment | $ - | $ - | $ - | $ - | $ - |
| **Total Other Expenses** | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| **Professional Fees** | | | | | |
| Subchapter v Trustee retainer | | | | $ (25,000.00) | $ (25,000.00) |
| Fulfillment Expert | $ (12,500.00) | $ - | $ - | $ - | $ (12,500.00) |
| Witness expenses and cost | | | | | |
| Pattis & Smith | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| Reynal Law Firm, PC | $ - | $ - | $ (50,000.00) | $ - | $ (50,000.00) |
| SALLC Fees | $ - | $ - | $ - | | $ - |
| Shannon & Lee LLP | $ - | $ - | $ - | | $ - |
| Ray Battaglia | $ - | $ - | $ - | | $ - |
| **Total Professional Fees** | $ (12,500.00) | $ - | $ (150,000.00) | $ (25,000.00) | $ (187,500.00) |
| **Total Cash Flow** | $ 727,435.62 | $ (33,948.36) | $ (225,531.18) | $ 192,201.66 | $ 660,157.73 |

006465

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
September 13, 2022
Nathan Ochsner, Clerk

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 22-60043** |
| **FREE SPEECH SYSTEMS, LLC.,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |

## THIRD INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND PROVIDING PARTIAL ADEQUATE PROTECTION

On July 29, 2022, the above-captioned debtor and debtor-in-possession (the "Debtor" or "FSS") in the above-captioned chapter 11 case (the "Case"), filed its *Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion"). In the Motion, the Debtor requested, *inter alia*, entry of an interim order pursuant to Sections 105, 361, and 363 of title 11 of the United States Code,11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and in accordance with Rules 2002, 4001,and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. The Court held an interim hearing on the Motion on August 3, 2022 (the "Interim Hearing") and entered an order approving the interim use of cash collateral. (the "First Interim Order"). On August 24, 2022, the Court entered a *Second Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* ("Second Interim Order") [Dkt. No. 98]. This order is the third interim order ("Third Interim Order"), negotiated between the Debtor and certain tort claimants pursuing litigation against the Debtor and others in Texas and Connecticut (the "Tort Plaintiffs"). The Debtor and the Tort Plaintiffs reserve all rights relating to a final hearing on the use of cash collateral. The findings contained in the First Interim Order are incorporated by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.    Interim Use. The Court approves the interim use of cash collateral as set forth herein.

006466

2.     <u>Interim Order</u>. This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

3.     <u>DIP Account</u>. The Debtor shall maintain debtor in possession ("<u>DIP</u>") accounts at Axos Bank which accounts shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "<u>DIP Account</u>").  All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's pre-petition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Order, or pursuant to further order of the Court.

4.     <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral during the period covered by this Third Interim Order (the "<u>Interim Period</u>") to pay the items set forth in the revised Budget attached to this Order as Exhibit A, and up to the respective aggregate amount of disbursements set forth in the Budget for any week during the Interim Period, subject to the Permitted Variance (as hereinafter defined). The Permitted Variance shall be defined as 10% per line item and 20% of the overall Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to the Budget and upon the terms and conditions set forth in this Order.

5.     <u>No Payments to Insiders</u>. Other than as provided for in the Budget, the Debtor shall not make any payment to or for the benefit of any insider of the Debtor, either directly or indirectly, as that term is defined in section 101(31) of the Bankruptcy Code.  Other than as provided for in the Budget, no payments to any insider during the Interim Period shall exceed $20,000.

6.     <u>Payment to PQPR for Inventory Purchase</u>. The (i) rights of Creditors and parties in interest to object to the appropriateness of post-petition payments to PQPR for Inventory Purchases and file pleadings with the Court seeking to clawback the PQPR Payment and (ii) the obligation of the Debtor to provide notice

006467

of a PQPR Payment to creditors and parties in interest as set forth in the First and Second Interim Cash Collateral Orders are fully preserved by this Order.

7.     <u>Further Authorization</u>.  The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit same in the DIP Account.

8.     <u>Taxes</u>.  Nothing in this Order shall be construed to grant PQPR (the "<u>Pre-Petition Lender</u>") liens which are senior to pre- and post-petition statutory ad valorem real property tax liens. The Debtor shall remain current in all post-petition tax payments and reporting obligations, including, but not limited to, all ad valorem real property taxes and federal trust fund taxes.

9.     <u>Adequate Protection – Replacement Liens</u>.  The adequate protection and related carve out set forth in the First and Second Interim Orders are incorporated in the Third Interim Order.

10.    <u>Subsequent Modification of Order</u>. If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

11.    <u>Credit Card Processing</u>. The Debtor is authorized to instruct its credit card processor to remit to Blue Ascension, LLC its fulfillment charges as set forth in the *Emergency Motion to Amend Interim Order Authorizing the Use of Cash Collateral*, from the daily settlement contemporaneously with the distributions to FSS and PQPR.

12.    <u>Reporting</u>. The Debtor shall report each Tuesday for the preceding calendar week reflecting weekly sales and disbursement of the proceeds of those sales.  A copy of the report shall be forwarded to the U.S. Trustee, the Subchapter V Trustee, counsel for PQPR and Jarrod Martin as a representative of the Tort Plaintiffs.

006468

13.      <u>Reservation of Rights</u>. Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes.

14.      <u>Final Cash Collateral Hearing</u>: A final hearing on the Motion shall be held before this Court on October 12, 2022, at 10:00 a.m. Central time.

Signed:  September 13, 2022

Christopher Lopez
United States Bankruptcy Judge

006469

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 8- Week 11)**

**Between September 17, 2022 and October 14, 2022**

| | Period | 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | Total |
|---|---|---|---|---|---|---|
| | Week Number | 8 | 9 | 10 | 11 | |
| **Income** | | | | | | |
| Product Sales | | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 4,000,000.00 |
| Advertising | | $ 100,000.00 | $ 100,000.00 | $ 100,000.00 | $ 100,000.00 | $ 400,000.00 |
| Donations | | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 3,141.25 | $ 12,564.99 |
| **Total Income** | | **$ 1,103,141.25** | **$ 1,103,141.25** | **$ 1,103,141.25** | **$ 1,103,141.25** | **$ 4,412,564.99** |
| **Selling & Product Costs** | | | | | | |
| Inventory Purchase | | $ (225,294.19) | $ (225,294.19) | $ (225,294.19) | $ (225,294.19) | $ (901,176.75) |
| Repay PQPR Inventory | | $ - | $ - | $ - | $ - | $ - |
| Merchant Account Fees | | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (49,000.00) | $ (196,000.00) |
| Shipping cost for drop ship orders | | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (13,286.25) | $ (53,144.99) |
| Fulfillment Services | | $ (293,902.44) | $ (293,902.44) | $ (293,902.44) | $ (293,902.44) | $ (1,175,609.76) |
| Processor Fees | | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (40,000.00) | $ (160,000.00) |
| eCommerce Store Maintenance | | $ - | $ (27,270.00) | $ - | $ - | $ (27,270.00) |
| Texas Sales Tax | | $ - | $ (5,337.87) | $ - | $ - | $ (5,337.87) |
| **Total Cost of Goods Sold** | | **$ (621,482.87)** | **$ (654,090.74)** | **$ (621,482.87)** | **$ (621,482.87)** | **$ (2,518,539.36)** |
| **Operating Expenses** | | | | | | |
| **Advertising & Promotion** | | | | | | |
| Advertising & Promotion | | $ - | $ (3,041.98) | $ - | $ - | $ (3,041.98) |
| Print Media | | $ - | $ (3,000.00) | $ - | $ - | $ (3,000.00) |
| Radio Show Advertising | | $ - | $ (11,500.00) | $ - | $ - | $ (11,500.00) |
| **Total Advertising & Promotion** | | **$ -** | **$ (17,541.98)** | **$ -** | **$ -** | **$ (17,541.98)** |
| **Computer/IT/IP Expense** | | | | | | |
| Internet & TV services | | $ - | $ (2,082.90) | $ - | $ (1,608.39) | $ (3,691.30) |
| Software License Fees | | $ - | $ (140.80) | $ - | $ - | $ (140.80) |
| Server Hosting Service | | $ - | $ (28,595.13) | $ - | $ - | $ (28,595.13) |
| CDN Video Cloud Storage | | $ - | $ (55,728.00) | $ - | $ - | $ (55,728.00) |
| Satellite Service | | $ - | $ (137,282.93) | $ - | $ - | $ (137,282.93) |
| Imaging License Fee | | $ - | $ (9,201.25) | $ - | $ - | $ (9,201.25) |
| Software & Apps | | $ - | $ (5,000.00) | $ - | $ - | $ (5,000.00) |
| 62410 Contract Broadcase Services | | $ (11,200.00) | | | | $ (11,200.00) |
| 62420 Contract Radio Show Production | | $ (25,000.00) | | | | $ (25,000.00) |
| 62430 Contract Video Production | | $ (10,000.00) | | | | $ (10,000.00) |
| 62470 Free Lance Contributors | | $ (3,500.00) | | | | $ (3,500.00) |
| Website Hosting | | $ - | $ - | $ - | $ - | |
| **Total Computer/IT/IP Expense** | | **$ (49,700.00)** | **$ (238,031.01)** | **$ -** | **$ (1,608.39)** | **$ (289,339.41)** |
| Insurance | | $ - | $ (2,166.50) | $ - | | $ (2,166.50) |
| **Office & Administrative Expense** | | | | | | |
| Bank Fees & Service Charges | | $ (77.08) | $ (77.08) | $ (77.08) | $ (77.08) | $ (308.34) |
| Equipment Rental | | $ - | $ (1,989.90) | $ - | $ - | $ (1,989.90) |
| Office Supplies/Printing/Copy | | $ (3.53) | $ (3.53) | $ (3.53) | $ (3.53) | $ (14.11) |
| Business Meals | | $ (470.97) | $ (470.97) | $ (470.97) | $ (470.97) | $ (1,883.89) |
| **Total Office & Administrative Expense** | | **$ (551.58)** | **$ (2,541.48)** | **$ (551.58)** | **$ (551.58)** | **$ (4,196.24)** |
| **Utilities** | | | | | | |
| Electricity | | $ - | $ - | $ - | $ (5,107.63) | $ (5,107.63) |
| HVAC | | $ - | $ (256.19) | $ - | $ - | $ (256.19) |
| CAM Charges | | $ - | $ (20,364.16) | $ - | $ - | $ (20,364.16) |
| Water & Sewer | | $ - | $ (1,708.55) | $ - | $ - | $ (1,708.55) |

006470

**Free Speech Systems LLC**

**Forecasted Interim Cash Flow Budget (Week 8- Week 11)**

**Between  September 17, 2022 and October 14, 2022**

| | Period | 09/17/2022-09/23/2022 | 09/24/2022-09/30/2022 | 10/01/2022-10/07/2022 | 10/08/2022-10/14/2022 | Total |
|---|---|---|---|---|---|---|
| Gas Service | | $ - | $ (132.09) | $ - | $ - | $ (132.09) |
| Pest Control | | $ - | $ (244.65) | $ - | $ - | $ (244.65) |
| Waste Management | | $ - | $ (351.81) | $ - | $ - | $ (351.81) |
| **Total Utilities** | | **$ -** | **$ (23,057.46)** | **$ -** | **$ (5,107.63)** | **$ (28,165.09)** |
| **Occupancy** | | | | | | |
| Rent | | $ - | $ (33,408.51) | $ - | $ - | $ (33,408.51) |
| Office Security | | $ - | $ (31,111.90) | $ - | $ - | $ (31,111.90) |
| Repair & Maintenance - Building | | $ - | $ (1,777.19) | $ - | $ - | $ (1,777.19) |
| Janitorial | | $ - | $ (5,983.33) | $ - | $ - | $ (5,983.33) |
| **Total Occupancy** | | **$ -** | **$ (72,280.93)** | **$ -** | **$ -** | **$ (72,280.93)** |
| Supplies | | $ - | $ (1,258.02) | $ - | $ - | $ (1,258.02) |
| Telephone | | $ - | $ (18,337.88) | $ - | $ - | $ (18,337.88) |
| **Personnel Expenses** | | | | | | $ - |
| Salaries & Wages - Base | | $ - | $ (168,467.44) | $ - | $ (168,467.44) | $ (336,934.88) |
| Payroll Tax | | $ - | $ (13,287.76) | $ - | $ (13,287.76) | $ (26,575.52) |
| Alex Jones Salary | | $ - | $ (20,000.00) | $ - | $ (20,000.00) | $ (40,000.00) |
| **Total Personnel Expenses** | | **$ -** | **$ (201,755.20)** | **$ -** | **$ (201,755.20)** | **$ (403,510.40)** |
| **Travel** | | | | | | |
| Mileage/Parking/Tolls | | $ (167.41) | $ (167.41) | $ (167.41) | $ (167.41) | $ (669.64) |
| Vehicle Leases | | $ - | $ - | $ - | $ (1,470.56) | $ (1,470.56) |
| **Total Travel Expenses** | | **$ (167.41)** | **$ (167.41)** | **$ (167.41)** | **$ (1,637.97)** | **$ (2,140.20)** |
| **Total Operating Expenses** | | **$ (50,419.00)** | **$ (577,137.87)** | **$ (719.00)** | **$ (210,660.78)** | **$ (838,936.64)** |
| **Non-Operating Expenses** | | | | | | |
| Payment on PQPR Note | | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (20,000.00) |
| AMEX Payment | | $ - | $ - | $ - | $ - | |
| **Total Other Expenses** | | **$ (5,000.00)** | **$ (5,000.00)** | **$ (5,000.00)** | **$ (5,000.00)** | **$ (20,000.00)** |
| **Professional Fees** | | | | | | |
| Subchapter v Trustee retainer | | | | | | |
| Fulfillment Expert | | $ (22,487.56) | $ - | $ - | $ - | $ (22,487.56) |
| Economic Loss Expert | | | | | | $ - |
| Alex Jones at Trial Cost | | $ (80,920.00) | | | | $ (80,920.00) |
| Witness expenses and trial costs | | $ (34,048.00) | | | | $ (34,048.00) |
| Brittany Paz | | | | | | $ - |
| Pattis & Smith | | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| Reynal Law Firm, PC | | $ - | $ - | $ (100,000.00) | $ - | $ (100,000.00) |
| SALLC Fees | | | $ - | $ - | $ (188,018.31) | $ (188,018.31) |
| Shannon & Lee LLP | | | $ - | $ - | $ (207,348.36) | $ (207,348.36) |
| Ray Battaglia | | | $ - | $ - | $ (47,316.80) | $ (47,316.80) |
| **Total Professional Fees** | | **$ (137,455.56)** | **$ -** | **$ (200,000.00)** | **$ (442,683.47)** | **$ (780,139.03)** |
| **Total Cash Flow** | | **$ 288,783.82** | **$ (133,087.37)** | **$ 275,939.38** | **$ (176,685.88)** | **$ 254,949.95** |



EXHIBIT

A

Case 22-60043 Document 621 Filed in TXSD on 03/28/23 Page 427 of 522

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Free Speech Systems, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Southern District of Texas |
| Case number | 22-60043 |

## Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

PQPR Holdings Limited LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Streusand Landon Ozburn & Lemmon, LLP | Streusand Landon Ozburn & Lemmon, LLP |
| Name | Name |
| 1801 S. Mopac Expy., Suite 320 | 1801 S. Mopac Expy., Suite 320 |
| Number      Street | Number      Street |
| Austin          TX          78746 | Austin          TX          78746 |
| City          State          ZIP Code | City          State          ZIP Code |
| Contact phone   512-220-2688 | Contact phone   512-220-2688 |
| Contact email   lemmon@slollp.com | Contact email   lemmon@slollp.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Part 2:**   Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

| | |
|---|---|
| 7. **How much is the claim?** | $ _____ 68,154,691.46   **Does this amount include interest or other charges?**<br>plus additional unpaid debt   ☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Goods sold, unpaid account, resulting in 2 Promissory Notes and subsequent additional unpaid goods sold. |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☐ No<br>☑ Yes.   The claim is secured by a lien on property.<br><br>    **Nature of property:**<br>    ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>    ☐ Motor vehicle<br>    ☑ Other. Describe:   all assets of debtor<br><br>    **Basis for perfection:**   UCC-1<br>    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>    **Value of property:**   $ 68,154,691.46<br>    **Amount of the claim that is secured:**   $ 68,154,691.46<br>    **Amount of the claim that is unsecured:** $ _____ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>    **Amount necessary to cure any default as of the date of the petition:**   $ _____<br><br>    **Annual Interest Rate** (when case was filed) _____%   per contract<br>    ☑ Fixed<br>    ☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

PQPR-10

Official Form 410          **Proof of Claim**          page 2

Doc ID: ed98b89b619236351f8fb711d29b95290e7f088e

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

|  | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  10 / 06 / 2022
                  MM / DD / YYYY

Signature _____

Print the name of the person who is completing and signing this claim:

Name  David                    R.                Jones
      First name              Middle name       Last name

Title _____

Company  PQPR Holdings Limited LLC
         Identify the corporate servicer as the company if the authorized agent is a servicer.

Address _____
        Number          Street

_____
City                              State      ZIP Code

Contact phone _____   Email  davidrossjones@aol.com

---

**PQPR-10**

006474

Official Form 410                    Proof of Claim                    page 3

Doc ID: ed98b89b619236351f8fb711d29b95290e7f088e

PQPR
Due from FSS - Proof of Claim
7/29/2022

| Open Account | | |
|---|---|---|
| Advance to FSS | $ | 121,920.27 |
| Due to PQPR | $ | 23,808,367.00 |
| PQPR Reimbursement Receivable | $ | (9,538,413.22) |
| | | |
| Balance | $ | 14,391,874.05 |

| Notes | | |
|---|---|---|
| Note 1 | $ | 29,538,183.63 |
| Note 2 | $ | 24,108,504.21 |
| | | |
| Total | $ | 53,646,687.84 |

| Accrued Interest 8/20/21 to 11/10/21 | | |
|---|---|---|
| Note 1 Balance | $ | 29,538,183.63 |
| Interest Rate | | 1.75% |
| Annual Interest | $ | 516,918.21 |
| | | |
| Daily | $ | 1,416.21 |
| | | |
| Days* | | 82 |
| | | |
| Accrued Interest | $ | 116,129.57 |
| | | |
| Total | $ | 68,154,691.46 |

**PQPR-10**

006475

Doc ID: ed98b89b619236351f8fb711d29b95290e7f088e

**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS

| |
|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)** |
|   Acuity CxO LLC 5122929690 |
| **B. E-MAIL CONTACT AT FILER (optional)** |
| |
| **C. SEND ACKNOWLEDGMENT TO: (Name and Address)** |
|   Acuity CxO LLC |
|   219 Black Wolf Run |
|   Austin, TX 78738 |
|   USA |

**FILING NUMBER:** 20-0058072731
**FILING DATE:** 11/18/2020   02:06 PM
**DOCUMENT NUMBER:** 1008390830002
**FILED: Texas Secretary of State**
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| OR | 1a. ORGANIZATION'S NAME<br>**Free Speech Systems LLC** | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **3005 South Lamar Blvd, Suite D109-317** | **Austin** | **TX** | **78704** | **USA** |

2. DEBTOR'S NAME - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| OR | 2a. ORGANIZATION'S NAME | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| OR | 3a. ORGANIZATION'S NAME<br>**PQPR Holdings Limited LLC** | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **100 Congress Avenue, 18th Floor** | **Austin** | **TX** | **78701** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:
(1) all fixtures and personal property of every kind and nature, including all accounts, goods (including all inventory and equipment), documents (including, if applicable, electronic documents), instruments, promissory notes, chattel paper (whether tangible or electronic), letters of credit, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including all payment intangibles), intellectual property, domain names, trademarks (including but not limited to the nutritional supplement marks Living Cleanse, Honor Roll, ExtendaWise, Happease, Gut Fusion, Vasobeet, Ultimate Female Force, The Real Red Pill, Bodease, Icuren, Flora Life, Immune Wall, Pollen Block, Alpha Power, DNA Force, Survival Shield, and Survival Shield X-2, and the brand Infowars Life), trade names, money, deposit accounts, and any other contract rights or rights to the payment of money; and
(2)all gross revenues, receivables and proceeds and products of each of the foregoing in subparagraph (1), all books and records re ating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box. |
|---|---|
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY**

PQPR-10

EXHIBIT

7

PQPR-4

Doc ID: ed98b89b619236351f8fb711d29b95290e7f088e

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
|  | ) |  |
| FREE SPEECH SYSTEMS, LLC | ) | Case No. 22-60043 |
|  | ) |  |
| Debtor. | ) |  |

### SUBCHAPTER TRUSTEE'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING RETENTION OF M3 ADVISORY PARTNERS, LP AS FINANCIAL ADVISOR TO THE SUBCHAPTER V TRUSTEE

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

Melissa Haselden, ("Trustee") respectfully states the following in support of this motion (the "Motion"):

### Summary of Relief Requested

1.      The Trustee seeks entry of an order (the "Order"), authorizing the Trustee to retain and employ M3 Advisory Partners, LP ("M3") as her financial advisor effective as of October 20, 2022 in accordance to the terms and conditions of the engagement letter between the Trustee and M3, dated October 19, 2022, attached as **Exhibit B** (the "Engagement Letter"). In support of this Motion, the Trustee submits the declaration of Brian Griffith (the "Griffith Declaration"), a Managing Director of M3, attached as **Exhibit A**.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Subchapter V Trustee confirms her consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are §§ 105 and 363 of the Bankruptcy Code, Bankruptcy Rule 2002(a)(2), and Rules 2002-1(a)(2) and 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## APPLICATION

5.      The Trustee is the duly qualified and acting Subchapter V Trustee for the estate of the Free Speech Systems, LLC ("Debtor"). The Debtor initiated the bankruptcy case on July 29, 2022 (the "Petition Date") via the filing of a voluntary chapter 11 petition.

6.      On September 20, 2022, the Court entered the *Order Expanding the Subchapter V Trustee's Duties Pursuant to 11 U.S.C. § 1183(b)(2) of the Bankruptcy Code* [Docket No. 183].

7.      In recognition of the unique complexities involved in this matter, the Trustee seeks approval to retain M3 as her financial advisor. The Trustee identified the need for M3 as her advisor to assist with general matters related to the investigation mandated by the Court as well as the fulfillment of her duties in this unique case.

8.      To accomplish these goals, the Trustee hereby files this Application pursuant to §§ 327(a), 328, and 704 of the Bankruptcy Code. The Trustee requests authority to retain M3, as counsel pursuant to the terms of the attached proposed engagement agreement (the "Engagement

Letter"), attached as Exhibit B. The Trustee requests that the employment be effective as of October 20, 2022.

       9.    The Trustee selected M3 to render professional services to her in her role as subchapter V Trustee, which include, but are not limited to, the following responsibilities:

    a)  Assisting in the investigation required by the Court;

    b)  Assisting the Trustee in analyzing claims owned by the estate against third parties arising under chapter 5 of the Bankruptcy Code and other applicable law;

    c)  Supporting the Trustee in the bankruptcy case, any adversary proceedings, and other proceedings before the Bankruptcy Court, and in any other judicial or administrative proceeding;

    d)  Performing any other financial advisory services that may be appropriate in connection with the foregoing.

       10.    The Trustee selected M3 because its professionals have extensive experience in matters relating to the retail and other relevant industries, bankruptcy matters, investigations, and efforts to maximize value. This case presents unique issues. M3 has the expertise and capacity to address the needs of the estate. The Trustee believes that M3 can provide the estate with the required financial advisory expertise to allow the Trustee to administer the estate and discharge her fiduciary duties under the circumstances effectively and prudently. Because of the anticipated complexity investigating the matters ordered by the Court and facilitating development of a confirmable plan in this complicated case, the Trustee believes retention of M3 is necessary due to its array of expertise.

## M3's Qualifications

11.     M3 is an independent corporate turnaround and advisory firm providing operational, strategic, and financial advice for clients.  On a combined basis, M3's principals have worked on more than 200 restructurings throughout their careers, including on numerous retail industry engagements and other industries relevant to the business of the Debtor. *See In re Tailored Brands, Inc.*, 20-33900 (MI) (Bankr.S.D.TX. October 6, 2020) [Docket No. 799], *In re Neiman Marcus Group LTD LLC*, (DRJ) (Bankr.S.DTX. July 16, 2020) [Docket No. 1225], *In re Barneys New York, Inc.*, No. 19-36300 (CMG) (Bankr. S.D.N.Y. Sept. 20, 2019) [Docket No. 274], and *In re Sears Holdings Corp.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 19, 2018) [Docket No. 814].

12.     Brian Griffith has more than 20 years of experience as a restructuring professional, and has developed an expertise in providing restructuring advisory and consulting services across a wide range of industries throughout his career.  Brian Griffith will be responsible for the overall design and delivery of the services to be provided by M3 pursuant to this engagement as set forth in the Engagement Letter and the Motion.  Brian Griffith's prior experience encompasses a broad range of restructuring related services including: (i) investigations; (ii) stabilizing business operations; (iii) negotiations with creditors, and (iv) improving and managing liquidity.

## Scope of Services

13.     Consistent with the terms of the Engagement Letter, M3 will, among other things, provide the following services to the Trustee:

      (a)   provide support to the Client in its evaluation of the expenditures of the Debtor;

      (b)   review transfers made by the Debtor; including payments, distributions or withdrawals to insiders;

      (c)   provide support to the Client in its evaluation of the PQPR claim;

(d)   assist the Client in its investigation of potential claims and causes of action ordered by the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") on September 20, 2022;

(e)   provide support to the Client, as requested by it, in evaluating the business operations and financial prospects of the Debtor;

(f)   advise and assist the Client and its counsel with on-going assessment of the Debtor's financial performance and its ability to repay its outstanding obligations; and

(g)   provide such other services as M3 and the Client shall otherwise agree in writing.

### Professional Compensation

14.   M3 was not engaged prior to the bankruptcy filing.  It is not owed any amounts with respect to prepetition fees and expenses. M3 intends to apply to the Court for allowance of compensation and reimbursement of expenses for advisory support services in accordance with the terms and conditions set forth in the Engagement Letter (the "Fee and Expense Structure") as well as the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and orders of the Court.

15.   The Trustee negotiated a compensation agreement designed to fit the particular needs and possibilities of this case.  M3 is sensitive to the equities and unusual circumstances of this case and therefore agreed to a reduction in compensation below its standard rates.  M3's standard hourly rates as of October 2022, with a 30% discount, will apply.  M3 agrees to not raise its rates with regards to the matters for which it is being retained without seeking further order of this Court.

16.   The standard hourly rates charged by M3 professionals anticipated to be assigned to this case are as follows:

| Title | Per Hour (USD) |
|---|---|
| Managing Partner | $1,285 |
| Senior Managing Directors | $1,155 |
| Managing Directors | $970-1,100 |
| Directors | $790-$895 |
| Vice President | $710 |
| Senior Associate | $605 |
| Associate | $520 |
| Analyst | $415 |

17.     The compensation terms in the Engagement Letter are more favorable than M3's normal and customary compensation for comparable cases, both in- and out-of-court, involving the services to be provided.  In addition, these terms are reasonable and at the low end of the range of fees typically charged by firms of similar caliber for comparable services.

18.     In addition to the fees outlined above, M3 will bill for reasonable direct expenses incurred on the Trustee's behalf during its engagement.  Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement, such as certain telephone, overnight mail, messenger, travel, meals, accommodations, and other expenses specifically related to the engagement.

### No Duplication of Services

19.     M3 will use reasonable best efforts to ensure that the services provided will complement, and not duplicate, the activities of the Debtor's workforce or the services to be rendered by other professionals for the Trustee retained in this chapter 11 case.

### M3's Disinterestedness

20.     To the best of the Trustee's knowledge, and except to the extent disclosed herein and in the Griffith Declaration: M3 (a) has no connection with the Debtor, its creditors, or other parties in interest, or the attorneys or accountants of the foregoing, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee and (b) does not hold or represent any interest

adverse to the Debtor's estate.  The Griffith Declaration shows that M3 is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

21.     To the extent that any new relevant facts or relationships bearing on the connections described herein during the period of M3's retention are discovered or arise, M3 will use reasonable efforts to file promptly a supplemental declaration.

## **CONCLUSION**

22.     Section 327(a) authorizes the retention of M3 as financial advisor for the Trustee to be compensated in accordance with § 328 as set forth herein and in the Engagement Agreement. The Trustee has not given any compensation or promised any compensation to M3, except as set forth in the Engagement Agreement.  In addition, the Trustee has not sought or obtained leave to employ any other professional to represent the Trustee on the same matters as she proposes M3 represent her.

23.     In reaching her decision, the Trustee has evaluated the estate's available resources, the complexity of the case, the investigation and associated risks.  Under the circumstances, the Trustee believes that the terms of the proposed compensation arrangement are both reasonable and prudent and provide her the necessary assistance for the case.

WHEREFORE, the Trustee respectfully requests that an order be entered (a) approving this Application and authorizing the Trustee to employ and retain M3 to represent the Trustee as her financial advisor consistent with the terms set forth herein and in the Engagement Agreement; and (b) granting the Trustee any other relief that is just and proper.

Dated: November 19, 2022

/s/ Elizabeth C. Freeman

**JACKSON WALKER LLP**
Elizabeth C. Freeman (TX Bar No. 24009222)
Sean Gallagher (TX Bar No. 24101781)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:    (713) 752-4200
Facsimile:    (713) 752-4221
Email: efreeman@jw.com
Email: sgallagher@jw.com

*Counsel to for Melissa Haselden Subchapter V Trustee*

## __CERTIFICATE OF SERVICE__

I hereby certify that on November 19, 2022, a copy of the foregoing was served via the Court's ECF system upon all parties receiving notice through same.

*/s/ Elizabeth C. Freeman*
Elizabeth C. Freeman

**EXHIBIT A**

PQPR-11
Sub V Trustee's Mtn to Retain

006486

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FREE SPEECH SYSTEMS LLC, | ) | Case No. 22-60043 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## DECLARATION OF BRIAN GRIFFITH IN SUPPORT OF
## THE APPLICATION TO RETAIN JACKSON WALKER LLP
## AS COUNSEL FOR THE SUBCHAPTER V TRUSTEE

The undersigned proposed attorney for the above-captioned debtor and debtor-in-possession submits this verified statement of disinterestedness pursuant to Bankruptcy Rule 2014(a).

1.      My name is Brian Griffith.  I am over the age of 18 years, I am competent to make this declaration, and I have personal knowledge of the facts stated herein.  Each and every statement contained herein is true and correct.

2.      I am a Managing Director at M3 Advisory Partners, LP ("M3").  M3 maintains its offices at 1700 Broadway, 19th Floor, New York, NY, 10019.  M3's main telephone number is 212-202-2200.

3.      In conjunction with the Trustee's retention of M3, I directed a search of M3's conflict system for each of the Debtor, the Debtor's creditors, affiliates, and insiders, and the principal of the Debtor (the "Potential Parties in Interest").

4.      M-III may represent other affiliates whose identities and affiliation did not show up on the conflicts system.  It is possible that there are creditors whom the Debtor did not identify in their records that are clients of M3.  The following summarizes the findings gleaned from my

review of the information available on the M3's conflicts system divided into current clients of M3 that are also creditors of the Debtor, former clients, and affiliates of current clients of M3 that are also creditors of the Debtor, and my and M3's connections with the Debtor and its current and former officers, directors, and professionals.

**A.**    <u>**M3's Relationship to the Debtor**</u>

1.    M3 is not a creditor of the Debtor (including by reason of unpaid fees for prepetition services) or an equity security holder of the Debtor; is not and has not been, within two (2) years before the date of the filing of the petition, a director, officer or an employee of the Debtor; and does not have any interest materially adverse to the interests of the Debtor's estate, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

**B.**    <u>**M3's Relationship to the Trustee**</u>

6.    M3 and the Trustee entered into the engagement on October 19, 2022.  M3 has had no other representation of or relationship with the Trustee.

**C.**    <u>**No Clients of M3 are Creditors of the Debtor**</u>

7.    No creditors of the Debtor are or have been clients of M-III.

**D.**    <u>**M3's Connections with the Trustee's Professionals**</u>

8.    M3 has been employed in matters in which Jackson Walker LLP is employed by the Debtor.  More often than not, M3 has been retained by an official committee of unsecured creditors appointed in the case or a creditor in those cases in which Jackson Walker LLP represents or represented the Debtor.  M-III is not currently employed in any matter by the same estate or party in which Jackson Walker LLP is employed.

9.    Except as set forth herein, neither I nor M3 have had any connection with the Debtor, insiders or affiliates of the Debtor, the Debtor's creditors, the Trustee, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any other person

006488

employed in the Office of the United States Trustee, and are disinterested persons within the meaning of 11 U.S.C. § 101(14), to the best of my knowledge.

**E.**      **Statement Regarding United States Trustee Guidelines**

10.     M3 shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtor's chapter 11 case in compliance with sections 330 and 331 of the Bankruptcy Code, and applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any other applicable procedures and orders of the Court.  M3 also intends to make a reasonable effort to comply with the United States Trustee's requests for information and additional disclosures as set forth in the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013 (the "U.S. Trustee Fee Guidelines"), both in connection with this Application as well as any interim and final fee applications that may be filed by M3 in connection with this case.

11.     M3 will periodically review both the changes in identifiable parties in interest of the Debtor and clients of M3 as such information becomes available or relevant, and will update this disclosure as appropriate.

12.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed November 18, 2022

/s/ *Brian Griffith*
Brian Griffith

# **Exhibit B**

006490



October 19, 2022

Melissa Haselden
Sub Chapter V Trustee Free Speech System LLC
Haselden Farrow PLLC
Pennzoil Place
700 Milam, Suite 1300
Houston, TX 77002

Attention:    Retention of Financial Advisor

<u>Engagement Letter</u>

Dear Ms. Haselden:

This letter agreement (this "***Agreement***") sets forth the terms and conditions of the engagement (the "***Engagement***") of M3 Advisory Partners, LP ("***M3***") to provide the Services (as defined below) to you as the subchapter V trustee (the "**Client**") for Free Speech Systems, LLC (the "***Debtor***").  M3 and the Client are collectively referred to in this Agreement as the "***Parties***."

    1.    <u>Services</u>:  The Client hereby retains M3 to provide, and M3 hereby agrees to provide, the following services (the "***Services***") upon the terms and subject to the conditions set forth in this Agreement:

        (a)    provide support to the Client in its evaluation of the expenditures of the Debtor;

        (b)    review transfers made by the Debtor; including payments, distributions or withdrawals to insiders;

        (c)    provide support to the Client in its evaluation of the PQPR claim;

        (d)    assist the Client in its investigation of potential claims and causes of action ordered by the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") on September 20, 2022;

        (e)    provide support to the Client, as requested by it, in evaluating the business operations and financial prospects of the Debtor;

        (f)    advise and assist the Client and its counsel with on-going assessment of the Debtor's financial performance and its ability to repay its outstanding obligations; and

        (g)    provide such other services as M3 and the Client shall otherwise agree in writing.

M3 ADVISORY PARTNERS, LP  •  1700 BROADWAY, 19TH FLOOR, NEW YORK, NY 10019
T: (212) 202-2200  •  F: (212) 531-4532  •  WWW.M3-PARTNERS.COM

006491

PQPR-11
Sub V Trustee's Mtn to Retain

2. <u>Engagement Term</u>. The Engagement shall commence on the date of acceptance of this Agreement and may be terminated by either Party at any time upon ten business days' written notice. Following any such termination, neither Party shall have further liability to the other, except with respect to fees and expenses earned and incurred through the date of termination and any provisions of this Agreement which are expressly stated to survive its termination or expiration.

3. <u>Staffing</u>. M3 will staff a team that it believes to be appropriate to provide the Services in accordance with the terms of this Agreement. The individual members of the team are subject to change by M3 from time to time in its sole discretion. M3 also may provide Services through independent contractors and, unless the context shall otherwise indicate, references in this Agreement to M3 and its employees or staff shall be deemed to include any such independent contractors and their respective employees.

4. <u>Compensation for Services</u>. (a) M3's compensation for services rendered under this Agreement shall be paid by the Debtor by wire transfer of immediately available funds in accordance with instructions provided from time to time by M3 to the Client and will consist of the following:

(i) <u>Service Fees</u>: As compensation for providing the Services hereunder, M3 shall be entitled to non-refundable professional fees based on the actual hours incurred by M3 personnel on matters pertinent to the Engagement (the "***Service Fees***"). The Service Fees shall be based upon M3's standard hourly rates as follows:

| Professional | Standard Rate |
|---|---|
| Managing Partner | $1,285 |
| Senior Managing Director | $1,155 |
| Managing Director | $970 - $1,100 |
| Director | $790 - $895 |
| Vice President | $710 |
| Senior Associate | $605 |
| Associate | $520 |
| Analyst | $415 |

In an effort to be sensitive to the equities of this case and in recognition of the Trustee's efforts to negotiate a compensation agreement designed to fit the particular needs and possibilities of this case, M3 is willing to provide a 30% discount to the standard rates shown above. M3 shall deliver to the Client an invoice for the Service Fees (as reduced by such discount) on a monthly basis and the Debtor shall pay to M3 the amount invoiced for the relevant period in accordance with the provisions of Section 4(b) below. From time to time in the normal course of business M-3 may adjust its billing rates upon notice to the Client and subject to approval of the Court.



006492

(ii)   <u>Expenses</u>:  In addition to any compensation for providing the Services, the Debtor shall reimburse M3 for all reasonable and documented out-of-pocket expenses incurred in the performance of the Services (including, without limitation, reasonable travel costs).  Any request for reimbursement of an out-of-pocket expense in excess of $100 shall be accompanied by reasonable back-up for each expense and as otherwise required by applicable law.

(b)  All amounts owing hereunder shall, subject to approval of the Court, be due and payable by wire transfer of immediately available funds in accordance with instructions from time to time provided by M3 within 15 days following receipt of the invoice therefor, except that the Deferred Fees shall be payable from available funds without any requirement of further invoice promptly upon approval of the Court following the successful conclusion of the Debtor's bankruptcy proceeding. In the event that M3 does not receive payment of amounts payable hereunder within 15 days following receipt of such invoice, M3 shall have the right (subject to approval of the Court) to suspend further Services until payment is received on past due invoices and/or the Retainer is restored.  In the event that M3 so suspends the Services, M3 shall not be responsible or liable for any resulting loss, damage or expense due to such suspension.

(c)  Unless expressly stated otherwise in the relevant invoice, none of the amounts invoiced by M3 from time to time with respect to the Engagement shall be contingent upon, or in any way tied to the delivery of, any reports or other work product in the future, nor upon the outcome of any case or matters.  All fees payable to M3 are exclusive of taxes or similar charges, which shall be the sole obligation of the Debtor (other than any taxes which may be payable on account of M3's income generally, which shall be the obligation of M3).

(d)  The provisions of this Section shall survive the termination or expiration of this Agreement.

5.  <u>Cooperation from Client</u>.  In order to properly perform the Services and fulfill its responsibilities on a timely basis, M3 will rely on the timely cooperation of the Client and, where applicable, the Debtor and their respective professional advisors, including, without limitation, making available to M3 relevant data, information and personnel, performing any tasks or responsibilities assigned to the Client and notifying M3 of any issues or concerns that the Client may have relating to the Services.  The Client understands and acknowledges that M3's proper delivery of the Services is dependent upon timely decisions and approvals by the Client and access to all relevant materials. M3 shall have no responsibility or liability for any delays, additional costs or other deficiencies caused by the Client failing to properly fulfill its responsibilities under this Agreement.

6.  <u>Deliverables</u>.  (a) In connection with the Engagement, M3 may furnish the Client with information, advice, reports, analyses, presentations or other materials (the "***Deliverables***").  The Deliverables may contain factual data, the interpretation of which may change over the project term as more information or better understanding becomes available.  The Client acknowledges



006493

that M3 will have no obligation to update the Deliverables as part of the Services in the event of such a change.

(b)  Any materials prepared by M3 are solely for the confidential use of the Client and will not be distributed, reproduced, summarized, referred to, disclosed publicly or given to any other person without the prior written consent of M3, *provided* that such permission shall not be required if the materials are required to be disclosed by applicable law or by order or act of any court or governmental or regulatory authority or body.

(c)  The provisions of this Section shall survive the termination or expiration of this Agreement.

7.  <u>Limitations on Services</u>.  (a)  The Services are limited to those specifically noted in this Agreement.

(b) M3 does not provide accounting or tax-related assistance and no Deliverable or other information or advice provided to the Client shall be deemed to be accounting or tax-related assistance.  The Client shall be solely responsible for determining the accounting and tax-related implications of the Deliverables and other information and advice provided to it by M3.  M3 shall not express any professional opinions on financial statements or perform attest procedures with respect to other information in conjunction with the Engagement.  The Services are not designed, nor should they be relied upon, to disclose weaknesses in internal controls, financial statement errors, irregularities or illegal acts.  M3 shall assume the accuracy and completeness of all information submitted by or on behalf of the Client to M3 for analysis and which will form the basis of M3's conclusions, without any obligation of M3 to verify the accuracy or completeness of such information, and M3 shall not be responsible for any analysis, advice or other Services to the extent based on inaccurate or incomplete information provided or accepted by or on behalf of the Client.

(c)  The Services shall not include preparing, auditing or otherwise attesting in any way (including without limitation, with respect to the accuracy, achievability, reliability, relevance, usefulness or other appropriateness) to the Client's financial projections, and the Client has not engaged M3 for that purpose.  The Services are provided based upon the understanding that the Client has sole responsibility for its financial projections (including preparation thereof), developing underlying assumptions and providing any disclosure related thereto.  To the extent that, during the performance of Services hereunder, M3 is required to consider the Client's financial projections, the Client understands that M3's procedures with respect to such projections do not constitute an examination in accordance with procedures established by the American Institute of Certified Public Accountants and do not and are not intended to provide any assurance on any aspect of such projections, including, without limitation, the reasonableness of the assumptions underlying such projections, nor do they provide assurance that M3 might not become aware of significant matters affecting the reasonableness of the projections that might be disclosed by more extensive procedures.  There will usually be differences between projected and actual



PQPR-11
Sub V Trustee's Mtn to Retain

006494

results, and those differences may be material. The Client understands and agrees that M3 will have no responsibility or liability relating to any such differences.

(d)  M3 does not provide investment advice and the Services shall not include the provision of investment advice. The Client shall have sole responsibility for all investment decisions made by it. Similarly, M3 is providing advisory and consulting services only and will not make management decisions for the Client. Although M3 may from time to time suggest or recommend options that may be available to the Client, the ultimate decision with respect to such options rests with the Client and the Client shall be solely responsible for such decision and its outcome. M3 makes no representation, promise or guarantee with respect to the outcome of any matter affecting the Client.

(e)  To the extent that the performance of the Services requires that M3 form conclusions or reach opinions, M3 shall do so without regard to or consideration of the impact that such conclusions or opinions may have on the initiation or outcome of any litigation to which the Client is or may become a party.

(f)  The Client shall be solely responsible for the work and fees of any third parties engaged by the Client to provide services in connection with the Engagement, regardless of whether such third party was recommended to the Client by M3 or M3 is involved with the services provided by it. M3 shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.

(g)  The provisions of this Section shall survive the termination or expiration of this Agreement.

8.  <u>Confidentiality</u>.  (a)  Each Party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other Party in the scope of the Engagement (the "***Confidential Information***"), and neither Party will disclose any Confidential Information of the other Party to any other person or entity. For the avoidance of doubt, the term "Confidential Information" shall include (i) the terms of this Agreement, (ii) all non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, and models and (iii) any work product relating to the business of either Party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants. Notwithstanding the foregoing, the term "Confidential Information" shall not include information that (a) is or becomes publicly available other than as a result of disclosure by the receiving Party in violation of this Agreement, (b) was already known to the receiving Party or (c) was independently acquired or developed by the receiving Party from a source not known by it to be bound by a confidentiality requirement with respect to such information. In performing the Services, M3 will use and rely primarily on the Confidential Information and on information available from public sources without having independently verified any of such information.



(b)  The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, M3 from making such disclosures of Confidential Information that M3 reasonably believes are required by law or any regulatory requirement or authority, or to clear client conflicts.  M3 also may disclose Confidential Information to its partners, directors, officers, employees, independent contractors, agents and advisors who have a need to know the Confidential Information for the proper performance of the Services or otherwise in connection with the Engagement.  M3 may make reasonable disclosures of Confidential Information to third parties to the extent that M3 reasonably believes that such disclosure is consistent with its performance of the Services.  In addition, M3 will have the right to disclose to any person that it provided services to the Client or its affiliates and a general description of such services, but such disclosure shall not provide any other Confidential Information about M3's involvement with the Client.

(c) The provisions of this Section shall survive for a period of two years following the termination or expiration of this Agreement and shall supersede any separate confidentiality or analogous agreement between M3 and the Client.

9.  Intellectual Property.  Upon payment in full of all amounts owing to M3 hereunder (but subject to the provisions of Section 7 and 8 of this Agreement), the Client will own all Deliverables furnished by M3 to the Client in connection with the Services, *provided* that M3 will retain ownership of (a) all concepts, analyses, know-how, tools, frameworks, models and industry perspectives used and/or developed by M3 in connection with the Services and (b) all other intellectual property not containing Confidential Information which has been developed by M3 outside of the provision of the Services (the "***M3 Tools***"), it being understood that M3 will have no ownership right to, and will maintain in accordance with the provisions of this Agreement the confidentiality of, any Confidential Information contained in the M3 Tools.  To the extent that the Deliverables include any M3 Tools, M3 hereby grants the Client a non-exclusive, non-transferable, non-sublicensable worldwide, royalty-free license to use and copy the M3 Tools solely as part of the Deliverables and subject to the confidentiality provisions contained in this Agreement.  The Client acknowledges and agrees that the M3 Tools are provided to the Client on an "as is" basis and without any warranty or condition of any kind (whether express, implied or otherwise), and including without limitation any implied warranty of merchantability or fitness for a particular purpose. The provisions of this Section shall survive the termination or expiration of this Agreement.

10. Limitation on Damages.  In no event shall M3 or any of its affiliates, equity holders, partners, directors, employees, agents, representatives and contractors, including past, present or future partners, principals and personnel of each (collectively hereinafter called the "***M3 Representatives***") be liable to the Client or its affiliates, successors, or any person claiming on behalf of or in the right of the Client (including the Client's owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors) for (i) any amount which, when taken together with all losses for which M3 and the M3 Representatives are liable in connection with this Agreement or the Engagement, would exceed the amount of fees for the Services actually received by M3 from the Client in connection with the Engagement during the immediately preceding 12 months or (ii) any special, consequential, incidental or exemplary damages or loss (or any lost profits, savings or business opportunity) (collectively, the "***Liability Cap***").  This



006496

paragraph shall apply regardless of the nature of any claim(s) (including claims based on contract, statute, negligence, tort, strict liability or otherwise), regardless of any failure of the essential purpose of any remedy and whether or not M3 or any M3 Representative was advised of the possibility of the damage or loss asserted, but shall not apply to the extent finally determined by final and non-appealable judgment of a court of competent jurisdiction to be prohibited by applicable law.  For the avoidance of doubt, the Parties hereby irrevocably agree that the Liability Cap is intended to be the total limit of liability for M3 and all other M3 Representatives in the aggregate for any and all claims or demands by anyone in connection with this Agreement, the Services and the Engagement, including without limitation any liability to the Client and to any others making claims relating to the Services and the Engagement.  Any such claimants shall allocate among themselves any amounts payable by M3, but the failure of the claimants to reach such an agreement shall not affect the enforceability of the Liability Cap.  Under no circumstances shall the collective liability of M3 and the other M3 Representatives in connection with this Agreement exceed the Liability Cap.  The provisions of this Section shall survive the termination or expiration of this Agreement.

11. Client Acknowledgement.  The Client hereby acknowledges and agrees that M3 may, in the ordinary course of its business, serve clients who are competitive with, or have conflicting interests with, the Client.  Consistent with its confidentiality obligations hereunder and its confidentiality obligations to its other clients, M3 will not advise or consult to the Client with respect to any aspect of M3's engagement or potential engagement with any other client, potential client or former client.  Similarly, M3 will not advise or consult to any other client, potential client or former client with respect to any aspect of the Engagement. M3 will maintain the confidentiality of the Confidential Information in accordance with the terms of this Agreement and, similarly, will not share confidential information of any client, potential client or former client of M3 with the Client.   The provisions of this Section shall survive the termination or expiration of this Agreement.

12. Miscellaneous.  (a)  This Agreement (i) constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements (both written and oral) among the parties with respect to the subject matter hereof, and (ii) may be modified, amended or supplemented only by prior written agreement of each of the Parties.

(b)  The invalidity, illegality, or unenforceability of any provision in or obligation under this Agreement in any jurisdiction shall not affect or impair the validity, legality, or enforceability of the remaining provisions or obligations under this Agreement or of such provision or obligation in any other jurisdiction.  If feasible, any such offending provision shall be deemed modified to be within the limits of enforceability or validity; *provided* that, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.



006497

(c)  M3's services hereunder are personal in nature and may not be assigned without the written consent of the Client.  The obligations of M3 hereunder are owing only to the Client and there shall be no third-party beneficiaries of the obligations of M3 hereunder.

(d)  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart.

(e)  This Agreement and all controversies arising from or related to performance hereunder shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts to be executed and performed within such state.  The Parties hereby submit to the exclusive jurisdiction of and venue in the federal and state courts located in the State of New York and waive any right to trial by jury in connection with any dispute related to this Agreement; provided that the exclusive jurisdiction and venue shall be the Court for so long as it maintains jurisdiction over the Debtor's bankruptcy proceeding.  The provisions of this paragraph shall survive the termination or expiration of this Agreement.

*[Remainder of Page Intentionally Left Blank]*



This Agreement shall be binding upon the Parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

M3 ADVISORY PARTNERS, LP

By _____

    Name:  Mohsin Y. Meghji

    Title:  Managing Member

ACCEPTED AND AGREED
as of the date first set forth above:

Melissa Haselden, in her capacity as
subchapter V trustee

By: ___/s/ Melissa Haselden_____

    Name:  Melissa Haselden

    Title:  Subchapter V Trustee



006499

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
|  | ) |  |
| FREE SPEECH SYSTEMS, LLC | ) | Case No. 22-60043 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## ORDER GRANTING SUBCHAPTER TRUSTEE'S MOTION
## FOR ENTRY OF AN ORDER AUTHORIZING RETENTION OF M3 ADVISORY PARTNERS, LP AS FINANCIAL ADVISOR TO THE SUBCHAPTER V TRUSTEE

CAME ON FOR CONSIDERATION the Motion of the Subchapter V Trustee for Entry of an Order Authorizing Retention of M3 Advisory Partners, LP as Financial Advisor ("Motion"). The Court, having considered same, and any response(s) thereto, and found that notice of the Motion was proper is of the opinion that the Motion should be GRANTED; it is therefore ORDERED

1.      The Trustee is authorized to employ and retain M3 Advisory Partners, LP as Financial Advisors effective as of the October 20, 2022 on the terms set forth in the Motion and Engagement Letter.

2.      M3 shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this chapter 11 case\ in compliance with §§ 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, applicable provisions of the Bankruptcy Local Rules, and any other applicable orders of the Court.

3.      M3 is entitled to reimbursement of actual and necessary expenses related to the Motion.

006500

4.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

5.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

6.      The Trustee is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:

_____
CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 22-60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **CHAPTER 11 (Subchapter V)** |
| | § | |
| Debtor. | § | |
| | | |
| **In re:** | § | **CASE NO. 22-33553** |
| | § | |
| **ALEXANDER E. JONES,** | § | **CHAPTER 11** |
| | § | |
| Debtor. | § | |

**UNITED STATES TRUSTEE'S WITNESS AND EXHIBIT LIST**
**FOR DECEMBER 19, 2022 HEARING**

Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee") files this

Witness and Exhibit List for the hearing scheduled for December 19, 2022 at 3:00 p.m., Central

Time (or as such hearing may be continued or rescheduled, the "Hearing").

**WITNESSES**

The U.S. Trustee may examine:

1.  Any witnesses called or designated by any other party; and

2.  Any witness necessary to rebut testimony of a witness called or designated by any other
    party.

## **EXHIBITS**

The U.S. Trustee may offer into evidence any one or more of the following exhibits at the Hearing:

| Ex. # | Description | Offered | Objection | Admitted/ Not Admitted | Disposition |
|---|---|---|---|---|---|
|  | All exhibits presented or designated by any other parties for the hearing |  |  |  |  |
|  | All rebuttal exhibits |  |  |  |  |

The U.S. Trustee reserves the right to supplement or amend this Witness and Exhibit List at any time prior to the Hearing.

Date: December 15, 2022

Respectfully submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE

By: /s/Jayson B. Ruff
Jayson B. Ruff
Trial Attorney
Michigan Bar No. P69893
515 Rusk, Ste. 3516
Houston, TX  77002
Telephone: (713)718-4662
Facsimile: (713)718-4670

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2022, I caused a true and correct copy of the foregoing **UNITED STATES TRUSTEE'S WITNESS AND EXHIBIT LIST FOR DECEMBER 19, 2022 HEARING** to be served upon all parties receiving electronic notice via ECF.

<u>/s/ Jayson B. Ruff</u>
Jayson B. Ruff

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22--60043** |
| | § | |
| **DEBTOR.** | § | **(Subchapter V Debtor)** |
| | § | **Chapter 11** |

**WITNESS AND EXHIBIT LIST**
**FOR HEARINGS ON DECEMBER 19, 2022**

| | |
|---|---|
| Judge: | Hon. Christopher M. Lopez |
| Hearing Date: | Monday December 19, 2022 |
| Hearing Time: | 3:00 p.m. (CT) |
| Party's Name: | Free Speech Systems, LLC |
| Attorney's Name: | Raymond W. Battaglia, |
| Attorney's Phone: | (210) 601-9405; |
| Nature of Proceeding: | Hearing on:<br>• Motion to Authorize the Use of Cash Collateral [Docket No. 6]<br>• Second Motion for Extension of Time to File a Plan of Reorganization [Docket No. 299] |

    The Law Offices of Raymond W. Battaglia (the "**Battaglia Firm**"), bankruptcy counsel for Free Speech Systems, LLC (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), hereby submit this witness and exhibit list in connection with the hearings to be held on Monday, December 19, 2022, at 3:00 P.M. (Central Time) (the "**Hearing**") on the

**WITNESSES**

    The Debtor may call any of the following witnesses at the Hearing, whether in person or by proffer:

1. Patrick Magill, Chief Restructuring Officer of Free Speech Systems, LLC;

2. Any witnesses necessary to establish notice of the Hearing has been provided; and

3. Any witnesses necessary to rebut the testimony of any witnesses called or designated by any other parties.

## **EXHIBITS**

The Debtor may offer for admission into evidence any of the following exhibits at the hearing:

| Ex. | Description | Offered | Objection | Admitted /Not Admitted | Disposition |
|-----|-------------|---------|-----------|------------------------|-------------|
| 1 | 4-Week Cash Collateral Budget | | | | |

The Debtor reserves the right to supplement, amend or delete any witness and exhibits prior to the Hearing.  The Debtor also reserves the right to use any exhibits presented by any other party and to ask the Court to take judicial notice of any document.  The Debtor finally reserves the right to introduce exhibits previously admitted.

Respectfully submitted December 15, 2022.

LAW OFFICES OF RAY BATTAGLIA, PLLC


/S/ *RAYMOND W. BATTAGLIA*
Raymond W. Battaglia
State Bar No. 01918055
rbattaglialaw@outlook.com
66 Granburg Circle
San Antonio, Texas 78218
Tel. (210) 601-9405

*Counsel to the Debtor and Debtor-In-Possession*

2

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system.

*/s/ Raymond W. Battaglia*
Raymond W. Battaglia

3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-60043** |
| | § | |
| **FREE SPEECH SYSTEMS, LLC** | § | **(Chapter 11) Subchapter V** |
| | § | |
| **Debtor.** | § | **JUDGE CHRISTOPHER M. LOPEZ** |
| | § | |

### JONES'S EXHIBIT LIST FOR DECEMBER 19, 2022 HEARING

Alexander E. Jones (the "Jones"), a party in interest in this case, respectfully submits this Exhibit List for the hearing to be held on December 19, 2022, at 3:00 p.m. (prevailing Central Time) (the "Hearing"):

### EXHIBITS

Jones may offer for admission into evidence any of the following exhibits at the hearing:

| Ex. | Description | Offered | Objection | Admitted/Not Admitted | Disposition |
|---|---|---|---|---|---|
| 1 | Employment Agreement | | | | |

Jones reserves the right to supplement, amend or delete any exhibit prior to the Hearing. Jones also reserves the right to use any exhibit presented by any other party and to ask the Court to take judicial notice of any document. Jones finally reserves the right to introduce exhibits previously admitted.

Respectfully submitted this 15th day of December, 2022.


**CROWE & DUNLEVY, P.C.**


By: */s/ Christina W. Stephenson*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
      aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**PROPOSED ATTORNEYS FOR ALEXANDER E. JONES**

<u>**CERTIFICATE OF SERVICE**</u>

A true and correct copy of the foregoing document was filed with the Court on December 15, 2022, and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system. The exhibit was served via electronic mail on Debtor's counsel, counsel for the Subchapter V Trustee and counsel for the U.S Trustee.


*/s/ Christina W. Stephenson*
Christina W. Stephenson

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC | § | (Chapter 11, Subchapter V) |
| | § | |
| Debtor. | § | JUDGE CHRISTOPHER M. LOPEZ |
| | § | |

### LIMITED OBJECTION OF ALEXANDER E. JONES TO DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED LENDER

Alexander E. Jones ("Jones"), by and through his undersigned counsel, hereby submits his limited objection to Free Speech Systems, LLC's *Emergency Motion for an Interim and Final Orders (I) Authorizing the Use of Cash Collateral Pursuant to Sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(B) and (II) Granting Adequate Protection* [(Doc. 6], and in support thereof, would show the Court as follows.

### I.        BACKGROUND

1.        Jones hosts a syndicated radio and video talk show from Austin, Texas.  Debtor Free Speech Systems, LLC ("FSS") is a single member LLC, 100% owned by Jones, that produces and syndicates much of the show.

2.        On or about April 14, 2022, FSS and Jones executed an Employment Agreement (the "Agreement"), under which FSS agreed to pay Jones the annual salary of $1,300,000.00 via twenty-four biweekly payments, each in the amount of $54,166.67.

**LIMITED OBJECTION OF ALEXANDER E. JONES TO DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED LENDER – PAGE 1**

3.      The Agreement additionally provides that Jones will receive reimbursement for expenses, including travel, meals, lodging, and cell phone costs, incurred in the course of his employment.

4.      On or about July 29, 2022 (the "Petition Date"), FSS filed a voluntary petition for relief under Subchapter V of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5.      On or about August 5, 2022, the Court in this case entered an *Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection* [Doc. 41], the first of six such orders (each an "Interim Order" and together, the "Interim Orders"), with the most recent having been entered on November 21, 2022 [Doc. 287].

6.      The First Interim Order approved a budget containing a line item for "Alex Jones Salary," which provided for biweekly payments of $10,000.00.

7.      The Second through Sixth Interim Orders approved a budget where the line item for "Alex Jones Salary" provided for biweekly payments of $20,000.00.

8.      On December 2, 2022, Jones filed his voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

9.      The Court has set a "Further Hearing" on the Motion for December 19, 2022 [Doc. 289].

## II.      OBJECTION AND ARGUMENT

10.     Jones files this limited objection to the Court's entry of any further order authorizing the use of cash collateral, interim or final, to the extent that such order does not authorize Debtor to pay Jones's full salary as set forth in the Agreement.

**LIMITED OBJECTION OF ALEXANDER E. JONES TO DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED LENDER – PAGE 2**

11.     Since the Petition Date in this case and continuing to and past the date of this filing, Jones has wholly fulfilled his employment obligations to render the content creation, advertisement, and promotional services set forth in his Agreement with FSS.

12.     FSS has not made a full salary payment to Jones pursuant to the Agreement since the Petition Date. The amount authorized for FSS's payment of Jones's salary in the Interim Orders to date is a severe reduction from the salary Jones is due under the Agreement.

13.     Additionally, Jones continues to expend personal funds for FSS expenses. Jones seeks authorization from the Court that FSS be permitted and directed to reimburse Jones for any expenses included within the approved cash collateral budget that Jones personally advances on behalf of FSS.

THEREFORE, Jones respectfully requests that (i) in any forthcoming order(s), interim or final, authorizing Debtor's use of cash collateral, the Court authorize Debtor's payment of Jones's full contractually agreed salary, (ii) in any forthcoming order(s), interim or final, authorizing Debtor's use of cash collateral, the Court authorize Debtor's reimbursement of Jones for FSS expenses, and (iii) the Court grant such other and further relief as is just and proper.

**LIMITED OBJECTION OF ALEXANDER E. JONES TO DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED LENDER – PAGE 3**

006513

RESPECTFULLY SUBMITTED this 16th day of December 2022.


**CROWE & DUNLEVY, P.C.**

By: */s/ Christina W. Stephenson*___
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone:  (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
        aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**PROPOSED ATTORNEYS FOR ALEXANDER E. JONES**

**LIMITED OBJECTION OF ALEXANDER E. JONES TO DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED LENDER – PAGE 4**

**Fill in this information to identify the case:**

Debtor Name  Free Speech Systems LLC

United States Bankruptcy Court for the: Southern District of Texas

Case number:  22-60043

☐ Check if this is an
amended filing

Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11          12/17

Month:  July 2022

Date report filed:  12/16/2022
MM / DD / YYYY

Line of business:  Dietary Supplement Sales

NAISC code:  325411

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury
that I have examined the following small business monthly operating report and the accompanying
attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:                      J. Patrick Magill

Original signature of responsible party

Printed name of responsible party     J. Patrick Magill

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | | Yes | No | N/A |
|---|---|---|---|---|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A.*** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☐ | ☑ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☑ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☐ | ☐ | ☑ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B.*** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☑ | ☐ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? ** NOTE 1 ** | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☑ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Official Form 425C          Monthly Operating Report for Small Business Under Chapter 11          page **1**

Debtor Name  Free Speech Systems LLC

Case number  22-60043

17. Have you paid any bills you owed before you filed bankruptcy?  ☑ ☐ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?  ☑ ☐ ☐

** NOTE 1 **  We provide consignment sales services to PQPR

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

$ 1,023,699.0

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.

$ 369,017.00

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here.

− $ 104,337.00

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

+ $ 264,680.00

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

= $ 1,288,379.0

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

$ 792,303.00

*(Exhibit E)*

Debtor Name  Free Speech Systems LLC                              Case number  22-60043

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you
have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*.
Identify who owes you money, how much is owed, and when payment is due. Report the total from
*Exhibit F* here.

25.  **Total receivables**                                                                      $  467,672.00

   *(Exhibit F)*

## 5. Employees

26.  What was the number of employees when the case was filed?                                           54

27.  What is the number of employees as of the date of this monthly report?                              54

## 6. Professional Fees

28.  How much have you paid this month in professional fees related to this bankruptcy case?     $      0.00

29.  How much have you paid in professional fees related to this bankruptcy case since the case was filed?  $      0.00

30.  How much have you paid this month in other professional fees?                               $      0.00

31.  How much have you paid in total other professional fees since filing the case?              $      0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month.
Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | Column B | Column C |
|---|---|---|---|
|  | **Projected** − | **Actual** = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | Copy lines 20-22 of this report. | Subtract Column B from Column A. |
| 32.  **Cash receipts** | $      0.00 − | $ 369,017.00 = | $      0.00 |
| 33.  **Cash disbursements** | $      0.00 − | $ 104,337.00 = | $      0.00 |
| 34.  **Net cash flow** | $      0.00 − | $ 264,680.00 = | $      0.00 |

35.  Total projected cash receipts for the next month:                                     $ 2,449,289.0

36.  Total projected cash disbursements for the next month:                              − $ 1,773,415.0

37.  Total projected net cash flow for the next month:                                    = $  675,874.00

Debtor Name  Free Speech Systems LLC

Case number  22-60043

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☑ 39.  Bank reconciliation reports for each account.

☐ 40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41.  Budget, projection, or forecast reports.

☐ 42.  Project, job costing, or work-in-progress reports.

**FREE SPEECH SYSTEMS**

| | AXOS Deposits #78877 | AXOS Operating #78919 | AXOS Donations #78885 | AXOS Payroll #78927 | AXOS Infowars #78893 | AXOS Legal #78901 | SEC BANK Operations #8514 | SEC BANK Donations #8746 | SEC BANK Payroll #8522 | SEC BANK InfoWars #8621 | SEC BANK Deposits #8563 | TOTAL All Accounts |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **July 29 to July 31** | | | | | | | | | | | | |
| **Opening Balance** | - | - | - | - | - | - | 832,158.02 | 510.00 | 70,613.73 | 4,998.39 | 115,418.75 | 1,023,698.89 |
| Cash Receipts | - | - | - | - | - | - | 250,000.00 | - | - | - | 119,016.52 | 369,016.52 |
| Cash Disbursements | - | - | - | - | - | - | (104,336.51) | - | - | - | - | (104,336.51) |
| **Net Cash Flow** | - | - | - | - | - | - | 145,663.49 | - | - | - | 119,016.52 | 264,680.01 |
| Transfers In | - | - | - | - | - | - | 191,558.35 | - | 1,000.00 | - | - | 192,558.35 |
| Transfers Out | - | - | - | - | - | - | (1,000.00) | (510.00) | (70,613.73) | (4,998.39) | (115,436.23) | (192,558.35) |
| **Cash on Hand** | - | - | - | - | - | - | 1,168,379.86 | - | 1,000.00 | - | 118,999.04 | 1,288,378.90 |



**FORM 425C Exhibit E**
**Total Payables**

*For various reasons, Free Speech Systems LLC has not kept its books on the accrual basis of accounting and as a result there is not a traditional accounts payable list available at this time.  Free Speech Systems has kept books on the cash basis and virtually all bills are paid via ACH.  We are including the invoices / bills paid / checks cleared from the 1st to the 15th of the following month as a reasonable estimate of our payables at the date of the report.*

*As of July 31, 2022*

| Vendor | Amount | Due Date |
|---|---|---|
| Norm Pattis | 50,000.00 | 8/1/2022 |
| American Express | 264,811.80 | 8/1/2022 |
| Check # 11822 | 1,386.07 | 8/1/2022 |
| Check # 11833 | 1,685.00 | 8/1/2022 |
| City of Austin | 541.06 | 8/2/2022 |
| City of Austin | 905.02 | 8/2/2022 |
| City of Austin | 1,400.53 | 8/2/2022 |
| City of Austin | 3,686.07 | 8/2/2022 |
| E Commerce CDN | 27,270.00 | 8/2/2022 |
| Check # 11701 | 1,500.00 | 8/3/2022 |
| Check # 11730 | 1,500.00 | 8/3/2022 |
| Check # 11779 | 1,500.00 | 8/3/2022 |
| Blue Ascension | 100,000.00 | 8/9/2022 |
| ADP - Payroll | 132,940.39 | 8/9/2022 |
| Blue Ascension | 114,418.19 | 8/10/2022 |
| ACH Batch - Operations | 88,758.84 | 8/12/2022 |
| | **792,302.97** | |



**FORM 425C Exhibit F**
**Total Receivables**

*Free Speech Systems LLC does not have traditional receivables from our customers.  Virtually all our transactions happen via our on-line store and aggregated by our third party credit card processor.  There is a lag between the transaction on the on-line store and the funding from our processor.  Therefore, we don't have traditional customer receivables but have included our daily processor deposits from the 1st to the 5th of the following month as receivables*

*As of July 31, 2022*

| From | Amount | Due Date |
|------|--------|----------|
| Processor A | 213,890.47 | 8/1/2022 |
| Processor A | 60,090.48 | 8/2/2022 |
| Processor A | 65,799.59 | 8/3/2022 |
| Processor A | 68,128.75 | 8/4/2022 |
| Processor A | 59,763.17 | |
| | **467,672.46** | |

006521



**Security Bank**

```
                                    2  -  20              PAGE  1
FREE SPEECH SYSTEMS LLC                         ACCOUNT        ████
DEPOSITORY
PO BOX 19549                                    STATEMENT PERIOD
AUSTIN  TX 78704                                06/30/2022 TO 07/29/2022
```



```
----------------------- C H E C K I N G  S U M M A R Y -----------------------
            COMMERCIAL              -   3338563
  CHECKING BALANCE LAST STATEMENT.......        306,544.29
                     2  DEPOSITS.............    101,618.66
                    81  OTHER CREDITS........  1,636,372.59
                        CHECKS...............           .00
                    12  OTHER DEBITS.........  1,925,536.50
  CHECKING BALANCE THIS STATEMENT.......        118,999.04
--------------------------- F E E  S U M M A R Y -----------------------------
                        TOTAL FEES IMPOSED            .00
---------------- SUMMARY OF OVERDRAFT AND RETURNED ITEM FEES ----------------
        -----------------------------------------------------
        |                        |  TOTAL FOR |    TOTAL    |
        |                        |  THIS PERIOD|  YEAR-TO-DATE|
        -----------------------------------------------------
        |TOTAL OVERDRAFT FEES    |     $0.00|       $0.00|
        -----------------------------------------------------
        |TOTAL RETURNED ITEM FEES|     $0.00|       $0.00|
        -----------------------------------------------------

-------------- A C C O U N T  C R E D I T  T R A N S A C T I O N S --------------

DATE.....AMOUNT....DESCRIPTION
07/01        9.81 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 6027833
07/01       58.29 eBay           PAYOUT                      0018286123
07/01      200.53 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 7075827
07/01   20,522.55 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 5659021
07/05       51.50 eBay           PAYOUT                      0010910473
07/05       51.58 eBay           PAYOUT                      0013793669
07/06   68,433.85 DEPOSIT
07/06       93.81 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 7803940
07/06      201.41 eBay           PAYOUT                      0013014304
07/06      622.06 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 4318662
07/06      998.57 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 6072302
07/06   21,613.19 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 2082672
07/06  102,325.50 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 1550258
07/07       12.21 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 2210217
07/07      121.78 eBay           PAYOUT                      0014530428
07/07      891.91 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 4974971
07/07   22,454.60 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 7500608
```



FREE SPEECH SYSTEMS LLC                          ACCOUNT 
DEPOSITORY
PO BOX 19549                                      STATEMENT PERIOD
AUSTIN  TX 78704                                  06/30/2022 TO 07/29/2022

```
DATE.....AMOUNT....DESCRIPTION
07/08        27.26 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 5214041
07/08       133.01 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 5856397
07/08    25,153.56 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 9670600
07/11        53.28 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 8178396
07/11       843.06 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 1665723
07/11    79,542.81 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 3557968
07/12        13.17 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 5711387
07/12        34.23 eBay           PAYOUT                       0012463277
07/12       116.96 eBay           PAYOUT                       0012940837
07/12       126.37 eBay           PAYOUT                       0013232183
07/12       591.36 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 6454736
07/12    36,813.18 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 5379767
07/13         3.63 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 1394548
07/13       126.18 eBay           PAYOUT                       0012855393
07/13       206.67 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 9462632
07/13    34,514.66 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 8228041
07/14        12.58 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 7951468
07/14        73.67 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 4582806
07/14       163.44 eBay           PAYOUT                       0014556814
07/14    35,123.69 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 5273860
07/15    33,184.81 DEPOSIT
07/15         1.87 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 2964920
07/15       103.78 eBay           PAYOUT                       0010807770
07/15       110.51 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 6794979
07/15    27,867.62 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 7540799
07/18       166.98 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 3846282
07/18       206.67 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 4207631
07/18    86,965.06 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 4193858
07/19        36.84 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 5185115
07/19        73.70 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 6232565
07/19        98.60 eBay           PAYOUT                       0012245255
07/19   140,935.37 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 8506376
07/20        50.06 eBay           PAYOUT                       0013450411
07/20        95.46 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 6650677
07/20       237.37 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 2060486
07/20   106,516.31 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 8295531
07/21       105.30 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 2173721
07/21       110.51 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 3584139
07/21    68,558.55 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 7637218
```


# Security
Bank

```
                                              PAGE   3
FREE SPEECH SYSTEMS LLC              ACCOUNT    ████████
DEPOSITORY
PO BOX 19549                           STATEMENT PERIOD
AUSTIN  TX 78704                     06/30/2022 TO 07/29/2022


DATE.....AMOUNT....DESCRIPTION
07/22       35.27 eBay           PAYOUT            0015784815
07/22       96.18 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 2788588
07/22      106.59 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 6696736
07/22   72,180.32 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 4277004
07/25       58.72 eBay           PAYOUT            0013128125
07/25      166.77 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 7823186
07/25      452.21 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 9849408
07/25   50,940.76 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 7200079
07/25  123,903.43 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 1867026
07/25  159,042.10 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 5657898
07/26       38.89 eBay           PAYOUT            0013269521
07/26       40.25 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 1502716
07/26       96.27 eBay           PAYOUT            0012744367
07/26      133.82 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 9315997
07/26   40,518.51 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 3553104
07/26   73,167.12 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 9601708
07/27      144.54 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 2308649
07/27      229.18 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 3682470
07/27      281.72 eBay           PAYOUT            0012893317
07/27  107,795.31 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 3607370
07/28       78.82 eBay           PAYOUT            0014736802
07/28      100.79 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 7479897
07/28   71,605.87 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 8701312
07/29       17.48 eBay           PAYOUT            0011564006
07/29       92.54 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 4452672
07/29      325.35 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 2024574
07/29  118,581.15 INTERNET TRANSFER FROM CHK 4645 TO CHK 8563 1582815

--------------- O T H E R  D E B I T  T R A N S A C T I O N S ----------------

DATE.....AMOUNT....DESCRIPTION
07/01  150,000.00 INTERNET TRANSFER FROM CHK 8563 TO CHK 8514 6537408
07/05        5.27 eBay ComNNEWRQIM  PAYMENTS       0023849470
07/05       20.00 AUTHNET GATEWAY   BILLING        0010089277
07/05       40.00 PAYARC            MERCH FEES     6760102425
07/06       15.00 GATEWAY SERVICES  WEBPAYMENT     0018530444
07/06       20.00 USAePay           0622 BILLI     6935666281
07/13  250,000.00 INTERNET TRANSFER FROM CHK 8563 TO CHK 8522 6185497
07/18  400,000.00 INTERNET TRANSFER FROM CHK 8563 TO CHK 8514 7703862
```


## Security
### Bank

```
                                                  PAGE   4
        FREE SPEECH SYSTEMS LLC           ACCOUNT   ████████
        DEPOSITORY
        PO BOX 19549                      STATEMENT PERIOD
        AUSTIN  TX 78704                  06/30/2022 TO 07/29/2022


        DATE.....AMOUNT....DESCRIPTION
        07/25  475,000.00 INTERNET TRANSFER FROM CHK 8563 TO CHK 8514 3509399
        07/27  285,000.00 INTERNET TRANSFER FROM CHK 8563 TO CHK 8522 4291063
        07/28  250,000.00 INTERNET TRANSFER FROM CHK 8563 TO CHK 8514 5299816
        07/29  115,436.23 INTERNET TRANSFER FROM CHK 8563 TO CHK 8514 1051049


        --------------- D A I L Y  B A L A N C E  I N F O R M A T I O N ---------------

        DATE.......BALANCE      DATE.......BALANCE      DATE.......BALANCE
        07/01    177,335.47     07/13    323,406.56     07/22    496,623.67
        07/05    177,373.28     07/14    358,779.94     07/25    356,187.66
        07/06    371,626.67     07/15    420,048.53     07/26    470,182.52
        07/07    395,107.17     07/18    107,387.24     07/27    293,633.27
        07/08    420,421.00     07/19    248,531.75     07/28    115,418.75
        07/11    500,860.15     07/20    355,430.95     07/29    118,999.04
        07/12    538,555.42     07/21    424,205.31


        --------------------------------------------------------------------------------
```

```
                        Thank you for banking with us!
                    If you have any questions please call
                    our Crawford Branch at (254) 486-0003 or
                      our Temple Branch at (254) 249-2265.
```

006525



⚓ **Security**
Bank

FREE SPEECH SYSTEMS LLC
OPERATING
PO BOX 19549
AUSTIN  TX 78704

35  -  20                    PAGE  1
                ACCOUNT  

                STATEMENT PERIOD
                06/30/2022 TO 07/29/2022

```
-------------------- C H E C K I N G   S U M M A R Y --------------------
        COMMERCIAL              -    3338514
    CHECKING BALANCE LAST STATEMENT.......      217,317.70
              2   DEPOSITS.............      349,620.00
             17   OTHER CREDITS........    3,503,143.52
             33   CHECKS..............    2,618,855.13
             36   OTHER DEBITS........      282,846.23
    CHECKING BALANCE THIS STATEMENT.......    1,168,379.86
-------------------- F E E   S U M M A R Y --------------------
    STOP PAY FEE                                  25.00
                    TOTAL FEES IMPOSED            25.00
                       (LISTED BELOW)
---------------- SUMMARY OF OVERDRAFT AND RETURNED ITEM FEES ----------------
```

|                           | TOTAL FOR THIS PERIOD | TOTAL YEAR-TO-DATE |
|---------------------------|-----------------------|--------------------|
| TOTAL OVERDRAFT FEES       | $0.00                 | $0.00              |
| TOTAL RETURNED ITEM FEES   | $0.00                 | $0.00              |

```
------------- A C C O U N T   C R E D I T   T R A N S A C T I O N S -------------

DATE.....AMOUNT....DESCRIPTION
07/01  150,000.00 INTERNET TRANSFER FROM CHK 8563 TO CHK 8514 6537403
07/06    6,946.21 WT FREE SPEECH SYSTEMS
07/08    3,501.67 WT FREE SPEECH SYSTEMS
07/14  500,000.00 WT FREE SPEECH SYSTEMS
07/18  275,000.00 WT FREE SPEECH SYSTEMS
07/18  400,000.00 INTERNET TRANSFER FROM CHK 8563 TO CHK 8514 7703862
07/18  850,000.00 INTERNET TRANSFER FROM CHK 0924 TO CHK 8514 8045880
07/25  475,000.00 INTERNET TRANSFER FROM CHK 8563 TO CHK 8514 3509399
07/26  200,000.00 WT FREE SWPEECH SYSTEMS
07/27   99,620.00 DEPOSIT
07/28   24,682.62 INTERNET TRANSFER FROM CHK 5675 TO CHK 8514 3093924
07/28   81,264.19 INTERNET TRANSFER FROM CHK 8746 TO CHK 8514 2407078
07/28   95,190.48 INTERNET TRANSFER FROM CHK 8621 TO CHK 8514 9192858
07/28  250,000.00 INTERNET TRANSFER FROM CHK 8563 TO CHK 8514 5299816
07/29  250,000.00 DEPOSIT
```



### Security
Bank

FREE SPEECH SYSTEMS LLC
OPERATING
PO BOX 19549
AUSTIN  TX 78704

PAGE   2
ACCOUNT 

STATEMENT PERIOD
06/30/2022 TO 07/29/2022

DATE.....AMOUNT....DESCRIPTION
07/29      510.00 INTERNET TRANSFER FROM CHK 8746 TO CHK 8514 5425754
07/29    4,998.39 INTERNET TRANSFER FROM CHK 8621 TO CHK 8514 4302104
07/29   70,613.73 INTERNET TRANSFER FROM CHK 8522 TO CHK 8514 8945544
07/29  115,436.23 INTERNET TRANSFER FROM CHK 8563 TO CHK 8514 1051049

--------------- O T H E R   D E B I T   T R A N S A C T I O N S  ---------------

DATE.....AMOUNT....DESCRIPTION
07/05       20.45 PROTECTION ONE      WEB_PAY               0023851618
07/05       69.18 PROTECTION ONE      WEB_PAY               0023851617
07/05      102.06 PROTECTION ONE      WEB_PAY               0023851616
07/05      126.76 PROTECTION ONE      WEB_PAY               0023851619
07/05      550.69 City of Austin T    PAYMENT               0026237371
07/05      830.10 PROTECTION ONE      WEB_PAY               0023851620
07/05      855.76 City of Austin T    PAYMENT               0026236107
07/05    1,213.48 City of Austin T    PAYMENT               0026238076
07/05    1,411.18 PROTECTION ONE      WEB_PAY               0023851615
07/05    3,246.03 City of Austin T    PAYMENT               0026237678
07/05    6,397.58 AUSTIN SECURITY     SALE                  0026838088
07/05  131,019.60 AMEX EPAYMENT       ACH PMT               0012609317
07/08   20,000.00 STAMPS.COM          POSTAGE               0023484889
07/12       35.30 STAMPS.COM          STAMPS.COM            0027499926
07/12    6,700.68 AUSTIN SECURITY     SALE                  0029529349
07/13    2,196.25 AUTO PAYMENT TO IN  --XXXXXXXXXXX228 FREE SPEECH SYSTEMS LL
07/18    5,829.26 AUSTIN SECURITY     SALE                  0029538678
07/22    2,700.00 WILLOW GROVE PRO    Bill Pay              6340000014
07/22    3,000.00 VAZQUEZ, VALDEMA    Bill Pay              6340000011
07/22    3,500.00 JW JIB PRODUCTIO    Bill Pay              6340000013
07/22   20,671.00 ATX HD SATELLITE    Bill Pay              6340000012
07/25        1.49 PAYMENTUS           BILLPAY               0016269094
07/25       87.10 TEXASGASSERVICE     BILLPAY               0016320438
07/25    1,300.00 GRANDE COMMUNICA    TELECOMM              0021961017
07/25    1,419.56 ALLY                ALLY PAYMT            0023156344
07/25    6,348.86 AUSTIN SECURITY     SALE                  0022387461
07/25   25,200.00 ATOMIAL LLC         SALE                  0022387378
07/26    1,761.27 LEASE DIRECT        WEB PAY               0090558209
07/26    2,989.00 ADDSHOPPERSINC      WEBPAYMENT            0014598637
07/26    2,989.00 ADDSHOPPERSINC      WEBPAYMENT            0014598638
07/27   20,000.00 DEW, ROBERT         Bill Pay              6340000015



**Security** Bank

FREE SPEECH SYSTEMS LLC
OPERATING
PO BOX 19549
AUSTIN  TX 78704

PAGE   3
ACCOUNT    

STATEMENT PERIOD
06/30/2022 TO 07/29/2022

DATE.....AMOUNT....DESCRIPTION
07/27     25.00 STOP PAY FEE
07/29  1,000.00 INTERNET TRANSFER FROM CHK 8514 TO CHK 8522 8274286
07/29  1,003.76 MUNIZ, LESLIE    Bill Pay            6340000015
07/29  2,037.69 AUSTIN SECURITY  SALE               0028451641
07/29  6,208.14 AUSTIN SECURITY  SALE               0028451643

------------------------------ C H E C K S ------------------------------

| DATE | CHECK NO. | AMOUNT | DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|------|-----------|--------|
| 07/01 | 011801 | 70,000.00 | 07/29 | 011825 | 5,863.00 |
| 07/05 | 011802 | 49,865.00 | 07/25 | 011826 | 3,964.66 |
| 07/12 | *011807 | 2,106.03 | 07/28 | *011828 | 36.72 |
| 07/05 | 011808 | 902.50 | 07/27 | *011830 | 531.80 |
| 07/06 | 011809 | 217.02 | 07/27 | 011831 | 9,000.00 |
| 07/05 | 011810 | 10,780.99 | 07/28 | 011832 | 122,489.67 |
| 07/11 | 011811 | 948.12 | 07/15 | * | 189,976.20 |
| 07/07 | 011812 | 50,000.00 | 07/19 | * | 52,922.19 |
| 07/06 | 011813 | 4,000.00 | 07/19 | * | 205,487.38 |
| 07/18 | 011814 | 1,989.97 | 07/26 | * | 99,635.00 |
| 07/26 | 011815 | 1,600.00 | 07/27 | * | 1097,484.50 |
| 07/18 | 011816 | 1,705.00 | 07/28 | * | 100,015.00 |
| 07/20 | *011818 | 775.00 | 07/28 | * | 199,635.00 |
| 07/27 | 011819 | 6,491.86 | 07/28 | * | 233,806.08 |
| 07/28 | 011820 | 1,796.91 | 07/28 | * | 3,253.80 |
| 07/27 | 011821 | 351.81 | 07/29 | * | 89,223.92 |
| 07/26 | *011824 | 2,000.00 | | | |

--------------- D A I L Y   B A L A N C E   I N F O R M A T I O N ---------------

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|------|---------|
| 07/01 | 297,317.70 | 07/13 | 14,170.82 | 07/25 | 1987,293.15 |
| 07/05 | 89,926.34 | 07/14 | 514,170.82 | 07/26 | 2076,318.88 |
| 07/06 | 92,655.53 | 07/15 | 324,194.62 | 07/27 | 1042,053.91 |
| 07/07 | 42,655.53 | 07/18 | 1839,670.39 | 07/28 | 832,158.02 |
| 07/08 | 26,157.20 | 07/19 | 1581,260.82 | 07/29 | 1168,379.86 |
| 07/11 | 25,209.08 | 07/20 | 1580,485.82 | | |
| 07/12 | 16,367.07 | 07/22 | 1550,614.82 | | |

-------------------------------------------------------------------------

# ⚓ Security Bank

```
                                    21  -  20              PAGE   1
    FREE SPEECH SYSTEMS LLC                      ACCOUNT
    DONATIONS
    PO BOX 19549                                 STATEMENT PERIOD
    AUSTIN  TX 78704                             06/30/2022 TO 07/29/2022
```

```
----------------------- C H E C K I N G   S U M M A R Y -----------------------
            COMMERCIAL                -   3338746
    CHECKING BALANCE LAST STATEMENT.......        78,274.19
                    21  DEPOSITS.............        3,500.00
                        OTHER CREDITS........             .00
                        CHECKS...............             .00
                     2  OTHER DEBITS.........       81,774.19
    CHECKING BALANCE THIS STATEMENT.......             .00
--------------------------- F E E   S U M M A R Y ---------------------------
                        TOTAL FEES IMPOSED             .00
----------------- SUMMARY OF OVERDRAFT AND RETURNED ITEM FEES -----------------
            ------------------------------------------------------
            |                         |  TOTAL FOR |      TOTAL   |
            |                         |  THIS PERIOD|  YEAR-TO-DATE|
            ------------------------------------------------------
            |TOTAL OVERDRAFT FEES     |      $0.00|         $0.00|
            ------------------------------------------------------
            |TOTAL RETURNED ITEM FEES|       $0.00|         $0.00|
            ------------------------------------------------------
```

```
-------------- A C C O U N T   C R E D I T   T R A N S A C T I O N S -------------
    DATE.....AMOUNT....DESCRIPTION
    07/25       10.00  DEPOSIT
    07/25       20.00  DEPOSIT
    07/25       60.00  DEPOSIT
    07/25       60.00  DEPOSIT
    07/25       60.00  DEPOSIT
    07/25      100.00  DEPOSIT
    07/25      200.00  DEPOSIT
    07/25      300.00  DEPOSIT
    07/25    1,000.00  DEPOSIT
    07/26       10.00  DEPOSIT
    07/26       20.00  DEPOSIT
    07/26       50.00  DEPOSIT
    07/26      300.00  DEPOSIT
    07/26      300.00  DEPOSIT
    07/26      500.00  DEPOSIT
    07/28       10.00  DEPOSIT
    07/28       20.00  DEPOSIT
```



**Security** Bank

```
                                              PAGE   2
FREE SPEECH SYSTEMS LLC              ACCOUNT
DONATIONS
PO BOX 19549                            STATEMENT PERIOD
AUSTIN  TX 78704                     06/30/2022 TO 07/29/2022


DATE.....AMOUNT....DESCRIPTION
07/28      20.00 DEPOSIT
07/28      60.00 DEPOSIT
07/28     100.00 DEPOSIT
07/28     300.00 DEPOSIT

--------------- O T H E R   D E B I T   T R A N S A C T I O N S ----------------

DATE.....AMOUNT....DESCRIPTION
07/28   81,264.19 INTERNET TRANSFER FROM CHK 8746 TO CHK 8514 2407078
07/29      510.00 INTERNET TRANSFER FROM CHK 8746 TO CHK 8514 5425754

--------------- D A I L Y   B A L A N C E   I N F O R M A T I O N ---------------

DATE.......BALANCE     DATE.......BALANCE     DATE.......BALANCE
07/25    80,084.19     07/28       510.00
07/26    81,264.19     07/29          .00

-------------------------------------------------------------------------------
```

```
             Thank you for banking with us!
           If you have any questions please call
          our Crawford Branch at (254) 486-0003 or
             our Temple Branch at (254) 249-2265.
```

006530



**Security** Bank

```
                            0  -  20              PAGE  1
FREE SPEECH SYSTEMS LLC                   ACCOUNT         
PAYROLL
PO BOX 19549                             STATEMENT PERIOD
AUSTIN  TX 78704                       06/30/2022 TO 07/29/2022
```



```
----------------------- C H E C K I N G  S U M M A R Y -----------------------
              COMMERCIAL         -    3338522
   CHECKING BALANCE LAST STATEMENT.......    268,566.21
                        DEPOSITS.............         .00
                  3  OTHER CREDITS........    536,000.00
                        CHECKS..............         .00
                  7  OTHER DEBITS.........    803,566.21
   CHECKING BALANCE THIS STATEMENT.......      1,000.00
-------------------------- F E E  S U M M A R Y ----------------------------
                    TOTAL FEES IMPOSED           .00
---------------- SUMMARY OF OVERDRAFT AND RETURNED ITEM FEES -----------------
        ---------------------------------------------------
        |                      | TOTAL FOR |   TOTAL   |
        |                      | THIS PERIOD|  YEAR-TO-DATE|
        ---------------------------------------------------
        |TOTAL OVERDRAFT FEES  |     $0.00|      $0.00|
        ---------------------------------------------------
        |TOTAL RETURNED ITEM FEES|   $0.00|      $0.00|
        ---------------------------------------------------
```

```
-------------- A C C O U N T  C R E D I T  T R A N S A C T I O N S -------------

DATE.....AMOUNT....DESCRIPTION
07/13  250,000.00 INTERNET TRANSFER FROM CHK 8563 TO CHK 8522 6185497
07/27  285,000.00 INTERNET TRANSFER FROM CHK 8563 TO CHK 8522 4291063
07/29    1,000.00 INTERNET TRANSFER FROM CHK 8514 TO CHK 8522 8274286

--------------- O T H E R  D E B I T  T R A N S A C T I O N S ---------------

DATE.....AMOUNT....DESCRIPTION
07/01  201,320.72 ADP PAYROLL FEES  ADP - FEES          0021269869
07/08      335.79 HOMEPAY           FEES                0018442931
07/13   45,258.64 ADP PAYROLL FEES  ADP - FEES          0020411070
07/15  202,162.47 ADP PAYROLL FEES  ADP - FEES          0022474246
07/27    2,690.52 HOMEPAY           PAYROLL             0017534793
07/28  281,184.34 ADP PAYROLL FEES  ADP - FEES          0025289872
07/29   70,613.73 INTERNET TRANSFER FROM CHK 8522 TO CHK 8514 8945544
```

006531



FREE SPEECH SYSTEMS LLC
PAYROLL
PO BOX 19549
AUSTIN   TX 78704

PAGE   2
ACCOUNT        

STATEMENT PERIOD
06/30/2022 TO 07/29/2022

--------------- D A I L Y   B A L A N C E   I N F O R M A T I O N ---------------

| DATE.......BALANCE | DATE.......BALANCE | DATE.......BALANCE |
|-------------------|--------------------|--------------------|
| 07/01      67,245.49 | 07/15      69,488.59 | 07/29      1,000.00 |
| 07/08      66,909.70 | 07/27     351,798.07 | |
| 07/13     271,651.06 | 07/28      70,613.73 | |

-----------------------------------------------------------------------------

Thank you for banking with us!
If you have any questions please call
our Crawford Branch at (254) 486-0003 or
our Temple Branch at (254) 249-2265.

006532



```
                                  77 - 20            PAGE  1
   FREE SPEECH SYSTEMS LLC                     ACCOUNT          ▬▬▬▬▬
   INFOWARS
   PO BOX 19549                                   STATEMENT PERIOD
   AUSTIN  TX 78704                           06/30/2022 TO 07/29/2022
```


```
----------------------- C H E C K I N G   S U M M A R Y -----------------------
           COMMERCIAL             -   3338621
   CHECKING BALANCE LAST STATEMENT.......        89,611.94
                    77  DEPOSITS.............     10,576.93
                        OTHER CREDITS........          .00
                        CHECKS...............          .00
                     2  OTHER DEBITS.........    100,188.87
   CHECKING BALANCE THIS STATEMENT.......              .00
--------------------------- F E E   S U M M A R Y ---------------------------
                        TOTAL FEES IMPOSED            .00
---------------- SUMMARY OF OVERDRAFT AND RETURNED ITEM FEES ----------------
```

| | | TOTAL FOR | TOTAL |
| | | THIS PERIOD | YEAR-TO-DATE |
| TOTAL OVERDRAFT FEES | | $0.00 | $30.00 |
| TOTAL RETURNED ITEM FEES | | $0.00 | $0.00 |

```
-------------- A C C O U N T   C R E D I T   T R A N S A C T I O N S --------------

   DATE.....AMOUNT....DESCRIPTION
   07/25      20.00 DEPOSIT
   07/25      20.00 DEPOSIT
   07/25      25.00 DEPOSIT
   07/25      25.00 DEPOSIT
   07/25      29.85 DEPOSIT
   07/25      30.00 DEPOSIT
   07/25      35.00 DEPOSIT
   07/25      39.90 DEPOSIT
   07/25      40.00 DEPOSIT
   07/25      40.00 DEPOSIT
   07/25      50.00 DEPOSIT
   07/25      50.00 DEPOSIT
   07/25      50.00 DEPOSIT
   07/25      56.65 DEPOSIT
   07/25      75.00 DEPOSIT
   07/25      95.00 DEPOSIT
   07/25     100.00 DEPOSIT
```



FREE SPEECH SYSTEMS LLC
INFOWARS
PO BOX 19549
AUSTIN  TX 78704

PAGE   2
ACCOUNT

STATEMENT PERIOD
06/30/2022 TO 07/29/2022

```
DATE.....AMOUNT....DESCRIPTION
07/25      100.00 DEPOSIT
07/25      104.85 DEPOSIT
07/25      120.00 DEPOSIT
07/25      129.00 DEPOSIT
07/25      144.50 DEPOSIT
07/25      171.40 DEPOSIT
07/25      197.89 DEPOSIT
07/25      200.00 DEPOSIT
07/25      239.50 DEPOSIT
07/25      370.00 DEPOSIT
07/25      500.00 DEPOSIT
07/25      500.00 DEPOSIT
07/26        5.00 DEPOSIT
07/26       15.00 DEPOSIT
07/26       50.00 DEPOSIT
07/26      100.00 DEPOSIT
07/26      100.00 DEPOSIT
07/26      150.00 DEPOSIT
07/26      200.00 DEPOSIT
07/26      200.00 DEPOSIT
07/26      200.00 DEPOSIT
07/26      500.00 DEPOSIT
07/26      500.00 DEPOSIT
07/27       76.00 DEPOSIT
07/27       99.35 DEPOSIT
07/27      122.73 DEPOSIT
07/27      131.00 DEPOSIT
07/28        8.00 DEPOSIT
07/28       13.10 DEPOSIT
07/28       15.00 DEPOSIT
07/28       15.00 DEPOSIT
07/28       18.10 DEPOSIT
07/28       20.00 DEPOSIT
07/28       20.00 DEPOSIT
07/28       20.00 DEPOSIT
07/28       22.90 DEPOSIT
07/28       25.00 DEPOSIT
07/28       28.45 DEPOSIT
07/28       33.94 DEPOSIT
```


## Security
Bank

```
                                          PAGE   3
      FREE SPEECH SYSTEMS LLC         ACCOUNT      ▬▬▬▬
      INFOWARS
      PO BOX 19549                       STATEMENT PERIOD
      AUSTIN  TX 78704              06/30/2022 TO 07/29/2022


      DATE.....AMOUNT....DESCRIPTION
      07/28       38.46 DEPOSIT
      07/28       39.90 DEPOSIT
      07/28       46.00 DEPOSIT
      07/28       46.00 DEPOSIT
      07/28       48.40 DEPOSIT
      07/28       50.00 DEPOSIT
      07/28       50.00 DEPOSIT
      07/28       58.00 DEPOSIT
      07/28       80.00 DEPOSIT
      07/28      100.00 DEPOSIT
      07/28      100.00 DEPOSIT
      07/28      120.06 DEPOSIT
      07/28      140.00 DEPOSIT
      07/28      145.70 DEPOSIT
      07/28      152.30 DEPOSIT
      07/28      160.00 DEPOSIT
      07/28      200.00 DEPOSIT
      07/28      355.00 DEPOSIT
      07/28      400.00 DEPOSIT
      07/28    1,000.00 DEPOSIT
      07/28    1,000.00 DEPOSIT

    --------------- O T H E R   D E B I T   T R A N S A C T I O N S ---------------

      DATE.....AMOUNT....DESCRIPTION
      07/28   95,190.48 INTERNET TRANSFER FROM CHK 8621 TO CHK 8514 9192858
      07/29    4,998.39 INTERNET TRANSFER FROM CHK 8621 TO CHK 8514 4302104

    --------------- D A I L Y   B A L A N C E   I N F O R M A T I O N ---------------

      DATE.......BALANCE      DATE.......BALANCE      DATE.......BALANCE
      07/25      93,170.48    07/27      95,619.56    07/29          .00
      07/26      95,190.48    07/28       4,998.39


    -----------------------------------------------------------------------------
```

```
                    Thank you for banking with us!
                  If you have any questions please call
                  our Crawford Branch at (254) 486-0003 or
                   our Temple Branch at (254) 249-2265.
```

SECURITY BANK OF CRAWFORD • PO BOX 90 • 6688 NORTH LONESTAR PARKWAY • CRAWFORD, TEXAS 76638 • 254-486-0003

**Fill in this information to identify the case:**

Debtor Name Free Speech Systems LLC

United States Bankruptcy Court for the: Southern District of Texas

Case number: 22-60043

☐ Check if this is an
amended filing

Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11                    12/17

Month:          September 2022                              Date report filed:  12/16/2022
                                                                                MM / DD / YYYY

Line of business:  Dietary Supplement Sales                 NAISC code:         325411

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury
that I have examined the following small business monthly operating report and the accompanying
attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party:              J. Patrick Magill

Original signature of responsible party

Printed name of responsible party   J. Patrick Magill

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  |  | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A.*** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☐ | ☑ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☑ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☐ | ☐ | ☑ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B.*** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? *** NOTE 1 *** | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name  Free Speech Systems LLC

Case number  22-60043

17. Have you paid any bills you owed before you filed bankruptcy?  ☑ ☐ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?  ☑ ☐ ☐

    \*\*\* NOTE 1 \*\*\* We provide consignment sales services to PQPR

## **2. Summary of Cash Activity for All Accounts**

19. **Total opening balance of all accounts**

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

$ 1,023,699 ⊞

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.

$ 369,017.00

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here.

− $ 104,337.00

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

+ $ 264,680.00

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

= $ 1,288,379 ⊞

## **3. Unpaid Bills**

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

$ 792,303.00

    *(Exhibit E)*

Debtor Name  Free Speech Systems LLC

Case number  22-60043

---

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**

    *(Exhibit F)*

$ 467,672.00

---

## 5. Employees

26. What was the number of employees when the case was filed?

54

27. What is the number of employees as of the date of this monthly report?

54

---

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?

$ 0.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?

$ 0.00

30. How much have you paid this month in other professional fees?

$ 0.00

31. How much have you paid in total other professional fees since filing the case?

$ 0.00

---

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | Column A | Column B | Column C |
|---|---|---|---|
| | **Projected** | − **Actual** | = **Difference** |
| | Copy lines 35-37 from the previous month's report. | Copy lines 20-22 of this report. | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ 0.00 | − $ 369,017.00 | = $ 0.00 |
| 33. **Cash disbursements** | $ 0.00 | − $ 104,337.00 | = $ 0.00 |
| 34. **Net cash flow** | $ 0.00 | − $ 264,680.00 | = $ 0.00 |

35. Total projected cash receipts for the next month:    $ 2,449,289.6 ⊞

36. Total projected cash disbursements for the next month:    - $ 1,773,415.6 ⊞

37. Total projected net cash flow for the next month:    = $ 675,874.00

---

Debtor Name  Free Speech Systems LLC

Case number  22-60043

---

## ▮ 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☑ 39.  Bank reconciliation reports for each account.

☐ 40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41.  Budget, projection, or forecast reports.

☐ 42.  Project, job costing, or work-in-progress reports.

# FREE SPEECH SYSTEMS

| September 1 to September 30 | AXOS Deposits #78877 | AXOS Operating #78919 | AXOS Donations #78885 | AXOS Payroll #78927 | AXOS Infowars #78893 | AXOS Legal #78901 | SEC BANK Operations #8514 | SEC BANK Donations #8746 | SEC BANK Payroll #8522 | SEC BANK InfoWars #8621 | SEC BANK Deposits #8563 | TOTAL All Accounts |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Opening Balance** | **66,713.60** | **1,381,667.57** | **501,229.62** | **8,504.27** | | | | | | | **11.77** | **1,964,252.27** |
| Cash Receipts | 825,360.10 | 20,579.60  (t | 107,393.20 | 98,497.49 | 6,125.44 | - | - | - | - | - | - | 1,051,830.39 |
| Cash Disbursements | - | (2,012,290.50) | (279,987.56) | (1,259.20) | - | - | - | - | - | - | - | (2,293,537.26) |
| **Net Cash Flow** | **825,360.10** | **(1,991,710.90)** | **(172,594.36)** | **97,238.29** | **6,125.44** | **-** | **-** | **-** | **-** | **-** | **-** | **(1,241,706.87)** |
| Transfers In | - | 706,000.00 | - | - | - | - | - | - | - | - | - | 706,000.00 |
| Transfers Out | (599,000.00) | (12,000.00) | - | (95,000.00) | - | - | - | - | - | - | - | (706,000.00) |
| **Cash on Hand** | **293,073.70** | **83,956.67** | **328,635.26** | **10,742.56** | **6,125.44** | **-** | **-** | **-** | **-** | **-** | **11.77** | **722,545.40** |



**FORM 425C Exhibit E**
**Total Payables**

*For various reasons, Free Speech Systems LLC has not kept its books on the accrual basis of accounting and as a result there is not a traditional accounts payable list available at this time.  Free Speech Systems has kept books on the cash basis and virtually all bills are paid via ACH.  We are including the invoices / bills paid / checks cleared from the 1st to the 15th of the following month as a reasonable estimate of our payables at the date of the report.*

*As of September 30, 2022*

| From | Amount | Due Date |
|------|--------|----------|
| Lathem Time Corp | 134.32 | 10/4/2022 |
| AuthNet Gateway | 4,698.40 | 10/4/2022 |
| Quickbooks Online | 173.23 | 10/4/2022 |
| Hasting Humans | 169.95 | 10/5/2022 |
| Spectrum | 180.14 | 10/5/2022 |
| ACH Batch Ops Exp | 1,200.00 | 10/5/2022 |
| ACH Batch Ops Exp | 2,032.50 | 10/5/2022 |
| Hastings Humans | 5,245.80 | 10/5/2022 |
| Atomial | 25,200.00 | 10/5/2022 |
| Cloudflare | 63,320.40 | 10/5/2022 |
| Haivision | 107,532.76 | 10/5/2022 |
| ATX HD | 20,671.00 | 10/5/2022 |
| Stream Realty | 34,858.32 | 10/5/2022 |
| Security Metrics | 12,000.00 | 10/5/2022 |
| ADP - Payroll | 185,264.31 | 10/5/2022 |
| Austion Security | 4,162.21 | 10/6/2022 |
| Contract Production | 3,425.00 | 10/7/2022 |
| Contract Production | 2,450.00 | 10/7/2022 |
| Quickbooks Online | 213.20 | 10/11/2022 |
| Champion AC | 494.70 | 10/12/2022 |
| Austin Security | 8,248.66 | 10/12/2022 |
| Edgecast Inc | 5,860.00 | 10/12/2022 |
| Getty Images | 9,854.54 | 10/12/2022 |
| TrustArc Inc | 16,789.50 | 10/12/2022 |
| Skyhorse Publishing | 43,327.50 | 10/12/2022 |
| | **557,506.44** | |



**FORM 425C Exhibit F**
**Total Receivables**

*Free Speech Systems LLC does not have traditional receivables from our customers.  Virtually all our transactions happen via our on-line store and aggregated by our third party credit card processor.  There is a lag between the transaction on the on-line store and the funding from our processor.  Therefore, we don't have traditional customer receivables but have included our daily processor deposits from the 1st to the 5th of the following month as receivables*

*As of September 30, 2022*

| From | Amount | Due Date |
|------|--------|----------|
| Processor A | 94,220.05 | 10/3/2022 |
| Processor A | 50,583.51 | 10/4/2022 |
| Processor A | 34,191.56 | 10/5/2022 |
| | **178,995.12** | |



Date  9/30/22          Page     1
Primary Account         78919

FREE SPEECH SYSTEMS, LLC
Debtor in Possesion,
Case 22-60043, Operations
3019 ALVIN DEVANE BLVD, SUITE 230
AUSTIN TX 78741

Account Title:          FREE SPEECH SYSTEMS, LLC
                        Debtor in Possesion,
                        Case 22-60043, Operations

| | | |
|---|---|---|
| Commercial Checking | Number of Enclosures | 3 |
| Account Number | Statement Dates  9/01/22 thru 10/02/22 | |
| Previous Balance            1,381,667.57 | Days in the statement period | 32 |
| 87 Deposits/Credits         726,579.60 | Avg Daily Ledger | 444,820.74 |
| 105 Checks/Debits         2,024,272.50 | Avg Daily Collected | 444,294.02 |
| Maintenance Fee                18.00 | | |
| Interest Paid                    .00 | | |
| Ending Balance             83,956.67 | | |

## SERVICE CHARGE ITEMIZATION

| Description | Amount |
|---|---|
| Item Fee in Service Charge | 18.00 |

## DEPOSITS AND OTHER CREDITS

| Date | Description | Amount |
|---|---|---|
| 9/01 | From DDA *8877,To DDA *8919 | 60,000.00 |
| 9/02 | PAYMENT    GOOGLE | .19 |
| | CCD 09100011398133 | |
| | Free Speech Systems, L | |
| 9/07 | From DDA *8877,To DDA *8919 | 180,000.00 |
| 9/07 | MyDeposit | 24.95 |
| 9/07 | MyDeposit | 30.00 |
| 9/07 | MyDeposit | 35.00 |

006543



Date   9/30/22          Page      2
Primary Account         ████████78919

Commercial Checking          ████████    (Continued)

## DEPOSITS AND OTHER CREDITS

| Date | Description | Amount |
|------|-------------|--------|
| 9/07 | MyDeposit | 36.99 |
| 9/07 | MyDeposit | 70.00 |
| 9/07 | MyDeposit | 74.97 |
| 9/07 | MyDeposit | 80.90 |
| 9/07 | MyDeposit | 86.98 |
| 9/07 | MyDeposit | 88.89 |
| 9/07 | MyDeposit | 100.00 |
| 9/07 | MyDeposit | 100.00 |
| 9/07 | MyDeposit | 100.00 |
| 9/07 | MyDeposit | 100.00 |
| 9/07 | MyDeposit | 100.00 |
| 9/07 | MyDeposit | 108.80 |
| 9/07 | MyDeposit | 110.99 |
| 9/07 | MyDeposit | 115.92 |
| 9/07 | MyDeposit | 116.89 |
| 9/07 | MyDeposit | 120.00 |
| 9/07 | MyDeposit | 120.82 |
| 9/07 | MyDeposit | 124.94 |
| 9/07 | MyDeposit | 125.00 |
| 9/07 | MyDeposit | 135.00 |
| 9/07 | MyDeposit | 135.00 |
| 9/07 | MyDeposit | 137.98 |
| 9/07 | MyDeposit | 140.99 |
| 9/07 | MyDeposit | 150.00 |
| 9/07 | MyDeposit | 150.00 |
| 9/07 | MyDeposit | 151.80 |
| 9/07 | MyDeposit | 183.55 |
| 9/07 | MyDeposit | 200.00 |
| 9/07 | MyDeposit | 200.00 |
| 9/07 | MyDeposit | 227.00 |
| 9/07 | MyDeposit | 250.00 |
| 9/07 | MyDeposit | 274.95 |
| 9/07 | MyDeposit | 295.00 |
| 9/07 | MyDeposit | 303.44 |
| 9/07 | MyDeposit | 321.36 |
| 9/07 | MyDeposit | 463.82 |
| 9/07 | MyDeposit | 500.00 |
| 9/07 | MyDeposit | 1,968.53 |
| 9/08 | REVERSAL   FREESPEECHOP | 3,000.00 ← |
|      | PPD 122287250000637 | |



Date   9/30/22          Page      3
Primary Account     78919

Commercial Checking          (Continued)

## DEPOSITS AND OTHER CREDITS

| Date | Description | Amount |
|------|-------------|--------|
| | FREESPEECHOP | |
| 9/12 | ACH Credit Back Item | 3,000.00 |
| 9/12 | From DDA *8877,To DDA *8919 | 120,000.00 |
| 9/13 | From DDA *8877,To DDA *8919 | 55,000.00 |
| 9/14 | ACH Credit Back Item | 3,724.24 |
| 9/14 | Wire Transfer Credit | 3,000.00 |
| | ECD UNPOST SUSP | |
| | 20220914B1QGC05C006277 | |
| | 20220914MMQFMP9N000109 | |
| | 09141120FT03 | |
| 9/15 | ACH Credit Back Item | 3,000.00 |
| 9/19 | From DDA *8877,To DDA *8919 | 90,000.00 |
| 9/19 | From DDA *8877,To DDA *8919 | 94,000.00 |
| 9/19 | From DDA *8927,To DDA *8919 | 95,000.00 |
| 9/20 | MyDeposit | 79.35 |
| 9/20 | MyDeposit | 85.97 |
| 9/20 | MyDeposit | 111.99 |
| 9/20 | MyDeposit | 118.00 |
| 9/20 | MyDeposit | 149.55 |
| 9/20 | MyDeposit | 149.95 |
| 9/20 | MyDeposit | 203.21 |
| 9/20 | MyDeposit | 225.00 |
| 9/20 | MyDeposit | 248.79 |
| 9/20 | MyDeposit | 328.81 |
| 9/20 | MyDeposit | 345.06 |
| 9/20 | MyDeposit | 388.85 |
| 9/20 | MyDeposit | 390.34 |
| 9/20 | MyDeposit | 848.43 |
| 9/20 | MyDeposit | 2,013.57 |
| 9/27 | MyDeposit | 24.95 |
| 9/27 | MyDeposit | 29.00 |
| 9/27 | MyDeposit | 30.00 |
| 9/27 | MyDeposit | 77.90 |
| 9/27 | MyDeposit | 82.90 |
| 9/27 | MyDeposit | 100.00 |
| 9/27 | MyDeposit | 110.99 |
| 9/27 | MyDeposit | 111.76 |
| 9/27 | MyDeposit | 137.91 |
| 9/27 | MyDeposit | 144.65 |
| 9/27 | MyDeposit | 171.22 |
| 9/27 | MyDeposit | 174.96 |



Date  9/30/22          Page      4
Primary Account       ██████78919

Commercial Checking       ██████      (Continued)

## DEPOSITS AND OTHER CREDITS

| Date | Description | Amount |
|------|-------------|--------|
| 9/27 | MyDeposit | 178.27 |
| 9/27 | MyDeposit | 193.84 |
| 9/27 | MyDeposit | 286.70 |
| 9/27 | MyDeposit | 339.78 |
| 9/27 | MyDeposit | 400.00 |
| 9/27 | MyDeposit | 413.01 |

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
| 9/01 | DBT CRD 1623 08/31/22 69850016 AMZN Mktp US*144NN5VE3 Amzn.com/bill WA C#2164 | 103.26- |
| 9/02 | Debit Card Rush Order | 50.00- |
| 9/02 | PHONECHECK HASTINGSHUMANS TEL 091000011175151 | 169.95- |
| 9/02 | Epik        FREESPEECHOP CCD 122287250000344 FREESPEECHOP | 636.05- |
| 9/02 | PAYMENTS    FROST INSURANCE CCD 104000019653615 FREE SPEECH SYSTEMS, L | 2,704.02- |
| 9/02 | PHONECHECK HASTINGSHUMANS TEL 091000011175150 | 5,245.80- |
| 9/06 | DBT CRD 0331 09/04/22 06775433 FDCSERVERSN 312-423-6675  FL C#2164 | 555.34- |
| 9/06 | 4155203439 TrustArc WEB 242071756045820 Free Speech Systems | 1,221.46- |
| 9/06 | PHONECHECK HASTINGSHUMANS TEL 091000011948441 | 2,018.58- |
| 9/06 | SALE       AUSTIN SECURITY WEB 021000028716398 WENDELL M SCHWARTZ | 5,412.50- |
| 9/06 | BILLING    AUTHNET GATEWAY CCD 104000012912118 FREE SPEECH SYSTEMS, L | 8,198.60- |
| 9/06 | PHONECHECK HASTINGSHUMANS TEL 091000011948440 | 9,499.99- |



Date  9/30/22        Page      5
Primary Account              ▓▓▓▓▓8919

Commercial Checking          ▓▓▓▓▓▓▓  (Continued)

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
| 9/06 | PHONECHECK HASTINGSHUMANS<br>TEL 091000011948439 | 9,500.00- |
| 9/06 | SALE      ATOMIAL LLC<br>WEB 021000028716319<br>LLC FREE SPEECH SYSTEM | 25,200.00- |
| 9/06 | Skyhorse3  FREESPEECHOP<br>CCD 122287250000048<br>FREESPEECHOP | 100,000.00- |
| 9/06 | Bill Pay   FREESPEECHOP<br>CCD 122287250000022<br>FREESPEECHOP | 137,134.34- |
| 9/06 | DBT CRD 1328 09/02/22 65045325<br>ZOOM.US 888-799-9666<br>WWW.ZOOM.US   CA C#2164 | 159.48- |
| 9/06 | Domestic Wire Transfer-DL<br>Skyhorse Publishing, Inc.<br>021000021<br>716503237765<br>307 W 36th Street, 11th Floor<br>New York, NY 10018 UNITED STAT<br>JPMORGAN CHASE BAN<br>2nd payment on books<br>20220906MMQFMP9N000008<br>20220906B1QGC01R017622<br>09060800FT03 | 80,000.00- |
| 9/06 | Domestic Wire Transfer-DL<br>Skyhorse Publishing, Inc.<br>021000021<br>716503237765<br>307 W 36th Street, 11th Floor<br>New York, NY 10018 UNITED STAT<br>JPMORGAN CHASE BAN<br>Retry rejected payment<br>on book order<br>20220906MMQFMP9N000010<br>20220906B1QGC01R017638<br>09060800FT03 | 80,000.00- |
| 9/07 | PAYMENT    ADT<br>PPD 101000691278790<br>FREE SPEECH SYSTEMS | 9.44- |

006547



Date  9/30/22
Primary Account          78919          Page     6

Commercial Checking          (Continued)

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
| 9/07 | PAYMENT    ADT<br>PPD 101000691278796<br>FREE SPEECH SYSTEMS | 20.45– |
| 9/07 | PAYMENT    ADT<br>PPD 101000691278789<br>FREE SPEECH SYSTEMS | 58.94– |
| 9/07 | PAYMENT    ADT<br>PPD 101000691278788<br>FREE SPEECH SYSTEMS | 66.08– |
| 9/07 | PAYMENT    ADT<br>PPD 101000691278794<br>FREE SPEECH SYSTEMS | 69.18– |
| 9/07 | PAYMENT    ADT<br>PPD 101000691278793<br>FREE SPEECH SYSTEMS | 102.06– |
| 9/07 | PAYMENT    ADT<br>PPD 101000691278791<br>FREE SPEECH SYSTEMS | 126.76– |
| 9/07 | PAYMENT    ADT<br>PPD 101000691278787<br>FREE SPEECH SYSTEMS | 270.63– |
| 9/07 | PAYMENT    ADT<br>PPD 101000691278795<br>FREE SPEECH SYSTEMS | 830.10– |
| 9/07 | PAYMENT    ADT<br>PPD 101000691278792<br>FREE SPEECH SYSTEMS | 1,411.18– |
| 9/07 | WEBPAYMENT ADDSHOPPERSINC<br>WEB 091000017804646<br>WENDELL M SCHWARTZ | 2,989.00– |
| 9/07 | Bill Pay   FREESPEECHOP<br>PPD 122287250000085<br>FREESPEECHOP | 10,000.00– |
| 9/07 | BAL        FREESPEECHOP<br>CCD 122287250001069<br>FREESPEECHOP | 50,000.00– |
| 9/07 | Domestic Wire Transfer-DL<br>Cloudflare, Inc.<br>031100209<br>31460181 | 124,162.64– |



Date  9/30/22          Page      7
Primary Account        ▓▓▓▓▓▓78919

Commercial Checking          ▓▓▓▓▓▓▓  (Continued)

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
| | 101 Townsend St<br>San Francisco, CA 94107 UNITED<br>CITIBANK, N.A.<br>20220907MMQFMP9N000065<br>20220907B1Q8021R019558<br>09071146FT03 | |
| 9/07 | Domestic Wire Transfer-DL<br>Cloudflare, Inc.<br>031100209<br>31460181<br>101 Townsend St<br>San Francisco, CA 94107 UNITED<br>CITIBANK, N.A.<br>20220907MMQFMP9N000067<br>20220907B1Q8021R019564<br>09071146FT03 | 164,922.52- |
| 9/08 | DBT CRD 1259 09/07/22 47587713<br>EPIK<br>425-3668810    WA C#2164 | 566.04- |
| 9/08 | DBT CRD 1300 09/07/22 48590300<br>EPIK<br>425-3668810    WA C#2164 | 699.60- |
| 9/08 | Surv X-3   FREESPEECHOP<br>CCD 122287250000388<br>FREESPEECHOP | 147,823.61- |
| 9/08 | Domestic Wire Transfer-DL<br>ADP Total Source<br>021000021<br>304238112<br>10200 Sunset Drive<br>Miami<br>FL 33173 UNITED STATES<br>JP Morgan Chase<br>20220908MMQFMP9N000023<br>20220908B1QGCO1R030299<br>09081010FT03 | 177,767.36- |
| 9/09 | Int Fee 1205 09/09/22 99277906<br>1PASSWORD<br><br>TORONTO     00 C# 2164 | .31- |



Date  9/30/22          Page      8
Primary Account    ████████78919

Commercial Checking          ████████   (Continued)

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
| 9/09 | SPECTRUM    SPECTRUM<br>PPD 021000021931034<br>FREE SPEECH SYSTEMS LL | 180.14- |
| 9/09 | MSInvoice  DS WATERS OF AME<br>WEB 042000015812643<br>Wendell M Schwartz<br>937914222078336 | 932.37- |
| 9/09 | DBT CRD 1138 09/08/22 99277906<br>1PASSWORD<br>TORONTO      CD C#2164 | 31.42- |
| 9/12 | DBT CRD 1454 09/09/22 16485483<br>TEXASGASSERVICE<br>800-700-2443  OK C#2164 | 85.82- |
| 9/12 | DBT CRD 1448 09/08/22 12852223<br>AWIO WEB SERVICES, LLC<br>267-2803589    PA C#2164 | 209.00- |
| 9/12 | QBooks Onl 18004INTUIT<br>CCD 021000021623759<br>FREE SPEECH SYSTEMS LL | 213.20- |
| 9/12 | RECRD MGMT IRON MOUNTAIN<br>CCD 021000025981777<br>WENDELL *M SCHWARTZ | 276.40- |
| 9/12 | ACH       FREESPEECHOP<br>PPD 122287250000306<br>FREESPEECHOP | 1,094.00- |
| 9/12 | ACH       FREESPEECHOP<br>PPD 122287250000611<br>FREESPEECHOP | 3,000.00- |
| 9/12 | SALE      AUSTIN SECURITY<br>WEB 021000020762817<br>WENDELL M SCHWARTZ | 3,821.23- |
| 9/12 | AUTO PAY   Level 3 Communic<br>CCD 091000012703405<br>FRESPESYS | 8,437.40- |
| 9/12 | AUTO PAY   Level 3 Communic<br>CCD 091000012703404<br>FRESPESYS | 10,569.51- |
| 9/12 | SALE      ECOMMERCE CDN LL<br>WEB 021000020798551<br>WENDELL M SCHWARTZ | 27,270.00- |



Date  9/30/22
Primary Account ████████78919

Page    9

Commercial Checking        ████████  (Continued)

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
| 9/12 | BAL Fulfil FREESPEECHOP<br>CCD 122287250000317<br>FREESPEECHOP | 100,000.00- |
| 9/12 | DBT CRD 1204 09/09/22 14829924<br>GITHUB<br>HTTPSGITHUB.C CA C#2164 | 24.00- |
| 9/12 | DBT CRD 1101 09/10/22 76667489<br>MONGODBCLOUD ITS OR...<br>MONGODB.COM   CA C#2164 | 3,409.78- |
| 9/12 | DBT CRD 1357 09/10/22 82703366<br>ADOBE STOCK<br>800-443-8158  CA C#2164 | 4,884.60- |
| 9/12 | Domestic Wire Transfer-DL<br>Valdemar Rodriguez<br>111000614<br>635027722<br>145 Quali Ridge<br>Kyle Tx, 78640 UNITED STATES<br>Chase Bank<br>20220912MMQFMP9N000315<br>20220912B1QGC01R060880<br>09121438FT03 | 3,000.00- |
| 9/13 | ACH Chargeback | 3,000.00- |
| 9/13 | PAYMENTS   LATHEM TIME CORP<br>CCD 062000017294816<br>FREE SPEECH SYSTEMS LL | 138.64- |
| 9/13 | RECRD MGMT IRON MOUNTAIN<br>CCD 021000020522724<br>WENDELL *M SCHWARTZ | 321.93- |
| 9/13 | ACH       FREESPEECHOP<br>CCD 122287250000081<br>FREESPEECHOP | 115,283.80- |
| 9/13 | Domestic Wire Transfer-DL<br>Blue Ascension Logistics<br>121000248<br>8621401499<br>6231 E. Stassney Lane<br>Bldng. 13, Ste. 200<br>Austin, Tx 78744 UNITED STATES<br>Wells Fargo | 50,000.00- |



Date  9/30/22          Page    10
Primary Account  ███████78919

Commercial Checking     ████████  (Continued)

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
|  | 20220913MMQFMP9N000244 | |
|  | 20220913I1B7032R014595 | |
|  | 09131416FT03 | |
| 9/14 | DBT CRD 0330 09/13/22 06548441 | 571.19- |
|  | FDCSERVERSN | |
|  | 312-423-6675  FL C#2164 | |
| 9/15 | DBT CRD 1020 09/14/22 52328193 | 149.60- |
|  | BACKBLAZE | |
|  | HTTPSWWW.BACK CA C#2164 | |
| 9/15 | DBT CRD 0902 09/14/22 05335713 | 266.50- |
|  | NRI*NEW RELIC | |
|  | 888-643-8776  CA C#2164 | |
| 9/16 | DBT CRD 1223 09/15/22 26062173 | 285.83- |
|  | Name.com, Inc | |
|  | 720-2492374    CO C#2164 | |
| 9/19 | DBT CRD 1508 09/16/22 25211222 | 179.70- |
|  | ORKIN  LLC 002 | |
|  | 877-620-8282  GA C#2164 | |
| 9/19 | DBT CRD 1427 09/16/22 00780236 | 398.00- |
|  | USPS PO BOXES ONLINE | |
|  | 800-344-7779  DC C#2164 | |
| 9/19 | DBT CRD 2155 09/18/22 05150907 | 573.71- |
|  | BESTBUYCOM806678757840 | |
|  | 888BESTBUY    MN C#2164 | |
| 9/19 | GOVERNMENT COA/ALARM ADMIN | 110.00- |
|  | WEB 021000027666118 | |
|  | WENDELL M *SCHWARTZ | |
|  | 5633463 | |
| 9/19 | Bill Pay    FREESPEECHOP | 1,193.54- |
|  | CCD 122287250000076 | |
|  | FREESPEECHOP | |
| 9/19 | ACH        FREESPEECHOP | 1,442.50- |
|  | PPD 122287250000134 | |
|  | FREESPEECHOP | |
| 9/19 | Payment    ATT | 2,593.64- |
|  | WEB 031100202271927 | |
|  | Wendell M Schwartz | |
|  | 154973003GLB2F | |
| 9/19 | TELECOMM   GRANDE COMMUNICA | 2,619.50- |
|  | WEB 021000026582495 | |



Date  9/30/22        Page    11
Primary Account       ██████78919

Commercial Checking        ██████████  (Continued)

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
|  | WENDELL M *SCHWARTZ<br>5885783 | |
| 9/19 | SALE       AUSTIN SECURITY<br>WEB 021000024611072 | 3,972.78- |
|  | WENDELL M SCHWARTZ | |
| 9/19 | SALE       JCE SEO, LLC<br>WEB 021000024625137 | 5,000.00- |
|  | WNDELL M SCHWARTZ | |
| 9/19 | ACH        FREESPEECHOP<br>CCD 122287250000088 | 27,852.19- |
|  | FREESPEECHOP | |
| 9/19 | Bill Pay   FREESPEECHOP<br>PPD 122287250000126 | 40,000.00- |
|  | FREESPEECHOP | |
| 9/19 | Bill Pay   FREESPEECHOP<br>PPD 122287250000246 | 43,000.00- |
|  | FREESPEECHOP | |
| 9/19 | Bill Pay   FREESPEECHOP<br>CCD 122287250000101 | 56,355.50- |
|  | FREESPEECHOP | |
| 9/20 | DBT CRD 1408 09/20/22 89257704<br>AMZN Mktp US*1M20V4MH2<br>Amzn.com/bill WA C#2164 | 84.65- |
| 9/20 | DBT CRD 1412 09/19/22 91447781<br>AMZN Mktp US*1M9EK4DV0<br>Amzn.com/bill WA C#2164 | 140.71- |
| 9/20 | DBT CRD 0331 09/19/22 06678185<br>FDCSERVERSN<br>312-423-6675  FL C#2164 | 545.34- |
| 9/20 | DBT CRD 0153 09/19/22 47955707<br>Microsoft*Advertising<br>800-6427676   NV C#2164 | 2,500.32- |
| 9/20 | 4155203439 TrustArc<br>WEB 242071759674631 | 1,121.46- |
|  | Wendell M Schwartz | |
| 9/20 | PAYMENT    City of Austin T<br>WEB 021000029130607 | 4,127.65- |
|  | FREE SPEECH SYSTEMS LL<br>4722133167 | |
| 9/20 | DBT CRD 1053 09/19/22 71890054<br>VERCEL PRO | 20.00- |



Date   9/30/22          Page    12
Primary Account          ████████78919

Commercial Checking          ████████          (Continued)

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
|      | HTTPSVERCEL.C CA C#2164 | |
| 9/20 | DBT CRD 1455 09/19/22 17119533 | 173.23- |
|      | INTUIT *QBooks Online | |
|      | CL.INTUIT.COM CA C#2164 | |
| 9/21 | POS DEB 0828 09/21/22 00950864 | 52.90- |
|      | CUMBERLAND | |
|      | CUMBERLAND FARMS | |
|      | MIDDLEBURY    CT C#0837 | |
| 9/21 | DBT CRD 0108 09/20/22 20817569 | 249.62- |
|      | Amazon.com*1M5DD8H52 | |
|      | Amzn.com/bill WA C#2164 | |
| 9/21 | ACH       FREESPEECHOP | 50,000.00- |
|      | CCD 122287250000237 | |
|      | FREESPEECHOP | |
| 9/21 | Domestic Wire Transfer-DL | 178,945.90- |
|      | ADP Total Source | |
|      | 021000021 | |
|      | 304238112 | |
|      | 10200 Sunset Drive | |
|      | Miami | |
|      | FL 33173 UNITED STATES | |
|      | JP Morgan Chase | |
|      | 20220921MMQFMP9N000052 | |
|      | 20220921B1QGC01R038110 | |
|      | 09211151FT03 | |
| 9/22 | DBT CRD 0147 09/21/22 44362094 | 344.69- |
|      | Amazon.com*1U9QZ3CA0 | |
|      | Amzn.com/bill WA C#2164 | |
| 9/22 | From DDA *8919,To DDA *7846 | 2,733.33- |
| 9/23 | DBT CRD 1702 09/22/22 90698155 | 54.00- |
|      | SHELL SERVICE STATION | |
|      | WOODBURY     CT C#0837 | |
| 9/23 | DBT CRD 0754 09/22/22 64759968 | 299.75- |
|      | Amazon.com*1U8PN4AR1 | |
|      | Amzn.com/bill WA C#2164 | |
| 9/23 | DBT CRD 1403 09/22/22 86063851 | 10.00- |
|      | PRITUNL PREMIUM | |
|      | HTTPSPRITUNL. WA C#2164 | |
| 9/23 | DBT CRD 1834 09/21/22 48953614 | 20.00- |
|      | VERCEL PRO | |



Date  9/30/22        Page    13
Primary Account                    78919

Commercial Checking                    (Continued)

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
|      | HTTPSVERCEL.C CA C#2164 | |
| 9/23 | DBT CRD 1100 09/22/22 76285535 | 31.98- |
|      | Name.com, Inc | |
|      | 720-2492374    CO C#2164 | |
| 9/26 | DBT CRD 1101 09/23/22 76794503 | 111.64- |
|      | SAN REMO RESTAURANT | |
|      | 203-2634442    CT C#0837 | |
| 9/26 | DBT CRD 1617 09/22/22 66254213 | 156.98- |
|      | SAN REMO RESTAURANT | |
|      | 203-2634442    CT C#0837 | |
| 9/26 | DBT CRD 1629 09/23/22 73691541 | 460.43- |
|      | FREEBIRD KITCHEN AND B | |
|      | 914-6072476    NY C#0837 | |
| 9/30 | Service Charge | 18.00-SC |

## CHECKS IN SERIAL NUMBER ORDER

| Date | Check No | Amount | Date | Check No | Amount |
|------|----------|--------|------|----------|--------|
| 9/22 | 10010 | 3,000.00 | 9/13 | 99996727* | 87,861.63 |
| 9/09 | 99913403* | 18,773.60 | | | |

* Indicates Skip In Check Number Sequence

## DAILY BALANCE INFORMATION

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 9/01 | 1,441,564.31 | 9/13 | 218,304.48 | 9/22 | 82,111.61 |
| 9/02 | 1,432,758.68 | 9/14 | 224,457.53 | 9/23 | 81,695.88 |
| 9/06 | 973,858.39 | 9/15 | 227,041.43 | 9/26 | 80,966.83 |
| 9/07 | 806,979.87 | 9/16 | 226,755.60 | 9/27 | 83,974.67 |
| 9/08 | 483,123.26 | 9/19 | 320,464.54 | 9/30 | 83,956.67 |
| 9/09 | 463,205.42 | 9/20 | 317,438.05 | | |
| 9/12 | 419,910.48 | 9/21 | 88,189.63 | | |

*** END OF STATEMENT ***



Date  9/30/22          Page     1
Primary Account        ████78877

FREE SPEECH SYSTEMS, LLC
Debtor in Possesion, Case 22-60043,
Deposit
3019 ALVIN DEVANE BLVD, SUITE 230
AUSTIN TX 78741

Account Title:          FREE SPEECH SYSTEMS, LLC
                        Debtor in Possesion, Case 22-60043,
                        Deposit

| Commercial Checking | | Number of Enclosures | 0 |
|---|---|---|---|
| Account Number | ████ | Statement Dates   9/01/22 thru 10/02/22 | |
| Previous Balance | 66,713.60 | Days in the statement period | 32 |
| 17 Deposits/Credits | 825,360.10 | Avg Daily Ledger | 94,311.14 |
| 6 Checks/Debits | 599,000.00 | Avg Daily Collected | 94,311.14 |
| Maintenance Fee | .00 | | |
| Interest Paid | .00 | | |
| Ending Balance | 293,073.70 | | |

## DEPOSITS AND OTHER CREDITS

| Date | Description | Amount |
|---|---|---|
| 9/01 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738<br>CRAWFORD- SECURITY BANK OF CRA<br>20220901k1QJ1N3C000956<br>20220901MMQFMP9N000308<br>09011504FT03 | 46,259.48 |
| 9/06 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738 | 19,412.13 |



Date  9/30/22                    Page        2
Primary Account         ▬▬▬78877

Commercial Checking             ▬▬▬    (Continued)

## DEPOSITS AND OTHER CREDITS

| Date | Description | Amount |
|------|-------------|--------|
| | CRAWFORD- SECURITY BANK OF CRA<br>20220906K1QJ1N3C001230<br>20220906MMQFMP9N000338<br>09061703FT03 | |
| 9/06 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738 | 111,285.93 |
| | CRAWFORD- SECURITY BANK OF CRA<br>20220906K1QJ1N3C001235<br>20220906MMQFMP9N000339<br>09061703FT03 | |
| 9/07 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738 | 36,074.37 |
| | CRAWFORD- SECURITY BANK OF CRA<br>20220907K1QJ1N3C001189<br>20220907MMQFMP9N000350<br>09071659FT03 | |
| 9/09 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738 | 84,342.98 |
| | CRAWFORD- SECURITY BANK OF CRA<br>20220909K1QJ1N3C001109<br>20220909MMQFMP9N000287<br>09091536FT03 | |
| 9/13 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738 | 53,858.50 |
| | CRAWFORD- SECURITY BANK OF CRA<br>20220913K1QJ1N3C000150<br>20220913MMQFMP9N000084<br>09131043FT03 | |
| 9/19 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738 | 92,024.02 |



BANK

Date  9/30/22          Page     3
Primary Account        78877

Commercial Checking             (Continued)

## DEPOSITS AND OTHER CREDITS

| Date | Description | Amount |
|------|-------------|--------|
| | CRAWFORD- SECURITY BANK OF CRA<br>20220919K1QJ1N3C000315<br>20220919MMQFMP9N000125<br>09191201FT03 | |
| 9/19 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738<br>CRAWFORD- SECURITY BANK OF CRA<br>20220919K1QJ1N3C000903<br>20220919MMQFMP9N000273<br>09191553FT03 | 93,265.35 |
| 9/20 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738<br>CRAWFORD- SECURITY BANK OF CRA<br>20220920K1QJ1N3C000609<br>20220920MMQFMP9N000196<br>09201337FT03 | 35,329.29 |
| 9/21 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738<br>CRAWFORD- SECURITY BANK OF CRA<br>20220921K1QJ1N3C000909<br>20220921MMQFMP9N000232<br>09211532FT03 | 14,351.91 |
| 9/22 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738<br>CRAWFORD- SECURITY BANK OF CRA<br>20220922K1QJ1N3C000587<br>20220922MMQFMP9N000179<br>09221357FT03 | 16,804.53 |
| 9/23 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738 | 19,356.47 |



Date  9/30/22          Page     4
Primary Account    78877

Commercial Checking                        (Continued)

## DEPOSITS AND OTHER CREDITS

| Date | Description | Amount |
|------|-------------|--------|
| | CRAWFORD- SECURITY BANK OF CRA<br>20220923K1QJ1N3C000776<br>20220923MMQFMP9N000200<br>09231421FT03 | |
| 9/26 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738<br>CRAWFORD- SECURITY BANK OF CRA<br>20220926K1QJ1N3C000792<br>20220926MMQFMP9N000216<br>09261459FT03 | 68,865.33 |
| 9/28 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738<br>CRAWFORD- SECURITY BANK OF CRA<br>20220928K1QJ1N3C001047<br>20220928MMQFMP9N000327<br>09281555FT03 | 21,443.44 |
| 9/28 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738<br>CRAWFORD- SECURITY BANK OF CRA<br>20220928K1QJ1N3C000252<br>20220928MMQFMP9N000104<br>09281113FT03 | 24,852.60 |
| 9/29 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738<br>CRAWFORD- SECURITY BANK OF CRA<br>20220929K1QJ1N3C000905<br>20220929MMQFMP9N000268<br>09291508FT03 | 49,627.00 |
| 9/30 | Wire Transfer Credit<br>AURIAM SERVICES LLC<br>14425 FALCON HEAD BLVD STE #15<br>AUSTIN TX 78738 | 38,206.77 |





Date  9/30/22          Page      5
Primary Account          78877

Commercial Checking                    (Continued)

## DEPOSITS AND OTHER CREDITS

| Date | Description | Amount |
|------|-------------|--------|
|      | CRAWFORD- SECURITY BANK OF CRA | |
|      | 20220930K1QJ1N3C000883 | |
|      | 20220930MMQFMP9N000271 | |
|      | 09301336FT03 | |

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
| 9/01 | From DDA *8877,To DDA *8919 | 60,000.00- |
| 9/07 | From DDA *8877,To DDA *8919 | 180,000.00- |
| 9/12 | From DDA *8877,To DDA *8919 | 120,000.00- |
| 9/13 | From DDA *8877,To DDA *8919 | 55,000.00- |
| 9/19 | From DDA *8877,To DDA *8919 | 90,000.00- |
| 9/19 | From DDA *8877,To DDA *8919 | 94,000.00- |

## DAILY BALANCE INFORMATION

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 9/01 | 52,973.08 | 9/13 | 2,946.99 | 9/23 | 90,078.56 |
| 9/06 | 183,671.14 | 9/19 | 4,236.36 | 9/26 | 158,943.89 |
| 9/07 | 39,745.51 | 9/20 | 39,565.65 | 9/28 | 205,239.93 |
| 9/09 | 124,088.49 | 9/21 | 53,917.56 | 9/29 | 254,866.93 |
| 9/12 | 4,088.49 | 9/22 | 70,722.09 | 9/30 | 293,073.70 |

*** END OF STATEMENT ***



Date  9/30/22         Page        1
Primary Account        ▬▬▬78885

FREE SPEECH SYSTEMS, LLC
Debtor in Possesion,
Case 22-60043, Donations
3019 ALVIN DEVANE BLVD, SUITE 230
AUSTIN TX 78741

Account Title:          FREE SPEECH SYSTEMS, LLC
                        Debtor in Possesion,
                        Case 22-60043, Donations

| | | | | |
|---|---|---|---|---|
| Commercial Checking | | | Number of Enclosures | 0 |
| Account Number | ▬▬▬▬ | | Statement Dates   9/01/22 thru 10/02/22 | |
| Previous Balance | 501,229.62 | | Days in the statement period | 32 |
| 64 Deposits/Credits | 107,393.20 | | Avg Daily Ledger | 378,318.50 |
| 5 Checks/Debits | 279,987.56 | | Avg Daily Collected | 378,086.21 |
| Maintenance Fee | .00 | | | |
| Interest Paid | .00 | | | |
| Ending Balance | 328,635.26 | | | |

## DEPOSITS AND OTHER CREDITS

| Date | Description | Amount |
|---|---|---|
| 9/07 | Wire Transfer Credit | 99,960.00 |
| | FEDERAL RESERVE BANK | |
| | 151 CORLEY MILL ROAD | |
| | LEXINGTON, SC 29073- | |
| | REV YOUR PD REF DWR00774691 | |
| | 20220907MMQFMPYQ000047 | |
| | 20220907MMQFMP9N000024 | |
| | 09070621FT03 | |
| 9/07 | MyDeposit | 5.00 |
| 9/07 | MyDeposit | 8.00 |
| 9/07 | MyDeposit | 10.00 |
| 9/07 | MyDeposit | 10.00 |
| 9/07 | MyDeposit | 11.11 |
| 9/07 | MyDeposit | 11.11 |

006561



Date 9/30/22      Page    2
Primary Account      ████78885

Commercial Checking      ██████ (Continued)

## DEPOSITS AND OTHER CREDITS

| Date | Description | Amount |
|------|-------------|-------:|
| 9/07 | MyDeposit | 25.00 |
| 9/07 | MyDeposit | 25.00 |
| 9/07 | MyDeposit | 25.00 |
| 9/07 | MyDeposit | 25.00 |
| 9/07 | MyDeposit | 30.00 |
| 9/07 | MyDeposit | 40.00 |
| 9/07 | MyDeposit | 50.00 |
| 9/07 | MyDeposit | 50.00 |
| 9/07 | MyDeposit | 60.00 |
| 9/07 | MyDeposit | 100.00 |
| 9/07 | MyDeposit | 100.00 |
| 9/07 | MyDeposit | 100.00 |
| 9/07 | MyDeposit | 100.00 |
| 9/07 | MyDeposit | 100.00 |
| 9/07 | MyDeposit | 100.00 |
| 9/07 | MyDeposit | 100.00 |
| 9/07 | MyDeposit | 100.00 |
| 9/07 | MyDeposit | 125.00 |
| 9/07 | MyDeposit | 200.00 |
| 9/07 | MyDeposit | 200.00 |
| 9/07 | MyDeposit | 200.00 |
| 9/07 | MyDeposit | 444.00 |
| 9/20 | MyDeposit | 10.00 |
| 9/20 | MyDeposit | 10.00 |
| 9/20 | MyDeposit | 17.00 |
| 9/20 | MyDeposit | 20.00 |
| 9/20 | MyDeposit | 25.00 |
| 9/20 | MyDeposit | 35.00 |
| 9/20 | MyDeposit | 50.00 |
| 9/20 | MyDeposit | 50.00 |
| 9/20 | MyDeposit | 50.00 |
| 9/20 | MyDeposit | 60.00 |
| 9/20 | MyDeposit | 100.00 |
| 9/20 | MyDeposit | 100.00 |
| 9/20 | MyDeposit | 100.00 |
| 9/20 | MyDeposit | 100.00 |
| 9/20 | MyDeposit | 200.00 |
| 9/20 | MyDeposit | 250.00 |
| 9/20 | MyDeposit | 400.00 |
| 9/27 | MyDeposit | 5.00 |
| 9/27 | MyDeposit | 10.00 |



Date   9/30/22          Page        3
Primary Account    78885

Commercial Checking                          (Continued)

## DEPOSITS AND OTHER CREDITS

| Date | Description | Amount |
|------|-------------|--------|
| 9/27 | MyDeposit | 10.00 |
| 9/27 | MyDeposit | 18.00 |
| 9/27 | MyDeposit | 20.00 |
| 9/27 | MyDeposit | 50.00 |
| 9/27 | MyDeposit | 50.00 |
| 9/27 | MyDeposit | 53.98 |
| 9/27 | MyDeposit | 60.00 |
| 9/27 | MyDeposit | 100.00 |
| 9/27 | MyDeposit | 100.00 |
| 9/27 | MyDeposit | 100.00 |
| 9/27 | MyDeposit | 125.00 |
| 9/27 | MyDeposit | 150.00 |
| 9/27 | MyDeposit | 150.00 |
| 9/27 | MyDeposit | 500.00 |
| 9/27 | MyDeposit | 1,000.00 |
| 9/27 | MyDeposit | 1,000.00 |

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
| 9/06 | Domestic Wire Transfer-DL<br>Pattis & Smith, LLC<br>011103093<br>4392610957<br>383 Orange Street, First Floor<br>New Haven, CT 06511 UNITED STA<br>TD Bank<br>20220906MMQFMP9N000436<br>20220906MMQFMPYQ010416<br>09061611FT03 | 100,000.00- |
| 9/08 | Domestic Wire Transfer-DL<br>Norman A Pattix<br>011103093<br>4392610957<br>383 Orange Street, First Floor<br>New Haven, CT 06511 UNITED STA<br>TD Bank<br>20220908MMQFMP9N000016 | 100,000.00- |



Date  9/30/22          Page     4
Primary Account           ██████78885

Commercial Checking          ██████████  (Continued)

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
|  | 20220908MMQFMPYQ002661 | |
|  | 09080942FT03 | |
| 9/13 | Domestic Wire Transfer-DL | 50,000.00- |
|  | Reynal Law Firm | |
|  | 113025723 | |
|  | 1002335768 | |
|  | 917 Franklin St., 6th Floor | |
|  | Houston, TX UNITED STATES | |
|  | Allegiance Bank | |
|  | 20220913MMQFMP9N000270 | |
|  | 20220913MMQFMPPM000215 | |
|  | 09131435FT03 | |
| 9/14 | PAZ          FREESPEECHDON | 7,500.00- |
|  | PPD 122287250000300 | |
|  | FREESPEECHDON | |
| 9/20 | Domestic Wire Transfer-DL | 22,487.56- |
|  | Solomon Bruce Consulting | |
|  | 111915327 | |
|  | 13185169 | |
|  | 3310 W 6th | |
|  | Ft. Worth, TX 76107 UNITED STA | |
|  | Guaranty Bank and | |
|  | 20220920MMQFMP9N000345 | |
|  | 20220920GMQFMP01021819 | |
|  | 09201450FT03 | |

## DAILY BALANCE INFORMATION

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 9/01 | 501,229.62 | 9/08 | 403,543.84 | 9/20 | 325,133.28 |
| 9/06 | 401,229.62 | 9/13 | 353,543.84 | 9/27 | 328,635.26 |
| 9/07 | 503,543.84 | 9/14 | 346,043.84 | | |

*** END OF STATEMENT ***



Date  9/30/22        Page    1
Primary Account        ●●●●●●●78927

FREE SPEECH SYSTEMS, LLC
 Debtor in Possesion,
 Case 22-60043, Payroll
 3019 ALVIN DEVANE BLVD, SUITE 230
 AUSTIN TX 78741

Account Title:        FREE SPEECH SYSTEMS, LLC
                      Debtor in Possesion,
                      Case 22-60043, Payroll

| | | | |
|---|---|---|---|
| Commercial Checking | | Number of Enclosures | 0 |
| Account Number | ●●●●●●●● | Statement Dates   9/01/22 thru 10/02/22 | |
| Previous Balance | 8,504.27 | Days in the statement period | 32 |
| 3 Deposits/Credits | 98,497.49 | Avg Daily Ledger | 15,623.94 |
| 2 Checks/Debits | 96,259.20 | Avg Daily Collected | 15,623.94 |
| Maintenance Fee | .00 | | |
| Interest Paid | .00 | | |
| Ending Balance | 10,742.56 | | |

## DEPOSITS AND OTHER CREDITS

| Date | Description | Amount |
|---|---|---|
| 9/16 | Wire Transfer Credit<br>ELEVATED SOLUTIONS GROUP LLC<br>3402 CLAWSON RD<br>AUSTIN TX 78704<br>CRAWFORD- SECURITY BANK OF CRA<br>20220916K1QJ1N3C001252<br>20220916MMQFMP9N000336<br>09161626FT03 | 86,870.26 |
| 9/16 | ACH        ADP TOTALSOURCE<br>CCD 021000028957812<br>EV4-302990251-Free Spe | 4,001.00 |
| 9/27 | ACH        ADP TOTALSOURCE<br>CCD 021000026194680 | 7,626.23 |



Date 9/30/22       Page     2
Primary Account      ████████78927

Commercial Checking       ██████████   (Continued)

## DEPOSITS AND OTHER CREDITS

| Date | Description | Amount |
|------|-------------|--------|
|      | EV4-381100264-Free Spe | |

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
| 9/07 | PAYMENTS    FROST INSURANCE  CCD 104000016313736  AXOS | 1,259.20- |
| 9/19 | From DDA *8927,To DDA *8919 | 95,000.00- |

## DAILY BALANCE INFORMATION

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 9/01 | 8,504.27 | 9/16 | 98,116.33 | 9/27 | 10,742.56 |
| 9/07 | 7,245.07 | 9/19 | 3,116.33 | | |

*** END OF STATEMENT ***

006566



Date  9/30/22          Page      1
Primary Account          78893

FREE SPEECH SYSTEMS, LLC
  Debtor in Possesion
  Case 22-60043, Infowars
3019 ALVIN DEVANE BLVD, SUITE 230
AUSTIN TX 78741

Account Title:          FREE SPEECH SYSTEMS, LLC
                        Debtor in Possesion
                        Case 22-60043, Infowars

| | | | |
|---|---|---|---|
| Commercial Checking | | Number of Enclosures | 0 |
| Account Number | | Statement Dates    9/01/22 thru 10/02/22 | |
| Previous Balance | 6,125.44 | Days in the statement period | 32 |
| Deposits/Credits | .00 | Avg Daily Ledger | 6,125.44 |
| Checks/Debits | .00 | Avg Daily Collected | 6,125.44 |
| Maintenance Fee | .00 | | |
| Interest Paid | .00 | | |
| Ending Balance | 6,125.44 | | |

### DAILY BALANCE INFORMATION

| Date | Balance |
|---|---|
| 9/01 | 6,125.44 |

*** END OF STATEMENT ***